UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 2:23-cv-6188 (DG) (ST)**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING LLC,

Defendants.

-----------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

**PRELIMINARY STATEMENT** ........................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................................... 2

**ARGUMENT** ....................................................................................................................... 3

     **A.**    **Plaintiff Is Likely To Suffer Irreparable Injury If Injunctive Relief Is Not Granted.** ........................................................................................................ 5

     **B.**    **Plaintiffs Is Likely to Succeed on the Merits of its Claims** ........................... 10

         **1. Violation of Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1962** ...................................................................................... 11
         **2. Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836** ........ 13
         **3. Misappropriation** ................................................................................ 15
         **4. Unfair competition** ............................................................................. 17
         **5. Tortious interference with business relations & prospective economic advantage** .......................................................................................... 18
         **6. Conversion** ......................................................................................... 20
         **7. Civil Conspiracy** ................................................................................ 21

     **C.**    **The Balance Of Hardships Tips Considerably In Plaintiffs' Favor** ........... 21

     **D.**    **Granting An Injunction Would Not Harm The Public Interest** ................. 22

**CONCLUSION** ................................................................................................................... 23

## TABLE OF AUTHORITIES

**Cases**

16 Casa Duse, LLC v. Merkin,
    791 F.3d 247 (2d Cir. 2015) ............................................. 19

2Die4Kourt v. Hillair Cap. Mgmt., LLC,
    692 Fed. Appx. 366 (9th Cir. 2017)................................................. 5

A UA Private Equity Partners, LLC v. Solo,
    No. 17-CIV.-8035, 2018 WL 2684339 (S.D.N.Y. April 5, 2018)............................... 4, 14

Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.,
    534 Fed. Appx. 633 (9th Cir. 2013)................................................. 6

Arminius Schleifmittel GmbH v. Design Indus., Inc.,
    No. 1:06-CIV.-644, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) ................................... 6

Ashland Mgt. v. Janien,
    82 N.Y.2d 395 (1993) ........................................................ 15

B & M Linen, Corp. v. Kannegiesser, USA, Corp.,
    679 F. Supp. 2d 474 (S.D.N.Y. 2010)............................................... 19

Benihana, Inc. v. Benihana of Tokyo, LLC,
    784 F.3d 887 (2d Cir. 2015) ..................................................... 23

Broker Genius, Inc. v. Zalta,
    280 F. Supp. 3d 495 (S.D.N.Y. 201 7)............................................... 10

Capstone Logistics Holdings, Inc. v. Navarrete,
    2018 WL 6786338 (S.D.N.Y. Oct. 25, 2018) ......................................... 6, 15

Capstone Logistics Holdings, Inc. v. Navarrete,
    796 Fed. Appx. 55 (2d Cir. Mar. 5, 2020) ......................................... 6

Carvel Corp. v. Noonan,
    3 N.Y.3d 182 (2004) ......................................................... 19

Chevron Corp. v. Donziger,
    974 F. Supp. 2d 362 (S.D.N.Y. 2014)............................................ 3 n. 1, 11, 12

Chevron Corp. v. Donziger,
    833 F.3d 74 (2d Cir. 2016).................................................... 3 n. 1

Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,
    598 F.3d 30 (2d Cir. 2010)..................................................... 10

Colavito v. New York Organ Donor Network, Inc.,
 8 N.Y.3d 43 (2006) ............................................................................ 20

DeWitt Stern Grp., Inc. v. Eisenberg,
 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013).................................... 6

Eagle Comtronics, Inc. v. Pico, Inc.,
 89 A.D.2d 803, 453 N.Y.S.2d 470 (4th Dept. 1982) ........................................ 16

Ecolab, Inc. v. Paolo,
 753 F Supp 1100 (E.D.N.Y. 1991) .............................................................. 18

Estee Lauder Cos. v. Batra,
 430 F. Supp. 2d 158 (S.D.N.Y. 2006)................................................... 7, 8, 9 n. 2

ExpertConnect, L.L.C. v. Fowler,
 2019 U.S. Dist. LEXIS 114931, (S.D.N.Y. July 10, 2019) .............................. 16

Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.,
 985 F. Supp. 2d 262 (D. Conn. 2013)........................................................... 3

Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng.,
 985 F. Supp. 2d 262 (D. Conn. 2013)........................................................... 3

Faiveley Transp. Mahmo AB v. Wabtec Corp.,
 559 F .3d 110 (2d Cir. 2009)...................................................................... 7

FMC Corp. v. Taiwain Tainan Giant Indus. Co., Ltd.,
 730 F.2d 61 (2d Cir. 1984)........................................................................ 7

Free Country Ltd v. Drennen,
 235 F.Supp.3d 559 (S.D.N.Y. 2016)............................................................ 13

Garvin GuyButler Corp. v. Cowen & Co.,
 155 Misc. 2d 39 (Sup. Ct. N.Y. Cty. 1992) .................................................. 10

Gluco Perfect, LLC v. Perfect Gluco Products, Inc.,
 No. 14-CIV.-1678 (KAM) (RER), 2014 WL 4966102, (E.D.N.Y. Oct. 3, 2014) ........... 10

Henry Schein, Inc. v. Coak,
 191 F. Supp. 3d 1072 (N.D. Cal. 2016) ......................................................... 4

IME Watchdog, Inc. v. Gelardi,
 No.: 1:22-CIV.-1032 (PKC) (JRC), 2022 WL 1525486 (E.D.N.Y. May 13, 2022)......... 15

IQ Dental Supply, Inc. v. Henry Schein, Inc.,
 924 F.3d 57 (2d Cir. 2019)........................................................................ 19

v

Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,
    58 F.3d 27 (2d Cir. 1995)..................................................................... 17

Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc.,
    323 F. Supp. 2d 525 (S.D.N.Y. 2004)................................................. 16

JTH Tax, Inc. v. Sawhney,
    2020 U.S. Dist. LEXIS 217977 (S.D.N.Y. 2020)............................... 15

Katz v. Travelers,
    241 F. Supp. 3d 397 (E.D.N.Y. 2017) .................................... 19 n. 3

Katz v. Travelers,
    No. 16-CIV.-4389 (ADS) (SIL), 2017 WL 4180012 (E.D.N.Y. Sept. 20, 2017)...... 19 n. 3

