# **CROSS-PURCHASE AGREEMENT**

THIS CROSS-PURCHASE AGREEMENT ("Agreement") made as the \_1st day of _December_, 2022, by and between ROBERT A. URRUTIA, having an address at 327 Lakewood Terrace, Newton, NJ 07860 ("Robert"), and ANTHONY DEO, residing at _3 Saddle Ridge Rd Old Westbury 11568_ ("Anthony").

WITNESSETH:

WHEREAS, Robert is the owner of __100__ shares of stock representing one hundred percent (100%) of the outstanding stock (the "Superb Shares") in Superb Motors, Inc. a New York Corporation ("Superb"); and

WHEREAS, Anthony is the owner of __100__ units representing one hundred percent (100%) of the outstanding membership interests in Northshore Motor Leasing LLC, (the "Northshore Units") a New York limited liability company ("Northshore"); and

WHEREAS, Anthony is the owner of __100__ units representing one hundred percent (100%) of the outstanding membership interests in 189 Sunrise Hwy Auto LLC (the "Sunrise Units"), a New York limited liability company ("Sunrise" and collectively with Superb and Northshore, the "Companies"); and

WHEREAS, Anthony and Robert have agreed that Anthony shall receive a forty-nine percent interest in Superb in exchange for: (a) FIVE HUNDRED THOUSAND DOLLARS ($500,000.00); (b) twenty-five percent of the total membership interests in Northshore; and, (c) twenty-five percent of the total membership interests in Sunrise in the manner hereinafter set forth; and

NOW, THEREFORE, for consideration, the receipt and sufficiency of which is acknowledged, and the mutual promises set forth herein, and intending to be legally bound hereby, the parties do hereby agree as follows:

1. The Cross-Purchase of Stock and Units: The parties hereto agree as follows:

    a) Robert shall transfer to Anthony __49%__ shares of Superb stock currently owned by Robert (the "Superb Transferred Shares"); and

    b) Anthony shall transfer to Robert __25%__ units of Northshore currently owned by Anthony (the "Northshore Transferred Units"); and

    c) Anthony shall transfer to Robert __25%__ units of Sunrise currently owned by Anthony (the "Sunrise Transferred Units"); and

d) Anthony shall pay to Robert the sum of Five Hundred Thousand Dollars ($500,000.00).

2. **Robert's Representations as to Superb:** Robert represents and warrants to Anthony as follows:

i. Robert is the sole shareholder of the Superb Shares, and owns same free and clear of all liens and encumbrances.

ii. Robert has full power and legal right to transfer and deliver the Superb Transferred Shares to Anthony in accordance with the terms of this Agreement, and otherwise to execute and deliver this Agreement and to consummate and close the transactions provided for in this Agreement in the manner and upon the terms herein specified, and this Agreement and the transactions contemplated hereby will not result in the violation of any other agreement to which Robert is a party or by which Robert is bound or, to the best of Robert's knowledge, any agreement to which Superb is a party or by which Superb is bound.

iii. This Agreement has been duly executed and delivered by Robert and, assuming due authorization, execution and delivery by Anthony, constitutes a legal, valid and binding obligation of Robert, enforceable against Robert in accordance with its terms, subject, as to validity, binding effect and enforcement remedies, to applicable bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally, and to equitable principles.

iv. Neither the execution and delivery of this Agreement by Robert nor the consummation of the transactions contemplated herein will conflict with or violate any law, rule or regulation, judgment or order applicable to Robert or, to the best of Robert's knowledge, applicable to Superb.

v. No representation or warranty by Robert contained in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make it not misleading.

vi. There is not pending, nor to Robert's knowledge is there threatened, any suit, action, bankruptcy or administrative proceeding, or arbitration or other proceeding, which could adversely affect the ability of Robert to perform any of Robert's obligations under this Agreement, including Robert's obligation to convey the Superb Shares free and clear of all liens and encumbrances.

vii. To the best of Robert's knowledge, Robert is not required to submit any notice to, or report or other filing with, or obtain any consent, approval or waiver from, any governmental or regulatory authority or instrumentality in connection with the execution, delivery or performance of this Agreement and the consummation of the transactions contemplated herein.

