```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
```
SUPERB MOTORS INC., et al.

                Plaintiffs,              **MEMORANDUM & ORDER ON**
                                                                     **TEMPORARY RESTRAINING ORDER**
       v.                                            2:23-cv-6188 (OEM) (ST)

ANTHONY DEO, et al.,

                Defendants.
```
--------------------------------------------------------x
```
**ORELIA E. MERCHANT, United States District Judge:**

      Certain plaintiffs in this action, Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia ("Urrutia"), the owner of Superb and Team, (collectively the "Superb Plaintiffs") seek both a temporary restraining order ("TRO") and a preliminary injunction against Anthony Deo ("Deo"), derivative corporate defendants, and other individuals named in this action (collectively referred to in this motion as "Defendants")[1] demanding that they take and be prohibited from taking certain actions in connection with Superb's auto dealership business. *See* ECF 9 ("TRO").[2] For the reasons that follow, the TRO is **DENIED in part** and **GRANTED in part.**

---

[1] The term "Defendants" for this motion only include Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Meckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp. "No injunctive relief is currently sought against Defendants Flushing Bank and Libertas Funding LLC" which are named in the caption in the complaint and accordingly any injunctive relief does not apply to them. ECF 12 ("Kataev Decl.") ¶ 8. Additionally, as discussed further below and in note 6, *infra*, defendants Thomas Jones, CPA, DLA Capital Partners Inc., and Jones, Little & Co., CPA'S LLP, who are also named in the caption of the complaint, are excluded from the term "Defendants" for the purposes of this motion only.

[2] Specifically, Superb Plaintiffs demand that a TRO be issued:

    (a) preliminarily enjoining Defendants and any persons acting in concert with or on behalf of Defendants, from using in any manner whatsoever Superb Motor Inc.'s ("Superb") trade secret and confidential and proprietary information (including, without limitation, Superb's customized dealership management system ("DMS") setup, customer database, including the identity and contact information of Superb's customers, or any other information regarding Superb's customers, clients, transactions, financial information, pricing information, or other matters involving Superb);

## BACKGROUND

This action was filed on August 17, 2023. ECF 1 (Complaint). The underlying dispute involves a joint business partnership between Urrutia and Deo and their respective auto dealerships that has gone sour with allegations of fraud and the stealing of trade secrets. This is not the first time the Defendants have faced allegations of misconduct in the operation of auto dealerships. Other plaintiffs named in this action, namely Joshua Aaronson and Michael Charbier and their derivative dealership companies (together, the "Aaronson Plaintiffs")[3] are also plaintiffs in an earlier filed (and ongoing) state court lawsuit in Nassau County (the "Nassau Action") alleging

---

(b) directing Defendants to return to Superb and Team Auto all vehicles and dealer plates in Defendants' possession or misappropriated by others in concert with Defendants;
(c) directing Defendants to return to Superb all originals and copies of documents, records, and information, whether in hard copy and/or computerized and/or other electronic media form, that contain Superb's trade secrets and confidential and proprietary information (including, without limitation, Superb's customer database, including the identity and contact information of Superb's customers, and for each customer of Superb, the services offered and payments received from Superb's customers, and/or other matters involving Superb and which Defendants obtained or accessed, including without limitation information regarding Superb's customers, clients, transactions, financial information, pricing information, or other sensitive information involving Superb);
(d) restraining and enjoining Defendants from, directly or indirectly, having any contact with Superb's current and/or former employees;
(e) directing Defendants to make all electronic accounts that are in their custody or control and on which they stored information regarding Superb's trade secrets and confidential or proprietary information available and accessible to Superb (including providing relevant passwords) to inspect
to ensure Superb's trade secrets and confidential and proprietary information is secure and has not been improperly copied or distributed;
(f) preliminarily enjoining Defendants from continuing to serve Superb's customers;
(g) preliminarily enjoining Defendants from contacting any of Superb's clients or customers and/or individuals currently performing services for Superb;
(h) preliminarily enjoining Defendants from contacting any of Superb's current or former employees to solicit them to leave the employment of Superb;
(i) preliminarily enjoining Defendants from operating any businesses in the automotive industry, and
(j) restraining and enjoining Defendants from, directly or indirectly, further violations of the Defendant Trade Secrets Act, including the use of confidential information or trade secrets of Superb, and unfairly competing with Plaintiffs in any manner;

