# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**

_____

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

August 26, 2023

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. Orelia E. Merchant, U.S.D.J.
225 Cadman Plaza East
Courtroom 6C South
Brooklyn, NY 11201-1804

   *Re:* **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
     <u>**Case No.: 2:23-cv-6188 (OEM) (ST)**</u>

Dear Judge Merchant:

  This firm represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team Auto, and Urrutia collectively hereinafter the "Moving Plaintiffs") in the above-referenced case. Plaintiffs submit this letter motion[1] to respectfully seek reconsideration of this Court's Order dated August 25, 2023 in the interest of justice and in light of the new evidence submitted herein which was received a day after Plaintiffs' initial August 20, 2023 application. Based on same, this Court should require Defendants to return the vehicles on Plaintiffs' floor plan with the understanding that Plaintiffs will not sell or dispose of any vehicles pending the September 27, 2023 hearing. Such an Order is crucial to prevent further irreparable harm, as outlined below, and will truly and properly preserve the *status quo*, as such relief is designed to.[2]

**<u>Legal Standard</u>**

  A motion for reconsideration may be granted where the moving party shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. See <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995).

---

[1] Plaintiffs respectfully request leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter "Rules"), which requires that the Rules be construed, administered, and <u>employed</u> <u>by</u> <u>the</u> <u>court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. See Fed. R. Civ. P. 1 (emphasis added). Due to the emergency nature of the relief requested, Plaintiffs respectfully submit that this Court should grant leave to file the instant motion as a letter motion rather than a formal motion.

[2] See <u>Mastrio v. Sebelius</u>, 768 F.3d 116, 120 (2d Cir. 2014) (The *status quo* in the context of a preliminary injunction is "the last actual, peaceable uncontested status which preceded the pending controversy") (*per curiam*) (internal quotation and citation omitted).

Reconsideration may also be "granted to correct clear error, *prevent manifest injustice*, or review the court's decision *in light of the availability of new evidence.*" See Mendez-Caton v. Carribean Family Health Center, 340 F.R.D. 60, 74 (E.D.N.Y. Jan. 28, 2022) (Merkl, J.) (emphasis added) (citing Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).

**The Interests of Justice & New Evidence Submitted Herewith Require Reconsideration**

This Court should require Defendants to return the vehicles to Plaintiffs, with the understanding Plaintiffs will not sell or dispose of the vehicles, to prevent further irreparable harm.[3] If the vehicles are returned, no consequence will befall Defendants; whereas if they are not, Plaintiffs will undoubtedly suffer – and have already suffered – irreparable harm.

Superb, like other dealerships, operates with the assistance of banks who provide "floor plan" financing, which financing is used to purchase vehicles for resale, and which vehicles are collateralized by the banks providing such financing. See ECF Docket Entry 11 at ¶¶ 58 n. 7. When a bank provides floor plan financing for a vehicle purchased using such financing, certain rules attach as a condition of the financing; for example, the vehicle financed must be present and available for sale at the dealership. Id. (emphasis added).

Superb's agreement with Nissan Motor Acceptance Company LLC ("NMAC") (filed under seal due to confidentiality provision)[4] annexed hereto as **Exhibit "A."** As set forth in page 6 of Exhibit A, "[all] … vehicles will need to be present at your dealership location for physical inspection to be eligible for funding." As set forth in the Automotive Wholesale Financing and Security Agreement beginning on page 8 of Exhibit A, "Dealer shall keep all Property at a Dealership Location." See § 3.1 on page 9.

---

[3] Based on Plaintiffs' investigation and efforts to return the vehicles thus far, some of the most expensive vehicles on Plaintiffs' floor plan – including a Rolls Royce, Mercedes Benz GT, and a Range Rover – are currently being driven by some of the Defendants against whom the instant relief is sought. Every day the Defendants drive these vehicles, their value is decreased and the risk of loss which will not be insured under the terms of Plaintiffs' insurance policies for such floor planned vehicles is created. Permitting Defendants to continue to exercise any dominion or control of the vehicles is antithetical to the notions of fairness and justice. Plaintiffs are the true owners of the vehicles, not Defendants. Plaintiffs' principal is financially responsible for the vehicles, insures them, pays interest and fees on the vehicles, and is responsible for the depreciation on the vehicles. It is a grave miscarriage of justice to permit Defendants to hold on to the vehicles, even if they are not permitted to dispose of them by court Order. Moreover, Defendants have displayed a propensity to disregard the law and cannot be trusted to obey this Court's Orders.

[4] Because sensitive business information, such as Plaintiffs' financial arrangement with its floor plan lenders (which arrangement has been designated confidential according to the contract between them), outweigh the public's presumed right of access to court records, Plaintiffs respectfully submit leave to file the agreement under seal. See Valassis Commc'ns. Inc., 2020 WL 2190708, at *3-4 (finding that the presumption of public access is outweighed by the party's business secrecy interests as well as by the personal privacy interests in their dealings).

Because Defendants have absconded with the vehicles on Superb's floor plan line, *Superb has been held in breach* by NMAC and that *floor plan line has been terminated*! See copy of August 18, 2023 termination letter received on August 21, 2023 annexed hereto as **Exhibit "B."** Critically, Defendants' August 9, 2023 letter acknowledged this would happen without their cooperation. See ECF Docket Entry 12-1 at 2 ¶ 6 ("Please be reminded that if my client was not the owner of Superb, he would not have cooperated with two (2) audits in the last two (2) days from NMAC/AIM and/or NEXTGEAR; *as you know, if my client did not cooperate with those audits, Superb would have been forced to immediately pay for the twenty (20+) or so automobiles in Mr. Deo's custody*"). This is exactly what happened here; Defendants refused to return the vehicles to Superb and NMAC not only forced Superb to pay, but terminated its agreement with Superb! Crucially, Defendants' letter is an admission they are in custody of vehicles on Superb's floor plan line.

