UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

Case No. 2:23-cv-6188 (OEM)(ST)

SUPERB MOTORS, INC., TEAM AUTO SALES LLC.,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HIGHWAY AUTO LLC., NORTHSHORE MOTOR
LEASING, LLC., BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually and
derivatively as a member of 189 SUNRISE HWY AUTO,
LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, and ISLAND AUTO
MANAGEMENT, LLC,

       Plaintiffs,

  -against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON,
DWIGHT BLAKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, TOMAS JONES, CPA, CAR BUYERS
NYC INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD COAST
MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS CORP.,
DLA CAPITAL PARTNERS INC., JONES LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING,
LLC,

       Defendants.

------------------------------------------------------------------X

## DECLARATION OF HARRY THOMASSON IN OPPOSITION TO PLAINTIFFS' ORDER TO SHOW CAUSE

  Anthony Deo, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury that the following is true and correct:

1

1. I am an attorney in good standing in the State of New York, and I represent Defendants ANTHONY DEO, SARA DEO, HARRY THOMASSON, DWIGHT BLAKENSHIP, MARC MERCKLING, MICHAEL LAURIE, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., in the instant action for the sole purpose of opposing the instant application for injunctive relief; as such, I have first-hand knowledge of the facts recited herein.

### A. PLAINTIFFS' FAILURES OF SERVICE OF PROCESS

2. Preliminarily, the answering Defendants herein object to the current Preliminary Injunction application on the basis of insufficient and non-existent service of process.

3. None of the answering Defendants consented to service of process of any of the papers filed with this Court, to date, by any of the Plaintiffs.

4. Attached hereto as Exhibit I are true and accurate copies of certain emails and correspondence exchanged between me and attorney Kataev last month regarding, *inter alia,* direct contact with my clients. These emails and attachments are in order commencing August 11, 2023, through and including August 15, 2023.

5. Exhibit I commences with an email on August 11, 2023, at 2:57 p.m., from me to attorney Kataev in which I asked him not to contact my client(s) directly (along with the correspondence attached to that email to attorney Kataev).

6. The next document in Exhibit I is a second email to attorney Kataev on August 11, 2023, at 5:05 p.m., in which I again asked for direct contact with my clients to cease.

7. The next document in Exhibit I is another email to attorney Kataev on August 14, 2023, in which I again asked for direct contact with my clients to cease.

8. The next and last documents in Exhibit I are an email to attorney Kataev on August 15, 2023, along with the correspondence attached thereto. Please note the first paragraph of my correspondence to attorney Kataev dated August 15, 2023:

> "I have told you on one or more occasions to stop communicating with my client. Today's email from you was copied to my client. He is represented by counsel. DO NOT COMMUNICATE WITH MY CLIENT AGAIN OR I WILL GO TO THE BAR GRIEVANCE COMMITTEE."

9. The instant Declaration, all accompanying Declarations and all documents attached hereto are for the sole purpose of opposing the instant application for injunctive relief, only, all rights reserved. While Exhibit I serves more than one purpose in connection therewith (e.g., important background information can be gleaned as to what was transpiring between the parties on and after the August 3, 2023 surprise lockout of Anthony Deo from the Superb dealership (hereinafter, the "Lockout")), for the purposes of objecting to the instant application for injunctive relief on the basis of insufficient and non-existent service of process, please be advised that in response to the days long repeated improper contacts with my clients by the Plaintiffs and their attorney (from August 11 – August 15) after being notified of my involvement on behalf of answering Defendants, I instructed my clients to 1) ignore all texts from said individuals; 2) ignore all emails from said individuals; 3) block all texts from said individuals; and 4) block all emails from said individuals.

10. I am aware of no authority in the Rules nor from this Court granting Plaintiffs emailing privileges regarding the instant application for injunctive relief given that none of the papers have been otherwise served in the normal course, my clients have

3

not received any of the documents filed with this Court, Plaintiffs were told to not contact my clients directly, Plaintiffs' counsel was told to not contact my clients directly, and Plaintiffs have not proven *anything* regarding proper service of *any* documents.

11. Even I have not been served with any documents in this case. Plaintiffs mailed bare copies of two (2) Orders from this Court to my Wantagh secure mail box location (my 3280 Sunrise Highway location is just a secure mailbox, your Honor); otherwise, no documents have *ever* been served upon me in the normal course, including no documents were ever sent or given to me at my Lindenhurst home where I maintain my only office at this time. I am not aware that this Court issued any orders allowing any alternative service; if so, no such orders were ever sent to me by the Plaintiffs.

12. Accordingly, and preliminarily, I object to the instant application for injunctive relief against all of the Defendants on the basis of insufficient, improper, and non-existent service of process of 1) the papers filed to date by the Plaintiffs; and 2) the Orders of the Court in relation hereto.

### B. PLAINTIFFS ARE NOT ENTITLED TO INJUNCTIVE RELIEF

13. First, as this Court already noted in denying most of the *ex parte* application, Plaintiffs are not entitled to obtain injunctive relief when a remedy at law exists. Even if the Plaintiffs were to obtain a judgment in this action, every single claimed loss can be addressed through damages, your Honor, and therefore, their application must be denied in its entirety on the merits given the adequate remedy at law.

