UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

                          Plaintiffs,

      -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING LLC,

                          Defendants.
------------------------------------------------------------------X

Case No.: 2:23-cv-6188 (OEM) (ST)

**REPLY DECLARATION OF ROBERT ANTHONY URRUTIA IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A <u>PRELIMINARY INJUNCTION & PERMANENT INJUNCTION</u>**

      Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.      I submit this reply declaration in further support of Superb Motors Inc.'s ("Superb"), Team Auto Sales LLC ("Team"), and my (collectively hereinafter the "Moving Plaintiffs") motion for a preliminary injunction and permanent injunction in response to the Declaration of Defendant Anthony Deo ("Deo"), dated September 10, 2023 (the "Deo Declaration").  See ECF Docket Entry 30.

**Absent Relief, the Moving Plaintiffs Will be Forced to Close Down Superb Tomorrow**

2.      As this Court knows, Superb already received notice on August 21, 2023 that its contract with Nissan Motor Acceptance Corporation ("NMAC") will be terminated effective September 18, 2023.  See ECF Docket Entry 17 at 7-9.

3.      This, itself, has caused me irreparable harm because I lost a valued relationship that it took me thirty (30) years in the automobile industry to obtain.

4.      Currently, my operations are hanging by a thread with the use of a floor plan line from Next Gear Capital ("Next Gear"), whose interest rates and fees are higher than NMAC's.  The only way to hang on to that thread is by having the vehicles misappropriated by the Defendants returned to my lot so that I can avoid the need to payoff $391,698.48[1] to Next Gear by Friday, September 15, 2023.  See copy of Next Gear account page annexed hereto as **Reply Exhibit "A."**

5.      Currently, I cannot place *any* vehicles on a floor plan with Next Gear (nor can I with NMAC, which is set to terminate in five days), and as such, I have no way of financing the acquisition of vehicles to sell cars.

6.      My operations at Superb are therefore at a grinding halt, and without immediate relief, they will be permanently halted.

---

[1] This amount is only for twelve (12) of the eighty-nine (89) vehicles missing.  With the prior payments I have already made to NMAC, this totals $2,331,714.23 in payoffs.

2

7. If I am granted the relief I am requesting, I will not need to shut down because I will no longer have to pay $391,698.48 – which amount I do not have and cannot pay – and can work towards opening a new line with Next Gear such that I may resume operating Superb, albeit at a much higher cost given NMAC's termination of its agreement with Superb.

8. Without relief, I cannot establish any new line, will not be able to remain a going concern, and will be forced to default on my agreement with Next Gear, because the Moving Plaintiffs do not have the funds to make the aforementioned payoff demanded by Next Gear on September 15, 2023, which default will prevent me from having a floor plan with any other bank.

9. The fate of Superb hangs in the balance, and the balance of the equities are in my favor because: (i) if the vehicles are not returned to me, Defendants are no worse off, while I will be forced to shut down; and (ii) if the vehicles are returned, I will abide by an Order not to sell or dispose of them and can stay in business, and Defendants will still not be harmed in any way.

10. It is worthy to note that Defendants cannot establish any prejudice by being required to return the vehicles. Crucially, Defendants have already agreed to return the vehicles so long as security is issued. See ECF Docket Entry 24 ("If the only relief still 'in play' … are the cars in my clients' possession, please let me suggest the following resolution: … I can arrange for the return of the cars upon the Plaintiffs posting security for the Floor Plan value of those cars for the entirety of this case without any need to move forward on Plaintiffs' Order to Show Cause").

11. The Moving Plaintiffs explored this proposal with the Defendants, but could not come to any agreement because Defendants insisted on keeping the demonstrator vehicles, which are also on the floor plan line (or were paid off by Superb), and the Moving Plaintiffs cannot agree to do so because it will keep them in default with NMAC and Next Gear. Further, there is a disagreement as to how many vehicles must be returned.

3

12. We therefore ask that this Court require Defendants to return the vehicles without a bond. No bond is necessary because the vehicles belong to the Moving Plaintiffs and the Defendants have no right, title, or interest to them; in fact, Defendants admit this. See ECF Docket Entry 30 ¶ 46 ("The cars in our possession are our cars, our corporate cars, cars that belong to others and are not in our possession., Superb demo cars commonly … utilized as a perk of ownership by car dealers … *and also cars that belong to Superb …*").

