UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (OEM) (ST)

**SUR-REPLY DECLARATION OF ROBERT ANTHONY URRUTIA IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION & PERMANENT INJUNCTION**

                                        Plaintiffs,

                -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING LLC,

                                        Defendants.

-----------------------------------------------------------------X

        Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury,

that the following is true and correct:

1.     I respectfully submit this sur-reply declaration in response to the Declarations of Defendant Anthony Deo ("Deo"), dated September 15, 2023 (the "Deo Declaration") (ECF Docket Entry 43) and in further support of Superb Motors Inc.'s ("Superb"), Team Auto Sales LLC ("Team"), and my (collectively hereinafter the "Moving Plaintiffs") motion for a preliminary injunction and permanent injunction.

2.     My negotiations with Deo regarding his forty-nine percent (49%) purchase of Superb included Deo's offer of a 25% ownership in his two other dealerships – Northshore Motors Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise"). When Deo offered a 25% ownership in his Northshore and Sunrise dealerships, it was with the understanding that Deo owned the two dealerships outright and that the two dealerships were not involved in any pending litigation.  Each of those representations by Deo were false.

3.     Moreover, while negotiating the Northshore and Sunrise dealerships into the agreement for Deo's 49% ownership in Superb, Deo made representations and presented financial statements establishing that the Northshore and Sunrise dealerships were profitable.

4.     Specifically, Deo represented that the Northshore and Sunrise dealerships were deriving substantial profits which would have resulted in an additional $60,000.00 to $80,000.00 net profit per month in income for me under the deal with Deo. However, I have come to realize that the financial statements that Deo provided to me regarding the Northshore and Sunrise dealerships were fraudulent, that the dealerships were not profitable, and were in fact losing money.

5.     In February 2023, Deo double-floored vehicles on Superb's floorplan line utilizing his Northshore and Sunrise dealerships, which put our partnership in jeopardy.

6.      When I confronted Deo about the double-floored vehicles, he informed me that Josh Aaronson ("Aaronson") owned the DMV licenses for the Northshore and Sunrise dealerships, explained that he was "bleeding out" financially, and that he was waiting on Defendant Michael Laurie ("Laurie") to fund a one million dollar ($1,000,000.00) working capital loan to recapitalize Northshore, Sunrise, and Superb.

7.      At that point, Deo had already lost approximately $300,000.00 at Superb and did not have any way to sell any vehicles at the Northshore and Sunrise dealerships in order to recapitalize those stores without funding.

8.      Thus, Deo admitted to me that he resorted to double-flooring vehicles that were already Superb's floorplan line utilizing floorplan financing he then had available at Northshore and Sunrise while he waited for Laurie to fund the working capital.

9.      When I became involved with Deo and his Northshore and Sunrise dealerships, Deo told me that Aaronson caused the issues relating to his loss of a DMV license to operate as a dealership, as well as his lack of funding for the Northshore and Sunrise dealerships.

10.     Deo and I began discussing DMV licenses in January 2023.

11.     To that end, I directed Alysia Cayer ("Cayer") to start the process to obtain the DMV licenses after Defendant Sarah Deo followed up with Cayer concerning this issue. See copy of email exchange with Cayer, Deo, Sarah Deo, and Laurie wherein she requested that we begin the process to obtain the DMV licenses annexed hereto as **Sur-Reply Exhibit "A"** ("Moving forward Tony and Anthony need to file new licenses under DBA names GCM Sunrise and GCM Syosset").

12.     However, on February 23, 2023, I informed Deo that the only way that I would continue to work with him as a partner in Superb was if Deo shut down Northshore and Sunrise.

13.     His dealerships were hemorrhaging money and it was important for Deo to focus on Superb until he could get his funding and new DMV licenses for the Northshore and Sunrise dealerships.  See ECF Docket Entry 38-2 at February 23, 2023 text messages.

14.     I informed Deo that he should have the DMV licenses in his name only to avoid any issues relating to these licenses, as Deo was having embroiled in a dispute with Aaronson.

15.     Surprisingly, Deo rejected the idea to have the licenses solely in his name.

16.     I was surprised by Deo's rejection to get the licenses only in his own name due to his issues with Aaronson. I now understand that Deo did not want to have the licenses only in his name because the license application requires information regarding felony convictions, and I learned of his conviction after the fact from Aaronson while my counsel was drafting the Complaint in the instant case that Deo has a criminal conviction for wire fraud.

