# MILMAN LABUDA LAW GROUP PLLC
**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
___

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

November 2, 2023

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

   *Re:* **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
      **Case No.: 2:23-cv-6188 (JMW)**

Dear Judge Wicks:

  This office represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") in the above-referenced case.

  Due to Defendants' contemptuous conduct and apparent lies, the Superb Plaintiffs respectfully submit this letter motion[1] to request an Order (i) finding the Deo Defendants[2] in civil contempt; (ii) returning the subject vehicles to the Superb Plaintiffs; (iii) awarding Plaintiff attorneys' fees; and (iv) issuing appropriate sanctions. When will the Deo Defendants ever learn to respect the rule of law?

**<u>Relevant Factual Background</u>**

  On September 29, 2023, the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") entered an Order granting the Superb Plaintiffs' Order to show cause and entering a preliminary injunction (hereinafter the "Injunction"). <u>See</u> ECF Docket Entry 55.

---

[1] The Superb Plaintiffs respectfully request leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter "Rules"), which requires that the Rules be construed, administered, and <u>employed</u> <u>by</u> <u>the</u> <u>court</u> and the parties to secure the <u>just</u>, <u>speedy</u>, and <u>inexpensive</u> determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1 (emphasis added). Because the Superb Plaintiffs have previously extensively briefed the underlying motion which led to the Injunction, they respectfully submit that this Court should grant leave to file the instant request as a letter motion rather than a formal motion or Order to show cause.

[2] The Deo Defendants consist of Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

The Injunction could not have been clearer. It provides, *inter alia*, that:

> 3) The following vehicles ("Injuncted Deo Vehicles") shall Remain or otherwise be at Deo Defendants' Deo Lots:
>
> > a. 2023 Chevrolet Suburban with a VIN # ending in "8675";
> > b. 2020 Mercedes-Benz GLE with a VIN # ending in "4078";
> > c. 2019 Land Rover Range Rover with a VIN # ending in "3297";
> > d. 2017 Rolls Royce with a VIN # ending in "2728";
> > e. 2016 Audi A6 with a VIN # ending in "9650";
> > f. 2016 Audi Q5 with a VIN # ending in 0272.
>
> 4) A Deo Lot only includes:
>
> > a. 180 Michael Drive, Syosset, NY 11791 (Northshore);
> > b. 189 Sunrise Highway, Amityville, NY 1701 ([Sunrise/Gold Coast]).
>
> 5) The term "Remain" means that the subject injuncted vehicle:
>
> > a. may not leave the geographic area or bounds of the appointed lot;
> > b. may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;
> > c. may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction;
> > d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.
>
> 6) No injuncted vehicle may be removed from the appointed lot absent this Court's Order.
>
> > a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

From the get-go, the Deo Defendants have admittedly failed to comply with the Injunction. Indeed, on October 3, 2023, the Deo Defendants advised the Court that "the [Northshore Deo Lot] is a secure location with indoor parking for the cars; the [Sunrise/Gold Coast Deo Lot] is not presently operating, there are no cars on that lot, it only has outdoor parking, and the location is not secure enough to leave the cars at the [Sunrise/Gold Coast Deo Lot] at this time while it is closed." See ECF Docket Entry 58. The Deo Defendants explained they no longer have access to the Northshore Deo Lot and requested that the vehicles be kept at Anthony Deo's home. Id.

The Superb Plaintiffs objected to this request, resulting in Judge Merchant referring the matter to this Court, and a letter motion for clarification has thereafter been filed at this Court's request with all the papers submitted by the Superb Plaintiffs and the Deo Defendants. See ECF Docket Entries 63, 72, and Text Only Order dated October 11, 2023 ("matters related to compliance with the [the Injunction] are hereby respectfully referred to Magistrate Judge Wicks"). This motion remains *sub judice*.

On October 28, 2023, the Superb Plaintiffs undertook efforts to ascertain the status of the vehicles the Deo Defendants were required to maintain on the Northshore Deo Lot and/or on the Sunrise/Gold Coast Deo Lot. The Deo Defendants themselves have stated that the vehicles may not be kept at the Sunrise/Gold Coast Deo Lot, and the vehicles are not located at the Northshore Deo Lot as of October 28, 2023. See Declaration of Alex Kikirov ("Kikirov Decl.") ¶¶ 4-6.

Similarly, although no permission has been granted to the Deo Defendants to keep the vehicles at Anthony Deo's home, the vehicles are not located there either. See Kikirov Decl. ¶¶ 7-16. Under the terms of the Injunction, the Deo Defendants were required to "inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle." See ECF Docket Entry 55. The Deo Defendants have not done so. As of today, the Superb Plaintiffs are unaware of the location of the vehicles, let alone whether the resale value of the vehicles have been damaged as the Injunction was designed to prevent.

