UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA,  189 SUNRISE
HWY  AUTO  LLC,  NORTHSHORE  MOTOR
LEASING, LLC, BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually
and derivatively as a member of 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN  BLVD  AUTO  LLC,  76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 2:23-cv-6188 (OEM) (JMW)**

**PLAINTIFFS' MEMORANDUM
OF LAW IN SUPPORT OF THEIR
MOTION TO DISQUALIFY HARRY
R. THOMASSON, ESQ. FROM
<u>REPRESENTING DEFENDANTS</u>**

                              Plaintiffs,


        -against-


ANTHONY  DEO,  SARAH  DEO,  HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING,  MICHAEL  LAURIE,  THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE  GROUP  LLC,  GOLD  COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN  LLC,  GOLD  COAST  MOTORS  OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP,  FLUSHING BANK, and
LIBERTAS FUNDING LLC,

                              Defendants.
-----------------------------------------------------------------X

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................1

FACTS ................................................................................................................1

STANDARD OF REVIEW ......................................................................................5

    A. WITNESS-ADVOCATE RULE ........................................................................6

    B. PRIOR REPRESENTATION OF SUPERB PLAINTIFFS ..............................7

    C. CONFLICT OF INTEREST WITH CO-DEFENDANTS.................................6

ARGUMENT .........................................................................................................9

    I. DISQUALIFICATION IS WARRANTED UNDER THE WITNESS-ADVOCATE
    RULE ..............................................................................................................9

    I. DISQUALIFICATION IS WARRANTED DUE TO THOMASSON'S PRIOR
    REPRESENTATION OF PLAINTIFFS.............................................................14

    I. DISQUALIFICATION IS ALSO WARRANTED DUE TO THOMASSON'S
    CONFLICT OF INTEREST WITH THE DEFENDANTS.................................17

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

Adams v. Village of Keesville,
    2008 U.S. Dist. LEXIS 61764, 2008 WL 3413867 (N.D.N.Y. 2008) .............................. 8

Allegaert v. Perot,
    565 F.2d 246 (2d Cir. 1977)........................................................................................... 15

Altschul v. Paine Webber,
    488 F. Supp. 858 (S.D.N.Y. 1980) ................................................................................. 8

Ardemasov v. Citibank, N.A.,
    14 F. Supp. 3d 39 (D. Conn. 2014)............................................................................... 12

Armstrong v. McAlpin,
    625 F.2d 433 (2d Cir.1980)............................................................................................ 8

Blue Planet Software, Inc. v. Games Int'l, LLC,
    331 F. Supp. 2d 273 (S.D.N.Y. 2004).......................................................................... 14

Bobal v. Rensselaer Polytechnic Inst.,
    916 F.2d 759 (2d Cir. 1990).......................................................................................... 15

BT Holdings, LLC v. Vill. of Chester,
    2015 WL 8968360 (S.D.N.Y. Dec. 14, 2015) .............................................................. 14

Burg v. Brunswick Hospital Center Inc.,
    1987 U.S. Dist. LEXIS 16777, 1987 WL 19431 (E.D.N.Y. 1987) .................................... 8

Capponi v. Murphy,
    772 F. Supp. 2d 457 (S.D.N.Y. 2009)............................................................................ 6

Cheng v. GAF Corp.,
    631 F.2d 1052 (2d Cir. 1980)................................................................................... 5, 18

Crews v. County of Nassau,
    2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007) .................................................. 18

Cypress Holdings, III, LP v. Sport-BLX, Inc.,
    No. 22-CIV.-1243 (LGS), 2022 WL 4239937 (S.D.N.Y. Aug. 23, 2022) ...................... 16

Decker v. Nagel Rice LLC,
    716 F. Supp. 2d 228 (S.D.N.Y. 2010)............................................................................ 6

Estates Theatres, Inc. v. Columbia Pictures Indus., Inc.,
    345 F. Supp. 93 (S.D.N.Y. 1972) ..................................................................... 8

Evans v. Artek Sys. Corp.,
    715 F.2d 788 (2d Cir. 1983)...................................................................... 7, 15

Felix v. Balkin,
    49 F. Supp. 2d 260 (S.D.N.Y. 1999)................................................................ 9

First NBC Bank v. Murex, LLC,
    259 F. Supp. 3d 38 (S.D.N.Y. 2017)........................................................ 12, 16

Flores v. Willard J. Price Assocs., LLC,
    20 A.D.3d 343 (1st Dept. 2005)..................................................................... 18

Galindo v State Farm Fire & Cas. Co.,
    2014 N.Y. Misc. LEXIS 1816 (Sup. Ct. Apr. 15, 2014)............................. 18,19

GBML LLC v. M2B Investors, Ltd.,
    No. 22-CV-3138 (RPK), 2022 WL 3566549 (E.D.N.Y. Aug. 18, 2022) ...................... 10

Giuffre v. Dershowitz,
    410 F. Supp. 3d 564 (S.D.N.Y. 2019)......................................................... 9, 10

Gleason v. Zocco,
    941 F. Supp. 32 (S.D.N.Y. 1996) ................................................................. 10

Glueck v. Jonathan Logan, Inc.,
    653 F.2d 746 (2d Cir.1981)............................................................................ 8

Gogo Apparel, Inc. v. True Destiny, LLC,
    No. 19-CIV.-5693 (GBD), 2020 WL 5578336 (S.D.N.Y. Sept. 17, 2020) ...................... 16

Gorbaty v. Wells Fargo Bank, N.A.,
    2011 WL 318090 (E.D.N.Y. Feb. 1, 2011)................................................... 10

Gov't. of India v. Cook Indus., Inc.,
    569 F.2d 737 (2d Cir. 1978)........................................................................ 15

