UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                          Case No. 2:23-cv-6188  (OEM)(JW)

SUPERB MOTORS, INC., TEAM AUTO SALES LLC.,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HIGHWAY AUTO LLC., NORTHSHORE MOTOR
LEASING, LLC., BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually and
derivatively as a member of 189 SUNRISE HWY AUTO,
LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, and ISLAND AUTO
MANAGEMENT, LLC,

                             Plaintiffs,

    -against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON,
DWIGHT BLANKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, TOMAS JONES, CPA, CAR BUYERS
NYC INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD COAST
MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS CORP.,
DLA CAPITAL PARTNERS INC., JONES LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING,
LLC,

                             Defendants.

-----------------------------------------------------------------------X

### DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISQUALIFY

Defendants ANTHONY DEO, SARA DEO, HARRY THOMASSON, DWIGHT

BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, CAR BUYERS NYC INC.,

1

GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, and UEA PREMIER MOTORS CORP., by and through their attorney, Harry Thomasson, hereby submit the within Memorandum of Law in Opposition to Plaintiffs' Motion to Disqualify, as follows:

## UNDISPUTED FACTS

During or about 2016, Defendant Anthony Deo and his wife commenced operation of a used car business at 180 Michael Drive, Syosset, New York. During or about 2018, Anthony Deo formed the corporation known as NORTHSHORE MOTOR LEASING, LLC, co-Defendant herein.

Thereafter, during or about 2019, Anthony Deo entered into a verbal agreement with David Baron for Mr. Baron to provide a floor plan at the business in return for ownership of the business, which, if it performed well enough, would allow for Anthony Deo to "redeem" his interest in the business. Through the business's performance as well as in excess of one million dollars ($!,000,000.00) in returns to the business, Anthony Deo was allowed to redeem his interest and the business was returned to him. In addition, and also via verbal agreement, Anthony Deo and his wife (for accounting purposes) were permitted to purchase (and did purchase) all right, title and interest in the business known as 189 SUNRISE HWY AUTO, LLC, co-Defendant herein. Please see last year's tax returns for those businesses attached hereto as Exhibit D, along with an email chain in which Josh Aaronson approved those tax returns listing Anthony Deo and Sara Deo as sole members of those LLCs. The Aaronson approval is on page 4 of the email chain, at the top of the page.

After the death of David Baron, Josh Aronson stepped into the shoes of David Baron and continued to provide a floor plan for both NorthShore and 189 Sunrise. The involvement of the other Plaintiffs are largely unknown to the Defendants as Anthony Deo barely met with any of the Plaintiffs other than Josh Aronson. Given this lawsuit and the additional Plaintiffs associated with Josh Aaronson, it is clear that he (Josh Aronson) acted as agent for all of the other Aaronson Plaintiffs in the within dealings with the Defendants.

At some time prior to the Pandemic and prior to the death of David Baron, undersigned counsel (Harry Thomasson) was hired by Anthony Deo to represent his own, his wife's (Sara's) and NorthShore's and 189 Sunrise's interests as an attorney. The work undersigned performed included typical complaints and in court before the Attorney General's office (*see* the Declaration of Harry Thomasson attached hereto), and also some proposed purchases of NorthShore, 189 Sunrise, and Baron Nissan by the Deos, although only the Baron Nissan purchase ended up involving Thomasson's professional involvement.

During November, 2022, Josh Aaronson and his group left NorthShore and 189 Sunrise, literally stole $735,000.00 from their bank accounts (it was returned once Anthony Deo reported the theft to the Nassau County Police), and took all company files from both businesses on the way out the door. Aaronson sued Deo and obtained an *ex parte* Oder, which was later stricken and denied once undersigned responded on behalf of Deo, with the Court ruling that those (Aaronson) Plaintiffs "failed to demonstrate a likelihood of success on the merits" of that case. *See* the Nassau (NY) Supreme Court Order attached hereto as Exhibit A; the presentation made by undersigned to that Court included the tax returns and emails attached hereto as Exhibit D.

Also during November, 2022, Anthony Deo was introduced to Anthony Urrutia, co-Plaintiff herein, by Michael Morgan. It was only since the commencement of this action that

3

Deo learned that Michael Morgan not only knows Anthony Urrutia well, but also knows Josh Aaronson for many years. In addition, undersigned recently learned that the Urrutia Plaintiffs' attorneys, Milman Labuda (and attorney Kateav, in particular) represented the Aaronson Plaintiffs in connection with Pandemic relief funds that were taken from the accounts of NorthShore and 189 Sunrise; it was Anthony Deo's questioning of the whereabouts of those funds that contributed to the actions of the Aaronson Plaintiffs in leaving, locking, and shuttering NorthShore and 189 Sunrise last November *despite* Aaronson's "approval" and admission in Exhibit D hereto that Deo owns those businesses. So contrary to Plaintiffs' attorneys' representations made during the Injunction hearing before Judge Merchant, the Aaronson Plaintiffs on the one hand, and the Urrutia Plaintiffs on the other hand certainly knew of each other and had contacts prior to August, 2023.

