# Harry R. Thomasson, Esq.

3280 Sunrise Highway, Box 112      Admitted:
Wantagh, New York  11793      Massachusetts
Tel. 516-557-5459      New York
hrtatty@verizon.net

November 20, 2023

Honorable James M. Wicks
U.S. Federal District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

       Re: *Superb Motors, Inc., et al. v. Anthony Deo, et al.*
             Case No. 2:23-cv-6188 (JW)

Your Honor:

     Please be reminded that this office represents Anthony Deo, Sara Deo, Dwight Blankenship, Harry Thomasson, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp., with respect to the above referenced action (the "Deo" Defendants).

     I am writing in response to the Court's Order to provide a letter brief to this Court today regarding certain issues/cases regarding disqualification.  Please be advised, in no particular order, as follows:

1. My clients absolutely insist (to me) that I remind this Court that the Aaronson Plaintiffs are 100% lying and committing a fraud upon the Court with respect to alleging that they own NorthShore and 189 Sunrise Hwy.  They do not.  Those corporations are owned by Anthony Deo (99%) and Sara Deo (1%) as reflected in (*inter alia*) the tax returns previously provided to this Court along with the *emailed approval of those returns by Josh Aaronson himself.*  I again urge this Court to make a finding about the impact on ownership those returns clearly indicate, especially since there is ample evidence of payments made by the Deos towards ownership of those corporations, to say nothing of the undeniable fact that the Aaronson Plaintiffs physically left those businesses that they claim to own, while also 1) failing and refusing to enter any litigation on behalf of those dealerships (e.g., *Car Gurus v. NorthShore Motors (sic.),* Nassau County (New York) Supreme Court index number 611780/2022, which is easily found and I invited Plaintiffs' counsel to find that case in the on line system to defend same, without any response or actions taken by these Plaintiffs or their attorneys); 2) failing and refusing to enter any Attorney

1

General/Consumer Affairs cases which I also invited Plaintiffs' counsel to find and enter, without any response; and 3) failing and refusing to file any tax documents on behalf of NorthShore and 189 Sunrise since *before* Plaintiffs left the two dealerships at issue. These are not the actions of owners of dealerships (physically abandoning the dealerships to the Deos, refusing to defend the dealerships in filed cases, and failing to file any tax documents after approving the Deos as owners on tax returns), these are the actions of non-owners who ruined these dealerships on the way out the door, and now seek in bad faith to disqualify my clients' attorney for performing typical, outside legal counsel/advice/case handling for those dealerships.

2. By way of analogy, your Honor, Millman Labuda generally and Emanuel Kataev specifically performed significant work obtaining pandemic relief money during 2020 and/or 2021 for NorthShore and 189 Sunrise. All parties to this action agree that those funds were improperly taken from corporate accounts, each of the Aaronson Plaintiffs and each of the Deo Defendants alleging that the other side took the funds impermissibly, and everyone reading this correspondence knows that Millman Labuda and attorney Kataev now represent the Urrutia Plaintiffs…Do these facts (missing funds and representation of different Plaintiffs at different times that could have competing interests in this and the expected related lawsuit) automatically disqualify that law firm and attorney from the case absent a showing of wrongdoing in their work to obtain those funds or actual conflict between the Plaintiffs? I make that rhetorical point because the same is true now of the falsely created impression these Plaintiffs are making to disqualify me on behalf of my clients. I have committed no wrongs, your Honor, and I have no knowledge of nor any experience with these dealerships' operations.

3. Since 2019 through the end of November, 2022 when the Aaronson Plaintiffs abandoned the NorthShore and 189 Sunrise Highway dealerships, I estimate that I was paid between $10,000.00-$15,000.00 for my outside work on behalf of those two dealerships in various court cases and attorney general/consumer affairs work. I was never involved in those dealerships' operations (or any other dealerships' operations in this lawsuit). During July, 2023, I represented Superb Motors in a federal lawsuit (*Shorey v. Superb Motors, et al.,* EDNY docket number 23-cv-03885); within days of me filing an Answer in that matter, Mr. Kataev joined the case and settled it on behalf of Superb. That is the totality of my involvement with any of the corporate parties hereto; I have never even met any of the individual Plaintiffs in this action. The false lamp theft/accusation against me is a perfect metaphor for the entirety of the accusations against me in this case, your Honor: It is false, as is each and every convenient accusation and conclusion that Plaintiffs draw and make against me.

