# MILMAN LABUDA LAW GROUP PLLC

**3000 MARCUS AVENUE**
**SUITE 3W8**
**LAKE SUCCESS, NY 11042**
————

**TELEPHONE (516) 328-8899**
**FACSIMILE (516) 328-0082**

November 20, 2023

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

> *Re:*   **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
> **Case No.: 2:23-cv-6188 (JMW)**

Dear Judge Wicks:

This firm, together with Cyruli Shanks & Zizmor LLP, represents the Plaintiffs in the above-referenced case.  Plaintiffs write, in accordance with this Court's Order dated November 9, 2023, directing the parties to submit a letter brief addressing the applicability of the following three (3) cases to Plaintiffs' motion to disqualify Defendant Harry Thomasson, Esq. ("Thomasson") as attorney for the Deo Defendants,[1] and any special consideration his role as a party defendant may play: (i) <u>Noval Williams Films LLC v. Branca</u>, 128 F. Supp. 3d 781 (S.D.N.Y. 2015) ("<u>Noval</u>"); (ii) <u>Decker v. Nagel Rice LLC</u>, 716 F. Supp. 2d 228 (S.D.N.Y. 2010) ("<u>Decker</u>"); and (iii) <u>Rizzuto v. De. Blasio</u>, 2019 U.S. Dist. LEXIS 54457 (E.D.N.Y. 2019) ("<u>Rizzuto</u>").  <u>See</u> ECF Docket Entry <u>97</u>.  These cases are not only applicable to the instant motion, but support the disqualification of Thomasson, not only under the witness-advocate rule, but also due to non-waivable conflicts of interest. In addressing the witness-advocate rule, the attorney's role as a party was not generally part of these courts' consideration; instead, the courts in <u>Noval</u>, <u>Decker</u>, and <u>Rizzuto</u> focused on the necessity for the attorney's testimony. While being a party may address some of Thomasson's motivations in his testimony that the courts seek to avoid, disqualification is appropriate regardless of whether Thomasson remains a party in this case.

However, courts have found that being a party, or having a very close personal investment in the outcome of the action, was a fact that weighed in favor of disqualifying attorneys due to a conflict of interest with his own clients.  Each case is fact specific, all employing the relevant law, that "in order to disqualify the witness-advocate that the adverse party seeks to call as a witness 'the movant must demonstrate both that the lawyer's testimony is 'necessary' and that there exists a 'substantial likelihood that the testimony would be prejudicial to the witness-advocate's client.'"  <u>See</u> <u>Noval</u> at 790-91.

---

[1] Comprised of Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

"Prejudice in this context means testimony that is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" See Decker at 232. In considering the testimony the Court is to consider "the significance of the matters, weight of the testimony, and availability of other evidence." See Noval at 791.

## THE WITNESS-ADVOCATE RULE

Noval Williams Films LLC v. Branca

Noval concerned ownership and licensing rights to videos of a photo shoot of Michael Jackson, and the use of that video in a film produced by the plaintiff. The court was faced with a motion to disqualify plaintiff's attorney, Raymond J. Markovich ("Markovich"), who managed plaintiff, served as a producer of plaintiff's documentary, served as transactional and intellectual property counsel in connection with the film, and negotiated licensing agreements at issue in this action.

Defendants moved to disqualify Markovich under the witness-advocate rule, citing New York State's disciplinary Rule 3.7(a), which states:

> [a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact unless: (1) the testimony relates solely to an uncontested issue; (2) the testimony relates solely to the nature and value of legal services rendered in the matter; (3) disqualification of the lawyer would work substantial hardship on the client; (4) the testimony will relate solely to a matter of formality, and there is no reason to believe that substantial evidence will be offered in opposition to the testimony; or (5) the testimony is authorized by the tribunal.

Crucially, the court identified four (4) risks noted by the Second Circuit that Rule 3.7(a) is designed to alleviate:

> (1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

In disqualifying Markovich, the Court in Noval found that "Defendants have demonstrated that he is a key witness on factual issues of great significance to the litigation. His testimony could undermine his client's claim." See Id. at 791.

