UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

SUPERB MOTORS INC. *et al*,

                          Plaintiffs,

          -against-

ANTHONY DEO *et. al.*,

                        Defendants.
-------------------------------------------------------------X

**MEMORANDUM ORDER**
23-CV-6188 (JMW)

**A P P E A R A N C E S:**

Jamie Scott Felsen, Esq.
Emanuel Kataev, Esq.
**Milman Labuda Law Group PLLC**
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042
*Attorneys for Plaintiffs Superb Motors Inc.,*
*Team Auto Sales, LLC and Robert Anthony Urrutia*

Jeffrey C. Ruderman, Esq.
Russell J. Shanks, Esq.
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto Management, LLC*

**Harry R. Thomasson, Jr., Esq.**
3280 Sunrise Highway, Suite Box 112
Wantagh, NY 11793
*Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Thomas Jones, CPA, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

John Anthony Lentinello, Esq.
Peter Seiden, Esq.
**Milber Makris Plousadis & Seiden, LLP**
1000 Woodbury Road, Ste. 402
Woodbury, NY 11797
*Attorneys for Defendant Jones, Little & Co., CPA's LLP*

Ariel E. Ronneburger, Esq.
Thomas Baylis, Esq.
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, Ste 2nd Floor
Uniondale, NY 11553
*Attorneys for Defendant Flushing Bank*

Bonnie Rae Golub, Esq.
**Weir Greenblatt Pierce LLP**
667 Madison Ave., 5th Fl.
New York, NY 10065
*Attorney for Libertas Funding LLC*

*No appearance for Defendants DLA Capital Partners Inc. and J.P. Morgan Chase Bank, N.A.*

**WICKS,** Magistrate Judge:

Plaintiffs seek damages and injunctive relief claiming a pattern of fraudulent misconduct, ripe with knavery, in connection with defendants' attempts to obtain operational control of plaintiffs' automobile dealerships. The complaint alleges claims for (1) violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"); (2) violations of the Defend Trade Secrets Act ("DTSA"); (3) unfair competition; (4) tortious interference; (5) unjust enrichment; (6) conversion; (7) fraud; (8) breach of fiduciary duty; and (9) conspiracy. (*See generally* Amended Complaint filed at ECF No. 65.)

Every procedural step in this case thus far has been fraught with foofaraw, even though the case is only in its nascent stage. The latest kerfuffle is Plaintiffs' motion to disqualify defense Harry R. Thomasson, Jr. ("Thomasson") (ECF No. 85) on the grounds that (i) he's both

2

an advocate and witness, (ii) he has an irreconcilable conflict among con-defendants, and (iii) he previously represented certain plaintiffs in substantially related matters at issue here.

Upon review of the parties' submissions and having heard oral argument, Plaintiffs' motion to disqualify counsel is hereby granted, and Harry R. Thomasson is disqualified from representing all defendants with the exception of himself, for whom he may continue to appear pro se.

## FACTUAL BACKGROUND

The Court assumes familiarity with this case, incorporating the factual background set forth by the Hon. Orelia E. Merchant in her order granting in part and denying in part the motion for a preliminary injunction filed at ECF No. 55. Thus, only the facts germane to this motion are discussed.

Plaintiffs are numerous individuals and corporate car dealerships. (ECF No. 65 at ¶¶ 8–25.) Defendants are numerous individuals and corporations. (*Id.* at ¶¶ 26–44.) Plaintiffs allege that some of the Defendants perpetrated illegal schemes aimed to ultimately result in the creation of a separate group of car dealerships, pilfering Plaintiffs' funds, employees, and trade secrets in the process. (*Id.* at ¶ 1–4.) Relevant for this motion, Defendant Harry Thomasson is an attorney living in Nassau County, New York. (*Id.* at ¶ 27.) According to Plaintiffs, Thomasson was heavily involved in the facts giving rise to the claims, with allegations scattered throughout the amended complaint. (*See generally* ECF No. 65.) In total, Thomasson is named in no less than seven causes of action. (*See id.* at ¶¶ 323–24 (RICO); ¶ 333 (Conspiracy); ¶ 509 (Conversion); ¶ 514 (Aiding and Abetting Conversion); ¶ 532 (Aiding and Abetting Breach of Fiduciary Duty); ¶ 540 (Aiding and Abetting Breach of Duty of Loyalty); ¶¶ 594–607 (Violation of New York Judiciary Law § 487).)

