UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SUPERB MOTORS INC. *et al*,

                        Plaintiffs,

    -against-

ANTHONY DEO *et. al.*,

                        Defendants.
------------------------------------------------------------X

**MEMORANDUM ORDER**
23-CV-6188 (JMW)

**WICKS,** Magistrate Judge:

    Plaintiffs seek to modify the preliminary injunction order previously entered by the Hon. Orelia E. Merchant in which she granted in part and denied in part the motion filed at ECF No. 55. (ECF Nos. 110-112). The Court directed that any opposition and reply be filed by January 7, 2024 and January 8, 2024 respectively. (Electronic Order dated Dec. 5, 2023.) To date, Deo Defendants have not filed any opposition and, as indicated at the Status Conference on January 9, 2023, the motion is now fully submitted. (ECF No. 131.) The question presented on a motion to modify a preliminary injunction is whether a material change in circumstances arose since the issuance of original injunction to justify a modification? For the reasons that follow, the motion is granted in part and denied in part.

## DISCUSSION

### I. The Original Order on the Preliminary Injunction (ECF No. 55)

    Of relevance here, Judge Merchant expressly ordered the following preliminary injunctive relief in order to maintain the *status quo ante*:

1) The following **thirty (30)** vehicles (the "**Injuncted Superb Vehicles**") are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots16:
       a. Two (2) Isuzu flatbed trucks;

    b. Twenty-eight (28) cars listed on the list at ECF 30-8 (**"Markup List"**) indicated with "**YES**",
        i. *with the exception of* the 2023 Chevy Suburban with a Vehicle Identification Number (VIN #) ending in "8675."

…

3) The following vehicles ("**Injuncted Deo Vehicles**") shall Remain or otherwise be at Deo Defendants' Deo Lots:

   a. 2023 Chevrolet Suburban with a VIN # ending in "8675";
   b. 2020 Mercedes-Benz GLE with a VIN # ending in "4078";
   c. 2019 Land Rover Range Rover with a VIN # ending in "3297";
   d. 2017 Rolls Royce with a VIN # ending in "2728";
   e. 2016 Audi A6 with a VIN # ending in "9650";
   f. 2016 Audi Q5 with a VIN # ending in 0272.

4) A **Deo Lot** only includes:
   a. 180 Michael Drive, Syosset, NY 11791 (Northshore);
   b. 189 Sunrise Highway, Amityville, NY 1701 (Sunrise/Gold Co[a]st).

5) The term "**Remain**" means that the subject injuncted vehicle:
   a. may not leave the geographic area or bounds of the appointed lot;
   b. may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;
   c. may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction;
   d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

6) **No injuncted vehicle may be removed from the appointed lot absent this Court's Order.**
   a. In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle. The same writing must be electronically served on the other party.

7) Deo Defendants shall hold and keep insurance and provide proof thereof to Superb for the **"DEMO" cars**:
   a. 2019 Land Rover Range Rover;
   b. 2023 Chevrolet Suburban.

8) This injunction shall last until the case has settled or dismissed or until the Court resolves the dispute. Any party seeking to modify the injunction must file a pre-motion conference letter with the Court pursuant to the Court's individual practice rules.

(ECF No. 55 at 28-30) (emphasis in original).

## II. Plaintiffs' Motion to Modify Preliminary Injunction

In their motion, Plaintiffs request that the Court (1) "direct[] Defendants to return and/or account for all remaining vehicles that belong to [Superb] and/or Team Auto Sales LLC ("Team Auto") which remain in Deo Defendants' possession and/or were misappropriated by others in concert with the Deo Defendants;" (2) "Modify[] the Injunction to require Deo Defendants to return the Injuncted Deo Vehicles[^1] to Superb and/or Team [Auto];" (3) Modify[] the Injunction permitting Superb and/or Team [Auto] to sell the Injuncted Superb Vehicles;" (4) if the vehicles are not directed by the Court to be returned, then the Court should direct the Deo Defendants to "(i) provide photographs of each vehicle together with proof of odometer readings; (ii) provide proof of full insurance coverage for each vehicle; and (iii) move the vehicles to an automobile storage facility." (ECF No. 110 at 3.)

Plaintiffs emphasize the portion of Judge Merchant's Order which states that "a return of the cars to Superb's lots" "requires affirmative action on the part of the Deo Defendants" and is "nominally 'mandatory'…to *keep* the parties in status quo ante." (ECF No. 55 at 14) (emphasis in original). They also correctly note that the Injunction does not state whether the remaining forty-three (43) vehicles must be returned. (ECF No. 111 at 3-4.)

"A trial court's power to modify an injunction, like the power over all its orders,' is inherent." *New Falls Corp. v. Soni Holdings,* No. 19-CV-0449 (ADS) (AKT*),* 2020 U.S. Dist. LEXIS 186395, at *29 (E.D.N.Y. Sept. 30, 2020). Preliminary injunctions are governed by Fed. R. Civ. P. 65. A court may grant a preliminary injunction if the "plaintiff has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of

[^1]: These vehicles include: (1) 2023 Chevrolet Suburban with a VIN # ending in "8675"; (2) 2020 Mercedes-Benz GLE with a VIN # ending in "4078"; (3) 2019 Land Rover Range Rover with a VIN # ending in "3297"; (4) 2017 Rolls Royce with a VIN # ending in "2728"; (5) 2016 Audi A6 with a VIN # ending in "9650"; and (6) 2016 Audi Q5 with a VIN # ending in 0272. (ECF No. 55 at 29.)

3

preliminary relief; (3) that the balance of equities tips in [the plaintiff's] favor; and (4) that an injunction is in the public interest." *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6, 8 (2d Cir. 2016) (quotes omitted).

Injunctions are "equitable remedies that 'march[] along according to the nature of the proceeding'" and may be adapted along the way. *Greater Chautauqua Fed. Credit Union v. Quattrone*, No. 22-cv-2753 (MKV), 2023 U.S. Dist. LEXIS 163966, at *7 (S.D.N.Y. Sept. 15, 2023). When an injunction is "final," courts apply a heightened standard in accordance with Fed. R. Civ. P. 60(b)(5). *Id.* at *9 (citing *Sierra Club v. Army Corps of Engineers,* 732 F.2d 253 (2d Cir. 1984)).

However, a different standard applies for preliminary injunctions. District courts in this Circuit have applied the following standard for modifying the preliminary injunctions, which the undersigned adopts, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." *New Falls Corp.*, 2020 U.S. Dist. LEXIS 186395 at *30; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief). "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties." *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006).

Here, Judge Merchant's order concerned a *preliminary*—not a permanent—injunction, so the heightened standard does not apply. Further, at bottom, Plaintiffs fail to point to a change of circumstances warranting such relief—for instance, Plaintiffs have not pointed to discovery or

4

deposition testimony that revealed unknown information supporting the need to sell these vehicles.

Plaintiffs also seek damages here that would provide them with the ultimate relief in this case, that is, to return the vehicles back to them for selling purposes. This relief, however, is not proper for a preliminary injunction. *See Xiotech Corp. v. Express Data Products Corp.*, No. 13-CV-861 (MAD) (TWD), 2013 WL 4425130, at *2 (N.D.N.Y. Aug. 14, 2013) ("The purpose of a preliminary injunction is to preserve 'the court's power to render a meaningful decision after a trial on the merits,' not to provide the movant with ultimate relief.") (citing *Warner Vision Entm't. Inc. v. Empire of Carolina, Inc.*, 101 F.3d 259, 261 (2d Cir.1996)). A preliminary injunction is a provisional remedy, that is, interim relief to maintain the status quo during the pendency of the litigation. It is not a short circuit to obtain the final or ultimate relief sought in the case pre-judgment.

Each of Plaintiffs' requests for modification are considered below.

### A. Returning the 6 Deo Injunted Vehicles and 43 Remaining Vehicles

Plaintiffs seek to have the Court require the Deo Defendants return the Deo Injunted Vehicles and the Remaining Vehicles since "the *status quo ante* was that all vehicles were on Superb's lot." (ECF No. 111 at 7.) Plaintiffs aver that these 43 vehicles ("Remaining Vehicles") are "fully paid off" and owned "solely by Superb. (*Id.* at 4.)

This request is denied considering that the Court has already ordered that the 6 Deo Injunted Vehicles be stored in an independent storage facility. (ECF No. 97) ("Defendants are directed to move the six (6) "Injunted Deo Vehicles" identified in the Preliminary Injunction Order (ECF No. 55) to an independent licensed and insured vehicle storage facility on Long Island **on or before 5pm Tuesday, November 14, 2023**.") Deo Defendants have confirmed that these vehicles are indeed being kept in such a facility. (ECF No. 102.) This action is in

5

accordance with the spirit of the Preliminary Injunction Order, that is, to ensure the vehicles are not driven or otherwise damaged throughout the course of this case. (ECF No. 55 at 29.) Further, this relief would be decided at the end of the case, as return of the vehicles is the Plaintiffs' ultimate requested relief. (*See* ECF No. 65) (requesting, *inter alia*, "injunctive relief in returning operational control, vehicles, dealer plates, and any other assets of Plaintiffs"); *see also WarnerVision Entertainment Inc.*, 101 F.3d at 261-62 (stating that a temporary injunction is not meant to give final relief before trial).

Plaintiffs alternatively request an evidentiary hearing to help locate the 43 vehicles' whereabouts. Here, an evidentiary hearing is warranted given that neither Plaintiffs nor the Deo Defendants can identify the precise whereabouts of the vehicles. (*See* Appendix.)[2] The evidentiary hearing shall be held on February 20, 2024 at 1:00 p.m. The parties must be prepared to answer questions and present evidence related to these 43 vehicles.

### B. Permission to Sell the 30 Superb Injuncted Vehicles

Plaintiffs also seek permission to sell the Superb Injuncted Vehicles.[3] (*Id.* at 8.) They argue that Superb should be allowed to sell the vehicles it owns to remain operating as a going concern. (ECF No. 111 at 8.) Because Superb's floor plan lender agreement has been terminated due to the Deo Defendants' actions, Plaintiffs allege that "Superb remains limping and cannot purchase any new vehicles due to the termination of its floor plan lines." (*Id.*) They

---

[2] Of the 43 missing vehicles: 26 are reported not to be in Deo's possession ("do not have"); 6 are reported to have been sitting in 215 Northern Blvd on 8/4; 1 was last used by Urrutia; 1 was a vehicle trade that never came in; 9 were SOLD VEHICLES--1 is believed to be sold; 1 was sold by Novicky on August 4, 2023; 1 was sold in December 2022; 1 was sold in June 2023; 1 was sold in April 2023; 1 was sold "a long time ago"; 1 vehicle was retailed 2 months ago; 1 vehicle was returned to auction in June; 1 vehicle was sold in March 2023.

[3] These are the thirty (30) vehicles that Judge Merchant stated should be returned to Plaintiffs' lots—the two (2) Isuzu flatbed trucks and the twenty-eight (28) cars listed on ECF 30-8 as 'YES'. (ECF No. 55 at 28.)

6

argue that allowing the vehicles to remain stagnant on the lots goes against the purpose of the Injunction—"to protect the resale value of the vehicles"—as the vehicles can depreciate significantly in the interim. (*Id.* at 9.)

However, Plaintiffs' very own request flies in the face of the Injunction Order entered by Judge Merchant, which this Court is disinclined to ignore. (ECF No. 55.) In that Order, she stated clearly that these 30 vehicles are to "remain" on Plaintiffs' lots which was further defined as:

> a. may not leave the geographic area or bounds of the appointed lot;
>
> b. may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered;
>
> …
>
> d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

(ECF No. 55 at 29.) Contrary to Plaintiffs' sentiment that the Deo Defendants are "keep[ing] the[se vehicles] hostage," they are rightfully already on Plaintiffs' lots. However, Plaintiffs do not have the right to sell them at this juncture due to the ongoing dispute between the parties. Thus, this request is denied.

### C. Alternative Relief

Notwithstanding the above, the Court finds Plaintiffs' requests for alternative relief to be reasonable in light of the circumstances presented. Plaintiffs request that the Deo Defendants be required to provide (1) date-stamped photographs and odometer readings of the Remaining Vehicles and the Deo Injuncted Vehicles; (2) require the Deo Defendants to store the vehicles in an automobile storage facility to prevent damage of the resale value of the vehicles; (3) require the Deo Defendants to provide full insurance coverage for the vehicles, as the documentation provided was insufficient to protect the resale value. (ECF No. 111 at 10.)

Plaintiffs' first request—date stamped photos and odometer readings of the vehicles—is granted. In addition to photos and odometer readings of the vehicles in its possession, Deo Defendants shall also provide a signed and sworn affidavit attesting to the accuracy of the attached photographs and readings.

Regarding the storage facility, Storage Post, the facility that Deo Defendants currently use to store the Deo Injuncted Vehicles, Deo Defendants must establish that they have in fact stored the vehicles in an enclosed unit to protect it from the elements or otherwise prevent damage to the vehicles' resale value. *See How to Store Your Car in a Self-Storage Unit*, Storage Post (Mar. 19. 2021), https://www.storagepost.com/blog/2021/03/how-store-your-car-self-storage-unit.

Finally, regarding the insurance purchased by Deo Defendants to store the vehicles, although it appears from the receipt submitted that a protection plan was purchased, there is no information provided to adequately assess coverage scope or limits for the stored vehicles. Thus, Deo Defendants are directed to provide proof of insurance for the six (6) vehicles, and not simply a receipt for a general protection plan, and file proof on ECF.

For these reasons, Plaintiffs' requests to return the vehicles and sell them are denied but their requests for alternative relief are granted.

### III.   Expedited Discovery

The Court also finds that an expedited discovery schedule is warranted given Plaintiffs' allegations against the Deo Defendants.

When preliminary injunctions are involved, courts in this Circuit have found that expedited discovery is warranted when the following have been established:

> (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of the irreparable injury, and (4)

some evidence that the injury will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted.

*Singulardtv GmbH v. Jackson*, No. 21-CV-10130 (VEC), 2022 U.S. Dist. LEXIS 65087, at *3 (S.D.N.Y. Apr. 6, 2022) (citations omitted).

Here, Judge Merchant previously found that irreparable harm would ensue if an injunction were not entered. (ECF No. 55 at 27.) And, she had already indicated that there were "substantial questions as to whether Deo [] misappropriated or copied a trade secret" in violation of the Defend Trade Secrets Act. (*Id*. at 23.) Therefore, there is at least some probability of success on the merits. Expediting discovery at this juncture would prevent further financial ruin to Plaintiffs' business and avoid any possibility in which the Deo Defendants can "sell or otherwise dispose of the cars without the apparent authority or right to do so." (*Id*. at 27.) Thus, to maintain the *status quo ante* and avert considerable harm to Plaintiffs' business, it is necessary that the parties engage in expedited discovery. Accordingly, the parties are to be prepared to enter into a six-month discovery schedule that will be addressed at the next Status Conference on January 26, 2024. The discovery order entered at that Status Conference will supersede the scheduling order approved at the initial conference (ECF No. 69).

## **CONCLUSION**

For the reasons stated, the Court denies in part and grants in part Plaintiffs' motion for modification of the preliminary injunction (ECF No. 110). The Court directs the following: *First*, an evidentiary hearing for the 43 Remaining Vehicles is scheduled for **February 20, 2024 at 1:00 p.m**. in courtroom 1020. Proposed witness and exhibit lists shall be filed on ECF on or before **February 15, 2024**. *In addition* on or before **January 31, 2024**, Deo Defendants are to provide to Plaintiffs photographs of the vehicles' odometer readings along with a sworn affidavit, proof that the vehicles are in an enclosed facility, and proof of full vehicle insurance coverage

9

and file proof on ECF. *Finally*, the parties shall meet and confer and file by **January 24, 2024**, a proposed joint schedule for discovery on an expedited six-month track, which will be addressed at the next Status Conference on January 26, 2024.

Dated: Central Islip, New York
       January 18, 2024

S O  O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

10

# APPENDIX: 43 Remaining Vehicles Information

| VIN # | Year | Make | Model | Deo Defendants' Explanation in ECF No. 30-8 | Plaintiffs' Explanation in ECF No. 112. |
|---|---|---|---|---|---|
| 1721 | 2016 | BMW | 3 Series | This was sitting in 215 Northern Blvd on 8/4 | |
| 7672 | 2008 | BMW | 7 Series | Do not have | |
| 5942 | 2009 | Ford | Ranger | Do not have | |
| 5724 | 2004 | Nissan | Quest | Do not have | |
| 9887 | 2012 | BMW | X5 | This was sitting in 215 Northern Blvd on 8/4 | Plaintiffs state that Novicky conducted a physical audit on 8/3/23 but the vehicle was not present. Superb does not have possession of this vehicle and its whereabouts are unknown.  (ECF No. 112 at 4.) |
| 3394 | 2021 | Chevrolet | Silverado 1500 | This vehicle was a trade that never came in | |
| 1562 | 2017 | BMW | X1 | Sold by Bruce Novicky on 8/4 | |
| 8930 | 2013 | BMW | X5 | This was sitting in 215 Northern Blvd on 8/4 | |
| 49331 | 2012 | Dodge | Grand Caravan | Do not have | |
| 3757 | 2014 | Ford | Explorer | Do not have | |
| 3539 | 2000 | Mercedes-Benz | M-Class | Do not have | |
| 4417 | 2006 | Lexus | GX 470 | Do not have | |
| 56804 | 2014 | Honda | Pilot | Do not have | |
| 6699 | 2019 | Audi | Q7 | Do not have | |
| 1021 | 2004 | Toyota | Sequoia | Do not have | |
| 441 | 2021 | Dodge | Durango | Vehicle was retailed 2 months ago | |
| 9931 | 2009 | Ford | Flex | Do not have | |
| 2487 | 2007 | Ford | Explorer | Do not have | |
| 2090 | 2020 | Alfa Romero | Stelvio | Do not have | |
| 20 | 2019 | Ford | Mustang | Sold in June 2023 | |
| 5850 | 2019 | Mercedes-Benz | S-Class | Vehicle was returned to auction in June | |
| 2021 | 2020 | Chevrolet | Malibu | Sold in December 2022 | |
| 8338 | 2007 | BMW | 5 Series | Do not have | |
| 9208 | 2011 | BMW | 5 Series | Do not have | |
| 6841 | 2018 | Chevrolet | Impala | Do not have | |
| 30659 | 2015 | Infiniti | Q70L | Do not have | |
| 5244 | 2013 | Hyundai | Sonata | Do not have | |
| 2694 | 2010 | Nissan | Murano | Do not have | |
| 8247 | 2010 | BMW | 7 Series | Do not have | |
| 8822 | 2009 | Audi | Q5 | Do not have | |
| 2579 | 2017 | Volkswagen | Jetta | This was sitting in 215 Northern Blvd on 8/4 | |

11

| | | | | | |
|---|---|---|---|---|---|
| 1518 | 2014 | Ford | Explorer | This was sitting in 215 Northern Blvd on 8/4 | |
| 3909 | 2015 | Jeep | Grand Cherokee | Do not have | |
| 6342 | 2010 | Buick | Enclave | Do not have | |
| 7985 | 2011 | Porsche | Cayenne | Do not have | |
| 4962 | 2018 | Toyota | Camry | Do not have | |
| 3552 | 2016 | Audi | S6 | Vehicle was sold in March | |
| 8935 | 2019 | BMW | 5 Series | This was sold retail a long time ago | Plaintiffs state that Deo offered it for sale in Feb. 2023 but the car was reportedly stolen in March 2023.  The vehicle was allegedly recovered in June 2023 and resold by Deo in July 2023.  Superb does not have possession of this vehicle and its whereabouts are unknown.  (ECF No. 112 at 4.) |
| 8198 | 2020 | Land Rover | Range Rover | This was sold retail in April 2023 | |
| 8313 | 2018 | BMW | 7 Series | Last Used by Urrutia | |
| 4403 | 2016 | Dodge | Grand Caravan | This was sitting in 215 Northern Blvd on 8/4 | |
| 2872 | 2019 | Audi | Q7 | I believe this was sold | |
| 5983 | 2019 | Mercedes-Benz | CLA 250 | Do not have | |

12