# Sage Legal LLC

18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc

March 18, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

   **Re: Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
     <u>**Case No.: 2:23-cv-6188 (JMW)**</u>

Dear Judge Wicks:

  Together with Milman Labuda Law Group PLLC, this office represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs"). The Superb Plaintiffs respectfully submit the instant letter[1] response in opposition to Deo Defendants'[2] misguided and procedurally defective letter motion for contempt. In a classic case of the pot calling the kettle black, where they have demonstrably failed to comply, on numerous occasions, with Court Orders in this case, the Deo Defendants come to this Court with unclean hands seeking relief based on mere surmise and conjecture. Because their motion is plagued with a plethora of procedural problems and suffers substantively due to a complete lack of evidence, the Deo Defendants' improperly filed letter motion must be denied.

**There Should be No Finding of Contempt as Superb has Title to the Injuncted Superb Vehicles**

  On September 29, 2023, the Hon. Orelia E. Merchant ("Judge Merchant") issued a Memorandum and Order on Preliminary Injunction (hereinafter the "Injunction") wherein a conclusion was made that Superb has demonstrated irreparable harm due to the Deo Defendants' conduct and the then-possibility of losing Superb as a going concern. <u>See</u> ECF Docket Entry 55 at 19. This irreparable harm has now come to pass as the Deo Defendants' illegal conduct forced Superb to close its business.

---

[1] The Superb Plaintiff respectfully request leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule ("LCR") 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which requires that the Rules be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1.

[2] The Deo Defendants are defined as Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

As outlined in the Injunction, Superb's floor plan line of credit with Nissan Motor Acceptance Corp. ("NMAC") was terminated, Superb was then unable to place any vehicles on a floor plan line of credit, and Superb could not establish any new line such that it would be able to remain a going concern. Id. at 17-19. Superb was unable to purchase vehicles for resale because of the termination of the floor plan lines of credit. Superb was then prohibited from selling the Injuncted Superb Vehicles, which are worth approximately $1.5 million, after it had already paid for those vehicles. Superb was, as a result, unable to sell vehicles in order to remain in business. Superb was thus forced to shut down and surrender its license with the New York State Department of Motor Vehicles ("DMV") because it could no longer remain in business. Had Superb not closed and surrendered its DMV license, it would be required to continue to spend approximately $50,000.00 a month in expenses – money Superb does not have as it is no longer in operation. Surrendering its license was hence required to stop the bleeding.

Licensed automobile dealers in New York, like Superb was until recently, are required to enter the details of all vehicles it owns in the DMV's VerifiNY system. Because Superb needed to surrender its license (and accompanying Forms MV-50 for each vehicle it owned), it was essential to remove the vehicles it owned from the VerifiNY system; this is because any vehicle that remains in the VerifiNY system for a dealer that has surrendered its license is thereafter incapable of being sold or transferred. The only way to transfer title for a vehicle in the VerifiNY system is with an MV-50. Since Superb was surrendering its license, it would no longer be able to issue any MV-50. As acknowledged by Deo, every time a vehicle is sold – whether wholesale or retail – an MV-50 form is filed with the DMV, online, through the VerifiNY portal. See ECF Docket Entry 152 at 4. Therefore, Superb needed to remove the Injuncted Superb Vehicles from the VerifiNY system and then transfer the Injuncted Superb Vehicles back to Superb.

To avoid violating New York law, DMV regulations, and risk damage to the resale value of the Injuncted Superb Vehicles altogether (which would constitute a separate violation of the Injunction and cause further damage all parties, including the Deo Defendants to the extent they establish any interest in Superb), it was necessary for Superb to perform this ministerial administrative function to temporarily transfer the Injuncted Superb Vehicles from the DMV's VerifiNY system before Superb surrendered its DMV license, and then immediately transfer the Injuncted Superb Vehicles back to Superb. This is exactly what Superb did. The only difference between Superb's ownership of the Injuncted Superb Vehicles was that it previously owned the vehicles as a licensed dealership and now owns the Injuncted Superb Vehicles solely as an asset, as it is required to under the Injunction.

Further, it bears mentioning that the Injuncted Superb Vehicles were temporarily transferred to Team Mitsubishi Hartford, a Cross-Collateralized Urrutia Dealership (as defined in the Injunction), and were then immediately transferred back to Superb. See Declaration of Bruce Novicky in Opposition ¶¶ 4-19, Exhibit A. The sole purpose of these transactions, which took place over the course of a few weeks, was to protect the Injuncted Superb Vehicles and prevent the Superb Plaintiffs from having to spend $50,000.00 per month –which it does not have as it is out of business dues to the Deo Defendants' actions. This necessary administrative function was perfectly permissible because the Injuncted Superb Vehicles remained at all times with a Cross-Collateralized Urrutia Dealership, and the term "Remain" in the Injunction is defined to apply to each of those dealerships, including Team Mitsubishi Hartford, with no new title being issued.

Indeed, because the Injunction permits the Injuncted Superb Vehicles to be on one of four lots of *any* Cross-Collateralized Urrutia Dealership, it is reasonable to infer that the Injuncted Superb Vehicles may similarly be held by any one of the four Cross-Collateralized Urrutia Dealerships.

In any event, the change was temporary and was done solely to prevent the Injuncted Superb Vehicles from making them incapable of ever being sold (even after this case is resolved). It is worthy to note that a stated goal of the Injunction was to prevent damage to the resale value of the vehicles, which damage would occur if the Injuncted Superb Vehicles remained in the DMV's VerifiNY system after Superb surrendered its DMV license, as the vehicles would then be stuck in limbo. As a result, there was no violation of the Injunction.

Even if there was an arguable basis to assert a violation of the Injunction, the Superb Plaintiffs respectfully submit that the Injunction is ambiguous as to whether the ministerial administrative process it undertook to protect all of the parties herein violated the Injunction. The Order is ambiguous because it says "[t]he following thirty (30) vehicles (the "Injuncted Superb Vehicles") are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots" and the definition of "Remain" includes "may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered" which leads to the possibility that Injuncted Superb Vehicles can be transferred to Cross-Collateralized Urrutia Dealership Lots. The Superb Plaintiffs interpreted the Injunction to permit it to do exactly what it did. On a contempt application, "ambiguities and omissions shall be 'construed in favor of the alleged contemnor.'" See Superb Motors Inc. v. Deo, No. 23-CIV.-6188 (JMW), 2023 WL 7462675, at *3 (E.D.N.Y. Nov. 10, 2023) (citing Nat'l Liab. & Fire Ins. Co. v. Rick's Marine Corp., No. 15-CIV.-6352 (DRH) (ARL), 2021 WL 1906485 at *2 (E.D.N.Y. May 12, 2021); see also A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000) (finding injunction was not clear and unambiguous to warrant finding of contempt).

To the extent that this Court finds, despite the ambiguity of the Injunction, that it was improper for the Injuncted Superb Vehicles to be temporarily transferred to a Cross-Collateralized Urrutia Dealership without leave of Court, the Superb Plaintiffs respectfully request leave, *nunc pro tunc*, given that the vehicles were temporarily transferred and immediately returned to Superb without any injury to the Deo Defendants. In situations similar to the one here, where there was "no harm" and "no foul," courts have denied motions for contempt. See, e.g., Saadeh v. Kagan, No. 20-CIV.-1945 (PAE) (SN), 2023 WL 6842405, at *5 (S.D.N.Y. Oct. 17, 2023) ("In her careful Report, Judge Netburn found that sanctions were unwarranted … because[: (i)] defendants' violation of the Court's TRO was immaterial, … [(ii)] Maggio's conduct was not clearly vexatious, and … [iii] defendants' conduct was not "entirely without color." … Saadeh's objections do not establish that any of these conclusions was clearly erroneous or contrary to law" and "Judge Netburn explicitly found that, although defendants' actions were 'at the edge' of an improper purpose, they were not entirely without color"); see also In re Hill, 222 B.R. 119, 124 (Bankr. N.D. Ohio 1998) (admonishing that a request for sanction must be closely reviewed where the only *damages* resulting from a *willful* violation of the discharge injunction was attorneys' fees, to avoid rewarding excessive litigiousness) (emphasis added); In re Haan, 93 B.R. 439, 441 (Bankr. W.D. N.C. 1988) (declining to award sanctions for violation of stay where the only injury was attorneys' fees, stating "'no harm-no foul' and no injury-no attorney's fees").

The Deo Defendants cannot establish any injury that occurred as Superb has and retains title to the Injuncted Superb Vehicles. Moreover, because the Deo Defendants cannot establish any right, title, or interest in any of the Superb vehicles – whether the Injuncted Superb Vehicles, Injuncted Deo Vehicles, or the missing vehicles they have absconded with which were the subject of the February 20, 2024 hearing – they cannot establish any harm whatsoever justifying a finding of contempt. In fact – as will be set forth in the Superb Plaintiffs' supplemental submissions on their motion to modify the Injunction – the Deo Defendants should be required to return the Injuncted Deo Vehicles because Superb has been forced to shut down, such that all vehicles that belong to and/or were paid for by Superb must be sold as part of its winding up. Accordingly, the Deo Defendants' letter motion for contempt must be denied on substantive grounds.

**Deo's Unclean Hands and Numerous Violations of Orders Deprive Him of any Relief**

The Deo Defendants' misguided letter motion for contempt must also be denied because it was *their conduct* that caused the demise of Superb, and due to their repeated violations of the Orders in this case. The doctrine of unclean hands allows a court to deny relief to a party which has entered litigation in bad faith. See Bank v. Dimension Serv. Corp., No. 23-CIV.-2467, 2023 WL 9009315, at *4 (E.D.N.Y. Dec. 29, 2023), report and recommendation adopted, 2024 WL 185316 (E.D.N.Y. Jan. 17, 2024) (citing Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 243 (1933)). "[It] is an 'ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" See Legal Recovery Associates LLC v. Brenes Law Group, P.C., No. 22-CIV.-1778 (ER) (BCM), 2024 WL 1073119, at *4 (S.D.N.Y. Feb. 13, 2024) (citing Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc., 530 F. Supp. 3d 460, 464-65 (S.D.N.Y. 2021) (Nathan, J) (quoting Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806 (1945))).

Here, the Deo Defendants have repeatedly failed to comply with the Injunction in numerous material respects.

*First*, the Deo Defendants surrendered possession of one of the Deo Lots on September 30, 2023 – just one (1) day after Judge Merchant issued the Injunction requiring them to keep the Deo Injuncted vehicles at this lot. See ECF Docket Entry 59. This was an independent violation of the Injunction because the Deo Defendants did not seek leave, as required, to move the vehicles from the Deo Lot to their home. See ECF Docket Entry 55 at 30 ("**No injuncted vehicle may be removed from the appointed lot absent this Court's Order.** … In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle …") (emphasis in original).

*Second*, the Deo Defendants repeatedly drove the vehicles in violation of the Injunction. See ECF Docket Entries 58 (requesting permission to drive two of the Deo Injuncted Vehicles and admitting the inability to maintain the vehicles at a Deo Lot), 79 (submitting evidence that the Injuncted Deo Vehicles are not present at Deo's home as asserted), 98 (denying letter motion for contempt but clarifying the Injunction to require that the Injuncted Deo Vehicles are not permitted to be driven or otherwise used).

4

*Third*, the Deo Defendants failed to comply with this Court's directives about the proper storage and insurance of the Deo Injuncted Vehicles. See Text Only Order dated November 15, 2023 (noting Deo Defendants' failure to file a letter with the Court advising as to compliance with Order concerning Injuncted Deo Vehicles); see also ECF Docket Entry 134 (noting Deo Defendants' failure to oppose motion as directed).

*Fourth*, the Deo Defendants perjured themselves concerning the vehicles. See, e.g., ECF Docket Entry 112 ¶¶ 25-35 (outlining demonstrable perjury concerning a particular vehicle).

In addition, the Deo Defendants have repeatedly claimed that the Superb Plaintiffs fabricated the emergency nature of the injunctive relief they sought. See ECF Docket Entry 30 ¶ 49 ("the 'emergency' that purportedly exists with these cars by and through whatever correspondence/hearsay is presented purportedly from the Floor Plan providers was entirely arranged by Plaintiffs herein" … "If the Floor Plan providers know about cars as commonly stored elsewhere, these Plaintiffs necessarily told them to bring about the 'emergency'") and Transcript of Proceedings on September 14, 2023, annexed hereto as **Exhibit "A,"** at 71:12-16 ("My client has had no contact with NMAC or Next Gear, nothing, zero, nothing. And now they're saying it's a problem? If it's a problem, it's because these plaintiffs created it and told them there's a problem. It's a problem because they say it is"). This argument is, of course, belied by the fact that NMAC and Next Gear terminated their contracts with Superb, after Urrutia was forced to pay $3 million for vehicles that Deo absconded with (including all the injuncted vehicles), the result of which forced Superb to close. See ECF Docket Entry 18-2 (under seal); see also ECF Docket Entries 11 at ¶¶ 194-195, 14-1, 14-2, and 38-1.

Furthermore, and as is demonstrated by his declaration, Deo has some knowledge of DMV requirements. Deo therefore knows that a DMV license is not required for Superb to retain title of the Injuncted Superb Vehicles. Further, the Deo Defendants left Superb with a myriad amount of DMV complaints, including stolen customer deposits, loans that were never authorized by the customer, vehicles taken on trade but never paid off, all of which go back many months prior to the Deo Defendants' departure while they siphoned all the cash and checks from Superb and deposited them in the unauthorized Flushing Bank account. The mess left by the Deo Defendants has fallen solely on the shoulders of Urrutia, notwithstanding Deo's claim of ownership, as Deo has failed to pay for any of the expenses and outright ignored a capital call letter served on him prior to the commencement of this case. See ECF Docket Entry 112-7.

Based on the demonstrable evidence of Deo's bad faith, and Judge Merchant's prior finding that the Deo Defendants failed to dispute the veracity or validity of the Superb Plaintiffs' claims, this Court should deny the Deo Defendants' letter motion because they have unclean hands. See ECF Docket Entry 55 at 19 ("Importantly, Deo does not dispute the veracity or validity of any of the foregoing harms").[3]

---

[3] In the unlikely event that this Court is inclined to further consider the Deo Defendants' motion, the Superb Plaintiffs request – pursuant to LCR 83.6 – to have oral evidence taken, either before the Court or before a master appointed by the Court.

**<u>The Deo Defendants' Letter Motion for Contempt Must be Denied on Procedural Grounds</u>**

In addition, the Deo Defendants' motion must be denied on numerous procedural grounds.

*First*, the Deo Defendants improperly filed their motion for contempt by letter, when both LCR 7.1 and the Individual Rules require such motions to be made by notice of motion with a memorandum of law in support.  See LCR 7.1; see also ¶ 3(A) of the Individual Rules ("*Discovery motions* may be made by letter motion" and "Any motion seeking … other non-dispositive relief … shall be made in accordance with Rule [3(C)] … and *not be letter motion* …") (emphasis added). Similarly, LCR 83.6 requires motions for contempt to be "commenced by the service of a notice of motion or order to show cause."  Their letter motion is therefore defective on its face.

*Second*, the movant seeking contempt must submit an affidavit upon which such notice of motion or order to show cause is based setting out the damages occasioned by the alleged contempt and such evidence as to the amount of damages as may be available to the moving party.  The Deo Defendants have not done so, and cannot point to any damages whatsoever.

*Third*, even if this Court excuses the Deo Defendants' failure to make the instant application by a formal notice of motion and accompanying memorandum of law as required (which it should not), their motion still fails to comply with the Individual Rules because it exceeds three (3) pages in length.[4]  See ¶ 3(A) of the Individual Rules.

Accordingly, this Court should deny the Deo Defendants' request: (i) for a finding that the Superb Plaintiffs are in civil and criminal contempt; (ii) directing the Superb Plaintiffs to return the Superb Injunted Vehicles to Superb as moot; (iii) ordering Superb to deliver the original titles to the Superb Injunted Vehicles to a Court appointed third-party, to be held in trust at the Superb Plaintiffs' expense as unnecessary; (iv) ordering Superb to store the Superb Injunted Vehicles in a secure, enclosed, storage facility independently owned by a third-party and located within the State of New York, and file proof of insurance coverage, together with date-stamped photographs clearly showing each vehicle's odometer and location within the enclosed storage facility because the Injuncted Superb Vehicles are properly located at a Cross-Collateralized Urrutia Dealership as set forth in the Injunction; (v) for an award of attorneys' fees, costs, and/or sanctions.

The Superb Plaintiffs provided a courtesy copy of these papers to the Deo Defendants this morning with a request to withdraw the instant motion in light of the evidence presented together with an invitation to meet-and-confer.  The parties telephonically met-and-conferred for approximately ten (10) minutes but could not reach an agreement.  The Deo Defendants refused to withdraw their motion because: (i) they take issue with the dates of the transfers not matching; and (ii) they assert that the transfers diminished the value of the Superb Injuncted Vehicles because it added another owner to the CarFax report.  However, the Superb Plaintiffs acknowledge that the transfers took place over the course of a few weeks.  And the transfers did not cause any new title being issued, as title would only be issued upon a retail sale.  Their refusal is therefore meritless.

---

[4] The Superb Plaintiffs respectfully seek leave to file excess pages, up to six (6) pages in length, which is the same length as the Deo Defendants' motion.  Good cause exists to grant leave because it was necessary to address the arguments set forth in the Deo Defendants' letter motion.

The Superb Plaintiffs thank this Court for its continued time and attention to this case.

Dated: Lake Success, New York
March 18, 2024

Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

  _/s/ Jamie S. Felsen, Esq._
Jamie Scott Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1391 (direct dial)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.*
*Team Auto Sales LLC and*
*Robert Anthony Urrutia*

Dated: Jamaica, New York
March 18, 2024

Respectfully submitted,

**SAGE LEGAL LLC**

  _/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiffs*
*Superb Motors Inc.*
*Team Auto Sales LLC and*
*Robert Anthony Urrutia*

**VIA ECF**
All counsel of record