UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, *individually and derivatively as a member of* NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, *individually and derivatively as a member of* 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

       Plaintiffs,

  -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

       Defendants.
-------------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**PLAINTIFFS' SUPERB MOTORS INC.'S, TEAM AUTO SALES LLC'S, AND ROBERT ANTHONY URRUTIA'S PROPOSED FINDINGS OF FACT & CONCLUSIONS OF LAW IN SUPPORT OF THEIR MOTION TO MODIFY THE PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**PROPOSED FINDINGS OF FACTS**......................................................................................... 3

**LEGAL STANDARD** ................................................................................................................ 11

**PROPOSED CONCLUSIONS OF LAW** ................................................................................. 12

      A.      **The Deo Defendants' Incredible Testimony Warrants an Adverse Inference** ........................................................................................................ 12

      B.      **The Closure of Superb is a Material Change in Circumstances Warranting Modification Including the Sale of All Vehicles Subject to the Preliminary Injunction**..................................................................................................... 13

      C.      **In the Event this Court Denies The Relief Sought, The Injunction on Some Vehicles Must be Lifted** ..................................................................... 15

**CONCLUSION** .......................................................................................................................... 16

## TABLE OF AUTHORITIES

**Cases**

Acco, Ltd. v. Rich Kids Jean Corp.,
    No. 15 CIV. 7425 (JSR), 2017 WL 4350576 (S.D.N.Y. May 3, 2017) .............................. 13

Chrysler Corp. v. United States,
    316 U.S. 556 (1942) ........................................................................................................ 12

D9 Collection, L.L.C. v. Jimmy Jazz, Inc.,
    No. 11-CV-8752, 2012 WL 13034897 (S.D.N.Y. June 29, 2012) ................................... 11

De Dong Lin v. Holder, ..................................................................................................................
    359 Fed. Appx. 238 (2d Cir. 2010) .................................................................................. 13

FemHealth USA, Inc. v. Williams,
    83 F.4th 551 (6th Cir. 2023) ............................................................................................ 12

Helmer v. Briody,
    721 F. Supp. 498 (S.D.N.Y. 1989) .................................................................................. 11

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
    427 F. Supp. 2d 491 (S.D.N.Y. 2006) ............................................................................. 11

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.,
    246 Fed. App'x 73 (2d Cir. 2007) ................................................................................... 11

International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.,
    427 F. Supp. 2d 491, (S.D.N.Y. 2006) ............................................................................ 11

New Falls Corp. v. Soni Holdings, LLC,
    No. 21 Civ. 865, 2022 WL 2720517 (2d Cir. July 14, 2022) ........................................... 12

Railway Labor Executives' Ass'n v. Metro North Commuter R. Co.,
    759 F. Supp. 1019 (S.D.N.Y. 1990) ................................................................................ 11

Sierra Club v. U.S. Army Corps of Eng'rs,
    732 F.2d 253 (2d Cir. 1984) ............................................................................................ 12

Superb Motors Inc. v. Deo,
    No. 2:23-CIV.-6188 (OEM) (JMW), 2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) ......... 1

Superb Motors Inc. v. Deo,
    No. 2:23-CIV.-6188 (JMW), 2024 WL 198398 (E.D.N.Y. Jan. 18, 2024) ......................... 1

## **PRELIMINARY STATEMENT**

A modification of the preliminary injunction issued by the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") on September 29, 2023 is warranted based on (i) the evidence adduced at the February 20, 2024 evidentiary hearing; and (ii) the closure of Plaintiff Superb Motors Inc. ("Superb"), both of which constitutes a material change of circumstances.[1]

Due to Superb's closure, this Court should exercise its inherent power to modify the Injunction by requiring all of the injuncted vehicles to be sold, with Superb keeping all proceeds, or in the alternative, having all funds from the sale of those vehicles held in escrow pending the outcome of this case. Doing so would serve the letter and the spirit of the Injunction, which was aimed at preserving the resale value of the vehicles, and would further comport with the Superb Shareholders' Agreement[2] between Plaintiff Robert Anthony Urrutia ("Urrutia") and Defendant Anthony Deo ("Deo"), which provides that, in the event of a dissolution, Superb shall be liquidated under the supervision of Urrutia with the cooperation of Deo, and the corporate assets shall be distributed according to law, or as otherwise agreed, subject to the rights of the creditors. Because Superb has closed and has dissolved, its Shareholders' Agreement requires this relief.

Contrary to their attempts to feign ignorance at the February 20, 2024 hearing, the Deo Defendants knew exactly what they did with the vehicles in question; the reason why they lied about it at the hearing is because telling the truth would expose their fraud and require them to explain what happened to the money received for those vehicles.

---

[1] See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (OEM) (JMW), 2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) (hereinafter the "Injunction"), ECF Docket Entry 55.

[2] See ECF Docket Entry 11-6 at ¶ 8.

This Court should make an adverse inference due to their failure to adequately explain the whereabouts of the vehicles. The accompanying supplemental declaration of Bruce Novicky (incorporated by reference herein), which describes Superb Plaintiffs' internal investigation, as well as the Deo Defendants' hearing exhibits, expounds in detail what happened to most of the vehicles. In that regard, injunctive relief is also warranted because Superb cannot wind down its affairs without an accounting of what happened with each vehicle and/or the funds received for each vehicle.

Modification is further warranted, to allow the sale of and to permit Superb to keep the proceeds of thirteen (13) of the Remaining Vehicles owned by Team Auto Sales LLC ("Team"), and two (2) flatbed trucks owned by non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford ("Team Mitsubishi") in which Superb never had any interest.

In this Court's Order dated January 18, 2024, the instant relief requested was denied on the grounds that there was no showing of a material change in circumstances.[3] However, this Court granted the Superb Plaintiffs' request to conduct an evidentiary hearing concerning the whereabouts of forty-three (43) vehicles which the Deo Defendants stole (the "Remaining Vehicles").[4] The injunctive relief received previously granted did not save Superb from its demise because it prevented Superb from selling the only vehicles it had due to the Injunction. As a result, Superb has been forced to permanently close.

The Deo Defendants have no basis to oppose the Superb Plaintiffs' request to modify the injunction as described herein.

---

[3] See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (JMW), 2024 WL 198398 (E.D.N.Y. Jan. 18, 2024) (hereinafter the "Order"), ECF Docket Entry 134.

[4] The Remaining Vehicles are identified as set forth the Superb Plaintiffs' October 2, 2023 letter request for clarification to Judge Merchant. See ECF Docket Entry 56-2.

They cannot establish any right, title, or interest in any of the vehicles because they did not pay for them; meanwhile, Superb was forced to close due to their conduct. Nor can they dispute that the Shareholders' Agreement warrants this relief.

What's worse, the Deo Defendants have blatantly lied to this Court after harming Superb beyond repair. Declining to modify the Injunction under these circumstances would be a grave injustice and only cause further irreparable harm to Superb, which should be permitted to dissolve as required by its Shareholders' Agreement at the discretion of Urrutia with the cooperation of Deo. Accordingly, this Court should exercise its discretion in favor of modifying the Injunction.

## PROPOSED FINDINGS OF FACTS

All vehicles that are stocked in through Superb's dealership management system ("DMS")[5] are those over which Superb has physical possession. See February 20, 2024 Hearing Transcript, Docket Entry 156-1 (hereinafter "Tr.") at 43:10-18.

From November 2022 until the Deo Defendants' theft in August 2023, there were approximately eighty (80) vehicles owned by Superb, with forty to fifty at Superb, in Great Neck, and the remaining thirty dispersed between 180 Michael Drive and 189 Sunrise Highway. Tr. at 69:13-21; 118:20-119:14.

Deo purchased vehicles at auction for Superb. Tr. at 39:23-25.[6] Deo knew the location of all vehicles in his capacity as a partner and General Manager of Superb. Tr. at 31:23-33:2; see also Exhibit 18A.

---

[5] Superb's DMS system was called Tekion. Tr. at 52:7-10.

[6] Deo incredibly testified that he would determine whether to keep a vehicle by looking at a list without examining the vehicle itself. Tr. at 43:19-44:23. This is despite the fact he was able to respond to Novicky about the location of certain vehicles within approximately one (1) hour. See Supplemental Declaration of Bruce Novicky ("Novicky Supp. Decl.") Ex. I.

3

During the time he worked at Superb, Deo had access to its general ledger, which is maintained in Tekion. Tr. at 64:23-25, 67:14-68:20. Deo also kept a Google spreadsheet[7] listing all the locations of the vehicles Superb owned. Tr. at 46:18-47:13, 67:14-68:5, 103:3-8.

Deo used Tekion (Superb's DMS) and the Google spreadsheet to track the location of Superb's vehicles. Tr. at 69:5-12. Deo maintained a separate Google spreadsheet because Tekion did not list the location of Superb's vehicles. Tr. at 69:23-70:5. In addition, some vehicles would be delivered to repair shops, and the Google spreadsheet reflected this information. Tr. at 70:6-9. While Deo did not personally update the Google spreadsheet, he delegated this task to Defendant Marc Merckling ("Merckling"), Deo's employee, and Eugene Lowe ("Lowe"), a general sales manager. Tr. at 70:10-20. Merckling and Lowe therefore had knowledge as to the location of the vehicles. Tr. at 70:21-71:16.

In late July 2023, Deo admittedly took many of Superb's vehicles to 180 Michael Drive in Syosset, New York for a grand opening event for Goldcoast Motors of Syosset, LLC, an entity not owned by Urrutia. Tr. at 56:25-57:22. During the hearing, the only testimony Deo provided concerning the whereabouts of any of the Remaining Vehicles concerned the 2000 Mercedes M Class which he testified was sold on June 2, 2023, and that he knew so based on his vague reference to a DMV record for "last doc issued." Tr. at 72:4-75:7; Defendants' Exhibit N. However, Deo was not certain on cross-examination that this reference conclusively establishes that a title had actually been issued. Tr. at 79:2-20.

Deo also represented that another vehicle was sold on August 17, 2023 by Superb to a customer. Tr. at 75:22-76:19; Defendant's Exhibit V.

---

[7] Critically, the Deo Defendants failed to bring any such exhibit to the hearing, notwithstanding the fact they were served with a subpoena directing them to do so. See Novicky Supp. Decl. Ex. L (copies of subpoenas and accompanying correspondence confirming their counsel's agreement to accept service of same).

4

However, on cross-examination, Deo conceded that the vehicle was not sold to a customer, but rather, was sold to Superb on August 17, 2023. Tr. at 79:23-82:24; Plaintiffs' Exhibit 4C.

Merckling testified that he is Deo's employee but that Merckling was never employed by Superb.[8] Tr. at 86:9-12.

Merckling performed duties at Superb and did any work that Deo asked him to do, including looking over some cars, bringing them in for repairs, and checking in on inventory. Tr. at 86:13-24. Merckling had access to and, along with others, edited the Google spreadsheet referenced in Deo's testimony. Tr. at 86:25-88:19. Merckling utilized the Google spreadsheet to ascertain the location of Superb's vehicles. Tr. at 90:12-91:14. Merckling no longer has access to the Google spreadsheet and cannot remember whether he deleted it. Tr. at 88:20-89:17. Despite his duty to oversee inventory by utilizing the Google spreadsheet, Merckling testified that he did not know the location of any of the Remaining Vehicles. Tr. at 93:1-9, 93:25-94:12.

Dwight Blankenship ("Blankenship") was an operations manager at Superb since April 2023. Tr. at 95:25-96:6. Prior to that time, Blankenship performed work at both Superb and Northshore. Tr. at 96:7-11. Blankenship worked part-time because he was a full-time active duty police officer with the Nassau County Police Department ("NCPD"). Tr. at 96:16-18. Blankenship typically worked at Superb when he was not working as a police officer. Tr. at 96:19-98:14 (testifying that he worked during the day from 9 or 10 until noon when he worked evenings at NCPD, and evenings from 5 to 10 when he worked days at NCPD). Blankenship dealt with repairs and transported vehicles, and likely transported some of the Remaining Vehicles. Tr. at 98:15-24. Blankenship transported vehicles at the direction of Deo and Merckling. Tr. at 98:25-99:14. Blankenship kept track of vehicles by using a dry erase board at Superb. Tr. at 100:3-13.

---

[8] Blankenship similarly testified that he worked for Deo. Tr. at 103:17-25.

Blankenship was familiar with the grand opening event at 180 Michael Drive and admitted to transporting vehicles from Superb to 180 Michael Drive for same. Tr. at 100:18-25. Critically, Blankenship never returned those vehicles back to Superb. Tr. at 101:1-8. Blankenship drove ten or twelve of the vehicles from Superb to 180 Michael Drive, and porters assisted him in transporting additional Superb vehicles to 180 Michael Drive. Tr. at 100:13-102:14.

Despite the foregoing, Blankenship testified that he did not know the location of the Remaining Vehicles. Tr. at 102:15-18, 107:9-24. Blankenship took no steps to look for or ascertain the location of the Remaining Vehicles in advance of the hearing, despite being served with a subpoena directing him to do so. Tr. at 108:5-109:1.

Lowe was the general sales manager at Superb from July 2022 through October 2023. Tr. at 110:5-11. Lowe worked at Superb before Deo came to work there from July 2022 until November 2022. Tr. at 110:12-18. While Lowe could not provide the location of any of the Remaining Vehicles, he was present at Deo's grand opening event in July at 180 Michael Drive. Critically, Lowe testified that *all of the cars* at that event came from Superb because Northshore (located at 180 Michael Drive) did not have any of its own inventory and he physically witnessed vehicles leaving from Superb to Northshore. Tr. at 116:12-119:13 ("Any cars that were there were from Superb" and "the best cars had to go there, the nicer looking cars had to go from Superb's lot to that lot"). Prior to the time Deo worked at Superb, the dealership kept track of all vehicles using vAuto; after Deo came to work at Superb, Deo began using a Google spreadsheet. Tr. at 110:19-112:10. Deo kept a spreadsheet because he kept vehicles that were sold on vAuto as unsold in order to drive traffic to Superb (as vAuto fed to various marketing platforms that customers accessed), which is a fraudulent practice.[9] Tr. at 112:7-113:8.

---

[9] Based on the Superb Plaintiffs' investigation, Deo had designs to commit fraud from the get-go.

6

vAuto was therefore not accurate due to Deo's conduct. Tr. at 113:9-16. Lowe testified that Merckling entered the data about the vehicles' locations in the Google spreadsheet. Tr. at 115:8-17. Lowe lost access to the Google spreadsheet after this lawsuit was filed. Tr. at 115:18-25. Apart from thirty (30) vehicles that were returned by the Deo Defendants to Superb on September 15, 2023 with this Court's capable assistance at a settlement conference, Lowe was unaware of any other vehicles that returned from 180 Michael Drive back to Superb. Tr. at 118:9-14, 120:25-121:8.

Efaz Deo ("Efaz"), Deo's son, worked on the grand opening event and observed Superb's vehicles at 180 Michael Drive being brought there. Tr. at 124:11-24, 126:19-22 (testifying that a lot of cars were present at the event; so many that he could not count). Efaz could not provide any information about the location of the Remaining Vehicles, except that he did not see any of these vehicles at Deo's home, with whom he lives. Tr. at 126:8-18, 126:24-127:9, 128:4-8. Efaz claims that he never worked for Gold Coast Motors and that he listed himself as an employee of Gold Coast Motors on LinkedIn for the period of January 2022 through September 2023 despite never working for Gold Coast Motors. Tr. at 122:24-123:14. Notwithstanding this deception,[10] Efaz admitted to performing work for Gold Coast Motors by posting on Facebook and on social media, as well as performing other marketing functions for Gold Coast Motors. Tr. at 123:15-20.

Defendant Michael Laurie ("Laurie") denied being employed by Superb and testified that he was merely helping Deo as a friend despite signing off in an email as a business manager of Superb and admittedly maintaining an office at Superb. Tr. at 130:7-12, 132:2-133:24, 134:15-25 ("Cars went back and forth at the time because they had to be repaired" and "I was standing in front of Marc or Dwight and they would say, a car needs to be sent").

---

[10] Efaz admitted that some of the tasks he listed as having performed for Gold Coast Motors on his LinkedIn page were not true. Tr. at 123:21-124:4.

7

Notwithstanding, Laurie was unable to provide any information concerning the whereabouts of the Remaining Vehicles. Tr. at 135:4-9. Nor was Laurie able to testify as to how many vehicles were present at 180 Michael Drive. Tr. at 135:10-136:18.

Defendant Harry R. Thomasson, Esq. ("Thomasson") maintained an office at Superb for at least several weeks. Tr. at 138:5-7. During that time, Thomasson testified that Superb's lot was full. Tr. at 139:20-140:9 ("I heard someone testifying earlier that it was 30 or 40 cars, it sure looked like more than that to me").

Thomasson denied any knowledge as to the whereabouts of the Remaining Vehicles. Tr. at 141:5-15. However, Thomasson testified that he discussed the whereabouts of the Remaining Vehicles with Deo leading up to the February 20, 2024 hearing on one to five occasions. Tr. at 141:19-143:10.

Thomasson went through the list of the Remaining Vehicles with Deo, as well. Tr. at 143:11-13. Thomasson claimed that Deo was able to account for about 36 of the 43 vehicles. Tr. at 143:25-144:8, 149:3-22.

In November or December of 2023, Deo no longer had access to 180 Michael Drive in Syosset, New York. Tr. at 61:4-13. Similarly, Deo no longer has access to 189 Sunrise Highway in Amityville, New York, since around the same time. Tr. at 61:14-20.

Deo could not state with certainty that any of the vehicles taken from Superb to 180 Michael Drive for the grand opening event were ever returned to Superb. Tr. at 61:22-63:9. There is no evidence that any were returned.

The Remaining Vehicles are not located at 180 Michael Drive. Tr. at 63:14-64:1. Nor are they located at 189 Sunrise Highway. Tr. at 64:2-4. Deo testified that none of the Remaining Vehicles are located at his home. Tr. at 64:6-12.

Deo incredibly testified that he does not know where any of the Remaining Vehicles are located. Tr. at 64:15-19. Prior to July 2023, there were no vehicles at 180 Michael Drive. See ECF Docket Entry 30 ¶ 18 ("Tony and I knew that we had plenty of room for extra cars since I had two empty car dealership lots that I leased"); compare with Supplemental Declaration of Armando L. Palmieri ¶¶ 5-10 ("On June 20, 2023 I visited Northshore Motors in Syosset at 180 Michael Drive in an attempt to purchase a vehicle. The facility was closed at both 9:00 AM and at 12:00 PM. The facility was empty of all cars"). All the vehicles that went to 180 Michael Drive were from Superb. See ECF Docket Entry 40 at ¶¶ 22-26.

In order for Deo to move the vehicles from Superb to 180 Michael Drive, he was required to obtain consent from Urrutia. See ECF Docket Entry 11-6 at ¶ 12(A)(iv) (providing Urrutia with full responsibility over managing vehicles). He did not do so. The Superb Plaintiffs respectfully incorporate by reference the facts set forth in the Supplemental Declaration of Bruce Novicky ("Novicky Supp. Decl."). As set forth therein, Superb has been forced to close due to its inability to purchase or sell any vehicles. Further, as outlined in Novicky's Supplemental Declaration, the Deo Defendants demonstrably lied at the February 20, 2024 hearing about their lack of knowledge concerning the whereabouts of the remaining vehicles such that an adverse inference is warranted. The Deo Defendants did not account for the vehicles they wholesaled in Tekion because doing so would raise questions about where the money for those vehicles went. See Novicky Supp. Decl. ¶¶ 23-27. For example, with respect to Vehicle No. 10,[11] Superb found a cash receipt of $1,500.00 in Tekion, but no deal booked in the DMS as there should be for a wholesaled car. Id. ¶ 28, Supp. Ex. A. Nor was there any bank deposit of the cash payment in June or July 2023. Id. ¶ 28, Supp. Exs. A, C, D, E; see also ECF Docket Entry 38-7.

---

[11] See ECF Docket Entry 56-2.

9

Further, the Deo Defendants placed trade-in vehicles on Superb's general ledger that never came in. See Novicky Supp. Decl. ¶¶ 33-37, 33 n. 5, 59. Moreover, the Deo Defendants routinely sold vehicles without removing them from the general ledger because the monies received for those vehicles did not go to Superb and were instead stolen by the Deo Defendants. Id. at ¶¶ 31-53. For example, with respect to Vehicle No. 20,[12] Superb's records reveal $36,358.00 receipted for that car, of which only $10,000.00 went to Superb because it was paid by credit card. Id. at ¶¶ 48-50, Supp Ex. B. The remaining funds which were paid in cash were taken by the Deo Defendants and were not deposited in any bank to the Superb Plaintiffs' knowledge, while the check payment was deposited in an unauthorized bank account at Flushing Bank. Id. at ¶ 50, Supp. Exs. B, C, and D. Finally, there still remain seven (7) vehicles which are completely unaccounted for. See Novicky Supp. Decl. ¶¶ 57-71, Supp. Exs. F, G, H, J, and K.

The Injunction does not specifically state whether the Remaining Vehicles must be returned to Superb. Read as a whole, however, the Injunction's main purpose is to protect the resale value of the vehicles. This interpretation is supported by the prohibition against driving or otherwise using or maintaining the vehicles on the lot in such a way that would damage the resale value of the vehicles. To this date, there is still no explanation by the Deo Defendants about the location of the remaining forty-three (43) vehicles identified in the Declaration of Bruce Novicky despite due demand for same. See ECF Docket Entry 56-1.

For the following reasons, and based on the letter and spirit of Judge Merchant's Injunction, this Court should modify the Injunction to require the Deo Defendants to return the Deo Injuncted Vehicles, the Remaining Vehicles, and permit Superb to sell the Superb Injuncted Vehicles and use the proceeds to wind down its business.

---

[12] See ECF Docket Entry 56-2.

10

Alternatively, all proceeds should be held in escrow (with some exceptions for which Superb should be permitted to keep the proceeds) pending the conclusion of this litigation.

## LEGAL STANDARD

"District courts have continuing power to vacate or modify injunctions where there is a showing of a change in the operative facts so that the injunction is no longer justified." See Helmer v. Briody, 721 F. Supp. 498, 505 (S.D.N.Y. 1989); see also International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006) ("A preliminary injunction may be modified if the moving party demonstrates that a material change in circumstances justifies the alteration"); Railway Labor Executives' Ass'n v. Metro North Commuter R. Co., 759 F. Supp. 1019, 1021 (S.D.N.Y. 1990) ("A continuing injunction, however, whether preliminary or permanent, is always subject to modification for a change in circumstances").

A court may modify a preliminary injunction "if the moving party demonstrates that a material change in circumstances justifies the alteration." See D9 Collection, L.L.C. v. Jimmy Jazz, Inc., No. 11-CV-8752, 2012 WL 13034897, at *2 (S.D.N.Y. June 29, 2012) (quoting Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006), aff'd 246 Fed. App'x 73 (2d Cir. 2007) (summary order)).

The changed circumstances must show that "continuance of the injunction is no longer justified and/or will work oppressively against the enjoined parties." Id. (internal quotation marks and citation omitted).  When considering a motion to modify a preliminary injunction, a trial court exercises "the same discretion it exercised in granting ... injunctive relief in the first place." See Sierra Club v. U.S. Army Corps of Eng'rs, 732 F.2d 253, 256 (2d Cir. 1984).

The court should consider "whether the requested modification effectuates or thwarts the purpose behind the injunction." Id. at 257 (citing Chrysler Corp. v. United States, 316 U.S. 556, 562 (1942)); New Falls Corp. v. Soni Holdings, LLC, No. 21 Civ. 865, 2022 WL 2720517, at *2 (2d Cir. July 14, 2022) (summary order).

The closure of a business constitutes a change of circumstances sufficient to modify a preliminary injunction. See FemHealth USA, Inc. v. Williams, 83 F.4th 551, 557 (6th Cir. 2023) ("Because the district court issued its preliminary injunction when carafem's Mt. Juliet clinic was providing in-person reproductive services, that court has not addressed whether the clinic's closure alters the court's finding that carafem is likely to suffer irreparable harm absent a preliminary injunction and, if carafem is likely to suffer irreparable harm, whether that harm can support an injunction under the FACE Act").

For the reasons set forth below, based on the evidence adduced at the hearing and in the supplemental declarations, this Court should modify the Injunction as requested.

## **PROPOSED CONCLUSIONS OF LAW**

### **A.   The Deo Defendants' Incredible Testimony Warrants an Adverse Inference**

This Court should make an adverse inference against the Deo Defendants because they demonstrably perjured themselves in light of the facts in the Novicky Supplemental Declaration. As is demonstrated therein, the Deo Defendants have absconded with the vehicles and pocketed any monies received for these vehicles in every way that they could.

Rather than come clean, they came to the February 20, 2024 evidentiary hearing without documents demanded of them in subpoenas and acted as if they did not know anything in spite of the fact they admitted keeping spreadsheets of the locations for each and every vehicle owned by Superb.

12

This conduct screams for an adverse inference, which courts routinely grant in similar circumstances. See Acco, Ltd. v. Rich Kids Jean Corp., No. 15 CIV. 7425 (JSR), 2017 WL 4350576, at *11 (S.D.N.Y. May 3, 2017) ("Moreover, it begs credulity that, given his role in this small operation, he would be unaware of what Anand was up to or what had happened to the supposed arrangement with Sasha or the transactions with GTH. Based not only on these inferences but also on the adverse inferences the Court draws from Law's generally less-than-credible testimony and demeanor, the Court infers that Law had actual knowledge of Anand's use of the MOU to perpetrate a fraud against the plaintiffs on behalf of Rich Kids") (emphasis added); see also De Dong Lin v. Holder, 359 Fed. Appx. 238, 240 (2d Cir. 2010) (unpublished) ("Because Lin's testimony was not otherwise credible, the IJ did not err … in drawing an adverse inference as to Lin's credibility from his failure to obtain corroboration of his claims").

Because the Deo Defendants demonstrably lied given the overwhelming evidence that: (i) there were many vehicles at Superb prior to the July 2023 grand opening event at 180 Michael Drive; (ii) all of Superb's vehicles were taken to the event; (iii) none of the vehicles ever came back from the event; and (iv) Thomasson's testimony that Deo was able to account for about 36 of the 43 vehicles, and the separate evidence that the missing vehicles have apparently been sold without accounting for the sales in Tekion, Superb's DMS system, this Court should make an adverse inference that the Deo Defendants stole the vehicles and therefore have no right, title, and/or interest in them under the law such that the Injunction must be dissolved to require the return of the Injuncted Deo Vehicles and permit the sale of the injuncted vehicles.

**B.     The Closure of Superb is a Material Change in Circumstances Warranting Modification Including the Sale of All Vehicles Subject to the Preliminary Injunction**

Here, the closure of Superb is inarguably a material change in circumstances.

13

Whereas, previously, Superb sought relief in order to survive and remain a viable business, it has been forced to shut down and now seeks this Court's injunctive relief to marshal its assets and secure the cooperation of Deo as required by its shareholders' agreement to wind down its business affairs. There is no more need to keep the vehicles under lock and key, as they must be sold, pursuant to Superb's Shareholders' Agreement.

Similarly, keeping the vehicles under the present restrictions would be oppressive to the parties. The relief sought by the Superb Plaintiffs is consistent with Superb's Shareholders' Agreement, which provides that upon dissolution, Urrutia will dissolve Superb and Deo will cooperate in that endeavor.

Deo has no rights to assert in the dissolution process, only the obligation to cooperate. There is no basis for which Deo can object nor can there be any negative repercussion to Deo as the proceeds from the sales will be held in escrow pending the conclusion of this litigation unless this Court finds, as it should, that the proceeds should go towards sustaining Superb's grievous losses. Regardless of where the funds go, the present Injunction precludes Superb from winding down its business which Superb must do now that it has closed.

Moreover, virtually every vehicle has been financed by Superb on its floor plan line of credit, such that it should be permitted to recoup the losses it sustained. Indeed, the Deo Defendants themselves concede that a vehicle that was financed on a floor plan line of credit belongs to the person who "backed" the vehicle financially. See ECF Docket Entry [65-1](#) at 47:21-25 ("I sat down with Anthony he said all right the floor plans means the cars are backed by them financially, right? He says, yeah, then we have to give it back. He says I agree a thousand percent. Give him the cars. We gave him every car").

This should be no different.

14

Again, the proceeds from the sales would be held in escrow pending the conclusion of this litigation, unless this Court finds that Superb is entitled to keep the proceeds due to the losses caused by the Deo Defendants. This Court should therefore require the return of the Injuncted Deo Vehicles, lift the injunction on all vehicles to permit their sale (with the proceeds being held in escrow pending the conclusion of this litigation, if the Court so chooses), and mandate Deo's cooperation in the winding up of Superb by, inter alia, requiring his truthful testimony as to the value received for each vehicle so as to permit Superb to properly close its books.

Superb's closure warrants this injunctive relief, without which it will only further be irreparably harmed.

**C.  In the Event this Court Denies the Relief Sought, The Injunction on Some Vehicles Must be Lifted**

Even if this Court were to deny the relief requested (which it should not), some of the Superb Injuncted Vehicles should not be subject to a prohibition against selling. With respect to the "[t]wo (2) Isuzu flatbed trucks," those vehicles belong to Team Imports, LLC d/b/a Team Hartford Mitsubishi. There is no basis for the Deo Defendants to object to lifting the Injunction as it relates to those vehicles.

Similarly, there are thirteen (13) vehicles that are owned by Team[13] as opposed to Superb. The Deo Defendants have no basis to object to their sale, either, as the Deo Defendants do not have any membership interest in Team. Accordingly, regardless of whether this Court modifies the Injunction on the grounds raised in Points A and B, the Injunction should be modified for these fifteen (15) vehicles at a minimum.

---

[13] As set forth in his declaration dated August 20, 2023, Team is a wholesale used car operation that Urrutia owns and operates out of New Jersey, to which Deo has no membership interest. See ECF Docket Entry 11 ¶ 1.

15

## **CONCLUSION**

For the foregoing reasons, the Superb Plaintiffs' Order to show cause to modify the Injunction must be granted as the relief requested is supported by Judge Merchant's stated purpose in granting the original Injunction.

Dated: Lake Success, New York
       March 22, 2024                      Respectfully submitted,

**MILMAN LABUDA LAW GROUP PLLC**

*/s/ Jamie S. Felsen, Esq.*
Jamie S. Felsen, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 303-1391 (direct dial)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: Jamaica, New York
       March 22, 2024                      **SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Additional Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*