UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

SUPPLEMENTAL DECLARATION OF BRUCE NOVICKY IN FURTHER SUPPORT OF THE SUPERB PLAINTIFFS' ORDER TO SHOW CAUSE TO MODIFY THE PRELIMINARY INJUNCTION

                              Plaintiffs,

     -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                              Defendants.
-------------------------------------------------------------------X

      Bruce Novicky declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

**Background**

1. I am the Chief Operating Officer of Superb Motors Inc. ("Superb") and Team Auto Sales LLC ("Team") and work with Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs").

2. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team, in addition to information I have learned from employees, customers, vendors, and other third parties concerning the issues relevant to this case and this motion.

3. I respectfully submit this supplemental declaration in further support of the instant Order to show cause to modify the preliminary injunction entered by the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") on September 29, 2023 (hereinafter the "Injunction").[1]

4. Because Superb has been shut down due to the Deo Defendants'[2] conduct, there has been a material change in circumstances warranting the relief requested.

5. In addition, and as further set forth below, this Court should make an adverse inference due to the Deo Defendants' demonstrable perjury as well as their failure to provide truthful testimony and evidence concerning the whereabouts of Superb's vehicles.

**Superb's Shutdown Due to the Deo Defendants' Conduct is a Material Change in Circumstances**

6. Superb commenced this case by seeking injunctive relief in order to survive.

7. While it sought and received some relief, regrettably, it was not enough.

---

[1] See ECF Docket Entry 55.

[2] Comprised of Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

8. As this Court is aware, Superb's primary floor plan lender, Nissan Motor Acceptance Corp. ("NMAC"), terminated its agreement with Superb, depriving Superb of the vital lifeline it had which enabled it to purchase vehicles.

9. Team Auto Sales LLC's floor plan lender, Next Gear Capital ("Next Gear"), soon followed in terminating its agreement with Team.

10. Although the Injunction provided Superb with some of the relief that it sought, there were unfortunately aspects of the Injunction which dealt it the final blows that led to its demise.

11. First, the Injunction was ambiguous as to whether the forty-three (43) vehicles at issue here should be returned.

12. Second, the Injunction prohibited Superb from selling any of the Injuncted Superb Vehicles,[3] which was the only way Superb could make money to survive as it was deprived of the only means it had to purchase vehicles for resale.

13. With no ability to purchase or sell vehicles, Superb laid off its entire sales staff, surrendered its DMV license, permanently closed, and is in the process of winding down its affairs.

14. However, Superb cannot properly do so without a modification of the Injunction to: (i) permit the sale of the remaining vehicles; and (ii) to obtain the cooperation of Defendant Anthony Deo ("Deo"), who is contractually bound to so cooperate in the event of the dissolution of Superb in accordance with its Shareholders' Agreement. See ECF Docket Entry 11-6 at ¶ 8.

**The Deo Defendants Perjured Themselves Concerning the Whereabouts of the Vehicles**

15. Slowly, but surely, I have been able to piece together what truly happened to *almost* every vehicle the Deo Defendants have stolen from Superb.

---

[3] Further, and ironically, although a stated purpose of the Injunction was to preserve the resale value of the vehicles, depreciation is withering away that resale value every day that the vehicles are prohibited from being sold.

16. Below are the results of our investigation.

17. In the original Order to show cause filed together with the complaint in this case, the Superb Plaintiffs complained that the Deo Defendants absconded with one-hundred-two (102) vehicles. See ECF Docket Entry 11-18.

18. After the Order to show cause was filed, the Superb Plaintiffs found thirteen (13) of these vehicles, leaving eighty-nine (89) remaining. See ECF Docket Entry 34.

19. Of those eighty-nine (89), another twelve (12) were then found, leaving seventy-seven (77) vehicles. See ECF Docket Entry 56-1 ¶ 5.

20. Of those, twenty-eight (28) were recovered directly from the Deo Defendants, with an additional two (2) Isuzu flatbed trucks that were not on that list, on September 15, 2023, leaving forty-nine (49) vehicles remaining. Id. ¶¶ 3-4.

21. Further, six (6) vehicles remain in the possession of the Deo Defendants, leaving forty-three (43) remaining vehicles. See ECF Docket Entry 55 at 29.

22. With respect to the forty-three (43) vehicles at issue in this motion, the Superb Plaintiffs have uncovered the following.

   i. Fifteen (15) Vehicles were Wholesaled to Nethanel Orgad of L&F & Others

23. The following vehicles were wholesaled, with all – except Nos. 13, 26, and 32 – sold to Nethanel Orgad ("Orgad") of L & F Luxury Autos ("L&F") by Deo in exchange for cash:

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 13 | SU1239 | 5FNYF4H58EB056804 | 2014 | Honda | Pilot |
| 10 | SU1275 | 1FM5K7B8XEGA63757 | 2014 | Ford | Explorer |
| 2 | SU0994A | WBAHN83588DT77672 | 2008 | BMW | 7 Series |
| 4 | SU1338 | 5N1BV28UX4N365724 | 2004 | Nissan | Quest |
| 8 | SU1304 | 5UXZV4C53D0E08930 | 2013 | BMW | X5 |
| 9 | SU1274A | 2C4RDGBG4CR249331 | 2012 | Dodge | Grand Caravan |
| 15 | SU1216 | 5TDBT44A84S221021 | 2004 | Toyota | Sequoia |

| 18 | SU1104A | 1FMEU74E57UA52487 | 2007 | Ford | Explorer |
| 27 | SU1128 | 5NPEB4AC0DH635244 | 2013 | Hyundai | Sonata |
| 28 | SU0895B | JN8AZ1MW1AW112694 | 2010 | Nissan | Murano |
| 33 | SU1002A | 1C4RJFCT1FC653909 | 2015 | Jeep | Grand Cherokee |
| 34 | SU848A | 5GALVBED8AJ256342 | 2010 | Buick | Enclave |
| 41 | SU0619A | 2C4RDGEG7GR384403 | 2016 | Dodge | Grand Caravan |
| 26 | SU1123 | JN1BY1PR8FM830659 | 2015 | Infiniti | Q70L |
| 32 | SU0890A | 1FM5K8D89EGA21518 | 2014 | Ford | Explorer |

24.     The Superb Plaintiffs learned of this by uncovering[4] the MV-50 forms issued from Superb to L&F.  See, e.g., ECF Docket Entry at 38-10 at 1, 8, 28, 32, 62, 70, 73, 89, 99 and 103; see also Id. at 76-77 for vehicle sold to Priced Right Auto in Michigan and at 65-66 for vehicle sold to RS Motors in Indiana.

25.     Normally, when a vehicle owned by Superb is wholesaled, the transaction is entered in Tekion for accounting purposes, then "booked."

26.     However, these fifteen (15) vehicles were never "booked" by the Deo Defendants and remained open, nor did the Deo Defendants fully and accurately receipt all the money for these vehicles.

27.     The Deo Defendants did not account for these vehicles in Tekion because doing so would raise questions about where the money for those vehicles went.

28.     An example of this can be found with respect to Vehicle No. 10, for which there is a $1,500.00 cash receipt, but no deal booked in Tekion as there should be for a wholesaled car, and no deposit in Superb's bank account for the cash received.  See copy of cash receipt from un-booked deal in Tekion annexed hereto as **Supplemental Exhibit "A."**

---

[4] Many MV-50s were never issued to Orgad, which the Superb Plaintiffs later issued to L&F in good faith notwithstanding the fact Superb never received any of the cash Orgad paid for those vehicles.  See ECF Docket Entry 40 for more information on Orgad's dealings with the Deos.

5

29. The Deo Defendants refused to admit at the February 20, 2024 evidentiary hearing that these vehicles were sold to L&F and other wholesalers because doing so would expose their fraud, i.e., that they received cash for vehicles that they absconded with. Further, these wholesaled vehicles remain unaccounted for in Tekion, preventing Superb from winding down its business.

30. Specifically, the general ledger contains $93,332.00 in assets from these vehicles that are no longer with Superb; without knowing exactly how much they were sold for (setting aside the fact that the money was stolen by the Deo Defendants), Superb cannot close its books.

   ii. <u>Twenty-One (21) Vehicles Have Been Accounted For</u>

31. The following vehicles have similarly been accounted for in the course of peeling away the onion layers of deceitful conduct by the Deo Defendants.

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 1 | SR1334 | WBA8E5G56GNU21721 | 2016 | BMW | 3 Series |
| 25 | SU1154 | 1G1105S35JU116841 | 2018 | Chevrolet | Impala |
| 3 | SU1313 | 1FTYR14E39PA15942 | 2009 | Ford | Ranger |
| 12 | SU1273 | JTJBT20X660124417 | 2006 | Lexus | GX 470 |
| 23 | SU1127 | WBANB53507CP08338 | 2007 | BMW | 5 Series |
| 36 | SU0960A | 4T1BZ1HK5JU014962 | 2018 | Toyota | Camry |
| 14 | SU1221 | WA1LHAF72KD026699 | 2019 | Audi | Q7 |
| 19 | SU1142 | ZASPAKBN0L7C92090 | 2020 | Alfa Romeo | Stelvio |
| 21 | SU1131 | WDDUG8GB4KA445850 | 2019 | Mercedes-Benz | S-Class |
| 39 | SU0942 | SALGS5SE6LA408198 | 2020 | Land Rover | Range Rover |
| 31 | SU1037 | 3VW4T7AJ8HM312579 | 2017 | Volkswagen | Jetta |
| 35 | SU0941A | WP1AB2A23BLA47985 | 2011 | Porsche | Cayenne |
| 42 | SU0933 | WA1AAAF78KD002872 | 2019 | AUDI | Q7 |
| 29 | SU1082 | WBAKC8C56ACY68247 | 2010 | BMW | 7 Series |
| 43 | SU1305 | WDDSJ4GB7KN725983 | 2019 | MERCEDES | CLA 250 |
| 7 | SU1297 | WBXHT3C3XH5F81562 | 2017 | BMW | X1 |
| 37 | SU0930 | WAUF2AFC3GN063552 | 2016 | Audi | S6 |
| 20 | SU1130 | 1FATP8UH6K5190020 | 2019 | Ford | Mustang |
| 16 | SU1210 | 1C4SDJCT2MC520441 | 2021 | Dodge | Durango |
| 22 | SU1120RF | 1G1ZD5STXLF122021 | 2020 | Chevrolet | Malibu |
| 40 | SU0915BB | WBA7F2C5XJB238313 | 2018 | BMW | 7 Series |

32.     Vehicle No. 1 was located at 189 Sunrise Highway and was thereafter sold by Superb.

33.     Vehicle No. 25 was marked as a trade-in for the purchase of Vehicle No. 22.[5] However, Vehicle No. 25 never made it on to Superb's lot; public records show that it was serviced in Detroit, Michigan in February 2023 and that someone attempted to register the vehicle in Michigan on August 19, 2023, yet the vehicle was offered for sale at Superb in July 2023.

34.     Vehicle No. 3 was serviced at Walmart Auto Care in Georgia in mid-July 2023, yet for some reason appears on Superb's general ledger. We have determined that it was a trade-in that never came in notwithstanding its presence on Superb's general ledger.

35.     We believe Vehicle No. 12 was similarly a trade-in that never came in notwithstanding its presence on Superb's general ledger, as public records show that the vehicle was exported to New Jersey on December 16, 2023.

36.     Vehicle No. 23 was also a trade-in that never came in notwithstanding its presence on Superb's general ledger.

37.     Vehicle No. 36 was similarly a trade-in that never came in notwithstanding its presence on Superb's general ledger; but this vehicle was manually deleted from the deal in Tekion, although it was not removed from Tekion, thus remaining on the general ledger.

38.     Vehicle No. 14 appears to have been sold to LI Auto, but we have been unable to verify this for a fact. Public records show that a title for the vehicle was issued in North Carolina on January 31, 2024.

---

[5] In other words, Deo purportedly purchased this vehicle from a customer that was buying a car from Superb. However, Superb never took possession of the trade-in vehicle. In some circumstances, our investigation revealed that Deo created deals and submitted them to banks to fund deals when the customer never took delivery. This was one of the means by which the Deo Defendants disguised their fraudulent schemes and made it appear Superb was profitable.

7

39. Vehicle No. 19 was a purchase from a Manheim auction which was reversed in May 2023, but nonetheless remained on Superb's general ledger.

40. Vehicle No. 21 was sold as a retail sale but remained on Superb's general ledger since February 2023; CarFax records show that the vehicle was offered for sale in mid-July 2023 despite the fact it had previously been sold.

41. Vehicle Nos. 39, 31, 35, 42, 29, and 43 were also left on Superb's general ledger notwithstanding the fact they were sold.

42. Vehicle No. 7 was apparently wholesaled, with a title issued in New York for the vehicle on November 28, 2023, despite the fact it remains on Superb's general ledger.

43. Vehicle No. 37 was sold to a customer and bought back from the customer by Superb, but never retrieved. Public records show that it was serviced in Illinois on January 17, 2024.

44. Vehicle Nos. 20, 16, 22, and 40 were sold but remain on Superb's general ledger.

45. There should be no reason why a sold vehicle would remain on Superb's general ledger, and this presents the same accounting issues identified for the wholesaled vehicles above.

46. This is because upon a sale, the Deo Defendants were supposed to account for the monies received in Tekion and the vehicle would be removed from the general ledger upon doing so.

47. The only reason these sold vehicles remain on the general ledger is because the monies received for those vehicles did not go to Superb and were stolen by the Deo Defendants.

48. For example, as to Vehicle No. 20, our records reveal that we received $36,358.00 in an early July 2023 sale, with $10,000.00 by credit card, $8,000.00 in cash, and $18,358.00 by check. See copy of receipts and bank records annexed hereto as **Supplemental Exhibit "B."**

8

49. The credit card payment went to Superb's Chase account because the Deo Defendants had not yet figured out a way to defraud the Superb Plaintiffs as to credit cards.

50. Meanwhile, the cash payment never made it to the bank in July 2023, and the check payment went to the fraudulent Flushing Bank account the Deo Defendants opened for Superb without Urrutia's knowledge. See copy of June 2023 bank statement for Superb annexed hereto as **Supplemental Exhibit "C"** and ECF Docket Entry 38-7 (containing copy of Superb's July 2023 redacted bank statement); compare with **Supplemental Exhibit "B."**

51. In fact, neither statement contains a single *cash or check* deposit for months, with only ACH and wire or transfer deposits coming in to the account for April, May, June, and July 2023! See copies of Superb's April 2023 and May 2023 bank statements annexed hereto as **Supplemental Exhibits "D" and "E."**

52. This is despite the fact that Tekion shows over half-a-million dollars in cash deposits that remain unaccounted for. See ECF Docket Entry 11 at ¶¶ 122-126; see also ECF Docket Entry 11-12.

53. None of the cash receipted by Superb has been deposited in its bank account (or any other account the Superb Plaintiffs are aware of), nor is there any information as to how much the wholesaled vehicles were sold for (as the receipts were kept in Defendant Marc Merckling's head). See ECF Docket Entry 40 at ¶ 11 ("when [Orgad] was adamant about getting a receipt, Merckling pointed to his temple and said 'the receipt is up here'")

54. These circumstances are preventing Superb from winding down and dissolving due to Deo's refusal to cooperate with Urrutia and because many vehicles remain unaccounted for.

55. It is therefore impossible for Superb to properly wind down its business, and the requested relief from this Court is both warranted and necessary for Superb to do so.

56. Without this relief, Superb will be further irreparably harmed.

iii. <u>Seven (7) Vehicles Remain Completely Unaccounted For</u>

57. It took months and months of work to obtain some sense of where the vehicles are.

58. However, there still remain seven (7) vehicles that the Superb Plaintiffs cannot account for at all.

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 5 | SU1312 | 5UXZV4C57CL889887 | 2012 | BMW | X5 |
| 6 | SU1307 | 3GCPYFED9MG383394 | 2021 | Chevrolet | Silverado 1500 |
| 11 | SU1276 | 4JGAB74E1YA173539 | 2000 | Mercedes-Benz | M-Class |
| 17 | SU0981A | 2FMEK63C89BA19931 | 2009 | Ford | Flex |
| 24 | SU1114A | WBAFU7C54BC879208 | 2011 | BMW | 5 Series |
| 30 | SU874B | WA1KK78R59A048822 | 2009 | Audi | Q5 |
| 38 | SU0936 | WBAJE7C5XKWW08935 | 2019 | BMW | 5 Series |

59. Vehicle No. 5 was a trade-in vehicle that was not present on August 3, 2023 when I came to conduct a physical audit.

60. Vehicle Nos. 11, 17, and 38 were offered for sale in July 2023 but I have not been able to find any other information on these vehicles.

61. I have no information on Vehicle No. 24 whatsoever.

62. Vehicle No. 30 was offered for sale by Superb in mid-July 2023 and was issued a title in New Jersey on September 23, 2023.

63. Vehicle No. 6 presents a glimpse into what may have happened to the remaining vehicles that are missing.

64. As presented at the February 20, 2024 hearing, Deo made a multitude of conflicting statements about the whereabouts of this vehicle while it was at Superb, and we have uncovered evidence that this vehicle was apparently "sold" not once, but twice, according to Deo.

10

65. On February 2, 2023, he emailed me that he "would absolutely want to keep" this vehicle, but on March 21, 2023, he told me in an email that the vehicle does not exist.[6] See copy of e-mails annexed hereto as **Supplemental Exhibits "F" and "G."**

66. Yet, on April 12, 2023, he reported the vehicle as sold to NMAC during an audit. See copy of e-mail annexed hereto as **Supplemental Exhibit "H."**

67. Notwithstanding, on April 29, 2023, Deo once again reported the vehicle as the "Silverado that does not exist." See copy of e-mail annexed hereto as **Supplemental Exhibit "I."**

68. Public records show that Vehicle No. 6 had a title issued in Florida a week after it was offered for sale at Superb, and was recently serviced in Florida on January 6, 2024.

69. Astoundingly, this same vehicle was then placed on NMAC's floor plan line of credit by Deo again in June 2023 (in order to obtain funds from the line of credit), and was then *again* reported sold by Deo[7] on July 4, 2023. See copy of e-mail from NMAC annexed hereto as **Supplemental Exhibit "J."**

70. Further, our investigation revealed that Deo personally fraudulently created a second deal for the same vehicle for the purpose of either delaying repayment on this vehicle during the floor plan audit *or*, ostensibly, in order to obtain financing from the bank despite the fact the vehicle was no longer in his possession and "never existed" according to him. See copies of deal documents from Tekion annexed hereto as **Supplemental Exhibit "K."**

---

[6] When confronted about this at the February 20, 2024 evidentiary hearing, Deo testified that he made these determinations without physically looking at this $52,000.00 vehicle, which is not credible, as physical inspections are required to ascertain the condition of the vehicle. Dealerships do not operate in this manner, nor do they avoid making cash and check deposits.

[7] Deo handled the floor plan audits from November 2022 through July 2023. See ECF Docket Entry 38-2 (June 7, 2023 text message from Deo stating "And then we are preparing for the audit").

11

71. Based on the findings of my investigation, the Deo Defendants' incredible testimony at the February 20, 2024 evidentiary hearing, and their failure to bring with them evidence they were required to bring as demanded in the subpoenas[8] we issued, this Court should make an adverse inference that the Deo Defendants stole the vehicles and/or the money for the vehicles by engaging in fraud, serving as a separate reason the requested relief is warranted.

**The Injunction Should be Lifted for Vehicles Owned by Team & the Isuzus in any Event**

72. Because Superb has been forced to shut down and needs to wind down, this Court should modify the preliminary injunction due to this material change of circumstances by requiring the Deo Defendants to return the Deo Injuncted Vehicles and require the sale of all the vehicles in order to wind down the affairs of Superb.

73. It is respectfully submitted that the proceeds of any such sale be applied towards the losses sustained by Superb, without which Superb will be further irreparably harmed due to its inability to wind down its affairs and because the remaining vehicles are deeply depreciating in value every day they remain unsold.

74. However, to the extent this Court is not inclined to do so, the proceeds should be placed in escrow pending further Order of this Court, which will further harm Superb because it has been left with no way to pay its creditors and make whole the other victims[9] of the Deo Defendants' conduct – customers, vendors, and the public at large.

---

[8] A copy of the subpoenas and the Deo Defendants' agreement to accept service of same are annexed hereto as **Supplemental Exhibit "L."**

[9] For example, one Injuncted Superb Vehicle bearing VIN No.: 1FTEW1EF1GFB67420 was recently repossessed by a repo company because the Deo Defendants never paid the outstanding lien on it, which they obtained as a trade-in.

75. Because Superb is no longer a going concern, there is no basis to prevent the sale of the vehicles, and doing so would only further harm their resale value due to depreciation. No party would be harmed by the sale of the remaining vehicles.

76. In the event this Court denies the relief requested (which it should not), it should nonetheless lift the injunction for the following sixteen (16) vehicles and permit them to be sold because they are not and never were owned by Superb.

77. Thirteen (13) of the twenty-eight (28) vehicles recovered on September 15, 2023 belong to Team, not Superb. See ECF Docket Entry 112 ¶ 44; see also ECF Docket Entry 112-8.

78. Further, on September 15, 2023, the Superb Plaintiffs recovered from the Deo Defendants two (2) Isuzu flatbed trucks that never belonged to Superb nor Team.

79. Those vehicles are titled to Team Imports, LLC d/b/a Team Mitsubishi Hartford and do not belong to Superb. See copy of proof of ownership for the Isuzus annexed hereto as **Exhibit "M."**

80. Thus, the injunction against selling the thirteen (13) Team vehicles and two (2) Isuzu flatbed trucks should be lifted.

81. I respectfully request that this Court grant the relief requested herein.

I declare under penalty of perjury that the foregoing is true and correct. Executed on March 21, 2024.

Bruce Novicky