UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

SUPERB MOTORS INC. *et al,*

                       Plaintiffs,

                                                       **MEMORANDUM**
                                                       **<u>AND ORDER</u>**

                    -against-                                     23-CV-6188 (JMW)

ANTHONY DEO *et. al.*

                       Defendants.

------------------------------------------------------------X

**A P P E A R A N C E S:**

Jamie Scott Felsen, Esq.
Emanuel Kataev, Esq.
**Milman Labuda Law Group PLLC**
3000 Marcus Avenue, Suite 3w8
Lake Success, NY 11042
*Attorneys for all Plaintiffs*

Jeffrey C. Ruderman, Esq.
Russell J. Shanks, Esq.
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian Chabrier*
*(individually and derivatively as a member of Northshore Motor Leasing, LLC), Joshua*
*Aaronson (individually and derivatively as a member of 189 Sunrise Hwy Auto, LLC), Jory*
*Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk*
*Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto Management, LLC.*

Brian Levine, Esq.
**The Levine Firm, P.C.**
260 North Broadway, Suite 2a
Hicksville, NY 11801
*Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc*

*Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

**WICKS,** Magistrate Judge:

Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia (collectively "Plaintiffs"), claim that Deo Defendants[1] engaged in a pattern of fraudulent misconduct in connection with several vehicle dealerships and accompanying floorplan agreements. Specifically, Plaintiffs allege the following causes of action: (1) violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"); (2) violations of the Defend Trade Secrets Act ("DTSA"); (3) unfair competition; (4) tortious interference; (5) unjust enrichment; (6) conversion; (7) fraud; (8) breach of fiduciary duty; and (9) conspiracy. (*See generally* Amended Complaint filed at ECF No. 65.)

On November 25, 2023, Plaintiffs filed a motion before the undersigned to modify the Honorable Orelia E. Merchant's order on the preliminary injunction (ECF No. 110). The Court granted the motion in part and denied it in part, ordering an evidentiary hearing to be held on February 20, 2024 to determine the location of the 43 outstanding vehicles.[2] (*Id.*) On the heels of the hearing, the Deo Defendants filed a motion for the Plaintiffs to be held in civil and criminal contempt (ECF No. 152). For the reasons that follow, both motions (ECF Nos. 110 and 152) are granted in part and denied in part.

---

[1] The "Deo Defendants" are comprised of: Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp. (ECF No. 152.)

[2] These 43 vehicles are identified in ECF No. 56-2.

## BACKGROUND

Familiarity with the background is assumed and can be found in the undersigned's prior Orders. (*See* ECF Nos. 98 and 134.) Of relevance here, when ruling on Plaintiffs' motion filed at ECF No. 110 to modify Judge Merchant's preliminary injunction order, the undersigned denied in part Plaintiffs' request to return the 6 Deo vehicles and the 43 remaining vehicles to Plaintiffs.[3] (ECF No. 134 at 6.) In addition, the Court granted Plaintiffs' request for alternative relief, that is, to hold an evidentiary hearing to determine the 43 vehicles' whereabouts since none of the parties could identify the location of these vehicles. Each of the motions is described below.

A. Evidentiary Hearing and Subsequent Filings

The undersigned held an evidentiary hearing with the Superb Plaintiffs and Deo Defendants on February 20, 2024 in which exhibits were entered into evidence and witness testimony was heard from Anthony Deo, Marc Merckling, Dwight Blankenship, Eugene Lowe, Efaz Anthony Deo, Michael Laurie, and Harry Thomasson, Jr. (ECF Nos. 151, 163.) However, at the hearing, neither side could establish definitively the whereabouts of the remaining 43 vehicles.

Following the hearing, the parties filed their respective proposed findings. (ECF Nos. 156 and 157.) Defendants affirmed that they do not have personal knowledge as to the 43 vehicles' location and alleged that Plaintiffs failed to produce evidence at the hearing to establish that Defendants are the ones in "possession custody, or control" or otherwise have knowledge of

---

[3] As to Plaintiffs' other requests, the undersigned (1) denied the request to sell the Superb vehicles and (2) granted requests for alternative relief by directing Defendants to provide date-stamped photographs and odometer readings of the 43 vehicles and 6 Deo vehicles, requiring Deo Defendants to establish that they have stored the cars in a separate storage facility, and requiring Deo Defendants to provide full insurance coverage for the vehicles. (ECF No. 134.)

those vehicles (ECF No. 156) and accordingly, Plaintiffs failed to meet their burden of proof to warrant modification of the order.

Meanwhile, Plaintiffs state that closure of Superb (discussed at length below) constitutes a "material change of circumstances" warranting modification of Judge Merchant's order because it was unable to sell the 30 injuncted vehicles.  (*See* ECF Nos. 55, 157.)  Plaintiffs request that the Court require all 30 injuncted vehicles to be sold and for Superb to retain the proceeds or otherwise keep the funds from the sale of the vehicles and hold them in escrow. Plaintiffs state that retaining the sales proceeds would preserve the vehicles' resale value.  They further contend that doing so would conform to a shareholder's agreement between the parties, which stated that if dissolved, Superb should be liquidated under Urrutia's supervision and with Deo's cooperation and the assets should be distributed according to law or as otherwise agreed upon.  Plaintiffs further allege that relief is warranted since Superb cannot wind down without providing a proper accounting per vehicle.  They assert that the Deo Defendants do not have any rights, title, or interest in the vehicles—they all belong to Superb via the floor plan line of credit. Therefore, modification is warranted.

Plaintiffs maintain that Deo moved Superb's vehicles for various events and therefore *knew* the location of these vehicles.  Deo did not obtain consent from Urrutia to move these vehicles.  Further Deo kept a spreadsheet as to the vehicles' whereabouts, however, at the hearing, no one could attest to their location.  Notably, none of the vehicles are at Deo's home or the Deo appointed lots.

According to Plaintiff Novicky's declaration, Plaintiffs have been able to locate 15 of the 43 vehicles, which have been wholesaled to Nethanel Orgad of L&F Luxury Autos by Deo in exchange for cash (ECF No. 157-1 at 4-5):

| # in | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 13 | SU1239 | 5FNYF4H58EB056804 | 2014 | Honda | Pilot |
| 10 | SU1275 | 1FM5K7B8XEGA63757 | 2014 | Ford | Explorer |
| 2 | SU0994A | WBAHN83588DT77672 | 2008 | BMW | 7 Series |
| 4 | SU1338 | 5N1BV28UX4N365724 | 2004 | Nissan | Quest |
| 8 | SU1304 | 5UXZV4C53D0E08930 | 2013 | BMW | X5 |
| 9 | SU1274A | 2C4RDGBG4CR249331 | 2012 | Dodge | Grand Caravan |
| 15 | SU1216 | 5TDBT44A84S221021 | 2004 | Toyota | Sequoia |
| 18 | SU1104A | 1FMEU74E57UA52487 | 2007 | Ford | Explorer |
| 27 | SU1128 | 5NPEB4AC0DH635244 | 2013 | Hyundai | Sonata |
| 28 | SU0895B | JN8AZ1MW1AW112694 | 2010 | Nissan | Murano |
| 33 | SU1002A | 1C4RJFCT1FC653909 | 2015 | Jeep | Grand Cherokee |
| 34 | SU848A | 5GALVBED8AJ256342 | 2010 | Buick | Enclave |
| 41 | SU0619A | 2C4RDGEG7GR384403 | 2016 | Dodge | Grand Caravan |
| 26 | SU1123 | JN1BY1PR8FM830659 | 2015 | Infiniti | Q70L |
| 32 | SU0890A | 1FM5K8D89EGA21518 | 2014 | Ford | Explorer |

Further, 21 of the 43 vehicles have been located, whereby several of them have either been sold and remain on the ledger or were marked as trade-in vehicles but never brought to Superb.  (*Id*. at 6-7.)

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 1 | SR1334 | WBA8E5G56GNU21721 | 2016 | BMW | 3 Series |
| 25 | SU1154 | 1G1105S35JU116841 | 2018 | Chevrolet | Impala |
| 3 | SU1313 | 1FTYR14E39PA15942 | 2009 | Ford | Ranger |
| 12 | SU1273 | JTJBT20X660124417 | 2006 | Lexus | GX 470 |
| 23 | SU1127 | WBANB53507CP08338 | 2007 | BMW | 5 Series |
| 36 | SU0960A | 4T1BZ1HK5JU014962 | 2018 | Toyota | Camry |
| 14 | SU1221 | WA1LHAF72KD026699 | 2019 | Audi | Q7 |
| 19 | SU1142 | ZASPAKBN0L7C92090 | 2020 | Alfa Romeo | Stelvio |
| 21 | SU1131 | WDDUG8GB4KA445850 | 2019 | Mercedes-Benz | S-Class |
| 39 | SU0942 | SALGS5SE6LA408198 | 2020 | Land Rover | Range Rover |
| 31 | SU1037 | 3VW4T7AJ8HM312579 | 2017 | Volkswagen | Jetta |
| 35 | SU0941A | WP1AB2A23BLA47985 | 2011 | Porsche | Cayenne |
| 42 | SU0933 | WA1AAAF78KD002872 | 2019 | AUDI | Q7 |
| 29 | SU1082 | WBAKC8C56ACY68247 | 2010 | BMW | 7 Series |
| 43 | SU1305 | WDDSJ4GB7KN725983 | 2019 | MERCEDES | CLA 250 |
| 7 | SU1297 | WBXHT3C3XH5F81562 | 2017 | BMW | X1 |
| 37 | SU0930 | WAUF2AFC3GN063552 | 2016 | Audi | S6 |
| 20 | SU1130 | 1FATP8UH6K5190020 | 2019 | Ford | Mustang |
| 16 | SU1210 | 1C4SDJCT2MC520441 | 2021 | Dodge | Durango |
| 22 | SU1120RF | 1G1ZD5STXLF122021 | 2020 | Chevrolet | Malibu |
| 40 | SU0915BB | WBA7F2C5XJB238313 | 2018 | BMW | 7 Series |

Finally, the 7 remaining vehicles remain unaccounted for (*id*. at 10):

| # in 56-2 | Stock No. | VIN No. | Year | Make | Model |
|---|---|---|---|---|---|
| 5 | SU1312 | 5UXZV4C57CL889887 | 2012 | BMW | X5 |
| 6 | SU1307 | 3GCPYFED9MG383394 | 2021 | Chevrolet | Silverado 1500 |
| 11 | SU1276 | 4JGAB74E1YA173539 | 2000 | Mercedes-Benz | M-Class |
| 17 | SU0981A | 2FMEK63C89BA19931 | 2009 | Ford | Flex |
| 24 | SU1114A | WBAFU7C54BC879208 | 2011 | BMW | 5 Series |
| 30 | SU874B | WA1KK78R59A048822 | 2009 | Audi | Q5 |
| 38 | SU0936 | WBAJE7C5XKWW08935 | 2019 | BMW | 5 Series |

Plaintiffs therefore request that the Court require the return of the injuncted Deo vehicles; lift the injunction of all vehicles to allow the sale with proceeds to be held in escrow; and require

Deo's cooperation in winding up Superb.  Plaintiffs further request that the injunction on the two Isuzu flatbed trucks and vehicles owned by third parties, Team Imports and Team (a wholesale used car operation owned and operated by Urrutia in New Jersey).  They state that Deo Defendants have no interest in these vehicles, and they should not be subjected to the prohibition against selling.

B.  <u>Motion for Contempt</u>

a.  <u>Defendants' Contentions</u>

After the evidentiary hearing, Deo Defendants filed a motion for contempt against the Superb Plaintiffs, requesting that the Court:

a.  Find Plaintiffs in civil and criminal contempt;

b.  Direct Plaintiffs to return the Superb vehicles to Superb;

c.  Order Plaintiffs to deliver the original titles to the Superb cars to a court appointed third party to be held in trust at the Plaintiffs' expense;

d.  Order Plaintiffs to store the cars in a secure, enclosed, storage facility independently owned by a third party and located in NYS and file proof of insurance coverage and date-stamped photos showing the odometer and location in an enclosed storage facility;

e.  Award Deo Defendants costs and fees; and/or

f.  Issue appropriate monetary sanctions including: (i) $5,000 per vehicle per day until Plaintiffs have met the conditions by the Court; (ii) a monetary fine of $5,000 against Plaintiffs for each instance of contempt of the order as punitive damages; and (iii) arrest and incarceration of Urrutia until full compliance is achieved.

(ECF No. 152.)

Deo Defendants alleged that they had recently discovered that Plaintiffs' vehicles were involved in transactions that violated Judge Merchant's order.  (ECF No. 152.)  Defendants state that Plaintiffs' prior request to modify the order to allow for the sale or transfer of title was a

façade to conceal Plaintiffs' prior violations.  Specifically, Defendants learned that Superb no longer has a retail license, as it expired on December 5, 2023.  Thus, before it expired, they needed to transfer title of the 30 Superb vehicles.  According to DMV records, Superb transferred title for almost all of the Superb vehicles, as well as two of the Deo vehicles, from October to November 2023.  (*See* ECF No. 152-1 at 6.)  Upon transferring the vehicles' title, Defendants have been unable to determine the location of these 30 vehicles.  Further, Plaintiffs have not provided the odometer reading photographs although they said they were prepared to do so.[4]  As a result, Defendants request that the vehicles be returned *to Superb* and the vehicles be stored in an enclosed facility and that they file date-stamped photos as well as proof of adequate insurance coverage.

Defendants further state that the Court should find Plaintiffs in contempt because Judge Merchant's order was clear and unambiguous, as it outlined conduct permitted by Plaintiffs and barred them from selling the cars and prohibited them from changing title.  (ECF No. 55.) Plaintiffs defied that order by either selling or transferring the Superb vehicles or otherwise had their title changed to another entity.  They filed the motion to modify the order back in November 2023, when they had been transferring the vehicles all along.

b.  Plaintiffs' Response

Plaintiffs oppose Defendants' contentions, stating there should be no finding of contempt since Superb now *has* title to the Superb vehicles.  (ECF No. 154.)  Throughout the duration of this case, Superb has been forced to close its business because it could not establish a new line of credit and, as a result of Judge Merchant's order, Superb was unable to sell any of the vehicles.

---

[4] It should be noted that the undersigned only ordered *Defendants* to produce these odometer reading photos, not Plaintiffs.  (*See* ECF No. 134 at 9.)

Superb also consequently surrendered its license with the DMV because failing to do so would result in a $50,000 monthly expense.

Superb further explains that when it surrendered its license, it had to remove the cars from VerifiNY[5] because a car that remains in the VERIFI system for a dealer that surrendered its license would be incapable of being sold or transferred.  In order to transfer title for a car in the system, dealers must use an MV-50 or Retail Certificate of Sale, which provides proof of ownership for used cars whereby the dealer signs this form transferring ownership to the new customer.  *Get proof of ownership at purchase,* Department of Motor Vehicles, https://dmv.ny.gov/registration/get-proof-ownership-purchase#:~:text=Retail%20Certificate%20of%20Sale%20(MV,to%20transfer%20ownership%20to%20you (last visited Apr. 3, 2024).  Superb removed its vehicles from VERIFI and *temporarily* transferred the cars to Team Mitsubishi Hartford and subsequently back to Superb. Plaintiffs state that the only difference between the entries on VERIFI is that Superb now owns the cars as an asset as opposed to as a licensed dealership.

Superb assures the Court that the lot it was transferred to was a cross-collateralized Urrutia Dealership Lot per Judge Merchant's order (ECF No. 55 at 29) and that the transference was only done to protect the cars' value so they could potentially be resold again.  Unlike Defendants, Superb argues that Judge Merchant's order *was* ambiguous as to whether Plaintiffs' transfer violated the order.  Superb maintains that the vehicles could be *transferred* to an *Urrutia lot*.  It states that any ambiguities should be construed in its favor.

---

[5] VERIFI "is DMV's system for electronically tracking Dealers' sales of motor vehicles in New York. It replaces the paper-based system of MV-50 forms, and Books of Registry."  *Frequently Asked Questions and Tutorials,* Department of Motor Vehicles, https://www.verifiny.com/faq (last visited Apr. 3, 2024).

In the event that the Court finds the transfer was improper, Superb requests leave *nunc pro tunc* to temporarily transfer the Superb Vehicles to a Urrutia dealership.  (ECF No. 153 at 3.) Superb states no harm was done because Superb retains title without any injury to Deo Defendants.  Superb instead states that *Deo Defendants* should be required to return their vehicles it owns since Superb had to close its doors due to Deo's actions and sell its own vehicles as part of its wind up.

Superb further states that Deo Defendants' own unclean hands deprive Defendants of relief, especially given that Deo's own conduct caused Superb to shut down.  The Deo Defendants also committed several violations of Judge Merchant's order by:

- Surrendering possession of a Deo Lot on September 30, 2023 and did not seek the Court's permission;
- Driving the cars in violation of the order; and
- Failing to comply with the Court's order regarding storage and insurance of the vehicles

(ECF No. 134)

Finally, Superb states that Deo Defendants' motion for contempt should be denied on procedural grounds because a notice of motion along with a memorandum of law as well as an affidavit and evidence for damages should have been attached.

c. Defendants' Reply

Defendants, in reply, allege that the documents demonstrating the transference was fabricated to conceal Plaintiffs' noncompliance with Judge Merchant's order.  (ECF No. 158.) There are no documents filed with the DMV, despite Plaintiffs' claim that the vehicles were re-titled in Superb's name.  The forms attached to Plaintiffs' opposition have missing dates or signatures and are inconsistent with the information on VERIFI.  Namely, the cars were not transferred to Team Mitsubishi on the dates that Superb claims; rather, they were transferred to Volkswagen of Freehold on different dates.

Secondly, Defendants claim that Plaintiffs instead could have sold the vehicles to itself as a nondealer instead of transferring out the vehicles in the manner they did.  Further, adding owners to the vehicles diminishes their value, which violates the Injunction Order.

      d.   Plaintiffs' Sur-Reply

Plaintiffs filed a sur-reply at ECF No. 159, alleging that even if certain vehicles were transferred to Volkswagen of Freehold, it is an authorized lot per Judge Merchant's order.  (ECF No. 55 at 29.)  Further, these vehicles were transferred back to Superb, so there is no injury. *Secondly,* as to Deo Defendants' argument that the documents were fabricated, Superb states that Deo Defendants' do not submit support for this allegation.  *Third,* that the transactions added another owner, Plaintiffs respond that Defendants again cannot provide support for this allegation.  Notably, Defendants rely on Carfax reports for their assertion; this was a report they objected to introducing at the evidentiary hearing on February 24, 2024.  *Fourth,* although Deo Defendants are correct that Superb could have transferred the vehicles directly from Superb back to itself, this transaction would have constituted a retail sale that would result in adding an owner to the vehicle history.  *Finally,* Superb argues that all vehicles are back with Superb and have always remained on one of the cross-collateralized Urrutia lots per Judge Merchant's order.  For all these reasons, they request, that the Court deny Defendants' motion for contempt.

## **LEGAL STANDARD**

The legal framework for both motions – to modify the preliminary injunction and for contempt – are set forth below, followed by the Court's analysis of each.

### **I.    Motion to Modify a Preliminary Injunction**

"A trial court's power to modify an injunction, like the power over all its orders,' is inherent." *New Falls Corp. v. Soni Holdings,* No. 19-CV-0449 (ADS) (AKT*), 2020 U.S. Dist. LEXIS 186395, at *29 (E.D.N.Y. Sept. 30, 2020).  Preliminary injunctions are governed by Fed.

R. Civ. P. 65.  A court may grant a preliminary injunction if the "plaintiff has shown (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [the plaintiff's] favor; and (4) that an injunction is in the public interest."  *Abbott Lab'ys v. H&H Wholesale Servs., Inc.*, 670 F. App'x 6, 8 (2d Cir. 2016) (quotes omitted).

District courts in this Circuit have applied the following standard for modifying the preliminary injunctions, which the undersigned follows, namely, the movant must demonstrate "a material change in circumstances justifies the alteration."  *New Falls Corp.*, 2020 U.S. Dist. LEXIS 186395 at *30; *see also Lawsky v. Condor Capital Corp.*, No. 14-cv-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief).  "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [] will work oppressively against the enjoined parties."  *Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006).

## II.    Motions for Contempt

Fed. R. Civ. P. 70 states in relevant part that "[i]f a judgment requires a party to…perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court."  Fed. R. Civ. P. 70(a).  In addition, the court can hold the disobedient party in contempt.  Fed. R. Civ. P. 70(e).  "There are three essential elements which must be established before a party can be held in civil contempt: 1) there must be an order that is clear and unambiguous; 2) the proof of non-compliance with that order must be clear and convincing; and 3) it must be shown that the contemnor has not been reasonably diligent and energetic in

attempting to accomplish what was ordered." *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted). "A defendant's conduct need not be willful in order for the defendant to be found in contempt." *Yurman Studio, Inc. v. Castaneda*, Nos. 07-cv-1241 (SAS), 07-cv-7862 (SAS), 2009 U.S. Dist. LEXIS 13870, at *6 (S.D.N.Y. Feb. 23, 2009). All three elements must be met.

Defendants also seek to hold Plaintiffs in criminal contempt. To do so, the movant must demonstrate beyond a reasonable doubt that: "(1) the court entered a reasonably specific order; (2) [the alleged contemnors] knew of that order; (3) [the alleged contemnors] violated that order; and (4) [their] violation was willful." *United States v. Lynch,* 162 F.3d 732, 744 (2d Cir. 1998). The burden to hold an individual in criminal contempt "is greater than the burden on a party seeking only civil redress." *Fox Indus. v. Gurovich,* No. 03-CV-5166 (TCP) (WDW), 2005 U.S. Dist. LEXIS 59165, at *13 (E.D.N.Y. June 2, 2005).

## DISCUSSION

### I.    Plaintiffs' Motion to Modify Preliminary Injunction Order
#### a.  The Evidentiary Hearing

*First and foremost,* it is undisputed that the moving party has the burden to establish that modification of the preliminary injunction is warranted. *New Falls Corp*., 2020 U.S. Dist. LEXIS 186395 at *29; *SEC v. Illarramendi*, No. 11-cv-78 (JBA), 2014 U.S. Dist. LEXIS 16459, at *14 (D. Conn. Feb. 10, 2014) (stating that the "party seeking relief bears the burden of establishing that there has been a change of circumstances that warrants relief"). Plaintiffs failed to meet their burden to locate the whereabouts of the 43 missing vehicles at the evidentiary hearing. Specifically, Plaintiffs sought to show where the cars were *not* located but could not state with certainty where the vehicles were located on the date of the hearing. Plaintiffs attempt to place the burden on Defendants to establish the vehicles' whereabouts, but this is misguided.

12

The undersigned even afforded the parties an opportunity to further outline where the vehicles were by having them submit proposed findings of fact and law, but Plaintiffs again have not shown where the vehicles are located to assign fault to Defendants.  For example, for the 15 vehicles that were wholesaled to Nethanel Orgad, Plaintiffs only state in a conclusory manner that the Deo Defendants never accounted for the vehicles in Plaintiffs' system.  (ECF No. 157-1 at 5.)  However, Plaintiffs failed to prove that the Deo Defendants were responsible for these missing vehicles.  The same goes for the 21 vehicles that either remained on the ledger or were listed as trade-in vehicles.  (*Id*. at 6-8.)  Instead, Plaintiffs urge the Court to draw "an adverse inference that the Deo Defendants stole the vehicles and/or the money by engaging in fraud" without concrete evidence stating the same.  (*Id*. at. 12.)

What's more, Plaintiffs' request for a return of the 43 vehicles is an attempt to obtain the ultimate relief sought in this litigation which is inappropriate at the preliminary injunction stage. *City of Newburgh v. Sarna,* 690 F. Supp. 2d 136, 175 (S.D.N.Y. 2010) ("It is well-established that the purpose of a preliminary injunction is "not to award the movant the ultimate relief sought in the suit but is only to preserve the status quo….The principle weighs against granting [a] motion for preliminary injunction" where the preliminary relief sought is the same as the ultimate relief sought by a plaintiff in the complaint.) (quoting *New York v. Nuclear Regulatory Comm'n,* 550 F.2d 745, 754 (2d Cir. 1977)).  Indeed, this Court has already ruled that the return of the vehicles goes to Plaintiffs' ultimate requested relief which is to "return[] operational control, vehicles, dealer plates, and any other assets of Plaintiffs."  (ECF No. 134 at 6.)

For these reasons, Plaintiffs' motion to modify the preliminary injunction order to have the 43 vehicles returned to Superb is denied.  The Court next reviews Plaintiffs' additional requests.

**b.  Selling the Injuncted Vehicles and Retention of Proceeds**

Plaintiffs request that the Court require all 30 injuncted vehicles[6] to be sold and for Superb to retain the proceeds or otherwise keep the funds from the sale of the vehicles and hold them in escrow.  Plaintiffs state that retaining sales proceeds would preserve the vehicles' resale value.  Further, doing so would conform to a shareholder's agreement between the parties, which stated that if dissolved, Superb should be liquidated under Urrutia's supervision and with Deo's cooperation and the assets should be distributed according to law or as otherwise agreed upon. The Deo Defendants have not responded to Plaintiffs' request.

Plaintiffs point to Superb's closure as a "material change" in circumstances that supports modification.  Although courts have not expressly ruled on this issue, courts have deemed closure of a business to be an irreparable harm warranting the granting of a preliminary injunction.  *See Femhealth United States Inc. v. Williams*, 83 F.4th 551, 557 (6th Cir. 2023) (finding that the district court failed to consider whether the clinic's closure would alter the court's finding that plaintiff would suffer irreparable harm); *see also Blossom South, LLC v. Sebelius*, No. 13-CV-6452L , 2013 U.S. Dist. LEXIS 124687, at *3 (W.D.N.Y. Aug. 30, 2013) (noting that "total destruction of a business has been held to constitute irreparable harm"); (ECF No. 55 at 17) (collecting cases finding that business closures constitute an irreparable harm and Superb would experience such harm absent an injunction in their favor); *cf. International Equity Investments, Inc. v. Opportunity Equity Partners, Ltd.*, 427 F. Supp.2d 491, 501-02 (S.D.N.Y. 2006) (finding that defendants did not demonstrate a material change in circumstances to justify modification of the preliminary injunctive order because defendants would continue to interfere with plaintiffs' business rights).

---

[6] These vehicles are defined in Judge Merchant's Order at ECF No. 55 at 28.

Given the change in financial circumstances that has occurred—*i.e.,* Superb's closure—Plaintiffs' request to sell the *Superb* vehicles (with the exception of the Isuzu flatbeds and the thirteen (13) vehicles that belong to third parties) and hold the funds in escrow for the remainder of these proceedings is granted.  Plaintiff shall account to the Court as to the sales when made. Plaintiffs shall further file proof of the monies in escrow *immediately* following the sale of each of the vehicles.

### c.   Return of the Deo Vehicles and Require Deo's Cooperation in Winding Up

Plaintiffs next request that the Court require the return of the injuncted Deo vehicles and require Deo's cooperation in winding up Superb.

However, Plaintiffs have not established the grounds for the Court to grant return of the Deo vehicles at this juncture, as the vehicles are currently in an independent facility and Defendants have provided proof of the same.  Consequently, Plaintiffs' request to return the Deo vehicles is denied.

As to requiring Deo's cooperation in winding up, Superb states it cannot wind down without providing a proper accounting per vehicle.  However, the Deo Defendants have already testified and proven that it does not know where the vehicles are.  It cannot provide what it does not have.  There are however certain vehicles that Deo allegedly sold to Nethanel Orgad in exchange for cash (ECF No. 157-1 at 4-5.)  To the extent that Deo knows the sale value of these 15 vehicles, he must disclose it to Superb so it can perform a proper accounting.  Similarly, Superb maintains that several vehicles have been sold but remained on the general ledger or were trade-in vehicles that never came in.  (*Id.* at 7-8.)

**d. Vacating the Injunction as to the Two Isuzu Trucks and Vehicles Owned by the Team Entities**

Plaintiffs further request that the injunction on the two Isuzu flatbed trucks and the thirteen (13) vehicles owned by third parties, Team Imports and Team, be vacated.  (ECF No. 157 at 5.)  They state that Deo Defendants have no interest in these vehicles and they should not be subjected to the prohibition against selling.

However, Plaintiffs have not established how or if by returning these vehicles Superb's financial condition would improve since that it does not own them.  (*See* ECF No. 112 at 6-7; ECF No. 112-8.)  In addition, the third parties have not submitted their position as to whether these vehicles should be sold for the Court to determine whether it should grant or deny this request.  This would not make Superb whole since it likely cannot sell the vehicles.  This request is denied.

## II.    Defendants' Motion for Contempt

### a.  Defendants' Motion for Contempt

Plaintiffs' actions do not warrant a finding of contempt, criminal or civil.  In looking to the language of Judge Merchant's order, it is unclear whether the vehicles could be transferred between Urrutia appointed lots.  (*See* ECF No. 55 at 28-29) (stating that the 30 injuncted Superb vehicles are to either remain or "otherwise be *returned* to *a* cross-collateralized Urrutia dealership lot[]") (emphasis added); *see also Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (noting that to find an individual or entity in civil contempt, the movant must first establish that the order was clear and unambiguous); *Serenity Alpha, LLC v. Northway Mining, LLC,* 531 F. Supp. 3d 512, 518 (N.D.N.Y. 2021) (noting that a movant must demonstrate beyond a reasonable proof that the potential contemnor violated a "reasonably specific order").  Because Superb was no longer in operation, the

16

alternative was to place the vehicles at a location where the vehicles would not violate the order, i.e. another Urrutia approved lot—which is precisely what Plaintiffs did here.  Thus, this request is denied.[7]

### b.  Plaintiffs' Return of the Superb Vehicles

Defendants next request that the Court direct Plaintiffs to return the Superb vehicles to Superb.  (ECF No. 55 at 28) (noting that the "Superb Vehicles" are comprised of twenty-eight (28) vehicles marked as "YES" on the vehicle list filed at ECF No. 30-8.  This request is moot since Superb alleges that title never changed and have since been returned to Superb.  (*See* ECF No. 155-1) (demonstrating that all Superb vehicles have had titles transferred back to Superb).

### c.  Directing Plaintiffs to Deliver Titles to the Superb Vehicles to a Court-Appointed Third Party

Defendants next request that the Court order Plaintiffs to deliver the original titles to the Superb cars to a court appointed third-party to be held in trust at the Plaintiffs' expense.  They seek to place the vehicles' titles into a trust to "prevent any potential encumbrances on the Superb [] vehicles" through their lenders.  (ECF No. 152-1 at 7.)  Defendants have not offered any support for such relief at this juncture, nor have they established any grounds to change the status quo.  Thus, Defendants' request to have the original titles delivered to a third-party is denied.

### d.  Directing Plaintiffs to Store Their Vehicles in An Independent Facility and File Proof of Insurance and Date Stamped Odometer Reading Photos

Next, Defendants request an order stating that Plaintiffs must store the cars in a secure, enclosed, storage facility independently owned by a third party and located in New York and file

---

[7] Since the Court does not find grounds for contempt have been established, the Court need not consider Plaintiffs' argument of unclean hands on the part of Defendants.

proof of insurance coverage and date-stamped photos showing the odometer and location in an enclosed storage facility.  Per the Court's prior order (ECF No. 134), Plaintiffs were never required to provide odometer readings or proof of insurance coverage.  However, because Plaintiffs have indeed stated previously that they are prepared to provide this information (ECF No. 72 at 1) (requesting that the Deo Defendants provide photos of the vehicles and odometer readings for the vehicles and stating that "Plaintiffs are prepared to do the same"), Plaintiffs are now directed to produce proof of insurance and odometer readings.  Thus, this branch of the request is granted in part.  Plaintiffs shall provide this information by way of declaration or an affidavit.  Plaintiffs, however, are not required to place the vehicles in a storage facility.

### e.  Awarding Defendants Costs, Fees and Monetary Sanctions

Deo Defendants request that the Court award costs and fees associated with bringing the motion for contempt (ECF No. 152 at 6), as well as the following monetary sanctions including: (i) $5,000 per vehicle per day until Plaintiffs have met the conditions by the Court; (ii) a monetary fine of $5,000 against Plaintiffs for each instance of contempt of the order as punitive damages; and (iii) arrest and incarceration of Urrutia until full compliance is achieved.

This request is denied in light of the Court's finding that contempt is not warranted.

## CONCLUSION

For the reasons stated, Plaintiffs' motion for modification of the preliminary injunction (ECF No. 110) is granted in part and denied in part and Defendants' motion for contempt (ECF No. 152) is granted in part and denied in part as follows:

1.  **Plaintiffs' Motion for a Modification of the Preliminary Injunction Order**

    a.  Evidentiary Hearing: Return 43 Vehicles to Superb: *Denied*

    b.  Sell the *Superb* Injuncted Vehicles and Retain Proceeds: *Granted*

    c.  Return Deo Vehicles: *Denied*

    d.  Require Deo's Cooperation in Winding Up: *Granted*

    e.  Lifting the Injunction on the Other Vehicles: *Denied*

**2. Defendants' Motion for Contempt**

    a.  Finding Plaintiffs in Contempt: *Denied*

    b.  Returning the Superb Vehicles: *Denied as Moot*

    c.  Delivering Titles of the Superb Vehicles to a Court-Appointed Third-Party: *Denied*

    d.  Directing Plaintiffs to:
        i.  Store the Vehicles in an Independent Storage Unit: *Denied*
       ii.  File Proof of Insurance: *Granted*
      iii.  Provide Date Stamped Odometer Reading Photos: *Granted*

    e.  Awarding Costs, Fees, and Monetary Sanctions: *Denied*

Dated: Central Islip, New York
        May 8, 2024

**S O   O R D E R E D:**

*/S/ **James M. Wicks***

JAMES M. WICKS
United States Magistrate Judge
