Brian M. Levine, Esq.
**LEVINE SINGH, LLP**
260 N. Broadway, Suite 2A
Hicksville, NY 11801
Tel: 347-732-4428
Fax: 917-477-2273
levine@levinesingh.com
*Attorneys for Deo Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------------

SUPERB MOTOR, INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HIGHWAY AUTO, LLC., NORTHSHORE MOTOR LEASING, LLC., BRIAN CHABRIER, individually and derivatively as member of NORTHSHORE MOTOR LEASING, LLC., JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC., JORY BARON, 1581 HYLAN BLVD AUTO, LLC., 1580 HYLAN BLVD AUTO, LLC., 1591 HYLAND BLVD AUTO, LLC., 1632 HYLAN BLVD AUTO, LLC., 1239 HYLAN BLVD AUTO, LLC., 2519 HYLAND BLVD AUTO, LLC., 76 FISK STREET REALTY, LLC., 446 ROUTE 23 AUTO, LLC., and ISLAND AUTO MANAGEMENT, LLC.,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC, INC., GOLD COAST CARS OF SYOSSET, LLC., GOLD COAST CARS OF SUNRISE, LLC., GOLD COAST MOTORS AUTOMOTIVE GROUP, LLC., GOLD COAST MOTORS OF LIC, LLC., GOLD COAST MOTORS OF ROSLYN, LLC., GOLD COAST MOTORS OF SMITHTOWN, LLC., UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS, INC., JONES, LITTLE & Co., CPA'S, LLP., FLUSHING BANK, and LIBERTAS FUNDING, LLC.,

Defendants.

-----------------------------------------------------------------------------------

Case No. 2:23-cv-6188

(JMW)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................................ 1

LEGAL ARGUMENT ..................................................................................................................... 2

   I.    THE COURT DOES NOT HAVE JURISDICTION OVER THIS MATTER ................. 2

      A.   Plaintiffs Failed to Establish Federal Question Jurisdiction, as the   Amended
      Complaint Does Not Adequately Allege RICO or DTSA Claims.......................................... 2

        1.   The RICO Claim ....................................................................................................... 2

        2.   The DTSA Claim ...................................................................................................... 7

   II.    THE STATE LAW CLAIMS ASSERTED BY THE SUPERB PLAINTIFFS FAIL TO
   STATE A CAUSE OF ACTION ................................................................................... 11

      A.   The Complaint Fails to Provide a Basis for Team Auto Sales or Robert Urrutia's
      Standing/Inclusion in this Action....................................................................................... 11

      B.   Each State Law Claim Asserted by Superb Motors, Inc. Fails to State a Claim .......... 11

      1.   Misappropriation.................................................................................................. 11

      2.   Unfair Competition............................................................................................. 12

      3.   Tortious Interference........................................................................................... 12

      4.   Conversion .......................................................................................................... 13

      5.   Civil Conspiracy ................................................................................................. 15

      6.   Fraud .................................................................................................................. 15

   III.    ALL OF THE STATE LAW CLAIMS ASSERTED BY THE "IAG PLAINTIFFS"
   MUST BE DISMISSED ................................................................................................ 16

      A.   Issue of Grouping Together the Plaintiffs as "IAG Plaintiffs". ................................. 16

      B.   Issues with Capacity/Standing ..................................................................................... 17

      1.   The Derivative Claims ........................................................................................ 18

      2.   The Direct Claims ............................................................................................... 18

      C.   Each Cause of Action Asserted By the IAG Plaintiffs ............................................... 19

      1.   16 & 17: Declaratory Judgment ........................................................................ 19

      2.   18 to 21: Conversion, Unjust Enrichment, Duty of Loyalty & Fiduciary Duty:........... 20

      3.   22 & 27: Permanent Injunction .......................................................................... 20

      4.   23 to 26: Conversion, Unjust Enrichment, Duty of Loyalty &  Fiduciary Duty ......... 21

      5.   28: Contribution & Indemnification (Fraud, Conversion, Breach (Loyalty/Fiduciary) 21

      6.   29 to 37: Conversion, Aiding & Abetting Contribution & Indemnity......................... 21

7.    38 & 40: Unjust Enrichment ...................................................................................... 22

8.    39 & 41: Veil Piercing ............................................................................................... 22

9.    42:  GBL § 349 .......................................................................................................... 23

10.    43 & 44: Accounting ................................................................................................ 23

11.    45 Judiciary Law § 487 ........................................................................................... 23

12.    52: Fraud .................................................................................................................. 24

CONCLUSION .................................................................................................................. 25

**TABLE OF AUTHORITIES**

**Cases**

*Albstein v. Elany Contr. Corp.*,
　30 A.D.3d 210 (1st Dep't 2006) ............................................... 22

*Andejo Corp. v. South St. Seaport Ltd. Partnership*,
　40 A.D.3d 407 (1st Dep't 2007) ............................................... 22

*Arnon Ltd v. Beierwaltes*,
　125 A.D.3d 453 (1st Dep't 2015) .............................................. 13

*Art & Fashion Grp. Corp. v. Cyclops Prod., Inc.*,
　120 A.D.3d 436 (1st Dep't 2014) .............................................. 14

*Boustead Sec., LLC v. Leaping Grp. Co.*,
　2021 U.S. Dist. LEXIS 160912, n.10 (S.D.N.Y. Aug. 25, 2021) ............ 13

*Brody v. Brody*,
　2009 US Dist LEXIS 17078 (S.D.N.Y. Feb. 13, 2009) .................... 20

*Crawford v. Franklin Credit Mgmt. Corp.*,
　758 F.3d 473 (2d Cir. 2014) ................................................... 3

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
　2014 U.S. Dist. LEXIS 32819 (S.D.N.Y. Mar. 11, 2014) ................... 3

*DeFalco v. Bernas*,
　244 F.3d 286 (2d Cir. 2001) ................................................... 6

*Espire ADS LLC v. Tapp Influencers Corp.*,
　655 F. Supp. 3d 223 (S.D.N.Y. 2023) ...................................... 12

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
　545 U.S. 546 (2005) ............................................................ 2

*Faulkner v. City of Yonkers*,
　105 A.D.3d 899 (2d Dep't 2013) ............................................ 15

*First Capital Asset Mgt. v. Satinwood, Inc.*,
　385 F.3d 159, 178 (2d Cir. 2004) .......................................... 3, 5

*First Interregional Advisors Corp. v. Wolff*,
   956 F Supp 480 (S.D.N.Y. February 24, 1997). ........................................................ 6

*Fisher v. Big Squeeze (NY), Inc.*,
   349 F.Supp 2d 483 (E.D.N.Y. 2004), ................................................................... 23

*Gould v. ILKB, LLC*,
   2022 U.S. Dist. LEXIS 103363 (E.D.N.Y. June 9, 2022) .............................................. 13

*Holmes v. SEC Investor Prot. Corp.*,
   503 U.S. 258 (1992) ......................................................................................... 6

*Kautz v Sugarman*,
   456 F App'x 16 (2d Cir. 2011) .......................................................................... 18

*Lee Dodge, Inc. v Sovereign Bank, N.A.*,
   148 A.D.3d 1007 (2d Dept 2017) ...................................................................... 24

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
   13 F.4th 247 (2d Cir. 2021) ............................................................................. 25

*Mars Assocs., Inc. v New York City Educ. Const. Fund*,
   126 A.D.2d 178 (1st Dep't 1987) ...................................................................... 21

*Murphy v. Kozlowska*,
   217 A.D.3d 455 (1st Dep't 2023) ...................................................................... 14

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
   165 F.Supp 2d 514 (S.D.N.Y. 2001) ................................................................... 5

*Plasticware, LLC v. Flint Hills Res., LP*,
   852 F. Supp. 2d 398 (S.D.N.Y. 2012) ................................................................. 13

*Polanco v. NCO Portfolio Mgmt., Inc.*,
   23 F. Supp. 3d 363 (S.D.N.Y. 2014) ................................................................... 14

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ....................................................................................... 6

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
   30 F.3d 339 (2d Cir. 1994) .............................................................................. 5

*Rodney v. United Masters*,
   2023 U.S. Dist. LEXIS 33499 (E.D.N.Y. Feb. 10, 2023) ........................................ 8

*Saiveest Empreendimentos Imobiliarios E. Participacoes, Ltda. v. Elman Investors, Inc.*,
   117 A.D.3d 447 (1st Dep't 2014) ............................................................ 22

*Schottenstein v. Lee*,
   2023 U.S. Dist. LEXIS 116146 (S.D.N.Y. July 6, 2023) ........................................ 14

*Schwartz v. Capital Liquidators, Inc.*,
   984 F.2d 53 (2d Cir. 1993) ................................................................ 14

*Strougo v. Bassini*,
   282 F.3d 162 (2d Cir. 2002) ............................................................... 19

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143, n 3 (E.D.N.Y. 2014) .................................................. 18

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
   2021 U.S. Dist. LEXIS 27838 (E.D.N.Y. Feb. 12, 2021), *aff'd* 2022 U.S. App. LEXIS 6070
   (2d Cir. Mar. 9, 2022). .................................................................. 11

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
   2022 U.S. App. LEXIS 6070 (2d Cir. Mar. 9, 2022) ..................................... 9, 10, 11

*Wood ex rel. US. v. Applied Research Assocs., Inc.*,
   328 F. App'x 744 (2d Cir. 2009) ............................................................ 3

*Wood v. GMC*,
   2015 US Dist LEXIS 37782 (E.D.N.Y. Mar. 25, 2015) ...................................... 3, 7

*Yudell v. Gilbert*,
   99 A.D.3d 108 (1st Dep't 2012) ............................................................ 19

**Statutes**

18 U.S.C. § 1962 ......................................................................................... 5, 6, 7

18 U.S.C. § 1964 ............................................................................................... 6

28 U.S.C. § 1331 ............................................................................................... 2

28 U.S.C. § 1332 ............................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ..................................................................................... 1

Fed. R. Civ. P. 23.1 ........................................................................................... 1

Fed. R. Civ. P. 9(b) .................................................................................... passim

General Business Law § 349 ............................................................................ 22

Judiciary Law § 487 ........................................................................................ 23

Defendants Anthony Deo ("Deo"), Sarah Deo, Harry Thomasson ("Thomasson"), Dwight Blankenship, Marc Merckling, and Michael Laurie (collectively, the "Individual Defendants"), Car Buyers NYC, Inc., Gold Coast Cars of Syosset, LLC., Gold Coast Cars of Sunrise, LLC., Gold Coast Motors Automotive Group, LLC., Gold Coast Motors of LIC, LLC., Gold Coast Motors of Roslyn, LLC., Gold Coast Motors of Smithtown, LLC., and UEA Premier Motors Corp (collectively with the Individual Defendants, as the "Deo Defendants" or "Defendants") respectfully submit this Memorandum of Law in support of Defendants' motion to dismiss the Amended Complaint (the "Complaint") pursuant to, *inter alia*, Federal Rules of Civil Procedure 12(b)(6), Rule 9(b), and Rule 23.1.

## PRELIMINARY STATEMENT

The Deo Defendants bring this motion to dismiss the Plaintiffs' Complaint in its entirety on the grounds that the Plaintiffs' failure to adequately plead causes of action under Racketeer Influenced and Corrupt Organizations Act ("RICO"), or the Defend Trade Secrets Act ("DTSA") deprives this Court of Federal Question Jurisdiction, and there exists no basis for the court to exercise supplemental jurisdiction over the remaining state claims. Moreover, with respect to each state law claim, the Complaint fails to state a cause of action, either because the Plaintiffs fail to meet an applicable heightened pleading standard; fail to allege a required element, such as privity or pre-suit demand, or fail to include an indispensable party.

## LEGAL ARGUMENT

### I.     THE COURT DOES NOT HAVE JURISDICTION OVER THIS MATTER

#### A.   Plaintiffs Failed to Establish Federal Question Jurisdiction, as the Amended Complaint Does Not Adequately Allege RICO or DTSA Claims

At the outset, it is noted that jurisdiction is not based upon 28 U.S.C. § 1332, as § 1332 1332 requires complete diversity of parties such that no plaintiff is a citizen of the same state as any defendant. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005). Complete diversity does not exist since both Plaintiff, Superb Motors, Inc, and Defendant, Anthony Deo, are citizens of New York. (Compl., ¶¶ 24, 26). Consequently, this Court's jurisdiction rises and falls on the existence of a federal question under 28 U.S.C. § 1331. Upon careful examination of the Complaint and thorough analysis of pertinent case law, it becomes evident that Plaintiffs have not provided adequate factual allegations to adequately plead viable claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) or the Defend Trade Secrets Act (DTSA). Consequently, the Court should find that federal question jurisdiction does not extend to this case.

1.   The RICO Claim

The legal framework for a civil RICO claim, as clearly articulated in *Wood v. GMC*, necessitates that:

> a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962. A RICO plaintiff thus has two pleading burdens. First, a plaintiff must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.' To satisfy this burden, the plaintiff must allege the following seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. A plaintiff must adequately allege these seven elements before turning to the second burden-i.e., invoking RICO's civil remedies. To satisfy the second burden, a plaintiff must allege that he was injured in his business or property by reason of a violation of

2

section 1962. Section 1962(d) makes it unlawful for any person to conspire to violate the substantive provisions of RICO. (internal citations and quotations omitted).

*Wood v. GMC*, 2015 US Dist LEXIS 37782, at 10 (E.D.N.Y. Mar. 25, 2015).

"RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." (internal quotation marks omitted). *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014); *First Capital Asset Mgt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)(All allegations of fraudulent predicate acts are subject to a heightened pleading standard).

The Second Circuit has made it clear that Rule 9(b) requires the complaint to "(1) specify the statements, oral or written, that the plaintiff contends were fraudulent, either as misrepresentations or containing fraudulent omissions; (2) identify the speaker or the writer; (3) state where, when and to whom the statements were made; and (4) explain why the statements were fraudulent." *Wood ex rel. US. v. Applied Research Assocs., Inc.,* 328 F. App'x 744, 747 (2d Cir. 2009). In addition, when claims are alleged against multiple defendants, plaintiffs must plead circumstances and ample facts to support the charge against each defendant; guilt by association is impermissible. *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 2014 U.S. Dist. LEXIS 32819 (S.D.N.Y. Mar. 11, 2014)*, quoting S.E.C. v. Lee,* 720 F.Supp.2d 305, 321 (S.D.N.Y. 2010).

In the present case, the Plaintiffs' Complaint posits wire fraud, mail fraud, and various vaguely stated misrepresentations to multiple entities (the majority of whom are not named as parties in this action) as the predicate acts grounding the RICO claim. However, an in-depth review of the Complaint reveals several significant shortcomings in the Plaintiffs' allegations, demonstrating their failure to satisfy the requisite heightened pleading standard for a RICO claim.

3

First and foremost, the Plaintiffs' portrayal of the alleged predicate acts fails to reach the level of specificity and detail required to prove a "pattern of racketeering activity." Central to a RICO claim, the allegations of wire and mail fraud demand a comprehensive account of how each fraudulent act was executed, including precise dates, the content of the communications, and the identification of the parties involved. The Plaintiffs' vague claims, particularly regarding the purported misrepresentations, fall short of the stringent criteria established by precedent for articulating predicate acts under RICO.

The Plaintiffs do not provide particularized details about the statements alleged to be fraudulent, relying instead on broad, conclusory statements about categories of misinformation, such as "falsified" monthly financial statements. They neglect to pinpoint the dates these statements were made, the individuals to whom they were made, or the specific documents containing these statements. The general claim that the defendants issued falsified financial statements over a series of months, without specifying exact dates, the documents containing the false information, or the precise financial figures claimed to be fraudulent, does not fulfill the heightened pleading requirement of Rule 9(b).

Additionally, regarding the alleged mail or wire fraud serving as predicate acts for the RICO claim, the Plaintiffs have not once provided specific details about these acts. The absence of particulars—such as who was involved, what was communicated, where and when these communications took place, why they were made, and how they constitute fraud—leaves the allegations woefully inadequate. Notably, the conduct that Plaintiffs' allege to "constitute wire fraud," literally does not involve 'wires.' (Compl., ¶¶ 220-222)

To describe the Plaintiffs' approach to alleging predicate acts for their RICO claim as lacking in specificity would be an understatement. The stark absence of detailed, particularized

allegations as necessitated by Rule 9(b) not only undermines the plausibility of their claim but also signals a fundamental misunderstanding of the requirements for establishing a viable RICO claim. Given these substantial shortcomings, the Complaint does not meet the requisite legal standard, rendering the RICO allegations untenable.

Even assuming, arguendo, that this Court finds the Plaintiffs have adequately met the heightened pleading standards and have sufficiently articulated the predicate acts as discussed, the RICO claim still warrants dismissal due to the Plaintiffs' failure to properly allege the existence and operation of a RICO "enterprise."

The Plaintiffs' RICO allegations significantly fall short of the requisite standard for pleading the "enterprise" element. Specifically, Plaintiffs are required to demonstrate with particularity the existence of a RICO enterprise, explaining how the alleged enterprise's associates collaborated as a cohesive unit towards achieving a common purpose, as mandated by *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) and supported by *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F.Supp 2d 514, 539 (S.D.N.Y. 2001), which noted that the "hierarchy, organization, and activities" of an alleged association-in-fact are scrutinized to ascertain whether its members functioned as a unit.

Furthermore, under § 1962(c) of the RICO statute, a distinction must be maintained between the RICO "person" conducting the enterprise's affairs and the "enterprise" itself. This distinction is critical as emphasized by *Nasik Breeding & Research Farm Ltd.*, which reiterates that employees associated with a corporation do not constitute an enterprise distinct from the corporation itself and that a corporate entity cannot serve as both the RICO "person" and the RICO "enterprise" under Section 1962(c), citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994).

Additionally, it is imperative for the pleading to delineate each defendant's role in the "operation or management" of the enterprise, demonstrating that each played a part in "directing the affairs of the enterprise," as per *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). It is not enough for a defendant to merely be associated with the enterprise; there must be evidence of some level of control or influence over the enterprise's operations, a principle further underscored by *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *First Interregional Advisors Corp. v. Wolff*, 956 F Supp 480 (S.D.N.Y. February 24, 1997).

The Plaintiffs' Complaint, by failing to adequately specify the structure, roles, and activities of the alleged enterprise and the distinct participation of each defendant within it, does not satisfy the stringent requirements for establishing a RICO enterprise. Therefore, given these substantial deficiencies, the RICO claim should be dismissed for failing to set forth proper allegations to support the theory that the Defendants operated as a distinct "enterprise." Frankly, nowhere in the Complaint do the Plaintiffs ever make it even remotely clear what they claim the purpose of the alleged enterprise even was.

In addition, the Plaintiffs' claims fall short of alleging a sufficient nexus between the injuries purportedly suffered and the predicate acts identified as the basis for standing under 18 U.S.C. § 1964. For a party to assert a civil RICO claim successfully, it must allege injury to its business or property as a direct result of the defendant's violation of 18 U.S.C. § 1962, as specified in 18 U.S.C. § 1964(c). The Supreme Court, in *Holmes v. SEC Investor Prot. Corp.*, 503 U.S. 258, 268 (1992), has narrowly interpreted this statute's injury clause, limiting standing to those plaintiffs whose injuries were proximately caused by the RICO predicate acts.

As previously discussed, the Plaintiffs have not delineated the specific facts underpinning the alleged predicate acts with the requisite detail. Assuming, for the sake of argument, that these

broad allegations were sufficient to establish the predicate acts, the Complaint nonetheless fails to demonstrate how any of these acts directly and proximately caused injury to the Plaintiffs' business. Under the controlling case law, the Plaintiffs' failure to plead facts with particularity establishing a sufficient nexus between the Plaintiffs' injury and the predicate RICO acts mandates dismissal of the Plaintiffs RICO claims.

Lastly, Plaintiffs also allege that Defendants violated 18 U.S.C. § 1962(d) by conspiring to commit RICO violations. As the Court noted in *Wood v. GMC,* with respect to a claim under § 1962(d):

> a plaintiff must allege that the defendants agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise. As to the "agreement" requirement, because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement. Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, a RICO conspiracy claim should be more than a conclusory add-on at the end of a complaint. (internal citations and quotations omitted).

*Wood v. GMC*, 2015 US Dist LEXIS 37782, at 27 (E.D.N.Y. Mar. 25, 2015).

Like the plaintiffs in *Wood v. GMC*, the Plaintiffs in this case have added a conspiracy claim based on boilerplate allegations, without providing any facts that show that each of the Defendants had a "meeting of minds" with respect to the alleged violations, and therefore, the Plaintiffs claim under § 1962(d) should similarly be dismissed pursuant  to Rule 9(b). In light of Plaintiffs' failure to plead the RICO claims, the Plaintiffs cause of action for injunctive relief under RICO must also be dismissed.

2.  The DTSA Claim

Plaintiffs' claim under the DTSA must be dismissed for two independently sufficient reasons. First, Plaintiffs' Complaint fails to identify the particular trade secrets that Defendants allegedly misappropriated, as the Complaint only refers to generalized categories of information.

As courts in this Second Circuit have recognized, the:

> [k]ey to DTSA cases is whether the plaintiff has sufficiently identified the alleged trade secret at issue. The pleading standard set forth in <u>Twombly</u> and <u>Iqbal</u> requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret. This requirement exists both so that defendants are put on notice of what items they allegedly misappropriated and so that a court can ascertain the protectability of the information at issue. Such information is necessary to distinguish trade secrets from merely confidential business information. The two are not one and the same—trade secrets are a subset of confidential information and alleging their existence requires much more specificity as to the information owned by the claimant. While a plaintiff obviously need not include a detailed description of the trade secret to state a claim for misappropriation, the complaint must contain more than nebulous descriptions at the highest level of generality. A vague and indefinite piece of information cannot be protected as a trade secret. Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence. (internal citations and quotations omitted).

> *Rodney v. United Masters*, 2023 U.S. Dist. LEXIS 33499, at 9 (E.D.N.Y. Feb. 10, 2023).

In the present matter, the Superb Plaintiffs (comprised of "Superb Motors, Inc," "Robert Urrutia," and "Team Auto Sales, LLC") do not point to any particular trade secret other than generalized categories of information. At best, and giving Plaintiffs every favorable inference, they allege information that may have been confidential; however, trade secrets are a subset of confidential information, and the DTSA does not apply to confidential information as a whole.

Second, and more importantly, the Superb Plaintiffs' DTSA claim warrants dismissal for failure to state a claim because, as a matter of law, the Amended Complaint fails to allege non-

conclusory allegations that it took reasonable measures to keep its information secret. It is assumed that the Superb Plaintiffs' alleged "trade secrets" concern the particular settings and configurations that the Superb Plaintiffs selected on a third-party owned, **subscription based**, Customer Relationship Management ("CRM") software, "Tekion," which was allegedly taught to Defendant Anthony Deo (Am. Compl., ¶¶ 228-234). Indeed, as the Superb Plaintiff alleges, it was Deo's purported copying of the "exact customization" of Tekion, which Superb claims is their "proprietary information," and the blueprint for the success of operating a profitable dealership. (Compl., 232, 235). In no uncertain terms, the Superb Plaintiffs are claiming that the "proprietary information" is simply how to configure Tekion (a CRM owned and licensed by a third-party for use by any individual or car dealership willing to pay the subscription cost[1]) for use in streamlining a car dealership. At its very core, and fatal to Plaintiffs' claim, is that the "proprietary information" that constitutes a trade secret, is nothing more than computer software functionality, which is apparent to any user of the program.

In *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at 5-6 (2d Cir. Mar. 9, 2022), the Second Circuit affirmed the district court's dismissal of the plaintiff's DTSA claims, and made it all but clear that where an alleged trade secret is primarily computer software functionality that is made apparent to users of the program, the existence of non-disclosure agreements or other contractual obligations of confidentially is a critical factor in determining whether a party undertook reasonable measure to protect the information.

Specifically, the Court stated:

---

[1] https://tekion.com/products/crm

We agree with the district court that where an alleged trade secret consists 'primarily, if not entirely,' of a computer software's functionality—'functionality that is made apparent to all users of the program"—the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy. *Turret Labs*, 2021 U.S. Dist. LEXIS 27838, 2021 WL 535217, at *4; *see also Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (holding that plaintiff's failure to "execut[e] a nondisclosure or licensing agreement or . . . stipulate[e] in his employment contract that the [software] was his proprietary information" evidenced that he "had not taken reasonable measures to protect his information"); *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 Civ. 8159, 2021 U.S. Dist. LEXIS 151076, 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) (concluding that the plaintiff did not employ reasonable measures to protect its claimed trade secrets because, among other reasons, the plaintiff "concede[d] that it did not require [the defendant] to sign a confidentiality agreement before sharing the contents of the [product]"); [*6] *Exec. Trim*, 525 F. Supp. 3d at 380; *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 1:18-CV-0546, 2020 U.S. Dist. LEXIS 9348, 2020 WL 352614, at *15 (N.D.N.Y. Jan. 21, 2020) (collecting cases); *Mintz v. Mktg. Cohorts, LLC*, No. 18-CV-4159, 2019 U.S. Dist. LEXIS 124374, 2019 WL 3337896, at *6 (E.D.N.Y. July 25, 2019) (dismissing a DTSA claim because plaintiff "did not require defendants to sign a non-disclosure agreement nor any sort of covenant to protect the passwords").

*Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at 5-6 (2d Cir. Mar. 9, 2022).

Based on the foregoing, the Superb Plaintiffs' failure to allege that they required non-disclosure agreements or had any other contractual obligations of confidentiality regarding the use of the Tekion platform with their particular settings (which is nothing more than computer software functionality, which is apparent to any user of the program), the DTSA claim must fail as a matter of law. Furthermore, as with the CRM, assuming the Superb Plaintiffs' "trade secrets" concerns customer information, the Complaint similarly fails to allege the existence of any reasonable measures to protect that information, particularly with the use of non-disclosure agreements or other contractual obligations. Indeed, they do not claim that their employees did not have access to said customer lists, or that said employees were under a contractual obligation to keep same confidential.

10

Since Plaintiffs' Complaint fails to adequately allege either one of the two claims that would confer federal question jurisdiction on this Court, all of the Plaintiffs' state law claims should be dismissed, so that Plaintiffs can, if they so elect, appropriately file their state law claims in state court.

## II.   THE STATE LAW CLAIMS ASSERTED BY THE SUPERB PLAINTIFFS FAIL TO STATE A CAUSE OF ACTION

### A.   The Complaint Fails to Provide a Basis for Team Auto Sales or Robert Urrutia's Standing/Inclusion in this Action.

To the extent that Robert Urrutia and Team Auto Sales, LLC are included as plaintiffs in the within action and grouped together with Superb Motors, Inc, as "Superb Plaintiffs," all of their causes of action must be dismissed for lack of standing and failure to state a claim. At no point in the Complaint do the Plaintiffs ever provide any explanation for why Robert Urrutia, in his individual capacity, is a named party. Indeed, Plaintiffs even go so far as to point out that any of the claims that Urrutia may have standing to pursue in his individual capacity are not actually being asserted in the instant case, and instead, will be pursued in a state court matter. (Compl., ¶ 177). Nor do Plaintiffs provide any explanation for the inclusion of Team Auto Sales, Inc., who, based on the Complaint's allegations, is merely a stranger to every alleged transaction or occurrence. Based on the foregoing, all of Urrutia's and Team Auto's causes of action must be dismissed.

### B.   Each State Law Claim Asserted by Superb Motors, Inc. Fails to State a Claim

#### 1.  Misappropriation

For the same reasons that the Superb Plaintiffs' claims under DTSA must be dismissed, so too must their common law claim for misappropriation. *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2021 U.S. Dist. LEXIS 27838 (E.D.N.Y. Feb. 12, 2021), *aff'd* 2022 U.S. App. LEXIS 6070 (2d Cir. Mar. 9, 2022).

2.   Unfair Competition

"The essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Espire ADS LLC v. Tapp Influencers Corp.*, 655 F. Supp. 3d 223, 259 (S.D.N.Y. 2023), quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995). To state a claim for unfair competition under New York law, "the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief, coupled with bad faith. *Id.*

In *Espire*, the Court dismissed the unfair competition claim, finding that the plaintiffs failed to plead any confusion occurred as a result of any of the defendants' actions, and stated that both parties appeared to construe the unfair competition claim as a state law claim for misappropriation of trade secrets despite being pled as one for unfair competition. *Espire ADS LLC v. Tapp Influencers Corp.*, 655 F. Supp. 3d 223, 259 (S.D.N.Y. 2023).

As in Espire, in the instant matter, the Plaintiffs have not set forth any allegations that defendants alleged misappropriations is likely to "confuse or to deceive purchasers as to the origin of the goods," nor have they set forth any allegations showing that there was any actual or likelihood of confusion regarding the identity of the parties. To put it simply, Plaintiffs have not made any allegations that as a result of the allegedly misappropriated information, that an individual coming to the Defendants to purchase a vehicle would be misled into believing they were transacting with Superb Plaintiffs. As such, this cause of action should be dismissed in its entirety.

3.   Tortious Interference

Plaintiffs' cause of action for tortious interference must be dismissed for several reasons. First, while Plaintiffs label the cause of action as being one for "Tortious Interference with

Contracts" and "business relations, and prospective economic advantage;" in actuality, those are two separate and distinct causes of action. *Gould v. ILKB, LLC*, 2022 U.S. Dist. LEXIS 103363, at *26 (E.D.N.Y. June 9, 2022), citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004) ("We have recognized that inducing breach of a binding agreement and interfering with a nonbinding 'economic relation' can both be torts, but that the elements of the two torts are not the same"); *Boustead Sec., LLC v. Leaping Grp. Co.*, 2021 U.S. Dist. LEXIS 160912, at 7, n.10 (S.D.N.Y. Aug. 25, 2021) ("Tortious interference with business relations is a distinct tort from tortious interference with contract.").

Second, Plaintiffs do not "adequately allege[] specific business relationships with which Defendant[s] allegedly interfered." *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2012). Moreover, Plaintiffs do not allege any act that would qualify as tortious interference. Even if true, the act of double flooring vehicles; and possibly causing Superb to breach an agreement with its lenders, while acting as an employee or owner of Superb, would not constitute an action aimed at inducing the breach of a contract by a third party. *Gould v. ILKB, LLC*, 2022 U.S. Dist. LEXIS 103363, at 28 (E.D.N.Y. June 9, 2022); *Arnon Ltd v. Beierwaltes*, 125 A.D.3d 453, 454 (1st Dep't 2015) (dismissing claim where act was not to induce other parties). This distinction is critical, as tortious interference requires the intentional and improper interference in the business relationship between a third party and the Plaintiffs, which was not alleged. Without any allegations indicating such intentional and improper interference, the claim of tortious interference does not hold merit and should be dismissed.

4. Conversion

Under New York law, a conversion claim should be dismissed where the plaintiff "[does] not identify the property allegedly converted." *Art & Fashion Grp. Corp. v. Cyclops Prod., Inc.*,

13

120 A.D.3d 436, 440 (1st Dep't 2014), quoting *Messiah's Covenant Community Church v Weinbaum*, 74 A.D.3d 916, 919 (2d Dep't 2010). Conversion claims must ***sufficiently identify*** the property at issue. *Murphy v. Kozlowska*, 217 A.D.3d 455, 455-56 (1st Dep't 2023) (affirmed the lower court's dismissal of the conversion claim where the underlying complaint alleged, "[d]efendant Monika Kozlowska with intent and action, has interfered with plaintiff's ownership rights and possession to his property, mainly office files handled by Monika Kozlowska when she worked at plaintiff's office, including confidential documents and files belonging to plaintiff; electronically stored information, and more").

In this this action, the Complaint never states any specifically identifiable property that forms the basis for the conversion claim; and instead, relies on broad strokes of categories such as "vehicles," "dealer plates," "confidential information," and "trade secrets" (Compl., ¶ 393); raising the question, which specific items are Plaintiffs referring to? No VIN #s or Dealer Plate numbers are identified in the Complaint, and the use of generic terms such as "confidential information," or "trade secrets" are simply insufficient for a conversion claim. *Murphy v. Kozlowska*, 217 A.D.3d 455, 455-56 (1st Dep't 2023). Additionally, the Complaint fails to provide any dates, times, or any other actual details of the purported conversions, making it impossible to identify the items Plaintiffs allege that Defendants converted.

To plead a viable conversion claim, a plaintiff **must** also allege that the defendant refused to return the sufficiently identifiable property to the plaintiff after the plaintiff demanded its return. *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 370 (S.D.N.Y. 2014); *Schottenstein v. Lee*, 2023 U.S. Dist. LEXIS 116146, at 4-5 (S.D.N.Y. July 6, 2023). Particularly where the defendant's original possession is lawful, since the conversion does not occur until the defendant refuses to return the property. *Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993).

14

At no point in the Complaint do the Plaintiffs plead that they demanded the return of any sufficiently identifiable property, or that Defendants subsequently refused to return same. Plaintiffs' failure to sufficiently identify the specific property alleged to have been converted fundamentally undermines its validity. Given that Plaintiffs have not clearly delineated the property in question, it logically follows that they cannot credibly allege they demanded its return from the Defendants. This critical flaw not only calls into question the feasibility of alleging a demand for return but is also fatal to the entire conversion claim. The absence of such specificity leaves an insurmountable gap in the Plaintiffs' allegations, which warrants dismissal.

### 5. Civil Conspiracy

"Under New York law, in order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." (internal quotations omitted) *Faulkner v. City of Yonkers*, 105 A.D.3d 899, 900 (2d Dep't 2013), citing *Perez v. Lopez*, 97 A.D.3d 558, 560 (2d Dep't 2012). Since none of the tort claims alleged by the Superb Plaintiffs (as addressed above) were not adequately pled, and because the Fraud claims alleged by Superb (as addressed immediately below) were not adequately pled, as a matter of law, Superb Plaintiffs' civil conspiracy cause of action must be dismissed.

### 6. Fraud

First, with respect to Superb Plaintiffs' fraud claim, while labelled as being asserted against Deo and Defendant Jones, the material allegations and elements for the claims pertain exclusively to Jones. Indeed, the Plaintiffs refer to the fraudulent conduct as "Jones' Fraud." (Compl., ¶ 434). Specifically, Plaintiffs allege, that "Jones made material misrepresentations," "Jones knew or should have known," "Jones submitted…., with an intent to defraud the Superb," "Jones's conduct

resulted in damages to the Superb Plaintiffs," and "Jones' wrongful and deficient conduct proximately caused…." (Compl., ¶¶ 424-428, 431, 433). Second, and more importantly, as already set forth hereinabove, the Plaintiffs' fraud claims are woefully bereft of the non-conclusory factual allegations required to meet the heightened pleading necessary for a fraud claim.  As such this cause of action should be dismissed.

### III.   ALL OF THE STATE LAW CLAIMS ASSERTED BY THE "IAG PLAINTIFFS" MUST BE DISMISSED

#### A.   Issue of Grouping Together the Plaintiffs as "IAG Plaintiffs".

The named plaintiffs include multiple entities and individuals who are simply unrelated to any of the parties and transactions relevant to the claims in this action, and, as such, should be dismissed from this case outright. Nowhere in the Complaint are there any allegations that set forth the existence of any relationship whatsoever between most of the named plaintiffs and the named defendants. Specifically, nowhere in the Complaint are there any allegations that 1581 Hylan Blvd Auto, LLC., 1580 Hylan Blvd Auto, LLC., 1591 Hyland Blvd Auto, LLC., 1632 Hylan Blvd Auto, LLC., 1239 Hylan Blvd Auto, LLC., 2519 Hyland Blvd Auto, LLC., 76 Fisk Street Realty, LLC., 446 Route 23 Auto, LLC., and Island Auto Management, LLC. (collectively, the "Guarantor Plaintiffs"), have any contractual or direct relationship with the Defendants, other than claiming that they made payments on alleged obligations of Northshore Motor Leasing, LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise") (neither of whom are defendants in the instant action). The fact that 9 out of 17 parties in the caption are *frivolously* included this action, and simply glossed over by the Plaintiffs by grouping them together under the title "IAG Plaintiffs," cannot be overlooked.

These "IAG Plaintiffs" can be separated out into three groups. The first group is comprised of the unrelated, but inexplicably included, "Guarantor Plaintiffs." Every cause of action asserted by them is frivolous, and unquestionably without standing. The second group of the IAG Plaintiffs are

16

individuals, Joshua Aaronson ("Aaronson"), Jory Baron ("Baron"), and Brian Chabrier ("Chabrier") (collectively, the "Individual Plaintiffs"), who seek to assert two types of claims: derivative claims, and direct claims. The third group of Plaintiffs are Northshore and Sunrise, who are just named in the caption and then lumped together under the title "IAG Plaintiffs," but who otherwise do not assert any direct causes of action[2].  Upon segregating the parties and scrutinizing the causes of action in the context of the entities and individuals asserting them, it becomes unequivocally evident that all causes of action asserted by the "IAG Plaintiffs" must be dismissed.

### B.    Issues with Capacity/Standing

As already stated, insofar as they are asserted by the Guarantor Plaintiffs, every single cause of action must be dismissed, as they are otherwise complete strangers to the claims, and certainly not in privity of contract with any of the Defendants. With respect to causes of action 38 and 40, they are both claims for unjust enrichment, and seemingly asserted on behalf of the Guarantor Plaintiffs against Northshore and Sunrise, who, as already pointed out, are not named defendants in this action. Therefore, those causes of action must also be dismissed.

The remaining causes of action are either asserted by the Individual Plaintiffs as either derivative claims on behalf of Northshore or Sunrise, or direct claims on behalf of the Individual Plaintiffs. All of these claims suffer from fatal defects that similarly warrant their dismissal. With respect to the derivative claims, the Individual Plaintiffs failed to plead the pre-suit demand requirements or demand futility; and therefore, every derivative claim that they seek to assert are

---

[2] Yet somehow end up being on the receiving end of causes of action asserted by the Guarantor Plaintiffs, raising serious ethical concerns about counsel making claims against a party they claim to represent.

not properly before this Court and must be dismissed. With respect to the Individual Defendants'
direct claims, not one of those claims are actually direct claims belonging to the Individual
Defendants; and therefore, must be dismissed.

### 1.   The Derivative Claims

"Rule 23.1 of the Federal Rules of Civil Procedure requires that any person seeking to
bring a derivative suit against a company must first demand that the company's board of directors
take remedial action on behalf of the company. That person must then plead with particularity his
effort . . . to obtain the desired action from the directors . .. [and] the reasons for not obtaining the
action. If the person deems demand to be futile, he must plead with particularity his "reasons for .
. . not making the effort." (internal citations and quotations omitted). *Kautz v Sugarman*, 456 F
App'x 16, 19 (2d Cir 2011). Nowhere in the Amended Complaint do the Individual Plaintiffs allege
that they made a pre-suit demand upon either Northshore or Sunrise. Nor do the Individual
Plaintiffs allege any facts with particularity to support a claim of demand futility. As such, each
cause of action that is brought derivatively on behalf of Northshore and Sunrise must be dismissed.
Additionally, the Plaintiffs' failure to name Sunrise and Northshore as a  defendant in the instant
action is fatal to the derivative claims, because the corporation is an indispensable party to a
derivative suit, and required to be named as a nominal defendant. *Thorsen v. Sons of Norway*, 996
F. Supp. 2d 143, 152, n 3 (E.D.N.Y. 2014).

### 2.   The Direct Claims

It is well-settled that where an individual member or shareholder seeks to assert a direct
claim to recover for injury to the business entity, or for the breach of a duty that is owed to the
company, those claims must be asserted as a derivative claim, and may not be maintained as a
direct claim. Whether a claim is derivative or direct is a question of state law. *Aboushanab v.*

*Janay*, 2007 U.S. Dist. LEXIS 71278, at 6 (S.D.N.Y. Sept. 26, 2007) ("For the purposes of determining whether Plaintiffs have standing to bring a direct rather than an indirect, or derivative claim against Defendants for fraud, the law of the state of incorporation applies."); *Strougo v. Bassini,* 282 F.3d 162, 168-69 (2d Cir. 2002) (holding that state law applies to question of whether claim under Investment Company Act is direct or derivative).

As discussed by the First Department in *Yudell v. Gilbert*, 99 A.D.3d 108, 113–14 (1st Dep't 2012):

> New York does not have a clearly articulated test, but approaches the issue on a case by case basis depending on the nature of the allegations. For instance, where shareholders suffer solely through depreciation in the value of their stock, the claim is derivative, (*Lewin v. Lipper Convertibles,* 756 F.Supp.2d 432, 441 [S.D.N.Y.2010] [internal quotation marks omitted]), even if the diminution in value derives from a breach of fiduciary duty (*Hahn v. Stewart,* 5 A.D.3d 285, 286, 773 N.Y.S.2d 297 [2004] [internal quotation marks omitted] ). Allegations of mismanagement or diversion of corporate assets also plead a wrong to the corporation *(see Abrams v. Donati,* 66 N.Y.2d 951, 952, 498 N.Y.S.2d 782, 489 N.E.2d 751 [1985]; *Albany–Plattsburgh United Corp. v. Bell,* 307 A.D.2d 416, 419, 763 N.Y.S.2d 119 [2009], *lv. dismissed and denied* 1 N.Y.3d 620, 777 N.Y.S.2d 14, 808 N.E.2d 1273 [2004] ), as is a diversion of a corporate opportunity (*see Glenn v. Hoteltron Systems, Inc.,* 74 N.Y.2d 386, 393, 547 N.Y.S.2d 816, 547 N.E.2d 71 [1989] )."

As will be addressed hereinbelow, to the extent that the Individual Plaintiffs assert direct claims, those direct claims must be dismissed because they allege harms and injuries to Sunrise or Northshore, for which the Individual Plaintiffs may not maintain a direct claim.

## C.   Each Cause of Action Asserted By the IAG Plaintiffs

### 1.   16 & 17: Declaratory Judgment

First, as addressed above, insofar as this claim is derivatively asserted, it must be dismissed. Second, insofar as it seeks to assert a direct claim, that claim must be dismissed because there are numerous indispensable parties that have not been named, such as Asad Khan, the Estate of David Baron, and Northshore as a named defendant.  Essentially, the Individual Plaintiff is asking this

Court to make a contract determination, over the operating agreement of a company, and whether the members and officers may have breached a duty to the company to observe terms of the operating agreement relating to transfers of ownership interest, without including all of the necessary parties to the contract. Alternatively, the Individual Plaintiff is effectively bringing a claim against Deo, for breach of the operating agreement, which would be a harm that would be shared with the Company; and as such, may not be maintained individually. For the same reasons that the sixteenth cause of action must be dismissed, so too must the seventeenth cause of action.

2. <u>18 to 21: Conversion, Unjust Enrichment, Duty of Loyalty & Fiduciary Duty:</u>

As set forth above, the failure to name Northshore as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal.

3. <u>22 & 27: Permanent Injunction</u>

First, as set forth above, insofar as this claim is asserted derivatively, the failure to name Northshore as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal. Second, it well-settled law that "a claim for corporate waste may not be brought in a direct suit by a shareholder on his own behalf." *Brody v. Brody*, 2009 US Dist LEXIS 17078, at 9 (S.D.N.Y. Feb. 13, 2009) citing *Lewis v. S. L. & E., Inc.*, 629 F.2d 764, 768, n.10 (2d Cir. 1980) ("[A] claim of waste must be brought derivatively, and cannot be asserted in a direct action."). Lastly, the conclusory allegations, as alleged by the Individual Plaintiffs, is that Deo, is acting on behalf of and for Northshore, and utilizing a license purportedly owned by Chabrier. Therefore, if Chabrier has any cause of action at all, it would be against Northshore, who, again, is not a named defendant.

Similar to the twenty-second cause of action, insofar as this claim is asserted derivatively, the failure to name Sunrise as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal. Moreover, the conclusory

allegations, as alleged by the Individual Plaintiffs, are that Deo, is acting on behalf of and for Sunrise, and utilizing a license purportedly owned by Aaronson and Baron. Therefore, if Aaronson and Baron have any cause of action at all, it would be against Sunrise, who, again, is not a named defendant.

    4.   <u>23 to 26: Conversion, Unjust Enrichment, Duty of Loyalty &  Fiduciary Duty</u>

As set forth above, the failure to name Sunrise as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal.

    5.   <u>28: Contribution & Indemnification (Fraud, Conversion, Breach (Loyalty/Fiduciary)</u>

As set forth above, the failure to name Northshore as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal. Furthermore, Libertas is neither a plaintiff in this action, nor have they asserted any claims against the Individual Plaintiff. Rather, the Individual Plaintiffs are trying to prematurely assert, on Libertas behalf, claims that have yet to be asserted or raised. "Under New York law, a cause of action "for indemnification [does] not accrue until payment [is] made to the [claimant]." *Mars Assocs., Inc. v New York City Educ. Const. Fund*, 126 A.D.2d 178, 191 (1st Dep't 1987) or "asserted in a third-party action." *Id.*, at 119. Since there have been no claims asserted at this time, no right to indemnity could exist. Finally, even if it was determined that Northshore was liable to Libertas for the "Libertas Funds," and even if it was determined that Deo breached his duty to Northshore in borrowing said funds, the Individual Plaintiffs fail to plead any basis for their conclusory allegation that they would be personally liable and suffer damages distinct that would be sustained by Northshore.

    6.   <u>29 to 37: Conversion, Aiding & Abetting Contribution & Indemnity</u>

Each of these claims are asserted derivatively, the failure to name Northshore as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or

futility mandates dismissal. Moreover, based on the factual allegations set forth in the Complaint, any rights to the "Libertas Funds," were solely Northshore's. To the extent that the Complaint alleges that the funds were converted by Thomasson, or that Thomasson's conduct aided and abetted in the conversion of said funds, in the breach of a fiduciary duty, in the breach of a duty of loyalty, or in fraud, the property rights, duties, and harm would have been Northshore's, and not the Individual Plaintiffs (since they had no direct ownership interest or possessory right in the "Libertas Funds," as their interest would arise solely out of their purported membership interest in Northshore). Based on the foregoing, the Individual Plaintiffs cannot maintain direct claims for any of the above cause of actions against Thomasson, and they must be dismissed.

7.   38 & 40: Unjust Enrichment

As already discussed hereinabove, through both of these causes of action the Guarantor Plaintiffs are attempting to assert causes of action against Northshore and Sunrise (neither of whom are named defendants) to recover for funds they claim to have paid as guarantors floor plans. The fact that the Guarantor Plaintiffs elected to pay for debts allegedly owed by Northshore and Sunrise, which they claim to have done despite the lack of a contractual obligation, does not adequately state a viable claim for unjust enrichment against either non-defendant entity.

8.   39 & 41: Veil Piercing

Both cause of action for veil piercing must be dismissed. First, there is no independent cause of action for veil piercing recognized under New York law. Second, there are no detailed factual allegations to support the barebones conclusory recitation of veil-piercing factors. See, e.g., *Saiveest Empreendimentos Imobiliarios E. Participacoes, Ltda. v. Elman Investors, Inc.*, 117 A.D.3d 447, 450 (1st Dep't 2014); *Andejo Corp. v. South St. Seaport Ltd. Partnership*, 40 A.D.3d 407 (1st Dep't 2007); *Albstein v. Elany Contr. Corp.*, 30 A.D.3d 210, 210 (1st Dep't 2006).

9.  42:  GBL § 349

As set forth above, the failure to name Northshore as a nominal defendant, as well as the Individual Plaintiff's failure to plead the requisite pre-suit demand or futility mandates dismissal.

10. 43 & 44: Accounting

Both causes of action for accounting are seemingly asserted against Northshore and Sunrise; however no basis for their claimed entitlement to an accounting is provided. To the extent that the claim for an accounting is asserted by the Guarantor Plaintiffs, they do not allege to be judgment creditors or any other basis that would entitle them to an accounting. To the extent that the accounting claims are asserted by the Individual Plaintiffs, those claims must be dismissed because it is well-settled that a corporate accounting claim may not be brought directly, and instead, may only be maintained derivatively (which Plaintiffs have not done). *Fisher v. Big Squeeze (NY), Inc.*, 349 F Supp 2d 483, 488 (E.D.N.Y. 2004), citing *Romanoff v. Superior Career Institute, Inc.,* 69 A.D.2d 856, 856(2d Dept. 1979) ("an action for a corporate accounting brought by a shareholder in the shareholder's individual capacity fails to state a claim under New York law.") Lastly, as already noted, to the extent that Plaintiffs' cause of action for an accounting are asserted against Northshore and Sunrise, neither of them are nominal defendants in this action.

11. 45 Judiciary Law § 487

Even if the allegations are accepted as true, this claim must fail, as Plaintiffs do not show any intent to deceive. In fact, the allegation that Thomasson was transparent about his intention to release the escrow funds eliminates any claimed intent to deceive. In addition, Thomasson's insistence on the inclusion of his correspondence in any *ex-parte* petition brought before the court only serves to further demonstrate his belief in his client's case, and not as evidence of attempt to deceive. Disagreement between opposing counsel as to a legal conclusion does not equate to deceit, and conflating such a disagreement with deceitful conduct would set a dangerous and

23

chilling precedent on the legal industry. This claim is so frivolous and not based in reality, that this Court should *sua sponte* issue sanctions  against the Plaintiffs counsel under Judiciary Law § .

12. <u>52: Fraud</u>

Under New York law, to plead a cause of action for fraud, a party must plead "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Lee Dodge, Inc. v Sovereign Bank, N.A.*, 148 A.D.3d 1007, 1008 (2d Dept 2017). Rule 9(b) requires fraud claims to meet a heightened pleading standard, whereby the plaintiff must set forth, with specificity, the particular facts underlying the fraud claim. The plaintiff must include, among things, the identity of the speaker or the writer; where, when and to whom the statements were made; what was specifically stated that is alleged to have been a misrepresentation, and explain how the misrepresentation was fraudulent.

As already stated with regards to the RICO claims hereinabove, Plaintiffs do not provide particularized details about the statements alleged to be fraudulent, relying instead on broad, conclusory statements about categories of misinformation, such as "falsified" monthly financial statements and inflated financial. Plaintiffs neglect to pinpoint the dates these statements were made, the individuals to whom they were made, or the specific documents containing these statements. The general claim that the defendants issued falsified financial statements over a series of months, without specifying exact dates, the documents containing the false information, or the precise financial figures claimed to be fraudulent, does not fulfill the heightened pleading requirement of Rule 9(b). Merely alleging that the Defendants provided financial documents over a lengthy period of time, with intentionally inflated amounts misrepresented therein, without ever specifying the dates of said conduct, or the numbers that are claimed to have been misrepresented in said documents does not satisfy the heightened pleading requirements for fraud.

24

In addition, Plaintiffs' fraud claim must fail as a matter of law because the allegations fail to properly allege reasonable reliance. According to Plaintiffs, Ally Bank ("Ally") provided a floor plan line of credit to Northshore and Sunrise. (Compl., ¶ 77), and that the Guarantor Plaintiffs were guarantors to Ally's floor plan. ( Compl., ¶ 85). Thereafter, Plaintiffs allege that in order for "[Guarantor Plaintiffs] and Ally Bank to continue to provide the Floor Plan to Northshore and Sunrise, Northshore and Sunrise were required to provide [Guarantor Plaintiffs] and Ally Bank monthly financial reports." ( Compl., ¶ 127). However, notwithstanding Plaintiffs' conclusory allegation, only Ally was providing the floor plan, as Guarantor Plaintiffs were merely guarantors thereof. Guarantor Plaintiffs do not allege privity with either Northshore or Sunrise. Thus, any financial statements, provided by Northshore or Sunrise, were provided to Ally. Therefore, even assuming there were financial misrepresentations in the monthly statements, they were made solely to Ally, and not Plaintiffs. "New York law does not support such a theory of third-party reliance. *See Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14 (2d Cir. 2015), *certified question answered*, 27 N.Y.3d 817, 829 (2016) (holding that misrepresentations that are not communicated to a plaintiff cannot form the basis of a plaintiff's reasonable reliance). Accordingly, we hold that Loreley fails to establish by clear and convincing evidence that it relied on the defendants' representations." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 13 F.4th 247, 251 (2d Cir. 2021).

Based on the foregoing, the Plaintiffs' fraud claim must be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted in all respects.

Dated: Hicksville, New York
       February 9, 2024

                          LEVINE SINGH, LLP
                    By:   /s/      Brian M. Levine_____
                          Brian M. Levine, Esq.
                          260 N. Broadway, Suite 2A
                          Hicksville, New York 11801
                          Tel. No.: (347) 732-4428
                          Fax No.: (917) 477-2273
                          *Attorneys for the Deo Defendants*