**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SUPERB MOTORS INC., TEAM AUTO SALES
LLC, ROBERT ANTHONY URRUTIA, 189
SUNRISE HWY AUTO LLC, NORTHSHORE
MOTOR LEASING, LLC, BRIAN CHABRIER,
*individually and derivatively as a member of*
NORTHSHORE MOTOR LEASING, LLC,
JOSHUA AARONSON, *individually and
derivatively as a member of* 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN
BLVD AUTO LLC, 1580 HYLAN BLVD AUTO
LLC, 1591 HYLAN BLVD AUTO LLC, 1632
HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD
AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76
FISK STREET REALTY LLC, 446 ROUTE 23
AUTO LLC and ISLAND AUTO
MANAGEMENT, LLC,

                                Plaintiffs,

              v.

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP,
MARC MERCKLING, MICHAEL LAURIE,
THOMAS JONES, CPA, CAR BUYERS NYC
INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD
COAST MOTORS AUTOMOTIVE GROUP LLC,
GOLD COAST MOTORS OF LIC LLC, GOLD
COAST MOTORS OF ROSLYN LLC, GOLD
COAST MOTORS OF SMITHTOWN LLC, UEA
PREMIER MOTORS CORP., DLA CAPITAL
PARTNERS INC., JONES, LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, LIBERTAS
FUNDING LLC, and J.P. MORGAN CHASE
BANK, N.A.,

                               Defendants.

---

Case No.: 2:23-cv-6188 (OEM)(JMW)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
<u>JPMORGAN CHASE BANK, N.A.'S MOTION TO DISMISS</u>**

**SHERMAN ATLAS SYLVESTER
& STAMELMAN, LLP**
Anthony C. Valenziano, Esq.
Brooke Suárez, Esq.
1185 Avenue of the Americas, 2nd Floor
New York, New York 10036
Tel. No: (212) 763-6464
*Attorneys for Defendant
JPMorgan Chase Bank, N.A.*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT……………………………………………………...........1

SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT ....................................................2

LEGAL ARGUMENT ........................................................................................................3

I.   LEGAL STANDARD ON A MOTION TO DISMISS ....................................................3

II.  PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH

     A RICO CLAIM AND CONSPIRACY IN VIOLATION OF 18 U.S.C. § 1962...............5

   A.   Plaintiffs Have Failed to Adequately Allege the Existence of a RICO "Enterprise"

        Involving Chase ............................................................................................6

   B.   Plaintiffs Have Failed to Plead That Chase Engaged in a "Pattern of Racketeering

        Activity"……………………………………………………………………...9

   C.   Plaintiffs' RICO Conspiracy Claim Must be Dismissed……………………………..10

III. SUPERB'S COMMON LAW CLAIMS OF NEGLIGENCE AND CONVERSION

     ARE DISPLACED BY THE UCC AND SHOULD BE DISMISSED ..............................10

CONCLUSION ........................................................................................................13

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                           **Page(s)**

*101 McMurray, LLC v. Porter,*
   No. 10-9037, 2012 WL 997001 (S.D.N.Y. Mar. 26, 2012) ........................................... 9

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.,*
   816 F. Supp. 2d 222 (S.D.N.Y. 2011) ........................................................................ 11

*Abbott Labs v. Adelphia Supply USA,*
   2017 WL 57802 (E.D.N.Y. Jan. 4, 2017) ...................................................................... 6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................... 3, 4, 5

*Associated Home and RV Sales, Inc. v. Bank of Belen,*
   294 P.3d 1276 (N.M. 2012) ........................................................................................ 12

*Atlanta Shipping Corp., Inc. v. Chem. Bank,*
   818 F.2d 240 (2d Cir. 1987) ......................................................................................... 5

*Azirelli v. Cohen Law Offices,*
   21 F.3d 512 (2d Cir. 1994) ........................................................................................... 5

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................................... 5

*Boyle v. United States,*
   556 U.S. 938 (2009) ...................................................................................................... 6

*City Check Cashing, Inc. v. Mfrs. Hanover Trust Co.,*
   166 N.J. 47 (2001) ...................................................................................................... 12

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,*
   187 F.3d 229 (2d Cir. 1999) ...................................................................................... 5, 9

*Continental Petroleum Corp. v. Corporation Funding Partners, LLC,*
   2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ............................................................... 9

*Elsevier Inc. v. W.H.P.R., Inc.,*
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ........................................................................ 10

*EngineAir, Inc. v. Centra Credit Union,*
   107 N.E.3d 1061 (Ct. App. Ind. 2018) ...................................................................... 12

*Fischer & Mandel, LLP v. Citibank, N.A.*,
    632 F.3d 793 (2d Cir. 2011) ................................................................................. 11

*Grain Traders, Inc. v. Citibank, N.A.*,
    160 F.3d 97 (2d Cir. 1998) ................................................................................... 11

*Gross v. Waywell*,
    628 F. Supp.2d. 475 (S.D.N.Y. 2009) .......................................................... 6, 9, 10

*H.J. Inc. v. Northwestern Bell Tel. Co.*,
    492 U.S. 229 (1989) .............................................................................................. 9

*Holmes v. Parade Place, LLC*,
    2013 WL 5405541 (S.D.N.Y. Sept. 26, 2013) ...................................................... 6

*In re Agape Litig.*,
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ........................................................ 7, 8, 10

*Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*,
    No. 08-6195, 2009 WL 2850230 (S.D.N.Y. Aug. 28, 2009) ................................. 4

*Kiobel v. Royal Dutch Petroleum Co.*,
    621 F.3d 111 (2d Cir. 2010) ................................................................................. 4

*LD Mgmt. LLC v. First Republic Bank, Inc.*,
    No. CV 21-18427 (KM), 2022 WL 4536297 (D.N.J. Sept. 27, 2022) ................. 12

*Martinex v. JPMorgan Chase Bank, N.A.*,
    178 F. Supp. 3d 184 (S.D.N.Y. 2016) ................................................................... 8

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
    737 F. Supp. 2d 137 (S.D.N.Y. 2010) ............................................................. 8, 10

*Moss v. BMO Harris Bank, N.A.*,
    258 F. Supp.3d 289 (E.D.N.Y. 2017) ................................................................ 6, 7

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
    165 F. Supp.2d 514 (S.D.N.Y. 2001) .................................................................... 6

*Plount v. American Home Assurance Co.*,
    668 F. Supp. 204 (S.D.N.Y. 1987) ....................................................................... 5

*Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*,
    74 N.Y.2d 340 (1989) ......................................................................................... 11

*Rajaratnam v. Motley Rice, LLC*,
    449 F. Supp.3d 45 (E.D.N.Y. 2020) ..................................................................... 6

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ................................................................................. 7

*Rosner v. Bank of* China,
   528 F. Supp. 2d 319 (S.D.N.Y. 2007) ....................................................... 8

*S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*,
   No. 08-5175, 2009 WL 3151807 (S.D.N.Y. Sept. 30, 2009) .................... 4

*Schlaifer Nance & Co. v. Estate of Warhol*,
   119 F.3d 91 (2d Cir. 1997) .................................................................... 6, 9

*Spool v. World Child Int'l Adoption Agency*,
   520 F.3d 178 (2d Cir. 2008) ................................................................. 4, 5

*Trivedi v. Wells Fargo Bank, N.A.*,
   609 F. Supp. 3d 628 (N.D. Ill. 2022) ...................................................... 12

*U.S. Small Business Admin. v. Citibank, N.A.*,
   1997 WL 45514 (S.D.N.Y. Feb. 4, 1997) ................................................ 10

*Vaughn v. Air Line Pilots Ass'n, Int'l*,
   604 F.3d 703 (2d Cir. 2010) ...................................................................... 3

*Weizmann Institute of Science v. Neschis*,
   229 F. Supp. 2d. 234 (S.D.N.Y. 2002) ...................................................... 9

*Weston v. Optima Commc'ns Sys., Inc.*,
   No. 09-3732, 2009 WL 3200653 (S.D.N.Y. Oct. 7, 2009) ....................... 4

**Statutes**

18 U.S.C. § 1961(4) ........................................................................................ 6

18 U.S.C. § 1962 ...................................................................................... i, 3, 5

18 U.S.C. § 1962(d) ........................................................................................ 3

N.Y. U.C.C. § 4–101 ..................................................................................... 11

NYUCC § 3-419 .............................................................................................. 3

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................................... 5, 8

Federal Rule of Civil Procedure 12(b)(6) .................................................. 1, 3

**Other Authorities**

UCC Article 4 § 401 ................................................................................................................... 11

## PRELIMINARY STATEMENT

Defendant, JPMorgan Chase Bank, N.A. ("Chase"), respectfully submits this Memorandum of Law in support of its motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts One, Two, Forty-Seven and Forty-Eight of the First Amended Complaint ("Amended Complaint") filed by plaintiffs, Superb Motors, Inc. ("Superb") and Island Auto Management, LLC ("IAG")[1] (collectively, "Plaintiffs") for failure to state a claim upon which relief may be granted.

In the Amended Complaint, Plaintiffs allege a fraudulent scheme on the part of Anthony Deo, and his associates (collectively the "Deo Defendants") that Plaintiffs claim was an attempt to usurp control of Plaintiffs' businesses, pillage and plunder them, and leave Plaintiffs "holding the bag." None of this conduct has anything to do with Chase. However, what Plaintiffs improperly seek to do is to elevate their garden-variety fraud claim against the Deo Defendants into one of a vast racketeering conspiracy involving several financial institutions, including Chase, claiming, without any factual or legal basis, that Chase is part of this racketeering "enterprise." The allegations in the Amended Complaint fall woefully short of establishing any such "enterprise" and meeting the heightened pleading scrutiny applied to allegations asserting RICO. That the Deo Defendants may have utilized banking services at Chase, in and of itself, does not give rise to a RICO claim or conspiracy and is exactly the type of frivolous claim that federal courts routinely dismiss.

Further, Superb's common law claims involving the transaction and negotiation of checks on its accounts at Chase are preempted by the Uniform Commercial Code (the "UCC"). Well-

---

[1] Chase uses these terms as defined in the First Amended Complaint to reference the named individual and corporate entities.

settled law holds that the UCC preempts common-law causes of action such as conversion and negligence, which Superb improperly seeks to assert in this action against Chase.

As set forth below, Chase respectfully submits that these causes of action should be dismissed as to Chase.

<u>**SUMMARY OF THE ALLEGATIONS IN THE COMPLAINT**</u>

In the Amended Complaint, Plaintiffs, which are entities engaged in the purchase and sale of vehicles, allege that the Deo Defendants, through a series of machinations and misconduct, misrepresented their ability to manage car dealerships and, ultimately, took control of Plaintiffs' businesses for the Deo Defendants' own use and benefit. (*See* Certification of Anthony C. Valenziano, Esq., dated February 9, 2024 (the "Valenziano Cert."), Ex. A (Amended Complaint) at ¶1.)

To perpetrate this scheme, Plaintiffs detail a series of acts that Deo engaged in, including, among other things, (i) selling vehicles for less than their purchase price at IAG, (ii) failing to pay off existing vehicle loans on trade-ins for IAG, (iii) failing to perfect liens on behalf of various lenders for IAG, (iv) failing to pay warranty companies and vendors, (v) falsifying IAG's financial statements, (vi) stealing customer deposits and other dealership assets, (vii) falsely claiming ownership in IAG to obtain SBA loans, (viii) impermissibly "double-flooring," *i.e.*, financing the same vehicle twice, at Superb, (ix) misappropriating and stealing Superb's vehicles, (x) purchasing vehicles under Superb's name at auction, and (xi) forging documents and other instruments to obtain control of Superb's finances.  (*See* Ex. A at ¶¶ 77-172, 197-224.) Plaintiffs further allege that, with respect to Superb, the Deo Defendants surreptitiously set up their own car dealerships, improperly using Superb's trade secrets and confidential information, in addition to assets that the Deo Defendants secreted from Superb.  (*See* Ex. A at ¶¶ 225-280.)

As to Chase, Plaintiffs allege that the Deo Defendants carried out their criminal intentions by engaging in wire fraud and the use of forged instruments at Chase. (*Id.* at ¶2.) Specifically, Superb alleges that Chase is liable for conversion on the grounds that Chase permitted the Deo Defendants to deposit funds in an account opened by Deo in the name of Superb without authority. (*Id.* at ¶¶621-622, 624.) Finally, Superb alleges that Chase was negligent in permitting Deo to open an account at Chase in Superb's name and draw checks on the account without proper due diligence. (*Id.* at ¶¶ 626, 628.)

However, in a Complaint alleging fifty-two causes of action with over six hundred paragraphs of allegations,[2] Chase is only mentioned, albeit superficially, in six causes of action: (1) Violation of Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962 (Count One); (2) Conspiracy in violation of 18 U.S.C. § 1962(d) (Count Two); (3) Violation of NYUCC § 3-419 (Count Forty-Six); (4) Conversion (Count Forty-Seven); (5) Negligence (Count Forty-Eight); and (6) Drawee Liability (Count Fifty).

## LEGAL ARGUMENT

### I.   LEGAL STANDARD ON A MOTION TO DISMISS

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Vaughn v. Air Line Pilots Ass'n, Int'l*, 604 F.3d 703, 709 (2d Cir. 2010) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Where a complaint pleads facts that are merely consistent

---

[2] This memorandum of law addresses only the causes of action that are the subject of this Motion to Dismiss. Plaintiffs allege a widespread criminal conspiracy directed at the Deo Defendants, including, among other things, misappropriation of trade secrets, unfair competition, tortious interference with contractual relations, business relations, and prospective economic advantage, unjust enrichment, fraud, breach of fiduciary duty, and civil conspiracy. These claims do not identify Chase as a defendant and, as such, are omitted.

with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). Plausibility "is not akin to a probability requirement," rather plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citation omitted).  Following the Supreme Court's decision in *Iqbal*, courts use a two-pronged approach on a motion to dismiss. *See*, *e.g.*, *Weston v. Optima Commc'ns Sys., Inc.*, No. 09-3732, 2009 WL 3200653, at *2 (S.D.N.Y. Oct. 7, 2009) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, No. 08-5175, 2009 WL 3151807, at *3 (S.D.N.Y. Sept. 30, 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, No. 08-6195, 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28, 2009) (same). First, the court must accept all factual allegations in the complaint as true, discounting legal conclusions presented as facts. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (stating that a court must "assum[e] all well-pleaded, nonconclusory factual allegations in the complaint to be true") (citing *Iqbal*, 556 U.S. at 678-79); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) ("Although we construe the pleadings liberally, bald assertions and conclusions of law will not suffice.") (internal quotations omitted). Second, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

A plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citation omitted).  A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citation omitted).  Meeting the plausibility standard requires a complaint to plead facts that show "more than a sheer possibility

that a defendant has acted unlawfully." *Id*. (citation omitted).  A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement.  *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (internal quotation marks omitted)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "The pleadings must create the possibility of a right to relief that is more than speculative." *Spool*, 520 F.3d at 183.

When fraud is pleaded, Federal Rule 9(b) requires the plaintiff to plead with particularity. *See Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).  Pursuant to Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II. PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICIENT TO ESTABLISH A RICO CLAIM AND CONSPIRACY IN VIOLATION OF 18 U.S.C. § 1962

To establish a claim for civil violation of the RICO statute at 18 U.S.C. § 1962, "a plaintiff must show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *Azirelli v. Cohen Law Offices*, 21 F.3d 512, 520 (2d Cir. 1994)).  A RICO claim is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Plount v. American Home Assurance Co.*, 668 F. Supp. 204, 206-7 (S.D.N.Y. 1987).  ("[A]ll of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions").  Courts should dismiss RICO claims where a plaintiff "artificially fragment[s] a singular act into multiple acts simply to

invoke RICO" and seeks to "transform[] garden-variety common law actions into federal cases." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997); *see also Gross v. Waywell*, 628 F. Supp.2d. 475, 493 (S.D.N.Y. 2009) (noting that potential for transforming garden-variety common law claims into federal cases is greater if grounded entirely on the predicate acts of mail and wire fraud). "Given the 'powerful incentive for plaintiffs to attempt to fit garden variety fraud claims within the standard of civil RICO' due to 'the allure of treble damages, attorney's fees, and federal jurisdiction,' courts must 'scrutinize civil RICO claims early in the litigation to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud.'" *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp.3d 45, 64 (E.D.N.Y. 2020) (quoting *Holmes v. Parade Place, LLC*, 2013 WL 5405541, at *14 (S.D.N.Y. Sept. 26, 2013)).

### A.   Plaintiffs Have Failed to Adequately Allege the Existence of a RICO "Enterprise" Involving Chase

Under RICO, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To establish an association-in-fact enterprise, Plaintiffs must demonstrate "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp.3d 289, 298 (E.D.N.Y. 2017) (quoting *Boyle v. United States*, 556 U.S. 938 (2009)). A "conclusory naming of a string of entities" will not suffice. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp.2d 514, 539 (S.D.N.Y. 2001); *Abbott Labs v. Adelphia Supply USA*, 2017 WL 57802, at *4 (E.D.N.Y. Jan. 4, 2017) ("Without factual allegations showing these 300 defendants had an interpersonal relationship in which they worked together for a common illicit interest, [the

6

plaintiff's] pleadings constitute nothing more than the conclusory naming of a string of entities combined with legal conclusions.").

Rather, Plaintiffs must specially allege "that members of an association-in-fact enterprise share a wrongful intent to violate RICO…" *See Moss*, 258 F. Supp. 3d at 299. Thus, to establish a RICO violation, and specifically a RICO enterprise, "a plaintiff must show, among other elements, that the defendant has participated in the affairs of the alleged enterprise….[which] [t]he Supreme Court has held that 'to conduct or participate, directly or indirectly, in the conduct' of an enterprise 'one must participate in the operation or management of the enterprise itself.'" *In re Agape Litig.*, 681 F. Supp. 2d 352, 369 (E.D.N.Y. 2010) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)).

Here, Plaintiffs have plainly failed to allege an enterprise required under the RICO statute as it relates to Chase. The Amended Complaint is devoid of any facts that would show the existence of an enterprise to which Chase was a participant "in the operation and management of the enterprise itself[,]" and, instead, lists a string of financial institutions, including Chase, as having been utilized by the Deo Defendants in furtherance of *their* scheme. (*See* Ex. A at ¶¶283-316.) There are no facts alleging an interpersonal relationship between Chase and any other alleged member of the enterprise, including among others, the Deo Defendants, and there are no allegations regarding the time in which Chase allegedly participated. The only allegation that mentions Chase in relation to Counts One and Two alleges that Chase "participated in this scheme by permitting Deo to process checks from Superb's bank account when it knew that he had no authority to sign checks." (*See* Ex. A at ¶316.)

Instead, Plaintiffs simply claim that the Deo Defendants, in furtherance of their own alleged fraudulent scheme, utilized banks, such as Chase, to the detriment of Plaintiffs.

However, it is well-settled that "e[v]en the provision of services essential to the operation of the RICO enterprise itself is not the same as participating in the conduct of the affairs of the enterprise." *Rosner v. Bank of* China, 528 F. Supp. 2d 319, 431 (S.D.N.Y. 2007); *Martinex v. JPMorgan Chase Bank, N.A.*, 178 F. Supp. 3d 184 (S.D.N.Y. 2016) (dismissing RICO claim against bank where it provided bank services to alleged RICO participants).  Those type of allegations, thus, are plainly insufficient to sustain a claim of RICO against Chase as Plaintiffs have not and cannot allege that Chase actively controlled and directed the RICO enterprise.  *See In re Agape Litig.*, 681 F. Supp. 2d at 369 (dismissing RICO claim against bank where plaintiff failed to allege that bank "directed the affairs of the purported enterprise" and "[a]t most…allege[d], albeit in conclusion fashion, that [the bank] had actual knowledge of [the] scheme….")

Moreover, while Plaintiffs make a general allegation that "[e]ach defendant benefitted directly from these schemes either [sic] through direct participation in Deo's schemes by receiving portions of the money stolen by Deo[,]" this type of blunderbuss general allegation does not sustain Plaintiffs' burden to plead a RICO association-in-fact enterprise with the requisite particularity. *See MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137 (S.D.N.Y. 2010) (dismissing RICO claim against bank that provided banking services to financial fraudster because the "routine benefits derived in the ordinary course of business do not constitute the type of 'concrete benefit' necessary to allege fraudulent intent under Rule 9(b).") Among other things, the Amended Complaint fails to allege how Chase, as a national banking institution, benefitted from or furthered the purposes of the enterprise, which Plaintiffs allege in detail concerned the *Deo Defendants'* machinations and schemes to obtain control of Superb. (*See* Ex. A at ¶¶281-331.)  These omissions are fatal to Plaintiffs' RICO claim as to Chase. *See*

*101 McMurray, LLC v. Porter*, No. 10-9037, 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) (dismissing RICO claim where only allegations of "enterprise" were "mere legal conclusions without factual support to demonstrate the existence of an 'ongoing organization'"); *Continental Petroleum Corp. v. Corporation Funding Partners, LLC*, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (dismissing RICO claim where plaintiffs "fail to make any concrete factual assertions as to the mechanics of the interactions among defendants, including facts indicating that the disparate defendants functioned as a unit, or supporting the inference that defendants had a common interest in the success of the so-called enterprise").

**B.  Plaintiffs Have Failed to Plead That Chase Engaged in a "Pattern of Racketeering Activity"**

Plaintiffs' RICO claim also does not adequately plead the requisite "pattern of racketeering activity."  "To establish 'pattern,' a plaintiff must allege facts tending to show that 'the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity.'" *Weizmann Institute of Science v. Neschis*, 229 F. Supp. 2d. 234, 256 (S.D.N.Y. 2002) (quoting *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *Schlaifer*, 119 F.3d at 97.  The relatedness test requires that the predicate acts relied upon "share the same or similar purposes, results, participants, victims or methods, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 429 U.S. at 240.  The continuity element is satisfied by showing either "close-ended continuity," which may be shown "by a series of related predicate acts which occurred over a substantial period of time," or "open-ended continuity, "which "requires a showing of existence of a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Gross*, 628 F. Supp. 2d at 485 (citing *Cofacredit*, 187 F.3d at 243).

Here, Plaintiffs' haphazard allegations concerning a "pattern of racketeering activity" are deficient.   Plaintiffs fail to identify any predicate acts Chase and the co-defendants agreed to commit, or any predicate acts Chase did commit.   The allegations that cashing or negotiating checks on an account, even if done in violation of a written agreement governing the account, do not amount to a predicate act in violation of the RICO statute.  *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 313 (S.D.N.Y. 2010); *MLSMK Inv. Co.*, 737 F. Supp. 2d at 137.

### C.  Plaintiffs' RICO Conspiracy Claim Must be Dismissed

A claim for RICO conspiracy cannot survive without an underlying properly pled RICO claim. *See Gross*, 628 F. Supp. 2d at 500. With Plaintiffs' substantive RICO claim failing for the reasons stated above, Plaintiffs' RICO conspiracy claim must fail as well.  Further, a claim for RICO conspiracy requires demonstration that Chase, along with all other members of the alleged "enterprise," agreed to commit two predicate acts in furtherance of a pattern of racketeering activity.  *See In re Agape Litig.*, 681 F. Supp. 2d at 352.   Here, the Amended Complaint makes no such allegations with any level of particularity, let alone the particularity required under Rule 9(b).

### III.    SUPERB'S COMMON LAW CLAIMS OF NEGLIGENCE AND CONVERSION ARE DISPLACED BY THE UCC AND SHOULD BE DISMISSED

Superb's common law claims of negligence and conversion are barred by the UCC, which preempts certain common law causes of action in New York.  *See U.S. Small Business Admin. v. Citibank, N.A.*, 1997 WL 45514, at *4 (S.D.N.Y. Feb. 4, 1997) ("The NYUCC displaces certain common law causes of action."). In those instances where "particular provisions" of the UCC govern the conduct at issue, a plaintiff will generally be precluded from asserting claims under common law which would "impose liability inconsistent with the rights and liabilities" created by the UCC.  *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 103

(2d Cir. 1998) (dismissing common law claims asserted alongside UCC claims brought under Article 4-A); *Fischer & Mandel, LLP v. Citibank, N.A.*, 632 F.3d 793, 801 (2d Cir. 2011) (affirming finding that negligence claim was preempted by UCC); *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 234-35 (S.D.N.Y. 2011) (same).

Here, the allegations all concern the negotiation of certain checks drawn on accounts maintained at Chase. This conduct is governed by UCC Article 4 § 401, which determines when a bank may charge a customer's account with an item such as a check. The Second Circuit has expressly held that common law claims may be preempted by UCC Article 4:

> Article 4 governs bank deposits and collections. Neither the New York Court of Appeals nor our Court has directly considered whether or to what extent Article 4 preempts common law actions. The New York Court of Appeals has observed, however, that the New York U.C.C. "has the objective of promoting certainty and predictability in commercial transactions." [citation omitted] Article 4 itself recognizes that "[t]he tremendous number of checks handled by banks and the country-wide nature of the collection process require uniformity in the law of bank collections." N.Y. U.C.C. § 4–101 cmt. We therefore hold—as we did with Article 4A—that Article 4 precludes common law claims that would impose liability inconsistent with the rights and liabilities expressly created by Article 4.

*Fischer*, 632 F.3d at 801 (finding negligence claim was preempted by UCC); *see 2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F. Supp. 2d 222, 234-35 (S.D.N.Y. 2011) (finding that common law claims based on unauthorized signatures on checks were preempted by Article 4).[3]

---

[3] *See also Putnam Rolling Ladder Co. v. Mfrs. Hanover Trust Co.*, 74 N.Y.2d 340, 349 (1989) ("[T]he UCC not only guides commercial behavior but also increases certainty in the marketplace and efficiency in dispute resolution").

This rule is followed in numerous other jurisdictions. *See, e.g., See City Check Cashing, Inc. v. Mfrs. Hanover Trust Co*., 166 N.J. 47, 49 (2001) ("In short, in the check collection arena, unless the facts establish a special relationship between the parties created by agreement, undertaking or contact that gives rise to a duty, the sole remedies available are those provided in the [UCC]"); *LD Mgmt. LLC v. First Republic Bank, Inc*., No. CV 21-18427 (KM), 2022 WL 4536297, at \*7 (D.N.J. Sept. 27, 2022) ("[U]nauthorized checks and wire transfers typically fall within the sole purview of the UCC"); *Associated Home and RV Sales, Inc. v. Bank of Belen*, 294 P.3d 1276, 1280 (N.M. 2012) (affirming dismissal of common law claims of negligence, misrepresentation and breach of contract on motion to dismiss arising from allegedly forged checks); *EngineAir, Inc. v. Centra Credit Union*, 107 N.E.3d 1061, 1071 (Ct. App. Ind. 2018) (affirming dismissal of common law claim of negligence based on forged checks as preempted by UCC Article 4); *Trivedi v. Wells Fargo Bank, N.A.*, 609 F. Supp. 3d 628 (N.D. Ill. 2022) (finding on motion to dismiss that claims for breach of fiduciary duty and negligence were preempted by Article 4A).

As such, any claims asserted by Superb in the Complaint concerning those checks must be litigated under the provisions of the UCC, and not according to common law principles. Accordingly, Superb's common law claims must be dismissed as to Chase.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendant, JPMorgan Chase Bank, N.A., respectfully requests that Counts One, Two, Forty-Seven and Forty-Eight of Plaintiffs' Amended Complaint be dismissed as against it, with prejudice, pursuant to Rule 12(b)(6).

Respectfully submitted,

SHERMAN ATLAS SYLVESTER
& STAMELMAN LLP
*Attorneys for Defendant*
*JPMorgan Chase Bank, N.A.*


By: /s/Anthony C. Valenziano
　　　Anthony C. Valenziano

DATED: February 9, 2024

4890-7248-5279, v. 3

13