UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually
and derivatively as a member of 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**PLAINTIFFS' MEMORANDUM
OF LAW IN OPPOSITION TO
DEFENDANT FLUSHING BANK'S
MOTION TO DISMISS AND IN
SUPPORT OF THEIR CROSS-
MOTION FOR LEAVE TO
AMEND THE PLEADINGS**

                          Plaintiffs,


          -against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK,
LIBERTAS FUNDING LLC, and J.P. MORGAN
CHASE BANK, N.A.,

                          Defendants.
----------------------------------------------------------------X

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

FACTS ............................................................................................................................2

STANDARD OF REVIEW ...............................................................................................4

ARGUMENT ...................................................................................................................7

    FLUSHING'S MOTION TO DISMISS MUST BE DENIED ......................................7

        I. Legal Standard For RICO Claims ...................................................................7

        II. Plaintiffs state a claim for relief against Flushing under RICO's substantive provision ...............................................................................................11

        III. Plaintiffs state a claim for relief against Flushing under RICO's conspiracy provision ...............................................................................................14

        IV. This court should exercise its discretion in favor of exercising supplemental jurisdiction ...........................................................................................15

        V. Plaintiff's cross-motion for leave to amend must be granted ....................17

        VI. Leave to replead must be granted in the event of dismissal ....................18

    CONCLUSION...........................................................................................................19

# TABLE OF AUTHORITIES

## Cases

131 Main St. Assocs. v. Manko,
    897 F. Supp. 1507 (S.D.N.Y. 1995) ................................................................... 13

In re Agape Litig
    681 F. Supp. 2d 352 (E.D.N.Y. 2010) ............................................................... 13

Alix v. McKinsey & Co., Inc.,
    No. 18-CIV.-4141 (JMF), 2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023) ....................... 13

Amidax Trading Grp. v. S.W.I.F.T. SCRL,
    671 F.3d 140 (2d Cir. 2011) .............................................................................. 4

Angermeir v. Cohen,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014) ................................................................. 15

Ap-Fonden v. Goldman Sachs Grp., Inc.,
    No. 18-CIV.-12084, 2023 WL 4865617 (S.D.N.Y. July 31, 2023) .................................. 5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ....................................................................................... 4

Baisch v. Gallina,
    346 F.3d 366 (2d Cir. 2003) ............................................................................ 10

Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo,
    346 F. Supp. 3d 432 (S.D.N.Y. 2018) ................................................................. 9

Bell Atl. Corp. v. Twombly,
    550 U.S. 554 (2007) ....................................................................................... 5

Benzinger v. NYSARC, Inc. New York City Chapter,
    385 F. Supp. 3d 224 (S.D.N.Y. 2019) ................................................................ 16

Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.,
    1990 WL 129970 (E.D.N.Y. Aug. 24, 1990) ....................................................... 17

Block v. First Blood Assocs.,
    988 F.2d 344 (2d Cir.1993) ............................................................................ 18

Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc.,
    369 F.3d 212 (2d Cir. 2004) ............................................................................ 6

Boyle v. United States,
556 U.S. 938 (2009)................................................................................................. 11, 12

Buday v. N.Y. Yankees P'ship,
486 Fed. Appx. 894 (2d Cir. 2012)................................................................................. 4

Catzin v. Thank You & Good Luck Corp.,
899 F.3d 77 (2d Cir. 2018)............................................................................................ 16

Cedric Kushner Promotions, Ltd. v. King,
533 U.S. 158 (2001)...................................................................................................... 10

City of New York v. Chavez,
No. 11-CIV.-2691 (BSJ), 2012 WL 1022283 (S.D.N.Y. Mar. 26, 2012)......................... 15

City of New York v. Hatu,
No. 18-CIV.-848 (PAE), 2019 WL 2325902 (S.D.N.Y. May 31, 2019)......................... 15

Conte v. Newsday, Inc.,
703 F. Supp. 2d 126 (E.D.N.Y. 2010) .......................................................................... 12

Cortec Indus., Inc. v. Sum Holding L.P.,
949 F.2d 42 (2d Cir. 1991)............................................................................................ 19

Cruz v. TD Bank, N.A.,
742 F.3d 520 (2d Cir. 2013)........................................................................................... 18

Elliot-Leach v. New York City Dep't of Educ.,
201 F. Supp. 3d 238 (E.D.N.Y. 2016) .......................................................................... 19

Elliot-Leach v. New York City Dep't of Educ.,
710 Fed. Appx. 449 (2d Cir. 2017)................................................................................. 19

First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.,
385 F.3d 159 (2d Cir. 2004)........................................................................................... 10

Foman v. Davis,
371 U.S. 178 (1962)...................................................................................................... 17

Foster v. 2001 Real Estate,
2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)................................................................. 12

Greenberg v. Blake,
2010 WL 2400064 (E.D.N.Y. June 10, 2010................................................................. 12

Harris v. Leon,
    No. 20-CIV.-10864 (LGS), 2023 WL 2051171 (S.D.N.Y. Feb. 16, 2023) ..................... 16

Hayden v. Paterson,
    594 F.3d 150 (2d Cir. 2010) ................................................................................ 4

Hecht v. Commerce Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990) ................................................................................. 9

In re Firestar Diamond, Inc.,
    No. 18-10509 (SHL), 2023 WL 6786093 (Bankr. S.D.N.Y. Oct. 13, 2023) .................... 8

Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,
    797 F.3d 160 (2d Cir. 2015) ............................................................................... 19

Lundy v. Cath. Health Sys. of Long Is. Inc.,
    711 F.3d 106 (2d Cir. 2013) ............................................................................... 14

Makarova v. U.S.,
    201 F.3d 110 (2d Cir. 2000) ................................................................................ 6

McCarthy v. Dun & Bradstreet Corp.,
    482 F.3d 184 (2d Cir. 2007) ................................................................................ 5

McKenzie-Morris v. V.P. Records Retail Outlet, Inc.,
    1:22-CIV.-1138 (GHW), 2022 WL 18027555 (S.D.N.Y. Dec. 30, 2022) ..................... 19

McLaughlin v. Anderson,
    962 F.2d 187 (2d Cir. 1992) ......................................................................... 10, 13

Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp.,
    531 F. Supp. 3d 673 (S.D.N.Y. 2021) .................................................................... 9

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
    102 F.3d 660 (2d Cir. 1996) ......................................................................... 6 n. 6

One World, LLC v. Onoufriadis,
    No. 21-374-CV, 2021 WL 4452070 (2d Cir. Sept. 29, 2021) ................................ 10, 14

Palatkevich v. Choupak,
    2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) ............................................................ 9

Pasternack v. Shrader,
    863 F.3d 162 (2d Cir. 2017) ............................................................................... 17

iv

Primetime 24 Joint Venture v. DirecTV, Inc.,
   No. 99-CIV.-3307, 2000 WL 426396 (S.D.N.Y. April 20, 2000) .................................. 18

Related Companies, L.P. v. Ruthling,
   2019 WL 10947100 (S.D.N.Y. July 23, 2019) ................................................................ 11

Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,
   896 F.2d 674 (2d Cir. 1990) ............................................................................................. 4

Ricciuti v. N.Y.C. Transit Auth.,
   941 F.2d 119 (2d Cir. 1991) ........................................................................................... 18

S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.,
   84 F.3d 629 (2d Cir. 1996) ............................................................................................. 14

Salinas v. United States,
   522 U.S. 52 (1997) .................................................................................................... 7, 8, 9

Sedima, S.P.R.L. v. Imrex Co.,
   473 U.S. 479 (1985) ......................................................................................................... 7

Singh v. Parnes,
   199 F. Supp. 2d 152 (S.D.N.Y. 2002) ............................................................................ 12

Sokolski v. Trans Union Corp.,
   178 F.R.D. 393 (E.D.N.Y. 1998) .................................................................................... 17

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,
   375 F. Supp. 2d 141 (E.D.N.Y. 2005) .............................................................................. 9

Superb Motors Inc. v. Deo,
   No. 23-CIV.-6188 (JMW), 2023 WL 8358062 (E.D.N.Y. Dec. 1, 2023) .................. 6 n. 5

Tokio Marine & Fire Ins. Co. v. Emp'rs Ins. of Wausau,
   786 F.2d 101 (2d Cir. 1986) ........................................................................................... 17

United States v. Arrington,
   941 F.3d 24 (2d Cir. 2019) ............................................................................................... 9

United States v. Ciccone,
   312 F.3d 535 (2d Cir. 2002) ............................................................................................. 9

United States v. Pizzonia,
   577 F.3d 455 (2d Cir. 2009) ............................................................................................. 8

United States v. Turkette,
    452 U.S. 576 (1981) .................................................................................................. 11

United States v. Yannotti,
    541 F.3d 112 (2d Cir. 2008) ....................................................................................... 8

United States v. Zemlyansky,
    908 F.3d 1 (2d Cir. 2018) .............................................................................. 7, 8, 9, 11

United States v. Zichettello,
    208 F.3d 72 (2d Cir. 2000) ....................................................................................... 10

Vacold LLC v. Cerami,
    No. 00-CIV.-4024 (AGS), 2002 WL 193157 (S.D.N.Y. Feb. 6, 2002) ........................... 18

**Statutes**

18 U.S.C. § 1341 ................................................................................................................ 8

18 U.S.C. § 1343 ................................................................................................................ 8

18 U.S.C. § 1956 ................................................................................................................ 8

18 U.S.C. § 1957 ................................................................................................................ 8

18 U.S.C. § 1961 ................................................................................................................ 8

18 U.S.C. § 1962 ......................................................................................................... 7, 8, 9

28 U.S.C. § 1367 .............................................................................................................. 16

Fed. R. Civ. P. 12 ........................................................................................................ 4, 5, 7

Fed. R. Civ. P. 15 .......................................................................................................... 5, 19

## PRELIMINARY STATEMENT

Short on substance, Defendant Flushing Bank ("Flushing") seeks to dismiss the causes of action against them in Plaintiffs'[1] first amended complaint ("FAC") despite the well-pled allegations concerning its substantial role in assisting the Deo Defendants[2] to pilfer Superb Motors Inc. ("Superb") of monies belonging to it and allowing them to plunder Superb.

For the reasons set forth below, because Flushing knew or had reason to know that Defendant Anthony Deo ("Deo") was not be the sole shareholder of Superb, it was complicit in the RICO[3] scheme alleged in the FAC.

Notwithstanding, and in an abundance of caution, Plaintiffs respectfully cross-move for leave to amend the pleadings to add additional allegations – supported by evidence – that Flushing and its agents or employees actively conspired with Deo to improperly open a bank account for Superb when it already knew that Superb was not owned solely by Deo.  Flushing did so because its employees were "on the take" with Deo, who bribed employees in order to secure the bank account and thereby begin looting Superb of its funds and assets.

---

[1] Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia are collectively hereinafter referred to as the "Superb Plaintiffs," while Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian Chabrier, Joshua Aaronson, and Jory Baron are collectively hereinafter referred to as the "IAG Plaintiffs," with the Superb Plaintiffs and IAG Plaintiffs collectively hereinafter referred to as the "Plaintiffs."

[2] The Deo Defendants consist of Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

[3] RICO stands for the Racketeer Influenced and Corrupt Organizations Act.

1

Accordingly, Flushing's motion to dismiss must be denied in its entirety.

## FACTS

i.   Allegations in the FAC

On August 17, 2023, Plaintiffs – a consortium of two separate automobile dealership groups and their principals – filed suit against Defendants – including individuals who served as general managers of Plaintiffs' dealerships, together with those that supported the general managers – for violations of RICO, the Defend Trade Secrets Act ("DTSA"), and related common law claims under state law.  See ECF Docket Entry 1; see also ECF Docket Entry 65 (FAC).

Plaintiffs allege, *inter alia*, that Deo and his cohort engaged in a pattern of fraudulent conduct with the other Defendants, utilizing Flushing, by arranging to borrow funds from Flushing for Northshore Motor Leasing, LLC ("Northshore") based on the premise that Deo was the sole shareholder of Northshore.  See FAC ¶¶ 169-172.  Plaintiffs also allege that Deo falsely represented to Flushing that he was the sole shareholder of Superb in order to open a bank account for Superb, and that Flushing affirmatively took action to open the fraudulent account for Deo despite actual knowledge that Deo was not the sole shareholder of Superb and that Deo lacked authority to open a bank account for Superb, thereby assisting the Deo Defendants to succeed in their fraudulent schemes against Plaintiffs.  Id. at ¶¶ 209-214.

Defendants Michael Laurie ("Laurie") and DLA Capital Partners Inc. ("DLA Capital") enabled the Deo Defendants by substantially assisting them in getting the Flushing account opened for Superb because Laurie had a relationship with principals of Flushing.  Id. at ¶¶ 244, 321.  Flushing participated in the underlying scheme by assisting Deo to open a bank account for Superb when they knew Deo had no authority to do so.  Id. at ¶ 315.

2

Flushing knew because they were already in possession of documentation indicating that Deo was not the sole shareholder of Superb and had no authority to open a bank account for Superb.  Id.; see also Id. at ¶¶ 189-190.

ii.    Additional Allegations in Plaintiffs' Proposed Second Amended Complaint

Plaintiff Robert Anthony Urrutia ("Urrutia") began the process of opening an account with Flushing in March 2023, a month prior to the time that Deo opened an account for Superb with Flushing on April 4, 2023.  See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.") ¶ 3, Exhibit A at ¶¶ 209-212.  Flushing requested of Urrutia information, documents, and records – many of which he provided – including his tax returns and other documents which establish that he is the majority shareholder of Superb.  Id. at ¶ 213.  Urrutia spoke directly with David Weinstein ("Weinstein") – the Vice President and Branch Manager of Flushing's Borough Park branch – and Mr. Weinstein knew that he was the majority shareholder of Superb.  Id. at ¶ 214.

Around the same time, on March 31, 2023, Deo contacted Robert Puccio ("Puccio") – another Vice President at Flushing Bank's Park Avenue branch – to open an account for Superb. Id. at ¶ 215.  As a result, Weinstein and Puccio communicated directly with each other about the application and therefore knew that Superb was owned by two (2) individuals – Urrutia and Deo. Id. at ¶ 217.  Further, Deo informed the Chief Operating Officer of Superb that Puccio was his personal banker who can secure a $500,000.00 line of credit for Superb and that Puccio and the credit underwriter at Flushing were in his "pocket," meaning that Deo bribes them to do things for him that are not part of normal banking procedures and regulations.  Id. at ¶¶ 218-221.

Flushing Bank therefore knowingly participated in the Deo Defendants' fraudulent schemes by assisting Deo to open an account for Superb despite its awareness that Deo was never the sole shareholder of Superb and had no authority to open an account for Superb.  Id. at ¶ 222.

For the reasons set forth below, Flushing Bank's motion to dismiss must be denied and, to the extent necessary, Plaintiffs' cross-motion for leave to amend the pleadings should be granted.

## STANDARD OF REVIEW

### A.    Rule 12(b)(1)

When deciding a motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor," except for "argumentative inferences favorable to the party asserting jurisdiction." See Buday v. N.Y. Yankees P'ship, 486 Fed. Appx. 894, 895 (2d Cir. 2012) (summary order). To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court must resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings. See Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671 F.3d 140, 145 (2d Cir. 2011).  In addition, when a defendant moves to dismiss for lack of subject matter jurisdiction and on other grounds, a court should consider the Rule 12(b)(1) challenge first.  See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

### B.    Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

*First*, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; see also Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).

4

*Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." See Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." See Iqbal, 556 U.S. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 554, 557 (2007).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal, 556 U.S. at 678.

"The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer *possibility* that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556) (emphasis added).

### C.  Rule 15

Rule 15 instructs courts to "freely give leave" to amend pleadings "when justice so requires." See Fed. R. Civ. P. 15(a)(2).[4]

While leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party" (McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted), it is "[t]he party opposing the amendment [that] has the burden of demonstrating any bad faith, prejudice of the proposed amendment, or futility of the proposed amendment." See Ap-Fonden v. Goldman Sachs Grp., Inc., No. 18-CIV.-12084, 2023 WL 4865617, at *4 (S.D.N.Y. July 31, 2023).

---

[4] The current scheduling Order provides that motions to amend the pleadings may be made on or before January 5, 2024.  See ECF Docket Entry 69. As such, there is no scheduling order which has restricted a party's ability to file an amended complaint.

Here, due to the nascent[5] stage of this case, Flushing cannot demonstrate any bad faith or prejudice, nor can it demonstrate futility given the well-pled allegations in the FAC as further set forth below.

### D.   Documents Other Than the Complaint May be Considered

While a district court deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim ordinarily "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference,"[6] "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." See Makarova v. U.S., 201 F.3d 110, 113 (2d Cir. 2000).

Additionally, under either standard the court may take judicial notice of documents in the public record, including state court filings. See Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004).

As such, this Court should take judicial notice of the record in this case, including the declarations of Urrutia with accompanying exhibits,[7] as well as the declarations of any other party or non-party and any accompanying exhibits to those declarations.

In light of the foregoing standard of review, this Court should deny Flushing's motion.

---

[5] See Superb Motors Inc. v. Deo, No. 23-CIV.-6188 (JMW), 2023 WL 8358062, at *1 (E.D.N.Y. Dec. 1, 2023) (referring to this case as being only in its nascent stage).

[6] See Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996).

[7] Most notably, this Court should consider the Flushing application and statements for the account Deo improperly opened – and which Flushing inappropriately permitted him to open – in deciding the instant motion to dismiss.  See ECF Docket Entry 11-9 (containing falsified April 4, 2023 application post-dating March 31, 2023 communications concerning ownership of Superb, Puccio's approval of application despite knowledge Deo was not sole owner of Superb, Superb's corporate records, and statements showing deposits of Superb's funds with transfers to Deo's various accounts, month after month).

**ARGUMENT**

**FLUSHING'S MOTION TO DISMISS MUST BE DENIED**

## I.    Legal Standard for RICO Claims

18 U.S.C. § 1962(d) provides that, "[i]It shall be unlawful for any person to conspire to violate any of the provisions of subsection ... (c) of [18 U.S.C. § 1962]." 18 U.S.C. § 1962(d). Subsection (c) provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

See 18 U.S.C. § 1962(c). "The elements [of] a subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." See Salinas v. United States, 522 U.S. 52, 62 (1997) (citing Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985)). "'Pattern of racketeering activity' is a defined term and requires at least two acts of 'racketeering activity,' the so-called predicate acts." Id. (quoting 18 U.S.C. § 1961(5)).

Predicate acts include, among other things, mail and wire fraud, money laundering, obstruction of justice, bankruptcy fraud, and National Stolen Property Act violations. See 18 U.S.C. §§ 1341, 1343 (mail and wire fraud); see also 18 U.S.C. §§ 1956, 1957 (money laundering).

Separate from the elements of a substantive RICO violation, RICO conspiracy under 18 U.S.C. § 1962(d) requires proof "(a) of an agreement to join a racketeering scheme, (b) of the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated, and (c) that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." See United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018).

"To prove the agreement element, the [plaintiff] must show that the defendant 'knew about and agreed to facilitate [a racketeering] scheme.'" Id. (quoting Salinas, 522 U.S. at 66); see also United States v. Pizzonia, 577 F.3d 455, 459 (2d Cir. 2009) ("[T]he object of a racketeering conspiracy is to conduct the affairs of a charged enterprise through a pattern of racketeering, not to commit discrete predicate acts").  As to the intent element, "RICO conspiracy does not require proof that the defendant intended that specific criminal acts be accomplished. See In re Firestar Diamond, Inc., No. 18-10509 (SHL), 2023 WL 6786093, at *8 (Bankr. S.D.N.Y. Oct. 13, 2023). Instead, it suffices to show that he intended that the broad goals of the racketeering scheme be realized, along with evidence that some (or any) members of the conspiracy intended that specific criminal acts be accomplished." See Zemlyansky, 908 F.3d at 11.

Crucially, to prove the pattern element—that two or more predicate acts were involved—it "need not [be] establish[ed] that the defendant 'committed or agreed to commit two predicate acts himself.'" Id. (quoting Salinas, 522 U.S. at 63). Rather, the pattern element may be established "through evidence that 'the co-conspirators, not solely the defendant, agreed to conduct the affairs of the enterprise through a pattern of racketeering.'" Id. (quoting United States v. Yannotti, 541 F.3d 112, 129 n.11 (2d Cir. 2008)).  Indeed, "a conspirator charged with racketeering conspiracy need not commit or even agree to commit the predicate acts that are elements of a substantive count[,] ... for 'it suffices that he adopt[ed] the goal of furthering or facilitating the criminal endeavor.'" Id. at 10 (quoting United States v. Ciccone, 312 F.3d 535, 542 (2d Cir. 2002)); Salinas, 522 U.S. at 65 ("It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense").

A "[p]laintiff need not prove that the defendant committed any predicate act." See Monterey Bay Mil. Hous., LLC v. Ambac Assurance Corp., 531 F. Supp. 3d 673, 727 (S.D.N.Y. 2021) (citing United States v. Arrington, 941 F.3d 24, 36 (2d Cir. 2019)).

Of import, courts have recognized that not only are "Section 1962(d) conspiracies ... easier to prove than violations of [Section] 1962(c)," Palatkevich v. Choupak, 2014 WL 1509236, at *22 (S.D.N.Y. Jan. 24, 2014), but RICO conspiracies are also easier to demonstrate than "basic" conspiracies, as RICO conspiracies "do[ ] not require proof that a defendant knowingly agreed to facilitate a specific crime …" and "ha[ve] a more removed *mens rea* requirement" than "basic" conspiracies. See Zemlyansky, 908 F.3d at 11, n.7; see also Salinas, 522 U.S. at 63 ("There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy'") (internal citation omitted); Arrington, 941 F.3d at 36–37 ("To prove a RICO conspiracy ... [the plaintiff] need only prove that the defendant knew of, and agreed to, the general criminal objective of a jointly undertaken scheme.") (internal citations omitted); Zemlyansky, 908 F.3d at 11 ("[U]nlike 'basic' conspiracy, RICO conspiracy does not require proof that the defendant intended that specific criminal acts be accomplished"). Moreover, courts analyze complaints alleging RICO conspiracies under the more liberal pleading requirements of Rule 8(a). See Bd. of Managers of Trump Tower at City Ctr. Condo. v. Palazzolo, 346 F. Supp. 3d 432, 463 (S.D.N.Y. 2018) (citing Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 26, n.4 (2d Cir. 1990)). Rule 8(a) applies because "it is the sufficiency of the conspiracy allegation rather than the underlying fraud allegation which is being challenged." See State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 375 F. Supp. 2d 141, 153 (E.D.N.Y. 2005) (quoting Hecht, 897 F.2d at 26 n.4).

"The Second Circuit has held that for a RICO conspiracy claim, the Court must limit its focus to 'whether an alleged conspirator knew what the other conspirators were up to or whether the situation would logically lead an alleged conspirator to suspect he was part of a larger enterprise.'" Id. (quoting United States v. Zichettello, 208 F.3d 72, 99 (2d Cir. 2000)).

In order to plead a conspiracy claim under RICO, a plaintiff must allege that the defendant participated in "an agreement to violate RICO's substantive provisions." See One World, LLC v. Onoufriadis, 2021 WL 4452070, at *1 (2d Cir. 2021) (summary order) (internal quotation marks omitted). Indeed, the purpose of RICO is, in part, to "protect[ ] the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which unlawful activity is committed." See Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 163-65 (2001) (citation omitted). Crucially, "one is liable under RICO if he or she has discretionary authority in carrying out the instructions of the [enterprise's] principals, or played some part in directing the affairs of the RICO enterprise." See Baisch v. Gallina, 346 F.3d 366, 376 (2d Cir. 2003) (cleaned up).

Generally, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004) (citation omitted).

Further, the Second Circuit has held that the "bare minimum of a RICO charge is that a defendant personally committed or aided and abetted the commission of two predicate acts." See McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992) (emphasis added). And more recently, the Circuit stated in *dicta* that "it is no great leap to find that one who assists in [a] fraud also conducts or participates in the conduct of the affairs of the enterprise," See Satinwood, 385 F.3d at 178.

Rather than requiring that a defendant commit or agree to commit two specific predicate acts, a RICO conspiracy can be established instead by providing assistance to the conspiracy:

> for example [it may] be proven by evidence that the defendant agreed to facilitate a scheme by providing tools, equipment, cover, or space; that the facilitation was knowing because the defendant was aware of the broader scheme, even if he was unaware of the particulars, or because the defendant knowingly benefitted from the scheme; and that other members of the enterprise intended to accomplish specific predicates.

See Zemlyansky, 908 F.3d at 11 n.6.

Of specific relevance to this case, "evidence of a defendant's receipt of diverted or stolen funds, and/or facilitation of another's receipt of such funds, may support an inference that the defendant knowingly participated in a claimed RICO conspiracy." See Related Companies, L.P. v. Ruthling, 2019 WL 10947100, at *7 (S.D.N.Y. July 23, 2019) (citing Palazzolo, 346 F. Supp. 3d at 464).

With this statutory framework in mind, there can be no question Plaintiffs state a claim against Flushing Bank for RICO's substantive and conspiracy provisions based on the allegations in the complaint and the record in this case that this Court may take judicial notice of.

## II.     Plaintiffs state a claim for relief against Flushing under RICO's substantive provision

Flushing argues that Plaintiffs failed to plausibly allege that it was part of an association-in-fact enterprise.  Based on the allegations in the complaint and the Flushing Bank documentation contained in the record thus far, this argument falls flat.

An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." See Boyle v. United States, 556 U.S. 938, 945 (2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

At a minimum, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." See Boyle, 556 U.S. at 956 (internal quotations omitted).  The Second Circuit looks to the "'hierarchy, organization, and activities' of the association to determine 'whether its members functioned as a unit.'" See Foster v. 2001 Real Estate, 2015 WL 7587360, *4 (S.D.N.Y. Nov. 24, 2015) (quoting Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 133 34 (E.D.N.Y. 2010)).

The Supreme Court's holding in Boyle establishes that a RICO enterprise need not have a formal hierarchy. See Greenberg v. Blake, 2010 WL 2400064, *7 (E.D.N.Y. June 10, 2010). The allegations in the complaint must "address[] the relationships among defendants in a manner that distinguishes between the "enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." Singh v. Parnes, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002).

Here, the allegations adequately plead an association-in-fact enterprise.  The FAC alleges the Deo Defendants needed Flushing's assistance in order to carry out their fraudulent schemes against Superb and Urrutia, and through Laurie, Deo was able to form a relationship with Flushing which he used to further the fraudulent schemes.  Indeed, Deo had a Vice President of Flushing – a top-ranking official at the bank – a credit underwriter in his "pocket," who would carry out Deo's requests, and proved this by having Puccio open an account for Superb notwithstanding his direct knowledge from Weinstein – another Vice President at Flushing – that Superb was not owned 100% by Deo and that Deo had no authority to open a bank account for Superb.  These fully-dressed allegations stand in stark contrast to the naked allegations in Zamora.  As a result, Flushing directly assisted in (and aided and abetted) the Deo Defendants in carrying out their schemes, which courts have repeatedly held is sufficient to state a RICO claim under such circumstances.

This is because it is possible to "operate or manage an enterprise and yet, through delegation, avoid directly committing predicate acts." See 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1528 n.17 (S.D.N.Y. 1995). Prohibiting RICO liability for aiding and abetting predicate acts would therefore unduly narrow the reach of the statute. See Alix v. McKinsey & Co., Inc., No. 18-CIV.-4141 (JMF), 2023 WL 5344892, at *12 (S.D.N.Y. Aug. 18, 2023). Thus, a RICO claim may lie against a defendant who "personally committed *or aided and abetted* the commission of two predicate acts." See McLaughlin, 962 F.2d at 192 (emphasis added).

Accordingly, Plaintiffs sufficiently plead an association-in-fact enterprise.

Flushing relies on In re Agape Litig. for the proposition that RICO claims must be dismissed against a bank because the allegations that the bank had knowledge and failed to stop the scheme was insufficient in the absence of allegations that the bank directed or operated the scheme or conspired to do so. See 681 F. Supp. 2d 352 (E.D.N.Y. 2010). However, this case is inapposite, as the allegations and the record here demonstrate that principals of Flushing directly conspired with Deo to provide him a bank account for Superb despite its knowledge he was not the 100% shareholder of Superb and did not have authority to open an account on behalf of Superb because they were in Deo's "pocket." Flushing's argument that no additional support is provided for Plaintiffs' allegations is belied by the record.

Flushing also argues that Plaintiffs' FAC lacks specificity as to any wrongdoing by it. But this is simply untrue, as the record demonstrates that Flushing engaged in, and otherwise aided and abetted, wire fraud by providing the Deo Defendants the runway to take off with Superb's funds, and that Flushing did so because Deo bribed its principals to do so. The complaint allegations, the declarations filed in this case, and the exhibits containing the bank statements and application from Flushing, together, establish the particulars of the wire fraud that the Defendants engaged in.

13

In order to plead wire fraud, a plaintiff "must show (1) the existence of a scheme to defraud, (2) [the defendants'] knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." See S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996); see also Lundy v. Cath. Health Sys. of Long Is. Inc., 711 F.3d 106, 119 (2d Cir. 2013).

All three (3) elements are sufficiently alleged here. The complaint sets forth the allegations of how the Deo Defendants orchestrated their scheme by utilizing Flushing's principals who were in Deo's "pocket" to establish a bank account in which they could improperly deposit Superb's monies to then transfer those funds out to themselves, thus defrauding the Superb Plaintiffs. Flushing knew and intentionally assisted in the scheme by opening the bank account for Superb despite their knowledge that Deo was not its 100% owner and was not authorized to open a bank account for Superb, establishing knowledge. And Flushing, together with the Deo Defendants, used interstate transmission facilities in furtherance of the scheme by processing the wires as evidenced in the bank statements, establishing that money is coming in and leaving from the bank account in a manner that is not consistent with operating a business that is a going concern. This fact pattern gives rise to a strong inference of fraudulent intent given Flushing's knowledge that Urrutia owned Superb.

Accordingly, Plaintiffs state a claim under RICO's substantive provision.

## III.   Plaintiffs state a claim for relief against Flushing under RICO's conspiracy provision

To establish a RICO conspiracy claim, a plaintiff must allege that the defendant participated in "an agreement to violate RICO's substantive provisions." See One World, LLC v. Onoufriadis, No. 21-374-CV, 2021 WL 4452070, at *1 (2d Cir. Sept. 29, 2021) (summary order) (internal quotation marks omitted).

14

Critically, an agreement may be shown "by circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing." See City of New York v. Chavez, No. 11-CIV.-2691 (BSJ), 2012 WL 1022283, at *7 (S.D.N.Y. Mar. 26, 2012) (internal quotation marks omitted).

Here, and as set forth *supra*, because Flushing knew that Deo was not the 100% owner of Superb and had no authority to open a bank account for Superb, and nonetheless assisted Deo in opening an account for Superb, coupled with the fact that Puccio and a credit underwriter at Flushing were in Deo's "pocket," it is readily inferred that, together with the remaining Defendants, they committed the predicate acts of wire fraud in furtherance of the racketeering scheme.

Indeed, "'the inference of an agreement'" on those Defendants' part "to join the conspiracy 'is unmistakable.'" See Angermeir v. Cohen, 14 F. Supp. 3d 134, 154-155 (S.D.N.Y. 2014) (citing cases); see also City of New York v. Hatu, No. 18-CIV.-848 (PAE), 2019 WL 2325902, at *14 (S.D.N.Y. May 31, 2019).

Accordingly, and because the allegations in the complaint sufficiently show that the Deo Defendants could not carry out their scheme without Flushing's assistance, Plaintiffs adequately state a claim against Flushing under RICO's conspiracy provision.

## IV.    This court should exercise its discretion in favor of exercising supplemental jurisdiction

For the reasons set forth above, Plaintiffs' federal claims are sufficiently plead so this Court need not reach a determination on whether it should exercise supplemental jurisdiction over Plaintiffs' state law claims against Flushing in the absence of federal claims.

Even assuming *arguendo* that the Court dismisses the RICO claims against Flushing Bank, it should exercise supplemental jurisdiction over the state law claims against Flushing Bank.

If a court "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c), "the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction." See Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 85 (2d Cir. 2018).

"[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity." Id. (internal quotation marks omitted). Courts continue to exercise supplemental jurisdiction over claims where the legal issues are relatively straightforward, and efficiency favors retaining jurisdiction. See Harris v. Leon, No. 20-CIV.-10864 (LGS), 2023 WL 2051171, at *8 (S.D.N.Y. Feb. 16, 2023).

This argument is supported by the fact that all federal claims were dismissed as to all defendants in the authorities cited by Flushing.

Here, because there are multiple Defendants and there exists a risk of inconsistent decisions should Plaintiffs' claims against some Defendants remain in federal court while others are litigated in state court, this Court should decide in favor of exercising supplemental jurisdiction over the state law claims against Flushing.  See Benzinger v. NYSARC, Inc. New York City Chapter, 385 F. Supp. 3d 224, 237 (S.D.N.Y. 2019) ("in this case, two defendants remain even if the Court dismisses the claims against UPS. Rather than force the refiling of the case against UPS in a separate court, with the attendant risks of inconsistent judgments among the defendants, the Court retains jurisdiction over the state law claims in the interests of judicial economy and convenience, and now proceeds to consider those claims on the merits").

As such, this Court should maintain supplemental jurisdiction over Plaintiffs' claims against Flushing.

## V.    Plaintiffs' cross-motion for leave to amend must be granted

Although they submit that the pleadings are sufficient to state RICO claims against Flushing, in an abundance of caution, Plaintiffs cross-move for leave to amend the pleadings.

Plaintiffs' proposed amended pleading – the Second Amended Complaint – is annexed to the Declaration of Emanuel Kataev, Esq. in Support of Plaintiffs' Cross-Motion for Leave to Amend.

As noted *supra*, the current scheduling Order provides that motions to amend the pleadings may be made on or before January 5, 2024.  See ECF Docket Entry 69.  In the absence of "undue delay, bad faith, or undue prejudice to the opposing party," leave to amend should be permitted. See Tokio Marine & Fire Ins. Co. v. Emp'rs Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1986) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." See Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc., 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citation omitted).

Further, amendments are generally favored because they "tend to facilitate a proper decision on the merits." See Sokolski v. Trans Union Corp., 178 F.R.D. 393, 396 (E.D.N.Y. 1998) (internal quotation marks omitted).

For this reason, "the rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." See Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017).  The Supreme Court of the United States has held that, if a court chooses to deny leave to amend, it must give some "justifying reason" for doing so. See Foman, 371 U.S. at 182.

Here, there is no undue delay or bad faith in amending the FAC, given that this case is in its nascent stage and the operative pleading is sufficiently detailed given the complex nature of the claims against multiple defendants.

As an initial matter, the Second Circuit has held that mere delay alone does not permit a district court to deny amendment, nor does it give rise to a finding of bad faith. See Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993); see also Primetime 24 Joint Venture v. DirecTV, Inc., No. 99-CIV.-3307, 2000 WL 426396, at *5 (S.D.N.Y. April 20, 2000) ("[W]hen the opponent of an amendment asserts that the movant is acting in bad faith, *there must be something more than mere delay or inadvertence for the court to refuse to allow the amendment*") (emphasis added).

Similarly, for the reasons argued *supra*, Plaintiffs' RICO claims against Flushing are not futile.  See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (holding that courts should not dismiss complaints for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met") (quotation omitted).

Accordingly, Plaintiffs' cross-motion for leave to amend the pleadings should be granted in order to permit a merits-based determination of their claims against Flushing for facilitating the Deo Defendants' fraudulent schemes.

## VI.    Leave to replead must be granted in the event of dismissal

In the event that dismissal is granted (which it should not be), Plaintiffs respectfully seek leave to amend, which shall be freely given when justice so requires.  See Fed. R. Civ. P. 15(a).

Indeed, "'[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.'" See Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013); see also Vacold LLC v.

Cerami, No. 00-CIV.-4024 (AGS), 2002 WL 193157, at *6 (S.D.N.Y. Feb. 6, 2002) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)); Elliot-Leach v. New York City Dep't of Educ., 201 F. Supp. 3d 238, 243 (E.D.N.Y. 2016), aff'd, 710 Fed. Appx. 449 (2d Cir. 2017). Moreover, "[w]ithout the benefit of a ruling [from the Court], many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." See McKenzie-Morris v. V.P. Records Retail Outlet, Inc., No. 1:22-CIV.-1138 (GHW), 2022 WL 18027555, at *12 (S.D.N.Y. Dec. 30, 2022) (citing Loreley Fin. (Jersey) No. 3 Ltd., 797 F.3d at 190.

Accordingly, leave to replead should be granted to the extent Flushing succeeds on its motion to dismiss.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Flushing's motion to dismiss and grant Plaintiffs' cross-motion for leave to amend the pleadings, together with such other and further relief as this honorable Court deems just, equitable, and proper.

Dated: Lake Success, New York
        December 11, 2023                        Respectfully submitted,

                                                 **MILMAN LABUDA LAW GROUP PLLC**
                                                 By:  */s   Emanuel Kataev, Esq.* _____
                                                 Jamie S. Felsen, Esq.
                                                 Emanuel Kataev, Esq.
                                                 3000 Marcus Avenue, Suite 3W8
                                                 Lake Success, NY 11042-1073
                                                 (516) 328-8899 (office)
                                                 (516) 328-0082 (facsimile)
                                                 jamiefelsen@mllaborlaw.com
                                                 emanuel@mllaborlaw.com

                                                 *Attorneys for Plaintiffs*
                                                 *Superb Motors Inc.,*
                                                 *Team Auto Sales LLC, and*
                                                 *Robert Anthony Urrutia*

Dated:  New York, New York
       December 11, 2023

**CYRULI SHANKS & ZIZMOR LLP**

_____/s_____
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*