Brian M. Levine, Esq.
**LEVINE SINGH, LLP**
260 N. Broadway, Suite 2A
Hicksville, NY 11801
Tel: 347-732-4428
Fax: 917-477-2273
levine@levinesingh.com
*Attorneys for Deo Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------------

SUPERB MOTOR, INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HIGHWAY AUTO, LLC., NORTHSHORE MOTOR LEASING, LLC., BRIAN CHABRIER, individually and derivatively as member of NORTHSHORE MOTOR LEASING, LLC., JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC., JORY BARON, 1581 HYLAN BLVD AUTO, LLC., 1580 HYLAN BLVD AUTO, LLC., 1591 HYLAND BLVD AUTO, LLC., 1632 HYLAN BLVD AUTO, LLC., 1239 HYLAN BLVD AUTO, LLC., 2519 HYLAND BLVD AUTO, LLC., 76 FISK STREET REALTY, LLC., 446 ROUTE 23 AUTO, LLC., and ISLAND AUTO MANAGEMENT, LLC.,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

--------------------------------------------------------------------------------------

**Case No.:**
2:23-cv-6188 (JMW)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS AND IN OPPOSITION TO PLAINITFFS' CROSS-MOTION TO AMEND**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT ............................................................................................................... 2

I.   THE DEFENDANTS' MOTION TO DISMISS THE RICO AND DTSA CLAIMS IN
THE FIRST AMENDED COMPLAINT SHOULD BE GRANTED, AND PLAINTIFFS'
CROSS MOTION FOR LEAVE TO FILE THE THIRD AMENDED COMPLAINT
SHOULD BE DENIED BECAUSE OF THE FUTILITY OF THE PROPOSED RICO AND
DTSA CLAIMS ..................................................................................................................... 2

    A.   Standard of Law .................................................................................................... 2

    B.   Plaintiffs' TAC Fails to Adequately Plead Any Viable RICO Claims that are Capable
of Withstanding a Motion to Dismiss For Futility ................................................. 3

    C.   Plaintiffs' FAC and TAC Fail to Adequately Plead a DTSA Claim .......................... 12

CONCLUSION ........................................................................................................................ 18

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Allen ex rel. Allen v. Devine*,
726 F. Supp. 2d 240 (E.D.N.Y. 2010) ........................................................ 4

*Bank of New York v. Sasson,*
786 F.Supp. 349 (S.D.N.Y. 1992) .............................................................. 3

*Carl v. Hamann*,
2020 US Dist LEXIS 78138 (E.D.N.Y. Apr. 29, 2020) ............................. 8

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
187 F3d 229 (2d Cir. 1999) ............................................................ 9, 10, 11

*Cont. Petroleum Corp. v. Corp. Funding Partners, LLC*,
2012 US Dist LEXIS 51841 (S.D.N.Y. Apr. 11, 2012) ........................ 4, 9

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
2014 U.S. Dist. LEXIS 32819 (S.D.N.Y. Mar. 11, 2014) .......................... 5

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) ....................................................................... 8

*Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*,
282 F.3d 83 (2d Cir. 2002) ......................................................................... 2

*Edwards v. City of NY*,
2009 US Dist LEXIS 54804 (E.D.N.Y June 29, 2009) .............................. 3

*Edwards v. Sequoia Fund, Inc.*,
938 F.3d 8 (2d Cir. 2019) ........................................................................... 3

*First Interregional Advisors Corp. v. Wolff*,
956 F Supp 480 (S.D.N.Y. February 24, 1997). ........................................ 8

*Grimes v. Fremont General Corp.*,
785 F. Supp. 2d 269 (S.D.N.Y. 2011) ........................................................ 4

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) ........................................................ 4

*H. J. Inc. v. Northwestern Bell Tel. Co.*,
109 S. Ct. 2893 (1989) ........................................................................................... 9, 10

*Holmes v. SEC Investor Prot. Corp.*,
503 U.S. 258 (1992) ................................................................................................. 11

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ......................................................................................... 3

*Milanese v. Rust-Oleum Corp.*,
244 F.3d 104 (2d Cir. 2001) ....................................................................................... 2

*Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*,
165 F.Supp 2d 514 (S.D.N.Y. 2001) .......................................................................... 7

*One World, LLC v. Onoufriadis*,
2021 U.S. App. LEXIS 29370 (2d Cir Sep. 29, 2021) .............................................. 11

*Plaza Motors of Brooklyn, Inc. v. Bogdasarov*,
2021 U.S. Dist. LEXIS 230156 (E.D.N.Y. 2021), ............................................... 16, 17

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ................................................................................................... 7

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
30 F.3d 339 (2d Cir. 1994) ......................................................................................... 7

*Rodney v. United Masters*,
2023 U.S. Dist. LEXIS 33499 (E.D.N.Y. Feb. 10, 2023) .......................................... 13

*Schlaifer Nance & Co. v. Estate of Warhol*,
119 F.3d 91 (2d Cir. 1997) ......................................................................................... 4

*Spool v. World Child Intl. Adoption Agency*,
520 F.3d 178 (2d Cir. 2008) ..................................................................................... 11

*Turret Labs USA, Inc. v. CargoSprint, LLC*,
2022 U.S. App. LEXIS 6070 (2d Cir. Mar. 9, 2022) ........................................... 14, 15

*U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*,
303 F. Supp. 2d 432 (S.D.N.Y. 2004) ........................................................................ 4

*Wood v. GMC*,
2015 US Dist LEXIS 37782 (E.D.N.Y. Mar. 25, 2015) .......................................................... 4, 12

**Statutes**

18 U.S.C. § 1962 ...................................................................................................... 7, 11, 12
18 U.S.C. § 1964 ................................................................................................................. 11
Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1
Fed. R. Civ. P. 23.1 .............................................................................................................. 1
Fed. R. Civ. P. 9(b) .............................................................................................................. 1

Defendants Anthony Deo ("Deo"), Sarah Deo, Harry Thomasson ("Thomasson"), Dwight Blankenship, Marc Merckling, and Michael Laurie (collectively, the "Individual Defendants"), Car Buyers NYC, Inc., Gold Coast Cars of Syosset, LLC., Gold Coast Cars of Sunrise, LLC., Gold Coast Motors Automotive Group, LLC., Gold Coast Motors of LIC, LLC., Gold Coast Motors of Roslyn, LLC., Gold Coast Motors of Smithtown, LLC., and UEA Premier Motors Corp (collectively with the Individual Defendants, as the "Deo Defendants" or "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Plaintiff's Amended Complaint (the "FAC") pursuant to, *inter alia*, Federal Rules of Civil Procedure 12(b)(6), Rule 9(b), and Rule 23.1, and in opposition to Plaintiffs' Cross Motion for Leave to File a Third Amended Complaint (the "TAC").

## PRELIMINARY STATEMENT

In opposition to Defendants' motion, Plaintiffs essentially reiterate the same baseless and conclusory allegations propounded in the Plaintiffs FAC, and fail to show how the pleading's deficiencies that were pointed out by Defendants were not fatal to Plaintiffs' claims, warranting dismissal.

Notwithstanding, Plaintiffs seemingly acknowledge the existence of those exact defects in the FAC, and attempt to resolve them by cross-moving for leave to file the TAC; however, despite Plaintiffs' arguments to the contrary, the TAC fails to resolve the infirmities found in the FAC as they relate to the claims that would confer jurisdiction on this Court. Furthermore, the state law claims proposed are just as inadequately pled in the TAC as they were when pled in the FAC. Remarkably, by way of their cross motion, Plaintiffs are asking for this Court to grant them permission for Plaintiffs' counsel to represent a party in the same action that they are simultaneously filing claims against. This might actually be the first time in history where an

1

attorney has legitimately sought to concurrently represent a client and simultaneously sue that client in the same action.

Nevertheless, as set forth hereinbelow, because the Plaintiffs fail to raise any basis in opposition to Defendants' Motion to Dismiss that would justify denying the dismissal of the claims in the FAC arising under federal questions, and because the allegations in the Plaintiffs' TAC – particularly those arising under federal questions – would not withstand a motion to dismiss on the grounds of futility, there remains no basis for the Court to retain jurisdiction of this matter. Moreover, there are absolutely no compelling reasons for the Court to exercise supplemental jurisdiction over the state law claims, particularly when the case is at such an early stage. To the extent that that Plaintiffs' TAC asserts state law claims, those claims are just as inadequately alleged as they were when Plaintiff asserted them in the FAC, and Defendants' refer to the arguments in Defendants' Memorandum of Law in Support, as if same were applied to the state law claims in the TAC.

## <u>LEGAL ARGUMENT</u>

I.   **THE DEFENDANTS' MOTION TO DISMISS THE RICO AND DTSA CLAIMS IN THE FIRST AMENDED COMPLAINT SHOULD BE GRANTED, AND PLAINTIFFS' CROSS MOTION FOR LEAVE TO FILE THE THIRD AMENDED COMPLAINT SHOULD BE DENIED BECAUSE OF THE FUTILITY OF THE PROPOSED RICO AND DTSA CLAIMS**

### A.  Standard of Law

While courts should freely give leave to amend when justice so requires, leave may be denied where there is "evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). "A Proposed amendment is futile when it fails to state a claim upon which relief may be granted." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). "Thus, the

futility inquiry is comparable to the analysis governing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Edwards v. City of NY*, 2009 US Dist LEXIS 54804, at 5 (E.D.N.Y June 29, 2009). If a proposed claim would be subject to dismissal pursuant to Rule 12(b)(6), the court should "refuse to grant leave to amend rather than assent and then await a motion to dismiss." *Bank of New York v. Sasson,* 786 F.Supp. 349, 352 (S.D.N.Y. 1992).

Thus, even when considering a motion amend, while the Court must "accept as true all of the factual allegations," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotations and citations omitted) *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir 2019) *see also, In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) ("The Court need not accept as true, "legal conclusions, deductions, or opinions couched as factual allegations.")

### B. Plaintiffs' TAC Fails to Adequately Plead Any Viable RICO Claims that are Capable of Withstanding a Motion to Dismiss For Futility

As already set forth in Defendants' Memorandum of Law in Support of their Motion to Dismiss, the legal framework for a civil RICO claim, as articulated in *Wood v. GMC*, necessitates that:

> a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of Section 1962. A RICO plaintiff thus has two pleading burdens. First, a plaintiff must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962, commonly known as 'criminal RICO.' To satisfy this burden, the plaintiff must allege the following seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce. A plaintiff must adequately allege these seven elements before turning to the second burden-i.e., invoking RICO's civil remedies. To satisfy the second burden, a plaintiff must

3

allege that he was injured in his business or property by reason of a violation of section 1962. Section 1962(d) makes it unlawful for any person to conspire to violate the substantive provisions of RICO. (internal citations and quotations omitted).

*Wood v. GMC*, 2015 US Dist LEXIS 37782, at 10 (E.D.N.Y. Mar. 25, 2015).

The Plaintiffs' TAC, asserts once again, that the predicate acts underlying the RICO claims are wire and mail fraud, all of which arise from baseless and conclusory claims of fraudulent misrepresentations.

Where, as here, the predicate acts for a RICO claim is based on fraud, those acts must be pled in conformity with Rule 9(b)'s heightened pleading standard. *Cont. Petroleum Corp. v Corp. Funding Partners, LLC*, 2012 US Dist LEXIS 51841, at 12 (S.D.N.Y. Apr. 11, 2012). RICO claims based on fraud merits close scrutiny because "virtually every ordinary fraud is carried out in some form by means of mail or wire communication," and as such, there is "the potential for transforming garden-variety common law actions into federal cases." *Gross v. Waywell*, 628 F. Supp. 2d 475, 493 (S.D.N.Y. 2009); *see also id.* at 493 ("the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it") (citation omitted); *Grimes v. Fremont General Corp.*, 785 F. Supp. 2d 269, 299 (S.D.N.Y. 2011) ("a court must be mindful of the devastating effect such claims may have on defendants," and "should look with particular scrutiny at [these] claims to ensure that the RICO statute is used for the purposes intended by Congress") (internal quotation marks omitted); *Allen ex rel. Allen v. Devine*, 726 F. Supp. 2d 240, 248 (E.D.N.Y. 2010) (citation omitted) ("statute was intended to bring only the most serious, broad-based frauds into the federal courts"). *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (courts must "take care to ensure that the plaintiff is not artificially fragmenting a singular act into multiple acts simply to invoke RICO."); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 443 (S.D.N.Y. 2004) ("courts must always be on the

lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb").

Finally, when claims are alleged against multiple defendants, plaintiffs must plead circumstances and ample facts to support the charges against each defendant; guilt by association is impermissible. *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 2014 U.S. Dist. LEXIS 32819 (S.D.N.Y. Mar. 11, 2014)*, quoting *S.E.C. v. Lee,* 720 F.Supp.2d 305, 321 (S.D.N.Y. 2010).

### 1. *Plaintiffs fail to Plead Predicate Acts*

With respect to the IAG Plaintiffs, Plaintiffs' claim that Anthony Deo made misrepresentations to Ally Bank in order to induce Ally Bank to finance vehicle purchases. In Defendants' motion to dismiss the FAC, Defendants pointed out that Plaintiffs' allegations would not constitute fraud, because even if true, the purported misrepresentations were directed at Ally Bank, and not the IAG Plaintiffs. In an attempt to cure this defect, Plaintiffs' TAC asserts a series of self-serving, legal conclusions as to the alleged existence of an assumed duty, and a legal relationship to the IAG Plaintiffs. However, none of these claims are substantiated by any alleged contractual agreements or other factual allegations, which are essential to the success of the IAG Plaintiffs' fraud claims. These claims, being mere legal conclusions, deductions, and opinions couched as factual allegations, should not be accepted as true in considering futility.

Moreover, every one of the examples of alleged fraud cited by the Plaintiffs are similarly insufficiently plead, and based on unsupported legal conclusions, opinion, and deductions couched as factual claims. For instance, Plaintiffs cite to three examples of times when they claim Anthony Deo manipulated used vehicle prices, by purportedly misrepresenting the condition of the used vehicles to Ally Bank in order to induce Ally Bank to fund the purchase of the vehicles. (TAC, ¶¶ 146, 153, 160). In these examples, the TAC fails to set forth: (1) that Anthony Deo or anybody

else requested any specific amount of funds for the flooring of the vehicles, (2) that the funds went to Anthony Deo instead of Northshore, (3) that there was a question as to the condition of the vehicles, (4) how and when the "difference" was purportedly paid to Anthony Deo "for the benefit of the plan," (5) how Anthony Deo benefited the "plan," (6) how Anthony Deo acted outside of Northshore in taking these actions, how Anthony Deo requested the funds other than simply stating "by interstate electronic communication."

Similarly, Plaintiffs' allegations regarding two instances of double-booking vehicles lack similar crucial details. (TAC, ¶¶ 169 and 178). Notably, Plaintiffs don't even attempt to explain how the alleged conduct supports the claimed scheme for which the examples were offered. At no point do Plaintiffs even allege that Santander sent any funds to Deo, and yet claim that Deo refused to return funds to Santander (funds that Plaintiffs allege were sent to Sunrise). This claim becomes even more perplexing given the repeated assertions in the TAC that Anthony Deo lacked the authority to issue payments on behalf of Sunrise or Northshore (see, TAC, ¶¶ 252-254).

Every single example offered by Plaintiffs to support the predicate acts for their RICO claims fail to provide the necessary details required to meet the heightened pleading standard for RICO claims. Even if presumed true, the alleged conduct complained of by Plaintiffs are more akin to accusations of incompetence; a far cry from fraud. Yet, to the extent that these claims are capable of meeting the heightened pleading requirements – which they are not – at most, the allegations would constitute intermittent instances of garden-variety common law fraud not intended to be covered by the RICO statutes. Furthermore, when discussing allegations about the financial statements, the TAC does not rectify the deficiencies present in the FAC, continuing to rely on legal conclusions, deductions, and opinions couched as factual allegations.

2. *Plaintiff Fails to Plead an Enterprise*

Assuming, for the sake of argument, that the Plaintiffs' Third Amended Complaint (TAC) adequately articulated the predicate acts necessary for a RICO claim, the Plaintiffs' RICO claims would still merit dismissal on the grounds of futility  because the TAC fails to sufficiently allege the existence and operation of a RICO "enterprise."

The Plaintiffs' RICO allegations significantly fall short of the requisite standard for pleading the "enterprise" element. Specifically, Plaintiffs are required to demonstrate with particularity the existence of a RICO enterprise, explaining how the alleged enterprise's associates collaborated as a cohesive unit towards achieving a common purpose, as mandated by *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) and supported by *Nasik Breeding & Research Farm Ltd. v. Merck & Co., Inc.*, 165 F.Supp 2d 514, 539 (S.D.N.Y. 2001), which noted that the "hierarchy, organization, and activities" of an alleged association-in-fact are scrutinized to ascertain whether its members functioned as a unit.

Furthermore, under § 1962(c) of the RICO statute, a distinction must be maintained between the RICO "person" conducting the enterprise's affairs and the "enterprise" itself. This distinction is critical as emphasized by *Nasik Breeding & Research Farm Ltd.*, which reiterates that employees associated with a corporation do not constitute an enterprise distinct from the corporation itself and that a corporate entity cannot serve as both the RICO "person" and the RICO "enterprise" under Section 1962(c), citing *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 344 (2d Cir. 1994).

Additionally, it is imperative for the pleading to delineate each defendant's role in the "operation or management" of the enterprise, demonstrating that each played a part in "directing the affairs of the enterprise," as per *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). It is not enough for a defendant to merely be associated with the enterprise; there must be evidence of some

7

level of control or influence over the enterprise's operations, a principle further underscored by *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) and *First Interregional Advisors Corp. v. Wolff*, 956 F Supp 480 (S.D.N.Y. February 24, 1997).

The TAC, like the FAC, fails to adequately specify the structure, roles, and activities of the alleged enterprise and the distinct participation of each Defendant within it; and therefore, fails to satisfy the stringent requirements for establishing a RICO enterprise.

Simply characterizing everything as being a "scheme," or a "Plan" does not transform the severely lacking allegations in the TAC into a "scheme" or "plan" for RICO purposes, and this Court should admonish Plaintiffs' blatant attempt to do so. Indeed, RICO requires more than repeating the word "scheme" eighty-four separate times. According to Plaintiffs, every action, whether taken by Anthony Deo, Sara Deo, the other Deo Defendants; or even the NCPD, are all part part of a gigantic conspiracy in furtherance of the "Plan." Plaintiffs fail to delineate how any of the alleged conduct taken by the Defendants went beyond the scope of their normal functions as an employee of Northshore, Sunrise, or Superb, or as an attorney representing their client.

### 3. *The TAC Fails to Adequately Allege a Pattern of Racketeering*

Similarly, Plaintiffs TAC fails to establish a pattern of racketeering activity. "A RICO pattern is established by showing that the predicate acts relied upon are "related, and that they amount to or pose a threat of continued criminal activity. When seeking to satisfy the continuity requirement, a plaintiff must show that the defendants' activities were neither isolated or sporadic." (internal quotations and citations omitted) *Carl v. Hamann*, 2020 US Dist LEXIS 78138, at 14-15 (E.D.N.Y. Apr. 29, 2020).

A Plaintiff may satisfy the elements of continuity by a showing of either "open ended continuity" or "closed ended continuity." *H. J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893, 2902 (1989); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F3d 229, 242 (2d Cir 1999).

To satisfy this standard, a plaintiff "must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with an adequately pled threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." (internal quotations and citations omitted). *Cont. Petroleum Corp. v Corp. Funding Partners, LLC*, 2012 US Dist LEXIS 51841, at 19 (S.D.N.Y. Apr. 11, 2012)

As the Second Circuit explained in *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F3d 229, 242 (2d Cir 1999):

> Closed-ended continuity is demonstrated by predicate acts that "amount to continued criminal activity," by a particular defendant. To satisfy closed-ended continuity, the plaintiff must prove "a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months… do not satisfy this requirement." *Id.* at 242. Since the Supreme Court decided *H.J., Inc.*, this Court has never held a period of less than two years to constitute a "substantial period of time." *See GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995); *see also Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (finding closed-ended continuity when predicate acts occurred over a period of two years); *Jacobson v. Cooper*, 882 F.2d 717, 720 (2d Cir. 1989) (finding closed-ended continuity when predicate acts occurred over a "matter of years"). Other circuits have similarly held. *See GICC Capital Corp.*, 67 F.3d at 468 (collecting cases). Although closed-ended continuity is primarily a temporal concept, other factors such as the number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes are also relevant in determining whether closed-ended continuity exists. *Id.*"

"With open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed. In assessing whether or not the plaintiff has shown open-ended continuity, the nature of the RICO enterprise and of the predicate

acts are relevant. Where the enterprise is engaged primarily in racketeering activity, and the predicate acts are inherently unlawful, there is a threat of continued criminal activity, and thus open-ended continuity. However, where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." Id.

In the instant matter, the Defendants were engaged in the legitimate business of selling used cars. There is no claim that the Defendants were engaged in organized crime on a continuing basis. Since there is no claim or evidence in the TAC that the predicate acts were the regular way of operating the business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity, the Plaintiffs cannot rely on closed-ended continuity for their RICO claims. Thus the only way Plaintiffs TAC could properly plead continuity, would be through open-continuity. However, the earliest alleged predicate act that is specifically identified in the TAC occurred on December 21, 2021 (TAC, ¶ 144), and the latest any predicate act specifically identified in the TAC could have occurred would have been on August 3, 2023 (when Superb, Inc. purportedly locked the Defendants out of the business (TAC, ¶ 635). Thus, the period of time during which the Plaintiffs claim the predicate acts purportedly occurred was for a period of **1 Year and 7 months**.

The Second Circuit has pointed out numerous times since the Supreme Court's decision in *H. J. Inc. v. Northwestern Bell Tel. Co.*, 109 S. Ct. 2893, 2902 (1989), that "although the two-year threshold is not a bright-line requirement, it is rare that conduct lasting less than two years will qualify, especially when the activities alleged involve only a handful of participants and do not involve a complex, multi-faceted conspiracy." (internal citations and quotations omitted*) Spool v.*

10

*World Child Intl. Adoption Agency*, 520 F3d 178, 184 (2d Cir. 2008); *One World, LLC v. Onoufriadis*, 2021 U.S. App. LEXIS 29370, at 5 (2d Cir. Sep. 29, 2021); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F3d 229, 242 (2d Cir. 1999).

Based on the foregoing, Plaintiffs' TAC fails entirely to establish a pattern of racketeering activity as required under the statute, and as such, Plaintiffs' cross-motion must be denied on futility grounds.

### 4. The TAC Fails to Adequately Plead a Nexus

In addition, much like with Plaintiffs' FAC, the TAC fall short of alleging a sufficient nexus between the injuries purportedly suffered and the predicate acts identified as the basis for standing under 18 U.S.C. § 1964. For a party to assert a civil RICO claim successfully, it must allege injury to its business or property as a direct result of the defendant's violation of 18 U.S.C. § 1962, as specified in 18 U.S.C. § 1964(c). The Supreme Court, in *Holmes v. SEC Investor Prot. Corp.*, 503 U.S. 258, 268 (1992), has narrowly interpreted this statute's injury clause, limiting standing to those plaintiffs whose injuries were proximately caused by the RICO predicate acts.

Under the controlling case law, the Plaintiffs' failure to plead facts with particularity establishing a sufficient nexus between the Plaintiffs' injury and the predicate RICO acts mandates dismissal of the Plaintiffs' RICO claims.

### 5. The TAC Fails to Adequately Plead a Conspiracy

Lastly, Plaintiffs TAC, much like the FAC, alleges that Defendants violated 18 U.S.C. § 1962(d) by conspiring to commit RICO violations. As the Court noted in *Wood v. GMC,* with respect to a claim under § 1962(d):

> a plaintiff must allege that the defendants agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise. As to the "agreement" requirement, because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil

conspiracy complaint, at the very least, must allege specifically such an agreement. Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, a RICO conspiracy claim should be more than a conclusory add-on at the end of a complaint. (internal citations and quotations omitted).

*Wood v. GMC*, 2015 US Dist LEXIS 37782, at 27 (E.D.N.Y. Mar. 25, 2015).

Like the plaintiffs in *Wood v. GMC*, the Plaintiffs in this case have added a conspiracy claim based on boilerplate allegations, without providing any facts that show that each of the Defendants had a "meeting of minds" with respect to the alleged violations, and therefore, the Plaintiffs' claim under § 1962(d) should similarly be dismissed pursuant to Rule 9(b).

In light of Plaintiffs' failure to plead the RICO claims, the Plaintiffs' cause of action for injunctive relief under RICO must also be dismissed.

### C.  Plaintiffs' FAC and TAC Fail to Adequately Plead a DTSA Claim

The same infirmities that warranted dismissal of Plaintiffs' DTSA claim in the FAC have not been cured in the TAC. As already stated in the Memorandum of Law in Support of Defendants' Motion to Dismiss, the Plaintiffs' claim under the DTSA failed to identify the particular trade secrets that Defendants allegedly misappropriated, as the FAC only referred to generalized categories of information. The same issue exists with Plaintiffs' TAC.

As courts in this Second Circuit have recognized, the:

[k]ey to DTSA cases is whether the plaintiff has sufficiently identified the alleged trade secret at issue. The pleading standard set forth in Twombly and Iqbal requires that the complaint allege facts sufficient to identify the information for which protection is claimed and sufficient information about its nature, value, and measures taken to safeguard it to support an inference that the information qualifies as a trade secret. This requirement exists both so that defendants are put on notice of what items they allegedly misappropriated and so that a court can ascertain the protectability of the information at issue. Such information is necessary to distinguish trade secrets from merely confidential business information. The two are not one and the same—trade secrets are a subset of confidential information and alleging their existence requires much more specificity as to the information owned by

12

the claimant. While a plaintiff obviously need not include a detailed description of the trade secret to state a claim for misappropriation, the complaint must contain more than nebulous descriptions at the highest level of generality. A vague and indefinite piece of information cannot be protected as a trade secret. Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence. (internal citations and quotations omitted).

*Rodney v. United Masters*, 2023 U.S. Dist. LEXIS 33499, at 9 (E.D.N.Y. Feb. 10, 2023).

In the present matter, the Superb Plaintiffs (comprised of "Superb Motors, Inc," "Robert Urrutia," and "Team Auto Sales, LLC") do not point to any particular trade secret other than generalized categories of information. At best, and giving Plaintiffs every favorable inference, they allege information that may have been confidential; **however, trade secrets are a subset of confidential information, and the DTSA does not apply to confidential information as a whole.**

Second, and more importantly, the Superb Plaintiffs' DTSA claim warrants dismissal for failure to state a claim because, as a matter of law, the TAC fails to allege non-conclusory allegations that it took reasonable measures to keep its information secret. It is assumed that the Superb Plaintiffs' alleged "trade secrets" concern the particular settings and configurations that the Superb Plaintiffs selected on a third-party owned, **subscription based**, Customer Relationship Management ("CRM") software, "Tekion," which was allegedly taught to Defendant Anthony Deo (TAC., ¶¶ 678-679). Indeed, as the Superb Plaintiff alleges, it was Deo's purported copying of the "exact customization" of Tekion, which Superb claims is their "proprietary information," and the blueprint for the success of operating a profitable dealership. (TAC, ¶¶ 679-682). In no uncertain terms, the Superb Plaintiffs are claiming that the "proprietary information" is simply how to use Tekion (a CRM owned and licensed by a third-party for use by any individual or car

dealership willing to pay the subscription cost[1]) for use in streamlining a car dealership. At its very core, and fatal to Plaintiffs' claim, is that the "proprietary information" that constitutes a trade secret, is nothing more than **computer software functionality**, which is apparent to any user of the program. It is no different than if Superb based their claim on the premise that Urrutia taught Deo to utilize the functionality of Microsoft Excel (not owned by Urrutia or Superb) and how to best organize the folders on a desktop in Microsoft's Windows operating system (also not owned by Urrutia or Superb), "to streamline office work," and then claimed that those were proprietary trade secrets. Unquestionably, these vague claims that knowing how to use software (Tekion – which Superb merely subscribed to) is somehow a trade secret, is patently absurd.

In *Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at 5-6 (2d Cir. Mar. 9, 2022), the Second Circuit affirmed the district court's dismissal of the plaintiff's DTSA claims, and made it all but clear that where an alleged trade secret is primarily computer software functionality that is made apparent to users of the program, the existence of non-disclosure agreements or other contractual obligations of confidentially is a critical factor in determining whether a party undertook reasonable measure to protect the information.

Specifically, the Court stated:

> We agree with the district court that where an alleged trade secret consists 'primarily, if not entirely,' of a computer software's functionality— 'functionality that is made apparent to all users of the program"—the reasonableness analysis will often focus on who is given access, and on the importance of confidentiality and nondisclosure agreements to maintaining secrecy. *Turret Labs*, 2021 U.S. Dist. LEXIS 27838, 2021 WL 535217, at *4; *see also Mason v. Amtrust Fin. Servs., Inc.*, 848 F. App'x 447, 450 (2d Cir. 2021) (holding that plaintiff's failure to "execut[e] a nondisclosure or licensing agreement or . . . stipulate[e] in his employment contract that the [software] was

---

[1] https://tekion.com/products/crm

his proprietary information" evidenced that he "had not taken reasonable measures to protect his information"); *Inv. Sci., LLC v. Oath Holdings Inc.*, No. 20 Civ. 8159, 2021 U.S. Dist. LEXIS 151076, 2021 WL 3541152, at *3 (S.D.N.Y. Aug. 11, 2021) (concluding that the plaintiff did not employ reasonable measures to protect its claimed trade secrets because, among other reasons, the plaintiff "concede[d] that it did not require [the defendant] to sign a confidentiality agreement before sharing the contents of the [product]"); [*6] *Exec. Trim*, 525 F. Supp. 3d at 380; *Charles Ramsey Co., Inc. v. Fabtech-NY LLC*, No. 1:18-CV-0546, 2020 U.S. Dist. LEXIS 9348, 2020 WL 352614, at *15 (N.D.N.Y. Jan. 21, 2020) (collecting cases); *Mintz v. Mktg. Cohorts, LLC*, No. 18-CV-4159, 2019 U.S. Dist. LEXIS 124374, 2019 WL 3337896, at *6 (E.D.N.Y. July 25, 2019) (dismissing a DTSA claim because plaintiff "did not require defendants to sign a non-disclosure agreement nor any sort of covenant to protect the passwords").

*Turret Labs USA, Inc. v. CargoSprint, LLC*, 2022 U.S. App. LEXIS 6070, at 5-6 (2d Cir. Mar. 9, 2022).

Based on the foregoing, the Superb Plaintiffs' failure to allege that they required non-disclosure agreements or had any other contractual obligations of confidentiality regarding the use of the Tekion platform with any of the particular settings (which is nothing more than computer software functionality that is apparent to any user of the program, much like how the organization of folders on windows desktop is apparent to any user of a Windows PC), the DTSA claim must fail as a matter of law.

Furthermore, as with the CRM, assuming the Superb Plaintiffs' "trade secrets" concerns customer information, the Complaint similarly fails to allege the existence of any reasonable measures to protect that information, particularly with the use of non-disclosure agreements or other contractual obligations. Indeed, they do not claim that their employees did not have access to said customer lists, or that said employees were under a contractual obligation to keep same confidential.

In opposition to Defendants' Motion to Dismiss, Plaintiffs argue two points. First, Plaintiffs argue that this Court previously determined that the Plaintiffs' Tekion software and customer lists

constituted trade secrets under the DTSA when it issued its decision on Plaintiffs' application for a preliminary injunction, and that as such, that decision is the law of the case. Plaintiffs' argument is completely flawed, in that the issue that was before the Court when deciding the Plaintiffs' application for the Preliminary Injunction was not whether the Plaintiffs' FAC sufficiently plead a cause of action under DTSA; but rather, whether the Plaintiffs established a likelihood of success on the merits and the potential for suffering irreparable harm should the Court not grant the injunctive relief. Thus, Plaintiffs' attempt to transform a decision on a preliminary injunction into a decision over whether Plaintiffs' DTSA claim is sufficiently pled, must be outright rejected.

Plaintiffs' second argument attempts to draw a comparison to the Court's decision in *Plaza Motors of Brooklyn, Inc. v. Bogdasarov*, 2021 U.S. Dist. LEXIS 230156, 15 (E.D.N.Y. 2021), a case in which the Court held that a plaintiff's customer list constituted a trade secret; however, the facts alleged in the FAC (and the TAC) in this action stand in stark contrast to the those in *Plaza Motors.*

First, unlike in the motion before this Court which deals with a motion to dismiss and a cross-motion to amend, the decision in *Plaza Motors* cited by Plaintiffs pertains to the issuance of a preliminary injunction. Id.

Second, unlike in this action, in *Plaza Motors*, the Complaint[2] alleged that:

> The Confidentiality and Nondisclosure Agreement was implemented, in part, to protect Plaza's trade secret information. Specifically, Plaza, over the course of years has carefully curated its clients' vehicle needs, vehicle preference and pricing concerns through data analysis to develop a system of anticipating its customers' vehicle needs. Plaza's carefully curated customer preferences and customer relations are vital to Plaza's sales business. Possession of that

---

[2] The Court's attention is respectfully referred to paragraph 22 of the Complaint in the *Plaza Motors of Brooklyn, Inc.*, for which Judicial Notice can, should, and must be taken)

decadeslong developed information provides Plaza a unique competitive advantage in the automotive industry."

Third, in contrast to Superb, which was only first started in June 2021 (TAC, ¶ 382), the plaintiff's customer list in *Plaza Motors* was developed over decades through substantial efforts. *Plaza Motors of Brooklyn, Inc. v. Bogdasarov*, 2021 U.S. Dist. LEXIS 230156, 15 (E.D.N.Y. 2021)

Fourth, unlike in the present matter, in *Plaza Motors*, the defendant, "Bogdasarov **signed a Confidentiality and Nondisclosure Agreement**." (emphasis added). *Plaza Motors of Brooklyn, Inc. v Bogdasarov*, 2021 US Dist LEXIS 230156, at 3 (E.D.N.Y. Dec. 1, 2021).

In fact, in the decision cited by Plaintiffs, the Court pointed all of these distinguishing facts:

> Here, Plaza has devoted substantial effort over the course of decades to build and maintain databases containing information about all of its customers. This information, including the type, model year, and price for every car that each customer has bought or leased, is not readily ascertainable through public sources and its secrecy provides independent economic value to Plaza…. Further, Plaza has taken reasonable measures to keep this information secret through restrictions on access and the use of nondisclosure agreements. Id.

It is remarkable that Plaintiffs failed to mention these points when citing and quoting to the case, particularly when Plaintiffs' counsel actually represented the plaintiff in that matter as well; and therefore, should be well versed on the underlying facts and the Court's decision. Clearly, notwithstanding Plaintiffs' claims to the contrary, the decision in *Plaza Motors* further supports Defendants' argument that Plaintiffs' pleading fails to properly allege a trade secret sufficient to state a claim under DTSA.

Since Plaintiffs' FAC and Plaintiffs' TAC fail to adequately allege any claims under the two statutes that would confer federal question jurisdiction on this Court, and because there is

absolutely no reason for the Court to exercise supplemental jurisdiction over the remainder of Plaintiffs' state law claims, the Court should dismiss the action in its entirety.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss should be granted in all respects, and Plaintiffs' cross motion should be denied. Should this Court deem all of the Plaintiffs' claims arising under federal question dismissed, then the remainder of the Plaintiffs' Complaint should be dismissed so that Plaintiffs can properly bring this action in the appropriate state court.

Dated: Hicksville, New York
      April 30, 2024

                                   LEVINE SINGH, LLP

By:   /s/     Brian M. Levine
               Brian M. Levine, Esq.
               260 N. Broadway, Suite 2A
               Hicksville, New York 11801
               Tel. No.: (347) 732-4428
               Fax No.: (917) 477-2273
               *Attorneys for the Deo Defendant*