UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually
and derivatively as a member of 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

                              Plaintiffs,

            -against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK,
LIBERTAS FUNDING LLC, and J.P. MORGAN
CHASE BANK, N.A.,

                              Defendants.

-----------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**PLAINTIFFS' REPLY
MEMORANDUM OF LAW IN
FURTHER SUPPORT OF THEIR
CROSS-MOTION FOR LEAVE TO
FILE A THIRD AMENDED
COMPLAINT**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

FACTS ................................................................................................................................... 1

    i.    Allegations in Plaintiffs' Proposed Third Amended Complaint ....................... 1

LEGAL ARGUMENT ............................................................................................................ 2

    A. PLAINTIFFS STATE A CLAIM FOR RELIEF UNDER RICO ................................... 4

        i.    Deo Defendants ................................................................................................... 4

            1.    Plaintiffs Allege Sufficient Predicate Acts ............................................ 5

                i.    IAG Plaintiffs ............................................................................. 6

                ii.    Superb Plaintiffs ....................................................................... 9

                iii.    IAG and Superb ...................................................................... 10

            2.    The TAC Sufficiently Pleads an Enterprise ........................................ 12

            3.    The TAC Satisfies the Continuity Requirement to Constitute a Pattern ............................................................................................................... 14

            4.    A Nexus Between the Acts and the Injury is Properly Plead ............. 16

            5.    The TAC Sufficiently Alleges a Conspiracy ...................................... 16

        ii.    Libertas .......................................................................................................... 17

        iii.    Chase ............................................................................................................. 18

            a.    Common Law Claims/UCC Preemption ........................................ 20

        iv.    Flushing ........................................................................................................ 21

        v.    CPA/Jones ..................................................................................................... 24

    B.    THE SUPERB PLAINTIFFS STATE A CLAIM UNDER THE DTSA ................... 25

CONCLUSION .................................................................................................................... 27

## TABLE OF AUTHORITIES

**Cases**

19 Recs. Ltd. v Sony Music Entertainment,
    165 F. Supp. 3d 156 (S.D.N.Y. 2016) ................................................................................ 2

131 Main St. Assocs. v. Manko,
    897 F. Supp. 1507 (S.D.N.Y. 1995) ................................................................................ 19

Adair v. Hunt Int'l Resources Corp.,
    526 F. Supp. 736 (N.D. Ill. 1981). ................................................................................ 12

Air China Ltd. v. Li,
    2009 U.S. Dist. LEXIS 27482 (S.D.N.Y. Mar. 31, 2009) ................................................ 12

AIU Ins. Co. v. Olmecs Med. Supply, Inc.,
    2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. 2005) ..................................................... 4 n. 7, 23

Alix v. McKinsey & Co., Inc.,
    2023 U.S. Dist. LEXIS 145872 (S.D.N.Y. Aug. 18, 2023) ............................................. 19

Alpine Group, Inc. v. Johnson,
    No. 01-CIV-5532 (NRB), 2002 U.S. Dist. LEXIS 16 (S.D.N.Y. January 3, 2002) ........... 6

Amalgamated Natl. Health Fund v. Hickey Freeman Tailored Clothing, Inc.,
    2024 U.S. Dist. LEXIS 56933 (S.D.N.Y. 2024) ................................................................ 5

Amendolare v. Schenkers International Forwarders, Inc.,
    747 F. Supp. 162 (E.D.N.Y. 1990) ................................................................................. 23

Angermeir v Cohen,
    14 F. Supp. 3d 134 (S.D.N.Y. 2014) ............................................................................... 17

Baldwin Research Inst., Inc. v. St. Jude Thaddeus, Inc.,
    No. 6:08-CV-338 (DNH/GJD), 2008 U.S. Dist. LEXIS 137199 (N.D.N.Y. Oct. 29, 2008)
    .................................................................................................................................... 4

Billard v Rockwell Intl. Corp.,
    683 F.2d 51 (2d Cir. 1982) ..................................................................................... 6, 21

Boyle v. United States,
    556 U.S. 938 (2009) ...................................................................................................... 22

Bymoen v. Herzog, Heine, Geduld, Inc.,
    1991 WL 95387 (S.D.N.Y. 1991) ................................................................................. 22

City of New York v. Chavez,
    2012 U.S. Dist. LEXIS 42792 (S.D.N.Y. 2012) ................................................ 17

DermSource, Inc. v. CityMedRx, LLC,
    2023 U.S. Dist. LEXIS 8652 (E.D.N.Y. Jan. 18, 2023)..................................... 27

DiBlasio v. Novello,
    344 F.3d 292 (2d Cir. 2003) ......................................................................... 2, 25

Elden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    2011 U.S. Dist. LEXIS 35886 (S.D.N.Y. 2011)............................................... 20

Felton v. Walston & Co.,
    508 F.2d 577 (2d Cir. 1974). .............................................................................. 5

First Capital Asset Mgmt. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004) ..................................................................... 4 n. 7, 12

Fischer & Mandel, LLP v. Citibank, N.A.,
    632 F.3d 793 (2d Cir. 2011) ............................................................................. 20

H.J. Inc. v. Northwestern Bell Tel. Co.,
    492 U.S. 229 (1989)........................................................................................... 22

Hansen v. Webnet, Inc.,
    2015 WL 4605670 (S.D.N.Y. 2015) ................................................................... 5

Hect v. Commerce Clearing House, Inc.,
    897 F.2d 21 (2d Cir. 1990) ................................................................................. 7

Hollin v Scholastic Corp. (in Re Scholastic Corp. Sec. Litig.),
    252 F3d 63 (2d Cir 2001)................................................................................... 2

Hough v Petty,
    2023 U.S. Dist. LEXIS 207119 (E.D.N.Y. Oct. 10, 2023)................................ 21

Hussain v. Burton & Doyle of Great Neck LLC,
    2015 U.S. Dist. LEXIS 176551 (E.D.N.Y. 2015) .............................................. 3

Ideal Steel Supply Corp. v. Anza,
    652 F.3d 310 (2d Cir. 2011) ............................................................................. 11

IME Watchdog, Inc. v. Gelardi,
    2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023) ............................... 27

*In re* Allianz Glob. Inv'rs U.S. LLC Alpha Series Litig.,
No. 20 CIV. 10028 (KPF), 2021 WL 4481215 (S.D.N.Y. Sept. 30, 2021) ........................ 3

Int'l Motor Sports Grp., Inc. v. Gordon,
1999 WL 619633 (S.D.N.Y. Aug. 16, 1999) ........................................................ 5

Int'l Motor Sports Grp., Inc.,
1999 U.S. Dist. LEXIS 12610 ........................................................................ 25

Intl. Tech. Mktg. v Verint Sys.,
850 Fed. Appx. 38 (2d Cir. 2021) ................................................................. 21

Jaeger v Presscott, Ball & Turben,
1984 U.S. Dist. LEXIS 22348 (S.D.N.Y. Oct. 30, 1984) ................................... 12

Jakob v. JPMorgan Chase Bank, N.A.,
639 F. Supp. 3d 406 (E.D.N.Y. 2022) ........................................................... 20

Lateral Recovery LLC v. Queen Funding, LLC,
2022 U.S. Dist. LEXIS 129032 (S.D.N.Y. 2022). ............................................ 16

Loreley Fin. (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC,
797 F.3d 160 (2d Cir. 2015) ........................................................................... 3

McCarthy v. Dun & Bradstreet Corp.,
482 F.3d 184 (2d Cir. 2007). .......................................................................... 3

McLaughlin v. Anderson,
962 F.2d 187 (2d Cir. 1992). ........................................................................ 19

Novak v. Kasaks,
216 F.3d 300 (2d Cir. 2000). .......................................................................... 5

Nixdorf Computer Corp. v. Alba Forwarding Co.,
1981 U.S. Dist. LEXIS 15435  (S.D.N.Y. Oct. 1, 1981) ............................. 12, 21

Pasternack v. Shrader,
863 F.3d 162 (2d Cir. 2017). ........................................................................ 21

Phansalkar v. Andersen Weinroth & Co., L.P.,
344 F.3d 184 (2d Cir. 2003) ........................................................................... 6

Plaza Motors of Brooklyn v. Bogdasarov,
2021 U.S. Dist. Lexis 230156 (E.D.N.Y. 2021) ............................................... 27

Reich v. Lopez,
    858 F.3d 55 (2d Cir. 2017). ......................................................................11, 15

Reinfeld v. Riklis,
    722 F. Supp. 1077 (S.D.N.Y. 1989) ......................................................... 15

Related Cos., L.P. v. Ruthling,
    2017 U.S. Dist. LEXIS 207857 (S.D.N.Y. 2017) ........................................ 15

Ricciuti v. N.Y.C. Transit Auth.,
    941 F.2d 119 (2d Cir. 1991) ...................................................................... 3

Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ........................................................ 17

Steginsky v. Xcelera Inc.,
    741 F.3d 365 (2d Cir. 2014) ...................................................................... 2

Superb Motors Inc. v. Deo,
    2023 WL 7181675 (E.D.N.Y. Sept. 29, 2023) ......................................... 26

Trustees of the Plumbers v. De-Con Mech. Contrs.,
    896 F. Supp. 342 (S.D.N.Y. 1995) ............................................................ 5

United States v. Knox,
    No. Cr. 7:02CR00009, 2003 WL 22019046 (W.D.Va. Aug.22, 2003)............................ 23

United States v. Najjar,
    300 F.3d 466 (4th Cir.2002) .................................................................... 23

United States v. O'Malley,
    796 F.2d 891 (7th Cir. 1986) ................................................................... 17

United States v. Turkette,
    452 U.S. 576 (1981)................................................................................ 22

Volmar Distribs., Inc. v. New York Post Co., Inc.,
    899 F. Supp. 1187 (S.D.N.Y. 1995) ........................................................ 23

Wood v. GMC,
    2015 U.S. Dist. LEXIS 37782 (E.D.N.Y. Mar. 25, 2015)................................. 16

**Statutes**

18 U.S.C. § 1962...............................................................................4, 7, 11, 12, 16, 23

**Rules**

Fed. R. Civ. P. 9 ............................................................................................ 5, 6, 7, 8, 12, 23

Fed. R. Civ. P. 12 ............................................................................................ 2, 4 n. 7

Fed. R. Civ. P. 15 ............................................................................................ 3, 22

## PRELIMINARY STATEMENT

The IAG Plaintiffs and Superb Plaintiffs[1] respectfully submit this reply memorandum of law in further support of their cross-motion for leave to amend the pleadings (the "Motion to Amend") and file a Third Amended Complaint ("TAC")[2] to add additional allegations and to correct technical deficiencies in the First Amended Complaint ("FAC") in this complex, multi-party commercial litigation. For the reasons set forth below, the TAC sufficiently alleges that the Deo Defendants, with assistance from the remaining Defendants,[3] defrauded the Plaintiffs in violation of RICO[4] and that the additional causes of action sufficiently state claims for relief. Accordingly, the Plaintiffs' Motion to Amend and file a TAC must be granted in its entirety.

## FACTS

i.   Allegations in Plaintiffs' Proposed Third[5] Amended Complaint

The TAC addresses certain technical deficiencies and provides additional factual support for the allegations in the FAC.

---

[1] Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia are collectively hereinafter referred to as the "Superb Plaintiffs," while Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian Chabrier, Joshua Aaronson, and Jory Baron are collectively hereinafter referred to as the "IAG Plaintiffs," with the Superb Plaintiffs and IAG Plaintiffs collectively hereinafter referred to as the "Plaintiffs."

[2] Plaintiffs previously sought leave to file a Second Amended Complaint in response to Flushing Bank's motion to dismiss. The proposed Second Amended Complaint solely addressed deficiencies previously raised by Flushing Bank.

[3] The Deo Defendants consist of Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

[4] RICO stands for the Racketeer Influenced and Corrupt Organizations Act.

[5] The TAC retains the contents of the proposed Second Amended Complaint ("SAC") and adds further allegations discussed herein.

1

Addressed in detail in the argument section below, the TAC adds specificity to the allegations previously raised, that Deo, with the assistance of the other defendants, through fraudulent and other wrongful methods, pilfered the assets of the Plaintiffs, subjecting them to liability under RICO and state-related common law claims. The TAC also adds allegations in support of the Superb Plaintiffs' Defend Trade Secrets Act ("DTSA") claim, and related state law claims, against the Deo Defendants.  The TAC also seeks to add necessary parties, both as plaintiffs and defendants.

For the reasons set forth below, and given the tremendous level of detail set out in the 146 pages and 1,197 paragraphs in the TAC concerning the Defendants' concerted conduct to bilk the Plaintiffs out of all their operating capital such that every dealership that Anthony Deo laid his hands on has been shut down, Plaintiffs' cross-motion for leave to file the TAC should be granted.

## <u>LEGAL ARGUMENT</u>

Because the resolution of the Motion to Amend turns on whether the proposed amendment states a claim for relief, courts apply the same standard as a motion under Rule 12(b)(6). <u>See</u> <u>19 Recs. Ltd. v Sony Music Entertainment</u>, 165 F. Supp. 3d 156, 158 (S.D.N.Y. 2016) (<u>citing Steginsky v. Xcelera Inc.,</u> 741 F.3d 365, 368 (2d Cir. 2014). Consequently, any challenge to factual assertions or expressions of doubts about establishing claims are not considered as Plaintiffs do not need to prove the allegations in the TAC in order to succeed on the instant Motion to Amend. <u>See</u> <u>DiBlasio v. Novello,</u> 344 F.3d 292, 304 (2d Cir. 2003) ("a disputed issue of  fact… is inappropriate to consider in the context of a Rule 12(b)(6) motion); <u>see</u> <u>also</u> <u>Hollin v Scholastic Corp. (in Re Scholastic Corp. Sec. Litig.),</u> 252 F3d 63, 75 (2d Cir 2001) ("whether plaintiffs can prove their allegations is not to be resolved on a Rule 12(b)(6) motion").

The allegations in the TAC are more than sufficient to state causes of action for violations of RICO, the DTSA, and various state law claims.  Further, as set forth in further detail, *infra*, Defendants' various memoranda of law in opposition to the instant motion fail to meet their burden of proving the futility of the TAC or any bad faith on Plaintiffs' part in amending the FAC, especially in a complex multi-party case such as this one. See Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) (holding that courts should not dismiss complaints for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief, and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met") (internal quotation omitted); see also Hussain v. Burton & Doyle of Great Neck LLC, 2015 U.S. Dist. LEXIS 176551, * 10-11 (E.D.N.Y. 2015).

Critically, where, as here, a case "combines a complex commercial reality with a long, multi-prong complaint," the Second Circuit has encouraged courts to grant leave to amend, because "pleading defects may not only be latent, and easily missed or misperceived without full briefing and judicial resolution; they may also be borderline, and hence subject to reasonable dispute." See In re Allianz Glob. Inv'rs U.S. LLC Alpha Series Litig., No. 20 CIV 10028 (KPF), 2021 WL 4481215, at *32 (S.D.N.Y. Sept. 30, 2021) (citing Loreley Fin. (Jersey) No.3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 191 (2d Cir. 2015)).  Given that the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule") instructs courts to freely give leave to amend "when justice so requires," it would be the height of injustice under these circumstances to deny leave to replead where Plaintiffs rose to the occasion in curing various technical pleading deficiencies that Defendants raised in this complex commercial case involving multiple parties.  See Fed. R. Civ. P. 15(a)(2); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007).

As such, the Motion to Amend should be granted in all respects.  Notably, no defendant has objected to the motion to add parties and Defendants have only attacked Plaintiffs' wire fraud and mail fraud claims under RICO, but failed to address Plaintiffs' investment fraud claims pursuant to 18 U.S.C. § 1962(a). To the extent that no objection was raised to the proposed amendment to add parties, or any other unopposed amendment, the Court should grant Plaintiff's' motion. Baldwin Research Inst., Inc. v. St. Jude Thaddeus, Inc., No. 6:08-CV-338 (DNH/GJD), 2008 U.S. Dist. LEXIS 137199, at *2 (N.D.N.Y. Oct. 29, 2008).

## A. PLAINTIFFS STATE A CLAIM FOR RELIEF UNDER RICO

### i. Deo Defendants[6]

The Deo Defendants argue that Plaintiffs have failed to plead the predicate acts constituting the Deo Defendants' purported fraud with particularity, have failed to identify an enterprise, failed to establish a nexus between the predicate acts and Plaintiffs' injury, failed to prove each defendant's role in the operation or management of the enterprise,[7] and failed to plead a conspiracy.   With regard to the Superb Plaintiffs, the Deo Defendants also argue that Superb fails to identify specific trade secrets or reasonable protective measures taken to secure same sufficient to plead a DTSA claim.

---

[6] The arguments under this section are also responsive to the other Defendants' arguments.

[7] With regard to the allegations regarding operation or management, as stated in further detail in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the First Amended Complaint dated March 29, 2024,at 14-15, "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." See First Cap. Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 176 (2d Cir. 2004) (citation omitted); see also AIU Ins. Co. v. Olmecs Med. Supply, Inc., 2005 U.S. Dist. LEXIS 29666, *26 (E.D.N.Y. 2005) ("It is not always reasonable, however, to expect that when a defrauded plaintiff frames his complaint, he will have available sufficient factual information regarding the inner workings of a RICO enterprise to determine whether a defendant was merely 'substantially involved' in the RICO enterprise or participated in the 'operation or management' of the enterprise").

At this stage in the litigation, Plaintiffs have sufficiently proven Defendants' operation and/or management in the Deo Defendants' RICO enterprise sufficient to survive a Rule 12(b)(6) motion to dismiss.

For the reasons set forth below, the TAC sufficiently states substantive RICO and conspiracy claims against the Deo Defendants, as well as a claim for a violation of the DTSA with respect to the Superb Plaintiffs.

### 1.   PLAINTIFFS ALLEGE SUFFICIENT PREDICATE ACTS

In applying Rule 9(b), the court "must not lose sight of the fact that it must be reconciled with rule 8." Felton v. Walston & Co., 508 F.2d 577, 581 (2d Cir. 1974). "The primary purpose of Rule 9(b) is to afford [the] defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000).

"[I]n keeping with the purpose of Rule 9(b), courts tolerate certain ambiguities in a pleading, provided that the allegations about the fraud are sufficient to give notice to the defendant and allow it to prepare its defense." Amalgamated Natl. Health Fund v. Hickey Freeman Tailored Clothing, Inc., 2024 U.S. Dist. LEXIS 56933, *23-24 (S.D.N.Y. 2024) (citing Hansen v. Webnet, Inc., 2015 WL 4605670, at *10 (S.D.N.Y. 2015) (collecting cases, and finding that where the complaint was ambiguous as to the date of the misrepresentation, it nonetheless satisfied Rule 9(b) because other identifying details were provided).

"In other words, 'Rule 9(b) is satisfied if the complaint gives enough information to enable defendants to frame a responsive pleading and assures that a sufficient basis exists for the allegations made.'" See Amalgamated Natl. Health Fund at *24 (quoting Trustees of the Plumbers v. De-Con Mech. Contrs., 896 F. Supp. 342, 346 (S.D.N.Y. 1995) (citing Int'l Motor Sports Grp., Inc. v. Gordon, 1999 WL 619633, at *3 (S.D.N.Y. Aug. 16, 1999) (explaining that a plaintiff "need not plead dates, times and places with absolute precision," so long as the complaint gives "notice to defendants of the claim and the grounds upon which it is based")).

Courts must also consider that "[t]here is an obvious tension between the requirements of Rule 9(b) and the practicality of alleging in elaborate detail facts constituting fraud prior to discovery." Billard v Rockwell Intl. Corp., 683 F.2d 51, 57 (2d Cir. 1982)).

Bearing the foregoing principles in mind, the substantial detailed allegations in the TAC more than sufficiently meet the pleading standards of Rule 9(b).

      i.    IAG Plaintiffs

First, with regard to the IAG Plaintiffs, in opposing the IAG Plaintiffs' assertion of predicate acts of fraudulently manipulating the financial records of Northshore Motor Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise"), the Deo Defendants wrongfully deny any existing duty to the IAG Plaintiffs to accurately report Northshore's and Sunrise's financial statements. The TAC alleges that Deo was appointed manager and given the responsibility to handle the inventory and financial operations of Northshore and Sunrise, including its Ally Bank financing. (TAC ¶ 90; TAC ¶¶ 119-121). Deo's duty to Northshore, Sunrise and all of the IAG Plaintiffs, as manager, not to falsify the financial records of Northshore and Sunrise for his own benefit is unquestionable. See Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003) (citations omitted) ("Under New York law, an agent is obligated to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties"); see also Alpine Group, Inc. v. Johnson, No. 01-CIV.-5532 (NRB), 2002 U.S. Dist. LEXIS 16, *7 (S.D.N.Y. January 3, 2002). ("Employees owe a fiduciary duty to their employers, which prevents them from engaging in self-dealing at the employer's expense").

The Deo Defendants further deny liability to the IAG Plaintiffs by claiming any misrepresentations were made only to Ally Bank.

However, the TAC makes clear that the misrepresentations were also made to the IAG Plaintiffs. All financial records of Northshore and Sunrise were maintained on the dealership management system ("DMS"), which was reviewed and maintained by the IAG accounting department. (TAC ¶ 99).

Deo's and the CPA Defendants' fraudulent monthly adjustments to the financial information maintained on IAG's DMS system resulted in falsified financial statements of, and to, Northshore and Sunrise and to IAG in that same DMS. (TAC ¶¶ 272-275). Representative detailed examples are set forth in ¶¶ 280-294 of the TAC. It was Northshore and Sunrise that had the primary obligation, guaranteed by the other IAG Plaintiffs, for repayment of financing provided by Ally Bank, and they had a vested interest in the accuracy and reliability of these financial statements, which financial statements were provided to them.

Notably, a violation of 18 U.S.C. § 1962(c) does not require that a plaintiff be the one defrauded *directly*; it only requires that the predicate acts of fraud proximately cause a plaintiff's injury. See Hect v. Commerce Clearing House, Inc., 897 F.2d 21, 23-24 (2d Cir. 1990). Consequently, a plaintiff whose bank account was disbursed to a RICO defendant resulting from defendant's defrauding the bank is no less entitled to pursue a RICO claim than the bank. Herein, Deo's wrongfully tapping Northshore's and Sunrise's loan account, for which Northshore and Sunrise were primarily liable—and for which the other IAG Plaintiffs were guarantors—establishes no less of a claim, even if it was only Ally Bank that received the fraudulent financial statements.

The Deo Defendants' (and the other Defendants') arguments that the pleadings in the TAC do not meet the specificity requirements of Rule 9(b) are also unavailing.

The TAC provides significant details of each of the fraudulent acts alleged, and the Defendants' particular criticisms seek to establish a higher standard than that required under Rule 9.

For example, the TAC provides examples of Deo manipulating used vehicle purchases (TAC ¶¶ 133-166) and double-booking financing (TAC ¶¶ 167-186), as well as examples of the Deo Defendants purchasing damaged and poor condition vehicles (TAC ¶¶ 187-191), which caused a deficiency in the floor plan repayment.

The TAC also provides examples of Deo utilizing the services of the CPA Defendants to manipulate monthly financial records in order to obtain Floor Plan financing when, in fact, Northshore and Sunrise were each operating at a loss as a result of the Deo Defendants' misappropriating their assets for their own purpose. (TAC ¶¶ 279-294; TAC ¶¶ 698-699 and ¶¶ 910-914)

Deo deflects these allegations as to the IAG Plaintiffs by questioning how Deo benefited from this scheme, since Deo claims the allegations do not directly put these funds in his hands and chalks his actions up to mere incompetence. The allegations, however, point otherwise.

The IAG Plaintiffs allege that although Deo did not have check signing authority from the Northshore account (TAC ¶ 253), he wrote and signed checks from the Northshore account anyway, for his own benefit. (TAC ¶¶ 254-255). Further, contrary to Deo's opposition, the IAG Plaintiffs do not allege that Deo did not have the authority to withdraw funds from the Sunrise bank account. In fact, the IAG Plaintiffs allege that the Libertas Funds were purposely placed into the Sunrise bank account, for that exact reason. (TAC ¶¶ 333-337). And, as noted below, Deo took customer cash deposits which were obscured by this influx of fraudulent loan transactions. (TAC ¶¶ 246, 247, 249).

ii.     Superb Plaintiffs

With regard to the Superb Plaintiffs, the TAC provides specific examples of Deo manipulating used vehicle purchases (TAC ¶¶ 448-513) and double-booking financing (TAC ¶¶ 514-517), as well as examples of the Deo Defendants purchasing grey-market vehicles (TAC ¶¶ 452-458), which caused a deficiency in Superb's Floor Plan repayment.

The Superb Plaintiffs also allege that Deo opened a bank account with Flushing Bank without Superb's knowledge wherein he pilfered money from Superb. (TAC ¶¶ 643-663). The Superb Plaintiffs allege that Deo misappropriated customer payments for certain vehicles by depositing those funds in the Flushing Bank account and then transmitting those funds into his own account (TAC ¶ 663), misappropriating approximately $455,000.00 via this scheme (TAC ¶ 664).

The Superb Plaintiffs further allege that "[t]he Deo Defendants and the CPA Defendants intentionally manipulated Superb's monthly financial information every month between at least April 2023 through July 2023" (TAC ¶ 603) which they provided to Superb and the Floor Plan lenders in order "to induce the Superb Plaintiffs and their Floor Plan lenders to continue to provide the Floor Plan to Superb" (TAC ¶ 606).  In addition, the TAC alleges that the Deo Defendants and the CPA Defendants:

- on May 12, 2023, directed Superb's controller, Kendra Kernizant ("Kernizant"), to make two (2) adjusting journal entries in the amount of $61,559.16 for the April 2023 financial statement in order to show a false profit of $27,842.00;

- directed Kernizant on June 12, 2023 to make adjusting journal entries to the unit count of sold vehicles;

- directed Kernizant to make adjusting journal entries to the unit count of sold vehicles, to not reflect eight (8) unwound sales from prior months, the effect of which was designed to show a greater profit for Superb;

- told Kernizant that there was money found on schedules to be put back into income and directed her to make journal entries removing packs from used car inventory schedule and made adjusting entries for $48,563.00 to change the May 2023 financial statement in order to show a false profit of $26,136.00;

- directed Kernizant to make adjusting journal entries for the amount $12,304.70 to change the June 2023 financial statement in order to show a false profit of $17,361.00;

- directed Kernizant to add money set aside for taxes as "profit" for Superb;

- directed Kernizant to first add, and then not unwind, forty-two (42) deals that fell through with no expectation of consummating those deal, which added $1.5M in profit and $250,000 in net profit;

- directed Kernizant to floor sold vehicles and other vehicles that did not exist; and

- imputed income from the foregoing fake deals, resulting in the illusion that Superb is profitable and permitted the Deo Defendants to run off with over $800,000.00 in missing cash and checks from customer deposits, and over $450,000.00 in ACH transactions to pay other debts that are not Superb's, among myriad other damages.

(TAC ¶¶ 609-616).

These misrepresentations caused Superb and its Floor Plan lenders to "reasonably rel[y] upon the falsified monthly financial statements to continue to provide the Floor Plan to Superb" (TAC ¶ 619) when they "would not have continued" to do so "had they been aware that the monthly financial statements were false" (TAC ¶ 621).

iii.    IAG and Superb

The IAG Plaintiffs and Superb Plaintiffs also allege that Deo was siphoning off money outside of Plaintiffs' bank accounts, such as taking customer cash deposits (TAC ¶ 246; TAC ¶ 588), and Deo's aforementioned schemes put those other illegitimate funds in the Northshore, Sunrise, and Superb bank accounts in order to cover up for the deficiencies inflicted by his pilfering.

Absconding with Northshore's, Sunrise's, and Superb's assets does not comport with mere incompetence; rather, it supports the fraud allegations. Consequently, the Deo Defendants have not established that Plaintiffs did not sufficiently plead predicate facts.

The Deo Defendants' opposition notably omits any challenge to the predicate acts alleged by Deo's falsifying two EIDL loans, one of which was submitted by Deo and purportedly electronically signed by David Baron the day after David Baron died. (TAC ¶¶ 302-310). It likewise omits any challenges to the predicate acts alleged for the wrongful use of wire and mail fraud to obtain the Libertas Funds or the Flushing Bank loan. (TAC ¶¶ 642-662). Critically, "Plaintiffs do not need to suffer injury from each of the predicate acts underlying their RICO claim; direct injury from one is enough." Reich v Lopez, 38 F Supp 3d 436, 449 (S.D.N.Y. 2014) (citing Hecht, 897 F.2d at 23). These unchallenged allegations alone satisfy the predicate act pleading requirements.

Nor has any Defendant convincingly argued, if addressed at all, that the TAC does not support a substantive RICO claim under §1962(a) against the Deo Defendants, Libertas and Flushing. Indeed, the Plaintiffs allege the Deo Defendants used the funds derived by its racketeering activities at Northshore and Sunrise, including those obtained with Libertas's and Flushing's assistance, to invest in Superb and the Deo Dealerships. (TAC ¶ 782) It is further alleged the Deo Defendants then used such ownership interests to pilfer Superb's assets, and use Superb's DMS system, employees, and customer lists to unfairly compete with Superb, as further alleged in the TAC (¶¶ 684-691) and described as the DTSA claim for wrongful misappropriation, unfair competition, and conversion.  See Ideal Steel Supply Corp. v. Anza, 652 F.3d 310 (2d Cir. 2011) (a business's allegation of injury by a defendant's businesses investment in a more competitive operation using funds derived from racketeering activities was sufficient under §1962(a)).

The predicate acts are adequately plead as Defendants' fraudulent acts are alleged with sufficient particularity to satisfy the heightened pleading requirements of Rule 9. See Jaeger v Presscott, Ball & Turben, 1984 U.S. Dist. LEXIS 22348, at *6 (S.D.N.Y. Oct. 30, 1984) (quoting Adair v. Hunt Int'l Resources Corp., 526 F. Supp. 736, 744 (N.D. Ill. 1981). ("The complaint adequately details, in broad strokes, the nature and essential factual elements of the alleged fraud . . . [so that] the defendants are not left guessing as to the outlines of the fraud, its purposes, or the critical facts which are purportedly misrepresentations"); see also Nixdorf Computer Corp. v. Alba Forwarding Co., 1981 U.S. Dist. LEXIS 15435, at *5 (S.D.N.Y. Oct. 1, 1981) ("Although greater specificity than that offered by Nixdorf is desirable in a fraud claim, Rule 9(b) must be construed in conjunction with the requirements of Rule 8(a) that pleadings be short and concise. In the present case the complaint has crossed the threshold erected by Rule 9(b) by adequately putting Alba on notice of the claims against it. The greater specificity that Alba seeks may be obtained in discovery) (internal citations omitted).

Therefore, Plaintiffs have sufficiently plead predicate acts in furtherance of an enterprise.

## 2.   THE TAC SUFFICIENTLY PLEADS AN ENTERPRISE

Despite their objection, the Deo Defendants' opposition ignores the detailed allegations describing the enterprise.  "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent common course of conduct and work together to achieve such purposes." First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 174 (2d Cir. 2004). Plaintiffs have sufficiently alleged the existence of an enterprise under 18 U.S. 1962(d). See Air China Ltd. v. Li, 2009 U.S. Dist. LEXIS 27482, at *15-16 (S.D.N.Y. Mar. 31, 2009)) (sufficiently alleging "that the 'enterprise' whose affairs were conducted through the pattern of racketeering was an association in fact composed of the named

defendants and others; that all Defendants were associated with the enterprise and engaged in the particular course of fraudulent conduct alleged in the Complaint and that Defendants 'work[ed] together to achieve their common goal' and their fraudulent conduct was "concerted"). Plaintiffs have described how Deo was the ringleader of the enterprise who was aided in his goal by the other Deo Defendants, each one having a specific role to play. (TAC ¶¶ 742-798).

Further, notwithstanding the Deo Defendants' contention that Plaintiffs have failed to distinguish between the RICO "person" and RICO "entity," that is clearly not the case. Plaintiffs have not asserted or implied that the "person" and the "enterprise" are the same.

The TAC describes how the enterprise, led by Deo, implemented the various schemes, with *assistance* from the Deo Defendants, which all served to pilfer the assets of Northshore, Sunrise, and Superb. These acts included defrauding Plaintiffs, their customers, and their lenders; personally taking cash deposits; and paying personal obligations with company funds. As noted, examples of the predicate acts were in misrepresenting the damaged and poor condition of used vehicles purchased on-the-cheap so as to obtain financing from Northshore's, Sunrise's, and Superb's Floor Plan lenders, in excess of the actual purchase price and keeping the difference. (TAC ¶¶ 133-166,448-513), and purchasing grey-market vehicles which resulted in a total loss to Plaintiffs. (TAC ¶¶ 445-488). Deo, with the *assistance* of the CPA Defendants, as another predicate act, falsified the dealership Plaintiffs' monthly financial reports to cover up these losses from discovery by Northshore's, Sunrise's, and Superb's managing members and Floor Plan lenders. (TAC ¶¶ 261-301, 595-620). These acts prolonged the discovery of the embezzlement, maximizing the theft as Northshore's, Sunrise's, and Superb's managing members and their Floor Plan lenders were induced to allow Deo to continue to borrow money from the Floor Plan lenders to purchase used vehicle inventory.

Ultimately, Northshore, Sunrise, and Superb were left without inventory and both the IAG Plaintiffs and the Superb Plaintiffs repaid the Floor Plan lenders millions of dollars for vehicles that had been sold by Deo without satisfying the loans received by the Superb and IAG Plaintiffs. (TAC ¶¶ 192-194; 299-301; 497).

Having exhausted all of Northshore and Sunrise's actual assets, Deo implemented two more fraudulent schemes to extract money from non-existent future income of Northshore and Sunrise. Deo, with assistance of the CPA Defendants, used additional fraudulent financial records to sell Northshore's future receipts for the $735,000 Libertas Funds and borrow $500,000 from Flushing in a secured loan against Northshore's assets. (TAC ¶¶ 325, 373-376). These predicate acts not only saddled Northshore with more debt, but Deo then used the Libertas Funds to buy into Superb and, along with the Flushing Bank loan, enabled him and the Deo Defendants to engage in the same illegal acts with the Superb Plaintiffs as they did with the IAG Plaintiffs (and additional illegal acts such as stealing Superb's confidential information to compete against Superb through the Deo Defendants other automobile dealerships) "which ultimately caused Superb to close." (TAC ¶¶ 385-394).

The Superb Plaintiffs allege that, as a result of the Deo Defendants' Double Floor Plan scheme, NMAC terminated its Floor Plan credit with Superb. (TAC ¶ 634). The Superb Plaintiffs also allege that the Deo Defendants' acts in submitting forged tax returns, bank statements, and false loan applications caused Superb to lose money and business. See, e.g., (TAC ¶¶ 647, 708, 1187).

> 3.    THE TAC SATISFIES THE CONTINUITY REQUIREMENT TO CONSTITUTE A PATTERN

Deo argues that the TAC does not allege a pattern of racketeering because it does not support a claim of open-ended pattern of racketeering or closed-ended pattern of racketeering.

Deo is wrong. Deo misstates the allegations as to <u>when</u> the pattern of racketeering commenced, wrongfully shortening the time actually described in the TAC.

The "[Second] Circuit generally requires that the crimes extend over at least two years." <u>Reich v. Lopez</u>, 858 F.3d 55, 60 (2d Cir. 2017). As set forth below, here, the Deo Defendants' crimes have run rampant for more than two (2) years.

Contrary to Deo's misstatement of the factual allegations in the pleadings, the TAC generally claims that the wrongful acts commenced in 2018, approximately five (5) years ago, when Deo first formed the Deo Dealerships, to which he would siphon monies. (TAC ¶ 79).

And the first specifically identified predicate act is alleged to have occurred in August 2021, not December 2021. Deo wrongfully references a predicate act in ¶ 146,[8] being December 21, 2021, which is merely an example of one wrongful act, among many. The actual first predicate act described in detail was the beginning of the manipulation of the financial statements of Northshore and Sunrise by Deo and the CPA Defendants in August 2021. (TAC ¶ 272). As such, the period of time between the first predicate acts in August 2021 and the final predicate acts in August 2023 is *no less than* twenty-five (25) months, and probably more, satisfying the minimum two-year threshold cited by Deo. <u>Reinfeld v. Riklis</u>, 722 F. Supp. 1077 (S.D.N.Y. 1989) (A scheme to defraud different plaintiffs will satisfy continuity by combining the period of racketeering if using a similar method (falsifying financial statements) and a similar result (fraud as to its actual financial condition)); <u>see also</u> <u>Related Cos., L.P. v. Ruthling</u>, 2017 U.S. Dist. LEXIS 207857, *51 (S.D.N.Y. 2017) (finding that "plaintiffs' amended complaint includes sufficient allegations of continuity to survive defendants' motion to dismiss" because, although most of the allegedly fraudulent conduct occurred during a 20-month period, several fraudulent transfers occurred prior

---

[8] Deo's opposition actually references ¶ 144, but that is clearly an error as his argument refers to a transaction on December 21, 2021, which is alleged in ¶ 146.

to that time 20-month period sufficient to satisfy a claim for close-ended continuity); <u>Lateral Recovery LLC v. Queen Funding, LLC</u>, 2022 U.S. Dist. LEXIS 129032, *11 (S.D.N.Y. 2022) ("Defendants entered into seven different Merchant Agreements with Plaintiffs over the course of two years, which sufficiently alleges closed-ended continuity and a pattern of racketeering activity"). Further, because Defendants have demonstrated a pattern and practice of going from dealership to dealership to carry out their fraudulent conduct, the pleadings provide a plausible inference that the Defendants will continue to engage in such conduct.

### 4.  A NEXUS BETWEEN THE ACTS AND THE INJURY IS PROPERLY PLEAD

As described at length above, contrary to the Deo Defendants' argument, Plaintiffs have established a nexus between the Deo Defendants' role in the enterprise and Plaintiffs' injuries which caused Northshore, Sunrise, and Superb to sustain millions of dollars of losses and debts. Northshore's, Sunrise's, and Superb's losses derive from the predicate acts committed by the Deo Defendants, and the other Defendants, for the benefit of the enterprise.

Thus, Deo's argument fails as Plaintiffs have established that their injuries were proximately caused by the Deo Defendants', and the other defendants' predicate fraudulent acts and have established a substantive RICO claim under §1962(c).

### 5.  THE TAC SUFFICIENTLY ALLEGES A CONSPIRACY

The Deo Defendants' argument, that Plaintiffs failed to sufficiently plead conspiracy, fails. Deo Defendants' reliance on <u>Wood v. GMC</u>, 2015 U.S. Dist. LEXIS 37782 (E.D.N.Y. Mar. 25, 2015) does not support their argument that Plaintiffs did not show that the Defendants had a meeting of the minds. The court in <u>Wood</u> dismissed a conspiracy claim because plaintiffs had offered merely "one conclusory allegation that Defendants 'conspired' to commit the RICO violations", which is insufficient. <u>Id</u>. at 27.

The TAC has no less than ten (10) specific instances, prior to the causes of action, in which each wrongful action is specifically alleged to have occurred with the agreement of the parties. (TAC ¶¶ 116, 250, 271, 325, 328, 335, 344, 355, 375, 430). "RICO conspiracy, [ ] are subject only to the more liberal notice-pleading requirements of Rule 8." Angermeir v Cohen, 14 F. Supp. 3d 134, 145 (S.D.N.Y. 2014). An agreement may be shown "by circumstantial evidence of the defendant's status in the enterprise or knowledge of the wrongdoing." City of New York v. Chavez, 2012 U.S. Dist. LEXIS 42792, *23 (S.D.N.Y. 2012) (internal quotation marks omitted). Only an inference of an agreement is required, and it is satisfied in the TAC. Id. at *22 ("Thus, to the extent the Complaint adequately alleges that the Chavez defendants have committed CCTA violations in furtherance of the CD2U enterprise, it also alleges facts supporting an inference of an agreement to join the RICO conspiracy"); Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc., 17 F. Supp. 3d 207, 230 (E.D.N.Y. 2014) quoting United States v. O'Malley, 796 F.2d 891, 899 (7th Cir. 1986)) ("'When a defendant has personally committed several acts of racketeering in furtherance of the enterprise's affairs, the inference of an agreement to join the conspiracy is unmistakable'").

    ii.   Libertas

In opposing the Motion to Amend, Libertas fails to challenge that the amended pleadings sufficiently allege the causes of action against them. Instead, Libertas argues that the motion should be denied merely because new allegations were raised which were not raised before (which applies to virtually all motions to amend), or that the allegations are conjecture.

Quite the opposite. From the very beginning, Libertas' actions have exhibited their complicit nature with Deo. Libertas funded Northshore with the Libertas Funds, at usurious rates, but paid over those funds to Sunrise, at Deo's direction, because Deo did not have the requisite authority to withdraw those funds from Northshore's account.

Libertas took no action to retrieve these funds when contacted by the IAG Plaintiffs when they became aware of the wrongful funding. And rather than seek their recovery from Deo, who not only wrongfully, and admittedly, obtained the funds through the actions of Thomasson, using his attorney escrow account for laundering purposes, Libertas only sought recovery from the IAG plaintiffs. And finally, the day after the Libertas Funds were paid over to Deo by Thomasson, Deo used those funds to buy into Superb and begin his stripping away of their business. (TAC ¶¶ 338-368). The TAC sufficiently describes the events with enough detail to enable Libertas to understand the nature of the claims raised and assert a defense.

While Libertas objects that the TAC does not state when and how the events transpired, the TAC makes clear they occurred between the date Deo bounced his $100,000 check to Urrutia to buy into Superb on November 14, 2022 (TAC ¶ 322) and when Libertas provided the Libertas Funds on November 18, 2022. (TAC ¶ 337). And despite Libertas's protestations, it is not merely conjecture; the undisputed circumstances and timing support the factual allegations.

Finally, the Fifteenth Cause of Action seeks declaratory relief, not injunctive relief, declaring that the Libertas agreement is unenforceable against Northshore or Sunrise. Libertas provides no reason why this claim is not sufficiently plead.

   iii.   <u>Chase</u>

As set forth in further detail, *supra*, the allegations adequately plead an association-in-fact enterprise.

The Complaint alleges that Chase assisted in the Deo Defendants' schemes to defraud the Plaintiffs by, *inter alia*, creating, submitting, and/or accepting forged financial documents – knowing that those documents were forged – in order to assist the Deo Defendants in obtaining funds rightfully belonging to the Plaintiffs.

Specifically, Plaintiffs allege that "Chase Bank's employees and agents participated in a scheme by permitting Deo to process checks from Superb's bank account when it knew that he had no authority to sign checks. Deo was not an authorized signatory on Superb's account at Chase Bank." (TAC, ¶ 781). The TAC clearly alleges that Chase was a participant in the operation of the Deo Defendants' enterprise.

Further, notwithstanding Chase's claims to the contrary, the TAC adds additional allegations against Chase, specifically regarding its participation in the Deo Defendants' enterprise and their operation and/or management thereof.

For example, the TAC alleges that, like Flushing, Deo had personal relationships with Chase, and Chase was aware of Deo's overall schemes. (TAC ¶¶ 781; 1134-1144). Chase directly assisted in (and aided and abetted) the Deo Defendants in carrying out their schemes, which courts have repeatedly held is sufficient to state a RICO claim under such circumstances.

This is because it is possible to "operate or manage an enterprise and yet, through delegation, avoid directly committing predicate acts." 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1528 n.17 (S.D.N.Y. 1995). Prohibiting RICO liability for aiding and abetting predicate acts would therefore unduly narrow the reach of the statute. See Alix v. McKinsey & Co., Inc., 2023 U.S. Dist. LEXIS 145872, *35 (S.D.N.Y. Aug. 18, 2023).  Thus, a RICO claim may lie against a defendant who "personally committed or aided and abetted the commission of two predicate acts." See McLaughlin v. Anderson, 962 F.2d 187, 192 (2d Cir. 1992).

The Superb Plaintiffs specifically allege in the TAC that "Chase Bank, permit[ed] Deo to draw checks on Superb's account, when it knew or had reason to know that Deo was not an authorized signer on Superb's account with Chase Bank" (TAC ¶¶ 781, 1139).

Chase knew because "Chase had documentation contradicting Deo's authority to sign any such checks" (TAC ¶ 1141).   Thus, the Superb Plaintiffs have sufficiently alleged Chase's knowledge of the scheme and participation in furtherance thereof. Accordingly, Superb Plaintiffs sufficiently plead an association-in-fact enterprise.   Therefore,   the   Superb   Plaintiffs   have sufficiently alleged a substantive RICO claim based on wire fraud as against Chase and the TAC remedies any purported deficiencies regarding same in the FAC.

          a.   Common Law Claims/UCC Preemption

Chase argues that Superb's common law claims for negligence and conversion are barred by the UCC. While the Second Circuit has never ruled definitively that such claims are preempted, the Court has held "that Article 4 precludes common law claims that would impose liability inconsistent with the rights and liabilities expressly created by Article 4." Fischer & Mandel, LLP v. Citibank, N.A., 632 F.3d 793, 801 (2d Cir. 2011).   The Eastern District, however, has recently emphasized that although the UCC preempts claims regarding the processing of a wire transfer, "to the extent [a] Plaintiff's breach of contract claim is based on [a] Defendant's actions 'before and after the processing of the wire transfer, such claims are not preempted'" (internal citations omitted)). Jakob v. JPMorgan Chase Bank, N.A., 639 F. Supp. 3d 406, 412 (E.D.N.Y. 2022); see also Elden v. Merrill Lynch,  Pierce, Fenner & Smith, Inc., 2011 U.S. Dist. LEXIS 35886, *31 (S.D.N.Y. 2011) ("Defendant does not point to any way Plaintiffs' common law claims impose rights or liabilities inconsistent with those under the U.C.C., and no such inconsistencies are apparent to the Court. Accordingly, the Court finds that Plaintiffs' claims are not precluded").

In the vein of Jakob, Plaintiffs' common law claims for negligence and conversion, which involve conduct preceding and following the processing of checks, do not impose rights or liabilities inconsistent with the UCC. As such, they are not preempted by the UCC.

As to Chase's arguments concerning the lack of a concrete benefit and that it purportedly did not engage with the other Defendants, based on the well-pled allegations of the Deo Defendants conspiring with agents of banks to further their fraudulent schemes, Plaintiffs are entitled to a favorable inference in assessing whether they state a claim for relief against Chase.  See, e.g., Billard v. Rockwell Intl. Corp., 683 F.2d 51, 57 (2d Cir. 1982); see also Nixdorf Computer Corp. v. Alba Forwarding Co., 1981 U.S. Dist. LEXIS 15435, at *5 (S.D.N.Y. Oct. 1, 1981).

As Chase has failed to demonstrate how the common law claims for negligence and conversion are inconsistent with the rights and liabilities of the UCC, Plaintiffs have sufficiently plead a cause of action of common law negligence and common law conversion as against Chase.

   iv.   <u>Flushing</u>

Flushing's argument, alleging bad faith as a basis to deny the Motion to Amend, is unsupported. "[T]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." See Pasternack v. Shrader, 863 F.3d 162, 174 (2d Cir. 2017). "The party opposing the amendment has the burden of demonstrating any bad faith, prejudice of the proposed amendment, or futility of the proposed amendment." Hough v Petty, 2023 U.S. Dist. LEXIS 207119, at *5 (E.D.N.Y. Oct. 10, 2023) (citations omitted). Flushing's opposition does not claim prejudice will result from the filing of the TAC. It merely argues that Plaintiffs should have known the information prior to the filing of the TAC, and included such in the earlier filings.

Here, there was no undue delay or bad faith by Plaintiffs in amending the FAC given that Plaintiffs' Cross-Motion was filed before discovery commenced and arises out of the complex nature of the claims. Flushing's objection does not comport with the liberal standards applicable to amended pleadings. Intl. Tech. Mktg. v Verint Sys., 850 Fed. Appx. 38, 43 (2d Cir. 2021) ("a

party's motion to amend its complaint is governed by the liberal standard supplied by [Rule] 15, which states that "a court should freely give leave to amend when justice so requires.")

This action has not yet passed the pleading stage and this Court anticipated such a cross-motion when setting the briefing schedule. Flushing's reliance on <u>Bymoen v. Herzog, Heine, Geduld, Inc</u>., 1991 WL 95387, at *1 (S.D.N.Y. 1991) is misplaced, as the court in <u>Bymoen</u> denied leave to file a fourth amended complaint three years after the third amended complaint was filed on facts that occurred five years earlier, finding such relief prejudicial to the defendant. This case does not support Flushing's argument, as no such facts apply herein.

Moreover, the TAC is sufficiently detailed to cure any alleged deficiencies in the FAC. As stated in further detail, *infra*, there are detailed allegations in the TAC regarding Flushing sufficient to state causes of action as against Flushing for its RICO claims.  Flushing argues that Plaintiffs' proposed amendments are futile as they have failed to state a claim against Flushing for violating RICO because they failed to plead that Flushing was part of an enterprise. However, as discussed *supra*, Plaintiffs have sufficiently alleged an association-in-fact enterprise of which Flushing played an important part. An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." <u>See Boyle v. United States</u>, 556 U.S. 938, 945 (2009) (<u>quoting United States v. Turkette</u>, 452 U.S. 576, 583 (1981)). <u>See</u> Plaintiffs' Reply Memorandum of Law in Further Support of their Cross-Motion in response to Flushing Bank's motion to dismiss at 5-8.

Accordingly, Plaintiffs sufficiently allege that Flushing's predicate acts "share the same or similar purposes, results, participants, victims or methods, or otherwise are interrelated by distinguishing characteristics and are not isolated events." <u>H.J. Inc. v. Northwestern Bell Tel. Co.</u>, 492 U.S. 229, 240 (1989).

Here, Flushing is part of the larger, multi-faceted operation that is the Deo Defendants' enterprise in that it assisted the Deo Defendants in defrauding both the IAG Plaintiffs and the Superb Plaintiffs, demonstrating the longevity of their relationship. See, e.g., AIU Insurance Co. v. Olmecs Medical Supply, Inc., 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005).  Consequently, Plaintiffs have established the associations and relationships between and among the Defendants, and the continuity and, thus, longevity of the Defendants' racketeering activity in furtherance of the enterprise, to sufficiently allege that the Deo Defendants' enterprise is an association-in-fact and that Flushing was a member of same.

Moreover, Flushing Bank cannot escape liability by arguing that Puccio, a corporate officer, was a rogue employee.  See  Volmar Distribs., Inc. v. New York Post Co., Inc., 899 F. Supp. 1187 (S.D.N.Y. 1995) (holding that  a defendant could have potentially been held vicariously liable under section 1962(c) for the wrongful acts of its employees because "the congressional policy of holding only culpable 'persons' liable under RICO supplies the ultimate rationale for the non-identity rule and applies irrespective of an identity between the person and the enterprise"); see also United States v. Knox, No. Cr. 7:02CR00009, 2003 WL 22019046 (W.D.Va. Aug.22, 2003); United States v. Najjar, 300 F.3d 466 (4th Cir.2002) ("although the indictment describes [the corporation] as the enterprise, based on *respondeat superior*, it properly may be a defendant as well"); Amendolare v. Schenkers International Forwarders, Inc., 747 F. Supp. 162 (E.D.N.Y. 1990) ("vicarious liability is at least potentially available to hold the 'enterprise' liable so long as the enterprise is not the innocent 'victim' or 'conduit' of the criminal enterprise").

Finally, the Plaintiffs have sufficiently alleged wrongdoing as against Flushing sufficient to satisfy Rule 9(b). Here, the Plaintiffs allege in the TAC that "Deo misappropriated customer payments for certain vehicles sold by depositing those funds in to the unauthorized Flushing

23

account and then transmitting those funds into his own accounts" (TAC ¶ 663), that Flushing opened the bank account in Superb's name for Deo despite knowing he was not the 100% owner of Superb, and that these transactions "should have raised red flags for Flushing given the nature of the transactions: (i) money comes in; (ii) money is then immediately transferred out; and (iii) no expenses or payroll are paid out of the sole checking account for a dealership" (TAC ¶ 660). Each wire is a predicate act for purposes of the RICO claims. See ECF Docket Entry 11-9 at p. 16-23.  As set forth in detail, *supra*, these allegations of fraud are sufficiently particular to satisfy FRCP 9(b).

Plaintiffs have sufficiently established the existence of an association-in-fact enterprise and have sufficiently alleged the elements of a RICO claim sufficient to sustain a claim for same. Plaintiffs have also sufficiently alleged a RICO conspiracy claim. Accordingly, and because the allegations in the TAC sufficiently show that the Deo Defendants could not carry out their scheme without Flushing's assistance, Plaintiffs adequately state a claim against Flushing under RICO's conspiracy provision.  The argument that Plaintiffs cannot rely on documents incorporated by reference in the pleadings is wrong. As stated in further detail in Plaintiffs' Reply Memorandum of Law in further support of their Cross-Motion in response to Flushing Bank's motion to dismiss (as against Flushing Bank), the TAC properly incorporates by reference documents e-filed on the Pacer docket, including but not limited to declarations, contracts, etc. See Plaintiffs' April 30, 2024 Reply Memorandum of Law in Further Support of their Cross-Motion in response to Flushing Bank's motion to dismiss at 3-5.

     v.    CPA/Jones

The CPA Defendants' opposition lacks any specificity as to how any allegations raised by the IAG Plaintiffs are insufficient to support the claims raised against them.

And most arguments addressed to the Superb Plaintiffs are, likewise, nonspecific. As noted *supra*, a plaintiff "need not plead dates, times and places with absolute precision," so long as the complaint gives "notice to defendants of the claim and the grounds upon which it is based." Int'l Motor Sports Grp., Inc. 1999 U.S. Dist. LEXIS 12610 at *3. The TAC describes with sufficient particularity the wrongful actions of the CPA Defendants sufficient to give notice of the claim and grounds upon which they are based. (TAC ¶¶ 261-301, 595-627). Indeed, the CPA Defendants' role was indispensable in permitting the Deo Defendants' schemes to thrive as long as they did.

The CPA Defendants also argue that their factual declaration counters some of the Superb Plaintiffs' allegations. It is black letter law that a declaration disputing facts may not be considered in this motion. DiBlasio, *supra*, 344 F.3d at 304.

**B.   THE SUPERB PLAINTIFFS STATE A CLAIM FOR RELIEF UNDER THE DTSA**

With respect to the Superb Plaintiffs' DTSA claim, the Deo Defendants argue in their opposition that Superb has failed to identify particular trade secrets subject to the DTSA and has failed to specifically allege that it took reasonable measures to keep that information secret. For the reasons set forth below, the Superb Plaintiffs have sufficiently stated a claim under the DTSA. The Superb Plaintiffs have sufficiently particularized the trade secrets that are subject to the DTSA: the Tekion DMS system ("Tekion system"); and Superb's customer lists/leads.   See Plaintiffs' omnibus memorandum of law opposition to Defendants' motions to dismiss ("Pls. Omnibus Opp.") at 33-37.

With respect to the Tekion system, the Deo Defendants argue in their opposition that the Tekion system is more akin to Microsoft Excel or the Microsoft Window operating system and that, as such, it is nothing more than "computer software functionality" that "is apparent to any user of the program." Deo Defendants' Opposition, p. 14.

However, this argument, in addition to being reductive, fails to address the fact that the Superb Plaintiffs have specifically alleged that the Tekion system is "a unique DMS system that was specifically customized for Superb" (TAC ¶ 678) and that it cost Superb "$120,000.00 to set up" (TAC ¶ 681). The Superb Plaintiffs have also alleged that the Tekion system "contained a blueprint for Urrutia's success at his dealerships because Urrutia knew how to use the customized features of Tekion to operate dealerships profitably." (TAC ¶ 682). Thus, the Superb Plaintiffs have demonstrated that the unique features of Superb's customized Tekion system constitute trade secrets, unlike the generic systems of Microsoft Excel or Microsoft Windows operating systems, as poorly analogized by the Deo Defendants.

Critically, the Hon. Orelia E. Merchant, U.S.D.J. previously analyzed the Superb Plaintiffs' DTSA claim in the context of an Order to show cause for a preliminary injunction and found that the DTSA claim raised substantial questions as to whether the Deo Defendants misappropriated the Superb Plaintiffs' trade secrets. See Superb Motors Inc. v. Deo, 2023 WL 7181675, at *12–14 (E.D.N.Y. Sept. 29, 2023), modified in part on other grounds, No. 23-CV-6188 (JMW), 2024 WL 198398 (E.D.N.Y. Jan. 18, 2024); see also Pls. Omnibus Opp. at 35. Indeed, it would be inconsistent with Judge Merchant's preliminary injunction to find that the same claims under the DTSA failed to state a claim.

The Deo Defendants harp on the fact that the Superb Plaintiffs have not alleged that they utilized nondisclosure agreements to maintain secrecy in connection with the Tekion system.

Merely because some plaintiffs in some cases utilize a confidentiality and nondisclosure agreement does not mean that it is required. The Deo Defendants provide no authority that, absent a nondisclosure agreement, there can be no claim under the DTSA where the trade secret concerns a computer software's functionality.

The Superb Plaintiffs allege they took reasonable steps to protect the Tekion system, including, e.g., password protection and maintaining a fire wall. (TAC ¶ 690), which is sufficient to state a claim under the DTSA.

With regard to the customer lists, Superb has sufficiently alleged that Superb's customer lists constitute a trade secret. (TAC ¶¶ 685-687). Notwithstanding the fact that the Deo Defendants argue that <u>Plaza Motors of Brooklyn v. Bogdasarov</u>, 2021 U.S. Dist. Lexis 230156 (E.D.N.Y. 2021) is distinguishable because, there, the plaintiff utilized a confidentiality and nondisclosure agreement, as stated in detail, *supra*, there is no requirement in a DTSA claim that there be an non-disclosure agreement in order for something to be a trade secret. <u>See</u> <u>IME Watchdog, Inc. v. Gelardi</u>, 2023 U.S. Dist. LEXIS 189054 (E.D.N.Y. Oct. 20, 2023); <u>DermSource, Inc. v. CityMedRx, LLC</u>, 2023 U.S. Dist. LEXIS 8652 (Jan. 18, 2023). Therefore, the Superb Plaintiffs have sufficiently established that they took reasonable measures to protect their trade secrets, and the Superb Plaintiffs have stated a claim under the DTSA.

<u>**CONCLUSION**</u>

Based on the foregoing, Plaintiffs respectfully request that the Court grant their cross-motion for leave to amend the pleadings, together with such other and further relief as this honorable Court deems just, equitable, and proper.

Dated:  Lake Success, New York
      May 13, 2024

Respectfully submitted,
**MILMAN LABUDA LAW GROUP PLLC**
By:   */s/ Jamie S. Felsen, Esq.*
Jamie S. Felsen, Esq.
Nicole M. Koster, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
nkoster@mllaborlaw.com

Dated: Jamaica, New York
      May 13, 2024

**SAGE LEGAL LLC**
By: _/s/ Emanuel Kataev, Esq._
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)

*Additional Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: New York, New York
      May 13, 2024

**CYRULI SHANKS & ZIZMOR LLP**
By: _/s/ Jeffrey C. Ruderman, Esq._
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Plaintiffs*
*189 Sunrise Hwy Auto LLC,*
*Northshore Motor Leasing, LLC,*
*1581 Hylan Blvd Auto LLC,*
*1580 Hylan Blvd Auto LLC,*
*1591 Hylan Blvd Auto LLC,*
*1632 Hylan Blvd Auto LLC,*
*1239 Hylan Blvd Auto LLC,*
*2519 Hylan Blvd Auto LLC,*
*76 Fisk Street Realty LLC,*
*446 Route 23 Auto LLC,*
*Island Auto Management, LLC,*
*Brian Chabrier,*
*Joshua Aaronson, and*
*Jory Baron*