

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*
+ Admited in NY
^ Admited in NJ
* Of Counsel

October 9, 2024

**VIA ECF**
Attn: Honorable Judge James M. Wicks
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

Re: **Superb Motors Inc., et al. v. Anthony Deo, et al.**
Case No. 2:23-CV-6188 (JMW)

Dear Judge Wicks:

Our office represents the Deo Defendants[1] in the above-referenced matter. Pursuant to Your Honor's Memorandum Order dated January 18, 2024 (the "Order"), issued in connection with Superb Plaintiffs'[2] application to modify the preliminary injunction previously entered by the Honorable Orelia E. Merchant (the "Injunction") (ECF 55), the Deo Defendants were directed to relocate the six Deo Injuncted Vehicles to a licensed and insured vehicle storage facility on Long Island. (ECF 134). At the time, the two lots identified in the Injunction as the "Deo Lots" had already been surrendered by the Deo Defendants, and as a result, the Deo Defendants were storing the vehicles at Anthony Deo's residence. In compliance with the Order, the Deo Defendants relocated the six vehicles to Luxsport Motor Group, LLC ("Luxsport"), a storage facility located at 1 Hollow Lane, New Hyde Park, New York 11042.

We write to respectfully request a modification of the Injunction to permit the relocation of these vehicles to a dealership lot operated by Gold Coast Motors of Syosset, LLC ("GCM") at 108 New South Road, Hicksville, New York 11801 (the "GCM Lot").

Since January 31, 2024, the Deo Defendants have incurred $2,500.00 in monthly storage fees for the six vehicles stored at LuxSport. GCM, an authorized and fully licensed dealership (Facility License No. 7131151), has sufficient space to store the vehicles at its lot and already has an insurance policy in place that provides full coverage for the six Deo Injuncted Vehicles. *Deo Declaration,* ¶¶ *5-7, Exhibits A-B.* The requested modification will ensure that the vehicles remain protected while eliminating the unnecessary financial burden on the Deo Defendants. Relocating the vehicles to the GCM Lot will maintain the status quo without imposing additional costs on the Defendants. For these reasons, we respectfully

[1] Defendants Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp are collectively referred to as the "Deo Defendants."
[2] Plaintiffs Superb Motors, Inc, Team Auto Sales, LLC, and Robert Urrutia are collectively referred to as the "Superb Plaintiffs")

request that the Court modify the injunction to allow the Deo Defendants to relocate the six Deo Injunted Vehicles to the GCM Lot at 108 New South Road, Hicksville, New York 11801.

In addition, Defendants are renewing their application for the Court to issue an Order modifying the Injunction as well as holding the Superb Plaintiffs in both criminal and civil contempt. As the Court may recall, on or about February 27, 2024, the Deo Defendants filed a letter motion after discovering that the Superb Plaintiffs had transferred title to virtually all the Injunted Vehicles and placed the title in the name of Team Imports, LLC, dba Mitsubishi of Hartford ("Hartford"), a separate dealership owned and controlled by Urrutia. ECF 152. The Superb Plaintiffs and their counsel opposed the motion, arguing that their conduct did not violate Judge Merchant's Injunction due to ambiguity in the meaning of the term "Remain." They further claimed that their actions were merely a ministerial administrative act, *temporarily* transferring title of the Injunted Vehicles to Hartford because Superb was surrendering its DMV license. ECF 154. According to Plaintiffs and their counsel, "Urrutia was forced to pay $3 million for vehicles that Deo absconded with (including all the injuncted vehicles)," and because Superb was enjoined from selling the vehicles Urrutia allegedly paid for, Superb could no longer continue operating and would be shutting down. ECF 154. Plaintiffs claimed that the temporary transfer was necessary to prevent a scenario where Superb would be incapable of selling the Injunted Vehicles. The Superb Plaintiffs also produced documents they claimed supported their assertion that title to the Injunted Vehicles had already been transferred back to Superb. ECF 155-1. When Defendants challenged the legitimacy of these claims and documents, Plaintiffs scoffed, arguing that Defendants had offered no proof that the documents were not genuine. ECF 159.

On May 8, 2024, this Court issued an Order modifying the Injunction to permit Plaintiffs to sell the Injunted Vehicles with certain conditions attached. The Court also directed Plaintiffs to file proof of insurance and date-stamped photographs of the odometers for the Injunted Vehicles. To date, Plaintiffs have not complied with the Order. ECF 172. The Order denied the remainder of the relief requested by the parties, including the Defendants' application seeking a finding of civil and criminal contempt, as well as a modification of the Injunction to address the storage of the Injunted Vehicles or the transfer of their titles to a court-appointed third party to prevent Plaintiffs from further transferring or encumbering the titles. ECF 172. The Court denied Defendants' application to transfer the title of the Injunted Vehicles to a third party because Defendants did not provide sufficient support for the requested relief. Id., at 17.

Recent filings in a civil case that NMAC filed against Urrutia and Hartford[3] (the "NMAC Action") reveal that Plaintiffs were, in fact, engaged in the very conduct that Defendants raised in their prior letter motion. Despite Plaintiffs' previous claims, a review of the documents filed in the NMAC Action makes it evident that the title transfers were far

---

[3] *Nissan Motor Acceptance Company v. Team Imports LLC, et. al.*, Docket No. HHD-CV24-6189271-S, Conn. Super. Ct. (Judicial Dist. of Hartford, 2024). The case filings can be found at the following link: https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV246189271S



Attorneys:
Brian M. Levine Esq.+  Rosanna Ruotolo Esq.+*^   + Admitted in NY
Manijt Singh, Esq.+    Andrew V. Poznanski, Esq.+*  ^ Admitted in NJ
                                                    * Of Counsel

from being "temporary," "administrative," or "ministerial" acts; rather, they were part of a scheme by Urrutia and the Superb Plaintiffs to encumber the Injuncted Vehicles and abscond with the funds received from NMAC.

In the NMAC Action, Urrutia and Hartford are accused of, inter alia, placing vehicles on Hartford's floorplan, selling those floored vehicles, and failing to repay the loans provided by NMAC. As a result, NMAC filed a claim against Urrutia and Hartford seeking damages for breach of contract and to foreclose on the security interest NMAC holds in each of the floored vehicles. A true and correct copy of the Complaint in the NMAC Action can be found on the court's website under entry number '100.31,' as well as at the following direct link:https://civilinquiry.jud.ct.gov/DocumentInquiry/DocumentInquiry.aspx?DocumentNo=28066012

In the NMAC Action, NMAC filed an Order to Show Cause seeking a preliminary injunction concerning all vehicles in which NMAC asserts a security interest. A true and correct copy of the papers filed in connection with the Order to Show Cause can be found on the court's website under entry numbers "100.33" and "100.35." (direct links: Affidavit in Support, Application). On October 3, 2024, NMAC's application was resolved via a So-Ordered Stipulation (the "NMAC Stipulation"), in which Urrutia and Hartford agreed to surrender physical control of the titles, keys, and Manufacturer's Statements of Origin for 117 specifically identified vehicles. A true and correct copy of the Stipulation can be found on the court's website under entry number "114.00" (direct link: So-Ordered Stipulation). Additionally, the Stipulation placed restrictions on both the sale of the 117 vehicles and the proceeds resulting from their sale. Notably, **24 out of the 28[4] Injuncted Vehicles** are included on that list.

Even more, the list of vehicles includes the specific date that each car on the list was encumbered by Urrutia and Hartford. Said another way, the very reason that the 24 Injuncted Vehicles are found on the list is because Urrutia and Hartford *encumbered them by taking loans out against them using the floorplan with NMAC*. Coincidentally, all but two of the Injuncted Vehicles were encumbered on the floorplan with NMAC during October 2023 and November 2023, the exact time that Plaintiffs misrepresented to this Court that they were performing "ministerial acts" and temporarily transferring title from and to Superb. The two other Injuncted Vehicles on the list were floored in March 2024 and April 2024, well after the reason justifying the alleged title transfers arose, and well after the the Defendants' filed the prior contempt motion.

In addition, we respectfully direct the Court's attention to the 2018 BMW 7 Series with the VIN ending in 8313, located in the middle of the second page of the list. That vehicle was placed on Hartford's floorplan on November 14, 2023. Yet, just one week later, in his Declaration dated November 25, 2023, Urrutia swore to this Court that the BMW was one of the 43 missing vehicles that Anthony Deo had absconded with. ECF 112, ECF 112-1. Not

---

[4] While there are 30 in total, Defendants are not in possession of information relating to the two flatbed trucks.

260 N. Broadway, Suite #2A    P. (347) 732-4428  P. (516) 597-4418  F. (917) 477-2273   www.levinesingh.com
Hicksville, New York 11801

Case 2:23-cv-06188-JMW Document 202 Filed 10/09/24 Page 4 of 5 PageID #: 5509

only was that a lie, but several months later, the Superb Plaintiffs lied again to this Court. In the March 22, 2024 Declaration of Bruce Novicky, they claimed that "in the course of peeling away the onion layers of deceitful conduct by the Deo Defendants" they discovered that the vehicle had been sold but remained on Superb's general ledger. They further alleged that the Deo Defendants left it on the ledger because they stole the money! ECF 157-1, at ¶¶ 31, 44-45, 47 ("The only reason these sold vehicles remain on the general ledger is because the monies received for those vehicles did not go to Superb and were stolen by the Deo Defendants). This was false, as the Superb Plaintiffs and Urrutia had the vehicle in their possession as early as November 15, 2023, and even went so far as to floor it on Hartford's floorplan with NMAC.

For the Court's convenience, annexed as Exhibit C to the accompanying Declaration of Brian M. Levine, Defendants have reproduced the list of the 28 Injuncted Vehicles ("Injuncted Vehicles List"), each marked with a corresponding number, along with Exhibit 1 from the Stipulation in the NMAC Action, which has been similarly marked with the corresponding numbers from the Injuncted Vehicles List. Additionally, the Court will note that the BMW with the VIN ending in 8313 is marked as number 40, the same number the Court used in its May 8, 2024 Order resolving Defendants' prior letter motion. ECF 172, at 5.

I cannot recall a single case in all my years of practicing law where a litigant so blatantly violated a court's order and then attempted to cover up their violation by committing further perjury and filing fabricated documents. The sheer number of instances of identifiable perjury in this case is utterly astounding. Plaintiffs clearly did not simply perform a ministerial act that briefly transferred title to the Injuncted Vehicles. Instead, **they transferred title and encumbered 24 of the 28 Injuncted Vehicles**. When caught, they fabricated documents purportedly showing that title had been transferred back. However, this was false, as evidenced by the fact that those 24 Injuncted Vehicles remained open on Hartford's floorplan with NMAC.

This Court is once again reminded that, according to Plaintiffs, all of the Injuncted Vehicles were completely paid for by Urrutia, the self-proclaimed benefactor of the dealerships and martyr for Superb. It's hard to forget, as Plaintiffs have repeatedly claimed that Urrutia was forced to come up with $3,000,000 to purchase all the Injuncted Vehicles because of the alleged misconduct by the "evil" Anthony Deo, which they claim caused Superb's lenders to pull its floorplans. Ironically, this is the same conduct that NMAC has accused Urrutia of engaging in—well after Defendants were no longer involved. ECF 154, at 5 ("This argument is, of course, belied by the fact that NMAC and Next Gear terminated their contracts with Superb, after Urrutia was forced to pay $3 million for vehicles that Deo

absconded with [including all the injuncted vehicles], the result of which forced Superb to close.").

Plaintiffs impermissibly encumbered the Injuncted Vehicles and then absconded with the funds received from NMAC. Their actions have placed nearly every Injuncted Vehicle in this case at risk of foreclosure by NMAC. This Court cannot sit idly by and allow such egregious misconduct to go unpunished and without remedy. If litigants are allowed to violate court orders and commit perjury without consequence, it undermines the integrity of the legal system and threatens its ability to function properly..

Based on all the foregoing, Defendants once again respectfully request that this Court issue an Order: (i) finding the Superb Plaintiffs in civil and criminal contempt; (ii) directing the Superb Plaintiffs to return the Injuncted Vehicles to Superb; (iii) ordering the Superb Plaintiffs to deliver the original titles and keys of the Injuncted Vehicles to a Court-appointed third party, to be held in trust at Plaintiffs' expense; (iv) ordering the Superb Plaintiffs to store the Injuncted Vehicles in a secure, third-party-owned storage facility located within the State of New York, and to file proof of insurance coverage, along with date-stamped photographs clearly showing each Injuncted Vehicle's odometer and its location in the storage facility; (v) ordering the Superb Plaintiffs to immediately repay all amounts due to NMAC to satisfy the loans impermissibly taken against the Injuncted Vehicles, or alternatively, to provide an accounting for all funds received when the Injuncted Vehicles were placed on the floorplan, and immediately deposit an equivalent amount with the Court; (vi) awarding the Deo Defendants' costs and attorneys' fees incurred in connection with the prior letter motion and this motion; (vii) issuing appropriate sanctions as the Court deems just and proper; and/or, if necessary, (viii) granting Defendants leave to file a motion for any of the aforementioned relief.

Thank you for Your Honor's consideration. We are available for a conference or to provide any further information the Court may require.

Respectfully Submitted,

Brian M. Levine, Esq.

**Via ECF:**
*To All Parties*