# Sage Legal LLC

**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

October 15, 2024

**VIA ECF**
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

      **Re:** **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
            **Case No.: 2:23-cv-6188 (JMW)**
            **Deo,** *et al.* **v. Baron,** *et al.*
            **<u>Case No.: 2:24-cv-6903 (JMW)</u>**

Dear Judge Wicks:

      Together with Milman Labuda Law Group PLLC, this office represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") in the above-referenced case. The Superb Plaintiffs write[1] to oppose the Deo Defendants'[2] misguided letter motion for contempt and to modify the preliminary injunction. The Superb Plaintiffs also respectfully cross-move to consolidate this case with a related case, and for sanctions against the Deo Defendants as further outlined herein.

**<u>Legal Standard</u>**

      "There are three essential elements which must be established before a party can be held in civil contempt: 1) there must be an order that is clear and unambiguous; 2) the proof of non-compliance with that order must be clear and convincing; and 3) it must be shown that the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered." <u>See</u> <u>Schmidt v. Stone</u>, No. 14-CIV.-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted). All three elements must be met.

---

[1] The Superb Plaintiff respectfully request leave of this Court to make the instant request as a letter motion rather than a formal motion (as required by Local Civil Rule ("LCR") 7.1) in accordance with Rule 1 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), which requires that the Rules be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding. <u>See</u> Fed. R. Civ. P. 1.

[2] The Deo Defendants are defined as Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

The Deo Defendants also seek to hold the Superb Plaintiffs in criminal contempt. To do so, they must demonstrate *beyond a reasonable doubt* that: "(1) the court entered a reasonably specific order; (2) [the Superb Plaintiffs] knew of that order; (3) [the Superb Plaintiffs] violated that order; and (4) [their] violation was willful." See United States v. Lynch, 162 F.3d 732, 744 (2d Cir. 1998). The burden to hold an individual in criminal contempt "is greater than the burden on a party seeking only civil redress." See Fox Indus. v. Gurovich, No. 03-CIV.-5166 (TCP) (WDW), 2005 U.S. Dist. LEXIS 59165, at *13 (E.D.N.Y. June 2, 2005) (emphasis added).

**The Deo Defendants' Application is a Motion for Reconsideration in Disguise & Must be Denied**

In their application, the Deo Defendants state that they "are *renewing* their application for the Court to issue an Order modifying the Injunction as well as holding the Superb Plaintiffs in both criminal and civil contempt. See ECF Docket Entry 202 at 2 (emphasis added). Their application is therefore a motion for reconsideration in disguise.

"Motions for reconsideration are governed by [Rule] 59(e) [of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule")] and Local Civil Rule ["LCR"] 6.3." See Zou v. Han, No. 23-CIV.-2370 (JMA) (JMW), 2024 WL 3328589, at *5 (E.D.N.Y. July 8, 2024) (citing LM Ins. Corp. v. Safety Nat'l Cas. Corp., No. 1:21-CIV.-1802 (KAM) (RML), 2023 WL 8440864, at *1 (E.D.N.Y. Dec. 6, 2023)). A party moving for reconsideration must "set[ ] forth concisely the matters or controlling decisions which [the party] believes the Court has overlooked." See LCR 6.3. Reconsideration is justified where: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. See Cho v. Blackberry Ltd., 991 F.3d 155, 170 (2d Cir. 2021).

The reconsideration standard is "strict" to "dissuade repetitive arguments on issues that have already been considered fully by the court." See Nielsen v. New York City Dep't of Educ., No. 04-CIV.-2182 (NGG) (LB), 2007 WL 2743678, at *1 (E.D.N.Y. Sept. 18, 2007) (quoting Lykes Pasco v. Ahava Dairy Prods. Corp., 97-CIV.-652, 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998)).

Reconsideration is left within the sound discretion of this Court. See Rivas v. Melecio, 23-CIV.-5718 (JMA), 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024). Notably, "a party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." See Superior Site Work, Inc. v. NASDI, LLC, No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 2242872, at *2, 2017 U.S. Dist. LEXIS 77453, at *4 (E.D.N.Y. May 22, 2017) (internal quotations omitted); see also Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple). Put simply, a reconsideration motion is not appropriate to simply secure a "do-over." See Zou v. Han, 2024 WL 3328589, at *5.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
October 15, 2024
P a g e | 3

Here, reconsideration must be denied on numerous grounds. *First*, the Deo Defendants seek reconsideration of this Court's May 8, 2024 Order (the "Order") denying their application for contempt. See ECF Docket Entry 172. The Local Civil Rules provides in relevant part that "a notice of motion for reconsideration ... of a court order determining a motion shall be served *within fourteen (14) days* after the entry of the Court's determination of the original motion" and that "[t]here shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." See Local Civil Rule 6.3. The Deo Defendants filed the instant motion on October 9, 2024, which is 154 days later, and 140 days late. For this reason alone, the reconsideration request must be denied. *Second*, the Deo Defendants failed to serve a notice of motion nor a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked. *Third*, the Deo Defendants impermissibly seek to advance new facts, issues, and arguments not previously presented to the Court.

For all of these reasons, the Deo Defendants' letter motion for reconsideration in disguise must be denied.

**The Deo Defendants' Second Motion for Contempt Must be Denied, as the First Motion Was**

Even were the Court to consider the motion on the merits (which it should not), the Deo Defendants' motion must be denied as it previously was.

Initially, the Deo Defendants assert that the Superb Plaintiffs have failed to file proof of insurance and date-stamped photographs of the odometers for the Injucted Vehicles. See ECF Docket Entry 202 at 2.

The Order provides that: "Plaintiffs were never required to provide odometer readings or proof of insurance coverage. However, because Plaintiffs have indeed stated previously that they are prepared to provide this information …, Plaintiffs are now directed to produce proof of insurance and odometer readings … Plaintiffs shall provide this information by way of declaration or an affidavit." See ECF Docket Entry 172 at 18. Notably, the Order fails to specify when the Superb Plaintiffs must do so, nor have the Deo Defendants made any demand for same.

Because there is ambiguity in the Order as to when the Superb Plaintiffs were required to provide the requisite information, and due to the Deo Defendants' abject failure to make any demand for same, their application for contempt based on the Superb Plaintiffs' failure to provide the information must be denied. Indeed, on a contempt application, "ambiguities and omissions shall be 'construed in favor of the alleged contemnor.'" See Superb Motors Inc. v. Deo, No. 23-CIV.-6188 (JMW), 2023 WL 7462675, at *3 (E.D.N.Y. Nov. 10, 2023) (citing Nat'l Liab. & Fire Ins. Co. v. Rick's Marine Corp., No. 15-CIV.-6352 (DRH) (ARL), 2021 WL 1906485 at *2 (E.D.N.Y. May 12, 2021); see also A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 291 (S.D.N.Y. 2000) (finding that the injunction was not clear and unambiguous).

3

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
October 15, 2024
P a g e | 4

The Deo Defendants claim that the Superb Plaintiffs must have transferred title from Superb to a cross-collateralized dealership in order to encumber it under the floor plan line of credit. This is a fatal leap in logic on their part, as all of the Superb vehicles remain in Superb's name, and the floor plan line is not segregated by dealership. Instead, the line is aggregated between all four (4) dealerships. As set forth in the accompanying declaration of Urrutia, the Superb Plaintiffs permissibly utilized their floor plan line of credit to fund the operations of the Cross-Collateralized Dealerships in order to prevent the imminent shutdown of Urrutia's remaining dealerships, as doing so was necessary to achieve the purpose of the Injunction. See Declaration of Robert Anthony Urrutia ("Urrutia Decl.") ¶¶ 17-53.

In that regard, it is worthy to note that on September 29, 2023, the Hon. Orelia E. Merchant ("Judge Merchant") issued a Memorandum and Order on Preliminary Injunction (hereinafter the "Injunction") wherein a conclusion was made that Superb has demonstrated irreparable harm due to the Deo Defendants' conduct and the then-possibility of losing Superb as a going concern. See ECF Docket Entry 55 at 19. The purpose of the injunction was to avoid forcing all of Urrutia's dealerships to shut down. See Superb Motors Inc. v. Deo, No. 2:23-CIV.-6188 (OEM), 2023 WL 7181675, at *8 (E.D.N.Y. Sept. 29, 2023) ("At the TRO stage, Superb initially advanced two theories of harm … [one of which] was predicated on the *imminent closure of Urrutia's dealerships*[3] given the default events discovered by NMAC and Next Gear. See Superb Motors Inc., 2023 WL 5952145 at *4") (citing e.g., ECF Docket Entry 16 at 4-5 (explaining how default repayments have left Superb Motors "with no operating capital" and will result in "imminent shut-down of all four (4) dealerships"); ECF Docket Entry 39 at 3 (claiming that denial of an injunction will result in "plaintiffs being forced to pay another $1 million and forced out of business due to no operating capital"); ECF Docket Entry 154-1 at 31:4-34:20 (discussing same)).

Next, the Deo Defendants also claim that the Superb Plaintiffs perjured themselves concerning a 2018 BMW 7 Series with a VIN ending in 8313 and point to a November 25, 2023 declaration stating that the vehicle is missing. See ECF Docket Entry 202 at 3-4 (citing ECF Docket Entry 112 ¶ 10, Exhibit "A" (ECF Docket Entry 112-1)).

However, as the Deo Defendants point out, this vehicle was ultimately recovered by the Superb Plaintiffs, as set forth in a March 25, 2024 declaration and the Order. See ECF Docket Entries 157-1 ¶¶ 31, 41 and 172 at 5. Their reference to a stale declaration to support a finding of perjury is thus erroneous.

Accordingly, both of the Deo Defendants' contentions in support of their contempt application are false: (i) the Superb Plaintiffs did not transfer any titles; and (ii) the vehicles were already encumbered by NMAC by means of the UCC Financing Statement and the Superb Plaintiffs permissibly placed the vehicles in their possession on the floor plan line of credit to maintain the operations of the Cross-Collateralized Dealerships.

---

[3] As this Court may recall, the Injunction refers to these four (4) dealerships as the Urrutia Cross-Collateralized Dealerships. See ECF Docket Entry 55 at 13 n. 5.

Based on the foregoing, the Deo Defendants' contempt motion must be denied because: (i) the Order is ambiguous; (ii) the Deo Defendants have failed to prove with clear and convincing evidence that the Superb Plaintiffs have transferred title; and (iii) the Superb Plaintiffs have demonstrated diligence in complying with the Injunction despite severe and catastrophic monetary loss caused at the hands of the Deo Defendants.

**The Deo Defendants Cannot Establish Prejudice in Order to Warrant a Finding of Contempt**

Lost in the moss of their arguments, the Deo Defendants fail to establish any prejudice resulting from the Superb Plaintiffs' permissible use of its floor plan line of credit in order to fund the operations of the Cross-Collateralized Dealerships where no transfer of title has occurred (and no evidence of any such transfer has been provided). While their argument that a violation of the Injunction has occurred is unsupported by evidence, the Deo Defendants' argument that they have somehow been prejudiced by such alleged contempt is non-existent. This is because the Deo Defendants have not paid for any of the vehicles, nor do they have any right, title, or interest in the vehicles. The Superb Plaintiffs' position on this point is cemented by the fact that Superb's capital call letter to Deo went unanswered. See ECF Docket Entry 112-7. In situations similar to the instant dispute, where there was "no harm" and "no foul," courts have denied motions for contempt. See, e.g., Saadeh v. Kagan, No. 20-CIV.-1945 (PAE) (SN), 2023 WL 6842405, at *5 (S.D.N.Y. Oct. 17, 2023) ("In her careful Report, Judge Netburn found that sanctions were unwarranted under (1) Rule 16 because defendants' violation of the Court's TRO was immaterial, (2) 28 U.S.C. § 1927 because Maggio's conduct was not clearly vexatious, and (3) the Court's inherent power because defendants' conduct was not "entirely without color." … Saadeh's objections do not establish that any of these conclusions was clearly erroneous or contrary to law" and "Judge Netburn explicitly found that, although defendants' actions were 'at the edge' of an improper purpose, they were not entirely without color"); see also In re Hill, 222 B.R. 119, 124 (Bankr. N.D.Ohio 1998) (admonishing that a request for sanction must be closely reviewed where the only *damages* resulting from a *willful* violation of the discharge injunction was attorneys fees, to avoid rewarding excessive litigiousness) (emphasis added); In re Haan, 93 B.R. 439, 441 (Bankr. W.D. N.C.1988) (declining to award sanctions for violation of stay where the only injury was attorneys fees, stating "'no harm-no foul' and no injury-no attorney's fees"). Thus, because the Deo Defendants fail to establish prejudice, no finding of contempt is warranted.

The Deo Defendants argue that "Plaintiffs impermissibly encumbered the Injuncted Vehicles and then absconded with the funds received from NMAC. Their actions have placed nearly every Injuncted Vehicle in this case at risk of foreclosure by NMAC." But the Deo Defendants do not represent NMAC, nor do they have any standing to raise arguments on behalf of NMAC. While NMAC may be harmed by the alleged conduct, if it were proven to be true, this does not rise to give the Deo Defendants any relief. In fact, the stipulated injunction shows that Urrutia takes his responsibility to NMAC very seriously. Indeed, had the Deo Defendants engaged in similar conduct when the instant dispute arose, perhaps the parties would not be here. Most importantly, and as set forth *supra*, all of Superb's vehicles were already encumbered by NMAC from the get-go. See Exhibit A. As such, the Deo Defendants' arguments are meritless.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
October 15, 2024
P a g e | 6

**Deo Defendants' Unclean Hands & Numerous Violations of Orders Deprive Them of Relief**

      The Deo Defendants' second misguided letter motion for contempt must be denied for the separate reason that their conduct caused the closure of Superb, is the first domino to the potential demise of remaining Urrutia Cross-Collateralized Dealerships, and due to their repeated and blatant violations of the Orders in this case. The doctrine of unclean hands allows a court to deny relief to a party which has entered litigation in bad faith. See Bank v. Dimension Serv. Corp., No. 23-CIV.-2467, 2023 WL 9009315, at *4 (E.D.N.Y. Dec. 29, 2023), report and recommendation adopted, 2024 WL 185316 (E.D.N.Y. Jan. 17, 2024) (citing Keystone Driller Co. v. Gen. Excavator Co., 290 U.S. 240, 243 (1933)). "[It] is an 'ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.'" See Legal Recovery Associates LLC v. Brenes Law Group, P.C., No. 22-CIV.-1778 (ER) (BCM), 2024 WL 1073119, at *4 (S.D.N.Y. Feb. 13, 2024) (citing Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. M.C.F. Assocs., Inc., 530 F. Supp. 3d 460, 464-65 (S.D.N.Y. 2021) (Nathan, J) (quoting Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co., 324 U.S. 806 (1945))). Here, the Deo Defendants have repeatedly failed to comply with the Injunction in numerous material respects.

      *First*, the Deo Defendants surrendered possession of one of the Deo Lots on September 30, 2023 – just one (1) day after Judge Merchant issued the Injunction requiring them to keep the Deo Injunced vehicles at this lot. See ECF Docket Entry 59. This was an independent violation of the Injunction because the Deo Defendants did not seek leave, as required, to move the vehicles from the Deo Lot to their home. See ECF Docket Entry 55 at 30 ("No injuncted vehicle may be removed from the appointed lot absent this Court's Order. … In the event an injuncted vehicle must be moved from its lot due to emergency or any other good cause, the current possessor must inform the Court prior to the removal in writing on the docket and explain any good cause for the movement of the vehicle …") (emphasis in original).

      *Second*, the Deo Defendants repeatedly drove the vehicles in violation of the Injunction. See ECF Docket Entries 58 (requesting permission to drive two of the Deo Injuncted Vehicles and admitting the inability to maintain the vehicles at a Deo Lot), 79 (submitting evidence that the Injuncted Deo Vehicles are not present at Deo's home as asserted), 98 (denying letter motion for contempt but clarifying the Injunction to require that the Injuncted Deo Vehicles are not permitted to be driven or otherwise used).

      *Third*, the Deo Defendants failed to comply with this Court's directives about the proper storage and insurance of the Deo Injuncted Vehicles. See Text Only Order dated November 15, 2023 (noting Deo Defendants' failure to file a letter with the Court advising as to compliance with Order concerning Injuncted Deo Vehicles); see also ECF Docket Entry 134 (noting Deo Defendants' failure to oppose motion as directed).

*Fourth*, the Deo Defendants perjured themselves concerning the vehicles. See, e.g., ECF Docket Entry 112 ¶¶ 25-35 (outlining demonstrable perjury concerning a particular vehicle). In addition, the Deo Defendants have repeatedly claimed that the Superb Plaintiffs fabricated the emergency nature of the injunctive relief they sought. See ECF Docket Entries 30 ¶ 49 ("the 'emergency' that purportedly exists with these cars by and through whatever correspondence/hearsay is presented purportedly from the Floor Plan providers was entirely arranged by Plaintiffs herein" … "If the Floor Plan providers know about cars as commonly stored elsewhere, these Plaintiffs necessarily told them to bring about the 'emergency'") and 154-1 at 71:12-16 ("My client has had no contact with NMAC or Next Gear, nothing, zero, nothing. And now they're saying it's a problem? If it's a problem, it's because these plaintiffs created it and told them there's a problem. It's a problem because they say it is"). This argument is, of course, belied by the fact that NMAC and Next Gear terminated their contracts with Superb, after Urrutia was forced to pay $3 million for vehicles that Deo absconded with (including all the injucted vehicles), the result of which forced Superb to close, and NMAC is now suing Urrutia and the other Urrutia Cross-Collateralized Dealerships. See ECF Docket Entry 18-2 (under seal); see also ECF Docket Entries 11 at ¶¶ 194-195, 14-1, 14-2, and 38-1.

Furthermore, the Deo Defendants left Superb with a myriad amount of DMV complaints, including stolen customer deposits, loans that were never authorized by the customer, vehicles taken on trade but never paid off, all of which go back many months prior to the Deo Defendants' departure while they siphoned all the cash and checks from Superb and deposited them in the unauthorized Flushing Bank account. The mess left by the Deo Defendants has fallen solely on the shoulders of Urrutia, notwithstanding Deo's claim of ownership, as Deo has failed to pay for any of the expenses and outright ignored a capital call letter served on him prior to the commencement of this case. See ECF Docket Entry 112-7.

Based on the demonstrable evidence of Deo's bad faith, and Judge Merchant's prior finding that the Deo Defendants failed to dispute the veracity or validity of the Superb Plaintiffs' claims, this Court should deny the Deo Defendants' letter motion because they have unclean hands. See ECF Docket Entry 55 at 19 ("Importantly, Deo does not dispute the veracity or validity of any of the foregoing harms").

Notwithstanding the foregoing, in the unlikely event that this Court is inclined to further consider the Deo Defendants' motion, the Superb Plaintiffs request – pursuant to LCR 83.6 – to have oral evidence taken, either before the Court or before a master appointed by the Court.

**The Deo Defendants' Request to Modify the Injunction Must be Denied**

Further, because the Deo Defendants seek to modify the preliminary injunction, the standard for same must also be analyzed. "A trial court's power to modify an injunction, like the power over all its orders,' is inherent." See New Falls Corp. v. Soni Holdings, No. 19-CIV.-449 (ADS) (AKT), 2020 U.S. Dist. LEXIS 186395, at *29 (E.D.N.Y. Sept. 30, 2020).

Preliminary injunctions are governed by Rule 65. District courts in this Circuit have applied the following standard for modifying the preliminary injunctions, namely, the movant must demonstrate "a material change in circumstances justifies the alteration." See New Falls Corp., 2020 U.S. Dist. LEXIS 186395 at *30; see also Lawsky v. Condor Capital Corp., No. 14-CIV.-2863 (CM), 2014 U.S. Dist. LEXIS 107253, at *15 (S.D.N.Y. Aug. 1, 2014) (stating that parties must show a change in circumstances warranting such relief). "An injunction should be modified only when the changed circumstances demonstrate that continuance of the injunction is no longer justified and/or [ ] will work oppressively against the enjoined parties." See Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 427 F. Supp. 2d 491, 501 (S.D.N.Y. 2006). The court should consider "whether the requested modification effectuates or thwarts the purpose behind the injunction." Id. at 257 (citing Chrysler Corp. v. United States, 316 U.S. 556, 562 (1942)); New Falls Corp. v. Soni Holdings, LLC, No. 21-CIV.-865, 2022 WL 2720517, at *2 (2d Cir. July 14, 2022) (summary order).

The Deo Defendants argue that the measly $2,500.00 monthly expense to store the vehicles and the advent of their new dealership in Hicksville constitutes a "material change of circumstances" warranting modification of the Injunction. This argument must be rejected for several reasons.

First, the Deo Defendants provide no authority in support of their position that their new dealership constitutes a material change in circumstances. See ECF Docket Entry 202 at 1-2.

Second, the Deo Defendants fail to establish that continuance of the Injunction is no longer justified and/or will work oppressively against them, as they have not supported their contentions with evidence that the $2,500.00 monthly expense has worked oppressively against them, i.e., demonstrating through non-falsified financial statements that the monthly expense causes them to be oppressed. Indeed, Deo only submits self-serving conclusory averments that the storage fees "have placed a significant financial burden on me and the other Deo Defendants." See ECF Docket Entry 202-1 at ¶ 5. This is curious to the Superb Plaintiffs, as according to Deo, he owns $9 million worth of real estate. See copy of Deo's fraudulent financials submitted to Flushing Bank in March 2023 annexed hereto as **Exhibit "B."** Deo also quizzically fails to list his alleged interest in Superb therein, despite opening a bank account with Flushing Bank as "100% owner" a month later. Id.

Third, Deo's new location consists of a shared parking space with numerous other commercial tenants who come and go at all times and creates an unreasonable risk of damage to the Deo Injuncted Vehicles, consisting of a 2023 Chevrolet Suburban, 2020 Mercedes-Benz GLE, 2019 Land Rover Range Rover, 2017 Rolls Royce, 2016 Audi A6, and 2016 Audi Q5. Placing them there flies in the face of the Injunction, as the stated purpose for it is to preserve the resale value of the Deo Injuncted Vehicles. See ECF Docket Entry 55 at 29 (stating that an injuncted vehicle "may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle"). Because granting the requested relief requires putting the vehicles in harm's way, thus thwarting the purpose behind the Injunction, the motion to modify the Injunction must accordingly be denied.

**This Court Should Consolidate the Deo Action with this Case**

In addition, the Superb Plaintiffs and the Island Auto Group Plaintiffs jointly request that this Court consolidate the instant case with the Deo Defendants' inappropriately filed separate action. On September 4, 2024, the Deo Defendants filed an action (the "Deo Action") in the Supreme Court of the State of New York, Nassau County, against Superb, Urrutia, many of the Island Auto Group Plaintiffs, and other Defendants. See Deo v. Baron, Case No.: 2:24-cv-6903 (JMW), ECF Docket Entry 1-2. It is respectfully submitted that the Deo Action contains many counterclaims that would have been brought in the instant action had dispositive motions not been pending. On September 30, 2024, the Island Auto Group Plaintiffs removed the Deo Action to this Court based on the existence of a federal question. See Id., ECF Docket Entry 1. The complaint there arises out of the same common nucleus of operative facts set forth in the Plaintiffs' complaint in the instant case. See, e.g., Id., ECF Docket 1-2 at 20-43 ¶¶ 44-129 (discussing ownership dispute over Northshore, Sunrise, and related issues as to the Island Auto Group Plaintiffs in this case), at 43-50 ¶¶ 130-156 (discussing dispute between the Deo Defendants and the Superb Plaintiffs); compare with ECF Docket Entry 183-1 at 11-44 ¶¶ 55-381 (discussing dispute between Island Auto Group Plaintiffs and Deo Defendants), and at 44-87 ¶¶ 382-741 (discussing dispute between Superb Plaintiffs and Deo Defendants).

Rule 42 provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." See Fed. R. Civ. P. 42(a).

"District courts enjoy substantial discretion in deciding whether and to what extent to consolidate cases." See Hall v. Hall, 138 S. Ct. 1118, 1131 (2018) (holding that final judgment in one of multiple consolidated cases was immediately appealable). The Court may even consolidate cases *sua sponte*. See Devlin v. Transp. Commc'ns Int'l Union, 175 F.3d 121, 130 (2d Cir. 1999).

The Deo Action satisfies the criteria for consolidation with this case. Both actions arise from the parties' business relationship with each other, and many parties[4] are identical in both cases. Although the earlier-filed case was filed approximately a year before this case, discovery in this case has not meaningfully advanced due to the pending motions to dismiss which remain *sub judice*. Thus, coordinating the remaining discovery and motion practice in both cases will, therefore, not prejudice the parties. As such, this Court should consolidate the Deo Action with this case and require the Deo Defendants to file an answer with counterclaims and a third-party complaint against non-parties to this case. See Navigator Bus. Servs. LLC v. Chen, No. 23-CV-01551 (HG), 2023 WL 7386663, at *5 (E.D.N.Y. Nov. 8, 2023) ("Plaintiff shall file on or before November 17, 2023, a consolidated amended complaint that asserts its claims against all of the defendants in each of the three fraudulent conveyance actions in a single complaint").

---

[4] Similarly, while some parties in the Deo Action are not parties in this case, many were bound to be subpoenaed and would thus be involved in the instant case.

Courts routinely consolidate cases in such circumstances. See, e.g., Malcolm v. Nat'l Gypsum Co., 995 F.2d 346, 350 (2d Cir. 1993) (citing Johnson v. Celotex Corp., 899 F.2d 1281, 1284-85 (2d Cir. 1990)).

This is so even if there does not exist an identical parallel between the parties. See Wilson v. Peloton Interactive, Inc., No. 1:21-CIV.-2369 (CBA) (PK), 2021 WL 7906555, at *2 (E.D.N.Y. Oct. 26, 2021) ("Because the Wilson and Drori Actions involve substantially similar claims and common questions of law and fact, consolidation is appropriate" notwithstanding the fact "[b]oth actions assert claims on behalf of [separate] investors who were defrauded by the same group of defendants").

In addressing consolidation, the Second Circuit has also instructed district courts to consider "whether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple-trial alternatives." See Johnson v. Celotex Corp., 899 F.2d 1281, 1284 1285 (2d Cir. 1990) (quoting Hendrix v. Raybestos-Manhattan, Inc., 776 F.2d 1492, 1495 (11th Cir. 1985)) (alterations in original).

The paramount concern is whether savings of expense and gains of efficiency can be accomplished without sacrificing justice. Id; see also Burns v County of Nassau, 337 F Supp 3d 210, 216 (E.D.N.Y. 2018) (ordering consolidation, to, *inter alia*, avoid duplication of judicial effort and vexatious litigation in multiple forums, achieving comprehensive disposition of the litigation, and eliminating the risk of inconsistent judgments."

Here, setting aside the vexatious nature of the Deo Defendants, at its core, there exists a very real possibility of inconsistent adjudications of the many shared factual and legal issues between these two cases. As such, this Court should consolidate the Deo Action with this case irrespective of the fact that there exists some Defendants in the Deo Action that are not parties here.

**The Deo Defendants Should be Sanctioned for Evading the Disqualification Order**

Finally, this Court should appropriately sanction the Deo Defendants for seeking to end-run this Court's Order disqualifying Defendant Harry R. Thomasson, Esq. ("Thomasson") from representing the Deo Defendants by filing the Deo Action in another forum and for engaging in vexatious litigation in violation of 28 U.S.C. § 1927 and this Court's inherent power.

On December 1, 2023, this Court entered an Order disqualifying Thomasson because he is an integral witness and his testimony could be prejudicial to his clients. See ECF Docket Entry 117 at 12-17 ("After all, he allegedly violated various statutes, including RICO and the DTSA, and is liable for conspiracy, conversion, and a host of other causes of action").

10

Critically, long before he was disqualified, Thomasson repeatedly reminded the parties and the Court that his complaint against the Plaintiffs was forthcoming. See, e.g., ECF Docket Entries 12-2 at 9 ¶ 7 (August 11, 2023) ("I cannot stop you from trotting off to court to try to obtain *ex parte* relief since you know *I will not be filing the federal lawsuit for at least a month* given, *inter alia,* my upcoming vacation, but if you see fit to ignore my letter dated August 9, 2023, and this correspondence, please at least respect that I hereby demand that any presentation you make to any court prior to my full participation as counsel for Anthony Deo include copies of my letter dated August 9, 2023, as well as this correspondence") (emphasis added); 24 at 2 ¶ 5 (September 7, 2023) ("Remember, your Honor, that *whatever is claimed by these Plaintiffs and will eventually be alleged in our own Complaint(s)*,⁵ damages at law will satisfy everyone, and we object to any equitable relief being granted accordingly") (emphasis added); 154-1 at 82:18-25 (September 14, 2023) ("I have got a massive lawsuit that I'm working on. I don't know where it's going to end up. He's been cut off and cut out by Next Gear, Ally, NMAC, Chase Bank and others without ever being talked to by any of them. That's going to be the problem for these plaintiffs when the time comes, Your Honor. Why is it these corporations all cut off Deo without talking with him? That's a real problem to explain").

Based on Thomasson's and the remaining Deo Defendants' three (3) separate admissions of a forthcoming lawsuit in federal court against the Superb Plaintiffs and others in August and September 2023, it can readily be inferred that their September 2024 complaint a year later was filed in an effort to evade the disqualification Order and impermissibly engage in forum shopping. Further, the filing of a separate complaint when the Deo Defendants should have brought these claims in this case warrant a finding that they are engaging in vexatious conduct in violation of 28 U.S.C. 1927 and this Court's inherent power.

Indeed, pursuant to that statute, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." See 28 U.S.C. § 1927. Further, the "Court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process and assure a level playing field for all litigants." See Shangold v. Walt Disney Co., 2006 WL 71672, *4 (S.D.N.Y. Jan. 12, 2006) (Pauley, J.), aff'd 275 Fed. Appx. 72 (2d Cir. 2008). This inherent authority also includes the power to sanction a party for committing a fraud on the court and other abuses of the judicial process including "bad faith, vexatious[], [or] wanton[]' acts or actions undertaken for 'oppressive reasons.'" See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 44-46, 50 (1991).

Because Thomasson and the remaining Deo Defendants clearly intended to proceed with their claims in federal court prior to the disqualification Order and thereafter filed the Deo Action in state court, this Court should find that they have engaged in vexatious conduct and abused the judicial process by bad faith conduct.

---

⁵ Critically, this constitutes a prescient admission by Thomasson that there are common questions of law and fact between this case and the Deo Action.

Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
October 15, 2024
P a g e | 12

As such, the Deo Defendants must be appropriately sanctioned, and the disqualification Order should extend to the prosecution of the Deo Defendants' claims against the Plaintiffs for the same reasons set forth in this Court's December 1, 2023 Order.

Plaintiffs thank this Court for its continued time and attention to this matter.

Dated: Lake Success, New York
October 15, 2024                    Respectfully submitted,

                                    **MILMAN LABUDA LAW GROUP PLLC**
                                      __/s/ Jamie S. Felsen, Esq._____

Dated: Jamaica, New York
October 15, 2024                    **SAGE LEGAL LLC**
                                      _/s/ Emanuel Kataev, Esq.___

                                    *Attorneys for Plaintiffs*
                                    *Superb Motors Inc.*
                                    *Team Auto Sales LLC and*
                                    *Robert Anthony Urrutia*

Dated: New York, New York
October 15, 2024                    **CYRULI SHANKS & ZIZMOR LLP**
                                      __/s/ Jeffrey C. Ruderman, Esq._____

                                    *Attorneys for Plaintiffs*
                                    *189 Sunrise Hwy Auto LLC,*
                                    *Northshore Motor Leasing, LLC,*
                                    *1581 Hylan Blvd Auto LLC,*
                                    *1580 Hylan Blvd Auto LLC,*
                                    *1591 Hylan Blvd Auto LLC,*
                                    *1632 Hylan Blvd Auto LLC,*
                                    *1239 Hylan Blvd Auto LLC,*
                                    *2519 Hylan Blvd Auto LLC,*
                                    *76 Fisk Street Realty LLC,*
                                    *446 Route 23 Auto LLC,*
                                    *Island Auto Management, LLC,*
                                    *Brian Chabrier,*
                                    *Joshua Aaronson, and*
                                    *Jory Baron*

**VIA ECF**
All counsel of record