LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+

Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

October 25, 2024

**Via ECF**
United States District Court
Eastern District of New York
Attn: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

      Re:    Superb Motors, et. al. v. Deo, et. al.
             Case No.: 2:23-cv-6188 (JMW)

Dear Judge Wicks:

      As this Court is aware, we represent the Deo Defendants in the above-referenced matter. We submit this reply to address the Plaintiffs' opposition to our contempt motion, which rehashes many of their previous arguments. Plaintiffs once again label our motion as procedurally improper, deny any violations, and then paradoxically concede that they engaged in conduct contrary to the Injunction, though they argue it was permissible. They further attempt to deflect responsibility by casting blame on the Defendants for circumstances entirely of Plaintiffs' own making. This tactic only underscores Sir Walter Scott's adage: "Oh, what a tangled web we weave, when first we practice to deceive." Plaintiffs' shifting narratives are clearly an attempt to reconcile new revelations with prior misrepresentations.

      At the outset, Plaintiffs argue that our motion is merely a request for reconsideration disguised by the word "renew." This claim is nonsensical. The present motion does not revisit past issues; it highlights new violations of the Injunction and additional perjury, supported by new evidence—particularly from the recent NMAC Action. Our motion for contempt is based on deliberate actions by Plaintiffs to encumber vehicles, which directly contradict the terms of the Injunction, placing those assets at risk and frustrating the very purpose of the Court's directives.

      Nothing submitted by Plaintiffs in opposition justify denying the relief requested by Defendants. If anything, the Plaintiffs' submissions only raise more questions and further solidify the perjury.

      With respect to the floorplan, contrary to Plaintiffs' unsupported statements, the floorplan was never aggregated across all dealerships; instead, each dealership maintained a separate floorplan. Plaintiffs have consistently claimed that NMAC terminated Superb's floorplan as of August 2023 (ECF 154, at 5). Given that Superb no longer had a floorplan, Plaintiffs' argument that the vehicles were subject to an "aggregated" floorplan is not only incorrect but also impossible.

260 N. Broadway, Suite #2A  Hicksville, New York 11801   P. (347) 732-4428  P. (516) 597-4418  F. (917) 477-2273   www.levinesingh.com

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

Plaintiffs also contend that they, along with other non-party dealerships, were permitted under the terms of the Preliminary Injunction to place Superb's assets on their floorplans to benefit these other dealerships. Specifically, they assert thsat "as set forth in the accompanying declaration of Urrutia, the Superb Plaintiffs permissibly utilized their floor plan line of credit to fund the operations of the Cross-Collateralized Dealerships in order to prevent the imminent shutdown of Urrutia's remaining dealerships, as doing so was necessary to achieve the purpose of the Injunction." (ECF 203, p. 4). From this, Plaintiffs argue that the "Deo Defendants fail to establish any prejudice resulting from the Superb Plaintiffs' permissible use of its floor plan line of credit in order to fund the operations of the Cross-Collateralized Dealerships where no transfer of title has occurred (and no evidence of any such transfer has been provided)." (Id.).

However, this argument falls apart under scrutiny. Superb was not an active dealership capable of flooring inventory, nor did it possess any inventory capable of being floored. Plaintiffs have repeatedly claimed that Superb was effectively shut down, the dealership license was surrendered, and, as a result, the title transfer of the Injuncted Vehicles was solely to prevent them from being "stuck in limbo" in the NY VerifiNY system. Plaintiffs further represented that, once the vehicles were transferred back to Superb, they were held as assets rather than dealership inventory (ECF 155, ¶¶ 7, 9, 13-19).

Therefore, it would have been impossible for non-party dealerships to encumber these vehicles under their own floorplans, as Superb was not a dealership with inventory to floor, and title remained under Superb's name. Urrutia's claim that he could floor assets of a non-operational dealership on his own floorplan by merely possessing the vehicles on the lot and holding titles under a separate entity is both legally and practically dubious. Effectively, Urrutia suggests that his other dealerships can encumber property belonging to third parties, a claim that strains credibility.

Plaintiffs further argue that the vehicles were already encumbered by the UCC-1 filing by NMAC. However, that UCC-1 filing was specific to Superb's floorplan, which, as Plaintiffs have previously confirmed, was terminated. Moreover, Plaintiffs themselves represented to the Court that the injuncted vehicles had been paid off by Superb, using $3,000,000.00 allegedly contributed by Urrutia. This payoff was also cited as the basis for the purported capital call. Therefore, Plaintiffs' assertion that the vehicles remain encumbered by an NMAC filing is contradicted by their own prior representations that these vehicles were "free and clear" following this payoff.

The Court is reminded that during the hearing on the Preliminary Injunction before Judge Merchant, in response to the Judge's inquiry as to the impact of delivering the vehicles back to Superb, Plaintiffs' counsel represented to the Court that all of the vehicles under the

260 N. Broadway, Suite #2A  Hicksville, New York 11801   P. (347) 732-4428   P. (516) 597-4418   F. (917) 477-2273   www.levinesingh.com

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

\+ Admitted in NY
^ Admitted in NJ
\* Of Counsel

NMAC floorplan had already been paid off, stating, "And then, finally, what putting the vehicles back on the lot does is there's a fair chance that we will at least be able to get the money that we paid off back so that we can use the operating capital so we can have that money for operating capital. Right now, we have no operating capital and that's a big problem." (86-3, 30:10-15).

Furthermore, when Judge Merchant sought clarity that Mr. Urrutia paid the floor plan providers $2 million to NMAC at the time, Mr. Kataev represented again that it had already been paid off:

> THE COURT: And so let me -- I'd like to maybe move on. In reading the papers, you suggested that I think just a few moments ago, I think you referenced about $1.9 million, and I guess reading the papers, there was the suggestion that Superb has already paid $2 million to NMAC. You know, is that -- I mean the court has never actually seen any evidence of these payments, just the demand, and there have been representations to the court that there's been money paid. Can you maybe speak to that?
>
> MR. KATAEV: Sure, Your Honor. If it's necessary, we can definitely provide evidence today that that has, in fact, been paid. What the Court needs to understand is Mr. -- (ECF 86-3, 40:3-16).

During the Hearing before this Court on November 9, 2023, when discussing the alleged capital call and the ability for the Defendants to retain the vehicles, Plaintiffs' counsel stated:

> [w]e sent a capital call letter fort the $4 million loss we suffered. If he wants to give us a check for 1.96 million, drive the cars. He's not doing that. You can't have the benefit of being an owner without the cons. We suffered all these losses. They're walking scot free and not paying for anything. It just doesn't fly. That's not the way the world works. So if you're not going to take on your responsibilities as a 49 percent member, you can't have the perks. Either return the vehicles or pay the money to have the benefits of being an owner." (ECF 108-1, 23:1-11).

Thus, Plaintiffs' claim that the vehicles were subject to NMAC's UCC-1 filing is simply not true.

260 N. Broadway, Suite #2A  P. (347) 732-4428  P. (516) 597-4418  F. (917) 477-2273  www.levinesingh.com
Hicksville, New York 11801

What is particularly concerning is that, despite Plaintiffs' prior representation that Urrutia personally provided the funds to pay off the NMAC floorplan, Plaintiffs' opposition now presents two additional, conflicting explanations for the source of the payoff funds. First, Plaintiffs deviate from their original assertion, now claiming that "working capital" from other entities—not parties to this action—was used to satisfy the NMAC floorplan, "creating a receivable from Superb to those stores." (ECF 204, ¶ 19). This conclusory, self-serving claim is then directly contradicted just paragraphs later, where Urrutia asserts that he "was forced to use the floor plan line of credit [from the other non-party dealerships] to make the payoff, which affected the working capital of the remaining Urrutia Cross-Collateralized Dealerships" (ECF 204, ¶ 25).

These shifting explanations are irreconcilable: all three representations—that Urrutia personally funded the payoff, that outside entities provided the funds, and that other dealerships' floorplans were utilized—cannot simultaneously be true

Lastly, Plaintiffs claim that all of the vehicles were initially placed on the Hartford NMAC floorplan and were not added after the Injunction was issued. However, this claim is both self-serving and directly contradicted by the exhibit, which literally states "Floor Date," not "Delivery Date." The use of "Floor Date" means that the vehicles were indeed added to the floorplan at those specific times, undermining Plaintiffs' assertion that they were floored continuously from the outset. (ECF 202-5).

It is also worth noting that Plaintiffs' claim that the vehicles have been encumbered by the Hartford NMAC floorplan "since the beginning" contradicts their prior assertion that vehicles could only be floored when physically located on a cross-collateralized lot with title. In fact, until the TRO took effect, the injuncted vehicles remained in the possession of the Deo Defendants and, as Plaintiffs previously represented, were free and clear of any encumbrances at that time. Therefore, before any order was issued by this Court, the injuncted vehicles could not have been added to the floorplan of any non-party Urrutia dealership, including Hartford.

With respect to the relocation of the six Deo Injuncted Vehicles, Plaintiffs' objection to parking them at the Gold Coast Motors of Syosset, LLC ("GCM") dealership lot is without merit. The GCM lot is on private property, and, as stated in the Declaration of Anthony Deo, GCM has designated parking spaces reserved exclusively for dealership use. The six Deo Injuncted Vehicles would occupy spots within this secured area, parked solely within spaces surrounded by other GCM-designated spaces. It is further monitored by 24-hour video surveillance. Their placement would be no different from vehicles parked at any other dealership, including those owned by Plaintiffs.

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

Furthermore, requiring Defendants to incur $30,000.00 annually to store these vehicles elsewhere is unjustifiable, especially when an equivalent, cost-free location is readily available.

The Court simply cannot let Plaintiffs' conduct go unaddressed. Plaintiffs have repeatedly violated this Court's orders. While the Court has previously extended Plaintiffs the benefit of the doubt where ambiguity may have existed, such leniency is clearly unwarranted here. The blatant instances of perjury before the Court demand rectification, as openly allowing litigants to make false statements under oath undermines the judicial system as a whole. Furthermore, Plaintiffs should not be permitted to misuse these proceedings as a means for the majority member of an LLC to suppress minority stakeholders solely to benefit entities in which the majority member has a personal financial interest. The integrity of this Court's authority and the fairness of these proceedings necessitate accountability, and we respectfully urge the Court to act to ensure its orders are upheld. Based on the foregoing, the Deo Defendants respectfully request that their motion be granted in its entirety.

Dated: Hicksville, New York
October 25, 2024

s/ Brian M. Levine
Brian M. Levine

**VIA ECF**
*All Parties*

260 N. Broadway, Suite #2A   P. (347) 732-4428   P. (516) 597-4418   F. (917) 477-2273   www.levinesingh.com
Hicksville, New York 11801