UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**SUPPLEMENTAL DECLARATION OF ROBERT ANTHONY URRUTIA IN OPPOSITION TO DEO DEFENDANTS' LETTER MOTION FOR CONTEMPT**

                              Plaintiffs,

      -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                              Defendants.
------------------------------------------------------------------X

      Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the majority shareholder and President of Superb Motors Inc. ("Superb"), what used to be a high-end used car dealership in Great Neck on Long Island, and the sole member of Team Auto Sales LLC ("Team"), a wholesale used car operation that I own and operate out of New Jersey.[1]

2. Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4. I respectfully submit this supplemental declaration in opposition to the Deo Defendants' second letter motion for contempt.

**Timeline for the Flooring of the Injucted Vehicles**

5. As of July 31, 2023, all but three (3)[2] of the Injucted Vehicles were floored by the Deo Defendants (and, for seven (7) of the vehicles, double-floored by Deo) on Superb's and Team's lines and were then removed from Superb's lot unbeknownst to me. See ECF Docket Entries 11-14 (NMAC July 31, 2023 email), 11-19 at 2-3 (Next Gear demand), 14-1 (NMAC 8/9/23 demand), 14-2 (NMAC 8/9/23 demand), and 156-1 at 56:25-57:22, 98:15-99:14, 100:13-102:14, 116:12-119:13, 124:11-24, 126:19-22; see also ECF Docket Entry 40 at ¶¶ 22-26; compare with ECF Docket Entries 30-8 and 55 (describing the same Injucted Vehicles).

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

[2] Three of the vehicles – 2008 Ford F350 (VIN ending 7725), 2009 Mercedes E-Class (VIN ending 3460), and 2016 Ford F150 (VIN ending 7420) – were too old to be floored but paid for by Superb.

2

6. As a result of the July 31, 2023 correspondence from NMAC, I caused a top-down audit to be performed by my Chief Operating Officer, who found out that virtually one hundred vehicles were missing from Superb's lot and $760,000.00 were missing from Superb's bank account, which led to the removal of Deo and his team from Superb's premises on August 3, 2023.

7. Because Deo improperly removed these vehicles from Superb's lot (as he admitted to doing), I was forced to complete the payoffs so that my credit line would not be terminated.

8. Avoiding a default on the floor plan line of credit was not only important to keep Superb in business, but my remaining dealerships afloat, as all four (4) of my dealerships were cross-guaranteed and cross-collateralized. See copy of First Amended and Restated Cross-Guaranty, Cross-Collateral and Cross-Default Agreement annexed hereto as **Exhibit "A."**[3]

9. Indeed, the July 31, 2023 demand triggered the first demands for payment from Nissan Motor Acceptance Corp. ("NMAC"). See ECF Docket Entry 11-14 at 2 (showing auto-debit of $760,868.75); compare with **Exhibit "B"** at 91 (August 2, 2023 debit of $760,868.75).[4]

10. The money to make these payoffs came from Superb.[5]

---

[3] Contrary to his statements, Deo knew full well that all four (4) dealerships were cross-guaranteed and cross-collateralized. See copy of email correspondence dated December 5, 2022 annexed hereto as **Exhibit "C."**

[4] For the Court's convenience, I highlighted the bank statements. Yellow indicates deposits from dealerships from July 2023 through September 2023. Green indicates all paid-in capital by me personally from July 2023 through September 2023. Pink indicates monies paid to NMAC per its demand letters and due to Deo's double flooring.

[5] Early in the litigation, Deo falsely claimed that I stole $760,000.00. See ECF Docket Entry 30 ¶ 37. However, the bank statements and summary evidence I provide clearly establish I put funds into the dealerships, not the other way around. See **Exhibits "B" and "D."**

3

11. However, Superb did not have enough in its operating account to make the payoffs and was thus funded by intercompany wires from Volkswagen of Freehold (account ending 5399) in the amount of $572,000.00 and from Team Nissan of Pittsfield (account ending 6362) in the amount of $100,000.00. See **Exhibit "B"** at 87.[6]

12. Over the months of July through September in 2023, I was forced to make additional payoffs for demands by NMAC and Next Gear, trade payoffs, as well as stolen deposits totaling $3,404,910. See **Exhibits "B" and "D."**

13. All in, Superb was forced to pay a total of $4,165,776.00 in payoffs between July, 2023 and September 20, 2023, the funds for which came from my other dealerships and my personal funds.

14. This includes all but three (3) injuncted vehicles and the Deo Injuncted Vehicles.

15. The required payoffs depleted all of the operating capital for Superb and my other three (3) dealerships.[7] See, e.g., **Exhibit "B"** at 75 (reflecting operating balances of $92,935.45 at the end of June 2023 and $10,505.32 at the end of July 2023).

---

[6] A summary spreadsheet of the intercompany transactions and personal transactions is annexed hereto as **Exhibit "D."** Pursuant to Rule 1006 of the Federal Rules of Evidence, I am advised that this court may admit as evidence a summary, chart, or calculation offered to prove the content of voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court, whether or not they have been introduced into evidence. See Fed. R. Evid. 1006(a). Here, where the underlying originals or duplicates have been provided, I respectfully request that this Court exercise its discretion to consider this summary of evidence. See Fed. R. Evid. 1006(b).

[7] As evidenced by the bank statements and summary (**Exhibits "B" and "D"**), all of Superb's capital had been stolen and the accounts were depleted, forcing me to fund the payoff of demand letters with my other dealerships' working capital as well as my personal funds. It is worthy to note that the total working capital requirements for all four (4) dealerships is $1.9M to maintain a floor plan line of credit. The Deo Defendants' theft, moving of the vehicles, and double flooring caused damages in excess of $4M. The Deo Defendants have suggested I never put the money in, so I have provided the all the Chase bank statements for Superb and a summary to establish these facts.

16. Thus, I filed this lawsuit on August 17, 2023 to recover the vehicles and seek damages. See ECF Docket Entry 1 ¶¶ 184-190, 331 ("Namely, because Defendants have misappropriated vehicles owned by Superb and Team purchased with floor plan financing with various lenders cross-guaranteed by all dealerships and me, Plaintiffs will be required to shut down its operations *if Defendants do not immediately return the vehicles*") (emphasis added).

17. In my August 20, 2023 declaration, I explained that I needed the vehicles back so I can refloor them. See ECF Docket Entry 11 ¶ 4 ("[Deo] … has placed me at the precipice of losing everything as I may be forced to shut down my dealerships if my vehicles and dealer plates are not returned by Deo such that I can *maintain financing* I received from banks to fund my dealerships' operations") (emphasis added); Id. ¶ 194 ("If I do not regain possession of these vehicles, I will be required to pay back [$2M] … , which … I do not have … which would … shut down operations at all my dealerships … [and] lay off 125 employees"); see also ECF Docket Entry 16 ("The only way to raise Superb from its death knell is to have these vehicles returned immediately").

18. On September 8, 2023, I was able to refloor ten (10) of the now-injuncted vehicles because NMAC was able to verify that those ten (10) vehicles were on Northshore's lot and I had physical possession of the titles for those vehicles together with proof of payment. See correspondence from NMAC with accompanying attachment annexed hereto as **Exhibit "E."**

19. This provided some relief given that the Urrutia Cross-Collateralized Dealerships were wiped out of all their operating capital; indeed, the money from these refloored vehicles went directly back to the dealerships to restore their working capital. See highlighted September 2023 bank statements annexed hereto as **Exhibits "F" and "G."**[8]

---

[8] As shown in the bank statement, Team Mitsu remained undercapitalized, despite reflooring the vehicles, because of Deo's conduct. See Exhibit F at 1 ($95,707.97 ending balance as of September 29, 2023).

5

20. In addition, on September 15, 2023, this Court ably assisted me in recovering possession of thirty (30) vehicles. See ECF Docket Entries 44 and 45.

21. Critically, this Court's September 15, 2023 Order provides that "Plaintiffs will not *sell or dispose* of any of the 30 vehicles during the period of the TRO" with no mention of encumbering the vehicles. See ECF Docket Entry 45 ¶ 2 (emphasis added).

22. Thus, the Superb Plaintiffs were free to refloor the vehicles from September 15, 2023 until September 29, 2023, when the Hon. Orelia E. Merchant, U.S.D.J.'s ("Judge Merchant") injunction took effect.

23. Once I received possession of those vehicles, I caused all of them *except (mistakenly) one* to be refloored in order to regain access to my operating capital; that was exactly the purpose of seeking the injunctive relief.

24. I was able to refloor them because I had titles, proof of payment, and possession of the vehicles back on the lot of a Urrutia Cross-Collateralized Dealership as is required by the terns of NMAC's and Next Gear's floor plan lines of credit. See ECF Docket Entries 38-10 and 55.

25. Had I not refloored the vehicles, I would not have access to my working capital requirements under my floor plan line of credit, and would have still lost the floor plan line for all four (4) dealerships since they were cross-guaranteed and cross-collateralized, because the terms of NMAC's floor plan line of credit sets forth minimum working capital requirements for each dealership. See **Exhibit "A;"** see also ECF Docket Entry 18-2 (filed under seal).

26. Without being able to refloor the vehicles I paid for with my working capital as I did upon receiving them back, I would have received a notice of default and ended up suffering the very plight I was seeking to avoid in making the request for injunctive relief.

27. Critically, all of the vehicles (except one)[9] were floored *prior* to the issuance of the injunction prohibiting the encumbrance of the now-injucted vehicles.[10]

28. Based on this fact alone, there should be no finding of contempt.

29. Indeed, on *September 29*, 2023, the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant") issued a preliminary injunction which prohibited, *inter alia*, that any of the injucted vehicles be encumbered. See ECF Docket Entry 55 (hereinafter the "Injunction").

30. In the Injunction, Judge Merchant explained the circumstances upon which Superb obtained relief: (i) vehicles were placed on Superb's floor plan line of credit; (ii) those same vehicles were impermissibly removed from Superb's lot by the Deo Defendants;[11] (iii) which in turn triggered a default with the floor plan lenders.

31. As detailed in the complaint, the Deo Defendants also double-floored many vehicles, including seven (7) of the Superb Injucted Vehicles, leading to defaults asserted by NMAC and Next Gear, which was part of the $760,000.00 in funds Superb had to pay.

---

[9] One vehicle bearing VIN No.: ZARFAEDN3J7575105 was refloored on October 26, 2023 instead of on September 15, 2023 when we recovered it. On October 26, 2023, when this vehicle was moved to Team Mitsubishi-Hartford, my office manager at that dealership floored the vehicle based on my prior instructions on September 15, 2023 to refloor all recovered vehicles. She failed to do so on September 15, 2023 and thus refloored it on October 26, 2023 unaware of the injunction. I always operated under the presumption that this vehicle, like all the others, was refloored prior to the injunction and only recently learned that it was floored after when I asked NMAC for the evidence of when all the injucted vehicles were refloored.

[10] As discussed previously, three (3) vehicles were never floored because the floor plan lender deemed them too old. See *supra* at 2 fn. 2.

[11] At the February 20, 2024 evidentiary hearing, the Deo Defendants admitted that Superb's vehicles were removed from the lot and taken to the Northshore lot leased by Deo for a "grand opening" event and were never returned until this Court intervened. See ECF Docket Entry 156-1 at 56:25-57:22, 98:15-99:14, 100:13-102:14, 116:12-119:13, 124:11-24, 126:19-22.

32. These defaults required accelerated payoffs which depleted the operating capital for all of my four (4) dealerships. See Injunction at 18 ("Further, as far as the Court is aware, NMAC has stopped doing business with Superb and may never act as a lender to Superb or Urrutia again. See Notice of NMAC Termination (ECF [Docket Entry] 18-2); Urrutia Reply Decl. ¶ 9; PI H'rg Tr. 41:20-25. Thus, while Superb's operational capital is essentially 'depleted,' Superb still faces the imminent pains of default with at least one other lender, [Next] Gear, which is owed $391,698.48 in immediate payment for at least 12 vehicles which are not on Superb's lots, and to which Superb does not currently have possession").

33. As a result of the defaults, I was forced to use the operating capital of my other three (3) dealerships[12] and my personal funds to make the required payoffs.

34. Judge Merchant issued the Injunction in light of "the possibility of losing Superb Motors as a going concern *as well as [my] other cross-collateralized dealerships*." See Injunction at 19 (emphasis added).

35. Thus, the *status quo* at the time the Injunction was sought was as follows: (i) the now-injuncted vehicles were floored and remained on the Urrutia Cross-Collateralized Dealership lots; and (ii) the funds issued by the floor plan lender were paid to the Urrutia Cross-Collateralized Dealerships to use as its operating capital.

36. This *status quo* was disrupted by the Deo Defendants' removal of the vehicles from Superb's lot.

---

[12] The Deo Defendants make much hay of whether I personally used my own funds to make the payoffs. I did. The funds used to satisfy NMAC's and Next Gear's demands came from a combination of my own personal funds (approximately $1.8M) as well as the operating capital of my other three dealerships (approximately $3.5M). See **Exhibit "D."**

8

37. Ever since September 8, 2023 and September 15, 2023 – prior to the September 29, 2023 Injunction – the Superb Injuncted Vehicles, except one, were floored and remained floored.

38. They were only otherwise transferred[13] between Urrutia Cross-Collateralized Dealerships after September 15, 2023 except for one vehicle due to an oversight.

39. Based on this chronology of events, there can be no finding that a violation of the Injunction occurred.

40. Since reflooring the vehicles, however, I have substantially paid down the balance in accordance with my floor plan agreement, but: (i) the Deo Injuncted Vehicles wrongfully remaining in the Deo Defendants' possession caused me to be short over $500,000.00 as they were not returned to the lot as is required to be refloored (meaning, I never refloored those vehicles); (ii) I incurred $277,000.00 due to double-flooring by Deo on the Injuncted Vehicles; and (iii) I paid nearly $1M in interest and curtailments on the Injuncted Vehicles over time. See copies of the proof of payment and the titles for the Deo Injuncted Vehicles annexed hereto as **Exhibits "H;"** see also **Exhibits "B" and "I."**

41. The total amount of money of all the injuncted vehicles as of July 31, 2023, including due to Deo's double flooring, cost me and my dealerships $1,848,950.00. See summary spreadsheet of financials and details of all injuncted vehicles annexed hereto as **Exhibit "I."**

42. Because I paid down the balance owed on my floor plan line of credit according to its terms, only $567,519.00 remains due, of which only $138,413.00 are for Superb vehicles paid for by me.

---

[13] As set forth in the correspondence from NMAC, "[e]ach time a unit changes locations, it is given a new flooring date. If a unit changes plans, for example goes from Used to Used Demo, it gets a new flooring date." See **Exhibit "E"** at 1. Thus, whenever a vehicle is transferred to a new location or another line, it receives a new flooring date but has not actually been refloored as it has not been paid off.

43. Had the issue with NMAC[14] not occurred in July 2024, all the vehicles would have been paid off by now based on the terms of the floor plan line of credit.

44. The problem with NMAC broke me, but only because Deo severely crippled me.

45. I had owned dealerships for a little over two (2) years when I met Deo and was doing so well, I had grown from one to four dealerships.

46. In the short four (4) months that Deo was unsupervised (because he orchestrated the removal of my CFO and replaced her with Defendants Thomas Jones and Jones, Little & Co, CPAs, LLC), he began to steal every dollar he could; critically, while there were cash and check deposits at Superb from November 2022 through March 2023, there were *zero* in cash or check deposits by Deo from April 2023 through July 2023, which were diverted to the account he opened for Superb with Flushing Bank. See **Exhibit "B;"** see also ECF Docket Entry 11-9.

47. Virtually all of the damage was done in July 2023 once he had funded himself with the money that he stole from me and was ready to start his new operation.[15]

48. Notwithstanding the foregoing, I want to emphasize again that I only transferred vehicles, except one (1) vehicle which was mistakenly refloored by my staff, following the September 29, 2023 Injunction.

---

[14] Without belaboring the point, NMAC made a massive mistake which dealt the death blow to my dealerships following the crippled state Deo placed them in. Had Deo not stolen all my working capital, I would have survived and recovered from NMAC's mistake. See copies of my answer with counterclaim against NMAC, NMAC's correspondence claiming that I was over my line of credit by millions of dollars forcing me to sell millions in inventory at a loss, and NMAC's subsequent correspondence about a month later confirming that I was never over my line of credit annexed hereto as **Exhibits "J," "K," and "L,"** respectively.

[15] Contrary to Deo's representations, the complete bank statements for Superb in 2023 and the summary spreadsheet clearly establish that I did not take a dollar from Superb, as there remain receivables from each of my remaining dealerships owed by Superb. See **Exhibits "B" and "D."**

49. The Deo Defendants argue with conviction that the Superb Plaintiffs encumbered the Superb Injuncted Vehicles following the issuance of Injunction based on dates listed in NMAC's documentation.

50. But this is simply untrue, as the vehicles (except one) were floored since prior to the issuance of the Injunction and remained floored to this day. See **Exhibits "B" and "E."**

51. The dates listed in the Deo Defendants' exhibits are therefore *not* the dates that these vehicles were actually floored. See **Exhibit "E."**

52. Instead, these are the dates they were physically transferred to other Urrutia Cross-Collateralized Dealerships on NMAC's floor plan line of credit. Id.

53. The Deo Defendants dispute the Superb Plaintiffs' assertions that the NMAC floor plan line of credit was an aggregate line between the four Urrutia Cross-Collateralized Dealerships, but they knew all along that it was an aggregate line. See **Exhibits "A"** and **"C"** (stating in an email to Deo and others that "NMAC Floor Plan is now tied VW/Superb/Mitsu now and will be tied with Nissan tomorrow … Please also remember we have an aggregate GROUP line of credit …").

54. Indeed, their denial of this fact is belied by my staff's correspondence with Deo during the time he worked at Superb. Id.

55. The Superb Injuncted Vehicles currently remain at the lot for Team Mitsubishi-Hartford, and NMAC has agreed to release vehicles if court finds in favor of Deo but would prefer the cars be sold and for money from the sale to be placed in escrow in order to stop depreciation costs. See copy of Possession and Surrender Agreement with NMAC annexed hereto as **Exhibits "E" and "M."**

11

**The Deo Defendants' Unclean Hands Deprive Them of the Relief They Seek**

57. Although I should not be found in contempt based on the foregoing evidence, I am also advised that the Deo Defendants are not entitled to the relief they seek in any event because they have unclean hands.

57. On or about September 4, 2024, Deo and his esteemed counsel Harry R. Thomasson, Esq. ("Thomasson") filed a lawsuit against me and others attaching over twenty (20) exhibits in support of his contrived claims. See NYSCEF Docket Entries 1 (615683/2024 (Nassau County Supreme Court)) and, e.g., 26 (showing agreements with NESNA that Deo utilized to defraud me); compare with, e.g., ECF Docket Entries 11 ¶ 77, 11-10, and **Exhibit "B"** at 91 (August 8, 2023 debit of $238,048.00).

58. Those exhibits shed a lot of light on some of their conduct that was previously unknown to me; for example, the exhibits also made clear that Deo utilized Northshore's floor plan line of credit to purchase vehicles that he later sold to me that were subject to an injunction in a prior lawsuit brought by the Island Auto Group ("IAG") Plaintiffs.

59. I was unaware that Deo did this at the time, but was previously aware of an injunction that the IAG Plaintiffs received from the Hon. Sharon M.J. Gianelli, J.S.C. ("Justice Gianelli") in their prior state court action against Deo, which was in effect from December 14, 2022 through June 13, 2023. See NYSCEF Docket Entries 42 (issuing injunction) and 100 (vacating injunction) in 617224/2022 (Nassau County Supreme Court).

60. Justice Gianelli's injunction prohibited Deo from a whole host of conduct, including:

- (a) taking any action to *sell, lease, transfer, pledge or otherwise encumber the assets of Northshore [Motors LLC ("Northshore")] and [189] Sunrise [Hwy Auto LLC ("Sunrise")] including, but not limited to any motor vehicles*,

12

- (b) concealing, *transferring*, altering, modifying, destroying or disposing in any manner of *any assets of Northshore and Sunrise*,

- (c) *removing any funds of Northshore and Sunrise from its bank accounts* or other location in which funds are located,

  …

- (f) using any license issued in the name of Brian Chabrier, Joshua Aaronson or Jory Baron to conduct any business of Northshore and Sunrise, including, but limited to, the *purchase, sale or lease of any motor vehicle, acceptance of any trade of a motor vehicle, or register with the motor vehicle department of any state or issue any temporary or permanent license plate* (emphasis added)

61.     As set forth below, Deo and his cohort violated Justice Gianelli's injunction, which led to the damages I suffered in this case because Deo used both Northshore and Sunrise to sell me vehicles that he then double-floored or took hostage.

62.     Indeed, the foregoing is directly relevant to the Deo Defendants' instant contempt motion because five (5) of the Injuncted Vehicles are cars that Deo not only bought using Northshore and/or Sunrise, but he also floored using Northshore and/or Sunrise, then sold them to Superb, with each of the foregoing acts constituting an independent violation of Justice Gianelli's injunction.

63.     Moreover, eighteen (18) vehicles in total were sold to Superb in excess of $1M in early 2023 alone (of which five (5) are currently injuncted),[16] which Deo transferred using IAG Plaintiffs' DMV license, then sold to customers and registered them, and did so using Northshore's and/or Sunrise's bank accounts, all in violation of Justice Gianelli's injunction.

---

[16] Deo opened bank accounts for Northshore and Sunrise with Flushing Bank in order to receive funds for the vehicles. This was another violation of Justice Gianelli's injunction.

64. For example, Deo shared with me a February 2023 statement from his floor plan lines of credit with Sunrise and Northshore during the time we worked together. See copy of Sunrise floor plan statement with Next Gear annexed hereto as **Exhibit "N"** at 1-2 (showing fourteen (14) vehicles floored by Deo in violation of the Justice Gianelli's injunction which he subsequently sold to Superb in violation of Justice Gianelli's injunction); see also Id. at 3 (copy of Northshore floor plan statement with Westlake Flooring Services ("Westlake") showing four (4) vehicles floored by Deo in violation of Justice Gianelli's injunction which he subsequently sold to Superb in violation of Justice Gianelli's injunction; Id. at 4-17 (showing Sunrise bank account opened on or about March 15, 2023 in violation of Justice Gianelli's injunction); Id. at 25-32 (showing Northshore bank account opened on or about March 15, 2023 in violation of Justice Gianelli's injunction).

65. Critically, Deo did not fraudulently set up accounts for Northshore and Sunrise with Flushing Bank until mid-March 2023 but received checks from Superb to pay for vehicles he sold through Northshore and Sunrise in February 2023; since he was locked out of the IAG Plaintiffs' accounts for Northshore and Sunrise, I have good reason to believe he deposited those funds elsewhere, demonstrating further unclean hands by Deo.

66. In February 2023, after Deo sold us these vehicles, NMAC reported them as double-floored because Deo failed to pay off the vehicles on his floor plans with Next Gear and/or Westlake. Id. at 36 (highlighting eight (8) of the eighteen (18) vehicles Deo sold in violation of Justice Gianelli's injunction double-floored by Deo in violation of Justice Gianelli's injunction with evidence that Superb paid for these vehicles). See copy of proof of payment for the eighteen (18) vehicles annexed hereto as **Exhibit "O;"** see also ECF Docket Entry 38-9 at 12.

14

67. Similarly, in the course of this litigation, Deo perjured himself by stating that I floored the Rolls Royce (one of the Deo Injuncted Vehicles) he sold me without his permission. See ECF Docket Entry 30 ¶¶ 31-32 ("Tony somehow put my Rolls Royce on his Floor Plan and took that money himself for unknown purposes").

68. Of course, this is belied by the fact that Deo himself asked me to floor the Rolls Royce, and there is no corresponding transfer from Superb elsewhere following the receipt of those funds. See ECF Docket Entries 38 ¶ 48 and 38-9; see also **Exhibit "B."**

69. Further, Deo sent me proof that he paid off his floor plan line with Next Gear for the Rolls Royce on April 19, 2023 at my insistence[17] once I sent him the money for the Rolls Royce. See copy of Deo's proof of payment to Next Gear annexed hereto as **Exhibit "P;"** see also ECF Docket Entry 38-9 at 12 ($210,900.00 wire from Superb to Car Buyers NYC Inc on April 19, 2023 with memo "PAYOFF 3 NXTGR VEH *17ROLLS* 18Q7 19C300") (emphasis added).

70. Unlike the Deo Defendants, I have nothing to hide and have done nothing wrong.

71. In fact, as can be gleaned from the evidence I submit, I have done everything in my power to protect the value of the Injuncted Vehicles and ensure customers are always treated right (paying off their vehicles as a result of the Deo Defendants' conduct at my expense), to the detriment of all four of my dealerships.

72. Based on the foregoing, I respectfully request that this Court deny the Deo Defendants' second letter motion for contempt based on the lack of clear and convincing evidence that I have violated the Injunction.

---

[17] I insisted on this because just the day prior, on April 18, 2023, NMAC sent a report that the Rolls Royce was double-floored. See copy of email correspondence with NMAC, Superb, and Deo annexed hereto as **Exhibit "Q."**

15

73. I also respectfully request that this Court deny their motion due to the Deo Defendants' clear bad faith, as evidenced herein, which should deprive them of any relief for the one (1) technical violation related to one vehicle which was mistakenly refloored a month after the Injunction was entered, and that only came to my attention in preparing this submission.

74. Indeed, for someone who has violated Court Orders with impunity throughout this case and the prior state court action filed by the IAG Plaintiffs, and who has not paid a single dollar for any of the Injuncted Vehicles, he should not be in a position to cry foul over a ministerial error concerning one (1) vehicle mistakenly floored a month after the Injunction was issued.

75. I humbly thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 24, 2025.

*robert urrutia*
robert urrutia (Jan 24, 2025 17:08 EST)
Robert Anthony Urrutia

# 2025-01-24 FINAL Supplemental Declaration of Urrutia

Final Audit Report                                                                 2025-01-24

| | |
|---|---|
| Created: | 2025-01-24 |
| By: | Emanuel Kataev (mail@emanuelkataev.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAxEsiYob8ZGL1Lapee7ZycknwZsUgr0E1 |

## "2025-01-24 FINAL Supplemental Declaration of Urrutia" History

- Document created by Emanuel Kataev (mail@emanuelkataev.com)
  2025-01-24 - 10:07:29 PM GMT- IP address: 67.247.9.80

- Document emailed to tonyu814@gmail.com for signature
  2025-01-24 - 10:07:54 PM GMT

- Email viewed by tonyu814@gmail.com
  2025-01-24 - 10:08:01 PM GMT- IP address: 66.102.8.128

- Signer tonyu814@gmail.com entered name at signing as robert urrutia
  2025-01-24 - 10:08:33 PM GMT- IP address: 186.15.17.187

- Document e-signed by robert urrutia (tonyu814@gmail.com)
  Signature Date: 2025-01-24 - 10:08:35 PM GMT - Time Source: server- IP address: 186.15.17.187

- Agreement completed.
  2025-01-24 - 10:08:35 PM GMT

Adobe Acrobat Sign