# FIRST AMENDED AND RESTATED CROSS-GUARANTY, CROSS-COLLATERAL AND CROSS-DEFAULT AGREEMENT

This First Amended and Restated Cross-Guaranty, Cross-Collateral and Cross-Default Agreement is dated as of __Nov. 11__, 2022 (this "Agreement"), and is entered into by and among **TEAM IMPORTS LLC**, a Connecticut limited liability company, **TEAM AUTO GROUP LLC**, a New Jersey limited liability company, **SUPERB MOTORS INC.**, a New York corporation, and **TEAM NISSAN INC.**, a Massachusetts corporation, jointly and severally (each, a "Borrower" and collectively, the "Borrowers"); **ROBERT A. URRUTIA**, an individual ("Guarantor"); **NISSAN MOTOR ACCEPTANCE COMPANY LLC**, a Delaware limited liability company f/k/a NISSAN MOTOR ACCEPTANCE CORPORATION, a California corporation ("Lender"). This Agreement amends and restates in its entirety that certain Cross-Guaranty, Cross-Collateral and Cross-Default Agreement dated as of December 17, 2021 by and among those certain Borrower and Guarantor parties thereto (as amended, the "Original Cross"). This Agreement hereby supersedes and replaces the Original Cross, and the Original Cross shall have no further force or effect.

## RECITALS

**WHEREAS**, prior to the date hereof or concurrently herewith, Lender has made or is making the loans and leases to Borrowers described on Schedule A attached hereto (collectively, the "Loans");

**WHEREAS**, Lender's agreement to make the Loans are in the business interest of, and result in economic benefit to Borrowers due to the affiliate nature of Borrowers and Guarantor and because Borrowers share common ownership. Lender would not agree to extend the credit or enter into the contemporaneous Loans without each Borrower and each Guarantor entering into this Agreement;

**WHEREAS**, prior to the date hereof or concurrently herewith, Guarantor has entered into or are entering into one or more guaranties of the obligations of Borrowers to Lender. In connection therewith, Guarantor is hereby reaffirming each existing guaranty, executing such additional guaranties as Lender may require, and consenting to the provisions of this Agreement and the Loan Documents, including those executed in connection herewith. As used in this Agreement, the term "Loan Documents" means each agreement described on Schedule A attached hereto as well as all other documents, instruments and agreements (including all modifications, amendments, extensions and restatements) executed at any time in connection therewith; and

**WHEREAS**, Borrowers and Guarantor have agreed to cross-guaranty, cross-default and cross-collateralize all of the present and future obligations of Borrowers and Guarantor to Lender on the terms hereinafter set forth.

**NOW, THEREFORE**, in consideration of the premises, the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt whereof is hereby acknowledged, Borrowers, Guarantor and Lender hereby agree as follows:

1. <u>Acknowledgment of Debt.</u>

Borrowers and Guarantor hereby acknowledge, agree, confirm and declare that all indebtedness owed to Lender under the Loan Documents, as of the date hereof and as such amounts may be increased or modified from time to time, is unconditionally due and owing by each Borrower to Lender without any set off, deduction, counterclaim or defense of any kind or nature to the payment thereof.

2. <u>Acknowledgment of Validity of Security Documents.</u>

Borrowers and Guarantor hereby acknowledge, confirm and declare the liens and security interests created by the Loan Documents are valid, subsisting and perfected liens and security interests. With respect to California residents, all collateral set forth in the Loan Documents deemed to be personal property (the "Personal Property Collateral") shall be deemed to secure, and is hereby pledged, assigned and hypothecated for the purpose of securing each and every obligation owing by the Borrowers, and any proceeds of any such Personal Property Collateral may be applied to any such obligations as Lender may see fit, subject to applicable law; provided however, that no real property collateral held by Lender for any such obligation shall secure any such obligation other than those specified in the particular mortgage or deed of trust creating the security interest or such other obligations which specifically provide that they are secured by such mortgage or deed of trust.

3. <u>Guaranty of Payment.</u>

Each Borrower and Guarantor hereby, jointly and severally, irrevocably and unconditionally, guaranty and promise to pay to Lender on demand in lawful money of the United States of America, any and all indebtedness now or hereafter owed by the other Borrowers and Guarantor to Lender including, without limitation, all amounts evidenced by the Loan Documents, all amendments, modifications, renewals or extensions of the Loan Documents, and any and all existing and future obligations and liabilities of the other Borrowers and Guarantor to Lender, whether due or not due, absolute or contingent, voluntary or involuntary, liquidated or unliquidated, determined or undetermined, whether the other Borrowers and Guarantor may be liable individually or jointly with others, whether recovery upon such indebtedness may be or hereafter become barred by any statute of limitations, or whether such indebtedness may be or hereafter become invalid or otherwise unenforceable, and all interest that accrues on all or any part of such indebtedness after the filing of any petition or pleading against the other Borrowers and Guarantor or any other person for a proceeding under any chapter or provision of any present or future federal or state bankruptcy legislation or amendments thereto (the "Obligations"). This guaranty includes each provision set forth in Schedule B attached to this Agreement which is incorporated herein by reference.

4. <u>Cross Collateralization.</u>

Each Borrower hereby agrees that the Loan Documents to which it is a party and the collateral security described therein shall secure the obligations of the other Borrowers under the Loan Documents and under this Agreement including, without limitation, the Obligations described in Section 3 hereof.

5. <u>Cross Default.</u>

The occurrence of a default under any one of the Loan Documents shall constitute a default under each other Loan Document, entitling Lender to exercise any or all of its rights and remedies under any or all of the Loan Documents and with respect to any or all of the Borrowers or Guarantor.

6. <u>Reaffirmation of Representations and Warranties.</u>

In order to induce the Lender to enter into this Agreement, the Borrowers and Guarantor each represent and warrant that as of the date hereof: (a) the execution and delivery of this Agreement has been duly authorized by all necessary corporate action by each corporate Borrower, (b) this Agreement constitutes the valid and binding obligations of the parties hereto enforceable against each of the Borrowers and Guarantor in accordance with the terms hereof, (c) all of the representations and warranties in the Loan Documents remain true and correct in all material respects as of the date hereof, and (d) upon execution of this Agreement, there exists no default under the terms of the Loan Documents.

7. <u>Reaffirmation and Consent of Guarantor.</u>

(a) Guarantor hereby consents to the execution and delivery of this Agreement and hereby acknowledges, confirms and declares that the guaranties delivered by Guarantor to Lender listed on Schedule A and as additionally delivered to Lender herein (collectively, the "Guaranties") are in full force and effect in accordance with their respective terms. Guarantor expressly reaffirms all of his obligations under his Guaranties and agrees that his Guaranties include each provision set forth in Schedule B attached to this Agreement.

(b) Guarantor also represents and agrees that (i) Guarantor shall be bound by the terms of the Guaranties, (ii) there are no defenses or set-offs to the Guaranties, and (iii) the obligations of the Guarantor to the Lender under the Guaranties shall not be discharged, released or diminished by reason of this Agreement or any other documents executed or delivered by the Borrowers to the Lender in connection with this Agreement.

(c) Guarantor hereby acknowledges that there has been no material adverse change in his financial condition since the date of the most recent financial statement delivered to the Lender.

8. <u>Miscellaneous.</u>

(a) Effect on Loan Documents. The Loan Documents shall be and remain in full force and effect and are hereby ratified and confirmed in all respects, and the execution, delivery and effectiveness of this Agreement shall not operate as a waiver of any right, power or remedy of the Lender under the Loan Documents.

(b) Independent Obligations. The obligations of each Borrower and Guarantor are independent of the obligations of all of the other Borrowers and Guarantor. Each Borrower and Guarantor expressly waives any right to require Lender to proceed against any other Borrower or Guarantor, to proceed against or exhaust any collateral or any other security for the obligations owing at any time to Lender or to pursue any remedy Lender may have at any time. Each Borrower

and Guarantor agrees that Lender may proceed against any one or more of the Borrowers, Guarantor and/or the collateral in such order and manner as Lender shall determine in its sole and absolute discretion. A separate action or actions may be brought and prosecuted against any one or more of the Borrowers and/or Guarantor whether an action is brought or prosecuted against any other Borrower, Guarantor or with respect to any collateral or whether any other person or entity shall be joined in any such action or actions. Each Borrower and Guarantor expressly waives the benefit of any statute(s) of limitations affecting its liability under this Agreement or the Loan Documents or the enforcement of the obligations owing at any time to Lender or any rights of Lender created or granted under this Agreement or the Loan Documents. Lender's rights hereunder and under the Loan Documents shall be reinstated and revived, and the obligations and liability of each Borrower and Guarantor hereunder and thereunder shall continue, with respect to any amount at any time paid on account of the obligations owing at any time to Lender which thereafter shall be required to be restored or returned by Lender upon the bankruptcy, insolvency or reorganization of any Borrower, Guarantor, or otherwise, all as though such amount had not been paid. Lender shall retain its security interest in the collateral under the Loan Documents as security for the Obligations, notwithstanding the payment in full or complete performance by the Borrowers or Guarantor of one or more of the Obligations.

(c)     Waiver of Compliance. The Lender, in its absolute and sole discretion, may waive compliance with any obligation, covenant, agreement or condition contained herein or in any of the Loan Documents. No such waiver or failure to insist upon strict compliance with any obligation, covenant, agreement or condition contained herein or in any of the Loan Documents shall operate as a waiver of any subsequent or other failure. Neither this Agreement nor any course of dealing between the Lender and any of the Borrowers and/or Guarantor shall operate as or be deemed to constitute a waiver of the Lender's rights hereunder or under the Loan Documents or affect the duties or the obligations of any of the Borrowers, Guarantor or any other guarantor under this Agreement or under the Loan Documents.

(d)     Cumulative Remedies. All rights, remedies and privileges granted to the Lender hereunder and under the Loan Documents shall be cumulative and concurrent and not exclusive of any rights or remedies provided by law.

(e)     Preservation of the Lender's Rights and Remedies. Notwithstanding anything to the contrary contained in this Agreement or the Loan Documents, if the Lender is required to reconvey any collateral, or to return any of the consideration which it has or may receive under this Agreement, the Lender shall have and retain all rights and remedies available to it in any and all of the Loan Documents or available at law or in equity, and to receive the full amounts of the outstanding principal and interest that would have been due under the Loan Documents, as modified hereby, reduced by any such amounts received and not reconveyed or returned by the Lender.

(f)     Execution in Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original and all of which taken together shall constitute but one and the same agreement. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic (e.g., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

(g) Voluntary Agreement. Borrowers and Guarantor each represent and warrant that they are represented by legal counsel of their choice, are fully aware of the terms contained in this Agreement and have voluntarily and without coercion or duress of any kind entered into this Agreement and the documents executed in connection with this Agreement.

(h) WAIVER OF JURY TRIAL. BORROWERS, GUARANTOR AND LENDER HEREBY IRREVOCABLY WAIVE TO THE EXTENT PERMITTED BY APPLICABLE LAW ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR ANY OTHER TRANSACTION CONTEMPLATED HEREBY OR WITH RESPECT TO THE ACTIONS OF LENDER IN THE NEGOTIATION ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF.

(i) Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state in which the Borrowers maintain their chief operating headquarters without regard to situs of formation or organization and without reference to principles of conflict of laws.

(j) Entire Agreement. This Agreement constitutes the entire agreement among the parties relating to the subject matter hereof and this Agreement supersedes any and all previous agreements, documents and understandings relating to the subject matter hereof.

(k) Inconsistencies with Loan Documents. In the event of any inconsistencies between the terms of this Agreement and any terms of any of the other Loan Documents, the terms of this Agreement shall govern and prevail.

(l) Further Assurances. Borrowers and Guarantor covenant and agree to execute and deliver such other documents (including such amendments to the Loan Documents as the Lender may require) as may be necessary to consummate the transactions contemplated by this Agreement and to fully effectuate the intent of this Agreement. Borrowers and Guarantor authorize Lender to complete all necessary documentation relating to this Agreement including but not limited to inserting dates and other information in Schedule A.

(m) Multiple Borrowers. In all cases where there is more than one Borrower, the term "Borrower" shall mean all and any one or more of them, and all terms appearing in the singular shall be deemed to have been used in the plural where the context and construction so require. The term "Borrower" as used in this Agreement shall include each Borrower, as the case may be.

(n) Married Persons. Any married person who signs this Agreement or any other Loan Document in his or her individual capacity hereby agrees that recourse may be had against such married person's separate property for all of such married person's obligations hereunder.

*{Remainder of page intentionally left blank – signature page follows}*

IN WITNESS WHEREOF, the parties hereto have duly executed and delivered or caused this Agreement to be duly executed and delivered by their respective officers or other representatives hereunto duly authorized, as of the date first above written.

**NISSAN MOTOR ACCEPTANCE COMPANY LLC**, a Delaware limited liability company f/k/a NISSAN MOTOR ACCEPTANCE CORPORATION, a California corporation

By: _____
Todd Voorhies
Sr. Manager, Dealer Credit

| | |
|---|---|
| **TEAM IMPORTS LLC**, a Connecticut limited liability company | **TEAM AUTO GROUP LLC**, a New Jersey limited liability company |
| By: _____<br>Robert A. Urrutia, Member | By: _____<br>Robert Urrutia, Operating Manager |
| **SUPERB MOTORS INC.**, a New York corporation | **TEAM NISSAN INC.**, a Massachusetts corporation |
| By: _____<br>Robert Urrutia, President | By: _____<br>Robert A. Urrutia, President |

_____
**ROBERT A. URRUTIA**, an individual

First Amended and Restated Cross-Guaranty, Cross-Collateral and Cross-Default Agreement
Signature Page

First Amended and Restated Cross-Guaranty, Cross-Collateral and Cross-Default Agreement
Signature Page

## SCHEDULE A

## FINANCING DOCUMENTS AND GUARANTIES

<u>Floorplan, Lease, and Loan Documents and Guaranties</u>

A. **TEAM IMPORTS LLC** (Dealer No. 9609)

1. Automotive Wholesale Financing and Security Agreement dated February 10, 2021 between TEAM IMPORTS LLC and Lender.

2. $250,000.00 Lease Plan Financing and Security Agreement dated February 10, 2021 between TEAM IMPORTS LLC and Lender.

3. $714,571.00 Capital Loan and Security Agreement dated February 10, 2021 between TEAM IMPORTS LLC and Lender.

4. Continuing Guaranty Agreement of ROBERT URRUTIA dated as of February 10, 2021 in favor of Lender.

B. **TEAM AUTO GROUP LLC** (Dealer No. 8084)

1. Automotive Wholesale Financing and Security Agreement dated December 17, 2021 between TEAM AUTO GROUP LLC and Lender.

2. $200,000.00 Lease Plan Financing and Security Agreement dated December 17, 2021 between TEAM AUTO GROUP LLC and Lender.

3. Continuing Guaranty Agreement of ROBERT A. URRUTIA dated as of December 17, 2021 in favor of Lender.

C. **SUPERB MOTORS INC.** (Dealer No. 8085)

1. Automotive Wholesale Financing and Security Agreement dated December 17, 2021 between SUPERB MOTORS INC. and Lender.

2. Continuing Guaranty Agreement of ROBERT A. URRUTIA dated as of December, 17, 2021 in favor of Lender.

D. **TEAM NISSAN INC.** (Dealer No. 4317)

1. Automotive Wholesale Financing and Security Agreement dated __11|11__, 2022 between TEAM NISSAN INC. and Lender.

2. $850,000.00 Capital Loan and Security Agreement dated __10|11__ 2022 between TEAM NISSAN INC. and Lender.

3. Nissan Retail Environmental Design Initiative Sign Program Lease and Maintenance Agreement dated April 4, 2004 between TEAM NISSAN INC., as successor in interest to MIGE AUTOMOTIVE GROUP, INC. DBA HADDAD NISSAN, NISSAN NORTH AMERICA, INC., and Lender.

4. Continuing Guaranty Agreement of ROBERT A. URRUTIA dated as of __11/11__, 2022 in favor of Lender.

## SCHEDULE B

## CONTINUING GUARANTY PROVISIONS

To induce Lender to extend or continue to extend credit to the Borrowers, and for and in consideration of good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, each person or entity identified as a guarantor in the foregoing agreement of any obligations of any Borrower (individually and collectively referred to herein as "Guarantor") hereby agrees that his, her or its obligations as a guarantor include the following terms and conditions:

a)   The term "Guaranty," as used herein, means any guaranty of Guarantor (including without limitation each guaranty set forth in the foregoing agreement and each guaranty identified in Schedule A to the foregoing agreement) of any obligations of any Borrower. The term "Borrower," as used herein, shall have the same meaning as set forth in the foregoing agreement; provided, however, that the use of the term "Borrower(s)" herein shall mean, with respect to any Guaranty, only such Borrower or Borrowers as are identified in such Guaranty. Where appropriate in the context of a particular provision, words used in the singular shall include the plural and vice versa, and words denoting the masculine gender shall include the feminine and neuter genders. It is contemplated that an individual's Guaranty is, and it is intended to be, the personal guaranty of payment and performance of such individual in his or her individual capacity.

b)   Guarantor unconditionally and irrevocably guaranties to Lender, and any transferee of its Guaranty or of any liability guaranteed by its Guaranty, (a) the full and prompt performance and payment of all present and future liabilities of Borrower(s) to Lender irrespective of their nature or the time they arise, and (b) the due and punctual performance and observance of all agreements and indemnities of Borrower(s) to Lender. If any liability guaranteed by Guarantor is not paid when due, Guarantor hereby agrees to and will immediately pay same, without resort by the holder thereof to any other person or party.

c)   The liabilities (herein referred to collectively and individually as the "Liabilities") covered by any Guaranty include all obligations and liabilities of Borrower(s) (whether individually or jointly with others, and whether direct, indirect, absolute or contingent as maker, endorser, guarantor, surety or otherwise) to Lender, now existing or hereafter coming into existence and renewals or extensions in whole or in part of any of said liabilities, including without limitation, (a) interest and other liabilities arising or accruing after bankruptcy of Borrower(s) or any other obligor on said Liabilities, and (b) any and all damages, losses, costs, interest, charges, attorneys' fees and expenses of every kind, nature and description suffered or incurred by Lender, arising in any manner out of or in any way connected with, or growing out of, said Liabilities.

d)   Any payment by Guarantor under any Guaranty may be applied to any of the Liabilities in such order as Lender may, in its sole discretion, choose. The obligations of Guarantor under each of the Guaranties are in addition to and shall not prejudice or be prejudiced by any other agreement, instrument, surety or guaranty (including any other Guaranty or any other agreement, instrument, surety or guaranty signed by Guarantor) which Lender may now or hereafter hold relative to any of the Liabilities. The obligations of Guarantor to Lender under the Guaranties are primary, absolute and unconditional.

e) Guarantor acknowledges that there may be future advances by Lender to Borrower(s) (although Lender is under no obligation to make such advances) and that the number and amount of the Liabilities are unlimited and may fluctuate from time to time hereafter. Guarantor expressly agrees that Guarantor's obligations hereunder and under the Guaranties shall remain absolute, primary and unconditional notwithstanding such future advances and fluctuations, if any, and agrees that, in any event, this agreement is a continuing guaranty and shall remain in force at all times hereafter, whether there are any liabilities outstanding or not. To the extent permitted by applicable law, Guarantor hereby waives any right of Guarantor under law to revoke this Guaranty in respect of any transaction on, before or after the execution and delivery of this Guaranty, including, without limitation, any right under California Civil Code Section 2815 (if Guarantor is resident in California).

f) The obligations of Guarantor under the Guaranties shall be continuing, absolute and unconditional under any and all circumstances and shall be paid by Guarantor regardless of (a) the validity, regularity, legality or enforceability of any of the Liabilities or any collateral security or guaranty therefor; (b) any defense, offset or counterclaim which may at any time be available to or be asserted by Borrower(s) or Guarantor or any other guarantor against Lender; or (c) any other event or circumstance whatsoever which may constitute, or might be construed to constitute, an equitable or legal discharge of a surety or a guarantor, it being the purpose and intent of the Guarantor that the Guaranties and the Guarantor's obligations under the Guaranties shall remain in full force and effect and be binding upon Guarantor and Guarantor's successors until the liability and the obligations of Guarantor under the Guaranties shall have been satisfied by payment in full. The Guaranties are continuing guaranties and shall remain in force at all times hereafter, whether there are any Liabilities outstanding or not, until a written notice of termination from Guarantor is received and acknowledged by Lender stating an effective date of no less than two (2) business days following receipt of such notice by Lender. Any such termination shall not be effective as to any Guarantor who has failed to give such notice, and shall not release Guarantor from liability for payment of (i) any and all Liabilities then in existence, (ii) any renewals or extensions thereof, in whole or in part of, whether such renewals or extensions are made before or after such termination, and (iii) any damages, losses, costs, interest, charges, attorney's fees or expenses then or thereafter incurred in connection with such Liabilities or any renewals or extensions thereof.

g) Guarantor hereby consents and agrees that, at any time or times, without the necessity of any reservation of rights against Guarantor and without notice to or further approval of Guarantor, and without in any way affecting the obligations of Guarantor under the Guaranties, Lender may, with or without consideration, (i) supplement, modify, amend, renew, extend, accept partial payments or performance on or otherwise change the time, manner or place of payment or performance, or the interest rate or other terms, or the amount, of any of the Liabilities, or the obligation of any party upon or for any part thereof; (ii) release, terminate, waive, abandon, compromise or subordinate the Liabilities, in whole or in part; (iii) transfer or consent to the transfer of or enter into or give any other agreement, approval, waiver or consent with respect to or in exchange for the Liabilities, or any part thereof; (iv) receive and hold additional security or guaranties; (v) release or agree not to sue, in whole or in part, any Borrower, Guarantor or any other obligor, guarantor, endorser or surety upon any of the Liabilities; or (vi) accelerate, compromise, settle, compound, sue for, or collect, either in whole or in part, any of the Liabilities,

any of the terms thereof, or any agreement, covenant, condition, or obligation of or with any Borrower, Guarantor or any other obligor, guarantor, endorser or surety upon any of the Liabilities.

      h)     Guarantor hereby consents and agrees that Lender may at any time, either with or without consideration, surrender, release, exchange, waive or receive any property or other security of any kind or nature whatsoever held by it or any person on its behalf or for its account securing any of the Liabilities, or substitute any collateral so held by Lender for other collateral of like kind, or any kind, without notice to or further consent from Guarantor, and such surrender, receipt, release or substitution shall not in any way affect the obligations of Guarantor under any Guaranty. Lender shall not have any duty to protect, secure, perfect or insure any collateral security at any time securing the payment of the Liabilities. Lender shall have full authority to adjust, compromise and receive less than the amount due upon any such collateral, and may enter into any accord and satisfaction agreement with respect to the same as may seem advisable to Lender without affecting the obligations of Guarantor under any Guaranty, which shall remain absolute, primary and unconditional. Lender shall be under no duty to undertake to collect upon such collateral or any part thereof, and shall not be liable for any negligence or mistake in judgment in handling, disposing of, obtaining, or failing to collect upon, or perfecting a security interest in, any such collateral. Lender may collect or otherwise liquidate any collateral in any manner (including judicial or nonjudicial sale or other disposition of any security) and bid and purchase at any sale without affecting or impairing the obligations of Guarantor.

      i)     Without limitation on the other waivers and provisions herein or in the Guaranties, Guarantor hereby waives all of Guarantor's rights of subrogation and reimbursement and any other related rights and defenses available to Guarantor under any applicable law or otherwise, and by reason of California Civil Code Sections 2787 to 2855, inclusive (if Guarantor is resident in California), including (a) any defenses Guarantor may have to the obligations under the Guaranties by reason of an election of remedies by Lender and (b) any rights or defenses Guarantor may have by reason of protection afforded to Borrower(s) with respect to the Liabilities guaranteed by the Guaranties pursuant to any laws in any jurisdiction (including the antideficiency and other laws of California if Guarantor is resident in California) limiting or discharging Borrower(s)'s indebtedness or requiring Lender to foreclose on any real property security prior to instituting any action against Borrower(s) (including, without limitation, California Code of Civil Procedure Sections 580a, 580b, 580d or 726 if Guarantor is resident in California). Guarantor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as nonjudicial foreclosure with respect to security for any obligation guaranteed by the Guaranties, has destroyed Guarantor's rights of subrogation and reimbursement against Borrower(s) by operation of any applicable law, including California Code of Civil Procedure Section 580d if Guarantor is resident in California, or otherwise. Guarantor hereby waives any rights available under any applicable law, including California Code of Civil Procedure Section 580a if Guarantor is resident in California, or otherwise to have a fair value hearing for, to require Lender to establish the fair value of, or to require Lender to proceed against, any of the collateral provided by Borrower(s) for the Liabilities guaranteed by the Guaranties, prior to or as a condition of Lender's enforcement and collection of Guarantor's obligations under the Guaranties, and Guarantor hereby waives any defense to its obligations under the Guaranties arising from or in connection with any such right under any applicable law, including California Code of Civil Procedure Section 580a if Guarantor is resident in California, or otherwise.

j) The Guaranties cover all Liabilities to Lender purporting to be incurred on behalf of Borrower(s) by any officer, agent or partner of said Borrower(s), without regard to the actual authority of such officer, agent or partner to bind Borrower(s), and without regard to the capacity of Borrower(s) or whether the organization or charter of Borrower(s) is in any way defective.

k) Guarantor waives any requirement that Lender make any demand, commence suit or exercise any other right or remedy under the Liabilities prior to enforcing its rights against Guarantor under the Guaranties. Guarantor waives notice of acceptance of the Guaranties and of the creation, extension or renewal of any liability of Borrower(s) to which it is related and of any default by Borrower(s). Guarantor waives diligence, presentment, protest, demand for payment and/or notice of default or nonpayment to or upon Borrower(s), Guarantor or any other person with respect to the Liabilities. Guarantor waives any right to require Lender to marshal assets in favor of Borrower(s), Guarantor or any other person or entity. When making any demand under the Guaranties against Guarantor, Lender may, but shall be under no obligation to, make a similar demand on any other guarantor, and any failure by Lender to make any such demand, to collect any payments from any such other guarantor, or any release of such other guarantor shall not relieve Guarantor of its obligations and liabilities under the Guaranties, and shall not impair or affect the rights and remedies, express or implied, or as a matter of law, of Lender against Guarantor. For the purposes hereof "demand" shall include the commencement and continuance of any legal proceedings against Borrower(s) or any other obligor. The Guaranties shall not be affected by any change that may arise by reason of the death of Guarantor, or the reorganization, restructuring, change in ownership or dissolution of Borrower(s).

l) The Guaranties shall bind and inure to the benefit of Lender, its successors and assigns, and likewise shall bind and inure to the benefit of Guarantor, its or their heirs, executors, administrators, estates, successors and assigns.

m) If any legal action or actions are instituted by Lender to enforce any of its rights against Guarantor under the Guaranties, then Guarantor agrees to pay Lender all expenses incurred by Lender relative to such legal action or actions including, but not limited to, court costs plus reasonable attorneys' fees.

n) Lender is authorized and empowered to proceed against Guarantor without joining Borrower(s) or any other guarantor. All of said parties may be sued together, or any of them may be sued separately without first or contemporaneously suing the others. There shall be no duty or obligation upon Lender, whether by notice under any applicable statute or otherwise (i) to proceed against Borrower(s) or Guarantor; or (ii) to initiate any proceeding or exhaust any remedy against Borrower(s) or Guarantor, or (iii) to give any notice to Guarantor or Borrower(s) whatsoever, before bringing suit, exercising any right to any collateral or security, or instituting proceedings of any kind against Borrower(s), Guarantor or any of them.

o) Guarantor hereby ratifies, confirms, and adopts all the terms, conditions, agreements and stipulations of all notes and other evidences of the Liabilities heretofore or hereafter executed. Without in any way limiting the generality of the foregoing, Guarantor waives and renounces, for themselves and their family, any and all homestead or exemption rights they may have under or by virtue of the constitution or laws of any state, or the United States, as against the obligations hereby created, and Guarantor does hereby transfer, convey and assign, and direct

any trustee in bankruptcy or receiver to deliver to Lender or the holder hereof, a sufficient amount of property or money in any homestead or exemption that may be allowed to Guarantor to pay any liability guaranteed hereby in full and all costs of collection. Guarantor also waives and renounces for themselves any defenses to any of the Liabilities that may be available to or could be asserted by Borrower(s), except for payment, and further waives any setoffs and counterclaims.

p)   Guarantor warrants and agrees that each of the waivers set forth in the Guaranties or in these provisions is made with full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any of such waivers are determined to be contrary to any applicable law or public policy, such waivers shall be effective to the maximum extent permitted by law.

q)   Guarantor agrees that if at any time all or any part of any payment theretofore applied by Lender to any of the Liabilities is or must be rescinded or returned by Lender for any reason whatsoever (including, without limitation, the insolvency, bankruptcy or reorganization of Borrower(s)), such Liabilities shall, for the purposes of the Guaranties, to the extent that such payment is or must be rescinded or returned, be deemed to have continued in existence, notwithstanding such application by Lender, and the Guaranties shall continue to be effective or be reinstated, as the case may be, as to such Liabilities, all as though such application by Lender had not been made.

r)   All of Lender's rights and remedies are cumulative and those granted under the Guaranties are in addition to any rights and remedies available to Lender under law. A waiver by Lender of any right or remedy on any one occasion shall not be construed as a bar to any right or remedy that Lender would otherwise have on any future occasion. If any of these provisions or any provision of any Guaranty or the application thereof to any person or circumstances shall to any extent be invalid or unenforceable, the remainder of these provisions or the Guaranty, as the case may be, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby, and each of these provisions and each provision of the Guaranties shall be valid and enforceable to the full extent permitted by law. The failure or forbearance of Lender to exercise any right under the Guaranties, or otherwise granted to it by law or another agreement, shall not affect the obligations of Guarantor under the Guaranties and shall not constitute a waiver of said right. The Guaranties, together with these provisions and the foregoing agreement, contain the entire agreement between the parties, and no provision hereof may be waived, modified, or altered except by a writing executed by Guarantor and Lender.

s)   GUARANTOR'S EXECUTION OF THE GUARANTIES AND THE FOREGOING AGREEMENT WAS NOT BASED UPON ANY FACTS OR MATERIALS PROVIDED BY LENDER NOR WAS GUARANTOR INDUCED TO EXECUTE THE GUARANTIES OR THE FOREGOING AGREEMENT BY ANY REPRESENTATION, STATEMENT OR ANALYSIS MADE BY LENDER. GUARANTOR ACKNOWLEDGES AND AGREES THAT GUARANTOR ASSUMES SOLE RESPONSIBILITY FOR INDEPENDENTLY OBTAINING ANY INFORMATION OR REPORTS DEEMED ADVISABLE BY GUARANTOR WITH REGARD TO BORROWER(S), AND GUARANTOR AGREES TO RELY SOLELY ON THE INFORMATION OR REPORTS SO OBTAINED IN REACHING ANY DECISION TO EXECUTE THE GUARANTIES OR THE FOREGOING

AGREEMENT. GUARANTOR ACKNOWLEDGES AND AGREES THAT LENDER IS AND SHALL BE UNDER NO OBLIGATION NOW OR IN THE FUTURE TO FURNISH ANY INFORMATION TO GUARANTOR CONCERNING BORROWER(S) OR THE LIABILITIES, AND THAT LENDER DOES NOT AND SHALL NOT BE DEEMED IN THE FUTURE TO WARRANT THE ACCURACY OF ANY INFORMATION OR REPRESENTATION CONCERNING BORROWER(S), GUARANTOR OR ANY OTHER PERSON WHICH MAY INDUCE GUARANTOR TO EXECUTE THE GUARANTIES OR THE FOREGOING AGREEMENT.

t)   GUARANTOR (AND, IF MORE THAN ONE PERSON HAS SIGNED THE GUARANTIES, EACH SUCH PERSON) HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING UNDER THE GUARANTIES OR IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS BETWEEN GUARANTOR AND LENDER OR BORROWER AND LENDER OR THE TRANSACTIONS RELATED THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND GUARANTOR (AND, IF MORE THAN ONE PERSON HAS SIGNED BELOW AS GUARANTOR, EACH SUCH PERSON) HEREBY CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT LENDER MAY FILE AN ORIGINAL COUNTERPART OR COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE CONSENT OF GUARANTOR (OR ANY SUCH PERSON) TO THE WAIVER OF HIS, HER OR ITS RIGHT TO TRIAL BY JURY.