RETURN DATE:

| | | |
|---|---|---|
| NISSAN MOTOR ACCEPTANCE COMPANY | ) ) | SUPERIOR COURT; |
| Plaintiff | ) | JUDICIAL DISTRICT OF HARTFORD |
| Defendant-in-Counterclaim | ) ) | AT HARTFORD |
| v. | ) ) | |
| TEAM IMPORTS LLC; ROBERT URRUTIA and; HERLOF SORENSEN | ) ) ) ) | |

**DEFENDANTS TEAM IMPORTS LLC'S AND ROBERT URRUTIA'S VERIFIED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS JURY TRIAL DEMANDED**

Defendants Team Imports LLC ("Team Mitsubishi") and Robert Urrutia ("Urrutia", collectively the "Team Defendants") hereby Answer the Verified Complaint of Nissan Motor Acceptance Company ("NMAC") as follows.

## FIRST COUNT
### (Breach of Wholesale Agreement)[1]

### PARTIES

1. The Team Defendants lack sufficient information to form a response to the allegations in paragraph 4 and therefore leave the plaintiff to its proof.

2. Admitted.

3. The Team Defendants admit that Urrutia is an individual. The Team Defendants deny the remainder of the allegations in paragraph 3.

---

[1] The Team Defendants are not required to respond to section headings within the Verified Complaint; however, to the extent these section headings contain assertions or allegations, they are denied, and the use of these section headings is for convenience purposes only.

4.      The Team Defendants admit that Sorensen is an individual. The Team Defendants deny the remainder of the allegations in paragraph 4.

## GENERAL ALLEGATIONS

5.      The Team Defendants admit that Plaintiff provides floor plan financing to Defendant Team Imports LLC. The Team Defendants deny the remainder of the allegations in paragraph 5.

6.      Denied.

7.      Denied.

8.      The Team Defendants lack sufficient information to form a response to the allegations in paragraph 8 and therefore leave the plaintiff to its proof.

9.      The Team Defendants lack sufficient information to form a response to the allegations in paragraph 9 and therefore leave the plaintiff to its proof.

### Wholesale Financing Agreement

10.    The Team Defendants state that the Wholesale Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

11.    The Team Defendants state that the Wholesale Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

12.    The Team Defendants state that the UCC-1 speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

13.    The Team Defendants state that the Wholesale Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

14.    The Team Defendants state that the Wholesale Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

15.    The Team Defendants state that the Wholesale Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

**Capital Loan**

16.    The Team Defendants state that the Capital Loan Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent that a response is required, denied.

17.    The Team Defendants state that the Capital Loan Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

18.    The Team Defendants state that the Capital Loan Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

19.    The Team Defendants state that the Capital Loan Agreement speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

**Defaults by Dealer**

20.    The Team Defendants lack sufficient information to form a response to the allegations in paragraph 20 and therefore leave the plaintiff to its proof.

21.    The Team Defendants state that the letter annexed as Exhibit 4 to the Verified Complaint speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

22.    Denied.

23.    The Team Defendants lack sufficient information to form a response to the allegations in paragraph 23 and therefore leave the plaintiff to its proof.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Denied.

31.    Denied.

32.    Denied.

**SECOND COUNT**
**(Injunctive Relief)**

1.- 32. The Team Defendants hereby repeat and reallege their responses to paragraphs 1 through 32 of the First Count as their response to paragraph 1-32 of the Second Count as if fully set forth herein.

33.    Denied.

4

34.    Denied.

35.    Denied.

36.    Denied

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

41.    Denied.

42.    Denied.

**THIRD COUNT**
**(Specific Performance)**

1.- 42.  The Team Defendants hereby repeat and reallege their responses to paragraphs 1 through 42 of the First Count and Second Count as their responses to paragraph 1-42 of the Third Count as if fully set forth herein.

43.    Denied.

44.    Denied

45.    Denied.

46.    Denied.

**FOURTH COUNT**
**(Breach of the Capital Loan Agreement)**

1. - 46.  The Team Defendants hereby repeat and reallege their responses to paragraphs 1 through 46 of the First Count, the Second Count and the Third Count as their responses to paragraphs 1-46 of the Fourth Count as if fully set forth herein.

47.    Denied.

48.    Denied.

49.    Denied.

50.    Denied.

51.    Denied.

52.    Denied.

**FIFTH COUNT**
**(Breach of Guaranty – Urrutia)**

1. - 52. The Team Defendants hereby repeat and reallege their responses to paragraphs 1 through 52 of the First Count, the Second Count, the Third Count, and the Fourth Count as their responses to paragraphs 1-52 of the Fifth Count as if fully set forth herein.

53.    The Team Defendants state that the document annexed as Exhibit 8 to the Verified Complaint speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

54.    Denied.

55.    Denied

56.    Denied.

57.    Denied.

**SIXTH COUNT**
**(Breach of Guaranty – Sorensen)**

1. – 57. The Team Defendants hereby repeat and reallege their responses to paragraphs 1 through 57 of the First Count, the Second Count, the Third Count, the Fourth Count, and the Fifth Count (mislabeled in the Verified Complaint as paragraphs 1-52) as to their responses to

6

paragraphs 1-57 of the Sixth Count (mislabeled in the Verified Complaint as paragraphs 1-52) as fully set forth herein.

58.    The Team Defendants state that the document annexed to the Verified Complaint as Exhibit 9 (mislabeled as paragraph 72 in the Verified Complaint) speaks for itself and any characterization inconsistent therewith is denied. To the extent a response is required, denied.

59.    The Team Defendants state that the allegations in paragraph 59 (mislabeled as paragraph 73) of the Verified Complaint are not directed to the Team Defendants and no response is required. To the extent a response is required, denied.

60.    The Team Defendants state that the allegations in paragraph 60 (mislabeled as paragraph 58) of the Verified Complaint are not directed to the Team Defendants and no response is required. To the extent a response is required, denied.

61.    The Team Defendants state that the allegations in paragraph 61 (mislabeled as paragraph 74) of the Verified Complaint are not directed to the Team Defendants and no response is required. To the extent a response is required, denied.

62.    The Team Defendants state that the allegations in paragraph 62 (mislabeled as paragraph 75) of the Verified Complaint are not directed to the Team Defendants and no response is required. To the extent a response is required, denied.

## **PLAINTIFF'S PRAYER FOR RELIEF**

To the extent a response is required, The Team Defendants deny that Plaintiff is entitled to any of the relief requested in the Verified Complaint.

## TEAM DEFENDANTS' AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff is barred from recovering any relief sought in the Complaint because it has suffered no damages or other actionable harm.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has not sustained any injury-in-fact caused by any action or commission of Defendants.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by the doctrine of *in pari delicto* and the unclean hands doctrine, or otherwise due to Plaintiff's misconduct or bad faith.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were not proximately caused by Defendants.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, are barred or reduced by its failure to mitigate alleged damages.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Defendants' payment of alleged monies due and owing.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the affirmative defense of assumption of the risk.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver and estoppel.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or damages are barred by the affirmative defense of duress.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims and/or damages are barred by the affirmative defense of accord and satisfaction.

## RESERVATION OF RIGHTS

The Team Defendants reserve their right to amend this Answer or to amend or add further affirmative defenses that may become known after the filing of this pleading.

WHEREFORE, the Team Defendants deny that Plaintiff is entitled to any of the relief set forth in the Complaint, and Team Defendants respectfully request that this Court:

A.    Enter judgment in favor of the Team Defendants on all Counts set forth in the Complaint;

B.    Award the Team Defendants damages, pre-and-post judgment interest, costs, and attorneys' fees in an amount to be determined at trial with respect to their Counterclaims; and

C.    Order such other relief as this Court deems just and appropriate.

## JURY DEMAND

The Team Defendants respectfully request a trial by jury on all claims so triable.

**[INTENTIONALLY LEFT BLANK]**

**COUNTERCLAIMS OF TEAM IMPORTS LLC AND ROBERT URRUTIA**

Team Imports LLC ("Team Mitsubishi") and Robert Urrutia ("Urrutia," collectively the "Team Counterclaim Plaintiffs") assert the below Counterclaims against plaintiff and in support thereof alleges as follows:

**COUNTERCLAIM COUNT 1**
**(Breach of Contract)**

**PARTIES**

1.  Counterclaim Plaintiff Team Mitsubishi is a limited liability company organized and existing under the laws of the State of Connecticut with a principal place of business located at 412 New Park Avenue, Hartford, CT 06110.

2.  Counterclaim Plaintiff Urrutia is an individual who resides in the State of New Jersey. Urrutia is the owner of 100% of Team Mitsubishi.

3.  Counterclaim Defendant NMAC is a limited liability company organized and existing under the laws of the State of Delaware.

4.  Team Mitsubishi is a new motor vehicle dealer franchised to sell and service Mitsubishi vehicles manufactured and distributed by non-party Mitsubishi Motors North America, Inc. ("MMNA").

5.  Team Mitsubishi orders its new vehicle inventory from MMNA. It uses a "floor plan" line of credit to pay for the vehicles it orders from MMNA.

6.  NMAC also provides floor plan lines for other dealerships owned by Urrutia, including Volkswagen of Freehold located in New Jersey and Nissan of Pittsfield located in Massachusetts (collectively, the "Dealerships").

7.  NMAC would periodically audit the floor plan lines for Team Mitsubishi, Volkswagen of Freehold, and Nissan of Pittsfield, including yearly audits.

8.      Each of the Dealerships passed these audits, including the most-recent yearly audit.

9.      By email dated April 8, 2024, NMAC notified Urrutia that NMAC had suspended Team Mitsubishi's floorplan line and would not allow the dealership to floor any additional vehicles.

10.     By email dated April 11, 2024, NMAC alleged that Urrutia's three dealerships combined were at 137% of their collective floor plan limit.

11.     NMAC notified Volkswagen, MMNA, and Mitsubishi that it was suspending the floor plan lines of each of Urrutia's Dealerships.

12.     Because of the floor plan suspension, the Dealerships, including Team Mitsubishi, could no longer pay for new vehicles ordered from the manufacturers or floor trade-ins.

13.     This action severely curtailed Team Mitsubishi's ability to conduct business because it no longer had a floor plan line to finance vehicle inventory purchases.

14.     By email dated April 18, 2024, NMAC informed Urrutia that it would reinstate the floor plan lines but that he had to get the lines to 100% the applicable limit.

15.     In response, Urrutia directed the Dealerships to liquidate as much inventory as possible, causing the Dealerships to incur millions of dollars in inventory losses.

16.     Urrutia later discovered that NMAC was wrong. His dealerships were not over their floor plan lines and NMAC should never have shut off their floor plans, let alone require them to sell off significant amounts of inventory to get their floor plan lines down.

17.     By email dated May 2, 2024, Urrutia notified NMAC that it was wrong and that the dealerships were never over their floor plan limits. NMAC's representative

acknowledged that the dealerships were never over their limits and in fact still had room for new inventory.

18. But by then the damage was done. Team Mitsubishi never recovered financially from NMAC's wrongdoing and incurred additional losses as it tried to stabilize its business and return to profitability.

19. On or around July 3, 2024, NMAC shut off Team Mitsubishi's floor plan line, prohibiting it from financing vehicles it ordered from MMNA.

20. As a result of NMAC's actions, the Team Defendants were forced to sell off inventory at a loss and scale down operations.

21. Because of NMAC's actions, the Team Defendants suffered loss of profits and diminished revenue.

22. The Team Defendants have been forced to put Team Mitsubishi up for sale because of NMAC's actions.

23. NMAC's actions have diminished the value of Team Mitsubishi as a going concern, forcing the Team Defendants to sell it for far less than they otherwise would obtain without NMAC's wrongful conduct.

24. The Team Defendants seek damages in amounts to be determined at trial, including, but not limited to, damages for the losses on vehicle sales, lost profits due to being forced to scale down operations, and the diminished value of Team Mitsubishi.

25. The Wholesale Agreement and the Capital Loan Agreement are valid and enforceable contracts, and the Team Defendants have complied with them in all material respects.

26.    Section 2.3.2 of the Wholesale Agreement purports to require Team Mitsubishi to "promptly pay" NMAC "the amount due related to the item sold, together with interest, in accordance with NMAC's Wholesale Floor Plan Payoff Policy."

27.    "Promptly" is not defined in the Wholesale Agreement.

28.    In the parties' course of dealings, NMAC did not require Team Mitsubishi to pay vehicles off "promptly."

29.    And contrary to NMAC's allegations, nothing in the Wholesale Agreement requires Team Mitsubishi to pay off vehicles "immediately."

30.    NMAC breached the Wholesale Agreement and Capital Loan Agreement by, among other things, wrongfully shutting off Team Mitsubishi's floor plan lines twice, forcing it to sell vehicles at substantial losses to reduce this nonexistent overdraft, demanding immediate payment when it had no contractual right to do so, and wrongfully accelerating the loans and advances under the Loan Documents.

31.    Section 2.1 of the Wholesale Agreement permits Team Mitsubishi to request "Advances," which are defined as "any loan or extension of credit made by NMAC to or on behalf of Dealer under this Agreement."

32.    Section 2.1 of the Wholesale Agreement purports to give NMAC the sole discretion and right "to determine the extent to which, the terms and conditions on which, and the period it will make any Advances."

33.    Section 5 of the Wholesale Agreement purports to provide the grounds by which NMAC may declare a default.

34.    NMAC wrongfully declared Team Mitsubishi in default of the Wholesale Agreement and then used this wrongful declaration to declare defaults under the

14

other Loan Documents, shut off Team Mitsubishi's floor plan line, accelerate the balances owed, and to commence this action.

35. NMAC has violated the express terms of the Wholesale Agreement and the Capital Loan Agreement as explained herein.

36. Defendants Team Mitsubishi and Urrutia have performed their obligations under the Wholesale Agreement and the Capital Loan Agreement.

37. As a result of NMAC's breaches of contract, the Team Defendants have incurred and continue to incur damages in an amount to be determined at trial.

**COUNTERCLAIM COUNT II**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

1. – 37. The Team Defendants repeat and reallege the allegations set forth in paragraphs 1-37.

38. Every contract in Connecticut contains a covenant of good faith and fair dealing, which provides that neither party shall do anything to destroy or injure the rights of the other party to receive the fruits of the contract.

39. The Team Defendants and NMAC are parties to contracts (the Wholesale Agreement and Capital Loan Agreement) under which the Team Defendants reasonably expected to receive certain benefits.

40. The benefits the Team Defendants expected to receive include the ability to floor vehicles and finance the dealership's operations.

41. As explained above, NMAC engaged in conduct that injured the Team Defendants' rights to receive some or all of those benefits.

42. NMAC acted in bad faith and/or unfairly interfered with Team Mitsubishi's rights when committing the acts described herein.

15

43.     NMAC has breached this covenant of good faith and fair dealing through wrongful acts which include: (a) wrongfully declaring a default; (b) wrongfully claiming Team Mitsubishi was over its floor plan line in April 2024 when it wasn't; (c) using this wrongful claim to demand that Team Mitsubishi liquidate its inventory, which Team Mitsubishi did in reliance on NMAC's claim; and (d) shutting off Team Mitsubishi's floor plan line in July 2024.

44.     While Sections 2.1 and 5 of the Wholesale Agreement purport to give NMAC certain rights to extend credit and declare defaults, it must exercise these rights in accordance with the covenant of good faith and fair dealing. As explained herein, it failed to do so.

45.     Section 2.3.2 of the Wholesale Agreement purports to require Team Mitsubishi to "promptly pay" NMAC "the amount due related to the item sold, together with interest, in accordance with NMAC's Wholesale Floor Plan Payoff Policy." In violation of the covenant of good faith and fair dealing, NMAC demanded immediate payment when the Wholesale Agreement only purports to require "prompt" payment.

46.     As a result of NMAC's conduct, the Team Defendants have suffered and continue to suffer economic damages, including lost profits and diminution in value of Team Mitsubishi as a going concern now that it has been forced to sell its assets because of NMAC's actions.

16

## COUNTERCLAIM COUNT III
**(Violation of the Connecticut Unfair Trade Practices Act C.G.S.A. § 42-110a et seq.)**

1. – 46. The Team Defendants repeat and reallege the allegations set forth in the paragraphs 1-46.

47. Connecticut General Statutes §42-110b(a) states that "[n]o person shall engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

48. Team Mitsubishi is a "person" as that term is used in C.G.S.A. § 42-110a(2).

49. Urrutia is a "person" as that term is used in C.G.S.A. § 42-110a(2).

50. NMAC is a "person" as that term is used in C.G.S.A. § 42-110a(2).

51. "Trade" and "commerce" "means the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity , or thing of value in this state." C.G.S.A. § 42-110a(4).

52. NMAC provides "services" and "things of value in this state" as that term is used in C.G.S.A. § 42-110a(4).

53. Specifically, NMAC provides floor plan financing and other financing services to the Team Defendants in the State of Connecticut.

54. As alleged herein, NMAC engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of "trade" or "commerce" in Connecticut.

55. Under C.G.S.A. § 42-110g(a), "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action in the

17

judicial district in which the plaintiff or defendant resides or has his principal place of business or is doing business, to recover actual damages. Proof of public interest or public injury shall not be required in any action brought under this section. The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."

56.    Team Mitsubishi has its principal place of business in this judicial district and is doing business in this judicial district.

57.    Under C.G.S.A. § 42-110g(d), "the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery…In an action brought under this section, the court may, in its discretion, order, in additional to damages or in lieu of damages, injunctive or other equitable relief.

58.    As a result of NMAC's unfair and deceptive acts and practices, the Team Defendants have suffered and continues to suffer actual damages, including lost profits and diminution in value of Team Mitsubishi as a going concern. The Team Defendants are also entitled to punitive damages and their attorney's fees as permitted under the Connecticut Unfair Trade Practices Act.

**WHEREFORE**, the Counterclaim Plaintiffs claim:

As to Counts I and II:

1.    Damages;

2.    Prejudgment interest pursuant to C.G.S.A. § 37-3a;

3.    Any and all provisional remedies available in accordance with C.G.S.A. § 52-278a;

4.    Such other and further relief as in law or equity may apply or may be required.

<u>As to Count III</u>

5.      Damages, including punitive damages as authorized under the Connecticut Unfair Trade Practices Act;

6.      Prejudgment interest pursuant to C.G.S.A. § 37-3a;

7.      Attorney's fees and costs pursuant to the Connecticut Unfair Trade Practices Act;

8.      Any and all provisional remedies available in accordance with C.G.S.A. § 52-278a and the Connecticut Unfair Trade Practices Act;

9.      Such other and further relief as in law or equity may apply or may be required.

## **JURY DEMAND**

Counterclaim Plaintiffs hereby respectfully demand a trial by jury on all claims so triable.

Date: October 21, 2024

Respectfully submitted,

Defendants,
**TEAM NISSAN, INC. AND ROBERT URRUTIA**

*/s/ David Ward*
David J. Ward
Devon C. Bodey (BBO No. 705146)
ARENTFOX SCHIFF, LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
david.ward@afslaw.com

Russell P. McRory (*pro hac vice forthcoming*)
Michael P. McMahan (*pro hac vice forthcoming*)
Charles A. Gallaer (*pro hace vice forthcoming*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019

19

RETURN DATE:

| | | |
|---|---|---|
| NISSAN MOTOR ACCEPTANCE | ) | SUPERIOR COURT; |
| COMPANY | ) | |
| Plaintiff | ) | JUDICIAL DISTRICT OF HARTFORD |
| Defendant-in-Counterclaim | ) | |
| | ) | AT HARTFORD |
| v. | ) | |
| | ) | |
| TEAM IMPORTS LLC; ROBERT | ) | |
| URRUTIA and; HERLOF | ) | |
| SORENSEN | ) | |

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE, the Counterclaim Plaintiffs claim:

1.    As to Count III,

   a.   Punitive damages as authorized under the Connecticut Unfair Trade Practices Act; and

   b.   Attorney's fees and costs pursuant to the Connecticut Unfair Trade Practices Act.

2.    As to all Counts, monetary damages, within the jurisdiction of the Court, of not less than fifteen thousand dollars ($15,000.00);

3.    Pre-judgment interest;

4.    Any and all provisional remedies available in accordance with C.G.S.A. § 51-278a; and

5.    Such other and further relief as in law or equity may apply or may be required.


Date: October 21, 2024

Respectfully submitted,

Defendants,
**TEAM NISSAN, INC. AND**

20

**ROBERT URRUTIA**

*/s/ David Ward*
David J. Ward
Devon C. Bodey (BBO No. 705146)
ARENTFOX SCHIFF, LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
david.ward@afslaw.com


Russell P. McRory (*pro hac vice forthcoming*)
Michael P. McMahan (*pro hac vice forthcoming*)
Charles A. Gallaer (*pro hace vice forthcoming*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019

RETURN DATE:

| | | |
|---|---|---|
| NISSAN MOTOR ACCEPTANCE | ) | SUPERIOR COURT; |
| COMPANY | ) | |
| Plaintiff | ) | JUDICIAL DISTRICT OF HARTFORD |
| Defendant-in-Counterclaim | ) | |
| | ) | AT HARTFORD |
| v. | ) | |
| | ) | |
| TEAM IMPORTS LLC; ROBERT | ) | |
| URRUTIA and; HERLOF | ) | |
| SORENSEN | ) | |

## STATEMENT OF AMOUNT IN DEMAND

The amount, legal interest, or property in demand is more than fifteen thousand dollars ($15,000.00), exclusive of interest and costs.

Date: October 21, 2024

Respectfully submitted,

Defendants,
**TEAM NISSAN, INC. AND ROBERT URRUTIA**

*/s/ David Ward*
David J. Ward
Devon C. Bodey (BBO No. 705146)
ARENTFOX SCHIFF, LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019
david.ward@afslaw.com

Russell P. McRory (*pro hac vice forthcoming*)
Michael P. McMahan (*pro hac vice forthcoming*)
Charles A. Gallaer (*pro hace vice forthcoming*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Fl. 42
New York, NY 10019

22

RETURN DATE:

| | | |
|---|---|---|
| NISSAN MOTOR ACCEPTANCE COMPANY | ) ) | SUPERIOR COURT; |
| Plaintiff | ) | JUDICIAL DISTRICT OF HARTFORD |
| Defendant-in-Counterclaim | ) | |
| | ) | AT HARTFORD |
| v. | ) | |
| | ) | |
| TEAM IMPORTS LLC; ROBERT | ) | |
| URRUTIA and; HERLOF | ) | |
| SORENSEN | ) | |

## <u>VERIFICATION</u>

The undersigned, having read the attached Answer, Affirmative Defenses, and Counterclaims in the above referenced matter, hereby verifies the truth of all the allegations contained therein.

Defendants,
**TEAM NISSAN, INC. AND ROBERT URRUTIA**

By: _Robert Urrutia_ [DIGITALLY SIGNED]
Name: Robert Urrutia
Title:  Owner

By: _Robert Urrutia_ [DIGITALLY SIGNED]
Name: Robert Urrutia

Subscribed and sworn to
Before me on this t 21s
Day of October, 2024



Notary Public

MELTON L SAWYER
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01SA0001030
Qualified in Queens County
Commission Expires February 8, 2027

Online Notary Public. This notarial act involved the
use of online audio/video communication
technology. Notarization facilitated by SIGNiX®