UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA IN OPPOSITION TO THE DEO DEFENDANTS' THIRD LETTER MOTION FOR CONTEMPT**

                                            Plaintiffs,

        -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                                            Defendants.
------------------------------------------------------------------X

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the majority shareholder and President of Superb Motors Inc. ("Superb"), what used to be a high-end used car dealership in Great Neck on Long Island, and the sole member of Team Auto Sales LLC ("Team"), a wholesale used car operation that I own and operate out of New Jersey.[1]

2. Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4. I respectfully submit this declaration in opposition to the Deo Defendants' third letter motion for contempt.

**The Mileage the Deo Defendants Rely on in their Motion for Contempt Predate the Injunction**

5. The Deo Defendants compare October and November 2023 MV-50s and transfer documents with subsequent photos of odometers from the Superb Injuncted Vehicles to create the illusion that the Superb Plaintiffs have caused the Superb Injuncted Vehicles to be driven in violation of the injunction.

6. However, this is just a mirage that the Deo Defendants see in doing whatever they can to try and use the preliminary injunction that was supposed to benefit me against me.

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

7.  The truth is, the mileage for each of the vehicles listed in the October and November 2023 MV-50s and transfer documents mirror the original mileage when Superb and/or Team first acquired the vehicles before the injunction ever came into effect.

8.  The 2019 Mercedes Benz GT with VIN ending in 1866[2] was acquired by Superb on July 17, 2023 with 69,382 miles, the same mileage listed in the November 7, 2023 document. See ECF Docket Entries 38-10 at 168 and 172; compare with ECF Docket Entry 155-1 at 22.

9.  The 2018 Land Rover with VIN ending in 9351 was acquired by Superb on June 5, 2023 with 72,918 miles as reflected in the title and was driven ten (10) miles by June 29, 2023 when the wholesale certificate of sale receipt was made, and reflects 72,983 miles in the November 6, 2023 document. See ECF Docket Entries 38-10 at 186 and 182; compare with ECF Docket Entry 155-1 at 10.

10. Superb never received title for the 2018 Alfa Romeo Gulia because Manheim placed a hold on the account due to Deo's conduct. See ECF Docket Entry 65 ¶¶ 223-224 (describing how Deo purchased five (5) vehicles on Superb's account, took the vehicles, and left Superb holding the bag); see also copy of September and October 2023 email[3] exchange between myself, Bruce Novicky, Kendra Kernizant, and Yvonne McCoy annexed hereto as **Exhibit "A"** ("I spoke with the rep @ Manheim regarding SU1262, 2018 Alfa Romeo was paid for but they are unable to release the title because there is a hold on our Manheim account").

---

[2] In investigating the Deo Defendants' conduct, I learned that Deo and his son regularly drove this vehicle in July, August, and September 2023 prior to the issuance of the injunction.

[3] This email was made and kept in the ordinary course of business for Superb.

3

11. However, Superb's general ledger as of September 30, 2023 reflected that the 2018 Alfa Romeo Gulia had 54,975 miles when it was stocked in on June 23, 2023;[4] this reflects the same 54,975 miles in the November 2, 2023 document. See Ex. A; compare with ECF Docket Entry 155-1 at 13.

12. The 2018 Dodge Durango with VIN ending in 8967 was acquired by Superb on June 16, 2023 with 57,531 miles, and reflects the same mileage in the November 2, 2023 document. See ECF Docket Entries 38-10 at 140; compare with ECF Docket Entry 155-1 at 2.

13. The 2016 Porsche Panamera with VIN ending in 2172 was acquired by Superb on April 28, 2023 with 35,633 miles, and reflects the same mileage in the November 9, 2023 document. See ECF Docket Entry 112-8 at 43; compare with ECF Docket Entry 155-1 at 20.

14. The 2020 Mercedes GT with VIN ending in 6406 was acquired by Superb on March 23, 2023 with 41,147 miles, and reflects the same mileage in the November 2, 2023 document. See ECF Docket Entries 112-8 at 32; compare with ECF Docket Entry 155-1 at 6.

15. The 2019 Range Rover with VIN ending in 9794 was acquired by Superb on March 24, 2023 with 59,276 miles, and reflects the same mileage in the November 2, 2023 document. See ECF Docket Entries 112-8 at 38; compare with ECF Docket Entry 155-1 at 18.

16. The 2018 Mercedes SL with VIN ending in 2861 was acquired by Superb on February 24, 2023 with 48,909 miles, was driven five (5) miles by March 14, 2023, and reflects the same 48,914 in mileage in the November 2, 2023 document. See ECF Docket Entries 112-8 at 38; compare with ECF Docket Entry 155-1 at 24.

---

[4] The general ledger references that this vehicle's age in days is 99 days; 99 days from September 30, 2023 is June 23, 2023.

17. The 2019 Maserati Ghibli with VIN ending in 4330 was acquired by Superb on March 27, 2023 with 40,421 miles, and reflects the same mileage in the November 2, 2023 document. See ECF Docket Entries 112-8 at 38; compare with ECF Docket Entry 155-1 at 16.

18. The import of the foregoing is monumental; it means that the Deo Defendants cannot prove *when* these vehicles were driven between the acquisition date, which was pre-injunction, and the date the photographs were taken.

19. This is because the mileage of a vehicle is never updated until a final retail sale. See 15 NYCRR § 78.11(a)(12) ("Upon *transfer of ownership* of a motor vehicle, the mileage shown on that vehicle's odometer must be placed on the certificate of sale …"); compare with 15 NYCRR § 78.11(c) ("Exceptions—sale of a wholesale vehicle. When a vehicle is sold as a wholesale vehicle, the selling dealer need not deliver the certificate of sale, assigned title, or any other proofs of ownership required by regulations of the commission upon the transfer of a vehicle to the wholesale purchaser, unless payment is made by cash, certified check, or money order, until payment to the selling dealer has been cleared. In lieu of issuing such documents, the selling dealer shall give to the wholesale purchaser a receipt on the letterhead of the selling dealer indicating the wholesale purchaser's right to possession of the vehicle until payment is cleared. Immediately upon clearance of payment, the necessary transfer documents must be delivered or mailed to the wholesale purchaser").

20. Here, when Superb temporarily moved the vehicles to Team Imports LLC, there was no payment of cash, certified check, or money order accompanying the temporary transfer; as such, there was no requirement to provide a certificate of sale and the accompanying odometer disclosure statement. Indeed, the DMV regulations expressly provide that the odometer disclosure statement must follow when there is a transfer of ownership.

21. The assignment of titles – which is what occurred in October and November 2023 – did not constitute a transfer of ownership.

22. As a result, the same mileage that was listed on Superb's general ledger was used when issuing the assignments.

23. In other words, the documents the Deo Defendants rely on to establish the Superb Injuncted Vehicles' mileage as of October or November 2023 is inaccurate, as it reflects the original mileage of the vehicle as of its date of acquisition.

24. This means that the vehicles were not driven between October 2023 and January 2025 as the Deo Defendants claim; rather, the difference in the mileage reflects the number of miles driven by the Deo Defendants from the date of acquisition until I got the vehicles back with this Court's able assistance on September 15, 2023.

25. The Court does not have to believe me when I tell it that the vehicles were not driven by the Superb Plaintiffs; the Deo Defendants' own sworn testimony establishes that they regularly drove the vehicles prior to September 2023. See ECF Docket Entry 156-1 at 98:15-101:20.[5]

---

[5] Q. And in the course of you performing duties for Superb you were able to see where vehicles were, correct? **A. I did a lot of the repairs and dealt with one of the mechanics, windshields and stuff like that. Yes.** Q. You transported a lot of the vehicles, correct? **A. Drove them, yes.** Q. Is it fair to say of these 43 vehicles you may have transported some of them? **A. I may have through the course of my duties, yes.** … **If it's a mechanic, if it was glass, it needed tires, anything like that it would go to certain -- different places.** … Q. And in the course of performing your duties when you were asked to transport vehicles, sometimes you transported vehicles from Superb to Northshore, correct? **A. When we had the mechanic there, yes.** Q. And you heard testimony about the grand opening event. You were present, correct? **A. Yes.** Q. And in the course of performing your duties you transported vehicles from Superb to Northshore for that event, correct? **A. Yes.** … Q. How many vehicles do you recall transporting for the event, the grand opening event? **A. I don't remember.** Q. You transported at least one, right? **A. Yeah.** Q. Do you recall if you transported two or three? **A. One or two, but I don't remember if it was ten, 12. I didn't drive them all over there.**

6

26. The testimony of Defendant Dwight Blankenship from the February 20, 2024 hearing establishes that Superb vehicles were regularly driven by Deo and his staff in 2023 after these vehicles were acquired by Superb.

27. Vehicles were driven to repair shops because Superb did not perform repairs on premises and they were also driven from Superb to Northshore for the grand opening event.

28. When we received the vehicles back on September 15, 2023, they were also driven from Northshore to Superb.

29. If the Court recalls, the prohibition of driving the vehicles did not take effect until September 29, 2023, when the Hon. Orelia E. Merchant, U.S.D.J. issued the preliminary injunction.

30. Based on the foregoing, I respectfully submit that there is no clear and convincing evidence that the Superb Injuncted Vehicles were driven in violation of the Injunction on or after September 29, 2023.

31. Not only did the Deo Defendants fail to prove by clear and convincing evidence that the Superb Plaintiffs violated the Injunction, I can attest that the Superb Injuncted Vehicles were not driven following September 29, 2023.

32. Once the Injunction took effect, the vehicles were only moved on flatbeds to preserve their mileage.

33. Team Auto Group had a minimum of over four hundred (400) vehicles at its disposal at any given time between September 29, 2023 and the time that it shut down; there was simply no need to have anyone drive the Superb Injuncted Vehicles in violation of the Injunction.

34. When the vehicles were moved to Team Mitsubishi Hartford, they were cordoned off in the back of the lot and instructions were given not to move the vehicles.

35. Based on the foregoing, not only have the Deo Defendants failed to provide clear and convincing evidence of contempt, the evidence shows that there was no contempt.

**The Deo Defendants' Unclean Hands Deprive Them of the Relief They Seek**

36. Although I should not be found in contempt based on the foregoing evidence, I am also advised that the Deo Defendants are not entitled to the relief they seek in any event because they have unclean hands.

37. This is because they themselves drove the Deo Injuncted Vehicles in violation of the Injunction and had the gall to ask leave of the Court to continue driving them, which this Court denied. See ECF Docket Entries 57, 58, 59, 63, and 97 ("the six Injuncted Deo Vehicles are *not* to be used or driven") (emphasis in original).

38. Indeed, the foregoing is directly relevant to the Deo Defendants' instant contempt motion because they wish to punish me for conduct that they, themselves, engaged in without any clear and convincing proof that I engaged in the same conduct (which I did not). As such, I present this Court with evidence of the Deo Defendants' contempt as follows.

39. The 2016 Audi A6 with VIN ending 9650 had 73,901 miles as of December 14, 2022, but had 74,326 miles when they provided a photograph of the odometer on January 31, 2024. See copy of title annexed hereto as **Exhibit "B;"** compare with ECF Docket Entry 145-1 at 8.

40. The 2016 Audi Q5 with VIN ending 0272 had 40,272 miles as of August 3, 2023,[6] but had 48,259 miles when they provided a photograph of the odometer on January 31, 2024. See copy of proof of payment annexed hereto as **Exhibit "C;"** compare with ECF Docket Entry 145-1 at 12.

---

[6] Deo never turned this vehicle over to Superb after selling it from Northshore and kept it; the mileage is reflected based on Superb's general ledger as of September 30, 2023.

41. The 2017 Rolls Royce Dawn with VIN ending 2728 had 42,656 miles as of November 28, 2022, but had 44,985 miles when they provided a photograph of the odometer on January 31, 2024. See copy of dealer's assignment annexed hereto as **Exhibit "D;"** compare with ECF Docket Entry 145-1 at 10.

42. The 2019 Land Rover Range Rover with VIN ending 3297 had 55,246 miles as of April 28, 2023, but had 60,973 miles when they provided a photograph of the odometer on January 31, 2024. See copy of assignment annexed hereto as **Exhibit "E;"** compare with ECF Docket Entry 145-1 at 3.

43. The 2023 Chevrolet Suburban with VIN ending 8675 had 22,254 miles as of June 30, 2023, but had 26,180 miles when they provided a photograph of the odometer on January 31, 2024. See copy of title annexed hereto as **Exhibit "F;"** compare with ECF Docket Entry 145-1 at 6.

44. The 2020 Mercedes Benz GLE with VIN ending 4078 had 21,005 miles as of on or about May 25, 2023 when Superb paid for it, but had 22,311 miles when they provided a photograph of the odometer on January 31, 2024. See copy of title annexed hereto as **Exhibit "G;"** compare with ECF Docket Entry 145-1 at 4.

45. The below is a chart representing the miles the Deo Defendants drove the vehicles.

| Vehicle | VIN Ending | Mileage Acq. | Mileage Photo | Difference |
|---|---|---|---|---|
| 2016 Audi Q5 | 0272 | 40,272 | 48,259 | 7,987 |
| 2016 Audi A6 | 9650 | 73,901 | 74,326 | 425 |
| 2017 Rolls | 2728 | 42,656 | 44,985 | 2,329 |
| 2019 Land Rover | 3297 | 55,246 | 60,973 | 5,727 |
| 2023 Suburban | 8675 | 22,254 | 26,180 | 3,926 |
| 2020 Mercedes | 4078 | 21,005 | 22,311 | 1,360 |

46. In the Deo Defendants' words, and based upon their idea of what contempt is, that is 21,664 miles of contempt!

47. It should also be noted that I only sought injunctive relief in order to have vehicles returned to Superb's lot, which vehicles were indisputably stolen by the Deo Defendants. See ECF Docket Entry 9 (seeking an Order for the return of vehicles, but not seeking any injunction prohibiting the sale of the vehicles).

48. The idea of injuncting any vehicles from being sold came from the Deo Defendants. See ECF Docket Entry 13 at 2 ("My client will not dispose of any automobiles in his possession belonging to Superb").

49. At the time, I was desperate to return the vehicles to Superb's lot to regain access to my operating capital. See ECF Docket Entry 220 ¶¶ 5-26.

50. I did not foresee, however, that it would have taken so long for a determination to be made concerning the true ownership of the vehicles.

51. I fully believe, however, that Deo did.

52. This is because he is not new to the car business and has demonstrated that he knows how to manipulate floor plan lines of credit as well as the DMV rules and regulations to cause me as much harm as possible.

53. This is because he has caused thirty (30) vehicles he never paid for to be tied up in this litigation which sucked $1M out of my dealerships at no expense to him.

54. Another $500,000.00 of my operating capital for the dealerships was depleted by Deo's argument that he is entitled to keep the six (6) Deo Injuncted vehicles despite the lack of any evidence that he paid for them or any proof contradicting that I paid for them.

55. The Deo Defendants have claimed that Superb does not own four (4) of the vehicles despite undisputed proof of payment by Superb for those vehicles.

10

56. While the injunction has remained in effect, Superb was caused to pay approximately $750,000.00 in interest and curtailments, which Deo knew would occur as he had his own floor plan lines of credit with Westlake Financial and Next Gear Capital.

57. Deo knew that I needed to refloor the vehicles in order to recapitalize my dealerships prior to the issuance of the Injunction, and that upon doing so, I would be forced to carry the weight of the debt on those vehicles while this lawsuit dragged on.

58. The fact is that approximately twenty-five (25%) of my floor plan line of credit was utilized to recapitalize my stores in an effort to save my dealerships from financial ruin; the effect of this was that I had less money to purchase other vehicles and sell them.

59. The series of contempt motions being volleyed at me with scant evidence that does not come remotely close to being clear and convincing underscores his bad faith.

60. In each of the foregoing instances, I lose either way while Deo suffers no harm or repercussions for his conduct.

61. It is unfathomable to me how Deo can submit this letter motion for contempt asserting that I caused the Superb Injuncted Vehicles to be driven in violation of the Injunction when he knows that it was him and his agents who drove the vehicles as per their own declarations and testimony.

62. Based on the foregoing, I respectfully request that this Court deny the Deo Defendants' third letter motion for contempt based on the lack of clear and convincing evidence that I have violated the Injunction.

63. I also respectfully request that this Court deny their motion due to the Deo Defendants' clear bad faith.

64. I humbly thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 2, 2025.

*Robert Urrutia*
Robert Urrutia (Mar 2, 2025 20:02 EST)

Robert Anthony Urrutia