Michael E. Sims, Esq.
Nicholas A. Savino, Esq.
ZEICHNER ELLMAN & KRAUSE LLP
730 Third Avenue
New York, New York 10017
(212) 223-0400
Attorneys for Proposed Third-Party Intervenor
*Nissan Motor Acceptance Company LLC*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUPERB MOTORS INC. *et. al.*, | Case No.: 2:23-cv-6188 (JMW) |
| Plaintiffs, | |
| - against - | **DECLARATION OF NICHOLAS A. SAVINO** |
| ANTHONY DEO *et. al.,* | |
| Defendants. | |

Nicholas A. Savino, pursuant to 28 U.S.C. § 1746, states the following:

1. I am an attorney with Zeichner Ellman & Krause LLP, attorneys for proposed third-party intervenor Nissan Motor Acceptance Company LLC ("NMAC" or "Intervenor"). I make this declaration in support of NMAC's motion to intervene in the above-captioned case and be heard in these proceedings.

**Background Concerning the Injunction and Modified Injunction**

2. By order dated September 29, 2023, this Court issued a Preliminary Injunction, prohibiting plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia ("Urrutia," together with, Superb and Team

Auto, "Plaintiffs") from encumbering, transferring, or otherwise disposing of thirty (30) vehicles (the "Injuncted Vehicles") in Plaintiffs' possession without Court approval (the "Injunction").  ECF No. 55., Injunction.

3. According to the Injunction, the Injuncted Vehicles include: (1) two (2) Isuzu flatbed trucks (the "Trucks"); and (2); twenty-eight (28) cars listed at ECF 30-8[1] indicated with "**YES**", with the exception of the 2023 Chevy Suburban with a VIN number ending 8765 (the "Mixed Vehicles").  Id. at p. 28, Point V(1)(a)-(b).

4. Thereafter, Plaintiffs made a motion to modify the Injunction for the limited purpose of vacating the Injunction as to the Injuncted Vehicles so that they may sell the vehicles (the "Plaintiffs' Motion").  See ECF No. 110.

5. By order entered on May 9, 2024, this Court modified its Injunction Order (the "Modified Injunction"), which, *inter alia*, (i) granted Plaintiffs' request to sell fourteen (14) of the Mixed Vehicles which Superb has an interest in and retain the proceeds; and (ii) denied Plaintiffs' request to lift the Injunction as to the Trucks and the other thirteen (13) Mixed Vehicles which Superb does not have an interest in (the "Team Auto Vehicles").[2]  See ECF No. 172, Modified Injunction at pp. 18-19, Conclusion, Section ¶ 1(b), (e); see also ECF No. 157, Plaintiffs' Proposed Findings of Fact and Conclusions of

---

[1] ECF 30-8 identifies the Vehicle Identification Number ("VIN"), year, make, and model.

[2] Urrutia joins in support of the relief NMAC seeks by his declaration dated March 10, 2025 (the "Urrutia Decl.").

2

Law in Support of its Motion to Modify the Injunction (the "Plaintiffs' Proposed Findings") at p. 5 (stating that Superb never had an interest in the Team Auto Vehicles or Trucks).

6. In reaching its decision, the Court reasoned that based upon the material change in circumstances - the closure of Superb – it granted "Plaintiffs' request to sell the *Superb* vehicles (with the exception of the Isuzu flatbeds and the thirteen (13) vehicles that belong to third parties) and hold the funds in escrow for the remainder of these proceedings is granted. Plaintiff shall account to the Court as to the sales when made. Plaintiffs shall further file proof of the monies in escrow *immediately* following the sale of each of the vehicles." ECF No. 172, Modified Injunction at p. 15, Point I(d).

7. Plaintiffs' Proposed Findings state that, (1) the Team Auto Vehicles are owned by Team Auto; and (2) the "[Trucks] are owned by non-party Team Imports LLC d/b/a Team Mitsubishi-Hartford ("Team Mitsubishi" [or "Dealer"]) in which Superb never had any interest." See ECF No. 157 at p. 5; but see also ECF No. 172, Modified Injunction at p. 16, Point I(d). (the Court's apparent misstatement that Team Auto[3] is a third-party).

8. In the Modified Injunction the Court explained it denied Plaintiffs' Motion to lift the Injunction and sell Team Auto Vehicles because "Plaintiffs have not established how or if by returning these vehicles Superb's financial condition would improve since it does not own them." ECF No. 172, Modified Injunction at p. 16, Point I(d).

---

[3] Team Auto is identified in the above caption to this Action as a plaintiff and the Court defines it as such in the Modified Injunction at ECF No. 172 at p. 2.

3

9. Additionally, the Court based its denial on the fact that 'third-parties' "have not submitted their position as to whether these vehicles should be sold for the Court to determine whether it should grant or deny this request." <u>Id.</u>

10. However, as highlighted above, (<u>see</u>, <u>supra</u> at ¶ 6) the Court may have erred in denying Plaintiffs' Motion on that basis as it mistakenly identified Team Auto as third-party. <u>See</u> ECF No. 172, Modified Injunction at p. 16, Point I(d) ("the two Isuzu flatbed truck and the thirteen (13) <u>vehicles owned by the third parties, Team Imports and</u> **<u>Team</u>**[4], be vacated (ECF No. 157 at p. 5). "[T]hird parties have not submitted their position . . . .") (emphasis added).

11. However, Team Auto <u>is</u> a party to this Action and could have been heard on Plaintiffs' Motion to lift the Injunction as to Team Auto Vehicles, unlike NMAC, which must intervene for the express reason it seeks to be heard in connection with vacating the Modified Injunction. <u>See</u>, <u>supra</u>, at ¶ 9.

12. In any event, Urrutia submits a declaration, on behalf of Superb, Team Auto, and Team Imports in support of NMAC's Motion to Intervene. <u>See</u> Urrutia Decl.

13. Based upon Urrutia's consent and NMAC's contractual rights under the agreements set forth below it has a substantial interest in the Team Auto Vehicles.

---

[4] Plaintiffs define "Team" to mean "plaintiff Team Auto Sales LLC." ECF No. 157, Plaintiffs' Proposed Findings at p. 5

4

## **NMAC'S Contractual Rights in the Team Auto Vehicles**

14. On or about February 10, 2021, Dealer[5] entered into an Automotive Wholesale Financing and Security Agreement ("Wholesale Agreement"), by which NMAC agreed to finance Dealer's acquisition of new and used automobiles, trucks and other vehicles. See **Exhibit 1** to the NMAC Decl.

15. In consideration of NMAC's agreement to finance Dealer's business, and to secure Dealer's obligations owed to NMAC under the Wholesale Agreement, Dealer granted NMAC a security interest in all of the following:

> 2.4.1 Property, including all automobiles, trucks, truck-tractors, trailers, semi-trailers, buses, mobile homes, motor homes, other vehicles and other merchandise, and all parts, accessories, attachments, components and furnishings whether or not affixed thereto or used in connection therewith, including all goods hereafter added to or acquired in replacement or substitution of the foregoing, whether or not inventory or other and whether or not new, used, repossessed, surrendered or other;
>
> 2.4.2 All other goods, including without limitation, all inventory, machinery, equipment, tools, appliances, and office furniture and fixtures, including all goods hereafter added to or acquired in replacement of the foregoing;
>
> 2.4.3 All accounts, accounts receivable, chattel paper, security agreements, instruments, contract rights, leases of property, all rentals due or to become due under any lease of any property, all other rentals, policies and certificates of insurance, deposit accounts, investment property, dealer reserve accounts,

---

[5] Plaintiff Robert A. Urrutia ("Urrutia") is the managing member of the Dealer.

> manufacturer's statements of origin (MSO's) or certificates of title or ownership relating to vehicles, bills of sale, receipts, journals, records, files, books and ledger sheets, records indicating, summarizing or evidencing Dealer's business operations or financial condition and all computer programs, disk or tape files, printouts, runs or other computer-prepared information and the equipment containing such information, documents and general intangibles, including all monies and credits now due or to become due to Dealer from, and all claims against, vendors or inventory or other lending institutions;
>
> 2.4.4 All other assets of Dealer, with the exception of real property, but including fixtures; and
>
> 2.4.5 All cash and non-cash proceeds of the foregoing.
>
> (Collectively referred to as the "Collateral" with the vehicle collateral referred to from time to time as "Vehicle" or the "Vehicles").

16. On or about February 10, 2021, NMAC and Dealer entered into a Capital Loan and Security Agreement (the "Capital Loan Agreement") whereby NMAC lent Dealer $714,541.00 to be repaid with interest according to the terms of that agreement. See **Exhibit 2** to the NMAC Decl.

17. Like the Wholesale Agreement, the Capital Loan Agreement granted a security interest in Dealer's property, including the Vehicles. Id.

18. By the First Amended and Restated Cross-Guaranty Cross-Collateral and Cross-Default Agreement dated November 11, 2022 (the "Cross-Collateralization Agreement"), Plaintiffs along with Team Imports, Team Auto Group LLC ("Team Group"), and Team Nissan Inc. ("Team Nissan," together with Plaintiffs, Team Group, and Team Nissan, "Borrowers"), agreed with NMAC, *inter alia*, to cross-

6

collateralize all present and future obligations by Borrowers and NMAC. See **Exhibit 3** to the NMAC Decl.

19. Urrutia guaranteed the Cross-Collateralization Agreement on behalf of Borrower and individually as guarantor. Id. at pp. 1, 6.

20. Borrowers expressly acknowledged, confirmed, and declared that "the liens and security interests created by the Loan Documents[6] are valid, subsisting and perfected liens and security interests." Id. at ¶ 2.

21. Specifically, each Borrower agreed that "the Loan Documents to which it is a party and the collateral security described therein shall secure the obligations of the other Borrowers under the Loan Documents and under this Agreement, including without limitation, described in Section 3 hereof." Id. at ¶ 4.

22. Subsequent to this Court's issuance of the Modified Injunction, by the Possession and Surrender Agreement dated January 2, 2025 (the "Surrender Agreement"),[7] Dealer agreed, as guaranteed by Urrutia, *inter alia*, "to surrender possession of the Collateral to NMAC for safekeeping and NMAC is willing to accept possession of the Collateral for storage at a secure auction lot (the "Auction Lot") on the terms and conditions

---

[6] The Loan Documents along with other financing documents and guaranties are set forth at Schedule A. Id. at p. 8.

[7] The Surrender Agreement, together with the Wholesale Agreement, Capital Loan Agreement, and Cross-Collateralization Agreement, are referred to as the "Agreements."

7

set forth in herein." See **Exhibit 4** to the NMAC Decl., Surrender Agreement at Recital ¶ E.

23. Urrutia executed the Surrender Agreement as Managing Member of Dealer and individually by separate execution by which he expressly acknowledged and accepted as Guarantor of Dealer. (Dealer together with Urrutia, the "Obligors"). Id. at pp. 1, 6.

24. The Surrender Agreement expressly incorporates by reference that the Team Auto Vehicles and eleven (11) of the Superb Vehicles (the "Surrendered Superb Vehicles," together with the Team Auto Vehicles, the "Surrendered Vehicles") that were subject to the Injunction in this Action are identified in Schedule C annexed thereto. Id. at Recital ¶ C; see also **Exhibit 4** to the NMAC Decl., Schedule C to the Surrender Agreement (identifying twenty (24) vehicles by Stock Type, Stock Number, and VIN).

25. The Modified Injunction presently restrains the Team Auto Vehicles identified in Schedule C. See ECF No. 172, Modified Injunction at p. 16, Point I(d), p. 19, Conclusion at ¶ 1(e); **Exhibit 4** to the NMAC Decl., Schedule C to the Surrender Agreement.

26. Modified Injunction does not presently restrain the Surrendered Superb Vehicles identified in Schedule C. See id. at p. 15, Point I(b), p. 18, Conclusion at ¶ 1(b); **Exhibit 4** to the NMAC Decl., Schedule C to the Surrender Agreement.

8

27. NMAC and Obligors expressly carved out the Team Auto Vehicles in the Surrender Agreement, agreeing "that nothing within this Possession and Surrender Agreement addresses, disposes of, or otherwise changes the legal status, possession, or location of the [Surrendered] Vehicles. The Parties agree that NMAC and Obligors <u>reserve all rights with respect to the [Surrendered] Vehicles, to be determined at a later date and after either</u> **(a) the injunction has been lifted,** <u>or</u> (b) **another order from a court of competent jurisdiction directs disposition of the [Surrendered] Vehicles**." **Exhibit 4** to the NMAC Decl., Surrender Agreement at ¶ 4. (emphasis added).

28. Thus, NMAC is entitled under the Agreements to take possession of the Team Auto Vehicles upon the Modified Injunction being lifted or if another court otherwise directs their disposition. <u>See</u> <u>id.</u>

29. Therefore, without being granted intervention in this Action, NMAC's interest in the Team Auto Vehicles may be impaired if the Court keeps the Modified Injunction in place, or if it lifts it and permits the Team Auto Vehicles to be sold by another party in this Action, and because no existing parties adequately protect NMAC's interest.

**A Decision on the Deo Defendants' Motion for Contempt and to Alter the Modified Injunction May Impair NMAC's Rights in the Team Auto Vehicles**

30. Indeed, there is presently motion practice pending this Court's decision which expressly concerns the enforcement of the Modified Injunction that presently

9

restrains the sale and transfer of the Team Auto Vehicles and therefore impacts NMAC's interest in same. See ECF Nos. 202-224.

31.  By letter motion dated October 9, 2024, defendant Anthony Deo ("Deo") and Deo-related defendants [8] (collectively, the "Deo Defendants") moved for contempt against Plaintiffs and for modification of the Modified Injunction (the "Deo Defendants' Motion") which Plaintiffs opposed and cross-moved for consolidation and sanctions against the Deo Defendants for evading the order dated December 1, 2023 disqualifying Harry R. Thomasson, Jr. as counsel for the Deo Defendants (see ECF No. 117) as well as engaging in vexatious litigation (the "Cross-Motion," together with the Deo Defendants' Motion, the "Motions"). See ECF Nos. 202, 203-204, 210, 212, 219, 220, 221, 224.

32.  On February 5, 2025, the Deo Defendants filed their reply in further support of their Motion, which seeks in part to alter the Modified Injunction. See ECF No. 224.

33.  From review of the docket, the Motions are fully submitted and await a decision by this Court.

---

[8] Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.  See ECF No. 152.

34. With the exception of the vehicle identified on Schedule C with vehicle identification number ZARFAEDN3J7575105 all of the vehicles were added to, and secured under, NMAC's floor plan prior to the issuance of the Injunction. See NMAC Decl. at ¶ 7.

35. Though NMAC has a substantial interest in the Team Auto Vehicles which are subject to the Modified Injunction that the Deo Defendants' seek to further modify by their pending Motion, NMAC has not had the opportunity to be heard because it is not a party to this action.

36. NMAC's substantial interest in the Team Auto Vehicles is superior to any interest the Deo Defendants purport to have. NMAC has a security interest in the Team Auto Vehicles under the Wholesale Agreement and Capital Loan Agreement. **Exhibits 1 and 2** to the NMAC Decl.

37. Moreover, under the Surrender Agreement Dealer agreed to voluntarily surrender and turnover possession of the Team Auto Vehicles upon lifting of the Modified Injunction. **Exhibit 4** to the NMAC Decl.

38. Plaintiffs also agreed with Dealer and NMAC to cross-collateralize Plaintiffs' and Dealer's obligations under the Loan Documents, including the Team Auto Vehicles. **Exhibit 3** to the NMAC Decl.

39. As of March 7, 2025, Dealer's total indebtedness owed to NMAC under the Wholesale Agreement and Capital Loan Agreement, secured in part by the Team

11

Auto Vehicles, and cross-collateralized by Borrowers, is $**4,556,148.11** (the "Debt"). See NMAC Decl. at ¶ 8.

40. Accordingly, pursuant to the Agreements, NMAC is entitled to sell the Team Auto Vehicles and setoff against the Debt.

41. Therefore, NMAC must intervene in this Action to be heard and preserve its interests in the Team Auto Vehicles which may be impacted by this Court's decision on the Motions and are not adequately protected by the interests of the parties to this Action.

42. Accordingly, NMAC moves to intervene in this Action and asks that the Modified Injunction be lifted so that it may take possession of the Team Auto Vehicles according to the express terms of the Surrender Agreement, and after vacatur, sell the Team Auto Vehicles to setoff against the Debt owed to it by Dealer.

43. I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 18, 2025

                                                                                                                  _____/s/Nicholas A. Savino_____
                                                                                                                         NICHOLAS A. SAVINO