**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
SUPERB MOTORS INC. *et al.*,

                         *Plaintiffs*,

                                              **MEMORANDUM**
                                              **AND ORDER**
                -against-                     23-CV-6188 (JMW)

ANTHONY DEO *et. al.*,

                         *Defendants*.

-------------------------------------------------------------X

**A P P E A R A N C E S :**

       Jamie Scott Felsen, Esq.
       Emanuel Kataev, Esq.
       **Milman Labuda Law Group PLLC**
       3000 Marcus Avenue, Suite 3w8
       Lake Success, NY 11042
       *Attorneys for all Plaintiffs*

       Jeffrey C. Ruderman, Esq.
       Russell J. Shanks, Esq.
       **Cyruli Shanks & Zizmor LLP**
       420 Lexington Avenue, Suite 2320
       New York, NY 10170
       *Attorneys for 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, Brian*
       *Chabrier (individually and derivatively as a member of Northshore Motor Leasing, LLC),*
       *Joshua Aaronson (individually and derivatively as a member of 189 Sunrise Hwy Auto,*
       *LLC), Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan*
       *Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan*
       *Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto*
       *Management, LLC.*

       Brian Levine, Esq.
       **The Levine Firm, P.C.**
       260 North Broadway, Suite 2a
       Hicksville, NY 11801
       *Attorney for Defendants Anthony and Sarah Deo, Harry Thomasson, Dwight*
       *Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars*
       *of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group*

*LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

**WICKS**, Magistrate Judge:

Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia (collectively "Plaintiffs"), claim that Deo Defendants[1] engaged in a pattern of fraudulent misconduct in connection with several vehicle dealerships and accompanying floorplan agreements. Specifically, Plaintiffs allege the following causes of action: (1) violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"); (2) violations of the Defend Trade Secrets Act ("DTSA"); (3) unfair competition; (4) tortious interference; (5) unjust enrichment; (6) conversion; (7) fraud; (8) breach of fiduciary duty; and (9) conspiracy. (*See generally* Amended Complaint filed at ECF No. 65.) The latest motion before the Court is the Deo Defendants' Motion for Contempt (ECF Nos. 202, 210, 221, 224), which is opposed by Plaintiffs (ECF Nos. 203, 219, 220). For the reasons stated herein, Defendants' Motion for Contempt (ECF No. 202) is **GRANTED**.

**BACKGROUND**

**I.** *Procedural History*

On November 25, 2023, Plaintiffs filed a motion before the undersigned to modify the Honorable Orelia E. Merchant's Order (ECF No. 55) on the preliminary injunction (hereafter, the "Injunction"). (*See* ECF No. 110.) On January 18, 2024, the Court granted the motion in part and denied it in part, ordering an evidentiary hearing to be held on February 20, 2024 to

---

[1] The "Deo Defendants" are comprised of: Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp. (ECF No. 152.)

determine the location of the 43 outstanding vehicles.[2] *See Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2024 WL 198398, at *1 (E.D.N.Y. Jan. 18, 2024). On the heels of the hearing, the Deo Defendants filed a motion to hold Plaintiffs in civil and criminal contempt (ECF No. 152). On May 8, 2024, the undersigned issued a Memorandum and Order granting in part and denying in part Plaintiff's motion for modification of the preliminary injunction and granting in part and denying in part Defendants' motion for contempt. *See Superb Motors Inc. v. Deo*, No. 23-CV-6188 (JMW), 2024 WL 2079928, at *8–9 (E.D.N.Y. May 8, 2024) (hereafter, the "M&O").[3]

Specifically, with respect to Plaintiffs' motion, the M&O: (i) denied Plaintiffs' request to return the 43 vehicles to Superb, (ii) granted Plaintiffs' request to sell the *Superb* injuncted vehicles and retain the proceeds, (iii) denied Plaintiffs' request to return the Deo vehicles, (iv) denied the Plaintiffs' request to require Deo's cooperation in winding up, and (v) denied Plaintiffs' request to lift the injunction on the other vehicles. *See id.* With respect to Defendants' motion, the M&O: (i) did not find Plaintiffs in contempt, (ii) denied Defendants' request to return the Superb vehicles as moot, (iii) denied Defendants' request to deliver titles of the Superb Vehicles to a court-appointed third-party, (iv) denied Defendants' request to require Plaintiffs to store the vehicles in an independent storage unit, (v) granted Defendants' request to require Plaintiffs to file proof of insurance and provide date stamped odometer reading photos, and (vi) denied Defendants' request for costs, fees, and monetary sanctions. *Id.*

---

[2] These 43 vehicles are identified in ECF No. 56-2.

[3] Familiarity with the factual background is assumed and can be found in the undersigned's prior Orders. (*See* ECF Nos. 98, 134 and the M&O).

On October 9, 2024, the Deo Defendants: (i) moved to modify the Injunction to permit the relocation of the six vehicles currently stored at Luxsport (hereafter, the "6 Luxsport Vehicles") to a dealership lot operated by Gold Coast Motors of Syosset, LLC ("GCM") at 108 New South Road, Hicksville, New York 11801 (the "GCM Lot"); and (ii) renewed their application for the Court to hold the Superb Plaintiffs in both criminal and civil contempt, arguing that Plaintiffs have not complied with the Injunction. (ECF No. 202). The parties appeared for an Oral Argument on the motions before the undersigned on January 10, 2025. (ECF No. 214.)

On January 10, 2025, the undersigned issued an interim ruling on these motions (ECF No. 215.)  Specifically, with respect to Plaintiffs' motions, the order: (i) denied Plaintiffs' request to consolidate this case and the *Deo* Action without prejudice and with leave to renew, and (ii) denied Plaintiffs' cross-motion for sanctions against the Defendants (ECF No. 203) without prejudice and with leave to renew. (*Id.*)  With respect to Defendants' motions, the order: (i) granted Defendants' request to modify the injunction to provide that that the 6 Luxsport Vehicles would be stored indoors at the GCM Lot; (ii) denied Defendants' motion to hold Plaintiffs in contempt for their failure to provide proof of insurance coverage for the Injuncted Vehicles and date-stamped photos showing the odometer readings of the Vehicles to date; and (iii) reserved a decision as to Defendants' motion to hold the Plaintiffs in contempt for their alleged violation of the Injunction's prohibition on encumbrance of the Injuncted Vehicles, and directed the parties to file letter briefs by January 24, 2025 addressing the sole issue of whether Plaintiffs' actions after the implementation of the Injunction on September 29, 2023 constituted encumbrance of the Injuncted Vehicles in violation of the Injunction. (*Id.*)

Plaintiffs filed their renewed opposition to the contempt motion on January 24, 2025. (*See* ECF Nos. 219-20.) On the same day, Defendants filed their letter brief addressing the issue of encumbrance. (ECF No. 221.) On January 28, 2025, the Defendants sought leave to file a supplemental reply to Plaintiffs' Supplemental Opposition (ECF No. 223.) The undersigned granted this request on January 29, 2025. (Electronic Order dated 01/29/2025.) Defendants filed their reply in support of their motion for contempt on February 5, 2025. (ECF No. 224.)

## II.    *The Parties' Contentions*

### A.    *Deo Defendants' Motion for Contempt*

This is the renewal of the Deo Defendants motion to hold the Superb Plaintiffs in both civil and criminal contempt. (ECF No. 202 at 2.) The Deo Defendants reiterate that on February 27, 2024, they filed a letter motion for contempt after discovering that the Superb Plaintiffs had transferred title to virtually all the Injuncted Vehicles[4] and placed the title in the name of Team Imports, LLC, d/b/a Mitsubishi of Hartford ("Hartford"), a separate dealership owned and controlled by Urrutia. (*See id*; ECF No. 152.) The Superb Plaintiffs and their counsel opposed the motion, arguing that their conduct did not violate Judge Merchant's Injunction due to ambiguity in the meaning of the term "Remain[,]" and they further claimed that their actions were merely a ministerial administrative act, *temporarily* transferring title of the Injuncted Vehicles to Hartford because Superb was surrendering its DMV license. (*See id*; ECF No. 154.) According to Plaintiffs, "Urrutia was forced to pay $3 million for vehicles that Deo absconded with (including all the injuncted vehicles)," and because Superb was enjoined from selling the

---

[4] The "Injuncted Vehicles" referred to herein are the thirty (30) Superb vehicles specified in Judge Merchant's Injunction Order. *See Superb Motors Inc. v. Deo*, No. 223CV6188(OEM)(JMW), 2023 WL 7181675, at *15 (E.D.N.Y. Sept. 29, 2023), *modified in part*, No. 23-CV-6188 (JMW), 2024 WL 198398 (E.D.N.Y. Jan. 18, 2024), and *modified in part*, No. 23-CV-6188 (JMW), 2024 WL 2079928 (E.D.N.Y. May 8, 2024).

vehicles Urrutia allegedly paid for, Superb could no longer continue operating and would be shutting down. (*Id*.)

Plaintiffs claim that the temporary transfer was necessary to prevent a scenario where Superb would be incapable of selling the Injuncted Vehicles, and produced documents they claimed supported their assertion that title to the Injuncted Vehicles had already been transferred back to Superb. (*See id*.; ECF No. 155-1.) When Defendants challenged the legitimacy of these claims and documents, Plaintiffs countered arguing that Defendants had offered no proof that the documents were not genuine. (*See id*.; ECF No. 159.) The Deo Defendants contend that Plaintiffs have failed to comply with the Injunction, as evidenced by recent filings in the civil case that Nissan Motor Acceptance Company ("NMAC") filed against Urrutia and Hartford, *Nissan Motor Acceptance Company v. Team Imports LLC, et. al.*, Docket No. HHD-CV24-6189271-S, Conn. Super. Ct. (Judicial Dist. of Hartford, 2024) (hereafter, the "NMAC Action"), which, according to the Deo Defendants, show that Plaintiffs' title transfers "were far from being 'temporary,' 'administrative,' or 'ministerial' acts; rather, they were part of a scheme by Urrutia and the Superb Plaintiffs to encumber the Injuncted Vehicles and abscond with the funds received from NMAC." (*Id*. at 3.)

In the NMAC Action, it is alleged that Urrutia and Hartford placed vehicles on Hartford's floorplan, sold those floored vehicles, and failed to repay the loans provided by NMAC. (*Id*.) NMAC seeks damages against Urrutia and Hartford for breach of contract and to foreclose on the security interest NMAC holds in each of the floored vehicles. (*Id*.)  NMAC also sought a preliminary injunction concerning all vehicles in which NMAC asserts a security interest. (*Id*.) NMAC's application was subsequently resolved via a so-ordered Stipulation, in which Urrutia and Hartford agreed to surrender physical control of the titles, keys, and Manufacturer's

Statements of Origin for 117 specifically identified vehicles. (*Id.*)[5]  Deo Defendants identify that

24 out of the 28 Injuncted Vehicles (not including the flatbed trucks)[6] are included on that list.

(*Id.*; *see also* ECF No. 202-5 at 2-3.) The Deo Defendants claim that the "very reason that the 24

Injuncted Vehicles are found on the list is because Urrutia and Hartford *encumbered them by*

*taking loans out against them using the floorplan with NMAC*." (*Id.*) (emphasis in original).

Specifically, the Deo Defendants claim:

> [A]ll but two of the Injuncted Vehicles were encumbered on the floorplan with NMAC during October 2023 and November 2023, the exact time that Plaintiffs misrepresented to this Court that they were performing "ministerial acts" and temporarily transferring title from and to Superb. The two other Injuncted Vehicles on the list were floored in March 2024 and April 2024, well after the reason justifying the alleged title transfers arose, and well after the Defendants' filed the prior contempt motion.

> [For example,] the 2018 BMW 7 Series with the VIN ending in 8313 . . . was placed on Hartford's floorplan on November 14, 2023. Yet, just one week later, [via] Declaration dated November 25, 2023, Urrutia swore to this Court that the BMW was one of the 43 missing vehicles that Anthony Deo had absconded with.

> Not only was that a lie, but several months later, the Superb Plaintiffs lied again to this Court. In the March 22, 2024 Declaration of Bruce Novicky, they claimed that 'in the course of peeling away the onion layers of deceitful conduct by the Deo Defendants' they discovered that the vehicle had been sold but remained on Superb's general ledger. They further alleged that the Deo Defendants left it on the ledger because they stole the money! This was false, as the Superb Plaintiffs and Urrutia had the vehicle in their possession as early as November 15, 2023, and even went so far as to floor it on Hartford's floorplan with NMAC.

(*Id*. at 3-4) (citing ECF Nos. 112, 157.)

The Deo Defendants maintain that Plaintiffs violated the Injunction because they "clearly

did not simply perform a ministerial act that briefly transferred title to the Injuncted Vehicles" –

rather, "they transferred title and encumbered 24 of the 28 Injuncted Vehicles[,]" and, "[w]hen

---

[5] The Stipulation placed restrictions on both the sale of the 117 vehicles and the proceeds resulting from their sale. (*Id.*)

[6] Defendants are not in possession of information relating to the two flatbed trucks.

caught, they fabricated documents purportedly showing that title had been transferred back. However, this was false, as evidenced by the fact that those 24 Injuncted Vehicles remained open on Hartford's floorplan with NMAC. (*Id.* at 4.)  The Deo Defendants additionally contend that Plaintiffs did not comply with their obligation to file proof of insurance and date-stamped photographs of the odometers for the Injuncted Vehicles. (*Id.* at 2.)

To this end, the Deo Defendants request this Court issue an Order: (i) finding the Superb Plaintiffs in civil and criminal contempt; (ii) directing the Superb Plaintiffs to return the Injuncted Vehicles to Superb; (iii) ordering the Superb Plaintiffs to deliver the original titles and keys of the Injuncted Vehicles to a Court-appointed third party, to be held in trust at Plaintiffs' expense; (iv) ordering the Superb Plaintiffs to store the Injuncted Vehicles in a secure, third-party-owned storage facility located within the State of New York, and to file proof of insurance coverage, along with date-stamped photographs clearly showing each Injuncted Vehicle's odometer and its location in the storage facility; (v) ordering the Superb Plaintiffs to immediately repay all amounts due to NMAC to satisfy the loans impermissibly taken against the Injuncted Vehicles, or alternatively, to provide an accounting for all funds received when the Injuncted Vehicles were placed on the floorplan, and immediately deposit an equivalent amount with the Court; and (vi) awarding the Deo Defendants' costs and attorneys' fees incurred in connection with the prior letter motion and this motion. (*Id.* at 5.)

## B.    ***The Superb Plaintiffs' Response in Opposition***

On October 15, 2024, the Superb Plaintiffs opposed the Deo Defendants' motion for contempt. (ECF Nos. 203-204.)  *Preliminarily,* the Superb Plaintiffs argue that the Deo Defendants application is a motion for reconsideration in disguise, and reconsideration must be denied because: (i) the Deo Defendants' instant motion is untimely under the Local Civil Rules;

(ii) the Deo Defendants failed to serve a notice of motion nor a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked; (iii) the Deo Defendants impermissibly seek to advance new facts, issues, and arguments not previously presented to the Court. (*Id.* at 2-3.)

The Superb Plaintiffs additionally argue the Deo Defendants' second motion for contempt should be denied on the merits on several grounds. (*Id.* at 3.)  *First*, the Superb Plaintiffs concede that they have not yet submitted proof of insurance and date-stamped photographs of the odometers for the Injuncted Vehicles in compliance with the M&O. (*Id.*)  However, Plaintiffs contend the M&O "[does not] specify when the Superb Plaintiffs must do so, nor have the Deo Defendants made any demand for same[,]" and, "[b]ecause there is ambiguity in the [M&O] as to when the Superb Plaintiffs were required to provide the requisite information, and due to the Deo Defendants' abject failure to make any demand for same," the Deo Defendants' "application for contempt based on the Superb Plaintiffs' failure to provide the information must be denied." (*Id.*)

*Second*, Plaintiffs reject Defendants' contention that the Superb Plaintiffs must have transferred title from Superb to a cross-collateralized dealership in order to encumber it under the floor plan line of credit. (*Id.* at 4.) The Superb Plaintiffs claim "this is a fatal leap in logic on their part, as all of the Superb vehicles remain in Superb's name, and the floor plan line is not segregated by dealership. Instead, the line is aggregated between all four (4) dealerships." (*Id.*) The Superb Plaintiffs maintain they permissibly utilized their floor plan line of credit to fund the operations of the Cross-Collateralized Dealerships in order to prevent the imminent shutdown of Urrutia's remaining dealerships, as doing so was necessary to achieve the purpose of the

Injunction. (*Id*.)[7] With respect to the 2018 BMW 7 Series with a VIN ending in 8313, Plaintiffs contend that the vehicle was ultimately recovered by the Superb Plaintiffs, as set forth in a March 25, 2024 declaration (ECF No. 157-1) and the M&O, and the Deo Defendants' "reference to a stake declaration to support a finding of perjury is thus erroneous." (*Id*); *see also Superb Motors Inc*, No. 23-CV-6188 (JMW), 2024 WL 2079928, at *2.

Plaintiffs maintain that both of the Deo Defendants' contentions in support of their contempt application are false – the Superb Plaintiffs did not transfer any titles and the vehicles were already encumbered by NMAC by means of the UCC Financing Statement and the Superb Plaintiffs permissibly placed the vehicles in their possession on the floor plan line of credit to maintain the operations of the Cross-Collateralized Dealerships. (*Id*.)  Plaintiffs argue the Deo Defendants' contempt motion should therefore be denied because: (i) the Deo Defendants have "failed to prove with clear and convincing evidence that the Superb Plaintiffs have transferred title," and (iii) the Superb Plaintiffs have "demonstrated diligence in complying with the Injunction despite severe and catastrophic monetary loss caused at the hands of the Deo Defendants." (*Id*. at 5.)

*Third*, Plaintiffs argue Defendants have not established prejudice in order to warrant a finding of contempt. (*Id*.)  Specifically, Plaintiffs argue the Deo Defendants fail to establish any prejudice resulting from the Superb Plaintiffs' permissible use of its floor plan line of credit in order to fund the operations of the Cross-Collateralized Dealerships where no transfer of title has occurred (and no evidence of any such transfer has been provided), and identify that the Deo Defendants have not paid for any of the vehicles, nor do they have any right, title, or interest in the vehicles. (*Id*.) While the Deo Defendants argue that Plaintiffs impermissibly encumbered the

---

[7] Plaintiffs reiterate that the purpose of the Injunction was to avoid forcing all of Urrutia's dealerships to shut down. *See id.* (citing *Superb Motors Inc.*, No. 2:23-CIV.-6188 (OEM), 2023 WL 7181675, at *8).

Injuncted Vehicles and then absconded with the funds received from NMAC, which has placed nearly every Injuncted Vehicle in this case at risk of foreclosure by NMAC, Plaintiffs counter the Deo Defendants do not represent NMAC, nor do they have any standing to raise arguments on behalf of NMAC. (*Id*.)  And, while NMAC may be harmed by the alleged conduct, if it were proven to be true, Plaintiffs maintain that does not rise to give the Deo Defendants any relief. (*Id*.)  Plaintiffs further note that "Urrutia takes his responsibility to NMAC very seriously" and "all of Superb's vehicles were already encumbered by NMAC from the get-go." (*Id*.)

> *Fourth*, Plaintiffs argue the Deo Defendants' unclean hands and numerous violations of this Court's prior orders deprive them of any relief. (*Id*. at 6.) Specifically, Plaintiffs contend the Deo Defendants have repeatedly failed to comply with the Injunction in numerous respects:

> > *First*, the Deo Defendants surrendered possession of one of the Deo Lots on September 30, 2023 – just one (1) day after Judge Merchant issued the Injunction requiring them to keep the Deo Injuncted vehicles at this lot. This was an independent violation of the Injunction because the Deo Defendants did not seek leave, as required, to move the vehicles from the Deo Lot to their home. *Second*, the Deo Defendants repeatedly drove the vehicles in violation of the Injunction. *Third*, the Deo Defendants failed to comply with this Court's directives about the proper storage and insurance of the Deo Injuncted Vehicles.

> > *Fourth*, the Deo Defendants perjured themselves concerning the vehicles. In addition, the Deo Defendants have repeatedly claimed that the Superb Plaintiffs fabricated the emergency nature of the injunctive relief they sought. This argument is, of course, belied by the fact that NMAC and Next Gear terminated their contracts with Superb, after Urrutia was forced to pay $3 million for vehicles that Deo absconded with (including all the injuncted vehicles), the result of which forced Superb to close, and NMAC is now suing Urrutia and the other Urrutia Cross-Collateralized Dealerships.

(*Id*. at 7) (internal citations omitted) (cleaned up). "Based on the demonstrable evidence of Deo's bad faith, and Judge Merchant's prior finding that the Deo Defendants failed to dispute the veracity or validity of the Superb Plaintiffs' claims," Plaintiffs maintain this Court should deny the Deo Defendants' letter motion because they have unclean hands. (*Id*.)

**C.**    *__The Deo Defendants' Reply in Support__*

At the outset, in their Reply in Support, the Deo Defendants argue that their present motions do not merely revisit past issues, but rather highlight new violations of the Injunction and additional perjury, supported by new evidence from the recent NMAC Action. (ECF No. 210 at 1.)  Specifically, the Deo Defendants reiterate their motion for contempt is based on deliberate actions by Plaintiffs to encumber vehicles, "which directly contradict the terms of the Injunction, placing those assets at risk and frustrating the very purpose of the Court's directives." (*Id*.)

*With respect to the floorplan*, the Deo Defendants contend the floorplan was never aggregated across all dealerships; rather, each dealership maintained a separate floorplan. (*Id*.) Defendants identify that Plaintiffs have consistently claimed that NMAC terminated Superb's floorplan as of August 2023, and, given that Superb no longer had a floorplan, Defendants contend Plaintiffs' argument that the vehicles were subject to an "aggregated" floorplan "is not only incorrect but also impossible." (*Id*.)  Defendants additionally rebut Plaintiffs' contention that they, along with other non-party dealerships, were permitted under the terms of the Preliminary Injunction to place Superb's assets on their floorplans to benefit these other dealerships. (*Id*. at 2.) Defendants contend that Superb was not an active dealership capable of flooring inventory, nor did it possess any inventory capable of being floored. (*Id*.)

Defendants further identify that Plaintiffs have repeatedly claimed that Superb was effectively shut down, the dealership license was surrendered, and, as a result, the title transfer of the Injunced Vehicles was solely to prevent them from being "stuck in limbo" in the NY VerifiNY system, and Plaintiffs further represented that once the vehicles were transferred back to Superb, they were held as assets rather than dealership inventory. (*Id*.) To this end, Defendants argue it would "have been impossible for non-party dealerships to encumber these vehicles under

12

their own floorplans, as Superb was not a dealership with inventory to floor, and title remained under Superb's name." (*Id*.)  Defendants maintain that Urrutia's claim that he could floor assets of a nonoperational dealership on his own floorplan by merely possessing the vehicles on the lot and holding titles under a separate entity is both "legally and practically dubious" and, in effect, "suggests that his other dealerships can encumber property belonging to third parties, a claim that strains credibility." (*Id*.)

Defendants further rebut Plaintiffs' contention that the vehicles were already encumbered by the UCC-1 filing by NMAC. (*Id*.)  Defendants claim the UCC-1 filing was specific to Superb's floorplan, which, as Plaintiffs have previously confirmed, was terminated, and Plaintiffs themselves represented to the Court that the injuncted vehicles had been paid off by Superb, using $3,000,000.00 allegedly contributed by Urrutia. (*Id*.) Therefore, according to Defendants, Plaintiffs' assertion that the vehicles remain encumbered by the NMAC filing "is contradicted by their own prior representations that these vehicles were 'free and clear' following this payoff." (*Id*.)  Defendants further identify that during the hearing on the Preliminary Injunction before Judge Merchant, in response to the Judge's inquiry as to the impact of delivering the vehicles back to Superb, Plaintiffs' Counsel represented to the Court that all of the vehicles under the NMAC floorplan had already been paid off. (*Id*. at 3) (citing ECF No. 86-3.)  Defendants maintain that all three of Plaintiffs' representations – "that Urrutia personally funded the payoff, that outside entities provided the funds, and that other dealerships' floorplans were utilized – cannot simultaneously be true." (*Id*. at 4.)

*Finally*, Deo Defendants rebut Plaintiffs' claim that all of the vehicles were initially placed on the Hartford NMAC floorplan and were not added after the Injunction was issued. (*Id*.) Defendants claim the Hartford NMAC floorplan (ECF No. 202-5 at 2) specifically states "Floor

13

Date," not "Delivery Date[,]" and, according to Defendants, "the use of 'Floor Date' means that the vehicles were indeed added to the floorplan at those specific times, undermining Plaintiffs' assertion that they were floored continuously from the outset. (*Id*.)  Defendants further contend that Plaintiffs' claim that the vehicles have been "encumbered by the Hartford NMAC floorplan 'since the beginning' contradicts their prior assertion that vehicles could only be floored when physically located on a cross-collateralized lot with title." (*Id*.)  Defendants argue that until the TRO took effect, the injuncted vehicles remained in the possession of the Deo Defendants and, as Plaintiffs previously represented, were free and clear of any encumbrances at that time. (*Id*.)  Therefore, before any order was issued by this Court, Defendants contend the injuncted vehicles could not have been added to the floorplan of any non-party Urrutia dealership, including Hartford. (*Id*.)

### D.  *The Superb Plaintiffs' Renewed Opposition to Contempt Following the January 10, 2025 Motion Hearing*

Plaintiffs filed their renewed opposition to the contempt motion on January 24, 2025. (*See* ECF Nos. 219-20.)  Plaintiffs argue that Deo Defendants' Motion should be denied because "*every single vehicle, except one*,[8] was floored on September 8, 2023 or September 15, 2023, well before the September 29, 2023 Injunction." (ECF No. 219.) (emphasis added.)  Plaintiffs

---

[8] In the Supplemental Declaration of Robert Anthony Urrutia, Plaintiffs admit that one vehicle was refloored after the injunction came into effect:

> One vehicle bearing VIN No.: ZARFAEDN3J7575105 was refloored on October 26, 2023 instead of on September 15, 2023 when we recovered it. On October 26, 2023, when this vehicle was moved to Team Mitsubishi-Hartford, my office manager at that dealership floored the vehicle based on my prior instructions on September 15, 2023 to refloor all recovered vehicles. She failed to do so on September 15, 2023 and thus refloored it on October 26, 2023 unaware of the injunction. I always operated under the presumption that this vehicle, like all the others, was refloored prior to the injunction and only recently learned that it was floored after when I asked NMAC for the evidence of when all the injuncted vehicles were refloored. (ECF No. 220 at 7.)

admit that this is a technical violation of the injunction but argue that it is not as severe as Defendants suggest, as only one vehicle that was refloored late rather than all of them. (*Id.* at 2.) Plaintiffs contend that Defendants' reliance on the NMAC flooring dates is misplaced given that flooring dates do not mean what the Defendants assume it means. (*Id.*)  Plaintiffs allege in their declaration that the floor dates listed in the NMAC do not necessarily reflect the first date a car was floored at a dealership: ""[e]ach time a unit changes locations, it is given new flooring date. If a unit changes plans, for example goes from Used to Used Demo, it gets a new flooring date . . . Thus, whenever a vehicle is transferred to a new location or another line, it receives a new flooring date but has not actually been refloored as it has not been paid off.[9]" (ECF No. 220 at 9 n.13.)  As such, Plaintiffs allege the Deo Defendants fail to provide any clear or convincing evidence supporting an intent to violate the injunction. (ECF No. 19 at 1.)

Separately, Plaintiffs argue that Deo Defendants' reading of the Injunction does violence to its intent since the purpose of the injunction was to return Superb to its status quo by returning the injuncted vehicles to the Urrutia Cross-Collateralized Dealership lots, where they could be refloored to regain access to the working capital. (*Id.* at 2.)  Plaintiffs allege that the "word 'encumber' appears only once in the Injunction, and is ambiguous because it does not specify whether it refers to double flooring or simply placing the injuncted vehicle on the floor plan." (*Id.* at 2.)  Plaintiffs assert that prohibiting the "latter [would be] incongruous to the entire purpose of the injunction." (*Id.*)

Lastly, Plaintiffs argue that Defendants' unclean hands deprive them of any relief for the inadvertent reflooring of one vehicle one month after the injunction. (*Id*. at 5.)  Plaintiffs point to relevant caselaw that demonstrates the applicability of this doctrine to findings of contempt. (*Id.*

---

[9] This explanation of what a flooring date stands for is based on correspondence between Urrutia and Tim Gilroy, Dealer Workout/Overline Analyst for NMAC. (*See* ECF No. 220-5 at 3.)

at 3).  As a basis for a finding of unclean hands, Plaintiffs reiterate the previous instances of bad faith asserted in ECF 203 and proffer two new instances of misconduct: *first,* Plaintiffs assert that the Deo Defendants violated an injunction issued by Justice Gianelli in a related state court proceeding by selling certain vehicles. (*Id.* at 4.)  *Second*, Plaintiffs argue that Deo perjured himself "numerous times, but most glaringly" when he spoke of the injuncted Rolls Royce. (*Id.* at 4.)  Plaintiffs allege that Deo perjured himself by stating, in his sworn declaration, that he was surprised to see that his Rolls Royce was floored by Superb even though documentary evidence showed that he was aware that this vehicle no longer belonged to him. (*Id.*)

E. ***The Deo Defendants' Reply in Further Support of Contempt Following the January 10, 2025 Motion Hearing***

On January 24, 2025 Defendants filed their letter brief addressing the issue of encumbrance (ECF No. 221). Defendants argue the preliminary injunction was clear that the injuncted vehicles "[m]ay not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered." (ECF No. 221.) (citing ECF No. 55 at 29).  *First*, Defendants argue that the flooring dates found in the NMAC Action demonstrate that the Superb Plaintiffs transferred the injuncted vehicles to a floor plan maintained by Harford and "nearly all of the Injunctive Vehicles were listed as collateral . . . *after* the Injunction was in effect" (ECF No. 221 at 2.) (emphasis in original.)  *Second*, Defendants reiterate that the injuncted vehicles were not encumbered by any loan issued under a floor plan line of credit as of September 29, 2023, and assert that this fact was confirmed by this Court's Order dated January 18, 2024.[10]  According to Defendants, this generally contradicts Plaintiffs' assertions that these vehicles were encumbered from the get-go. (*Id.*)  Furthermore, Defendants also allege that the UCC-1 financing statement

---

[10] In the aforementioned order, the undersigned stated: ""Plaintiffs aver that these 43 vehicles ('Remaining Vehicles') are 'fully paid off' and owned 'solely by Superb.'" (*See* Memorandum Order, ECF No. 134 at 5, quoting ECF No. 111 at 4)

became ineffective once the floor plan line of credit was terminated and once the Plaintiffs allegedly paid off the injuncted vehicles. (*Id.* at 3.)

Lastly, Defendants contend that Plaintiffs' assertion regarding the meaning of the floor date, contrary to its plain language, is entirely baseless. (*Id.* at 4.)  Defendants argue that the documents from the NMAC Action list the Injuncted Vehicles, and the date each vehicle was placed on the floor plan under a column titled "Floor Date." (*Id.* at 4.)  Defendants point out that Plaintiffs' claim that this date refers to a delivery date is "implausible" and "wholly unsupported by any evidence." (*Id.*)  Defendants request that this Court find Superb Plaintiffs in contempt for their violations of the injunction and "grant appropriate relief, including but not limited to sanctions and further enforcement measures." (*Id.* at 5.)

Defendants filed a further reply in support of their motion for contempt on February 5, 2025. (ECF No. 224.)  Defendants argue that Plaintiffs have failed to rebut the irrefutable evidence of their contemptuous conduct since their justification for their conduct is predicated on an opportune recharacterization of the term "Floor Date" that is only supported by inadmissible hearsay. (*Id.* at 1.)  *First,* Defendants point out that when the Plaintiffs were first confronted with the encumbrance allegations, Robert Urrutia claimed that the "Floor Date" meant something else:

> When I properly and permissibly moved the vehicles…this is recorded by NMAC. To that end, the dates listed in the exhibits provided by the Deo **Defendants reflect the dates that the vehicles were moved to Team Mitsubushi-Hartford's lot in Connecticu**t. Contrary to the Deo Defendants' strained inference, the vehicles were not further encumbered; rather, they were already encumbered both by NMAC's UCC Financing Statement and by virtue of my decision to refloor these vehicles to make the NMAC payoff in early August 2023 prior to the existence of the Injunction. **Again, the dates the Deo Defendants point to merely reflect the date the vehicles were moved; this is done, understandably, so that NMAC may properly conduct audits by location when they visit the dealership(s) to "touch" the vehicles.** (emphasis in original) (*Id.* at 2) (citing ECF No. 204, ¶¶ 33-36).

Defendants allege that Urrutia admitted in this statement that the term "floor date" refers to the date the vehicle was first moved, which is inapposite to the alternate explanation provided in their most recent opposition. (*Id.* at 2) In their most recent opposition, Plaintiffs allege that the term 'floor date' "refers to the dates on which the Injuncted Vehicles were refloored on the NMAC floor plan." (*Id.* at 2.)  Defendants also convincingly point out that no documents produced by the Plaintiffs confirm that the vehicles were refloored prior to the injunction. (*Id.*)

Additionally, Defendants contend that Plaintiffs failed to lay a proper foundation or identify a relevant hearsay exception to admit Mr. Gilroy's statements included in the Supplemental Declaration. (*Id.*)  Defendants allege that this is likely hearsay given that it is being offered for the truth of the matter – whether "Floor Date" means what the Plaintiffs want it to mean. (*Id.*)  Based on this evidentiary issue, Defendants allege that this Court should disregard those statements. (*Id.*)  Defendants also allege that even if those statements are not hearsay, they should be disregarded because the Plaintiffs offered no foundation for Mr. Gilroy's personal knowledge regarding this topic and because there has been no indication that he "[was] designated as NMAC's corporate representative on the issue" or "that his statements represent NMAC's official position concerning the term 'Floor Date.'" (*Id.* at 2-3.)

Defendants once again insist that the Plaintiffs are misleading the undesigned by alleging that the vehicles were already encumbered prior to the injection given that they themselves stated that the vehicles were "fully paid off and owned 'solely by Superb.'" (*Id.* at 3.)  Importantly, Defendants also point out that Plaintiffs did admit to violating the injunction when one vehicle was refloored after the injunction came into effect, "albeit claiming it was a 'mistake.'" (*Id.* at 3.) Defendants also allege that Plaintiffs provide no details or evidence to corroborate their blame-

shifting scheme, in which they claim that the late reflooring of the injuncted vehicle was due to an employee's oversight. (*Id.* at 3.)

Lastly, Defendants aver that Plaintiffs improperly raised the unclean hands defense "despite this Courts clear directive." (*Id.* at 4.)   Defendants dispute the applicability of this defense given that it only applies "where the alleged wrongful conduct of the party seeking relief is directly connected to the matter for which they seek relief." (*Id.* at 4.)  Defendants proceed to recite caselaw that allegedly supports the inapplicability of this doctrine to the situation at hand. Defendants then argue that even if the allegations of past wrongdoing were true, the conduct mentioned by the Plaintiffs is "entirely unrelated" to the Plaintiffs' current violation of the injunction. (*Id.* at 5.)  Defendants also argue that if the Plaintiffs truly believed that their allegations of misconduct had merit, they should have been raised in state court, not here in federal court. (*Id.* at 5.)  This Court would be remiss not to mention, that ever since the undersigned's interim ruling dated 01/10/2025, Defendants have not requested that this Court find the Plaintiffs in criminal contempt—only civil contempt. As for relief sought, Defendants request that this Court find the Plaintiffs in contempt for their violations "and grant appropriate relief, including but not limited to sanctions and further enforcement measures." *Id.* at 5.

## MOTIONS FOR CONTEMPT: *THE LEGAL FRAMEWORK*

### I.    *Criminal and Civil Contempt*

Fed. R. Civ. P. 70 states in relevant part that "[i]f a judgment requires a party to…perform any other specific act and the party fails to comply within the time specified, the court may order the act to be done—at the disobedient party's expense—by another person appointed by the court." Fed. R. Civ. P. 70(a).  In addition, the court can hold the disobedient party in contempt.  Fed. R. Civ. P. 70(e).  "There are three essential elements which must be

established before a party can be held in civil contempt: 1) there must be an order that is clear and unambiguous; 2) the proof of non-compliance with that order must be clear and convincing; and 3) it must be shown that the contemnor has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *3 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted); *see also Manus v. Pincione*, No. 23-CV-6149 (JGLC), 2025 WL 560750 (S.D.N.Y. Feb. 20, 2025) (internal citations omitted) ("The power to punish parties for contempt is inherent in all court. . . .")  "A defendant's conduct need not be willful in order for the defendant to be found in contempt." *Yurman Studio, Inc. v. Castaneda*, Nos. 07-cv-1241 (SAS), 07-cv-7862 (SAS), 2009 U.S. Dist. LEXIS 13870, at *6 (S.D.N.Y. Feb. 23, 2009).  All three elements must be met.

Defendants also seek to hold Plaintiffs in criminal contempt.  To do so, the movant must demonstrate beyond a reasonable doubt that: "(1) the court entered a reasonably specific order; (2) [the alleged contemnors] knew of that order; (3) [the alleged contemnors] violated that order; and (4) [their] violation was willful." *United States v. Lynch,* 162 F.3d 732, 744 (2d Cir. 1998). The burden to hold an individual in criminal contempt "is greater than the burden on a party seeking only civil redress." *Fox Indus. v. Gurovich,* No. 03-CV-5166 (TCP) (WDW), 2005 U.S. Dist. LEXIS 59165, at *13 (E.D.N.Y. June 2, 2005).

## II.    *The Unclean Hands Doctrine*

Plaintiffs contend that the doctrine of unclean hands forecloses Defendants' relief.  The equitable doctrine of unclean hands is "an ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945).  The Second Circuit has repeatedly emphasized the narrowness of the

doctrine's application. *See, e.g., Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir.1983) (holding that plaintiff's alleged false accusation of copyright infringement did not bar plaintiff from relief in trademark infringement claim); *Maatschappij Tot Exploitatie Van Rademaker's Koninklijke Cacao & Chocoladefadrieken v. Kosloff,* 45 F.2d 94, 96 (2d Cir.1930) (stating proposition that unclean hands doctrine applies only to "wrongdoing directly connected with the right sought" and does not leave a wrongdoer "without protection in the vindication of other[,] though closely connected, rights." *Specialty Mins., Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005); *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814–15, 65 S. Ct. 993, 997-98, 89 L. Ed. 1381 (1945) ("Any willful act concerning the cause of action which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor"); *see also Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 150 (S.D.N.Y. 2019) (quoting *Specialty Mins., Inc.*, 395 F. Supp. 2d at 112) (The relation requirement between the misconduct alleged and the right sought has resulted in the 'narrowness of the doctrine's application.)

The Second Circuit has determined that a motion for contempt is subject to equitable defenses. *See Brennan v. Nassau County,* 352 F.3d 60, 63 (2d Cir.2003); *Comm'n Express Nat'l., Inc. v. Rikhy, No. CV 03 4050CPS*, 2005 WL 1397889, at *4 (E.D.N.Y. June 13, 2005) (finding that although a motion for contempt is subject to equitable defenses, the Defendant did not assert the defense of unclean hands); *Trustees of the Buffalo Laborers' Pension Fund v. Accent Stripe, Inc.*, No. 01-CV-76C(SC), 2007 WL 1540267, at *5 (W.D.N.Y. May 24, 2007) (denying a motion for contempt based on the questionable conduct of both parties). Findings of misconduct unrelated to the claim "to which it is asserted as a defense, does not constitute unclean hands."

*A.H. Emery Co. v. Marcan Prods. Corp.,* 389 F.2d 11, 18 (2d Cir.1968) (quotations and citations omitted).

But to be clear, "the unclean hands defense is not an automatic or absolute bar to relief; it is only one of the factors the court must consider when deciding whether to exercise its discretion . . . The doctrine of unclean hands also may be relaxed if defendant has been guilty of misconduct that is more unconscionable than that committed by plaintiff." *Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 245–46, 54 S. Ct. 146, 147–48, 78 L. Ed. 293 (1933) (hereinafter "*Keystone*" (Courts "apply the maxim requiring clean hands only where some unconscionable act of one coming for relief has *immediate and necessary relation to the equity that he seek*s in respect of the matter in litigation . . . They apply the maxim, not by way of punishment for extraneous transgressions, but upon considerations that make for the advancement of right and justice. They are not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion.") (emphasis added.) It is with this framework that the Court analyzes Defendants' Motion for Contempt.

### III.    ***Remedies for Contempt***

"Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases. That authority includes the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Manus v. Pincione*, No. 23-CV-6149 (JGLC), 2025 WL 560750, at *3 (S.D.N.Y. Feb. 20, 2025) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017)); *see also CBS Broad. Inc. v. FilmOn.com, Inc*., No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *3 (S.D.N.Y. July 24, 2014), *aff'd*, 814 F.3d 91 (2d Cir. 2016) (internal citation

22

omitted) ("Upon finding that a party is in civil contempt, this Court retains 'broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions.)  "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 657 (2d Cir. 2004)." The Court has the discretion to impose either compensatory or coercive sanctions. "It is basic law that a civil contempt sanction must only be compensatory or coercive, and may not be punitive." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).  For any compensatory sanction, "some proof of loss must be present to justify its compensatory aspects." *Id.* at 658. And to the extent a contempt sanction is coercive, the court has "broad discretion to design a remedy that will bring about compliance." *Id.* (citing *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).

For coercive sanctions, a court has broad discretion to design a remedy that will bring about compliance.  In doing so, the court must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987)) ("Dole"). "A sanction coerces a defendant when it 'forces the contemnor to conform his conduct to the court's order.'" *CBS Broadcasting*, 814 F.3d at 101 (quoting *New York State National Organization For Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998)); *In Re Stockbridge Funding Corp.*, 158 B.R. 914, 918 (S.D.N.Y. 1993) (internal citations omitted) ("Coercive sanctions afford a contemnor an opportunity to purge his contempt, and end as soon as that contemnor ceases his contumacious behavior") (quoting

*Ochoa v. United States*, 819 F.2d 366, 369 (2d Cir. 1987)); *Aquavit Pharmacueticals, Inc.*, No. 19CV3351 (VECRWL, 2021 WL 4312579, at *23 ("In contrast to compensatory sanctions, which look to the past, coercive sanctions take aim at the future."). "A per-diem fine is widely recognized as an effective coercive tool." *Raghavendra v. Trs. of Columbia Univ.*, 06 cv 6841 (PAC)(HBP), 2017 WL 6000553, at *4 (S.D.N.Y. Dec. 1, 2017). "The contemnor bears the burden of establishing a lack of financial resources to prevent imposition of monetary sanctions." *Jolen, Inc.,* No. 19-CV-1296 (PKC), 2019 WL 2949988, at *4.

For compensatory sanctions, "a court should reimburse the injured party for its actual damages." *Id*. (internal citations omitted). "Though compensatory sanctions need not precisely match losses, the sanction should correspond at least to some degree with the amount of damages." *Id*. Compensatory sanctions may include an award of attorneys' fees and costs if the Court finds willful violation, however, "whether willfulness or bad faith is required to order attorney fees as a sanction for violating a court order "remain[s] an open one in our Circuit[.]" *See Broker Genius Inc. v. Seat Scouts LLC*, 17 cv 8627 (SHS), 2019 WL 2462333, at *3 (S.D.N.Y. June 13, 2019); *Jacobs v. Citibank, N.A.*, 318 Fed. App'x 3, 5 n.3 (2d Cir. 2008).

Lastly, Courts can also award "attorney's fees in an amount to be determined." *See e.g.*, *CBS Broad. Inc.*, No. 10 CIV. 7532 NRB, 2014 WL 3702568, at *6–7 ("Plaintiffs' counsel shall submit on notice a proposed form of judgment, supported by an affidavit detailing their attorneys' fee request, to this Court on or before July 30, 2014."); *A.V. by Versace, Inc.*, No. 96 CIV. 9721PKLTHK, 2002 WL 2012618, at *10–11 (holding plaintiff entitled to attorney's fees and costs associated with bringing the motion for contempt where defendant's violation of the preliminary injunction was "willful" and directing Plaintiff to serve and file, within thirty days of the order issued by the district court, a memorandum and affidavits in support itemizing its total

attorneys' fees and costs associated with its motion for contempt); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996) ("Indeed, to survive review in this court, a district court, having found willful contempt, would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt.").

It is with these legal principles in mind that the Court considers the instant motion for contempt.

## **DISCUSSION**

### I.    *Unclean Hands*

Given the inherent discretion this Court has in determining whether to apply the doctrine of Unclean Hands, the undersigned finds that the alleged misconduct does not deprive the Defendants of the relief they seek. As the Supreme Court set forth in *Keystone*, this Court is not "bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." 290 U.S. 240, 245–46, 54 S. Ct. 146, 147–48, 78 L. Ed. 293. The maxim of unclean hands is applied "upon considerations that make for the advancement of right and justice." *Id.*; *see also Dunlop-McCullen v. Loc. 1-S, AFL-CIO-CLC*, 149 F.3d 85, 90 (2d Cir. 1998) ("the unclean hands defense is not an automatic or absolute bar to relief; it is only one of the factors the court must consider when deciding whether to exercise its discretion.)

Thus, the undersigned finds that the "advancement of right and justice" militates in favor of addressing the motion for contempt on the merits; frankly, this Court finds that Plaintiffs' opportunistic assertions of alleged misconduct—claims for which they never moved to hold Defendants in contempt— amount to a "*get out of contempt card*" that this Court refuses to endorse under the circumstances presented.  To hold otherwise would incentivize parties to forgo filing motions for contempt or sanctions, effectively allowing them to wield the ultimate "Uno

reverse card" when they face a contempt of court ruling. This type of gamesmanship was surely not what the Second Circuit envisioned when it held that findings of contempt could, in fact, be subject to the equitable defense of unclean hands. If Plaintiffs had serious qualms about Defendants' conduct, they should have moved to hold them in contempt when they first discovered these allegations of misconduct—but they chose not to.

Furthermore, the undersigned finds that most of the alleged misconduct does not have an "immediate and necessary relation to the equity that [Defendants] seek in respect of the matter in litigation," particularly the allegations of wrongdoing in a prior, yet closely related, state proceeding. *Keystone*, 290 U.S. 240 at 147-48; *See A.H. Emery Co. v. Marcan Prods. Corp.,* 389 F.2d 11, 18 (2d Cir. 1968) ("Misconduct . . .  unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands.)(quotations and citations omitted); *see also Cintron v. Vaughn,* No. 3:69CV13578 (EBB), 2009 WL 10714967, at *39-40 (D. Conn. July 6, 2009), report and recommendation approved, No. 3:69CV13578(EBB), 2009 WL 10714966 (D. Conn. July 6, 2009) (quotation marks omitted) (The maxim only applies to the particular transaction under consideration, for the court will not go outside of the case for the purpose of examining the conduct of the complainant in other matters or questioning his general character for fair dealing.)

The only two allegations that had more of a "necessary and immediate connection" were the allegations that the Deo Defendants have repeatedly failed to comply with the injunction in numerous respects. *See* ECF No. 203 at 7.[11]  Both allegations have an immediate and necessary

---

[11]  Plaintiffs allege: *First*, the Deo Defendants surrendered possession of one of the Deo Lots on September 30, 2023 – just one (1) day after Judge Merchant issued the Injunction requiring them to keep the Deo Injuncted vehicles at this lot. This was an independent violation of the Injunction because the Deo Defendants did not seek leave, as required, to move the vehicles from the Deo Lot to their home. *Second*, the Deo Defendants repeatedly drove the vehicles in violation of the Injunction. (ECF No. 203 at 7) (internal citations omitted) (cleaned up).

relation to the equity Defendants seek, as they demonstrate that both parties may have violated the injunction.  However, this alone is insufficient to conclude that their unclean hands foreclose their relief. *See Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999) (hereinafter "*Gidatex*") (Typically, courts that have denied injunctive relief due to plaintiff's unclean hands have found plaintiff guilty of truly unconscionable and brazen behavior. *See, e.g., Goldstein v. Delgratia Mining Corp.,* 176 F.R.D. 454, 458 (S.D.N.Y.1997) (unclean hands defense successful where plaintiff made multiple misrepresentations to court regarding law and facts.)) (quotation marks omitted).  As the Court in *Gidatex* forcefully proclaimed, "[i]t is better to remedy one wrong than to leave two wrongs at large. If [Plaintiffs] think that [Defendants are] guilty of inequitable conduct, [they] should raise it" in a contempt motion. 382 F. Supp. 2d at 133.

## II.    *Defendants' Motion for Civil Contempt Succeeds on the Merits*

The Court finds Plaintiffs are in civil contempt due to the impermissible encumbrance of one car after the injunction came into effect. The three elements required for civil contempt as set forth in *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) have been met: *first,* the preliminary injunction clearly and unambiguously prohibited the encumbrance of the injuncted vehicles.  The preliminary injunction unambiguously commanded that the Injuncted vehicles "shall remain or otherwise be at Deo Defendants' Deo Lots" and separately clarified that the term "Remain" meant that the "subject injuncted vehicle[s] . . . may not be sold, transferred, gifted, disposed, destroyed, or otherwise encumbered." ECF No. 55 at 29.  The undersigned is not convinced by Plaintiffs' assertions that the definition of "encumbrance" is ambiguous; regardless of how one defines "encumbrance," reflooring a vehicle after an injunction comes into effect clearly encumbers the property.

27

*Second*, the proof of Plaintiffs' non-compliance with the order is clear and convincing: in their own Opposition to the Motion for Contempt, Plaintiffs admitted to violating the order by reflooring the vehicle bearing VIN No.: ZARFAEDN3J7575105 on October 26, 2023—*after* the injunction came into effect. ECF Nos. 219 at 2; 220 at 7.  Although Plaintiffs attempt to recharacterize this as a mere "technical violation," this Court would be remiss to mention that a technical violation of an injunction is still a violation of a court order—the rule of law means nothing if mere sophistry is sufficient to defeat the letter of the law.  Moreover, Defendants are correct that Plaintiffs' attempt to shift blame to one of his employees does little to affect the duties imposed by the preliminary injunction upon the plaintiffs.  If burying one's head in the sand and blaming an unnamed employee for violating a court order were a recognized defense, this Court fails to see how any court order would carry more weight than the paper it is written on.  Furthermore, although this Court was initially deeply troubled by Plaintiffs' ever-changing definition of the term "floor date"—given their contradictory explanations—a late filing from NMAC seeking to intervene in this matter confirmed Plaintiffs' allegation that only one car was moved after the injunction came into effect.[12] This additional evidence suggests that the remaining cars listed in the NMAC action were encumbered prior to the injunction.

*Third*, this Court also finds that the Plaintiffs have not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *Schmidt v. Stone*, No. 14-CV-2519 (RJD) (CLP), 2019 WL 3253953, at *5 (E.D.N.Y. July 18, 2019) (internal quotations and citations omitted). While Plaintiffs —based on the available evidence—seemingly complied with

---

[12] *See* ECF 229-1 at 11 ("With the exception of the vehicle identified on Schedule C with vehicle identification number ZARFAEDN3J7575105 all of the vehicles were added to, and secured under, NMAC's floor plan prior to the issuance of the Injunction.")  Separately, the undersigned would like to make it clear that this order does not address the merits of Defendants' Third Motion for Contempt (ECF No. 225) or NMAC's Motion to Intervene. (ECF No. 229.)

the rest of the injunction, their explanation for the inadvertent reflooring after the injunction took effect is plainly unsatisfactory. Plaintiffs attempt to blame an unnamed employee for their "mistake," but that does not relieve Superb's management or Urrutia from complying with a court order. Moreover, Plaintiff admits that the employee failed to refloor it in time since they were "unaware of the injunction." ECF No. 220 at 7. Leaving Superb's employees in the dark about a court order that binds their actions surely sounds like the opposite of "reasonable diligence."

Moreover, Urrutia himself admitted that he "always operated under the *presumption*" that the late vehicle was refloored prior to the injunction and "only recently learned that it was floored after when I asked NMAC for the evidence of when all the injuncted vehicles were refloored" ECF No. 220 at 7 (emphasis added). Presuming that employees—who were not informed of the court order—complied with the encumbrance requirement is inherently implausible and, frankly, irresponsible. Complying with court orders requires reasonable diligence and energetic efforts; thus, Plaintiffs' untested, irrational presumptions do not suffice. Plaintiffs are reminded that their "conduct need not be willful in order for the defendant to be found in contempt." *Yurman Studio, Inc. v. Castaneda*, Nos. 07-cv-1241 (SAS), 07-cv-7862 (SAS), 2009 U.S. Dist. LEXIS 13870, at *6 (S.D.N.Y. Feb. 23, 2009). Based on the aforementioned finding of civil contempt, the undersigned directs the parties to appear for an evidentiary hearing, pursuant to the Local Rule § 83.6(b) of the United States District Courts for the Southern and Eastern Districts of New York, to assess the damages and remedies available to the Defendants for the violation of the preliminary injunction

The undersigned declines to hold the Plaintiffs in criminal contempt.  Although the first three elements of criminal contempt—(i) the entry of a "reasonably specific order;" (ii) contemnor's knowledge of the order; and (iii) contemnor's violation of the order  have likely been sufficiently established, the Plaintiffs' violation of the order was *not* willful, at least according to the submissions. *United States v. Lynch,* 162 F.3d 732, 744 (2d Cir. 1998). Plaintiffs argue that their inadvertent violation of the injunction was due to the "mistake" of one of their employees that was unaware of the preliminary injunction.  This cuts against a finding of willfulness, as one cannot willfully violate an order of which they are unaware. "Wilfulness merely requires "a *specific intent to consciously disregard* an order of the court." *United States v. Cutler,* 58 F.3d 825, 837 (2d Cir.1995) (quoting *United States v. Berardelli,* 565 F.2d 24, 30 (2d Cir.1977)) (internal quotation marks omitted) (emphasis added); *see United States v. Remini,* 967 F.2d 754, 757–58 (2d Cir.1992) (explicitly rejecting the argument that proof of malice or bad intent is a prerequisite to a finding of wilfulness in a criminal contempt case); *see also Rojas v. United States,* 55 F.3d 61, 63 (2d Cir.1995) (*per curiam* ) (wilfulness requires proof of " 'a volitional act done *by one who knows or should reasonably be aware that his conduct is wrongful*' ") (quoting *United States v. Greyhound Corp.,* 508 F.2d 529, 531–32 (7th Cir.1974)) (emphasis added.)  Although this Court found that Plaintiffs could have been more diligent in ensuring the injunction was complied with, there is insufficient evidence to find—beyond a reasonable doubt—that the unnamed employee knew or reasonably should have known that their conduct was wrongful, especially when the Plaintiffs failed to inform them of the injunction.  As such, a finding of criminal contempt is not warranted.

## <u>CONCLUSION</u>

For the reasons stated, the Deo Defendants' Motion for Contempt (ECF No. 202) is

**GRANTED**.  Accordingly, it is **HEREBY ORDERED** that Superb Plaintiffs are held in civil

contempt for failing to comply with an express order of this Court. Based on the finding of civil

contempt, the undersigned directs the parties to appear for an evidentiary hearing on April 25,

2025 at 2:00 p.m. in courtroom 1020 at 100 Federal Plaza, Central Islip, New York, pursuant to

the Local Rule §83.6(b) of the United States District Courts for the Southern and Eastern District

of New York, to assess the damages and remedies available to the Defendants for the violation of

the preliminary injunction.  Both parties are directed to file letter briefs addressing this sole issue

on April 11, 2025.  There will be no oppositions or replies unless ordered by the Court.


Dated: Central Islip, New York
       March 21, 2025


                                          S O    O R D E R E D:

                                          /S/ *James M. Wicks*
                                             JAMES M. WICKS
                                          United States Magistrate Judge

31