Brian M. Levine, Esq.
**LEVINE SINGH, LLP**
260 N. Broadway, Suite 2A
Hicksville, NY 11801
Tel: 347-732-4428
Fax: 917-477-2273
levine@levinesingh.com
*Attorneys for the Deo Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUPERB MOTOR, INC., *et. al*,<br><br>                              Plaintiffs,<br>              -against-<br><br>ANTHONY DEO, *et. al*,<br><br>                              Defendants. | Case No. 2:23-cv-6188 (JMW) |

---

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY NISSAN MOTOR ACCEPTANCE COMPANY, LLC'S MOTION TO INTERVENE**

---

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

LEGAL ARGUMENT .................................................................................................................. 2

    I.    NMAC'S MOTION MUST BE DENIED BECAUSE NMAC FAILS TO MEET ITS BURDEN OF PROOF UNDER RULE 24(a) ................................................................... 2

        A.    Legal Standard ................................................................................................. 2

        B.    NMAC's Motion Must be Denied Because it is Untimely. ............................. 3

        C.    NMAC Fails to Establish a Direct and Substantial Interest in the Subject Property ...... 5

        D.    NMAC Fails to Demonstrate that it's Interests Could be Adversely Affected by the Outcome of this Action ................................................................................ 7

        E.    NMAC Fails to Demonstrate that its Interest are Not Adequately Represented ............ 8

    II.    NMAC'S MOTION MUST BE DENIED BECAUSE IT SEEKS TO VACATE THE PRELIMINARY INJUNCTION, NOT INTERVENE ................................................. 9

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

## **CASES**

*Brennan v. N.Y. City Bd. of Educ.*,
 260 F.3d 123 (2d Cir. 2001)
................................................................................................................................. 3

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
 250 F.3d 171 (2d Cir. 2001) ....................................................................................... 3, 8

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001) ............................................................................................ 4

*Great Atlantic & Pacific Tea Co. v. Town of East Hampton*,
 178 F.R.D. 39 (E.D.N.Y. 1998) ................................................................................. 7, 8

*In re Bank of N.Y. Derivative Litig.*,
 320 F.3d 291 (2d Cir. 2003) .......................................................................................... 4

*In re Holocaust Victim Assets Litig.*,
 225 F.3d 191 (2d Cir. 2000) .......................................................................................... 3

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*,
 471 F.3d 377 (2d Cir. 2006) ...................................................................................... 3, 4

*New York News, Inc. v. Kheel*,
 972 F.2d 482 (2d Cir. 1992) ...................................................................................... 3, 5

*Trbovich v. United Mine Workers of Am.*,
 404 U.S. 528 (1972) ...................................................................................................... 8

*United States v. New York*,
 820 F.2d 554 (2d Cir. 1987).......................................................................................... 4

*United States v. Peoples Benefit Life Ins. Co.*,
 271 F.3d 411 (2d Cir. 2001) .......................................................................................... 5

*United States v. Pitney Bowes, Inc.*,
 25 F.3d 66 (2d Cir. 1994) ......................................................................................... 3, 4

*U.S. Postal Serv. v. Brennan*,
 579 F.2d 188 (2d Cir. 1978) .......................................................................................... 8

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
 922 F.2d 92 (2d Cir. 1990) ....................................................................................... 3, 8

**STATUTES**

Fed. R. Civ. P. 24 ............................................................................................. 1, 2, 3, 7, 9, 10

Defendants Anthony Deo, Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset, LLC., Gold Coast Cars of Sunrise, LLC., Gold Coast Motors Automotive Group, LLC, Gold Coast Motors of LIC, LLC., Gold Coast Motors of Roslyn, LLC., Gold Coast Motors of Smithtown, LLC., and UEA Premier Motors Corp (collectively, the "Deo Defendants") respectfully submit this memorandum of law in opposition to Third-Party Nissan Motor Acceptance Company, LLC's motion to intervene pursuant to Rule 24(a) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Third-Party Nissan Motor Acceptance Company LLC ("NMAC") moves to intervene pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure. But NMAC is not actually seeking intervention to assert any cause of action or preserve a right that would be impaired by this litigation. Rather, it is attempting to use Rule 24(a) as a procedural backdoor to vacate a court-issued Preliminary Injunction and seize property without filing a single pleading, let alone a complaint. Intervention under Rule 24(a)(2) is not a substitute for affirmative litigation, and NMAC's motion must be denied for at least five reasons.

First, the motion is untimely. NMAC was aware of the Preliminary Injunction no later than September 2024, when counsel for the Deo Defendants informed NMAC of both the Preliminary Injunction and the contempt motion. Yet NMAC waited more than six months before seeking to intervene – and offers no explanation for that delay.

Second, NMAC fails to demonstrate any direct and substantial interest in the subject property. Its claims rest entirely on conclusory assertions and inadmissible hearsay, without producing a single title certificate, floorplan invoice, proof of funding and bill of sale establishing an actual lien or ownership interest in any specific vehicle.

Third, NMAC fails to demonstrate that the disposition of this action will impair or impede its rights. The injunction at issue does not prevent NMAC from filing a lawsuit or seeking relief through proper channels. What NMAC actually seeks is not intervention but shortcut relief – relief that it is not entitled to under Rule 24.

Fourth, NMAC fails to demonstrate that its purported interests are inadequately represented. Its objectives overlap substantially with the Plaintiffs, and courts in this Circuit require a heightened showing of inadequacy when interests are aligned.

Finally, the motion is procedurally improper. NMAC does not submit a proposed pleading with its motion, as required by Rule 24(c). Nor does it seek to participate in the litigation for the purpose of asserting rights – it merely wants the Court to vacate its prior order and permit it to liquidate assets.

For these reasons, and those set forth more fully below, the motion should be denied in its entirety.

**LEGAL ARGUMENT**

I. **NMAC'S MOTION MUST BE DENIED BECAUSE NMAC FAILS TO MEET ITS BURDEN OF PROOF UNDER RULE 24(a)**

A. **Legal Standard**

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that:

> On timely motion, the court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the Applicant's ability to protect its interest, unless existing parties adequately represent that interest.

Under Rule 24(a)(2), a party seeking to intervene as of right must establish a four-part test. Specifically, it must be shown that "(1) the motion is timely; (2) the applicant asserts an interest relating to the property or transaction that is the subject of the action; (3) the applicant is so situated that without intervention, disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the other parties." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass 'n, Inc.*, 471 F.3d 377, 389 (2d Cir. 2006).

The burden of proof to establish all four parts of the test rests on the party seeking to intervene. *Brennan v. N.Y. City Bd. of Educ.*, 260 F.3d 123, 128-29 (2d Cir. 2001); *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992). It is essential that the movant establish each and every element of the four part test to qualify for intervention as of right, and the movant's failure to establish any one element mandates denial. *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 96 (2d Cir. 1990). *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171,176 (2d Cir. 2001) (a failure to satisfy these requirements justifies the denial of a motion to intervene); *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994); *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 197-98 (2d Cir. 2000).

NMAC fails to satisfy any of these elements.

### B. NMAC's Motion Must be Denied Because it is Untimely.

3

The Second Circuit considers four factors to determine whether a motion to interven is timely: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness*." In re Bank of N.Y. Derivative Litig*., 320 F.3d 291, 300 (2d Cir. 2003) (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)); see also, *Mastercard Intl., Inc. v Visa Intl. Serv. Assn.*, 471 F.3.d 377, 390 (2d Cir 2006) (quoting *United States v. New York*, 820 F.2d 554, 557 (2d Cir. 1987)).

NMAC claims that the motion is timely because the motion was made approximately one month after NMAC executed a Surrender Agreement with Robert Uruttia on January 2, 2025, and was made shortly after the Deo Defendant's filed their reply in further support of their motion for contempt (ECF 299-8, *Memorandum*, at p.5). This timeline however, omits a critical fact: NMAC was notified of the Preliminary Injunction and the Deo Defendants' contempt motion no later than September 2024 when counsel for the Deo Defendants contacted NMAC and notified them about the Preliminary Injunction and the Deo Defendants' motion for contempt. (See, accompanying *Declaration of Brian M. Levine, Esq.*, ¶¶ 4-6; Exhibit A). Despite being placed on actual notice, NMAC waited more than six months to file this motion – and offers no explanation for that delay.

Courts in this Circuit routinely deny intervention where the moving party delays without justification. In *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001), the Second Circuit found that waiting even a few months without explanation rendered the motion untimely. Likewise, in *Mastercard Intl., Inc. v Visa Intl. Serv. Assn.*, 471 F3d 377, 390 (2d Cir 2006), the court upheld a finding of untimeliness where the movant delayed substantially less than six months but was aware of the litigation and failed to act.

4

NMAC is not an unsophisticated party. It is a national financing company represented by counsel, and it knew of the injunction as early as September 2024. Its silence, its delay, and its failure to provide any reason for that delay are fatal. The motion must be denied as untimely.

### C. NMAC Fails to Establish a Direct and Substantial Interest in the Subject Property

NMAC bears the burden of showing a "direct, substantial, and legally protectable" interest in the subject matter of this litigation. *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir. 1992). An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *United States v. Peoples Benefit Life Ins. Co.*, 271 F.3d 411, 415 (2d Cir. 2001) (internal quotations omitted).

NMAC's motion papers rely solely upon the conclusory and self-serving assertions as to a security interest NMAC claims to have in certain vehicles subject to the Court's Preliminary Injunction based on vague references to information obtained from reviewing "business records" that NMAC fails to produce in support of the motion. NMAC offers no admissible evidence to demonstrate a direct and substantial interest in the restrained vehicles. It asserts that twenty-four vehicles listed on "Schedule C" were "floored" under its security agreements, but fails to offer a single title, bill of sale, floorplan funding statement, or any actual business record to substantiate the same. Instead, NMAC relies exclusively on the declaration of Gregory Brown, its "Manager of Special Credit," who parrots legal conclusions and cites to a Schedule A set forth below his signature line, listing 25 VINs and dates he claims they were floored. That is not evidence – it is self-serving hearsay. According to NMAC, that list and NMAC's generalized references to the various floorplan financing documents accompanying the motion provide NMAC with grounds to

5

not only undue the Court's Preliminary Injunction, but give NMAC an end-run around ownership rights and interest in all twenty-four enjoined vehicles (and proceeds from their sale) over and above the parties in this case, without ever needing to file a single pleading. This is simply not the case.

While NMAC's motion characterizes the enjoined vehicles as being split into two categories, NMAC provides no showing that the vehicles were ever lawfully owned by Team Auto and placed on the Team Mitsubishi of Hartford's ("Team Mitsubishi") floorplan. There is record evidence suggesting that Robert Urrutia engaged in fraud and falsified MV-50 forms to make it appear as though vehicles owned by Superb had been transferred to Team Auto[1]. (See, ECF 112, ¶¶ 42-44 ; ECF 121-8).

Moreover, the record flatly contradicts NMAC's conclusory and self-serving story as to when all of the vehicles were allegedly floored on NMAC's floorplan. First, they are contradicted by NMAC's sworn statements in the NMAC Action[2]. Second, they are flatly contradicted by the representations that the Superb Plaintiffs made to this Court in connection with the Court's issuance of the Preliminary Injunction.

---

[1] The Court's attention is directed to ECF 112-8, wherein Plaintiff's produced documents purporting to establish the sale of certain vehicles. Specifically, the Court will note that on Page 9 of 69 Retail Certificate Form No. 62512171 was produced for the sale of the vehicle ending in VIN 6948. The Court's attentions is next directed to page 27 of 69 where the same Retail Certificate Form No. 62512171 was produced by Plaintiffs, purportedly showing the sale of the vehicle ending in VIN 2861. These forms are provided from the DMV, and it is impossible for two different forms with the same number to exist for two different transactions absent forgery and fraud. The Court is also invited to compare both page 40 and page 44, wherein two different versions of Retail Certificate Form No. 62512165 can similarly be observed.

[2] Links to the NMAC Action filings can be found at the following links: Affidavit in Support; Application; So-Ordered Stipulation

For instance, in a sworn Declaration dated September 13, 2023, Robert Uruttia affirmed :

> Currently, I cannot place *any* vehicles on a floor plan with Next Gear (**nor can I with NMAC**, which is set to terminate in five days), and as such, I have no way of financing the acquisition of vehicles to sell cars. (emphasis added)

(ECF Doc 38, ¶ 5).

Yet, despite this, and despite the fact that the Deo Defendants did not transfer physical possession over the enjoined vehicles until September 15, 2023, NMAC and Urrutia are claiming that the vehicles were placed on NMAC's floorplan on September 8, 2023 and September 15, 2023.

In sum, NMAC's interest in the enjoined vehicles is speculative, conclusory, and contradicted by both sworn testimony and the record in this case and the NMAC Action. NMAC woefully fail to provide more than conclusory, self-serving claims in inadmissible form and therefore NMAC has not met its burden of demonstrating a direct and substantial interest under Rule 24(a)(2).

### D. NMAC Fails to Demonstrate that it's Interests Could be Adversely Affected by the Outcome of this Action

The third element of the intervention-by-right standard is met where the intervenors demonstrate that, absent intervention, the disposition of the action may, as a practical matter, impede or impair their interests. *Great Atlantic & Pacific Tea Co. v. Town of East Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998).

NMAC makes no such showing. It does not submit a proposed pleading. It does not identify a claim it wishes to assert. Instead, it seeks to vacate the Preliminary Injunction in order to unilaterally take possession of the vehicles and liquidate them. But this litigation does not adjudicate NMAC's rights – indeed, no party here has asserted a claim against NMAC, and NMAC

7

has asserted no claims of its own. From a review of NMAC's submissions, it is clear that NMAC does not seek to participate at all in the instant action to insure that its interests are determined.

Nothing about the resolution of this action will preclude NMAC from pursuing its own rights in a separate proceeding. If NMAC believes it has a perfected lien on any specific vehicle, it may initiate a foreclosure action in an appropriate forum. Rule 24 does not entitle it to bypass those processes and obtain relief via judicial fiat.

### E.  NMAC Fails to Demonstrate that its Interest are Not Adequately Represented

An applicant for intervention as of right must show that it may not be adequately represented by a named party. While the Supreme Court has generally characterized a proposed intervenor's burden to demonstrate inadequacy of representation in the existing lawsuit as "minimal," *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10, 92 S. Ct. 630, 30 L. Ed. 2d 686, the Second Circuit has "demanded a more rigorous showing of inadequacy in cases where the putative intervenor and a named party have the same ultimate objective," *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001) (citing *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990); *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978)). Merely because a would-be intervenor's "motive to litigate" may be different from that of party does not mean that their interests are unaligned. *Wash. Elec. Coop., 922 F.2d at 98*. Adequate representation is presumed when the would-be intervenor shares the same ultimate objective as a party to the lawsuit. *Great Atlantic & Pacific Tea Co. v. Town of East Hampton*, 178 F.R.D. 39, 42 (E.D.N.Y. 1998).

NMAC fails to meet this higher burden. The interests it purports to protect – namely, liquidation of the restrained vehicles – align with the interests of Plaintiffs. Urrutia, who owns or controls all the borrower entities, expressly consented to the Surrender Agreement. Plaintiffs have

8

already moved to lift the injunction and permit sale of the very same vehicles. NMAC's interests are thus fully aligned with those of the existing parties.

Indeed, the only reason NMAC claims inadequate representation is that the injunction remains in place. But that reflects a judicial determination – not a failure of advocacy. NMAC's dissatisfaction with the outcome does not create a basis for intervention.

NMAC has not shown that any party has failed to assert its interests or that its rights will be unprotected if it is not allowed to intervene. As such, its motion must also be denied on this ground.

## II.   NMAC'S MOTION MUST BE DENIED BECAUSE IT SEEKS TO VACATE THE PRELIMINARY INJUNCTION, NOT INTERVENE

Although NMAC frames its motion as one for intervention under Rule 24(a)(2), its actual objective is to vacate the Court's Preliminary Injunction and seize the subject vehicles. That is not a proper purpose for intervention – and certainly not a basis for intervention as of right.

NMAC does not submit a proposed complaint or crossclaim. It does not seek to participate in discovery or to assert a claim for declaratory or injunctive relief. Rather, NMAC wants the Court to vacate an existing Order so that it may take possession of the vehicles, liquidate them, and apply the proceeds to a debt allegedly owed by Team Auto and related entities.

This procedural sleight of hand is improper. Rule 24 exists to allow interested parties to join litigation in which their rights are at stake – not to serve as a vehicle for end-running proper pleading and motion practice. If NMAC believes it is entitled to possession of the vehicles, the proper vehicle is a motion to modify the injunction or a separate action seeking replevin foreclosure – not a disguised Rule 24 motion with no operative pleading attached. joined. The

9

failure to file a proposed pleading is a violation of Rule 24(c), and this procedural defect is not merely technical Without a proposed pleading, the Court cannot evaluate whether the claims NMAC intends to raise are plausible, legally cognizable, or properly joined.

In short, NMAC is not seeking to "intervene" in the traditional sense – it is attempting to bypass ordinary civil procedure to obtain extraordinary relief. That is not what Rule 24 is for, and the motion should be denied for this reason as well.

## CONCLUSION

NMAC's motion is untimely, unsupported by admissible evidence, procedurally defective, and legally meritless. NMAC has failed to establish a direct and substantial interest in the subject vehicles, has shown no impairment to any legally protectable right, and cannot demonstrate that its interests are not already represented in this action. Its motion is not an effort to join litigation, but a thinly veiled attempt to vacate a federal court order without filing a claim.

For all of the foregoing reasons, the Deo Defendants respectfully request that the Court deny NMAC's motion to intervene in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: Hicksville, New York
       April 2, 2024

                                      LEVINE SINGH, LLP

                          By:   /s/    Brian M. Levine
                                      Brian M. Levine, Esq.
                                      260 N. Broadway, Suite 2A
                                      Hicksville, New York 11801
                                      Tel. No.: (347) 732-4428
                                      Fax No.: (917) 477-2273
                                      *Attorneys for the Deo Defendant*