**LEVINE SINGH LLP**

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+

Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

April 10, 2025

**Via ECF**
United States District Court
Eastern District of New York
Attn: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

    Re: Superb Motors, et. al. v. Deo, et. al.
      Case No.: 2:23-cv-6188 (JMW)

Dear Judge Wicks:

  As you are aware, the undersigned represents the Deo Defendants in the above-referenced matter. On March 21, 2025, this Court found the Superb Plaintiffs in civil contempt for violating the Preliminary Injunction in this matter. Plaintiffs admitted that they refloored one vehicle on October 26, 2023 – after the Injunction expressly prohibited any encumbrance of the injuncted vehicles. Despite Plaintiffs' attempt to minimize this action as a "technical" error or to shift blame to an employee, the Court correctly observed that even a technical violation of a court order undermines the rule of law.

  Pursuant to Your Honor's Order (ECF 231), the Defendants submit this letter brief addressing the sole issue of the remedies and damages available to the Deo Defendants as a result of the Plaintiffs' contempt. The Deo Defendants respectfully submit that both compensatory and coercive sanctions are warranted to: (a) redress the harm caused by Plaintiffs' misconduct, and (b) secure full compliance with the Injunction henceforth.

**Legal Standard**

  When a party is found in civil contempt, a district court has broad authority to fashion appropriate remedies to both redress past violations and secure future compliance. *Manus v. Pincione*, No. 23-CV-6149 (JGLC), 2025 WL 560750, at *3 (S.D.N.Y. Feb. 20, 2025). The remedies in civil contempt are inherently remedial – they are either compensatory, designed to make the injured party whole by reimbursing actual damages, or coercive, intended to compel future adherence to the Court's orders. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.*, 369 F.3d 645, 657 (2d Cir. 2004). Importantly, any sanction imposed must serve to correct the violation rather than punish the contemnor for its own sake. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 144 (2d Cir. 2014).

  When imposing coercive sanctions, the court has "broad discretion to design a remedy that will bring about compliance" *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 57

260 N. Broadway, Suite #2A  |  P. (347) 732-4428  |  P. (516) 597-4418  |  F. (917) 477-2273  |  www.levinesingh.com
Hicksville, New York 11801

(2d Cir. 1982), and should consider several factors in calculating a sanction, including "the character and magnitude of the harm threatened by continued contumacy," the "probable effectiveness of any suggested sanction in bringing about compliance," and the contemnor's ability to pay. *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987). However, coercive sanctions should not be imposed where they are unlikely to compel compliance. See *Simkin v. United States,* 715 F.2d 34 (2d Cir. 1983) (when sanctions are not going to compel compliance, they lose their remedial characteristics and become punishments).

When imposing compensatory damages, the goal is to reimburse the injured party for losses incurred as a result of the contemptuous conduct, including any direct financial harm and the burden of legal expenses incurred in seeking relief. *Jolen, Inc. v Kundan Rice Mills, Ltd.*, 2019 US Dist LEXIS 113763, (SDNY July 9, 2019, No. 19-cv-1296 (PKC)) "For compensatory sanctions, a court should reimburse the injured party for its actual damages. Though compensatory sanctions need not precisely match losses, the sanction should correspond at least to some degree with the amount of damages." (internal citations and quotations omitted) *Id.*, at *9. Compensatory sanctions may include an award of attorneys' fees and costs. In the Second Circuit, a finding of willfulness or bad faith is not required to award reasonable attorneys fees and costs; rather, such a finding "strongly supports granting them." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir.1996); *M. Harvey Rephen & Assoc., P.C. v. Chase Bank USA, N.A.*, 853 F App'x 690, 693 (2d Cir. 2021).

Courts have wide discretion to impose civil contempt sanctions for violations of injunction orders. Such sanctions are typically designed either to compel future compliance or to redress harms caused by past noncompliance. Commonly imposed remedies include:

a) Coercive fines to ensure future compliance. *Perfect Fit Indus. v. Acme Quilting Co.*, 673 F.2d 53, 56-57 (2d Cir. 1982); *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 103 (2d Cir. 2016);

b) Compensatory fines to redress the complainant for any losses sustained as a result of the contemnor's conduct. *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir.1979); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 6 (2d Cir. 1989);

c) Attorneys' fees and costs to reimburse the complainant for the costs and expense incurred in enforcing the injunction. *New York State Nat'l Org. for Women v. Terry*, 94 F. Supp. 2d 465, 469-70 (S.D.N.Y. 2000);

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

d) Daily sanctions until the contemnor complies with the injunction – an appropriate remedy for repeated or ongoing violations. *Matter of Dickinson*, 763 F.2d 84, 89 (2d Cir. 1985); and

e) Incarceration where monetary sanctions have proven insufficient to compel compliance. *In re Cueto*, 443 F. Supp. 857, 863 (S.D.N.Y. 1978).

**Requested Remedies:**

**I. Compensatory Sanctions to Redress the Contempt Violation**

*A. Repayment of the Improper Floorplan Loan (or Equivalent Accounting)* – The clearest financial consequence of Plaintiffs' contempt is the floorplan encumbrance they wrongfully placed on one of the injuncted vehicles. By reflooring the vehicle in violation of the Injunction, Plaintiffs presumably obtained some immediate financial benefit (access to loan funds or credit) while impermissibly encumbering an asset that was supposed to remain unencumbered. Equity and precedent dictate that Plaintiffs should not be allowed to retain any such benefit, nor leave in place any cloud or lien resulting from their contemptuous act. A compensatory sanction should therefore require Plaintiffs to undo the effects of the reflooring to the extent possible. Specifically, we urge the Court to order the Superb Plaintiffs to immediately pay off (satisfy) the floorplan loan that was taken out on the subject vehicle in violation of the Injunction, thereby removing the encumbrance. In the alternative, if the loan cannot be immediately discharged, Plaintiffs should be ordered to deposit with the Court an amount equal to the funds received from that reflooring transaction (or the outstanding loan balance), and to provide a complete accounting of all proceeds or financial gains they derived from it. This remedy is compensatory in nature: it will reimburse and protect the Defendants against the harm caused by the improper encumbrance, by ensuring that *Plaintiffs, not Defendants*, bear any financial burden or risk associated with that loan. It also prevents Plaintiffs from profiting from their contempt. Such relief aligns with the fundamental principle that contempt sanctions may "reimburse the injured party for [their] actual damages" or losses – here, the damage includes being deprived of the unencumbered vehicle and the added litigation required to address this issue. Requiring the payoff or posting of equivalent funds places the parties as closely as possible in the position they would have been had Plaintiffs obeyed the Injunction (with the vehicle free and clear of liens). Because there is concrete evidence of the loan and its amount, there is the necessary "proof of loss" or impact to justify this compensatory monetary sanction. We also note that this requested relief was explicitly sought in Defendants' contempt motion papers and falls well within the Court's authority to craft appropriate monetary remedies for contempt.

*B. Award of Attorneys' Fees and Costs* – In addition, the Deo Defendants request an award of their reasonable attorneys' fees and costs incurred in bringing the contempt motion. An award of fees serves the compensatory purpose of making Defendants whole for the expenses they should never have had to incur if Plaintiffs had complied with the Injunction. It is well established that courts may award attorney's fees as a sanction in civil contempt proceedings. While the Second Circuit has not definitively required a finding of willfulness or bad faith as a prerequisite, it has strongly indicated that willful disobedience of a court order should result in a fee award absent compelling reasons otherwise. Although this Court declined to hold Plaintiffs in criminal contempt based on an absence of proof of willfulness beyond a reasonable doubt, that decision does not preclude a finding of willfulness for civil contempt or awarding attorney's fees (nor; as already mentioned, is willfulness required). Indeed, the Second Circuit has made clear that a party's conscious disregard of a court order – particularly where the contemnor took no meaningful action to ensure compliance – satisfies the standard for awarding fees. See *Weitzman v. Stein*, 98 F.3d 717 (2d Cir. 1996); *M. Harvey Rephen & Assocs., P.C. v. Chase Bank USA, N.A.*, 853 F. App'x 690 (2d Cir. 2021). Here, Plaintiffs' violation was at the very least grossly negligent and without any valid excuse. The Plaintiffs made no effort whatsoever to communicate the terms of the Injunction to employees – an omission that directly enabled the post-Injunction encumbrance. As this Court noted, blaming an unnamed employee does not absolve the corporate plaintiff of responsibility. Indeed, the Court found that Plaintiffs were not "reasonably diligent" in attempting to comply with the Injunction. Such inaction constitutes the kind of deliberate indifference to a court order that the Second Circuit has found sufficient to justify an award of attorneys' fees and costs. Given the clear wrongfulness of the reflooring and the burden placed on Defendants to investigate it and seek relief, a fee award is plainly warranted. Such an award fits squarely within the compensatory function of civil contempt sanctions, reimbursing Defendants for the "reasonable legal costs of the victim of [the] contempt." Numerous courts have awarded fees and costs in similar situations to ensure that the contemnor does not shift the financial burden of their violation onto the innocent party (and to discourage flouting court orders in the first place). We respectfully request that Plaintiffs be ordered to pay the Deo Defendants' fees and expenses related to this contempt proceeding. If the Court grants this relief, Defendants will submit the required attorney affidavits and billing records to substantiate the amount, consistent with typical procedure.

**II. Coercive Sanctions to Secure Future Compliance**

In addition to compensatory relief, the Deo Defendants urge the Court to impose prospective, coercive measures to ensure that Plaintiffs fully comply with the Preliminary Injunction (and any further Court directives) henceforth. Civil contempt sanctions are intended, in part, to secure future compliance, and the Court enjoys broad discretion to design a remedy that will bring about compliance. The need for coercive measures is underscored

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

by Plaintiffs' conduct and attitude in this case: even after being enjoined, they proceeded to encumber a vehicle and then attempted to minimize that violation. Defendants remain concerned that without additional safeguards, Plaintiffs might again be tempted to treat the Injunction's prohibitions as pliable or to take actions with the remaining vehicles (or proceeds) that could undermine the Court's orders. The goal of the coercive sanctions outlined below is *not* to punish Plaintiffs, but to remove any opportunity or incentive for further non-compliance. Each proposed measure is narrowly tailored to the identified risk, and collectively they will ensure that the Injunction's purpose is carried out.

    ***A. Transfer of Titles and Keys to a Neutral Escrow Agent*** – First, Defendants request that the Court order Plaintiffs to surrender all original certificates of title (and any corresponding keys or documentation) for the injuncted vehicles to a Court-designated third party (such as a temporary receiver, escrow agent, or the Clerk of the Court) to hold in trust. This measure directly addresses the method by which Plaintiffs violated the Injunction in the first place – by exploiting their possession of the titles to obtain new financing. If Plaintiffs no longer control the titles, they cannot "refloor" or sell the vehicles without Court approval. The Injunction already required that the vehicles "remain" at the designated lots and not be sold, transferred, or "encumbered." Placing the titles in escrow is simply an added implementation of that existing command, to physically ensure compliance. Courts have the authority to direct such transfers of property in aid of compliance with injunctions – a power inherent in the broad equitable discretion to fashion remedies for contempt. Indeed, similar measures have been imposed in other cases to prevent further dissipation or encumbrance of disputed assets (for example, ordering funds to be held in escrow, or stock certificates to be deposited with the court, etc., when a party has violated an asset-freeze order). Here, requiring the titles to be held by a neutral third party is highly effective in bringing about compliance (satisfying the second *Dole* factor), because it removes any practical ability for Plaintiffs to deal in the vehicles in contravention of the Court's directives. The harm threatened by continued contumacy (first *Dole* factor) – i.e. the risk that vehicles could be secretly sold, further encumbered, or moved out of Defendants' reach – is significant in a case of this nature, and this escrow remedy squarely mitigates that threat. Moreover, the burden on the contemnors (third *Dole* factor) is minimal: holding title certificates in escrow does not dispossess Plaintiffs of the vehicles themselves beyond what the Injunction already lawfully requires, and it imposes at most a minor administrative inconvenience and expense (which Plaintiffs, as the violators, should bear). In sum, this relief is fair and amply justified to ensure Plaintiffs cannot repeat their contemptuous conduct. We note that the Defendants specifically requested the escrow of titles in their motion, reflecting the importance of this measure in our view. We urge the Court to grant it now that contempt has been found.

    ***B. Secure Storage and Proof of Insurance/Odometer Reporting*** – Defendants also ask that the Court reinforce the Injunction by ordering that all injuncted vehicles be kept at a

secure, third-party operated storage facility, rather than in Plaintiffs' sole control. Plaintiffs should be responsible for any costs of such storage and must continue to maintain insurance coverage on each vehicle, providing proof to the Court. Additionally, Defendants propose that Plaintiffs be required to submit periodic, date-stamped photographs showing each vehicle's odometer reading and its location in the storage[1]. These steps serve several purposes. They protect the assets (vehicles) from potential misuse or concealment; they provide a reliable means to verify compliance with the Injunction (the photos and odometer readings will confirm that the cars are present and not being driven or sold); and they further diminish the chance of any *unauthorized transfer*. This coercive measure is appropriate given the prior misconduct – Plaintiffs have demonstrated at least once that they might move vehicle without giving any notice. Housing the cars at a neutral site under Court oversight removes any doubt that Plaintiffs might attempt end-runs around the Injunction. Again, the Court clearly has authority to impose conditions on a contemnor's possession of property to ensure the integrity of the Court's orders. The proposed storage requirement is effective (it physically secures the vehicles) and imposes only a reasonable burden proportional to the gravity of Plaintiffs' contempt. If Plaintiffs object to the expense, they bear the burden of proving an inability to afford it – "The contemnor bears the burden of establishing a lack of financial resources to prevent imposition of monetary sanctions." *Jolen, Inc.*, No. 19-CV-1296 (PKC), 2019 WL 2949988, at *4. Here, given that Plaintiffs operated a multi-vehicle dealership and engaged in significant floorplan financing, and are able to afford multiple law firms to represent them simultaneously in various lawsuits pending in different courts, there is no indication that the modest costs of insurance and storage are beyond their resources. In any event, such costs are a direct consequence of their failure to abide by the original less-onerous requirement (simply leaving the cars unencumbered and on the designated lots). In crafting coercive sanctions, courts may consider the contemnor's resources to ensure the sanction is not excessive; here, this measure appears well within Plaintiffs' means and is necessary to forestall further harm. We therefore urge the Court to order these security measures.

    **C. Conditional Per-Diem Fines to Compel Compliance** – Finally, the Deo Defendants request that the Court employ a conditional fine to ensure that Plaintiffs promptly comply with the specific directives outlined above (repayment of the loan or deposit of funds, turnover of titles, placement of vehicles in secure storage, etc.). Specifically, we propose that the Court set a deadline by which Plaintiffs must complete the required actions, and stipulate that if Plaintiffs fail to meet their obligations by that date, a daily monetary fine will accrue for each day of non-compliance. The amount of the fine should be significant enough to motivate compliance (for example, a few thousand dollars per day, or an amount commensurate with the value of the vehicles or the loan amount), but not greater than necessary. The use of per-diem fines in civil contempt is well-established: "A per-diem fine is widely recognized as an effective coercive tool." *Raghavendra v. Trs. of Columbia Univ.*,

---

[1] Defendants also note that Plaintiffs have yet to comply with this Court's Prior Order concerning this issue (ECF 215) – noncompliance that formed the basis of a separate contempt motion, which remains pending before the Court (ECF 225).

06 cv 6841 (PAC)(HBP), 2017 WL 6000553, at *4 (S.D.N.Y. Dec. 1, 2017). Such fines put the contemnor in a position to *control their own fate*: if they obey the Court's order, they pay nothing; if they continue to defy, the financial penalty mounts. The Second Circuit and district courts have approved per-day fines to coerce compliance in a variety of contexts, recognizing that the contemnor can always purge the contempt and stop the fines by complying. Here, a conditional fine is appropriate because, unlike the measures above which secure the means of compliance, a fine directly incentivizes the contemnors to actually *follow through*. For example, if Plaintiffs were to drag their feet in turning over a title or repaying the loan, a running fine would make non-compliance increasingly costly, thereby encouraging swift cooperation. In assessing the *Dole* factors for a coercive fine: the threatened harm of non-compliance (vehicles remaining encumbered or at risk, court orders undermined) is substantial; a daily fine is likely effective given that Plaintiffs will wish to avoid open-ended financial liability; and there is no evidence that Plaintiffs (who engaged in sizable financial transactions underlying this case) lack the resources to pay a reasonably calibrated fine for a short period. We emphasize that the purpose of the fine would be purely coercive, not punitive – Plaintiffs can avoid any payment by timely compliance, and the fines would "end as soon as [the contemnor] ceases [the] contumacious behavior." *In Re Stockbridge Funding Corp.*, 158 B.R. 914, 918 (S.D.N.Y. 1993). The Court may also choose to have any collected fines payable to the Court (or to the aggrieved party) as further compensation, but the primary goal is to ensure the Court's orders are respected. We believe coupling the above structural remedies (escrow and storage) with a conditional fine creates a belt-and-suspenders approach that virtually guarantees no further violations will occur.

The Defendants are confident that the combination of remedies proposed above will be effective, but we stand ready to suggest further measures if needed to ensure Plaintiffs fully adhere to the letter and spirit of the Injunction.

## Conclusion

Plaintiffs' contempt of the Preliminary Injunction – even if they characterize it as a single "mistake" – is a serious matter that warrants meaningful judicial response. Court orders must be obeyed, and when they are not, the Court has both the power and the duty to protect the integrity of its decrees. Here, the Deo Defendants have been forced to expend time and resources to prove what Plaintiffs have now effectively conceded: that Plaintiffs violated a clear and unambiguous court order by encumbering, at least, one vehicle that should have remained unencumbered. The remedies we seek are not punitive; they are calibrated to remedy the harm, strip away any benefit obtained through non-compliance, and ensure that no further violations occur. The Supreme Court and Second Circuit have long affirmed that district courts possess inherent authority to issue contempt sanctions that achieve these ends. We therefore respectfully urge the Court to grant the requested relief in

LEVINE SINGH LLP

Attorneys:
Brian M. Levine Esq.+
Manijt Singh, Esq.+
Rosanna Ruotolo Esq.+*^
Andrew V. Poznanski, Esq.+*

+ Admitted in NY
^ Admitted in NJ
* Of Counsel

full. By ordering Plaintiffs to purge their contempt through the compensatory and coercive measures described above, the Court will uphold the rule of law, compel respect for its Injunction, and make the Deo Defendants whole for the trouble and risk unjustly imposed on them. Such an outcome is both warranted by the facts and supported by robust precedent in this Circuit.

Defendants thank the Court for its attention to this matter and are prepared to provide any additional information or evidence at the evidentiary hearing, to facilitate the Court's determination of appropriate damages and sanctions. We are confident that with the Court's intervention, compliance will be secured and the interests of justice served.

Respectfully Submitted,
LEVINE SINGH, LLP

*s/ Brian M. Levine*
Brian M. Levine

260 N. Broadway, Suite #2A
Hicksville, New York 11801
P. (347) 732-4428   P. (516) 597-4418   F. (917) 477-2273   www.levinesingh.com