# Sage Legal LLC

**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

<u>VIA ECF</u>                                                                                                               April 11, 2025
United States District Court
Eastern District of New York
<u>Attn</u>: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

      *Re:*    **Superb Motors Inc.**, *et al.* **v. Deo**, *et al.*
             **Case No.: 2:23-cv-6188 (JMW)**

Dear Judge Wicks:

      This firm represents Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team Auto"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team Auto, and Urrutia collectively hereinafter the "Superb Plaintiffs") in the above-referenced case. The Superb Plaintiffs write in accordance with this Court's March 21, 2025 Memorandum and Order (hereinafter the "Order") to submit the instant letter brief on issue of damages and remedies available to the Defendants for mistakenly flooring one (1) vehicle bearing VIN No.: ZARFAEDN3J7575105 on October 23, 2023 following the issuance of the September 29, 2023 Injunction ("Injunction") by the Hon. Orelia E. Merchant, U.S.D.J. ("Judge Merchant").

**<u>Legal Standard</u>**

      As this Court has held, "[t]he imposition of civil contempt sanctions *may* serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." See <u>Superb Motors Inc. v. Deo</u>, 2025 WL 896302 (E.D.N.Y. Mar. 21, 2025) (citing <u>Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs.</u>, 369 F.3d 645, 657 (2d Cir. 2004) ("<u>Paramedics</u>")) (emphasis added).

      The Court has the discretion to impose *either* compensatory *or* coercive sanctions as "[i]t is basic law that a civil contempt sanction must only be compensatory *or* coercive, and may not be punitive." <u>Id.</u> (citing <u>Gucci Am., Inc. v. Weixing Li</u>, 768 F.3d 122, 144 (2d Cir. 2014)) (emphasis added). For compensatory sanctions, "some proof of loss must be present to justify its compensatory aspects." See <u>Paramedics</u>, 369 F.3d at 658. For a coercive contempt sanction, the court has "broad discretion to design a remedy that will bring about compliance." <u>Id.</u> (citing <u>Perfect Fit Indus. v. Acme Quilting Co.</u>, 673 F.2d 53, 57 (2d Cir. 1982)). Exercise of the Court's discretion in determining an award of sanctions must be guided by several factors, including: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the noncompliance; and (4) whether the non-compliant party had been warned of the consequences of noncompliance." See <u>Funk v. Belneftekhim</u>, 861 F.3d 354, 366 (2d Cir. 2017). Critically, the "primary purpose" of a finding of civil contempt, and the imposition of related remedies, is "to coerce the contemnor into future compliance and to remedy past non-compliance, rather than to punish [the contemnor]." See <u>In re Dickinson</u>, 763 F.2d 84, 87 (2d Cir. 1985); see also <u>In re Chief Exec. Officers Clubs, Inc.</u>, 359 B.R. 527, 534 (Bankr. S.D.N.Y. 2007) ("purpose of civil contempt is to compel a … party to do what a court requires of him").

"For coercive sanctions, a court has broad discretion to design a remedy that will bring about compliance." See Holiday Park Drive, LLC v. Newist Corp., No. 23-CIV.-2623 (AMD) (JMW), 2024 WL 4802751, at *14 (E.D.N.Y. Nov. 15, 2024) (citations omitted). In doing so, the court must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." See Dole Fresh Fruit Co. v. United Banana Co., 821 F.2d 106, 110 (2d Cir. 1987) ("Dole").

"A sanction coerces a defendant when it 'forces the contemnor to conform his conduct to the court's order.'" See CBS Broad. Inc. v. FilmOn.com, Inc., 814 F.3d 91, 101 (2d Cir. 2016) (quoting New York State National Organization For Women v. Terry, 159 F.3d 86, 93 (2d Cir. 1998)); In Re Stockbridge Funding Corp., 158 B.R. 914, 918 (S.D.N.Y. 1993) (internal citations omitted) ("Coercive sanctions afford a contemnor an opportunity to purge his contempt, and end as soon as that contemnor ceases his contumacious behavior") (quoting Ochoa v. United States, 819 F.2d 366, 369 (2d Cir. 1987)); Aquavit Pharmacueticals, Inc. v. U-Bio Med, Inc., No. 19CV3351VECRWL, 2021 WL 4312579, at *23 (S.D.N.Y. July 16, 2021), report and recommendation adopted, 2021 WL 3862054 (S.D.N.Y. Aug. 30, 2021) ("In contrast to compensatory sanctions, which look to the past, coercive sanctions take aim at the future").

Crucially, "[t]he contemnor bears the burden of establishing a lack of financial resources to prevent imposition of monetary sanctions." See Jolen, Inc. v. Kundan Rice Mills, Ltd., No. 19-CIV.-1296 (PKC), 2019 WL 2949988, at *4 (S.D.N.Y. July 9, 2019).

## The Purged Contempt Constitutes Sufficient Sanctions & Vitiates a Need for a Hearing

In this case, as set forth in the Declaration of Robert Anthony Urrutia ("Urrutia Decl."), the Superb Plaintiffs accept responsibility for the inadvertent flooring of the one (1) vehicle following the issuance of the Injunction. As set forth in a prior declaration, Urrutia directed his staff to floor every single vehicle that returned to Superb's lot in order to restore his four (4) dealerships' operating capital prior to the issuance of the Injunction, which was sucked dry by the Deo Defendants' unlawful removal of those vehicles from Superb's lot. See ECF Docket Entry 220 at ¶¶ 18, 20, 23 (discussing reflooring of all vehicles upon return to Superb's lot).

Urrutia resides in Costa Rica and operated his dealerships by relying on his staff. Urrutia Decl. ¶ 10 n. 2. When the vehicles the Deo Defendants misappropriated were returned on September 8 and September 15 in 2023, Urrutia instructed his staff to refloor all the vehicles. Id. at ¶ 10. Because he had given that instruction and understood that it had been done prior to the Injunction, later, when the Injunction went into effect, Urrutia did not find it necessary to inform his staff not to do something that had already, to his knowledge, been done. Id. at ¶ 11. Later on, in October and November 2023, because Urrutia had more room at his Mitsubishi dealership in Hartford, CT, he directed his staff to move the Superb Injucted Vehicles there. Id. at ¶¶ 13-14.

Had Urrutia's staff informed him that they were going to floor a vehicle they previously neglected to refloor as instructed, he would have stopped them; regrettably, no one inquired of Urrutia and his staff floored the vehicle without discussing it with him. Id. at ¶ 19.

Team Mitsubishi-Hartford ("Team Mitsu") received $23,325.00 from reflooring this vehicle; an amount hardly worth risking contempt sanctions.[1] Id. at ¶¶ 21, 28-23. The amount received was used to fund operations of Urrutia's dealerships; Urrutia did not receive the funds personally. Id. at ¶¶ 21, 21 n. 5. Over the course of the operation of his dealerships, the balance due for this particular vehicle was paid down by $9,330.00 for a remaining balance of $13,995.00. Id. at ¶¶ 22, 25. In addition, Team Mitsu paid $2,537.46 in interest and insurance costs. Id. at ¶¶ 23-24. The Superb Plaintiffs are prepared to purge the contempt, which was achieved by borrowing the funds, by paying back to NMAC the $13,995.00 to pay off the floor plan line for this vehicle. Id. at ¶ 26. NMAC has indicated that they seek an Order from this Court permitting this transaction before providing payment instructions. Id. at ¶ 27.

As discussed in prior declarations, the Deo Defendants' conduct caused the demise of all four (4) dealerships owned by Urrutia. See ECF Docket Entries 204 at ¶¶ 38-41, 62-63, 73-81 and 220 at ¶¶ 17, 25-26, 34, 43-47. As a result, Urrutia is personally in dire financial straits; meanwhile, Superb and Team have nothing in their bank accounts. See Urrutia Decl. ¶¶ 44-46. The Superb Plaintiffs' prior firm, Milman Labuda Law Group PLLC, withdrew from representing them because of outstanding legal fees. See ECF Docket Entries 232 and 234. Urrutia currently has only approximately $2,500.00 in his personal bank account. See Urrutia Decl. ¶ 45. There is also no money in Superb's or Team's bank account. Id. at ¶ 47.

Because the primary purpose of contempt sanctions is to coerce compliance, and compliance with the Injunction has been achieved, no further sanctions are warranted. This is especially so in light of considering the factors necessary to determine whether contempt sanctions are warranted.

As to the first factor, it has been well demonstrated that non-compliance with the Injunction came about due to a miscommunication, not intentional conduct. As to the second factor, the finding of contempt alone was sufficiently effective to bring about compliance, whereby the Superb Plaintiffs have taken steps to purge their contempt, and the issuance of an Order will prompt NMAC to provide the Superb Plaintiffs with payment instructions such that they may pay off the balance on the inadvertently floored vehicle. As to the third factor, the non-compliance technically lasted from October 2023 until April 2025, but the Superb Plaintiffs have taken steps to purge the contempt in less than two (2) months upon its discovery despite the fact they do not have money the funds to do so and are required to borrow funds. Finally, there can be no dispute that the Superb Plaintiffs were never warned of any consequences for noncompliance.

In light of the foregoing analysis of the factors, the Deo Defendants are not entitled to any compensatory damages given Urrutia has purged the contempt and, further, because they cannot establish any prejudice whatsoever from the reflooring of the one vehicle.

---

[1] As set forth in prior declarations, Urrutia's Cross-Collateralized Dealerships' floor plan line of credit bore the brunt of paying just shy of $2M for the Superb Injunced Vehicles, depriving his remaining dealerships of operating capital. See ECF Docket Entries 204 at ¶¶ 17-22, 24-25, 38-39, 42 and 220 at ¶¶ 9-15, 17-20, 22-23, 25-26, 31-33, 40-42. In light of this, the $23,325.00 afforded by reflooring the one vehicle would not be worth the risk of violating a Court Order.

3

Moreover, the Deo Defendants falsely claimed that the Superb Plaintiffs refloored every vehicle in violation of the Injunction, relying on speculation and surmise rather than clear and convincing evidence as required the entire way, such that this Court should not reward them with attorneys' fees for a motion that has, by and large, failed to succeed. See ECF Docket Entry 231 at 27 ("The Court finds Plaintiffs are in civil contempt due to *the impermissible encumbrance of one car* after the injunction came into effect"), at 28 ("a late filing from NMAC seeking to intervene in this matter confirmed Plaintiffs' allegation that *only one car was moved* after the injunction came into effect. This additional evidence suggests that the remaining cars listed in the NMAC action were encumbered prior to the injunction"), at 28-29 ("Plaintiffs —based on the available evidence—*seemingly complied with the rest of the injunction*") (emphasis added). Given the complete lack of evidence supporting the broad and far-reaching allegations of contempt by the Deo Defendants – that all the vehicles were floored in violation of the injunction, and that many of the vehicles were driven in violation of the injunction – and the existence of an admitted violation as to only one vehicle, the Deo Defendants' largely unsuccessful motion for contempt as well as the demonstrated lack of willfulness by the Superb Plaintiffs does not support an award of compensatory damages.

This is because the factors required to be considered on such an application all militate in favor of declining an award of compensatory damages. First, character and magnitude of the harm threatened by the continued contumacy is relatively minimal in light of the broader aspects of this case, where the Superb Plaintiffs seek millions of dollars in compensatory damages against the $23,325.00 in impermissible flooring proceeds. Second, a coercive sanction of $13,995.00 will be highly effective in bringing about compliance with the Injunction, as it will restore things to the *status quo* and directly relates to the single finding of contempt compared to the approximately fifty distinct allegations of contempt that the Deo Defendants have failed to prove. Finally, because of the Superb Plaintiffs' poor financial condition, which was directly caused by the Deo Defendants, this Court should not impose any additional sanctions. See Urrutia Decl. ¶¶ 45-47.[2]

Based on the foregoing, no compensatory sanctions are warranted. To the extent that this Court finds that some form of additional contempt sanctions are warranted (which they are not in light of the Superb Plaintiffs' purging the contempt), any sanction should be issued solely to Superb. This is because it is a widely accepted principle of New York law that a corporation exists independently of its owner. See Morris v. N.Y.S. Dep't. of Taxation & Fin., 623 N.E.2d 1157, 1160 (N.Y.1993). Courts will only disregard the corporate form, or "pierce the corporate veil", of a corporation when it is necessary to prevent fraud or injustice, or when a parent dominates and controls a subsidiary. See, e.g., Carte Blanche (Singapore) Pte., Ltd. v. Diners Club Int'l, Inc., 2 F.3d 24, 26 (2d Cir.1993). Because there is on question here that the vehicle which was refloored was used by Urrutia's corporate entities, Urrutia should not be held personally responsible for any such contempt sanctions.

---

[2] Should this Court require evidence of the Superb Plaintiffs' lack of financial resources, they are prepared to make a submission for the Court's *in camera* review. See Ramgoolie v. Ramgoolie, No. 16-CV-3345 (VEC)(SN), 2020 WL 8838045, at *1 (S.D.N.Y. Mar. 16, 2020) ("on February 13, 2020, Judge Netburn authorized Defendant to submit evidence of his financial status *in camera* in support of his argument that he is unable to pay the remainder of the attorneys' fees award").

Finally, the Superb Plaintiffs respectfully submit that this Court should only remedy the single finding of contempt and not permit the Deo Defendants any relief beyond that. In a filing made earlier today, the Deo Defendants seek to impermissibly broaden the scope of contempt sanctions beyond the impermissible flooring of a single vehicle, which was not done willfully, by imposing obligations upon the Superb Plaintiffs that have nothing to do with that single vehicle. This is especially the case where the Deo Defendants' requests in this regard have been repeatedly made and denied, and because the Superb Plaintiffs are not in a financial position to effectuate the proposed measures, which are unnecessary in light of the fact that none of the risks raised have materialized in any form as this Court has not found any clear and convincing evidence of the broad contempt allegations made.

Based on Urrutia's preparedness to immediately purge the contempt, the relatively small amount at issue in relation to the millions of dollars at stake in this case, the Superb Plaintiffs respectfully submit a hearing on contempt sanctions is entirely unnecessary because no further contempt sanctions other than a coercive sanction of $13,995.00 are warranted. See Fed. R. Civ. P. 1 ("quote"); see also New York SMSA LP v. City of Rye, No. 19-CIV.-10159 (NSR), 2022 WL 2965981, at *9 (S.D.N.Y. July 27, 2022) (holding that although an evidentiary hearing is often necessary to resolve motions for contempt, "[n]o hearing is required ... where there are no material facts in dispute") (citing New York State Nat'l Org. For Women v. Terry, 697 F. Supp. 1324, 1330 n.6 (S.D.N.Y. 1988) (citations omitted)). The hearing previously scheduled for Friday, April 25, 2025 should therefore be cancelled, unless this Court is inclined to grant some form of additional contempt sanctions, in which case the Superb Plaintiffs are prepared to proceed with a hearing.

The Superb Plaintiffs thank this Court for its continued time and attention to this case.

Dated: Jamaica, New York
      April 11, 2025                         Respectfully submitted,

                                              **SAGE LEGAL LLC**
                                              By: */s/ Emanuel Kataev, Esq.*
                                              Emanuel Kataev, Esq.
                                              18211 Jamaica Avenue
                                              Jamaica, NY 11423-2327
                                              (718) 412-2421 (office)
                                              (917) 807-7819 (cellular)
                                              (718) 489-4155 (facsimile)
                                              emanuel@sagelegal.nyc

                                              *Attorneys for Plaintiffs*
                                              *Superb Motors Inc.*
                                              *Team Auto Sales LLC, &*
                                              *Robert Anthony Urrutia*

**VIA ECF**
All counsel of record