UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA CONCERNING <u>CONTEMPT SANCTIONS</u>**

                              Plaintiffs,

          -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

                              Defendants.

---------------------------------------------------------------X

          Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury,

that the following is true and correct:

1.      I am the majority shareholder and President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4.      I respectfully submit this declaration to aid the Court in determining the appropriate contempt sanction for violating the Hon. Orelia E. Merchant, U.S.D.J.'s ("Judge Merchant") Injunction.

5.      As set forth further below and discussed in the accompany letter brief submitted by my attorney, only a coercive sanction is appropriate as the Deo Defendants cannot establish the existence of any compensatory damages.

**A Coercive Sanction is Appropriate in Light of this Court's Finding of Contempt**

6.      I cannot express to this Court my disappointment and dismay in discovering that a single vehicle had been refloored after the issuance of Judge Merchant's injunction.

7.      I take to heart this Court's finding that burying one's head in the sand and blaming an unnamed employee is not an excuse for violating a court order.

8.      However, I respectfully wish to emphasize the circumstances under which it occurred as I am advised it is relevant to this Court's determination of the appropriate sanction.

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford ("Team Mitsu") in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

9.      As discussed in my prior declaration, I needed the vehicles that the Deo Defendants impermissibly took from Superb's lot back so I could refloor them.  See ECF Docket Entries 204 at ¶¶ 17-22, 24-25, 38-39, 42 and 220 at ¶¶ 9-15, 17-20, 22-23, 25-26, 31-33, 40-42.

10.     Upon getting all of the vehicles back, I instructed my staff to do so and – as far as I understood – they had done so; I did not personally[2] check as I entrusted Bruce Novicky ("Novicky"), my Chief Operating Officer, to make sure that all my directives were fulfilled.

11.     As a result, when Judge Merchant's injunction came in, I saw no need to ensure my staff knew that the vehicles could not be floored as of September 29, 2023 as I understood that all of the vehicles were *already* refloored prior to that date.

12.     Critically, when the vehicles were returned, we received them at the Superb lot.

13.     However, with the inability to sell them pursuant to this Court's September 15, 2023 Order (an obligation that I, of course, honored), I had all of these vehicles moved to Volkswagen of Freehold, which is one of the four Urrutia Cross-Collateralized Dealerships.

14.     The vehicles remained there until on or about October 26, 2023, whereupon I decided that some[3] of the Superb Injuncted Vehicles should be moved to my Hartford lot (which is larger than my Volkswagen lot).

15.     I did not know that the subject vehicle was floored on October 26, 2023 until after it came to light in defending the Deo Defendants' contempt application earlier this year.

---

[2] I have lived in Costa Rica since March 2022, shortly after I purchased Superb in July 2021.  I only partnered with Deo in December 2022, well after I moved to Costa Rica.  Because I reside out of the country, I relied on my staff to run the operations of my dealerships.

[3] The remaining Superb Injuncted Vehicles were moved from Volkswagen of Freehold to Team Mitsubishi-Hartford in late November 2023.

16.     In fact, I set out to obtain the dates all the vehicles were floored because I was 100% positive that they were not floored in violation of Judge Merchant's injunction.

17.     Other than myself and Novicky, there were three (3) additional employees who had the ability to floor vehicles: Kendra Kernizant, Chastity Mercado, and Samantha Bink.

18.     Although I have been unable to reach Mmes. Mercado and Bink, I did speak to Ms. Kernizant and she vaguely recalls that she may have been the one who floored the vehicle.

19.     Had my staff informed me that they were going to floor a vehicle they previously neglected to refloor as instructed, I would have been able to stop them; regrettably, no one inquired with me and floored the vehicle without discussing it with me.

20.     The vehicle that was floored was a 2018 Alfa Romeo Giulia.  See copy of floor plan summary and spreadsheet[4] summarizing the October 26, 2023 transaction annexed hereto as **Exhibit "A."**

21.     The amount provided to Team Mitsu under the floor plan line of credit was $23,325.00, and was used for its operations.[5]  Id.

22.     From November 15, 2023 until June 14, 2024, Team Mitsu paid down the amount floored by $9,330.00.  Id.

23.     To date, I have incurred $2,449.52 in interest for the vehicle.  Id.

24.     Similarly, to date, I have incurred $87.94 in insurance costs for the vehicle.  Id.

25.     The remaining balance on the vehicle is $13,995.00.  Id.

---

[4] These documents were produced by Nissan Motor Acceptance Company LLC d/b/a NMAC ("NMAC") pursuant to a subpoena.  See copy of subpoena and accompanying Rule 45(a)(4) notice annexed hereto as **Exhibit "B."**

[5] I did not personally receive any money from these funds.

26.     Since the vehicle should not have been refloored, and because I wish to accept responsibility for this violation, I am prepared to pay down the remaining balance due on the vehicle in the amount of $13,995.00, which funds I have borrowed.

27.     I have asked NMAC to provide me with payment instructions, but have been advised that NMAC seeks an Order from this Court permitting the proposed transaction so that I can purge the contempt in an abundance of caution.

28.     I also wish to emphasize to the Court that the flooring of the vehicle was truly inadvertent, and that I would never intentionally violate an Order of this Court.

29.     To demonstrate this, I would like for the Court to understand the "big picture" of what was going on in October 2023.

30.     I was forced to use all my working capital for all four (4) of my dealerships to make payoffs to NMAC and Next Gear Capital Corp. due to the Deo Defendants' conduct,[6] which resulted in the loss of approximately $1,900,000.00 with: (i) about $1,600,000.00 as a direct result of the Deo Defendants' conversion of the vehicles to another lot for the grand opening of their competing dealership; and (ii) around $300,000.00 due to the Deo Defendants' double-flooring.

31.     While the return of the vehicles helped me return approximately $1,000,000.00 of my operating capital, as this Court knows, the Deo Defendants are still holding over $500,000.00 hostage by virtue of the fact they remain in possession of the Deo Injuncted Vehicles, which – again – Superb paid for.

32.     Since September 2023, I have paid down the floor plan line of credit with curtailments, interest, and insurance costs of over $600,000.00 *solely for the injuncted vehicles*.

---

[6] These figures relate solely to the injuncted vehicles and not Superb's dealership operations as a whole.

33.     I make this point to emphasize that I would not have jeopardized my standing with this Court, as well as my honesty and integrity – which is everything I stand for – over $23,000.00, when at that time I was still able to sell cars and use the floor plan line of credit properly to purchase vehicles for resale.

34.     Based on the foregoing, I respectfully submit that this Court's contempt sanction should be limited to a coercive sanction of $13,995.00.

35.     Indeed, doing so would establish compliance with this Court's Order, remedy the violation, and re-establish the *status quo*.

**This Court Should Exercise its Discretion Against Awarding Any Compensatory Sanctions**

36.     I am advised that this Court has the discretion to choose between coercive sanctions, compensatory sanctions, or both.

37.     I respectfully submit that only coercive sanctions of $13,995.00 are necessary and that no compensatory sanctions be issued for the following reasons.

38.     First, as is demonstrated by the documents produced by NMAC in response to the subpoena, I have complied with the floor plan line of credit by paying for the vehicle.

39.     The Deo Defendants never paid for the vehicle, neither in acquiring it nor maintaining the floor plan line of credit related to it; Superb did.

40.     They have therefore suffered no prejudice in relation to the conduct which this Court has found the Superb Plaintiffs in contempt for.

41.     Moreover, the Deo Defendants repeatedly lied in their motion that I floored *all* the vehicles in violation of the Injunction when this Court has found that this was not the case.

42.     In essence, the Deo Defendants went on a fishing expedition for contempt and caught a guppy instead of the whale they were searching for.

6

43.     Because the Deo Defendants have repeatedly failed to establish any right, title, or interest to any of the injuncted vehicles, despite multiple opportunities to do so, this Court should deny compensatory damages for this reason alone.

44.     To add insult to injury, based on the motion to withdraw filed by the Deo Defendants' counsel, they have not even paid their own attorneys for their work in this case.

45.     Further, I am personally in dire financial straits, with approximately $2,500.00 in my personal bank accounts.

46.     As such, I am in no position to have to personally pay any compensatory damages.

47.     In addition, both Superb and Team no longer have any funds in their respective bank accounts.

48.     Moreover, every action that I undertook related to the contempt was in my capacity as an owner of Superb, Team, and Team Mitsu (as well as my other dealerships), and not me personally.

49.     Based on the foregoing, this Court should decline to issue any compensatory damages, including attorneys' fees.

50.     I humbly thank this Court for its time and attention to this case.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 11, 2025.



Robert Urrutia (Apr 11, 2025 13:10 EDT)

Robert Anthony Urrutia