# LEASE AGREEMENT
## BY AND BETWEEN

## NEW PARK AVENUE ASSOCIATES, LLC
## ("LANDLORD")

## AND

## THE HARTFORD AUTO GROUP INC.
## ("TENANT")

Dated: September 1, 2016

**Premises Address:**

**398-412 New Park Avenue, Hartford, Connecticut 06160**

# LEASE AGREEMENT

**THIS LEASE**, is made and entered into this 1st day of September, 2016 (the "Lease Execution Date"), by and between, New Park Avenue Associates, LLC, A Connecticut Limited Liability Corporation, with a principal place of business at 223 Broad Street, Forestville, Connecticut (hereinafter called "Landlord"), and The Hartford Auto Group, Inc., a Connecticut corporation, with an office and principal place of business at 505 North Colony Road Wallingford, Connecticut, (hereinafter called "Tenant").

Now, therefore, in consideration of the mutual promises and covenants contained herein and in consideration of the obligations assumed by Landlord and Tenant herein, the parties agree that Landlord does hereby let to Tenant and Tenant does hereby lease and take from Landlord, the premises hereinafter described to use for the business purposes consisting of the establishment and operation of an automobile sales franchise and/or dealership and for purposes incidental thereto or for such other lawful purpose as the Landlord may consent to which consent shall not be unreasonably withheld pursuant to the terms described herein, upon all of the terms, promises, covenants and agreements hereinafter set forth.

WITNESSETH:

## ARTICLE I. GRANT AND TERM

**1.1    Demised Premises.** Landlord hereby demises and leases to Tenant and the Tenant hereby hires and rents from Landlord that certain premises being the land and improvements thereon, (excluding the Riley Building which is to be removed by Landlord as soon as is practical but in no event later than January 31, 2017. Said removal shall be the financial responsibility of Landlord which shall be accomplished in a workmanlike manner. Landlord shall supply tenant with a standard "Hold Harmless/Indemnity Agreement" to be approved by Tenant's attorney. Landlord further agrees to supply Tenant with evidence of adequate casualty and workman's compensation insurance prior to commencement of the demolition), located on the premises known as 398-412 New Park Ave. Hartford, CT and more particularly described in Schedule A attached hereto and made a part hereof (the "Demised Premises").

**1.2    Commencement of Term.** The effective date of this Lease under which Tenant shall be entitled to occupy the Demised Premises pursuant to the terms and conditions set forth in this Lease hereinafter referred to as the "Commencement Date" shall be September 1, 2016.

**1.3    Length of Initial Term.** The initial term of the Lease shall be for seven (7) years commencing on September 1, 2016 and ending on August 31, 2023. ("Initial Term"). Notwithstanding the foregoing, Tenant shall be bound by all provisions of this Lease, from the date of the first occupancy of the Demised Premises by Tenant or its agents for any purpose prior to the Commencement date.

**1.4    Extension Options.** Absent the occurrence and continuation of a Tenant Default at the time of notice to Landlord and at the time an extension term commences, Tenant shall have the option to extend the Lease Term for four (4) term(s) of five (5) years each (referred to herein as the "Extension Terms"). To exercise the extension options, Tenant shall give Landlord written notice that Tenant is exercising such option at least ninety (90) days prior to the anniversary of the commencement of the then current term of the Lease. Should Tenant decide to not exercise its renewal options, the Landlord has the right to show the Demised Premises to prospective tenants with prior notice to the Tenant.

**1.5    Contingencies.**

Omitted Intentionally.

### ARTICLE II. CONSTRUCTION AND CONDITION OF THE LEASED PREMISES

**2.1**  Except for the Landlord's Work defined below, Tenant is accepting the Demised Premises in "as is" condition. Tenant agrees that it has inspected the Demised Premises and that except as set forth in Section 11.2 of this Lease neither the Landlord nor any agent or employee of the Landlord has made any representation or warranty with respect to the Demised Premises or the suitability of same for the conduct of Tenant's business or use. Tenant warrants and represents that it has inspected the Demised Premises and the condition thereof and, except for the Landlord's work defined below and the removal of the Riley Building set forth in Section 1.1 of the Lease, agrees to accept the Demised Premises in "as is" condition, Landlord shall have no obligation to improve the Demised Premises in any way except as specifically provided hereunder.

Landlord shall perform, at its sole expense the repairs described below ("Landlord's Work"):

- Patch hole in lot by service entrance

- Repair broken sidewalk by Hummer entrance

Landlord's Work will be completed on or before forty five (45) days following the Lease Execution Date.

Other than the Landlord's Work and the removal of the Riley Building set forth in Section 1.1 of the Lease, any improvements, alterations or additions to the Demised Premises including, but not limited to new signs, are to be made by Tenant at its sole cost and expense and shall be subject to the written approval of Landlord, which will not be unreasonably withheld. Landlord agrees to allow any reasonable modifications to the Demised Premises in order to meet the criteria for a Mitsubishi automobile dealer franchise. Tenant warrants that all work done by it to and upon the Demised Premises will be performed in a good and workmanlike manner, using first class materials, and in strict accordance with applicable law.

### ARTICLE III. CONDUCT OF BUSINESS BY TENANT

**3.1**  The Tenant shall have the right to use and occupy the Demised Premises for the business purposes consisting of the establishment and operation of an automobile sales franchise and/or dealership and for purposes incidental thereto or for such other lawful purpose as the Landlord may consent to which consent shall not be unreasonably withheld, and will comply with all lawful governmental requirements in connection with such use and purposes.

### ARTICLE IV. TENANT'S FIXTURES AND IMPROVEMENTS

**4.1**  Provided the Tenant obtains the prior written consent of the Landlord which shall not be unreasonably withheld, the Tenant may at its own cost, make such alterations, improvements and additions to the Demised Premises as shall be reasonably required to adapt the same for the authorized use thereof as provided in Section 3.1 above. Any alterations, additions or improvements to the Premises made by the Tenant shall immediately become the property of the Landlord and shall remain upon and be surrendered with the premises as a part thereof at the end of the term. Nothing herein contained, however, shall preclude the

2

Tenant from removing from the Demised Premises its own removable furniture, trade fixtures, appliances and equipment provided such removal can be accomplished without damage or injury to the leasehold.

**4.2** Tenant shall promptly pay all contractors and materialmen hired by Tenant to furnish any labor materials which may give rise to the filing of a mechanic's lien against the premises. Should any such lien be made or filed, Tenant shall bond against or discharge the same within thirty (30) days after receipt of written request by Landlord.

**4.3** Landlord agrees that, within ten (10) days after receipt of written request from Tenant, it will join in any and all applications for permits, licenses or other authorizations required by any governmental or other body claiming jurisdiction in connection with any work which the Tenant may be hereunder, and will also join in any grants for easements for electric, telephone, gas, water, sewer and such other public utilities and facilities as may be reasonably necessary in the operation of the Demised Premises or any improvements that may be erected thereon.

## ARTICLE V. SIGNS

**5.1** Tenant will not place or maintain on any portion of the exterior of the Leased Premises any signs, awning, or canopy, or advertising matter or other thing of any kind in violation of zoning regulations.

### Article VI. MAINTENANCE AND REPAIRS OF LEASED PREMISES

**6.1** Maintenance of Demised Premises. During the Initial Term of this Lease, and any option periods, except for the roof, foundation, exterior walls and structural steel members, which shall be the responsibility of the Landlord, the Tenant shall at all times keep in good order, condition and repair the entire Demised Premises, including without limitation, the exterior entrances, all glass and show window moldings, and all partitions, doors, interior walls, fixtures and equipment and appurtenances thereto, including lighting, heating and plumbing fixtures and systems and any air conditioning system; and no replacement of any such systems, if necessary. Said maintenance shall also include, without limitation, periodic painting as is reasonably necessary. Landlord represents for the purpose of this Section 6.1 that the entire Demised Premises are in good order, condition and repair as aforesaid on the date hereof.

**6.2** If Tenant refuses or neglects to make any such repair within the prescribed time for curing of defaults under this Lease, after written demand to cure for failure to make a repair from Landlord, Landlord may make such repairs, and upon completion thereof, Tenant shall pay Landlord's cost for making such repairs upon presentation of a bill thereof as additional rent.

**6.3** At the expiration of the tenancy hereby created, Tenant shall surrender the Demised Premises in good condition, reasonable wear and tear excepted, and damage by unavoidable casualty excepted, and shall surrender all keys for the Demised Premises to Landlord at the place then fixed for the payment of rent and shall inform Landlord of all combinations on locks, safes and vaults, if any, in the Demised Premises. Tenant shall remove all of its trade fixtures before surrendering the premises as aforesaid and shall repair any damage to the Demised Premises caused thereby. Tenant's obligation to observe or perform this obligation shall survive the expiration or other termination of the term of this Lease.

### Article VII.   INSURANCE, DESTRUCTION OF IMPROVEMENTS AND INDEMNITY

**7.1   Hazard Insurance.**   The Tenant shall, at the Tenant's sole cost and expense at all times during the term of this lease, keep all buildings and improvements upon the demised premises and all equipment, fixtures, motors, and machinery therein, and all additions thereto and replacements thereof, insured against loss, damage, and destruction by fire, and such other hazards as are covered by and protected against under policies of insurance commonly referred to and known as "extended coverage insurance", said insurance to be in an amount of the actual cash value replacement cost of the insurable buildings, improvements and equipment. Coverage may be provided under a blanket insurance policy carried by Tenant. Said policies of insurance shall be carried in companies authorized to do business in the jurisdiction in which the demised premises are located. Such insurance policies shall be written such that Landlord and Tenant are named as an insured party and loss payee. In the event that the Demised Premises shall at any time be during the term of the Lease be damaged by fire, flood, tornado or the elements or otherwise, Tenant shall, at Tenant's expense repair said damage and restore the demised Premises to its original condition. Landlord agrees that insurance proceeds shall be used therefor. Any unexpended funds shall be the property of the Tenant.

**7.2   Liability Insurance.**   The Tenant shall maintain with respect to the Demised Premises a policy of comprehensive liability that names the Landlord as an insured party. During the Initial Term of the Lease, such policy shall be in an amount of at least FIVE MILLION AND 00/100 ($5,000,000.00) DOLLARS. If the Tenant exercises its option to renew the Lease, at the commencement of the Extension Term of the Lease, Tenant shall have such insurance reviewed by a licensed insurance agent of a major insurer in the State of Connecticut to determine insurance requirements and adequate policy amounts. All policy limits are subject to Landlord's approval, which approval shall not be unreasonably withheld.

### ARTICLE VIII. UTILITIES

**8.1**   From and after the date upon which Landlord delivers to Tenant possession of the Demised Premises, Tenant shall be solely responsible for and promptly pay all charges for heat, water, gas, electricity or any other utility used or consumed in the Demised Premises. In the event that the local water authority bills landlord for the water consumed by Tenant in the Demised Premises and Landlord becomes obligated to pay said water authority for said consumption by Tenant, then Landlord shall have the right to bill Tenant for Tenant's water use in accordance with the rate schedule and minimum service charge utilized by said water authority. Tenant shall pay Landlord as additional rent its water use charge within thirty (30) days after receipt by Tenant of a bill thereof. It is expressly agreed and understood that Landlord shall not be liable to Tenant for any interruption or suspension of utility services.

### ARTICLE IX. ESTOPPEL STATEMENT, ATTORNMENT, SUBORDINATION

**9.1   Estoppel Statement.**   Within ten (10) days after request thereof by Landlord, or in the event that upon any sale, assignment or hypothecation of the Demised Premises and/or the land thereunder by Landlord an offset statement shall be required from Tenant; Tenant agrees to deliver in recordable form a certificate to any proposed mortgagee or purchaser, or to Landlord, certifying (if such be the case) that this Lease is in full force and effect and that there are no defenses or offsets thereto, or stating those claimed by Tenant.

**9.2 Attornment.** Tenant shall, in the event any proceedings are brought for the foreclosure of, or in the event of exercise of the power of sale under any mortgage made by the Landlord covering the Leased Premises, attorn to the mortgagee in the event of strict foreclosure or to the purchaser upon any such foreclosure or sale and recognize such mortgagee or (as the case may be) purchaser as the Landlord under this Lease.

**9.3 Subordination.** Upon request of the Landlord, Tenant will subordinate its rights hereunder to the lien of any mortgage now or hereafter placed upon the land of which the Demised Premises are a party, and to all advances made or hereafter to be made upon the security thereof provided the Tenant has received a non-disturbance agreement from the mortgagee in form and substance agreeable to the Tenant providing that its interests shall not be affected by any such action. The word "mortgage" as used herein includes mortgage, deeds of trust or similar instruments and modifications, consolidations, extensions renewals, replacements or substitutes thereof.

**9.4 Attorney-in-Fact.** The Tenant, upon request of the party in interest, shall execute promptly such instruments or certificates to carry out the intent of Sections 9.2 and 9.3 above as shall be requested by the Landlord. If fifteen (15) days after the date of a written request by th Landlord to execute such instruments and delivery of the non-disturbance agreement agreeable to the Tenant, the Tenant shall not have executed the same, the Landlord may, at its option, cancel this Lease without incurring any liability on account thereof, and the term hereby granted is expressly limited accordingly.

**9.5** Tenant agrees to give any mortgagee of the premises within which the Leased Premises are a part which may in writing so request a duplicate notice of any letter to Landlord alleging a default by Landlord under this Lease and Tenant agrees that such mortgagee shall, thereafter have a reasonable time to correct or cure such default, as well as, Landlord, either such performance to be accepted by Tenant.

### ARTICLE X. ASSIGNMENT AND SUBLETTING

**10.1 Consent Required.** Tenant will not assign this Lease in whole or in part, nor sublet all or any part of the Leased Premises, without the prior written consent of the Landlord in each instance, which consent shall not be unreasonably withheld. The consent by Landlord to any assignment or subletting shall not constitute a waiver of the necessity for such consent to any subsequent assignment or subletting. Notwithstanding any assignment or sublease, Tenant shall remain primarily liable on this Lease during the term of this Lease and any extensions thereof and shall not be released from performing any of the terms, covenants and conditions of this Lease, but Tenant and such assignee shall thereafter be jointly and severally liable for the full and faithful performance of the obligations of Tenant under this Lease. If the Tenant is a corporation, the sale or transfer of fifty-one (51%) percent or more of its voting stock shall be deemed an assignment for purposes of this Article X.

### ARTICLE XI.   WASTE, HAZARDOUS SUBSTANCES AND GOVERNMENTAL REGULATIONS

**11.1 Nuisance or Waste.** Tenant shall not commit or suffer to be committed any waste upon the Demised Premises. Tenant shall not allow hazardous substances to spill upon or contaminate the Demised Premises and will indemnify Landlord and save him harmless from all damages resulting from any such spill or

5

contamination. The Tenant shall have no responsibility or liability to Landlord or any other party for any such condition existing on the Premises on the Commencement Date.

**11.2  Compliance with Laws.** Tenant shall at Tenant's sole cost and expense, comply with all of the requirements of all county, municipal, state, federal and other applicable government authorities, now in force, or which may hereafter be in force, pertaining to the Demised Premises, and shall obey all municipal and county ordinances and federal and state statutes now in force or which may hereafter be in force as they apply to Tenants use and occupancy. Tenant shall have no obligation to so comply as to any condition existing on the Demised Premises as of the Commencement Date including but not limited any environmental condition. The Landlord represents, to the best of his knowledge, that as of the Commencement Date, the Premises comply with all such requirements, that the Premises contain no hazardous wastes or materials or asbestos and that there are no outstanding orders or judgment by any agency or court affecting the Demised Premises.

The Tenant shall have the right to contest by appropriate legal proceedings, without cost or expense to the Landlord, the validity of any law, order, ordinance, rule, regulation or requirement of the nature herein referred to, and if by the terms of any such law, ordinance order, rule or regulation or requirement compliance therewith may legally be held in abeyance without the incurrence of any lien charge or liability of any kind against the fee of the demised premises or the Tenant's leasehold interest in said premises, and without subjecting the Tenant or the Landlord to any liability of whatsoever nature for failure so to comply therewith, the Tenant may postpone compliance therewith until the final determination of any such proceedings, provided that all such proceeding shall be prosecuted with due diligence and dispatch.

### ARTICLE XII.   EMINENT DOMAIN

**12.1  Total Condemnation of Demised Premises.** If the whole of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the term of this Lease shall cease and terminate as of the date of title vesting in such proceeding and all rentals shall be paid up to date.

**12.2  Partial Condemnation of Demised Premises.**

(a) If twenty (20%) percent or more of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, then the Tenant shall have the option to cancel and terminate this Lease upon notice thereof given to the Landlord within ninety (90)days after the vesting of title in such proceedings.

(b) In the event that less than twenty (20%) percent of the Demised Premises shall be acquired or condemned by eminent domain for any public or quasi-public use or purpose, or in the event that twenty (20%) percent or more of the Demised Premises shall have been so taken, and Tenant shall not elect to terminate this Lease as set forth above, then the Landlord shall promptly restore the Demised Premises to a condition reasonably comparable under the circumstances to its condition at the time of such condemnation, less the portion lost in the taking; and this Lease shall thereafter continue in full force and effect. In such event of a partial taking, described hereinabove, from the effective date that physical possession is taken by the condemning authority through the end of the term of this Lease, the annual rental payable by the Tenant to Landlord under Section18.1 of this Lease shall be reduced by a fraction, the numerator of which shall be the

6

gross area of the Demised Premises so taken by the condemning authority and the denominator of which shall be the gross area of the Leased Premises on the date immediately prior to the effective date of such taking.

**12.3** In the event of any taking, partial or whole, under the provisions of Section 12.1 and 12.2, all of the proceeds of such award, judgment or settlement shall be and remain the sole and exclusive property of the Landlord, and Tenant shall not be entitled to any portion of such award, judgement or settlement. Tenant, however, may pursue its own claim against the condemning authority for any damages r award permitted under the applicable laws.

### ARTICLE XIII.  DEFAULT OF THE TENANT

**13.1** If, during a term of this Lease, the Tenant shall default in the payment of the base rent obligations, or shall make default in the payment of any item of additional rent, or any part of the same, and such default is not remedied and shall continue for sixty (60) days after written notice thereof by the Landlord to the Tenant, or if such default is not capable of being remedied within such time and the Tenant does not begin and proceed with due diligence to remedy such default within a reasonable time, the Landlord shall have the option of declaring the Lease terminated upon giving sixty (60) days' written notice to the Tenant of its election so to terminate; and if such latter notice is given, the terms hereof shall cease, determine and expire, except as hereinafter provided in this Article, at the expiration of said sixty (60) days as though such date of termination were originally set for the expiration hereof, and the Tenant's obligations hereunder, except for the payment of past due rentals, shall cease and determine, and Tenant shall have be under no further obligations to Landlord hereunder.

### ARTICLE XIV.  TENANT'S PROPERTY

**14.1** **Taxes on Leasehold.** Tenant shall be responsible for the timely payment of any and all municipal, county or state taxes assessed during the term of this Lease against the Demised Premises or any of the personal property being used and/or stored thereon. In the event Landlord receives any billing for said taxes and elects to pay them directly to the taxing authority, the Tenant agrees to reimburse Landlord for such payment within fifteen (15) days after being presented with said billings. Tenant shall be responsible for the payment of late fees that may be assessed against the Demised Premises during the Lease Term. Pursuant to Section 18.2 of this Lease, Tenant shall pay the real estate taxes in advance in amount of 1/12 of the taxes per month.

### ARTICLE XV.    HOLDING OVER, SUCCESORS

**15.1** **Holding Over.** Any holding over after the expiration of the term hereof, with the consent of the Landlord shall be construed to be a tenancy from month to month on the terms and conditions herein specified, so far as applicable, except that during any such holdover period the rent is effect at the expiration of the term hereof shall be increased proportionately with the aggregate increase during the term of this Lease in the United States Bureau of Labor Statistics Price Index for all Items (Urban).

7

**15.2  Successors.** All rights and liabilities herein given to, or imposed upon, the respective parties hereto shall extend to and bind the several respective heirs, executors, administrators, successors, and assigns of the said parties.

### ARTICLE XVI. QUIET ENJOYMENT

**16.1  Landlord's Covenant.**  Upon payment by the Tenant of the rents herein provided, and upon the observance and performance of all the covenants, terms and conditions on Tenant's part to be observed and performed, Tenant shall peaceably and quietly hold and enjoy the Leased Premises for the term hereby demised without hinderance or interruption by Landlord or any other person or persons lawfully or equitably claiming by, through or under the Landlord, subject nevertheless to the terms and conditions of this Lease, and subject to restrictions and easements or other matters as of record appear.  Landlord hereby agrees that his breach of the provisions of this Section entitle the Tenant to legal and equitable remedies to compensate for this breach.

### ARTICLE XVII: NOTICES

**17.1  Notice.** All notices required or permitted to be given by either party to the other under this Lease shall be effective only if given in writing and delivered by certified mail or registered mail, return receipt requested, addressed as follows or to such other address as either party may, from time to time, designate by notice given to the other party pursuant to this Paragraph. Notice shall be deemed to have been given as of the date mailing as shown on the post office receipt thereof:

| | |
|---|---|
| TO THE LANDLORD: | New Park Avenue Associates, LLC<br>Attn: Ken Crowley<br>PO #6000<br>Bristol, CT 06011 |
| COPY TO: | Atty. Paul J. Shea<br>104 Woodfield Rd.<br>Middlebury, CT 06762 |
| TO THE TENANT: | The Hartford Auto Group Inc.<br>505 North Colony Road<br>Wallingford, CT 06492 |
| COPY TO: | John F. Conway, Esquire<br>Loughlin Fitzgerald, PC<br>150 South Main Street<br>Wallingford, CT 06492 |

8

**ARTICLE XVIII: RENT**

**18.1    Base Rent.** The Landlord and the Tenant agree that in consideration for the improvements to the Demised Premises to be paid for and performed by the Tenant there shall be no Base Rent due for the first five months of the Initial Term of the Lease, with Tenant's first monthly Base Rent payment being due on February 1, 2017. On February 1, 2017 and for each month thereafter during the Initial Term, Base Rent payable monthly by Tenant to Landlord for each month of the Initial Term shall be Thirteen Thousand and 00/100 ($13,000.00) Dollars paid on the first (1st) of every month in accordance with the amounts set forth in Exhibit B attached hereto and incorporated herein. The monthly rent for each Extension Term shall be adjusted upward as set forth in the attached Exhibit B which is hereby incorporated and made a part of this paragraph of the Lease. Landlord acknowledges having received the sum of Fifty Thousand and 00/100 ($50,000.00) Dollars from Tenant upon the execution of this Lease which sum shall be non-refundable, but shall be applied to Tenant's Base Rent **only** payment obligations for February, March, April 2017 and a prorated portion of May, 2017.

**18.2  Additional Rent Based Upon Real Estate Taxes.** As Additional Rent, Tenant shall pay Landlord the annual real estate taxes and assessments assessed and levied against the Demised Premises on the first (1st) day of each month, in advance, in a sum equal to one-twelfth (1/12th) of the annual real estate taxes and assessments due and payable for the then calendar year. If at a time a payment is required the amount of the real estate taxes and assessments for the then calendar year shall not be known, Tenant shall pay Landlord, as additional rent, one-twelfth (1/12th) of the real estate taxes and assessments for the preceding calendar year; and upon ascertaining the real estate taxes and assessments for the current calendar year, Tenant shall pay Landlord any difference upon demand, or if Tenant shall be entitled to a credit, Landlord shall credit the excess against the next monthly installment(s) of additional rent falling due. Additional rent based upon real estate taxes and assessments payable for the first and last years of the Lease term shall be adjusted and prorated, so that Tennant shall be responsible for Landlord's prorated share for the period prior to and subsequent to the Lease term and Tenant shall pay Landlord his prorated share for the Lease term.

The funds owed to Landlord by Tenant during the first (5) months of the Lease will be as follows:

| | |
|---|---|
| Base Monthly Rent (91/1/16-1/1/17) | $ 00.00 |
| Real Estate Taxes | $ 7,562.05 |

Water and Electricity will be paid directly to supplier by Tenant as meters will be placed into Tenant's name.

**18.3    Monthly Payment Obligations.** Tenant and Landlord agree that the specified sums Tenant is obligated to pay to Landlord in monthly installments on the first (1st) day of each and every month that rent is due under this Lease is limited to the monthly rental payments set forth on Exhibit B attached hereto plus the monthly installments of Additional Rent based upon real estate taxes set forth in Section 18.2 above. Tenant agrees to pay Landlord, without previous demand therefore, the sums specified as     set        forth

9

herein payable in monthly installments on the first (1st) day of each and every month as set forth above. Tenant further agrees to pay a late charge of five (5%) per cent for each payment that is more than ten (10) days date.

Tenant will pay the rent to the following address:

New Park Associates, LLC
c/o Kenneth M. Crowley
PO# 6000
Bristol, CT 06011

As the rental payee.

or at any place from time to time designated by the Landlord.

**18.4   Additional Rent Based on Reimbursement to Landlord.** If Tenant shall fail to comply with or to perform any of the terms, conditions and covenants of this Lease, Landlord may (but with no obligation to do so) carry out and perform such terms, conditions and covenants, at the expense of the Tenant, which expense shall be payable by Tenant, as additional rent, upon the demand of the Landlord.

### ARTICLE XXIV: NET LEASE

**19.1   Net Lease.**   This is a "triple net Lease" and, except as herein otherwise expressly provided, the Landlord shall receive the fixed annual rent, additional rent and other sums required of the Tenant under this Lease, undiminished from all costs expenses and obligations of every kind relating to the Premises, which shall arise or become due during the Lease term, all of which shall be paid by Tenant just as if Tenant owned the property.

### ARTICLE XX: MISCELLANEOUS

**20.1   Binding Effect**. All covenants, agreements, stipulations, provisions, conditions and obligations herein expressed and set forth shall extend to, bind and inure to the benefit of, as the case may require, the successors and assigns of Landlord and Tenant respectively, as fully as if such words were written wherever reference to Landlord or Tenant occurs in this Lease

**20.2   Complete Agreement.** Any stipulations, representations, promises or agreements, oral or written, made prior to or contemporaneously with this agreement shall have no legal or equitable consequences and the only agreement made and binding upon the parties with respect to the leasing of the Premises is contained herein, and it is the complete and total integration of the intent and understanding of Landlord and Tenant with respect to the leasing of the Premises.

**20.3   Severability**. If any term, covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the

application of such term, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Lease shall be valid and be enforced to the fullest extent permitted by law.

**20.4    Amendment.** This Lease and the exhibits and schedules attached hereto and forming a part hereof are all incorporated herein and set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises and other matters pertaining thereto, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by them.

**20.5    Counterparts**. This Lease may be executed in multiple counterparts and each counterpart shall be an original and all counterparts, together, shall constitute this Lease.

**20.6 Draftsmanship.** Landlord and Tenant each acknowledge that it has read this Lease, consulted with an attorney regarding its terms, and agrees with its terms as though that party had drafted this Lease itself. Landlord and Tenant agree that although this Lease was, by necessity, printed and assembled by one of the parties or its agents or attorneys, this Lease reflects the terms as agreed to by Landlord and Tenant, and each such party that assembled this Lease should merely be considered only the scrivener for the document. If a term or terms of this Lease is considered ambiguous, neither party shall be considered the draftsperson for the purpose of causing the terms of this Lease to be construed against that party.

**20.7 Rights and Remedies Not Waived**. No course of dealing or course of performance between Landlord and Tenant, or any failure or delay on the party of either of them in exercising any rights or remedies hereunder, shall operate as a waiver of any rights or remedies and no single or partial exercise of any rights or remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder.

**20.8 Right of First Offer To Purchase.** Landlord shall not, at any time prior to the expiration of the Term of this Lease, or any extension thereof, sell the Demised Premises, or any interest therein, without first giving written notice thereof to Tenant of Landlord's intention to publicly place the Demised Premises on market, which notice is hereinafter referred to as "Notice of Sale."

The Notice of Sale shall include the exact and complete terms of the proposed sale.

For a period of 21 calendar days after receipt by Tenant of the Notice of Sale, Tenant shall have the right to give written notice to Landlord of Tenant's exercise of Tenant's right to purchase the Demised Premises, the interest therein proposed to be sold, or the property of which the Demised Premises are a part, on the same terms, price and conditions as set forth in the Notice of Sale.

In the event that Landlord does not receive written notice of Tenant's exercise of the right herein granted within said 21 day period there shall be a conclusive presumption that Tenant has elected NOT to exercise Tenant's right hereunder, and Landlord may publicly place property on market to sell the property to

11

any prospective purchaser, on substantially the same terms set forth in the Notice of Sale. Written notice is the exclusive means of exercise and "TIME IS OF THE ESSENCE" with regard to the 21 days.

In the event that Tenant declines to exercise its Right of First Offer to Purchase and, thereafter, the proposed transfer or sale is not consummated, the Tenant's right to purchase shall apply to any subsequent transaction.

If, however, said transfer or sale is, in fact, completed, then said right shall be extinguished and shall not apply to any subsequent transactions.

Notwithstanding the above, this right to purchase is intended to apply only to voluntary transfers involving third party transferees. This right to purchase shall not, therefore, apply: where the Demised Premises are taken by eminent domain or sold under threat of condemnation, to inter-family or inter-ownership transfers or to transfers by Landlord to a trust created by Landlord.

This right to purchase cannot be exercised: (i) during any period in which an Event of Default has occurred and is continuing or commencing with the giving of any notice of and Event of Default and continuing until said Event of Default is cured, (ii) during any period of time any rent is due but unpaid (without regard to whether notice thereof is give Tenant), or (iii) at any time Tenant has received 3 or more notices of Subsequent Default, whether or not the late payments or Events of Default are cured, during the 12 month period immediately preceding the delivery of the Notice of Sale. If the period for exercising the Right of First Offer to Purchase expires while it cannot be exercised then Landlord may sell the property as if Tenant has elected not to exercise said Right of First Offer to Purchase.

This Right of First Offer to Purchase shall terminate as to all subsequent offers if Tenant ever exercises it and is then unable to consummate the purchase.

**20.9 Personal Guarantee for First Seventeen (17) Months of Lease**. Upon the execution of the Lease by the Parties, John W. Mocadlo, an owner of the Tenant, shall give Landlord a personal guarantee in the form attached hereto as Schedule C, which guarantee will guarantee the payment of rent by the Tenant and the performance by the Tenant of all financial duties and obligations under the Lease agreement for the first Seventeen Months of the Lease Term, which guarantee would expire on January 30, 2017.

*[remainder of page intentionally left blank; signature pages follow]*

IN TESTIMONY WHEREOF, Landlord and Tenant have caused this Lease to be executed as a sealed instrument, as of the day and year set forth below but effective as of and from the Lease Execution Date first above written.

**LANDLORD:**

New Park Associates, LLC

By: _____

Name: _____

Title: _____

State of Connecticut           )
                                          )ss.
County of                      )

The foregoing instrument was acknowledged before me this _____ day of September, 2016, by _____, the _____ of New Park Associates LLC a Connecticut Limited Liability Corporation on behalf of said entity.

_____
Notary Public

My Commission Expires:

13

**TENANT:**

The Hartford Auto Group Inc.

By: _____

Name: _John W. Mocadlo_

Title: _President_

State of Connecticut )
                     )ss. Wallingford
County of New Haven  )

The foregoing instrument was acknowledged before me this 25th day of August, 2016, by John W. Mocadlo, the President of The Hartford Auto Group Inc. a Connecticut Company on behalf of said entity.

_____
Notary Public

My Commission Expires: 4-30-21

14

**EXHIBIT A**

**DESCRIPTION OF THE DEMISED PREMISES**

Schedule "A"

398-412 New Park Ave.,Hartford, CT

A certain Piece or Parcel of land with the buildings and improvements thereon, designated as Lot No. Two, 398-412 New Park Avenue situated in the City of Hartford, County of Hartford and the State of Connecticut, and bounded and described as follows:

Beginning at a point located in the Easterly Street Line of New Park Avenue which point marks the Southwesterly corner of land herein described; Thence S60° 11' 45"E a distance of 162.94 ft along the northerly boundary of Lot One to a point; Thence from said point S29° 42' 20"W along the northerly boundary of Lot One a distance of 19.65 ft to a point. Thence from said point S59° 47' 43"E along the northerly boundary of Lot One a distance of 33.41 ft. to appoint. Thence from said point S44° 07'21"E along the northerly boundary of Lot One a distance of 81.34 ft to a point located in the westerly Right of Way Line of land N/F National Railroad Passenger Corporation said point marking the Southeasterly corner of the parcel herein described; Thence from said point N30°43' 35"E along the Westerly Right of Way line of National Railroad Passenger Corporation a distance of 493.32 ft to a point marking the Northeasterly corner of the parcel herein described; Thence from said point N60° 04' 35"W along land N/F Starwood Ceruzzi Hartford, LLC, a distance of 291.00 ft to a point marking the Northwesterly corner of the parcel herein described; Thence from said point S28° 42' 35"W along the Westerly Street Line of New Park Avenue a distance of 164.25 ft to a point; Thence from said point S28° 43' 55"W along the Westerly Street Line of New Park Avenue a distance of 287.29 ft to a point marking the point or place of beginning.

The above described parcel contains 3.00 Acres and is more particularly depicted and described as "Lot No. Two" on a map entitled "Prepared for New Park Avenue Associates, LLC. Lot Line Revision Plan, 398-430 New Park Avenue, Hartford and West Hartford, CT, Scale as noted December 18th 2015 (Revised March 14th, 2016) Prepared by PMPCA, LLC" said Map to be filed (or filed) in the Hartford City Clerk's Office and the West Hartford Town Clerk's Office and said map hereby being made a part of this description.

The above-described parcel is subject to such easements as of record may appear.

## EXHIBIT B

## BASE RENT SCHEDULE PER LEASE SECTIONS 14.1 and 18.1

| **Initial Term** | <u>Monthly Rent</u> | <u>Annual Rent</u> |
|---|---|---|
| Year One (September 1, 2016 – August 31, 2017) | | |
| September 1, 2016 – January 31, 2017 | $ 0.0 (Tenant receives Five Months Free Rent) | |
| February 1, 2017 – August 31, 2017 | $13,000.00 | $91,000.00 |
| Year Two (September 1, 2017 – August 31, 2018) | $13,000.00 | $156,000.00 |
| Year Three (September 1, 2018 – August 31, 2019) | $13,000.00 | $156,000.00 |
| Year Four (September 1, 2019 – August 31, 2020) | $13,000.00 | $156,000.00 |
| Year Five (September 1, 2020 – August 31, 2021) | $13,000.00 | $156,000.00 |
| Year Six (September 1, 2021 – August 31, 2022) | $13,520.00 | $162,240.00 |
| Year Seven (September 1, 2022 – August 31, 2023) | $14,060.00 | $168,720.00 |

**Ist Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase a minimum of 3% per annum over prior year with a maximum increase to be determined by referencing the cost of living index as published by the U.S. Department of Labor in existence on the first day of this Lease and on each anniversary date of this Lease. Said minimum increase, if any shall be computed by applying the cost of living increase to the prior year's base rent for each year within said 1st Five Year Renewal Term.

**2nd Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4 Year Thirteen**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

**3rd Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

**4th Five Year Renewal Term, if and as Exercised by Tenant Per Section 1.4**

Base Rent to increase the same as computed during prior Five Year Renewal Term.

EXHIBIT C

# AGREEMENT OF PERSONAL GUARANTY FOR FIRST SEVENTEEN MONTHS OF LEASE TERM ATTACHED TO AND MADE A PART OF THE LEASE AGREEMENT DATED AUGUST 1, 2016 BETWEEN NEW PARK AVENUE ASSOCIATES, LLC ("LANDLORD") THE HARFORD AUTO GROUP INC. ("TENANT")

The undersigned "GUARANTOR," in consideration of the making of the foregoing Lease Agreement between Tenant and Landlord, does hereby unconditionally guarantee the payment of the rent by the Tenant and the performance by Tenant of all the financial duties and obligations under the Lease Agreement that are incurred during the first seventeen months of the Lease Term.

It is expressly agreed and understood that the first seventeen months of the Lease Term is the period commencing on September 1, 2016 and ending on January 31, 2018. This guarantee expires on January 31, 2018 and the undersigned does not guarantee the payment of rent by the Tenant or the performance by Tenant of any financial duties and obligations under the Lease Agreement that are incurred after January 31, 2018.

**EXECUTED** to be effective as of the 1st day of September, 2016.

**GUARANTOR:**

Name: John W. Mocadlo

Business Address:   505 North Colony Road
                    Wallingford, Ct 06492

Residence Address:  34 Bayshore Drive
                    Milford, Ct 06406

17