# Harry R. Thomasson, Esq.

3280 Sunrise Highway, Box 112     Admitted:
Wantagh, New York  11793     Massachusetts
Tel. 516-557-5459     New York
hrtatty@verizon.net

May 8, 2025

Honorable James M. Wicks
U.S. Federal District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

       Re: *Superb Motors, Inc., et al. v. Anthony Deo, et al.*
               Case No. 2:23-cv-6188 (JW)

Your Honor:

      Earlier today I entered an appearance representing myself in the above referenced matter. I am writing the Court pursuant to the Court's part rules 1) requesting a pre-Motion conference to file a Motion for Declaratory Judgment; 2) Moving to Stay these proceedings pending the Court's ruling on Declaratory Judgment; 3) requesting a pre-Motion conference for this Court to reconsider the disqualification of undersigned as counsel for the within Deo Defendants; and 4) Moving to conduct two (2) depositions on an emergency basis as an exception to the requested stay, or, in the alternative, requesting a pre-Motion conference to file an appropriate Motion/ Order to Show Cause to Compel the Depositions of Wendy Kwun and Robert Anthony Urrutia. Please note:  I limited each section of this letter to the word limits set forth in the Court's rules for ease of purpose rather than filing separate letters.  Please be advised, as follows:

## **RELEVANT BACKGROUND**

      There are three cases all known to this Court that have as a vitally important preliminary issue the following: The ownership of the businesses known in this case as 189 Sunrise and NorthShore Motors.  This issue needs to be resolved in order to determine the ultimate issues of liability and damages, especially since more than two (2) years of litigation has yet to produce any discovery, although it did allow undersigned to investigate this very issue of ownership and produce the original Complaint and its Amendment in September 2024 and January 2025, respectively.  Those three cases, as presently constituted, consist of the instant action (which was removed from Nassau (NY) Supreme Court by the Aaronson and Urrutia parties and was formerly styled as *Brian Chabrier, et al., v. Anthony Deo, et al.,* Nassau (NY) Supreme Court index number 617224/2022); the other EDNY action styled as *Anthony Deo, et al., v. Ronald Baron, et al.,* Case No. 2:24-cv-06903 (NJC) (JW); and the action styled as *Urrutia v. Anthony Deo,* Nassau (NY) Supreme Court index number 618608/2023.  For ease of purpose herein, each case is described chronologically, as follows: The instant case is hereinafter referred to as Action 1, the Urrutia Supreme Court case is hereinafter referred to as Action 2, and the other EDNY action is hereinafter referred to as Action 3.

## **DECLARATORY JUDGMENT**

On April 21, 2025, I filed a letter to this Court and Judge Choudhury in Action 3, a true and accurate copy of which is hereby incorporated herein by reference and attached hereto as Exhibit A. Judge Choudhury denied the requested relief, without prejudice, until at least such time as jurisdictional questions are resolved in Action 3. There is no need to rewrite what is written in that correspondence again, here. But first, pursuant to this Court's rules, it is important to repeat the law cited in that correspondence, as follows:

Federal Rule of Civil Procedure Rule 57 provides as follows:

Declaratory Judgment: These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201 . Rules 38 and 39 govern a demand for a jury trial. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action. (As amended Dec. 29, 1948, eff. Oct. 20, 1949; Apr. 30, 2007, eff. Dec. 1, 2007.)

Notes of Advisory Committee on Rules—1937:

The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for in California (Code Civ.Proc. (Deering, 1937) §1062a), Michigan (3 Comp.Laws (1929) §13904), and Kentucky (Codes (Carroll, 1932) Civ.Pract. §639a–3).

The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts." *Ashwander v. Tennessee Valley Authority* , 297 U.S. 288, 325, 56 S.Ct. 466, 473, 80 L.Ed. 688, 699 (1936). The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared. The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited. A declaration may not be rendered if a special statutory proceeding has been provided for the adjudication of some special type of case, but general ordinary or extraordinary legal remedies, whether regulated by statute or not, are not deemed special statutory proceedings.

When declaratory relief will not be effective in settling the controversy, the court may decline to grant it. But the fact that another remedy would be equally effective affords no ground for declining declaratory relief. The demand for relief shall state with precision the declaratory judgment desired, to which may be joined a demand for coercive relief, cumulatively or in the alternative; but when coercive relief only is sought but is deemed ungrantable or inappropriate, the court may *sua sponte* , if it serves a useful purpose, grant instead a declaration of

rights. *Hasselbring v. Koepke* , 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170 (1933). Written instruments, including ordinances and statutes, may be construed before or after breach at the petition of a properly interested party, process being served on the private parties or public officials interested. In other respects the Uniform Declaratory Judgment Act affords a guide to the scope and function of the Federal act. Compare *Aetna Life Insurance Co. v. Haworth* , 300 U.S. 227, 57 S.Ct. 461 (1937); *Nashville, Chattanooga & St. Louis Ry. v. Wallace* , 288 U.S. 249 (1933); *Gully, Tax Collector v. Interstate Natural Gas Co* ., 82 F.(2d) 145 (C.C.A.5th, 1936); *Ohio Casualty Ins. Co. v. Plummer* , 13 F.Supp. 169 (S.D.Tex., 1935); Borchard, Declaratory Judgments (1934), *passim.*

   I wish to stress to this Court the Advisory Committee Note in paragraph one of the Notes, as follows: "A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding. Inasmuch as it often involves only an issue of law on undisputed or relatively undisputed facts, it operates frequently as a summary proceeding, justifying docketing the case for early hearing as on a motion, as provided for…[in various states at that time]…." That point from the *drafters* of the FRCP on Declaratory Judgment is directly on point here: Once this Court rules on Declaratory Judgment, it is my position that this case will be ripe for Dismissal, whether or not a Motion even becomes necessary (recognizing, of course, the Court's *sua sponte* powers), and saving the Court enormous continuing time and effort, and saving all of the parties time, effort, and money no matter which side the Court favors in its ruling.

   I do need to add one point to Exhibit A hereto in requesting to be allowed to file for Declaratory Judgment: Since Exhibit A was written and submitted to this Court, Robert Anthony Urrutia in Action 2 filed an Affirmation from his counsel, Emanuel Kataev; a true and accurate copy of that Affirmation is attached hereto as Exhibit B, although I hereby request that this Court take judicial notice of the Motion papers in Action 2 regarding at least Declaratory Judgment therein. Urrutia's opposition to Declaratory Judgment consists merely of third party statements (attorney Kataev's Affirmation) without any first-hand knowledge of the ownership of 189 Sunrise and NorthShore, no documentation whatsoever, and the speculative statement (coming from attorney Kataev) that Josh Aaronson did not have authority to "approve" the income tax returns prepared by Island Auto Group's accountant, Citrin Cooperman, as set forth at Exhibits G and H to the Amended Complaint at issue here.

   Simply put, the Aaronson and Urrutia parties have no documents in support of ownership of 189 Sunrise after Deo purchased same on February 12, 2021 as set forth in Exhibit D to the Amended Complaint at issue here, and no documents that the Deos ever transferred ownership of NorthShore to any of the Aaronson group; there is no consideration demonstrated to have been paid to the Deos for the transfer of 189 Sunrise back to the Aaronson group after the Deos purchased same on February 12, 2021 as set forth in Exhibit D to the Amended Complaint at issue here, and no consideration paid at any time for the transfer of NorthShore to any of the Aaronson group after the Deos formed same in November 2017. If this Court allows undersigned to file a Motion for Declaratory Judgment, it seems clear that the two (2) corporations at issue in all three actions belong to Anthony Deo (99%) and Sara Deo (1% for partnership/accounting purposes) as set forth in the tax returns approved by the Aaronson parties

in Exhibits G and H, and importantly, followed by the Aaronson parties ever since that approval was given, as only the Deos have filed any state or federal tax documents since the tax years approved in Exhibits G and H to the Amended Complaint in Action 3.  I find it necessary to request this relief in each of the three actions due to various purposes/strategies, since different Courts can more narrowly/broadly decide issues, and since the State Court decision may or may not have any binding effect on this Court.

## **STAY OF PROCEEDINGS**

I hereby request that this Court Stay the instant action to allow a decision to be rendered on Declaratory Judgment, except as further set forth in this correspondence, *infra.*  This case has, to date, spun its wheels for two plus years (2+) in two (2) different Courts (NY Supreme and EDNY) without even commencing discovery, which conveniently favors the Aaronson and Urrutia parties, since they closed the three dealerships at issue (189 Sunrise, NorthShore, and Superb) and kept all documents from those dealerships without returning any to the Deos despite repeated requests for same.  In the interim, I completed a two plus year long (2+) investigation that produced the Complaint, the Amended Complaint, and twenty six (26) Exhibits in Action 3 that set forth the Deos' ownership of 189 Sunrise and NorthShore.  There is no good reason to proceed with other requests and Motion practice in this case, your Honor, now that this case is ripe for Declaratory Judgment on the very (preliminary) issue of ownership of 189 Sunrise and NorthShore.  I gathered enough facts and documents from the Deos to allow this Court to make an informed decision on the issue of ownership of these two businesses, and it will simplify and probably eliminate the need for any further proceedings in this case; in fact, a ruling on Declaratory Judgment is virtually certain to make one of the two Federal Actions ripe for dismissal.  This Court has broad powers to issue a Stay of the instant proceedings, and doing so would serve the purpose of judicial economy for the Court and the parties via Declaratory Judgment determining ownership of 189 Sunrise and NorthShore, an issue that certainly qualifies as a justiciable controversy and therefore, makes a Stay to allow time to determine and Declare ownership a deserved relief and economical goal for the Court and the parties.

A party seeking a stay bears the burden of demonstrating good cause.  *Fantastic Graphics Inc. v. Hutchinson*, No. 09CV-2514(LDW)(ETB), 2010 WL 475309, at *3 (E.D.N.Y. Feb. 8, 2010) (citation omitted).  Although not expressly authorized by statute or rule . . . the federal district courts have discretion to impose a stay pending the determination of dispositive motions by the issuance of a protective order.  *Hachette Distribution, Inc. v. Hudson County News Co.*, 136 F.R.D. 356, 358 (E.D.N.Y. 1991).  In determining whether to grant a stay of discovery, the court must look to the "particular circumstances and posture of each case."  Id. "To determine whether a stay is appropriate in such a situation, courts consider the following factors: whether the defendants have made a strong showing that the plaintiff's claim is not meritorious; and the risk of unfair prejudice to the plaintiff."  *Richards v. North Shore Long Island Jewish Health Sys.*, No. CV 10-4544 (LDW)(ETB), 2011 WL 4407518, at *1 (E.D.N.Y. Sept. 21, 2011).  Courts may also take into account "the type of [dispositive] motion and whether it is a challenge as a 'matter of law' or to the 'sufficiency' of the allegations; 'the nature and complexity of the action; . . . whether some or all of the defendants join in the request for a stay; [and] the posture or stage of the litigation."  *Hutchinson*, 2010 WL 475309, at *3.

There is no prejudice that can be claimed by the Aaronson or Urrutia parties hereto if this Court grants a Stay as set forth herein. They do not mind at all if discovery continues to be prevented (except as set forth, *infra*); they have all of the documents from these three dealerships at issue, and I am the one seeking discovery generally. But for the purposes of two emergency depositions set forth herein, I am willing to have discovery stayed until a Motion for Declaratory Judgment is determined, as I am simply confident in my work for the past two years piecing together the Deos' case. We argue strongly to stay the instant proceedings, broadly, to allow the important issue of ownership of 189 Sunrise and NorthShore to be determined via Declaratory Judgment. There is no need to be duplicitous and wasteful with everyone's/anyone's time and effort and money while this Court determines ownership through Declaratory Judgment.

### **RECONSIDER DISQUALIFICATION OF UNDERSIGNED**

Circumstances have changed since this Court entered its order of disqualification of undersigned at the end of 2023. 1) A two year investigation conducted by undersigned was completed with the filing of the initial complaint in September 2024, as amended at the end of January, 2025; and 2) Partially in response to Robert Anthony Urrutia's filing for Summary Judgment (in which his attorney, Emanuel Kataev while under oath, actually swore to that Court in Action 2 that "there are no disputes of fact" between those two parties over, *inter alia,* ownership of 189 Sunrise and NorthShore, a transparent falsehood and lie), I filed on behalf of Anthony Deo a Motion for Declaratory Judgment to determine ownership of 189 Sunrise and NorthShore, to which the only opposition was (startlingly) just an Attorney's (Mr. Kataev's) Affirmation, without any supporting documentation challenging Deo's twenty six plus Exhibits, without any first hand knowledge of ownership of 189 Sunrise or NorthShore, and while simultaneously admitting that a decision on Declaratory Judgment necessarily determines that case ("Try as he might to wriggle himself out of his fraudulent conduct, Deo desperately seeks to establish ownership of Northshore Motor Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise") to avoid the inevitable outcome of this action." Exhibit B hereto, paragraph 2) and throwing Josh Aaronson (and by implication, IAG's CFO, Wendy Kwun) "under the bus." *See* Exhibit B hereto, Paragraphs 2 and 11-13, at which Kataev speaks of Aaronson's lack of authority regarding the tax returns, and misleading suggests that the tax returns were transfers of the businesses, which the Deos have never alleged; the tax return approval and the tax returns created by IAG's accountants (Exhibits G and H to the Amended Complaint in Action 3) represent a settlement of the then existing dispute that the Deos discovered when they filed their own tax returns, *see* Exhibit Z to the Amended Complaint in Action 3.

The applicable law under which this relief is sought is FRCP Rule 60(b)(6): Relief from a Judgment or Order

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(6) any other reason that justifies relief.

5

Now that the Deos have determined and demonstrated their ownership of 189 Sunrise and NorthShore, and given the expectation that the Aaronson parties cannot demonstrate otherwise, especially since their former attorney of many years in multiple actions (Mr. Kataev) did not even challenge the twenty six plus documents submitted for the Court's consideration regarding Declaratory relief in Action 2, it is a manifest injustice to allow the disqualification of undersigned from representing the Deo parties in this action to stand.  Each of those parties have informed me that they wish for me to represent them herein, and I am hereby moving for this Court to reconsider that disqualification order on the grounds of manifest injustice.  I know the facts and law better than any outside attorney now that I have completed my two plus year long investigation and produced both the underlying Complaint and the Amended Complaint in this action; it is a stunning waste of time and money to expect the Deo parties to obtain any attorney other than undersigned to represent them going forward. Accordingly, we ask this Court to reconsider its decision on the basis of FRCP Rule 60(b)(6), manifest injustice.

The challenge that lead to disqualification of undersigned was based predominantly on the $735,000.00 borrowed and personally guaranteed by Anthony Deo being returned to him by undersigned after Josh Aaronson stole same.  There simply are no other specific facts that have ever been alleged by the Aaronson parties that contributed meaningfully to the disqualification of undersigned, since, *inter alia,* I was so distantly involved with these businesses:  I predominantly handled Consumer Affairs complaints involving mechanical complaints for used cars for these two dealerships, and earned approximately $15,000.00, only, over *years,* only.

It is manifestly unjust that the Plaintiffs in this case utilized and alleged that it was improper for undersigned to return that money to Deo given that we now know 1) the Aaronson parties presented *nothing* in the form of documentary or testimonial evidence in the Declaratory Judgment brought by Anthony Deo through undersigned in Action 2 covering ownership of 189 Sunrise and NorthShore; 2) the Aaronson parties' longtime attorney, Emanuel Kataev, claims (improperly and without first hand knowledge) that Aaronson (and Kwun by implication, *see* Exhibit B hereto, and Exhibits G, H and Z attached to the Amended Complaint in Action 3) that Aaronson had no authority to "approve" (to settle the dispute) the tax returns for IAG and his co-parties in this and the other two actions proving Deo's ownership of 189 Sunrise and NorthShore; and 3) the Deos, and specifically Anthony Deo, owned these two businesses; please *see* Exhibits A-Z in Action 3 to the Amended Complaint, which are in evidence and not responded to by Urrutia and his attorney, Mr. Kataev, in the Declaratory Judgment Motion papers in Action 2.

Please note:  Relying on a recent Fourth Circuit decision (*Carlson v. Boston Sci. Corp*. 846 F.3d 320 (4th Cir. 2017), that court addressed the flexibility to revise *interlocutory* orders before final judgment, as new facts or arguments surface during the course of litigation. While broader than the discretion allowed relative to motions to reconsider *final* judgments under Rule 59(e), the discretion is not inexhaustible. The law-of-the-case doctrine provides when a court decides upon a rule of law, such decision should continue to control the same issues in later phases of that case. A court may revise an interlocutory ruling under the same conditions pursuant to which it may depart from the law of the case: (1) a subsequent trial resulting in substantially different evidence; (2) a change in applicable law; or (3) clear error resulting in

6

manifest injustice. This approach diverges from the Rule 59(e) standard by allowing for different evidence presented during the course of litigation as opposed to new evidence not available at trial. Here, I contend that there was clear error to disqualify undersigned and it resulted in manifest injustice, especially now that it is becoming increasingly clear that the Deos are the owners of 189 Sunrise and NorthShore, given that the Aaronson and Urrutia parties' own attorney presented no first hand documentary or testimonial evidence to the contrary when presented with the opportunity to do so in Action 2, and since the investigation and Complaint/ Amended Complaint resulting therefrom in Action 3 produced clear evidence that indicates the Aaronson claims of ownership are false, empty, and likely perjurious.

## **TWO EMERGENCY DEPOSITIONS**

As an exception to the within requested Stay, we ask that this Court allow undersigned to forthwith take the depositions of one party to this action, Robert Anthony Urrutia, and one non-party to this action, IAG's CFO, Wendy Kwun. Upon information and belief, Urrutia has fled the country to Central America under the cloud of NMAC's allegations of theft of twenty plus million dollars ($20,000,000.00+; please *see* and take judicial notice of NMAC's request to intervene herein and supporting papers thereto), and now that attorney Kataev has thrown Josh Aaronson (and by implication, Wendy Kwun; *see* and take judicial notice of Exhibits G, H, and Z attached to the Amended Complaint in Action 3) "under the bus" questioning his former clients' authority in these actions via Exhibit B hereto, there is a legitimate concern that Ms. Kwun with extensive ties throughout Asia will flee if she has not also done so. Please be reminded, your Honor, that someone on behalf of either the Aaronson and/or Urrutia parties commenced a Federal criminal inquiry *prior* to the filing of the Complaint in Action 3 last September; I was contacted at the end of October, 2024, by the Federal Justice Department and about all that I could find out about their investigation and then convened Grand Jury was that they did not know of our Complaint as filed the previous month. Once they were so informed, the Grand Jury appearance of Marc Merckling on behalf of Anthony Deo was cancelled and to date, I have not hear further from the justice Department. But undoubtedly the parties to these three actions know of that Federal inquiry, and we now fear that since we have proven the Deos' ownership of 189 Sunrise and NorthShore through the Complaint, the Amended Complaint, and the Exhibits A-Z thereto in Action 3, and given the Federal inquiry into this situation commenced by the Aaronson parties, the Urrutia parties and/or their representatives, Urrutia has fled and Kwun may flee. Accordingly, I ask that this Court allow and order the in person depositions of Wendy Kwun and Robert Anthony Urrutia at the earliest possible date to be taken by me for one (1) day each, preferably inside the EDNY Federal Courthouse in Central Islip, New York, both for ease of purpose and in order to obtain rulings when and if objections obstruct or prevent the deposition(s) from continuing.

## **REQUESTED RELIEF**

**Declaratory Judgment:** I request a pre-Motion conference for Declaratory Judgment regarding NorthShore: 1) That the Deos are the owners (Anthony 99% and Sara 1% as set forth in the Josh Aaronson produced tax returns in Exhibit H to the Amended Complaint in Action 3, as he personally approved those returns in Exhibit G, *id*.) since forming the company in

November 2017; or, in the alternative, 2) that the Deos are the owners of the company since tax year 2020 given that Josh Aaronson approved (in Exhibit G to the Amended Complaint in Action 3) his accountants' preparation of the tax returns for tax year 2020 (that tax return is set forth in Exhibit H to the Amended Complaint in Action 3); or, in the alternative, 3) that the Deos are the owners of NorthShore since October 6, 2022, the date Josh Aaronson approved the tax returns listing the Deos as owners thereof in Exhibit G to the Amended Complaint in Action 3.

With respect to 189 Sunrise:  1) That the Deos are the owners of 189 Sunrise (Anthony 99% and Sara 1% as set forth in the Josh Aaronson produced tax returns in Exhibit H to the Amended Complaint in Action 3, as he personally approved those returns in Exhibit G, *id.*) since their purchase of same on February 12, 2021 (as set forth in Exhibit D to the Amended Complaint, *id.*); or, in the alternative, 2) that the Deos are the owners of 189 Sunrise since October 6, 2022, the date Josh Aaronson approved the returns his accountants prepared as set forth in Exhibits G and H to the Amended Complaint in Action 3.

**Stay of Proceedings:**  I ask that this Court Stay the Proceedings in this case pending the outcome of the within requested relief including a determination of Declaratory Judgment, the request to reconsider the Disqualification of undersigned, and the two (2) Emergency Depositions to preserve the testimony of the two individuals both within this Court's jurisdiction. This request includes a requested Stay of the Court's order to obtain new counsel by May 9, 2025 pending the outcome of the within requested relief.   This will expedite more than just this action, and result in tremendous judicial economy going forward herein.

**Reconsideration of Disqualification:**  I ask that this Court allow Reconsideration or the filing of a Motion therefore reconsidering my disqualification of representing the Deo parties herein on the basis of manifest injustice given the request by all of the co-Deo parties to me to represent them going forward, especially given that we now know that the Aaronson parties do not, in fact, own 189 Sunrise or NorthShore, and the within Complaint is wholly a lie to discourage the Deo parties from continuing to fight the extremely wealthy Plaintiffs.

**Two Emergency Depositions:** I ask that the Court allow me to take a deposition for one (1) day each of Robert Anthony Urrutia and Wendy Kwun as upon information and belief they both have or will flee the jurisdiction of this Court given ever evolving circumstances in this case, including but not limited to the results of the investigation that produced the Amended Complaint and twenty six Exhibits in Action 3, and the wholly inappropriate Affirmation of Emanual Kataev attached hereto as Exhibit B.  Urrutia subjected himself to this Court's jurisdiction in the instant Action 1, and Kwun is subject to this Court's jurisdiction from service/representation in Action 3, or, in the alternative, can be served with a subpoena if she has not yet fled.  I also ask that this Court order the depositions to be in person at this Courthouse to accommodate anticipated rulings and given the size/number of parties and attorneys expected to be present for these depositions.  Respectfully submitted, I remain,

        Very truly yours,

        *Harry R. Thomasson*
        Harry R. Thomasson, Esq.