# EXHIBIT B

Case 2:23-cv-06188-JMW   Document 266-2   Filed 05/08/25   Page 2 of 13 PageID #: 6479

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------------x

ROBERT ANTHONY URRUTIA,                           Index No.: 618608/2023

                                    Plaintiff,

                                                  **REPLY AFFIRMATION
                                                  IN FURTHER SUPPORT OF
               - against -                        MOTION & IN OPPOSITION
                                                  TO CROSS-MOTION**

ANTHONY DEO,

                                    Defendant.    Hon. Jerome C. Murphy, J.S.C.
                                                  Motion Seq. Nos.: 005 & 006
-----------------------------------------------------------------------x

        **EMANUEL KATAEV, ESQ.**, an attorney duly admitted to practice law before the courts

of the State of New York, affirms pursuant to New York Civil Practice Law and Rules (hereinafter

the "CPLR") § 2106 under penalty of perjury that the following is true and correct:

**Preliminary Statement**

        1.      I am the managing member of Sage Legal LLC, attorneys for Plaintiff Robert

Anthony Urrutia (hereinafter referred to as "Plaintiff" or "Urrutia"), am fully familiar with the

facts and circumstances herein, based on a review of this firm's files, and respectfully submit this

reply affirmation in further support of Plaintiff's motion, pursuant CPLR § 3212, for summary

judgment and in opposition to Defendant Anthony Deo's (hereinafter "Defendant" or "Deo")

cross-motion for a declaratory judgment. See NYSCEF Docket Entry 95.[1]

        2.      Try as he might to wriggle himself out of his fraudulent conduct, Deo desperately

seeks to establish ownership of Northshore Motor Leasing LLC ("Northshore") and 189 Sunrise

Hwy Auto LLC ("Sunrise") to avoid the inevitable outcome of this action.

---

[1] See Rule 2214(c) of the CPLR (providing that, except when the rules of the court provide
otherwise, in an e-filed action, a party filing motion papers need not include copies of papers that
were filed previously electronically, but may make reference to them, giving the docket numbers
on the e-filing system). A review of this Court's IAS Part 5 Rules and Procedures in fact requires
hyperlinks in accordance with Rule 2214(b) of the CPLR.

Case 2:23-cv-06188-JMW   Document 266-2   Filed 05/08/25   Page 3 of 13 PageID #: 6480

3.      In reactively cross-moving for a declaratory judgment, Deo concedes that a justiciable controversy exists over the ownership of Northshore and Sunrise, such that there can be no dispute whatsoever he breached his representation and warranty that he was the sole owner of Northshore and Sunrise.

4.      But everywhere Deo turns, he is met with the inescapable conclusion that he is *not* and was never the sole owner as he represented and warranted in the Cross-Purchase Agreement:

   a. Deo was not the sole owner of Northshore at its inception, as Sara Rahman was the "sole mbr" per an IRS Form CP 575 G.  See NYSCEF Docket Entry 101.

   b. Deo was not the sole owner of Northshore since February 2018 when the IAG Plaintiffs came to own it (with no adequate explanation[2] from Deo how that came to be).  See Chabrier v. Deo, Index No.: 617224/2022, NYSCEF Docket Entry 4.

   c. Deo was not the sole owner of Northshore since in or about 2021.  See Deo v. Baron, Index No.: 615683/2024, NYSCEF Docket Entry 9 at 9.

   d. Deo was not the sole owner of Sunrise since July 3, 2014 because the IAG Plaintiffs owned it.  See Chabrier v. Deo, Index No.: 617224/2022, NYSCEF Docket Entry 28.

   e. Deo was not the sole owner of Sunrise since in or about 2021.  See Deo v. Baron, Index No.: 615683/2024, NYSCEF Docket Entry 9 at 38.

---

[2] Critically, Deo does not provide tax returns for Northshore from 2017, 2018, 2019, or 2020 evidencing any ownership. Since he claims to be the owner of Northshore from its inception, those documents should be in his possession, custody, or control; yet, they curiously remain missing from his hodgepodge of exhibits.

2

Case 2:23-cv-06188-JMW Document 266-2 Filed 05/08/25 Page 4 of 13 PageID #: 6481

5.      Crucially, setting aside the breach of his representations and warranties concerning ownership, Deo entirely fails to address the representations and warranties concerning litigation, claims, and liens, effectively conceding them.

6.      Indeed, Deo does nothing to address Urrutia's assertions that he failed to disclose the threat of litigation concerning Northshore and Sunrise.  See NYSCEF Docket Entries 78 ¶¶ 23-28, 30 (averring that Deo did not inform Urrutia about litigation concerning Northshore and Sunrise until June 2023 despite his contractual obligation to Urrutia) and 76 ¶¶ 40-44.

7.      Last but not least, Deo admitted to encumbering the assets of Northshore by obtaining a loan from Libertas to pay for his interest in Superb.  See Deo v. Baron, , Index No.: 615683/2024, NYSCEF Docket Entry 1 ¶ 204 ("Anthony Deo arranged to borrow money ($735,000.00) against his ownership interest in North[s]hore …"); see also NYSCEF Docket Entry 99 ¶ 26 (referencing "the money … I had just borrowed to purchase my interest in Superb").

8.      This encumbrance was a direct and independent breach of the Cross-Purchase Agreement.  See NYSCEF Docket Entry 2 ¶¶ 3(i) ("Anthony is the sole owner of the Northshore Units, and owns *free and clear of all liens and encumbrances*") and 3(vi) ("There is not pending, nor to Anthony's knowledge is there threatened, any suit, action, bankruptcy or administrative proceeding, or arbitration or other proceeding, which could adversely affect the ability of Anthony to perform any of Anthony's obligations under this Agreement, including Anthony's obligation to convey the Northshore Units *free and clear of all liens and encumbrances*").

9.      For these reasons, because Deo irrefutably breached his representations and warranties to Urrutia in the Cross-Purchase Agreement, Urrutia is entitled to rescission.

3

Case 2:23-cv-06188-JMW    Document 266-2    Filed 05/08/25    Page 5 of 13 PageID #:
6482

10.     In an effort to pivot, side-step, and draw attention away from these glaring breaches of the Cross-Purchase Agreement, Deo sets up a sideshow in cross-moving for a declaratory judgment that he is the owner of Northshore and Sunrise since at least 2021.

11.     However, Deo's effort to turn his cross-motion into an escape hatch actually serves to place the nails in the coffin for his claims; this is because his sole basis to claim ownership of Northshore and Sunrise rests on "approval" from Joshua Aaronson ("Aaronson") – a part-owner of only one of the two dealerships – to have Deo file tax returns for Northshore and Sunrise, which is insufficient under the respective operating agreements and the New York Business Corporation Law ("BCL").

12.     As an initial matter, Deo argues that he is the owner solely by virtue of tax returns he filed, altogether ignoring the vast authority cited by Urrutia that this, alone, is not dispositive of ownership.  See NYSCEF Docket Entry 76 ¶ 36, 36 n. 2 (citing four decisions which conclusively held that tax returns, by themselves, are not determinative of ownership).

13.     Even if the tax returns were somehow dispositive (which they are not), Aaronson's approval alone is insufficient to convey ownership status of Northshore and Sunrise, as – again – Aaronson is only a part-owner of one of the two dealerships, and the dictates of the operating agreements for Northshore and Sunrise were not complied with as it relates to a transfer of interest.

14.     This is because each operating agreement, that is for both Northshore and Sunrise, requires "unanimous consent" to add a member.  See Chabrier v. Deo, Index No.: 617224/2022, NYSCEF Docket Entries 4 at Article IX and 28 at Article IX ("A Member may transfer his interest in the Company to another person or entity only with the prior unanimous consent of the other Members either in writing or at a meeting called for such purpose").

15.     Aaronson is a quarter-member of Sunrise only, and is not a member of Northshore.

4

16.     Deo fails to provide any unanimous written consent signed by the four members of Sunrise nor the three members of Northshore; Deo similarly fails to point to any meeting by all the members of Northshore and Sunrise.

17.     As such, there is no genuine issue of material fact as to whether Deo held a 100% interest in Northshore and Sunrise.

18.     Indeed, Deo himself admits (although it is a lie), that he only held a 99% interest in Northshore and Sunrise.

19.     Separately, the BCL provides the requirements for the sale of interests in an entity, none of which have been met in order for Deo to claim ownership of Northshore or Sunrise.

20.     These requirements are addressed further below.

**Plaintiff is Entitled to Summary Judgment**[3]

21.     Deo argues there is a genuine issue of material fact as to who owns Northshore and Sunrise; but he misses the forest for the trees in making this argument.

22.     As set forth above, no matter who owns the dealerships, Deo admittedly never owned 100% of either Northshore or Sunrise at any point in time; thus, his statement of sole ownership of Northshore and Sunrise was a breach of the representation and warranty he made.

---

[3] Deo argues that summary judgment is inappropriate because discovery has not been conducted. This is inaccurate. Summary judgment is only inappropriate where further discovery "might reveal material facts *in the movant's exclusive knowledge*." See Scofield v. Trustees of Union College in Town of Schenectady, 267 A.D.2d 651, 652 (3d Dept. 1999); see also Morris v. Hochman, 296 A.D.2d 481, 482 (2d Dept. 2002). Here, Urrutia does not rely on any material facts within his exclusive knowledge; in fact, he relies on the sworn testimony of others defrauded by Deo and Deo's own admissions and evidence to lay the foundation for his entitlement to summary judgment. Deo lies that Urrutia withheld documents from him concerning Superb. See Superb Motors Inc v. Deo, Case No.: 2:23-cv-6188 (JMW), ECF Docket Entry 95 ¶¶ 4-5 ("Thomasson came into possession of over 250 emails' worth of Superb's confidential information and sensitive financial documentation"); see also ECF Docket Entry 95-1 (sampling of documents provided). In any event, Deo fails to identify what facts are in the exclusive of Urrutia, or what discovery he needs to avoid summary judgment. This is because there is no discovery necessary for these points.

5

23.     This is because Deo has repeatedly asserted that his wife owns a one percent (1%) interest in both Northshore and Sunrise, which constitutes a material misrepresentation of the Cross-Purchase Agreement.

24.     This breach is material because a minority shareholder such as, allegedly, Sara Deo would be entitled to receive payment for her shares upon their sale. See BCL § 910.

25.     Similarly, the representation and warranty that Northshore was free and clear of any liens or encumbrances was similarly breached by virtue of Deo's admission that he took out a loan from Libertas for $735,000.00 to purchase an interest in Superb.

26.     Finally, Deo fails to address his breach of the representation and warranty that there was no pending or threatened litigation.

27.     As a result, he concedes this point. See Bombard v. Central Hudson Gas & Electric, 205 A.D.2d 1018, 614 (3d Dept. 1994)) ("The Court . . . notes that, under New York state law, the failure to provide argument on a point at issue constitutes abandonment of the issue"); Pennymac, Corp. v. DiPrima, 54 Misc. 3d 990 (Sup. Ct. Suffolk Cty. 2016) ("Where a defendant fails to oppose some or all matters advanced on a motion for summary judgment, the facts as alleged in the movants' papers may be deemed admitted as there is, in effect, a concession that no question of fact exists"); Nassau Point Prop. Owners Ass'n, Inc. v. Tirado, 29 A.D.3d 754, 757 (2d Dept. 2006) ("Since the plaintiff did not raise the issue … in its brief, the plaintiff abandoned this issue … and thus effectively conceded ownership of the disputed street to the defendants") (citing Khalona v. New York City Tr. Auth., 215 A.D.2d 630, 631 (2d Dept. 1995)).

28.     Finally, Deo argues that he is entitled to return of $500,000.00 if rescission is awarded.

29.     This argument fails for several reasons.

6

Case 2:23-cv-06188-JMW   Document 266-2   Filed 05/08/25   Page 8 of 13 PageID #: 6485

30.     First, as addressed in Plaintiff's affirmation dated April 12, 2024, Urrutia paid for vehicles held by Deo in a total amount of $492,029.50. <u>See</u> NYSCEF Docket Entry <u>22</u> ¶ 14.

31.     Second, given the complexity involved in putting the parties back in their positions, rescissionary damages are warranted, removing any entitlement by Deo to any of the funds he invested in Superb (albeit with stolen money). <u>See</u> Superb Motors Inc v. Deo, Case No.: 2:23-cv-6188 (JMW), ECF Docket Entry <u>65</u> ¶¶ 148-165, 178-183.

32.     Rescissory damages are an established remedy where rescission, the voiding of a contract, may not be a valid form of relief. <u>See</u> <u>Syncora Guarantee Inc. v. Countrywide Home Loans, Inc.</u>, 935 N.Y.S.2d 858, 869-70 (Sup. Ct., N.Y. Cty. 2012) (hereinafter "<u>Syncora</u>").

33.     As the Delaware chancery court stated in 2003: "Rescissory damages are designed to be the economic equivalent of rescission in a circumstance in which rescission is warranted, but not practicable. A solid body of case law so holds." <u>See</u> <u>Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.</u>, 855 A.2d 1059, 1072 (Del.Ch.2003) (string <u>citing</u>, <em>inter alia</em>, <u>Cinerama, Inc. v. Technicolor, Inc.</u>, 663 A.2d 1134, 1144–47 (Del.Ch.1994); <u>see</u> <u>also</u> <u>Telstra Corp. Ltd. v. Dynegy, Inc.</u>, Civ.A. 19369, 2003 WL 1016984, at *8 (Del. Ch. Mar, 4, 2003) (holding against granting rescissory damages, but stating that "[a]t equity, rescissory damages should only be awarded where the equitable remedy of rescission is impractical but otherwise warranted").

34.     Courts in New York have awarded rescissionary damages under circumstances such as those found here. <u>See</u> <u>Syncora</u>, 935 N.Y.S.2d at 870 ("Here, rescission is warranted, but impractical. … Based upon the impracticability of rescission, and the fact that rescissory damages are the financial equivalent of rescission, …, the court holds that rescissory damages are appropriate in this instance under persuasive case law and this court's power to award relief") (<u>citing</u>, <u>e.g.</u>, CPLR 3017(a)).

7

Case 2:23-cv-06188-JMW    Document 266-2    Filed 05/08/25    Page 9 of 13 PageID #: 6486

35.     Based on the foregoing, Deo is not entitled to any money upon an award of rescission of the Cross-Purchase Agreement.

**Defendant's Cross-Motion for a Declaratory Judgment Must be Denied**

36.     "The Supreme Court 'may render a declaratory judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed'" See Kennedy v. Suffolk Cnty., 181 N.Y.S.3d 291, 293–94 (2d Dept. 2022) (citations omitted) (quoting CPLR 3001).   "To constitute a 'justiciable controversy,' there must be a real dispute between adverse parties, involving substantial legal interests for which a declaration of rights will have some practical effect" Id. (citations omitted).   It is axiomatic that "[c]ourts are generally prohibited from issuing advisory opinions or ruling on hypothetical inquiries." See Coleman v. Daines, 19 N.Y.3d 1087, 1090.

37.     Here, Defendant's bid for a declaratory judgment fails to pass muster out of the gate; this is because Northshore, Sunrise, and Superb are each no longer operational due to Deo's fraudulent conduct.  See Superb Motors Inc v. Deo, Case No.: 2:23-cv-6188 (JMW), ECF Docket Entry 204 ¶¶ 1, 63, 75.

38.     Under such circumstances, this Court's rendering of a declaratory judgment would be purely advisory with no practical effect, and courts routinely deny motions for a declaratory judgment where the subject matter of the relief requested deals with past conduct and nothing will be gained from a declaration on a forward looking basis.  See, e.g., Wolf v. Mony Life Ins. Co., No. 517078/2024, 2025 WL 1132809, at *6 (N.Y. Sup. Ct. Apr. 14, 2025) ("Plaintiffs' declaratory relief claim erroneously seeks to adjudicate prior conduct and purported injuries, … Because Plaintiffs do not seek a finding regarding any ongoing or future duties …, Plaintiffs' cause of action for declaratory judgment is improper").

8

Case 2:23-cv-06188-JMW    Document 266-2    Filed 05/08/25    Page 10 of 13 PageID #: 6487

39.     As held by the Court of Appeals, "[t]he primary purpose of declaratory judgments is to adjudicate the parties' rights *before* a 'wrong' actually occurs in the hope that later litigation will be unnecessary.  See Matter of Morgenthau v. Erlbaum, 59 N.Y.2d 143, 148 (1983); see also Klosterman v. Cuomo, 61 N.Y.2d 525, 538 (1984); Trovato v Galaxy Sanitation Servs. of NY, Inc., 171 A.D.3d 832 (2d Dept. 2019).

40.     Moreover, "[t]he decision to entertain an action for declaratory judgment is a matter committed to the sound discretion of Supreme Court, which may decline to consider such relief where other adequate remedies are available." See Clarity Connect, Inc. v AT&T Corp., 15 A.D.3d 767, 767 (3d Dept 2005).

41.     Based on the foregoing, Deo's attempt to time travel using a declaratory judgment motion as a vehicle is entirely improper.

42.     Even assuming *arguendo* that Deo could present a motion for a declaratory judgment under such circumstances, this bid fails for numerous reasons.

43.     First, as set forth *supra*, both the operating agreements for Northshore and Sunrise require unanimous consent for a new member, and Deo fails to provide any such consent.

44.     Second, Deo fails to establish that the requirements of the BCL have been met in order to establish his ownership of shares.

45.     BCL § 909 sets forth the requirements for the sale or ownership of shares.  See Theatre Dist. Realty Corp. v. Appleby, 986 N.Y.S.2d 113, 114 (1st Dept. 2014) ("BCL § 909(a) governs the disposition of all or substantially all of a corporation's assets, 'if not made in the usual or regular course of the business actually conducted by such corporation'").

9

Case 2:23-cv-06188-JMW    Document 266-2    Filed 05/08/25    Page 11 of 13 PageID #: 6488

46.     "The purpose of [BCL § 909] was to prevent a corporation from disposing of a major portion of its property without obtaining prior approval of its shareholders." See Dukas v. Davis Aircraft Products Co., Inc., 131 A.D.2d 720, 721 (2d Dept 1987).

47.     Thus, even if Aaronson's email somehow conveyed the ownership interest of Northshore and Sunrise to Deo (which it does not), it is void under BCL § 909 because the other members of Northshore and Sunrise did not approve of the transaction as required thereunder.

48.     The statute[4] specifically provides, among other things, that the remaining members are entitled to notice of the sale of Northshore and Sunrise.  See Haruvi v. Hungerford, 223 N.Y.S.3d 636, 638 (1st Dept. 2024) ("Plaintiff is a minority shareholder of Simry Realty Corp. She alleges that defendants violated Business Corporation Law § 909, which prohibits the sale of all or substantially all of a business' assets, other than in the regular course of business, without certain procedural protections, including notice to each shareholder of record").

49.     Critically, the First Department held in Haruvi that the plaintiff there may seek rescission due to violations of BCL § 909; as a putative member of both Northshore and Sunrise, Urrutia is similarly entitled to rescission.

50.     Even if established, BCL § 910 and LLC Law § 1005 sets forth rights of any minority owner to payment for their interest, which is material and would affect Urrutia's interest in Northshore and Sunrise.

51.     Thus, Deo's claim of 100% ownership is directly contradicted by his repeated assertions that Sara Deo owned one percent (1%) of Northshore and Sunrise.

---

[4] Since Northshore and Sunrise are both limited liability companies, the New York Limited Liability Company Law ("LLC Law") applies.  The analogue to BCL § 909 is LLC Law § 1002. Pursuant to LLCL § 1002, before an LLC may enter into a merger agreement, a meeting to vote on the merger must be held and the members must be given 20 days notice of the meeting.  See Slayton v. Highline Stages, LLC, 996 N.Y.S.2d 881, 882 (N.Y. Sup. Ct. 2014).

10

Case 2:23-cv-06188-JMW   Document 266-2   Filed 05/08/25   Page 12 of 13 PageID #: 6489

52. Critically, his admission defeats his claim that he is the sole owner of Northshore and Sunrise as he represented and warranted in the Cross-Purchase Agreement, rendering his motion for a declaratory judgment meritless and solidifying Urrutia's entitlement to summary judgment for an award of rescission.

**WHEREFORE**, Plaintiff respectfully prays that: (i) his motion, pursuant to CPLR § 3212, for an summary judgment, be granted in all respects; (ii) Defendant's cross-motion, pursuant to CPLR § 3001, be denied in its entirety; and (iii) this Court grant Plaintiff such other and further relief as it deems just, equitable, and proper.

Dated: Jamaica, New York
       April 23, 2025                          Respectfully submitted,

                                               **SAGE LEGAL LLC**

                                               __/s/ Emanuel Kataev, Esq._____
                                               Emanuel Kataev, Esq.
                                               18211 Jamaica Avenue
                                               Jamaica, NY 11423-2327
                                               (718) 412-2421 (office)
                                               (917) 807-7819 (cellular)
                                               (718) 489-4155 (facsimile)
                                               emanuel@sagelegal.nyc

                                               *Attorneys for Plaintiff*
                                               *Robert Anthony Urrutia*

**VIA NYSCEF**
All counsel of record

11

Case 2:23-cv-06188-JMW   Document 266-2   Filed 05/08/25   Page 13 of 13 PageID #: 6490

## CERTIFICATION PURSUANT TO COMMERCIAL DIVISION RULE 17

I, Emanuel Kataev, Esq., an attorney duly admitted to practice before the courts of the State of New York, hereby certify that this affirmation complies with the word count prescribed by Rule 17 of the Commercial Division of the Supreme Court of the State of New York (22 NYCRR 202.70(g)), containing 3,198 words, excluding the caption and signature block. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this affirmation.

Dated: Jamaica, New York
      April 23, 2025              Respectfully submitted,

**SAGE LEGAL LLC**

  */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiff*
*Robert Anthony Urrutia*

<u>**VIA NYSCEF**</u>
All counsel of record