UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SUPERB MOTORS INC. *et al.*,

                *Plaintiffs*,

                                                                    **MEMORANDUM**
                                                                       **AND ORDER**
           -against-                                            23-CV-6188 (JMW)

ANTHONY DEO *et al.*,

                *Defendants*.
------------------------------------------------------------X

**A P P E A R A N C E S:**

    Nicholas A. Savino
    Michael E. Sims
    **Zeichner Ellman & Krause LLP**
    730 Third Avenue
    New York, NY 10017
    *Attorneys for Proposed Third-Party Intervenor*
    *Nissan Motor Acceptance Company LLC*

    Brian M. Levine
    **The Levine Firm, P.C.**
    260 North Broadway
    Suite 2a
    Hicksville, NY 11801
    *Previous Attorneys for Deo Defendants*

**WICKS**, Magistrate Judge:

    This is an action brought by various auto dealerships and their owners against their former business partners, bank and other accounting entities, alleging that Defendants engaged in various frauds and schemes to both pocket proceeds from car sales in violation of the Civil RICO Act, as well as misappropriating the dealerships' trade secrets in the car sales market at other competing dealerships. (*See generally*, ECF No. 65.) Given the extensive motion practice and resulting orders in this case, the Court assumes familiarity with the factual and procedural

1

histories.[1] Now before the Court is Proposed Third-Party Intervenor Nissan Motor Acceptance Company LLC's ("Nissan") Motion to Intervene (ECF Nos. 229, 244), which is opposed by the Deo Defendants[2] (ECF No. 239). For the reasons stated herein, Nissan's Motion to Intervene (ECF No. 229) is **DENIED**.

## LEGAL FRAMEWORK

Pursuant to Fed. R. Civ. P. 24, a party may intervene in a civil case either as a matter of right or on a permissive basis. *See* Fed. R. Civ. P. 24. Intervention is appropriate as matter of right if the party seeking to intervene:

> [c]laims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

"To intervene as of right under Federal Rule of Civil Procedure 24(a)(2), 'an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action.'" *See Griffin v. Sheeran*, 767 F. App'x 129, 132 (2d Cir. 2019) (quotation omitted) (summary order); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 4673877, at *5 (E.D.N.Y. Nov. 5, 2024) ("Failure to satisfy any one of these requirements is sufficient to deny the application.").

---

[1] For a full recitation of the factual and procedural histories, *see* ECF No. 230.

[2] "Deo Defendants" are Anthony Deo, Sarah Deo, Harry Thomasson, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

"Under Fed. R. Civ. P. 24(b)(1)(B), the court may permit intervention for a party who makes a 'timely motion' and 'has a claim or defense that shares with the main action a common question of law or fact.'" *Id*. (quoting Fed. R. Civ P. 24(b)(1)(B)). "Permissive intervention is 'within the court's broad discretion.'" *Id*. (quoting *Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 70 (E.D.N.Y. 2012)). "In addition to the Rule 24(a)(2) factors, 'the court must consider whether permissive intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. (quoting *Sylla v. Amazon Lab. Union*, No. 23-CV-05261 (AMD) (TAM), 2024 WL 2079601, at *4 (E.D.N.Y. May 9, 2024)); *Ripple Labs, Inc.,* 20 Civ. 10832 (AT), 2021 U.S. Dist. LEXIS 190855 at *6 (citing Fed. R. Civ. P. 24(b)(3)) (Courts consider the same factors as on a motion to intervene as of right, but also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."); *Flowers v. Webb,* 575 F. Supp. 1450, 1458 (E.D.N.Y. 1983) (same); *see also Jones v. Stanford*, 525 F. Supp. 3d 420, 423 (E.D.N.Y. 2021) (quoting 7C Wright & Miller, § 1913) ("This Court has broad discretion in deciding whether to grant permissive intervention. 'It is wholly discretionary with the court whether to allow intervention under Rule 24(b), and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.'").

Under both provisions of Rule 24, the threshold inquiry is whether the application for intervention is timely. *See Floyd v. City of New York*, 302 F.R.D. 69, 84 (S.D.N.Y. 2014), *aff'd in part, appeal dismissed in part,* 770 F.3d 1051 (2d Cir. 2014); *see also Tummino v. Hamburg*, 260 F.R.D. 27, 35 (E.D.N.Y. 2009) (internal citations omitted) (cleaned up) ("Under either test, however, the motion to intervene must be timely. Failure to satisfy *any one* of these requirements is a sufficient ground to deny the application. Thus[,] an untimely motion to intervene must be

3

denied."). "Timeliness under Rule 24 is determined based on factors including '(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 4673877, at *5–6 (quoting *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)). "This timeliness assessment must be evaluated against the totality of the circumstances before the court." *Id.* (internal citations omitted). "As to both intervention of right and permissive intervention, Fed. R. Civ. P. 24(c) requires the movant to 'state the grounds for intervention' and attach a 'pleading that sets out the claim or defense for which intervention is sought.'" *Id.* (quoting Fed. R. Civ. P. 24(c)).

It is against this backdrop that the Court considers Nissan's application.

## DISCUSSION

Nissan argues that it has met all the factors to intervene as of right pursuant to Fed. R. Civ. P. 24(a), or in the alternative should be permitted to intervene pursuant to Fed. R. Civ. P. 24(b). (ECF No. 229-8 at 7.) The undersigned finds Nissan has not, as outlined below.

### I. **Intervention as of Right**

#### a. *Timeliness*

The threshold inquiry under Rule 24, whether as of right or permissive, is timeliness of the application. *See Floyd*, 302 F.R.D. at 84. Therefore, the Court evaluates the "timeliness" factors under Rule 24: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against

4

a finding of timeliness[,]" to identify whether Nissan has made this threshold showing. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2024 WL 4673877, at *5–6 (quoting *Pitney Bowes*, 25 F.3d at 70). "This timeliness assessment must be evaluated against the totality of the circumstances before the court." *Id*. (internal citations omitted); *Pike Co., Inc. v. Universal Concrete Prod., Inc.*, 284 F. Supp. 3d 376, 395 (W.D.N.Y. 2018) (internal citations omitted) (cleaned up) ("Although the passage of time must be considered by a court in determining the timeliness of the motion, the mere lapse of time does not render a motion to intervene untimely.  Indeed, it is firmly established that the most significant criterion in determining timeliness is whether the delay in moving for intervention has prejudiced any of the existing parties."); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 594–95 (2d Cir. 1986) ("The timeliness requirement is flexible and the decision is one entrusted to the district judge's sound discretion.").

Nissan contends that this motion is timely because (i) it is brought approximately one month after it entered into an agreement on January 2, 2025, with non-party Team Imports LLC, guaranteed by Plaintiff Robert Urrutia (the "Obligors"), where the Obligors agreed to surrender the Team Auto Vehicles following either the Injunction being lifted or a court order directing dispositions of the vehicles (the "Surrender Agreement")[3]. (ECF No. 229-8 at 3, 5.) Nissan also states this was done after the Deo Defendants submitted their reply in support of the Motion for Contempt (ECF No. 225). (*Id.* at 1-2, 5.)

*With respect to the first factor*, the action was commenced on August 17, 2023 (ECF No. 1), and it was not until March 18, 2025, that Nissan moved to intervene (ECF No. 229) –

---

[3] The Surrender Agreement expressly states that "Dealership has agreed to surrender possession of the Collateral to [Nissan] for safekeeping and [Nissan] is willing to accept possession of the Collateral for storage at a secure auction lot (the "Auction Lot") on the terms and conditions set forth herein." (ECF No. 229-7 at 1.)

nineteen months after the commencement of the action – but only two months following the Surrender Agreement. *See Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996) (internal citations omitted) ("Among the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion."). However, this is not the first agreement into which Nissan and Plaintiffs have entered.

Around February 10, 2021, Team Imports LLC d/b/a Team Mitsubishi-Hartford entered into an Automotive Wholesale Financing and Security Agreement ("Wholesale Agreement"), where Nissan agreed to finance Team Imports LLC's "acquisition of new and used automobiles, trucks and other vehicles." (ECF 229-1 at ¶ 14, Exhibit 1.) In order to secure the financing, Team Imports LLC granted Nissan a security interest in, *inter alia*, all of its property including automobiles. (*Id.* at ¶ 15.)

At the same time, Team Imports LLC and Nissan entered into a Capital Loan and Security Agreement (the "Capital Loan Agreement"), where Nissan lent $714,541.00, with repayment to occur in accordance with the terms of this agreement. (ECF 229-1 at ¶ 16, Exhibit 2.) The Capital Loan Agreement also provided Nissan with a security interest in Team Imports LLC's property, including the Vehicles in question here. (*Id.* at ¶ 17.) Another agreement was entered into on November 11, 2022 (the "Cross-Collateralization Agreement"), where Plaintiffs along with Team Imports, Team Auto Group LLC ("Team Group"), and Team Nissan Inc. ("Team Nissan," together with Plaintiffs, Team Group, and Team Nissan, and collectively "Borrowers"), agreed with Nissan to "cross-collateralize all present and future obligations by Borrowers and [Nissan]." (*Id.* at ¶ 18.) Plaintiff, Mr. Urrutia personally guaranteed the Cross-Collateralization Agreement on behalf of Borrowers. (*Id.* at ¶ 19.) The next agreement that the parties executed was the Surrender Agreement dated January 2, 2025. (*Id.* at ¶ 22.)

6

What is troublesome though is Nissan's termination letter at ECF No. 18-2, and the status of the prior agreements.[4] Indeed, the Hon. Orelia E. Merchant in her September 29, 2023 Electronic Order noted that based on "Superb's own admission, its contracts and relationship with NMAC were ostensibly canceled on 9/18/2023. It is entirely unclear, then, the enforceability of such contracts, notwithstanding any language in the contracts to the contrary." Electronic Order dated 9/29/2023 (citing ECF 18-2; 9/15/23 Hearing Transcript 38:23).

Nonetheless, Nissan's assertion that this is a timely application is simply not supported by the record. Given the fact that Nissan has allegedly been given a security interest as far back as February 10, 2021, Nissan could have moved to intervene from the moment Plaintiffs commenced this action back in 2023.[5]

*With respect to the second factor*, the Court finds Nissan's intervention could prejudice the Deo Defendants, require additional motion practice and require further modification to the Injunction. "Permitting intervention at this point would force the parties who are directly interested in the subject of the litigation . . . to engage in yet another round of costly and time-consuming litigation." *Tummino*, 260 F.R.D. at 36–37; *Yonkers Bd. of Ed.,* 801 F.2d at 596 ("[I]n making the choice between the possibility of harm to the late-arriving prospective intervenors as against the possible harm to parties who have participated diligently during the pertinent portions of this litigation, it does not strike us as unjust that intervention on the part of the late-arrivers must yield under all of the circumstances herein.").

---

[4] The contents of this docket entry have been filed under seal. All that can be noted, however, is that the status of the Agreements is questionable following the August 18, 2023 notice.

[5] Deo Defendants also allege in their Opposition that Nissan was notified by Deo Defendants' Counsel of the Preliminary Injunction and the Second Contempt Motion no later than September 2024, and yet still waited six months to file the instant motion. (ECF No. 239 at 4.)

7

By contrast, *as to the third factor*, denying intervention would not prejudice Nissan. Nissan claims to have a direct interest under the Wholesale Agreement with the Obligors. Through that Agreement, Nissan extended financing to Team Imports LLC, which granted Nissan a security interest in the thirteen (13) vehicles that are subject to the Injunction. (ECF Nos. 229-8 at 5-6; 244 at 4-5.) Deo Defendants disagree stating, its interests, if any align with those of Superb Plaintiffs[6] because they both seek to have the Injunction lifted. (ECF No. 239 at 8-9.) And at the latest Conference held on May 9, 2025, Counsel for Superb Plaintiffs, informed the Court that Nissan does not have title to these vehicles and the only interest Nissan holds is to satisfy Team Imports LLC's and Plaintiff Urrutia's debt owed to Nissan. (ECF No. 267.) Notably, Nissan as the proposed intervenor, has failed to establish that their "interest" "would be impaired or impeded." *See New York SMSA Ltd. P'ship v. Vill. of Nelsonville*, No. 18 CV 5932 (VB), 2019 WL 1877335, at *2 (S.D.N.Y. Apr. 26, 2019) (finding that the proposed intervenor's interest "is best pursued in a separate lawsuit" and thus, their interest would not be impaired by denying intervention). In fact, as indicated in the Surrender Agreement, there is currently a pending lawsuit in the Superior Court of Connecticut, entitled *Nissan Motor Acceptance Company v. Team Imports LLC et al*, which encompass claims for the alleged security interest at issue here.[7] Therefore, Nissan may continue to adjudicate its claims in their pending lawsuit.

*Finally, as to the fourth factor*, the Court finds that unusual circumstances do indeed exist. In essence, Nissan is asking to intervene as a creditor to satisfy its debt against the Superb Plaintiffs by lifting the Injunction and receiving the proceeds of the proposed sale of vehicles. (ECF No. 229-8 at 3.) This request is more akin to that of a creditor in a bankruptcy proceeding.

---

[6] "Superb Plaintiffs" are Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia.

[7] Nissan cites to case number HHD-CV-24-6189271-S. However, upon a search, the case has been transferred to case number FST-CV-24-6072327-S.

*See Harrington Bros. v. City of New York*, 35 F.2d 1009, 1009 (S.D.N.Y. 1929) ("To allow such an intervention as the petitioner seeks would constitute a precedent under which any judgment creditor, or perhaps any creditor, of a plaintiff in an equity suit in this court, might claim a right to intervene, irrespective of his relation to the suit before the court, or of his interest in the remedy invoked by the plaintiff."). As the *Harrington* Court observed, permitting intervention under these circumstances becomes an open invitation to judgment creditors to seek intervention when a debt owed is the only connection.

Moreover, the Preliminary Injunction (ECF No. 55) clearly states that the Injuncted Superb Vehicles "are to Remain at or otherwise be returned to a Cross-Collateralized Urrutia Dealership Lots."[8] "Remain" was defined as the subject injuncted vehicle:

> a. may not leave the geographic area or bounds of the appointed lot; b. may not be sold, transferred, gifted, disposed, destroyed, or ***otherwise encumbered***; c. may not otherwise change legal or equitable title except as ordered by another court of competent jurisdiction; d. may not be driven or otherwise used or maintained on the lot in such a way that would damage the resale value of the vehicle.

(*Id.* at 29.) (emphasis added). It appears that this security interest was granted to Nissan in 2021. However, the most recent Surrender Agreement demonstrates an additional encumbrance by agreeing to grant possession to Nissan without this Court's approval. As such, Plaintiffs are in violation of the Injunction.

Having considered the factors outlined above, the Court finds Nissan's application to intervene is untimely under Rule 24.

b. *Nissan's Interest*

Here, Nissan has demonstrated an interest in some of the property at issue. Nissan entered into the Surrender Agreement in January with the Obligors, where the Obligors agreed to

---

[8] The Undersigned allowed relocation of these Vehicles to Anthony Deo's lot at the latest Conference, while noting that all other conditions are to remain in place. *See* Electronic Order dated 5/09/2025.

9

surrender the Team Auto Vehicles following either the Injunction being lifted or a court order directing dispositions of the vehicles. (ECF No. 229-8 at 3, 5.) Moreover, the Wholesale Agreement from 2021 provided Nissan with a security interest in the vehicles, and now the requested sale of these vehicles would satisfy some of the substantial debt owed by Team Imports LLC to Nissan. (*Id.* at 5-6.)

Despite the Deo Defendants' assertion that this interest is remote and conclusory (ECF No. 239 at 5-7), Nissan does have an interest in some of the property in the underlying action as demonstrated in Nissan's exhibits to the instant motion. (ECF No. 229-7 at 1.) *See Long Island Trucking, Inc. v. Brooks Pharmacy*, 219 F.R.D. 53, 56 (E.D.N.Y. 2003) (quoting *Brennan v. N.Y.C. Bd. of Educ.,* 260 F.3d 123, 129 (2d Cir. 2001) (Rule 24 requires "an interest relating to the property or transaction which is the subject of the action.")). In particular, pursuant to the Wholesale Agreement and the Capital Loan Agreement, Nissan has a security interest in at least some of the Injuncted Vehicles. (ECF No. 229-1 at ¶¶ 14-17.) "For an interest to be cognizable under Fed. R. Civ. P. 24(a)(2), it must be direct, substantial, and legally protectable. Such an interest must be direct, as opposed to remote or contingent. An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Brennan*, 260 F.3d at 129. Rule 24(a)(2) "does not require that an intervenor prove a property right, whether in the constitutional or any other sense;" rather what must be show is an *interest relating* to the property or transaction. *Id*. at 130; *see also Continental Illinois Natl. Bank & Trust Co. V. Seltel Inc.*, No. 85 Civ. 3430-CSH, 1986 U.S. Dist. LEXIS 20527, at *6-7 (S.D.N.Y. Sept. 11, 1986) (stating that the interest in property or transaction under Rule 24(a)(2) "must be significant, must be direct

10

rather than contingent, and must be based on a right which belongs to the proposed intervenor rather than to an existing party to the suit"). Here, the interest is direct.

### c. *Interest Impaired by the Disposition of the Action*

As discussed *supra*, Nissan has failed to establish its interest in this action would be impaired.

Nissan argues that if this motion is not granted, its interest in the vehicles and their substantial debt "may be impaired by any delay in [Nissan's] liquidation of the Team Auto Vehicles" and due to the nature of vehicles depreciating overtime, the longer Nissan waits, the bigger the loss of value. (ECF No. 229-8 at 6.) However, at bottom, Nissan seeks to vacate the Injunction solely to perfect a lien, which could be done in a separate action such as "a foreclosure action in an appropriate forum," or the current pending action in Connecticut. Denial of intervention does not deprive Nissan of remedies available elsewhere. Nissan can concurrently bring an action to satisfy its debt against the Superb Plaintiffs, which as discussed, Nissan has done in the Superior Court in Connecticut. *See Eddystone Rail Co., LLC v. Jamex Transfer Servs., LLC*, 289 F. Supp. 3d 582, 594 (S.D.N.Y. 2018) (discussing that the denial of intervention would not prevent the proposed intervenor from asserting their claims); *Louis Berger Grp., Inc. v. State Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) (denial of intervention would not prevent the intervenor "from protecting its interests in another forum"). And given the size of debt owed to Nissan -- almost $5 million -- Nissan's interest would not be impaired by the disposition of this action.

### d. *Adequate Protection of Nissan's Interest*

Nissan asserts that "the gravity of [Nissan's] concerns over its substantial interest in the Team Auto Vehicles and the significant Debt they secure meets the 'minimal' requirement to

11

establish that its interests are not adequately represented by the parties in this litigation without its intervention." (ECF No. 229-8 at 7.) Deo Defendants disagree and argue "the only reason [Nissan] claims inadequate representation is that the injunction remains in place … [b]ut that reflects a judicial determination – not a failure of advocacy." (ECF No. 239 at 8-9.)

It is true that the burden of demonstrating that a proposed intervenor's interests are not adequately represented by an original party is "minimal." *Eddystone Rail Co., LLC*, 289 F. Supp. 3d at 592 (quoting *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991)). However, considering that the Superb Plaintiffs recently filed a motion asking to lift the Injunction to allow Nissan to take possession of the Injuncted Superb Vehicles as well as sell these vehicles to Nissan, the interests of Nissan are adequately represented and protected. (ECF No. 256.)

Accordingly, Nissan's Motion to Intervene as of right is denied.

**II.     Permissive Intervention**

A movant seeking permissive intervention must demonstrate that it "has a claim or defense that shares with the main action a common question of law or fact." *BNP Paribas v. Kurt Orban Partners LLC*, 19-cv-9616 (ALC) (SLC), 2021 U.S. Dist. LEXIS 19938, at *9 (S.D.N.Y. Feb. 2, 2021) (citing Fed. R. Civ. P. 24(b)(1)(B)). "Claim" or "defense" for permissive intervention purposes only requires establishing some interest on the movant's part. *Id*. "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" *Pitney Bowes,* 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(2)).

The Court has broad discretion in allowing a party to permissibly intervene. *Jones*, 525 F. Supp. 3d at 423. Given application of the factors and prejudice addressed above, coupled with the fact that there are no common issues between Nissan's interest and the original parties' claims,

12

Nissan's application is denied. *Id.* Nissan fails to demonstrate that it shares a common claim or defense with those asserted already in the action. Nissan states it only seeks intervention "solely for the limited purpose of lifting what remains of the Injunction as it relates to the Team Auto Vehicles." (ECF No. 244 at 4.) *See Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96-cv-2064 (RWS), 1996 WL 346352, at *4 (S.D.N.Y. June 25, 1996) (denying permissive intervention, in part, because the proposed intervenor and plaintiff's claims were distinct.").

Moreover, allowing Nissan to intervene would inevitably impact the original parties because as the undersigned noted at the latest Conference, the purpose of the Injunction is to preserve the parties' assets, *i.e.,* the Injuncted Superb Vehicles. (ECF No. 267; Electronic Order dated May 9, 2025.) Thus, the circumstances here simply do not favor the grant of permissive intervention.

## CONCLUSION

For the foregoing reasons, Nissan's Motion to Intervene (ECF No. 229) is **DENIED**.

Dated: Central Islip, New York
May 20, 2025

S O  O R D E R E D:

/s/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

13