```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

------------------------------X  Docket#
SUPERB MOTORS, INC. et al.,    : 23-cv-06188-JMW
                               :
              Plaintiffs,      :
                               :
     - versus -                : U.S. Courthouse
                               : Central Islip, New York
DEO et al.,                    :
                               : May 9, 2025
              Defendants       : 3:09 p.m.
------------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE JAMES M. WICKS
UNITED STATES MAGISTRATE JUDGE


**A   P   P   E   A   R   A   N   C   E   S:**


**For the Plaintiff:**           **Emanuel Kataev, Esq.**
                                 Sage Legal LLC
                                 18211 Jamaica Avenue
                                 Jamaica, NY 114232327


**For the Defendant:**           **Harry R. Thomasson, Jr., pro se**
                                 3280 Sunrise Highway, Box 112
                                 Wantagh, NY 11793


                                 **Anthony Deo, pro se**


**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 RL.Transcriptions2@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

```
 1          THE CLERK:  Calling civil case 2023-6188,

 2   Superb Motors, Inc. et al. v. Deo et al.

 3          Counsel, please state your appearances for the

 4   record.

 5          MR. KATAEV:  Good afternoon, your Honor.

 6   Emanuel Kataev of Sage Legal LLC for plaintiffs Superb

 7   Motors, Inc., Team Auto Sales LLC, and Robert Anthony

 8   Urrutia.

 9          THE COURT:  Good afternoon, Mr. Kataev.  And

10   you can remain seated.  Just stay close to the

11   microphone.  All right?

12          MR. KATAEV:  Thank you.

13          THE COURT:  Thank you.

14          MR. THOMASSON:  Harry Thomasson, 3280 Sunrise

15   Highway, Box 112, Wantagh, New York.  I am pro se, your

16   Honor, at the moment in this case.

17          THE COURT:  Okay.  Yes, I saw your appearance,

18   Mr. Thomasson.  Nice to see you.

19          MR. THOMASSON:  Yes, it's good to see you

20   again, sir.

21          THE COURT:  Okay.  So in your letter that you

22   filed yesterday, that sought a multitude of relief, pre-

23   motion relief.  So we posted an order that you probably

24   saw already allowing opportunity to put in opposition to

25   that pre-motion request.  And then we'll probably set up
```

3

Proceedings

1    a conference and/or a briefing schedule.

2             MR. THOMASSON:  I understand, your Honor.  I

3    appreciate that.  Actually, just as a housekeeping

4    matter, because I was previously disqualified from the

5    case --

6             THE COURT:  Yes.

7             MR. THOMASSON:  -- the system last night let me

8    file things but I have not got --

9             THE COURT:  Well, you always allowed to remain

10   in as pro se.

11            MR. THOMASSON:  Yes, I understand that.

12            THE COURT:  Yes.

13            MR. THOMASSON:  But since last night when I

14   filed those documents --

15            THE COURT:  Yes.

16            MR. THOMASSON:  -- the system is not sending me

17   the typical email notice of filings including your order

18   this morning.  I did happen to see it before I left to

19   come here an hour or so ago, so I am aware of this

20   morning's order that you signed, or that you issued, but

21   not because I got it in the normal course.

22            THE COURT:  All right.  So that you ought to,

23   when you leave here, just check with the clerk's office

24   and see what kind of issues that they have.

25            MR. THOMASSON:  I did that already, Judge, and

4

Proceedings

1    they told me they were going to work on it.

2           THE COURT:  Awesome.  All right.  So Deo

3    defendant, the entities have not appeared with counsel,

4    correct, as of this time?

5           MR. THOMASSON:  As of this moment, I can only

6    represent myself and I do only represent myself.

7           THE COURT:  Yes.

8           MR. THOMASSON:  But I know what the Deos'

9    wishes are regarding their entities.  And of course I

10   expressed much of that yesterday in my correspondence to

11   the Court.

12          THE COURT:  Yes.  Well, they have to appear, as

13   I've said before, they have to appear with counsel.  This

14   isn't a Judge Wicks rule, this is the law.  An entity has

15   to appear with counsel.  Otherwise, the result is going

16   to be a default against those entities.

17          MR. THOMASSON:  I understand.  I will simply

18   ask for whatever patience I can get from the Court until

19   we have my letter from yesterday sorted out.

20          THE COURT:  Yes.  Well, on the

21   disqualification, what has changed since the

22   disqualification?  See, what I was expecting to see was,

23   you know, Judge, you ruled on the motion to dismiss, you

24   knocked out a bunch of claims and the claims that were

25   knocked out, you know, were the basis for disqualifying

5

Proceedings

1  me and they don't -- so therefore, there's no grounds any

2  longer.  But that isn't what the argument is.  Your

3  argument is your clients want you.

4            MR. THOMASSON:  Well, I don't want to ignore

5  what you just said.

6            THE COURT:  Yes.

7            MR. THOMASSON:  I'm aware of that issue.

8            THE COURT:  Yes.

9            MR. THOMASSON:  But technically, the RICO

10  claims still survive.

11            THE COURT:  Yes.

12            MR. THOMASSON:  And my position is that the

13  only substantive fact that has well ever been alleged but

14  that may still exist --

15            THE COURT:  Yes.

16            MR. THOMASSON:  -- other than some broad

17  strokes, the only real substantive thing seems to be that

18  they gave me back $735,000 that Anthony Deo borrowed and

19  I gave it back to Anthony Deo and that constitutes a

20  crime or some other thing.

21            THE COURT:  I know, but you're still in it till

22  you're out of it, and you're in it which means you're

23  going to be a witness, and that was really the basis for

24  the disqualification.

25            MR. THOMASSON:  Right.  I understand.  Although

6

Proceedings

1  if the Court has ever seen my complaint from the other

2  action --

3          THE COURT:  I'm assigned to that case too, so

4  I'm familiar with both.

5          MR. THOMASSON:  Right.  And the amended

6  complaint.

7          THE COURT:  Yes.

8          MR. THOMASSON:  And the fact of the matter is

9  is that's just not a relevant issue to what it is that

10  happened.

11          THE COURT:  All right.  Mr. Kataev, do you have

12  objections to Mr. Thomasson appearing for the Deo

13  defendants?

14          MR. KATAEV:  Absolutely, your Honor.

15          THE COURT:  Okay.  So we're going to have to

16  have briefing on that.  Okay?

17          MR. THOMASSON:  Okay.  All right.

18          THE COURT:  So you'll put in your opposition

19  letter.  You saw the bounce order this morning.

20          MR. KATAEV:  I did, your Honor.

21          THE COURT:  All right.  You'll put in

22  whatever -- this isn't for the briefing.  This is just

23  your opposition to the pre-motion letter.

24          MR. KATAEV:  Letter response in opposition.

25          THE COURT:  Letter response in opposition.  And

7

Proceedings

1    then we'll either set up a conference and/or a briefing

2    schedule and we'll do it -- it'll be pretty tight though.

3              MR. THOMASSON:  That's okay, Judge.  And that's

4    also true then for the other relief that I asked for?

5              THE COURT:  Yes.  Yes, all the other relief.

6    Yes.  There's a lot of stuff you asked for.

7              MR. THOMASSON:  Well, I think it's only four

8    things, but okay.

9              THE COURT:  Four?  Really?  It seemed like more

10   than that.  But I'll count again.

11             All right.  So let's get to why we're here

12   today.  And this is for the application to modify the

13   injunction.  And just to set the table here, the original

14   injunction which was issued in September of '23, right?

15             MR. KATAEV:  That's correct, your Honor.

16             THE COURT:  That was then modified by me at

17   docket entry 172 I think.

18             MR. KATAEV:  That's correct, your Honor.

19             THE COURT:  All right.  Back in May of '24, a

20   year later.  So here we are.  It's like every

21   anniversary, it's the second anniversary, let's modify

22   the injunctions.  Is that what we have, Mr. Kataev?

23             MR. KATAEV:  Circumstances change over the

24   years, your Honor.

25             THE COURT:  Apparently every year.  All right.

8

Proceedings

1    Well, here we are anyway.  A couple of things.  The basis

2    for modifying an injunction has to show change to

3    circumstances that justify the alteration, right, of the

4    injunction.  And only if you can show that these changed

5    circumstances don't justify the injunction anymore or if

6    the injunction remains in place in light of these changed

7    circumstances it would work oppressively against the

8    enjoined party.  That's essentially the standard in a

9    nutshell.  Am I right?

10            MR. KATAEV:  That's correct, your Honor.

11            THE COURT:  Okay.  The problem is -- all right.

12   So I gave until, Mr. Thomasson, May 9th, today, for the

13   Deo defendants to appear with counsel.  They have not.

14   Now, I know you're going to be moving to get back in and

15   represent them as counsel, but as of now they have no

16   counsel.

17            So my hesitation going forward today was that

18   they didn't have counsel, you filed your letter last

19   night, but you know, I'm telling you -- I mean I'll look

20   at the motion papers, but unless there are really changed

21   circumstances as to disqualification, I won't have a

22   choice here.  You know, the Deo entities are going to

23   have to get counsel.  But I'll take a look at the motion.

24   You can make the motion.  But in the meantime, they have

25   no counsel.  And that date has come and passed.  There's

9

Proceedings

1  no injunction, there's no stay.

2          And so Mr. Kataev, if you or -- you're invited

3  of course, you're entitled to whatever remedies that you

4  have available for that including to seek default on the

5  entities.  I don't want to generate motion practice when

6  it's, you know, if somebody's going to appear soon.  But

7  are they going to get counsel?  I mean there's a real

8  likelihood your motion is going to get denied in terms of

9  filing --

10          MR. THOMASSON:  I understand, Judge.

11          THE COURT:  Yes.

12          MR. THOMASSON:  We have somebody that I think

13  is prepared to come in within two weeks but they just

14  couldn't do it this week.

15          THE COURT:  Who's the somebody?

16          MR. THOMASSON:  Her name?  You want the name?

17          THE COURT:  Yes, yes.

18          MR. THOMASSON:  Her name is Sharon Simon.

19          THE COURT:  Okay.

20          MR. THOMASSON:  And --

21          THE COURT:  She's admitted here?

22          MR. THOMASSON:  She's admitted here and --

23          THE COURT:  Okay.  Is she prepared to step up?

24          MR. THOMASSON:  -- I know her pretty well.

25  We've discussed this.  And she's considering doing it,

10

Proceedings

1   and she may do it, but she couldn't do it this week.  And

2   there was no way to arrange that.

3           THE COURT:  Okay.  Well, you know, I have a

4   motion before me to modify the injunction.  That's the

5   issue.  And the only one that's appeared is you pro se.

6           MR. THOMASSON:  I can speak for myself on that,

7   Judge.  I certainly can.

8           THE COURT:  Okay.  But just to be clear, you're

9   not speaking on behalf of the entities who are in default

10  and have not opposed this motion.  And even in your four

11  point letter, I didn't see any opposition to this.

12          MR. THOMASSON:  I understand, your Honor.  And

13  there is intent.

14          THE COURT:  Okay.

15          MR. THOMASSON:  I was just getting in for

16  myself today and --

17          THE COURT:  Yes, I hear you.

18          MR. THOMASSON:  -- and you know, I know what

19  everyone's position is and it's the same as mine.

20          THE COURT:  Okay.  So you read the motion to

21  modify the injunction --

22          MR. THOMASSON:  I did, your Honor.

23          THE COURT:  -- that's before us today?  Are

24  there not changed circumstances?

25          MR. THOMASSON:  I don't think there are any

11

Proceedings

1    change circumstances, your Honor.  I think that they

2    readily admit that there's a floor plan that is unchanged

3    since the injunction was put in place.

4              THE COURT:  Except the lot that their vehicles

5    are being held that is in Hartford is their lost lease.

6              MR. THOMASSON:  Well, they have -- at the time

7    that this was entered into, Urrutia had four lots.

8              THE COURT:  Yes.

9              MR. THOMASSON:  And I don't know that they have

10   explained why it can't go to another lot, or for that

11   matter why it can't go --

12             THE COURT:  Well, I'll ask him.  He's going to

13   answer that one.

14             MR. THOMASSON:  Or why it can't go to Anthony

15   Deo.  I don't know why it can't.  He has a lot.  And the

16   idea here was to preserve assets of the corporation.

17             THE COURT:  Yes.  That's the whole purpose of

18   the injunction is to preserve the assets.

19             MR. THOMASSON:  Right.

20             THE COURT:  That's the entire purpose of the

21   injunction.

22             MR. THOMASSON:  So there's no reason why those

23   cars -- we calculate the number at 30 but --

24             THE COURT:  Yes.  That's what I have.  I think

25   you do too, no?

12

Proceedings

1          MR. KATAEV:  Could you repeat that, your Honor?

2  I lost it.

3          THE COURT:  The count of cars, 30.

4          MR. KATAEV:  I believe it's 30.

5          THE COURT:  Yes.  You got two Isuzu trucks.

6  You got 13 that you claim are Mitsubishi owned.  And then

7  you got 15 others.  Am I right?  So we got 30.  Right now

8  they're located at Hartford and you lost the lease.

9  What's the status of that now?  Have there been

10  discussions with the landlord?

11          MR. KATAEV:  They're waiting for a decision

12  from the Court.  They'd like --

13          THE COURT:  Are they going to hold off until

14  there's a decision from the Court?

15          MR. KATAEV:  I don't know if they're going to

16  hold off on taking any legal action but the sale is

17  basically being finalized and they'd like to close and

18  they can't really do it --

19          THE COURT:  Yes.

20          MR. KATAEV:  -- until the vehicles are off the

21  lot.  They need to provide it free and clear.

22          THE COURT:  Why can't we store them with the

23  Deos?

24          MR. KATAEV:  Well, it's sort of like putting

25  the open cookie jar in front of the --

13

Proceedings

1    THE COURT:  Well, but there can be conditions

2  imposed.  The whole purpose of the injunction, Judge

3  Merchant's as well as my modification, was to preserve

4  these assets while you duke it out and we figure out

5  who's right and who's wrong, who owes who what.  That's

6  the purpose of the injunction in a nutshell.  So --

7    MR. THOMASSON:  I can make two offers in that

8  regard, your Honor.

9    Number one, Anthony Deo now does have a lot,

10  was not able to do so back when the injunction was put in

11  place because he was losing both of his lots that he had.

12    THE COURT:  Where's that lot?

13    MR. THOMASSON:  This lot is at 108 New South

14  Road in Hicksville, New York.  And he's got plenty of

15  room for 30 cars and --

16    THE COURT:  Describe the lot.

17    MR. THOMASSON:  It's where --

18    THE COURT:  It's an open lot?  Is it closed?

19  Is it locked?  Is it secured?  Is it covered?

20    MR. THOMASSON:  It's an open lot and it's where

21  he is presently operating a car dealership from.  So

22  it's, you know, there's cameras, there is security.

23    And the other alternative in addition to taking

24  them and preserving the cars is he's happy to take the

25  cars and sell them and put any proceeds into escrow.

14

Proceedings

1    We're happy to do that as well.

2              THE COURT:  Okay.  But isn't that what Superb

3    wants to do as well in the meantime, sell some of these

4    vehicles?  I think that's what you -- isn't that one of

5    the reliefs, the branch of relief you're looking for

6    here?

7              MR. KATAEV:  No, your Honor.  This particular

8    motion --

9              THE COURT:  Yes,

10             MR. KATAEV:  -- is merely for permission to

11   move the vehicles off the Hartford lot.

12             THE COURT:  Yes.

13             MR. KATAEV:  And we established good cause for

14   that.  There are three reasons at a minimum why they

15   should not go to the Deos.

16             First and foremost, the Deo defendants have

17   repeatedly complained about storage fees and insurance

18   costs and seeking to minimize those expenses.

19             THE COURT:  Okay.  Just bear with me.  One of

20   the branches of the order to show cause, I'm looking at

21   branch B, is to modify the injunction to permit Team to

22   sell the remaining injuncted Superb vehicles.

23             MR. KATAEV:  Yes.  I apologize.

24             THE COURT:  So you're looking to sell all

25   those.  That's part of your -- that's not going to

15

Proceedings

1    happen.

2            MR. KATAEV:  Those 13.

3            THE COURT:  Okay.  I'm not going to allow the

4    sale, just to be clear, at this juncture.  And that's --

5    you can make a motion later if and when the Deo

6    defendants appear with counsel.  If they don't, your

7    motion is going to be for default against them, and to

8    sell the vehicles.  But right now, I'm not going to allow

9    the sale of the vehicles.

10           What I am going to do is we're going to

11   relocate them.  Now let's figure out where they got to

12   go.  Okay?  Any reason, any good reason they shouldn't go

13   into the Deos' lot?

14           MR. KATAEV:  Yes.

15           THE COURT:  Why?

16           MR. KATAEV:  Besides the reason I just

17   mentioned about the costs, there's also the fact that the

18   prior Deo vehicles that went --

19           THE COURT:  What do you mean the costs?

20           MR. KATAEV:  Well, they previously submitted

21   letters complaining about the costs involved in storing

22   and insuring these vehicles.  Those are expenses that the

23   Deo defendants will have to bear if they take physical

24   possession of them.

25           THE COURT:  Okay.  But they're --

16

Proceedings

1          MR. THOMASSON:  We have a lot now.

2          THE COURT:  Now it's their lot.

3          MR. THOMASSON:  Now we have a lot.

4          THE COURT:  The costs --

5          MR. THOMASSON:  We didn't have a lot then.

6          THE COURT:  Yes.  Let me just finish.

7          MR. KATAEV:  There's insurance costs.

8          THE COURT:  Okay.  But the lot cost you're

9     eliminating.  It's preserving assets for everybody

10    because they're saying we got a lot, we got the space,

11    now we can take them and hold them.  Okay?  That

12    eliminates that.  Am I right?

13         MR. KATAEV:  No, your Honor.

14         THE COURT:  Okay.  Why aren't I right?

15         MR. KATAEV:  Well, first of all, there's the

16    insurance cost.  That's an expense they'll have to bear.

17         THE COURT:  It's a different issue.  The lot

18    cost.

19         MR. KATAEV:  As for the lot, while there is no

20    cost, the only reason they were allowed --

21         THE COURT:  So you agree with me there's no lot

22    cost.

23         MR. KATAEV:  Correct.

24         THE COURT:  Okay.  That eliminates one.  Who's

25    paying the insurance now?

Transcriptions Plus II, Inc.

17

Proceedings

1        MR. KATAEV:  I believe NMAC is, your Honor.

2        THE COURT:  And that's insurance for what?  The

3   cars or as they are stored?

4        MR. KATAEV:  The resale value of the cars.  And

5   my client has a policy in place as well.

6        THE COURT:  Yes.  So that'll remain in place no

7   matter where the vehicles are located.

8        MR. KATAEV:  Okay.  And then the other aspect

9   of the lot, your Honor --

10       THE COURT:  Yes.

11       MR. KATAEV:  -- setting aside the expense,

12  there were prior vehicles that the Deo injuncted vehicles

13  that they wanted to move to that lot, we explained that

14  holding them outside in a shared lot will not preserve

15  the resale value subjected to the elements, potential for

16  damage through accidents and --

17       THE COURT:  So where do you propose they be

18  stored?

19       MR. KATAEV:  We understand that NMAC is

20  prepared under certain conditions to --

21       THE COURT:  Who's NMAC?

22       MR. KATAEV:  NMAC is Nissan Motor Acceptance

23  Company LLC doing business as NMAC.

24       THE COURT:  Oh, you call them -- okay.  So

25  Nissan, let's call it Nissan, all right?

Proceedings                                    18

1          MR. KATAEV:  Nissan.

2          THE COURT:  So Nissan, they're seeking to

3    intervene.

4          MR. KATAEV:  That's correct.

5          THE COURT:  Okay.  That motion is fully

6    submitted.  I'm going to be ruling on that soon.  And

7    they're not here today.  I wasn't sure if they'd appear

8    today.  But tell me, while you're here, what is their

9    interest, what is Nissan's interest in this litigation

10   other than debt that's owed to it?

11         MR. KATAEV:  Well, the interest is in these

12   vehicles, your Honor.  These vehicles will be used

13   ultimately to satisfy the debt owed to it.

14         THE COURT:  Okay.  But that's just a money,

15   that's just an exchange of money.  Right?  That's

16   fungible.

17         MR. KATAEV:  Correct.

18         THE COURT:  So other than you owe Nissan a

19   debt, what interest does Nissan have in this lawsuit?

20         MR. KATAEV:  Their interest is in the vehicles.

21   Those vehicles are --

22         THE COURT:  Do they have title interest in the

23   vehicles?

24         MR. KATAEV:  I won't argue that they have

25   equitable title, your Honor, because of the UCC financing

19

Proceedings

1  statement.

2          THE COURT:  Have they argued that in their

3  intervention motion?

4          MR. THOMASSON:  No.

5          MR. KATAEV:  I don't believe they did.

6          THE COURT:  I'm pretty sure they didn't.  Yes.

7  So the only issue is that they've got a debt owed to them

8  from your client.  Correct?

9          MR. KATAEV:  That's correct.

10          THE COURT:  So all right.  I just wanted to

11  clarify that.  All right.  I'll be ruling on that soon

12  enough.  But getting back to the location, I'm not sure

13  why these shouldn't now be stored in the Deo lot.

14          MR. KATAEV:  I'll explain why, your Honor.

15          THE COURT:  Yes.

16          MR. KATAEV:  The only way they'll be able to

17  take possession of this number of vehicles is by storing

18  them outside.

19          THE COURT:  Yes.

20          MR. KATAEV:  But that will not serve the

21  purposes of the injunction to preserve their resale

22  value.  It'll be exposed to the elements.  It'll be

23  subject to the risk of damage by other cars coming in and

24  out.  It's an open lot that's shared amongst many

25  tenants.  And previously when I raised this objection it

20

Proceedings

1   was resolved by placing the Deo injuncted vehicles, six
2   of them, not 30, inside the Deo lot.  So I haven't heard
3   a representation that they'll place 30 vehicles inside.
4   I'm not sure there's enough space for 30 vehicles inside.
5   So just for that reason alone, it should not be.  My
6   understanding is that NMAC will be able to store them in
7   an indoor facility, insure them at their cost, and it
8   will not be a burden on --
9           THE COURT:  Where is that facility?  Because I
10  didn't see that anywhere in your application.
11          MR. KATAEV:  So I've had a preliminary
12  discussion with NMAC through counsel.
13          THE COURT:  Yes.
14          MR. KATAEV:  And what I've heard is they are
15  prepared to undertake this effort subject to being able
16  to go to the Hartford lot and inspect the vehicles.
17  That's a condition that they've imposed on taking it on.
18  Other than that, I don't have any further details other
19  than the commitment that --
20          THE COURT:  But where would they store them?
21  What's the location of where they would be stored?
22          MR. KATAEV:  I don't have a location, your
23  Honor.
24          THE COURT:  So how am I going to modify?  So
25  what do I do?  I mean you're asking me to modify the

21

Proceedings

1  injunction, move these vehicles to some unknown location

2  that Nissan has.  They're going to inspect them and then

3  they're going to put them somewhere where I don't know

4  where they're going to be, Judge.  How can I do that?

5          MR. KATAEV:  Well, we would supplement our

6  papers to explain to the Court --

7          THE COURT:  Okay, but they're not here.

8  Today's the return date.

9          MR. KATAEV:  I understand, your Honor.

10          THE COURT:  So --

11          MR. THOMASSON:  Your Honor, can I also just

12  address --

13          THE COURT:  Yes.

14          MR. THOMASSON:  -- a point or two?

15          THE COURT:  Of course.  Or three.

16          MR. THOMASSON:  Number one, Anthony Deo was

17  going to be allowed to store the cars that he had at

18  either one of his lots --

19          THE COURT:  I understand.

20          MR. THOMASSON:  -- until he lost them.

21          THE COURT:  Yes.

22          MR. THOMASSON:  And he had to put them then

23  elsewhere.

24          THE COURT:  That's why they were placed

25  elsewhere.

22

Proceedings

1          MR. THOMASSON:  Right.  He now has a lot.  It's

2    an open lot with a lot of spaces.  He can use every space

3    he wants.  There's over 100 spaces.  And he has at this

4    time fewer cars than we would be getting with this.

5          I also want to point out that they're actually

6    proposing let's give away cars that Anthony Urrutia and

7    Anthony Deo, through their corporations, have an interest

8    in.  Let's give them to a third party that's not

9    presently in this litigation who is owed money and who

10   only wants these cars because they're owed money from --

11         THE COURT:  All right.  You summarized my

12   position.

13         MR. THOMASSON:  Right.  We can't send it to

14   Nissan in an unknown location.  For what reason?

15         THE COURT:  Okay.

16         MR. THOMASSON:  Anthony Deo will be governed by

17   whatever order the Court puts in place and whatever it is

18   the Court needs.

19         THE COURT:  All right.  Is Mr. Deo getting

20   counsel?

21         MR. THOMASSON:  I'm sorry?

22         THE COURT:  Mr. Deo getting counsel?

23         MR. THOMASSON:  Yes.  If there's any way we can

24   have two weeks on that, Judge.  I'm confident two weeks

25   from today we'll have counsel.

23

Proceedings

1          THE COURT:  All right.  You say Mr. Deo is

2  here?

3          MR. THOMASSON:  Yeah, he's right here behind

4  me.  Yes, Judge.

5          THE COURT:  Yes.  Okay.  Why don't you --

6  because you are pro se, right?

7          MR. THOMASSON:  He is at the moment.

8          THE COURT:  You are pro se right now.  So why

9  don't you take a seat at counsel table, Mr. Deo.  You

10  have the right of course to retain a lawyer and have a

11  lawyer file an appearance, but you may proceed pro se

12  just like Mr. Thomasson is.  Understood?

13          MR. DEO:  Yes.  Yes, your Honor.

14          THE COURT:  Because we're talking about things

15  that affect you and I want you sitting at the table here.

16  Okay?  You can have a lawyer or you can proceed yourself,

17  however you want to do it.  It's just the entity, the

18  companies, the corporation, they have to hire a lawyer

19  and it can't be Mr. Thomasson.  Okay?  He's making a

20  motion for me to reconsider the disqualification.  I'll

21  take a look at that for sure.

22          But in the meantime, you need to get the

23  entities, the companies need to have a lawyer otherwise

24  Mr. Kataev is going to move for a default judgment

25  against them as I forewarned.  Okay?  It's not my rules.

24

Proceedings

1    That is the law.  That is the court rule.  Okay?

2            Now, tell me about this lot in Hicksville.

3            MR. DEO:  It's an open air lot.

4            THE COURT:  Yes.

5            MR. DEO:  We have probably 200 spaces.

6            THE COURT:  How do we protect it from the

7    elements these cars if they're there for the next six

8    months?

9            MR. DEO:  Cars are commonly stored outside.  I

10   mean not -- sorry.  It's not common to have hundreds of

11   cars stored indoors.  It's commonly stored outside.

12           THE COURT:  On a lot.  Okay.

13           MR. DEO:  In an outside lot.  And as they were

14   in Mitsubishi.  They were always outside.

15           THE COURT:  All right.  And the --

16           MR. DEO:  They were never --

17           THE COURT:  Now, describe the lot for me

18   though.  Is this a common lot?  Is this used by others?

19   Do you own it and operate it exclusively?

20           MR. DEO:  No, there is spots for other

21   businesses but I do have my own spaces that are mine.

22           THE COURT:  Is it just spaces or is it -- or do

23   you have it cordoned off or fenced off that it's

24   exclusive from the other areas?

25           MR. DEO:  It's not --

25

Proceedings

1      THE COURT:  How do we protect it?  You know?

2  You see where I'm getting.  And Mr. Kataev has raised

3  this issue as well.  We've got to preserve the assets

4  here for everybody.  Okay?  If they're in a common lot,

5  how do I protect those?  How do you protect those if

6  they're going to go in your lot?

7      MR. DEO:  Well, I currently have my cars stored

8  in this lot.  I have insurance.  That's all pretty much

9  that's necessary to protect the cars and the value of the

10  cars that's there that I currently have.  So adding these

11  would just be, you know, adding it on to my current

12  inventory.

13      THE COURT:  And what do you have to -- provide

14  the inventory to the insurance carrier?

15      MR. DEO:  Well, pretty much.  It's a sliding

16  scale you know.

17      THE COURT:  Okay.

18      MR. DEO:  They give you a certain amount of

19  coverage, you know, whether 1 million, 2 million,

20  whatever it is, and that's how you protect any car that's

21  on your particular lot.

22      THE COURT:  Okay.  All right.  Do you have any

23  other alternative, Mr. Kataev, lots other than the Nissan

24  unknown lot?

25      MR. KATAEV:  I don't, your Honor.

26

Proceedings

1      THE COURT:  Okay.  All right.  So these

2  vehicles are going to go to the Deo lot, okay, located at

3  108 New South Road, Hicksville, New York.  How are we

4  going to transport the vehicles?

5      MR. KATAEV:  We would need the flatbed then but

6  my client does not have the assets to take on that

7  expense either.

8      THE COURT:  Okay.  Well, you're responsible for

9  storing, so you're going to have to figure out a way to

10  get them there.

11      MR. KATAEV:  Judge, may I make one other point

12  in opposition and after that, another consideration if it

13  is going to go to the Deo lot as I surmise this Court is

14  prepared to rule?

15      Unlike the Deo defendants, when the Superb

16  plaintiffs sought to modify the preliminary injunction,

17  they followed the spirit and letter of the order and in

18  advance of moving the vehicles made the request.  The Deo

19  defendants have previously on numerous occasions acted in

20  a way that shows a disregard for the Court's orders.

21      THE COURT:  And you moved for contempt.

22      MR. KATAEV:  We moved for contempt and there

23  was --

24      THE COURT:  Yes.  I think I have the third

25  motion still before me.

Transcriptions Plus II, Inc.

27

Proceedings

1          MR. KATAEV:  There's also the fact that when

2    the injunction was first entered and the Deo defendants

3    were required to place them --

4          THE COURT:  Yes.

5          MR. KATAEV:  -- on one of two lots, they did

6    not do that and they did not seek relief as required by

7    the order to do that.

8          THE COURT:  Okay.  But that's not why we're

9    here today.  We're here today because you made an

10   application to move and sell vehicles.  I'm denying the

11   application with respect to selling the vehicles.  I'm

12   granting it to the extent that we're modifying the

13   injunction and we're going to relocate the vehicles.  You

14   have not given me a viable location.

15         MR. KATAEV:  Understood, your Honor.

16         THE COURT:  So I need to move these vehicles or

17   they stay where they are and your client's going to have

18   to deal with the landlord.  Your choice.  They go on a

19   Deo lot or they're going to stay there and your client

20   will have to deal with the landlord.  What do you want to

21   do?

22         MR. KATAEV:  If they are -- my point with the

23   prior argument that I was making --

24         THE COURT:  Yes.

25         MR. KATAEV:  -- was that the Court should

28

Proceedings

1    consider the lack of compliance with this Court's orders

2    in making its determination.

3            THE COURT:  I deal with them as I see them.

4    I'm the referee here basically, right?  I call balls and

5    strikes.  So when you think there's been a misstep, you

6    brought it to my attention.  And I've got several motions

7    that I'm still addressing now one of which is an open

8    contempt motion.  I'm going to deal with that.  If you

9    think there's a misstep in what they're doing going

10   forward, I have no doubt that you will file another

11   motion.

12           MR. THOMASSON:  But in the meantime, your

13   Honor, Mr. Urrutia is the one who's been found in

14   contempt for his conduct and NMAC is trying to intervene

15   because --

16           THE COURT:  Okay, listen --

17           MR. THOMASSON:  -- there's over $20 million

18   that is missing.

19           THE COURT:  This is a very limited application.

20   I don't want to get into --

21           MR. THOMASSON:  Well, but if he's going to

22   throw spears over here at us, we've got to at least point

23   out some facts.

24           THE COURT:  But there shouldn't be spear

25   throwing anywhere.

29

Proceedings

 1          MR. THOMASSON:  Okay.

 2          THE COURT:  This isn't what we're doing.

 3  You're lawyers.  I know you're pro se, but you're still a

 4  lawyer.  Let's deal with the issues.  Right?  We have a

 5  problem and let's deal with it.

 6          So your motion to modify the injunction is

 7  granted to the extent that the vehicles, all 30, are to

 8  be moved to the Deo lot at 108 New South Road in

 9  Hicksville.

10          MR. THOMASSON:  By what date, your Honor?

11          THE COURT:  I was going to ask Mr. Kataev

12  how --

13          MR. KATAEV:  I have two points before we get

14  there.

15          THE COURT:  Yes.

16          MR. KATAEV:  Point number one is because we

17  sought the relief of having NMAC do it since they would

18  pay for the relocation and because we cannot afford to

19  pay for the relocation, we would ask --

20          THE COURT:  Yes, but they're not -- you're not

21  even in a position to tell me where they're going to put

22  these vehicles.  That is absolutely not feasible.  It's

23  not feasible.

24          MR. KATAEV:  Well, what if I told the Court it

25  would be within the tri-state area?  But then they're not

30

Proceedings

1  going to go to Arizona or Texas.

2          THE COURT:  That doesn't help.  I need to know

3  where these vehicles are.

4          MR. KATAEV:  Okay.  If the Court is inclined to

5  give the vehicles, hand over possession of the vehicles

6  to the Deo defendants, we would want --

7          THE COURT:  I'm telling you it is your choice

8  and I mean that.

9          MR. KATAEV:  I understand.

10          THE COURT:  You can keep the vehicles where

11  they are and try to stave off the landlord in Hartford or

12  they're going to go to Deo lot.

13          MR. KATAEV:  Okay.  If they go to the Deo lot,

14  I would ask that two conditions be imposed.

15          The first condition would be to cordon off the

16  vehicles using a rent a fence so that it's clear and

17  there's an obstruction in the way of it being damaged.

18          THE COURT:  Are you able to do that, Mr. Deo?

19          MR. DEO:  We don't know if the landlord would

20  allow that or not, your Honor.

21          THE COURT:  Of your lot?

22          MR. DEO:  Right.

23          THE COURT:  Can you somehow delineate these

24  spots that nobody else can go into the area even with a

25  temporary tape or something?

31

Proceedings

1          MR. DEO:  I can figure out some sort of

2    temporary solution.

3          THE COURT:  Okay.  Yes, temporary solution.

4    Some cordoning off.  Use whatever.  You know, how they

5    use it like --

6          MR. DEO:  Yeah.

7          THE COURT:  -- at motor vehicle crash scenes.

8    You know, whatever, some tape.

9          MR. DEO:  Yeah.  I could figure out some way to

10   temporarily --

11         THE COURT:  All right.  That's condition one.

12         MR. KATAEV:  So that's one.

13         THE COURT:  Done.

14         MR. KATAEV:  Condition two, and I've asked them

15   before, I would like a ruling on it, that the Deo

16   defendants, since they want to put it on their lot, that

17   they should pay for the relocation of it on flatbeds.

18         THE COURT:  No.  This is your modification.

19   You're seeking to modify the injunction.  So you want to

20   do that, you want to relocate these vehicles, you're

21   assuming the cost of that.

22         So how soon can you get the vehicles relocated?

23         MR. KATAEV:  I would imagine it would be a

24   minimum of one week.

25         THE COURT:  All right.  I don't want to

32

Proceedings

1   imagine.  I want you to give me a date.

2              MR. KATAEV:  Two weeks, your Honor.

3              THE COURT:  Okay.  What date is that?  What are

4   we looking at?  The --

5              MR. KATAEV:  May 23rd, your Honor.

6              THE COURT:  May 23rd.  On or before May 23rd.

7   And you'll have to coordinate with Mr. Deo.

8              MR. KATAEV:  Understood.

9              THE COURT:  All right?  For when delivery is

10  happening.  I assume it'll happen -- you don't have a

11  tractor trailer that's going to carry 30 of them, so

12  you'll be, it'll be over a period of time I would think.

13  No?

14             MR. KATAEV:  That's correct, your Honor.

15             THE COURT:  All right.  So you'll coordinate,

16  Mr. Deo, with Mr. Kataev.

17             MR. DEO:  And do I expect 30 vehicles to be

18  sent?

19             THE COURT:  30 vehicles.

20             MR. DEO:  Okay.

21             THE COURT:  The two Isuzu trucks, and then the

22  remaining 28 vehicles, the so-called injuncted vehicles,

23  right, as we've defined before.  Okay?  The same

24  conditions though.  Insurance coverage.  You have to, now

25  that they're going to be in your lot, you've got to make

33

Proceedings

1    sure that they're insured, Mr. Deo.  And I want to make

2    sure that you need to provide proof to the Court that

3    these vehicles are insured once they arrive.

4                MR. DEO:  Yes, your Honor.

5                MR. THOMASSON:  How long can we have to do

6    that, Judge?  Can we have two weeks to do that as well?

7                THE COURT:  Insurance should be in place sooner

8    than later.  That should happen immediately as these are

9    delivered.

10               MR. THOMASSON:  All right.

11               THE COURT:  You already know the titles and --

12               MR. THOMASSON:  They're going to deliver to us

13   on a Friday.

14               THE COURT:  Yes.

15               MR. THOMASSON:  We'll have insurance

16   information that we'll provide to the Court --

17               THE COURT:  Yes.

18               MR. THOMASSON:  -- through the ECF system the

19   following week by Wednesday?

20               THE COURT:  Yes.  I would say within five

21   business days.

22               MR. THOMASSON:  Okay.

23               THE COURT:  Within five business days.  And I

24   don't mean to make it too tight for you but --

25               MR. THOMASSON:  Okay.

34

Proceedings

1          THE COURT:  -- there might be a fire on the

2   lot.

3          MR. THOMASSON:  No, I understand.

4          MR. DEO:  Absolutely.

5          THE COURT:  I want these covered these

6   vehicles.

7          MR. DEO:  Absolutely.

8          MR. THOMASSON:  They will be from the time they

9   arrive, but we will provide the proof within one week of

10  May 23rd.

11         THE COURT:  Yes.  Perfect.

12         MR. THOMASSON:  Okay.

13         THE COURT:  Perfect.

14         MR. KATAEV:  As for the prohibition of the

15  sale, your Honor, my understanding is the prohibition on

16  selling --

17         THE COURT:  Yes.

18         MR. KATAEV:  -- the denial is without prejudice

19  due to the --

20         THE COURT:  Yes, that is correct.

21         MR. KATAEV:  -- current procedural posture with

22  no counsel present.

23         THE COURT:  That is correct.

24         MR. KATAEV:  Understood.

25         THE COURT:  That is absolutely correct.  Okay.

35

Proceedings

1   Anything else, Mr. Kataev, that we need to deal with?

2           MR. KATAEV:  I anticipate speaking with counsel

3   for NMAC and submitting some further materials and the

4   proper procedural manner.  But other than that, nothing

5   further, your Honor.

6           THE COURT:  Okay.  Mr. Thomasson?

7           MR. THOMASSON:  The only thing I'm asking for,

8   your Honor, is can we have the deadline that was today to

9   obtain counsel extended for two weeks?  I'm confident --

10          THE COURT:  Well, confidence springs eternal I

11  hope.  May 23rd.  We'll do the same.  All right?  Get

12  counsel.

13          MR. THOMASSON:  I will.

14          THE COURT:  Got to get counsel.

15          MR. DEO:  Yes, your Honor.

16          THE COURT:  Okay.  So we can move forward.

17  Now, let's go off the record.

18                  (Off the record)

19          THE COURT:  So you can order the transcript if

20  you want, but that is the ruling on the motion.  All

21  right?

22          ALL:  Thank you.

23                  (Matter concluded)

24                      -oOo-

25

36

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **17th** day of **May**, 2025.

_Mary Greco_

Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.