UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

       Plaintiffs,

  -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

       Defendants.
-------------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**REPLY DECLARATION OF ROBERT ANTHONY URRUTIA IN FURTHER SUPPORT OF THE SUPERB PLAINTIFFS' CROSS-MOTION FOR <u>RECONSIDERATION</u>**

   Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2. Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4. I respectfully submit this reply declaration in further support of the Superb Plaintiffs' cross-motion for reconsideration.

**Preliminary Statement**

5. When this began in August 2023, I never imagined I would still be seeking relief from this Court in June 2025.

6. At that time, even with only a partial understanding of the damage Deo had caused, the wrongdoing was so blatant that I believed a simple report to law enforcement would be enough to begin the process of accountability and recovery.

7. I was wrong.

8. Had I known then what I know now, I might have taken a different path.

9. But I had no understanding of what this process would entail.

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

2

10. The more I uncovered, the more confident I became that the truth would prevail — especially after discovering unauthorized bank accounts, unauthorized checks and ACH transfers from Chase, and the fraudulent manipulation of accounts and vehicle titles.

11. Complaints were piling up, and I was doing everything I could to mitigate the damage.

12. I believed that once the Temporary Restraining Order ("TRO") was issued, I would recover my vehicles, restore some working capital, and stabilize the business while litigation proceeded.

13. Instead, what followed has been a prolonged and worsening nightmare.

14. When I reviewed Deo's first declaration in this case and saw the volume of knowingly false statements, I was stunned.

15. I knew I could disprove them all with documentation refuting his claims.

16. For example, Deo denied knowledge of the Rolls Royce, denied involvement in the dismissal of CFO Alysia Cayer, denied receiving forensic accounting records — all of which I can prove to be false.

17. Similarly, Deo denied opening the Flushing Bank account, despite the fact that I have the bank application, statements, copies of the checks and ACH transfers to Defendant Car Buyers NYC Inc. (owned by Deo), as well as the full Chase record of unauthorized activity, including ACH transfers he was never authorized to initiate.

18. Deo also lied about moving the vehicles and double-flooring them.

19. He denied knowledge of the NESNA advance, even though he was receiving monthly statements and I have emails between us discussing those exact statements.

20. These are not disputed facts; they are documented.

21. When the Court issued the injunction, I was shocked to learn that even vehicles not owned by Superb were subject to the injunction.

22. I believed, again, that this was temporary — part of an emergency order — and that when Judge Merchant ultimately ruled, it would be resolved.

23. Even Deo, in his litigation against Aronson previously conceded that floored vehicles belonged to the floorplan lender;[2] I expected consistency.

24. Since then, circumstances have deteriorated.

25. The defendants have caused my financial collapse, such that I have lost my stores — my life's work and the savings I spent decades building.

26. The combined value of these stores was estimated between $15M and $20M.

27. I was forced to sell my family home in New Jersey just to pay legal expenses.

28. As I sit here today, I have no clarity about when this nightmare will end or how I will begin to recover.

29. I am fortunate that my attorney, Emanuel Kataev, has continued to represent me without payment for more than six (6) months.

30. He has committed to seeing this through, knowing that there is a high probability I will recover nothing from Deo, even if the Court awards a significant monetary judgment.

31. Deo claims that I am the one filing motion after motion, but the record demonstrates that it is he who has initiated more filings and caused significant delays in this case.

32. He is exploiting the system strategically.

---

[2] See ECF Docket Entry 65-1 at 47:21-25 ("I sat down with Anthony [Deo] he said all right the floorplans means the cars are backed by them financially, right? He says, yeah, then we have to give it back. He says I agree a thousand percent. Give him the cars. We gave him every car").

4

33. Despite my financial hardship, I have made every effort to respect this Court and comply with the injunctions protecting the enjoined vehicles.

34. Still, I am now being forced to defend myself over cars that I paid for — and that Deo has never claimed let alone proved to have paid for himself.

35. Critically, Deo has not denied the underlying facts: bank records, forged checks, fraudulent bank accounts, and financial misrepresentations.

36. Instead, he overwhelms the Court with fabricated claims, false accusations, and defamatory declarations.

37. Nearly every sentence in every declaration filed by the defendants — and Thomasson — can be refuted line by line.

**The Deo Defendants' Arguments in Opposition to Reconsideration are Meritless**

38. In opposition to my request for reconsideration, Thomasson asserts that my declaration contains no new information.

39. In reality, since the initial injunction until today, my entire business and life has and continues to be destroyed.

40. As of December 2024, all of my dealerships were closed, and I began surrendering nearly all of my assets—including inventory and operational infrastructure—to creditors, many of whom Deo falsely claims conspired with me to harm him.

41. To them, the main objective appears to be to live off the destruction of other people's hard work — a statement that sadly still holds true, as nothing has changed for them: they paid nothing and lost nothing.

42. Despite this devastation, I made every effort to comply with this Court's orders and work with Nissan, NextGear, and others to preserve the injuncted vehicles.

43. Both Nissan and NextGear were notified from the outset that these vehicles were subject to an injunction.

44. One vehicle was mistakenly sold by Nissan and two by NextGear, despite my notification to them.

45. At the time the vehicles were sold by Nissan and NextGear, I had no employees and no operational control over the shuttered dealerships, relying solely on friends to help me wind down operations.

46. Thomasson's accusations of "title washing" and fraud are not only false, but defamatory.

47. I derived no benefit from the vehicles at issue and suffered severe and irreparable financial loss.

48. I appreciate, however, that the Exhibit A submitted by the Deo Defendants inadvertently exposes their lies, fraud, and perjury: the certificates of sale are dated June 2023, when Deo was admittedly in full control of Superb.

49. Indeed, Deo purchased all four (4) vehicles in March and April 2023.

50. Text messages sent to and received from Kendra Kernizant ("Kernizant") and the July 2023 correspondence with Nissan regarding potential double floorings show that on July 19, 2023, Deo directed the activity causing the double-flooring and show these four (4) vehicles as being double-floored. See copies of text message correspondence and July 31, 2023 correspondence with NMAC annexed hereto as **Exhibits "A" and "B,"** respectively.

51. The foregoing evidence establishes that the four (4) certificates of sale submitted by Deo in Exhibit A of his opposition were created *by none other than Deo himself*!

6

52. The four (4) cars listed in Thomasson's exhibit are among the same vehicles that he will claim were double-floored by Kernizant, but which Deo clearly directed her to do as the General Manager at Superb and as a purported owner. See **Exhibit "A"** ("Hey. Were u able to raise $$;" "Let me floor the NG cars and then we can set up payoffs;"[3] "Hey. How the Nextgear coming along;" and "I need to do 300k *both directions*[4] today. And some payoffs").

53. These vehicles appeared on a double floor report sent by Nissan just eleven (11) days later. See **Exhibit "B" (showing four vehicles highlighted on pages 2 and 3 were floored on July 5, 19, and 23 in 2023).**

54. Critically, at this time, I was in Europe on vacation with my family from July 18 to August 3, 2023 — a trip I will never forget, not because of the places we visited, but because it was the time Deo used to dismantle my life.

**Response to the Deo Defendants' Accusations about Vehicles Sold by Nissan & Next Gear**

55. Because I live in Costa Rica, I did not immediately take steps to verify the physical location of the vehicles for the May hearing because I believed the Court would approve a sale with escrowed proceeds, as irreparable harm was evident, and I assumed conditions were no different — actually worse — than when the order was issued following Superb's closure, an outcome consistent with the Court's direction.

56. Further, I had no reason to believe the vehicles were not there.

---

[3] Deo never set up the payoffs.

[4] This reference to "both directions" was an explicit instruction by Deo to Kernizant to double floor the vehicles.

7

57. Indeed, in March 2025, Deo's counsel indicated to my attorney that the Deo Defendants drove two (2) hours to the Hartford Lot to inspect the premises, trespassing thereon. See copy of email correspondence annexed hereto as **Exhibit "C."**

58. The Court's May 9, 2025 order to move the vehicles to Deo's lot as I understood was clearly based on Nissan's uncertain storage facility or location.

59. I began making arrangements for proper storage, and during that process, discovered some vehicles were missing or had already been sold.

60. I otherwise previously explained the circumstances behind what transpired in a prior declaration, and should not be held responsible for the acts of third parties who I do not direct or control, especially when I took affirmative steps to notify those third parties about the existence of the injunction.

**The Deo Defendants' Assertions that the Surrender Agreement Constitutes Contempt**

61. The surrender agreement I entered into explicitly excluded the injuncted vehicles.

62. This was a deliberately negotiated point, even as I agreed to surrender virtually everything else across my remaining three (3) dealerships.

63. The exclusion was made to protect what little remained of my life's work, which Deo had already severely destroyed.

64. Despite losing my business and livelihood, I have made efforts to comply with the injunction to the best of my ability notwithstanding my lack of presence in the United States and out of respect for this Court and its Orders.

65. I did not cause the sale or loss of any injuncted vehicles and informed the relevant parties about their status.

66. The Deo Defendants' claims of unclean hands are completely baseless.

67. Thomasson and Deo have alleged that I controlled everything at Superb Motors, while simultaneously claiming Deo had no involvement.

68. Deo now claims he had no involvement in any financial decisions, which is demonstrably false.

69. The application for ACH access, the implementation of Thomas Jones, CPA as the accountant "helping" close the statements, as well as the opening of the Flushing account in which Deo claims he is 100% owner of Superb, were submitted in April—when the theft began—enabling Deo to control everything.

70. He only wrote the checks in July as a final dagger to ensure they would not be discovered until August—by which point he must have known that Superb would be fully destroyed and he would be operational in his new dealership.

71. The truth is that Deo was signing checks and authorizing ACH transfers without being a signatory on the accounts—in direct violation of Superb's shareholders' agreement.

72. We only discovered this in mid-August 2023, after which we implemented a token approval system—the same system Thomasson has repeatedly referenced to falsely suggest complete oversight.

73. In reality, this system was created only after the damage was done and did nothing to prevent the rampant theft already in motion.

74. The application submitted to Flushing Bank listing Deo as 100% owner of Superb proves his lies and fraud.

75. These actions contradict every claim made about who controlled Superb.

76. I am glad to present these facts at the evidentiary hearing Thomasson has demanded should this Court grant one.

77. Twelve vehicles were permissibly sold on May 29, 2025 in accordance with this Court's Order dated May 8, 2024.

78. The Court was notified, and all proceeds were placed in escrow as required by this Court's orders.

79. These sales were not rushed or concealed; they were completed only after collecting all necessary titles and paperwork.

**The 2019 BMW was Inadvertently Sold but has Now been Returned**

80. The 2019 BMW referenced by Thomasson was picked up and paid for by the purchaser instead of an intended Lexus; this was a good-faith error which has now been rectified.[5]

81. Indeed, the BMW was returned as of today and is now at the Hartford location; the Lexus was sold in its place, as originally intended.

82. This was not misconduct—it was an inadvertent error by the purchaser which has already been corrected.

**The Deo Defendants' Complaints Regarding the Sale of the Vehicles are Unfounded**

83. Further, the vehicles were sold to the purchaser based on the fact that they gave the best offer.

84. The vehicles Thomasson values at $300,000.00 (with no evidence to support this claim) were listed on Superb's general ledger two years ago for $292,000 with each having a $3,000 pack that brought their actual value closer to $256,000.

---

[5] The Deo Defendants should have first brought this to the Superb Plaintiffs' attention rather than seeking court intervention. Their bad faith speaks volumes.

85. After two (2) years of sitting idle under the injunction, those values have dropped substantially, and many of those vehicles had already been sitting for quite a long time even before that; a table summarizing the status of the vehicles per Superb's general ledger is below.

| Vehicle | Mileage | Age (Days) | G/L Balance |
|---|---|---|---|
| 2008 Ford Super Duty F-350 DRW | 163,000 | 261 | $10,854.00 |
| 2009 Mercedes-Benz E-Class | 110,315 | 186 | $4,500.00 |
| 2018 Dodge Durango | 57,531 | 106 | $34,649.00 |
| 2019 BMW X1 | 60,121 | 99 | $28,176.00 |
| 2018 Alfa Romeo Giulia | 54,975 | 92 | $22,841.00 |
| 2017 BMW X3 | 76,764 | 92 | $20,866.00 |
| 2019 Ford Mustang | 45,539 | 75 | $27,536.00 |
| 2021 Dodge Charger | 45,130 | 75 | $25,605.00 |
| 2021 Dodge Charger | 45,104 | 75 | $29,335.00 |
| 2017 Maserati Levante | 33,148 | 75 | $28,350.00 |
| 2018 Land Rover Range Rover Sport | 72,983 | 75 | $32,850.00 |
| 2018 Lexus NX | 74,248 | 75 | $27,050.00 |

86. All sale proceeds are accounted for, and the debt is mine alone—I am the one who personally guaranteed the floorplans.

87. I acted to protect what was left of the business and its creditors, including filing to prevent further damage once I discovered that Deo had opened a new dealership using a limited liability company in which I hold an eighty percent (80%) membership interest.

88. That company, which we had planned to launch together, was repurposed behind my back using assets taken from Superb.

89. For Thomasson and the Deo Defendants to portray themselves as victims in this context—as they do in the June 17, 2025 letter and elsewhere—is not just misleading, it is contemptuous, sanctionable, and laughable.

90. I have not received a salary since August 2023, and I have not paid Mr. Kataev in over six months, yet he continues to represent me diligently and with integrity—a stark contrast to the falsehoods being advanced by Thomasson and his client.

11

91. The NextGear and Nissan vehicles were not surrendered or provided by any affirmative act on the Superb Plaintiffs' part—they were repossessed by those third-parties of their own accord after my businesses collapsed and the dealerships were shuttered.

92. I had no staff and was unable to prevent their removal.

93. Unbeknownst to me at the time, one vehicle was sold in late April by NextGear despite their knowledge of the injunction and pending motion to intervene.

94. Similarly, Nissan mistakenly took two vehicles.

95. I authorized none of these actions and received no benefit.

**The Deo Defendants Falsely Assert that the Isuzu Trucks were Encumbered**

96. Thomasson falsely claims I encumbered these vehicles again after the September 29, 2023 injunction.

97. That is categorically false.

98. The only movement of these vehicles was from one floorplan line to another, solely to free up credit on one line in an effort to stop further harm to the business at the time, as the Nissan floorplan lines were carrying both the injuncted Superb and Team vehicles as well as my retail inventory.

99. However, moving the vehicles between lines does not encumber the vehicles as they are already encumbered and the liability or unpaid principal balance merely gets moved to a different line.

100. The flatbed trucks were floored in mid-September 2023 on a retail line and moved to my wholesale line, explaining why there is a June 2024 floor date.

101. The injuncted vehicles were moved to Mitsubishi in Connecticut and Form Q1s were issued to Superb Motors to preserve value and allow for neutral title transfer after the Court determines ownership.

102. As the owner of Superb, placing them in Superb's name preserved both title integrity and my legal ability to wind down the company in accordance with this Court's orders.

103. To resolve this, I propose both parties obtain valuations on the remaining vehicles, including the six (6) held by the Deo Defendants.

104. Once sold, the proceeds should be placed into escrow, so we can preserve value, stop depreciation, and move forward to trial.

**Thomasson's Repeated False Statements that I have Fled the Country**

105. Thomasson falsely claims I fled to Costa Rica to "avoid prosecution."

106. In Deo's own September 2023 declaration, he acknowledged that I lived in Costa Rica full-time.

107. To now say I "fled" is not just false, it should be sanctionable.

108. I welcome the opportunity to appear before the Court and present these facts directly.

109. For these reasons and those discussed in the accompanying letter brief, the Deo Defendants' letter motion for contempt should be denied and the Superb Plaintiffs' cross-motion for reconsideration should be granted.

110. I thank this Court for its continued time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 20, 2025.

*Robert Anthony Urrutia*
Robert Anthony Urrutia (Jun 20, 2025 13:59 EDT)

Robert Anthony Urrutia