UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  Case No. 2:23-cv-6188 (OEM)(ST)

SUPERB MOTORS, INC., TEAM AUTO SALES LLC.,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HIGHWAY AUTO LLC., NORTHSHORE MOTOR
LEASING, LLC., BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually and
derivatively as a member of 189 SUNRISE HWY AUTO,
LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, and ISLAND AUTO
MANAGEMENT, LLC,

                                Plaintiffs,

        -against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON,
DWIGHT BLAKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, TOMAS JONES, CPA, CAR BUYERS
NYC INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD COAST
MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS CORP.,
DLA CAPITAL PARTNERS INC., JONES LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING,
LLC,

                                Defendants.

------------------------------------------------------------------X

**<u>DECLARATION OF HARRY THOMASSON IN SUPPORT OF
THE INSTANT MOTION FOR CONTEMPT</u>**

Harry Thomasson, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury that the following is true and correct:

1. I am an attorney in good standing in the State of New York, I am admitted to practice before this Court, and I am a *pro se* Defendant in the above captioned action. As such, I have first-hand knowledge of the facts recited herein.

2. This Declaration is submitted in support of the instant Motion for Contempt of the Superb Plaintiffs relating to their violation of this Court's injunction (ECF # 55), as amended, including this Court's orders on May 9, 2025, May 21, 2025, and May 22, 2025.

3. In preparation for this Motion, I reviewed the list of vehicles sold by the Superb Plaintiffs and made comparisons to the values they indicate the vehicles were sold for as compared to the so-called Black Book prices for each of the sold vehicles. The "Black Book" is the publication utilized by automobile dealers to determine the fair market valuation of automobiles sold by automobile dealers on Long Island, based upon my approximately twenty (20) years of experience representing automobile dealerships and/or automobile dealers on and near Long Island, New York.

4. Based upon my review, the retail value of the vehicles reported as purportedly sold (with no dates reported, no buyers reported, and no sellers reported) by the Superb Plaintiffs is approximately two hundred eighty thousand dollars ($280,000.00), which means that the amount reported to this Court by the Superb Plaintiffs as the amount the vehicles were sold for (with the money purportedly escrowed on an unknown date from an unknown source) is approximately/only about forty percent (40%) of the true market value of those cars.

5. Finding such a shortcoming caused me to delve deeper into the situation, and I discovered the Exhibits I submitted to this Court on June 13, 2025, in opposition to (yet another) wasteful Motion to Reconsider brought by the Superb Plaintiffs.

6. Attached hereto as Exhibit A is a true and accurate copy of titles that the Superb Plaintiffs submitted to this Court that clearly and unequivocally demonstrate the use of identical Retail Certificates of Sale numbers for more than one vehicle. It is an obvious violation of the NYSDMV regulations and NY law to utilize those certificates for more than one vehicle.

7. Attached hereto as Exhibit B is a true and accurate copy of a NextGear audit conducted on October 15, 2024, which clearly indicates that the two (2) injuncted Isuzu flatbed trucks were 1) on NextGear's Floor Plan in violation of the injunction at ECF # 55, as amended, and 2) were no longer in Superb's possession as of that date in violation of the injunction at ECF # 55.

8. Attached hereto as Exhibit C is a true and accurate copy of CarFax documents indicating that two of the injuncted vehicles were repossessed last November 13th and 14th, 2024. Despite allegations that these repossessions are somehow Anthony Deo's fault, the simple fact is that 1) those vehicles were injuncted pursuant to the injunction that the Superb Plaintiffs' requested; 2) those injuncted vehicles were in the sole possession, custody and control of the Superb Plaintiffs, who owed a duty to all of the Deo Defendants (of which I am wrongfully one) to protect those vehicles for this action, and not some debt owed by Superb and/or Urrutia; and 3) those injuncted vehicles were purportedly locked in a vacated lot in Hartford Connecticut previously operated by the

3

    Superb Plaintiffs…how could those vehicles be repossessed from that lot unless it was with the full knowledge and cooperation of Anthony Urrutia?

9. Moreover, all three of the attached Exhibits indicate clearly that these vehicles have been missing since last year, why did the Superb Plaintiffs and their counsel fail to so inform the Deo Defendants and this Court about their whereabouts?

10. On the day after Father's Day earlier this month, I was returning from a business trip when I drove through Hartford, Connecticut. So I stopped at Plaintiff Urrutia's former car dealership in Hartford, Connecticut, which I found on that date to be entirely empty, except for fourteen (14) vehicles I counted inside the wide open garage at that location.

11. Upon entering the garage, I was greeted by a man who identified himself as Shane Davis. Mr. Davis informed me that 1) the vehicles at that location were his, and 2) he was removing those vehicles from that location on that day.

12. I asked Mr. Davis what his relationship with Mr. Urrutia was, and he indicated to me that he had never heard the name Anthony Urrutia. I asked him further if he knew anyone from the dealership formerly located on the property, and he told me that he did not know nor have any connection with the owners or operators of the dealership formerly on that location operated by Plaintiff Urrutia.

13. Mr. Davis was reluctant to speak further with me, and referred me to call a real estate agent named Tom Hill, who Mr. Davis told me had just sold the property to "Butler Construction" for the (former) owner of the property. He then asked me to leave, and I did.

4

14. Based upon my conversation with Mr. Davis that day, I have every reason to believe that the Superb Plaintiffs no longer own nor possess any of the vehicles this Court ordered to be delivered to Anthony Deo's lot by May 23, 2025.

15. At this time, I have no knowledge of the whereabouts of the injuncted vehicles; I have no knowledge of the security or insurance for the injuncted vehicles; I have no knowledge of how the Superb Plaintiffs can obtain insurance for these vehicles without also owning or operating any dealerships, which is a prerequisite for obtaining insurance on dealership controlled vehicles; I have no knowledge of the circumstances under which the injuncted vehicles missing as set forth in the attached Exhibits came to leave the possession and custody and control of the Superb Plaintiffs; I have no knowledge other than title washing that explains the multiple uses of the same Retail Certificates of Sale numbers *actually filed with this Court by the Superb Plaintiffs* attached hereto as Exhibit A; I have no knowledge other than title washing/money skimming that explains the gross undersale value of certain injuncted vehicles reported to this Court by the Superb Plaintiffs to now have that 40% value purportedly escrowed; I have no knowledge of the dates those injuncted vehicles were sold, how they were sold without the Superb Plaintiff operating any dealerships at this time (a necessary prerequisite to sell the vehicles), who purchased those vehicles, and what can be learned from the titles and bills of sale and Retail certificates of Sale that should have long ago been transparently submitted to the Deo Defendants and this Court to determine the validity, time, place, and purchasers of said vehicles; and I cannot ascertain the full extent of the Superb Plaintiffs' wrongdoing absent an evidentiary hearing at which the Superb Plaintiffs are ordered to personally attend given that contemptuous wrongdoing

5

has obviously occurred (*see, e.g.,* Exhibits A-C attached hereto), yet the Superb Plaintiffs have been less than forthcoming about their own wrongdoing.

16. This Court ordered the Superb Plaintiff to "coordinate" the delivery of the thirty (30) injuncted vehicles to Anthony Deo's lot. During the week of the supposed delivery, I contacted Mr. Kataev to discuss and coordinate the delivery. Mr. Kataev refused to speak with me. However, neither he nor anyone on behalf of the Superb Plaintiffs reached out to Mr. Deo or any other Deo Defendants directly to coordinate the delivery of the vehicles, because it was obviously the Superb Plaintiffs intent that those vehicles were never going to be delivered to Anthony Deo as ordered by this Court. Likewise, despite (transparently false) complaints from the Superb Plaintiffs that money was a driving factor in failing to deliver the vehicles, money cannot explain the failure to deliver the vehicles' keys and titles as also ordered by this Court, both of which could be placed in one (1) FedEx box and delivered easily and cheaply.

17. I cannot and do not trust the Superb Plaintiffs or their attorney on the subject of the injuncted vehicles at this time. Mr. Kataev failed and refused to disclose relevant information during this Court's multiple hearings in May, 2025 regarding the injuncted vehicles, such as failing to tell the Court or the Deo Defendants the information regarding two (2) vehicles that we all learned just an hour after the last hearing on May 23, 2025 from NMAC (their counsel filed a letter with the Court just after our last hearing that day) were (improperly) sold. There are multiple, illegal uses of Retail Certificates of Sale numbers/forms; vehicles that were repossessed last year or sold off the do not sell list without any notification from the Superb Plaintiffs (*see* Exhibits B and C hereto), vehicles sold to unknown people or companies at unknown times for

40% of their true value, multiple contempt findings by this Court against the Superb Plaintiffs already, and the finding of yet another violation (for improper encumbrances on the injuncted vehicles) of the injunction as set forth in this Court's order denying NMAC's application to intervene in this action, and more that is being kept from everyone.

18. I urge this Court to order an evidentiary hearing with all Superb Plaintiffs and their counsel present for questioning by undersigned so that we may get some transparency on the within.

19. Given the lack of transparency of just what and when and to whom the vehicles in question have been given, the amount of damages have been substantial in this instance. Upon information and belief (which can and will be more accurately set forth by testimony at an evidentiary hearing by Anthony Deo, whom I shall subpoena to such hearing), the injuncted vehicles in total have a current retail value of approximately two million dollars ($2,000,000.00), which is the starting point for damages/the value of security if this Court finds that the Superb Plaintiffs are in contempt of court hereby. There also should be attorney fees; I have spent ten (10) hours to date dealing with this Contempt Motion, research, documents, and conversations with the Deos; my time is no less valuable because I am representing myself in this case, and this time does not include the time spent preparing for and conducting an extensive evidentiary hearing, if ordered.

20. Accordingly, I ask that his Court grant the pending Motion in its entirety, and order the evidentiary hearing for three (3) days during the last week of July, 2025, or thereafter as convenient to the Court. I will need some time before the

commencement of any hearing in order to allow sufficient time to subpoena one or more non-party witnesses to that hearing.  I also request such other and further relief as the Court deems necessary, just, equitable and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30, 2025.

/S/ *Harry R. Thomasson*
_____
Harry R. Thomasson
3280 Sunrise Highway, Box 112
Wantagh, New York  11793
Tel.  516-557-5459
Email:  hrtatty@verizon.net