UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, *individually and
derivatively as a member of* NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, *individually
and derivatively as a member of* 189 SUNRISE HWY
AUTO, LLC, JORY BARON, 1581 HYLAN BLVD
AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591
HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD
AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 2:23-cv-6188 (JMW)**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY
THOMASSON, DWIGHT BLANKENSHIP, MARC
MERCKLING, MICHAEL LAURIE, THOMAS
JONES, CPA, CAR BUYERS NYC INC., GOLD
COAST CARS OF SYOSSET LLC, GOLD COAST
CARS OF SUNRISE LLC, GOLD COAST MOTORS
AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS
CORP., DLA CAPITAL PARTNERS INC., JONES,
LITTLE & CO., CPA'S LLP, FLUSHING BANK,
LIBERTAS FUNDING LLC, and J.P. MORGAN
CHASE BANK, N.A.,

Defendants.
------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' SUPERB MOTORS INC,
TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S MOTION FOR
<u>CONTEMPT & SANCTIONS</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ............................................................................................................................... 1

LEGAL STANDARD .......................................................................................................... 8

    A. Under 28 U.S.C. § 1927 and the Court's Inherent Power, Bad Faith warrants Sanctions (up to and including Dismissal) ......................................................................... 9

    B. Under 28 U.S.C. § 1927 and the Court's Inherent Power, Sanctions may be imposed (and Bad Faith inferred) where a claim is without merit .................................................. 12

    C. Negligence and/or Reckless Conduct (Objective Unreasonableness) may warrant Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power (where such misconduct supports an inference of Bad Faith) ............................................................. 12

    D. False Testimony Constitutes Perjury, warranting Referral to an AUSA for Prosecution ........................................................................................................................................ 12

ARGUMENT .................................................................................................................... 15

    A.    Deo, Thomasson, and Benjamin Have Repeatedly Engaged in Bad Faith Conduct by Submitting Demonstrably False Testimony, Committing Perjury .......................... 15

    B.This Court Should Sanction Deo, Thomasson, and Benjamin for their Conduct, which constitutes Bad Faith, Warranting Striking Deo's and Thomasson's Pleadings 18

    C.Alternatively, Deo, Thomasson, and Benjamin Have Engaged in Objectively Unreasonable Negligent and/or Reckless Conduct that is, Warranting Sanctions ....... 21

    D. This Court Should Refer Deo and Thomasson to the United States Attorney's Office to Prosecutors for Investigation ................................................................................... 23

CONCLUSION ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Cases**

Ades v. 57th St. Laser Cosmetica, LLC,
　　No. 11–cv–8800, 2013 WL 2449185 (S.D.N.Y. June 6, 2013) ................................13 n. 4

Baiul v. NBC Sports,
　　No. 15-CIV.-9920 (KBF), 2016 WL 1587250 (S.D.N.Y. Apr. 19, 2016) ..................20, 21

Baiul v. NBC Sports,
　　708 Fed. Appx. 710 (2d Cir. 2017) ....................................................................20

Baker v. Urb. Outfitters, Inc.,
　　431 F. Supp. 2d 351 (S.D.N.Y. 2006) ................................................................22

Baker v. Urb. Outfitters, Inc.,
　　249 Fed. Appx. 845 (2d Cir. 2007) ....................................................................22

CAT3, LLC v. Black Lineage, Inc.,
　　164 F. Supp. 3d 488 (S.D.N.Y. 2016) ................................................................8

Chambers v. NASCO, Inc.,
　　501 U.S. 32 (1991) ...................................................................................9, 10

Consumer Fin. Protec., Bureau v. StratFS, LLC,
　　No. 24-CV-40-EAW-MJR, 2025 WL 1180031 (W.D.N.Y. Mar. 25, 2025) ....................24

D'Orange v.. Feely,
　　959 F. Supp. 631 (S.D.N.Y.1997) ....................................................................14

Forman v. Mt. Sinai Med. Ctr., 128
　　F.R.D. 591 (S.D.N.Y. 1989) ..........................................................................22

Gambello v. Time Warner Commun., Inc.,
　　186 F. Supp. 2d 209 (E.D.N.Y. 2002) ...............................................................22

In re Actos (Pioglitazone) Products Liab. Litig.,
　　No. 12-CIV.-00 64, 2014 WL 2624943 (W.D.La. June 11, 2014) ...............................14

In re Bernard L. Madoff Inv. Sec. LLC.,
　　721 F.3d 54 (2d Cir. 2013) .............................................................................15

In re Khan,
　　488 B.R. 515 (Bankr. E.D.N.Y. 2013) ...............................................................19

In re Petrobras Securities Litig.,
    363 F. Supp. 3d 426 (S.D.N.Y. 2019)..........................................................................20

In re Weiss,
    703 F.2d 653 (2d Cir. 1983).......................................................................................8

Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.,
    991 F.3d 361 (2d Cir. 2021).................................................................................9, 13

Jensen v. Phillips Screw Co.,
    546 F.3d 59 (1st Cir. 2008).......................................................................................19

Jiangsu Huari Webbing Leather Co. v. Joes Identified in Schedule A,
    No. 23-CIV.-2605 (JLR), 2024 WL 20931 (S.D.N.Y. Jan. 2, 2024)................................22

Johnson v. Univ. of Rochester Med. Ctr.,
    642 F.3d 121 (2d Cir. 2011).....................................................................................19

Kalwasinski v. Ryan,
    No. 96-CIV.-6475, 2007 WL 2743434 (W.D.N.Y. Sept. 17, 2007)....................8, 10, 11

Keller v. Mobil Corp.,
    55 F.3d 94 (2d Cir. 1995).........................................................................................20

Lask v. Rhee-Karn,
    No. 24-CIV.-2666 (MMG), 2025 WL 2717474 (S.D.N.Y. Sept. 24, 2025)....................20

Liebowitz v. Bandshell Artist Mgmt.,
    6 F.4th 267 (2d Cir. 2021) .......................................................................................22

Link v. Wabash R. Co.,
    370 U.S. 626 (1962) .................................................................................................9

Mack v. FCA US LLC,
    No. 24-CIV.-02990 (SJB) (SIL), 2025 WL 2403393 (E.D.N.Y. Aug. 19, 2025) .............20

Mackler Prods., Inc. v. Turtle Bay Apparel Corp.,
    92–cv–5745, 1997 WL 269505 (S.D.N.Y. May 21, 1997) ......................................13 n. 4

Mackler Prods., Inc. v. Cohen,
    146 F.3d 126 (2d Cir. 1998)....................................................................................13 n. 4

Margo v. Weiss,
    213 F.3d 55 (2d Cir. 2000).......................................................................................13, 14

McMunn v. Memorial Sloan-Kettering Cancer Center,
  191 F. Supp. 2d 440 (S.D.N.Y. 2002) ...............................................................11

National Hockey League v. Metropolitan Hockey Club, Inc.,
  427 U.S. 639 (1976) .........................................................................................11

Neal v. LaRiva,
  765 F.3d 788 (7th Cir. 2014) ....................................................................13 n. 4

Nike, Inc. v. Top Brand Co.,
  216 F.R.D. 259 (S.D.N.Y. 2003) .....................................................................23

Oliveri v. Thompson,
  803 F.2d 1265 (2d Cir. 1986)......................................................................10, 19

Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,
  No. 99-CIV.-10175 (JSM), 2001 WL 1154669 (S.D.N.Y. Oct. 1, 2001) ...................8, 9

Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,
  317 F.3d 209 (2d Cir. 2003)...............................................................................8

Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC,
  685 F. Supp.2d 456 (S.D.N.Y. 2010)................................................................19

Quinby v. WestLB AG,
  No. 04-CV-7406 (WHP) (HBP), 2005 WL 3453908 (S.D.N.Y. Dec. 15, 2005) .............23

Republic of Rwanda v. Ferone,
  No. 07-CIV.-7663 (JSR), 2008 WL 919639 (S.D.N.Y. Apr. 1, 2008) ........................21-22

Revson v. Cinque & Cinque, PC,
  221 F.3d 71 (2d Cir. 2000)........................................................................11, 12

Rossbach v. Montefiore Med. Ctr.,
  81 F.4th 124 (2d Cir. 2023) ...............................................................10, 19, 21

Sakon v. Andreo,
  119 F.3d 109 (2d Cir.1997)................................................................................9

Schlaifer Nance & Co. v. Estate of Warhol,
  194 F.3d 323 (2d Cir. 1999)......................................................................10, 12. 22

Shepherd v. Am. Broadcasting Companies,
  62 F.3d 1469 (D.C. Cir. 1996) ..................................................................11, 12

The Reno,
        61 F.2d 966 (2d Cir. 1932)............................................................................13

Three Headed Productions, Inc. v. Steer Vend, Inc.,
        No. 22-CV-247, 2024 WL 3986868 (E.D.N.Y. Aug. 29, 2024)..........................19

U.S. v. Shaffer Equip. Co.,
        11 F.3d 450 (4th Cir. 1993) ......................................................................10, 11

United States v. Comiskey,
        460 F.2d 1293 (7th Cir.1972) ......................................................................13

United States v. Cornielle,
        171 F.3d 748 (2d Cir. 1999)......................................................................14, 23

United States v. Diogo,
        320 F.2d 898 (2d Cir. 1963)......................................................................14

United States v. Dunnigan,
        507 U.S. 87 (1993) ......................................................................................13

United States v. International Bhd. of Teamsters,
        948 F.2d 1338 (2d Cir.1991)......................................................................9

United States v. Kross,
        14 F.3d 751 (2d Cir. 1994)......................................................................14

United States v. Mandujano,
        425 U.S. 564 (1976)......................................................................................23

United States v. Prevezon Holdings, Ltd.,
        305 F. Supp. 3d 468 (S.D.N.Y. 2018)..........................................................19

United States v. Pisani,
        773 F.2d 397 (2d Cir.1985)......................................................................13

United States v. Rooney,
        37 F.3d 846 (2d Cir. 1994)......................................................................14

United States v. Seltzer,
        227 F.3d 36 (2d Cir. 2000)......................................................................10, 12

United States v. Thompson,
        29 F.3d 62 (2d Cir. 1994)......................................................................14

Weitzman v. Stein,
    98 F.3d 717 (2d Cir.1996)...........................................................................9

Wilder v. GL Bus Lines,
    258 F.3d 126 (2d Cir. 2001).......................................................................13

Young v. United States *ex rel.* Vuitton et Fils, S.A.,
    481 U.S. 787 (1987)) ................................................................................14

**Statutes**

18 U.S.C. § 1621 ......................................................................................13, 24

18 U.S.C. § 1623 ...........................................................................................24

28 U.S.C. § 1746 ...........................................................................................24

28 U.S.C. § 1927..............................................8, 9, 12, 13, 19, 20, 21, 22, 23

**Rules**

Fed. R. Civ. P. 11 ...........................................................................................9

## PRELIMINARY STATEMENT

What a tangled web we weave; Defendants Anthony Deo ("Deo"), Harry R. Thomasson, Esq. ("Thomasson"), and Jeffrey Benjamin, Esq. ("Benjamin") have repeatedly submitted declarations in this case under penalty of perjury that were knowingly and demonstrably false. They have routinely relied on these sworn declarations to deflect from their conduct, vexatiously multiply these proceedings, and to delay the inevitable outcome of a judgment against them for millions of dollars due to the criminal conduct they have engaged in and continue to engage in.

Courts have the power, both by statute and inherently, to remedy such bad faith conduct. And in this case, this Court should. Based on the irrefutable and undeniable evidence set forth below and in the accompanying declaration in support, this Court is well within its authority to sanction Deo, Thomasson, and Benjamin for their repeated and unabated perjury.

Plaintiffs Superb Motors, Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") (Superb, Team, and Urrutia collectively hereinafter the "Superb Plaintiffs") thus respectfully request that this Court make findings that Deo, Thomasson, and Benjamin have perjured themselves, engaged in bad faith, and thus sanction them by: (i) striking their answer or otherwise finding them to be in default due to their bad faith conduct; and/or (ii) awarding the Superb Plaintiffs attorneys' fees for defending against and responding to perjurious statements; and/or (iii) referring them to the United States Attorney's Office for investigation.

## FACTS

On August 17, 2023, the Superb Plaintiffs commenced this case against, *inter alia*, Deo and Thomasson. See ECF Docket Entry 1. Together with the complaint, the Superb Plaintiffs moved for a temporary restraining Order and preliminary injunction seeking equitable relief. See ECF Docket Entry 9.

In response to that motion, Deo submitted his first declaration. <u>See</u> ECF Docket Entry [30]. There, Deo swore under penalty of perjury, *inter alia*, that he noticed peculiarities about Superb's finances and sought a forensic review, which he averred resulted in the termination by Urrutia of Superb's Chief Financial Officer ("CFO"), Alysia Cayer ("Cayer"), supposedly to prevent any forensic examination from taking place. <u>Id.</u> ¶¶ 20-24 ("I now surmise that her firing was merely an attempt by Tony to control my interest in finances, to blame Alysia and placate me with the firing, and to prevent any forensic examination from taking place …").

These statements are demonstrably false. In response to Deo's request for a "forensic review," Urrutia submitted hundreds of emails containing thousands of financial documents to Deo, Thomasson, and Thomas Jones, CPA ("Jones"), Deo's accountant. <u>See</u> ECF Docket Entries [95] ¶¶ 4-6, [95-1], [304] ¶ 16. Moreover, Superb's CFO Cayer did, in fact, send Deo, Thomasson, and Jones the requested financials. <u>See</u> ECF Docket Entries [38] ¶¶ 41-45, [38-6] at 3-4 (from Urrutia, "Please provide information requested"), at 3 (from CFO, "Attached are … statements … requested"), [108] at 8, [108-2], and [108-3]. Deo therefore knowingly perjured himself when he swore in his declaration that Urrutia fired Cayer to prevent a forensic examination; Deo and Thomasson both received the documents they sought.

In the same declaration dated September 11, 2023, Deo made another materially perjurious statement. Deo claims he was *unaware* of a $650,000.00 advance made by NESNA and first learned about it in July 2023. <u>See</u> ECF Docket Entries [30] ¶¶ 29-30 and [38-6]. This statement is similarly demonstrably untrue, as not only did Deo previously know about it, but he had requested information about it directly from NESNA in February 2023, an entire month prior to his request for a forensic review. <u>See</u> ECF Docket Entries [38] ¶¶ 25-26 and [38-3]; <u>see also</u> Declaration Urrutia (hereinafter "<u>Urrutia Decl.</u>") ¶ 26, Exhibit ("<u>Ex.</u>") A.

Critically, Deo falsely claimed in his declaration that this was a new loan (ECF Docket Entry 38 ¶ 30 ("Just before I bought half the company for $500,000.00, Tony Urrutia obtained a loan …")); it was not. As set forth in the documentation Deo obtained directly from NESNA in February 2023, Urrutia had an *existing* advance from NESNA totaling over $1.3M, which had a balance of approximately $981,000.00 at the time Deo became involved with Superb. See Urrutia Decl. ¶¶ 26, Ex. A at 3 (indicating original balance of $1,302,299.00) and at 6 (indicating remaining balance of $981,647.00 as of October 2022). The balance on the existing advance was paid down to $650,000.00. Id. at 1. Moreover, a review of this exhibit refers to the same exact identical Advance No., i.e., SB30022, establishing that there was no new loan taken. Id. at 1 and 4. Crucially, Urrutia's text message exchanges with Deo irrefutably establish that Deo knew about the existence of the NESNA advance. See ECF Docket Entry 38-2 at 41 3/7/2023 ("Last month it only shows $3k paid back on the warranties and I don't understand how … [Deo's response:] "I will get to the answer. There is no way it was only 3k. And yes they take it out automatically"). The same goes with email exchanges Deo was a part of. See Urrutia Decl. ¶¶ 23-27, Ex. A. This evidence demonstrates Deo knew about the advance and the fact that the advance was being paid back through the sale of warranties. Deo therefore perjured himself when he declared that he first learned about the advance in July 2023.

Thomason propagates this perjury in multiple declarations. See ECF Docket Entries 30-1 at 7-8 ¶ 14(p) ("Urrutia took $650,000.00 from Superb in the weeks before closing his deal with Deo without disclosing same, and the February, 2023 NMAC report/review that revealed this transaction was kept from Deo for almost 5 months …") and 43-1 at 5-6 ¶ 4(o) (same).

As set forth above, this is demonstrably untrue as Deo knew about the advance in February 2023 and received this information directly from NESNA.

As such, both Deo and Thomasson[1] committed perjury when he told this Court he had no knowledge of the NESNA advance.

A third material perjurious statement by Deo arises in the same September 11, 2023 declaration as it pertains to a 2017 Rolls Royce (the "Rolls"), which Deo inappropriately retains physical possession of to this day.  Deo avers that Urrutia floored the Rolls he sold Urrutia without his permission.  See ECF Docket Entry 30 ¶¶ 31-32.  Of course, this is belied by the fact that Deo himself asked Urrutia to floor the Rolls.  See ECF Docket Entries 38 ¶ 48 and 38-9 at 1-3 (February 2023 correspondence demonstrating Deo's knowledge of Rolls being floored) and 12 (April 2023 wire representing proof of payment by Superb to Deo's corporate entity for Rolls).  Further, Deo sent Urrutia proof that he paid off his floor plan line with Next Gear for the Rolls on April 19, 2023 at Urrutia's insistence once Urrutia sent Deo the money for the Rolls.  See ECF Docket Entry 220-16 (payment of $162,708.94 to Nextgear Capital).  Accordingly, Deo's statements concerning his alleged lack of knowledge of the Rolls being floored by Urrutia are perjurious.

Deo also lied to this Court about Urrutia allegedly stealing $760,000.00 from Superb when that money went to make payoffs with floor plan lenders due to Deo's fraudulent conduct.  See ECF Docket Entry 30 ¶ 37 ("I know exactly what happened to the specific sum of $760,000.00 'missing' from the dealership … I also was told by Kendra Kernizant, the on-site financial coordinator for Team Auto at Superb that Tony took $760,000.00 from Superb to bail out his Connecticut dealerships …").

---

[1] It is worthy to note that Thomasson operated his practice from Superb's dealership where Deo engaged in his schemes to defraud. See ECF Docket Entries 86 ¶¶ 3-7 and 88 ¶¶ 14, 17, 28. 29(d).

4

However, this is belied by Urrutia's accounting to this Court of exactly what happened with the $760,000.00.  See ECF Docket Entries 38 ¶ 47, 38-7, 38-8, 220 ¶¶ 6-10, 10 n. 5 (citing ECF Docket Entries 11-14 at 2 (showing auto-debit of $760,868.75) and 220-2 at 91 (August 2, 2023 debit of $760,868.75)).

Deo similarly lied about his alleged lack of control over the finances at Superb.  See ECF Docket Entries 30 ¶¶ 32 ("only Tony and his people controlled the finances at the dealership, meaning that I could not do anything regarding sales or money without Tony's full knowledge and approval"), 37 ("…accused me of taking $760,000.00, when it is simply not possible as I do not control the dealership's finances…"), 48 ("neither I nor anyone on my behalf controlled the finances at Superb") and 43 ¶ 8.  Thomason propagates this perjury in his declaration dated September 15, 2023.  See ECF Docket Entry 43-1 at 5 ¶ 4(n) ("It is Urrutia who both controls the finances … at Superb").

However, Deo has never explained how and why he opened a bank account for Superb at Flushing Bank listing himself as 100% owner, wrote checks from Superb's Chase account which he was not a signatory for, or authorized debits from Superb's Chase account for repayments to NESNA of other dealerships controlled by Deo.  See ECF Docket Entries 11-9 at 1 (listing Deo as 100% owner of Superb), 220 ¶ 46 (citing ECF Docket Entry 220-2) (indicating that no cash or checks were deposited in Superb's Chase account ever since Deo opened an account for Superb at Flushing Bank under false pretenses), 11-16 at 1-10 ($147,364.00 in unauthorized checks) and at 11 ($501,660.70 in unauthorized NESNA ACH payments), and 11-10 (NESNA Debit Authorization signed by Deo for Superb's Chase account).  This evidence demonstrates that Deo *did* exercise, albeit unauthorized, control over the finances at Superb, contrary to his sworn allegations otherwise, thus demonstrating he perjured himself yet again.

Thomason propagates this perjury in his declaration, also dated September 11, 2023.  See ECF Docket Entry 30-1 at 6-7 ¶¶ 14(h) ("Urrutia controls the finances at Superb, not Deo") and 14(o) ("It is Urrutia who both controls the finances … at Superb").

In his September 11, 2023 declaration, Deo avers that Defendant Marc Merckling ("Merckling") *never* worked at Superb.  See ECF Docket Entry 30 ¶ 53 ("Marc *never* worked at Superb") (emphasis added).  However, in a declaration from an automobile wholesaler named Nethanel Orgad ("Orgad") dated September 14, 2023, Orgad discussed working with Merckling to purchase vehicles from Superb as early as November 2022.  See ECF Docket Entry 40 ¶¶ 9, 11, 15-18 ("Deo always demanded cash, which was to be paid to Marc Merckling … as I was told [he] was the 'money man'").  Moreover, in an October 30, 2023 declaration filed on November 6, 2023 just a couple of months later, Merckling swore under penalty of perjury that he met Thomasson at Superb *on a few occasions* prior to late June 2023 and was present at Superb on August 3, 2023.  See ECF Docket Entry 92 ¶¶ 5-6.  Critically, on January 14, 2023, Deo himself added Merckling as "Assistant GM" to Superb's employment roster in its dealership management system!  See Urrutia Decl. ¶¶ 42, Ex. B.

Deo therefore engaged in perjury over a material statement of fact as he sought to minimize Merckling's involvement in his fraudulent schemes.  In other words, Deo's sworn statement that Merckling never worked at Superb was knowingly false, both by Orgad's, Merckling's, and Deo's own accounts.

In his September 11, 2023 declaration, Deo averred that the financial condition of Superb improved based on his actions, and supports this contention with a profit-and-loss statement.  See ECF Docket Entries 30 ¶¶ 25-26 and 30-6 (showing gross revenues of $13,400,808 and a profit of $1,332,948.00).

However, as previously demonstrated, the actual revenues and resultant net loss for Superb were $9,499,945.00 and ($93,105.00) in May 2023.  See ECF Docket Entry 241-2 at 1-2.  Deo knew that Superb was operating at a loss, which is why he asked Jones to "create" a financial statement, "quickly," which "must" show a "profit" on June 14, 2023 and July 5, 2023.  See ECF Docket Entries 241-5, 241-3, and 241-4.  Accordingly, Deo engaged in perjury when he produced the financial statement in his September 11, 2023 declaration because he knew that Superb's finances did not actively improve under his management and control.

On June 13, 2025, Thomasson submitted a declaration averring that Urrutia committed "criminal fraud" by engaging in "title washing."[2]  See ECF Docket Entries 299 ¶ 7, 299-2, 307 ¶¶ 6, 15, 17, and 307-3.[3]  However, as explained in Urrutia's June 20, 2025 declaration, this is demonstrably false, because it was Deo that engaged in this criminal conduct.  See ECF Docket Entries 304 ¶¶ 48-54, 52 n. 3, 52 n. 4, 304-1, and 304-2.  Therefore, Thomasson and Benjamin committed perjury when they accused Urrutia of conduct that, in fact, Deo engaged in.

Deo and Thomasson also engaged in repeated misrepresentations that Urrutia "fled" to Costa Rica.  See ECF Docket Entries 275 at 1 ("Urrutia then absconded from the country to Costa Rica").

---

[2] Previously, on February 7, 2025, Deo had his prior counsel submit a declaration that the Superb injuncted vehicles were driven in violation of the injunction.  See ECF Docket Entries 225 and 225-1.  This, too, was demonstrably false.  See ECF Docket Entry 228 ¶¶ 5-35, 25 n. 5.  Deo failed to establish that the Superb Plaintiffs should be held in contempt based on the knowingly false contention that the Superb injuncted vehicles were driven in violation of the injunction.

[3] Benjamin adopted and "incorporated by reference" these perjurious statements in his own sworn declaration.  See ECF Docket Entry 308 ¶ 3 ("On behalf of the Deo Defendants, *I join* Mr. Thomasson's Motion for Contempt, *namely his Declaration* and Memorandum of Law, filed today … *in every respect.* … *I simply join* those filed by Mr. Thomasson earlier this evening. … *I repeat and reallege the facts*, procedural history and legal arguments *in the Declaration* and Memorandum of Law of HARRY THOMASSON and *incorporate them herein by reference* as filed collectively at ECF Doc. #307") (emphasis added).

7

However, in his September 11, 2023 declaration, Deo conceded that Urrutia spent most of his time in Costa Rica.  <u>See</u> ECF Docket Entry <u>30</u> ¶ 37 ("Tony Urrutia spends 90%+ of his time out of the country, and mainly in Costa Rica"); <u>Urrutia v. Deo</u>, Index No.: 618608/2023 (Nassau County Supreme Court), NYSCEF Docket Entry <u>74</u> ¶¶ 70-74 (outlining Thomasson's and Deo's knowledge that Urrutia resided in Costa Rica before); <u>see also</u> ECF Docket Entry <u>251</u> ¶¶ 10 n. 2 ("I have lived in Costa Rica since March 2022, shortly after I purchased Superb in July 2021.  I only partnered with Deo in December 2022, well after I moved to Costa Rica").

As such, Deo, Thomasson, and Benjamin have repeatedly submitted false testimony to this Court.

## <u>LEGAL STANDARD</u>

Attorneys and parties who make improper or false representations to the court may be subject to sanctions. <u>See</u> <u>Kalwasinski v. Ryan</u>, No. 96-CIV.-6475, 2007 WL 2743434, at *2 (W.D.N.Y. Sept. 17, 2007).  Sanctions may also be imposed against attorneys who "unreasonably and vexatiously" multiply proceedings, in bad faith. <u>See</u> 28 U.S.C. § 1927.

Public policy mandates integrity in judicial proceedings, and courts employ a range of sanction mechanisms when that integrity is threatened. <u>See</u> <u>CAT3, LLC v. Black Lineage, Inc.</u>, 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016). ("A party's falsification of evidence … threatens the integrity of judicial proceedings ….") <u>See also</u> <u>Patsy's Brand, Inc. v. I.O.B. Realty, Inc.</u>, No. 99-CIV.-10175 (JSM), 2001 WL 1154669, at *1 (S.D.N.Y. Oct. 1, 2001), <u>aff'd</u> <u>as</u> <u>modified</u>, 317 F.3d 209 (2d Cir. 2003) (<u>citing</u> <u>In re Weiss</u>, 703 F.2d 653, 666-67 (2d Cir. 1983) (recognizing that perjury and the knowing submission of fraudulent documents may constitute contempt of court, justifying sanctions where they obstruct the judicial process).

8

Courts have also utilized their inherent powers to impose sanctions for civil contempt, including requiring the contemnor reimbursing the injured party for the attorneys' fees that resulted from the contumacious conduct. See Id. (citing Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir.1996)).

### A. Under 28 U.S.C. § 1927 and the Court's Inherent Power, Bad Faith warrants Sanctions (up to and including Dismissal).

The law provides that a court may impose sanctions on an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." See 28 U.S.C. § 1927. Sanctions may be imposed, however, "only when there is a finding of conduct constituting or akin to bad faith." See Sakon v. Andreo, 119 F.3d 109, 114 (2d Cir.1997). The Second Circuit has "held that an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." See United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir.1991) (internal quotation marks omitted).

Separate from Rule 11 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), a district court can "impose monetary sanctions against a litigant (or its counsel) for misconduct" through its "inherent power" to "impose silence, respect, and decorum in their presence, and submission to their lawful mandates." See Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd., 991 F.3d 361, 367 (2d Cir. 2021).

This authority derives from "the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." See Chambers v. NASCO, Inc., 501 U.S. 32, 43 (1991) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–631 (1962)).

The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth.... The courts must protect the integrity of the judicial process because, "[a]s soon as the process falters ... the people are then justified in abandoning support for the system." See U.S. v. Shaffer Equip. Co., 11 F.3d 450, 457 (4th Cir. 1993); see also Chambers, 501 U.S. at 45-46.  An award of sanctions under the court's inherent power may be imposed for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons." See Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986).

"In order to impose sanctions pursuant to its inherent power, a district court must find that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999); see also Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986) (an award of sanction under the court's inherent power may be imposed for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons").

"When a district court invokes its inherent power to impose a sanction of attorneys' fees or to punish actions by an attorney that are taken on behalf of a client, 'the district court must make an explicit finding of bad faith.'" See Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 143 (2d Cir. 2023) (quoting United States v. Seltzer, 227 F.3d 36, 41–42 (2d Cir. 2000)); see also Kalwasinski, No. 96-CIV.-6475, 2007 WL 2743434, at *2 (W.D.N.Y. Sept. 17, 2007) ("It is well settled that federal courts have the inherent authority to impose sanctions, including dismissal, for a litigant's bad faith conduct").

Although dismissal is a drastic sanction, which should be sparingly employed, see Kalwasinski, 2007 WL 2743434, at *2, it is nonetheless warranted when "'a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice.'" See U.S. v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993) (internal citations omitted).

Dismissal is particularly appropriate where the plaintiff's conduct is so egregious that the Court seeks "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976).

A "clear and convincing" standard is applied to misconduct warranting dismissal. See McMunn v. Memorial Sloan-Kettering Cancer Center, 191 F. Supp. 2d 440 at 445 (S.D.N.Y. 2002).

In order to sanction a party by striking its answer, the movant must demonstrate the party's bad faith by clear and convincing evidence. See Revson v. Cinque & Cinque, PC, 221 F.3d 71, 79 (2d Cir. 2000) (requiring showing of "clear evidence that the challenged actions" are taken for improper purposes, "and a high degree of specificity in the factual findings" when sanction for bad faith is imposed (citations omitted)); see also Shepherd v. Am. Broadcasting Companies, 62 F.3d 1469, 1476-78 (D.C. Cir. 1996) (discussing cases requiring "heightened standard of proof"); McMunn v. Memorial Sloan-Kettering Cancer Center, 191 F. Supp. 2d 440 (S.D.N.Y. 2002) (applying "clear and convincing" standard to misconduct warranting dismissal).

11

**B. Under 28 U.S.C. § 1927 and the Court's Inherent Power, Sanctions may be imposed (and Bad Faith inferred) where a claim is without merit.**

Under the Court's inherent power, a court may "impose sanctions pursuant to its inherent power [if the court] find[s] that: (1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, i.e., motivated by improper purposes such as harassment or delay." See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999).

"'[T]o impose sanctions under either authority [28 U.S.C. § 1927 or inherent power], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes." See Revson v. Cinque & Cinque, P.C., 221 F.3d 71, 79 (2d Cir. 2000) (requiring showing of "clear evidence that the challenged actions" are taken for improper purposes, "and a high degree of specificity in the factual findings" when sanction for bad faith is imposed (citations omitted)); see also Shepherd v. Am. Broadcasting Companies, 62 F.3d 1469, 1476-78 (D.C. Cir. 1996) (discussing cases requiring "heightened standard of proof").

**C. Negligence and/or Reckless Conduct (Objective Unreasonableness) may warrant Sanctions under 28 U.S.C. § 1927 and the Court's Inherent Power (where such misconduct supports an inference of Bad Faith).**

"[W]hen the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not undertaken for the client's benefit," it "need not find bad faith before imposing a sanction under its inherent power." See Seltzer, 227 F.3d at 42.

That is, a court need not make a finding of bad faith before sanctioning an attorney for 'negligent[ly] or reckless[ly] fail[ing] to perform his responsibility[ies] as an officer of the court.'" Id. at 41.

12

Sanctions may also be imposed under 28 U.S.C. § 1927 "where the attorney has negligently or recklessly failed to perform his responsibilities as an officer of the court" See Wilder v. GL Bus Lines, 258 F.3d 126, 130 (2d Cir. 2001) (internal citations omitted); see also Int'l Techs. Mktg., Inc., 991 F.3d at 368 n.5.

**D. False Testimony Constitutes Perjury, warranting Referral to an AUSA for Prosecution.**

In determining what constitutes perjury, the courts "rely upon the definition that has gained general acceptance and common understanding under the federal criminal perjury statute, 18 U.S.C. § 1621." See United States v. Dunnigan, 507 U.S. 87, 94 (1993).

"A witness testifying under oath or affirmation violates this statute if [he] gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. Moreover, "[a] statement can be false without being uttered with the scienter required to render it perjurious." See Margo v. Weiss, 213 F.3d 55, 63 (2d Cir. 2000).

A trial court is not a mere "'bump on a log'" when it comes to combatting the perversion by possible perjury of a court proceeding's truth-finding function. See United States v. Pisani, 773 F.2d 397, 403 (2d Cir.1985) (internal citation omitted).

To the contrary, there is a long history of courts, in appropriate cases, referring possible perjury to prosecutors for investigation or of supporting such a remedy. See, e.g., The Reno, 61 F.2d 966, 968 (2d Cir. 1932); United States v. Comiskey, 460 F.2d 1293, 1294 (7th Cir.1972).[4]

---

[4] For further examples of perjury referrals, see Ades v. 57th St. Laser Cosmetica, LLC, No. 11–cv–8800, 2013 WL 2449185, at *13 (S.D.N.Y. June 6, 2013); Mackler Prods., Inc. v. Turtle Bay Apparel Corp., 92–cv–5745, 1997 WL 269505, at *4 (S.D.N.Y. May 21, 1997), vacated on other grounds sub nom. Mackler Prods., Inc. v. Cohen, 146 F.3d 126 (2d Cir. 1998); Neal v. LaRiva, 765 F.3d 788, 791 (7th Cir. 2014).

One court explained that it "interprets the Code of Conduct for United States Judges—known as the judicial canons of ethics—as *requiring* this Court, should it develop a reasonable basis for believing that the criminal act of perjury has occurred, to refer the matter to the United States Attorney's Office for handling by that representative of the Administrative Branch of the United States Government." See In re Actos (Pioglitazone) Products Liab. Litig., No. 12-CIV.-00 64, 2014 WL 2624943, at *5 (W.D.La. June 11, 2014) (emphasis added).

Perjury in a civil action reaches the criminal level in "those few instances where a witness' lie is so material to the truth-seeking function of a trial that the prosecutor (sometimes, upon the referral of the trial judge) elects to seek an indictment," United States v. Cornielle, 171 F.3d 748, 751 (2d Cir. 1999) (citing, e.g., United States v. Thompson, 29 F.3d 62 (2d Cir. 1994); United States v. Kross, 14 F.3d 751 (2d Cir. 1994), where false statements in civil actions led to criminal perjury convictions).

Common law perjury requires proof of actual falsity, see United States v. Diogo, 320 F.2d 898, 902 (2d Cir. 1963); United States v. Rooney, 37 F.3d 846, 855 (2d Cir. 1994).

An element of *scienter* is required for perjury, "a statement can be false without being uttered with the scienter required to render it perjurious, however." See Margo v. Weiss, 213 F.3d 55, 63 (2d Cir. 2000).

A court has the power to "refer [a] matter to the appropriate prosecuting authority, like the public prosecutor who the court can reasonably expect to accept responsibility for prosecution," when an individual violates the court's orders. See D'Orange v.. Feely, 959 F. Supp. 631, 637 (S.D.N.Y.1997) (citing Young v. United States *ex rel.* Vuitton et Fils, S.A., 481 U.S. 787, 801 (1987)).

For the reasons set forth below, this Court should sanction Deo and Thomasson for their repeated perjury in this case by striking their respective answers, issuing an Order awarding the Superb Plaintiffs' attorneys' fees for the time expended in defending against and responding to their perjurious statements, and referring their repeated perjury to the United States Attorney's Office for investigation and prosecution.

## ARGUMENT

### A.  Deo, Thomasson, and Benjamin Have Repeatedly Engaged in Bad Faith Conduct by Submitting Demonstrably False Testimony, Committing Perjury

As set forth *supra*, a witness testifying under oath or affirmation commits perjury if he gives false testimony concerning a material matter with willful, rather than as a result of confusion, mistake, or faulty memory.  Critically, a statement can be false without being uttered with the *scienter* required to render it perjurious.

In this case, the record abounds with multiple instances of willfully perjurious statements made by Deo and repeated by both Thomasson and Benjamin.

*First*, Deo declared that Cayer was terminated by Urrutia in order to avoid to submitting to a forensic examination of Superb's and Urrutia's other dealerships' financial records when, in fact, documentary evidence clearly and convincingly establishes that Urrutia provided all of the records requested.  Crucially, despite Deo's testimony that he allegedly noticed financial improprieties, upon being provided with the financials, he failed to point out any improprieties.

These false statements are considered a material matter because, in submitting this false testimony, Deo sought to deflect from his wrongful conduct by arguing that Urrutia engaged in wrongful conduct, as the law recognizes the defense of *in pari delicto*.  See, e.g., In re Bernard L. Madoff Inv. Sec. LLC., 721 F.3d 54, 63 (2d Cir. 2013) (under New York law, this defense prohibits one wrongdoer from recovering against another).

15

*Second,* Deo lied that he was unaware of a $650,000.00 advance made by NESNA until July 2023 when documentary evidence and Deo's own text messages with Urrutia clearly and convincingly establish that he was, in fact, aware of the $650,000.00 advance since February 2023. Moreover, Deo knew that the advance was previously drawn in the amount of $1.3M and had been paid down to $650,000.00, *not* taken out as a new loan, yet he repeatedly perjured himself by telling this Court that the advance was a new loan. Thomasson repeated these perjurious statements.

The foregoing perjurious statements are a material matter because they, too, would support a defense under *in pari delicto.*

*Third,* Deo committed perjury when he told this Court that Urrutia floored the Rolls without his permission when, in fact, documentary evidence clearly and convincingly establishes that Deo himself asked Urrutia to floor the Rolls.

The false statements concerning the Rolls are a material matter because, due to them, Deo was able to wrongfully retain possession of the Rolls when Superb paid for it.

*Fourth,* Deo submitted false testimony when he stated that Urrutia stole $760,000.00 when, in fact, Urrutia paid off the floor plan lines of credit for vehicles that Deo double floored. Deo knew his statements were false because he had access to the financial records demonstrating same, as he received

The foregoing false testimony constitutes a material matter because they would similarly support a defense under *in pari delicto.*

*Fifth,* Deo perjured himself when he stated he had no control over Superb's finances when, in fact, he unlawfully and without authorization routinely and regularly engaged in financial transactions concerning Superb.

16

Deo knew these statements were false because he signed an application with Flushing Bank to open an account for Superb, signed checks drawn on Superb's Chase account, signed an ACH authorization to NESNA, and engaged in other financial transactions concerning Superb. Thomasson knew these statements were false because check payments made to him came from Superb's Chase account that were signed by Deo.

This perjury constitutes a material matter because Deo sought to shield himself from his wrongful conduct by arguing that it was impossible for him to engage in it, while the documentary evidence clearly and convincingly shows that he did engage in such conduct. Notably, Deo has not addressed nor refuted the fact that he wrongfully and surreptitiously opened a bank account for Superb with Flushing Bank, listing himself as 100% owner, when Novicky's text messages with Deo clearly stated that Urrutia would handle opening the account with Flushing Bank.  See ECF Docket Entry 50-4 at 1-2 (March 31, 2023 email exchange with Urrutia confirming he is handling opening the account); compare with ECF Docket Entry 11-9 at 1-2 (April 4, 2023 application signed by Deo).

*Sixth*, Deo also falsely swore that Meckling *never* worked at Superb when, in fact, Merckling himself admitted to working at Superb in open court and a disinterested third-party witness similarly provided testimony that Merckling played a critical role in Deo's schemes at Superb.  Merckling's testimony is clear and convincing evidence that Deo's declaration is perjurious.

This matter is material because Deo sought to shield Merckling from liability.

*Seventh*, Deo similarly perjured himself when he lied that Superb's financial condition allegedly improved under his fraud-filled stewardship.

He did so by submitting a financial statement in support of that contention that he knew was false because he directed his accountants to issue the statement with inflated gross profit when, in fact, Superb was operating at a loss.

This matter is material because Deo submitted it in an effort to eliminate or reduce his liability for his fraudulent conduct.

*Eighth*, Thomasson engaged in perjury when he accused Urrutia of "title washing" when, in fact, it was Deo that engaged in this criminal conduct, and Benjamin adopted Thomasson's false testimony, which must result in a finding that he, too, perjured himself.

The foregoing false testimony constitutes a material matter because it would similarly support a defense under *in pari delicto*.

*Ninth*, Deo and Thomasson have repeatedly falsely stated that Urrutia "fled" to Costa Rica when, in fact, Urrutia has lived in Costa Rica all along.

The foregoing false testimony constitutes a material matter because it would similarly support a defense under *in pari delicto*.

Accordingly, this Court should find that Deo, Thomasson, and Benjamin each engaged in perjury by providing false testimony to this Court in multiple declarations.

**B.     This Court Should Sanction Deo, Thomasson, and Benjamin for their Conduct, which constitutes Bad Faith, Warranting Striking Deo's and Thomasson's Pleadings**

Because clear and convincing evidence supports the Superb Plaintiffs' argument that Deo, Thomasson, and Benjamin each engaged in perjury by providing false testimony, this Court should next determine whether Deo, Thomasson, and Benjamin's conduct was made in bad faith.

This Court can easily make such a finding here.

A federal court may 'exercise its *inherent power* to sanction a party or an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" See Rossbach v. Montefiore Med. Ctr., 81 F.4th 124, 141 (2d Cir. 2023) (emphasis added).  A federal court may also sanction an attorney pursuant to 28 U.S.C. § 1927 upon a finding of bad faith, which "requires a court to determine that 'the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" See Johnson v. Univ. of Rochester Med. Ctr., 642 F.3d 121, 125 (2d Cir. 2011)).  "As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." See In re Khan, 488 B.R. 515, 531 (Bankr. E.D.N.Y. 2013)).

"To make a finding of bad faith, a court must (1) find that the challenged actions were taken for improper purposes, such as harassment or delay; and (2) provide a high degree of specificity in the factual findings." See United States v. Prevezon Holdings, Ltd., 305 F. Supp. 3d 468, 483 (S.D.N.Y. 2018) (citing Oliveri, 803 F.2d at 1272).

Though "the rules of evidence [do not] necessarily apply to factfinding in the context of sanctions," Jensen v. Phillips Screw Co., 546 F.3d 59, 66 n.5 (1st Cir. 2008), that a finding of bad faith must be established by clear factual evidence warrants caution in awarding sanctions upon allegations that do not bear "*indicia* of reliability." See Three Headed Productions, Inc. v. Steer Vend, Inc., No. 22-CV-247, 2024 WL 3986868, at *3 n.3 (E.D.N.Y. Aug. 29, 2024) (internal quotations and citation omitted). In considering whether *indicia* of reliability exist, courts examine whether the allegation is substantiated by documentary evidence. See id.; Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Securities, LLC, 685 F. Supp.2d 456, 481 n.108 (S.D.N.Y. 2010) (considering, on a sanctions motion, only those portions of hearsay attorney declaration that were substantiated by documentary evidence).

In light of the irrefutable documentary evidence presented by the Superb Plaintiffs demonstrating that Deo, Thomasson, and Benjamin's declarations contained false sworn statements which constitute perjury, this Court can easily infer that they were submitted for the improper purpose of frustrating the Superb Plaintiffs in bringing this case to resolution and obtaining justice against the Deo Defendants. Deo, Thomasson, and Benjamin have, together, proven cunning and masterful in the art of delay, which has served them well in bleeding Urrutia dry such that he has been forced to shut down all four of his dealerships.

Courts routinely find that bad faith is present in such circumstances. See Baiul v. NBC Sports, No. 15-CIV.-9920 (KBF), 2016 WL 1587250, at *15 (S.D.N.Y. Apr. 19, 2016), aff'd, 708 Fed. Appx. 710 (2d Cir. 2017) (unpublished) ("there is ample evidence in the record to infer Mr. Markovich's bad faith based on his advancement of litigation positions that are so lacking in merit that the only reasonable conclusion to be drawn is that his actions were taken for the improper purposes of either delay or to inflict as much cost (in terms of time and expense) on NBCUniversal as possible"); see also Lask v. Rhee-Karn, No. 24-CIV.-2666 (MMG), 2025 WL 2717474, at *10 (S.D.N.Y. Sept. 24, 2025) (sanctions warranted where conduct evinces a vexatious and undisciplined approach to the practice of law); Keller v. Mobil Corp., 55 F.3d 94, 99 (2d Cir. 1995) (discussing instances in which bad faith may be found, including by continually engaging in obfuscation of the issues, hyperbolism, and groundless presumptions); Mack v. FCA US LLC, No. 24-CIV.-02990 (SJB) (SIL), 2025 WL 2403393, at *15 (E.D.N.Y. Aug. 19, 2025) ("It is also bad faith misconduct that attempts to deceive this Court, which has caused the waste of time and resources"); In re Petrobras Securities Litig., 363 F. Supp. 3d 426, 430 (S.D.N.Y. 2019) (noting that the purpose of 28 U.S.C. § 1927 is to "deter unnecessary delays in litigation").

Judge Forrest's decision in Baiul, which the Second Circuit affirmed, is most instructive.

20

There, the district court found that due to Baiul's "numerous frivolous filings and misrepresentations over the course of this litigation, … [Baiul's counsel] has unreasonably and vexatiously multiplied the proceedings in this case and that both of the necessary elements for imposing § 1927 sanctions have been met."  Just like the district court did in Baiul, this Court should issue appropriate sanctions here for the numerous outright false testimony and misrepresentations carried on by Deo, Thomasson, and Benjamin.  They have each effectively lied to this Court with abandon and with no compunction for repeatedly making false statements they knew or should have known were untrue based on documentary evidence provided to them or of which they were otherwise aware.

Based on the foregoing authority and the circumstances present here, Deo, Thomasson, and Benjamin have unquestionably engaged in bad faith conduct warranting sanctions in the form of having Deo's and Thomasson's pleadings stricken resulting in a default judgment.  See Rossbach v. Montefiore Med. Ctr., 19-CV-5758 (DLC), 2021 WL 3421569, at *4-5 (S.D.N.Y. Aug. 5, 2021) (holding that sanction in the form of dismissal of the action is granted where "a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

## C.    Alternatively, Deo, Thomasson, and Benjamin Have Engaged in Objectively Unreasonable Negligent and/or Reckless Conduct that is, Warranting Sanctions

Even if this Court makes a finding that bad faith has not been established (and the Superb Plaintiffs respectfully submit there is ample basis to find bad faith), sanctions are nonetheless warranted, at a minimum, against Thomasson and Benjamin for perpetuating Deo's perjury.

When assessing an attorney's conduct under 28 U.S.C. § 1927, "[t]he question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually had been established." See Republic of Rwanda v. Ferone, No. 07-

CIV.-7663 (JSR), 2008 WL 919639, at *1 (S.D.N.Y. Apr. 1, 2008); see also Forman v. Mt. Sinai Med. Ctr., 128 F.R.D. 591, 600 (S.D.N.Y. 1989) (explaining that bad faith may be inferred when "an attorney engages in conduct that is so objectively unreasonable that he necessarily must have been acting in bad faith").  "[A] claim is entirely without color when it lacks any legal or factual basis." See Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999) (internal quotation marks omitted). Conversely, a claim is colorable if it has some factual and legal support when "considered in light of the reasonable beliefs of the individual making the claim." See Jiangsu Huari Webbing Leather Co. v. Joes Identified in Schedule A, No. 23-CIV.-2605 (JLR), 2024 WL 20931, at *5-6 (S.D.N.Y. Jan. 2, 2024) (internal citations omitted).

When an attorney "continue[s] to defend" a complaint even after learning of facts rendering the complaint "fatal[ly] flaw[ed]," he has engaged in bad faith conduct sanctionable under § 1927. See Liebowitz v. Bandshell Artist Mgmt., 6 F.4th 267, 282-83 (2d Cir. 2021).

"[B]ad faith motivation also may be inferred from false allegations in the complaint." See Baker v. Urb. Outfitters, Inc., 431 F. Supp. 2d 351, 358 (S.D.N.Y. 2006), aff'd, 249 Fed. Appx. 845 (2d Cir. 2007); see also Liebowitz, 6 F.4th at 282-83 (finding bad faith where attorney "did not promptly move to amend the complaint" once put on notice of defect in complaint); Gambello v. Time Warner Commun., Inc., 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) (imposing sanctions on plaintiff's counsel because "it was incumbent upon counsel ... to withdraw any claims that became unsupportable").  In the instant case, as set forth herein, Deo, Thomasson, and Benjamin have repeatedly lied and doubled down on their deceit notwithstanding the fact that they were previously in possession of evidence directly refuting their contentions or, alternatively, where they were unable to refute or otherwise explain direct evidence submitted by the Superb Plaintiffs in response to their false testimony.

22

The Superb Plaintiffs should not have been forced to address the perjurious statements, which further supports an award under § 1927. See Nike, Inc. v. Top Brand Co., 216 F.R.D. 259, 275-76 (S.D.N.Y. 2003) (explaining that Section "1927 sanctions may involve any conduct which generates needless proceedings"); see also Quinby v. WestLB AG, No. 04-CV-7406 (WHP) (HBP), 2005 WL 3453908, at *5 (S.D.N.Y. Dec. 15, 2005) ("The purpose of § 1927 is to deter unnecessary delays in ligation by penalizing attorneys personally").

Here, despite knowing or later learning that Deo's sworn statements were materially false, Deo, Thomasson, and Benjamin did not act immediately to correct the record or withdraw their false testimony.

Instead, Deo, Thomasson, and Benjamin engaged in dilatory tactics which resulted in the Superb Plaintiffs having to expend precious little resources in addressing their repeated perjury. Sanctions are therefore warranted irrespective of a finding of bad faith because Deo, Thomasson, and Benjamin have engaged in objectively unreasonable conduct by asserting falsehoods that were demonstrably untrue.

**D.    This Court Should Refer Deo and Thomasson to the United States Attorney's Office to Prosecutors for Investigation**

"Perjury goes to the very heart of the fair administration of justice [and] no legal system can long remain viable if lying under oath is treated as no more than a social solecism." See United States v. Cornielle, 171 F.3d 748, 753 (2d Cir. 1999). "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings.... Congress has made the giving of false answers a criminal act punishable by severe penalties." See United States v. Mandujano, 425 U.S. 564, 576 (1976).

As discussed at length *supra*, declarations filed with the Court by Deo, Thomasson, and Benjamin contained material false statements.

23

The Court may find that this is so based on the documentary evidence submitted by the Superb Plaintiffs in this motion and a review of the record as a whole. The declarations submitted by Deo, Thomasson, and Benjamin were made under penalty of perjury, pursuant to 28 U.S.C. § 1746.

Thus, this Court has the power to refer the conduct of Deo, Thomasson, and Benjamin to the United States Attorney's Office for the Eastern District of New York for investigation and, if appropriate, prosecution for perjury pursuant to 18 U.S.C. § 1621, 18 U.S.C. § 1623, or any other criminal statute as may be deemed applicable by that office.  See Consumer Fin. Protec., Bureau v. StratFS, LLC, No. 24-CV-40-EAW-MJR, 2025 WL 1180031, at *19 (W.D.N.Y. Mar. 25, 2025).

Accordingly, the Superb Plaintiffs respectfully submit such a referral is appropriate.

## CONCLUSION

For the foregoing reasons, the Superb Plaintiffs' motion for contempt and sanctions should be granted.

Dated: Jamaica, New York
      October 8, 2025

Respectfully submitted,

**SAGE LEGAL LLC**
   */s/ Emanuel Kataev, Esq.*   
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanual@sagelegal.com

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

**VIA ECF**
All counsel of record