UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

       Plaintiffs,

  -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

       Defendants.
-------------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA IN SUPPORT OF PLAINTIFFS' SUPERB MOTORS INC, TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S MOTION <u>FOR CONTEMPT & SANCTIONS</u>**

  Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1. I am the President of Plaintiffs Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2. Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3. As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4. I respectfully submit this declaration in support of the Superb Plaintiffs' motion for contempt & sanctions for defendants' Anthony Deo's and Harry R. Thomasson, Esq.'s repeated perjury together with their counsel Jeffrey Benjamin, Esq. ("Benjamin").

5. I respectfully start with a fundamental question: how can it be acceptable in federal court for a litigant to open bank accounts in businesses they do not own, write checks from accounts they are not authorized to use, and then lie under oath to this Court repeatedly without consequence?

**Unauthorized Bank Accounts and Checks**

6. Deo opened a bank account with Flushing Bank in Superb's name, falsely listing himself as the sole owner. See ECF Docket Entry 11-9 at 1 ("100%") and at 2 ("Certification I, (name of natural person opening account), hereby certify to the best of my knowledge that the information provided above is complete and correct. ... Recertification ... I hereby certify the information above is complete and correct as of this date ...").

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

2

7. Even under Deo's own account in this case, he claims at most a forty-nine percent (49%) interest pursuant to the Cross-Purchase Agreement.

8. That alleged interest did not confer any right to act as sole owner, to misrepresent himself as sole owner, or to open or control Superb's bank accounts.

9. Deo had no authority to do so, and this fact has never been disputed by Deo or his counsel, Thomasson.

10. Deo then wrote unauthorized checks from Superb's Chase account, despite not being a signatory. See ECF Docket Entry 11-16 at 1-10 (reflecting $147,364.00 in unauthorized checks).

11. Even if he had held a minority ownership interest, he had no right to sign checks without authority pursuant to Superb's shareholders' agreement. See ECF Docket Entry 11-6.

12. This fact, too, has never been disputed by Deo.

13. Deo also authorized over $500,000.00 in ACH payments from Superb's Chase account to NESNA for debts of other dealerships he controlled. See ECF Docket Entry 11-16 at 11 (showing $501,660.70 in unauthorized NESNA ACH payments).

14. No ownership claim, minority or otherwise, entitled him to divert Superb's funds to cover obligations of unrelated businesses.

15. This was never disputed.

16. Deo personally signed the NESNA Debit Authorization for Superb's Chase account without authority. See ECF Docket Entry 11-10.

17. Again, even if his alleged forty-nine percent (49%) interest were accepted, it granted him no power to sign authorizations for Superb's bank accounts or act as sole representative of the company.

3

18. This was similarly never disputed by Deo.

**Perjury in Declarations and Contempt Filings**

19. Despite this clear record, Deo and Thomasson filed sworn declarations and contempt motions claiming that I controlled Superb's finances and that Deo lacked any financial authority. See ECF Docket Entries 30 ¶¶ 32, 37, 48 and 43-1 ¶ 4(n), (o).

20. These claims are irreconcilable with Deo's conduct in opening accounts, writing checks, and diverting funds without authorization.

21. These sworn statements are demonstrably false.

22. Deo not only exercised financial control, but he did so unlawfully—by misrepresenting his ownership interest, opening accounts, writing checks, and diverting funds.

23. Deo also lied under oath regarding the $650,000 NESNA advance, claiming it was a "new loan" I obtained without disclosure. See ECF Docket Entry 30 ¶¶ 29-30.

24. In truth, the documents show it was the same NESNA Advance No. SB30022, originally $1.3M, reduced to $981k, and then paid down to $650k by the time Deo came in.

25. It was not a new advance.

26. Moreover, records show that as early as February 2023, Deo was requesting NESNA tracking information, confirming that he knew of this advance from day one. See ECF Docket Entries 38 ¶¶ 25-26 and 38-3; see also NESNA advance tracker Deo received in February 2023 annexed hereto as **Exhibit "A."**

27. His sworn statements to the contrary were knowingly false.

28. Deo lied about the 2017 Rolls Royce, swearing I floored the vehicle without his knowledge.

29. In reality, he himself asked me to floor the Rolls, and he received payoff funds from Superb for his NextGear loan. See ECF Docket Entries 38 ¶ 48, 38-9, and 220-16.

30. My prior declarations and supporting exhibits have never been disputed.

31. Deo further accused me of stealing $760,000 from Superb, when in fact it was Deo who double-floored vehicles in order to siphon funds through unauthorized checks, ACH withdrawals, and by keeping all customer deposits without detection.

32. I was then forced to pay off these diverted amounts using funds from my other dealerships, as I have clearly shown in my prior declarations and exhibits.

33. Deo has never disputed this evidence.

34. His sworn claim that I stole the money is therefore knowingly false. See ECF Docket Entries 30 ¶ 37, 38 ¶ 47, 220 ¶¶ 6-10; and 220-2 at 91.

35. Deo and his accountant, Thomas Jones, CPA ("Jones"), also submitted a fabricated profit and loss ("P&L") statement to this Court as "true and accurate."

36. In fact, Jones had already closed the real P&L, which showed Superb's actual performance.

37. Only after that did Deo instruct Jones by email to create a new version, inflating Superb's gross profit by nearly $4 million.

38. Jones complied, and together they submitted that fabricated P&L in sworn filings.

39. I submitted the real P&L, along with the emails from Deo to Jones proving that the false version was created at Deo's request.

40. This evidence has never been disputed.

41. Deo and Jones' sworn statements that this P&L was accurate were therefore deliberate perjury and a fraud upon this Court.

5

42. Deo also lied that Defendant Marc Merckling ("Merckling") *never* worked at Superb, when - among other things – it was Deo himself who added Merckling as an "Assistant GM" in Superb's dealership management system ("DMS")! See copy of photograph I took from Superb's DMS annexed hereto as **Exhibit "B."**

43. Most recently, Thomasson's contempt motion (ECF Docket Entry 307) and Jeffrey Benjamin's joinder (ECF Docket Entry 308) accuse me of "washing" titles, driving injuncted vehicles, and encumbering assets.

44. But my March 2, 2025 declaration proves the mileage documents reflect pre-injunction acquisitions, while Defendants themselves drove more than 21,000 miles on injuncted cars. See ECF Docket Entry 228 ¶¶ 39-46.

45. Again, these facts have never been disputed.

46. It is also critical to note that not one fact I have proven with documents, bank records, and sworn testimony has ever been refuted by Deo or Thomasson — not with evidence, and not even with a sworn denial.

47. Their silence in the face of clear proof underscores that their claims are false and their filings are made in bad faith.

**Pattern of Delay and Frivolous Filings**

48. In addition to perjury, Thomasson has repeatedly delayed these proceedings with excuses unrelated to the merits of this case.

49. He has invoked two strokes, a fall, his son's drug addiction, and his life partner's terminal illness as reasons for adjournments and extensions.

50. While personal hardships are real, they have been wielded here as shields to stall this case indefinitely, to my detriment.

6

51. At the same time, Thomasson has filed at least three contempt motions concerning vehicles that Superb never owned — vehicles that were never part of any valid claim by Deo.

52. Yet these filings still resulted in this Court injuncting those cars, compounding my damages.

53. The fact that Defendants could obtain injunctions on assets they had no legal claim to, based solely on false statements, shows how their misuse of this Court's process has become a weapon.

54. This conduct is not merely aggressive advocacy; it is perjury and abuse of process.

55. Filing contempt motions over vehicles that do not belong to Superb is itself contemptuous because it deceives the Court into issuing orders that restrain property without a lawful basis.

56. That misuse of contempt power has caused me direct harm and is exactly why sanctions are necessary.

**Impact of These Lies and Delays**

57. These are not mistakes or lapses in memory.

58. They are deliberate falsehoods under penalty of perjury, coupled with frivolous delay tactics, designed to shift blame, obstruct justice, and bury me in endless motion practice.

59. Each false filing has broken me financially.

60. Every contempt motion requires costly responses, while Defendants' lies and delays prevent recovery of stolen assets.

61. Floorplan interest and warranty advances have drained millions in working capital.

62. The TRO and preliminary injunction—meant to protect my dealerships—have been turned into weapons by Defendants, who exploit them with false declarations and frivolous motions to run out the clock and force my collapse.

63. What began as an emergency tool to protect my business has been twisted into a weapon used against me.

64. The Temporary Restraining Order and related emergency relief—measures intended to stop theft and preserve assets—have instead been exploited by Defendants and their counsel to prolong false accusations, freeze my operating capital, and prevent recovery of property that was taken from me.

65. This has always been clearly a case of theft, not a difference of opinion.

66. And the same pattern has now been repeated against another victim, who was left with nothing and stripped of the ability even to defend himself. See <u>JCDC Inc. v. Deo, et ano.</u>, Index No.: 616451/2025 (Nassau County Supreme Court), NYSCEF Docket Entry <u>1</u>.

67. No law-abiding citizen would ever imagine using the judicial process this way, but a thief like Deo knows exactly how to exploit it to avoid ever answering for his actions.

68. Deo has never claimed to have suffered any legitimate loss in this case.

69. The only figure he points to is the $500,000 he obtained from Libertas — money he misappropriated and never had a right to keep.

70. By contrast, I have lost thirty-nine years of hard work and more than $20 million in the value of my dealerships and assets.

71. The burden on me is magnified by the fact that none of my evidence has been contested.

72. Deo has not produced a single piece of documentary proof to counter what I have shown — not for the Flushing account, not for the unauthorized checks and ACH withdrawals, not for the NESNA advance, not for the double-floored vehicles, not for the fabricated P&L, and not for the misuse of the TRO.

73. Yet I am forced to respond to one false contempt motion after another, while they offer nothing but lies.

74. The Hon. Jerome C. Murphy, J.S.C. ("Justice Murphy") of the Supreme Court of the State of New York, Nassau County has already noted that when Deo fails to contest facts supported by documentary proof, he effectively abandons the argument and concedes those facts. See Urrutia v. Deo, Index No.: 618608/2023 (Nassau County Supreme Court), NYSCEF Docket Entry 134.

75. That same principle applies here.

76. Despite my producing bank records, checks, emails, MV-50s, and even Deo's own communications proving perjury and theft, Deo has never once submitted evidence to rebut them — not on the Flushing account, not on the unauthorized checks and ACH withdrawals, not on the NESNA advance, not on the fabricated P&L, and not on the vehicles.

77. Deo's refusal or inability to dispute my evidence confirms that his filings are knowingly false and filed in contempt of this Court.

78. The only sanctions ever imposed against me in this case concerned alleged odometer paperwork issues.

79. But those vehicles were owned by my Mitsubishi dealership, not by Superb Motors, and thus were never part of Superb's assets.

9

80. Likewise, the vehicles that remain injuncted today were never part of Superb's assets.

81. For over two years, I have been forced to carry the depreciation, insurance, and interest costs on these vehicles, while Deo never had a legitimate claim to them.

82. This Court is now aware, through Justice Murphy's September 23, 2025 ruling, that the entire Superb contract was fraudulent from its inception, which underscores that the TRO and related injunctions have been built on a fraudulent foundation.

83. Continuing to keep these vehicles injuncted only compounds the irreparable harm I have suffered.

84. Justice Murphy has already recognized that the December 2022 Superb agreement was built on false representations: that Deo's $500,000 was unencumbered when it was not, and that Northshore and Sunrise were ongoing, lien-free businesses when they had already been shuttered.

85. In that same unsigned operating agreement, Deo himself acknowledged he had no authority to open accounts or sign checks.

86. These findings confirm what this Court has seen: Deo's conduct was fraudulent from day one, his sworn statements are knowingly false, and his misuse of this Court's TRO and contempt process is part of the same pattern of theft and deceit.

**Request for Relief**

87. The Second Circuit has long held that perjury and falsification of evidence "threaten the integrity of judicial proceedings." CAT3, LLC v. Black Lineage, Inc., 164 F. Supp. 3d 488, 498 (S.D.N.Y. 2016).

88. Courts impose contempt sanctions, fee-shifting, and even dismissal for such conduct. Patsy's Brand, Inc. v. I.O.B. Realty, Inc., 317 F.3d 209 (2d Cir. 2003).

89. Civil perjury has even supported criminal prosecution. United States v. Cornielle, 171 F.3d 748, 751 (2d Cir. 1999).

90. I therefore respectfully ask this Court to (i) strike Deo's and Thomasson's pleadings or enter default; (ii) award the Superb Plaintiffs attorneys' fees for defending against repeated perjury and frivolous contempt; and (iii) refer Deo's, Thomasson's, and Benjamin's conduct to the United States Attorney's Office for investigation.

91. If this conduct is tolerated, it signals to litigants that they may fabricate financials, open unauthorized accounts, file baseless contempt motions, and swear falsely without consequence.

92. That outcome would undermine the truth-seeking function of this Court.

93. For these reasons and those discussed in the accompanying memorandum of law, the Superb Plaintiffs' motion for contempt and sanctions should be granted.

94. I thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on October 8, 2025.

*Robert Anthony Urrutia*
Robert Anthony Urrutia (Oct 8, 2025 02:15:00 EDT)

Robert Anthony Urrutia