UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                   Case No. 2:23-cv-6188 (JW)

SUPERB MOTORS, INC., TEAM AUTO SALES LLC.,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HIGHWAY AUTO LLC., NORTHSHORE MOTOR
LEASING, LLC., BRIAN CHABRIER, individually and
derivatively as a member of NORTHSHORE MOTOR
LEASING, LLC, JOSHUA AARONSON, individually and
derivatively as a member of 189 SUNRISE HWY AUTO,
LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, and ISLAND AUTO
MANAGEMENT, LLC,

                                Plaintiffs,

        -against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON,
DWIGHT BLAKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, TOMAS JONES, CPA, CAR BUYERS
NYC INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD COAST
MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS CORP.,
DLA CAPITAL PARTNERS INC., JONES LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, and LIBERTAS FUNDING,
LLC,

                                Defendants.

------------------------------------------------------------------------X

## DECLARATION OF HARRY THOMASSON IN OPPOSITION TO PLAINTIFFS' MOST RECENT MOTION FOR CONTEMPT/SANCTIONS

1

Harry Thomasson, pursuant to 28 U.S.C. § 1746, declares under the penalty of perjury that the following is true and correct:

1. I am an attorney in good standing in the State of New York, I am admitted to practice before this Court, and I am a *pro se* Defendant in the above captioned action. As such, I have first-hand knowledge of the facts recited herein.

2. This Declaration is submitted in Opposition to Plaintiff Urrutia's and his attorney's latest attempt to obfuscate, delay, and engage in mischief and inappropriate fishing by and through its pending Motion for Contempt/Sanctions.

3. First, it's important for this Court to be reminded that as only I could know with complete first-hand knowledge, it is and remains my position that the accusations of wrongdoing against me as set forth by all of the Plaintiffs in this entire case are false.

4. I deny all of the accusations leveled at me in this latest Motion/waste of time.

5. My health and my schedule are not the Plaintiffs' business. I only revealed health difficulties this year when it began to impact my work on this case, and I needed more time to conduct discovery and Answer the Complaint, which this Court in its discretion granted.

6. This Court is aware that I was hospitalized twice this year due to strokes at the end of February and July, 2025.

7. I was still impacted in July by the February stroke, but I was working, and mostly completed my work on papers opposing yet another Order to Show Cause submitted by Mr. Urrutia and his attorney in a state case in which I represent Anthony Deo before the July stroke, although those papers were actually filed after the stroke.

8. Beyond submitting those papers in early August, there was very little work that I performed for anyone from late July into September 2025, due to blood pressure problems caused by and exasperated from the two strokes. In fact, I did not receive final clearance from my cardiologist to fully resume normal activities until this month, October 2025, after he made medicinal adjustments to my prescription regimen in early September 2025.

9. Attorney Jeff Benjamin and I spoke before a conference before the 2nd Circuit Court of Appeals mediation program in early September 2025, and I learned that he had a doctor's appointment as I was undergoing blood pressure issues and prescription changes. We agreed to seek an adjournment of that conference, and given my limited work schedule, he agreed to seek the adjournment. In his discretion, the mediator granted the adjournment.

10. Yesterday, that mediation conference was held. I along with the Deo co-Defendants by and through their attorney, Mr. Benjamin, offered to conduct the sales of the cars as desired by Mr. Urrutia given, *inter alia*, that he no longer has any dealerships, he cannot still have any licenses to sell cars absent any dealerships, and since he cannot have any insurance on these cars in the absence of any dealerships. If that offer had gained any traction, we were prepared to let Mr. Urrutia's attorney even hold the money in escrow, and the entirety of the sale would, of course, been overseen by this Court as well as the 2nd Circuit Court of Appeals.

11. That offer was rejected without any counteroffer given what Mr. Urrutia and his attorney maintained is a ruling in State Court (Murphy, J.) rescinding the contracts between Deo and Urrutia, meaning that after (wrongfully) complaining to this Court in

3

their instant Motion about my conduct in a 2nd Circuit mediation, Mr. Urrutia and his attorney actually refused to participate in that very conference, yesterday, in good faith. To be clear: We offered yesterday to conduct the very sale of remaining cars as desired by Mr. Urrutia and his attorney and were rejected without any counteroffer, based solely upon a recent ruling by Judge Murphy in state Court that is not finalized at this time, and is not anticipated to be finalized until at least some time next year through anticipated Motion practice and/or appeal.

12. Anthony Deo caused pictures to be taken of the cars on September 14, 2025, and I have reviewed these pictures. There are, at this time, eleven (11) cars (only) jammed into a rear driveway on the rear boundary of Mr. Urrutia's former dealership location in Hartford, Connecticut. These cars are immediately next to a railroad track separated by only a chain link fence. That dealership has been closed and shuttered for more than one (1) year at this point, and no other business is located on this open, vacant lot (meaning no fencing, no security, no human presence, no locks, and eleven (11) cars sitting outside, unprotected, under these conditions). The location of the other nineteen (19) cars ordered by this Court to be delivered to Anthony Deo are unknown to me. Upon information and belief, Mr. Urrutia surrendered the titles to these cars to Nissan Motor Acceptance Corp. ("NMAC"), a creditor of Mr. Urrutia's.

13. So while Mr. Urrutia and his attorney waste time questioning my health and scheduling (and despite the 2nd Circuit mediator ruling in my and Mr. Benjamin's favor on the one adjournment requested), at this moment in time, Mr. Urrutia 1) has no dealerships for more than one (1) year; 2) Anthony Deo and the Deo Defendants never had any involvement with any dealership owned or operated by Mr. Urrutia other than Superb

Motors; 3) with no dealerships, Mr. Urrutia cannot have dealership insurance (required by the injunction at issue) to be on the cars; 4) only eleven (11) cars were even on the Hartford lot as of September 14, 2025; 5) I believe that Mr. Urrutia surrendered the vehicle titles to NMAC, also in violation of the injunction at issue; 6) since Mr. Kataev told this Court in May, 2025, that Mr. Urrutia cannot afford to transport cars to Mr. Deo, Mr. Urrutia by and through Mr. Kataev have commenced a new related case in state Court against Mr. Deo (along with extensive Motion practice therein), have commenced two (2) appeals, and continue to engage in wasteful Motion practice, such as the instant Motion; and 7) just as Mr. Urrutia and Mr. Kataev needlessly complain to this Court about my behavior in the 2nd Circuit, it is Mr. Urrutia and Mr. Kataev who effectively refused to participate in the mediation session by rejecting an offer to obtain the very sale of cars that they allegedly seek as the basis for their appeal, based upon an intervening decision that may not be finalized until 2027 given the likelihood of Motion practice and an appeal related to that decision.

14. I deny all of the false accusations against me at issue in this Motion. I also ask this Court at oral argument to force Mr. Urrutia and his attorney to 1) prove the existence of insurance on all of the cars under the injunction; 2) prove the existence of proper DMV licensing to be able to sell the cars at issue; 3) prove the existence and location of all of the cars still under the injunction; and 4) prove the location of the titles to all of the cars still under the injunction.

15. If this Court so desires, I am happy to offer documents related to my health and/or work schedule to the Court for *in camera* inspection; such documents are otherwise private and/or privileged or would be attached hereto.

5

16. I also deny the accusations made about certain transactions that took place within the Deos' work at and with Superb during 2023 prior to the LockOut in August, 2023. First and foremost, I had nothing to do with the operation of Superb at any time for any reason, and never engaged in any work for anyone regarding the operation of Superb at issue in the instant Motion. I had nothing to do with cars at Superb, nothing to do with audits or comptrollers or accountants at Superb, and nothing to do with any banks or banking during the Deos' time at Superb. I also was not consulted by the Deos when they obtained an interest in Superb, and when they obtained loans or conducted banking therefor. At most, others occasionally copied me on emails that I rarely, if ever, read in real time, since Mr. Deo informed me (when I was included on an email) that there were times he included me on emails so that others knew he was informing an attorney of the contents of the email, and since he concurrently would tell me that he didn't need me to perform any work thereon.

17. The instant Motion is a transparent attempt to engage in "the best defense is a good offense" strategy, and Plaintiff seeks an Order of this Court with transparently unclean hands. Simply put, Plaintiffs are utilizing the stay regarding their own wrongdoing under the injunction as a sword, not as the intended shield, to hide further wrongdoing that is on-going, daily; the stay is effectively blocking my ability to expose their wrongdoing under the injunction, and I urgently ask this Court to address this issue/inequity at oral argument.

18. Instead of acting in good faith under the terms of the injunction, Urrutia and his attorney concoct broad, unsubstantiated allegations of wrongdoing against me and my co-Defendants.

19. E.g., the "check" produced regarding the Rolls Royce is not accompanied by any proof that it was cashed, which after my review of relevant records, it was not cashed. In fact, my review of relevant records and discussions with my co-Defendants indicates it is not real, as it was never given to any of the Deo Defendants at any time to the best of my knowledge.

20. The Plaintiff (again) makes false allegations about the location of certain (103) cars belonging to Superb allegedly stolen by Anthony Deo, but fails to point out that these allegations were thoroughly investigated by the Nassau Police Department, who chose to make no charges against any of the Deo Defendants. In addition, this Court knows from the conduct of the conferences and evidentiary hearing before it that there is no basis to make these accusations against me or any of the Deo Defendants.

21. I also wish to poke easy holes through the argument that the Cayer emails are instructive in any meaningful way: My review of the Cayer emails indicates that the emails were made by Ms. Cayer in response to Anthony Deo's request for an audit given that Anthony Deo found out that money was missing from one or more Superb accounts controlled by Mr. Urrutia. More importantly, no contents of these emails were ever given to this Court specifically because it is obvious to me that Ms. Cayer wanted to give the appearance of cooperation with the audit requested by Mr. Deo, when these emails only contained a massive data dump, without anyone having the ability to make sense of what was in the emails, especially since Ms. Cayer was immediately unavailable to explain the emails given that Mr. Urrutia fired Ms. Cayer immediately after the data dump. By firing Ms. Cayer, Mr. Urrutia conveniently concealed where the missing money went from the account(s) controlled exclusively by Urrutia. Please

7

be reminded, your Honor, that I have long maintained in this and related cases/ Complaints that Urrutia was siphoning money out of Superb to help with his decaying, poorly run dealerships in which the Deos and the Deo Defendants maintained no interests or involvement of any type, and all of which have, indeed, failed.

22. I ask that this Court deny Plaintiffs' instant Motion in all respects. I also request such other and further relief as the Court deems necessary, just, equitable and proper.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 22, 2025.

/S/ *Harry R. Thomasson*
_____
Harry R. Thomasson, Esq.
*Pro Se* Defendant
3280 Sunrise Highway, Box 112
Wantagh, New York  11793
Tel.  516-557-5459
Email:  hrtatty@verizon.net