UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUPERB MOTORS INC. *et al.*,

                   *Plaintiffs*,

    -against-

ANTHONY DEO *et al.*,

                   *Defendants*.
----------------------------------------------------------------X

**FILED**
**CLERK**

**11/5/2025**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>**ORDER**</u>
23-CV-6188 (JMW)

**A P P E A R A N C E S:**

    Emanuel Kataev
    **Sage Legal LLC**
    18211 Jamaica Avenue
    Jamaica, NY 11423
    *Attorneys for Plaintiffs Superb Motors Inc.,*
    *Team Auto Sales LLC and Robert Anthony Urrutia*

    Jeffrey Benjamin
    **The Linden Law Group, PC**
    250 Park Avenue
    Ste 7th Floor
    New York, NY 10177
    *Defendants Anthony and Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

    **Harry R. Thomasson**
    3280 Sunrise Highway, Ste Box 112
    Wantagh, NY 11793
    *Defendant Appearing Pro Se*

    *No appearances by other Parties*

**WICKS**, Magistrate Judge:

    The Federal Rules of Civil Procedure are instructive and govern this action. These rules "should be construed, administered, and employed by the court and the parties to secure the just,

speedy, and inexpensive determination of every action and proceeding. *See* Fed. R. Civ. P. 1. This case presents quite the opposite.[1] The latest disputes between the parties leads the Court to decide whether sanctions are warranted. Currently before the Court are (i) Superb Plaintiffs'[2] Motion for Sanctions (ECF Nos. 322-24), Pro se Defendant Harry Thomasson's ("Thomasson") Opposition (ECF No. 327), Deo Defendants'[3] Opposition (ECF No. 328), Plaintiffs' Reply (ECF Nos. 333-34), and (ii) Deo Defendants' Cross Motion for Sanctions (ECF No. 329), and Superb Plaintiffs' Opposition (ECF Nos. 333-34). For the reasons that follow, the Motions (ECF Nos. 322, 329) are **DENIED**.

## LEGAL FRAMEWORK

Every district court "has the inherent power to supervise and control its own proceedings and to sanction counsel or a litigant." *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d

---

[1] The Court warns the parties that submissions such as the instant motions will not be tolerated. *See United States v. Veeraswamy*, No. 23-CV-9379, 2025 WL 2740374, at *22 (E.D.N.Y. Sept. 26, 2025) ("Defendant's dilatory tactics should not be rewarded, especially in light of Federal Rule of Civil Procedure 1's mandate for the courts to 'secure the just, speedy, and inexpensive determination of every action and proceeding.'"); *Peleus Ins. Co. v. Hallet, LLC*, No. 24-CV-04630 (HG) (PK), 2025 WL 1736868, at *2 n.6 (E.D.N.Y. June 23, 2025) (describing the parties' filings as "unnecessary avalanche of papers") ("The parties are directed to cease their scorched-earth approach to this standard coverage dispute before both this Court and Magistrate Judge Kuo. Their file-now-and-figure-it-out-later strategy is needlessly bloating the docket and wasting Court resources.") Indeed, the parties are on notice that the Court has authority to issue filing injunctions, which would require permission prior to filing any further motions. *See Livevideo.AI Corp. v. Shari Redstone, et al.*, No. 24-CV-6290 (DEH)(BCM), 2025 WL 2933706 at *22 (S.D.N.Y. Aug. 12, 2025) (discussing that federal district courts possess the authority to enjoin a litigant from further filings without prior permission to avoid "meritless, frivolous, vexatious or repetitive ... proceedings"); *see also Castellaw v. Excelsior College*, No. 14-CV-1048 (PKC)(RLM), 2021 WL 3046748, at *3 (E.D.N.Y. July 20, 2021) (issuing a filing injunction) ("Plaintiff's many filings have caused needless expense to other parties in this case and unnecessarily consumed valuable judicial resources").

[2] "Superb Plaintiffs" are Superb Motors Inc., Team Auto Sales LLC and Robert Anthony Urrutia.

[3] "Deo Defendants" are Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

2

Cir. 2013) (citing *Mickle v. Morin,* 297 F.3d 114, 125 (2d Cir. 2002)). Likewise, "[a] court may sanction a party under its inherent power to deter abuse of the judicial process and prevent a party from perpetrating a fraud on the court." *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020). 28 U.S.C. § 1927 states that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

Sanctions under either 28 U.S.C. § 1927 or the court's inherent authority have the same requirements, and

> [t]he only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is ... that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.

*James v. Kuhnle*, No. 19-CV-1175(KAM)(JMW), 2022 WL 1525488, at *3 (E.D.N.Y. May 13, 2022), *report and recommendation adopted*, No. 19-CV-1175(KAM)(JMW), 2022 WL 2046679 (E.D.N.Y. June 7, 2022) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).

A court must find that the offending party's claims or actions were entirely without color and were brought in bad faith, meaning motivated by improper purposes such as harassment and delay or for other improper purposes. *Chabra v. MapleWood Partners, L.P.*, No. 12-CV-1113 (JS) (ARL), 2016 WL 11480706, at *7 (E.D.N.Y. Jan. 12, 2016), *report and recommendation adopted*, 2016 WL 868207 (E.D.N.Y. Mar. 7, 2016); *see Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam) (requiring "clear evidence that the challenged actions are entirely without color and are taken for reasons of harassment or delay or for other improper purposes." (cleaned up)); *see also Hong v. Mommy's Jamaican Mkt. Corp.*, No. 20-cv-9612 (LJL), 2024 WL

3

3824394, at *12 (S.D.N.Y. Aug. 14, 2024) (quoting *Agee v. Paramount Commc'ns, Inc.*, 114 F.3d 395, 398 (2d Cir. 1997)) (noting courts may utilize their inherent power and impose sanctions against a "party who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"). The courts use their inherent power "to award monetary sanctions against a party for that party's 'bad faith, vexatious, or wanton' misconduct." *Google LLC v. Starovikov*, No. 21-CV-10260 (DLC), 2022 WL 16948296, at *12 (S.D.N.Y. Nov. 15, 2022) (citing *Int'l Techs. Marketing, Inc. v. Verint Sys. Ltd.*, 991 F.3d 361, 368 (2d Cir. 2021)).

Prior to imposing sanctions "due process requires that the party to be sanctioned … 'receive specific notice of the conduct alleged to be sanctionable and the standard by which that conduct will be assessed, and an opportunity to be heard on that matter, and must be forewarned of the authority under which sanctions are being considered, and given a chance to defend himself against specific charges.'" *Rothman v. Complete Packing & Shipping Supplies, Inc.*, No. 22-CV-2821 (OEM) (ST), 2024 WL 4350433, at *3 (E.D.N.Y. Sept. 30, 2024) (collecting cases).

> [Minimally], the notice requirement mandates that the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense. The opportunity to respond is judged under a reasonableness standard: a full evidentiary hearing is not required; the opportunity to respond by brief or oral argument may suffice.

*In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 117 (2d Cir. 2000) (internal citations omitted).

Keeping these principles in mind, the Court considers the instant motions.

## DISCUSSION

Superb Plaintiffs request that the Court "make findings that [Defendants Anthony Deo ("Deo")], Thomasson, and [Deo Defendants' Attorney, Jeffrey Benjamin, Esq. ("Benjamin")] have perjured themselves, engaged in bad faith, and thus sanction them [pursuant to 28 U.S.C. § 1927 and the Court's Inherent Power] by: (i) striking their answer or otherwise finding them to

4

be in default due to their bad faith conduct; and/or (ii) awarding the Superb Plaintiffs attorneys' fees for defending against and responding to perjurious statements; and/or (iii) referring them to the United States Attorney's Office for investigation." (ECF No. 323 at 1, 9-13.)

The Deo Defendants cross-move requesting monetary sanctions against Superb Plaintiffs, and their counsel, Emanuel Kataev, Esq. ("Kataev") for "making an utterly baseless, vexatious and bad-faith motion in an amount deemed appropriate by the Court, or after submission of a time billing report for the waste of judicial resources presented by this motion." (ECF No. 329-1 at 2.)

Both motions involve serious allegations against one another. Notably, Courts have declined to impose sanctions where the record does not establish a certain level of alleged deception. *See Beverly Hills Teddy Bear Co. v. Best Brands Consumer Prods., Inc.*, No. 19-CV-3766 (GHW), 2020 WL 7342724 at *18 (S.D.N.Y. Dec. 11, 2020) (denying motion for sanctions made on the basis of perjury when it was not clearly indicative that the plaintiff "engaged in the kind of intentional deception required for the imposition of sanctions under the Court's inherent power."). Therefore, the Court reviews each to determine if sanctions are warranted.

**I.     Superb Plaintiffs' Motion (ECF No. 322)**
**a.  *Plaintiffs' Request for Sanctions based on Defendants' Alleged Perjurious Statements***

Superb Plaintiffs contend that Deo, Thomasson and Benjamin have made perjurious statements. (ECF No. 323 at 1-7.) Each statement is outlined below.

The first allegation is in connection with the statement made by Deo "when he swore in his declaration [on September 11, 2023] that Urrutia fired [Superb's Chief Financial Officer, Alysia] Cayer to prevent a forensic examination…." (ECF No. 323 at 2, 15.) Plaintiffs point to Urrutia's response of "hundreds of emails containing thousands of financial documents" when Deo requested a "forensic review" to demonstrate that Deo received the documents he sought.

5

(*See* ECF Nos. 95 at ¶¶ 4-6; 95-1; 304 at ¶ 16.) Plaintiffs also argue that this alleged perjury constitutes a material matter as Deo "sought to deflect from his wrongful conduct" by arguing that Urrutia had engaged in wrongful conduct. (ECF No. 323 at 15.) Plaintiffs state that as a result of this statement and many others, the defense of *in pari delicto* prohibits one wrongdoer from recovering against another. (*Id.*) (citing *In re Bernard L. Madoff Inv. Sec. LLC.*, 721 F.3d 54, 63 (2d Cir. 2013)). In Thomasson's reply, he argues that a data dump was provided and without Alysia Cayer having the ability to explain its content due to the firing. (ECF No. 327 at 7.) In response, Plaintiffs argue that Defendants admit they received the documents, and it is not Plaintiffs' issue if their forensic team was "incompetent". (ECF No. 333 at 5.)

The second allegation is in connection with the statement made by Deo in the same declaration in which the above assertion was made, that he was "unaware of a $650,000 advance by made NESNA and first learned about it in July 2023." (ECF No. 323 at 2.) Furthermore, Deo claimed this loan was a new loan. (*Id.* at 3.) Plaintiffs cite to text messages to argue that Deo knew about the existence of the NESNA advance. (*See* ECF No. 38-2.) Likewise, Plaintiffs state that Thomasson "propogate[d] this perjury in multiple declarations." (ECF No. 323 at 2; *see also* ECF No. 30-1 at ¶ 14(p).)

The third allegation is in connection with the statement made by Deo that "Urrutia floored the Rolls [Royce] he sold Urrutia without his permission." (ECF No. 323 at 4.) Plaintiffs cite to correspondence demonstrating Deo's knowledge of the flooring, showing that Deo asked Urrutia to floor the vehicle. (*See* ECF Nos. 38 ¶ at 48; 38-9 at 1-3.) Plaintiffs aver that this alleged perjury constitutes a material matter because Deo was "able to wrongfully retain possession of the Rolls when Superb paid for it." (ECF No. 323 at 16.) Thomasson opposes this

by arguing a check was never issued as to the Rolls Royce. (ECF No. 327 at 7.) Plaintiffs refute this by stating Plaintiff Urrutia issued a wire to pay for the vehicle, not cash. (ECF No. 333 at 5.)

The fourth allegation is in connection with the statement made by Deo that Urrutia stole $760,000 from Superb. (ECF No. 323 at 4.) Plaintiffs point to Urrutia's accounting of what happened to the money. (*See* ECF Nos. 38 at ¶ 47; 38-7; 38-8; 220 at ¶¶ 6-10.)

The fifth allegation is in connection with the statement made by Deo that he lacked control over the finances at Superb. (ECF No. 323 at 5.) Plaintiffs cited several docket entries containing statements such as "accused me of taking $760,000, when it is simply not possible as I do not control the dealership's finances," with an implication that Deo did control the company's finances. (ECF Nos. 37; 30 at ¶ 32.) Plaintiffs argue that "Deo has never explained how and why he opened a bank account for Superb…listing himself as 100% owner." (ECF No. 323 at 5.) Additionally, Plaintiffs state that Thomasson "propogate[d] this perjury in his declaration." (ECF No. 323 at 2 (citing ECF No. 30-1 at ¶ 14(h).) Thus, Plaintiffs contend that alleged perjury constitutes a material matter because Deo attempted to shield himself from his wrongful conduct by arguing he could not have engaged in it, "while documentary evidence clearly and convincingly shows that he did engage in such conduct." (ECF No. 323 at 17.)

The sixth allegation is in connection with the statement made by Deo that Marc Merckling "never worked at Superb." (ECF No. 323 at 6.) Plaintiffs include a document to show that Deo added Merckling as "Assistant GM" to Superb's employment roster in its management system. (*See* ECF Nos. 324 at ¶ 42, 324-2.) Thus, Plaintiffs argue this alleged perjury constitutes a material matter because Deo attempted to shield Merckling from liability. (ECF No. 323 at 17.)

The seventh allegation is in connection with the statement made by Deo that the financial condition of Superb "improved based on his actions." (ECF No. 323 at 6.) Plaintiffs argue both

7

that (i) this was not true (*see* ECF No. 241-1 at 1-2) and (ii) that Deo knew Superb was operating at a loss (*see* ECF Nos. 241-5; 241-3; 241-4). This alleged perjury constitutes a material matter because Deo attempted to "eliminate or reduce his liability for his fraudulent conduct." (ECF No. 323 at 18.)

The eight allegation is in connection with the statement made by Thomasson alleged that Urrutia committed "criminal fraud." (ECF No. 323 at 7.) Additionally, Benjamin adopted Thomasson's testimony, meaning he too allegedly committed perjury. (*Id.*) Plaintiffs argue this is demonstrably false as Deo was the one engaging in such conduct, not Urrutia. (*See* ECF Nos. 304 ¶¶ 48-54; 304-1; 304-2.)

The final allegation is in connection with the statements made by Deo and Thomasson that Urrutia "fled" to Costa Rica. (ECF No. 323 at 7.) Plaintiffs pose this as a misrepresentation, pointing to a Docket entry stating, "Tony Urrutia spends 90%+ of his time out of the country, and mainly in Costa Rica." (*See* ECF No. 30 at ¶ 37.)

Deo Defendants, Benjamin and Thomasson deny all the allegations made against them. (ECF Nos. 327-28.) Rather than address the specific statements, they argue that the instant motion is frivolous and discuss matters that are irrelevant such as the pending appeal in the Circuit. (*Id.*) The only slim relevancy statement made by Thomasson in response to these perjurious allegations, is that no content of the emails was ever provided and by firing Alysia Cayer, Plaintiff Urrutia was able to conceal "where the missing money went." (ECF No. 327 at ¶ 21.) Thomasson's rather confusing response does not truly oppose the allegations made. It is filled with emotions and devoid of the law itself.[4] Indeed, Plaintiffs' reply also points out Defendants failure to address the allegations. (ECF No. 333 at 6.)

---

[4] Lastly, Defendants discuss contents of the matters occurring within the Second Circuit appeal. That clearly has no bearing here. (*See* ECF Nos. 327-28.)

Nonetheless, a review of the above, leads the Court to a finding that sanctions are not warranted. What is clear is the fact that generalized allegations are spewed by the parties. "[T]he imposition of sanctions pursuant to a court's inherent authority is truly discretionary." *Livevideo.AI Corp.*, 2025 WL 2933706, at *21 (internal citations omitted). Before a Court exercises this inherent authority, a clear and convincing standard of evidence must be met to demonstrate that the conduct was made in bad faith. *See Wager v. Secure Integration, LLC*, No. 19-CV-3547 (MKV)(KNF), 2021 WL 4311373 at *7-8 (S.D.N.Y. Sept. 21, 2021) (finding that the moving party did not establish by clear and convincing evidence that the other party's actions were made in bad faith, which is "a prerequisite to an award of sanctions under the court's inherent power"). Indeed, Superb Plaintiffs provide the Court with a laundry list of alleged perjury that the named Defendants "committed". Such allegations are better suited for the fact finder once this matter finally meets its way to trial. At this stage, allegations of "[p]erjury alone does not constitute fraud upon the court." *Skywark v. Isaacson*, No. 96-CV-2815 JFK, 1999 WL 1489038, at *14 (S.D.N.Y. Oct. 14, 1999), *aff'd,* No. 96-CV-2815 (JFK), 2000 WL 145465 (S.D.N.Y. Feb. 9, 2000) (internal citations omitted). ("Rather, such an affront occurs where a party has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case and his adversary's defense of the action.")

Accordingly, the Court declines to use its inherent power to sanction Defendants.

### b. *Other Alleged Reasons to Sanction Defendants - Bad Faith & Unreasonable Negligent Conduct*

Plaintiffs argue the conduct of Deo, Thomasson, and Benjamin constitutes bad faith, and this Court can "easily infer that the[ir] false sworn statements] were submitted for the improper purpose of frustrating the Superb Plaintiffs in bringing this case to resolution." (ECF No. 323 at

9

20.) Plaintiffs argue that this Court should issue sanctions for the false testimony and misrepresentations of Deo, Thomasson, and Benjamin, as they have "effectively lied to this Court…with no compunction for repeatedly making false statements…." (ECF No. 323 at 21.) Plaintiffs compare this case to *Baiul v. NBC Sports*, No. 15-CV-9920 (KBF), 2016 WL 1587250, at *15 (S.D.N.Y. Apr. 19, 2016), *aff'd*, 708 Fed. Appx. 710 (2d Cir. 2017).[5]

In the alternative, Plaintiffs aver if the Court does not find that bad faith has been established, sanctions are still warranted for perjury. Plaintiffs assert that Deo, Thomasson, and Benjamin have "doubled down on their deceit notwithstanding the fact that they were previously in possession of evidence directly refuting their contentions…." (ECF No. 323 at 22.) Plaintiffs argue they are entitled to an award under § 1927 because they "should not have been forced to address the perjurious statements." (*Id.*) Deo Defendants, Benjamin and Thomasson failed to respond to these allegations. (*See* ECF Nos. 327-28.)

In any event, the Court does not find bad faith has been established. *See Azkour v. Little Rest Twelve*, No. 10-CV-4132 (RJS)(KNF), 2014 WL 12779561, at *2 (S.D.N.Y. June 2, 2014) (citing *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) ("Bad faith can be inferred when the actions taken are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.")). There was no evidence provided to the Court that Deo, Benjamin and Thomasson have made filings for improper purposes or the like. Without that or any proffered reason with clear evidence of impropriety, the Court declines to impose sanctions under its inherent authority. *See Chabra*, 2016 WL 11480706, at *7; *Leibovitz v. City of New York*, No. 15-CV-546 (LGS) (HBP), 2019

---

[5] This case is not instructive here. In *Baiul*, the plaintiffs brought a claim for breach of contract and continued pursuit of such claim even after learning that no such contract existed. *Id.* at *15-16. Thus, the Court found sanctions appropriate. That is nowhere near the claims at hand.

10

WL 4307305, at *4 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, No. 15-CV-0546 (LGS), 2019 WL 4303343 (S.D.N.Y. Sept. 11, 2019) (internal citations omitted) ("Pursuant to its inherent power, a court may impose sanctions against a party for "act[ing] in bad faith, … and for 'misconduct during the course of litigation.'").

Moreover, a finding of bad faith is regarded as a prerequisite, particularly in the context of § 1927 sanctions. *See In re Kahn*, 488 B.R. 515, 529 (Bankr. E.D.N.Y. 2013), *aff'd sub nom. Dahiya v. Kramer*, No. 13-CV-3079 (DLI), 2014 WL 1278131 (E.D.N.Y. Mar. 2014), *aff'd sub. nom. In re Kahn*, 593 F. App'x 83 (2d Cir. 2015) (discussing the contrast between Rule 11 sanctions' objective standard with § 1927's clear showing of bad faith requirement); *Rsch. Found. for State Univ. of New York v. Telluric Labs, LLC*, No. 21-CV-1898 (JS)(SIL), 2024 WL 3675901, at *3 (E.D.N.Y. Aug. 6, 2024) ("Bad faith is the touchstone of an award under this statute."). As no bad faith has been found or established, the Court may not impose sanctions under 1927. *See Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004) (quoting *Mone v. C.I.R.,* 774 F.2d 570, 574 (2d Cir. 1985) ("Courts in this circuit construe the statute 'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'")). Simply put, even though the Court is not happy with the voluminous docket, there is not enough here to warrant sanctions.

In addition, although all parties were provided with an opportunity to oppose this motion, this is the first request for the relief sought based upon bad faith, and thus, the proper route is to place a party on notice. *See Mickle*, 297 F.3d at 126 (discussing that in addition to showing bad faith, the court must also provide specific notice of its consideration of sanctions and an opportunity to be heard before their imposition).

Accordingly, for the reasons stated above and in the prior discussion (see *supra*, Section I(a)), the imposition of sanctions is not warranted.

### c. *Referral to U.S. Attorney's Office*

Lastly, Plaintiffs argue Deo, Thomasson, and Benjamin submitted declarations under penalty of perjury pursuant to 28 U.S.C. § 1746, and that this Court has the power to refer the conduct of Deo, Thomasson, and Benjamin to the U.S. Attorney's Office for investigation and prosecution. (ECF No. 323 at 24.) The opposition contains no response to this portion on the motion. (*See* ECF Nos. 327-28.)

Having found no reason to impose sanctions and no authority cited by Superb Plaintiffs, the Court declines to refer any party to the U.S. Attorney's Office for investigation. Indeed, "a court should hesitate before making such a formal referral, given the weight that such a referral may have." *See Sec. & Exch. Comm'n v. Payton*, 176 F. Supp. 3d 346, 348 (S.D.N.Y. 2016) (declining to make a referral) ("Having considered the parties' submissions, Mr. Payton's testimony and demeanor at trial, and the prior history of the case, the Court, while deeply troubled by the material inconsistencies in Mr. Payton's statements given under oath, hereby decides not to formally refer Mr. Payton to the U.S. Attorney's Office for a possible perjury prosecution."); *see also Perez v. Metro Dairy Corp.*, No. 13-CV-2109 (RML), 2016 WL 755628, at *6 (E.D.N.Y. Feb. 25, 2016) (declining to refer the matter to the U.S. Attorney's Office where conflicting accounts of two witnesses did not establish a sufficient basis for the imposition of sanctions).

Accordingly, Superb Plaintiffs' request for a referral to the U.S. Attorney's Office is denied.

II. **Deo Defendants' Cross Motion (ECF No. 329)**

Deo Defendants' cross-motion is the mirror image of their opposition. (*See* ECF Nos. 328-29.) Tellingly, the same four pages are filed for both—an indicator that a paucity of time was expended on the instant motions. (*See* ECF Nos. 328, 329-1.) In any event, Deo Defendants seek monetary sanctions against Superb Plaintiffs and Kataev "for making an utterly baseless, vexatious and bad-faith motion." (ECF No. 329-1 at 2, 4.) Absent from the cross-motion is any citation to case law or legal support. Instead, there are blanket assertions as to why this motion should be granted. It follows, therefore, that for the simple reason that Defendants have failed to provide authority or articulate any reason for this Court's consideration, the application is denied.[6]

## CONCLUSION

For the reasons stated herein, the Motions for Sanctions (ECF Nos. 322, 329) are **DENIED**.

Dated: Central Islip, New York
       November 5, 2025

S O   O R D E R E D:

/S/ *James M. Wicks*
       JAMES M. WICKS
       United States Magistrate Judge

---

[6] Moreover, as Superb Plaintiffs correctly point out, Deo Defendants fail to comply with the Local Rules by filing their cross-motion as a letter motion and not including a memorandum of law for their opposition. (*See* ECF No. 333 at 8.) Local Rule 7.1 states that for non-letter-motions,

> motions must include the following motion papers: (1) A notice of motion … (2) A memorandum of law, setting forth the cases and other authorities relied on in support of the motion, … 3) Supporting affidavits and exhibits thereto … and (4) All oppositions and replies with respect to motions must comply with subsections (a)(2) and (3), and an opposing party who seeks relief that goes beyond the denial of the motion must also comply with subsection (a)(1).

Loc. Civ. R. 7.1. Thomasson is likewise forewarned that he must comply with these rules as well.

13