EXHIBIT "A"

```
 1                                                    1
 2    UNCERTIFIED TRANSCRIPT IN THE MATTER OF:
 3    *****************************************
 4    SUPERB, et al.
 5       v.
 6    DEO, at el.
 7    *****************************************
 8        The following transcript of
 9    proceedings, or any portion thereof, in
10    the above-entitled matter, taken on
11    January 12, 2026, is being delivered
12    UNEDITED and UNCERTIFIED by the court
13    reporter at the request of EMANUEL
14    KATAEV and JEFFREY C. RUDERMAN.
15        The purchaser agrees not to disclose
16    this uncertified and unedited transcript
17    in any form (written or electronic) to
18    anyone who has no connection to this
19    case.
20        This is an unofficial transcript,
21    which should NOT be relied upon for
22    purposes of verbatim citation of
23    testimony.
24        This transcript has not been checked,
25    proofread or corrected.  It is a draft
```

```
 1                                        2
 2   transcript, NOT a certified transcript.
 3   As such, it may contain
 4   computer-generated mistranslations of
 5   stenotype code or electronic
 6   transmission errors, resulting in
 7   inaccurate or nonsensical word
 8   combinations, or untranslated stenotype
 9   symbols which cannot be deciphered by
10   non-stenotypists. Corrections will be
11   made in the preparation of the certified
12   transcript, resulting in differences in
13   content, page and line numbers,
14   punctuation and formatting.
15      This uncertified and unedited
16   transcript contains no appearance page,
17   certificate page, index or
18   certification.
19
20
21
22
23
24
25
```

```
 1        UNOFFICIAL ROUGH DRAFT TRANSCRIPT   68
 2        A.   Specifics, I don't know.
 3        Q.   Do you have any record of when
 4   you hired them?
 5        A.   I have no records.
 6        Q.   You don't keep records?
 7        A.   My records were taken from me.
 8        Q.   By who?
 9        A.   By IAG.
10        Q.   And by IAG, you're referring to
11   Island Auto Group?
12        A.   Yes.
13        Q.   Have you ever applied for a DMV
14   license?
15        A.   Yes.
16        Q.   When was that?
17        A.   I applied, I think,
18   February '23.  February.
19        Q.   Was that application approved or
20   denied?
21        A.   That application was approved.
22   I applied for two.  I'm sorry.
23        Q.   Were both approved?
24        A.   Yes.
25        Q.   For those two applications,
```

```
 1           UNOFFICIAL ROUGH DRAFT TRANSCRIPT    69
 2    before they were approved, were they
 3    ever denied?
 4         A.   They don't deny and then
 5    approve.
 6         Q.   Okay.  Prior to those
 7    applications, were you ever denied a
 8    license from the DMV?
 9         A.   Denied, no.  Not to my
10    recollection, no.
11         Q.   Is it fair to say that other
12    than your one -- other than your two
13    applications from February 2023, you
14    never previously applied for a license
15    with the DMV?
16         A.   I just want to make sure I
17    remember.  I'm not a hundred percent
18    sure, but I don't think so.
19         Q.   Okay.  So to the best of your
20    recollection, you were never denied a
21    license from the DMV, correct?
22         A.   No.  These two were approved.
23         Q.   Okay.  And these are the only
24    two that you applied for, to the best
25    of your --
```

```
 1           UNOFFICIAL ROUGH DRAFT TRANSCRIPT   70
 2        A.   To the best of my recollection.
 3        Q.   In applying for a license with
 4   the DMV, you have to disclose if you
 5   were ever convicted of a felony,
 6   correct?
 7        A.   There is a box.
 8        Q.   It would be against the law to
 9   submit false information on a DMV
10   application, correct?
11             MR. BENJAMIN:  Objection.
12             You can answer, if you can.
13        A.   I don't know the law on that.
14        Q.   You would never have submitted a
15   false -- withdrawn.
16             You would never have submitted
17   false information on a DMV application,
18   correct?
19        A.   No.
20        Q.   You know that that would be a
21   crime, correct?
22             MR. BENJAMIN:  Objection.
23        A.   It's the same answer as before.
24   I don't know the law.
25        Q.   Did you ever submit false
```

```
 1         UNOFFICIAL ROUGH DRAFT TRANSCRIPT    71
 2    information on a DMV application?
 3         A.   To my understanding, no.
 4         Q.   Okay.  If I recall your
 5    testimony correctly, you said -- what
 6    is your understanding?
 7              MR. BENJAMIN:  Objection.
 8         Of what?
 9         A.   What are you asking?
10              MR. KATAEV:  Can we read
11         back the last question and
12         answer.
13                    - - -
14              (Whereupon, the referred-to
15         question and answer were read
16         back by the stenographer.)
17                    - - -
18         Q.   To my understanding, what?  Yes
19    or no?
20         A.   To my understanding, I didn't
21    submit false information.
22         Q.   Okay.  Now, you testified
23    earlier today that you don't remember
24    what you were charged with and what you
25    pled guilty to in the criminal case we
```

```
 1          UNOFFICIAL ROUGH DRAFT TRANSCRIPT    72
 2    previously discussed, right?
 3         A.   If that's what I said.
 4              MR. KATAEV:  I'm placing up
 5         on the screen what will be marked
 6         as Deo 2.
 7                    - - -
 8              (Whereupon, Plaintiffs'
 9         Exhibit Deo 2, a five-page
10         exhibit, was marked for
11         identification.)
12                    - - -
13         Q.   Do you recognize this document?
14         A.   I don't.  Oh, there's
15    Colleluori's name.  Oh, sorry.  There's
16    Colleluori's name.
17         Q.   My question is:  Do you
18    recognize this document?
19         A.   I don't recognize it.
20         Q.   I'll represent to you that this
21    is a judgment in a criminal case filed
22    against you by the United States of
23    America.  Do you see that?
24         A.   Okay.
25         Q.   Do you see it?
```

```
 1            UNOFFICIAL ROUGH DRAFT TRANSCRIPT   73
 2       A.   Judgment in a criminal case --
 3   okay.
 4       Q.   Do you see it?
 5       A.   Yes, I see.
 6       Q.   And --
 7            MR. RUDERMAN:  Wire fraud.
 8       Q.   In the middle of the page, it
 9   references one count of conspiracy to
10   commit wire fraud, and a second count
11   of wire fraud.  Do you see that?
12       A.   I see that.
13       Q.   And it says that you pled guilty
14   to those counts, correct?
15       A.   Where is that?  Oh, on top.
16   Okay.
17       Q.   Is that right?
18       A.   Yes.
19       Q.   On the second page of this
20   judgment it says that the defendant is
21   hereby sentenced to probation for a
22   term of five years, correct?
23       A.   Yes.
24       Q.   And on the third page, there are
25   additional probation terms, correct?
```

```
 1           UNOFFICIAL ROUGH DRAFT TRANSCRIPT   82
 2       A.   I don't agree that in order to
 3   get a DMV license, you need a line of
 4   credit.
 5       Q.   Did you disclose your felony
 6   conviction to the DMV when you applied
 7   for and were approved to get a license
 8   from the DMV?
 9       A.   My attorney at the time said my
10   case was sealed and I never have to
11   check that box.
12       Q.   Who was that?
13            MR. RUDERMAN:   You're
14       pointing to the screen.
15       A.   Yeah.   That's his name.
16            MR. KATAEV:   Let the record
17       reflect that the witness pointed
18       to the name Anthony Colleluori,
19       C-O-L-L-E-L-U-O-R-I.
20       Q.   You're telling me that this
21   attorney advised you that you don't
22   have to disclose your conviction --
23            MR. BENJAMIN:   Objection.
24       Q.   -- on any application, correct?
25            MR. BENJAMIN:   That's a
```

```
 1         UNOFFICIAL ROUGH DRAFT TRANSCRIPT    83
 2      privileged question.
 3             MR. RUDERMAN:  He answered
 4      the question.
 5             MR. BENJAMIN:  We waive --
 6      he's not waiving any further
 7      answers in -- in a question that
 8      is clearly attorney-client
 9      privilege.  There's no waiver.
10             MR. RUDERMAN:  The question
11      was not what did your attorney
12      tell you.  The question was who
13      told you.  He answered the
14      question voluntarily that his
15      attorney told him to.  And then
16      the next question was as to
17      advice from his counsel.  Well,
18      once he says that it's his
19      attorney, you cant' give a half
20      an answer.  Once you open the
21      door, "it's my attorney's
22      advice," you can't just say, "but
23      I won't tell you about that
24      communication."
25             So I would recommend if
```

```
 1       UNOFFICIAL ROUGH DRAFT TRANSCRIPT    84
 2          you're going to tell him not to
 3          answer further questions, we ask
 4          the judge whether or not he now
 5          opened the door to any questions
 6          that he now has with his
 7          attorney, his criminal attorney.
 8              MR. BENJAMIN:  Yeah.  Yeah,
 9          before a court order, I'm not
10          going to allow him to answer that
11          question.
12              MR. KATAEV:  You're
13          instructing him not to answer?
14              MR. BENJAMIN:  I'm
15          instructing him not to answer.
16              MR. KATAEV:  Okay.  Let's go
17          off the record to meet and
18          confer.
19              THE VIDEOGRAPHER:  We're
20          going off the record.  The time
21          is 11:21 a.m.  This is the end of
22          Media No. 2.
23              MR. KATAEV:  Counsel, I
24          believe the rule is that when
25          attorney-client privilege
```

```
 1        UNOFFICIAL ROUGH DRAFT TRANSCRIPT   85
 2           applies, it's a fragile
 3           privilege, such that if the party
 4           violates the privilege by
 5           disclosing an attorney-client
 6           communication, which happened
 7           here, privilege is waived.
 8                So we're taking the position
 9           that by him disclosing that
10           statement by his attorney, the
11           privilege has been waived.  What
12           is your basis for instructing him
13           not to answer in light of the
14           fact that privilege has now been
15           waived by your --
16                MR. BENJAMIN:  That it
17           hasn't been waived.
18                MR. KATAEV:  I can't
19           convince you to allow the witness
20           to answer the question since
21           privilege has been waived?
22                MR. BENJAMIN:  No.  And I
23           suggest we read the question to
24           the judge when you get him on the
25           phone.
```