Case 2:23-cv-06188-JMW    Document 392-1    Filed 01/28/26    Page 1 of 19 PageID #: 8100

EXHIBIT "A"

```
                                                                1

   1                ***UNCERTIFIED ROUGH DRAFT***

   2     This unedited rough transcript draft is uncertified

   3     and may contain incorrect punctuation, misspelled

   4     proper names and/or terminology, an occasional

   5     reporter's note, and/or inaccurate/nonsensical word

   6     combinations.  There WILL BE discrepancies between

   7     this form and the final form.

   8

   9     Please keep in mind that the final certified

  10     transcript's page and line numbers WILL NOT match

  11     the rough draft due to the addition and/or editing

  12     of title pages, indices, appearances of counsel,

  13     paragraphing, formatting, and other changes.

  14

  15     Due to the need to correct entries prior to

  16     certification, parties agree to use this transcript

  17     draft only for the purpose of augmenting counsels'

  18     notes and may not be cited or used in any way or at

  19     any time to rebut or contradict the certified

  20     transcription of the proceedings, and should not be

  21     distributed in any form to anyone who has no
```

22  connection to this case.

23

24

25                          ↑

 1              UNITED STATES DISTRICT COURT

 2              EASTERN DISTRICT OF NEW YORK

 3  _____

 4  SUPERB MOTORS INC.; TEAM AUTO

 5  SALES LLC; ROBERT ANTHONY

 6  URRUTIA; 189 SUNRISE HWY AUTO

 7  LLC; NORTHSHORE MOTOR LEASING,

 8  LLC; BRIAN CHABRIER,

 9  individually and derivatively as

10  a member of NORTHSHORE MOTOR

11  LEASING, LLC; JOSHUA AARONSON,

12  individually and derivatively as

13  a member of 189 SUNRISE HWY

14  AUTO, LLC; JORY BARON; 1581

15  HYLAN BLVD AUTO LLC; 1580 HYLAN

16  BLVD AUTO LLC; 1591 HYLAN BLVD

17  AUTO LLC; 1632 HYLAN BLVD AUTO

18  LLC; 1239 HYLAN BLVD AUTO LLC;

```
19   2519 HYLAN BLVD AUTO LLC; 76

20   FISK STREET REALTY LLC; 446

21   ROUTE 23 AUTO LLC; and ISLAND

22   AUTO MANAGEMENT, LLC,

23           Plaintiffs,

24      v.                              Case No.

25   ANTHONY DEO; SARAH DEO; HARRY      2:23-cv-6188 (JMW)
```

                                                                          3

```
 1   _____

 2   THOMASSON; DWIGHT BLANKENSHIP;

 3   MARC MERCKLING; MICHAEL LAURIE;

 4   THOMAS JONES, CPA; CAR BUYERS

 5   NYC INC.; GOLD COAST CARS OF

 6   SYOSSET LLC; GOLD COAST CARS OF

 7   SUNRISE LLC; GOLD COAST MOTORS

 8   AUTOMOTIVE GROUP LLC; GOLD COAST

 9   MOTORS OF LIC LLC; GOLD COAST

10   MOTORS OF ROSLYN LLC; GOLD COAST

11   MOTORS OF SMITHTOWN LLC; UEA

12   PREMIER MOTORS CORP.; DLA

13   CAPITAL PARTNERS INC.; JONES,

14   LITTLE & CO., CPA'S LLP;

15   FLUSHING BANK; LIBERTAS FUNDING
```

16    LLC; and J.P. MORGAN CHASE BANK,

17    N.A.,

18              Defendants.

19    _____

20         DEPOSITION OF MARC MERCKLING - EXCERPTS

21    DATE:           Monday, January 26, 2026

22    LOCATION:       Remote Proceeding

23                    Deer Park, NY 11729

24    REPORTED BY:    Carol Christman

25    JOB NO.:        7813025

4

 2    EXCERPTS 10:40 a.m. to 10:41 a.m., 3:01 p.m. to 3:03

 3    p.m., and 3:42 p.m. to 3:45 p.m.

13

14

15

16

17

18

19

20

21

22

23

24

25   ⬆

5

1                A P P E A R A N C E S

2   ON BEHALF OF PLAINTIFFS 189 SUNRISE HWY AUTO LLC,

3   NORTHSHORE MOTOR LEASING, LLC, 1581 HYLAN BLVD AUTO

4   LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO

5   LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO

6   LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY

7   LLC, 446 ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT,

8   LLC, BRIAN CHABRIER, JOSHUA AARONSON, AND JORY

9   BARON:

```
10        JEFFREY RUDERMAN, ESQUIRE (by videoconference)

11        Cyruli Shanks & Zizmor LLP

12        420 Lexington Avenue, Suite 2320

13        New York, NY 10170

14        jruderman@cszlaw.com

15        (212) 661-6800

16

17   ON BEHALF OF PLAINTIFFS SUPERB MOTORS INC., TEAM

18   AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA:

19        EMANUEL KATAEV, ESQUIRE (by videoconference)

20        Sage Legal LLC

21        18211 Jamaica Avenue

22        Jamaica, NY 11423

23        emanuel@sagelegal.nyc

24        (718) 412-2421

25   ⬆
```

                                                                6

```
 1             A P P E A R A N C E S (Cont'd)

 2   ON BEHALF OF DEFENDANT FLUSHING BANK:

 3        ARIEL E. RONNEBURGER, ESQUIRE (by

 4        videoconference)

 5        Cullen and Dykman, LLP

 6        333 Earle Ovington Boulevard, 2nd Floor
```

```
 7        Uniondale, NY 11553

 8        aronneburger@cullenanddykman.com

 9        (516) 357-3748

10

11   ON BEHALF OF DEFENDANT LIBERTAS FUNDING LLC:

12        JEFFREY S. CIANCIULLI, ESQUIRE (by

13        videoconference)

14        Weir LLP

15        1330 Avenue of the Americas, 23rd Floor

16        New York, NY 10019

17        jcianciulli@weirlawllp.com

18        (917) 475-8885

19

20   ON BEHALF OF DEFENDANT HARRY THOMASSON:

21        HARRY THOMASSON, ESQUIRE, PRO SE(by

22        videoconference)

23

24

25    ⬆
```

                                                                 7

```
 1             A P P E A R A N C E S (Cont'd)

 2   ALSO PRESENT:

 3        Anthony Deo, Defendant (by videoconference)
```

```
 4      Robert Anthony Urrutia, Plaintiff (by

 5      videoconference)

 6      Alivia Cooney, Paralegal, Sage Legal  (by

 7      videoconference)

 8      Jacqueline Fink, Esq., United States District

 9      Court Eastern District of New York (by

10      videoconference)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      ↑
```

8

```
 1                    M. MERCKLING
 2          (Excerpt begins - 10:40 a.m.)
 3          MR. KATAEV:  What did you speak about
 4     with Mr. Thomasson on August 3, 2023?
 5          MR. MERCKLING:  About being locked
 6     out of the business.
 7          MR. THOMASSON:  Objection.  That is
 8     absolutely privileged, Mr. Kataev.
 9          MR. KATAEV:  Are you instructing him
10     not to answer the question?
11          MR. THOMASSON:  I am instructing him
12     not to answer any questions that involve
13     our conversations on and after August 3,
14     2023.
15          MR. KATAEV:  And you're instructing
16     him not to answer to preserve his
17     privilege?
18          MR. THOMASSON:  It -- those
19     conversations were absolutely
20     attorney-client privileged conversations
21     between me and Marc Merckling.  That would
22     be every conversation we ever had after
23     the night of the lockout at Superb,
24     including the night of that lockout.  That
25     was the first conversation I ever had with
```

9

```
 1                    M. MERCKLING
 2     him, and it was strictly business.  There
 3     was nothing else I ever discussed with
 4     him.
 5           MR. KATAEV:  I understood that.  But
 6     my question is, are you instructing him
 7     not to answer in order to preserve his
 8     privilege?
 9           MR. THOMASSON:  Yes.
10           MR. KATAEV:  We'll mark this for a
11     ruling and we'll deal with it after the
12     deposition.
13           (Excerpt ends - 10:41 a.m.)
14  //
15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
```

23  //

24  //

25  // ⬆

                                                                    10

1               M. MERCKLING

2          (Excerpt begins - 3:01 p.m.)

3          MR. KATAEV:  Do you have any

4     knowledge about where Mr. Urrutia lives?

5          MR. MERCKLING:  Do I have any

6     knowledge?

7          MR. KATAEV:  Yeah.

8          MR. MERCKLING:  I believe Costa Rica,

9     or something like that I was told.  I

10    don't know.

11         MR. KATAEV:  Who told you that?

12         MR. THOMASSON:  Objection.  If that

13    was something you got from any lawyer, do

14    not disclose conversations with lawyers.

15         MR. MERCKLING:  I heard it someplace.

16    I don't know from where.

17         MR. RUDERMAN:  That is not -- would

18    not be considered a privileged

19    communication.  I would object to any

```
20        direction not to answer that question.
21        If --
22             MR. KATAEV:  Yeah, we note our
23        objection.
24             MR. THOMASSON:  Objection.  My
25        objection stands, and there's not enough
```

11

```
 1                  M. MERCKLING
 2        basis to prove that it isn't a privileged
 3        conversation either.  But for right now,
 4        until and unless something else occurs,
 5        I'm directing him not to discuss
 6        conversations he's had with any attorney.
 7             MR. KATAEV:  Yeah.  We're just going
 8        to forewarn you, Mr. Thomasson, that
 9        you're putting yourself front and center
10        of a sanctions motion.  You were recently
11        warned by Judge Wicks that you're not
12        authorized to represent or make arguments
13        on behalf of these individuals.  You can't
14        instruct them not to answer.  That's our
15        position, and that's what we're going to
16        be discussing with the judge later.  So I
```

```
17      implore you --
18           MR. THOMASSON:  We can do that
19      whenever you want, Mr. Kataev.  I'm
20      imploring you not to ask him questions
21      with regard to conversations with lawyers.
22      I don't think it's proper.
23           MR. KATAEV:  Okay.  We're marking it
24      for a ruling, and this will be part of the
25      testimony that will be read back when we
```

                                                                    12

```
 1                    M. MERCKLING
 2      call Judge Wicks.
 3           (Excerpt ends - 3:03 p.m.)
 4  //
 5  //
 6  //
 7  //
 8  //
 9  //
10  //
11  //
12  //
13  //
```

```
14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  // ⬆
```

13

```
 1                  M. MERCKLING

 2          (Excerpt begins - 3:42 p.m.)

 3          MR. RUDERMAN:  Now, you say you never

 4     worked -- you were never employed or

 5     worked for Superb; correct?

 6          MR. MERCKLING:  I was never -- I was

 7     never employed by Superb.

 8          MR. RUDERMAN:  Okay.  Well did you

 9     work for superb?

10          MR. MERCKLING:  I was in the
```

11   dealership, but I didn't work for Superb.

12   MR. RUDERMAN: Okay. Did you ever

13   work for Car Buyers?

14   MR. MERCKLING: I -- again, I don't

15   even know what Car Buyers is.

16   MR. RUDERMAN: Okay. Did you ever

17   work for -- were you an employee or did

18   you work for North Shore when it was

19   operating?

20   MR. MERCKLING: Yes.

21   MR. RUDERMAN: Okay. What about

22   Sunrise?

23   MR. MERCKLING: Yes.

24   MR. RUDERMAN: Okay. So now,

25   Mr. Thomasson at some point was your

14

1                    M. MERCKLING

2   attorney; correct?

3   MR. MERCKLING: Correct.

4   MR. RUDERMAN: All right. And did

5   you ever have conversations with

6   Mr. Thomasson as an attorney outside of

7   the earshot of Mr. Deo?

```
 8          MR. MERCKLING:  I -- I may have.  I
 9    don't -- I don't know.  I have talked to
10    Harry before.
11          MR. RUDERMAN:  Oh, you spoke -- but
12    you spoke to him individually without
13    other people?
14          MR. MERCKLING:  Yes.
15          MR. RUDERMAN:  Okay.  And during any
16    of those conversations, did you ever
17    discuss Superb or Car Buyers with
18    Mr. Thomasson?
19          MR. MERCKLING:  I don't recall.
20    Again, Car Buyers, I don't know what that
21    is, so I know that wasn't an issue.  And
22    I'm -- I may have spoken to him about
23    superb.
24          MR. RUDERMAN:  Okay.  So what did you
25    discuss with Mr. Thomasson about Superb
```

                                                              15

```
 1                M. MERCKLING
 2    when Mr. Deo was not there?
 3          MR. THOMASSON:  Objection.  That's
 4    absolutely privileged.
```

```
 5            MR. RUDERMAN:  Why is it privileged,
 6     Harry?
 7            MR. THOMASSON:  I'm not being deposed
 8     here, Mr. Ruderman.
 9            MR. RUDERMAN:  Well, then you're --
10            MR. THOMASSON:  My private -- let me
11     finish my statement.
12            MR. RUDERMAN:  Go ahead.
13            MR. THOMASSON:  My private
14     conversations with Marc Merckling are
15     privileged.
16            MR. RUDERMAN:  He just testified that
17     he did not work for Superb.  He did not
18     work for Car Buyers.  And Mr. Deo was not
19     part of the conversation.  So you cannot
20     protect Superb's protection right now
21     because he was not an employee of Superb.
22     So who's protection are you asking about?
23            MR. THOMASSON:  Again, my
24     conversations with Marc Merckling about
25     the facts of these cases are privileged, ⇑
```

```
                                              16
 1                      M. MERCKLING
```

```
 2      and I am instructing the client not to
 3      answer questions about private
 4      conversations between me and Marc
 5      Merckling.
 6            MR. RUDERMAN:  Okay.  So Emmanuel,
 7      this will be another issue we bring up
 8      before Judge Wicks.
 9            MR. KATAEV:  Can we have the court
10      reporter mark it please before we
11      continue?
12            THE REPORTER:  Just a moment.
13            (Excerpt ends - 3:45 p.m.)
14  //
15  //
16  //
17  //
18  //
19  //
20  //
21  //
22  //
23  //
24  //
25  //  ⬆
```