# Harry R. Thomasson, Esq.

3280 Sunrise Highway, Box 112  
Wantagh, New York  11793  
Tel. 516-557-5459  
hrtatty@verizon.net

Admitted:  
Massachusetts  
New York

January 28, 2026

VIA ECF ONLY

Honorable James M. Wicks  
U.S. Federal District Court  
Eastern District of New York  
100 Federal Plaza  
Central Islip, NY  11722

      Re:   *Superb Motors, Inc., et al. v. Anthony Deo, et al.*  
             Case No. 2:23-cv-6188 (JW)

Your Honor:

     Please be reminded that I am a *pro-se* Defendant in the above-referenced matter.  I am writing pursuant to this Court's Order dated and filed on January 26, 2026, to Oppose the Plaintiffs' Motion to Compel testimony over the assertion of privilege(s), as follows:

1. Emails regarding the assertion of privilege were exchanged with the Court on January 26, 2026, in part, as follows:  (Note:  What is written in black came from the Court/Ms. Fink; what is in red is the response that came from Mr. Kataev in consultation with Mr. Ruderman) 1.  What did Mr. Merckling speak about with Mr. Thomasson on 8/3/2023 (in relation to the police being present on that day as a result of Urrutia's criminal complaint against Deo related to missing vehicles and funds); 2.  Do you have knowledge of where Mr. Urrutia lives and who told him of that information? (If an attorney told him, Mr. Thomasson instructed Mr. Merckling not to respond); and 3. After confirming Mr. Merckling was never employed by Superb (but worked in the Superb dealership), and was never employed by Car Buyers NYC Inc, but that he *was* employed by Northshore and Sunrise, and that Mr. Thomasson was his attorney, Mr. Merckling was asked whether he had any conversations with Thomasson about Superb outside of Mr. Deo's presence.  Mr. Thomasson objected and instructed Mr. Merckling not to answer.

2. As to the evening of August 3, 2023 (the night of the so-called "Lock Out" as referenced throughout these parties' various litigation/actions), I arrived and was confronted by the Nassau County Police Department with accusations that Anthony Deo, Marc Merckling, and Dwight Blankenship were being accused by Bruce Novicky on behalf of Mr. Urrutia of the criminal theft of 102 or more automobiles from Superb Motors, Inc.  I verbally confirmed with all three men that I would represent

1

them in regards to these criminal allegations, and presumed also that civil litigation would ensue.[1] When I spoke to these three men, we were alone, without anyone else present, and at various times we spoke together and separately since they certainly had that night and maintain to this day a common interest in the (false) accusations they face at issue here. There were no personal discussions, it was strictly business, and constituted attorney/client privileged discussions for criminal purposes, attorney/client privileged discussions for the purposes of expected/imminent civil litigation, and any notes stemming from this and any other meeting with the Deo co-Defendants constitutes privileged work product in that I was gathering information in anticipation of both criminal and civil actions which I (correctly) anticipated was imminent. As it turns out, in the depositions of both Plaintiff Urrutia and the Aaronson parties this month, the Plaintiffs confirmed that both criminal and civil actions *were* imminent. As this Court knows, this Federal action was brought after the Aaronson parties discontinued their then active state case and brought this action within a month of the Lock Out, and the Plaintiffs this month confirmed that they went to the FBI in 2023 to commence criminal proceedings against the Deo Defendants, so my concerns about privilege that commenced on the night of the Lock Out were correct in multiple ways. Attached hereto as Exhibit A is a true and accurate copy of a Federal Grand Jury subpoena/appearance for Marc Merckling stemming from the Plaintiffs' (false) accusations in 2023; that subpoena was withdrawn and I have never hear another word since the withdrawal after I asked the FBI and the Department of Justice to read my Complaint in the case just remanded by this Court back to Nassau (NY) Supreme (after the FBI and DOJ confirmed that they were never told by the Superb/Aaronson parties about that Complaint and had never seen it). Nonetheless, I have no confirmation that the criminal case(s) are concluded, either. To be clear: My conversations with the Deo co-Defendants in this case have been and remain confidential, have sometimes taken place personally without anyone else present, but have on occasion taken place with 1 or more co-Deo Defendants meeting and speaking with me alone, at the same time. I have not disclosed these conversations with anyone else, all of my communications

---

[1] I ask the Court to note that Mr. Kataev's and Mr. Ruderman's position in sentence #1 in paragraph #1, *supra*, seems to be an admission that the allegations of car theft on the night of the Lock Out at Superb are now just against Anthony Deo, and not Mr. Merckling or Mr. Blankenship, as the Superb attorneys now claim that the "police being present on that day as a result of Urrutia's criminal complaint against [just] Deo…," although it was not apparent to me that night when I was called to speak to Deo, Merckling, and Blankenship, as the police asked questions that night about all three men being involved in the theft of 102 or more vehicles; in Mr. Urrutia's deposition recently, he admitted that the actual number of vehicles he now claims were stolen is 43, which presumably includes injuncted vehicles. Also, please note that my conversations with Mr. Merckling and Mr. Blankenship on the night of the Lock Out were the first conversations I ever had in my life with either man.

with the co-Deo Defendants have been attorney/client privileged and/or work product privileged, only, and I have never socialized with any of the Deo Defendants, ever. Our communications are private and strictly professional, only. At no time did any of the Deo co-Defendants speak with me about furthering any criminal activity that they may have been involved in, and I am unaware as of this date of any crimes committed by any Deo co-Defendant during the time I have represented them; i.e., there is no crime-fraud exception and no evidence exists in this case to date that the crime-fraud exception applies here. No third parties have ever been present for any of my communications with the Deo co-Defendants, and I have never disclosed my communications with any of the Deo co-Defendants to any third party, ever.

3. In the Second Circuit, "the attorney-client privilege protects communications: 1) between a client and his or her attorney; 2) that are intended to be, and in fact were, kept confidential; 3) for the purpose of obtaining or providing legal assistance. *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012). Piercing the veil of attorney-client privilege only occurs in the EDNY when one of several factors exist: 1) crime-fraud exception; 2) client waives the privilege; 3) the communication was not for legal advice; 4) the privilege is broken accidentally; or 5) the privilege needs to be broken for a court order or to prevent harm. None of these factors exist here.

4. The work product doctrine protects documents and tangible things prepared by a party or their attorney in anticipation of litigation. *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 324 (S.D.N.Y. 2020) Such materials will be protected, depending on "whether [they] were prepared 'with an eye toward' or 'in anticipation of' or 'because of the prospect of litigation.' *Id.* (quoting *Pearlstein v. Blackberry Ltd.*, No. 13-CV-7060, 2019 WL 1259382, at *5 (S.D.N.Y. Mar. 19, 2019)) A claim of work-product has three elements: [t]he material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative. *BNP Paribas v. Bank of N.Y. Trust Co., N.A.*, No. 11-CV-00350 (PGG) (HBP), 2013 WL 2434686, at *3 (S.D.N.Y. June 5, 2013) (quotation marks and citations omitted); *see also Bennett v. Cuomo*, No. 22CIV7846VSBSLC, 2024 WL 80271, at *5 (S.D.N.Y. Jan. 8, 2024). The burden of establishing work product protection lies with the party claiming it applies. *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 13 (S.D.N.Y. 2022). When it does exist, work product is generally more protected than attorney client privileged material, and is only disclosed "in rare and extraordinary circumstances." John F. Wagner, Jr., *Protection from discovery of attorney's opinion work product under Rule 26(b)(3), Federal Rules of Civil Procedure*, 84 A.L.R. Fed. 779 (originally published in 1987). Here, I have notes from various meetings with the Deo co-Defendants and have exchanged many documents with the clients since November, 2022 (with the Deos, only) and since August 3, 2023 (with all of the Deo co-Defendants) regarding this and related criminal and civil cases, all of which constitutes my work product and is thus protected from the Plaintiffs' (over) reach.

5.  In *In Re: Grand Jury Subpoenas Dated September 13, 2023*, a Second Circuit panel (Lynch, Robinson, Merriam) laid out the standard for applying the crime-fraud exception: a party seeking to invoke the exception must demonstrate that there is probable cause (1) that the client communication or attorney work product in question was itself in furtherance of the crime or fraud and (2) to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the on-going criminal activity. Notably, there is not and cannot be the crime-fraud exception utilized to pierce the asserted privilege veil in this instance: I have never discussed any actual crime with any of the Deo co-Defendants other than the (empty) accusations wrongfully made against all of us, and on the night of the Lock Out, *all of the (falsely) alleged crimes committed by the Deo co- Defendants had already occurred according to the various Plaintiffs' Complaints in this action.* The crime fraud exception utilized to pierce the veil of attorney-client privilege cannot be utilized to pierce the veil of past crimes, only current on-going or future wrongdoing, which does not exist and is not even alleged in this case from and after August 3, 2023, which is the date of commencement for the communications between Merckling and me. Additionally, none of the Deo Defendants have waived the attorney client privilege with any of their attorneys to date (myself, Brian Levine, and Jeff Benjamin), our communications remain only for legal advice (attorney-client privileged) and information gathering/document creation for imminent civil and criminal actions (attorney work product privilege). None of the privileges sought to be pierced by the Plaintiffs herein have been accidentally disclosed to anyone, and there is no current order or harm necessitating the revelation of communications by the Deo co-Defendants that are otherwise privileged.

6.  It is also important that even when communications between me and more than one Deo co-Defendant at the same time occurred (such as on the night of the Lock Out for at least some of the communications that night), the Deo co-Defendants that night (Merckling, Blankenship, and Anthony Deo) certainly held common interest privilege in the communications with me. My discussions with these Deo co- Defendants have always been limited to the civil and criminal cases at issue as alleged by these Plaintiffs, and the Deo c-Defendants hold common interests in the communications and advice given in relation to these cases by me. *See, e.g., In re Bank of New York Mellon Corp. Forex Transactions Litig.*, Case No. 11- CV-6969, 2014 WL 5810612 (S.D.N.Y. 2014), where Judge Kaplan denied a motion to compel production of a memorandum prepared and "forwarded to some third-party investment managers . . . "that were associated with [bank's] pension plan" on the ground and holds it is protected by the common interest privilege.

7.  I ask this Court to see the current attempt to broadly pierce the attorney-client privileges and work product privileges for exactly what it is: A fishing expedition wherein these Plaintiffs "take a shot" with nothing in their minds to lose for trying. There is no evidence ever presented in this case that I participated in criminal schemes by the Deo co-Defendants, there is no evidence that I participated in on-going or future criminal schemes by the Deo co-Defendants, and my conversations

with the Deo co-Defendants are, have been, and remain entirely for legal advice and information gathering in anticipation of civil and criminal actions. Please consider that mere allegations of a crime-fraud exception to pierce the veil of privilege is and should be insufficient to pierce the veil; if mere unsupported allegations were ever sufficient, then there would be no privilege. Given the absence of *any* evidence of the crime fraud exception, no veil should be pierced here, your Honor. If this Court has any intention of allowing what I assert is merely a fishing expedition, then the Plaintiffs should pay for an *in camera* review of same, since only I know (and I do) that nothing untoward ever took place between me and the Deo co-Defendants, which I would be delighted to tell the Court all about *in camera*. Please note that after the depositions of the Plaintiffs this month, no deposition testimony alleging my wrongdoing will be submitted in the Plaintiffs letter brief; their allegations are vapid and mere speculation, as each Plaintiff confirmed in their depositions.

Awaiting the Court's decision, I remain,

Very truly yours,

*Harry R. Thomasson*

Harry R. Thomasson, Esq.