# Harry R. Thomasson, Esq.

| 3280 Sunrise Highway, Box 112 | Admitted: |
| Wantagh, New York  11793 | Massachusetts |
| Tel. 516-557-5459 | New York |
| hrtatty@verizon.net | |

February 4, 2026

VIA ECF ONLY

Honorable James M. Wicks
U.S. Federal District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY  11722

      Re:   *Superb Motors, Inc., et al. v. Anthony Deo, et al.*
                Case No. 2:23-cv-6188 (JW)

Your Honor:

      Please be reminded that I am a *pro-se* Defendant in the above-referenced matter.  I am writing in opposition to Plaintiffs' pending Motion *at* ECF docket #397 to pierce the attorney-client privilege broadly between me and my former clients in this case.  Please be advised, as follows:

1. While the Plaintiffs state the elements of the crime/fraud exception on point, there is no relationship between those elements and the facts of this case.  First, on any of the Plaintiffs' allegations against the Deo Defendants purportedly committing crimes against the Plaintiffs, discussions between me and the Deo Defendants regarding those allegations only occurred *after* the time of the alleged crimes, not before, and only *after* I typically learned of the allegations from the Plaintiffs themselves. E.g., I never knew of the Libertas loan before Deo obtained same; I never knew Deo spent money from the loan on the Superb purchase until after Deo completed that transaction; I never spoke to Marc Merckling, Dwight Blankenship or Michael Laurie until the night of August 3, 2023 (the Superb LockOut, and I only spoke to Marc Merckling and Dwight Blankenship that night) and later in August 2023 (Michael Laurie for the first time), meaning that all allegations of wrongdoing against the Deo parties from all of the Plaintiffs already occurred before I spoke to three of the other five Deo Defendants.

   This Court follows the crime-fraud standards set forth in *United States of America v. Jacobs,* 117 F.3d 82 (2d Cir. 1997).  The Court set forth that the crime-fraud exception removes the privilege from those attorney-client communications that are "relate[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct." *In re John Doe, Inc*., 13 F.3d 633, 636 (2d Cir. 1994) (quoting *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731

1

F.2d 1032, 1038 (2d Cir. 1984)). "It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563, 109 S. Ct. 2619, 2626, 105 L. Ed. 2d 469 (1989) (citations omitted). A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed factual basis must strike "a prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." *In re John Doe*, 13 F.3d at 637 (quoting *In re Grand Jury*, 731 F.2d at 1039). Once there is a showing of a factual basis, the decision whether to engage in an in camera review of the evidence lies in the discretion of the district court. *Zolin*, 491 U.S. at 572, 109 S. Ct. at 2630-31. Second, if and when there has been an in camera review, the district court exercises its discretion again to determine whether the facts are such that the exception applies. These factual determinations are governed by the clearly erroneous standard.

In this instance, Plaintiffs fail to specify *anything* that suggests I had knowledge of any on-going or future crime in any of my communications with the Deo co-Defendants. And importantly, I did not and still do not have knowledge of criminal wrongdoing by any of the Deo co-Defendants, and certainly never spoke with any of them about crimes they allegedly (from the Plaintiffs) committed. To the contrary, I have no evidence to date that crimes were committed by the Deo Defendants, and they all deny having committed crimes against the Plaintiffs.

2. It is also important that this Court be informed of the allegations made against me by the individual Plaintiffs in depositions over the last month+. Plaintiff Urrutia alleged that I "played your [my] part" in the "gang" and shouldn't have given the $735,000.00 back to Anthony Deo. Joshua Aaronson said I wrongfully "helped Anthony Deo." The remaining Aaronson Plaintiffs didn't know who I am and don't know with specificity about the wrongdoing alleged at 189 Sunrise, NorthShore, and Superb, only what they "heard" usually from Joshua Aaronson. I've told this Court since 2023 that I didn't do anything wrong, and I believe that the Plaintiffs confirmed it in their depositions last month. I am attaching the deposition transcripts to this opposition so the Court can see throughout the Plaintiffs' depositions that they just don't have *any* specific allegations against *any* of the Deo Defendants.

3. Likewise, the basis for the Plaintiffs' Federal case, alleged RICO violations, seems to go up in smoke from the transcripts attached hereto. Fed.R.Civ.P. 9(b) requires "the circumstances constituting fraud" to be pleaded with particularity. Rule 9(b) applies to RICO cases where the predicate acts are based on fraud. *Bonanno Organized Crime Family*, 683 F. Supp. *at* 1427. *See also Connors v. Lexington Ins. Co*., 666 F. Supp. 434, 450 (E.D.N.Y.1987). The minimum requirements of Rule 9(b) are that "the time, place, and content of the alleged misrepresentations, as well as the speaker,

2

must be identified." Id. Not only is there a startling lack of specificity of factual allegations of wrongdoing from the Plaintiffs, they also face the problem in anticipated upcoming Motion practice that Joshua Aaronson *was* authorized by his business partners (co-Plaintiffs Asad Khan, Brian Chabrier, Jory Baron, and Iris Baron for her husband David's Estate) to represent his co-Plaintiff partners in their dealings/operations of NorthShore and 189 Sunrise, and Aaronson did, in fact, approve the Aaronson/Baron accountants' (Citrin Cooperman) tax returns listing Anthony Deo (99%) and Sara Deo (1% for accounting purposes) as the owners of NorthShore and 189 Sunrise (since February 2021). Simply put, the tax returns submitted throughout various actions and to this Court as Exhibits G (Josh Aaronson email approvals) and H (the tax returns themselves along with K-1s indicating the Deos as 100% combined owners of the two companies) prove beyond a reasonable doubt (and the standard is only a preponderance of the evidence) that the Deos were the owners of these two companies, removing any wrongdoing by the Deo Defendants alleged by these Plaintiffs regarding their allegations involving NorthShore and 189 Sunrise, even if the Plaintiffs had presented any actual, specified proof of wrongdoing, which they haven't.

4. As I told this Court regarding the piercing of attorney-client privilege between me and Marc Merckling: I have never discussed any actual crime with any of the Deo co-Defendants other than the (empty) accusations wrongfully made against all of us, and on the night of the Lock Out, *all of the (falsely) alleged crimes committed by the Deo co- Defendants had already occurred according to the various Plaintiffs' Complaints in this action.* The crime fraud exception utilized to pierce the veil of attorney-client privilege cannot be utilized to pierce the veil of past crimes, only current on-going or future wrongdoing, which does not exist and is not even alleged in this case from and after August 3, 2023, which is the date of commencement for the communications between Merckling and Blankenship with me. Additionally, none of the Deo Defendants have waived the attorney client privilege with any of their attorneys to date (myself, Brian Levine, and Jeff Benjamin), our communications remain only for legal advice (attorney-client privileged) and information gathering/document creation for imminent civil and criminal actions (attorney work product privilege). None of the privileges sought to be pierced by the Plaintiffs herein have been accidentally disclosed to anyone, and there is no current order or harm necessitating the revelation of communications by the Deo co-Defendants that are otherwise privileged.

5. In the Second Circuit, "the attorney-client privilege protects communications: 1) between a client and his or her attorney; 2) that are intended to be, and in fact were, kept confidential; 3) for the purpose of obtaining or providing legal assistance. *Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir. 2012). Piercing the veil of attorney-client privilege only occurs in the EDNY when one of several factors exist: 1) crime-fraud exception; 2) client waives the privilege; 3) the communication was not for legal advice; 4) the privilege is broken accidentally; or 5) the privilege needs to be broken for a court order or to prevent harm. None of these factors exist here.

3

6.  I ask this Court to see the current attempt to broadly pierce the attorney-client privileges and work product privileges for exactly what it is: A fishing expedition wherein these Plaintiffs "take a shot" with nothing in their minds to lose for trying. There is no evidence ever presented in this case that I participated in criminal schemes by the Deo co-Defendants, there is no evidence that I participated in on-going or future criminal schemes by the Deo co-Defendants, and my conversations with the Deo co-Defendants are, have been, and remain entirely for legal advice and information gathering in anticipation of civil and criminal actions. Please consider that mere allegations of a crime-fraud exception to pierce the veil of privilege is and should be insufficient to pierce the veil; if mere unsupported allegations were ever sufficient, then there would be no privilege. Given the absence of *any* evidence of the crime fraud exception, no veil should be pierced here, your Honor. If this Court has any intention of allowing what I assert is merely a fishing expedition, then the Plaintiffs should pay for an *in camera* review of same, since only I know (and I do) that nothing untoward ever took place between me and the Deo co-Defendants, which I would be delighted to tell the Court all about *in camera.* Please note that after the depositions of the Plaintiffs last month, no deposition testimony alleging my wrongdoing will be submitted to this Court by the Plaintiffs, ever. They all made clear that they have no knowledge of my alleged wrongdoing, and if the Plaintiffs don't know of any wrongdoing, it is clear that there is no such evidence still to come. Accordingly, I ask that the Plaintiffs' Motion(s) be denied in all respects.

Awaiting the Court's decision, I remain,

> Very truly yours,
>
> *Harry R. Thomasson*
>
> Harry R. Thomasson, Esq.