UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF EMANUEL KATAEV, ESQ. IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL THE TESTIMONY OF DEFENDANT DWIGHT <u>BLANKENSHIP</u>**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC,

Defendants.

-------------------------------------------------------------------X

Emanuel Kataev, Esq., declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.      I am admitted to practice before this Court and am a member of Sage Legal LLC, attorneys for the Plaintiffs Superb Motors Inc. ("Superb"), Team Auto Sales LLC ("Team"), and Robert Anthony Urrutia ("Urrutia") in this case.

2.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of the file maintained by this office.

3.      Together with Cyruli Shanks & Zizmor LLP, our firms represent the Plaintiffs in this case.

4.      On February 18, 2026, I conducted the virtual deposition of Defendant Dwight Blankenship ("Blankenship").

5.      During the deposition, the following relevant questions, answers, and conversations between counsel and/or this Court were recorded by stenographic means, a rough transcript of which was provided by the court reporter to your undersigned via email.

6.      The first portion of the rough transcript was as follows:

Q   You did the deposits before the break and after the break, correct?

A   You froze.  I probably did.  Can you rephrase because you are breaking up when you were asking question?

Q   Sure.  Sure.  You were doing deposits before the break and after the break, correct?

A   I probably did in total maybe three to five deposits.

Q   Ever?

A   Yes.

Q   Do you remember how many before and how many after?

A   No, sir.

Q   What did Mr. Deo pay you?

A   It was -- I would have to look back to refresh my memory with that.

Q   Was it an hourly rate or a weekly salary?

A    It was a weekly salary.

Q    You don't remember the amount?

A    No, sir.  About a $1,000.  I don't remember the exact amount.

Q    That was regardless of the number of hours you worked?

A    The weekly, yes.

Q    Were there any gaps in your employment with the Nassau County Police
Department?

A    No.

Q    Have you ever worked with an individual named Detective Marx?

A    Who?

Q    Detective Marks, M-A-R-X.

A    M-A-R-X.  Did I work with him, no.

Q    Do you know who he is?

A    I know who he is.

Q    How do you know who he is?

A    He's a detective on my job.

Q    Have you worked with him on other matters at the police department?

A    Not that I can recall, no.

Q    Are you familiar with his relationship to this case if at all?

A    No.

Q    Are you aware of any issue that Mr. Deo had concerning $735,000 that
was taken from a bank account?

A    I'm aware of it.  I wasn't working for him at the time.

Q    How did you become aware of it?

A    I guess somebody said something.

MR. THOMASSON:  Don't guess.

MR. KATAEV:  Excuse me.  You're not allowed to instruct the witness.  You don't represent him.

MR. THOMASSON:  I will instruct the witness as I deem fit and he said he was guessing and I'm reminding him that nobody here wants him guessing.

MR. KATAEV:  Okay.  I'm reaching out to the court.  Go off the record.

 (Whereupon, an off-the-record discussion was held.)

MR. THOMASSON:  No, I don't agree to go off the record.

MR. KATAEV:  Okay, we can remain on.  I have prepared an email to Judge Wicks. I'm getting the Zoom link to include it in case he wishes to join.  Mr. Thommason, you're on that email.  If I don't get an email back in two minutes I'll call the court.  Madame Court Reporter, if you could be kind enough to read back the record if necessary.

MR. KATAEV:

MR. CIANCIULLI:  Any interest in continuing on while we wait?

MR. KATAEV:  No.  I want to get further instructions while we wait. Who was that?

MR. CIANCIULLI:    That was Jeff Cianciulli. I was making a polite suggestion.

MR. KATAEV:  I have no problem.  What was the last question and answer?


(Whereupon, the referred-to question and answer was read back by the reporter.)

THE COURT CLERK:  What is it that, Mr. Kataev, according to you that Mr. Thommason as giving an instruction?  What instruction was he giving to the witness?

MR. KATAEV:  Don't guess.

THE COURT CLERK:  That's it?

MR. KATAEV:  I'm telling him that he's disqualified as counsel and he can't make his instructions.  His attorney, Jeffrey Benjamin, has waived his appearance.  He's chosen to proceed without an attorney.  Mr. Thommason can't step in his place, he's disqualified.

THE COURT CLERK:  Mr. Benjamin is not there and Blankenship is there alone?

MR. KATAEV:  That's correct.

THE COURT CLERK:  Mr. Thommason, what is your position on this?

MR. THOMASSON:  Mr. Blankenship started an answer with I guess and I quickly said don't guess.  That's as much a reaction as any lawyer could ever possibly give and it has been given a dozen or more times in the last six weeks or more, or two months of depositions by various attorneys at various times in all of our depositions.  That's as common and as harmless a matter as can be and this is absolutely a waste of not only our time, but the court's time dealing with this.

MR. KATAEV:  Except the difference is --

THE COURT CLERK:   The other attorneys that have said don't use the language, don't guess or I guess in other depositions, have they done that to their client or to someone like here who does not have counsel?

MR. THOMASSON:  We have had a number of those instructions at various times.  I think all of the lead attorneys in this case have had instructed other parties not their own not to guess.  I know Mr. Ruderman has and I believe Mr. Kataev has in depositions of the Deo defendants and I was just saying the same thing to a witness who started an answer with I guess.  I just said  don't do that, don't guess.

MR. RUDERMAN:  This is Mr. Ruderman.  Since Mr. Thommason brought me into this, I don't know the context of what he's saying I  said don't guess. I may have instructed – I don't know what he's specifically referring to. I can imagine that I may have asked a question to a witness whom may have said I guess and I, as the questioner, have said don't guess. That's my prerogative as the one asking the question to direct the witness what I'm asking for.  I don't recall any situation in which a non-questioning attorney or an attorney not representing the witness has instructed a witness to say don't guess.  That's not their place.  That's our position.  Thank you.

MR. KATAEV:  More importantly, he's been disqualified and he interrupted him mid sentence while he's answering questions which counts as coaching

and I told him to stop and he refused to do so and said I will continue to instruct him. So I would like a ruling from the court that he's not allowed to instruct the witness to do anything. He doesn't represent the witness.

THE COURT CLERK: Is there any party that wants to have their position referring to
Flushing Bank and Libertas?

MR. CIANCIULLI: Nothing to add for Libertas. Thank you.

THE COURT CLERK: Thank you. Let me see if the judge is available.

MR. KATAEV: Thank you.

THE COURT: Who do we have?

MR. KATAEV: We have Emanuel Kataev and Jeffrey Ruderman for the Plaintiffs, the Court Reporter, Ruthayn Shalom, Mr. Thommason for himself, Mr. Cincuelli for Libertas, Mr. Deo, observing, Mr. Urutti observing, Ariel Ronnberger for Flushing and two of my paralegals.

THE COURT: Okay, so what's the issue?

MR. KATAEV: We are on the record. Your honor, I'm questioning the witness. Mr. Benjamin, Mr. Blankenship's attorney has waived his appearance. He's here without his attorney. I asked him a question about how he knows about a conversation. He started his answer with I guess and was immediately interrupted by Mr. Thommason with an instruction not to guess. Mr. Thommason is disqualified from representing this witness.

MR. THOMASSON: Good morning, Your Honor. This is Harry Thommason. Your Honor, first off I don't agree that I interrupted him. I believe I said it after he gave his answer, but in any event we have all done this throughout these depositions over the last two months. This is nothing, this is a kerfuffle to use the Court's term. He started talking and said I guess and I said don't guess.

THE COURT: The only thing you can object to is form. You're not representing anybody, you're representing yourself. Anybody in that deposition can object to the form of the question, that's it. You can't coach a witness and tell them not to guess. That's for the questioner to follow up and determine whether they're guessing, whether there is basis for their response. It's not for any of you lawyers, you or anybody else to tell a witness not to guess. There should be nothing other than form or objection and you're not representing anybody.

6

MR. THOMASSON:  Two things, Your Honor.  Number one, it was reflexive as much as anything, Judge.

THE COURT:  Okay.  I take that as true.

MR. THOMASSON:   And number two, I have only been in a million depositions and I want to say I still reserve the right to object regarding privilege this morning whenever that comes up which undoubtedly will.

THE COURT:  Everybody has that right.  You don't waive that right.  I can give you case citations on it.  There is case after case of don't guess is coaching a witness.

MR. THOMASSON:  Fair enough, Judge.  I never faced the issue.

THE COURT:  Keep your reflexes in check.

MR. RUDERMAN:  Your Honor, this is Jeff Ruderman.  I want to -- because Mr. Thommason wants the right to assert privilege.  I believe that it's an unresolved issue as to whether or not Mr. Thommason can assert the privilege of the witness.  He can as you previously mentioned.  He can assert his privilege, Mr. Thommason's privilege.  If a witness is going to disclose a matter that might divulge the objecting party's privilege.

THE COURT:  The client has that choice, not the lawyer.

MR. RUDERMAN:  That's exactly it. Mr. Thommason, if he's going to say Mr. Blankenship, you can't answer that question because it's going to waive your privilege, he has no right to –

THE COURT:  Agreed.

MR. RUDERMAN:  Thank you, Your Honor.  I wanted to clear that with Mr. Thommason so we don't have to call you back.

MR. THOMASSON: I'll still make the objection and I guess Mr. Blankenship will make the decision whether or not he's going to waive the privilege.

THE COURT:  You can note objection on the record, but you can't direct him not to answer. He's not your client and the privilege lies with him and the fact that he's sitting there at a deposition unrepresented even though he's got a lawyer that has filed an appearance, that's as his risk.

MR. THOMASSON:  I understand, Your Honor, but if there is attorney/client privilege from when I represented Mr. Blankenship, I'm not allowed to assert that?

THE COURT:  Who holds the privilege?

MR. THOMASSON:  I think the attorney/client privilege rests with the client.

THE COURT:  Correct.  So they get to choose whether they waive it, not waive it, talk, not talk.  You can note on the record that it's privileged, but that's about as far as you can go.

MR. THOMASSON:  Fair enough, Judge.

THE COURT:  All right, gentlemen.

7.      The second portion of the rough transcript was as follows:

Q    Who told you that?

A    I don't recall.  Probably Mark.

Q    What, if anything, do you remember being told about what is going on at Superb before you got to Superb?

A    That they removed him from the business and we had to get some of stuff out of the business.

Q    What stuff did you need to get out of the business?

A    I believe at that time it was personal items that we had left there.

Q    Such as what?

A    I had my mug and stuff like that had to come out.  I grabbed it and threw it in my car and left.

Q    Other than your mug anything else?

A    No, just personal items.  No.

Q    Back at Northshore when you worked there since 2021, did you have an office there?

A    We had a computer there that we used.

Q    A station?

A    A station, yes.

Q    It was like a standing station?

A    The one that we had had one desk right in front right there.

Q    Was that in an open area?

A    Yes.  It was in the open area right to the back wall.

Q    That's at Northshore, correct?

A    Yes.

Q    What about at Superb, did you have your own office there?

A    We had on open area with a counter.

Q    A podium?

A    A counter, podium.

Q    It was the center podium?

A    No.  That's where Gene and all of those guys were.

Q    Where was your station in relation to the podium?

A    Right by the back door where we used to bring cars in.

Q     The back door meaning you had to go through the parking lot entrance and make a right?

A    You came in the double doors.  It was to the left side.

Q    That's where you primarily worked?

A    Yes.

Q    When you arrived what did you observe?

A    I believe I met Harry, Mark and Anthony on the sidewalk at that time.

Q    And those were the first individuals that you spoke to?

A    Yes.

Q    What did you all three say to each other?

9

MR. THOMASSON:  Objection.  That was my work product that I was engaged in at that time  as I was trying to figure out what was going on and I don't waive that privilege.

MR. KATAEV:  You may answer the question.

MR. THOMASSON:  I'm instructing the witness not to discuss what it was that he discussed with me, if anything.

MR. RUDERMAN:  Mr. Thommason, that's not your privilege.

MR. THOMASSON:  Work product is my privilege.

MR. RUDERMAN:  You have no privilege as an attorney, it doesn't exist.  If you insist that you have a privilege, we are going to have to go back to the judge.  You have no privilege with the client.  Only the client has the privilege.

MR. THOMASSON:  I said it is my work product that I was doing that night, Mr. Ruderman.  I was trying to find out and figure out what was going on.

MR. RUDERMAN:  You have no privilege in your work product, only the client does.  Then we will go back to the judge.

MR. THOMASSON:  Go back to the judge.  I don't agree to go off the record.

MR. KATAEV:  You have a fundamental misunderstanding of what work product is.  It's a writing.  What work product?  Were you there with a pen and a pad, Mr. Thommason?

MR. THOMASSON:  I don't know if I was taking notes or not, but I was trying to figure out what was going on in anticipation of whatever was coming next.

MR. KATAEV:  In other words you have no work product because there is nothing in writing.

MR. THOMASSON:  That's your conclusion, but I'm instructing the witness not to discuss what it is that he and I discussed that night, if anything.  I don't even know if we did because I was in the middle of trying to figure out what was going on in anticipation of litigation.

MR. RUDERMAN:  Are you reaching out to the court?

MR. KATAEV:  As we speak.

MR. RUDERMAN:  Can we take a break?

10

(Whereupon, a short recess was taken.)

(Whereupon, a call was placed to the Court.)

MR. KATAEV:  If it helps we can read back the testimony that led to the objection.

THE COURT CLERK:  Let me hear your position.

MR. KATAEV:  Sure.  Mr. Blankenship testified about coming to the dealership on August 3rd, the night that Mr. Deo was removed from the dealership.  He stated that he met on the sidewalk with Messrs. Deo, Merckling and Mr. Thommason and I asked him what did all three of you discuss.  Mr. Thommason objects. What did all three of you discuss and Mr. Thommason objects on the basis of privilege and instructs the witness not to answer.

THE COURT CLERK:  Mr. Thommason, can you hear me?

MR. THOMASSON:  Yes, I can hear you.

THE COURT CLERK:  What's your position on this?

MR. THOMASSON:  Specifically the objection was not quite as Mr. Kataev just characterized it.  It was not just some general privilege objection.  I specifically said that I was there that night working in anticipation of what was to come which I'm sure was going to be litigation given what was going on that night and it's my work product privilege what it was I was doing and discussing with those men that night.  It's not as though we were discussing the ballgame.  I was working.  I was working in anticipation of litigation and I'm also concerned about if I give an inch these attorneys are going to take a mile and I'm very concerned about cracking doors and if they get one potentially privileged conversation penetrated, are they then going to say that they can have, you know, penetration on all conversations with my clients. Everything I did with these people was strictly professional and never outside of the bounds of what attorneys discuss with clients so I don't know why they would get a chance to discuss what it was that was taking place on that sidewalk when we all had a common interest and I was working in anticipation of litigation.

THE COURT CLERK:  Before you continue, Mr. Kataev, it sounds very similar to the pending motion to compel regarding Mr. Merckling.  So we are going to also ask that you provide a brief by tomorrow on this and we will discuss this at the March 2nd oral arguments.

MR. KATAEV:  Understood.

MR. THOMASSON:  I'm sorry, Ms. Fink, you want what by tomorrow?

THE COURT CLERK:  A letter brief on this issue.  It doesn't have to be by 5:00 p.m.  It could be by end of day.

MR. THOMASSON:  Should we handle it the same way as the last time, Ms. Fink, when you wanted everyone to file simultaneously at five o'clock?

THE COURT CLERK:  No, it's okay.  By end of day is fine.  We will just handle it at the March 2nd oral arguments with similar issues.

MR. THOMASSON:  Okay.

THE COURT CLERK:  Anything else?

MR. KATAEV:  Just to confirm, end of day simultaneously.

THE COURT CLERK:  No, just any time end of day tomorrow a letter brief on your position.

MR. KATAEV:  Understood.

MR. THOMASSON:  But in the meantime, Ms. Fink, the witness is not answering the questions about what happened that night, right?  It's to be decided?

THE COURT CLERK:  Yes.

MR. THOMASSON:  Thank you.

THE COURT CLERK:  You can continue on with other questioning.

MR. KATAEV:  Okay.

THE COURT CLERK:  Thank you, bye.

8.      The final portion of the rough transcript was as follows:

BY MR. KATAEV:

Q   Mr. Blankenship, are you ready?

A   Yes, sir.

Q    On that day on August 3rd when you arrived, did you have any understanding or concern that you were going to be brought into this lawsuit?

12

A    No.

Q    On that day did you seek legal advice from anybody?

A    I didn't think I was getting involved in a case.

Q    In other words you did not seek legal advice from anybody, correct?

A    No.

Q    In connection with your conversations with Mr. Thommason, Merckling and Deo, you were not looking for any legal advice, right?

A    In what?  I don't understand.

Q    At all, for anything.

A    I don't understand at all anything.  I don't understand that.

Q    I'll rephrase.  I'm going to set the scene, okay? You arrive from Northshore to Superb after Mr. Deo was already removed from the dealership, correct?

A    Yes.

Q    When you arrived, Mr. Thommason and Mr. Deo and Mr. Merckling were standing on the sidewalk outside of the dealership, correct?

A    Yes.

Q    You approached them and had a conversation which will be the subject of a ruling on March 2nd, but during that conversation without saying what happened during the conversation, you did not seek legal advice from Mr. Thommason about anything at all, correct?

A    I didn't say anything.

Q    Okay.  Did you seek legal advice from Mr. Thommason about anything?

A    I didn't know I needed it.

Q    In other words you did not ask for legal advice?

A    No.

Q    After Mr. Deo was removed from the dealership, did you learn about the allegations levied by Mr. Uruttia against Mr. Deo?

A   Just what I have been shown in the court papers.

Q   When were you first shown those court papers?

A   I guess after I was named in it.

Q   Some time after August 17th of 2023, correct?

A   Yes.

Q   Do you recall who showed it to you?

A   No, I don't recall.

Q   After you reviewed those papers, were there any red flags that went off in your mind about Mr. Deo?

MR. THOMASSON:  Objection to form.  Can you rephrase that?

MR. KATAEV:  I'm not rephrasing.  He can answer as asked.

A   Can you repeat that, please?

MR. KATAEV:  Read it back.

(Whereupon, the referred to question was read back by the reporter.)

MR. THOMASSON:  Objection as to form.  Can you rephrase that, please?

MR. KATAEV:  I'm not rephrasing it. Please answer as asked.

MR. THOMASSON:  I'm asking the witness not to answer this question as asked.  I'm asking you to rephrase the question.  It's an objection as to form.

MR. RUDERMAN:  An objection as to form means you just object as to form. You cannot direct the witness not to answer based on objection to form. You want to call the judge again?

MR. KATAEV:  I'm going to call the judge. I'm not going to put up with this.

MR. THOMASSON:  You can answer the question, Mr. Blankenship, if you understand it.

MR. KATAEV:  Not if you understand it. Don't coach him.  You can answer the question. Please answer the question.

14

A    Repeat the question, please.

MR. KATAEV:  Read it back, please.

(Whereupon, the referred to question was read back by the reporter.)

A    Not that I'm aware of, no.

Q    After this incident occurred, did Mr. Deo offer you anymore opportunities to work for him?

[end of rough transcript]

I declare under penalty of perjury that the foregoing is true and correct.   Executed on

February 19, 2026.                    */s/ Emanuel Kataev, Esq.*
                                       Emanuel Kataev, Esq.