**Emanuel Kataev**

---

| | |
|---|---|
| **From:** | Ruthayn Shalom <ruthaynshalom@gmail.com> |
| **Sent:** | Wednesday, February 18, 2026 5:31 PM |
| **To:** | Emanuel Kataev |
| **Subject:** | Requested testimony |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

---

**Caution:** This email originates from outside of the sagelegallc.com. Do not click links or open attachments unless you recognize the sender and know the content is safe

---

Emanuel,
Here are the two rulings for your brief.
Let me know if you have any questions.

Q   You did the deposits before the break and

3   after the break, correct?

4      A   You froze.

5    I probably did.  Can you rephrase

6   because you are breaking up when you were asking

7   question?

8      Q   Sure.  Sure.

9          You were doing deposits before the

10   break and after the break, correct?

11      A   I probably did in total maybe three to

12   five deposits.

13      Q   Ever?

14      A   Yes.

15      Q   Do you remember how many before and how

16   many after?

17    A    No, sir.

18    Q    What did Mr. Deo pay you?

19    A    It was -- I would have to look back to

20  refresh my memory with that.

21    Q    Was it an hourly rate or a weekly salary?

22    A    It was a weekly salary.

23    Q    You don't remember the amount?

24    A    No, sir.  About a $1,000.  I don't

25  remember the exact amount.

                          35

1         D. Blankenship

2    Q    That was regardless of the number of hours

3  you worked?

4    A    The weekly, yes.

5    Q    Were there any gaps in your employment

6  with the Nassau County Police Department?

7    A    No.

8    Q    Have you ever worked with an individual

9  named Detective Marx?

10    A    Who?

11    Q    Detective Marks, M-A-R-X.

12    A    M-A-R-X.  Did I work with him, no.

13    Q    Do you know who he is?

14    A    I know who he is.

15    Q   How do you know who he is?

16    A   He's a detective on my job.

17    Q   Have you worked with him on other matters

18  at the police department?

19    A   Not that I can recall, no.

20    Q   Are you familiar with his relationship to

21  this case if at all?

22    A   No.

23    Q   Are you aware of any issue that Mr. Deo

24  had concerning $735,000 that was taken from a bank

25  account?

36

1          D. Blankenship

2    A   I'm aware of it.  I wasn't working for him

3  at the time.

4    Q   How did you become aware of it?

5    A   I guess somebody said something.

6      MR. THOMASSON:  Don't guess.

7      MR. KATAEV:  Excuse me.  You're not

8  allowed to instruct the witness.  You don't

9  represent him.

10      MR. THOMASSON:  I will instruct the

11  witness as I deem fit and he said he was

12  guessing and I'm reminding him that nobody here

13      wants him guessing.

14         MR. KATAEV:  Okay.  I'm reaching out to

15      the court.  Go off the record.

16   (Whereupon, an off-the-record discussion was held.)

17         MR. THOMASSON:  No, I don't agree to go

18      off the record.

19         MR. KATAEV:  Okay, we can remain on.  I

20      have prepared an email to Judge Wicks. I'm

21      getting the Zoom link to include it in case he

22      wishes to join.  Mr. Thommason, you're on that

23      email.  If I don't get an email back in two

24      minutes I'll call the court.

25         Madame Court Reporter, if you could

                          37

1         D. Blankenship

2   be kind enough to read back the record if necessary.

3      MR. KATAEV:

4      MR. CIANCIULLI:  Any interest in

5      continuing on while we wait?

6      MR. KATAEV:  No.  I want to get further

7      instructions while we wait.

8      Who was that?

9      MR. CIANCIULLI:  That was Jeff Cianciulli.

10     I was making a polite suggestion.

11      MR. KATAEV: I have no problem.

12      What was the last question and answer?

13  (Whereupon, the referred-to question and answer was

14       read back by the reporter.)

15      THE COURT CLERK: What is it that,

16   Mr. Kataev, according to you that Mr. Thommason

17   as giving an instruction?  What instruction was

18   he giving to the witness?

19      MR. KATAEV:  Don't guess.

20      THE COURT CLERK:  That's it?

21      MR. KATAEV:  I'm telling him that he's

22   disqualified as counsel and he can't make his

23   instructions.  His attorney, Jeffrey Benjamin,

24   has waived his appearance.  He's chosen to

25   proceed without an attorney.  Mr. Thommason

                           38

1       D. Blankenship

2   can't step in his place, he's disqualified.

3      THE COURT CLERK:  Mr. Benjamin is not

4   there and Blankenship is there alone?

5      MR. KATAEV:  That's correct.

6      THE COURT CLERK:  Mr. Thommason, what is

7   your position on this?

8      MR. THOMASSON:  Mr. Blankenship started an

9      answer with I guess and I quickly said don't

10     guess.  That's as much a reaction as any lawyer

11     could ever possibly give and it has been given

12     a dozen or more times in the last six weeks or

13     more, or two months of depositions by various

14     attorneys at various times in all of our

15     depositions.  That's as common and as harmless

16     a matter as can be and this is absolutely a

17     waste of not only our time, but the court's

18     time dealing with this.

19         MR. KATAEV:  Except the difference is --

20         THE COURT CLERK:  The other attorneys that

21     have said don't use the language, don't guess

22     or I guess in other depositions, have they done

23     that to their client or to someone like here

24     who does not have counsel?

25         MR. THOMASSON:  We have had a number of

                          39

1          D. Blankenship

2      those instructions at various times.  I think

3      all of the lead attorneys in this case have had

4      instructed other parties not their own not to

5      guess.  I know Mr. Ruderman has and I believe

6      Mr. Kataev has in depositions of the Deo

7    defendants and I was just saying the same thing

8    to a witness who started an answer with I

9    guess. I just said don't do that, don't guess.

10    MR. RUDERMAN: This is Mr. Ruderman.

11    Since Mr. Thommason brought me into this, I

12    don't know the context of what he's saying I

13    said don't guess. I may have instructed -- I

14    don't know what he's specifically referring to.

15    I can imagine that I may have asked a question

16    to a witness whom may have said I guess and I,

17    as the questioner, have said don't guess.

18    That's my prerogative as the one asking the

19    question to direct the witness what I'm asking

20    for. I don't recall any situation in which a

21    non-questioning attorney or an attorney not

22    representing the witness has instructed a

23    witness to say don't guess. That's not their

24    place. That's our position. Thank you.

25    MR. KATAEV: More importantly, he's been

40

1    D. Blankenship

2    disqualified and he interrupted him mid

3    sentence while he's answering questions which

4    counts as coaching and I told him to stop and

5      he refused to do so and said I will continue to

6      instruct him.  So I would like a ruling from

7      the court that he's not allowed to instruct the

8      witness to do anything.  He doesn't represent

9      the witness.

10         THE COURT CLERK:  Is there any party that

11     wants to have their position referring to

12     Flushing Bank and Libertas?

13         MR. CIANCIULLI:  Nothing to add for

14     Libertas.  Thank you.

15         THE COURT CLERK:  Thank you.  Let me see

16     if the judge is available.

17         MR. KATAEV:  Thank you.

18         THE COURT:  Who do we have?

19         MR. KATAEV:  We have Emanuel Kataev and

20     Jeffrey Ruderman for the Plaintiffs, the Court

21     Reporter, Ruthayn Shalom, Mr. Thommason for

22     himself, Mr. Cincuelli for Libertas, Mr. Deo,

23     observing, Mr. Urutti observing, Ariel

24     Ronnberger for Flushing and two of my

25     paralegals.

                          41

1          D. Blankenship

2          THE COURT:  Okay, so what's the issue?

3        MR. KATAEV:  We are on the record.

4        Your honor, I'm questioning the witness.

5    Mr. Benjamin, Mr. Blankenship's attorney has

6    waived his appearance.  He's here without his

7    attorney.  I asked him a question about how he

8    knows about a conversation.  He started his

9    answer with I guess and was immediately

10    interrupted by Mr. Thommason with an

11    instruction not to guess.  Mr. Thommason is

12    disqualified from representing this witness.

13        MR. THOMASSON:  Good morning, Your Honor.

14    This is Harry Thommason.  Your Honor, first off

15    I don't agree that I interrupted him.  I

16    believe I said it after he gave his answer, but

17    in any event we have all done this throughout

18    these depositions over the last two months.

19    This is nothing, this is a kerfuffle to use the

20    Court's term.  He started talking and said I

21    guess and I said don't guess.

22        THE COURT:  The only thing you can object

23    to is form.  You're not representing anybody,

24    you're representing yourself.  Anybody in that

25    deposition can object to the form of the

42

1          D. Blankenship

2     question, that's it.  You can't coach a witness

3     and tell them not to guess.  That's for the

4     questioner to follow up and determine whether

5     they're guessing, whether there is basis for

6     their response.  It's not for any of you

7     lawyers, you or anybody else to tell a witness

8     not to guess.  There should be nothing other

9     than form or objection and you're not

10     representing anybody.

11          MR. THOMASSON:  Two things, Your Honor.

12     Number one, it was reflexive as much as

13     anything, Judge.

14          THE COURT:  Okay.  I take that as true.

15          MR. THOMASSON:  And number two, I have

16     only been in a million depositions and I want

17     to say I still reserve the right to object

18     regarding privilege this morning whenever that

19     comes up which undoubtedly will.

20          THE COURT:  Everybody has that right.  You

21     don't waive that right.  I can give you case

22     citations on it.  There is case after case of

23     don't guess is coaching a witness.

24          MR. THOMASSON:  Fair enough, Judge.  I

25    never faced the issue.

43

1        D. Blankenship

2        THE COURT:  Keep your reflexes in check.

3        MR. RUDERMAN:  Your Honor, this is Jeff

4    Ruderman.  I want to -- because Mr. Thommason

5    wants the right to assert privilege.  I believe

6    that it's an unresolved issue as to whether or

7    not Mr. Thommason can assert the privilege of

8    the witness.  He can as you previously

9    mentioned.  He can assert his privilege,

10    Mr. Thommason's privilege.  If a witness is

11    going to disclose a matter that might divulge

12    the objecting party's privilege.

13        THE COURT:  The client has that choice,

14    not the lawyer.

15        MR. RUDERMAN:  That's exactly it.

16    Mr. Thommason, if he's going to say

17    Mr. Blankenship, you can't answer that question

18    because it's going to waive your privilege, he

19    has no right to --

20        THE COURT:  Agreed.

21        MR. RUDERMAN:  Thank you, Your Honor.  I

22    wanted to clear that with Mr. Thommason so we

23    don't have to call you back.

24    MR. THOMASSON:  I'll still make the

25    objection and I guess Mr. Blankenship will make

44

1        D. Blankenship

2    the decision whether or not he's going to waive

3    the privilege.

4    THE COURT:  You can note objection on the

5    record, but you can't direct him not to answer.

6    He's not your client and the privilege lies

7    with him and the fact that he's sitting there

8    at a deposition unrepresented even though he's

9    got a lawyer that has filed an appearance,

10    that's as his risk.

11    MR. THOMASSON:  I understand, Your Honor,

12    but if there is attorney/client privilege from

13    when I represented Mr. Blankenship, I'm not

14    allowed to assert that?

15    THE COURT:  Who holds the privilege?

16    MR. THOMASSON:  I think the

17    attorney/client privilege rests with the

18    client.

19    THE COURT:  Correct.  So they get to

20    choose whether they waive it, not waive it,

21    talk, not talk.  You can note on the record

22    that it's privileged, but that's about as far

23    as you can go.

24        MR. THOMASSON:  Fair enough, Judge.

25        THE COURT:  All right, gentlemen.


Next ruling:


3    A   Yes.

4    Q   Who told you that?

5    A   I don't recall.  Probably Mark.

6    Q   What, if anything, do you remember being

7    told about what is going on at Superb before you got

8    to Superb?

9    A   That they removed him from the business

10   and we had to get some of stuff out of the business.

11       Q   What stuff did you need to get out of the

12   business?

13       A   I believe at that time it was personal

14   items that we had left there.

15   Q   Such as what?

16   A   I had my mug and stuff like that had to

17   come out.  I grabbed it and threw it in my car and

18  left.

19    Q    Other than your mug anything else?

20    A    No, just personal items.  No.

21    Q    Back at Northshore when you worked there

22  since 2021, did you have an office there?

23    A    We had a computer there that we used.

24    Q    A station?

25    A    A station, yes.

62

1        D. Blankenship

2    Q    It was like a standing station?

3    A    The one that we had had one desk right in

4  front right there.

5    Q    Was that in an open area?

6    A    Yes.  It was in the open area right to the

7  back wall.

8    Q    That's at Northshore, correct?

9    A    Yes.

10    Q    What about at Superb, did you have your

11  own office there?

12    A    We had on open area with a counter.

13    Q    A podium?

14    A    A counter, podium.

15    Q    It was the center podium?

16    A   No.  That's where Gene and all of those

17  guys were.

18    Q   Where was your station in relation to the

19  podium?

20    A   Right by the back door where we used to

21  bring cars in.

22    Q   The back door meaning you had to go

23  through the parking lot entrance and make a right?

24    A   You came in the double doors.  It was to

25  the left side.

63

1      D. Blankenship

2    Q   That's where you primarily worked?

3    A   Yes.

4    Q   When you arrived what did you observe?

5    A   I believe I met Harry, Mark and Anthony on

6  the sidewalk at that time.

7    Q   And those were the first individuals that

8  you spoke to?

9    A   Yes.

10    Q   What did you all three say to each other?

11      MR. THOMASSON:  Objection.  That was my

12  work product that I was engaged in at that time

13  as I was trying to figure out what was going on

15

14    and I don't waive that privilege.

15        MR. KATAEV:  You may answer the question.

16        MR. THOMASSON:  I'm instructing the

17    witness not to discuss what it was that he

18    discussed with me, if anything.

19        MR. RUDERMAN:  Mr. Thommason, that's not

20    your privilege.

21        MR. THOMASSON:  Work product is my

22    privilege.

23        MR. RUDERMAN:  You have no privilege as an

24    attorney, it doesn't exist.  If you insist that

25    you have a privilege, we are going to have to

64

1        D. Blankenship

2    go back to the judge.  You have no privilege

3    with the client.  Only the client has the

4    privilege.

5        MR. THOMASSON:  I said it is my work

6    product that I was doing that night,

7    Mr. Ruderman.  I was trying to find out and

8    figure out what was going on.

9        MR. RUDERMAN:  You have no privilege in

10    your work product, only the client does.  Then

11    we will go back to the judge.

12      MR. THOMASSON:  Go back to the judge.  I

13    don't agree to go off the record.

14      MR. KATAEV:  You have a fundamental

15    misunderstanding of what work product is.  It's

16    a writing.  What work product?  Were you there

17    with a pen and a pad, Mr. Thommason?

18      MR. THOMASSON:  I don't know if I was

19    taking notes or not, but I was trying to figure

20    out what was going on in anticipation of

21    whatever was coming next.

22      MR. KATAEV:  In other words you have no

23    work product because there is nothing in

24    writing.

25      MR. THOMASSON:  That's your conclusion,

                          65

1      D. Blankenship

2    but I'm instructing the witness not to discuss

3    what it is that he and I discussed that night,

4    if anything.  I don't even know if we did

5    because I was in the middle of trying to figure

6    out what was going on in anticipation of

7    litigation.

8      MR. RUDERMAN:  Are you reaching out to the

9    court?

10      MR. KATAEV:  As we speak.

11      MR. RUDERMAN:  Can we take a break?

12      (Whereupon, a short recess was taken.)

13     (Whereupon, a call was placed to the Court.)

14      MR. KATAEV:  If it helps we can read back

15     the testimony that led to the objection.

16      THE COURT CLERK:  Let me hear your

17     position.

18      MR. KATAEV:  Sure.  Mr. Blankenship

19     testified about coming to the dealership on

20     August 3rd, the night that Mr. Deo was removed

21     from the dealership.  He stated that he met on

22     the sidewalk with Messrs. Deo, Merckling and

23     Mr. Thommason and I asked him what did all

24     three of you discuss.  Mr. Thommason objects.

25     What did all three of you discuss and

66

1       D. Blankenship

2     Mr. Thommason objects on the basis of privilege

3     and instructs the witness not to answer.

4       THE COURT CLERK:  Mr. Thommason, can you

5     hear me?

6       MR. THOMASSON:  Yes, I can hear you.

7       THE COURT CLERK:  What's your position on

8    this?

9        MR. THOMASSON:  Specifically the objection

10    was not quite as Mr. Kataev just characterized

11    it.  It was not just some general privilege

12    objection.  I specifically said that I was

13    there that night working in anticipation of

14    what was to come which I'm sure was going to be

15    litigation given what was going on that night

16    and it's my work product privilege what it was

17    I was doing and discussing with those men that

18    night.  It's not as though we were discussing

19    the ballgame.  I was working.  I was working in

20    anticipation of litigation and I'm also

21    concerned about if I give an inch these

22    attorneys are going to take a mile and I'm very

23    concerned about cracking doors and if they get

24    one potentially privileged conversation

25    penetrated, are they then going to say that

                              67

1        D. Blankenship

2    they can have, you know, penetration on all

3    conversations with my clients.

4        Everything I did with these people was

5    strictly professional and never outside of the

6    bounds of what attorneys discuss with clients

7    so I don't know why they would get a chance to

8    discuss what it was that was taking place on

9    that sidewalk when we all had a common interest

10    and I was working in anticipation of

11    litigation.

12        THE COURT CLERK:  Before you continue,

13    Mr. Kataev, it sounds very similar to the

14    pending motion to compel regarding

15    Mr. Merckling.  So we are going to also ask

16    that you provide a brief by tomorrow on this

17    and we will discuss this at the March 2nd oral

18    arguments.

19        MR. KATAEV:  Understood.

20        MR. THOMASSON:  I'm sorry, Ms. Fink, you

21    want what by tomorrow?

22        THE COURT CLERK:  A letter brief on this

23    issue.  It doesn't have to be by 5:00 p.m.  It

24    could be by end of day.

25        MR. THOMASSON:  Should we handle it the

68

1        D. Blankenship

2    same way as the last time, Ms. Fink, when you

3    wanted everyone to file simultaneously at five

4    o'clock?

5    THE COURT CLERK: No, it's okay. By end

6    of day is fine. We will just handle it at the

7    March 2nd oral arguments with similar issues.

8    MR. THOMASSON: Okay.

9    THE COURT CLERK: Anything else?

10    MR. KATAEV: Just to confirm, end of day

11    simultaneously.

12    THE COURT CLERK: No, just any time end of

13    day tomorrow a letter brief on your position.

14    MR. KATAEV: Understood.

15    MR. THOMASSON: But in the meantime, Ms.

16    Fink, the witness is not answering the

17    questions about what happened that night,

18    right? It's to be decided?

19    THE COURT CLERK: Yes.

20    MR. THOMASSON: Thank you.

21    THE COURT CLERK: You can continue on with

22    other questioning.

23    MR. KATAEV: Okay.

24    THE COURT CLERK: Thank you, bye.