UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

SUPERB MOTORS INC. *et al.*,

                     *Plaintiffs*,

      -against-

ANTHONY DEO *et al.*,

                     *Defendants*.
-----------------------------------------------------------------X

**FILED
CLERK
3/4/2026
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**MEMORANDUM
AND ORDER**

23-CV-6188 (JMW)

**A P P E A R A N C E S:**

    Emanuel Kataev
    **Sage Legal LLC**
    18211 Jamaica Avenue
    Jamaica, NY 11423
    *Attorneys for Plaintiffs Superb Motors Inc., Team Auto Sales LLC and Robert A. Urrutia*

    Jeffrey Ruderman
    **Cyruli Shanks & Zizmor LLP**
    420 Lexington Avenue, Suite 2320
    New York, NY 10170
    *Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian Chabrier, Joshua Aaronson, and Jory Baron*

    Jeffrey Benjamin
    **The Linden Law Group, PC**
    250 Park Avenue, Ste 7th Floor
    New York, NY 10177
    *Attorneys for Defendants Anthony and Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

1

**Harry R. Thomasson**
3280 Sunrise Highway, Ste Box 112
Wantagh, NY 11793
*Defendant Appearing Pro Se*

Ariel E. Ronneburger
**Cullen and Dykman LLP**
333 Earle Ovington Boulevard, Ste 2nd Floor
Uniondale, NY 11553
*Attorneys for Defendant Flushing Bank*

Jeffrey Cianciulli
**Weir LLP**
1330 Avenue of the Americas, Ste 23rd Floor
New York, NY 10019
*Attorneys for Defendant Libertas Funding LLC[1]*

*No appearances by other Parties*

**WICKS**, Magistrate Judge:

Three separate discovery disputes are before the Court, but with a common thread. Each seeks to compel deposition testimony over the objections of attorney-client privilege and/or attorney work-product doctrine. The first (ECF No. 392) and third (ECF No. 418) motions stem from attempts to preserve privileged communications between Defendant Harry R. Thomasson, Esq. ("Thomasson") and his prior clients who are also his co-defendants, Mark Merckling ("Merckling") and Dwight Blankenship ("Blankenship"). The second motion (ECF No. 398) seeks to compel all communications between Thomasson and his co-defendant and prior client, Anthony Deo ("Deo") based upon the crime-fraud exception. For reasons that follow Plaintiffs' Motions to Compel the testimony of Merckling (ECF No. 392) and Blankenship (ECF No. 418) are **GRANTED**, but the Motion to Compel waiver of attorney client privilege as to

---

[1] Jeffrey Cianciulli appeared on behalf of Libertas Funding LLC for the March 2, 2026 oral argument. However, there is no notice of appearance on the docket. Counsel is directed to file a notice of appearance.

2

communications between Deo and Thomasson based upon the crime-fraud exception (ECF No. 398) is **DENIED**.

## RELEVANT BACKGROUND

On January 26, 2026, the deposition of Defendant Merckling was conducted. A dispute arose during the deposition, and the parties contacted the Court. Present on the call were Emanuel Kataev and Jeffrey C. Ruderman for Plaintiffs and Thomasson, proceeding pro se. Counsel for Merckling and for the remaining Deo Defendants[2] was not present, and Merckling proceeded pro se for purposes of this deposition. The dispute arose in connection with an assertion of attorney client and work product privileges as raised by Thomasson several times on behalf of Merckling. The Court reserved a ruling on this issue allowing the parties to brief the issue. (*See* Electronic Order dated 1/26/2026.) Now before the Court is Plaintiffs' Motion to Compel Merckling's deposition testimony. (ECF No. 392.) Defendant Thomasson and Deo Defendants oppose this motion. (ECF Nos. 393-94.) Plaintiffs upon request were granted leave to file a reply. (ECF Nos. 400-01.)

In addition, Plaintiffs filed a subsequent Motion to Compel deposition testimony of Defendant Deo and Defendant Thomasson "concerning all communications between them pursuant to the crime-fraud exception to privilege." (ECF No. 398.) Oppositions were submitted by Thomasson, and Deo Defendants (ECF Nos. 403-04, 406[3]), and replies were likewise submitted by Plaintiffs (ECF Nos. 409-411).

---

[2] The "Deo Defendants" are Anthony Deo, Sarah Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp.

[3] The Court makes two clarifying points. First, it appears ECF Nos. 404 and 406 are the same entry, and as such, the Court will only make reference to ECF No. 404. Second, Thomasson refers to ECF No. 397

3

Shortly thereafter, during the deposition of Blankenship held on February 18, 2026, Thomasson raised the same privilege objections as he did at Merckling's deposition. The parties contacted the Court for a ruling. Present on the call were Emanuel Kataev and Jeffrey C. Ruderman for Plaintiffs, and Thomasson, proceeding pro se. Blankenship who has a counsel of record, chose to attend the deposition without his counsel. The dispute was in connection with objections made by Thomasson to questions posed to Blankenship on the basis of attorney-client and work-product privileges. The Court reserved a ruling on this issue allowing the parties to brief the issue. (*See* Electronic Order dated 2/18/2026.) Now before the Court is Plaintiffs' Motion to Compel Blankenship's deposition testimony. (ECF No. 418.) Defendant Thomasson opposed this motion. (ECF No. 417.) However, Blankenship's counsel of record, Jeffrey Benjamin ("Benjamin") did not submit any opposition.

Oral argument was held on March 2, 2026 on all three motions. (*See* Electronic Order dated 3/2/2026.)

## **ANALYSIS**

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *Upjohn Co.* v. *United States,* 449 U. S. 383, 389 (1981); *Hunt* v. *Blackburn,* 128 U. S. 464, 470 (1888). The privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Upjohn, supra,* at 389.[4]

The attorney-client privilege is meant to encourage frank, candid discussion between counsel and client. *See In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (quoting *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998)). When faced with issues of privileged matters

---

as the motion to compel and ECF No. 398 as the motion for sanctions in his opposition papers. It is the opposite—ECF No. 397 is the motion for sanctions while ECF No. 398 is the motion to compel.

[4] *Swidler & Berlin v. United States,* 524 U.S. 399, 403 (1998).

therefore, Courts should tread carefully and with due caution. As this "complaint asserts both federal and state claims and the requested information is relevant to both sets of claims, principles of federal law apply." *Lively v. Skyline Agency LLC*, No. 25-MC-347 (LJL), 2025 WL 2532796, at *3 (S.D.N.Y. Sept. 3, 2025); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 217 (S.D.N.Y. 2001) ("Where, as here, subject matter jurisdiction is based on a federal question, privilege issues are governed by federal common law.")

"[C]ourts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Cuomo v. Off. of New York State Att'y Gen.*, 754 F. Supp. 3d 334, 358 (E.D.N.Y. 2024) (quoting *United States v. Krug*, 868 F.3d 82, 86 (2d Cir. 2017)). "The relationship of attorney and client, a communication by the client relating to the subject matter upon which professional advice is sought, and the confidentiality of the expression for which protection is claimed, all must be established in order for the privilege to attach." *In re Enron Corp.*, 349 B.R. 115, 126 (Bankr. S.D.N.Y. 2006) (citation omitted).

> The work-product doctrine and the attorney-client privilege are often asserted to protect the same material from discovery; however, there is a substantial difference between the two. The attorney-client privilege exists to protect confidential communications between a lawyer and the lawyer's client. It assures the client that any statement the client makes is held in the strictest of confidence. As a result, the client holds the privilege and may assert or waive it.

*Distinction between work-product doctrine and attorney-client privilege*, HANDBK. FED. CIV. DISC. & DISCLOSURE § 1:49 (4th ed.).

It is beyond peradventure that the client, not the attorney, is the holder of the privilege. *See Bus. Integration Servs., Inc. v. AT & T Corp.*, 251 F.R.D. 121, 123 (S.D.N.Y. 2008), *aff'd*, No. 06-CV-1863 (JGK), 2008 WL 5159781 (S.D.N.Y. Dec. 9, 2008) ("the privilege lies with the client, … and that it is therefore for [the client] to waive this privilege or not"); *Lama v. Malik*,

5

25 F. Supp. 3d 316, 319 (E.D.N.Y. 2014) (same); *Pu v. Russell Publ'g Grp., Ltd.*, No. 15-CV-3936 (VSB), 2016 WL 9021990, at *5 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x 96 (2d Cir. 2017) (collecting cases).

The witnesses deposed whose communications are at issue are Deo, Merckling and Blankenship. Thomasson was the purported former lawyer for each. Thomasson was not being deposed. Thomasson does not represent Deo, Merckling or Blankenship in this action and thus cannot advance arguments or advocate on their behalf or direct them not to answer. *See Baliga on behalf of Link Motion Inc. v. Link Motion Inc.*, 385 F. Supp. 3d 212, 222 (S.D.N.Y. 2019) ("Generally, one defendant cannot raise arguments on behalf of another.") Deo, Merckling and Blankenship are represented by separate counsel, namely, Jeffrey Benjamin.[5]

**I.      Motion to Compel Testimony of Merckling and Blankenship (ECF Nos. 392, 418)**

Like a moth to a flame or a dog who won't drop the bone, Thomasson, notwithstanding having been disqualified from representing both Merckling and Blankenship (ECF No. 117), continues to display conduct as though he represents them. In depositions he proceeds to object to questions posed to those witnessed that do not infringe on his personal rights. This has been central to many of the deposition disputes. Indeed, the Court has addressed this very issue in past rulings. (*See* ECF No. 388 n.2.) Although Thomasson has the absolute right to represent himself and participate in depositions such as by asking questions of witnesses and raising "form" objections just as any other represented party (*see* Fed. R. Civ. P. 30(c); Electronic Orders dated 1/5/2026 and 1/12/2026), that right, however, is not unbridled. *Au fond*, he cannot advance arguments on behalf of others. *See In re Texaco Inc. S'holder Derivative Litig.*, 123 F. Supp. 2d

---

[5] Benjamin did not appear at the depositions, rather, both Blankenship and Merkling chose to proceed without counsel in attendance. (*See* ECF Nos. 392 at 1; 418 at 1.) At oral argument, Benjamin confirmed that his clients choose to proceed this way.

6

169, 172 (S.D.N.Y. 2000), *aff'd*, 28 F. App'x 83 (2d Cir. 2002) ("The right to proceed *pro se* in civil actions is guaranteed by 28 U.S.C. § 1654. It is well-established, however, that this right to proceed *pro se* does not encompass the right to proceed *pro se* on behalf of the interests of another.") Accordingly, Thomasson's privilege objections to the questioning of these three witnesses are overruled. That, however, does not end the inquiry.

The relief sought here, however, goes far beyond simply preventing Thomasson from raising objections. Rather, Plaintiffs seek to invade discussions between witnesses and their purported former counsel. Therefore, the remaining queries are, (i) whether the communications are covered by the attorney-client privilege in the first instance and (ii) even if so, has there been a waiver under the crime-fraud exception?

A review of the relevant transcripts is warranted.

A. <u>**The Merckling Deposition**</u>

MR. KATAEV: What did you speak about with Mr. Thomasson on August 3, 2023?

MR. MERCKLING: About being locked out of the business.

MR. THOMASSON: Objection. That is absolutely privileged, Mr. Kataev.

MR. KATAEV: Are you instructing him not to answer the question?

MR. THOMASSON: I am instructing him not to answer any questions that involve our conversations on and after August 3, 2023.

MR. KATAEV: And you're instructing him not to answer to preserve his privilege?

MR. THOMASSON: It -- those conversations were absolutely attorney-client privileged conversations between me and Marc Merckling. That would be every conversation we ever had after the night of the lockout at Superb, including the night of that lockout. That was the first conversation I ever had with him, and it was strictly business. There was nothing else I ever discussed with him.

MR. KATAEV: I understood that. But my question is, are you instructing him not to answer in order to preserve his privilege?

    MR. THOMASSON: Yes

(ECF No. 392-1 at 10-11.)

***

    MR. KATAEV: Do you have any knowledge about where Mr. Urrutia lives?

    MR. MERCKLING: Do I have any knowledge?

    MR. KATAEV: Yeah.

    MR. MERCKLING: I believe Costa Rica, or something like that I was told. I don't know.

    MR. KATAEV: Who told you that?

    MR. THOMASSON: Objection. If that was something you got from any lawyer, do not disclose conversations with lawyers.

    MR. MERCKLING: I heard it someplace. I don't know from where.

(ECF No. 392-1 at 12.)

    B.  <u>**The Blankenship Deposition**</u>

    MR. KATAEV: When you arrived what did you observe?

    MR. BLANKENSHIP: I believe I met Harry, Mark and Anthony on the sidewalk at that time.

    MR. KATAEV: And those were the first individuals that you spoke to?

    MR. BLANKENSHIP: Yes.

    MR. KATAEV: What did you all three say to each other?

    MR. THOMASSON: Objection. That was my work product that I was engaged in at that time as I was trying to figure out what was going on and I don't waive that privilege.

    MR. KATAEV: You may answer the question.

    MR. THOMASSON: I'm instructing the witness not to discuss what it was that he discussed with me, if anything.

    MR. RUDERMAN: Mr. Thomasson, that's not your privilege.

8

>MR. THOMASSON: Work product is my privilege.
>
>MR. RUDERMAN: You have no privilege as an attorney, it doesn't exist. If you insist that you have a privilege, we are going to have to go back to the judge. You have no privilege with the client. Only the client has the privilege.
>
>MR. THOMASSON: I said it is my work product that I was doing that night, Mr. Ruderman. I was trying to find out and figure out what was going on.
>
>MR. RUDERMAN: You have no privilege in your work product, only the client does. Then we will go back to the judge.
>
>MR. THOMASSON: Go back to the judge. I don't agree to go off the record.
>
>MR. KATAEV: You have a fundamental misunderstanding of what work product is. It's a writing. What work product? Were you there with a pen and a pad, Mr. Thomasson?
>
>MR. THOMASSON: I don't know if I was taking notes or not, but I was trying to figure out what was going on in anticipation of whatever was coming next.
>
>MR. KATAEV: In other words you have no work product because there is nothing in writing.
>
>MR. THOMASSON: That's your conclusion, but I'm instructing the witness not to discuss what it is that he and I discussed that night, if anything. I don't even know if we did because I was in the middle of trying to figure out what was going on in anticipation of litigation.
>
>MR. RUDERMAN: Are you reaching out to the court?
>
>MR. KATAEV: As we speak.
>
>MR. RUDERMAN: Can we take a break?

(ECF No. 423-1 at 15-18.)

    C. *<u>Are these communications privileged and if so, have they been waived?</u>*

    Here, Thomasson argues that both work-product and attorney-client privileges should be protected. Each is analyzed in turn.

9

### i. *Attorney-Client Privilege*

Attorney-client privilege only applies where the communication in question is primarily or predominantly of legal character. Fundamentally, legal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct. Where a party only asserts privilege over a limited portion of a document, courts in this Circuit routinely consider the predominant purpose of [the] isolated portion. The burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship," and they must do so by competent and <u>specific evidence</u>, rather than by conclusory or *ipse dixit* assertions.

*In re OpenAI, Inc., Copyright Infringement Litig.*, 802 F. Supp. 3d 688, 694 (S.D.N.Y. 2025) (citations omitted).

"[T]he party invoking the privilege bears the burden of establishing its applicability to the case at hand." *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 334, 336 (S.D.N.Y. 2008) (citation omitted); *Lead Creation Inc. v. P'ships & Unincorporated Ass'ns identified on Schedule A*, 668 F. Supp. 3d 302, 307 (S.D.N.Y. 2023) (same). "Consistent with the often-repeated axiom in this circuit, the Court elects to construe the attorney-client privilege 'confined within the narrowest possible limits underlying its purposes.'" *Gilead Scis., Inc. v. Khaim*, 779 F. Supp. 3d 300, 308–09 (E.D.N.Y. 2025) (quoting *Obeid v. Mack*, No. 14-CV-6498 (LTS) (HBP), 2016 WL 7176653, at *8 (S.D.N.Y. Dec. 9, 2016)). However, Thomasson asserted these privileges, not the prior clients. "It is well-established that the attorney-client privilege belongs solely to the client and it may only be waived by him or her." *Lama*, 25 F. Supp. 3d at 319; *In re Bank of New York Mellon Corp. Forex Transactions Litig.*, 66 F. Supp. 3d 406, 410 n.19 (S.D.N.Y. 2014) (citation omitted) ("The [attorney-client] privilege 'belongs solely to the client and may only be waived by him….'") Merckling and Blankenship did not object. In fact, Merckling proceeded to answer Question two during the deposition. Therefore, the Court makes

10

no rulings if these communications are even privileged because Thomasson has no standing to object. As such, Thomasson's attorney-client privilege objections are **overruled**.[6]

If the communications are privileged only Merckling and Blankenship as the holders may raise the objections. The threshold issue however is whether Thomasson, Merckling and Blankenship had an attorney-client relationship during the relevant time period of the questioning, namely, on August 3, 2023.

The submissions on the instant motions are exiguous, scant with detail. Accordingly, the Court canvassed the various docket entries throughout the history of this case and, coupled with counsels' representations made at oral argument and contained in the motion papers, find that the following occurred on August 3, 2023:

After an internal audit conducted by Superb, there were allegedly 100 vehicles missing, and Bruce Novicky ("Novicky"), Superb's Chief Operating Officer confronted Deo on this, who "lied" about why the vehicles were missing. (ECF No. 316 at 73.) Thus, Plaintiffs removed Deo from "day-to-day operations". (*Id.*) In addition, Superb Plaintiffs contacted the Nassau County Police Department and locked out the Deo Defendants from the dealership. (ECF No. 392 at 1.) When the police arrived, Novicky filed a criminal complaint against Deo only. (ECF No. 401 at 3.) Thomasson was called to the dealership that day where Merckling and Blankenship were present as well. (*Id.*) Novicky alleges that Blankenship did not stay quite long. (*Id.*) Merckling testified in his deposition that he spoke to Thomasson that night regarding being locked out of

---

[6] For argument's sake, if Thomasson did hold the attorney-client privilege, not enough is shown here to establish his entitlement to the privilege. For example, that communications were held for the purpose of legal advice. *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 315 (S.D.N.Y. 2021) (quoting *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("Under federal common law, '[t]he attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.'")).

the business. (ECF No. 392-1 at 10.) However, nothing further was stated because Thomasson objected, asserting privilege. (*Id.*) At Blankenship's deposition, however, he unequivocally stated that he *did not seek legal advice* from anybody because he did not think he was getting involved in a case. (ECF No. 418-1 at 13.)

While Plaintiffs dispute that Thomasson was counsel to Merckling and Blankenship on August 3, Benajmin and Thomasson argue that an attorney client relationship did exist. Thomasson freely admitted at oral argument that no engagement letter under 22 N.Y.C.R.R. § 1215 exists memorializing the engagement of either. That, however, does not end the inquiry. In such cases, "where there is no written agreement or other documentary evidence clearly establishing that existence of the necessary attorney-client relationship, the court must consider the words and actions of the parties to ascertain if an attorney-client relationship was formed." *Bonde v. Wexler & Kaufman, PLLC*, 345 F.R.D. 31, 39 (S.D.N.Y. 2023) (internal citations and quotations omitted). "Moreover, since the privilege belongs to – and [exists] for the benefit of – the client, not the attorney, the existence of the required attorney-client relationship generally must be proved by something more than the attorney's claim that such a relationship existed." *Charlestown Cap. Advisors, LLC v. Acero Junction, Inc.*, No. 18-CV-4437 (JGK)(BCM), 2020 WL 757840, at *7 (S.D.N.Y. Feb. 14, 2020).

The night of the "lockout" was not a simple night as described. Law enforcement was present and thus, under the circumstances, a written agreement or the like was not feasible. Thus the Court must look at other relevant facts when there is no writing, such as the actions by the parties, whether legal fees were charged or paid and the like. *See Makhoul v. Watt*, No. 11-CV-05108 (PKC) (VMS), 2014 WL 977682, at *6 (E.D.N.Y. Mar. 12, 2014) (quoting *Heine v. Colton, Hartnick, Yamin & Sheresky,* 786 F.Supp. 360, 367 (S.D.N.Y. 1992) (listing examples

such as "[a]n attorney's appearance in a judicial or quasi-judicial proceeding creates a presumption that the attorney-client relationship exists"). However, no bills, timesheets, invoices or other documents have been provided to the Court. Blankenship's deposition testimony directly contradicts the representations made by Benjamin and Thomasson. Additionally, the Notice of Appearance filed by Thomasson was only on September 10, 2023, over a month from the date in question. (ECF No. 29.) Indeed, absent from the submission on this motion are declarations or affidavits from Merckling and Blankenship that Thomasson was their lawyer on August 3, 2023. While it is likely that Thomasson was in conversations with Merckling and Blankenship between August 3, 2023, and September 10, 2023, there is no support in the record confirming that an attorney-client relationship existed on August 3.

Moreover, where no formal contract or agreement exist, "courts may consider whether the client and attorney shared 'regular communications relating to the subject matter of the representation' … whether the parties engaged in activity 'in furtherance of the objective of the retention' [or] whether the attorney provided legal advice and publicly held himself out as an attorney to the purported client. *Kleeberg v. Eber*, No. 16-CV-9517 (LAK)(KHP), 2019 WL 2085412, at *13 (S.D.N.Y. May 13, 2019) (internal citations omitted) (also discussing that a client's subjective belief that a relationship exists, is not sufficient).

There is simply no evidence to show that on the night of August 3, 2023, Thomasson had formed an attorney-client relationship with Merckling or Blankenship. Thomasson's conclusory assertions on March 2, 2026 that he "verbally confirmed" that he would represent him in connection with criminal allegations and "presumed also that civil litigation would ensue" falls short. (ECF No. 393 at 1-2.) To date, Benjamin has not submitted any documents or a declaration

13

setting forth that a relationship existed. Nor have the individual defendants provided affidavits that a relationship existed as of August 3, 2023.

In *Makhoul*, the Court after an in-camera review of several documents that included bills, emails, and contracts, found "no relevant evidence showing an attorney-client relationship" existed. 2014 WL 977682, at *13. Here, the Court is given nothing to even conduct an in-camera review. Likewise, in *Bonde*, the Court was provided with documents that referred to Plaintiff as a client with the firm "Wexler" and the Court there found that at the time of the alleged privileged communications, an attorney-client relationship existed. 345 F.R.D. at 43. Yet, the Court found no relationship to another firm referred to as "Kaufman" because the "record [was] silent" apart from conclusory statements such as in this case. *Id.* at 43-45.

Therefore, on the record before the Court, Merckling's and Blankenship's objections based upon attorney-client privilege are overruled as to any questions concerning conversations between Thomasson and both of them on August 3, 2023..

Accordingly, Plaintiffs' Motions to Compel testimony from Merckling and Blankenship are **granted**.

### ii.     *Work-Product Doctrine*

In light of the conclusion that no attorney-client relationship existed on August 3, it follows that Thomasson cannot rely upon the attorney work-product doctrine. Moreover, Thomasson conceded at oral argument that the work-product doctrine *does not* apply here. Therefore, the objections as to work-product are **overruled**.

### II.    Motion to Compel Testimony of Deo and Thomasson (ECF No. 398)

The crime-fraud exception is a limited exception to the attorney-client privilege. The exception applies when there is a showing of legal advice provided in furtherance of a crime or

14

fraud. *See Off. Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416, 427 (S.D.N.Y. 2006), *on reconsideration*, No. 01-CV-8539 (RWS), 2006 WL 2883255 (S.D.N.Y. Oct. 6, 2006) ("The Second Circuit has held that the crime fraud exception to the attorney-client privilege is a limited exception….") Once that showing is established, the privilege no longer lies with the client, and the communications –once privileged –lose that protection and are thus discoverable. *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309, 315 (S.D.N.Y. 2021) (quoting *Clark v. United States*, 289 U.S. 1, 15 (1933) ("However, '[t]he privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.'")).

> Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme. Advice given for those purposes would not be a professional service but participation in a conspiracy. Accordingly, it is settled under modern authority that the privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud.

§ 95. *Consultation in furtherance of crime or fraud*, 1 MCCORMICK ON EVID. § 95 (9th ed.).

A party seeking to invoke the crime-fraud exception must demonstrate that there is probable cause (1) "that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud" and (2) "to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127, 141–42 (2d Cir. 2025) (quoting *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999)); *Avalon Holdings Corp. v. Gentile*, 350 F.R.D. 8, 14 n.4 (S.D.N.Y. 2025) (same). "The crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. … 'Probable cause' means 'a reasonable basis for believing that the

15

objective was fraudulent.' It is the client's intent to engage in criminal activity, not counsel's, that is relevant; counsel need not even be aware that their assistance was sought for criminal purposes." *Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351, 357 (E.D.N.Y. 2009) (internal citations omitted). "In assessing whether the Plaintiffs have demonstrated probable cause, the Court may review, *in camera,* the privileged document and ascertain if it supports the view that it was being used at the time of its drafting to commit or conceal a fraud or a crime." *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 132 (N.D.N.Y. 2007). "There has been little guidance on the quantum of proof needed to invoke the crime/fraud exception." *Aiossa v. Bank of Am., N.A.*, No. 10-CV-01275 (JS)(ETB), 2011 WL 4026902, at *6 (E.D.N.Y. Sept. 12, 2011). "However, courts in the Southern and Eastern Districts of New York have applied a standard more demanding 'than a simple, if reasonable, suspicion of fraud' and less demanding than fraud shown by a preponderance of the evidence." *Id. (quoting In re Omnicom Group, Inc. Securities Litig.,* No. 02-CV-4483, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007)); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 107 (S.D.N.Y. 2017) ("Indeed, requiring that the showing be made by a preponderance of the evidence is consistent with the procedure under Rule 104 of the Federal Rules of Evidence, which provides that preliminary questions regarding the existence of a privilege are to be decided by the court using that standard.") "If the court finds that the crime-fraud exception is applicable, it "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 427 (S.D.N.Y. 2013) (quoting *In re Grand Jury Subpoena,* 419 F.3d 329, 343 (5th Cir. 2005)).

16

Here, there is no dispute that a privilege exists between Deo and Thomasson. Rather, Plaintiffs contend that this matter involves allegations of fraud and racketeering, which was primarily perpetrated by the Deo Defendants providing false financial information in order to obtain lender financing from Defendant Libertas Funding LLC ("Libertas") resulting in the destruction of Plaintiffs' businesses. (ECF No. 398 at 1.) Plaintiffs further aver that "Thomasson was instrumental in carrying out this scheme when Plaintiff Joshua Aaronson ("Aaronson") intercepted the Libertas funds; without the Libertas funds, Deo would never have gotten his foot in the door at Superb." (*Id.*) Plaintiffs state that among other things, Thomasson demanded that Aaronson turn over the Libertas funds and coordinated with Deo to make a criminal complaint. (*Id.*) Thus, Plaintiffs argue that based on the above, Plaintiffs "are entitled to disclosure of all communications between Thomasson and Deo, as well as the other Deo Defendants, concerning these events and all surrounding and related events." (*Id.* at 2.) Thomasson opposes stating that Plaintiffs fail to illustrate that he had any knowledge of any crimes (on-going or future), and there is no evidence to date that crimes were committed by any Deo Defendant.[7] (ECF No. 404 at 2.) Benjamin takes "no position" and "defer[s] to [Thomasson's] response."[8] (ECF No. 403 at 1.)

---

[7] Thomasson's argument as to knowledge is not persuasive here. Indeed, as discussed at oral argument, knowledge by the attorney of the crime or fraud is not required. *See Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-CV-7331 (LJL), 2025 WL 2688216, at *3 (S.D.N.Y. Sept. 19, 2025) ("The applicability of the crime-fraud exception does not depend upon whether counsel itself was culpable.")

[8] Plaintiffs in their reply argue that because Benjamin "'take[s] no position' … and thus does not oppose the relief sought on behalf of Deo, and Thomasson is forbidden from making any arguments on Deo's behalf, such that Deo's attorney-client privilege with Thomasson should be deemed waived on this independent ground." (ECF No. 409 at 1.) However, as previously established, it is Deo, not Benjamin nor Thomasson who will waive the attorney-client privilege.

In sum, Plaintiffs ask this Court to allow testimony on all communications between Thomasson and Deo based on what appears to be the allegations of the Third Amended Complaint. Indeed, Plaintiffs cite directly to the operative complaint. (*See* ECF No. 398 at 1 (citing to ECF No. 316).) "[T]he allegations in [a] complaint cannot suffice to establish probable cause to believe that a fraud was perpetrated." *Eletson Holdings Inc. v. Levona Holdings Ltd.*, No. 23-CV-7331 (LJL), 2025 WL 2688216, at *2 (S.D.N.Y. Sept. 19, 2025) (finding enough evidence to move forward with an in-camera review) (quoting *Conopco, Inc. v. Wein*, No. 05-CV-09899 (RJH)(THK), 2007 WL 1859757, at *8 (S.D.N.Y. June 28, 2007)) (finding the opposite). The Court does not find probable cause to proceed to the next step of an "in-camera review" of any documents to invoke the crime-fraud exception. [9] *See Sony Elecs., Inc. v. Soundview Techs., Inc.*, 217 F.R.D. 104, 113 (D. Conn. 2002) ("Mere allegations of a crime or fraud cannot defeat a claim of privilege; prima facie evidence that the crime or fraud has some foundation in fact is required to invoke the exception.") More is needed.

In *Conopco, Inc.*, the plaintiff commenced the action for claims of RICO and fraud alleging that the defendant, various entities, and her counsel, a named defendant Moskowitz cause the fraudulent scheme. 2007 WL 1859757, at *1. Moskowitz withheld documents based on the attorney-client privilege, which plaintiff argued *inter alia*, that the fraud-crime exception applied. *Id.* at *2, 4. The Court found that based on the evidence presented to the Court, the plaintiff failed to meet the required burden. Importantly, as here, the Court wrote that plaintiff's references to the complaints, "in support of its position, the allegations in the Complaint cannot

---

[9] Plaintiffs also include in their moving papers that "[w]hile Thomasson would not agree that the crime-fraud exception applied, the parties agreed that a special master and/or forensic examiner be appointed to conduct an in camera review, although Thomasson insists that any such costs should be borne by Plaintiffs, while Plaintiffs submit that the costs should be borne equally between the Plaintiffs and the Deo Defendants." (ECF No. 398 at 4.) However, based on this Court's ruling, this portion is *moot*.

18

suffice to establish probable cause to believe that a fraud was perpetrated. Otherwise, through the mere allegation of fraud in a complaint, a party could use the crime-fraud exception to wholly swallow the attorney-client privilege." *Id.* at *8. In addition, the only other evidence presented was "to one deposition in which a former employee testified that Defendants used bogus names," but "former deposition testimony is inadequate to meet Conopco's burden in establishing the applicability of the exception." *Id.*

In addition, the court in *Sony Elecs., Inc.* also found that allegations are not enough to pierce privilege. 217 F.R.D. 104, 112–13. There, the Court on a motion to compel disagreed with the defendant that a party need only "establish a prima facie likelihood that a … conspiracy existed." *Id.* at 112. The defendant relied on the Court's denial of a motion to dismiss constituted prima facie evidence of a crime, which the Court found meritless, and ruled that enough was pled to survive a motion to dismiss. *Id.* at 112-13. Thus, without more, the Court held the crime-fraud exception was not met and did not amount to a crime. *Id.* at 113.

Similarly here, there is nothing before the Court to suggest probable cause exists. Mere allegations in the Third Amended Complaint do not satisfy the burden to invade the attorney-client privilege between Deo and Thomasson. At oral argument, Plaintiffs argue that the movement of "Libertas Funds" is sufficient to establish probable cause. (*See* ECF No. 410.) The Court disagrees. Notwithstanding having conducted extensive "paper" discovery along with countless depositions, there is a paucity of evidence on this motion to support a probable cause finding to eviscerate the privilege here..

Accordingly, Plaintiffs' Motion to Compel testimony based on the crime-fraud exception (ECF No. 398) is **denied**.

## **CONCLUSION**

For the reasons stated, Plaintiffs' Motions to Compel (ECF Nos. 392, 418) are **GRANTED**, and Plaintiffs' Motion to Compel (ECF No. 398) is **DENIED**. In accordance with this Order, Plaintiffs may re-depose Merckling and Blankenship as to the communications on August 3. The parties are reminded that all discovery is to be completed by **March 31, 2026**. (*See* Electronic Order dated February 22, 2026.)

Dated: Central Islip, New York
       March 4, 2026

S O   O R D E R E D:

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge