UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

**Case No.: 2:23-cv-6188 (JMW)**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC

Defendants.

-------------------------------------------------------------------X

**PLAINTIFFS' MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION FOR RECONSIDERATION**

1

**PRELIMINARY STATEMENT**

Plaintiffs respectfully submit this motion for reconsideration of this Court's March 4, 2026 Order (the "Order") denying Plaintiffs' motion to compel testimony of Defendants Anthony Deo ("Deo") and Harry R. Thomasson, Esq. ("Thomasson") concerning all communications between them pursuant to the crime-fraud exception to privilege (ECF 398), and for such other and further relief as this Court deems just, equitable, and proper. The Court held that Plaintiffs' argument that the movement of "Libertas Funds" is not sufficient to establish probable cause necessary to apply the exception because it is merely based on the allegations of the Third Amended Complaint.

This motion seeks reconsideration of the Order in that it is respectfully submitted (1) the Court failed to consider the factual basis presented that Deo obtained the funds from Libertas fraudulently, as established by presenting the agreement in which Deo represented to Libertas the required and anticipated use of the Libertas funds, but Deo used the funds for other purposes; and (2) new deposition testimony became available after originally filing the motion, which establishes that Thomasson, at Deo's request, directly facilitated Deo's obtaining a loan for Northshore Motor Leasing LLC ("Northshore") in direct violation of a Court restraining order, and in which Deo submitted knowingly false financial information.

**LEGAL STANDARD**

A motion for reconsideration may be granted where the moving party shows that the court overlooked controlling law or facts that, had they been considered, would have altered the disposition of the underlying motion. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995); see also Gey Assoc. Gen. Partnership v 310 Assoc. (In re 310 Assoc.), 346 F3d 31, 35 (2d Cir. 2003).

Reconsideration may also be "granted to correct clear error, *prevent manifest injustice*, or review the court's decision *in light of the availability of new evidence.*" See Mendez-Caton v. Carribean Family Health Center, 340 F.R.D. 60, 74 (E.D.N.Y. Jan. 28, 2022) (emphasis added).

## ARGUMENT

As cited by the Court in its March 4, 2026 decision concerning Plaintiffs' motion to apply the crime-fraud exception to allow Plaintiffs to invade the attorney-client privilege between Thomasson and Deo, "[a] party seeking to invoke the crime-fraud exception must demonstrate that there is probable cause (1) 'that the client communication or attorney work product in question was *itself* in furtherance of the crime or fraud' and (2) 'to believe that the particular communication with counsel or attorney work product was *intended* in some way to facilitate or to conceal the criminal activity.'"(citations omitted) "Probable cause' means 'a reasonable basis for believing that the objective was fraudulent.'" *Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351, 357 (E.D.N.Y. 2009).

### THOMASSON FACILITATES DEO'S VIOLATION OF THE NEW YORK SUPREME COURT'S TEMPORARY RESTRAINING ORDER

At the time they originally sought this relief, Plaintiffs had argued that the transaction in which Deo directed Thomasson to turn over the Libertas funds to Deo was sufficient to satisfy the criteria to apply the crime fraud exception.

The Court denied Plaintiffs' motion, finding that Plaintiffs' argument that the movement of "Libertas Funds" is not sufficient to establish probable cause because it is merely based on the allegations of the Third Amended Complaint.[1]

---

[1] Plaintiffs respectfully submit that this Court overlooked the evidence supporting their position; namely, the (i) Libertas Agreement, which provided that the funds were to be used for the benefit of Northshore and not for personal use; (ii) the Cross-Purchase Agreement, which provided that Northshore was free and clear of all liens and encumbrances; and (iii) the Bank of America bank

Although Plaintiffs argue below that the Court overlooked that their argument is not merely based on the allegations of the Third Amended Complaint, Plaintiffs also seek this Court's reconsideration based upon newly available evidence,[2] the testimony of Deo at his deposition on January 12, 2026, February 12, 2026, and February 13, 2026, generally, and of Thomasson at his deposition on March 4, 2026, concerning Thomassons' involvement in Deo's admitted fraudulent actions in obtaining a $500,000.00 loan from defendant Flushing Bank (the "Flushing Loan").

In connection with IAG Plaintiffs' ("IAG") original New York State Supreme Court action against Deo, on December 13, 2022 Hon. Sharon M. Gianelli, J.S.C. ("Justice Gianelli") issued a temporary restraining order restraining Deo from, *inter alia*, "taking any action to sell, lease, transfer, pledge or otherwise encumber the assets of Northshore and Sunrise including, but not limited to any motor vehicles..."

At his deposition, Thomasson testified that his understanding is that Deo "selling motor vehicles owned by Northshore or Sunrise" (HT Trans. 301:6-9)[3] or "borrowing money and

---

statements for Defendant Car Buyers NYC Inc ("Car Buyers"), which show that of the $723,000.00 remitted by Thomasson to Car Buyers, the remainder of the funds went to purchase Deo's interest in Superb, and to pay for Deo's residence. The foregoing items are evidence that Deo committed fraud because: (i) the Libertas funds were not used for the benefit of Northshore at all; (ii) the Libertas funds were used, in part, for personal expenses; and (iii) the Libertas funds constituted an encumbrance of Northshore in violation of the Cross-Purchase Agreement. Deo signed both the Libertas Agreement and the Cross-Purchase Agreement and therefore knew or should have known that the manner in which he used the funds constituted fraud. This evidence alone, without the advent of Deo's and Thomasson's deposition transcripts, was sufficient for this Court to find that Deo engaged in both civil fraud and a crime (wire fraud) sufficient the standard for the crime-fraud exception to apply. In that regard, Plaintiffs respectfully submit the Court erred.

[2] The original motion was filed on February 9, 2026.

[3] See Ruderman Decl. Exhibit B; Transcript of Harry Thomasson deposition dated March 4, 2026 ("HT Trans.")

providing a security interest in Northshore and Sunrise and its assets, would" (HT Trans. 301:15-19) "be a violation of this order." (HT Trans. 301:10-13) and (HT Trans. 302:15-18).

Deo testified that he was aware of the restraining order (AD Trans. 146:13-23)[4] and communicated about it with Thomasson. (AD Trans. 146:24-147:6) But testified that after speaking with Thomasson, he did not believe that the financing and sales from Northshore violated the restraining order. (AD Trans. 147:10-16)

Deo applied for financing for Northshore from defendant Flushing Bank ("Flushing") in March 2023, despite the fact that there was a restraining order prohibiting him from doing so. (See Ruderman Decl. Exhibits D and F). One of the obstacles that stood in Deo's way of the financing was that Ally Bank ("Ally"), the bank that IAG used for floor plan financing for Northshore and Sunrise, had a blanket UCC lien on all of their assets. (AD Trans. 192:24-193:3) However, IAG had paid off all outstanding obligations of Northshore and Sunrise to Ally in the fall of 2022 (which funds constitute much of the claims IAG has against Defendants in this case). As such, prior to applying for the loan from Flushing, Deo sought to have Ally's UCC lien on Northshore and Sunrise's assets removed as of record. Deo engaged Thomasson in February of 2023 to reach out to Ally to obtain the UCC lien release against Northshore, which Deo testified Thomasson did. (AD Trans. 193:4-25)

Thomasson also testified that Deo asked him to obtain Ally's lien release against the assets of Northshore, which he did. (HT Trans. 100:23-101:6) The lien release information was emailed by Laurie to Deo's loan officer at Flushing Bank, Robert Puccio,[5] on February 27, 2023. (See Ruderman Decl. Exhibit E)

---

[4] See Ruderman Decl. Exhibit A; Transcript of Anthony Deo deposition dated February 13, 2026 ("AD Trans.")

Thomasson testified that despite the fact there was an order restraining Deo from obtaining any financing against Northshore, Thomasson did not ask Deo why he needed the Ally UCC lien released (HT Trans. 102:9-20).

In March 2023, Deo made an official application to Flushing Bank for asset based term loan for the Flushing Loan. (See Ruderman Decl. Exhibit F) In that application, Deo stated that the "Loan Purpose" purpose was for "Growth/Business Expansion."  However, another obstacle stood in Deo's way from obtaining the Flushing Loan. Flushing's litigation search revealed IAG's lawsuit against Deo, as well as the restraining order. (See email annexed as Exhibit G).  In order to alleviate the concerns raised by Flushing Bank, Deo asked Thomasson to prepare a letter downplaying the import of the lawsuit, which letter Deo presented to Flushing Bank so that they would approve the loan. (See letter annexed as Exhibit H)(AD Trans. 216:21-218:4) When Puccio requested a more detailed explanation of the lawsuit by Thomasson (See Ruderman Decl. Exhibits I and J), Thomasson prepared a second, more detailed letter, which was provided to Flushing Bank. (See Ruderman Decl. Exhibits I and J)

Thomasson testified that, in fact, Deo asked Thomasson at the end of March 2023 to prepare a letter to downplay the import of the lawsuit. (AD Trans. 143:9-22) While Thomasson testified that he did not recall now what, or to whom, the letter was for (AD Trans. 144:13-21), he did testify that he would have known at the time what the letter was for. (AD Trans. 145:13-17).

---

[5] Although not identified, Deo confirmed that he was referring to this individual when he stated that he had a banker "in his pocket" in a text message to an officer of Superb.

Flushing testified that based upon receiving the letters, it approved the $500,000 Flushing Loan to Northshore. (MB Trans. 125:2-126:6)[6]. Flushing then placed a UCC lien on Northshore's assets in connection with the Flushing Loan. (See filed UCC annexed as Exhibit K)

THOMASSON FACILITATES DEO'S ADMITTED FRAUD
IN CONNECTION WITH THE FLUSHING BANK LOAN

Perhaps more important than the fact that Deo obtained the Flushing Loan in violation of Justice Gianelli's restraining order, with the assistance of Thomasson, is that Deo obtained the Flushing Loan fraudulently in that he admitted that he provided false financial information to Flushing to induce it to approve the Flushing Loan. These fraudulent acts of Deo are not merely based upon the allegations in the Third Amended Complaint. They are based on the documents and testimony of Deo himself, some of which was submitted in the earlier-filed motion.

In the application for the Flushing Loan prepared by Deo, Deo states that the loan to Northshore was to be used for the business purposes of Northshore; specifically growth/business expansion. (Ruderman Decl. Exhibit D) (AD Trans. 148:16-19, 151:23-152:2)

This representation was supported Deo's accountant, Tom Jones, who spoke with Flushing's loan officer and confirmed that Jones told him the funds would be "used primarily for 'small and cosmetic' improvements to the showroom at the dealership. These improvements are to things like, flooring, lighting, windows etc. They also may look to make improvements to their auto repairs divisions, Gold Coast Motors of Syosset, which currently is a passthrough entity to Northshore with not much activity." (Ruderman Decl. Exhibit L) Gold Coast Motors of Syosset is also a defendant in this action.

---

[6] See Ruderman Decl. Exhibit C; Transcript of Michael Buccino, as corporate representative of Flushing, deposition dated February 26, 2026 ("MB Trans.")

7

Yet, at his deposition, Deo was shown the Northshore bank statements from the Flushing bank account that was opened in connection with the Flushing Loan. Within three (3) months of the funding of the $500,000.00 loan, $50,000.00 was used to pay defendant Laurie and approximately $325,000.00 was paid out to Car Buyers. (See bank statements annexed as Exhibit M) Car Buyers NYC Inc. ("Car Buyers"), another defendant in the action, is a "consulting company" owned by Deo, of which he is the only consultant. (AD Trans. 153:24-154:20) Notably, as discussed *supra*, Car Buyers is also the entity to which Thomasson transferred $723,000.00 of the Libertas funds in November 2022. (See Ruderman Decl. Exhibit N) When questioned at his deposition about any funds that were obtained from the Flushing Loan that were used for the benefit of Northshore, Deo could point to none. (AD Trans. 154:14-20, 156:12-14, 158:6-13). Deo simply used the non-existent assets of Northshore to obtain a $500,000.00 business loan for Northshore and paid out the loan proceeds to Laurie and himself.

Further, in connection with obtaining the Flushing Loan, which Deo guaranteed, Deo had to provide Flushing with a personal financial statement. The personal financial statement Deo provided, entitled "Statement of Financial Condition", was prepared by Tom Jones' accounting firm, specifically and conveniently disavowing any personal knowledge as to the accuracy of the information contained in the personal financial statement. (See Ruderman Decl. Exhibit O)

Deo testified that he provided the financial information and knew the information in his Statement of Financial Condition was accurate. (AD Trans. 65:20-66:2) Deo acknowledged that he provided the Statement of Financial Condition to Flushing Bank in order for Flushing to approve the $500,000.00 loan. (AD Trans. 67:24-68:10)

The Statement of Financial Condition certified by Deo as accurate, stated that he owned a house in the Bronx worth $1,280,000.00 on which was owed a mortgage of $479,000.00. After

8

squirming around his answers, claiming to have bought that property with his father, he ultimately admitted that he did not hold title to the property. (AD Trans. 73:10-75:15, 76:2-77:21)

But even further, Deo admitted to knowledge of an order of the Hon. Lucinda Suarez, J.S.C. of the Supreme Court, Bronx County dated September 21, 2007 finding in favor of Deo's father lawsuit against Deo for forging his father's signature on the deed transferring that property to an entity owned by Deo and his wife, Sara Deo.  (AD Trans. 80:24-82:15, 83:2-4) The order directed the expungement of that forged deed. (See Order annexed hereto as Exhibit P)

The Statement of Financial Condition certified by Deo as accurate also represented that Deo owned a house at 3 Huntington Lane in Old Westbury, New York worth $5,295,000.00 which had a mortgage of $2,250,000.00. Again, after much circuitous answers, Deo admitted that he was only in contract to the buy the property and never closed, never paid the owner $5,295,000.00 and never borrowed the $2,250,000.00, although he incredibly testified that he "believed it was [his] asset". (AD Trans. 77:22-80:15)

In light of this overwhelming evidence, which was previously unavailable to Plaintiffs at the time they first sought this relief, there is no doubt that probable cause exists to establish that Deo purposely, and with the assistance of Thomasson (whether Thomasson knew about it or not), violated Justice Gianelli's restraining order and committed acts of fraud in obtaining financing from Flushing Bank.

This argument could not have been brought to the Court prior to Thomasson's deposition testimony on March 4, 2026 because his role in this fraudulently obtained loan was unknown. Thomasson, though, admitted that he was asked by Deo to have Ally's UCC lien removed from Northshore and admitted that he prepared the letter at the request of Deo, which letter Deo used to obtain the Flushing Loan.

9

Based on the foregoing, Deo and Thomasson should be compelled to testify about communications with each other at trial, as well as any continued deposition or other discovery vehicle, as their assertion of attorney-client privilege should be waived under the crime-fraud exception.

Plaintiffs thank this honorable Court for its time and attention to this case.

Dated: New York, New York
      March 18, 2026             Respectfully submitted,

**CYRULI SHANKS & ZIZMOR LLP**

By:    /s/ Jeffrey C. Ruderman, Esq.
        Attorneys for IAG Plaintiffs
        420 Lexington Ave., Suite 2320
        New York, NY 10170
        (212) 661-6800

Dated: Lake Success, New York
      March 18, 2026             **SAGE LEGAL LLC**

By:    /s/ Emanuel Kataev, Esq.
        Attorneys for Superb Plaintiffs
        18211 Jamaica Avenue
        Jamaica, NY 11423-2327
        (718) 412-2421