Kelly v. Evolution Mkts., Inc.,
    626 F. Supp. 2d 364 (S.D.N.Y. 2009)................................................. 16

Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co., Ltd.,
    No. 1:18-CIV.-8333 (ALC), 2019 WL 10960397 (S.D.N.Y. June 20, 2019) ............. 6, 10

Kirch v. Liberty Media Corp.,
    449 F.3d 388 (2d Cir.2006)................................................................. 18

Lama Holding Co. v. Smith Barney Inc.,
    88 N.Y.2d 413 (1996) ........................................................................ 18

Levin v. Kitsis,
    82 A.D.3d 1051 (2d Dept 2011) ....................................................... 21

Long Is. Conservatory, Ltd. v. Jaisook Jin,
    836 N.Y.S.2d 486 (N.Y. Sup. Ct. 2007) ........................................... 16

Matter of Verizon NY Inc. v. NY State Pub. Serv. Commn.,
    46 Misc. 3d 858 (Sup. Ct., Albany County 2014). .......................... 15

Medidata Solutions, Inc. v. Veeva Sys.,
    2018 U.S. Dist. LEXIS 199763 (S.D.N.Y. Nov. 26, 2018)........................ 13, 14

Mickey's Linen v. Fischer,
    No. 17-CIV.-2154, 2017 WL 3970593 (N.D. Ill. September 8, 2017) ............................ 4

Mission Capital Advisors LLC v. Romaka,
    No. 16-CIV.-5878, 2016 WL 11517040 (S.D.N.Y. July 22, 2016).................................... 4

Mister Softee, Inc. v. Diaz,
    2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020) ............................... 5, 8

N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.,
   883 F.3d 32 (2d Cir. 2018).................................................................................... 3

Nassau Control Corp. v. Innovative Control Mgmt. Corp.,
   1996 WL 496610 (E.D.N.Y. June 20, 1996) ...................................................... 6

NextG Networks of New York, Inc. v. City of New York,
   2004 WL 2884308 (S.D.N.Y. Dec. 10, 2004) .................................................... 7

North Atlantic Instruments, Inc. v. Haber,
   188 F.3d 38 (2d Cir. 1999).................................................................................. 7

Panorama Consulting Sols., LLC v. Armitage,
   2017 WL 11547493 (D. Colo. June 9, 2017)...................................................... 7

Plaza Motors of Brooklyn, Inc. v. Bogdasarov,
   No.: 1:21-cv-6545 (KAM), 2021 WL 5630910 (E.D.N.Y. Dec. 1, 2021)........................ 15

Popat v. Levy,
   328 F. Supp. 3d 106 (W.D.N.Y. 2018) ...................................................... 19 n. 3

RKL Inc., d/b/o Roll-Krafi v. Grimes,
   177 F. Supp. 2d 859 (N.D. III. 2001)................................................................ 14

S. Nassau Control Corp. v. Innovative Control Mgmt. Corp.,
   1996 U.S. Dist. LEXIS 22603 WL 496610 (E.D.N.Y. June 20, 1996) ............................ 6

Salinger v. Colting,
   607 F.3d 68 (2d Cir. 2010)............................................................................. 5, 8

Scherer Design Group, LLC v. Schwartz,
   2018 U.S. Dist. LEXIS 125644 (D.N.J. July 26, 2018)................................... 10

SEC v. Citigroup Global Markets, Inc.,
   673 F.3d 158 (2d Cir. 2012)............................................................................. 22

Sharma v. Skaarup Ship Mgmt. Corp.,
   916 F.2d 820 (2d Cir. 1990).............................................................................. 18

Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC,
   468 F. App'x. 43 (2d Cir. 2012) ..................................................................... 5, 7

State of New York v. Seventh Regiment Fund,
   98 N.Y.2d 249 (2002) ....................................................................................... 20

Testing Servs., N.A. v. Pennisi,
   443 F. Supp. 3d 303 (E.D.N.Y. 2020) ............................................................. 17

Winter v. Nat. Hus. Def Council, Inc.,
     555 U.S. 7 (2008) ............................................................................................................ 3

World Wide Commc'ns, Inc. v. Rozar,
     No. 96-CIV.-1056 (MBM), 1997 WL 795750 (S.D.N.Y. Dec. 30, 1997) ...................... 18

## **Statutes**

18 U.S.C. § 1341 .................................................................................................................... 12

18 U.S.C. § 1343 .................................................................................................................... 12

18 U.S.C. § 1831 .................................................................................................................... 13

18 U.S.C. § 1 836 ................................................................................................................... 13

18 U.S.C. § 1839 ...................................................................................................... 8, 9, 13, 14

18 U.S.C. § 1962 .................................................................................................................... 11

18 U.S.C. § 1964 ............................................................................................................. 3 n. 1

## **Rules**

Fed. R. Civ. P. 65 ............................................................................................................ 1, 23

## PRELIMINARY STATEMENT

This case involves a group of criminals who have infiltrated Plaintiffs' dealerships and fraudulently obtained operational control of the dealerships to improperly avail themselves of (i) funds from banks that provide floor plan financing to Plaintiffs, (ii) funds from customers who leave deposits as down-payments on vehicles, (iii) funds through other schemes employed to steal money from Plaintiffs' dealerships; and (iv) Plaintiffs' confidential information and trade secrets in order to open their own group of dealerships to unlawfully compete with Plaintiffs.

Defendants' schemes were achieved by them gaining the confidence of the owners of Plaintiffs' dealerships and then cutting them out of their businesses in violation of the law through the use of illegal means, such as wire fraud, the use of forged instruments, and falsified documents. The abominable conduct of the Defendants must be put to a stop and they must be shut down.

This Memorandum of Law is respectfully submitted by Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Plaintiffs") in support of their urgent need for an *ex parte* temporary restraining Order ("TRO") and preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, the Defend Trade Secrets Act ("DTSA"), and the Racketeer Influenced & Corrupt Organizations Act ("RICO"), to issue against Defendants to immediately stop their hijacking and theft of Plaintiffs' dealerships, vehicles, dealer plates, confidential information and trade secrets, including customer information, and employees, all of which they literally stole from Plaintiffs in violation of their contractual and common law duties owed to Plaintiffs.

It took Superb's and Team's founder years to create, develop, and establish their unique business model which Defendants have stolen through deception and fraud while working with Plaintiffs under an agreement that forbids them from engaging in the conduct complained of.

1

Without this Court's immediate intervention, the irreparable harm to Plaintiffs will continue unabated and without remedy. Specifically, absent the relief requested, Superb and Team – as well as three other dealerships – may be forced to shut down because Defendants have placed Plaintiffs in a position where they will be forced to pay back over $3 million in floor plan financing, customer deposits, and vehicle payoffs all in connection with vehicles stolen by Defendants, and similar outstanding obligations owed by Superb and Team due to Defendants' conduct.

## FACTUAL BACKGROUND

Reference is respectfully made to the sworn declaration of Urrutia, which is detailed and accompanied by Exhibits A through S, as well as the complaint in support of this application, all of which is incorporated herein.

As set forth below, and in the accompanying declarations from Superb's founder and majority shareholder, Urrutia, as well as that of Emanuel Kataev, Esq., Plaintiffs' undersigned counsel, it is incontrovertible that Defendants illegally and unlawfully misappropriated Plaintiffs' confidential information, trade secrets, vehicles, dealer plates, customer information, and employees, for their personal benefit and to significantly damage Plaintiffs.

Defendants' perfidious conduct that is causing deep irreparable harm can only be arrested by this Court granting the instant request for a TRO and preliminary injunction to issue. A denial of this application will only greenlight Defendants' treachery to continue with impunity and allow Plaintiffs to flounder, fail, and be forced out of business. As demonstrated below, Plaintiffs have no adequate remedy at law and are entitled to a TRO and a preliminary injunction shutting Defendants down and prohibiting them from maintaining and utilizing Plaintiffs' confidential information, trade secrets, vehicles, dealer plates, customer information, and employees.

## ARGUMENT

In the Second Circuit, the standard for issuance of a TRO is the same as the standard for a preliminary injunction. See Fairfield Cty. Med. Ass'n v. United Healthcare of New Eng., 985 F. Supp. 2d 262, 270 (D. Conn. 2013), aff'd, 557 Fed. Appx. 53 (2d Cir. 2014).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." See N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d Cir. 2018). Additionally, injunctions are typically warranted only where the balance of equities tips in the moving party's favor and where an injunction is in the public interest. See Winter v. Nat. Hus. Def Council, Inc., 555 U.S. 7, 20 (2008).

For the reasons set forth below, Plaintiffs have satisfied these requirements, in addition to those required for relief under the DTSA and RICO and under the state law claims asserted, and the Court should grant a TRO and Preliminary Injunction to prevent Defendants from continuing to possess and cause further damage to Plaintiffs as a result of their unauthorized possession of Plaintiffs' confidential proprietary information ("CPI"), and their theft of Plaintiffs' customers.

Injunctive relief is warranted under RICO to return Plaintiffs' vehicles and dealer plates.[1]

---

[1] RICO's civil remedies provision contains three parts. See Chevron Corp. v. Donziger, 974 F. Supp. 2d 362, 569 (S.D.N.Y. 2014), aff'd, 833 F.3d 74 (2d Cir. 2016). The first, Section 1964(a), grants district courts jurisdiction to *"prevent and restrain"* RICO violations. Id. (emphasis added). It does not limit the breadth of that jurisdictional grant. Id. The second part of the remedies provision is Section 1964(b), which states that the Attorney General may institute proceedings under Section 1964(d) and authorizes the court to enter restraining orders, prohibitions, or take such other actions as it deems proper. Id. The third and final part, Section 1964(c), provides that any person injured in his business or property by a violation of the statute may sue in a district court and shall recover, *inter alia*, treble damages and attorneys' fees. Id. Read together, as they must be, Sections 1964(b) and (c) plainly provide remedies in addition to, and not in place of, the remedies provided for in Section 1964(a). Id. Section 1964(a) empowers district courts to "prevent and restrain" RICO violations, thus authorizing injunctive relief. Id.

Injunctive relief is separately warranted under the Defend Trade Secrets Act ("DTSA") to:

> [P]revent any actual or threatened misappropriation ... on such terms as the court deems reasonable, provided the order does not ( 1) prevent a person from entering into an employment relationship, and that conditions placed on such employment shall be based on evidence or threatened misappropriation and not merely on the information the person knows; or (2) otherwise conflict with … state law prohibiting restraints on the practice of a lawful profession, trade or business; [and] if determined appropriate by the court, requiring affirmative actions to be taken to protect the trade secret.

See 18 U.S.C. § l 836(3)(A)(I); see also, e.g., A UA Private Equity Partners. LLC v. Soto, No. 17-CIV.-8035, (S.D.N.Y. Nov. 6, 2017) (granting plaintiffs ex parte motion for TRO finding that plaintiff will likely succeed on its DTSA claim); Mission Capital Advisors LLC v. Romaka, No. 16-CIV.-5878, 2016 WL 11517040 (S.D.N.Y. Jul. 22, 2016) (same); Henry Schein, Inc. v. Coak, 191 F. Supp. 3d 1072 (N.D. Cal. 2016) (granting a TRO and preliminary injunction preventing a consultant from accessing, using, or sharing confidential data stolen from former employer in violation of the DTSA); Mickey's Linen v. Fischer, No. 17-CIV.-2154, 2017 WL 3970593 (N.D. III. September 8, 2017) (granting injunctive relief finding that defendant would inevitably use or disclose the plaintiff company's trade secrets if not enjoined, demonstrating likelihood of success).

Plaintiffs also seek the closure of all automobile dealerships operated by Defendants and for Defendants to return of Plaintiffs' information, as well as an Order prohibiting them from communicating with Plaintiffs' current and/or former employees, vendors, and customers, which Plaintiffs spent significant time, effort, and resources cultivating and sourcing. These remedies are warranted given the egregious nature of their conduct, the clear and convincing evidence submitted, and because Plaintiffs are not the only victims of Defendants' schemes designed to rob dealerships of every asset they have. Further, Deo's role as general manager at the dealerships placed him in a position of trust that he has repeatedly abused. Him and his cohort must be stopped.

4

**A.**  **Plaintiffs Are Likely to Suffer Irreparable Injury If Relief Is Not Granted**.

To establish irreparable injury, one must demonstrate that absent preliminary relief, it will suffer "an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." See Singas Famous Pizza Brands Corp. v. N.Y. Adver. LLC, 468 Fed. Appx. 43, 45 (2d Cir. 2012).

Moreover, a loss that is difficult to replace or to measure is generally irreparable. See Mister Softee, Inc. v. Diaz, 2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020) (irreparable injury established where allegations that, as a result of defendant's infringement, business will be diverted, and goodwill likely to be lost) (citing Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010)).

In this case, Defendants have misappropriated Plaintiffs' vehicles and have left the Plaintiffs holding the proverbial bag to pay for them while Defendants are free to sell the vehicles for pure profit.  The vehicles were purchased with a line of credit maintained by Plaintiffs provided by banks who issue floor plan financing.  Plaintiffs are required to pay these banks back upon the sale of a vehicle or if Plaintiffs fail to comply with conditions attendant to the financing provided, i.e., that – with limited exceptions – the vehicles financed must be present at the dealership and available for sale.  Because the Defendants have absconded with the vehicles, Plaintiffs are at imminent risk of having to pay for the vehicles without the benefit of having sold them.

The precarious position Plaintiffs have been placed in due to the Defendants' conduct warrants not only an Order requiring Defendants to immediately return the vehicles, but enjoining Defendants from operating any business in the automobile industry, especially because Plaintiffs have not been the only victims of Defendants' unlawful schemes.  See 2Die4Kourt v. Hillair Cap. Mgmt., LLC, 692 Fed. Appx. 366, 369 (9th Cir. 2017) (affirming grant of preliminary injunction to trademark owner even though defendant argued that an injunction would force it to shut down

its business, terminate its employees, and default on its obligations to creditors and distributors); see also Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co., 534 Fed. Appx. 633, 636 (9th Cir. 2013) ("That the present injunction will allegedly drive Sis-Joyce out of business does not weigh in Sis-Joyce's favor where it appears that Sis-Joyce's entire business model is premised on its infringing use of the Arëna mark"); Arminius Schleifmittel GmbH v. Design Indus., Inc., No. 1:06-CIV.-644, 2007 WL 534573 (M.D.N.C. Feb. 15, 2007) (holding that certain defendants are to be "officially closed until the final resolution of this case, without any operations continuing at their facilities" where plaintiff established that defendants succeeded in their business by misappropriating plaintiff's library of individualized customer specifications); Kipling Apparel Corp. v. Boading Baigou Xincheng Younuo Trading Co., Ltd., 1:18-CIV.-8333-ALC, 2019 WL 10960397, at *4 (S.D.N.Y. June 20, 2019) (diversion of customers is irreparable and incalculable, thereby warranting an immediate and permanent stop through injunctive relief).

Further, "the use and disclosure of an employer's confidential customer information and the possibility of loss of customers through such usage, constitutes irreparable harm." See Capstone Logistics Holdings, Inc. v. Navarrete, 2018 WL 6786338, at *33 (S.D.N.Y. Oct. 25, 2018), aff'd in part and remanded in part, 796 Fed. Appx. 55 (2d Cir. Mar. 5, 2020); see also S. Nassau Control Corp. v. Innovative Control Mgmt. Corp., 1996 WL 496610, at * 4 (E.D.N.Y. June 20, 1996) ("The actual or likely use of . . . a former employer's confidential customer information, and the resulting possible loss of customers, constitutes irreparable harm."); DeWitt Stern Grp., Inc. v. Eisenberg, 2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 4, 2013) ("Irreparable harm to an employer results through both the loss of client relationships and customer goodwill … where an employee has misappropriated trade secrets or confidential customer information, including pricing methods, customer lists and customer preferences").

Indeed, appropriately tailored injunctions can be useful to protect plaintiffs from the effects of misappropriated trade secrets by defendants. See, e.g., Faiveley Transp. Mahmo AB v. Wabtec Corp., 559 F .3d 110, 119 (2d Cir. 2009).

In general, the imminent use of a trade-secret constitutes irreparable harm. Id. at 118-19 ("A rebuttable presumption of irreparable harm might be warranted in cases where there is a danger that, unless enjoined, a misappropriator of trade secrets will disseminate those secrets to a wider audience or otherwise irreparably impair the value of those secrets"); see also North Atlantic Instruments, Inc. v. Haber, 188 F.3d 38. 49 (2d Cir. 1999); FMC Corp. v. Taiwain Tainan Giant Indus. Co., Ltd., 730 F.2d 61, 63 (2d Cir. 1984) ("[a] trade secret once lost is, of course, lost forever" and as a result, such a loss "cannot be measured in monetary damages."); Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 174 (S.D.N.Y. 2006) ("Even where a trade secret has not yet been disclosed, irreparable harm may be found … upon a finding that trade secrets will inevitably be disclosed ... ).   In considering irreparable harm, the court should consider whether "providing plaintiff with monetary relief will simply not remedy the loss of competitive advantage plaintiff may lose from the alleged misappropriation of its confidential information." See Panorama Consulting Sols., LLC v. Armitage, 2017 WL 11547493, at *1 (D. Colo. June 9, 2017); NextG Networks of New York, Inc. v. City of New York, 2004 WL 2884308 (S.D.N.Y. Dec. 10, 2004); Singas Famous Pizza Brands Corp., 468 Fed. Appx. at 45 .

Here, Defendants have unquestionably stolen Plaintiffs' confidential information and trade secrets, including its customized dealer management system ("DMS") setup with Tekion, customer information, and the details concerning Plaintiffs' customers' contacts, pricing, and preferences which Defendants have been and continue to utilize to serve Plaintiffs' customers by selling vehicles to them at other dealerships Defendants operate.

7

This continued course of conduct has caused and will cause Plaintiffs irreparable injury as Plaintiffs stands to lose its entire business and customer base that it has spent years building through cultivation of relationships with time, effort, and substantial resources.   In fact, Plaintiffs already lost substantial assets, sums of money, and revenue due to Defendants' massive fraud and theft of its CPI, as Plaintiffs have been unable to properly operate due to Defendants' conduct and Defendants have been able to siphon customers away from Plaintiffs utilizing the information they have stolen from them.  See Mister Softee, Inc. v. Diaz, 2020 U.S. Dist. LEXIS 118979 (E.D.N.Y. July 2, 2020) (irreparable injury established where the plaintiffs alleged that business will be diverted) (citing Salinger v. Colting, 607 F.3d 68, 81 (2d Cir. 2010)).

Injunctive relief is necessary to obtain the return of and prevent the continued unlawful use of Plaintiffs' CPI.  Trade secrets can be any "compilation of information which is used in one's business, and which gives [the owner] the opportunity to obtain an advantage over competitors who do not know or use it." See Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 175 (S.D.N.Y. 2006) (summarizing New York law). The DTSA provides even broader protection:

> ... all forms and types of financial, business, …, technical, [or] economic … information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing ...

See 18 USC § 1839.

Such information is considered a "trade secret" if:

> (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

8

See 18 USC§ 1839(3).[2]

Plaintiffs' CPI includes, among other things, its customized DMS setup with Tekion, operational guides, customer lists, details about customers, methods and procedures of business operations, financial data, customer preferences, and similar data. This is the very information upon which Plaintiffs' entire business is based and certainly constitutes trade secrets under either definition, but unquestionably under the DTSA.

Indeed, this information is the product of a vast amount of time, effort, and resources by Plaintiffs' founder (who has been in the automobile industry for three decades).

It would be and has proven to be highly useful to a competitor such as the Defendants (whose founders have relied on Plaintiffs to source them business know-how, customers, and resources, and now seek to destroy Plaintiffs because they have uncovered their fraud) who have utilized this ill-gotten data and information to cut Plaintiffs out of the business Defendants worked in together with Plaintiffs to build, which Defendants would not be able to but for their illegal conduct.

Defendants' conduct is truly shocking to the conscience. The trade secret information has been and is currently being used by Defendants to lure clients away from Plaintiffs to retain the full profit on the revenue generated without paying Plaintiffs, and to utilize inside information as to the nature and extent of Plaintiffs' operations to prop up their own group of dealerships.

---

[2] A number of other factors also bear on whether information is truly a trade secret, including "(1) the extent to which the information is known outside of the business: (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of information; ( 4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information: and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." See Estee Lauder Cos. v. Batra at 175.

Defendants' unlawful conduct also allows them to use Plaintiffs' proprietary information for their sole benefit, which they achieved through improper means such as misappropriation to obtain information which belongs to Plaintiffs. "[T]he diversion of a company's customers may also constitute irreparable harm." See Scherer Design Group, LLC v. Schwartz, 2018 U.S. Dist. LEXIS 125644 * 23 (D.N.J. July 26, 2018); see also Kipling Apparel Corp, 2019 WL 10960397, at *4 (diversion of customers is irreparable and incalculable, thereby warranting injunctive relief); Gluco Perfect, LLC v. Perfect Gluco Products, Inc., No. 14-CIV.-1678 (KAM) (RER), 2014 WL 4966102, at *16 (E.D.N.Y. Oct. 3, 2014) (same, entering preliminary injunction); Garvin GuyButler Corp. v. Cowen & Co., 155 Misc. 2d 39, 45 (Sup. Ct. N.Y. Cty. 1992) ("The prohibition of defendants to utilize … information … will not prejudice defendants but … shall maintain the status quo"). Here, where Plaintiffs have shown that Defendants have diverted assets, employees, and customers, each to their detriment, irreparable harm has been established.

**B. Plaintiffs Are Likely to Succeed on the Merits of its Claims.**

The Second Circuit has adopted a flexible standard with regard to the "likelihood of success" requirement, allowing a party seeking a preliminary injunction to show either a likelihood of success on the merits or "sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." See Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010). To establish a likelihood of success on the merits, a plaintiff "need not show that success is an absolute certainly. [It] need only make a showing that the probability of his prevailing is better than fifty percent." See Broker Genius, Inc. v. Zalta, 280 F. Supp. 3d 495, 509 (S.D.N.Y. 2017) (citation omitted).

As discussed below, Plaintiffs will likely succeed on the merits of its claims for violation of RICO and the DTSA, misappropriation, unfair competition, tortious interference with business relations & prospective economic advantage, unjust enrichment, breach of contract, conversion, civil conspiracy, and breach of implied covenant of good faith and fair dealing.

**1. Violation of Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1962**

"A violation of § 1962(c) ... requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." See Chevron Corp., 974 F. Supp. 2d at 575. Section 1961(4) defines "enterprise" to "include [ ] ... any union or group of individuals associated in fact although not a legal entity." Id. An enterprise may consist of "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id. A RICO enterprise "is an entity separate and apart from the pattern of activity in which it engages" and must be proved separately. Id. Importantly, an enterprise need not be illegitimate or illegal, and the enterprise itself (or the members of an associated-in-fact enterprise) need not commit any of the racketeering acts at all. Id. Indeed, the enterprise frequently is itself a victim of the racketeering activity perpetrated by its participants. Id.

Here, there exists sufficient evidence that Defendant Anthony Deo masterminded and concocted innumerable schemes through which he was able to extract large sums of money from Superb by wire fraud. The enterprise consists of Deo, his wife, their attorney, accountants, police officers they've hired, and a "financier." Together with their various corporate entities, they worked together to bilk various dealerships out of monies through the use of schemes where Plaintiffs incur liabilities and Defendants make off with the funds.

11

For example, as set forth in Urrutia's declaration: (i) Defendants signed checks without authority to other corporate entities they own; (ii) Defendants incurred loans at Superb without authorization and took the funds loaned for themselves; (iii) Defendants opened a bank account for Superb to steal customer deposits and transfer the funds to themselves; (iv) Defendants misappropriated cash paid by customers by never depositing those funds in Superb's bank account as required and instead taking the cash for themselves; (v) Defendants obtained loans from multiple banks to purchase the same vehicle, which constitutes a violation of the agreement Plaintiffs have with the banks; (vi) Defendants purchased vehicles from an auctioneer under Plaintiffs' account and took the vehicles, leaving Plaintiffs with the bill; (vii) Defendants utilized an accountant to create the illusion that the dealership was running profitably when, in fact, rampant theft was taking place.

The primary act of racketeering in this case is wire fraud. See Id. at 588 ("Donziger engaged in multiple acts that are indictable under the wire fraud statute and that therefore [constitute] acts of racketeering activity"). The wire fraud statute prohibits the use of the wires "for the purpose of executing" a "scheme or artifice to defraud." See 18 U.S.C. §§ 1341, 1343. A "scheme or artifice to defraud" is a plan to deprive a person of something of value by trick, deceit, chicane or overreaching. See Chevron Corp., 974 F. Supp. 2d at 588-89.

Here, the various schemes outlined in the complaint and the Urrutia declaration constitute wire fraud. For example and as set forth above, Deo signed checks on Superb's Chase account without authorization (as his name does not appear on Chase's signature card). As another example, he opened an account under Superb's name with Flushing Bank with the use of forged instruments through which he directed customer deposits and paid himself out of those funds.

Yet another example exists where Deo obtained a loan from NESNA for nearly half-a-million dollars by signing an ACH authorization when he had no authority to do so. As outlined in the complaint and Urrutia's declaration, Deo's conduct was aided and abetted by the remaining Defendants, who knew or should have known he had no authority to engage in any of the transactions discussed here. Worse still, Deo engaged in the same conduct complained of with the Island Auto Group Plaintiffs in this case, as set forth in their December 2022 state court action. See NYSCEF Docket Entry 1. Accordingly, there is no question as to Plaintiffs' likelihood of success in their RICO claims.

### 2. Violation of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836

The DTSA amends the existing federal Economic Espionage Act (the "EEA") (18 U.S.C. § 1831, *et. seq.*) and creates a federal cause of action for the misappropriation of trade secrets used in interstate commerce. It requires plaintiff to establish "an unconsented disclosure or use of a trade secret by one who: (i) used improper means to acquire the secret, or (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." See Free Country Ltd v. Drennen, 235 F.Supp.3d 559, 5 (S.D.N.Y. 2016); see also 18 U.S.C. § 1839(5).

The DTSA's definition of "improper means" includes "misrepresentation, [and] breach or inducement of a breach of a duty to maintain secrecy," but expressly excludes "reverse engineering" and "independent derivation." See 18 U.S. § 1839(6)(A)-(B). "To state a claim for trade secret misappropriation under the DTSA, a plaintiff must plausibly allege that (1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." See Medidata Solutions, Inc. v. Veeva Sys., 2018 U.S. Dist. LEXIS 199763, *8 (S.D.N.Y. Nov. 26, 2018).

13

Under the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" if (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." See 18 U.S.C. § 1839(3).  A defendant misappropriates a trade secret under the DTSA (1) when it acquires a trade secret by improper means, or (2) discloses or uses the trade secret without consent.  See Medidata Solutions, Inc., 2018 U.S. Dist. LEXIS 199763 at 11.  As set forth above, the material misappropriated by Defendants by their calculated, conniving, and systematic actions fall squarely within the scope of the DTSA. See A UA Private Equity Partners, LLC, 2018 WL 2684339, at *7 (holding that complaint plausibly alleges violation of the DTSA as defendant was alleged to have uploaded plaintiffs trade secrets from her work laptop to her personal cloud-based storage without plaintiffs permission); RKL Inc., d/b/o Roll-Krafi v. Grimes, 177 F. Supp. 2d 859, 875-77 (N.D. III. 2001) (finding sufficient evidence of acquisition of theft when employee downloaded or copied trade secrets from work computer to home computer). Each element has been satisfied.

First, Defendants misappropriated Superb's customized DMS setup with Tekion and had Superb employees on Superb's payroll perform work at other dealerships Deo owned (or claimed that he owned) while getting paid only by Superb and not by Deo's other dealerships without authorization.

Second, the information Defendants misappropriated from Plaintiffs is not readily ascertainable.  No one can reverse engineer, or learn by research alone, how to customize the DMS setup for Tekion, Superb's customer list, Superb's business model, or its financial status.

14

Armed with this information, Defendants have decided to compete with Plaintiffs, and could *and did* create a complete and comprehensive threat to Plaintiffs' business far faster than one that has not engaged in unlawful competition arising out of the theft of Plaintiffs' trade secrets.

Third, Plaintiffs vigilantly safeguarded their data by only allowing employees with a fiduciary duty access to that data, maintaining a firewall, password protection, and similar protections. Defendants should not be permitted to exploit and take unfair advantage of Plaintiffs' relationships and goodwill, particularly where those relationships and goodwill were cultivated at Plaintiffs' considerable expense and where Defendants have stolen Plaintiffs' CPI through fraud, theft, and misappropriation. See Capstone Logistics Holdings, Inc., 2020 U.S. Dist. LEXIS 110304 (granting injunctive relief on DTSA claims); see also JTH Tax, Inc. v. Sawhney, 2020 U.S. Dist. LEXIS 217977 (S.D.N.Y. 2020) (same).

Courts routinely grant the relief sought herein in such circumstances. See IME Watchdog, Inc. v. Gelardi, No.: 1:22-CIV.-1032 (PKC) (JRC), 2022 WL 1525486, at *1 (E.D.N.Y. May 13, 2022); see also Plaza Motors of Brooklyn, Inc. v. Bogdasarov, No.: 1:21-CIV.-6545 (KAM), 2021 WL 5630910, at *1 (E.D.N.Y. Dec. 1, 2021).

Therefore, Plaintiffs is likely to succeed on the merits of its DTSA claims.

**3. Misappropriation**

As with the DTSA, Defendants have also misappropriated trade secrets and confidential information under New York law. A "trade secret" under New York law has been defined as "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors which do not know or use it." See Ashland Mgt. v. Janien, 82 N.Y.2d 395 (1993); accord Matter of Verizon NY Inc. v. NY State Pub. Serv. Commn., 46 Misc. 3d 858 (Sup. Ct., Albany County 2014).

In determining whether a trade secret exists, New York courts consider the following factors: (a) the extent to which the information is known outside of the owner's business; (b) the extent to which it is known by employees and others involved in the owner's business; (c) the extent of measures taken by the owner to guard its secrecy; (d) the value of the information to him and to his competitors; (e) the amount of effort or money expended by the owner to develop the information; and (f) the ease or difficulty with which the information could be properly acquired or duplicated by others. See Eagle Comtronics, Inc. v. Pico, Inc., 89 A.D.2d 803 (4th Dept. 1982); Long Is. Conservatory, Ltd. v. Jaisook Jin, 836 N.Y.S.2d 486, 486 (N.Y. Sup. Ct. 2007).

As discussed *supra* under the DTSA analysis, the information to which Defendants obtained access falls squarely within these parameters. See ExpertConnect, L.L.C. v. Fowler, 2019 U.S. Dist. LEXIS 114931, *18 (S.D.N.Y. July 10, 2019) ("The requirements are similar for showing a misappropriation of a trade secret under the DTSA and misappropriation under New York common law… For substantially the same reasons that the Complaint sufficiently pleads a DTSA claim, the Complaint also states a claim for misappropriation of trade secrets ….").

Further, New York courts also have held that an employer may have a protectable interest in confidential information even if it does not rise to the level of a trade secret. See Kelly v. Evolution Mkts., Inc., 626 F. Supp. 2d 364, 373 (S.D.N.Y. 2009) (granting injunctive relief and finding that an employer had a protectable interest in its confidential information); Johnson Controls, Inc. v. A.P.T. Critical Systems, Inc., 323 F. Supp. 2d 525, 537 (S.D.N.Y. 2004) ("even where the information would not otherwise qualify as a trade secret, the unauthorized physical taking and exploitation of internal company documents, including detailed customer information by an employee … is to be enjoined as unfair competition").

16

Plaintiffs' CPI is afforded protection under New York law, and for the same reasons that Plaintiffs will prevail on its claim under DTSA, it will also prevail on its claim for misappropriation of trade secrets and confidential information under New York law. See Testing Servs., N.A. v. Pennisi, 443 F. Supp. 3d 303, 342 (E.D.N.Y. 2020) ("…plaintiff has adequately demonstrated a likelihood of success on the merits of its federal and state law claims for misappropriation of trade secrets against the individual defendants and, therefore, the branch of its motion seeking a preliminary injunction enforcing the confidentiality provisions in the individual defendants' agreements with plaintiff and enjoining them from further misappropriation or dissemination of plaintiff's trade secrets and confidential information is granted.")

**4. Unfair competition**

To establish a New York state law unfair competition claim, a plaintiff must allege (1) "misappropriation of the labors and expenditures of another," that is (2) "likely to cause confusion or to deceive purchasers as to the origin of the goods," and (3) "bad faith."  See Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc., 58 F.3d 27, 34-35 (2d Cir. 1995).

Here, Plaintiffs easily establish a likelihood of success on the merits because, as set forth in the Declaration of Urrutia, among other things, Defendants failed to pay off vehicles for customers with trade-ins, saddled Plaintiffs with millions in dollars of debt due to their fraudulent conduct such that they are unable to properly operate and serve customers, and have stolen those customers to sell at a competing group of dealerships they formed.

Plaintiffs' confidential information and proprietary trade secrets were misappropriated by the Defendants to unfairly compete against Plaintiff.  Further, Defendants have directly diverted Plaintiffs' employees while they were on Superb's payroll, further depriving Superb of corporate opportunities.

17

Finally, Defendants' bad faith is self-evident because they engaged in illegal and improper means – i.e., wire fraud, the use of forged instruments, and falsified documents – to obtain the confidential information and trade secrets of Plaintiff.

Accordingly, Plaintiffs are likely to prevail on their unfair competition claim.  See Ecolab, Inc. v. Paolo, 753 F Supp 1100, 1111 (E.D.N.Y. 1991) (granting former employer injunctive relief on its unfair competition claim).

### 5. Tortious interference with business relations & prospective economic advantage

Plaintiffs will also prevail on their tortious interference claims.  To state a claim for tortious interference with contract under New York law, one must allege:

(1) "the existence of a valid contract between the plaintiff and a third party";

(2) the "defendant's knowledge of the contract";

(3) the "defendant's intentional procurement of the third-party's breach of the contract without justification";

(4) "actual breach of the contract"; and

(5) damages.

See Kirch v. Liberty Media Corp., 449 F.3d 388, 401-02 (2d Cir.2006) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413 (1996)).   In addition, the plaintiff must assert, with respect to each defendant, that the defendant'' actions were the "but for" cause of the alleged breach—in other words, that there would not have been a breach but for the activities of the defendant. See Sharma v. Skaarup Ship Mgmt. Corp., 916 F.2d 820, 828 (2d Cir. 1990).  "[T]he law requires some factual specificity in pleading tortious interference." See World Wide Commc'ns, Inc. v. Rozar, No. 96-CIV.-1056 (MBM), 1997 WL 795750, at *7 (S.D.N.Y. Dec. 30, 1997) (citation omitted).

Separately, "[u]nder New York law, a plaintiff claiming tortious interference with prospective business relations[3] must show (1) 'the defendant's interference with business relations existing between the plaintiff and a third party,' (2) 'either with the sole purpose of harming the plaintiff or by means that are dishonest, unfair, or in any other way improper.'" See IQ Dental Supply, Inc. v. Henry Schein, Inc., 924 F.3d 57, 69 (2d Cir. 2019) (quotation omitted). "To satisfy the first prong, 'the defendant must direct some activities towards the third party and convince the third party not to enter into a business relationship with the plaintiff.'" Id. (quoting B & M Linen, Corp. v. Kannegiesser, USA, Corp., 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010).

"[W]here 'the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct.'" Id. (quoting [IQ Dental Supply, Inc., 924 F.3d at 69] (quotation omitted)). To satisfy the "wrongful means" element of the second prong, a plaintiff must show "'as a general rule,' that 'the defendant's conduct ... amount[ed] to a crime or an independent tort[.]'" See 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 262 (2d Cir. 2015) (quoting Carvel Corp. v. Noonan, 3 N.Y.3d 182, 190 (2004)).

Here, as set forth in the complaint and the sworn declarations in support of this motion, Plaintiffs will easily prevail on their tortious interference claims.

Plaintiffs worked to build a substantial customer base for years. Their founder has been in the automobile industry for decades, and safeguarded the customer and operational information as set forth above.

---

[3] "'[T]ortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action.'" See Popat v. Levy, 328 F. Supp. 3d 106, 131 n.5 (W.D.N.Y. 2018) (quotation and other citation omitted). "[N]o matter the term used, the elements are the same." See Katz v. Travelers, 241 F. Supp. 3d 397, 404 (E.D.N.Y. 2017), reconsideration denied, No. 16-CIV.-4389 (ADS) (SIL), 2017 WL 4180012 (E.D.N.Y. Sept. 20, 2017).

Defendants decided it is more profitable to steal Plaintiffs' CPI than continue to pay Plaintiffs, and thus acted to cut Plaintiffs out of their business.  Defendants were  aware of the existence of Plaintiffs' contracts with their customers, banks, vendors, and employees, and interfered with these relationships for their benefit and to Plaintiffs' detriment.  Defendants did so, as set forth in the complaint and accompanying declaration, by engaging in wire fraud, the use of forged instruments, and falsified documentation to succeed in their endeavors.

Without the information they learned from Plaintiffs' founder and their blatant theft and misappropriation, Defendants would not have the ability to hurt the Plaintiffs the way they have to force them out of their business.  Defendants engaged in fraud and theft to achieve their goals, and then utilized the stolen information for their benefit to the detriment of Plaintiffs, thereby satisfying the "wrongful means" element.  Defendants thus intentionally violated the law by misappropriating Plaintiffs' confidential information and trade secrets to prevent Plaintiffs from being able to successfully operate.  As such, Plaintiffs have demonstrated a likelihood of success on the merits on their claim for tortious interference.

### 6. Conversion

Plaintiffs will similarly prevail on its conversion claim.  In New York, "conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." See Colavito v. New York Organ Donor Network, Inc., 8 N.Y.3d 43, 49–50 (2006); see also State of New York v. Seventh Regiment Fund, 98 N.Y.2d 249, 259 (2002).   The two elements of conversion are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." See Colavito, 8 N.Y.3d at 50 (citation omitted).

Here, there is no question that Defendants have obtained Plaintiffs' CPI, vehicles, and dealer plates, and have kept them despite due demand for same.  Thus, because Plaintiffs have adequately shown that they have a possessory right and interest in their CPI, and that Defendants obtained the CPI in derogation of Plaintiffs' rights to maintain the confidentiality thereof, Plaintiffs will succeed on their conversion claim.

**7. Civil Conspiracy**

Plaintiffs will also prevail on their civil conspiracy claim.

Although "New York does not recognize civil conspiracy to commit a tort . . . as an independent cause of action" … "a plaintiff may plead the existence of a conspiracy in order to connect the actions of the individual defendants with an actionable, underlying tort and establish that those actions were part of a common scheme." See Levin v. Kitsis, 82 A.D.3d 1051, 1052 (2d Dept 2011).

Here, as set forth above, Plaintiffs have adequately pled that Defendants committed various torts – i.e., misappropriation, unfair competition, tortious interference, and conversion – as part of their common scheme to defraud Plaintiffs and steal their assets.

As such, Plaintiffs are likely to succeed on this claim, as they are likely to succeed on all of their claims against Defendants.

**C.** **The Balance of Hardships Tips Considerably In Plaintiffs' Favor.**

Plaintiffs' legitimate interest in protecting against Defendants' exploitation of their CPI and their long-standing relationships and goodwill with their banks, vendors, customers, and employees certainly outweighs Defendants' minimal interest in misappropriating the CPI so that they can cut Plaintiffs out of their dealerships, or do business at all, given that Defendants have engaged in such heinous conduct.

As discussed *supra*, Plaintiffs have created and cultivated the relationships and goodwill with their customer base and the banks that they work with through their own efforts and with considerable expense, let alone the significant expenditures they undertook to raise their brand awareness.   Thus, it would be patently unfair to allow Defendants to violate the law in order to exploit and misappropriate Plaintiffs' relationships and goodwill with their customer base by using their CPI to solicit its customers and employees.

On the other hand, granting the relief sought and precluding Defendants from using Plaintiffs' CPI would merely foreclose Defendants from continuing to unlawfully and unfairly compete against Plaintiffs.

Thus, while Plaintiffs stands to lose significant valuable relationships and goodwill – not to mention their entire business – that was obtained through their own painstaking efforts, Defendants merely stand to lose the ability to continue operate a business Defendants have essentially stolen from Plaintiffs.

As such, any harm suffered by Defendants should the injunction be granted will be minimal at best; instead, the injunction will merely require Defendants to source customers by other means rather than continue violating the law with impunity.

Thus, any harm suffered by Defendants is "self-inflicted" by virtue of their decision to engage in theft of trade secrets.

**D.** **Granting an Injunction Would Not Harm The Public Interest.**

Before ordering injunctive relief, the Court should also "ensure that the injunction does not cause harm to the public interest."  See SEC v. Citigroup Global Markets, Inc., 673 F.3d 158, 163 n.1 (2d Cir. 2012)).  There is no reason to believe that the relief sought would cause injury to the public.

The protection of Plaintiffs' CPI does not, and will not, stifle market competition, cause any dislocation in the market, or impinge on the availability of automobiles. Indeed, the general public remains free to purchase vehicles from many other competitors selling automobiles.

The public interest is best served in this instance by the enforcement of the law and the cessation of Defendants from misappropriating Plaintiffs' CPI in an effort to cause Plaintiffs harm; after all, if they are capable of stealing from Plaintiffs, what would stop them from inflicting damage upon anyone else, including their own customers. See Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 897 (2d Cir. 2015).

Thus, like the remaining factors, this factor favors injunctive relief in favor of Plaintiffs.

## CONCLUSION

Plaintiffs have demonstrated a likelihood of success on the merits of its claims against Defendants and that without an award of injunctive relief under Rule 65, RICO, and the DTSA, they would suffer immediate and irreparable harm.

Plaintiffs have no adequate remedy at law and are therefore entitled to a preliminary injunction prohibiting Defendants from using Plaintiffs' CPI, servicing Plaintiffs' customers, and shutting down Plaintiffs during the pendency of this action.

For these reasons and the reasons set forth herein, Plaintiffs respectfully request that this Court grant their Order to Show Cause for Preliminary Injunction and Temporary Restraining Order and issue further relief as is just, equitable, and proper.

Dated: Lake Success, New York
      August 20, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____

Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

24