3.      Anthony's Representations as to Northshore:   Anthony represents and warrants to Robert as follows:

i.      Anthony is the sole owner of the Northshore Units, and owns free and clear of all liens and encumbrances.

ii.     Anthony has full power and legal right to transfer and deliver the Northshore Transferred Units to Robert in accordance with the terms of this Agreement, and otherwise to execute and deliver this Agreement and to consummate and close the transactions provided for in this Agreement in the manner and upon the terms herein specified, and this Agreement and the transactions contemplated hereby will not result in the violation of any other agreement to which Anthony is a party or by which Anthony is bound or, to the best of Anthony's knowledge, any agreement to which Northshore is a party or by which Northshore is bound.

iii.    This Agreement has been duly executed and delivered by Anthony and, assuming due authorization, execution and delivery by Robert, constitutes a legal, valid and binding obligation of Anthony, enforceable against Anthony in accordance with its terms, subject, as to validity, binding effect and enforcement remedies, to applicable bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally, and to equitable principles.

iv.     Neither the execution and delivery of this Agreement by Anthony nor the consummation of the transactions contemplated herein will conflict with or violate any law, rule or regulation, judgment or order applicable to Anthony or, to the best of Robert's knowledge, applicable to Northshore.

v.      No representation or warranty by Anthony contained in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make it not misleading.

vi.     There is not pending, nor to Anthony's knowledge is there threatened, any suit, action, bankruptcy or administrative proceeding, or arbitration or other proceeding, which could adversely affect the ability of Anthony to perform any of Anthony's obligations under this Agreement, including Anthony's obligation to convey the Northshore Units free and clear of all liens and encumbrances.

vii.    To the best of Anthony's knowledge, Anthony is not required to submit any notice to, or report or other filing with, or obtain any consent, approval or waiver from, any governmental or regulatory authority or instrumentality in connection with the execution, delivery or performance of this Agreement and the consummation of the transactions contemplated herein.

4.      Anthony's Representations as to Sunrise:   Anthony represents and warrants to Robert as follows:

i. Anthony is the sole owner of the Sunrise Units, and owns same free and clear of all liens and encumbrances.

ii. Anthony has full power and legal right to transfer and deliver the Sunrise Transferred Units to Robert in accordance with the terms of this Agreement, and otherwise to execute and deliver this Agreement and to consummate and close the transactions provided for in this Agreement in the manner and upon the terms herein specified, and this Agreement and the transactions contemplated hereby will not result in the violation of any other agreement to which Anthony is a party or by which Anthony is bound or, to the best of Anthony's knowledge, any agreement to which Sunrise is a party or by which Sunrise is bound.

iii. This Agreement has been duly executed and delivered by Anthony and, assuming due authorization, execution and delivery by Robert, constitutes a legal, valid and binding obligation of Anthony, enforceable against Anthony in accordance with its terms, subject, as to validity, binding effect and enforcement remedies, to applicable bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally, and to equitable principles.

iv. Neither the execution and delivery of this Agreement by Anthony nor the consummation of the transactions contemplated herein will conflict with or violate any law, rule or regulation, judgment or order applicable to Anthony or, to the best of Robert's knowledge, applicable to Sunrise.

v. No representation or warranty by Anthony contained in this Agreement contains any untrue statement of a material fact or omits to state a material fact necessary to make it not misleading.

vi. There is not pending, nor to Anthony's knowledge is there threatened, any suit, action, bankruptcy or administrative proceeding, or arbitration or other proceeding, which could adversely affect the ability of Anthony to perform any of Anthony's obligations under this Agreement, including Anthony's obligation to convey the Sunrise Units free and clear of all liens and encumbrances.

vii. To the best of Anthony's knowledge, Anthony is not required to submit any notice to, or report or other filing with, or obtain any consent, approval or waiver from, any governmental or regulatory authority or instrumentality in connection with the execution, delivery or performance of this Agreement and the consummation of the transactions contemplated herein.

5. Mutual Representations of the Parties: Robert and Anthony each represent and warrant to one and other as follows:

i. Each has the full power and legal right to accept, as applicable, the Superb Transferred Shares, the Northshore Transferred Units and the Sunrise Transferred Units (collectively the

Cross Purchased Interests") the Cross-Purchased Interests in accordance with the terms of this Agreement, and otherwise to execute and deliver this Agreement and to consummate and close the transactions provided for in this Agreement in the manner and upon the terms herein specified, and this Agreement and the transactions contemplated hereby will not result in the violation of any other agreement to which either Anthony or Robert is a party or by which either party is bound.

ii.    This Agreement has been duly executed and delivered by both parties and, assuming due authorization, execution and delivery by each of the other parties hereto, constitutes a legal, valid and binding obligation of both parties, enforceable against either party in accordance with its terms, subject, as to validity, binding effect and enforcement remedies, to applicable bankruptcy, insolvency, reorganization and other laws affecting creditors' rights generally, and to equitable principles.

iii.    Neither the execution and delivery of this Agreement by either party nor the consummation of the transactions contemplated herein will conflict with or violate any law, rule or regulation, judgment or order applicable to either party.

iv.    No representation or warranty by either party contained in this Agreement contains any untrue statement of a material fact or omits to state a material fact.

v.    There is not pending, nor to either party's knowledge is there threatened, any suit, action or administrative, arbitration or other proceedings which could adversely affect the ability of either party to perform any of its obligations under this Agreement.

vi.    The parties are satisfied with their due diligence and have been given the opportunity to review the books, records and business of the Companies, including, but not limited to, all financial, environmental, franchise, real and personal property lease information, and any and all information, reports, tax returns, financial statements, and otherwise related to the Companies.

vii.    Each party is entering into this transaction without any representations or warranties regarding the Companies except as specifically provided herein.

6.    Survival of Representations:    The representations made by the parties in Sections 3, 4 and 5 shall survive the consummation of this Agreement.

7.    Closing:    On the closing date the parties agree to complete any and all documentation necessary to formally transfer the Cross Purchased Interests within the records of the Companies.

8.    Indemnification.

Anthony, Northshore and Sunrise, jointly and severally, covenant and agree to indemnify and hold Robert harmless from and against any and all claims, lawsuits, debts, obligations, and liabilities of Northshore and/or Sunrise whether accrued, absolute, contingent, or otherwise, attributable to Northshore and/or Sunrise or their operation before the date of closing, whether or not reflected on the books or records of Northshore and/or Sunrise.  Said indemnification includes, without limitation, any and all tax liabilities of Northshore and/or Sunrise, whether or not presently assessed, including, without limitation, interest and penalties.  Anthony, Northshore and Sunrise, jointly and severally, covenant and agree to indemnify and hold Robert harmless from and against any claims, lawsuits, liabilities, obligations, damages, and costs and expenses (including reasonable attorneys' fees and costs of enforcing this indemnification) of litigation suffered or incurred by Robert or arising out of, as a result of, or with respect to the breach of any and all representations, covenants, obligations or warranties by Anthony under this Agreement.  Anthony, Northshore and Sunrise further covenant and agree, jointly and severally, to reimburse Robert for any and all attorneys' fees, accountants' fees, and costs incurred in defending or otherwise opposing said liabilities and obligations.  Anthony, Northshore and Sunrise shall promptly notify Robert of the pendency of any action, judicial, administrative, or otherwise, the outcome of which may trigger the application of the provisions hereof.

Robert and Superb, jointly and severally, covenant and agree to indemnify and hold Anthony harmless from and against any and all claims, lawsuits, debts, obligations, and liabilities of Superb whether accrued, absolute, contingent, or otherwise, attributable to Superb or its operation before the date of closing, whether or not reflected on the books or records of Superb.  Said indemnification includes, without limitation, any and all tax liabilities of Superb, whether or not presently assessed, including, without limitation, interest and penalties.  Robert and Superb, jointly and severally, covenant and agree to indemnify and hold Anthony harmless from and against any claims, lawsuits, liabilities, obligations, damages, and costs and expenses (including reasonable attorneys' fees and costs of enforcing this indemnification) of litigation suffered or incurred by Anthony or arising out of, as a result of, or with respect to the breach of any and all representations, covenants, obligations or warranties by Robert under this Agreement.  Robert and Superb further covenant and agree, jointly and severally, to reimburse Anthony for any and all attorneys' fees, accountants' fees, and costs incurred in defending or otherwise opposing said liabilities and obligations.  Robert and Superb shall promptly notify Anthony of the pendency of any action, judicial, administrative, or otherwise, the outcome of which may trigger the application of the provisions hereof.

The respective indemnified parties hereunder shall be entitled to reasonable attorneys' fees and costs incurred with respect to a claim or obligation within the scope of the respective indemnifications.  To be entitled to indemnification hereunder, the party seeking to be indemnified shall notify the other in writing of the pendency of the claim or obligation, and the other party shall have a reasonable period of time (not to exceed sixty (60) days) to cure or otherwise resolve the subject claims or obligations.

The indemnification provisions as provided herein shall survive the closing of title hereunder.

9. Post-Closing Cooperation: At any time and from time to time from, and after this Closing, each of the parties hereto will, at the request of any other party hereto, execute, acknowledge and deliver, such instruments and other documents, and perform or cause to be performed such acts, as may reasonably be required to evidence or effectuate the transfer of the Cross-Purchased Interests to the other or for the performance by Robert or Anthony of any of their other respective obligations under this Agreement.

10. Notices: All notices and other communications to be made hereunder shall be in writing and shall be deemed to have been given when the same are either (i) personally delivered or mailed, registered or certified mail, first class postage prepaid return receipt required, or (ii) delivered by a nationally recognized overnight courier service providing a written receipt or other written proof of delivery to the applicable party at the addresses set forth above. The substance of any such notice shall be deemed fully acknowledged in the event of any refusal of acceptance by the party to whom the notice is addressed.

11. Severability: In the event any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect other provisions hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision never had been contained herein.

12. Governing Law: This Agreement shall be construed in accordance with the laws of the State of New York without giving effect to the conflict of law principles thereof.

13. Assignment: This Agreement is not assignable by either party and any attempt to do so shall be null, void and of no effect and shall cause this Agreement to be terminated.

14. Successors and Assigns: Should either party become disabled or deceased prior to the consummation of the transactions contemplated by this Agreement, the successors and assigns of that party shall have no rights hereunder, and this Agreement shall be null, void and of no further effect.

15. Consent to Jurisdiction: The parties hereto agree that the Supreme Court of the State of New York, Nassau County, shall have exclusive jurisdiction to hear and determine any claims or disputes pertaining directly or indirectly to this Agreement. The parties expressly and irrevocably submit and consent in advance to such jurisdiction in any action or proceeding, hereby waiving personal service of the summons and complaint or other process, and agree that service of such summons and complaint, or other process or paper shall be made inside or outside the State of New York by conforming to the notice provisions set forth in Section 10 hereof, or in such other manner as may be permitted under the Rules of said Courts.

16. Counterparts: This Agreement may be executed in several counterparts, which together are to be deemed one and the same instrument.

17. **Entire Agreement:** This Agreement contains the entire understanding and agreement of the parties hereto with respect to the matters contained herein, and may not be amended or supplemented at any time unless by a writing executed by each of the said parties.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties hereto have executed this Cross Purchase Agreement as of the day and year first above written.

WITNESS:

*/s/ Robert Urrutia*
Robert Urrutia

WITNESS:

*/s/ Anthony Deo*
Anthony Deo