*Id.*

[3] 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, individually and derivatively as a member of Northshore Motor Leasing, LLC, Joshua Aaronson, individually and derivatively as a member of 189 Sunrise Hwy Auto, LLC, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC.

similar misconduct against Deo Defendants.[4]  In the Nassau Action, the Aaronson Plaintiffs also sought similar, but not entirely overlapping, injunctive relief from Deo, which the state court judge denied on June 15, 2023.[5]  *See* ECF 13-1 ("State Court Decision").  Now, the Superb Plaintiffs (who were not parties in the Nassau Action) have brought suit against the Defendants in this Court alleging that Defendants engaged in various frauds and schemes to both pocket proceeds from Superb Plaintiffs' car sales in violation of the Civil RICO statute as well as using Superb and Urrutia's trade secrets in the car sales market to compete against Superb Plaintiffs at dealerships owned by Defendants.  *See* Compl. ¶¶ 1-7, 176-219, 264-328, 334-60; ECF 11 ("Urrutia Decl.") ¶¶ 99-201.

On August 20, 2023, Superb Plaintiffs filed the instant TRO motion; a memorandum of law, ECF 10 ("Plaintiffs' TRO Memo"); and a declaration sworn by Urrutia, in support of the motion, ECF 11 ("Urrutia Decl."), along with various appended exhibits. ECF 11-1 through 11-19 (Urrutia Decl., Exhibits A-S).  Superb Plaintiffs also submitted a declaration from its counsel, Emanuel Kataev, averring that he provided notice of the TRO motion via email to Defendants pursuant to Fed. R. Civ. P. 65.  ECF 12 ("Kataev Decl.") ¶ 7.

On August 21, 2023, defense counsel for Defendants, Harry R. Thomasson, Esq. (who is also a named defendant in this action), filed a letter with the Court, ECF 13 ("Thomasson's Letter"), requesting, *inter alia*, an extension of time to answer the TRO due to a family member's illness.  *Id.* at 2.  Thomasson's Letter indicates he is aware of the TRO sought against his clients[6]

---

[4] That action is *Chabrier et al. v. Anthony Deo et al.*, Index No. 617224/2022 (Nassau Cty. Sup. Ct. 2022).
[5] *Toiny LLC v. Gill*, No. 18-CV-40 (NGG) (VMS), 2022 WL 4118520, at *2 (E.D.N.Y. Sept. 9, 2022) ("A court may take judicial notice of the status of other lawsuits in other courts and the substance of court filings.").

[6] Specifically, Thomasson claims as his clients only: "Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp." Thomasson Letter at 1.  Thus, the Court construes any mention of his "clients" to include all of the foregoing defendants.  To be clear, Thomasson does not purport to

3

(and nominally him as well); he is not returning to work until September 5, 2023; and he intends to enter an appearance and respond in a "timely fashion" after his return to work. *Id*. Additionally, Thomasson's Letter "asks/suggests" to the Court that "[his] client[s] will not dispose of any automobiles in [their] possession" and that restraints are not necessary or appropriate for the accountants, lenders, counsel and defendants without privity. *Id.* Superb Plaintiffs responded the same day via letter, ECF 14, opposing the request and appending two demand letters from Nissan "floor plan" financers, *see* ECF 14-1, 14-2 (together, "Nissan Demand Letters"), as support for the argument that "irreparable injury will inure to the Moving Plaintiffs' detriment barring prompt intervention."[7] ECF 14 at 2.

## **LEGAL STANDARD**

The purpose of a temporary restraining order is to "preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (citing *Pan Am. World Airways, Inc. v. Flight Engineers' Int'l Ass'n, PAA Chapter, AFL-CIO*, 306 F.2d 840, 843 (2d Cir. 1962)). "The standard for an entry of a TRO is essentially the same as for a preliminary injunction." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (citing *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008)).

A plaintiff seeking a temporary restraining order is required to show "(1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Cnty. of Nassau, N.Y. v. Leavitt*,

---

represent or otherwise bind the following named defendants: DLA Capital Partners Inc., Jones, Little & Co., CPA LLP, Flushing Bank, and Libertas Funding LLC.
[7] That day, the case was reassigned to the undersigned.

4

524 F.3d 408, 414 (2d Cir. 2008). "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks omitted). The "court must [also] consider the balance of hardships between the plaintiff and defendant and issue the injunction only if the balance of hardships tips in the plaintiff's favor" and "must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010) (internal citations and quotations omitted). Additionally, under Rule 65(b)(1)(B), "the movant's attorney [must] certif[y] in writing any efforts made to give notice" to Defendants. Fed. R. Civ. P. 65(b)(1)(B). A TRO, perhaps even more so than a preliminary injunction, is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 Fed. App'x. 31, 33 (2d Cir. 2015) (quoting *Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007)). *Accord Drennen*, 235 F. Supp. 3d at 565.

## DISCUSSION

"To satisfy the irreparable harm requirement, plaintiffs must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114 (2d Cir.2005). "[T]o show irreparable harm, the moving party must establish that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *IME Watchdog, Inc. v. Gelardi*, No. 22-CV-1032 (PKC) (JRC), 2022 WL 1525486, at *6 (E.D.N.Y. May 13, 2022), *reconsideration denied*, No. 22-CV-1032 (PKC) (JRC), 2022 WL 2316137 (E.D.N.Y. June 28, 2022). Furthermore, "[w]here there is an adequate

remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consolidated Edison Co. of New York, Inc.*, 409 F.3d 506 (2d Cir.2005).

Superb Plaintiffs channel diffuse allegations and theories of misconduct into two primary arguments that it faces irreparable harm warranting the extraordinary remedy of a TRO.

Superb Plaintiffs' first argument is as follows. Working on the assumption that Deo has "misappropriated" and "absconded" and is now in custody and possession of the subject cars at issue, Superb Plaintiffs contend it is "at imminent risk of having to pay for the vehicles without the benefit of having sold them." Superb Plaintiffs' TRO Memo at 5; Urrutia Decl. ¶¶ 191-94. Further, Superb Plaintiffs assert that the Nissan "floor plan lenders have issued demands for repayment if the vehicles cannot be returned to the dealership and irreparable injury will inure to the Moving Plaintiffs' detriment barring prompt intervention." *See* Superb Plaintiffs' Letter dated August 21, 2022. Even assuming that Superb Plaintiffs had demonstrated a likelihood of success of the merits on these claims, it nonetheless fails to demonstrate the essential element of irreparable harm for two reasons. First, such allegations clearly implicate pocketbook injuries which are compensable at law either in this suit or in another action for seeking contribution from Defendants. *See IME Watchdog, Inc*, 2022 WL 1525486, at *6 (money damages providing adequate compensation do not allow for a TRO). Second, Superb Plaintiffs' own documentation and allegations do not establish that such a harm is either continuing or actual and imminent. *Freedom Holdings*, 408 F.3d at 114. While at least the Nissan floor plan financers have propounded demands for payment from Superb Plaintiffs, the Nissan Demand Letters both also state that: "If the Obligors [*i.e.*, Superb] fail to pay the Amount Demanded by the date and time stated above, NMAC *may, in its discretion*, exercise any and all of its other rights and

6

remedies against the Obligors arising after an event of default, as provided by the Wholesale Agreement, Loan Documents and other financing agreements between NMAC and the Obligors and by applicable law." Nissan Demand Letters at 2 (emphasis added). While Superb Plaintiffs raise reasonable concerns that having to repay the loans "would require [them] to shut down operations at all [their] dealerships, and force [them] to lay off 125 employees," Urrutia Decl. ¶ 194, there is no other allegation in the complaint or evidence in the current record that such harms are "actual and imminent"; that is, there is no evidence that Superb Plaintiffs will actually pay those monies or otherwise choose to find some other potential resolution, including legal process, with the Nissan financers (or any other financer).

Under their second argument, Superb Plaintiffs contend that without an injunction they face irreparable harm because Deo has allegedly stolen confidential information and trade secrets and is using (and will continue to use) that proprietary information "to serve [Superb] Plaintiffs' customers by selling vehicles to them at other dealerships Defendants operate." *See* Plaintiffs' TRO Memo at 6-9. Superb Plaintiffs contend that the "continued course of [this] conduct has caused and will cause [them] irreparable injury as [Superb] Plaintiffs stands to lose its entire business and customer base that it has spent years building through cultivation of relationships with time, effort, and substantial resources." *Id*. *See* Compl. ¶¶ 241-60. However, in factual support of this harm, both the complaint and Urrutia's declaration state that "[u]pon information and belief, a significant number of Superb's customers have been solicited by [defendants] using Superb's trade secrets and confidential information." Compl. ¶ 261; Urrutia Decl. ¶ 185 (same).

On this record, and assuming for argument's sake that some of Superb Plaintiffs' customers have been solicited by Defendants using unlawfully obtained trade secrets, it does not follow that such conduct will actually and imminently incur harm that is in fact "irreparable." *Freedom*

7

*Holdings*, 408 F.3d at 114. That is, the potential for irreparable harm here—*i.e.*, the destruction of Superb Plaintiffs' entire business and good will—is more akin to a "possibility" on the sworn allegations put forth; no other factual allegations are proffered that such solicitations will actually result in an amount of sales that would have otherwise gone to Superb Plaintiffs such that it would destroy Superb Plaintiffs' business in its entirety. In sum, Superb Plaintiffs' theory of imminent harm is premised on an "highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). It is well established that courts cannot issue a TRO on the basis of a mere possibility. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

For these reasons, the Superb Plaintiffs have not demonstrated the most important prerequisite: irreparable harm. Therefore, the TRO must be denied, except that Defendants shall "not dispose of any automobiles in [their] possession," as proposed by Defendants' counsel. *See* Thomasson's Letter at 2.[8] "Because a showing of irreparable harm is the single most important prerequisite for the issuance of injunctive relief, the Court need not address the remaining elements

---

[8] The Court has broad power and discretion to fashion injunctive relief "to reach an *appropriate* result protective of the interests of both parties." *Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 272 (2d Cir. 2011) (emphasis in original); *accord Beastie Boys v. Monster Energy Co.*, 87 F. Supp. 3d 672, 680 (S.D.N.Y. 2015). *See Gerber v. Seamans*, 332 F. Supp. 1187, 1190 (S.D.N.Y. 1971) ("The prayer for a temporary restraining order is addressed to the equitable judgment of the Court."). While the Court finds Superb Plaintiff's legal theories and arguments for irreparable harm unavailing, it also concludes that accepting Thomasson's ostensible stipulation to limited injunctive relief as offered in his letter "preserve[s]" the "existing situation *in statu quo*," *Garcia*, 561 F.3d at 107, and comports with the prevailing dictate that "injunctive relief should be narrowly tailed" and does "not impose unnecessary burdens on lawful activity." *Beastie Boys*, 87 F. Supp. 3d at 680. *Accord W. Union Holdings, Inc. v. Haideri Paan & Cigarettes Corp.*, No. 18-CV-4281(NGG) (SJB), 2020 WL 1061653, at *9 (E.D.N.Y. Mar. 5, 2020).

8

necessary to obtain such relief."[9] *Monowise Ltd. Corp. v. Ozy Media, Inc.*, No. 17-CV-8028 (JMF), 2018 WL 2089342, at *1 (S.D.N.Y. May 3, 2018) (citation omitted).

## CONCLUSION

For the reasons set forth above, it is ordered that:

1. The TRO is **GRANTED in part** only to the extent that Defendants are enjoined from "disposing of any automobiles in" in their "possession belonging to Superb" or the Superb Plaintiffs, as agreed to by Thomasson (*See* ECF 13).

    For clarity's sake this binds only defendants: Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.;

2. All other requests for injunctive relief in the TRO are **DENIED;**

3. The deadline for opposition to preliminary injunction motion is **September 13, 2023**

4. The deadline for reply, if any, is due **September 20, 2023**;

5. A hearing on the preliminary in junction is set for **September 27, 2023**

SO ORDERED.

/s/ Orelia E. Merchant

ORELIA E. MERCHANT
United States District Judge

Dated: Brooklyn, New York
August 23, 2023

---

[9] Under Rule 65(c) a TRO may issue "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). District courts are "vested with wide discretion" to determine the appropriate amount of the bond, *see Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) (internal quotation and citations omitted), and, "despite the seemingly mandatory nature of Rule 65(c), a district court in its discretion may deny a bond altogether if there is no proof of likelihood of harm to the non-movant, *see Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 202 (E.D.N.Y. 2013) (internal quotation marks omitted). Here, Defendants have not requested a security bond and the Superb Plaintiffs have similarly not raised the issue in any of its submissions. Nevertheless, the Court makes an independent determination that a security bond is not necessary in this case given the lack of a showing of irreparable harm. *See IME Watchdog, Inc.*, 2022 WL 1525486, at *8. (waiving security due to lack of demonstrated hardship and collecting cases).

9