NMAC's termination of Superb, by itself, constitutes irreparable harm. Indeed, not only has Superb been deprived of its vital life line to permit it to purchase vehicles for resale, it has been severely crippled by the termination and is on the precipice of a financial collapse because it was required to repay nearly $2 million dollars in accordance with its agreement. Superb now has virtually no funds with which to operate its dealership, while Defendants remain in possession and control of the vehicles Superb has been required to repay. This is the opposite of justice!

Further, as discussed in Plaintiffs' initial application, Next Gear Capital ("Next Gear") is another floor plan lender which Plaintiffs utilize, and Next Gear has sought the return of vehicles to the dealership as required under Plaintiffs' agreement with the floor plan lender. See ECF Docket Entry 11-19 (Next Gear email demanding return of all vehicles to Plaintiff Team Auto). Next Gear is on the verge of similarly terminating Plaintiffs' agreement and requiring the payment of nearly $1 million. **Plaintiffs do not have these funds available to return because Defendants' conduct has already caused NMAC to terminate its contract with Superb, such that Superb was required to return nearly $2 million to NMAC, and is now left with no operating capital.** The only way to raise Superb from its death knell is to have these vehicles returned immediately. It is worthy to note that when Plaintiffs engaged in the same conduct with the Island Auto Group Plaintiffs,[5] they were forced to return the vehicles. See NYSCEF Docket Entry 31. The Defendants should be required to do the same here. Moreover, and crucially, Urrutia's four dealerships are cross-collateralized,[6] and as such, a breach of Superb's agreement can automatically be deemed a breach by Urrutia's other three dealerships.

---

[5] As with any industry, the automotive community is small and word travels fast. Prior to Defendants' unlawful actions, Urrutia never spoke with Aaronson or anyone else at Island Auto Group about Deo. In fact, it was the remaining Plaintiffs who contacted Urrutia after word got around about what Deo and his cohort have done. Moreover, Automotive News contacted Plaintiffs regarding this matter. This case is not about a business relationship gone sour; Defendants came with the intention to do what they have done, as is evidenced by the blatant misrepresentations in the Cross-Purchase Agreement, and Plaintiffs desperately seek relief to remain a going concern.

[6] See **Exhibit "B,"** listing Urrutia's other dealerships as responsible for the amount demanded.

Failing to return the vehicles to their designated lots under Plaintiffs' agreements with their floor plan lenders will result in termination of the floor plan line provided by Next Gear, which will: (i) require immediate repayment of the entire outstanding balance owed for the vehicles improperly remaining in Defendants' possession (which funds Plaintiffs do not have); (ii) deprive Plaintiffs of the ability to purchase vehicles for resale; (iii) destroy a vital lifeline for Plaintiffs; and (iv) require Plaintiffs to go out of business.

This will result in the imminent shut-down of all four (4) dealerships owned by Urrutia, bankruptcy, and the layoff of over 100 employees. Indeed, Defendants' conduct has already caused the layoff of sixteen (16) employees out of the twenty-seven (27) originally employed at Superb. The remaining employees are running a limited operation at Superb because: (i) it cannot purchase new vehicles for resale due to NMAC's termination of its floor plan line; (ii) the majority of its inventory is locked inside Defendants' building; (iii) all vendors are unwilling to work with Superb because Defendants intentionally failed to pay them over the last two months; and (iv) its operating capital is tied up in the vehicles Defendants are improperly keeping.

Therefore, Defendants should be ordered to return the vehicles under Next Gear's floor plan line. Defendants should similarly be required to return the vehicles under NMAC's floor plan line so that Plaintiffs may request reinstatement with NMAC to place themselves in the same position that they were before Defendants' unlawful conduct. If this occurs, Superb will be able to reinstate its employees and begin properly operating again. Without this, Superb is on its deathbed and Next Gear's anticipated demand for repayment will be the final blow. The only thing that can avert this disaster is the immediate return of the vehicles.

Plaintiffs therefore respectfully request reconsideration of this Court's Order as follows: to require Defendants to return the vehicles on Plaintiffs' floor plan with the understanding that Plaintiffs will not sell or dispose of any vehicles pending the hearing on September 27, 2023 and further Order of this Court.

The return of the vehicles will avert the above risks while maintaining the *status quo*. The balance of the equities tip in Plaintiffs' favor in granting this request, as denying it will lead to Plaintiffs being forced to pay another $1 million and forced out of business due to no operating capital, while granting the relief sought will maintain the *status quo* and avert the very real crisis that is currently looming.

It must be emphasized that Defendants have nothing to lose in returning the vehicles, while Plaintiffs have everything to lose if the vehicles are not returned. Accordingly, this Court should grant reconsideration of its August 25, 2023 Order for the limited purpose of requiring the vehicles to be returned to Plaintiffs with the understanding that Plaintiffs will not sell or dispose of the vehicles.

Plaintiffs thank this Court for its continued time and attention to this case.

Dated: Lake Success, New York
       August 25, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (telephone)
(516) 303-1395 (direct dial)
(516) 328-0082 (facsimile)
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, &*
*Robert Anthony Urrutia*

**VIA ECF**
All counsel of record