14. Second, Plaintiffs clearly seek equity with unclean hands, to wit:

   a. Plaintiffs have clumsily and amateurishly failed to serve *any* documents, to date, in this action;

   b. Plaintiffs and their counsel repeatedly ignored clear, written, specific instructions to avoid direct contact with Defendants as set forth *at length* in Exhibit I hereto;

   c. The Aaronson Plaintiffs having failed to obtain relief in Nassau Supreme Court on the basis that the "failed to demonstrate a likelihood of success on the merits of their claims" of ownership of my clients' businesses and dealerships both continue to play keep away with the documentation needed to operate those dealerships, approved my clients as owners for tax filing purposes (Exhibit B hereto), yet then came to this Court for "another bite of the apple" against the same Defendants, at the core of their (repeated) claims here.  Moreover, given Exhibit B and the Nassau Court's June, 2023 Order, it is palpably improper for these Plaintiffs to bring claims on behalf of NorthShore and Sunrise; not only did the Aaronson Plaintiffs specifically approve of my clients' filing of tax returns as owners of NorthShore and Sunrise, but the Deos have also subsequently filed both state and federal tax documents as owners of those two corporations, while the Aaronson group have filed exactly none;

   d. Plaintiffs improperly moved for reconsideration, twice;

   e. The Plaintiffs' RICO claims would be laughable if not so incredibly serious (and are totally without support in fact or law);

5

f. The Plaintiffs' RICO claims against the Deos' lawyer (undersigned) and accountants (Thomas Jones and Jones Little) are nothing short of disgusting and without any basis whatsoever in law or fact, but are instead transparently intended to disqualify chosen professionals from conducting the instant litigation;

g. The Urrutia Plaintiffs change of Superb's name to "Team Auto" after commencing this action and without any input from partner Anthony Deo is either pure secretive underhandedness planned for months, or was done in violation of NYDMV Regulations regarding signs and licenses such that it endangers Superb's business license to operate from NYDMV;

h. Allegations that Deo cost Superb money belies the simple facts that Urrutia controls the finances at Superb, not Deo, and the attached financial reports clearly and unequivocally indicate that Superb's finances significantly improved after Deo took day to day control of the dealership, contrary to claimed wrongdoing asserted by the Plaintiffs;

i. Allegations made on the night of August 3, 2023 to aid the Plaintiffs in locking out an owner of the dealership, Anthony Deo, that he stole 102 cars and $760,000.00 are no longer made and were facially false when made;

j. Plaintiffs arranged to create the instant "emergency" themselves by notifying their friendly representatives with the Floor Plan companies that Deo had cars that Plaintiffs knew he had but now conveniently claim were stolen so the Floor Plan companies would become alarmed (if genuinely, at all) and align with Plaintiffs in trying to get the cars back; neither Deo nor anyone else on behalf

6

      of Deo told the Floor Plan companies where to go to conduct the audits of cars at Deo's lots, it had to come directly or indirectly from these Plaintiffs;

k. Deo's expansion of the business through marketing and creating leads and buying inventory at auctions created a need for space to store cars Superb was selling, and due to the Josh Aaronson Plaintiffs' efforts at playing keep away with NorthShore's and Sunrise's operating documents, accounts, files, and software, Deo had the lot space Superb needed to store those extra cars, and Plaintiffs intentionally failed to disclose this important fact to this Court;

l. Josh Aaronson's Nassau County Plaintiffs tried and failed to get those cars removed from Deo's possession in the Nassau County case; to that extent, it is improper for another bite of that apple here;

m. The Superb cars in question are safer with Deo than with Urrutia under the joined and explained circumstances;

n. The list attached as Exhibit G is unsupported hearsay; more than half of that list are cars that 1) are not in Deo's possession; 2) were never in Deo's possession; 3) are demos properly in Deo's possession; 4) are Deo's (notably the Rolls Royce that Deo confronted Urrutia about in the week prior to the Lockout); and 5) were utilized by Tony Urrutia or those on his behalf;

o. It is Urrutia who both controls the finances and all deals/paperwork at Superb and has treated those finances as his own piggy bank to save, *inter alia,* his Connecticut dealerships;

p. Urrutia took $650,000.00 from Superb in the weeks before closing his deal with Deo without disclosing same, and the February, 2023 NMAC report/review that

7

      revealed this transaction was kept from Deo for almost 5 months until Urrutia and his COO utilized it to prove the desperate need for more money from Deo in July.

15. I undertook to conduct a business background search in July, 2023, in response to the demand/offer Urrutia made to Deo for $1,000,000.00 to fully obtain both Superb, the Mitsubishi dealership in Connecticut, and two points owned by Urrutia in Connecticut after my client confronted Urrutia with accusation of financial improprieties. I know, Deo spoke to me about those conversations the same days they occurred, and in case something was going to be worked out, I reached out to a Title Company in Connecticut to start a potential closing process.

16. It is clear that Urrutia's desperate need for money caused him to join with the Josh Aaronson group (not a coincidence, your Honor) after Deo ultimately turned down his desperate request for immediate money. The Aaronson Plaintiffs, having failed badly on their own equitable application in Nassau Supreme, now can apply their staggering wealth to help Urrutia save his businesses while conveniently hurting the Deos, again;

17. At the end of July, 2023, the Aaronson Plaintiffs in the Nassau Supreme case filed an Amended Complaint after the Court, in June, 2023, denied their Order to Show Cause in its entirety for "failing to demonstrate a likelihood of success on the merits" of their claimed ownership of NorthShore and Sunrise.

18. I contacted the Aaronson attorneys in that case, the same attorneys for the Aaronson Plaintiffs in this case, and made a routine request for extra time (less than a month, in fact, which is less than the routine request for extra time to respond to a Complaint),

8

which they denied me. I had to go to the Nassau Supreme Court judge to request the extra time, which she granted after hearing from both parties.

19. What is now clear is that those attorneys knew this action was coming, and failed to list that reason to the Court or to me in connection with their otherwise peculiar refusal to grant more time to an attorney that otherwise would be given such extension in due course, especially after I also told them the date I was leaving for my vacation in August (I did not disclose to them that it was to help my son in what is absolutely a lifesaving battle).

20. Simply put, your Honor, their denial of that routine request was no more of a coincidence than their filing and bringing the instant action and instant application for injunctive relief *on the day I went on the vacation that both sets of attorneys for both sets of Plaintiffs were absolutely informed of before I left.* In combination with their specious and completely unwarranted claims *of criminal conduct* against not only my clients but also their chosen professional representatives (me and the accountants), these people are more than just playing dirty pool, they deserve to be sanctioned. Defendants hereby reserve their rights to request same in response to properly served papers.

21. There is no privity between me and any Plaintiff herein beyond answering a civil Complaint (subsequently dismissed), hardly criminal conduct. There is no privity between any Plaintiff herein and my clients' accountants. There is no privity between the Plaintiffs and Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold

Coast Motors of Smithtown LLC, nor UAE Premier Motors Corp., and for that matter, there really isn't any privity with Sara Deo or Dwight Blakenship, other than as former employees (although neither has ever been fired nor given any COBRA notices, etc.).

22. The injunctive relief was only intended to harm Defendants as a sword, your Honor, and never was intended as a shield.  In fact, same can (and will, after proper service) be said of the Complaint itself.  Improper state RICO claims aside, at the core of this case is merely the partnership dispute of Superb Motors, Inc., a New York/Nassau County corporation, with Anthony Deo, a Nassau resident, for purported (state) breach of contract claims. The Aaronson plaintiffs are engaged improperly as a second bite of the apple and do not suffice for Federal jurisdictional purposes, and Team Auto is joined apparently to create multiple jurisdictions sufficient to be in federal court, except that Team Auto has no privity with *any* of the Defendants. To be clear, Team Auto never did any business with these Defendants. Even Urrutia's claims are merely derivative from the Superb claims; none of the Defendants have ever done business with Urrutia individually.  Plaintiffs' claims do not belong in this Court.

23. I told these Plaintiffs that I was planning on coming to Federal Court with our claims, which include cases against multiple corporate Defendants from out of state not presently in either case as parties.  We haven't finalized any case yet, and still have the option of staying in Nassau Supreme Court, but the instant case does not belong in Federal Court.  Instead, these Plaintiffs thought that they would engage in transparent and improper leveraging by bringing this case, and also are engaged in a transparent strategy of "the best defense is a good offense."

24. For the within reasons, we ask that this Court deny all requested relief. Deo will not dispose of any vehicles in his possession pending further Order of this Court even if some from the list attached as Exhibit G are in his possession and belong to Superb. In fact, he cannot dispose of vehicles without Superb's finance *and* document departments doing the processing. The same cannot be said of the Plaintiffs, who must not be given the opportunity under color of law from this Court to harm Defendants further.

25. In fact, and merely to assist this Court in making its instant decision, I want the Court to know that Plaintiffs initiated settlement discussions with me last week regarding the pending injunctive relief, only. The parties were unable to agree on a course of action, so it would be improper for to put settlement positions/discussions before the Court. However, while there was only one (1) subject/issue agreed upon during the course of those discussions, and since there was agreement on that one (1) subject/issue and it bears directly on this Court's decision on the instant application for injunctive relief, this Court should know that the parties to this action all agree: Nothing should happen to sell or dispose of the cars in Anthony Deo's possession pending further Order of this Court no matter where those cars end up after this Court makes its decision, and we intend to keep our word on that even if this Court denies the instant application on technical/service grounds.

26. Plaintiffs created this mess, your Honor, and have done so with unclean hands, in the wrong Court, and absent anything resembling proper service. Their requested relief should be denied in its entirety.

AFFIRMED UNDER THE PAINS AND PENALTIES OF PERJURY.

Dated: Lindenhurst, New York
      September 10, 2023

*[signature]*

Harry R. Thomasson, Esq.
3280 Sunrise Highway, Box 112
Wantagh, New York 11793
Tel. 516-557-5459
Email: hrtatty@verizon.net