13. To the extent this Court finds a bond is necessary, the bonding company we have inquired with requires an Order from this Court in order to issue a bond.

**Deo's & Thomasson's Declarations Are Demonstrably False**

14. Deo claims that we had a deal wherein he would obtain ownership of three other dealerships that I purportedly own in Connecticut for an undetermined price. This is patently false. I could not and did not offer Deo ownership of three dealerships in Connecticut, as I only owned one dealership in Connecticut.

15. Moreover, the signed agreements I have with Deo have merger clauses in them that provide there are no other agreements amongst us. See ECF Docket Entries 11-1 at 8 and 11-6 ¶ 13(B).

16. Furthermore, the proposed deal included a requirement that Deo provide me with 25% ownership of Northshore Motors Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise").

17. Deo represented to me that he was sole owner of Northshore and Sunrise and that those dealerships were not involved in any litigation. But none of these statements were true. See NYSCEF Docket Entries 4 (Northshore) and 28 (Sunrise), containing operating agreements showing the true members of Northshore and Sunrise.

4

18. Deo most recently declared that he was the 99% owner of Northshore with his wife holding the remaining 1%, but that is also false, as set forth above.

19. Separately, because he represented to me in the Cross-Purchase Agreement that he is the 100% owner of Northshore, this statement is also false.

20. In addition, Deo represented to me that there was no litigation arising out of Northshore and Sunrise, which clearly there is.

21. It is evident that Deo says whatever he needs to say to achieve his ends, and not a single word of his can be trusted nor proven.

22. Deo states in his declaration that I pocketed the $500,000.00 he paid me for a forty-nine percent (49%) interest in Superb. However, our deal contemplated that I would provide Superb with a $300,000.00 loan, mark down inventory to market value due to COVID (which resulted in a $500,000.00 loss), and absorb $700,000.00 in accounts payable prior to his involvement with Superb. See copy of text messages between Deo and myself annexed hereto as **Reply Exhibit "B"** at November 17, 2022 text messages.

23. Indeed, Exhibit "C" to Deo's declaration establishes precisely why I sought to find a partner for Superb; Superb was doing poorly and I decided I had to either close down Superb and cut my losses, or find a partner for Superb who can focus on running it.

24. Deo convinced me he would be able to turn Superb into a profitable dealership quickly due to his "success" in his other two (2) dealerships, which I later learned was false.

25. Furthermore, while Deo's Declaration states that I had an outstanding loan from NESNA for $650,0000.00 that he had no knowledge of, Deo requested and obtained information about this loan in February 2023. See copy of email correspondence annexed hereto as **Reply Exhibit "C."**

5

26. Importantly, that loan's principal balance was over $981,000.00 before we entered into our agreement and I paid it down to $650,000.00 on account of our agreement to do business together; in other words, Deo was not misinformed about anything and I was above-board with him in all of our dealings.

27. Similarly, I had more to risk in permitting Deo to obtain ownership interest in Superb, as he was entrusted to work with my banks, floor plan lenders, and customers while he assumed no risk to those relationships.

28. Regrettably, my risk was realized due to Deo's apparent and unbridled theft, fraud, and embezzlement.

29. Deo also claims that he did not begin working at Superb full-time until January 2023 and only worked part-time in December 2022.

30. But this is also demonstrably false, as Deo began working at Superb in mid-November 2022. See **Reply Exhibit "B"** at November 19, 2022 ("… Today we had few appointments but no shows. The new inventory and prices are cooking on the Internet. There are still a few kinks in terms of turn around time for inventory and changes to reflect on this party site. But that will be corrected. Should be more traction next week").

31. I believe Deo is attempting to persuade this Court that he only began working at Superb in January 2023 because he wants to establish, by lying, that he is not responsible for any losses at Superb from November 2022 or December 2022, despite the fact he is solely responsible for those losses.

32. Deo also avers that I did not do any advertising and that he did so. Setting aside the fact that this is irrelevant as to the issue at hand, i.e., whether he misappropriated Superb's assets and is holding them hostage to destroy my dealerships, this is also false.

6

33. In November 2022, before Deo began working at Superb, the dealership had approximately $120,000.00 per month in advertising. <u>See</u> copy of excerpts from Shareholders' Agreement regarding advertising annexed hereto as **Exhibit "D."**

34. Furthermore, as part of the agreement I had with my former partner, Superb was to receive $450,000.00 worth of advertising from November 2022 through July 2023. <u>See</u> copies of relevant portions of agreement and related documentation annexed hereto as **Exhibit "E."**

35. Deo's claim that he was responsible for an increase in inventory and that I had approved of his plan for purchasing additional vehicles is similarly misleading.

36. Deo approached me when he first began with Superb to insist that the dealership purchase higher-end vehicles as he said he wanted to seek different clientele.

37. Upon approving this, Deo took it upon himself, without my knowledge or consent, to purchase grey market cars,[2] which cannot be financed under the terms of Superb's dealer agreement with various banks that provide loans to customers.

38. Moreover, Deo's assertion that Superb needed to utilize his empty lots to store the additional vehicles that he was purchasing is also a lie.

39. Deo informed me that the vehicles were moved to lots to service and recondition them in order to bring them back to Superb for sale. While this is a limited exception under which a vehicle may be off of Superb's lot under its agreement with its floor plan lender, Deo lied to me as he was not servicing or reconditioning all of the vehicles there, and it is statistically impossible for so many vehicles to be out for repairs. <u>See</u> ECF Docket Entry 16 at 2 ("'[all] … vehicles will need to be present at your dealership location for physical inspection to be eligible for funding").

---

[2] Grey-market cars refer to vehicles manufactured outside of the United States of America, which banks do not permit lending on.

7

40. At the time I entered into an agreement with Deo, Superb was selling approximately thirty (30) to forty (40) vehicles a month, and was (and is) able to store eighty (80) to ninety (90) vehicles. Moreover, a dealership typically needs to store seventy-five (75) vehicles in order to sell fifty (50). Therefore, Superb did not need to utilize Deo's empty lots to store vehicles.

41. Deo further falsely claims that he was *surprised* after Alysia Cayer ("Cayer") was terminated.

42. But on March 21, 2023, Deo sent Cayer an email wherein he raised issues with the accounting for Superb. Around the same time he emailed Cayer, Deo sent me a text message informing me that he emailed Cayer and to not be alarmed by his tone in the email. See **Reply Exhibit "B"** at March 22, 2023; see also copy of March 21, 2023 email annexed hereto as **Reply Exhibit "F" (highlighting Deo, Thomasson, and Jones as recipients of all emails).**

43. Thus, it was Deo who wanted Cayer terminated from the dealership

44. As is shown in **Reply Exhibit "F,"** in response to Deo's March 21, 2023 email, Cayer requested that I authorize her to send information relating to all of my dealerships. Despite having no obligation to send this information to Deo, I immediately authorized Cayer that same day, within hours, to send Deo the information for all of my dealerships, consisting of more than four hundred emails with information over the course of March 22, 2023 into the following day, which can be supplied upon request.  This renders Deo's statement completely false.

45. I have nothing to hide and Defendants' weak attempts to cast aspersions on me should be seen as nothing more than a ploy to cast doubt on my integrity.

46. It is obvious to me that the word perjury means nothing to the Defendants, and I truly hope that the evidence I submit here today establishes the total lack of credibility on the Defendants' part.  But there are even more lies that the Defendants have told.

47. Deo claims that I stole $760,000.00 in his declaration. What he fails to mention is that this was caused by his double-flooring of vehicles and I was required to pay that balance off as a result of his breach of Superb's agreement with Next Gear and NMAC. As such, I never put that money into any of my other dealerships. See copy of redacted Superb July 2023 statement showing no transfers to other dealerships and email with NMAC regarding satisfaction of double-floored vehicles annexed hereto as **Reply Exhibits "G" and "H"**

48. Deo also states that his Rolls Royce was floored by me without his consent when the emails show that not only did he consent, but he provided information necessary to floor the Rolls Royce. See copy of emails and attachment annexed hereto as **Reply Exhibit "I."**

49. Deo's contention that I was desperate for cash and sought money from him to float my other dealerships is belied by our text message exchanges. See **Reply Exhibit "B."**

50. As can be seen by reviewing the near-final text messages between July 16, 2023 to July 28, 2023, I was looking to purchase a property elsewhere and was going to use the funds he would have paid me because *he wanted to make that deal with me*.

51. Clearly, he was unable to defraud anyone else out of money to do so.

52. More importantly, however, I did not need Deo's money to make the other deal as I clearly stated to him in our text messages. See Id. at July 16, 2023 texts ("I need it by end of next week beginning of the next but I leave Tuesday so I need to know 100% or leave something else set up").

53. Further, I was out of the country from July 18, 2023 until August 3, 2023, during which time we did not speak. As a result, Deo's statement that he had conversations with me in which he spoke angrily with me is a complete fabrication. We never had any such conversation, and this is evident from a review of our text message exchange.

9

54. The one thing that Deo states truthfully was that he was not supposed to be in control of any of the financials. However, and tellingly, he completely and utterly fails to address the undeniable evidence that he fraudulently opened an account with Flushing Bank stating that he was the 100% owner and deposited Superb's funds from customer deposits, totaling over $400,000.00, which he stole. He also fails to address the ACH form he signed with NESNA allowing them to withdraw over $400,000.00 from Superb to pay loans he took, nor does he address the fact he signed over $300,000.00 worth of checks from Superb's Chase account – mostly to himself or his other entities – for which had no signing authority.

55. Deo fails to address these allegations because he cannot refute them.

56. I also wish to provide this Court with evidence that I rightfully own all of the vehicles that the Defendants have taken. See copy of proof of ownership documents annexed hereto as **Reply Exhibit "J."**

57. Of the eighty-nine (89) cars that remain, I have recently learned from a wholesaler, Netanel Orgab, that thirty-three (33) have been sold to three different wholesalers for cash.

58. Forty-eight (48) of these vehicles were "touched" by auditors at NMAC and Next Gear after August 3, 2023 in the days thereafter.

59. It remains unknown where the remaining nineteen (19) vehicles are.

60. Defendants waste a lot of time discussing the sign change at Superb. My other three dealerships are Team Imports LLC, Team Auto Group LLC, and Team Nissan Inc. The only reason Superb is not named Team is because my prior partner named it as such and I always intended to change the name to Team Auto Direct, of which I informed Deo.

61. The sign change does not violate DMV's regulations, and Defendants fail to point to any provision in the 89-page exhibit that states the sign change is not permitted.

62. Deo takes credit for "improving" things at Superb, but he did not do so in any manner.

63. First, he engaged in massive fraud that has not only hurt me, personally, but also consumers at large, because he failed to pay off loans on trade-in vehicles, refused to return any deposits after a customer decided not to move forward with a purchase, and created over fifty fictitious deals for customers that never took possession of a vehicle. See copy of Superb's June 2023 financial statement demonstrating a year-to-date loss in 2023 despite grossly falsely stated profits in April, May, and June 2023 annexed hereto as **Exhibit "K."**

64. Further, he inflated profits, sales, and financial statements in order to avail himself of loans, all of which were designed to siphon money from Superb at Superb's expense and mine.

65. Notably, this statement Deo provides is from his accountants, not from the factory.

66. It has to be clear that Deo came in November 2022 with the intent to cause this carnage because the entire business relationship was built on a lie, i.e., that a twenty-five percent (25%) interest in Northshore and Sunrise would be issued to me.

67. Indeed, as made evident herein, Deo caused me to terminate Cayer so that he can bring in his own accounting team to further perpetuate a fraud upon me.

68. This is all the more obvious when reviewing Deo's conduct in June 2023, where he obtained signed "vows" of my employees' duty of good faith and loyalty to his competing dealership group Gold Coast Automotive Group. See copies of Deo's dealership brochure with signed statements by various employees annexed hereto as **Reply Exhibit "L."**

69. If Deo was truly dedicated to Superb's success, there would be no need to create a whole set of new companies and have Superb's employees sign such documents.

70. Finally, I must regrettably address Defendants' cheap attempt to insert race as some sort of factor in what has transpired here.

71. As an initial matter, I am not Caucasian and am myself a minority. I am originally from Guatemala and my wife is half-African American.

72. Race plays no role in my dispute with Deo; the only reason I am pursuing my claims against him are because he blatantly defrauded me and has placed me on the precipice of financial ruin.

73. I have worked in dealerships for thirty (30) years before I bought my first dealership in 2020.

74. I respectfully request that this Court grant the relief requested herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 13, 2023.

_____
Robert Anthony Urrutia