17.     In April 2023, Deo began his plan to sabotage and destroy Superb.

18.     Deo declares that the Moving Plaintiffs knew all about the "Flushing Bank" account that Deo set up for Superb.  To the contrary, unbeknownst to me and without my authority, on April 4, 2023, Deo opened an account for Superb with Flushing Bank stating he was 100% owner of Superb.  I did not become aware that Deo opened a Flushing Bank account for Superb until August 9, 2023. See copy of the complete email correspondence relating to the Flushing Bank account annexed hereto as **Sur-Reply Exhibit "B."**

19.     Flushing Bank was thus well aware of my ownership of Superb as early as March, 2023 at which time I contacted Flushing Bank as I was considering moving all of my bank accounts to Flushing Bank.

20.     Indeed, on March 24, 2023, I began communicating with the branch Vice President, David Weinstein.

4

21.     Bruce Novicky, the Chief Operating Officer ("COO") of Superb, began sending in the required paperwork to Mr. Weinstein at Flushing Bank regarding all of my dealerships, including, but not limited to, Superb. Flushing Bank requested my tax returns and other documents relating to my dealerships, which I did provide.

22.     Notably, Deo's name did not appear on any of the documents provided to Flushing Bank. Thus, Flushing Bank was well aware that I was the owner of Superb and the other dealerships and that Deo was not.

23.     On March 30, 2023, Deo asked me to send the paperwork to Bob Puccio because he could apparently move the application process along quicker as Mike Laurie knew Puccio. I responded to Deo that I was already working with David Weinstein.  See copy of email exchange annexed hereto as **Sur-Reply Exhibit "C."**

24.     I did not end up opening an account with Flushing Bank at that time.

25.     With these full facts in front of the Court, Deo's attempts to convince this Court into believing that I knew of the Flushing Bank account he created without any authority through cherry-picked emails and without providing the complete email chain is a fool's errand

26.     This is because, as set forth above, while Deo and I discussed opening an account with Flushing Bank as early as February 2023, and started the process of doing so around that time, Deo later seized on the opportunity to unilaterally open an account with Flushing Bank by himself right after Cayer was terminated without ever telling me that he did so.

27.     Once I found out Deo was stealing in August 2023, *before* I discovered that Deo opened a bank account with Flushing Bank, I contacted Flushing Bank to transfer my accounts there as I had already started, but did not complete, the process to open accounts with them back in March 2023.

28.     On or about August 10, 2023, I first discovered that Deo had already opened an account with Flushing Bank back in April. It was only then that I had the extent to which Deo had defrauded me. Deo had stolen nearly $500,000.00 from Superb through the Flushing Bank account.

29.     I had also learned then that Deo was writing checks without authorization out of Superb's Chase Bank operating account to Laurie, Harry Thomasson, Esq., and himself in excess of $200,000.00 despite having no authority to do so pursuant to the operating agreement.

30.     Notwithstanding the fact that Deo was not a signer on the account with Chase Bank, see ECF Docket Entry 11-11, and he lacked signatory authority, the checks that Deo had fraudulently written were cashed.

31.     In June 2023, Deo had all Superb employees sign an employment "loyalty agreement" that they would only be loyal to Deo and would only work for him at his new group of dealerships without my involvement or knowledge. See ECF Docket Entry 38-12.

32.     Deo also held a grand opening event for his group of dealerships that I was not invited to and was never aware of.  See ECF Docket Entry 40.

33.     Deo declares that the Moving Plaintiffs were not truthful in stating that the Moving Plaintiffs never knew about Deo's applications for DMV licenses for Gold Coast Cars of Syosset LLC and Gold Coast Cars of Sunrise LLC.

34.     While Deo did inform me that he opened these entities as substitutes for Northshore and Sunrise due to his dispute with Joshua Aaronson, he never informed me about the remaining entities that he formed, nor was I ever aware that he intended on opening his own group of dealerships.

35.     Further, and importantly, Deo and I agreed in February 2023 that he was not going to operate Northshore or Sunrise and that he was instead going to focus on Superb.

36.     As such, I had no knowledge that Deo operating the new entities he formed in July 2023.

37.     Deo thus mischaracterizes the Moving Plaintiffs' allegations regarding their knowledge of the DMV licenses and the other dealerships.

38.     I was completely unaware that these two other dealerships were in operation, and later learned that they were being staffed by Superb employees while on Superb's payroll, and stocked with Superb vehicles that are the subject of the instant motion.

39.     Deo intentionally withheld this crucial information and had no intention of me being involved or included in the operation of the Gold Coast dealerships, despite signing an agreement in which he offered me a twenty-five (25%) interest in each of those dealerships!

40.     Deo utilized Superb's resources and employees for his own benefit to the detriment of Superb.

41.     Deo utilized in excess of three million dollars ($3,000,000.00) worth of Superb's vehicles, all personally guaranteed by me, to sell vehicles I purchased with the intention of keeping the amounts he received from the sales of those vehicles to the detriment of Superb and myself.

42.     On or about July 10, 2023, Deo informed me that he had obtained the DMV licenses in order to entice me to provide him with a Floorplan line with Next Gear Capital ("Next Gear"). Again, while he informed me just obtained these licenses, I did not know that the two dealerships were back in operation, and had no knowledge of the grand opening event he held in late July 2023, either.

43.     Thereafter, and at Deo's request, I contacted Next Gear regarding opening floorplan line for those two dealerships.  This bolstered my belief that they were not in operation at the time because a dealership cannot properly operate without such a line.

44.     Next Gear responded to my inquiry and informed me that they did not want to do any business with Deo.

45.     I had informed Next Gear that any issues it had with Deo were related to his falling out with Aaronson and offered to guarantee the floorplan line with Next Gear, which in turn required that I be a majority owner.   At this point in time, in early July 2023, I was completely unaware of Deo's fraudulent representations and I was further unaware that Deo was attempting to steal from me and Superb.

46.     Deo agreed that I would become a majority owner, with the original deal still in place wherein I would receive only 25% of the profits or a guaranteed "per car" amount, with Deo agreeing to indemnify me for any liabilities. See copy of the operating agreement executed by Deo annexed hereto as **Sur-Reply Exhibit "D."**

47.     I did not finalize and sign the operating agreement because I was scheduled to leave for vacation with my family and was traveling from July 18, 2023 through August 3, 2023.

48.     While I am a businessman and I understand that businesses fail, I cannot accept failure when it is procured by the fraud of another. Here, Deo has defrauded myself, Superb, the banks I have relationships with, and consumers at large.  I now realize that Deo had the intention to do what he did from the first day we met. defraud me and my dealerships and to steal from myself and my dealerships.   Further, as is evident, every sworn statement by Deo is false, disingenuous, and disproven by the evidence I support the statements of my declarations with.

49.     I respectfully request that this Court grant the relief requested herein.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 20, 2023.

_robert urrutia_
robert urrutia (Sep 20, 2023 12:28 EDT)

Robert Anthony Urrutia

8

# 2023-09-20 FINAL Urrutia Sur-Reply Declaration

Final Audit Report                                                        2023-09-20

| | |
|---|---|
| Created: | 2023-09-20 |
| By: | Emanuel Kataev (mail@emanuelkataev.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAq-kDxl1Aw6xAHodBZc8Llbs3FudMF-gQ |

## "2023-09-20 FINAL Urrutia Sur-Reply Declaration" History

Document created by Emanuel Kataev (mail@emanuelkataev.com)
2023-09-20 - 4:27:31 PM GMT- IP address: 65.51.198.20

Document emailed to tonyu814@gmail.com for signature
2023-09-20 - 4:27:53 PM GMT

Email viewed by tonyu814@gmail.com
2023-09-20 - 4:27:58 PM GMT- IP address: 74.125.210.68

Signer tonyu814@gmail.com entered name at signing as robert urrutia
2023-09-20 - 4:28:26 PM GMT- IP address: 96.56.214.187

Document e-signed by robert urrutia (tonyu814@gmail.com)
Signature Date: 2023-09-20 - 4:28:28 PM GMT - Time Source: server- IP address: 96.56.214.187

Agreement completed.
2023-09-20 - 4:28:28 PM GMT

**Adobe Acrobat Sign**