**The Court Should Find the Deo Defendants in Contempt & Issue Appropriate Sanctions**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt," Spallone v. United States, 493 U.S. 265, 276 (1990) (quotation marks omitted), which may be imposed for failure to comply with an order of the court if that order is clear and unambiguous, the proof of noncompliance is clear and convincing, and the contemnor has not been reasonably diligent in attempting to comply with the order. See E.E.O.C. v. Local 638, 81 F.3d 1162, 1171 (2d Cir. 1996).

For a court order to be clear and unambiguous, it must leave no uncertainty in the minds of those to whom it is addressed. See Eros Entertainment, Inc. v. Melody Spot, L.L.C., No. 99-CIV.-1157 (SJ), 2005 WL 4655385 at 5 (E.D.N.Y. Oct. 11, 2005) (quoting Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114 (2d. Cir. 1988)). A "clear and unambiguous" order is one that is "specific and definite enough to apprise those within its scope of the conduct that is being proscribed." See Independent Living Aids, Inc. v. Maxi-Aids, Inc., 349 F.Supp.2d 509 (E.D.N.Y. 2004) (citations omitted).

Similarly, "[t]o find a person in criminal contempt, the evidence must show beyond a reasonable doubt that: '(1) the court entered a reasonably specific order; (2) defendant knew of that order; (3) defendant violated that order; and (4) his violation was willful.'" Dvorkin v. N.Y.-Presbyterian Hosp., No. 10-CV-03680 (GBD), 2011 WL 280801, at *2 (S.D.N.Y. Jan. 19, 2011) (quoting United States v. Cutler, 58 F.3d 825, 834 (2d Cir.1995)).

A civil contempt sanction serves "dual purposes: securing future compliance with court orders and compensating the party that has been wronged." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 146 (2d Cir. 2010) (internal quotation marks and alterations omitted); see also Badgley v. Santacroce, 800 F.2d 33, 36 (2d Cir. 1986) ("The purpose of civil contempt, broadly stated, is to compel a reluctant party to do what a court requires of him.").

Criminal contempt, however, "is punitive in nature, and seeks to vindicate the authority of the court." A.V. By Versace, Inc. v. Gianni Versace S.p.A., 446 F.Supp.2d 252, 258 (S.D.N.Y. 2006); see also Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994).

Here, there is no question that this Court entered a clear and unambiguous Order requiring the Deo Defendants to have the vehicles "Remain" on one of the Deo Lots, such that they: (a) may not leave the geographic area or bounds of the appointed lot; (b) may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered; (c) may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction; (d) may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle. It is apparent that the Deo Defendants have chosen to boldly ignore the Injunction.

Notably, despite being given an opportunity to do so, the Deo Defendants have not provided a sworn declaration certifying compliance with the Injunction. Instead, they submitted a declaration demonstrating that they are *not* in compliance with the Injunction. To add insult to injury, their sworn statement that the vehicles are located at Anthony Deo's home is not true. Their conduct is therefore contemptuous. It is similarly abundantly evident that the Defendants have not been reasonably diligent in attempting to comply with the Injunction; on the contrary, they are actively and purposefully repeatedly violating the Injunction.

Based on the foregoing, this Court should make a finding of contempt and issue appropriate sanctions as discussed below. Setting aside Defendants' direct violation of this Court's Order, under traditional principles of equity practice, courts have long imposed civil contempt sanctions to coerce the defendant into compliance with an injunction or compensate the complainant for losses stemming from the defendant's noncompliance with an injunction." See Taggart v. Lorenzen, 139 S. Ct. 1795, 1801 (2019) (internal quotation marks and citation omitted); see also Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996); Eros Entertainment, Inc., 2005 WL 4655385 at 6; SD Protection, Inc. v. Del Rio, 587 F. Supp. 2d 429, 434 (E.D.N.Y. 2008) (holding that the purpose of civil contempt is not to punish the contemnor but to compel its compliance and/or compensate the complaining party for its losses).

In cases where, as here, the civil contempt order is for coercive compliance, the court has broad discretion to fashion an appropriate damage award, which is typically computed in relation to the amount of time that passes during which the party fails to comply. See Eros Entertainment, Inc., 2005 WL 4655385 at 6. The amount of the fine for noncompliance with a court order "is left to the informed discretion of the district court[.]" See N.Y. State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1353 (2d Cir. 1989). When setting the fine, courts consider "the character and magnitude of the harm threatened by continued contumacy," "the probable effectiveness of any suggested sanction" in achieving compliance, and the contemnor's financial resources. See Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 658 (2d Cir. 2004) (quotation marks omitted).

There is thus no question that a clear and unambiguous Order exists, and the plain terms of this Court's orders do not reflect any "uncertainty in the minds of those to whom it is addressed." See King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). There is thus no doubt that the Deo Defendants knew they were violating the Preliminary Injunction when they failed to maintain the vehicles on the Northshore Deo Lot and now fail to keep them at Deo's residence.

Moreover, an appropriate fine should be issued as a sanction. Alternatively, sanctions would be appropriate under the Court's inherent power because the Deo Defendants' actions violating the Order were intentionally improper. See Mahoney v. Yamaha Motor Corp. U.S.A., 290 F.R.D. 363, 367 (E.D.N.Y. 2013) (The exercise of such inherent power, "requires the [movant] to present 'clear evidence that the challenged actions are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes'"). Regardless of the type or amount (if any) of sanctions imposed, the district court also "may award appropriate attorney fees and costs to a victim of contempt." See Weitzman, 98 F.3d at 719. "When deciding whether to award fees, courts have focused on the 'willfulness of the contemnor's misconduct.'" Id.; see also Vuitton et Fils, 592 F.2d at 130 ("[I]t is appropriate for the court ... to award the reasonable costs of prosecuting the contempt, including attorney's fees, if the violation of the decree is found to have been willful").

While it remains an open question whether a finding of willfulness is required to award fees, see Jacobs v. Citibank, N.A., 318 Fed. Appx. 3, 5 n.3 (2d Cir. 2008), courts have held that, notwithstanding, although willfulness "may not necessarily be a prerequisite to an award of fees and costs, a finding of willfulness strongly supports granting them." See Weitzman, 98 F.3d at 719. To survive review after finding willfulness, a district court "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt." Id.

Here, there exists support for all forms of sanctions, including further injunctive relief requiring the return of the vehicles, incarceration, coercive sanctions, and attorneys' fees and costs. Further, a coercive sanction of $5,000.00 per day should be issued until the vehicles are returned. The Deo Defendants should also be required to pay a monetary fine of $10,000.00 to the Superb Plaintiff. Moreover, Plaintiff's attorneys' fees should be awarded for the instant and prior applications.

Finally, based on Defendants' blatant disregard for this Court's Orders through their repeated violations of this Court's Orders, punitive measures are warranted. Accordingly, the Court should direct the United States Marshals Service to arrest individuals defendants, Anthony Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, and Michael Laurie until further order of this Court.[3] See CE Intl. Resources Holdings LLC v S.A. Mins., Ltd., 2013 U.S. Dist LEXIS 21798 (S.D.N.Y. Jan. 24, 2013); see also Labarbera v. Gulgar Trucking, 2020 U.S. Dist. LEXIS 21810 (E.D.N.Y. Feb. 4, 2020); Plaza Motors of Brooklyn, Inc. v. Rivera, E.D.N.Y. Case No. 19-cv-06336 (LDH) (RLM), July 14, 2022 Text Order.

Accordingly, Superb Plaintiffs' letter motion for civil and criminal contempt, further injunctive relief, fines, as well as attorneys' fees and costs should be granted.

The Superb Plaintiffs thanks this honorable Court for its time and attention to this case, and further respectfully submit that the instant motion is filed without bundling due to the emergency nature of same.

---

[3] Superb Plaintiffs refrain from seeking the arrest of individual Defendant Sarah Deo at this time because she is the mother of a newborn.

Dated: Lake Success, New York
      November 2, 2023                       Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (telephone)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, &*
*Robert Anthony Urrutia*

**VIA ECF**
Cyruli Shanks & Zizmor LLP
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

**VIA ECF**
HARRY R. THOMASSON, ESQ.
Harry R. Thomasson, Esq.
3280 Sunrise Highway, Box 112
Wantagh, NY 11793
(516) 557-5459 (cellular)
hrtatty@verizon.net

*Attorneys for Defendants*
*Anthony Deo*
*Sarah Deo,*
*Harry Thomasson,*
*Dwight Blankenship,*
*Marc Merckling,*
*Michael Laurie,*
*Car Buyers NYC Inc.,*
*Gold Coast Cars of Syosset LLC,*
*Gold Coast Cars of Sunrise LLC,*
*Gold Coast Motors Automotive Group LLC,*
*Gold Coast Motors of LIC LLC,*
*Gold Coast Motors of Roslyn LLC,*
*Gold Coast Motors of Smithtown LLC,*
*and UEA Premier Motors Corp.*

**VIA ECF**
Milber Makris Plousadis & Seiden, LLP
Peter Sieden & John Lentinello, Esqs.
1000 Woodbury Road, Suite 402
Woodbury, NY 11797-2511
(516) 870-1102 (office)
pseiden@milbermakris.com
jlentinello@milbermakris.com

*Attorneys for Defendants*
*Jones, Little & Co., CPA's LLP*
*& Thomas Jones CPA*

**VIA ECF**
Cullen and Dykman LLP
Thomas S. Baylis & Ariel E. Ronneburger, Esqs.
333 Earle Ovington Blvd, 2nd Floor
Uniondale, NY 11553
(516) 357-3700 (office)
tbaylis@cullenllp.com
aronneburger@cullenllp.com

*Attorneys for Defendant*
*Flushing Bank*