Government of India v. Cook Industries, Inc.,
    569 F.2d 737 (2d Cir.1978)...................................................................... 8, 15

Guangcheng Chen v. Matsu Fusion Rest. Inc.,
    No. 19 Civ. 11895, 2020 WL 6135764 (S.D.N.Y. Oct. 16, 2020) ........................ 15, 16

Hempstead Video, Inc. v. Inc. Village of Valley Stream,
    409 F.3d 127 (2d Cir. 2005)............................................................................ 5, 15

Hickman v. Burlington Bio–Medical Corp.,
    371 F. Supp. 2d 225 (E.D.N.Y.2005) ................................................................. 8

Hull v. Celanese Corp.,
    513 F.2d 568 (2d Cir. 1975)................................................................................ 5

Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,
    146 F.3d 66 (2d Cir. 1998)............................................................................. 2, 19

John Wiley & Sons, Inc. v. Book Dog Books, LLC,
    126 F. Supp. 3d. 413 (S.D.N.Y. 2015)............................................................. 10

Kramer v. Time Warner Inc.,
    937 F.2d 767 (2d Cir. 1991)................................................................................ 2

Lamborn v. Dittmer,
    873 F.2d 522 (2d Cir. 1989)) ............................................................................. 6

Lemberg Law, LLC v. eGeneration Marketing, Inc.,
    2020 WL 2813177 (D.Conn., 2020) ................................................................. 12

MacArthur v. Bank of New York,
    524 F. Supp. 1205 (S.D.N.Y. 1981).................................................................. 12

Mitchell v. Metro. Life Ins. Co., Inc.,
    No. 01-CIV.-2112 (WHP), 2002 WL 441194 (S.D.N.Y. Mar. 21, 2002) ......................... 8

Multi-Juice, S.A. v. Snapple Beverage Corp.,
    No. 02-CV-4635, 2003 WL 1961636 (S.D.N.Y. 2003).................................... 11

Murray v. Metro. Life Ins. Co.,
    583 F.3d 173 (2d Cir. 2009)................................................................................ 6

Network Apps, LLC v. AT&T Mobility LLC,
    598 F. Supp. 3d 118 (S.D.N.Y. 2022).............................................................. 16

Planning & Control, Inc. v. MTS Group, Inc.,
    1992 U.S. Dist. LEXIS 3004 (S.D.N.Y. Mar. 11, 1992) ................................... 8

Purgess v. Sharrock,
    33 F.3d 134 (2d Cir. 1994)............................................................................... 10

Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers,
        378 F.3d 269 (2d Cir. 2004)........................................................... 9

Research Foundation for State University of New York v. Telluric Labs, LLC,
        2022 WL 16789970 (E.D.N.Y., 2022)............................................ 11

Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,
        687 F. Supp. 2d 381 (S.D.N.Y. 2010)........................................... 17

Rizzuto v. De Blasio,
        No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019) ............. 9, 12

Roddy v. Nederlander Producing Co. of America, Inc.,
        96 A.D.3d 509 (1st Dept. 2012).................................................... 18

Scantek Med., Inc. v. Sabella,
        693 F. Supp 2d 235 (S.D.N.Y. 2008)............................................ 15

Skidmore v Warburg Dillon Read L.L.C.,
        2001 US Dist LEXIS 6101 (S.D.N.Y. May 10, 2001)....................... 8

Tradewinds Airlines, Inc.,
        2009 WL 1321695 ........................................................................ 17

Tufamerica, Inc. v. Codigo Music LLC,
        2013 U.S. Dist. LEXIS 65777 (S.D.N.Y. May 7, 2013)................... 6

United States v. Prevezon Holdings Ltd.,
        839 F.3d 227 (2d Cir. 2016)...................................................... 7, 16

Zappin v. Comfort,
        2019 WL 409831 (S.D.N.Y. Feb. 1, 2019).................................. 14

**Rules**

Local Civil Rule 1.5(b)(5)................................................................... 6

New York Rules of Professional Conduct ("RPC") § 3.7. ................... 1

RPC § 1.9 ......................................................................................... 15

RPC § 3.7(a)....................................................................................... 9

RPC 1.7(a).......................................................................................... 17

## PRELIMINARY STATEMENT

Defendant, Harry R. Thomasson, Esq. ("Thomasson") – who maintained an office within the dealership of Superb Motors Inc. ("Superb"), during which time he represented Superb, Defendants Anthony Deo ("Deo") and his cohort, engaged in conduct central to this litigation and had first hand witness account of their activities – must be disqualified from representing his co-Defendants in this case based on the witness-advocate rule[1] since he will testify about necessary matters in connection with the claims and defenses raised herein.  Thomasson must also be disqualified due to a conflict of interest he has with his co-Defendants, as well as an inherent conflict of interest he has arising out of his prior representation of Superb and Northshore, on the one hand, and due to his status as a Defendant in this case, on the other.

## FACTS

On August 17, 2023, Plaintiffs[2] – a consortium of two separate automobile dealership groups and their principals – filed suit against Defendants – including individuals who served as general managers of Plaintiffs' dealerships, together with those that supported the general managers – for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Defend Trade Secrets Act ("DTSA"), and related common law claims under state law.  See ECF Docket Entry 1; see also ECF Docket Entry 65 (amended complaint).

---

[1] The witness-advocate rule is codified in § 3.7 of the New York Rules of Professional Conduct ("RPC").

[2] Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia are collectively hereinafter referred to as the "Superb Plaintiffs," while Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian Chabrier, Joshua Aaronson, and Jory Baron are collectively hereinafter referred to as the "IAG Plaintiffs," with the Superb Plaintiffs and IAG Plaintiffs collectively hereinafter referred to as the Plaintiffs.

Plaintiffs allege, *inter alia*, that Defendant Thomasson aided, abetted, and was complicit in Defendants' unlawful scheme to saddle Plaintiff Northshore Motor Leasing, LLC ("Northshore") with $735,000.00 in debt and then convert those funds to Deo which he used to purchase shares of Superb, and otherwise conspired with the Defendants to engage in fraud.  Id. at ¶¶ 136-147, 156-162.  Specifically, Deo, without authority and through fraudulent means, secured a loan on behalf of Northshore from Libertas Funding LLC ("Libertas")[3] in the amount of $735,000.00 (in exchange for $1,000,000.00 of Northshore's future receivables).  See NYSCEF Docket Entry 53.[4]  With regard to this loan which was improperly obtained by Deo, Thomasson unlawfully utilized his attorney escrow account to launder the proceeds from the fraudulently obtained loan as well as other fraudulent transactions, such as facilitating the fraudulent schemes perpetrated by the Defendants as outlined in Plaintiffs' pleadings and supporting various causes of action against Thomasson.  Id. at ¶¶ 160-162, 182, 220, 229, 236-237.  After Thomasson laundered these funds through his attorney escrow account he turned them over to Deo who used the funds to purchase an interest in Superb.  Thomasson's immediate delivery of these funds to Deo not only supports the aforementioned claims, but supports separate claims against Thomasson by the IAG Plaintiffs for contribution and indemnification for any potential liability to Libertas which, heretofore, asserted claims against the IAG Plaintiffs for the return of the $735,000 which they placed with Thomasson requesting and expecting that he would hold these funds in escrow pending resolution of the dispute as to the rightful owner of said funds.

---

[3] Libertas is a merchant cash advance business which is involved in purchasing accounts receivables by advancing funds upfront in exchange for collecting a greater amount in receivables.

[4] All NYSCEF Docket Entries refer to Chabrier, et al. v. Deo, et al., Index No.: 617224/2022 (Sup. Ct., Nassau Cty.), and federal courts may take judicial notice of the existence of state court documents.  See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998).

In addition, Thomasson, who maintained an office inside the dealership at Superb, witnessed the other complained-of conduct in the Complaint.  Id. at ¶¶ 230-232, 305;[5] see also ECF Docket Entry 12-1 at 3 ("... it should come as no surprise to hear from me, especially since I was also locked out of my office at Superb.  … I've been going to Superb since December, 2022, and have maintained an office there for over a month ...").

Such conduct including, when on August 3, 2023, Plaintiffs contacted the Nassau County Police Department to remove Deo and others from Superb because numerous banks complained vehicles were double-floored, prompting a physical audit of all vehicles there, and over 100 vehicles were missing with $760,0000.00 in vehicles double-floored by Deo.[6]  See Declaration of Bruce Novicky ("Novicky Decl.") at ¶ 3.  During the time the police were present in response to his complaint, Bruce Novicky ("Novicky"), the Chief Operating Officer ("COO") of Superb, observed Thomasson coming and going from the dealership, and learned that Thomasson absconded with files and a lamp from his office inside Superb.  See Novicky Decl. ¶¶ 4, 6.

Immediately preceding these events, on July 25, 2023, Thomasson had already been representing Superb, a plaintiff herein, as its attorney, appearing and filing an Answer on Superb's behalf in a separate case, Shorey v. Superb Motors Inc., et ano.; Case No.: 1:23-cv-3885 (ENV) (RER).  See Shorey ECF Docket Entry 15.[7]  Shorey was a consumer fraud case for a vehicle purchased in March 2023, during the time Deo worked for Superb.

---

[5] The complaint allegations are sworn to by Plaintiff Robert Anthony Urrutia ("Urrutia") in his declaration dated August 18, 2023.  See ECF Docket Entry 11.

[6] At that time, these were the only improprieties discovered.  As revealed in the pleadings, this was only the tip of the iceberg; an avalanche of fraudulent conduct was thereafter uncovered.

[7] See also ECF Docket Entry 24 ("Please be advised your Honor that my first direct involvement with Superb Motors was answering a civil Complaint on July 25, 2023 on behalf of Superb Motors in this very Court, Shorey v. Superb Motors, Inc., et al., Case No. 2:23-cv-03885 (ENV) (RER)").

In <u>Shorey</u>, Thomasson reiterated in a letter dated August 7, 2023 that he represented Superb.  See <u>Shorey</u> ECF Docket Entry <u>19</u> ("To be clear: I am the attorney of record for the Defendant, Superb Motors, Inc.").   Thomasson was paid by Superb for the legal services he provided to Superb.  <u>See Novicky Decl.</u> at ¶ 8, Exhibit ("<u>Ex.</u>") A.

Thomasson also previously represented Northshore in various actions.  See <u>Owhonda v. Credit Acceptance Corporation</u>, No. 2:21-cv-3413 (JMA) (ARL);[8] <u>see also</u> <u>Car Gurus v. Northshore Motors</u>, Index No.: 611780/2022.[9]

On August 21, 2023, Plaintiffs alluded to their position that Thomasson cannot serve as counsel for any party in this case, and that the instant motion was forthcoming.  See ECF Docket Entry <u>14</u>.

On September 14, 2023, this Court held oral argument on the Moving Plaintiffs' motion for injunctive relief.  See <u>Novicky Decl.</u> ¶ 10, <u>Ex.</u> C.

There, Thomasson represented the Deo Defendants and made the following statements to this Court:

---

[8] Northshore is a Defendant in that case.

[9] Separately, and in a growing trend, Thomasson has acted cavalier towards deadlines and appearances in this case.  He failed to appear for a telephonic meet-and-confer after confirming he would so appear on Tuesday, October 10, 2023.  <u>See</u> ECF Docket Entry <u>64</u>.  He then failed to appear for a virtual initial conference before the Hon. James M. Wicks, U.S.M.J. ("Judge Wicks") on October 17, 2023.  <u>See</u> ECF Docket Entry <u>69</u>.

Prior to this time, Thomasson engaged in other inappropriate conduct in this case.  On August 15, 2023, Thomasson threatened Emanuel Kataev, Esq. that he would write to the "bar grievance committee" because that same day, Mr. Kataev sent a demand letter to Thomasson and Deo for the return of Superb's vehicles.  <u>See</u> ECF Docket Entries <u>12-3</u> ¶ 1 and <u>11-18</u>.  Notably, in earlier correspondence dated August 9, 2023, Thomasson made other inappropriate threats.  <u>See Novicky Decl.</u> at ¶ 9, <u>Ex.</u> B (Thomasson's August 9, 2023 correspondence stating that "further complaints to the police will result in the offer of resolution discussed herein to be immediately withdrawn and without further notice").

4

> I had an office that Mr. Deo asked me to open there [at Superb] so that we could *see each other as necessary on business going forward* including what was expected to be the purchase of the remainder of Superb as well as the purchase of the Connecticut dealership of Mitsubishi controlled by Urrutia and one or two points that he also owns up in Connecticut. I had commenced in July and came into that office in July starting that work for Superb and there's two or three checks for a thousand dollars starting to pay me. … When I first started going to Superb in mid July, I had to park out on the street. There wasn't a place for me to park one car in July. No place. None. The fact of the matter -- and that was for a couple of weeks that I was there. But after the lockout, my client called and said, Harry, you're not going to believe this, but there are cops here that said I stole 102 cars and $760,000.

See Id. at 68:22-69:5, 72:1-7.

In the state court action previously filed by the IAG Plaintiffs, Thomasson has averred to his first-hand knowledge concerning events that transpired, which events relate to the allegations in the Complaint in this action.  See NYSCEF Docket Entry 94 ¶¶ 11-15.[10]

## **STANDARD OF REVIEW**

Disqualification of an attorney is a matter which rests within the sound discretion of the court.  See Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir. 1980), vacated on other grounds and remanded, 450 U.S. 903 (1981).

A federal court's power to disqualify an attorney derives from its "inherent power to 'preserve the integrity of the adversary process.'"  See Hempstead Video, Inc. v. Inc. Village of Valley Stream, 409 F.3d 127, 132 (2d Cir. 2005).  "[I]n the disqualification situation, any doubt is to be resolved in favor of disqualification.  See Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975).

---

[10] The state court action has since been withdrawn without prejudice due to the filing of this case. See NYSCEF Docket Entries 116 (stipulation of discontinuance without prejudice) and 110 (letter providing basis for request).

Courts consider the New York RPC and the ABA Model Rules of Professional Responsibility for guidance on a motion for disqualification. Id. at 132; see also Tufamerica, Inc. v. Codigo Music LLC, 2013 U.S. Dist. LEXIS 65777 (S.D.N.Y. May 7, 2013).[11]

Here, there are three (3) bases for which Thomasson should be disqualified: (1) he is a witness for his clients and as a party; (2) he has a conflict of interest with those Plaintiffs who he previously represented; and (3) he has a conflict of interest with his co-Defendants.

## A.    Witness-Advocate Rule

With a few exceptions, a "lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." See RPC 3.7(a). This rule is commonly referred to as the "advocate-witness" rule. See Decker v. Nagel Rice LLC, 716 F. Supp. 2d 228, 232 (S.D.N.Y. 2010). "Courts have interpreted this rule to require disqualification where" the movant meets its "burden of showing the necessity of the testimony and the substantial likelihood of prejudice." See Capponi v. Murphy, 772 F. Supp. 2d 457, 471-72 (S.D.N.Y. 2009).

"[T]o succeed on a motion for disqualification in these circumstances, the movant must show 'specifically how and as to what issues in the case prejudice may occur and that the likelihood of prejudice occurring is substantial.' " Id. at 472 (quoting Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989)). "'Prejudice' in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" See Murray v. Metro. Life Ins. Co., 583 F.3d 173, 178 (2d Cir. 2009) (quoting Lamborn, 873 F.2d at 531).

---

[11] Under Local Civil Rule 1.5(b)(5) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, "[i]n interpreting the Code, in the absence of binding authority …, this Court, in the interests of comity and predictability, will give due regard to decisions of the New York … courts, absent significant federal interests."

Rule 3.7(a) deals with the individual attorney, rather than a law firm, and provides that:

> [a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless:
>
> > (1) the testimony relates solely to an uncontested issue;
> >
> > (2) the testimony relates solely to the nature and value of legal services rendered in the matter;
> >
> > (3) disqualification of the lawyer would work substantial hardship on the client;
> >
> > (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or
> >
> > (5) the testimony is authorized by the tribunal.

**B.      Prior Representation of Superb Plaintiffs**

An attorney must be disqualified for prior representation if three elements are met: "(1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, the relevant privileged information in the course of his representation of the client." See United States v. Prevezon Holdings Ltd., 839 F.3d 227, 239 (2d Cir. 2016) (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)).

"Generally," if these three factors "are satisfied, trial taint is established and no further analysis is necessary." Id. at 241.

**C.      Conflict of Interest with co-Defendants**

Thomasson should also be disqualified due to a conflict of interest with the co-Defendants he represents.

With regard to a conflict of interest,[12] "motions to disqualify are subject to a high burden of proof" Hickman v. Burlington Bio–Medical Corp., 371 F. Supp. 2d 225, 229 (E.D.N.Y.2005); see also Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir.1978), and "[u]nder the restrained approach adopted by the Second Circuit, relief will be granted only when the facts concerning the lawyer's conduct poses a significant risk of trial taint," particularly when the "'attorney is at least potentially in a position to use privileged information concerning the other side through prior representation ..., thus giving his present client an unfair advantage.'" See Mitchell v. Metro. Life Ins. Co., Inc., No. 01-CIV.-2112 (WHP), 2002 WL 441194, at *4 (S.D.N.Y. Mar. 21, 2002) (quoting Armstrong v. McAlpin, 625 F.2d 433, 444 (2d Cir.1980), vacated on other grounds and remanded, 449 U.S. 1106 (1981)); see also Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir.1981).

As further set forth below, and based on the facts in this case, each of these reasons, standing alone, warrant disqualification of Thomasson from representing his clients, the co-Defendants here.

---

[12] Plaintiffs have standing to raise this argument.  See, e.g., Estates Theatres, Inc. v. Columbia Pictures Indus., Inc., 345 F. Supp. 93, 98 (S.D.N.Y. 1972); Burg v. Brunswick Hospital Center Inc., 1987 U.S. Dist. LEXIS 16777, 1987 WL 19431, *3 (E.D.N.Y. 1987) ("all attorneys, regardless of their position in the litigation, have an obligation to call to the Court's attention possible disciplinary rule violations. . . . Moreover, plaintiff's interest in finality of judgment gives it standing to complain of conflicts of interest which may impair the favorable results of any trial"); Adams v. Village of Keesville, 2008 U.S. Dist. LEXIS 61764, 2008 WL 3413867, *10 (N.D.N.Y. 2008) ("Given the court's oversight obligation, a motion to disqualify an attorney, even if brought by an unaffected party, is an appropriate means by which to bring the … issue to the court's attention"); see also Skidmore v Warburg Dillon Read L.L.C., 2001 US Dist LEXIS 6101, at *6-9 (S.D.N.Y. May 10, 2001) ("Ample precedent indicates that a party who is not part of the alleged conflict has standing to make a disqualification motion") (citing, e.g., Planning & Control, Inc. v. MTS Group, Inc., 1992 U.S. Dist. LEXIS 3004 at *2 (S.D.N.Y. Mar. 11, 1992) (holding that a party, although not a former client, has standing to move to disqualify an attorney); Altschul v. Paine Webber, 488 F. Supp. 858, 860 n. 1 (S.D.N.Y. 1980) ("Competence to raise disqualification is not limited to former or aggrieved clients. Ethical misconduct is a matter of public concern implicating the integrity of the bar . . . .") (citations omitted)).

## ARGUMENT

## THOMASSON SHOULD BE DISQUALIFIED AS COUNSEL FOR DEFENDANTS

### I.      Disqualification is Warranted Under the Witness-Advocate Rule

RPC § 3.7(a) bars Thomasson from representing the co-Defendants in this case.  The rule

is based upon concerns that:

> (1) the lawyer will appear to vouch for his own credibility, (2) the
> lawyer's testimony will put opposing counsel in a difficult position
> when he has to vigorously cross-examine his lawyer-adversary and
> seek to impeach his credibility, and (3) there may be an implication
> that the testifying attorney may be distorting the truth as a result of
> bias in favor of his client.

See Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers, 378 F.3d 269, 282-83

(2d Cir. 2004) (citation omitted).      Additionally, "when one individual assumes the role of both

advocate and witness it may so blur the line between argument and evidence that the jury's ability

to find facts is undermined." Id. (citation, internal quotation marks, and alterations omitted).  If the

party moving for disqualification makes specific allegations that raise doubts about whether a

conflict exists, such doubt should be resolved in favor of disqualification.  See Felix v. Balkin, 49

F. Supp. 2d 260, 267 (S.D.N.Y. 1999).

While the witness-advocate rule distinguishes "between an attorney who will be called on

behalf of his client and an attorney who will be called" by another party, see Giuffre v. Dershowitz,

410 F. Supp. 3d 564, 578 (S.D.N.Y. 2019), as set forth below, it is anticipated that both parties

will call Thomasson as a witness here.  However, when an attorney is also a party, disqualification

is routinely granted.   See Rizzuto v. De Blasio, 2019 WL 1433067, at *6 (E.D.N.Y., 2019)

(granting disqualification where attorney was a direct adversary in related proceedings).[13]

---

[13] The Rizzuto court's decision is especially instructive as, here, Thomasson is a direct adversary
in the same proceeding.

Courts grant motions to disqualify where there is a substantial likelihood that an attorney's testimony will be necessary.  See Giuffre v. Dershowitz, 410 F. Supp. 3d 564 (S.D. N.Y. 2019) (holding, under New York law, that advocate-witness rule required that law firm be disqualified from representing plaintiff in defamation action, where defamation claim was based in part on defendant's statement that plaintiff conspired with firm to extort him, plaintiff's complaint referred to conversations and communications between firm attorney and defendant in which defendant asserted that plaintiff was mistaken in her claim, and defendant announced his intention to take depositions of firm lawyers to help prove truth of his extortion assertion).  Crucially, a disqualification motion that is brought prior to commencement of discovery eliminates the prejudice to the advocate-witness client. See Id. (citing Gorbaty v. Wells Fargo Bank, N.A., 2011 WL 318090, at *3 (E.D.N.Y. Feb. 1, 2011) (following initial conference) and Gleason v. Zocco, 941 F. Supp. 32, 36 (S.D.N.Y. 1996) (granting motion to disqualify "immediately after the action was commenced" would make "prejudice... insignificant").  When considering the "necessity" prong of the disqualification inquiry, "a court should examine factors such as the significance of the matters, weight of the testimony, and availability of other evidence." See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 126 F. Supp. 3d 413, 421-22 (S.D.N.Y. 2015).  "For purposes of considering a disqualification motion, the Court's inquiry does not focus on whether the attorney possesses discoverable knowledge, but rather whether trial of the case will in fact require his testimony." Id.; see also Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) ("Disqualification may be required only when it is likely that the testimony to be given by [counsel] is necessary"). "[T]he key inquiry in connection with the motion to disqualify is the potential prejudice to the client ... arising from the involvement of the 'attorney-witness.'"  See GBML LLC v. M2B Investors, Ltd., No. 22-CV-3138 (RPK), 2022 WL 3566549, at *2 (E.D.N.Y. Aug. 18, 2022).

10

Here, it is anticipated that Thomasson will testify on his own behalf and be called by his co-Defendants to testify at trial; even if not, he will be called to testify by Plaintiffs. Thomasson will have to testify about the misappropriated funds from Libertas which he laundered through his attorney escrow account and turned over to Deo. Thomasson will also be called as a witness to testify about his connection to, and his conversations with, Detective Marx, who threatened Plaintiff Joshua Aaronson with arrest if he did not turn over funds misappropriated by Deo. See ECF Docket Entry 65 ¶¶ 158-165. Only Thomasson can testify concerning these events.

The foregoing testimony would be significantly useful for Thomasson's co-Defendants because Defendants will rely on their counsel – an officer of the court – to corroborate their position. This testimony is also necessary because Plaintiffs will rely on it to establish that Thomasson was in cahoots with the remaining Defendants and improperly used his escrow account to achieve his co-Defendants' fraudulent ends. Moreover, Thomasson is the only witness who can testify about the origin of the funds received from Libertas into his attorney escrow account and where those funds went thereafter. Thomasson will also have to testify about his observations of his co-Defendants related to the allegations in the Complaint. He was an eyewitness to the vehicles his co-Defendants removed from Superb's lot, and the discussions that precipitated those and other decisions made by Defendants. All of this testimony is necessary and crucial to Plaintiffs' claims and presumably to Defendants' defenses thereto. As a result, Thomasson should be disqualified. See Research Foundation for State University of New York v. Telluric Labs, LLC, 2022 WL 16789970, at *4 (E.D.N.Y., 2022) ("[W]here an attorney is the 'sole representative for [a party] at numerous meetings and conversations negotiating the terms of [an agreement]' at issue in the litigation, disqualification is likewise warranted" (quoting Multi-Juice, S.A. v. Snapple Beverage Corp., No. 02-CV-4635, 2003 WL 1961636, at *7 (S.D.N.Y. 2003))).

The purpose of disqualification under the rule is not merely logistical, but is to ensure that the attorney can provide representation that is uncompromised by his involvement in the underlying facts of the case, preserving his objectivity and the integrity of the adversary process. See Rizzuto v. De Blasio, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067, at *8 (E.D.N.Y. Mar. 29, 2019) (citing First NBC Bank v. Murex, LLC, 259 F. Supp. 3d 38, 56 (S.D.N.Y. 2017)); see also Ardemasov v. Citibank, N.A., 14 F. Supp. 3d 39, 48 (D. Conn. 2014) ("An advocate who also ought to be called as a witness hurts his client because the advocate's ability to objectively assess his client's case may become clouded.") (citation and internal quotation marks omitted); Lemberg Law, LLC v. eGeneration Marketing, Inc., 2020 WL 2813177, at *26–27 (D.Conn., 2020) ("Sergei Lemberg is not an individual litigant in the case, but rather counsel for a legal entity, the law firm Lemberg Law LLC. By being called to testify about his personal knowledge of the facts, he might find it difficult to maintain his objectivity and professionalism on behalf of his client").

After all, "[i]f a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness." See MacArthur v. Bank of New York, 524 F. Supp. 1205, 1208 (S.D.N.Y. 1981) (quoting "Ethical Consideration 5-9" ("EC 5-9") of American Bar Association Committee on Ethics and Professional Responsibility, Formal Opinion 339 (Jan. 31, 1975)). Moreover, "[a]n advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility." Id. (quoting EC 5-9). Thus, regardless of the fact that counsel's interests lie on the same side of the action as those of his client, "[t]he roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of [the party he represents], while that of a witness is to state facts objectively." Id. (quoting EC 5-9). Accordingly, setting aside the fact Thomasson is a party, and the fact that his interests are aligned with the co-Defendants he represents, he must nonetheless be disqualified.

12

Thomasson's testimony will also likely be necessary to bolster that of his co-Defendant, Deo, who is a convicted federal felon who pled guilty to fraud, and will have little, if any, credibility with this Court based on his conviction and the mountain of evidence showing he committed massive frauds at not one, but two, separate dealership groups.  See United States v. Deo, No. 1:10-cr-631 (JGK), ECF Docket Entry 31.

Deo's *modus operandi* at both of Defendants' dealerships was the same: gain the trust of the principals, establish control over the financials, obtain funding and loans from every available credit facility, and abscond with the funds before anyone could catch on.  There is thus no doubt that Deo's testimony will be given little weight such that Thomasson's testimony will be required.

As such, Thomasson's testimony is necessary for this separate reason.  Meanwhile, the evidence shows that Thomasson was in a unique position to observe Deo's conduct at the dealership and had extensive dealings with him.  For example, Thomasson can testify as to where Superb's vehicles went when they were removed from the lot; indeed he admits that the Defendants are in possession of *Superb's* vehicles.  See ECF Docket Entry 13 at 2 ("everyone involved … knows that 20+ cars belonging to Superb are … located at Deo's leasehold … My client will not dispose of any automobiles in his possession belonging to Superb").

Because Thomasson was able to observe these events, it is reasonably likely that he observed other events and was privy to other discussions that he can testify about to either corroborate or discredit his co-Defendants' testimony.  It follows, therefore, that there exists a substantial likelihood that Thomasson's testimony would likely be prejudicial to the Defendants and Plaintiffs.

Accordingly, Thomasson must be disqualified under the witness-advocate rule.

**II. Disqualification is Warranted due to Thomasson's Prior Representation of Plaintiffs**

Thomasson must also be disqualified because he previously served as counsel for both Superb and Northshore, both of whom are now suing him. Thomasson has not sought, and neither Superb nor Northshore has given Thomasson consent, to represent parties adverse to it. Further, during the time Thomasson acted as counsel to Superb and Northshore, he obtained information from each of them concerning their respective operations and other details that he would never have come to know absent his prior representation of Superb and Northshore, all of which is central to the instant litigation. He must thus be disqualified on this ground, as well.

The threshold issue for successive conflicts under New York ethical rules and the Second Circuit is whether Defendants had an attorney-client relationship with the lawyer or firm sought to be disqualified. See Zappin v. Comfort, 2019 WL 409831, at *3 (S.D.N.Y. Feb. 1, 2019).

When determining whether an attorney-client relationship exists, a court considers several factors such as (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; and (3) whether the purported client believes that the attorney was representing him and whether this belief is reasonable. See BT Holdings, LLC v. Vill. of Chester, 2015 WL 8968360, at *4 (S.D.N.Y. Dec. 14, 2015) (citation omitted). "In certain circumstances, disqualification may be appropriate when an attorney gains access to the confidences even of someone who is not formally a client." See Blue Planet Software, Inc. v. Games Int'l, LLC, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004).

Where there is successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel;
>
> (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

14

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

See Hempstead Video Inc., 409 F.3d at 133 (quoting Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983)). "The substantial relationship test is met if the relationship between issues in the prior and present cases is patently clear, identical or [is] essentially the same." See Scantek Med., Inc. v. Sabella, 693 F. Supp 2d 235, 239 (S.D.N.Y. 2008) (quoting Gov't. of India v. Cook Indus., Inc., 569 F.2d 737, 739-40 (2d Cir. 1978)) (internal alterations omitted).

Additionally, when a lawyer jointly represents a company and an employee, the party seeking disqualification must show the "attorney was in a position where he could have received information which his former client might reasonably have assumed the attorney would withhold from his present client." See Allegaert v. Perot, 565 F.2d 246, 250 (2d Cir. 1977). This standard is derived from RPC 1.9(a), which provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client." See RPC § 1.9.

"[D]isqualification [under these circumstances] has been ordered only in essentially two kinds of cases," including "where the attorney is at least potentially in a position to use privileged information concerning the other side through prior representation." See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764-65 (2d Cir. 1990)[14] (alterations omitted); accord Guangcheng Chen v. Matsu Fusion Rest. Inc., No. 19 Civ. 11895, 2020 WL 6135764, at *1 (S.D.N.Y. Oct. 16, 2020).

---

[14] The other kind is where an attorney's conflict of interests in violation of RPC undermines the court's confidence in the vigor of the attorney's representation of his client. See Bobal, 916 F.2d at 764-65.

"A 'substantial relationship' exists where facts pertinent to the problems underlying the prior representation are relevant to the subsequent representation." Id.; accord Guangcheng Chen, 2020 WL 6135764, at *2.    "The substantial relationship test removes the need for courts to make direct inquiry into whether confidential information was actually transmitted." See Prevezon, 839 F.3d at 241. Instead,

> The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained.

Id.; accord Network Apps, LLC v. AT&T Mobility LLC, 598 F. Supp. 3d 118 (S.D.N.Y. 2022).

To avoid this, the opposing party must demonstrate that no such confidences were disclosed; for example, time sheets might show de minimis work.  See Cypress Holdings, III, LP v. Sport-BLX, Inc., No. 22-CIV.-1243 (LGS), 2022 WL 4239937, at *4 (S.D.N.Y. Aug. 23, 2022); First NBC Bank v. Murex, LLC, 259 F. Supp. 3d 38, 71 (S.D.N.Y. 2017) (finding that former counsel might use confidential information against former client even where "[m]uch of Murex's confidential data was also sent to the EPA"); Gogo Apparel, Inc. v. True Destiny, LLC, No. 19-CIV.-5693 (GBD), 2020 WL 5578336, at *2 (S.D.N.Y. Sept. 17, 2020) (finding a conflict based on inference that "[i]n order to competently represent [the former client] on these issues, a reasonable attorney would be expected to acquire a minimum base of knowledge" that is relevant to the present case).   In Shorey, Superb was accused of consumer fraud by an individual who purchased a vehicle from the dealership.  Thomasson entered an appearance in that case and filed an answer denying the allegations there.  See Shorey ECF Docket Entry 15.  Further, Thomasson maintained an office within Superb and it can therefore be inferred he had access to Superb's internal documents.

In this case, Thomasson indisputably had access to both Superb's and Northshore's[15] dealerships – as he admittedly maintained an office there – there can be no question that he had access to relevant privileged information.  See Tradewinds Airlines, Inc., 2009 WL 1321695 ("An attorney's prior access to relevant but non-discoverable information gives her an unfair advantage in litigation against a former client").  This is bolstered by the fact that Thomasson represented Superb in Shorey and Northshore in Owhonda, both consumer fraud cases, while operating his law practice out of Superb's dealership and conducting meetings at Northshore's dealership.   Given Thomasson's access to both dealerships, there is a great risk he had access to privileged information.   As such, Thomasson must be disqualified on this basis, as well.

## III.   Disqualification is Also Warranted Due to Thomasson's Conflict of Interest with the Defendants

Where an attorney has an interest adverse to a client, a "*per se*" standard applies and the attorney must be disqualified unless he or she can demonstrate "'at the very least, that there will be no actual or apparent conflict in loyalties or diminution in the vigor of his representation.'"  See Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc., 687 F. Supp. 2d 381, 388-89 (S.D.N.Y. 2010).

This standard is based on the ethical principle that an attorney must exercise independent judgment on behalf of a client.  Id.

RPC 1.7(a) states in pertinent part that a lawyer shall not represent a client if the representation will involve the lawyer in representing differing interests or a reasonable lawyer would conclude that there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

---

[15] See NYSCEF Docket Entry 59 ¶¶ 9-10 (affirming representation of Northshore and that Thomasson held many meetings there).

Indeed, "an attorney may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligation of the professional relationship."  See Galindo v State Farm Fire & Cas. Co., 2014 N.Y. Misc. LEXIS 1816, 9-11 (Sup. Ct. Apr. 15, 2014) (quoting Roddy v. Nederlander Producing Co. of America, Inc., 96 A.D.3d 509 (1st Dept. 2012)).  As explained in Galindo:

> An attorney must avoid not only the fact, but even the appearance, of representing conflicting interests. [T]he greatest trust between [people] is the trust of giving counsel. This unique fiduciary reliance . . . is imbued with ultimate trust and confidence. Furthermore,[t]he duty to deal fairly, honestly and with undivided loyalty superimposes onto the attorney-client relationship a set of special and unique duties, including maintaining confidentiality, avoiding conflicts of interest,. . . and honoring the clients' interests over the lawyer's. Indeed, the lawyer may not place himself in a position where a conflicting interest may, even inadvertently, affect, or give the appearance of affecting, the obligations of the professional relationship.

Id. (citing Flores v. Willard J. Price Assocs., LLC, 20 A.D.3d 343 (1st Dept. 2005).

A violation of Rule 1.7(a), where an attorney puts his or her own personal interests above his former clients' interests has resulted in disqualification of counsel.  See Crews v. County of Nassau, 2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007);[16]

---

[16] In Crews, the court held: "Majid's testimony is likely to be necessary because it concerns matters of significance to plaintiffs' claims, would carry substantial weight in this case, and could not be substituted with other evidence. Many of plaintiffs' claims rely on a showing of defendants' knowing or intentional conduct in arresting, prosecuting, and confining Crews despite knowledge of his actual innocence. … Establishing that defendants delayed in informing Majid of the actual robbery date and then did not act even after being told of Crews' alibi are both critical facts in plaintiffs' attempt to prove defendants actually intended to mislead and to harm plaintiffs.  As such, Majid's testimony is necessary to plaintiffs' case because first, it is undisputed that the only direct evidence regarding the conversations between Majid and the DA's Office is the testimony of Majid himself and of the ADAs, respectively. Second, as discussed *supra*, defendants dispute both the timing and the substance of these alleged conversations, leaving Majid's testimony as the only direct evidence supporting plaintiffs' depiction of certain critical events-specifically, the alleged phone conversations between Majid and the DA's office. …"

Similarly, in <u>Galindo</u>, the court held: "It is clear that it is more than 'likely' that plaintiff's attorney will be called as a witness to testify with regard to significant issues of fact concerning the very substance of this lawsuit, i.e. the submission of an invoice for payment by defendant for work allegedly performed by an entity under which he himself conducted business. Attorney Orr's testimony with regard to the invoice submitted on behalf of his business is necessary inasmuch as defendant relied on its evaluation of that claim in denying plaintiff coverage for having submitted a fraudulent claim, and, clearly, such testimony would be damaging to plaintiff. Attorney Orr appears to be the only person with knowledge of the work allegedly provided to plaintiff by his company, which is a significant factual issue in this matter, thus he is a necessary witness and must be disqualified." <u>See</u> 2014 N.Y. Misc. LEXIS 1816.

Here, Thomasson's status as a Defendant warrants disqualification because there is a likelihood he will act in his own personal interest to the detriment of the co-Defendants. Thomasson is incontrovertibly intertwined in the tangled web of lies Defendants have spun, as he directly facilitated the fraud upon Superb by assisting Deo in transferring converted funds from Northshore to Urrutia. <u>See</u> ECF Docket Entry <u>65</u> ¶¶ 155-165. He then observed firsthand in his office at Superb how Deo engaged in a massive fraud for Deo's and his personal benefit. Notably, Thomasson was also a Defendant in the state court action filed by the IAG Plaintiffs.[17] <u>See</u> NYSCEF Docket Entries <u>1</u> and <u>107</u>. In other cases, Thomasson downplays this fact. <u>See</u> <u>Owhonda</u>, ECF Docket Entry <u>41</u> ("I am only named in that action … to the extent that corporate funds were once in my escrow account (although they were moved prior to any action being filed and it is expected that I will be dismissed as a Defendant once the Motions are decided").

---

[17] As set forth *supra*, judicial notice may be taken of documents filed in other cases and other courts. <u>See</u> <u>Int'l Star Class Yacht Racing Ass'n</u>, 146 F.3d at 70.

However, the claims brought against him based on his incontrovertible allegiance to Deo, entrenched by his operating his practice out of Superb, an automobile dealership, makes it evident that there is an apparent and implied appearance of conflict between Thomasson's interests and that of the remaining Defendants he seeks to improperly represent.

Thomasson must be disqualified for this reason as well.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court issue an Order disqualifying Thomasson from representing the Defendants in this case, together with such other and further relief as this honorable Court deems just, equitable, and proper.

Dated:  Lake Success, New York
          October 18, 2023

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

By:  */s   Emanuel Kataev, Esq._____*
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: New York, New York
      October 18, 2023

**CYRULI SHANKS & ZIZMOR LLP**

_____/s_____
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*