Attorney Thomasson's involvement with Superb Motors is limited to 1) obtaining the use of an office at Superb from Anthony Deo for convenience purposes from mid-July, 2023, through the night of the Lockout, August 3, 2023, a period of approximately 3 weeks; 2) commencing a business search for Deo's eventual purchase of one or more dealerships (including the other half of Superb) during the last week of July, 2023, about 10 days before the Lockout (*see* Exhibit B attached hereto); 3) providing an Answer to a Complaint before this Court during the last week of July, 2023 (*see* Exhibit C attached hereto); 4) being paid $1,000.00 by Superb in connection with preparing and filing Exhibit C; and 5) after the Lockout, Thomasson was the go-between for the Urrutia and Deo parties in helping to arrange and cooperate with certain audits of automobiles that were actually conducted for Superb Motors and its floor plan providers. *See* the Declaration of Harry Thomasson accompanying herewith.

Undersigned adamantly denies any and all wrongdoing herein, and further denies that the above in any way moves the bar in trying to disqualify undersigned; the within work for and with Superb simply is meaningless in the instant litigation and has no impact whatsoever on these Plaintiffs; it is only the Defendants who are harmed by the instant frivolous Motion practice. As set forth in the attached Declaration of Harry Thomasson, undersigned has never met any one of these Plaintiffs, never opposed any one of these Plaintiffs in any matter outside of this and the Nassau Supreme Court case, never worked for or against any one of the corporate Plaintiffs except for professional services as outside counsel, only, provided to NorthShore, 189 Sunrise, and the very limited Superb work/contacts set forth in the last paragraph on the previous page, *supra*.

## CASE POSTURE

The Nassau (NY) Supreme Court case commenced by the Aaronson Plaintiffs resolved thusly: The Aaronson Plaintiffs obtained an *ex parte* Order to Show Cause from that Court during December, 2022; undersigned opposed that *ex parte* Order to Show Cause and all paperwork was submitted after oral argument on May 31, 2023; that Court issued the Order finding the Aaronson Plaintiffs' position without merit via the Court Order attached as Exhibit A hereto; the Parties to that action submitted a joint Stipulation dismissing that action after the commencement of this action.

It is the position of undersigned that he has never committed wrongdoing as alleged by these Plaintiffs; and that the allegations are merely heavy handed yet vapid attacks for the sole purpose of creating the color of wrongdoing without any meat on those bones in order to commence the instant Motion practice. I defeated Millman Labuda on a major case more than 15 years ago; I obtained the ruling against the Aaronson Plaintiffs attached hereto as Exhibit A in

which that Court held their claims to be without merit; and now the Urrutia Plaintiffs failed to obtain any relief requested in their Injunction application except as to those items offered by undersigned, only.

Metaphorically, these Plaintiffs each did to the Deos what happened to the restauranteur in the move "GoodFellas" when he partnered with the mob: The mob took everything they wanted, then left and burned down the restaurant on the way out the door. This Court should not countenance this frivolous Motion to remove an attorney from a case, any more than it should allow these Plaintiffs to keep in place their frivolous claims once undersigned brings an expected Motion to Dismiss against most, if not all of the Deo Defendants.

## ANALYSIS

1. ## WAIVER

These Plaintiffs have waived the right to try to disqualify undersigned. The Aaronson Plaintiffs never claimed any such right, and do not claim such a right now. Undersigned worked for NorthShore and 189 Sunrise for years, received multiple checks from those corporations for typical legal representation arranged by Anthony Deo but necessarily known and approved by the Aaronson Plaintiffs as they remain in compete charge of all of those companies' finances.

The Urrutia Plaintiffs allowed undersigned to participate in multiple Court appearances in this action, allowed undersigned to conduct the mediation in this action, never objected on the basis of any disqualifying conflict to any of multiple submissions to the Court, and never even objected to undersigned's opposition document submitted on the Plaintiffs injunction application. Quite simply, it is wrong for these Plaintiffs to try to manipulate these Defendants by removing undersigned as attorney given all of the work and inherent knowledge undersigned has gained throughout the years and especially in this and the Nassau litigation to date;

Plaintiffs' failures to raise any objection to undersigned's representation to date should preclude them from doing so now.

2. THIS MOTION IS PREMATURE

Alternatively, the Deo Defendants have approximately one month to submit their response to the instant Amended Complaint (which is already the second complaint in this case, combined with two complaints filed by the Aaronson Plaintiffs in the Nassau Supreme Court case, means that the Plaintiffs have modified their complaints in each case and dismissed the first case without the Deo Defendants having yet responded to these false accusations directly). Please be advised that it is the full intent of each of the Deo Defendants to file a Joint Motion to Dismiss the instant action on multiple grounds for multiple reasons by or before the due date for a response next month (just after Thanksgiving). If this Court is disinclined to utilize waiver to deny the instant Motion, please consider that at a bare minimum, their Motion is premature. Undersigned will be bringing a Motion to Dismiss the case against me, and my clients make clear in their attached Declarations that they want me to continue to represent them moving forward.

3. THE REQUESTED RELIEF IS AN EXTRAORDINARY REQUEST AND MUST BE DENIED ON THE MERITS.

Typically, lawsuits against attorneys are brought by clients alleging legal malpractice. An essential element of a legal malpractice claim is the existence of an attorney-client relationship. The general rule is that a lawyer is liable only to his or her client and not to third persons. *Nat'l Sav. Bank of District of Columbia v. Ward*, 100 U.S. 195, 200 (1879) ("Beyond all doubt, the general rule is that the obligation of the attorney is to his client and not to a third-party"). There are no such claims against undersigned and cannot be.

Here, claims have been made alleging civil conspiracy or aiding and abetting a client to breach a contract or breach of some other duty owed by the client to the Plaintiffs/non-clients (except as to narrow, unrelated representations of NorthShore and 189 Sunrise, which are not owned by Plaintiffs contrary to their false assertions; *see* Exhibit D hereto which, as soon as the Nassau Judge learned of those emails and tax returns, ruled against the Aaronson Plaintiffs in Exhibit A; also, undersigned's representation of Superb is limited to filing a routine Answer in a typical car case for these dealerships as set forth in Exhibit C hereto). But other than the referenced Answer, there is *nothing* that undersigned ever did for or against any one of these Plaintiffs outside of this and the preceding Nassau Supreme Court litigation.

Attorneys only owe a duty of loyalty to clients and a duty to give clients independent legal advice. An attorney has to use that "degree of knowledge, skill, and judgment ordinarily possessed by members of the legal profession in carrying out the services for his client." *Temple Hoyne Buell v. Holland & Hart*, 851 P.2d 192, 198 (Colo. Ct. App. 1992). If an attorney owed a duty to third parties, then conflicts of interest would be inevitable and it would impair the attorney's duty to represent her client within the bounds of the law. As the Supreme Court of New York succinctly stated in *D. & C. Textile Corp. v. Rudin*, 246 N.Y.S.2d 813, 817 (N.Y. 1964), "[p]ublic policy requires that attorneys . . . shall be free to advise their clients without fear that the attorneys will be personally liable to third persons if the advice the attorneys have given to their clients later proves erroneous." Here, Plaintiffs do not allege undersigned made any errors that hurt them; rather, they assert in broad strokes that undersigned is part of a conspiracy/ criminal enterprise absent any proof of same (although they falsely overreach and expose their desperation with the accusations about stealing a lamp as I emptied my office on the night of the

8

Lockout as overseen by the Nassau County Police that the Plaintiffs summonsed to the scene; *see* Exhibit E attached hereto).

Under the immunity and privilege rule, an attorney is immune and/or privileged from liability to non-clients for conduct within the scope of their representation of their clients. *See e.g., MedPartners, Inc. v. Calfee, Halter & Griswold, L.L.P.*, 748 N.E.2d 604, 617 (Ohio Ct. App. 2000) (attorney immune from liability to non-clients arising from attorney's work in good faith and on behalf of his client). This rule makes sense because an attorney owes a duty of care to his or her own client, not to third parties who claim to have been damaged by the attorney's negligence. *Ward*, 100 U.S. at 200; *see also Mehaffy, Rider, Windholz & Wilson v. Central Bank Denver, N.A.*, 892 P.2d 230, 240 (Colo. 1995) ("Because attorneys do not owe a duty of reasonable care to non-clients, attorney malpractice cannot extend to non-clients."). Courts throughout the country recognize the importance of protecting the attorney-client relationship and duties owed to clients. The United States Court of Appeals for the Eighth Circuit held that "an attorney who acts within the scope of the attorney-client relationship will not be liable to third persons for actions arising out of his professional relationship unless the attorney exceeds the scope of his employment or acts for personal gain." *Maness v. Star-Kist Foods, Inc.*, 7 F.3d 704, 709 (8th Cir. 1993) (involving a claim of tortious interference with contract by plaintiff/appellant employee against employer's attorney). Similarly, in *McDonald v. Stewart*, 182 N.W.2d 437, 440 (Minn. 1970), the Minnesota Supreme Court affirmed the grant of summary judgment for the defendant-attorney concluding "an attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship." The Minnesota Supreme Court explained that the immunity afforded to attorneys is only limited if the attorney exceeds the scope of the attorney-client

relationship, acts for personal gain, or helps her client perpetrate fraudulent or unlawful activity. Id.

The court in *Fraidin v. Weitzman*, 611 A.2d 1046, 1080 (Md. 1992) explained the rule as follows: "…there can be no conspiracy where an attorney's advice or advocacy is for the benefit of his client and not for the attorney's sole personal benefit. We have held that to impose liability on an attorney for giving advice regarding a matter of no personal interest to him or her, would be a "'fundamentally erratical change in the law' which would radically change the nature of attorney-client relationships . . ." *Johnson v. Baker*, 84 Md.App. 521, 530, 581 A.2d 48 (1990) (citing *Kartiganer Assoc., P.C. v. Town of New Windsor*, 108 A.D.2d 898, 485 N.Y.S.2d 782, 783–84 (1985) ("attorney not liable for inducing client to breach contract with another if attorney acts on client's behalf and within scope of his authority")); See *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir.1982) (An advisor's conduct is privileged when motivated by a desire to benefit the principal, even though such conduct also improves the advisor's own position.).

I have not benefited in any way from any of my work with the Deo Defendants in the preceding years except for payment in the normal course as attorney. I have caused Plaintiffs no harm in my life, and I don't even know them; we have never met, not even once. And even if this Court were to presume that the Deos engaged in wrongful activity versus these Plaintiffs (a point which is adamantly denied by my clients and to the best of my knowledge, for sure), Plaintiffs have hardly proven the knowledge and/or participation necessary to maintain an action against undersigned, let alone provide sufficient evidence to this Court to allow the extraordinary relief requested in the instant Motion to Disqualify. Each and every act provided by undersigned

impacting any and every party to this litigation was provided in good faith, and for professional servicing reasons, only.

The instant Motion (and the Complaint, as shall be set forth in the expected Motion to Dismiss) is one for which this Court should consider sanctions since these Plaintiffs failed to take into account the law on immunity and privilege of attorneys. *Sanctions in Minerals Dev. & Supply Co. v. Hunton & Williams LLP.*, 361 Wis.2d 284, 862 N.W.2d 618 (Table) 2015 WL 789681, 2015 WI App 28 (Wis. Ct. App. 2015). The court concluded that after the receipt of the safe harbor notice citing to the immunity and privilege rule, the attorneys for the plaintiff "should have come to their senses and said boy, this case is a train wreck and it's time to get out of it" and they needlessly increased the costs of litigation by failing to "have had the good sense to pull the plug on this action" in a timely manner after learning of defects in their case. The purpose of allowing sanctions for continuing frivolous litigation is to help maintain the integrity of the judicial system and the legal profession. This purpose is served by awarding sanctions against the Plaintiffs' attorneys if and when they "fail to pull the plug" on this case given that their claims should be barred by the immunity and privilege rule. All attorneys must be able to perform their duties to clients without being concerned that persons on the other side of any legal matter, transaction or litigation will sue the attorney or attempt to drag the attorney into a lengthy lawsuit when they do not like what the attorney's client did. Prompt dismissal of claims by non-clients against attorneys, and sanctions by courts, preserve both the integrity of the attorney-client relationship and the judicial system.

"Disqualification of counsel conflicts with the general policy favoring a party's right to representation by counsel of choice, and it deprives current clients of an attorney familiar with the particular matter." *Tekni-Plex v. Meyner and Landis*, 89 N.Y.2d 123, 131-32 (1996).

"Disqualification of a lawyer during litigation implicates not only the ethics of the profession but also the substantive rights of the litigants. Disqualification denies a party's right to representation by the attorney of its choice. The right to counsel of choice is not absolute and may be overridden where necessary—for example, to protect a compelling public interest—but it is a valued right and any restrictions must be carefully scrutinized." *S & S Hotel Ventures Ltd. Partnership v. 777 S.H.*, 69 N.Y.2d 437, 443 (1987)

    Your Honor, I have zero knowledge of any wrongdoing by me and/or my clients in this lawsuit. The instant Motion is frivolous, should be treated by this Court as frivolous, and must be denied in all respects.

Dated: Lindenhurst, New York
       October 30, 2023

                                        The Deo Defendants, by counsel,

                                        Harry R. Thomasson, Esq.
                                        3280 Sunrise Highway, Box 112
                                        Wantagh, New York  11793
                                        Tel.  516-557-5459
                                        Email:  hrtatty@verizon.net