4. Similarly, Plaintiffs' accusations regarding the $735,000.00 taken by Josh Aaronson from NorthShore and/or 189 Highway on the way out the door last November is patently and conveniently false. I did no wrong and am not a witness to that situation. Simply put, that money was obtained in a personally guaranteed loan by Anthony Deo without my knowledge or involvement. When Deo found out it was taken by

2

Aaronson, Deo went to the police and filed a report. The police apparently spoke to Josh Aaronson and *his attorneys, including Russell Shanks.* The police never spoke to me. I facilitated the return of the money *that Josh Aaronson and his attorneys decided to return to my client.* I told those attorneys that the money would be returned to Deo, and I told those attorneys that it would not be held in escrow. That information was provided to the Nassau Supreme Court in the first Aaronson case against my clients, including the writing/email to Mr. Shanks in which I confirmed that there was no escrow agreement, and that the money would be given back to Mr. Deo from whom the money was taken *before* any case was ever filed by the Aaronson Plaintiffs in Nassau Supreme or any other Court against my client. Simply put, the Aaronson attorney are far more involved with that money than I ever was, yet they are improperly seeking to disqualify me not as a shield but rather as a sword.

5. The $735,000.00 wrongfully taken (then returned) by Aaronson (on the advice of counsel) was addressed by the Aaronson Plaintiffs to the Nassau Supreme Court, and the Aaronson Plaintiffs *lost that ruling as harshly as a Court can reject claims:* "Plaintiffs have failed to establish a likelihood of success on the merits, as well as irreparably injury in the face of the Court's denial. Further, Plaintiffs [Josh Aaronson*, et al*., the same Aaronson Plaintiffs as here in the EDNY action] have also fallen short in demonstrating that the equities balance in their favor." Nassau Supreme Court Order dated June 15, 2023, page 7, top; Gianelli, J. Thus, Plaintiffs are and should be estopped/barred from asserting anything in this Court regarding that money; they already did so before the Nassau Supreme Court and lost on the merits without ever seeking to disqualify me from that case. For this Court's convenience, I attach hereto a copy of the relevant Nassau Supreme Court decision; *see* page 7, top.

6. *Decker v. Nagel Rice LLC,* 716 F.Supp.2d 228 (SDNY; 2010)

   The Court requested comments on each of three (3) cases relating to the instant Motion to Disqualify. The *Decker* case does not seem applicable to the case at bar. In that action, the attorney sought to be disqualified was *heavily* involved in the facts of the case, and had significant first-hand knowledge of not only the facts in that case, but also first-hand knowledge of wrongdoing while also admitting that he would be a witness in the subsequent litigation. Here, the opposite is true. I am not a witness to any relevant, significant first-hand facts or wrongdoing, no matter how hard Plaintiffs try to claim otherwise. I have performed no operational work for any corporate party to this case. I have no knowledge of the operations of these businesses, and merely performed outside litigation/consumer affairs work over several years for NorthShore and 189 Sunrise; my work for Superb consisted only of filing an Answer in a case that Plaintiffs' counsel resolve less than a month later (and without informing me of any terms of the settlement). I have no first hand knowledge of the transactions between these parties. I have never met a single Plaintiff, and I barely know co-Defendants Merckling, Laurie and Blankenship. I have never socialized with a single party to this action. Prior to Josh Aaronson abandoning NorthShore and 189 Sunrise, I performed roughly forty hours of work over roughly three years for those two

businesses. I do not know a single employee of any of the Plaintiffs' businesses, never represented any of those individual Plaintiffs nor any of their employees, I never even spoke to a single Plaintiff or any of their employees. I have no first-hand knowledge of *anything* involving financial transactions between these parties, whether those transactions involved ownership interests and/or any money transactions within any corporation to this lawsuit. I have no knowledge of any money that was borrowed, I have no knowledge of any transaction involving any automobile, I never spoke to anyone involving any floor plan company until I spoke to 1 or 2 individuals who contacted me about having an audit at my client's then leaseholds until *after* the Lockout on August 3, 2023. My clients have no intention of calling me to testify about anything in this lawsuit, and I have no intention to testify about anything in this or related lawsuits. If Plaintiffs call me to testify, I have no first-hand knowledge of any relevant facts in this case, and I am the only person who knows that, your Honor.

The $735,000.00 taken by Josh Aaronson on his way out the door from NorthShore and 189 Sunrise was given back within days, and my only involvement was receiving the money from Plaintiffs' attorneys and immediately returning it to Anthony Deo, who had obtained that money from co-Defendant Libertas and personally guaranteed same without my knowledge or involvement. Then the Aaronson Plaintiffs nonetheless complained to Nassau Supreme Court about my involvement with that money, but lost that argument. As shall be set forth in appropriate motion practice of our own, the allegations of theft of my own office equipment on the night of the Lockout is false, defamatory, and certainly should not be relied upon by this Court in any way that could even resemble "significant" contacts or information needed in this lawsuit. As the *Novel Williams'* Court held, "where, as here, the moving party intends to call an adversary's attorney, the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness/advocate's client." *Novel Williams at* 8/788, citing *Acker,* 2013 Westlaw 1285435 *at* 1; *see also Finkel v. Frattarelli Bros., Inc.,* 740 F.Supp.2d 368, 373 (EDNY; 2010). Please also note, your Honor, that New York Disciplinary Rule 3.7(a) mandates that in order to disqualify, at a minimum, the testimony needs to be "on a significant issue of fact…." *Id.* Simply put, I have no first-hand knowledge of any significant issue of fact in this case, my clients have no intention of calling me for any purpose, and I also have no first hand knowledge of any wrongdoing by any party to this action.

7. *Noval Williams Films LLC v. Branca, et al.,* 128 F. Supp.3d 781 (SDNY; 2015)

Likewise, the *Noval Williams* Court involved an attorney with extensive first-hand knowledge of the facts and wrongdoing in that case, where I have none of either in this case. That Court specifically found that the attorney in that case 1) would give testimony that was not hearsay; 2) the testimony could not be obtained from better witnesses; 3) the involvement was more than minimal; 4) was the best person to give certain testimony; and 4) the testimony would harm and be prejudicial to that

attorney's client.  None of those findings apply here, your Honor.

8. *Rizzuto v. De Blasio, et al.,* 2019 Westlaw 1433067 (EDNY; 2019)

Like the prior two cases, the *Rizzuto* case involves an attorney who has not only exclusive knowledge of significant/relevant information, but also knowledge of information prejudicial to his client's interests.  The key for this Court to gather from the *Rizzuto* case is that Court's analysis of the necessity of the lawyer's testimony compared to and combined with the prejudicial value of that testimony for his client.  The Court cited to a previous version of New York Disciplinary Rules that once a lawyer learns he may be called other than on behalf of his client, "he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client…." *Id. at* page 3.  The Court added, "determining whether an attorney's testimony is 'necessary' requires the Court to consider 1) the significance of the subject of the testimony to the case; 2) the availability of other evidence; and 3) the weight of the attorney's testimony.  *Id.*  Here, I have no first-hand knowledge of the operations of these businesses.  The Plaintiffs' case in chief largely consists of allegations of financial wrongdoing by Anthony Deo while operating Superb, NorthShore, and 189 Sunrise; such wrongdoing can be divided into two broad groups: 1) selling automobiles, and 2) transferring money from bank accounts.  I have no knowledge of either category of wrongdoing.

I ask this Court to reject and deny Plaintiffs' Motion without delay.  No matter how hard they try (just to prejudice my clients), Plaintiffs know that I am not directly involved in any wrongdoing in this case, and that I have no first-hand knowledge of the relevant facts involving these parties.  I was not involved in any day to day operations of these businesses, and Plaintiffs know that full well.  This Motion is not brought in good faith, your Honor, and I ask the Court to reject it out of hand.

Awaiting your decision, I remain,

Very truly yours,

/S/

Harry R. Thomasson

Cc:    Deo Defendants

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU - Commercial Division: Part 7
Present: Hon. Sharon M.J. Gianelli

---------------------------------------------------------------X

BRIAN CHABRIER, INDIVIDUALLY AND AS A
MEMBER OF NORTHSHORE MOTOR LEASING, LLC,
SUING ON BEHALF OF HIMSELF AND ALL OTHER
MEMBERS OF NORTHSHORE MOTOR LEASING,
LLC SIMILARLY SITUATED AND IN THE RIGHT OF
NORTHSHORE MOTOR LEASING, LLC;
JOSHUA AARONSON, AS A MEMBER OF 189
SUNRISE HWY AUTO, LLC, SUING ON BEHALF OF
HIMSELF AND AL OTHER MEMBERS OF 189
SUNRISE HWY AUTO, LLC SIMILARLY SITUATED,
JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT,
LLC,

Index No. 617224/2022

Mot. Seq. Nos. 001 & 002

                                                                Plaintiffs,

                        -against-

ANTHONY DEO, NORTHSHORE MOTOR LEASING,
LLC, 189 SUNRISE HWY AUTO, LLC, LIBERTAS
FUNDING, LLC, HARRY R. THOMASSON, ESQ.,

                                                                Defendants.

---------------------------------------------------------------X

*Mot. Seq. No. 001*

On Plaintiffs' Order to Show Cause and all responsive papers, including affidavits on both sides, as well as a preliminary injunction hearing held before this Court, the Court finds as set forth below.

By Order to Show Cause, Plaintiffs seek an Order of the Court:

(a) directing Defendant Anthony Deo to return to Northshore a Maserati demonstration vehicle, being used by his son, (b) directing Deo to return all Dealerships' "dealer" license plates, (c) directing Deo to return all other license plates designated to be issued for vehicles upon sale or lease to a consumer, (d) directing Deo to pay off all existing loans on customers' trade-in vehicles, (e) directing Deo to deliver to Plaintiffs all unsold vehicles owned by Northshore and Sunrise, (f) requiring Deo to account for all receipts and expenditures of the Dealerships, (g) directing Deo to turn over the books and records of the Dealerships for inspection and review, (h) directing Deo to return all DMV documents, including, without limitation, registration information for registration/title that were not completed;

and enjoining and restraining Deo from:

(i) taking any action to sell, lease, transfer, pledge or otherwise encumber the assets of Northshore and Sunrise including, but not limited to any motor vehicles, (j) concealing, transferring, altering, modifying, destroying or disposing in any manner of any assets of Northshore and Sunrise, (k) removing any funds of Northshore and Sunrise from its bank accounts or other location in which funds are located, (l) using the assets of Northshore and Sunrise to pay for the costs of defending this action, (m) concealing, transferring, secreting, altering, modifying, destroying or disposing in any manner any evidence pertaining to the claims asserted in the Summons with Notice, including, without limitation, all books and records of Northshore and Sunrise, and (n) using any license issued in the name of Brian Chabrier, Joshua Aaronson or Jory Baron to conduct any business of Northshore and Sunrise, including, but limited to, the purchase, sale or lease of any motor vehicle, acceptance of any trade of a motor vehicle, or register with the motor vehicle department of any state or issue any temporary or permanent license

2

plate, enjoining and restraining Libertas Funding, LLC from enforcing any rights against the assets of the Dealerships, and enjoining and restraining Harry R. Thomasson, Esq. from disbursing the proceeds from Libertas which were deposited into his attorney IOLA account.

*Motion Seq. No. 002*

This is Defendants' cross-motion for an Order of the Court dismissing Plaintiffs' Complaint on the basis of documentary evidence pursuant to CPLR 3211(a)(1), standing/capacity pursuant to CPLR 3211(a)(3), collateral estoppel/unclean hands, pursuant to CPLR 3211(a)(5), and for failure to state a cause of action, pursuant to CPLR 3211(a)(7).

Defendants also seek a preliminary injunction pursuant to CPLR 6301, 6311, and 6312, enjoining Plaintiffs from interfering in any way with the businesses known as Northshore Motor Leasing, LLC, and 189 Sunrise Hwy Auto, LLC, pending further order of the Court; enjoining Plaintiffs from hereafter encumbering, liening, or dissipating any assets of Baron Nissan; compelling enforcement of the Baron Nissan contract as paid and annexed hereto as Exhibit C; scheduling an immediate trial on the within matters, or alternatively, scheduling an immediate inquest to determine moving Defendants' damages; compelling Plaintiffs to return all files illegally and impermissibly taken from the corporate Defendants; compelling Plaintiffs to return access to the moving Defendants for all software Plaintiffs have removed access to since the Court's issuance

3

of "the pending Order to Show Cause". On Defendants' moving papers and all responses as well as oral argument held before this Court, the Court finds as set forth below.

By Order entered on December 14, 2022, the Court issued a temporary restraining order in Plaintiffs' favor, directing that pending hearing and determination of this motion:

Deo, or anyone acting on his behalf, be enjoined and restrained from (a) taking any action to sell, lease, transfer, pledge or otherwise encumber the assets of Northshore and Sunrise including, but not limited to any motor vehicles, (b) concealing, transferring, altering, modifying, destroying or disposing in any manner of any assets of Northshore and Sunrise, (c) removing any funds of Northshore and Sunrise from its bank accounts or other location in which funds are located, (d) using the assets of Northshore and Sunrise to pay for the costs of defending this action, (e) concealing, transferring, secreting, altering, modifying, destroying or disposing in any manner any evidence pertaining to the claims asserted in the Summons with Notice, including, without limitation, all books and records of Northshore and Sunrise, and (f) using any license issued in the name of Brian Chabrier, Joshua Aaronson or Jory Baron to conduct any business of Northshore and Sunrise, including, but limited to, the purchase, sale or lease of nay motor vehicle, acceptance of any trade of a motor vehicle, or register wit the motor vehicle department of any state or issue any temporary or permanent license plate, Libertas Funding, LLC be enjoined and restrained from enforcing any rights against the assets of the Dealerships, and Harry R. Thomasson, Esq. be enjoined and restrained from disbursing the proceeds from Libertas which were deposited into his attorney IOLA account.

On May 31, 2023, the Court conducted a preliminary injunction hearing and oral argument on the matters.

*Law/Analysis*

CPLR 6301 prescribes that, a preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual, or in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.

Entitlement to a preliminary injunction rests on a demonstration by the movant of the movant's likelihood of success on the merits; the prospect of irreparable injury in the face of a denial of the injunction; and that a balance of the equities involved favor the movant (*Doe v. Axelrod*, 73 N.Y.2d 748).

On a motion pursuant to CPLR 3211(a)(3) to dismiss a complaint for lack of standing, "the burden is on the moving defendant to establish, prima facie, the plaintiff's lack of standing, rather than on the plaintiff to affirmatively establish its standing in order for the motion to be denied" (*Deutsche Bank Trust Co. Ams. v. Vitellas*, 131 A.D.3d at 59–60, 13 N.Y.S.3d 163; *HSBC Bank USA, N.A. v. Lewis*, 134 A.D.3d 764, 765 [2d Dept. 2015]). Further, …the plaintiff has no burden of establishing its standing as a matter of law; rather, the motion will be defeated if the plaintiff's submissions raise a question of

fact as to its standing (see *U.S. Bank N.A. v. Guy*, 125 A.D.3d at 847, 5 N.Y.S.3d 116; *US Bank N.A. v. Faruque*, 120 A.D.3d 575, 578, 991 N.Y.S.2d 630; *Deutsche Bank Natl. Trust Co. v. Haller*, 100 A.D.3d at 683, 954 N.Y.S.2d 551; *Deutsche Bank Trust Co. Americas v. Vitellas*, 131 A.D.3d 52, 60 [2d Dept. 2015]). Accordingly, Defendants' motion to dismiss pursuant to CPLR §3211 (a)(3) is not sufficiently supported.

In reviewing a motion to dismiss for failure to state a cause of action pursuant to CPLR §3211(a)(7), the Court is to accept all facts alleged in the complaint as being true, accord Plaintiffs the benefit of every possible favorable inference, and determine only whether the alleged facts fit within any cognizable legal theory (*Delbene v. Estes*, 52 AD3d 647 [2d Dept. 2008]; *511 W.232nd Owners Corp. v. Jennifer Realty Co.*, 98 NY2d 144, 151-52 [2002]; *Sokoloff v. Harriman Estates Development Corp.*, 96 NY2d 409, 414 [2001]; *People v. Coventry First LLC*, 13 NY3d 108, 115 [2009]). Pursuant to CPLR §3026, the complaint is to be liberally construed (*Leon v. Martinez*, 84 NY2d 83 [1994]). It is not the Court's function to determine whether plaintiff will ultimately be successful in proving the allegations (*Aberbach v. Biomedical Tissue Services*, 48 AD3d 716, 717-18 [2d Dept. 2008]; *EBCI, Inc. v. Goldman Sachs & Co.*, 5 NY3d 11,19 [2005]). Further, Defendants have not sufficiently established grounds for dismissal based on documentary evidence nor collateral estoppel.

*Mot. Seq. No. 001*

Here, Plaintiffs fail in their burden as unresolved material questions abound concerning the parties' ownership and licensing interests in the assets that are at the heart of this dispute. Having presided over the hearing and reviewed the papers, the Court finds

6

Plaintiffs have failed to establish a likelihood of success on the merits, as well as irreparable injury in the face of the Court's denial. Further, Plaintiffs have also fallen short in demonstrating that the equities balance in their favor.

*Mot. Seq. No. 002*

Here, Defendants have failed to establish entitlement to dismissal of Plaintiffs' Complaint on the grounds sought. Further, Defendants have also failed to meet their burden for the grant of injunctive relief.

Accordingly,

It is

ORDERED, that Plaintiffs' motion (Mot. Seq. No. 001) is Denied at this time; and

It is

ORDERED, that the temporary restraining order entered by the Court on December 14, 2022, is vacated as of the date of this Decision and Order; and

It is

ORDERED, that Defendants' Cross-Motion for an Order of the Court dismissing Plaintiffs' Complaint, and for injunctive relief, is Denied.

All applications not specifically addressed herein have been considered and are denied.

This constitutes the Decision and Order of this Court.

Dated: Mineola, NY
      June 15, 2023

                                  Hon. Sharon M.J. Gianelli
                                  Justice of the Supreme Court

Case 2:23-cv-06188-JMW   Document 106   Filed 11/20/23   Page 13 of 13 PageID #: 2339