2

In rejecting plaintiff's arguments that Markovich's testimony would be minimal or could be obtained through better witnesses, the court found that Markovich was in the best, or only, position to testify about material issues. Further, that his testimony could reveal the plaintiff's failure to conduct a proper investigation of the rights to the footage at issue. The court noted that the "issues presented here by Markovich serving as Plaintiff's attorney are exactly what Rule 3.7(a) seeks to prevent." Id.

In addressing the motion to disqualify, the Court in Noval did not focus on the mere fact that Markovich was the manager of a party, but on what knowledge he had and what testimony he had to offer on behalf of the opposing party.

Decker v. Nagel Rice LLC

In Decker, plaintiffs sued their prior attorneys for malpractice concerning their handling of a personal injury action. Their personal injury claims were subsequently handled by another attorney, James F. Lowy ("Lowy"), who was also representing them in the malpractice action. The defendants in the malpractice action sought to disqualify Lowy, who allegedly also failed to properly protect plaintiffs' interest in the personal injury action, and whom defendants anticipated adding as a third-party defendant for contribution and indemnification.

The court found Lowy did not "merely play a passive role" and his testimony is both necessary and prejudicial; that, as an attorney, he "will need to explain why he did not take steps to minimize plaintiffs' alleged harm" and such testimony "will necessarily be adverse to plaintiffs' position and undermine their claim that Defendants' malpractice caused their harm." See Id. at 234.

The court disqualified Lowy under the witness-advocate rule, in that Lowy had direct, personal, involvement in the alleged acts of malpractice and would be a necessary witness. As in Noval, the court in Decker noted all four concerns in what Rule 3.7(a) seeks to prevent.

The court expressed concern that Lowy's "testimony may cause jurors and this Court to fear that he is distorting the truth as a result of bias in favor of plaintiffs or to protect his own interests. Defendants' counsel will vigorously cross-examine Lowy regarding the actions he took or failed to take as the foreign plaintiffs' counsel in the [underlying litigation]. Defendants' counsel will seek to impeach Lowy's credibility with regard to whether it was Defendants or Lowy that caused the foreign plaintiffs' alleged harm. Such cross-examination places opposing counsel in a difficult situation and will require Lowy to vouch for his own credibility. Lowy's simultaneous representation of plaintiffs and his need to defend his own conduct will blur the line between argument and evidence [such] that the jury's ability to find facts [will be] undermined." (internal citations omitted).Id. at 234.

Rizzuto v. De. Blasio

In Rizzuto, an attorney sought to represent his son, now emancipated, for the son's alleged wrongful placement by various agencies and his grandparents into foster homes for several years when he was a young child.

3

Defendants moved to disqualify the father because most of the factual support for the action would be based upon his testimony, as the plaintiff was young and had no independent recollection. The court considered the plaintiff's father's key participation in all of the events that led to defendants' allegedly unlawful efforts to separate plaintiff from his parents and plaintiff's clear statement of his reliance on his "parents' personal knowledge of the Family Court proceedings", who were parties to all of the state court proceedings relating to plaintiff's foster care placement.

The father's challenge to the necessity of his testimony, offering to present other evidence in support rather than his testimony, was negated by defendants' argument that the father's own conduct was the principal reason for their opposition to plaintiff's earlier return or unrestricted visitation by his parents. Consequently, his testimony will be presented by the defense if not by the plaintiff. The court, finding the father's testimony necessary both for plaintiff and defendants, disqualified the father under the witness-advocate rule.

## CONFLICT OF INTEREST

Decker v. Nagel Rice LLC

In addition to the witness-advocate rule, the Decker court also considered disqualification under Rule 1.7 and Canons 5 and 9 of the American Bar Association Code of Professional Responsibility which prohibit conflicts of interest.

Rule 1.7 provides:

> [A] lawyer shall not represent a client if a reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interest; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

The Decker court noted that "[a]lthough not binding, 'disqualification motions often benefit from guidance offered by the American Bar Association (ABA) [Code] . . . .' The Code consists of three separate but interrelated parts, including Canons, which are 'statements of axiomatic norms.' Within each Canon are corresponding Ethical Considerations and Disciplinary Rules. Disqualification can be ordered 'where an attorney's conflict of interests in violation of Canons 5 and 9 … undermines the court's confidence in the vigor of the attorney's representation of his client.'" The Decker Court went on to consider Canon 5 of the Code which suggests that a lawyer "should exercise independent professional judgment on behalf of a client." "Ethical Consideration 5-1 states that: '[t]he professional judgment of a lawyer should be exercised . . . solely for the benefit of the client and free of compromising influences and loyalties. . . . [T]he lawyer's personal interests . . . should [not] be permitted to dilute the lawyer's loyalty to the client.' That "Disciplinary Rule 5-101 instructs that 'a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.'" See Id. at 233.

4

Finally, the <u>Decker</u> Court explained that "Canon 9 generally provides that a lawyer should avoid even the appearance of professional impropriety. Ethical Consideration 9-6 provides: Every lawyer owes a solemn duty to uphold the integrity and honor of his profession; … to observe the Code of Professional Responsibility; . . . and to strive to avoid not only professional impropriety but also the appearance of impropriety." <u>Id.</u>

The court noted the unique set of facts of Lowy zealously pursuing plaintiffs' malpractice claim in which he could be found liable if his clients are successful. It found "Lowy's presence as both an attorney and a third-party defendant presents a conflict of interest in violation of Rule 1.7 and Canons 5 and 9." <u>Id.</u> While in <u>Decker</u>, Lowy was both representing the plaintiff, and was a third-party defendant, the court was not necessarily focused on Lowy being on both sides of the dispute as being the determinative factor. It was whether the attorney might feel constrained to sacrifice his clients in order to escape his own liability.

<u>Rizzuto v. De. Blasio</u>

In <u>Rizzuto</u>, the court also considering Rule 1.7, disqualified the father as plaintiff's attorney due to a conflict of interest. The court, in reviewing the written offerings by plaintiff noticed that "professional distance appears lacking in view of the charged allegations in Plaintiff's declaration regarding the Defendants' past conduct." <u>See Id.</u> at 31. The Court expressed its concern that there is "no outside, unrelated counsel with the level of professional distance necessary to objectively evaluate whether a proposed course of legal action is advisable. <u>Id.</u> at 32.

## THOMASSON SHOULD BE DISQUALIFIED BOTH UNDER THE WITNESS-ADVOCATE RULE AND DUE TO A NON-WAIVABLE CONFLICT OF INTEREST

Application of both the witness-advocate rule and considering a conflict of interest in determining whether to disqualify an attorney, are fact specific. Applying the applicable facts to the analysis of the above three cases requires disqualification of Thomasson. It is undisputed that Thomasson played an active role in carrying out certain activities of the other defendants which constitute the wrongs alleged by plaintiffs herein, and is a witness to others. And, it is Thomasson who has particular material information to which only he can testify, which not only support the claims against other defendants, but support the claims against Thomasson personally.

## THOMASSON HAS SINGULAR KNOWLEDGE AND PARTICIPATION OF WRONGFUL ACTS AGAINST THE PLAINTIFFS

The IAG Plaintiffs allege, *inter alia*, that Deo and certain other defendants, perpetrated numerous wrongs against the IAG Plaintiffs arising from Deo's management of two used car dealerships to which certain IAG Plaintiffs assert ownership, Northshore Motor Leasing, LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("189 Sunrise"). (<u>Compl.</u> ¶¶ 77-147). The IAG Plaintiffs allege that Deo personally absconded with $735,000.00 of Northshore's assets, with Thomasson's direct assistance through the use of his attorney escrow account, which Deo improperly obtained as a cash advance against Northshore's future receipts from Libertas Funding, LLC ("Libertas"), claiming to be the sole member of Northshore and 189 Sunrise. (<u>Id.</u> ¶ 148-168).

Deo's narrative is that he was the sole owner of Northshore and 189 Sunrise and that he was within his rights and entitled to the immediate delivery of those funds to him. See NYSCEF Docket Entry 60 ¶¶ 33-35.

But there are facts which undermine this claim. Facts known to Thomasson, which he chose to ignore, and instead facilitated the wrongful transfer of funds to Deo contrary to the rights of the IAG Plaintiffs and contrary to good practices as an attorney at law. These facts were presented by counsel for IAG Plaintiffs before the money was turned over Thomasson.

Deo apparently filed a police report with Detective Eric M. Marx ("Detective Marx"), with whom Thomasson communicated. See NYSCEF Docket Entry 69, a police report stating that the victim was an individual, Anthony Deo, alleging $735,000 stolen from his bank account; see also NYSCEF Docket Entry 70. Detective Marx was informed that the IAG Plaintiffs provided proofs that Northshore and 189 Sunrise were owned by certain of the IAG Plaintiffs, not Deo. That Deo was not authorized to apply for or obtain the Libertas funds and that the IAG Plaintiffs had their own legitimate credentials to withdraw the funds from 189 Sunrise. And that the matter at hand was purely civil in nature and not criminal. The IAG Plaintiffs expressed that they desired to return the funds to Libertas. See November 9, 2023 oral argument transcript at 40-41 annexed hereto as **Supplemental Exhibit "A;"** see also NYSCEF Docket Entry 32 ¶ 10.

The IAG Plaintiffs, only in order to avoid the wrongful arrest of Aaronson, agreed to deliver the money to Thomasson to be held in a trust account. (Compl. ¶159-160) Thomasson responded that "[n]o one on the planet Earth will be telling me what I can and cannot do with my client's money when and if it arrives in my account." See NYSCEF Docket Entry 70. Detective Marx's dismissive response of IAG Plaintiffs' legitimate presentation of facts and his aggressive demeanor toward the IAG Plaintiffs, that he would simply arrest Mr. Aaronson (a member of 189 Sunrise) and let the courts deal with it later, mirror those of Thomasson, with whom he consulted.

At best, Deo's argument would only vest the funds in Northshore, not Deo personally. And if, as Deo claims, he was the sole owner of Northshore, he certainly would have had the necessary credentials to withdraw the money from the Northshore account, where those funds allegedly belonged. Moreover, within a day or so of misappropriating these funds, Urrutia received $500,000.00 towards the purchase of an interest in Superb from Car Buyers NYC Inc, an entity controlled by Deo. Only Thomasson can testify as to the "chain of custody" of where the $735,000.00 was obtained from and where that money went.

Thomasson's personal decision to promptly release the monies, and release it directly to Deo, and not Northshore or Libertas, put himself squarely within this non-waivable conflict, for which he must answer, both as the sole witness to certain matters and as a defendant.

<u>Thomasson's Testimony is Necessary and Prejudicial</u>

As in the three (3) cases cited, Thomasson did not have a mere passive role. In fact, he was directly involved in the complained-of conduct and there are certain questions that only he may answer concerning the allegations in the complaint.

Thomasson's testimony is necessary in support of the IAG Plaintiffs' claims against Deo as well as their claim against Thomasson for his own wrongful conduct. Thomasson is in the best, or only, position to testify about material facts and actions, some of which he, himself, performed. (Noval at 791). As a defendant or not, Thomasson's testimony concerning how and why the funds ended up in the personal hands of Deo, who then immediately used them to set up his nefarious activities against the Superb Plaintiffs, will necessarily implicate his client for their directions made to him. Or he will fall on his sword for exercising poor judgment or malfeasance. Either of these options will be prejudicial to the other defendants and undermine their defense and Thompson's ability to represent them. In that regard, it is worthy to note that there is an inherent and non-waivable conflict between Thomasson and the remaining Deo Defendants.[2] Further, as noted above, Thomasson's testimony is necessary to explain the circumstances of his conversations with Detective Marx.

Thomasson's testimony is also necessary in support of the Superb Plaintiffs' claims against Deo. Thomasson concededly visited the dealership at Superb since December 2022 and maintained an office there since in or about June 2023. See ECF Docket Entry 12-1 at 3 ("Consider the following: I've been going to Superb since December, 2022, and have maintained an office there for over a month, …"). He was in the midst of the goings-on at Superb and directly observed what transpired there. Thomasson was also present on August 3, 2023 when the police arrived and directed him and Deo to leave the dealership; in fact, Thomasson absconded with files and a lamp. This irrefutable evidence, which Thomasson concedes, makes him a necessary witness.

Based on the foregoing, Thomasson's qualifications, capabilities, and motivations as an attorney will be called into question. He will have to vouch for his own credibility and put opposing counsel in a difficult position when having to cross-examine Thomasson and attempt to impeach his credibility. There will also be concern that Thomasson is distorting the truth as a result of bias in favor of his clients.

Indeed, Thomasson has already downplayed his involvement in the conduct complained of, and – separately, but tellingly – raised arguments that he (and he alone) should not be held liable on various grounds that would potentially leave his clients and co-defendants responsible upon a finding of liability.

Ultimately, Thomasson's assuming the role of both an advocate and witness will result in the line between argument and evidence being blurred beyond recognition, and a jury would undoubtedly be confused by the presentation of evidence concerning an attorney defending this case. These are exactly the concerns that Rule 3.7(a) seeks to alleviate. Noval at 791; Decker at 234. The necessity of Thomasson's testimony and impending prejudice to his clients satisfies disqualification under the witness-advocate rule, Rule 3.7(a). (Noval, Decker, and Rizzuto).

---

[2] As alluded to in Plaintiffs' moving papers, Plaintiffs have standing to raise these concerns in order to address the manifest trial taint, inevitable jury confusion, and other prejudice that results from permitting a defendant who is a witness to continue to serve as counsel. Moreover, as officers of the court, your undersigned counsel has a duty to apprise the Court of issues that may bear upon the public's confidence in the rule of law and the justice system. See Comments 1 and 5 to Preamble of RPC; see also Comment 2 to Rule 3.3 of the RPC.

Thomasson Has a Non-Waivable Conflict of Interest

Thomasson's conflicts of interest both with his own clients and with Plaintiffs which also require disqualification under Rule 1.7.

Thomasson indisputably represented Superb in the Shorey case, in which he filed an answer in July 2023.[3]  He also represented Northshore in Owhonda, among other cases. As this Court aptly noted, Thomasson was under an obligation under Rule 1.1 of the RPC and Rule 11 of the Federal Rules of Civil Procedure to conduct an investigation of the facts prior to filing the answer in that case.  Moreover, Plaintiffs have presented evidence that Thomasson came into possession of a substantial set of sensitive financial documents and other confidential information during the course of his representation of Superb.  See ECF Docket Entry 95-1; see also copies of a sampling of over 180 emails from March 2023 containing more than 2,000 pages from a scanner/copier maintained by Urrutia to Thomasson, Deo, and others annexed hereto as **Supplemental Exhibit "B."**

It is worthy to note that these emails came to Thomasson based on Deo's request to review all of the financials at Superb and Urrutia's other dealerships in March 2023.  See copy of email from Deo requesting review of records and referring to Thomasson and Jones as his "forensic team" annexed hereto as **Supplemental Exhibit "C."**  Contrary to Deo's and Thomasson's sworn but perjurious statements in their initial declarations in this case, neither Deo nor Thomasson was prevented access to any financials and received same upon request, and Thomasson's involvement in Superb is far greater than he lets on.  See ECF Docket Entry 30 ¶¶ 20-24.  Indeed, this evidence shows that Thomasson came into possession of this highly sensitive and confidential information in March 2023, well before July 2023, in the course of his representation of Superb, and – as such – he was privy to information that he otherwise would never be entitled to.  Also of import, neither Superb, Northshore, or 189 Sunrise ever gave Thomasson consent to represent Deo in a position that is adverse to them.

As a defendant, Thomasson's need to escape his own liability for his actions will also necessarily put him at odds with the other defendants he is representing, upon whom he will try to pass off blame, sacrificing his clients in order to escape his own liability. (Decker at 235). This is exactly the kind of conduct that would undermine the public's confidence in the justice system.

Further, Thomasson, who, even absent claims made against him, advocates in a manner in which "professional distance appears lacking in view of the charged allegations in [Defendants'] declaration [and memorandums] regarding the [Plaintiffs'] past conduct." Rizzuto at 32. Certainly, with Thomasson being a defendant, this Court should express great concern "that there is no outside, unrelated counsel with the level of professional distance necessary to objectively evaluate whether a proposed course of legal action is advisable." Id.   Finally, as a matter of pragmatism, Thomasson will be unable to serve as both an attorney and a witness given his status as a solo attorney.  See ECF Docket Entry 20 at 2.

---

[3] During oral argument, Thomasson alluded to a conspiracy theory, one of many he has raised in this still-nascent case, that somebody informed the attorney representing the Plaintiff in Shorey that he was counsel for Superb.  Your undersigned had no contact with that attorney concerning Thomasson, and is unaware of anyone else speaking to that attorney about Thomasson.

As such, disqualification for the non-waivable conflicts of interest present here is appropriate for this reason as well.

<u>There is no Hardship Exception for Disqualification</u>

Finally, to the extent that defendants allege that disqualification of Thomasson would cause substantial financial hardship, it is insufficient to avoid disqualification. "[S]trong policy considerations in support of the advocate-witness rule," give "the substantial hardship exception a very narrow reading" and [f]inancial difficulties are insufficient to defeat an otherwise appropriate motion to disqualify." <u>Noval</u> at 791-792.

The Plaintiffs thank this honorable Court for its time and attention to this case.

Dated: Lake Success, New York
November 20, 2023                     Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

_____/s_____
Jamie S. Felsen, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (telephone)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, &*
*Robert Anthony Urrutia*

Dated: Lake Success, New York
    November 20, 2023

Respectfully submitted,

**Cyruli Shanks & Zizmor LLP**

_____/s_____

Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*

**VIA ECF**
Milber Makris Plousadis & Seiden, LLP
Peter Sieden & John Lentinello, Esqs.
1000 Woodbury Road, Suite 402
Woodbury, NY11797-2511
(516) 870-1102 (office)
pseiden@milbermakris.com
jlentinello@milbermakris.com

*Attorneys for Defendants*
*Jones, Little & Co., CPA's LLP*
*& Thomas Jones CPA*

**VIA ECF**
Cullen and Dykman LLP
Thomas S. Baylis & Ariel E. Ronneburger, Esqs.
333 Earle Ovington Blvd, 2nd Floor
Uniondale, NY 11553
(516) 357-3700 (office)
tbaylis@cullenllp.com
aronneburger@cullenllp.com

*Attorneys for Defendant*
*Flushing Bank*

**VIA ECF**
Weir Greenblat Pierce LLP
<u>Attn</u>: Bonnie R. Golub, Esq.
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107-3500
(215) 241-7719 (office)
bgolub@wgpllp.com

*Attorneys for Defendant*
*Libertas Funding LLC*

**VIA ECF**
HARRY R. THOMASSON, ESQ.
Harry R. Thomasson, Esq.
3280 Sunrise Highway, Box 112
Wantagh, NY 11793
(516) 557-5459 (cellular)
hrtatty@verizon.net

*Attorneys for Defendants*
*Anthony Deo*
*Sarah Deo,*
*Harry Thomasson,*
*Dwight Blankenship,*
*Marc Merckling,*
*Michael Laurie,*
*Car Buyers NYC Inc.,*
*Gold Coast Cars of Syosset LLC,*
*Gold Coast Cars of Sunrise LLC,*
*Gold Coast Motors Automotive Group LLC,*
*Gold Coast Motors of LIC LLC,*
*Gold Coast Motors of Roslyn LLC,*
*Gold Coast Motors of Smithtown LLC,*
*and UEA Premier Motors Corp.*