For example, in early November 2022, Defendant Anthony Deo entered into an agreement with Plaintiff Urrutia, paying $500,000 and issuing 25% interest of Northshore Motor Leasing, LLC ("Northshore") to get a 49% interest in Superb. (*Id.* ¶¶ 176–83.) This is known as the "Cross Purchase Agreement." (*Id.* at ¶ 176.) On November 14, 2022, Deo issued a $100,000 check to Urrutia as a deposit for the Cross Purchase Agreement. (*Id.* at ¶ 178.) The next day, on November 15, 2022, the check bounced for insufficient funds. (*Id.* at ¶ 179.) That same day, acting on behalf of Northshore, Deo entered into an agreement with Libertas ("Libertas Agreement") to sell nearly one million dollars of Northshore's future receipts for $735,000 ("Libertas Funds") without the knowledge or consent of Northshore's members. (*Id.* at ¶¶ 148–49.) Because Deo could not withdraw funds from Northshore's bank account, he arranged the funds to be deposited into 189 Sunrise Hwy Auto, LLC's ("Sunrise") bank account that he could withdraw funds from. (*Id.* at ¶ 152.) When the Island Auto Group ("IAG") Plaintiffs discovered Deo's actions, Deo claimed he was the sole owner of both Northshore and Sunrise. (*Id.* at ¶ 153.) Wanting to ensure Deo could not bolt with the Libertas Funds, the IAG Plaintiffs requested that Thomasson maintain the Libertas Funds in his attorney trust account while the dispute was resolved because he claimed to be the attorney for Northshore, Sunrise, and Deo. (*Id.* at ¶¶ 159–62.)

On November 21, 2022, the disputed $735,000 was wired into Thomasson's escrow account. (*Id.* at ¶ 181.) Plaintiffs allege that although Thomasson knew ownership of the funds was disputed, he nonetheless disbursed the funds to Deo. (*Id.* ¶¶ 163–65.) In essence, Thomasson declared "in open Court . . . that no one was going to tell him what to do with his escrow account." (*Id.* at ¶ 164.) And the next day, November 22, 2022—only six days after the original $100,000 Cross Purchase Agreement deposit check bounced for insufficient funds—Deo wired $300,000 to Urrutia to begin payment for the Cross Purchase Agreement. (*Id.* at ¶ 182.) A week later, on

4

November 29, 2022, Deo wired another $200,000 to Urrutia as part of the Cross Purchase Agreement. (*Id.*) Plaintiffs allege that despite both checks being issued from Car Buyers NYC Inc., the "funds obviously came from Thomasson's escrow account." (*Id.*)

Plaintiffs also allege that Thomasson, along with others, helped Deo carry out a "double flooring" scheme. (*Id.* at ¶ 203.) Car dealerships typically obtain "floor plan financing" using cars at the dealership as collateral. (*Id.* at ¶ 197.) The bank obtains a security interest in the car, and places certain conditions on the financing like requiring the car be present and available for sale at the dealership. (*Id.* at ¶ 198.) Double flooring is simply when a car is financed under two floor plans through two separate banks. (*Id.* at ¶ 199.) It is prohibited. (*Id.*) On July 31, 2023, Superb was notified that some of its cars were "double floored," having been financed through two separate floor plans. (*Id.* at ¶ 199.) Plaintiffs allege that Thomasson and others assisted Deo in double flooring the cars "by acting as his agents at his direction in, among other things, filling out applications for financing and making material misrepresentations in said applications, discussing together the plan to defraud Superb Plaintiffs and the floor plan financing companies, and profiting from the scheme together." (*Id.* at ¶ 203.)

Even more, Plaintiffs allege that Thomasson knew that the Deo Defendants engaged in fraud but "substantially assisted them in carrying out their unlawful schemes by defending their blatantly criminal conduct" as their counsel, and that Thomasson engaged in fraud with the other Defendants. (*Id.* at ¶¶ 247–48.) On that basis, Plaintiffs allege that Thomasson does not have an office in Wantagh, NY, and the office's listed address is actually a UPS store. (*Id.* at ¶ 249.) Instead, Thomasson "maintained an office at Superb where he directly conspired with and carried out the directives of Deo in furthering his unlawful schemes for [their benefit]." (*Id.* at ¶ 250.) Similarly, Plaintiffs allege that Thomasson assisted Deo in using stolen trade secrets and

5

confidential information to set up a competing group of dealerships without permission. (*Id.* at ¶ 257.)

Finally, Plaintiffs also allege that Thomasson was compensated for his participation. (*Id.* at ¶ 214.) Deo created a bank account for Superb with Flushing Bank, claiming to be Superb's sole owner. (*Id.* at ¶ 209.) And because Deo could control this account, he compensated Thomasson and others for their assistance in the schemes through the account. (*Id.* at ¶ 213.)

## **PROCEDURAL BACKGROUND**

Plaintiffs filed the initial Complaint on August 17, 2023 (ECF No. 1).[1] After motion practice on the preliminary injunction application, on October 17, 2023, the Court held an initial conference and entered a case scheduling order.

On October 19, 2023, Plaintiffs' counsel filed a letter regarding its intent to file a motion to disqualify Defendants' counsel, Harry Thomasson. (ECF No. 71.) The Court adopted his outlined schedule and directed the parties to bundle file all papers by November 6, 2023, which they did. (*See* ECF Nos. 85-96.) The undersigned scheduled an in-person Oral Argument to address this motion on November 9, 2023.[2] After Oral Argument, parties were also given the opportunity to brief three cases on the issue of whether counsel can still serve as counsel although he is a party to the case.[3]

---

[1] This case was originally assigned to the Hon. Diane Gujarati and Magistrate Judge Steven Tiscione. (Electronic Order dated Aug. 17, 2023). Shortly thereafter, the case was reassigned to the Hon. Orelia E. Merchant. (Electronic Order dated Aug. 21, 2023.) Following a conference with the parties on the TRO for injunctive relief (*see* ECF No. 45), ultimately, the parties consented to the undersigned for all further proceedings. (ECF No. 70.)

[2] *See generally* Recording of Oral Argument at 12:36-1:33, *Superb Motors Inc. et al v. Deo et al.*, No. 23-cv-06188 (JMW) (E.D.N.Y. Nov. 9, 2023) (ECF No. 97) ("Oral Argument").

[3] Those three cases are: (1) *Rizzuto v. De Blasio*, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019); (2) *Decker v. Nagel Rice LLC*, 716 F. Supp. Supp. 2d 228 (S.D.N.Y. 2010); (3) *Noval Williams Films LLC v. Branca,* 128 F. Supp.3d 781 (S.D.N.Y. 2015).

Plaintiffs offer three grounds to disqualify Thomasson: (1) the advocate-witness rule applies since Thomasson witnessed key events pertinent to this litigation and will therefore have to testify and defend his clients simultaneously; (2) a conflict of interest exists because he represented Plaintiffs Superb and Northshore in prior cases; and (3) his conflict of interest with the co-Defendants because he will be representing himself and his defendants concerning the same allegations of fraud, etc. (ECF No. 85.)

In opposition, Thomasson does not address these arguments; instead, pointing to various facts predating this litigation. (ECF No. 94.) And he states that he only represented Superb in a limited capacity, which was "meaningless" and does not impact the current litigation. (*Id.* at 4.) Thomasson also argues the following: that the Plaintiffs have waived their right to disqualify the undersigned after he participated in and filed various documents in this case; that the motion is premature since Defendants have yet to file their answer or response to the Complaint; and the request to disqualify is "extraordinary" and should be denied on the merits. (*See generally id.*)

Plaintiffs however strenuously resist—arguing that they have not waived their right to disqualify Thomasson; the motion is not premature; the motion should be granted on the merits; and Defendants have essentially abandoned any arguments they failed to address in their opposition. (ECF No. 96.)

## DISCUSSION

### A. *The Legal Framework for Disqualification Motions Generally*

The Court is guided by both the American Bar Association ("ABA") and New York's Rules of Professional Conduct ("RPC") to determine disqualification motions. *See Leber Assocs., LLC v. Entm't Group Fund, Inc.*, No. 00-cv-3759 (LTS) (MHD), 2001 U.S. Dist. LEXIS 20352, at *5 (S.D.N.Y. Dec. 7, 2001).

Disqualifying counsel has "a serious and immediate adverse effect by denying the client his choice of counsel." *Soc'y for Good Will to Retarded Children, Inc. v. Carey*, 466 F. Supp. 722, 724 (E.D.N.Y. 1979). Indeed, courts – which have wide discretion in deciding disqualification motions – should be "loathe to separate a client from" chosen counsel. *In re Bohack Corp.*, 607 F.2d 258, 263 (2d Cir. 1979). This fundamental precept, coupled with the risk for potential abuse of these types of motions for "tactical purposes," is why motions for disqualification are subject to strict scrutiny. *See Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir. 1989). This potential for abuse is even more pronounced when, like here, every procedural step in the case is met with fisticuffs. At bottom, motions to disqualify should only be granted where the court concludes that there is a "significant risk of trial taint." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *see also Galloway v. Nassau Cnty.*, No. 19-CV-5026 (AMD) (JMW), 2021 WL 5013735 (E.D.N.Y. Oct. 27, 2021). Thus, the movant shoulders a heavy burden, and must establish *specific facts* warranting the disqualification. *See Evans v. Artek Sys. Corp.,* 715 F.2d 788, 791, 794 (2d Cir. 1983). Conclusory statements parroting the language of the applicable Rule of Professional Conduct will not suffice. [4]

### B. Is There a Conflict with Concurrent Representation of Co-Defendants?

Plaintiffs argue that Thomasson's personal interest is intertwined with the co-Defendants' interests—especially since he allegedly facilitated the fraud and observed how Deo conducted

---

[4] Defendant contends this motion should have been made earlier. (*See* ECF No. 94 at 6.) Although "a court may find an implied waiver if a party delays its disqualification motion unreasonably," *Pastor v. Trans World Airlines, Inc*, 951 F. Supp 27, 32 (E.D.N.Y. 1996), the Second Circuit has held that outside of extreme cases, courts should "'not bar a claim on that ground where no prejudice has resulted from the delay,'" *In re I Successor Corp.*, 321 B.R. 640, 662 (Bankr. S.D.N.Y. 2005) (quoting *Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 574 (2d Cir. 1973)). Here, Plaintiffs notified Thomasson that they intended to file a disqualification motion five days after the case was opened. (*See* ECF No. 14 at 2.) That is hardly a significant delay. *Cf. Emle. Indus.,* 478 F.2d at 574 ("The three year gap between filing of the Emle action in 1968 and Patentex's motion to disqualify Rabin in 1971 is not extraordinary.").

8

this fraud. (ECF No. 87 at 19.) "An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and [the client's] interests diverge with respect to a material factual or legal issue or to a course of action." *United States v. Schwarz*, 283 F.3d 76, 91 (2d Cir. 2002) (quoting *Winkler v. Keane*, 7 F.3d 304, 307 (2d Cir. 1993)). However, Plaintiffs have failed to show that an actual conflict exists. Under the facts presented, it would be pure speculation for the Court to predict situations in which Thomasson would have to take positions adverse to his clients. Accordingly, the Court does not disqualify Thomasson on that ground. *See All Star Carts & Vehicles, Inc. v. BFI Can. Income Fund*, No. 08-CV-1816 (LDW) (AKT), 2010 U.S. Dist. LEXIS 53290, at *17 (E.D.N.Y. May 31, 2010) (noting that just because a future conflict might arise does not mean that disqualification is warranted).

### C. Does Thomasson's Prior Representation of Plaintiffs Superb and Northshore Create a Conflict?

Next, Plaintiffs claim that Thomasson, as former counsel to Superb and Northshore, is conflicted from representing Defendants in this action. Rule 1.9 of New York's Rules of Professional Conduct prohibits a lawyer from representing a person "in the same or a substantially related matter in which that person's interests are materially adverse" to the interests of a former client or from using any confidences of a former client, without the consent of the former client after full disclosure. To disqualify an attorney for prior representation, the Second Circuit requires a movant to show three elements:

> (1) that the moving party is a former client of the adverse party's counsel; (2) that a substantial relationship exists between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) that the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

9

*Unique Sports Generation, Inc. v. LGH-III*, No. 03-cv-8324 (JGK) (DF), 2005 U.S. Dist. LEXIS 22133, at *47 (S.D.N.Y. Sept. 29, 2005) (citing *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). For the substantial relationship element, the movant must show that the issues involved in the prior representation and the current case are identical or essentially the same. *See Unique Sports Generation, Inc.*, 2005 U.S. Dist. LEXIS 22133 at *48–49. If successful, a court assumes that the attorney received confidences during the prior representation. *Hempstead Video, Inc. Vill. of Valley Stream*, No. 94-CV-3659 (ETB), 2004 U.S. Dist. LEXIS 348, at *22 (E.D.N.Y. Jan. 12, 2004) (*citing T.C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 268 (S.D.N.Y. 1953)).

Here, it is undisputed that Thomasson previously represented Plaintiffs Superb and Northshore (another plaintiff in the current suit) in prior actions.[5] Those cases, however, involve wholly different claims, facts, and parties. *Shorey* and *Owhonda* involved consumer fraud. On the other hand, the claims here allege fraud while operating car dealerships. *See generally* ECF No. 1; *Unique Sports Generation, Inc.*, 2005 U.S. Dist. LEXIS 22133 at *50 (discussing that the prior and current cases involved different claims and different parties); *Giambrone v. Meritplan Ins. Co.*, 117 F. Supp. 3d 259, 274 (E.D.N.Y. 2015) (finding that there were common issues between the prior and current actions but just because they were both "Sandy-related" does not make them substantially related). Thus, *au fond*, Plaintiffs have failed to establish a substantial relationship between Thomasson's prior representation of Superb and Northshore to warrant disqualification under Rule 1.9.

---

[5] *See Shorey v. Superb Motors Inc., et al.*, No. 23-cv-3885 (ENV) (RER) (E.D.N.Y.); *Owhonda v. Credit Acceptance Corp.*, No. 21-cv-3413 (JMA) (ARL) (E.D.N.Y.); *Car Gurus v. Northshore Motors*, No. 611780/2022 (Sup. Ct. Nassau County).

Having concluded that the first two alleged conflicts of interest are insufficient to disqualify Thomasson, the Court turns to the third and thornier issue: the advocate-witness rule.

**D. Does the Advocate-Witness Rule Bar Thomasson from Representing Defendants?**

Rule 3.7 provides that "lawyer[s] shall not act as an advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." RPC § 3.7(a). Simple and clear as this statement appears, application of the rule can sometimes be elusive. In short, this rule "prohibits an attorney from representing a party in case where the attorney will or 'ought to' be called as a witness." *Rizzuto* v. *De Blasio*, No. 17-CV-7381 (ILG) (ST), 2019 WL 1433067 (E.D.N.Y. Mar. 29, 2019). The rule attempts to alleviate four risks:

1. the lawyer might appear to vouch for his own credibility;
2. the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility;
3. some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and
4. when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.

*Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 178 (2d Cir. 2009).

Generally, courts have found that the advocate-witness rule only applies to counsel's participation at trial and is not a bar to pre-trial proceedings. *Cassini v. Cnty. of Nassau*, 2023 U.S. Dist. LEXIS 189089 at *9-10 (noting that plaintiffs were uncertain of the nature of counsel's testimony); *Bakken Res., Inc. v. Edington*, No. 15-cv-08686 (ALC), 2017 WL 1184289, at *3 (S.D.N.Y. Mar. 29, 2017) ("Generally, disqualification under Rule 3.7(a) 'is triggered only when the attorney actually serves as an advocate before the jury.'") (quoting *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010)); *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, No. 08-cv-11365 (RJH) (HBP), 2010 WL 1141201, at *5 (S.D.N.Y. Mar. 25, 2010) ("[T]he concerns that justify disqualification of an attorney who will be a witness are not implicated at the pretrial stage"); *Prout v. Vladeck*, 316 F. Supp. 3d 784, 809 (S.D.N.Y. 2018) ("Where there has been only limited discovery and it is not yet clear the extent to which an attorney's testimony

12

might be necessary or prejudicial, numerous courts have found that motions to disqualify counsel are premature"); *McDonald v. Hammons*, 129 F.3d 114 (2d Cir.1997) (noting that the need to disqualify counsel "frequently only becomes clear at the conclusion of the underlying litigation").

As a result, disqualification "is warranted only where the testimony given by counsel is *necessary*." *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (emphasis added). But in cases where an attorney is also a named party, like here, courts in this Circuit have found disqualification warranted, and more compelling. *See Rizzuto*, 2019 WL 1433067 (disqualifying attorney who was plaintiff's father and named plaintiff); *Decker v. Nagel Rice LLC,* 716 F. Supp. 2d 228 (S.D.N.Y. 2010) (disqualifying attorney who was to be named as a third-party defendant).

So, to disqualify an attorney under the advocate-witness rule, the movant must "prove[] by clear and convincing evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Murray*, 583 F.3d at 178-179; *see also Ramey v. Dist. 141 Int'l Ass'n of Machinist,* 378 F.3d 269, 283 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*."). The underlying purpose of the so-called "advocate-witness rule" is "to protect the integrity of the judicial system." *City of New York v. Henriquez*, 2023 U.S. Dist. LEXIS 175794, at *9–10 (E.D.N.Y. Sep. 29, 2023); *see also Rizzuto*, 2019 WL 1433067.

Here, Plaintiffs argue that Thomasson is necessary because he has firsthand knowledge of events, and that his testimony would be prejudicial to the other Defendants because he is implicated in the allegations. Like a horse on a journey with empty saddlebags, Thomasson's opposition, however, is stark on argument and bereft of supporting case law. Instead, Thomasson

13

pivots from the motion being too late, to now premature since the Deo Defendants have yet to submit a response to the Complaint. (ECF No. 94 at 7.)[6] The gravamen of the complaint, however, implicates Thomasson's conduct in connection with the facts that give rise to the claims. In the end, Plaintiffs have satisfied their burden and demonstrated by clear and convincing evidence that Thomasson is a necessary witness.

In determining whether a party's testimony will be necessary or that the testimony would be prejudicial to the client, courts similarly consider "the significance of the matters, weight of the testimony, and availability of other evidence." *Noval*, 128 F. Supp. 3d at 791. "Prejudice in this context means testimony that is sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." *Decker v. Nagel Rice*, 716 F. Supp. 2d. 228, 232 (S.D.N.Y. 2010).

Here, Plaintiffs state that Thomasson will testify about the misappropriated funds he took from Libertas funding and his conversations with Detective Marx. (ECF No. 87.) Notably, Plaintiffs also state that Thomasson is the "only witness who can testify about the origin of the funds received from Libertas" and taken from his escrow account and where the funds ended up thereafter. (*Id.*) In addition, he was an eyewitness to the vehicles that his co-Defendants removed from the lot. And Plaintiffs state that testimony from a convicted felon, like Deo, would be given little weight so Thomasson's testimony would be critical. (*Id.*) So, Defendant's argument that he is "not a witness to any relevant, significant first-hand facts or wrongdoing" is of no moment when compared to the controversial evidence against him. (ECF No. 106 at 3.) Thomasson's testimony is, therefore, necessary. *See Rizzuto*, 2019 WL 1433067 at *5 (noting

---

[6] Since the filings on the instant motion, Deo Defendants have filed a letter motion for a pre-motion conference on an anticipated motion to dismiss. *See* ECF No. 114.

14

that plaintiff's father and counsel would serve as an "indispensable source of information" in relation to his case against defendants); *Noval Williams Films LLC v. Branca*, 128 F. Supp.3d 781, 791 (S.D.N.Y. 2015) (noting that producer was a key witness on factual issues would be "in the best, or only, position" to testify about the events). Thomasson is, therefore, an integral witness, and his testimony could be prejudicial to his clients. After all, he allegedly violated various statutes, including RICO and the DTSA, and is liable for conspiracy, conversion, and a host of other causes of action.[7] *Cf. Murray*, 583 F.3d at 179 (finding that the witnesses would do little more than authenticate documents and confirm facts not in dispute).

Further, the Court finds that disqualifying Thomasson at this juncture would not impose a substantial hardship upon Defendants. The case commenced in August 2023 and only recently set a discovery schedule on October 17, 2023. Thus, the Court concludes that disqualifying Thomasson earlier in the case during pre-trial proceedings, rather than closer to trial, is the appropriate course. *See Noval*, 128 F. Supp. 792 ("Removing him as Plaintiff's attorney at this early stage in the litigation is appropriate.").

Although Defendants would like Thomasson to continue representing them in this matter because of his experience and knowledge in this industry, (*see* ECF Nos. 90–93), Defendants have not stated that they would *not* be able to retain another attorney with similar knowledge. *See Rizzuto*, 2019 WL 1433067 at *7 (finding that if plaintiff's father were disqualified as an attorney for his son in the case, he could still explain the facts of the case to a new attorney).

---

[7] Specifically, Plaintiffs allege that Thomasson aided and abetted in Defendants' scheme to put Plaintiff Northshore in debt and convert the funds to Deo. First, Deo secured a $735,000 loan on Northshore's behalf from Libertas Funding LLC. Then, Thomasson was to keep these funds from Libertas Funding LLC in his attorney escrow account, however, he then turned them over to Deo who then used the funds to buy an interest in Superb. Further, Plaintiffs allege that Thomasson had an office in Superb's dealership and would have witnessed Deo removing the cars from the lots and subsequently the police removing Deo from the premises because of his double flooring scheme. (ECF No. 87 at 2-3, 11.)

Thomasson is not, however, disqualified from representing himself. *See Lanigan v. LaSalle Nat'l Bank*, 609 F. Supp. 1000 (N.D. Ill. 1985) (granting plaintiff's motion to disqualify as to defendant but denied as to disqualifying the attorney given his statutory right under 28 U.S.C. § 1654); [8] *Waldrop v. Discover Bank*, No. 15-14689 (JDL), 2016 Bankr. LEXIS 3774, at *11-13 (W.D. Bankr. Okla. 2016) (collecting cases where several courts have concluded that the advocate-witness rule did not bar *pro se* representation); *Wolk v. Cohen*, No. 94-cv-5096 (DWV), 1997 U.S. Dist. LEXIS 5322, at *6 (E.D. Pa. Apr. 21, 1997) ("This court has held that [the advocate-witness rule] is inapplicable to attorneys representing themselves pro se."). And because Thomasson can still appear *pro se*, he may coordinate a common defense, if one exists, with incoming defense counsel.

Thus, the motion to disqualify Thomasson as counsel based on the advocate-witness rule is granted as to the Deo Defendants but denied as to Thomasson himself.

---

[8] The court in *Lanigan* also pointed out the possibility that counsel would have to examine himself on the stand and provide objective testimony. *Lanigan*, 609 F. Supp. at 1003. However, the court noted that "these problems apply equally to any *pro se* party and do not constitute grounds for disqualifying [counsel] from representing himself." *Id.*

16

## **CONCLUSION**

For the reasons stated, Plaintiffs' motion for disqualification of Harry R. Thomasson, Jr. as counsel for Defendants (ECF No. 85) is granted. This action is stayed until January 2, 2024 to enable Defendants previously represented by Thomasson to obtain substitute counsel and file notices of appearances. A status conference will be held on January 9, 2024 at 3:00 p.m. in person in courtroom 1020 to address the pre-motion conference letter filed by the Deo Defendants (ECF No. 114) and the motion to modify the preliminary injunction (ECF No. 110).

Dated: Central Islip, New York
December 1, 2023

**S O   O R D E R E D:**
/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge