EXHIBIT "C"

# In the Matter of

Case No. 2:23-cv-6188 (JMW)

SUPERB MOTORS INC., et al.

v.

DEO, et al.

---

## Examination of Michael Buccino

*Thursday, February 26, 2026*

---



The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


-------------------------------------------x

SUPERB MOTORS INC., TEAM AUTO SALES
LLC, ROBERT ANTHONY URRUTIA, 189
SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR
LEASING, LLC, BRIAN CHABRIER, JOSHUA
AARONSON, JORY BARON, ASAD KHAN, IRIS
BARON REPRESENTATIVE OF THE ESTATE OF
DAVID BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN
BLVD AUTO LLC, 1632 HYLAN BLVD AUTO
LLC, 1239 HYLAN BLVD AUTO LLC, 2519
HYLAN BLVD AUTO LLC, 76 FISK STREET
REALTY LLC, 446 ROUTE 23 AUTO LLC and
ISLAND AUTO MANAGEMENT, LLC,

                            Plaintiffs,

                                      Case No.
                                      2:23-CV-6188
              -against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON,
DWIGHT BLANKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, THOMAS JONES, CPA, CAR
BUYERS NYC INC., GOLD COAST CARS OF
SYOSSET LLC, GOLD COAST CARS OF SUNRISE
LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP
LLC, GOLD COAST MOTORS OF LIC LLC, GOLD
COAST MOTORS OF ROSLYN LLC, GOLD COAST
MOTORS OF SMITHTOWN LLC, UEA PREMIER
MOTORS GROUP, DLA CAPITAL PARTNERS INC.,
JONES, LITTLE & CO., CPA'S LLP, FLUSHING
BANK, LIBERTAS FUNDING LLC, J.P. MORGAN
CHASE BANK, N.A., 189 SUNRISE HWY AUTO
LLC, and NORTHSHORE MOTOR LEASING, LLC,
                            Defendants.
-------------------------------------------x
```

2

February 26, 2026
10:12  a.m.

REMOTE EXAMINATION BEFORE TRIAL of

MICHAEL BUCCINO, a 30(b)(6) Witness, taken by

Plaintiffs, in the above-entitled action, held at

the above date and time, pursuant to Court Order,

before Lisa Hiesiger, a Stenographic Reporter and

Notary Public within and for the State of New

York.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

3

A P P E A R A N C E S:


SAGE LEGAL LLC
Attorneys for Plaintiffs Superb Motors Inc.,
Team Auto Sales LLC, Robert Anthony Urrutia
    18211 Jamaica Avenue
    Jamaica, New York 11423
    718-412-2421
BY: EMANUEL KATAEV, ESQ.
        emanuel@sagelegal.nyc


CYRULI SHANKS & ZIZMOR LLP
Attorneys for Plaintiffs 189 Sunrise Hwy Auto
LLC, Northshore Motor Leasing, LLC, Brian
Chabrier, Joshua Aaronson, Jory Baron, 1581
HYLAN BLVD AUTO LLC, 1580 Hylan Blvd Auto LLC,
1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto
LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd
Auto LLC, 76 Fisk Street Realty LLC, 446 Route
23 Auto LLC and Island Auto Management, LLC
    420 Lexington Avenue
    Suite 2320
    New York, New York  10170
    212-661-6800
BY: JEFFREY RUDERMAN, ESQ.
        jruderman@cszlaw.com


CULLEN AND DYKMAN LLP
Attorneys for Defendant Flushing Bank
    333 Earle Ovington Boulevard
    2nd Floor
    Uniondale, New York 11553
    516-357-3700
  BY:  ARIEL E. RONNEBURGER, ESQ.
        aronneburger@cullenllp.com

4

A P P E A R A N C E S:    (Continued)


        HARRY R. THOMASSON, JR., ESQ.
        Pro Se Defendant
          3280 Sunrise Highway
          Box 112
          Wantaugh, New York  11793


        WEIR LLP
        Attorneys for Defendant
        Libertas Funding LLC
            1339 Chestnut Street
            Suite 500
            Philadelphia, Pennsylvania 19107
            215-665-8181
        BY:  JEFFREY S. CIANCIULLI, ESQ.   (A.M. Session)
             JCianciulli@weirlawllp.com



    Also Present:


        ROBERT ANTHONY URRUTIA

        ALIVIA COONEY, Paralegal
        Sage Legal LLC


                ~ oOo ~

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

5

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

~ oOo ~

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

6

THE COURT REPORTER:  The attorneys participating in this deposition acknowledge that I am not physically present in the deposition room, and that I will be reporting this deposition remotely.

They further acknowledge that in lieu of an oath administered in person, I will administer the oath remotely.

The parties and their counsel consent to this arrangement and waive any objections to this manner of reporting. Please indicate your agreement by stating your name and your agreement on the record.

MR. RUDERMAN:  Jeffrey Ruderman from Cyruli Shanks & Zizmor for IAG plaintiffs we agree.

MR. KATAEV:  Emanuel Kataev from Sage Legal LLP for three of the plaintiffs, and we agree.

MS. RONNEBURGER:  Ariel Ronneburger for Flushing Bank, we agree.

MR. THOMASSON:  Harry Thomasson, pro

7

M. BUCCINO

se, I agree.

M I C H A E L   B U C C I N O,

the Witness herein, having first been duly

sworn by the Notary Public, was examined

and testified as follows:

THE COURT REPORTER:  Ms. Ronneburger,

will you be purchasing a copy of the

transcript?

MS. RONNEBURGER:  Yes.

EXAMINATION BY MR. RUDERMAN:

Q.   Good morning, Mr. Buccino.  Did I

pronounce that correctly?

A.   Yes.

Q.   So today you are here as a

representative of Flushing Bank to provide

testimony in connection with this lawsuit in

which Flushing Bank is a defendant.  Are you

aware of that?

A.   Yes.

Q.   Have you ever been deposed before?

A.   Yes.

Q.   How many times, approximately?

A.   Twice, I think.

Q.   Was that as a representative of

8

M. BUCCINO

Flushing Bank?

A.   At least once, yes.

Q.   The matter that was not Flushing Bank, do you recall what that was in connection with?

A.   It was a debt collection for my old employer.

Q.   I'm going to just provide you with some instructions, although you've been deposed before, just to make sure that the ground rules are clear and we get a clean record.

Before I begin, is there any reason why you would not be able to give truthful and accurate testimony here today?

A.   No.

Q.   So as you can see, the reporter is here taking down all of the questions and answers that you will be asked today and give, so please just make sure that you speak clearly in responding to all of the questions.  Do you understand that?

A.   Yes.

Q.   Also, all of your answers need to be verbal as the reporter can't take down a shrug or

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

9

M. BUCCINO

a nod or something like that.  Do you understand that?

A.    Yes.

Q.    If you don't understand a question, please let me know and I will try to rephrase it, so that you do understand it.  If you answer a question, I will presume that you understood the question as asked.  Do you understand that?

A.    Yes.

Q.    Your attorney might note an objection on the record in connection with your testimony, but unless she directs you not to answer a question despite her objection you're supposed to then answer the question to the best of your ability.  Do you understand that?

A.    Yes.

Q.    You may have a question that is asked in which you may not be able to give a very detailed specific answer, but you are here to give the best of your recollection.  So please provide answers to the best of your recollection, and if there are some qualification to your answer as to why you cannot give a more specific answer, you can note that as well when you give

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

10

M. BUCCINO

your answer.  Do you understand that?

A.   Yes.

Q.   In preparation for today's deposition, other than speaking to counsel for Flushing Bank, what else did you do in preparation?

A.   At one point I did review some of the records that we produced in this case.

Q.   Were you involved in the gathering of documents that were produced in connection with this case?

A.   After the lawsuit had been filed.

Q.   Is that a yes after the lawsuit had been filed?

A.   Yes.

Q.   Prior to the lawsuit being filed, did you have any personal knowledge about the transaction at issue?

A.   I knew of the accounts and of some legal disputes involving them, yes.

Q.   When you say you reviewed some documents, I believe Flushing Bank produced over 8,000 pages of documents.  Do you recall approximately how many of those documents you

11

M. BUCCINO

reviewed?

A.   I did a detailed review of maybe a hundred or a couple of hundred, but most of them I would have just let Chris review them.

Q.   How did you go about determining which documents you would give a more detailed review?

A.   A more detailed review on some of the documents produced by the customer in preparation to open the account and some of the account-opening documents more so than transaction records.

Q.   So it was your more detailed review were more on the documents that were produced to Flushing Bank rather than the documents that Flushing Bank had produced, is that what you are saying?

A.   That's fair to say, yes.

Q.   Do you know what documents in particular you did review in more detail?

A.   The operating agreement, the other business documents that were provided at the initial account opening, resolution of authority, and things of that nature.

12

M. BUCCINO

Q.   Now what is your current position at Flushing Bank?

A.   I'm the vice president legal processing and support attorney.

Q.   How long have you been in that position?

A.   12 years.

Q.   So you've had the same position since you began working at Flushing Bank?

A.   Essentially, yeah, the title has somewhat changed, but the tasks have been primarily the same.

Q.   So in your position can you generally describe your roles and responsibilities?

A.   I oversee the legal processing department which handles a variety of legal matters for the bank.  We deal with branch issues, troubleshooting on legal matters for customer-facing business units, we handle all information subpoenas, restraining notices and levies that come into the bank, and we handle all document subpoena requests that come in for the bank.  We manage outside litigation, law firms that the bank works with, and things of that

13

M. BUCCINO

nature.

Q.   So would it be fair to say that until a matter is brought to your attention as some legal complication, generally, you would not be involved in a particular transaction or issue at the bank?

A.   Generally speaking.

Q.   And you are an attorney admitted to practice in the State of New York?

A.   That's correct.

Q.   Where did you go to law school?

A.   St. John's University.

Q.   When did you graduate?

A.   2010.

Q.   After graduating, did you begin working as an attorney?

A.   Eventually, yeah.

Q.   Was there a time after you graduated that you did not work as an attorney?

A.   Well, 2010 wasn't the best time for an attorney but eventually I got a job with a firm on Long Island, Peter T. Roach.

Q.   When was that?

A.   I started with them probably sometime

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

14

M. BUCCINO

in late 2011.

Q.    What was the name of that firm?

A.    The original firm was Peter T. Roach & Associates.  They were then bought out and I worked for Kirshenbaum & Phillips, up until my employment with Flushing Bank.

Q.    What were your roles and responsibilities at the collection firm?

A.    Primarily drafting complaints and motions for judgment on debt collection matters, primarily regarding credit card debt and other private creditors for Kirshenbaum & Phillips.  I was also tasked with compliance work, FDCPA compliance, and other regulatory agency responses.

Q.    Prior to working at Kirshenbaum, did you have any training, experience or education specifically in the compliance field?

A.    Not specifically, no.

Q.    Did you kind of learn it on the job?

A.    Essentially.

Q.    How long were you working for Kirshenbaum or the debt collection firm, until what time?

15

M. BUCCINO

A.   That probably would have been, in total between the two firms, it was a little over three years I want to say.

Q.   And the next job you had was at Flushing Bank?

A.   Yes.

Q.   Approximately in what year was that?

A.   I started in 2014.

Q.   And you've been there ever since?

A.   Yes.

Q.   And does Flushing Bank have a central headquarters?

A.   It does.

Q.   Where is that located?

A.   330 RXR Plaza in Uniondale.

Q.   Do you work there now?

A.   Yes.

Q.   Is that where you've worked ever since you began working for Flushing Bank?

A.   When I first started working for Flushing Bank we had an office in Bayside, Queens that I worked out of.

Q.   When did you start working at the RXR Plaza?

16

M. BUCCINO

A.    I moved there, I want to say, it was 2016 is when we opened up.

MR. RUDERMAN:  I'm sorry, I'm getting a call from something which people keep calling me.  Can you please hold for a second, I apologize?

MR. KATAEV:  Off the record.

(Discussion held off the record)

Q.    Mr. Buccino, since you've been working at Flushing Bank, have you been reporting to the same -- let me withdraw that.  Who are you reporting to now in your position?

A.    My direct report is Lisa Dantone.

Q.    What is her position?

A.    She is senior vice president.  Um, to be honest I don't remember the exact title for her after that.

Q.    Is she an attorney?

A.    No.

Q.    Are there other in-house counsel that you're aware of at Flushing Bank?

A.    We have a general counsel, and our compliance officer is an attorney as well.

Q.    What is your general counsel's name?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

17

M. BUCCINO

A.   Douglass McClintock.

MR. KATAEV:  Spell it for the record, please.

A.   Douglass with two S's.  McClintock is M-C-C-L-I-N-T-O-C-K.

Q.   And your compliance officer you said is also an attorney?

A.   Yes.

Q.   Did you say that was a woman?

A.   Yes.

Q.   What is her name?

A.   Lisa Biondo, B-I-O-N-D-O.

Q.   Do you work in a department in which they have oversight?

A.   No.

Q.   You don't report to general counsel or to compliance, is that correct?

A.   Not directly, no.

Q.   Do you know if Ms. Dantone reports to them?

A.   No.

Q.   Who reports, in your position does anybody report to you?

A.   Yes, I have two associates that

18

M. BUCCINO

report up to me.

Q.   Are they attorneys?

A.   They're not attorneys, no.

Q.   What are their names?

A.   Nadia Tavares, T-A-V-A-R-E-S, and Amelia Gonzalez.

Q.   What is it generally, what do they do?

A.   Well, going back to what I said, my tasks were to handle day-to-day matters, mostly with regards to restraining notices, levies and subpoenas, document subpoenas, document gathering.  They do reviews of account opening for legal accounts.  They do some transaction review for legal accounts and some other troubleshooting branch legal issues.

Q.   You said you testified at a deposition once before for Flushing Bank, is that correct?

A.   At least once, yes.

Q.   Do you know what a 30(b)(6) designation is?

A.   It doesn't sound familiar.

Q.   Are you familiar with the term as

19

M. BUCCINO

being the corporate or company representative for the deposition?

A.   Okay.

Q.   Do you understand that?

A.   Yes.

Q.   And you understand that you're here today as Flushing Bank's designated representative, correct?

A.   Yes.

Q.   And in the other deposition or depositions that you may have done for Flushing Bank, do you know if you were also designated as the bank's representative?

A.   Yes.

Q.   And do you know what the process was to determine that you should be the bank's representative?

A.   For this case or for those cases?

Q.   Well, do you know if there's a process generally and then we can get down to more specifics, if necessary?

A.   Yes.  I mean the general process would be a discussion of the executive team that's handling the litigation to determine who

20

M. BUCCINO

the best person is, given what the nature of the questions were proposed to be.

Q.   Who would be part of that executive team?

A.   In this case Mr. McClintock, myself, Barbara Beckman, who is the director of operations, and there is Maria Grasso who is the COO.

Q.   So you were in a meeting with those people to decide who would be best to represent Flushing Bank at this deposition?

A.   It was more of an e-mail exchange. But, essentially, yeah, that's what happened.

Q.   And do you recall what the reason was as to why you would be the best person to be the bank representative at this deposition?

A.   It was thought that I had the most knowledge of a wider range of issues revolving around this case, from the bank's perspective than any other person might have.

Q.   Was it discussed the fact that you had no personal involvement in connection with the loan, was that issue addressed in those communications?

21

M. BUCCINO

MS. RONNEBURGER:  Objection to form.

You can answer.

A.   Not particularly, no.

Q.   Now, the loan -- let me back up a little bit.  I represent what we would refer to as the IAG plaintiffs.  There are a number of plaintiffs in this case.  Three of them are related to the Superb Motors dealership that is Mr. Anthony Urrutia, Superb and Team.  I represent all the other plaintiffs, all related to Island Auto Group and our interest has to do with the Northshore Motor Leasing Company, and the 189 Sunrise Highway Motor.

Are you familiar with these entities as I've described them?

A.   I know the names, yes.

Q.   So my clients were not involved in the matters relating to the Superb issues and were not aware of those at the time.  Do you understand that?

A.   Yes.

Q.   So I will try to direct you more specifically, as I ask the questions, about which entities' transactions are at issue so you don't

22

M. BUCCINO

get confused with regard to which transactions because there's more than one.  You do understand that, right?

A.    Yes.

Q.    So you're aware that the Island Auto claims arise -- Island Auto's interests and concerns arise from the loan that Flushing Bank made to Northshore Motor.  Are you aware of that?

A.    I'm aware that there was a loan that's part of this lawsuit, yes.

Q.    And that is, I believe, from the documents I've seen it's referred to as a term loan, is that your understanding as well?

A.    That sounds like it's probably true, yes.

Q.    And it was a term loan of $500,000 to a business.  Is there a department in Flushing Bank that handles business term loans?

A.    Yes.

Q.    What is that department called?

A.    Our business banking department.

Q.    Does your business banking department have a threshold, a limitation as to they cover loans between X dollars and Y dollars or whatever

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

23

M. BUCCINO

comes into the bank?

A.   They might, but honestly I don't know those numbers offhand.

Q.   Do you know if there are -- the people who work in the business banking department, do they as far as you know do they only work within the business banking department or do they cross over into other banking departments?

A.   No, they're in the business banking department.

Q.   Is there somebody who is heads up or is in control or in charge of the business banking department?

A.   There is, yes.

Q.   What is that person's name?

A.   The ultimate head of the business banking department is Theresa Kelly.

Q.   Theresa Kelly?

A.   Yes.

Q.   Do you know if Ms. Kelly was in that position back in 2023 or 2022/2023?

A.   Yes.

Q.   And do you know what her title is?

24

M. BUCCINO

A.   She is an SVP.  And I want to say the title after that would be business banking manager, director of something along those lines.

Q.   Do you know who she reports to?

A.   She reports to Mike Bingold who is the head of retail banking.

Q.   Head of the, I'm sorry, retail banking?

A.   Yes.

Q.   Does retail banking cover all retail banking whether it's for individuals or also, and businesses or both?

A.   It's everything, it covers branches, back office, all.

Q.   And do you know in 2022/2023 how many Flushing Bank employees worked in the business banking department?

A.   I wouldn't know that off the top of my head, no.

Q.   Do you know what the various positions were in the business banking department?

MS. RONNEBURGER:  Objection to form.

A.   I mean there are a variety of

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

25

M. BUCCINO

positions, the most common one would be business banker.

Q.   Do you know what the business banker does in the business banking department?

A.   They're client representatives who try to solicit business from various businesses and get loans and customer account holders.

Q.   Can you describe to me the process from somebody coming in seeking a business loan in the business banking department where would that process start, where would it go to, who would review it and up the chain until the loan is processed and approved?

A.   I wouldn't be able to provide much detail on that process.

Q.   Do you know who would be able to provide that type of information?

A.   I mean there are a number of people at the bank who might be able to.

Q.   Are you able to provide me the names of any of those?

A.   Um.

Q.   It's not a test I'm just asking you if you know.

26

M. BUCCINO

A.   The easiest way would be to circle back after and provide names after we've taken it back internally.

MR. RUDERMAN:  So I'm going to ask for it to be, to provide a blank in the transcript and you will provide the names of the people, person or people who are better able to answer that question.

(Insert)_____

_____

Q.   Is the business banking department -- excuse me.  Is the business banking department physically located within that same building where you work?

A.   Some of the members of that department are there, but others are in different offices.

Q.   So if somebody wanted to obtain a business banking loan from Flushing Bank they could go -- could they go into their local branch to start the process?

A.   They could, or I assume that more often than not it would happen with the bankers going out to the field and soliciting business

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

27

M. BUCCINO

and then doing more of the work over the phone or via e-mail than in person.

Q.   Do you know how the business bankers go out into the field how they go and drum up business, so to speak?

A.   I mean I could opine but I wouldn't have, you know, specific details of that.

Q.   Have you ever accompanied a business banker when they do that?

A.   No.

Q.   Have you ever seen any documents explaining what the process and procedures are for a business banker to go out and obtain business?

A.   No.

Q.   Do you know if there are any protocols as to what a business banker may or may not do in connection with trying to get business?

A.   Yes.

Q.   Where are those, have you seen those protocols?

A.   I don't know them offhand, but I'm sure we have procedures and protocols in place at the bank.

28

M. BUCCINO

Q.   Those would be in writing, correct?

A.   Yes.

Q.   Do you know or is there some guidebook, some handbook that the bank has that you're aware of in which those protocols might be located?

A.   I don't know.

MR. RUDERMAN:  I'm going to call for the production of whatever written protocols the bank has in connection with the business bankers rules and regulations concerning their processes.

MS. RONNEBURGER:  Okay.  I would ask that you put that demand in writing after the deposition.

MR. RUDERMAN:  That's a standing, anything I ask for I will follow it up in writing afterwards, certainly.

MS. RONNEBURGER:  Thank you.

MR. KATAEV:  To the extent that Flushing Bank previously produced any such documents, we would just ask that Flushing Bank respond with the Bates stamp.

MS. RONNEBURGER:  Sure.  Understood.

29

M. BUCCINO

Q.   Do you know if the business bankers engaged the use of any outside agents or brokers to assist them in obtaining customers?

A.   Sometimes, yes.

Q.   And do you know whether there is a process to be approved as one of those outside brokers or agents?

A.   I don't know.

Q.   Do you know if there is any compensation that is paid by the bank to any of these business, brokers or agents in connection with the services they provide?

A.   I believe there is but I don't know, it might be on a case-by-case basis.

Q.   And do you believe that would be in the protocols that we previously discussed, or some other location where that would be set forth?

A.   It might be, I'm not sure.

Q.   Are you even sure that there's such an allowance for that in writing or not, or is it an unwritten process?

A.   I'm not clear on what you're asking.

Q.   Do you know whether, in fact, there

30

M. BUCCINO

is a writing which says whether they're allowed to -- whether there is a fee that's paid to these brokers or agents or whether that's just an unspoken rule that they get some sort of commission or payment?

MS. RONNEBURGER:  Objection to form.

You can answer, if you can.

Q.   You can answer if you know.

A.   I would expect that there's probably a written procedure with the pricing payment.

Q.   Sitting here today, you don't know if there's any vetting process to determine which brokers or agents the bank will or will not work with?

A.   Again, I assume there is, I don't know how much of it is formally written down in any procedures.

Q.   Do you know if there's a list of some kind of these brokers or agents that the bank is permitted to do business with?

A.   Again, I don't know for sure.

Q.   Do you know if any of these brokers or agents are more akin to having personal relationships with some of these business bankers

31

M. BUCCINO

at Flushing Bank in connection with their bringing in business?

A.   Again, I don't know.

Q.   Now, are you familiar with the process involved in the business banking department as to a review for -- to review and process an application by a customer who comes in for a loan?

A.   In a general manner, but I don't have specific information on how the process is done, though.

Q.   So if a customer were to come in, from whatever source, and meets with a business banker, what's the first thing that's done?

A.   I would assume they discuss terms of what the customer is looking for in terms of a loan and what the banker might have available.

Q.   What's the basis for your assumption that that's what would be done?

A.   Common sense.

Q.   Other than your common sense, you have no other basis to actually know what would be done at that first meeting?

A.   No.

32

M. BUCCINO

Q. Is there a form or a checklist of some kind that a customer needs to fill out or go through when they first meet with the business banker?

A. I don't know.

Q. Do you know who would know the answer to that question?

A. Probably the person we're going to name later that is more in tune to the business banking procedures.

Q. Once the customer comes in and meets with that business banker for the first time, what's the next step in the process?

A. I don't know.

Q. So at some point is it your understanding that a customer would have to fill out a loan application?

A. Yes.

Q. You know that for sure, that's not a presumption, but you know that?

A. Yes, we definitely have a formal written application from everyone.

Q. When an application is prepared, does the business banker assist the customer in

33

M. BUCCINO

preparing that application?

          A.   I mean they give them guidance as to what the information is that's requested and required, yes.

          Q.   So if a customer is going through it and they don't really understand what you're asking for, the business banker might give them a better understanding as to what they're looking for?

          A.   Yes.

          Q.   Is it your understanding that the business banker can advise the customer as to whether the paperwork provided is appropriate or not appropriate?

          A.   Well, they would either approve or request additional documentation based on the circumstances.

          Q.   Is it your understanding as to whether a business banker would be able to say the type of information you have it doesn't fit within our framework, we need you to revise the paperwork?

          A.   I don't know if --

          Q.   Any question if you don't understand

34

M. BUCCINO

my question and I will try to rephrase it or if there's something about my question?

MS. RONNEBURGER:  Can you kindly rephrase it.  Thank you.

Q.   I'll try and rephrase it this way. If a customer comes in with an application, and provides certain documentation about the way that their company is structured.  That's the framework, okay.  Do you understand that?

A.   Yes.

Q.   Would it be a business banker's position to say, the way your company is structured doesn't work with our plan but you need to restructure the way -- you need to reform the way your company is structured and we will give you a loan under those conditions.  Is that something you would be aware of as to whether a business banker would get involved in?

A.   I don't know if they would do that sort of recommendation.

Q.   Do you know if that would be permitted by Flushing Bank for a business banker to make that type of a recommendation?

A.   I don't know.

35

M. BUCCINO

Q.   Now, when a loan application is submitted until all of the information on the application is completed, do you know if it would go to the next step in processing?

A.   I would think they need to finalize the application before it gets moved on, but I'm not a hundred percent sure.

Q.   Do you know what type of documentation needs to be provided to the business banking department in order to complete the application?

A.   I know some of the documents, but I might not be aware of all.

Q.   What documents are you aware of?

A.   Well, for an LLC it would require an operating agreement.  It would require --

Q.   If you can just slow down a little bit just because the reporter is trying to take it down.

The LLC required an operating agreement, go ahead.

A.   Yeah.  If there is, I guess, that's not an issue in this case but if there was a property involved, we would require a retro of

36

M. BUCCINO

deeds.  Things of that nature.  For a non-property business loan there are probably records from the business itself in terms of expenses, assets, and things of that nature that they would require.

Q.   You're speaking, generally speaking, you don't have any specific documents that you're considering that you're thinking of?

A.   No.

Q.   Do you know if they would be required to provide a profit and loss statement?

A.   Probably, yes.

Q.   Do you know if that profit and loss statement must be certified or pass muster with a CPA?

A.   I don't know.

Q.   So sitting here today, you don't know whether a customer who writes a P&L on the back of a napkin is that just as good as far as the bank is concerned as one prepared by a CPA who reviewed all the books and records?

MS. RONNEBURGER:  Objection to form.

A.   I would doubt it.

Q.   That's just again common sense,

37

M. BUCCINO

right, you don't have any specific knowledge?

A.   Yes.

Q.   So do you know what the acceptance of a P&L is in the business banking department, what would be an acceptable P&L and what would not be acceptable in connection with the source of that information?

A.   I don't know the specifics, no.

Q.   And what about tax returns, do you know if tax returns are required?

A.   I believe so, yes.

Q.   And again what's the basis for your belief?

A.   Seeing them as part of the file more often than not.

Q.   So you don't know if it's an actual requirement, but you have seen it often in connection with applications?

A.   Correct.

Q.   And do you know if the tax returns that are provided are -- withdrawn.

Do you know if the bank requests from the government a copy to make sure that the tax return provided by the customer has actually been

38

M. BUCCINO

filed?

A.    I don't know.

Q.    And are you familiar with what type
of tax returns the LLCs typically file, what
multi-member LLCs typically file?

A.    Not specifically.

Q.    Are you familiar with the 1065
partnership returns?

A.    Just that they exist.

Q.    Are you familiar with what a K-1 is?

A.    No.

Q.    With regard to, do you know what
efforts, if any, the business bank department
makes to investigate any of the financial
reporting that's provided to Flushing Bank in
connection with a loan application?

MS. RONNEBURGER:  Objection to form.

A.    No, I don't.

Q.    Do you know if there is any
investigation to verify the financial reporting
that's provided by a customer?

A.    I know we do investigations.  I don't
know to your specific question if it's regarding
the -- I don't know how you worded it, but I

39

M. BUCCINO

don't know if the investigations are specifically tailored toward that area.

Q.    So let me give you a specific example and tell me if you're able to answer it this way. If a customer comes in and provides a financial statement that says that he owns a piece of property and the property is worth $10 million and this is not a real estate loan, it is a business loan.  Okay.  And you're just trying to see what other assets they have.  Does the bank go out and inspect that property, ask for a deed for the property, ask for a copy of the mortgage on the property, to determine whether or not the financial statement presented accurately reflects what the statement is supposed to claim?

A.    I don't know.

Q.    Do you know if in connection with a loan to the business banking department, generally, what due diligence is done in connection with the loan application?

A.    I wouldn't be the best person to answer that question.

Q.    Would that be the same person we discussed previously?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

40

M. BUCCINO

A.    Yes.

Q.    Do you know if there is any litigation searches that are done in connection with the business?

A.    I believe there are.

Q.    And do you know how they go about doing a litigation search?

A.    I don't know the exact procedures that are required, no.

Q.    Do you know if that's done in-house or is it sent out to an outside company?

A.    I think it's done in-house.

Q.    Would that be something in the business bank department, as far as you know?

A.    We have a credit center within the business banking department that does review fabrications of applicants.

Q.    Do you know how many employees there currently are in the credit center?

A.    All told probably 20 to 30, but I might be overestimating that slightly.

Q.    I won't ask you for all their names then.  What information do the employees in the credit center do in connection with each loan

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

41

                        M. BUCCINO

application?

        A.    I mean generally they do background
searches and other searches to try and find out
about the creditworthiness of a particular
applicant.

        Q.    Do you know in particular what type
of searches they do?

        A.    I wouldn't have specifics, no.

        Q.    Do you know if they do a judgment
search?

        A.    Again, I believe so, but I'm not a
hundred percent sure.

        Q.    Do you know if they do a credit pull?

        A.    Again, I believe so but I couldn't
say specifically.

        Q.    Do you know whether business loans
require a personal guarantee by all applicants?

        A.    I don't know.

        Q.    Do you know if there's a decision
process involved into whether a guarantee is
required?

        A.    I don't know.

        Q.    When a loan application goes through
the process, is there a person on the committee

42

M. BUCCINO

that ultimately decides yes or no we will give this loan?

A.    I don't know if it's an individual or a committee, but there is eventually a decision made, yes.

Q.    So you don't know who in that department or whether multiple people in that department ultimately make that decision?

A.    Yeah.

Q.    Is there documentation which would indicate who or whether multiple people approve the loan?

A.    I don't know.

Q.    If you were to have access to the banking records of a loan, would you be able -- do you know if you'd be able to look into the system and see who approved the loan?

A.    I believe there would be documentation, but again I'm not certain.

Q.    Do you know if the approval of a loan is put in writing?

A.    That's what I'm saying, yeah, I believe so.

Q.    Do you know who is responsible in the

43

M. BUCCINO

business banking department to input that type of information?

A.    Input it where exactly?

Q.    Input into your banking system that the loan has been approved?

A.    I don't know the specifics.

Q.    Do you know if the business banker is involved in the process of deciding whether or not a loan should be approved?

A.    No, they don't have that decision-making process.

Q.    So they're not even involved in the process?

A.    They're involved in the process of submitting an application, but I don't think they're involved in the ultimate decision of whether to approve a loan.

Q.    Are you familiar with the term "underwriter"?

A.    Yes.

Q.    Do you have an underwriting department in the business banking department?

A.    I don't know if we specifically call it that, but they do the function, yes.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

44

M. BUCCINO

Q.    Do you know what that department, if it has a name, do you know what it's called?

A.    It's all encompassed within the credit center from our perspective.

Q.    Do you know how many employees are engaged in that function?

A.    That specific function I couldn't differentiate the larger group.

Q.    Are you familiar with how -- so going back to the loan for Northshore, are you familiar with when -- are you familiar with the name Anthony Deo?

A.    Yes.

Q.    How are you familiar with his name?

A.    From this litigation, primarily.

Q.    Other than this litigation, you don't have any recollection of his name or knowledge of it?

A.    Well, the entities involved in this litigation came up in a subpoena that we received prior to the actual litigation.  So all of this was encompassed within that.

Q.    Would it be fair to say that the first time you became aware of the names that are

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

45

M. BUCCINO

part of this litigation was in connection with a subpoena that was served?

A.   Yes.

Q.   Do you know approximately when that subpoena was served?

A.   I'm sure it was submitted with the records that we provided, I don't remember the dates offhand.

Q.   If I told you that this litigation that we're involved in right now was filed in September of 2023, would that give you any frame of reference, perhaps, to get a better timing?

A.   Yeah, I want to say that the subpoena that I'm referencing was probably served a few months before that.

Q.   And do you recall who served that subpoena?

A.   Not offhand, no.

Q.   Is it your understanding that that subpoena was served in connection with the federal court litigation that we're currently involved in or, perhaps, some other litigation?

A.   I don't believe it was federal but I could be mistaken.  I thought it was another

46

M. BUCCINO

litigation.

Q.   Did you produce a copy of that subpoena in connection with your document production, if you know?

A.   I don't know offhand.

MS. RONNEBURGER:  I don't know that it was specifically requested as part of the demands.  I can check.

MR. RUDERMAN:  It's not that important.  I'm just looking.  You don't have to pull it up.  I just want to try and -- maybe when we take a break I have a copy that we can mark just to confirm.

Q.   So the subpoena that was served that you're referring to, that came to your department, correct?

A.   Yes.

Q.   And do you recall engaging to yourself or someone in your department to put documents together to comply with that subpoena?

A.   Yes.

Q.   Do you recall providing documents in connection with that subpoena?

A.   Yes.

47

M. BUCCINO

Q.    Do you recall being in communication from the counsel after producing documents that there were some additional documents that needed to be provided?

A.    It sounds vaguely familiar, yes.

Q.    And in connection with that -- when you reviewed the documents in connection with the subpoena, do you just grab them and produce whatever it is you have or are they reviewed?

A.    They're reviewed to some degree depending on the circumstances and the documents themselves.

Q.    Do you recall whether you reviewed the documents that were produced for any particular reason?

A.    I think we reviewed the documents that were produced in reference to the ownership dispute that was at issue.

Q.    So in other words you were kind of looking to understand the underlying issue that was being presented in that?

A.    Yes.

Q.    Did you discuss what you had reviewed and what you understood after reviewing those

48

M. BUCCINO

documents with anybody at the bank?

MS. RONNEBURGER:  I would just object to the extent that you're asking Mr. Buccino about his discussions with general counsel at Flushing Bank and just not to disclose any of those communications which would be privileged.

Q.  So with that caveat in place, Mr. Buccino, are you able to answer the question?

A.  There was discussion with the business banking department about the documents we had, and whether or not they supported Mr. Deo's ownership of the entities and the appropriateness to open the accounts.

Q.  Did you have these conversations yourself?

A.  We had them via e-mail.  It was myself and one or two other people.

Q.  Who were the other people that you had communications with?

A.  Robert Puccio and I believe -- I'm not specifically sure who the other person was, so I don't want to name a name and have it be the wrong one.

49

M. BUCCINO

Q.   Who was Mr. Puccio?

A.   He was the business banker who handled the deposit account openings for these entities.

Q.   Prior to your communication with him in connection with what you just discussed, did you know who Mr. Puccio was?

A.   Just that he was a business banker at the bank, I didn't have any real interaction with him.

Q.   You did know that he worked at the bank?

A.   Yes.

Q.   So prior to that incident, you don't recall any particular interactions you had with him concerning any banking?

A.   I probably had one-off e-mails with him regarding other customers or issues but nothing sustained or regular.

Q.   In connection with the communication with Mr. Puccio, what question or questions did you have for him and the other person?

A.   We were just trying to gather as much documentation as we could to support the account

50

M. BUCCINO

openings and to confirm that there was nothing to be concerned about with the litigation.

Q.   And did you receive communications back from Mr. Puccio and this other person?

A.   They had sufficient documentation from what we could tell.  They had additional documentation they received from the attorney and CPAs that supported the ownership as we understood it to be.  So we proceeded with providing the documents that were requested.

Q.   Do you know if at the time that the loan was still in process before it had been approved and funded, whether the bank was aware that there were any ownership issues that had been raised?

A.   I don't know that.

Q.   Did you inquire from Mr. Puccio or this other person as to whether or not they were aware of these issues at the time before the loan had been approved and funded?

A.   No.

Q.   To your knowledge in your department would it make a difference as to whether or not there were ownership issues that had been raised

51

M. BUCCINO

to Flushing Bank prior to the filing of the approval and filing of the loan?

A.   I don't have any direct control over the funding and approval of the loan, so I wouldn't have been involved in that that September.

Q.   Maybe my question wasn't clear, did you know if the bank as a bank has any protocols in place or which would address as to the processing and approving and funding of a loan when there were ownership disputes raised prior to the approval and funding of the loan?

A.   I'm sure that would have been a fact that they would have considered before they ever went forward with the loan.

Q.   Ultimately, I believe you said that the approval process, though, would not be in the hands of Mr. Puccio as a business banker, correct?

A.   No.

Q.   And the other person which you cannot remember his or her name was that person also not in a position to approve the loan?

A.   It would have been Mr. Puccio's

52

M. BUCCINO

superior, so he may have been part of, you know, the potential approval process, I don't know for sure.

Q.   So did you communicate with whomever it would be that would ultimately approve, whether it was a person or committee that ultimately approved the loan, whether they were aware of this ownership dispute at the time that they approved the loan and funded it?

A.   No.

Q.   Was it a concern of yours that there may have been a dispute at the time that the bank was aware of when the loan was approved?

A.   No.

Q.   Do you know how Mr. Puccio first became aware of Mr. Deo and/or Northshore or 189 Sunrise?

A.   I don't know the exact nature of their initial interaction.

Q.   Would it be fair to say that you don't know how Mr. Deo ended up applying for a loan through Mr. Puccio?

A.   Correct.

Q.   Have you ever heard the name Michael

53

M. BUCCINO

Laurie before?

A.   Yes.

Q.   In what connection did you hear that name?

A.   In connection to this litigation mostly.

Q.   Other than in connection with this litigation, have you ever heard the name Michael Laurie?

A.   I don't recall, no.

Q.   Is your knowledge about Mr. Laurie solely confined to what you've seen or heard in connection with this litigation?

A.   Yes.

Q.   What about the company called DLA Capital?

A.   Off the top of my head that doesn't sound familiar.

Q.   Do you know when Mr. Deo first came in to inquire about a loan for Northshore and/or 189 Sunrise at Flushing Bank?

A.   No.

Q.   And do you know when he submitted an application for a loan?

54

M. BUCCINO

A.    No.

Q.    Do you know how much he was seeking in his application?

A.    No.

Q.    Do you know whether he was approved for a loan?

A.    No.

Q.    Do you know -- you are aware he was approved for a loan, correct, because otherwise we wouldn't be here, correct?

A.    Yes.

Q.    Do you know when he was approved for the loan?

A.    I don't remember the dates.

Q.    Is there, were you aware of -- withdrawn.

Do you know how much he was approved for?

A.    I believe it was $500,000, but I may be mistaken.

Q.    In connection with the approval of the loan, do you know if that loan was funded?

A.    I'm fairly certain it was, yes.

Q.    Do you know what the terms of the

55

M. BUCCINO

loan were?

A. Not offhand, no.

Q. If I asked you to find that information about the terms of the loan, what would you do to do that?

A. I'm sure we provided the loan note or other documentation that would have that information or I can find it.

Q. You would look back in the files and see what's there?

A. Yes.

Q. Do you know how much the monthly payment was required under the loan?

A. I don't know that.

Q. Do you know if the bank has a ratio of income-to-debt in connection with these types of loans?

A. I believe we do, yes.

Q. Do you know what that ratio is?

A. No.

Q. And do you know whether the loan at issue fell within the approved parameters of the loan-to-debt ratio?

A. I don't know.

56

M. BUCCINO

Q.   Do you know if, in fact, in this particular loan transaction there were any lien searches that were done?

A.   I don't know.

Q.   Do you know if in this particular transaction there were any judgment searches that were done?

A.   I don't know.

Q.   Do you know if in this particular transaction there was a guarantee of the loan by anyone?

A.   I don't know.

Q.   Do you know if in this particular transaction there were any litigation searches that were done?

A.   I believe there was, yes.

Q.   And what is the basis for your belief?

A.   I feel as though in reviewing certain documents for the deposition I recall an e-mail exchange between members of the credit center where a litigation search was discussed and the finance was discussed.

Q.   So is it your understanding that

57

M. BUCCINO

there was a litigation search which revealed some sort of a lawsuit, correct?

A.   Yes.

Q.   And is it your understanding that Flushing Bank became aware of that lawsuit prior to its funding or approval of funding of the loan?

A.   Yes.

Q.   And as a result of that information, do you know what Flushing Bank did to vet out that litigation?

A.   I don't know the specifics, no.

Q.   Is that something which being that there's a litigation already in place whether the banking -- the business banking department is required to send it up to general counsel's office or some attorney to review?

A.   That wouldn't be the procedure, no.

Q.   So there would be a procedure within the business banking department to just determine whether the litigation that involves an applicant does or does not affect the business loan application?

MS. RONNEBURGER:  Objection to form.

58

M. BUCCINO

A. Maybe there is a procedure and policy for that.

Q. But there's no attorney in the business banking department, correct?

A. Correct.

Q. So you say there's some sort of procedure in the business banking department that allows non-attorneys to determine the applicability of a lawsuit involving an applicant in connection with its application?

MS. RONNEBURGER: Objection to form.

A. The business banking department would review the totality of the application and all of its investigations in determining whether or not it would move forward.

Q. And it's fair to say that you certainly weren't informed about that litigation at the time, correct?

A. Like I said, I wasn't involved in the loan process so even if I knew about the litigation, the two would have been disconnect.

Q. But you don't have any recollection of being informed about the lawsuit at that time?

A. Not by them, I was informed by the

59

M. BUCCINO

subpoena to receive documents.

Q.   That was shortly before the lawsuit in federal court, is that your recollection?

A.   Again, I don't know if there were multiple lawsuits or which ones you're talking about.

Q.   So when you received the subpoena about the loan application, it would have had to have been done after the loan had already been approved and funded, is that a fair statement?

A.   I don't recall the subpoena being specifically about the loan application.  So I don't know what the timing would have been with regards to the loan application versus the subpoena.

Q.   Is it possible that you became aware of the litigation concerning the ownership issue prior to Flushing Bank finalizing and approving the Flushing Bank loan to Northshore?

A.   I wouldn't know.

Q.   After you received the subpoena, you said you reached out to Mr. Puccio and somebody else in that department, correct?

A.   Yes.

60

M. BUCCINO

Q.    So when you communicated with them, was it your understanding that the loan had already been applied for, approved and funded?

A.    I don't recall knowing anything or thinking anything about the loan to be quite honest.  I was more focused in my role with the deposit accounts that were at issue.

Q.    When you say the deposit accounts, do you know which entity was at issue with regard to the deposit accounts?

A.    The three named entities here, I believe, Superb, Northshore and Sunrise Highway.

Q.    So is it your recollection that the subpoenas that you're referring to concerned all three entities?

A.    I believe so.  But I guess I may be mistaken, and I don't even know at this point.

Q.    In preparation for your deposition today, did you review any of those subpoenas?

A.    Not recently, to be quite honest.

Q.    Were you aware that in connection with the lawsuit filed -- let me try this again. Withdraw that.

Were you aware that there was a

61

M. BUCCINO

lawsuit filed before the loan was funded in which there were questions raised as to Mr. Deo's ownership interest in Northshore and 189 Sunrise?

MS. RONNEBURGER:  Objection to form.

Are you asking him at what point he became aware of the other lawsuit?  I think you need to clarify that.

Q.    Mr. Buccino, do you understand the question or not?  If not, I'll try and rephrase it?

A.    No, please rephrase.

Q.    Were you aware that prior to, were you aware at the time prior to the funding of the loan and approval of the loan that a lawsuit had been filed concerning the ownership of Northshore and Sunrise by Mr. Deo?

A.    Again, I wasn't involved in the loan process, so I wouldn't know when those two things were going on.

Q.    But at some point you did become aware of it.  At some point you became aware that there was a lawsuit concerning that issue?

A.    Yes.

Q.    Did you ever become aware that there

62

M. BUCCINO

was a restraining order issued by the Supreme Court of the State of New York restraining Mr. Deo from obtaining any loans or putting any liens on Northshore or Sunrise from any funding from any banks?

A.    That sounds familiar.

Q.    When did you first become aware of that?

A.    I would not have heard about that until after this lawsuit had been filed.

Q.    Do you know whether anybody at Flushing Bank was aware of the restraining order prior to the date of the approval and funding of the loan?

A.    That I don't know.

Q.    And do you know who would know that?

A.    You'd have to ask everybody else at Flushing Bank.

Q.    There's nobody specific you could point to?

A.    We could produce, again, the person that I mentioned earlier and he will have more information from business banking.  That's the best I can do.

63

M. BUCCINO

Q.   And did you ever see that restraining order that I'm referring to?

A.   I don't recall if I've ever seen it, no.

Q.   Do you recall how you became aware that there was this restraining order?

A.   I believe it came off in discussion of this case and the extenuating issues around the case.

Q.   Do you believe it came up as a result of communications -- withdrawn.

Do you know if it came about as a result of reading various filings that were in courts or some other source?

A.   I couldn't tell you specifically where I recall seeing it.

Q.   What recollection do you have in connection with that?

A.   Pretty much, just what you said, that there's a restraining notice that said he can't obtain loans anymore but it wasn't relevant for our purposes because at that point we already ceased doing business with him based on the filing here.

64

M. BUCCINO

Q.   Did you ever do any checking with any employees to see whether or not, in fact, the allegations that Flushing Bank provided a loan despite knowing that there was a restraining order had happened?

A.   I never received an allegation of that nature, so no.

Q.   So you weren't aware that there was an allegation that Flushing Bank funded the loan despite it knowing that there was a restraining order that had been issued?

MS. RONNEBURGER:  Objection to form.

A.   I don't recall seeing that specific allegation anywhere, no.

Q.   Is this the first time you can recall hearing about that?

A.   I guess so, yeah.

Q.   You mentioned that you communicated with Mr. Puccio and this other person about whether the bank had satisfied itself with regard to the ownership issue, correct?

A.   Yes.

Q.   You mentioned an attorney and an accountant providing information?

65

M. BUCCINO

A.    Yes.

Q.    I don't recall whether you mentioned their names or not.  Do you recall Mr. Harry Thomasson?

A.    Yes.

Q.    Do you recall that independently or is that after reviewing documents in preparation for today's deposition?

A.    I recall it from the document at the time when we had the conversation.  And I guess probably since then seeing the name.

Q.    So and do you know what it is, did you read the letter from Mr. Thomasson?

A.    I did see a letter from Mr. Thomasson at the time, yes.

Q.    Do you recall what that letter essentially said?

A.    It generally said that the dispute was a normal business dispute, but they expected a resolution shortly and that Mr. Deo's ownership presentation was still valid and legitimate.

Q.    And that was based upon an attorney advising the bank that despite the allegations in the complaint that the bank should not really

66

M. BUCCINO

take it seriously?

MS. RONNEBURGER:  Objection to form.

Q.   You can answer the question.

MR. THOMASSON:  I object to form as well.

Q.   You can still answer the question?

A.   Essentially, yes.

Q.   Do you know the accountant's name? Is it Tom Jones?  Does that sound familiar to you?

A.   Sorry, what name?

Q.   Tom Jones.

A.   That doesn't sound familiar, but that doesn't mean it's not the right one.  I don't know.

Q.   Do you remember what, if anything, the accountant said that gave the bank comfort?

A.   I feel like it was something along the lines of them having filed tax documentation on behalf of Mr. Deo or the business reflecting the ownership interest as presented to us, because they have assurances or because a sale had gone through that made that the new ownership.

67

M. BUCCINO

Q.    Now, a business loan, such as the one at issue is made, are there conditions with regard to what the monies can be used for?

A.    I don't know.

Q.    Do you know if the application requires the borrower to inform the banks as to what it intends to do with the funds?

A.    I believe so, yes.

Q.    Do you know in this particular instance what, if anything, the borrower claims that it intended to do with the funds?

A.    I don't know.

Q.    Does the bank follow the "know your customer" rules?

A.    Yes.

Q.    And does the bank keep track of transactions that go in and out of banks to see whether or not they might violate those rules?

A.    I'm not sure what you're asking.

Q.    Well, there are certain transactions that happen in particular accounts which might draw into question if a customer is appropriately using banking functions, fair enough?

MS. RONNEBURGER:  Objection to form.

68

M. BUCCINO

A.    It's still not clear to me what you're trying to get at.

Q.    I'm trying to figure out as part of knowing your customer, I want to understand whether or not you want to avoid the customer using the bank for some illegal transactions, correct?

A.    Yes.

Q.    As part of that, does the bank have some process in place to review or to oversee transactions in and out of an account to see whether or not there may be some illegal activity going on?

A.    Okay, yes.

Q.    And would those apply to the bank accounts that Northshore and Sunrise opened up in connection with Mr. Deo's application?

A.    Yes, they would have been treated the same as our other accounts in terms of oversight.

Q.    So if the bank saw that a $500,000 loan had been made for the business of Northshore, and within the span of two months all that money had been taken out to some unknown entity, which is not related to the bank, would

69

M. BUCCINO

that have drawn a red flag to the bank's "know your customer" rules or any other banking regulation?

MS. RONNEBURGER:  Objection to form.

A.    I don't know.

Q.    Who would know the answer to that?

A.    Our BSA team, presumably.

Q.    The BSA?

A.    Yes, Bank Secrecy Act.

Q.    Is that a different department than we've been discussing so far?

A.    Yes.

Q.    They're also located in your main office?

A.    Yes.

Q.    How many employees are on the BSA team?

A.    Probably around 15, I guess.

Q.    Would they maintain records as to how they would keep track of transactions in different banking --

A.    They would have to see if there are protocols in place for what they monitor and what gets flagged.

70

M. BUCCINO

Q.   Do you know if they have records in connection with the transactions in and out of the Northshore, 189 Sunrise and while I'm at it the Superb accounts as well?

A.   I don't know if any of those transactions would have been flagged for their purposes.

Q.   Do you know how they go about flagging transactions?

A.   Again, they have protocols and procedures in place.  And there were certain limits and certain kinds of transactions that would get raised, but I don't have those in mind anywhere.

MR. RUDERMAN:  We've been going for about an hour-and-a-half now.  I think it's a good time to take a break, and also I want to see if we can find the subpoenas somewhere.

(Discussion held off the record)

(Recess taken)

BY MR. RUDERMAN:

Q.   Mr. Buccino, do you know whether or not the loan to Northshore for $500,000 was ever

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

71

M. BUCCINO

repaid?

A.   I don't know.

MS. RONNEBURGER:  Before we go further, Mr. Buccino gave an answer before.  I think you were asking, correct me if I'm wrong if money being taken out that was given for the loan would have raised a red flag.

MR. RUDERMAN:  No.

MS. RONNEBURGER:  Did you ask that question?

MR. RUDERMAN:  I don't recall I said money going -- no.  If money going out to pay the loan that wasn't my question.

MS. RONNEBURGER:  You asked if taking the money out would raise a red flag.

MR. RUDERMAN:  No, I think it was much broader.  I think the question was more like if all the money in the loan was all taken out within a short period of time would that raise a red flag.  I believe that was the gist of that question.

MS. RONNEBURGER:  Mr. Buccino just

72

M. BUCCINO

wants to clarify his answer because it wasn't clear at the time what you were asking.  Do you just want to rephrase what you had said.

BY MR. RUDERMAN:

Q.   Mr. Buccino, did I ask a question before which upon reflection you think you may not have understood the question or your answer may not have been accurate?

A.   Yes, so the simple liquidation of the account after a loan would not raise any red flags.  It would have to be specific transactions going out that would raise a red flag for BSA to review.

Q.   When you say specific transactions, what type of specific transactions?

A.   Like I said, before they have protocols and procedures in place to flag certain transactions based on amounts or a destination.  So that would cause a review.  But just the simple fact that we gave the customer a loan, and then all of the funds shortly thereafter went out, wouldn't necessarily require a BSA or a regulatory review.

73

M. BUCCINO

Q. But you are not sure exactly what the criteria are as to whether they would or would not raise a red flag?

A. No.

Q. Okay. So if I told you that all of the monies were withdrawn in 20, 30, $50,000 increments over the course of two months, you don't know whether that should or should not raise a red flag?

A. No.

Q. So let's go back. I believe I had a question which was: Whether or not you're aware whether the $500,000 loan to Northshore had ever been repaid and I think you said you didn't know that?

A. Correct.

Q. And do you know who would know that?

A. On the business banking team I could get the information if I had access to our system and could check on the file, but I don't know offhand.

Q. If a loan is in default, what is the process to the process by the bank to then pursue collection on that loan, generally speaking?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

74

M. BUCCINO

A.   Eventually there would be a lawsuit for collection in this case without actual collateral to attach to.

Q.   But before --

A.   Or the procedure would be something that our collections team would have a better understanding of.

Q.   So using this loan as an example, if I told you, let's presume for the moment this loan was not repaid, what would be the next step as to somebody who becomes aware of it who do they contact, et cetera.  Who's responsible for it?

A.   The business banking team within itself would seek collections efforts.  And eventually, Theresa Kelly, who I mentioned earlier, would probably engage outside counsel to pursue a lawsuit and collection efforts if they were not able to internally collect on the unpaid debt.

Q.   So who would be the first person to know that this loan -- that the loan payments are not being made timely?

A.   I believe the first person to be

75

M. BUCCINO

notified when an account is late and defaulted would be Carmen Mouchacca.

Q.    In what department is Carmen in?

A.    She's in the business banking department.

Q.    What would be the next step when she becomes aware of that?

A.    Presumably to reach out to the customer or look over the file to see what leverage we have or what assets we might be able to utilize.  I don't know the specifics or the procedures in place.

Q.    Do you know if, in fact, anybody from Flushing Bank ever reached out to Northshore or Sunrise or anybody at all to find out about a non-payment on this particular loan?

A.    I don't know that.

Q.    If the business banking department is not able to obtain satisfactory results of their efforts to collect from the customer, where does it go from there?

A.    Like I said, eventually they would engage outside litigation counsel to pursue the loss.

76

M. BUCCINO

Q.   Are those efforts dealt with within the business banking department or does it get elevated to some other department?

A.   More often than not, there's a business banking department that would manage the outside counsel and their efforts.

Q.   So Ms. Kelly would be directly responsible to engage outside counsel?

A.   If not Ms. Kelly, then whoever she delegated to do it.

Q.   So somebody within the business banking department would make the decision that we're going to pursue collection efforts legally by instigating a lawsuit, correct?

A.   Yes.

Q.   Do you know if, in fact, any lawsuit was ever commenced in connection with this particular loan to recover on the loan?

A.   I don't know.

Q.   Do you know who might know the answer to that question?

A.   Theresa Kelly.

Q.   And if no lawsuit was filed to collect on the loan, who would have made that

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

77

M. BUCCINO

decision, if you know?

A.    In this case my guess is that -- if no lawsuit has been filed, it's probably because of the ongoing litigation, and how shall I say, fruitfulness of trying to pursue any action beyond this one here.

Q.    I'm going to represent to you that in connection with this lawsuit, which Flushing Bank is already involved in, there's been no claim against Northshore, Sunrise or Mr. Deo or any other party in connection with the collection of this loan.  Are you aware of that?

A.    No, but that sounds accurate.

Q.    Are you aware of any reason as to why no claim has been made in this lawsuit in connection with the repayment of the loan?

A.    No.

Q.    Are you aware of any reason why no separate lawsuit was commenced in connection with trying to recover on the loan to Northshore?

A.    No.

MR. RUDERMAN:  I'm going to share my screen.  Mr. Buccino, I'm showing you a document I'm going to mark this as

78

                          M. BUCCINO

Flushing 1.

         (Flushing Exhibit 1, Subpoena Duces

Tecum, was marked for identification, as

of this date.)

         MR. RUDERMAN:  It's entitled

"Subpoena Duces Tecum."

Q.   I am going to ask if you recognize

this document?

A.   Yes.

Q.   Do you need to see the whole

document?

         MS. RONNEBURGER:  Can you make it

bigger?  Is that enough?  Do you need it

bigger than that?

         THE WITNESS:  No, this is fine.

Q.   Do you need me to scroll through the

whole document before you give your full answer?

A.   It depends on the questions.

Q.   It's entitled "Subpoena Duces Tecum"

it says to Flushing Bank and it has a date.  It

asks to produce documents by July 14th, 2023 to

the offices of Cyruli Shanks & Zizmor, which I'll

represent to you is my firm, and this is dated

June 14th, 2023.

79

M. BUCCINO

A.    Okay.

Q.    Do you recognize this document?

A.    Yes.

Q.    What do you recognize this document to be?

A.    It's the subpoena I referenced earlier.

Q.    I'm going to bring up another document, but the other subpoena just so we have a full record is to another Flushing Bank entity Flushing Bank Solutions.  Do you know what Flushing Bank Solutions is?

A.    Never heard of it, no.

Q.    Is there a department or division called Flushing Bank Solutions?

A.    There is not.

Q.    So this is dated June 14th, 2023.  We can show the documents, but the loan in place was placed somewhere at the end of March/beginning of April, 2023.

So does this refresh your recollection as to whether or not you first became aware of the issues in connection with this loan after the loan had been approved?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

80

M. BUCCINO

A.    Well, again, you keep saying being aware versus when the loan was approved, and I was never involved in the loan process so I was never aware what the status of the loan had with regard to my knowledge in this.

Q.    Perhaps, my question was unclear. Would it be fair to say that you weren't aware of any issues concerning Northshore, 189 Sunrise or Mr. Deo until receiving this subpoena?

A.    That is what I recall, yes.

Q.    I'm going to scroll down to the document requests.  And these are the requests that were made in connection with the loan.

When you received this document request, what is the first thing that you would have, if you recall, what you did, if not, what you would have done?

A.    The first thing me and my team would have done would have been to look up the entities to find the loan in question, and begin gathering documents responsive thereto after or validating the subpoena itself.

In this case, I believe, at some point we reached out to Mr. Puccio and his team

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

81

M. BUCCINO

to try to gain additional documents, as appropriate, because we may not have had access to all the documents responsive in the normal applications that we have access to.

Q.   And as a result of those communications with Mr. Puccio -- withdrawn.

As a result of seeing the subpoena, you did look up the lawsuit at issue, go online or somehow get a copy of the complaint and the other papers filed?

A.   I don't recall, specifically, if I did that or not.

Q.   How did you become aware that there were ownership issues in connection with the dispute between the parties?

A.   Again, I don't remember exactly, I may have looked it up the case, or alternatively it may have been raised that Mr. Puccio and the business banking team already had information with regards to this lawsuit and the ownership dispute, and they provided the update at that time.

Q.   Then as a result of receiving this subpoena, did you provide full and responsive

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 84 of 288 PageID #: 11571
SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino --- February 26, 2026

82

                        M. BUCCINO

documents in connection with your Flushing Bank's production?

            MS. RONNEBURGER:  Objection to form.

        A.    We provided what we had, yes.

        Q.    I'll stop sharing for a second.  I'm going to share my screen again.  This is, as I mentioned, Mr. Buccino, there was another subpoena served on Flushing Financial Solutions, and you say that as far as you know there is no such entity or division?

        A.    Not that I'm aware of.

        Q.    There's no different information that was sought in this subpoena.  So do you recall looking and saying who is Flushing Financial Solutions?

        A.    Not off the top of my head, but if it's the same subpoena, we wouldn't have given much notice between the two.

            MR. RUDERMAN:  I'm going to mark this as Flushing 2.

            (Flushing Exhibit 2, letter of July 19, 2023, was marked for identification, as of this date.)

            MR. RUDERMAN:  I'm going to share my

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 85 of 288 PageID #: 11572

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

83

M. BUCCINO

screen again.

Q.   I'm showing you a document.  It is a letter on my firm's letterhead dated July 19th, 2023, and signed by me.  Do you recall receiving this letter?

A.   This specific letter, no, but I do recall correspondence between, I guess, yourself and the bank regarding the responses.

MR. RUDERMAN:  I'm going to mark this as Flushing 3.

(Flushing Exhibit 3, Letter from Mr. Jeffrey Ruderman, was marked for identification, as of this date.)

Q.   In this letter I'm indicating that it's now July 19th and we have not received responses that were due by July 14th and asking you to contact me.  But following this, you did produce the documents that had been requested, correct?

A.   That's correct, yes.

MR. RUDERMAN:  I'm sharing my screen.

Q.   Mr. Buccino, I'm showing you a document.  It's Bates stamped and it was produced by Flushing.  It's 21 pages, and it's Flushing

84

M. BUCCINO

Bates stamped 08496 and I'm going to ask you if you recognize this document?

MR. RUDERMAN: I'm going to mark this as Flushing 4, I'm sorry.

(Flushing Exhibit 4, Document Bates stamped Flushing 08496, was marked for identification, as of this date.)

Q. Do you recognize this document?

A. Yes.

Q. What do you recognize this to be?

A. It is documentation regarding the loan made to Northshore that we would have produced in response to your document requests.

Q. You were not involved in processing or reviewing or anything in connection with this document when it was still being considered by the bank, correct?

A. No.

Q. And your knowledge about it simply is that it's in the file and you've seen it?

A. Basically, yes.

Q. You have no other information to provide in connection with this document, correct?

85

M. BUCCINO

A.   Not with the production of it, no.

Q.   I'm going to draw your attention to the second page of the document where there is a line called "Loan Purpose," do you see that, I highlighted it?

A.   Yes.

Q.   It says "Growth business expansion," do you see that?

A.   Yes.

Q.   So previously you testified that you weren't sure, but you thought there might be some sort of reason that an applicant puts on the application as to what he wants the loan for. Does this refresh your recollection?

A.   Yes.

Q.   Do you know for a fact the loan was used for growth or business expansion?

A.   I do not know that.

Q.   We also discussed parameters with regard to loan-to-debt ratios and there's a line called "Actual net income to principal payments including proposed," and it's negative 2.11.  Do you see this line here?

A.   Yes.

86

M. BUCCINO

Q.   Do you know whether or not that number negative 2.11, fits within the parameters of acceptable ratios as provided in this application?

A.   I don't know.

Q.   What about the interest coverage of 1.74 two lines down, do you know if that also meets with the guidelines provided by the bank?

A.   I don't know.

Q.   I'm going to share my screen again. This is a, do you see that, this is an e-mail produced by Flushing Bank 00196.  It's from Robert Puccio, dated March 13th, 2023 to Thomas Clemens and Stephen Codispodo.  Have you ever seen this e-mail before?

A.   No.

Q.   Do you know who Thomas Clemens is?

A.   Yes.

Q.   Who is Thomas Clemens?

A.   I don't know his exact title.  But he's, essentially, in charge of the credit center.

MR. RUDERMAN:  I'm going to mark this as Flushing 5.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

87

M. BUCCINO

(Flushing Exhibit 5, Document Bates

stamped Flushing 00196, was marked for

identification, as of this date.)

Q.    What about Stephen Codispodo?

A.    Yeah, he works in the credit center

as well.

Q.    Mr. Puccio is writing to the two of

them and he said, "As I spoke to Tom briefly

about last week, the funds from the LOC are going

to be used primarily for small and cosmetic

improvements to the showroom at the dealership."

Do you see that?

A.    Yes.

Q.    When he says "As I spoke to Tom," do

you know who he's referring to as Tom?

A.    I wouldn't say specifically I would

venture a guess that it's Tom Clemens in the

e-mail, but there could be another Tom.

Q.    You previously testified there was a

Tom Jones who was the accountant for the company?

A.    Okay.

Q.    Sitting here you have no idea?

A.    I couldn't say specifically.

Q.    And he indicates that based on his

88

M. BUCCINO

conversation, the funds are going to be used for small and cosmetic improvements for the showroom at the dealership.

Do you know if, in fact, if Mr. Puccio ever had this conversation with whichever Tom that was?

A.   I have no idea what conversations he had.

Q.   Do you know why Mr. Puccio might be sending this e-mail to these two people in the credit department?

A.   Based on information to go with the application.

Q.   So are these two people in the credit department, are they part of the process in approving a loan or considering its approval?

A.   Yes, they would be part of the process in approving the loan application.

Q.   But also engaged in the approval process of the loan?

A.   Yes, yes, to some degree.

Q.   Do you know if the statements here by Mr. Puccio to them about what the loan proceeds are going to be used for was a requirement of the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

89

                           M. BUCCINO

approval of the loan?

        A.    I don't know.

        Q.    Again, you don't know whether any of
these funds were actually used for the purpose
stated in this e-mail, correct?

        A.    No.

            MR. RUDERMAN:  I'm going to share my
        screen again.  This is another e-mail that
        was produced by Flushing Bank 00008, I'm
        going to have this marked as Flushing 6.

            (Flushing Exhibit 6, Document Bates
        stamped Flushing 00008, was marked for
        identification, as of this date.)

        Q.    This is an e-mail chain from Robert
Puccio, dated August 18th, 2022 being sent to
Michael Laurie and Anthony Deo @Northshore
motors1.com.

            I previously asked you if you knew
Michael Laurie, and I think you testified you
only knew him in connection with something to do
with this lawsuit, correct?

        A.    Correct.

        Q.    Sitting here today, you don't know
why Mr. Puccio was necessarily reaching out to

90

M. BUCCINO

Mr. Laurie?

A.    Not specifically or particularly, no.

Q.    Scrolling up, Mr. Puccio is again writing Mr. Laurie and Anthony Deo @Northshoremotors1.com that "It's great to see them.  Thanks for the background information and the tour of Northshore Motors."

Do you know if it's customary for a business banker to go and visit a site of the business that they might be lending money to?

A.    Yes.

Q.    Do you know what the purpose of that visit would be?

A.    It's part of the due diligence in most cases.

Q.    And he indicates here that he needs federal tax returns for two years for both the business -- I'm going to read this so it should be clear.  "Two years federal tax returns with all schedules for the business; two years federal returns with all schedules for Anthony."  Do you see that?

A.    Yes.

Q.    Previously I asked you if tax returns

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

91

M. BUCCINO

were required and you said you typically see them in these types of transactions, correct?

A.   Correct.

Q.   But here it's not just for the business it's tax returns for Anthony, do you see that?

A.   Yes.

Q.   Do you know if Flushing Bank ever received any of Anthony's tax returns?

A.   Off the top of my head, I don't know.

Q.   I'm going to tell you -- I apologize.

MR. RUDERMAN:  For the record, which Anthony are you referring to in that question?

MR. KATAEV:  This would be Anthony Deo.

Q.   This is in August of 2022 this has to do with the loan to Northshore, so this would be for Anthony Deo.  Do you recall whether or not Anthony Deo ever provided his personal tax returns?

A.   I don't recall that.

Q.   I'm going to represent to you that I reviewed the production by Flushing and I didn't

92

M. BUCCINO

see any tax returns by Anthony Deo, would it be fair to say that if you did not produce them, then they were not in your files?

MS. RONNEBURGER:  Objection to form.

A.   If they were not specifically requested, we may not have produced them.  But if they had been requested and they were not produced, then presumably they're not in our files.

Q.   It was a very broad request to anything in connection with this loan application.  So if that were broad I believe that would have included Mr. Anthony Deo's tax returns if they were in the file?

A.   Are we talking about the production in response to the subpoena or the production in response to this litigation?

Q.   First of all, in connection with first we'll start with the subpoena.  If you need me to pull up the subpoena, I can do that as well?

A.   If they were included in the subpoena language and we had them, then they would have been provided.

93

M. BUCCINO

Q.   Sitting here today do you know whether, in fact, Flushing Bank has in its possession any of Anthony Deo's tax returns?

A.   I don't know.

MR. RUDERMAN:  If, in fact, they are in any Flushing Bank's files and to the extent they haven't been produced, I'm going ask that they be produced now and follow up in writing.

Q.   Now if, in fact, Flushing Bank does not have Anthony Deo's tax returns, which were requested by Mr. Puccio, do you know why he would have proceeded with the loan transaction without Mr. Anthony Deo's personal tax returns as requested?

A.   I don't know.

Q.   Do you know who could have made that decision to dispense with that requirement?

A.   Well, again, that might not be a requirement even though it was requested here. So it either isn't a requirement or it was dispensed with in your words probably by the credit center or someone higher up.

Q.   I don't recall if I asked this.  Is

94

M. BUCCINO

there a writing, a written checklist of some kind or list as to what documents must be provided in connection with this type of a loan?

A.  I couldn't say for certain, but I'm pretty sure there probably is, yes.

Q.  And is that electronic or is that on paper?

A.  It's probably both.

Q.  And as the loan proceeds through the approval process, do different parties need to check off that they've now satisfied whatever particular items is still open?

A.  Yes, that's probably the process.

Q.  And at the end of the process.  One would need to satisfy all the requirements within that checklist unless there was somebody who overrode that and said that for some reason that document was not required?

A.  Correct.

MR. RUDERMAN:  So to the extent that it has not been provided I'm going to call for production of either the -- well, the particular checklist involved in this particular transaction and also the form

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

95

M. BUCCINO

checklist that was used at the time in

2023.  And if it has been provided, if

Bates stamp numbers could be pointed out

to us as to where it was provided.  I'll

stop sharing.

MS. RONNEBURGER:  We'll take it under

consideration, just follow up in writing.

MR. RUDERMAN:  Yep.  I'm going to

share my screen again.

This is a two-page document.  The

first one is Bates stamped Flushing 01059.

It is an e-mail chain I'm going to have

this marked as Flushing 7.

(Flushing Exhibit 7, Document Bates

stamped Flushing 01059, was marked for

identification, as of this date.)

Q.   Going from the oldest to the newest.
It's an e-mail dated March 20th, 2023 from
Stephen Codispodo C-O-D-I-S-P-O-D-O, and it's
Stephen with a PH.  And it's sent to BB-Loan
Administration and also to Gerard Magaldi,
M-A-G-A-L-D-I.  Do you know who Gerard Magaldi
is?

A.   Yes.

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 98 of 288 PageID #: 11585
SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

96

M. BUCCINO

Q.   Who is Gerard Magaldi?

A.   He is a business banking team leader.

Q.   So would he be a supervisor over Mr. Puccio?

A.   I believe so, yes.

Q.   Do you know who Mr. Puccio had to report to on a regular basis, who was his immediate supervisor?

A.   He would have been reporting to one of the team leaders.  This e-mail makes me think that it was that Gerard Magaldi.  It's possible he was reporting to a different team leader, but one of the team leaders in the business banking team.

Q.   Do you know if each business banker always dealt with the same team leader or did different loans might be different team leaders?

A.   No, they would have the set in stone reporting line would be to the same team leader, correct.

Q.   The e-mail goes to, I guess, a division or a department e-mail, BB-Loan Administration.  Do you know what e-mail designation that it was for?

97

M. BUCCINO

A.    It would appear to be for the business banking loan administration team.  I don't know who that particular e-mail goes to as a group, but it would be a group of people who are designated.

Q.    And above that e-mail there is an e-mail dated March 21, 2023 from Rosemary Miller to Mr. Codispodo going to that same BB-Loan Administration, and to Mr. Puccio copying Mr. Magaldi.  Who is Rosemary Miller?

A.    I honestly don't know the name, but based on the e-mail it looks like she's a senior loan closer probably within the business banking team.

Q.    That's her signature stamp on the bottom saying she's a senior loan closer?

A.    Yes.

Q.    Do you know what the position is, what does a senior loan closer do?

A.    No, I don't.

Q.    In this e-mail Ms. Miller writes "We are going to need an updated operating agreement. The operating agreement attached is an old one, and shows Anthony as 99 percent ownership.

98

M. BUCCINO

Please request the updated agreement so we can proceed.  Thanks."

Do you know what she's referring to here?

A.    She's referring to the operating agreement that was presented, presumably.

Q.    And do you know what is her -- it seems to be a concern that there's an old operating agreement showing Anthony, that's Anthony Deo, as 99 percent ownership.  Do you know what her concern was, if any?

MS. RONNEBURGER:  Objection to form. You're asking him to speculate.

MR. RUDERMAN:  I asked if he knows.

A.    I don't.

Q.    Have you ever seen the operating agreements for or any operating agreement for Northshore?

A.    I did, yes.

Q.    And you saw them in connection with your review of the subpoenaed documents or the production in this lawsuit?

A.    Yes.

Q.    March 21, 2023 at 12:11 on that same

99

M. BUCCINO

day Rosemary Miller is writing at 12:48 to the same parties saying, "Disregard my e-mail.  I am not sure what I was looking at the ownership as just Anthony Deo.  Thanks."

Do you know if there was an issue with regard to whether Mr. Deo owned 99 percent or a hundred percent of Northshore in connection with the loan?

A.    I don't know.

Q.    Do you know if Mr. Deo was ever advised that his operating agreement which showed that he owned 99 percent and his wife Sarah owned 1 percent, was problematic in connection with the loan?

A.    That sounds familiar, yes.

Q.    What is the familiarity with that?

A.    In reviewing documents for this deposition, I feel like we've seen or I've seen e-mails that discuss that issue.

Q.    And do you know what the issue was with regard to 99 percent as opposed to 100 percent?

A.    I don't specifically know, but my guess would be that there were other documents

100

                        M. BUCCINO

that presented as a hundred and so there's an

inconsistency between the two.

        Q.    Is that just based upon your review

of the many documents and that's just the kind of

conclusion you came to?

        A.    Yes, that's my general recollection

of the documents as I recall, yes.

        Q.    So if, in fact, Mr. Deo only owned 99

percent would it be the practice of Flushing to

tell Mr. Deo to change his ownership percentage

of a company?

        A.    I don't believe so, no.

        Q.    Do you know whether, in fact, Mr. Deo

changed his operating agreement to be a hundred

percent to conform with what Flushing Bank had

required?

                MS. RONNEBURGER:  Objection to form.

        A.    I don't know.

                MR. RUDERMAN:  I'm going to stop

                sharing.  I'm going to share my screen

                again.  This is a document entitled

                "operating agreement" for Northshore Motor

                Leasing.  It was produced by Flushing Bank

                as 7258, and I'm going to mark this as

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

101

M. BUCCINO

Flushing 8.

(Flushing Exhibit 8, Document Bates stamped Flushing 7258, was marked for identification, as of this date.)

Q.    This was in your files.  I'm just going to go down to the page 6 of this document where it says "Certification of Member," showing that Anthony Deo owned 99 percent and Sarah Deo owned 1 percent.  Do you see that?

A.    Yes.

Q.    And you've seen this document before?

A.    It looks familiar, yes.

Q.    And do you know how Flushing Bank came to obtain a copy of this document?

A.    Presumably, Mr. Deo provided it during the application process.

Q.    Now, the document it says "This agreement is adopted and approved as of this 15th day of June 2020."  Do you see that?

A.    Yes.

Q.    Do you know when this document was signed?

A.    It suggests that this was signed on June 15, 2020.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

102

M. BUCCINO

Q.   I'm just saying if you know when it was signed?

A.   No, I don't.

Q.   Do you know when it was prepared?

A.   No.

MR. RUDERMAN:  I'm going to now bring up another document which is also called "Northshore Motor Leasing Operating Agreement."  I'm going to mark this as Flushing 9.

(Flushing Exhibit 9, Document entitled "Northshore Motor Leasing Operating Agreement", was marked for identification, as of this date.)

Q.   I'm going to scroll down to, again, the sixth page where it shows in this page it says that Anthony Deo is a hundred percent, do you see that?

A.   Yes.

Q.   Do you know how Flushing obtained a copy of this document?

A.   Again, presumably, he provided it during the process.

Q.   Do you know if it was provided

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

103

M. BUCCINO

before, or after or at the same time as the one I showed you before?

A.    I don't know.

Q.    And again, this says dated June 15, 2020, do you know when it was signed?

A.    No.

Q.    Do you know when it was prepared?

A.    No.

Q.    Do you know which of these two operating agreements the bank relied upon in issuing a loan?

A.    No.

Q.    I'm going to share my screen, Mr. Buccino.  I'm showing you a document that's called "Anthony Deo Statement of Financial Condition, March 1, 2023."  The first page is Bates stamped Flushing 00187.  It's a three-page document.  On the top left-hand side there is a stamp "JL and Co."  The second page is entitled "Independent Accountants' Compilation Report" with Jones Little & Company, CPA's, LLP signature and then there is a document entitled "Assets of Anthony Deo."

(Flushing Exhibit 9A, Document Bates

104

M. BUCCINO

stamped Flushing 00187, marked for

identification, as of this date.)

Q.   Do you recall ever seeing this document before?

A.   It looks familiar, yes.

Q.   It's the first time you saw it in connection with the production in this lawsuit?

A.   Probably, yes.

Q.   I can represent to you I do not recall seeing this document in response to the subpoena.  Do you believe that this document was not responsive to the subpoena that had been requested in June/July of 2023?

MS. RONNEBURGER:  Objection.

To the extent they're asking for privileged information that may have involved conversations that you had with general counsel about the responsiveness of the documents, I would advise him not to answer.

Q.   With that caveat, if it's a result of conversations with general counsel, do you know why this document may not have been produced in response to the subpoena back in July 2023?

105

M. BUCCINO

A.    I don't.

Q.    Do you know how Flushing Bank came to have this document in its possession?

A.    Presumably, it was provided by Mr. Deo.

Q.    Again, you don't know that because you aren't the business banker, correct?

A.    I wasn't the one who received it, no.

Q.    So you know it's in the file somehow and you presume that Mr. Deo provided it, correct?

A.    Correct.

Q.    And presumably, would it be fair to say, that this was provided because it was requested by Flushing Bank as part of its decision-making process?

A.    Probably, yes.

Q.    We did see an e-mail from Flushing Bank asking for Mr. Deo's personal tax returns, correct?

A.    Yes.

Q.    So do you know if Flushing Bank was relying in any way on Mr. Deo's personal assets and his credit abilities in connection with its

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

106

M. BUCCINO

decision to provide the loan?

A.   I don't know.

Q.   Do you know if the bank, Flushing Bank, did any investigation or required any support for any of the assets that are listed in this financial statement?

A.   I don't know.

Q.   Do you know if it's the bank's process and procedure to request or require some sort of support for documents that claim to have certain assets in their possession or ownership?

A.   I don't know.

MR. RUDERMAN:  I'm going to share another document.  Mr. Buccino, I'm showing you an e-mail chain with an attachment that was produced by Flushing Bank with the first Bates stamp of Flushing 00162.  I'm going to mark this as Flushing 10.

(Flushing Exhibit 10, Document Bates stamped Flushing 00162, was marked for identification, as of this date.)

Q.   This is an e-mail chain.  The first e-mail is from, again, Mr. Stephen Codispodo to

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 109 of 288 PageID #: 11596

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

107

M. BUCCINO

Robert Puccio and then a response from Robert Puccio.

In it, Mr. Puccio on March 7th, 2023 is advising "Please see attached full year 2022 P&L from Northshore Motors.  Once approved, I will get the 4506C and open the DDA."

First of all, do you know what a 4506C is?

A.    No.

Q.    Do you know when he refers to a DDA, do you know what that is?

A.    DDA is deposit account.

Q.    Do you know if in connection with this loan the bank required Northshore to open up a deposit account?

A.    I don't know if that was specifically a requirement of this loan, I know that it's a requirement of any of our loans more regularly with mortgages, but it may have been required with this loan as well.

Q.    So now we have an attachment here which is entitled "Northshore Motor Leasing, LLC, Profit and Loss Statement For the Year Ending 12/31/2022."  Do you see that?

108

M. BUCCINO

A.   Yes.

Q.   The bottom line says "The net profit after tax is $427,843."  Do you see that?

A.   Yes.

Q.   Do you know if anybody at Flushing Bank followed up to confirm the accuracy of any of the numbers in this profit and loss statement?

A.   I don't know.

Q.   Do you know if it's a process and procedure for Flushing Bank to require some sort of support for a profit and loss statement such as this?

A.   I don't know.

Q.   Do you know if Flushing Bank relied upon this profit and loss statement in connection with approving the financing?

A.   I don't know.

MR. RUDERMAN:  I'm going to share my screen again.  I'm showing here another document it Bates stamped Flushing 00015 and I'm going to mark this as Flushing 11.

(Flushing Exhibit 11, Document Bates stamped Flushing 00015, was marked for identification, as of this date.)

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 111 of 288 PageID #: 11598

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

109

M. BUCCINO

Q.   This is an e-mail chain of two pages. The first e-mail is from Mr. Puccio to Anthony Deo and Michael Laurie, dated August 23, 2022. Mr. Puccio is saying "I will start tracking and working on both applications."  Do you know what applications he's referring to?

A.   Specifically, no.

Q.   Were you aware that now the loan that was approved, we saw the application was in March of 2023.  We see that there was communications as early as August 2022 between Anthony Deo, Michael Laurie and Robert Puccio about loans.  Were you aware that the process started back in August of 2022?

A.   No.

Q.   Do you know why there was a big delay -- let me rephrase it.  Do you know why there was this time frame between August 2022 and March of 2023?

A.   No.

Q.   Now Mr. Puccio writes later on that same day, he says "Due to the 2019 and 2020 loss for 189 Sunrise, that entity will not qualify." Do you know what he's referring to?

110

M. BUCCINO

A.   Specifically, no.

Q.   He says, "We will need to see two years consecutive profitability on the tax return."

And would it be fair to say that the taxers would need to show some sort of profit in order to qualify for the loan?

A.   That seems fair, yes.

Q.   But then he writes, "For Northshore, due to the fact that Anthony did not own the company in 2019, we will need 2020 and 2021 tax returns."  Do you see that?

A.   Yes.

Q.   Do you know why Mr. Puccio is saying due to the fact that Anthony did not own the company in 2019?

MS. RONNEBURGER:  Again, objection to form.

A.   I don't know.

Q.   Do you know what the source of Mr. Puccio's information is that led him to believe that Anthony did not own the company in 2019?

A.   I don't know.

Q.   It says "I understand your CPA is in

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

111

M. BUCCINO

the process of filing 2021 now.  Please e-mail
them to me once available."

Do you know if the bank received both
'20 and 2021 tax returns?

A.   I don't know.

Q.   Then he refers again to the 4506C
forms.  Again, you don't know what those are,
correct?

A.   Correct.

Q.   He says he needs it for Northshore
and Anthony.  If I told you that the 4506 form is
a document which enables the bank with the
approval of the taxpayer to go directly to the
IRS to obtain a copy of the tax return, would
that refresh your recollection or you still
wouldn't know that?

A.   No, that sounds plausible.

Q.   So with that understanding that I
gave you, was it your understanding -- do you
recall whether or not there's any indication that
Flushing Bank sought from the IRS a copy of
Anthony Deo's personal tax returns?

A.   I don't know that.

Q.   I'll stop sharing.  I want to -- I'm

112

M. BUCCINO

sharing another document it's a little fuzzy but I think you should be able to read it.  It says "Ford Motor Company Dealer Financial Statement." Can you read that?

A.   Yes.

Q.   But then under dealer it says "Northshore Motor Leasing."  Do you see that?

A.   Yes.

Q.   It's dated, "Period of" right here "October 10th, 2022."  Do you see that?

A.   Yes.

MR. RUDERMAN:  This is stamped Flushing 08560.  It's a multi-page document, but I'm just referring to this first page now.  I'm going to mark this as Flushing 12.

(Flushing Exhibit 12, Document Bates stamped Flushing 08560, was marked for identification, as of this date.)

Q.   Do you recall ever seeing this document before?

A.   It looks familiar, but I couldn't say for sure that this was a specific document that I recall.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

113

M. BUCCINO

Q.   If you saw it it was in connection with your production either of the subpoena or in connection with this lawsuit, correct?

A.   Correct.

Q.   Do you know if this is a document that was -- do you know how Flushing obtained a copy of this document?

A.   Again, it would have been presumably provided by Anthony Deo.

Q.   But you don't know because you --

A.   But I didn't see it directly, so I couldn't say.

Q.   Do you know what the purpose of -- do you know if this is a document that was requested by Flushing in connection with consideration for the loan?

A.   This specific document being requested, I couldn't say for sure.

Q.   And do you know if Flushing Bank relied upon the -- withdrawn.

On the bottom of this document the last line it's a little hard to read, but it says "Profit before income tax" for the month it says "$76,130."  Do you see that?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

114

M. BUCCINO

A.   Yes.

Q.   It says "Year-to-date $372,037."  Do you see that?

A.   Yes.

Q.   Do you know if Flushing Bank relied upon the accuracy of this financial document in processing or approving the loan?

A.   I don't know.

Q.   Do you know whether Flushing Bank did anything to confirm the accuracy of any of the information on this financial statement?

A.   I don't know.

Q.   Do you know if Flushing Bank required Northshore or Mr. Deo to provide copies of any actual bank statements in connection with its operation?

A.   I don't know.

MR. RUDERMAN:  I don't recall seeing any bank statements produced in connection with either the subpoena or the lawsuit. So if there are any bank statements that were produced that Flushing Bank has in its files, to the extent they were not produced, I ask that they be produced.  I

115

M. BUCCINO

will follow up in writing.  To the extent that they were produced I ask for you to advise us of the Bates stamp numbers for those documents.

MS. RONNEBURGER:  Understood.

Q.   Let me share my screen again.  Mr. Buccino, I'm showing you a document.  It is a document that had been filed in the Nassau County Clerk's Office of the Supreme Court of the State of New York, County of Nassau for a lawsuit by Brian Chabrier, et al. versus the Anthony Deo, et al. under Index Number 617224/2022.  It was produced -- it's a 28-page document produced to us by Flushing under Flushing 06272.  Do you recall seeing this document before?

MR. RUDERMAN:  I'm sorry, I'm going to mark this as Flushing 13.

(Flushing Exhibit 13, Document Bates stamped Flushing 06272, was marked for identification, as of this date.)

Q.   Do you recall seeing this document before?

A.   Vaguely, yes.

Q.   When do you recall seeing this

116

M. BUCCINO

document for the first time?

A.   I couldn't say.

Q.   Do you know when Flushing Bank first obtained a copy of this document?

A.   I do not know.

Q.   Do you know why Flushing Bank has the document in its possession?

A.   I don't know.

MS. RONNEBURGER:  Is this the full -- was this attached to an e-mail?  I can pull it up here, but I'm just wondering was it an e-mail chain?

MR. RUDERMAN:  There is an e-mail I think that references the complaint.  Let me take a look and see what I have.

MS. RONNEBURGER:  Yeah, what is directly before this?

MR. RUDERMAN:  It's just a document. I don't believe that when the documents were produced to us that attachments were attached to the e-mails.  They may have been --

MS. RONNEBURGER:  No, they were, they were produced with the attached, it was

117

M. BUCCINO

the e-mail and then the attachment.  I've gone through the discovery.

MR. RUDERMAN:  So then I do have, perhaps this will help.  Let me see what I have here.  Maybe this will help.  I'm going to open up another document.

This is an e-mail produced by Flushing under Flushing 03765.  And it is from Shane D-I capital G-E-R-O-N-I-M-O, dated March 21, 2023 to Stephen Codispodo and I'm going to mark this as Flushing 14.

(Flushing Exhibit 14, Document Bates stamped Flushing 03765, was marked for identification, as of this date.)

Q.   So for the last question, Mr. Buccino, do you recall seeing this document before, this e-mail?

A.   Yes.

Q.   When do you recall first seeing this?

A.   It was in preparation for this deposition.

Q.   So you don't recall seeing this back in when the subpoena was first served or in

118

M. BUCCINO

production for the lawsuit?

A.   No.

Q.   But you definitely recall seeing this recently when you were preparing for today's deposition?

A.   Yes.

Q.   And the e-mails from Shane DiGeronimo says "I was running searches on Anthony Deo and when I checked the E-court he has a court hearing today 3/31/23.  I've attached screenshots below from the summons and complaint from 12/6/22, and I am still reading into the case to see if any further action has occurred."

My first question is, who is Shane DiGeronimo, if you know?

A.   He is an employee in the credit center.

Q.   So he works -- he would be in the same department as Stephen Codispodo?

A.   Yes, they're both credit analysts, I believe, working under Thomas Clemens.

Q.   And he appears to have pulled some of the allegations out of the complaint and put them into this body of the e-mail, is that what it

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino --- February 26, 2026

119

M. BUCCINO

looks like?

A.    That is what it looks like, yes.

Q.    I previously asked you when, if you knew when Flushing Bank first became aware of the summons and complaint, which I showed to you as the previous exhibit.  And I believe either you didn't -- I don't know whether you, I think you didn't know but as your attorney noted that there may be some e-mail that might help to pin that down.

Seeing this, do you know whether Flushing bank became aware of this lawsuit any date before the date of this e-mail March 31st, 2023?

A.    I don't.

Q.    But it would be fair to say that at least as of March 31, 2023 they became aware of this lawsuit?

A.    Yes.

Q.    Based on your conversations with, or I assume communications whether it was in writing or in person with Mr. Puccio and somebody else in that department about this lawsuit, they indicated that they were satisfied in the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

120

M. BUCCINO

business banking department to proceed with a loan despite the fact that this lawsuit existed, correct?

A.   Yes.

Q.   Let me bring up the complaint again. Let me share the document again.  So this is again, I believe, this was Flushing 13.

Mr. Buccino, were you aware that Mr. Deo had arranged for Northshore to obtain financing from a company called Libertas Funding in or around November of 2022?

A.   Was I aware of it in November of 2022?

Q.   Were you aware sitting here today, were you ever aware that Northshore that Mr. Deo arranged to obtain funding for Northshore in or around November of 2022?

A.   No.

Q.   Sitting here today, did you ever hear of the name Libertas before in connection with this?

A.   I know Libertas is a party in the action.

Q.   Do you know what Libertas's

121

M. BUCCINO

involvement was in connection with Northshore

Motor?

A.    Specifically, no.

Q.    Do you know whether anybody at

Flushing Bank was aware prior to funding the loan

and approving the loan about Libertas's

relationship with Northshore Funding --

A.    I don't know.

Q.    -- Northshore Motor, I'm sorry?

In this litigation it is undisputed

that Mr. Deo arranged for Northshore -- for

Libertas to provide $735,000 in funding to

Northshore and to Sunrise and in exchange they

purchased well over $900,000 worth of the

receipts of Northshore and Sunrise.  Do you know

whether or not Flushing Bank was aware of that?

A.    I do not know.

Q.    Do you know whether they were aware

that when they provided the funding or approved

this loan that Libertas was required to be paid

approximately $20,000 per month in connection

with this financing that's from Northshore and

Sunrise?

A.    I do not know.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

122

M. BUCCINO

Q.   Do you know whether or not they were aware that Northshore and Sunrise were in default of this Libertas Funding at the time that they processed the application and approved the loan for Flushing?

A.   I do not know.

Q.   Do you know whether or not Anthony Deo ever disclosed to Flushing Bank about the Libertas Funding and/or the fact that it was in default?

A.   I don't know.

Q.   Do you know whether Flushing Bank would have financed the transaction at issue if it knew about the Libertas financing and default?

A.   I don't know.

MR. RUDERMAN:  I'm going to share my screen.  I'm showing you a document that is a one-page e-mail Flushing 04572.  I'll mark this as Flushing 15.

(Flushing Exhibit 15, Document Bates stamped Flushing 04572, was marked for identification, as of this date.)

Q.   It's an e-mail from Robert Puccio to Thomas Clemens dated August 4th, 2023.  Do you

123

M. BUCCINO

recall every seeing this e-mail before?

A.   No.

Q.   In this e-mail Mr. Puccio says in speaking to Mr. Clemens "Attached is what the client's attorney sent me."  And there's an attachment called "Jones AFF Executed PDF" and a "letter from Harry PDF," which I'll show you later.  It says that "Even Citrin Cooperman opined and verified that the claims against Northshore's owners are wrong."

Do you know why Mr. Puccio was sending this e-mail to Mr. Clemens?

A.   Specifically, no.

Q.   I'm sharing my screen.  I'm showing you an attachment to that e-mail.  It's a one page e-mail on the letterhead of Harry R. Thomasson, Esquire, dated March 31, 2023.  It looks like -- it's tiny letters -- it looks like it's Flushing 06520.

MR. RUDERMAN:  I'm going to mark this as Flushing 16.

(Flushing Exhibit 16, Document Bates stamped Flushing 06520, was marked for identification, as of this date.)

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

124

M. BUCCINO

Q.   Do you recall ever seeing this document before?

A.   Yes.

Q.   When did you first see it?

A.   When discussing with Mr. Puccio, and who I believe is Mr. Magaldi at this point, after we received the initial subpoena for the records.

Q.   Do you recall reading this letter when you did see it?

A.   Yes.

Q.   I believe you discussed it before. And this letter was provided to Mr. Puccio in connection with the financing sought by Mr. Deo for Northshore Motor, correct, as far as you know?

A.   Yes.

Q.   And as a result of this letter and I'll provide the other affidavit it was the decision of Flushing Bank to proceed with the financing despite the fact that there was a lawsuit?

A.   As a result of this letter the other letter and the totality of the application, yes.

Q.   I'll bring up the other in order to

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

125

M. BUCCINO

be complete here.  I'm showing you now the other attachment which is the document Bates stamped Flushing 06517.

MR. RUDERMAN:  I'm going to mark this as Flushing 17.

(Flushing Exhibit 17, Document Bates stamped Flushing 06517, was marked for identification, as of this date.)

Q.    This is, as you saw before, that same caption with the lawsuit by Mr. Chabrier and against Mr. Deo, and it's an affidavit of Thomas Jones, CPA.  Have you ever seen this document before?

A.    Yes.

Q.    And when did you see it first?

A.    The same as the attorney letter.

Q.    You didn't see it at the time that it was presented to Flushing Bank, correct?

A.    I don't know when it was presented, so no.

Q.    Well, it's attached to the e-mail from April.

A.    I saw it later when it was -- when I was looking into the case.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

126

M. BUCCINO

Q.    And again, this letter along with the letter from Mr. Thomasson we showed you, and whatever other investigation gave Flushing Bank comfort to proceed with the loan, correct?

A.    Yes.

Q.    Now, by the way, in this affidavit from Mr. Jones it states that number 6 "I spoke with plaintiff's accounting firm, Citrin Cooperman, to coordinate the preparation of both sites' tax returns."  He references a Wendy Kwun, K-W-U-N.  And under number 8, "Ms. Kwun and Citrin Cooperman made clear to me that one or more returns would also need to be amended for one or more plaintiffs herein to reflect the Deo's ownership of the two companies."

Do you know if anybody at Flushing Bank ever reached out to either Ms. Kwun or Citrin Cooperman just to confirm all of the information contained in the affidavit of Mr. Jones?

A.    I don't know.

MR. RUDERMAN:  I'm going to share my screen, this is another e-mail chain provided by Flushing Bank, Bates stamped

127

M. BUCCINO

Flushing 05911, I'll mark that as Flushing 18.

(Flushing Exhibit 18A, Document Bates stamped Flushing 05911, was marked for identification, as of this date.)

Q.   This is two e-mails first from Mr. Buccino to George Bader, B-A-D-E-R, and Tara Cullen, C-U-L-L-E-N.  Do you know who George Bader and Tara Cullen is?

A.   George Bader is another team leader similar to Gerard Magaldi.  Tara Cullen, I don't know her exact title, but she's somewhat of a processor that's within the business banking department.

Q.   Mr. Puccio is writing to them saying "We are not sure why there is a block on the following accounts on the list below.  Tara looked at the account and doesn't see a reason why there is a block.  I can confirm there has not been any fraudulent activity on the account. Can you please approve the removal of the block on the accounts?"

And in response Mr. Bader responds, "I can't ever release a hold unless we understand

128

M. BUCCINO

fully why a block was put on and who put it on. Superb Motors is related to Northshore Motor and there is a subpoena involved.  My bet is Buccino's legal office placed the hold."

Q.    Do you know what they are referring to in this e-mail?

A.    A hold had been placed on the three accounts listed there preventing any withdrawals or other transactions.

Q.    Do you know why a hold was placed on the account?

A.    In this specific instance a hold was placed because the branch manager at one of our branches had been informed by a third party of a dispute that had been given records suggesting that ownership of the account was questionable, and so he took the initiative to put a block on the accounts.

Q.    When you say a third party, do you know who that third party was?

A.    Tony Urrutia.

Q.    It says "My bet is Buccino's legal office placed the hold."  So was that a correct statement?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

129

M. BUCCINO

A.    At the time it was, yes.

Q.    Do you know whether George Bader or anybody else reached out to you at this time about the hold?

A.    They did.

Q.    What was the sum and substance of those conversations?

A.    They inquired as to if my department was responsible, and if so, why we placed the hold.

Q.    And what did you inform them?

A.    I told them we hadn't placed the hold, but I investigated further and found out that the hold had been placed at the branch level, and then inquired of the branch managers as to why they had placed the hold.

Q.    I'm showing you another e-mail chain three pages, starting Flushing 05959.  And it goes from the bottom to the top.  It is an e-mail from CNS Dinger, D-I-N-G-E-R, e-mail Dinger@ courthousenews.com to NedHBassen, B-A-S-S-E-N, @Dentons.  And that was forwarded to Maria Grasso.  Do you know what this is about?

A.    So Ned Bassen is an attorney with

130

M. BUCCINO

Dentons.  Presumably, he has an existing relationship with Maria Grasso who is our COO. He was advising her of this filing and offering assistance, if necessary.

Q.   Were you aware around this time about this lawsuit, is that how you became aware?

(Flushing Exhibit 18B, Document Bates stamped Flushing 05959, was marked for identification, as of this date.)

A.   I don't know if I was aware yet, or if we received service of the summons in or around the same time but that's around the same time that I learned about it, yes.

Q.   So looking here so we scroll up you see Maria Grasso I think she's forwarding this to you.  This is your e-mail address MBuccino@ Flushing Bank.com, correct?

A.   Yes.

Q.   So it appears from this e-mail that she forwarded that e-mail from Mr. Bassen to you on that same date?

A.   Uh-huh.

Q.   Is that correct?

A.   That's what it looks like, yes.

131

M. BUCCINO

Q.   And then you write -- this is you Michael Buccino writing an e-mail to Maria Grasso and Theresa Kelly, Michael Bingold, Mary Ellen Bianco, George Bader, Robert Puccio, Barbara Beckman and Lisa Dantone.  Without going through each particular designation, why were you sending these people this e-mail?

A.   These were all my direct reports or people who I knew were involved to some degree either directly or had some direct reports with the Superb Motor Leasing customer relationship.

Q.   And so what was the purpose of advising them in this e-mail, what were you trying to accomplish?

A.   To summarize the situation for everyone based on the litigation that we were now aware of, and to get everyone on the same page in terms of what we did.

Q.   As a result of this e-mail you sent everybody what, if anything, further happened in connection with this loan?

A.   With the loan?

Q.   Yes.

A.   That I couldn't really tell you.

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 134 of 288 PageID #: 11621

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

132

M. BUCCINO

MR. RUDERMAN:  I'm showing my screen again.  This is an e-mail from produced by Flushing Bank under 08495 I'll mark it as Flushing 19.

(Flushing Exhibit 19, Document Bates stamped Flushing 08495, was marked for identification, as of this date.)

Q.   It is an e-mail from George Bader to Mr. Puccio.  It just says "Thanks," but Mr. Puccio responds to George Bader on February 2, 2024, "Loans look okay.  It is $500,000 less than I booked.  I assume they carved out the 500,000 for Northshore Motors.  What if we recover that, do I get it back.  Loan fees is correct."

Do you know what Mr. Puccio is referring to in this e-mail?

A.   Other than the loan to Northshore, not really, no.

Q.   Do you know if Mr. Puccio receives any compensation for the amount of loans that he books?

A.   I believe they do work on commission in that way, so yes.

Q.   And if a loan is booked, but then

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

133

M. BUCCINO

goes delinquent do you know if that affects the compensation paid to the banker?

A.    I would assume so, but I don't know for sure.

MR. RUDERMAN:  It's 12:55, and actually I just want to follow up.  I may have a few more questions, so why don't we take a break for lunch?  I may ask just a couple of more questions to see if there's anything left and then let Mr. Kataev take over.  Does that work for everybody?

MR. THOMASSON:  Yes.

(Discussion off the record)

(Luncheon recess taken at 12:57 p.m.)

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

134

M. BUCCINO

AFTERNOON SESSION

1:34 p.m.

M I C H A E L   B U C C I N O,

the Witness herein, was examined and

testified as follows:

MR. RUDERMAN:  Mr. Buccino, I have no further questions for you.  Thank you for your time.

EXAMINATION BY MR. KATAEV:

Q.   Good afternoon, Mr. Buccino.

A.   Good afternoon.

Q.   Before we begin I would just like to confirm with your counsel that we're agreeing to the usual federal stipulations which for the record is filing, sealing and certification objections except as to form are reserved until the time of trial and that the examination may be sworn to before any notary public.

Are those usual federal stipulations agreeable to you, Ms. Ronneburger?

A.   Yes.

Q.   Mr. Buccino, my name is Emanuel Kataev and I represent three plaintiffs in this case.  They are Superb Motors, Sunrise Motors

135

M. BUCCINO

Inc. Team Auto Sales, LLC and Robert Anthony

Urrutia.  Do you understand?

A.   Yes.

Q.   I'll be referring to those three as

Superb, Team and Tony, respectively, okay?

A.   Okay.

Q.   Generally speaking, are you prepared

to testify about the claims and defenses in this

case?

A.   Yes.

Q.   And do you understand your role as a

corporate representative as distinct from your

role as an individual with personal knowledge of

the claims and defenses in this case?

A.   Yes.

Q.   And were you specifically prepared

and charged with knowledge about the claims and

defenses of this case?

A.   Yes.

Q.   Are you aware of the individuals at

Flushing Bank who are privy to the events

relevant to this case?

A.   Yes.

Q.   And did you speak with any of these

136

M. BUCCINO

individuals in general, initially -- let me withdraw the question.

Did you speak with any of these individuals in preparation for this deposition?

A.    Not recently, no.

Q.    Did you speak with any such individuals in general about this case?

A.    Yes.

Q.    Did you specifically speak with David Weinstein?

A.    I have had e-mail exchanges with David Weinstein, yes.

Q.    Other than e-mail exchanges with Mr. Weinstein, did you have any verbal communications with him about this case?

A.    I don't believe so, no.

Q.    Did you have any virtual meeting with Mr. Weinstein about this case?

A.    No.

Q.    Can you describe to me in sum and substance what David Weinstein's role is in the events at issue in this case?

A.    He's a branch manager for one of our Brooklyn branches.  He had a relationship with

137

M. BUCCINO

Mr. Urrutia based on the proposal to open several business accounts, but I don't think any of those accounts ever got opened.  But he was aware of Mr. Urrutia having a business partner who was also working with the business banking team to open other accounts for quote/unquote "related businesses."

Q.   Now, on that subject do you know specifically what businesses or what business the accounts were to be opened for?

A.   I'm sorry, could you repeat?

MS. RONNEBURGER:  Objection to form.

Q.   You stated in your prior testimony just now that Mr. Weinstein was to open accounts for Mr. Urrutia's businesses, correct?

A.   There was a discussion about that, yes.

Q.   My question is, basically, please identify the names of those businesses.

A.   I don't know them off the top of my head.

Q.   Do you recall whether one of those businesses was Superb Motors Inc.?

A.   It may have been.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino --- February 26, 2026

138

M. BUCCINO

Q.   Do you recall the name of any other entity that Mr. Urrutia tried to open up a business account for?

A.   I don't remember specifically.

Q.   But do you recall whether Mr. Urrutia sought to open up an account for more than one business or just one?

A.   I believe there was several businesses.

Q.   That's based on your review of documents produced in this case as well as your e-mail conversations with Mr. Weinstein, correct?

A.   Correct.

Q.   Same question for another individual named Lesley Cusano, C-U-S-A-N-O?

A.   Ms. Cusano works at the branch under Mr. Weinstein, so she would have had some interactions with, I believe, Tony Urrutia with regards to the same account openings.

Q.   Is it fair to say that Ms. Cusano was a subordinate of Mr. Weinstein?

A.   Yes.

Q.   To your knowledge, is Mr. Weinstein and Ms. Cusano still employed by Flushing Bank?

139

                          M. BUCCINO

A.    They are, yes.

Q.    What is Ms. Cusano's title, to your knowledge?

A.    I'm not sure of her specific title.

Q.    Other than Ms. Cusano supporting Mr. Weinstein, do you have any other knowledge about her role in the events involved in this case?

A.    No.

Q.    Same question for an individual named Shane DiGeronimo.  What is your understanding about his involvement in the events related to this case?

A.    He was a credit analyst in the credit center for the business banking team, and I believe he would have been involved in a review of the loan application.

Q.    This individual, Mr. DiGeronimo is not located within the physical branch where Mr. Weinstein or Ms. Cusano work, correct?

A.    That's correct.

Q.    Where does, to your knowledge or to the corporation's knowledge, where does Mr. DiGeronimo physically work?

A.    At 330 RXR Plaza.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

140

M. BUCCINO

Q.   In Uniondale, New York, correct?

A.   Yes.

Q.   So while Ms. Cusano and Mr. Weinstein are in Brooklyn and Mr. DiGeronimo is on Long Island, correct.

A.   Correct, just for the record I want to correct myself it's 220 RXR Plaza, sorry.

Q.   I notice that in order to make that correction you are referring to a digital device that's in front of you, correct?

A.   I did.

Q.   And you specifically referred to that digital device in order to confirm the address and correct your answer, correct?

A.   Correct.

Q.   I will respectfully ask just for the sake of getting your correct testimony to just not use anything.  If you do need to use something, you can tell me and if it's all right with everyone we will proceed that way.  But for today I'm looking for your recollection, as you sit here today, based on the corporate knowledge that's been given to you and your own knowledge, okay?

141

M. BUCCINO

A.    Understood.

Q.    Thank you, I appreciate that.  When you say that Mr. DiGeronimo is a credit analyst. He's part of the underwriting team that reviews any particular transaction that comes before Flushing Bank to determine whether Flushing Bank should move forward with it or not, correct.

A.    I wouldn't view it like that, no.  He has a specific role within the business banking department to say that he reviews any particular transaction would be a little too broad.

Q.    Could you define what his specific role is?

A.    He's a credit analyst within the business banking department.  So he would review potentially loans that go through the business banking team, but we do other transactions that are not within that department.

Q.    Understood.  But the transaction that he's involved with that we're reviewing, is it fair to say that he has ultimate authority as to whether a transaction that he's involved in reviewing gets approved or not, notwithstanding anyone else's position?

142

M. BUCCINO

A.   No.

Q.   In relation to someone like Mr. Weinstein and as we'll later discuss Mr. Puccio, does Mr. DiGeronimo have a, quote/unquote, "veto power" or more authority to say to them this transaction will not be approved for these reasons, over their objection.

A.   I don't think Mr. DiGeronimo has that authority, it would go higher up than him.

Q.   Is it fair to say that Mr. DiGeronimo's role then is to review and see whether there are any red flags or issues that need to be raised, so that someone else can make that determination.

A.   That would be a fair statement, yes.

Q.   And if Mr. DiGeronimo does so, he would raise that to somebody that's physically located in the same building as he is, correct.

A.   More likely than not, yes.

Q.   Or someone outside of the branch where Messrs. Weinstein and/or Puccio work, correct?

A.   Yes.

Q.   So, for example, if Mr. Weinstein

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 145 of 288 PageID #: 11632

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

143

M. BUCCINO

really wants the transaction to go through, and Mr. DiGeronimo flags something and is superior to Mr. DiGeronimo, stated that it will not be approved that would be the decision irrespective of whether Mr. Puccio or Mr. Weinstein want a specific transaction to go through?

MS. RONNEBURGER:  Objection to form.

A.    I don't really understand what you're asking.

Q.    I'll take a step back.  In the documents that you reviewed in your testimony before with Mr. Ruderman, did you observe how Mr. Puccio was helping Mr. Deo achieve the opening of the account and obtaining the loan?

MS. RONNEBURGER:  Objection to form.

A.    Mr. Puccio gathered documentation in relation to the application.

Q.    He also sent e-mails in order to move things along, correct?

A.    Sorry?

Q.    He also sent e-mails to move things along, correct?

A.    I don't know what you mean by move things along.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

144

M. BUCCINO

Q.    Okay, we'll review those documents.

To your knowledge, based on what you've seen, is it fair to say that Mr. Puccio served as an advocate for Mr. Deo in helping him to open the accounts?

MS. RONNEBURGER:  Objection to form.

A.    He was a client representative, I wouldn't say advocate, no.

Q.    And in his role as a client representative he was taking steps to help Mr. Deo open the account, correct?

A.    He was taking steps to try to see if the account could be opened.

Q.    And if Mr. DiGeronimo flagged something then it went up to a superior, and that superior blocked the transaction or stated we will not proceed with this, Mr. Puccio nor Mr. Weinstein would have any authority to override that, correct?

A.    It would depend on a specific situation.

Q.    So you tell me, you're the representative of Flushing Bank, how would it work if Mr. DiGeronimo flagged something and a

145

M. BUCCINO

superior said we're not moving forward with this loan, would someone like Mr. Weinstein or Mr. Puccio have the ability to nonetheless process the loan?

A.   Well, Mr. Weinstein wouldn't be processing loans.  He's a branch manager, he handles deposit accounts.  Mr. Puccio, presumably, would be able to have a discussion under certain circumstances with his superior and the superior of Mr. DiGeronimo to see if the bank would want to come to such an overriding conclusion.  So there's always possibilities of discussion to make, you know, exceptions or decisions made as a joint team.

Q.   Understood, fair enough.  But in the event of a disagreement between someone like Mr. Puccio and someone in the credit analyst division, for lack of a better word, who does the buck stop with, who makes the ultimate decision?

A.   The head of the business banking decision is Theresa Kelly.  She would be able to make any overriding decisions at the end of the day.

Q.   And that individual would be in the

146

M. BUCCINO

same department that Mr. DiGeronimo is in?

A. Yes, she is his extenuated superior, yes.

Q. So she would be the third up in the hierarchy from Mr. DiGeronimo, correct?

A. Quite honestly, I don't know how the levels work there.

Q. Are you aware of any superior between the individual you identified who would make the ultimate decision and the individual that Mr. DiGeronimo would flag things to?

A. I believe Tom Clemens would be Mr. DiGeronimo's superior who he would report directly to. But I don't know for certain, there might be another step in between.

Q. Same question for Mr. Puccio, what is your understanding as to his role in the events involved with Mr. Deo?

A. Mr. Puccio was the business banker working with Mr. Deo to open the business accounts, both the loan and the DDA accounts. He worked with Mr. Deo as opposed to Mr. Urrutia.

Q. So Mr. Puccio was to Mr. Deo what Weinstein was to Urrutia, correct?

147

M. BUCCINO

A.    Roughly speaking, yes.

Q.    Are you familiar with what the firm commercial account means as opposed to a regular business banking account?

A.    I don't know if I understand how you mean it, no.

Q.    Are you aware of any difference between obtaining a commercial account versus a regular business banking account or business bank account?

A.    No.

Q.    Have you ever seen a Rule 30(b)(6) notice of deposition before, generally speaking not in this case?

A.    I've seen a notice of deposition before.  I don't know if I've seen the specific one you mentioned.

Q.    Are you familiar with any type of notice of deposition that typically outlines topics to be addressed?

A.    I did not know that.

Q.    You don't recall reviewing any such 30(b)(6) notice in this case, do you?

A.    Not specifically, no.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

148

M. BUCCINO

Q.   You're not aware of any objections raised by your attorney to a notice of deposition in this case, are you?

A.   No.

Q.   I should have done this earlier, but in terms of the instructions you were given by Mr. Ruderman I just wanted to add two instructions.

We are looking for your best recollection of events today, so while I don't want you to guess at answers even if your memory is not crystal clear I am still entitled to your best recollection.  Do you understand?

A.   Yes.

Q.   And also since you are a corporate representative charged with corporate knowledge, when you don't know something I would like for you to specify whether you are personally unaware or whether you believe that Flushing Bank as a whole would not be aware of whatever it is I'm asking you about.  Okay?

A.   Okay.

Q.   Some other initial questions, have you consumed any drugs, alcohol or medication

149

M. BUCCINO

within the past 24 hours that would affect your ability to testify truthfully today?

A.    No.

Q.    Is there any reason you can think of as to why you cannot participate in today's deposition and provide truthful answers?

A.    No.

Q.    You testified about testifying at depositions before, right?

A.    Yes.

Q.    When was the last time you were deposed?

A.    Probably at least five or six years ago.

Q.    I want to tell you that I may be retreading some ground that Mr. Ruderman covered. I don't want you to be frustrated by this because I want you to understand that even if you have to repeat an answer, I may ask further questions. So if you're inclined to testify I've already answered that question before, I would just respectfully ask that you say instead as I previously testified and repeat the answer. So that I can ask my next question, is that okay

150

M. BUCCINO

with you?

MS. RONNEBURGER:  I would just like to raise an objection to this, it was made very clear by Judge Wicks at the last deposition that we were at that the rule is not only seven hours per witness, but it is that you cannot ask duplicative questions.  So to the extent you are going to be asking my witness questions that have already been asked and answered I am going to be objecting on those grounds.

MR. KATAEV:  You can state your objection, and we will proceed.  I have four-and-a-half hours left, and I will take my time.

Q.   Do you understand my instruction?

A.   Yes.

Q.   Thank you.  Did you have any meetings, phone calls or phone calls in order to prepare for today's deposition?

A.   I had a meeting with counsel in preparation for the last date that this was scheduled for.  So several weeks ago.

Q.   Understood.  How long was that

151

M. BUCCINO

meeting, to your recollection?

A.    Maybe an hour, hour-and-a-half.

Q.    In what format did that meeting take place on?

A.    We met in person.

Q.    Other than that meeting did you have any other meeting or telephone calls to prepare for the deposition?

A.    No.

Q.    You testified also about reviewing some of the documents to prepare for the deposition, do you recall that?

A.    Yes.

Q.    Did you review those documents on your own or did you do so with counsel present?

A.    Both.

Q.    The documents that you reviewed with counsel present was that at the same meeting that you just testified about?

A.    Yes.

Q.    In relation to that meeting where you reviewed documents, when did you next or previously review documents?  In other words, did you review documents on your own before that

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

152

M. BUCCINO

meeting or after that meeting, if you recall?

A.    I think both.

Q.    How long did you take to review documents to your knowledge and recollection before the meeting?

A.    Maybe 20 or 30 minutes.

Q.    And after?

A.    Probably, roughly the same.

Q.    How did you determine which documents you should review?

A.    I was most interested in the business documents that were provided at the account opening.

Q.    When you're referring to business documents, you're referring to items such as operating agreements and tax returns?

A.    Yes.

Q.    Did you speak to anyone other than your attorneys about today's deposition?

A.    I spoke to several other executives at the bank, just to give them notice that I was appearing.

Q.    That you would be unavailable for your usual tasks?

153

M. BUCCINO

A.   Yes, exactly.

Q.   When was the last time you had had contact with Mr. Puccio, you personally?

A.   Me personally, it was probably early in 2024.

Q.   Was it in relation to this case or something else?

A.   It most likely would have been in relation to this case, yes.

Q.   What do you recall discussing with Mr. Puccio in or about 2024?

A.   I probably had follow-up questions for him regarding the nature of the account opening, documentation, any concerns they had and was probably touching base to gather additional documentation for disclosure in the lawsuit.

Q.   Mr. Puccio is no longer an employee of Flushing, is that correct?

A.   That's correct.

Q.   That's been the case since June 2025, correct?

A.   That sounds accurate, yes.

Q.   What is your knowledge as to the circumstances upon which Mr. Puccio separated

154

M. BUCCINO

from employment with Flushing Bank?

A.   It's my understanding he left on his own.

Q.   It was a voluntary resignation?

A.   Yes.

Q.   And what was the basis of your understanding?

A.   A discussion with a HR person.

Q.   What is the name of that HR individual?

A.   Specifically, that would have been Stephanie Plotkin.

Q.   Did you end up learning about Mr. Puccio's separation after June of 2025?

A.   I don't remember exactly how far after, but sometime after.

Q.   You're not generally involved in dealing with personnel issues, correct?

A.   No.

Q.   Typically, you would not know when or whether someone left unless it's someone you directly work with, correct?

A.   Pretty much, no.

Q.   So is it fair to say that you ended

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

155

M. BUCCINO

up learning that Mr. Puccio separated from employment because you were seeking to reach out to him about something?

A.   No, if that might have been a reason. There's also we have monthly e-mails that come out from HR that have information such as departures or transitions within the bank.  I might have seen it from there.  I don't recall exactly.

Q.   Ever since Mr. Puccio separated from employment, have you personally spoke with him?

A.   No.

Q.   Ever since Mr. Puccio separated from employment, to your knowledge, has anyone at Flushing Bank -- I'm sorry, to the company's knowledge has anyone at Flushing Bank contacted him about this case?

A.   About the case, I don't believe so, no.

Q.   To your knowledge has Mr. Puccio signed any separation agreement or other agreement upon his separation?

A.   To my personal knowledge, no.

Q.   Do you have any corporate knowledge

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

156

                              M. BUCCINO

as to whether Mr. Puccio signed any agreement

with Flushing Bank upon his separation?

          A.    No.

               MR. KATAEV:  We're going to call for

          the production of any agreement Flushing

          Bank has with Mr. Puccio had in relation

          to his separation from employment.  We'll

          put it in writing.

               MS. RONNEBURGER:  We'll take it under

          consideration once we receive your demands

          in writing.

          Q.    You were involved in assessing the

allegations levied against Flushing Bank in the

complaint in this case, right?

          A.    Yes.

          Q.    That's one of the documents we looked

at earlier with Mr. Ruderman, right?

          A.    Yes.

          Q.    At the time that you were drafting

that specific correspondence, you were aware that

ultimately that e-mail would have been produced

in the lawsuit, correct?

          A.    I mean I didn't think of it that way,

but yes.

157

M. BUCCINO

Q.    Can you describe to me, generally speaking, the steps taken by Flushing Bank to investigate the allegations in the complaint?  In answering that question I'm not looking for you to provide me with any communications, I'm asking you what actions were taken, for example, we reviewed the complaint, we interviewed this individual, we interviewed that individual and we had an internal discussion.  Just by way of example.

A.    We reviewed the complaint, we placed a hold on all the accounts at issue.  We reviewed documentation related to those accounts and reached out to both Mr. Weinstein and Mr. Puccio for further information and documentation if there was any relating to the accounts and the claims therein.  And then we reached out to outside counsel for assistance.

Q.    Were you aware of any communications verbal or written between Messrs. Puccio and Weinstein about this case, based on your interviews of them?

A.    Specifically, about the actual lawsuit or about the customers involved?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

158

M. BUCCINO

Q.    Both.

A.    About the lawsuit I have no knowledge of them ever talking to each other.  About the customers I know there was some dialogue.  It was their understanding as far as I take it that Mr. Weinstein was working with Mr. Urrutia, Mr. Puccio was working with Mr. Deo, they understood the two individuals Mr. Urrutia and Mr. Deo to be business associates.  Both looking to open accounts, but that the accounts that they were looking to open were for separate entities and that there wasn't any crossover between the two.

Q.    Upon your review of the documents, do you understand that to be incorrect now?

A.    To a degree, yes.

Q.    When you interviewed Mr. Puccio, did you do so, did you do the interview outside of Mr. Weinstein's presence?

A.    I wouldn't say that there was ever a formal interview with Mr. Puccio.  And any conversations I had with him or dialogue or conversations, it would not have included Mr. Weinstein.

Q.    So whenever you had conversations

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

159

M. BUCCINO

with Mr. Puccio about this case, Mr. Weinstein was on hold, correct?

A.    Correct.

Q.    What was the format of your discussion, let's start with Mr. Weinstein?

A.    Again, most of the time it would have been via e-mail.

Q.    You did not have a physical meeting, correct?

A.    No.

Q.    You did not have a virtual meeting, correct?

A.    No.

Q.    Did you have any telephone calls with him?

A.    I don't recall, but maybe.

Q.    When you exchanged e-mails with him, who else was copied on the e-mail, to your knowledge?

A.    Depending on the nature and circumstances Lesley Cusano may have been included in some of the e-mails.  But other than that, they were directed between themselves.

Q.    To your knowledge was any counsel

160

M. BUCCINO

copied on such e-mails?

A.    No.

Q.    To your knowledge, have your e-mails with Mr. Weinstein about this case all been produced?

A.    Unless there's a claim of privilege, I believe so, yes.

MR. KATAEV:  To the extent that any document was withheld on the basis of privilege, the plaintiffs are requesting that Flushing Bank provide a privilege log We will follow up in writing.

Q.    Same question for Mr. Puccio.  Did you have any meetings with him in terms of your investigation into the complaint?

A.    No, no face-to-face meeting.

Q.    Was the format of your investigation similarly via e-mail?

A.    Yes.

Q.    In general, when investigating lawsuits or complaints that come to you, do you have discretion in deciding whether to conduct a physical meeting or a virtual meeting?

A.    Myself personally, yes.

161

M. BUCCINO

Q.    And what about this matter results in your discretion against conducting any physical or virtual meeting?

A.    Mostly location.  There wasn't a need for me to go to Mr. Weinstein or vice versa.  The same thing with Mr. Puccio.

Q.    In the course of investigating the complaint, did you have any reason to find that Mr. Weinstein was not credible in the answers he was giving you?

A.    No.

Q.    In the course of conducting your investigation, did you have any reason to believe that Mr. Puccio was not credible?

A.    No.

Q.    Are you aware sitting here today that there is a text message exchange produced between an individual named Bruce Novicky of Superb Motors who works for Mr. Urrutia and Mr. Deo, where those two individuals are discussing the fact that Mr. Deo has an individual at Flushing Bank "in his pocket," quote/unquote.

A.    I'm what aware of that text exchange, yes.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  --- February 26, 2026

162

M. BUCCINO

Q.   Has Flushing Bank taken any steps to investigate what Mr. Deo meant by the fact that he has someone at Flushing Bank quote "in his pocket," end quote?

MS. RONNEBURGER:  I'm going to object to the extent that there were any privileged investigations undertaken with counsel.

You can answer.

A.   No.

MR. KATAEV:  I just want to have the reporter read back the question, please.

(Record read)

MR. KATAEV:  I'm going to ask both of you as attorneys to understand that I did not ask for communications or privilege.

MS. RONNEBURGER:  I said he can answer the question.

MR. KATAEV:  My question was, that had any steps been taken I just want to confirm that.  I don't think that instruction was fair.  I didn't ask about any communications.  My question was, had any steps been taken.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

163

M. BUCCINO

MS. RONNEBURGER:  He can answer the question.

A.    I did answer the question, I said no.

Q.    Why was it that you decided not to investigate whether any employee of Flushing Bank was accepting bribes?

A.    We didn't give credence to the claim in the complaint.

Q.    So in other words what you're saying is you read the complaint and you didn't find it to be credible?

A.    Correct.

Q.    But you didn't take any steps to investigate whether that actually happened?

A.    We had already investigated the matter as a general whole and we were confident with our investigation.

Q.    Did you ever ask Mr. Puccio whether he had accepted any money from Mr. Deo in relation to the work that he was performing for him?

A.    No.

Q.    Are you aware of any policies at Flushing Bank about accepting bribes in order to

164

M. BUCCINO

perform work for a customer?

A.   Yes.

Q.   Are you aware that it's a federal crime for somebody to accept bribes in exchange for performing services for them at a bank?

A.   Yes.

Q.   Are you aware that Mr. Laurie, a defendant in this case, has pled guilty to accepting a bribe while working at a bank?

A.   I did not know that.

MR. KATAEV:  I want to call for the production of policies that Flushing Bank has concerning kickbacks, bribes or any similar type of incidents, and I will follow up in writing.

Q.   Are you aware as to any requirement that Flushing Bank thoroughly investigate any allegations of accepting bribes by its employees?

A.   I'm not.

Q.   Have you ever seen the text message that we've been discussing?

A.   I've seen it as part of the complaint, yes.

Q.   To your knowledge, was any discipline

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

165

M. BUCCINO

issued to Mr. Puccio in connection -- withdrawn.

To your knowledge was Mr. Puccio ever disciplined in any manner while working at Flushing Bank?

A.    That I don't know.

MR. KATAEV:  I'm going to call for the production of Mr. Puccio's personnel file and specifically any disciplinary history.  We'll follow up in writing.

Q.    To your knowledge, does Flushing Bank perform performance evaluations?

A.    Yes.

MR. KATAEV:  I'm going to call for the production to the extent that they're not included in any personnel files, all written performance evaluations of Messrs. Weinstein and Mr. Puccio?

MS. RONNEBURGER:  That's fine.  I'm just going to reiterate that Flushing Bank reserves all rights to object on any basis to any requests made.  We will take it under consideration.

Q.    Generally speaking, can you explain the organizational structure of Flushing Bank?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

166

M. BUCCINO

A.   We have a CEO who is in charge of the bank as a whole.  Underneath him are various other executives.  There is a COO, a chief lending officer, a chief accounting officer, a chief of staff, a director of retail banking.  And then under them are various senior executive vice presidents in charge of various different areas.  Under them are various vice presidents, and so on and so forth.

Q.   Is it fair to say that the corporate hierarchy you described is for Flushing Bank as an organization as a whole?

A.   Yes.

MS. RONNEBURGER:  Objection to form.

Q.   Is it fair to say that at each branch of Flushing Bank there's a separate hierarchy within the branch?

A.   Yes, each department has its own hierarchy.

Q.   With respect to Mr. Weinstein focusing on the branch, can you describe the organizational structure of that branch and where he falls in in that organizational structure?

A.   When you say branch, do you mean a

167

M. BUCCINO

physical bank branch or the department that he's in on a larger scale?

Q.   I want to first focus on the physical location that he's in because you testified Mr. Weinstein is in Brooklyn, right?

A.   Yes.

Q.   So in the building that he worked in, what was the organizational structure and where did he fall in?

A.   He is the branch manager, so he is in charge of the branch.  There are probably four to five maybe more -- I forget how large his branch is -- sales associates and other bankers that work under him that deal with customers on a day-to-day basis at that branch location.

Q.   Is it fair to say that there is no one that Mr. Weinstein reports to that works inside that branch?

A.   Correct.

Q.   Same question for Mr. Puccio, focusing on the physical location where he works?

A.   Well, he worked -- I believe Mr. Puccio worked out of our 899 Park Avenue office, although I'm not a hundred percent sure about

168

M. BUCCINO

that.  Either way he would have reported up to a business banking team leader, who probably would have been in the same facility, although possibly not.  And then the team leader would have reported up to the business banking director, which is Theresa Kelly.

Q.   Is the location that Mr. Weinstein worked in in a physical bank location where customers can come in and make deposits, and so on and so forth?

A.   Yes.

Q.   What about Mr. Puccio, the same thing?

A.   No, he worked in the back office that is not open to customers.

Q.   Understood.  So the individual that you said was the top person for Mr. Puccio is not equivalent to Mr. Weinstein, correct?

A.   No, they're in different departments entirely.

Q.   Understood.  Does Flushing Bank have any parent company, subsidiaries, affiliates and so on?

A.   We have at least one subsidiary that

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

169

M. BUCCINO

is an online bank called iGObanking.  There may still be certain other subsidiaries working in the real estate and business banking departments, I forget exactly the structure that we have going on over there.

Q.    Flushing Bank is a state charter bank, correct?

A.    Correct.

Q.    Can you describe to me the difference between a state charter bank and a federal charter bank?

A.    Mostly it's who the regulators are that oversee you.  We are overseen by the FDIC but also by the New York State Department of Managing Services.

Q.    Is the difference that federal banks are not overseen by the State Department of Managing Services?

A.    I believe so, yes.

Q.    Flushing Bank is regulated by federal and state agencies while a federal charter bank would only be regulated by a federal institute, correct?

MS. RONNEBURGER:  Objection to form.

170

M. BUCCINO

A.    Possibly, yes.

Q.    Other than that, are you aware of any difference between the state and federal charter banks?

A.    There may be other differences that I'm not aware of.

Q.    Is it fair to say that Flushing Bank has many different policies?

A.    I guess so, yes.

Q.    Do you know if there is a specific policy called a Know Your Customer policy?

A.    I don't know if we specifically titled a policy like that but we do have policies that encompass the Know Your Customer protocols and procedures that we have in place.

Q.    Know Your Customer is an industry term in banking, correct?

A.    Yes.

Q.    To your knowledge, where does that term come from?

A.    Federal regulators, I believe.

Q.    To your knowledge what does Flushing Bank call its Know Your Customer policies?

A.    I believe our Know Your Customer

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

171

M. BUCCINO

policies are part and parcel of our larger compliance policy.

Q.   And in sum and substance what is the purpose of having a Know Your Customer policy?

A.   It details information you are required to obtain from customers upon first account opening.

Q.   And is part of the reason for regulators for acquiring such policies and banks doing them is for fraud prevention, correct?

A.   Amongst other things, yes.

Q.   Some of the other reasons would include terrorism/counterterrorism efforts, correct?

A.   Sure, yes.

Q.   Other reasons would involve international trade and making sure that a bank is not doing business with an individual or company that is sanctioned, correct?

A.   Correct.

Q.   Is it fair to say that Know Your Customer policies are in place to determine and confirm that the identity of an individual or company is who that individual and company say

172

M. BUCCINO

they are?

A.    Yes.

Q.    You as an individual working in a bank are aware that individuals sometimes claim to be someone they're not in order to obtain credit or open an account or use any financial product, correct?

A.    Yes.

Q.    So for individuals, generally speaking, banks require identifying documents such as passports and/or driver's license and similar government-issued documents, correct?

A.    Yes.

Q.    To your knowledge as it relates to Flushing Bank's compliance policy or Know Your Customer policy, what is required in order to determine that a company and/or its owners are who they say they are?

A.    It varies depending on the corporation or the corporate structure.  If it's an incorporation or an LLC or a partnership, yada yada.  But we generally require documentation showing that the company is registered with New York State if it's claiming to be a New York

173

M. BUCCINO

State based company.  Operating agreements for LLCs, as well as articles of incorporation.  And it varies like I said from entity to entity.

Q.    To your knowledge is there a requirement of a policy that stock certificates be provided?

A.    For a deposit account, no, I don't believe it's required for loans either but I'm not a hundred percent sure.

Q.    To your knowledge, are stock certificates ever required?

A.    They might be asked for to clarify any underlying issues with other documentation that's been provided, but they're not strictly speaking a requirement or procedure.

Q.    What about a tax return?

A.    Again, for a deposit account it would not be a requirement but it might be asked for based on circumstances.  For a loan, I do believe that they would probably be required, but I'm not a hundred percent sure.

Q.    Other than documents you identified such as operating agreements and potentially tax returns, are there any other documents required,

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

174

M. BUCCINO

to your knowledge, for an LLC or a corporation to prove that it is a validly existing company?

A.    Like I said, the articles of incorporation would be required as would documentation from the state verifying that those documents are on file with the state.  That the entity is operating under state license.

Q.    And now a separate question from that.  Under those lines, policies and/or Know Your Customer policies, you would also be required to determine that the individual acting on behalf of the corporate entity is authorized to do so, correct?

A.    Yes.

Q.    That is separate and apart from whether it's a validly existing corporate entity, correct?

A.    Yes.

Q.    And what steps, according to Flushing Bank's compliance policies and/or Know Your Customer policies does Flushing Bank take to determine whether the individual acting on behalf of a corporate entity has the authority to act?

A.    Well, to review the documents for the

175

M. BUCCINO

corporate entity would be the initial step.
They'd also be required to sign off on a
certification of beneficial ownership which would
validate who owns the company.  And any owners
would have to sign off on a resolution of
authority where they would give authority to any
subsequent individuals to actually sign on the
accounts.

Q.    Is it fair to say that signing off on
a certification of beneficial ownership by itself
is sufficient according to Flushing Bank's
policies to confirm that the individual signing
it has the authority to act?

A.    No, that's why we request the -- or
require the other documentation as reference for
such a determination.

Q.    Is it fair to say that the State
Department documents that you refer to to confirm
its valid and existing does not provide who owns
the company?

A.    Strictly speaking, no.

Q.    And while an operating agreement
would show who has an interest in the company,
you agree with that, right, that the operating

176

M. BUCCINO

agreement would show that?

A.   Yes.

Q.   Does the fact that an operating agreement can be provided by anybody, and the fact that such an operating agreement does not get certified or filed with the state, for example, are you aware of any policy that because of that, Flushing Bank has an obligation to independently verify the ownership?

A.   We perform all regulatory required due diligence on businesses.

Q.   What are the regulatory required due diligences?

A.   Collection of documents I just referenced.  Onsite site visitations for the businesses and BSA review and other hits that might come up.

Q.   When documents are received establishing authority to act and/or validity of a corporate entity, are they placed in any repository in Flushing Bank?

A.   Yes, we have a central database for all open accounts.

Q.   And is there a special name for that

177

M. BUCCINO

central database at Flushing Bank?

A.    The system that we use is called Synergy.

Q.    S-Y-N-E-R-G-Y?

A.    Correct.

Q.    That's a third-party company that you contract or Flushing Bank contracts?

A.    Yes.

Q.    Synergy is a web-based or computer-based product, correct?

A.    Yes.

Q.    To your knowledge, Flushing Bank had no involvement in creating such a product, correct?

A.    Correct.

Q.    To your knowledge, Flushing Bank has no claim that such a product is proprietary, correct?

MS. RONNEBURGER:  Objection to form.

A.    No.

Q.    To be clear, the owners of Synergy and Synergy itself may claim that its product is proprietary, but Flushing Bank was not involved in that process, correct?

178

M. BUCCINO

A.    Correct.

MR. KATAEV:  Plaintiffs are going to call for the production of any agreements between Flushing Bank and Synergy as well as any user manuals or related documentation about the use of such a program.  We'll follow up in writing.

MS. RONNEBURGER:  We reserve our right to object to these demands, but we will take them under consideration.

MR. KATAEV:  You can make a standing reservation of rights.

MS. RONNEBURGER:  Okay.

MR. KATAEV:  I'll accept that going forward.

Q.    So after a documentation of a corporation is placed in Synergy, does that program have the functionality to cross reference all other documents in a repository?

A.    No.

Q.    Have you presently used the Synergy product?

A.    For review, but not for uploading.

Q.    Understood.  To your knowledge in

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

179

M. BUCCINO

this case who were or are the individuals that would have uploaded the documents provided by Mr. Deo?

A.    Because of the time of the account openings, I'm not a hundred percent sure but today it would be handled by the business services department.  I believe they would have been the ones who handled it at the same time as this, but I am a not a hundred percent sure like I said.

Q.    Is your answer the same for any document provided to Mr. Puccio by Mr. Deo?

A.    So the deposit account documents would have been done by business services, whether they were -- well yeah.  Mr. Deo's presentation to Mr. Puccio for deposit accounts would have gone to the business services or would today.  I think they would have gone at the time. The loan records or loan application, I'm not exactly sure who would have uploaded those to be honest.  Somebody in the lending department.  I don't know their procedures as well as I know the deposit account procedures.

Q.    Same question for any documents

180

M. BUCCINO

provided by Mr. Urrutia to Mr. Weinstein?

A.   So those most likely and to my knowledge did not make it into Synergy because none of the accounts discussed between Mr. Urrutia and Mr. Weinstein were actually opened. They were only discussed and negotiated to some degree, but without an open account you don't get a Synergy file.

Q.   You are aware that Mr. Urrutia did provide documentation about his interest in Superb Motors Inc., correct?

A.   I am, yes.

Q.   Is it fair to say that upon Mr. Weinstein's receipt of those documents -- withdrawn.

Is it fair to say that upon Mr. Weinstein's receipt of those documents that Flushing Bank had corporate knowledge about the ownership interest Mr. Urrutia had in Superb?

MS. RONNEBURGER:  Objection to form.

A.   Mr. Weinstein had knowledge about Mr. Urrutia's claims.

Q.   Do you have any knowledge as to whether Mr. Weinstein uploaded any of the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

181

M. BUCCINO

documents received by him from Mr. Urrutia into any company platform system or technology including Synergy and not including Synergy?

A.    I don't believe he did, no.

Q.    And how do you know that?

A.    It wouldn't have been procedure and I don't know of another system that he could have or would have uploaded such documents into for any reason.

Q.    In your investigation of the claims in this case, specifically referring to the conversations you've had with Messrs. Puccio and Weinstein, respectively, did you learn about any conversations that those two individuals had with each other about Mr. Urrutia's attempts to open an account?

A.    As I said, it was in my conversations with them that it seemed clear to me that their understanding was that the accounts Mr. Urrutia was working with Mr. Weinstein were different from the accounts that Mr. Deo was working with Mr. Puccio, and that there was no overlap between the entities.

Q.    What accounts did Mr. Puccio tell you

182

M. BUCCINO

he was seeking to open, for what entities?

A.    The accounts that were opened. Superb Motors, Northshore Motor Leasing and Sunrise Highway.

Q.    What accounts to your knowledge to Flushing Bank's knowledge, do you understand Mr. Urrutia was seeking to open, in other words, for which corporate entities?

A.    Right.  Again, I don't recall off the top of my head the name of those entities.  They were in e-mails and other conversations, but I don't recall them as well because I was more into open accounts and I haven't looked at those as often.

Q.    David Weinstein would know the answer to that question, correct?

A.    He would -- whether or not he would know it off the top of his head I don't know, but he would definitely be able to obtain that information which I could as well.  I just don't have it right now.

Q.    Other than Synergy what other compliance tools does Flushing Bank use in order to protect and deter and/or prevent fraud?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

183

M. BUCCINO

A.    We have several tools that review checks and ACH for potential red flag items, we do, like I said before, we do an OFAC and other analysis of accounts and entities of individuals at account opening.

Q.    You said there are several tools. Can you identify one of the tools?

A.    One of the tools we use is called oasis.

Q.    Is that another third-party company?

A.    I believe so, yes.

MR. KATAEV:  We're going to call for the production of any agreement between Flushing Bank and Oasis, as well as any user manuals or related user documentation.  We'll follow up in writing.

Q.    Other than Oasis, what other tools do you use?

A.    I don't recall the exact names offhand that our BSA team has in place.

Q.    What does Oasis do?

A.    It reviews checks of a certain limit. I believe it changes periodically depending on

184

M. BUCCINO

our four teams internal determinations.  But any check over a certain amount would be reviewed against the account history of that check to make sure that the signature lines up, that the check number lines up with all the recent checks, that there's no repeat of the same check number.  It will also have a cursory review of the check amount and the payee name to make sure that it doesn't appear to have been doctored in any way, shape or form.

        Q.   To your knowledge do all banks use a tool such as Oasis?

        A.   I would assume that most banks use a similar tool for the same purpose.

        Q.   And while Oasis is typically used to determine whether there are any fraud in relation to checks issued, does Oasis also get used for wire transfers or ACHs?

        A.   No.

        Q.   What tools, if any, exist to detect, deter and prevent fraud with respect to ACH transactions?

        A.   Again, I don't recall the exact name of the tool, so I'd have to get back to you on

185

M. BUCCINO

that.

MR. KATAEV:  We'll mark this as a request and offer an interrogatory that we will propound and follow up in writing.

Q.   Can you describe the functionality of the tool that you cannot name with respect to preventing, detecting and deterring fraud in relation to ACH transactions?

A.   I think generally we have ways of picking up on patterns within ACH transactions in a single account that may seem suspicious either because of amounts or repeated ACH in accounts that didn't previously have repeated ACH, things of that nature.

Q.   Do you have any knowledge as to whether this tool is used automatically from inception or at a later point in time?

MS. RONNEBURGER:  Objection to form.

A.   I think we have general tools in place that are working at all times.  Certain accounts for various reasons might get flagged for more detailed reviews based on circumstance.

Q.   To your knowledge is the tool automated to perform these functions through the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

186

M. BUCCINO

use of a computer or are they manually reviewed in realtime?

A.   I think in most cases there is an automation for a first level review and then both in Oasis and in the ACH there is then a second level manual review after it's been flagged.

Q.   If the automated system does not detect anything, it never gets to the second level of review where an individual looks at it, correct?

A.   That's more likely than not true, yes.

MR. KATAEV:  We're going to call for the production of all agreements between Flushing Bank and any third-party entity that was used to detect, to deter and prevent ACH transaction fraud.  We'll follow up in writing.

Q.   As part of Flushing Bank's general policies and those related to fraud prevention, is Flushing Bank required to search for publicly-available information concerning lawsuits about the customer that is seeking to open an account?

187

M. BUCCINO

A.    To my knowledge that is not a requirement, no.

Q.    And you are aware in this case that employees of Flushing Bank did search for and did find existing lawsuits for Northshore and Sunrise, correct?

A.    Yes.

Q.    Now, based on your prior testimony with Mr. Ruderman, an account for Northshore and Sunrise was initially opened in or about March 23rd of 2023, correct?

A.    It sounds possible, yeah, I don't know the exact dates.

Q.    To your knowledge and based on your prior testimony after the account was opened, shortly thereafter, on or about March 31st, 2023, Flushing Bank learned about the lawsuit concerning Northshore and Sunrise, correct?

A.    Yes.

Q.    In relation to Flushing Bank's policies on these subjects, what, if any, steps does Flushing maintain after learning about a lawsuit for an account that just opened?

A.    We wouldn't necessarily take any

188

M. BUCCINO

steps just when we learn that a party that has an account with us is involved in a lawsuit.  That wouldn't necessarily promote anything on our part.  It's actually depending upon the circumstance of the lawsuit.

Q.   Are you aware of any certification or attestation or affirmation contained within the certification of beneficial ownership about the existence of any lawsuits?

A.   The deposit accounts, CBO, I don't believe has anything like that.

Q.   Is there any other document performed that an individual is required to complete on behalf of himself or behalf of an entity that requires certification about no existing lawsuits?

A.   That may be part of the loan process I'm not a hundred percent sure.

Q.   What about opening a bank account in general?

A.   For a deposit account, no, we wouldn't ask about existing lawsuits.

Q.   Generally speaking, if Flushing Bank discovers an order prohibiting opening up a bank

189

M. BUCCINO

account after it opened an account, would that lead to a hold being placed on that account?

MS. RONNEBURGER: Objection to form.

A. If we learned of an order preventing the opening of a bank account that we had already opened?

Q. Yes.

A. If the opening of the account was subject to that order, then we would act in kind. Yes, we would take the necessary steps to comply with the order.

Q. Would it matter whether Flushing Bank was a party to that suit or specifically named in the order?

A. I mean it would depend on the language of the order, but if there's an order a valid court order that says no bank or no institution should open an account for this person or this entity then we would do that.

Q. Even if the account was already opened, correct?

A. Well, if the account had already been opened and it shouldn't have been, then we would at the very least put a hold on the account.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

190

M. BUCCINO

Q.   That's standard Flushing Bank policy, correct?

A.   Yes.

Q.   Are you involved in the creation of any of these fraud prevention policies or Know Your Customer policies?

A.   No.

Q.   Are you involved in reviewing these policies from time to time?

A.   I mean I do review, them but not for the purposes of signing off on them if that's what you mean.

Q.   You review them in the course of your duties to determine if an employee acting under them is required to do something or not or whether you have to do something or not, right?

A.   Basically, to make sure that accounts are opened and performing within those policies.

Q.   To your knowledge have any such policies been produced in this case?

A.   If they requested it, I'm sure that they were.  I don't know if they were part of the request.

Q.   Are you familiar with how often these

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 193 of 288 PageID #: 11680
SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

191

M. BUCCINO

policies are revised?

A.   I believe they're reviewed at least annually, but it might be less strict than that.

Q.   Are you aware of any instance in your entire tenure at Flushing Bank where a fraud prevention policy was revised following a fraud event occurring?

A.   Personally, no.  But again, I don't have a hand in actually drafting these policies and procedures, so it's not to say that it wasn't done.

Q.   Since the complaint in this case surfaced, has Flushing Bank changed its policies about proving ownership of an entity before proceeding to open up any financial product?

A.   No.

Q.   Based on your review of the documents produced by Mr. Deo in this case, and your general knowledge about the case overall, do you believe Mr. Deo was truthful in asserting that he was the owner of Northshore, Sunrise and/or Superb?

MS. RONNEBURGER:  Objection to form.

A.   I don't think it's for me to say.

192

M. BUCCINO

Q.    Well, you've reviewed the documents and information, correct?

A.    Yes.

Q.    Based on your objective assessment, do you believe Mr. Deo was truthful in asserting ownership of these entities?

A.    I believe Flushing Bank was proper in its understanding of Mr. Deo's ownership and actions therein.  Whether or not Mr. Deo was truthful was not for me to determine.

Q.    I understand that your position is then Flushing Bank acted appropriately based on the information available to it, correct?

A.    Yes.

Q.    But is it fair to say that after everything happened and after having an opportunity to review all the evidence and information that Flushing Bank erred in its decision-making as to the financial products issued to Mr. Deo?

MS. RONNEBURGER:  Objection to form.

A.    No.

Q.    Now there is a loan that Mr. Deo obtained for $500,000, correct?

193

M. BUCCINO

A.   Yes.

Q.   And --

A.   Well, Northshore obtained, it was not Mr. Deo's personal loan.

Q.   Understood, yes.  That's what I mean so you could understand that question.

And Flushing Bank is in the business of providing loans in order to earn money by collecting interest on them, correct?

A.   Yes.

Q.   And in this particular case, Flushing Bank did not receive its principal back nor the interest that it expected to obtain, correct?

A.   I believe so, correct.

Q.   Flushing Bank was therefore damaged by Northshore or Mr. Deo's inability or refusal to pay back the loan, correct?

A.   Yes.

Q.   With that in mind, would you agree with me that Flushing Bank erred in its determination to issue the financial loan to Mr. Deo or through Northshore?

MS. RONNEBURGER:  Objection to form.

A.   No.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

194

M. BUCCINO

Q.   Even though Flushing Bank lost money by issuing the loan?

A.   We lose money by issuing the loan it's part of business.

Q.   Did Flushing Bank make any determination as to whether Mr. Deo engaged in fraud?

A.   No.

Q.   Did Flushing Bank take any steps to report Mr. Deo's conduct to any law enforcement authorities?

A.   I'm fairly certain that there would have been SARS filed probably on this matter.  If not before then definitely after the lawsuit was filed and the fraud was claimed.

Q.   You referred to a term called SARS, can you confirm for us that that is an acronym for something?

A.   Yes, it's suspicious activity report that our BSA team would file for suspicious activity.

Q.   To your knowledge, was a SARS report only filed after this lawsuit was filed on August of 2023?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

195

M. BUCCINO

A.    If there was a SARS filed, then it was probably filed then.  Yeah, it would have been filed after that report.

Q.    Are you aware of any SARS report filed in relation to this case prior to August of 2023?

A.    No.

Q.    Are you aware of any SARS report ever been filed in relation to this case?

A.    Again, I'm fairly certain that we would have filed one based on the nature of the case, but I can't say for certain that it was filed.

MR. KATAEV:  We're going to ask Flushing Bank to search for and produce any SARS reports filed in relation to this case.  We'll follow up in writing.

Q.    Can you explain which policy discusses the filing of the SARS report?

A.    It would be our Bank Secrecy Act policy.

Q.    Repeat that?

A.    The Bank Secrecy Act.

Q.    And the Bank Secrecy Act refers to a

196

M. BUCCINO

federal law, correct?

A.    Yes.

Q.    To your knowledge other than the actual text of the statute comprised of the Bank Secrecy Act, does Flushing Bank have a separate policy dealing with its components of the policy?

A.    Yes, we have a BSA policy.

MR. KATAEV:  We're going to call for the production of the bank's BSA policy, and we will follow up in writing.

Q.    Does Flushing Bank use any electronic system to track its compliance with its own policy and the BSA?

A.    Yes.

Q.    What was the name of that system?

A.    It's escaping me at the moment but there is a system where the BSA keeps all their filings and investigations in.

MR. KATAEV:  We will propound an interrogatory and hereby file a request and follow up in writing.  We'll also call for the products of any agreement Flushing Bank has with the owner of any such third-party system as well as any user

197

M. BUCCINO

manuals or documentation that's related to the use of the system.  We'll follow up in writing.

Q.   To your knowledge, no SARS reports were produced in the Flushing Bank's production of documents in this case, correct?

A.   I don't know.

Q.   Are you aware of the fact that Flushing Bank produced an Excel spreadsheet summarizing its production of documents in this case?

A.   That sounds plausible.

Q.   You have not specifically reviewed that summary of the documents produced in this case by Flushing Bank, have you?

A.   Not in detail, I might have looked at it at some point, but I haven't reviewed it.

Q.   And it's fair to say that you haven't looked at every single document Flushing produced in this case, right?

A.   Correct.

Q.   If I recall correctly, your testimony was that your focus was on the corporate documents produced by the plaintiffs and

198

M. BUCCINO

defendants in this case, right?

A.    Correct.

Q.    And those are the only documents you looked at in the entirety of Flushing Bank's production, correct?

A.    No, I would have seen some of the others.  I wouldn't necessarily know the details of those as well.

Q.    Were you ever provided training on any fraud prevention tools that we've discussed so far in your testimony?

A.    I personally don't work with them, so no.

Q.    Is it fair say that an individual such as Mr. DiGeronimo would use those tools.

A.    I wouldn't go so far as to say that, no.  The fraud prevention tools I discussed, they dealt more with transactions from deposit accounts such as ACH and checks.  Mr. DiGeronimo works in the credit center for the business banking team, he wouldn't really have any reason to be looking into the specific transactions for deposit accounts.  It's not part of his purview.

Q.    What about someone such as Ms.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

199

M. BUCCINO

Cosano?

A.    She wouldn't be looking at it on any kind of regular basis either.

Q.    What about Mr. Weinstein and Mr. Puccio?

A.    No, they're not part of the fraud detection team or BSA team, so they wouldn't be looking at it unless they were guided to it by someone else.

Q.    You referred to a fraud protection, is that a specific department that Flushing Bank has?

A.    We have a fraud department, yes.

Q.    Does the fraud department utilize any sort of ticketing system in terms of various fraud events that may occur?

A.    They work kind of hand in hand with the BSA team to review suspicious activity and fraudulent activity and they use some of the same things.

Q.    Is there any sort of repository for potentially detecting fraud that gets flagged when reviewed?

A.    The fraud, both the fraud and BSA

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

200

M. BUCCINO

teams have repositories for their investigations, so that's probably what you're talking about.

Q.    What tools do BSA and the fraud team use to manage the various potential fraud events?

A.    Other than the ones we've already discussed, I'm not sure what you're asking.

Q.    There's no tool like sales force or some other tool used to see all the list of potentially fraudulent activity and determine this one is kosher or we're closing in and this one needs further review?

A.    I don't know if it would be set up like that.

Q.    Who would know?

A.    The head of our fraud team is Joanne Mione and the head of our BSA team is Anthony Mangano, they would have a better understanding of the fraud detection system.

THE WITNESS:  If I may, do you have any idea how much longer because if it's going to be that much longer because I would like to take a break?

MR. KATAEV:  Now is a good time to take a break.  Let's go off the record.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

201

M. BUCCINO

(Discussion off the record)

(Recess taken)

BY MR. KATAEV:

Q.   Generally speaking, how does Flushing Bank enforce its fraud prevention policies?  Do you hear me?

A.   Yes, I'm just...

Q.   I apologize, take your time I was just concerned.

A.   The fraud team has some semblance of tracking to determine cases that come up and how they're handled and what their final review is.

Q.   Are you aware of any specific items that were tracked by the fraud prevention team in relation to this case?

A.   No.

Q.   To your knowledge, has any search been conducted in that system for any events related to this case?

A.   Presumably when the lawsuit was filed and the matter was discussed internally a search was done to see if there had been transactions that should have gotten flagged and reviewed, but to my knowledge there's nothing that came up from

202

M. BUCCINO

any of those searches that we found to be concerned.

Q.    Well, there's a difference between nothing found being concerning versus nothing found at all, right?

A.    Yes, I'm not aware of anything that was flagged at any point in time from these accounts for fraud.

MR. KATAEV:  To the extent that a search of the system being used by the fraud prevention team related to events, has any entries related to Northshore, Sunrise and/or Superb and/or Anthony Deo and/or Robert Anthony Urrutia I would call for their production and I will follow up in writing.

Q.    It's fair to say that a hold was placed on this account for Superb when Mr. Urrutia contacted Mr. Weinstein to make a complaint that the account was not properly opened, correct?

A.    Correct.

Q.    After that event occurred, to your knowledge, did the fraud prevention team have an

203

M. BUCCINO

event entered into the system that it uses to track these events?

A.   I don't think the block on the account would have triggered the fraud prevention team per se, no.

Q.   Do you have specific knowledge one way or the other, other than your thoughts?

A.   No.

Q.   Who would know?

A.   The corporate entry team, presumably.

Q.   The two individuals you identified before the break?

A.   Yes.

Q.   During the break, did you discuss your testimony with anyone?

A.   No.

Q.   During the break when you left the room, did you take your cell phone with you?

A.   Yes.

Q.   During the break without disclosing any communications you had, did you review, receive or send any messages between yourself and your counsel about this deposition?

A.   No.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

204

M. BUCCINO

Q.    In response to Mr. Urrutia's phone call that led to the hold being placed on the accounts, was any investigation performed to the corporate knowledge of Flushing Bank?

A.    I'm sorry, could you repeat that?

Q.    In response to Mr. Urrutia's phone call resulting in the hold being placed on the accounts, was any investigation conducted subsequent to that?

A.    I wouldn't consider it a formal investigation, but I did after Mr. Puccio and Mr. Bader I think it was brought the issue to my attention, I looked into the accounts more deeply and then we received the lawsuit and that's when we put the additional holds on the other accounts.

Q.    When you did a thorough review of the accounts following that phone call, what did you come to learn?

A.    Well, Mr. Weinstein provided me with documentation Mr. Urrutia had given him regarding Superb Motors.  So at that time it became clear that we had non-conforming documents or disputing documents.  And so that the Superb Motors hold

205

M. BUCCINO

should remain until we received more word from a court or from somebody else about the actual ownership situation.

Q.   It's fair to say that when you looked at the information produced by Mr. Weinstein, you understood that there was an issue with the documents produced by Mr. Deo, correct?

A.   Yes.

Q.   Had the documents produced by Mr. Urrutia to Mr. Weinstein been uploaded to Synergy or some other system, assuming that Mr. Deo's documents were uploaded there, would the system find any issue that it would flag to the user of the system?

A.   No, it's not that detailed of a system.  It wouldn't analyze the actual documents for conflicts, as it were.

Q.   So what exactly does Synergy do?  Can you give me -- withdrawn.

A.   It's basically just a process of documents.  It doesn't do any analysis or a thorough investigation of the contents.  So an account gets opened and all the documents from that account are uploaded to Synergy for later

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  --- February 26, 2026

206

M. BUCCINO

use and review, if necessary.  But it can't cross reference one account and another account and the documents therein.  It doesn't have that kind of capability.

Q.   But the repository exists for a human user to do that?

A.   The repository exists so that you can find documents based on the account number and/or the title on the accounts.  So theoretically a human user if there had been two different files, they could have seen that there were conflicting documents, but there weren't two different files in this case.

Q.   Understood.  Had the documents produced by Mr. Urrutia to Mr. Weinstein been uploaded to Synergy and had a user reviewed it, potentially, that user would have seen some documents and it would have raised some sort of red flag, right?

A.   Potentially.

Q.   Why is it, again, that documents don't get uploaded to Synergy unless an account is opened?

A.   We don't have a reference, first of

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

207

M. BUCCINO

all.  Usually the accounts' documents that are uploaded to Synergy are based on an account number.  So if there's no open account number that goes with the account to use when uploading, and it's just not, the system is not used for that.  That would require us to upload far more documents that 99 percent of the time serve no purpose to the bank going forward, so why would we do it.

Q.   In your review of the financial account for Superb that it came to your attention after Mr. Urrutia made a complaint, did you look at the specific financial transactions?  Let me withdraw that.

Earlier you testified that you looked at the corporate documentation provided by Mr. Urrutia, correct?

A.   Yes.

Q.   Other than the corporate documentation provided by Mr. Urrutia, did you review the financial bank statements, the monthly bank statements for that account?

A.   For the account that Mr. Deo opened?

Q.   Correct.

208

M. BUCCINO

A.   I probably did a cursory review. Mostly to see how much money had gone through the account.

Q.   Did you specifically look at where the money went to?

A.   Well, on a statement the only time you would be able to see where the money went was if it was a wire transaction.  And I might have reviewed some of them on a cursory level.  But I don't remember any detailed analysis of it, no.

Q.   Do you recall if there were any transactions that were debits to car buyers, NYC Inc.?

A.   I don't recall that in particular, no.

Q.   What, if anything, do you recall about your assessment of the activity on that account?

A.   There was a lot of transactions, generally speaking, but I don't remember anything specifically about any individual debits or credits or specific payees or payors or anything like that.

Q.   You knew when you were viewing this

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

209

M. BUCCINO

financial account that it was a dealership, right?

A.    Yes.

Q.    And generally speaking any business has typical expenses that flow through its accounts, correct?

A.    Yes.

Q.    In your tenure and experience at Flushing Bank for the number of years you've worked there, it's fair to say that you've reviewed many statements in which you've seen typical disbursements from a bank account such as payroll, you know, checks paid for rent, and so on and so forth, correct?

A.    Yes.

Q.    In your review of this particular account, you did not see any such payments being made, correct?

A.    I don't recall.

Q.    Do you have any recollection as to any observations that you made other than the amount of money that went out of the account?

A.    Honestly, no.

Q.    Why was it important to determine the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

210

M. BUCCINO

amount of money that left the account, but not anything else?

A.   At that point we had the account frozen.  So any fraud that theoretically could have taken place had already taken place.  So I was more concerned about the potential liability as opposed to the potential fraud.

Q.   In your review of the financial statements for that account, is it fair to say that fraud did occur?

MS. RONNEBURGER:  Objection.

A.   I don't know.

Q.   When you reviewed the financial statements, you were not looking for if fraud occurred?

A.   It didn't seem to me at the time that there was any claim of fraud in the actual transactions.  It was in the setup of the account.  So my concern wasn't transactions.

Q.   Is it fair to say that you currently understand that the plaintiffs' position is that the opening of the bank account was in itself fraudulent?

A.   I understand that's the plaintiffs'

211

M. BUCCINO

position, yes.

Q.   But isn't that what Mr. Urrutia complained of which led to the hold being placed on the account?

A.   Yes.

Q.   You also made a determination in reviewing the financial statements for that account of how much money was left in that account, correct?

A.   Yes.

Q.   If I recall correctly you made the determination that there was approximately $2,000 left in that account, correct?

A.   If that's what I said in the e-mail, I don't recall.

Q.   Did it strike you as odd that there was only $2,000 left in that account?

A.   I don't recall if it struck me as odd at the time.  It would have been dependent on the nature of the transactions and whether or not incoming expenses were on a regular basis.

Q.   Did anyone ever contact Mr. Urrutia after his complaint was made about the account being fraudulently opened?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

212

M. BUCCINO

A.    I don't know.

Q.    Who, if anyone, would know about that?

A.    If he was contacted it would have probably been Mr. Weinstein, but I think -- I don't think he contacted him.  Unless it was going to tell him the account had been blocked in accordance with his demand, request complaint, whatever you want to say.  I don't think he had any reason to contact Mr. Urrutia.  And once the lawsuit was filed, we would have specifically told him not to.

Q.    Prior to the lawsuit being filed after he made his complaint, are you aware of any instruction given to Mr. Weinstein not to have contact with Mr. Urrutia?

MS. RONNEBURGER:  Objection to form.

A.    I don't know for sure that such a direction was given at that time.

Q.    You did not give any such direction, did you?

A.    I may have, I don't recall.

Q.    Are you aware that Mr. Urrutia contacted Mr. Weinstein numerous times and did

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

213

M. BUCCINO

not receive any response?

A.   I'm not aware of that, but it doesn't surprise me.

Q.   Did Mr. Weinstein make you aware that Mr. Urrutia was contacting him?

A.   I don't recall.

Q.   To your knowledge, was Mr. Weinstein in any way disciplined in relation to this case?

A.   No.

Q.   When opening up the bank account is there a system in place that tracks all the required items to do so?

A.   No.

Q.   How do you know that?

A.   I mean there's a written checklist that branches have to kind of abide by, but there's not a system, as you say it, that would require entry of an A, B, C, D sort of checklist before the account gets opened.

Q.   In other words there is a system, but it's not electronic it's by hand?

A.   Yes, there's a procedure and a policy as to what is required to open the account, but there isn't a system in place to guarantee that

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

214

M. BUCCINO

all those documents or whatever they are are actually taken in.  There's a review after that that has to happen, but there's not like a stop per se that prevents you from opening the account without something.  Or at least there wasn't, we're working on fixing that.

Q.   Had Mr. Urrutia followed through on opening the account for Superb, would the fact that there is already an account for Superb that Mr. Deo opened somehow raise any red flag?

MS. RONNEBURGER:  Objection to form.
You can answer.

A.   If you tried to open an account for an entity that already has an account, you would be prompted and know that there is already accounts for that entity.  And you'll have to work within that information.  I don't know if I would describe it as quote/unquote "a red flag."  But you wouldn't be able to open the second account without knowledge that the first account exists.

Q.   Fair enough.  My next question is going to be without necessarily a red flag would someone at Flushing Bank opening the account for

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

215

M. BUCCINO

an entity that already has an account be alerted to the fact that an earlier account was opened?

A.   So assuming you were using the same tax ID number you would be alerted to the existing account, yes.

Q.   And how would that occur?

A.   When you went to enter the new entity within our database within our core system, when you put in that tax ID number for the existing account, the existing profile for that entity would come up.

Q.   Wore that occurrence in and of itself result in any investigation being performed?

A.   No, because we have plenty of businesses that have multiple accounts, so it happens all the time.

Q.   What is the data system that Flushing Bank uses to look at a bank account holder's information called?

A.   Our core system that holds the actual account information is called MISER.

Q.   Spell it.

A.   MISER.

MR. KATAEV:  To the extent not

216

M. BUCCINO

already produced Superb calls for the production of all of its information contained in the MISER profile for itself. We'll follow up in writing.

Q.    Other than a tax ID number and an account number, does Flushing Bank have any customer number or related system to manage its customers?

A.    Yes, there is what's called a CIF, customer information -- actually, I don't know what the acronym is.  It IS an acronym within MISER it's called A CIF.  Every profile created gets an individual number.  So theoretically if you did create two different profiles for the same entity, you could have two CIF numbers for that same entity or for an individual.

Q.    You don't need to have an open bank account in order to have a CIF number, correct?

A.    You would have needed one at some point.  If you have a closed account that's been purged off the system, you might still have a CIF number but you never would have gotten one in the first place without an open account.

Q.    Flushing Bank has customers that, for

217

M. BUCCINO

example, only have a loan and not a bank account, correct?

A.    Yes.

Q.    Any such customers would also have a CIF number, correct?

A.    They would because the loan is considered an account.  They don't have a deposit account, but they have a loan account.

Q.    And the CIF number is not made until a loan account number is obtained?

A.    The CIF number would be created at the same time the entity's general profile is created.  So whenever they first came into the bank as a customer, whether it be for a loan or a deposit account they get a profile created. After that if things are done properly all subsequent accounts that that customer opens. Whether they be loans or deposit accounts, would all be linked to that same CIF.

Q.    In other words, if I'm understanding correctly, the CIF number gets created first and then any account number or loan number is added therein?

A.    Roughly speaking, yes.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

218

M. BUCCINO

Q.   Chronologically that's the way it works, right?

A.   Yes.

Q.   You can't enter an account number in MISER without first having a CIF number, correct?

A.   So I think if your initial customer -- what probably happens, I'm not sure of the sequence to be honest, but what probably happens is we create the account and as part of the account creation the CIF profiles are created, all of it is encompassed within one. Technically speaking, whether the CIF number is created before the account number, I don't know the sequence of it.  But they're done, basically, at the same time.

Q.   To your knowledge, is there only one CIF number for Superb or are there more than one?

A.   To my understanding there's only one.

MR. KATAEV:  I know I already called for the production of Superb's profile in MISER, but I want to also call for the production of any search results in MISER for any profile maintained by Superb.  And I will follow up in writing, but to flush

219

M. BUCCINO

it out I want to understand.

Q.   If you're in MISER and you want to pull up a customer, you can do so by putting in the CIF number, correct?

A.   Yes.

Q.   You can also do so by typing in the name of the business, correct?

A.   Yes.

Q.   And you can also do so by pulling up and typing in the tax identification number, correct?

A.   Yes.

MR. KATAEV:  So specific to this request we'll follow up in writing for I'd like to see the search results of MISER for the tax ID of Superb, for the name Superb Motors without Inc., and for the CIF number, the known CIF numbers with the understanding that I'm looking to determine whether there are more than one CIF numbers.  And I will follow up in writing.

Q.   It's fair to say that Mr. Puccio had his compensation linked to the successful closure

220

M. BUCCINO

of financial accounts, correct?

A.    Yeah, a portion of his compensation, yes.

Q.    Was the same true for Mr. Weinstein?

A.    I don't believe so, no.

Q.    Is MISER used for both loan accounts and bank accounts?

A.    It's used for some loans but not for mortgages and certain other loans, no.

Q.    Or home equity lines of credit, right?

A.    Actually, HELOC would typically, I think, be on MISER, yes.

Q.    Do you know specifically if a search was performed to determine if Superb had more than one CIF number?

A.    I'm sure we did searches under the name Superb and probably under the tax ID number. And if there were other CIFs, they would have come up in those sections.

Q.    But if that information was not specifically requested, it would not have been produced, would it?

A.    Presumably, no.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

221

M. BUCCINO

Q.    What is Flushing Bank's data retention policy in terms of how long it keeps such information?

A.    What do you mean by such information?

Q.    Anything contained in MISER, for example?

A.    So it's different.  The CIF profile would last longer than say the account information.  I forget the specific data retention, but I want to say that an account once it's closed will be scrubbed from MISER probably within two to three years.  The CIF would probably last another couple of years after that. I have to get you the specifics, but I think it's something along those lines.

Q.    Were you aware of any litigation hold that was placed at Flushing after this lawsuit was filed?

A.    Yes.

Q.    Was that litigation hold to the extent they were contained in MISER?

A.    Yes.

Q.    Does Flushing Bank have a written document retention policy?

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 224 of 288 PageID #: 11711
SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

222

M. BUCCINO

A.    Specific to MISER, I don't know.

Q.    No, in general?

A.    In general, I believe we do, yes.

MR. KATAEV:  We'll call for the production of Flushing Bank's data retention policy, we'll follow up in writing.

Q.    To your knowledge, was any investigation done concerning Michael Laurie referring Anthony Deo to Flushing Bank?

A.    No.

Q.    Do you have any knowledge as to how Mr. Deo came to Flushing Bank in the first place?

A.    I believe he was referred either by Mr. Laurie or Mr. Urrutia or by both of them, I don't know.

Q.    What is the basis of your belief?

A.    I believe I've seen that in some of the document review from this matter.

Q.    Did you ask Mr. Puccio whether he had had any conversations with Mr. Laurie?

A.    I don't think I asked that specific question, no.

Q.    And you did not ask him that question

223

M. BUCCINO

even though the complaint discusses Mr. Laurie's

involvement in assisting Mr. Deo in setting up

this account, correct?

MS. RONNEBURGER:  Objection to form.

A.   I don't recall.

Q.   If I understood correctly your

earlier testimony with Mr. Ruderman, Flushing

Bank has not pursued relief against Northshore,

Sunrise or Mr. Deo for the loan they failed to

repay because of the existing litigation,

correct?

A.   Essentially, yes.

Q.   Does Flushing Bank track the statute

of limitations on its right to pursue such

claims?

A.   I'm sure we are aware of it, yes.

Q.   Should the statute of limitations be

coming up and this case is still ongoing, will

Flushing Bank as a matter of policy not pursue

any claims related to this matter?

MS. RONNEBURGER:  Objection to form.

I believe you're treading into asking him

legal advice, so I would --

MR. KATAEV:  It's his knowledge, his

224

M. BUCCINO

knowledge, he's an attorney.

MS. RONNEBURGER:  Rephrase your question, I think you're getting close to asking something that's not proper.

MR. KATAEV:  I am nowhere near close to it.  I didn't ask him about communications.  I asked him about his knowledge.  He can answer the question.

A.    I don't know.

Q.    Has that ever happened before where there's existing litigation prevented -- withdrawn.

Has that ever happened before where existing litigation forestalled Flushing Bank from acting such that the statute of limitations was coming up?  Are you aware of any such instance?

A.    I'm not aware of any such instance.

Q.    Do you know whether any decision has been made about whether to pursue a claim against Mr. Deo, Northshore or Sunrise?

A.    I don't know.

Q.    Does Flushing Bank ever investigate whether a customer utilized loan proceeds for the

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

225

                    M. BUCCINO

purposes stated in the loan?

        A.    I don't know.

        Q.    Who would know that?

        A.    Probably, Theresa Kelly, the head of
business banking.  If it was a business banking
loan, if it was another loan it might be -- I
guess, it wouldn't really matter.  It would be
Theresa Kelly.

        Q.    Does Flushing Bank have a collections
department?

        A.    Yes.

        Q.    Would the head of that department
know?

        A.    She might, but our collections
department deals more with mortgages.  Like I
said, the business banking team doesn't have a
specific collection department as much as it
farms out litigation to outside counsel, when
necessary.

        Q.    You testified earlier today that one
of the documents Flushing Bank seeks from the
corporate entity is the operating agreement or
the shareholders agreement, correct?

        A.    Yes.

226

M. BUCCINO

Q. Are you aware of any shareholders agreement produced by Mr. Deo in relation to Superb?

A. I'm sure there was one that was produced. I'm sure I saw it at some point. I couldn't specifically give you any details on it right now.

MR. KATAEV: I call for the production of any shareholders agreements produced to Flushing by Mr. Deo in connection with the bank account opened in April 2023.

Q. Is it possible --

A. Apologies, just you used shareholder and operating agreement kind of interchangeably already. We would have gotten and produced already the shareholder, if not, the operating agreement. We would have produced it as part of the production.

Q. I'll represent to you that I'm not aware of any shareholders agreement produced from Flushing.

A. It's for Superb LLC.

Q. I'll represent to you that Superb

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 229 of 288 PageID #: 11716

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

227

M. BUCCINO

Motors Inc. is a corporation.

A.   So that's why there wouldn't be operating agreements?

Q.   Correct.  And that's why I've been referring to shareholders agreements.

Did you come to learn after this lawsuit was filed that Superb's actual shareholders agreement is between Mr. Urrutia and Mr. Deo with Urrutia owning 51 percent and Mr. Deo owning 49 percent?

A.   I didn't know that.

Q.   And you testified that in preparation for this deposition you looked at operating agreements, correct?

A.   Yes.

Q.   Those were from Northshore and Sunrise?

A.   Presumably, yes.

Q.   Based on the fact that you reviewed all such corporate documents in preparation for your deposition, do you recall right now whether there was any shareholders agreement for Superb?

A.   I don't recall that specific document, no.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino --- February 26, 2026

228

M. BUCCINO

Q. If the account for Superb was opened without Mr. Deo presenting any shareholders agreement, would that mean that the individual who caused the account to be opened violated Flushing Bank's policies?

A. No.

Q. Why is that?

A. For a corporation a shareholders agreement wouldn't necessarily be a requirement.

Q. What would be required for a corporation?

A. Articles of incorporation, CBO, certificates of beneficial ownership. Filing of the articles filed with the state and that's about it.

Q. Are you aware that the shareholders agreement between Mr. Urrutia and Mr. Deo, specifically and expressly state that Mr. Deo has no financial control or authority?

A. No.

Q. To your knowledge, why does Flushing Bank need an operating agreement for an LLC, but does not need a shareholders agreement for a corporation?

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 231 of 288 PageID #: 11718

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

229

M. BUCCINO

A.   That's our policy, it's been vetted and approved by regulators.

Q.   Had Mr. Deo produced a shareholders agreement, would that be a document that Flushing Bank would review as a matter of course?

A.   If it was given to us, we would review it.

Q.   And if it did, in fact, clearly state that Mr. Deo had no financial authority or control, the account would not have been opened, correct?

A.   Correct.

Q.   If the shareholders agreement did not say anything about financial control, but it contained that Mr. Urrutia was a 51 percent owner and Mr. Deo was a 49 percent owner, would the account have been permitted to be opened with just Mr. Deo's signature?

A.   Not without Mr. Urrutia's involvement.

Q.   And why is that?

A.   Because we would have had documentation confirming that Mr. Urrutia was a 50 percent owner.  So without contrary

230

M. BUCCINO

documentation, Mr. Deo proving that that was no longer the case, we wouldn't have allowed him to unilaterally open the account unless there was something in the shareholders agreement that gave him the power to do that.  But even then, depending on what the shareholders agreement said, Mr. Urrutia might have been needed to sign off on the resolution of the company if he's the secretary of the company.

Q.   You said 50 percent in your answer. Does it matter whether it's 50 percent or 51 percent or even 1 percent?

A.   It does matter in that if it was anything below 25 percent, Mr. Urrutia would not be needed on the CBO.  But anything over 25, even if it was just 49, then he would need to be listed on the CBO and need to have been approved on the CBO.

Q.   In the course of performing your duties for Flushing Bank, did you review the Uniform Commercial Code in New York?

A.   Sometimes, yes.

Q.   It's something that you're generally familiar with?

231

M. BUCCINO

A.    Generally, yes.

MR. KATAEV:  I'm going to call for the production of the policy stating that to open a bank account for a corporation, you do not need to produce the shareholders agreement or in other words the policy about the requirements and documentation of requirements for opening up a bank account for a corporation.  I will follow up in writing.

Q.    It's fair to say that as it relates to Superb that Superb was a customer or is a customer of Flushing Bank, correct?

A.    Yes.

Q.    To your knowledge, is Mr. Deo considered a customer of Flushing Bank?

A.    Technically speaking, since the accounts are still opened and financed, I would say, yes, for regulatory purposes he's considered a customer.

Q.    And you're saying that because he's listed himself as a principal of Superb, Northshore and Sunrise, correct?

A.    Yes, he's a signer on those accounts.

232

M. BUCCINO

Q.   So he's a customer by virtue of the fact that he's a signer or he's a customer by virtue of the fact that he's a member or shareholder?

A.   Technically, from a regulatory standpoint, I believe he's a customer because he's a signer.

Q.   Had an account been opened for Northshore by Mr. Deo but Mr. Deo was not on the signature card and instead someone else was, would Mr. Deo's status as an alleged shareholder or member of a corporation or LLC constitute him also being a customer of Flushing Bank?

MS. RONNEBURGER:  Objection to form.

A.   Technically, from a regulatory standpoint I don't believe so, but I'm not sure.

Q.   Is it fair to say that when Mr. Urrutia contacted Flushing Bank and complained about the unauthorized transactions on the account, he was calling as an agent of Superb?

MS. RONNEBURGER:  Objection to form.

A.   He was claiming to be an agent of Superb, yes.

Q.   While he was claiming to be an agent

233

M. BUCCINO

of Superb, he did provide evidence of his ownership in Superb, correct?

A.    Yes.

Q.    You have no basis to dispute his ownership at this time, do you?

A.    I mean as regards this lawsuit, I have no basis to dispute anything or confirm anything for that matter.

Q.    But I'm not asking in relation to the lawsuit.  I'm asking you based on an individual who's reviewed the documentation.  Based on what you've reviewed, do you have any basis to dispute that he's an owner of Superb?

A.    No.

Q.    Mr. Urrutia made his complaint in August of 2023, correct?

A.    That sounds right, yes.

Q.    And the bank account at issue here was opened in April of 2023, correct?

A.    Yes.

Q.    Has Flushing Bank made a determination that the transactions at issue in Superb were authorized?

A.    No.

234

M. BUCCINO

Q.   Has Flushing Bank made a determination that the transactions at issue in Superb's account were unauthorized?

A.   No.

Q.   How come to this date that Flushing Bank has not made a determination as to whether the transactions at issue in the Superb account were authorized or not?

A.   We're going to let the court do that.

Q.   Does Flushing Bank have a position on the subject?

A.   No.

MS. RONNEBURGER:  Can you clarify your question?

Q.   What does Flushing Bank intend to tell the court in writing or by testimony on this point?  In other words, is Flushing Bank going to assert that the transactions were authorized or unauthorized?

MS. RONNEBURGER:  Objection to form. And to the extent you're asking him about privileged conversations with outside counsel.

MR. KATAEV:  I'm not asking him for

235

M. BUCCINO

conversations.  I'm asking him what is he going to tell the judge in writing or by testimony about whether the transactions were authorized.

A.   At the time they happened our understanding was that the transactions were authorized.

Q.   After conducting an investigation, did you ultimately determine that they were unauthorized?

A.   No.

Q.   So is it fair to say that in the trial in this case, presuming you're the witness and you're going to be asked whether these transactions are authorized, that you're going to say yes, they were?

A.   I don't see how it's my position to give an answer to that question.

Q.   That's what we're here to determine, we want to know what you're going to say at trial.

A.   It's the court's determination not mine, it's not the bank's determination.

Q.   I understand but a court makes a

236

M. BUCCINO

determination based on what a party represents. Flushing Bank is a party in this case and you have been produced as a witness.  Presumably, you're going to be the witness at trial.  What are you going to say at trial about whether these transactions are authorized?

A.    That's for the court to determine.

Q.    But the court is going to ask you were they authorized according to you?

A.    I'll answer it when the court asks me.

Q.    You have to answer it now.  What will you tell the court about whether or not they were authorized?

A.    At the time they were conducted we understood them to be authorized.

Q.    And did you later determine that they were unauthorized?

A.    We have not made any such determinations.

Q.    Are you aware of any rules or law that requires a bank to make a determination as to whether a transaction is authorized upon a complaint that it was not?

237

M. BUCCINO

A.   No.

Q.   Based on your review of the Uniform Commercial Code, is Flushing Bank under any obligation to make this kind of determination based on a customer complaint?

MS. RONNEBURGER:  Objection to form.

A.   We have no claims about specific transactions.

Q.   When Mr. Urrutia contacted Flushing Bank in August of 2023, did that not constitute a claim that the transactions were not authorized?

A.   Arguably.

Q.   And upon Mr. Urrutia doing that, was there any complaint process within Flushing Bank about this dispute?

A.   The account was put on hold as discussed.  And the lawsuit here was filed, and at that point it became a determination for the court to make.

Q.   There was approximately a two-week stretch in time between the date the lawsuit was filed and the date Mr. Urrutia contacted Flushing Bank.  In that short time frame was any complaint, inquiry or investigation opened as to

238

M. BUCCINO

whether the transactions were authorized?

A.    No.

Q.    How do you know that?

A.    Because it wasn't part of our response to the initial reference by Mr. Urrutia.

Q.    Are you aware as to whether any party made a demand for such documentation?

A.    What documentation?

Q.    Documentation about the existence of any complaint, inquiry about whether the transaction was authorized?

A.    This is very circular, I'm not sure what you're asking.

Q.    Your basis for testifying that there was no complaint or inquiry opened, is that you didn't see any of the document production, correct?

A.    No, I know there was no complaint or inquiry with regards to the transactions because that wasn't our bank response to this entire process.

Q.    What do you mean that wasn't our bank response?

A.    When the accounts were held, we did a

239

M. BUCCINO

review to determine if the hold should last or if it should come back off and let Mr. Deo transact. We determined not to in an abundance of caution, but we didn't do any investigation into individual transactions.  Mr. Urrutia did not submit any kind of formal complaint with regards to specific transactions.  And from Mr. Deo's standpoint, I'm not sure if he was in a position to do so because he wasn't the customer on the account.

Q.   Since Mr. Urrutia submitted his complaint as a shareholder of Superb, Superb is a customer then, isn't it?

A.   Yes.

Q.   Do you know whether Flushing Bank is permitted not to make a determination about whether the transactions were authorized based on the existence of a lawsuit?

A.   I don't know that.

Q.   Are you aware of the existence of any security feature placed on the Superb account in Flushing?

A.   I mean there's a hold on the account preventing withdrawals at this point.

240

M. BUCCINO

Q.    I'm not talking about reactive steps taken.  I'm asking about proactive steps taken at the time or shortly after the account was first opened?

A.    No.

Q.    In other words, to your knowledge there are no security features that were enabled for the account Flushing had open for Superb, correct?

MS. RONNEBURGER:  Objection to form.

A.    I don't know what you mean by security features.  It wasn't treated any differently than all of our other accounts in terms of security.

Q.    I'll give you some example to help you answer the question.  Customers are permitted to ask for security features such as Positive Pay, token system, two sign their checks, and so on and so forth, correct?

A.    Yes.

Q.    Those things are not automatically added to a bank account unless specifically requested, correct?

A.    Okay, yes.

241

M. BUCCINO

Q.   To your knowledge, no such security features were added to the account Flushing had opened for Superb, correct?

A.   I don't believe so, no.

MR. KATAEV:  We're going to call for the production of any documents that indicate that any such security features were activated for the account that Flushing had opened for Superb.  We'll follow up in writing.

Q.   You don't dispute the fact that Mr. Weinstein knew about Mr. Urrutia's interest in Superb, correct?

A.   Correct.

Q.   You have not made any finding as to whether Mr. Puccio knew about Mr. Urrutia's interest in Superb, correct?

A.   It's our understanding that Mr. Puccio did not know Mr. Urrutia to have any interest in Superb.

Q.   How do you know?

A.   Because he opened the account with Mr. Deo as the whole sole owner and would not have done that otherwise.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

242

M. BUCCINO

Q.   Did you ask Mr. Puccio about this?

A.   Specifically, I'm not sure, I may have at the time.

THE WITNESS:  Can I take a moment, I need to talk to my wife.

MR. KATAEV:  Of course, let's go off the record.  It's 4:17 we'll come back at 4:25.

(Recess taken)

MR. KATAEV:  So look, based on his testimony throughout the day and the number of times he said I don't know to things, the plaintiffs have taken the position that you produced a 30(b)(6) witness who does not have knowledge about the subject of this case.

MS. RONNEBURGER:  He has knowledge on the subject of the case.  I will reiterate that your notice of deposition did not list any certain categories.  He has answered all of your questions about account policies.  If you want me to produce another 30(b)(6) witness, we will take that under consideration.  I don't

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

243

M. BUCCINO

think there will be any objection to that. Specifically, if you're planning on the same person that I would be, so we can discuss that.

MR. KATAEV:  Okay.  So let's do this. Let's give Thomasson or Mr. Thomasson time out of turn to finish his 30 minutes, and then once he's done with the 30 minutes he'll come back for one hour and I'll finish up with him my exhibits.

MS. RONNEBURGER:  Today?

MR. KATAEV:  No, he wants to leave in 30 minutes.  So I want to give him --

MS. RONNEBURGER:  Are you saying you want to give Mr. Thomasson 30 minutes today?

MR. KATAEV:  Yes.

MS. RONNEBURGER:  I don't know if he can do that.  Can you just hold on one moment?

MR. KATAEV:  Yeah, sure.

(Discussion off the record)

MR. KATAEV:  We're back on the record, the witness has said that he has a

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

244

M. BUCCINO

family emergency that he needs to attend to it.  We currently have approximately under two hours left of testimonial time.  We will choose another date to finish the deposition and figure out any remaining issues thereafter.  Does that work for Mr. Ruderman?

MR. RUDERMAN:  Yes.

MR. KATAEV:  Mr. Thomasson?

MR. THOMASSON:  Yes, that's fine with me.

MR. KATAEV:  Mr. Ronneburger?

MS. RONNEBURGER:  Yes, that's fine.

(Continued on the following page to accommodate the jurat.)

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

245

M. BUCCINO

MR. KATAEV:  That's all of the counsel on the record in this case.  I don't think we need to place anything else on the record, we'll just follow up in writing.

Mr. Buccino, thank you for your time today.  I hope everything is okay, and we'll be in touch with you through your attorney.

(Time noted 4:23 p.m.)


_____

MICHAEL BUCCINO


Sworn and Subscribed this_____day of _____, 2026.


_____
     Notary Public

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

246

I N D E X

Witness                                        Page

MICHAEL BUCCINO      Mr. Ruderman          7

                     Mr. Kataev          134


FLUSHING                                       PAGE

Exhibit 1 Subpoena Duces Tecum          78

Exhibit 2 letter of July 19, 2023          82

Exhibit 3 Letter from Mr. Jeffrey          83
          Ruderman

Exhibit 4 Document Bates stamped          84
          Flushing 08496

Exhibit 5 Document Bates stamped          87
          Flushing 00196

Exhibit 6 Document Bates stamped          89
          Flushing 00008

Exhibit 7 Document Bates stamped          95
          Flushing 01059

Exhibit 8 Document Bates stamped          101
          Flushing 7258

Exhibit 9 Document entitled          102
          "Northshore Motor Leasing
          Operating Agreement"

Exhibit 9A Document Bates stamped          103
          Flushing 00187

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

247

Exhibit 10 Document Bates stamped      106
                Flushing 00162
Exhibit 11 Document Bates stamped      108
                Flushing 00015
Exhibit 12 Document Bates stamped      112
                Flushing 08560
Exhibit 13 Document Bates stamped      115
                Flushing 06272
Exhibit 14 Document Bates stamped      117
                Flushing 03765
Exhibit 15 Document Bates stamped      122
                Flushing 04572
Exhibit 16 Document Bates stamped      123
                Flushing 06520
Exhibit 17 Document Bates stamped      125
                Flushing 06517
Exhibit 18A Document Bates stamped     127
                Flushing 05911
Exhibit 18B  Document Bates stamped    130
                Flushing 05959
Exhibit 19 Document Bates stamped      132
                Flushing 08495

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

248

INFORMATION REQUESTED

| Page | Line |
|------|------|
| 26 | 5 |
| 28 | 9 |
| 94 | 21 |
| 114 | 19 |
| 156 | 5 |
| 160 | 9 |
| 164 | 12 |
| 165 | 7 |
| 165 | 14 |
| 178 | 3 |
| 183 | 13 |
| 185 | 3 |
| 186 | 14 |
| 195 | 15 |
| 196 | 9 |
| 196 | 20 |
| 202 | 10 |
| 215 | 25 |
| 218 | 20 |
| 219 | 14 |
| 222 | 5 |
| 226 | 9 |
| 231 | 3 |
| 241 | 6 |

249

C E R T I F I C A T E

STATE OF NEW YORK      )

: ss.

COUNTY OF NEW YORK     )

I, LISA HIESIGER, a Shorthand Reporter and Notary Public within and for the State ofNew York, do hereby certify:

That MICHAEL BUCCINO, the witness whose deposition is hereinbefore set forth, was sworn and that such deposition is a true record of the testimony given by such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage; and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereuntoset my hand this 2nd day of March, 2026.

*Lisa Hiesiger*
_____

LISA HIESIGER.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

250

ERRATA SHEET
SUPER MOTORS INC etal v ANTHONY DEO et al.
Date of Deposition: February 12, 2026
Name of Deponent:  MICHAEL BUCCINO

| PAGE | LINE(s) | CHANGE | REASON |
|------|---------|--------|--------|
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |
| _____ | _____ | _____ | _____ |

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino   ---   February 26, 2026

251

**A**

**a.m** 2:4 4:12
**Aaronson** 1:6 3:10
**abide** 213:17
**abilities** 105:25
**ability** 9:16 145:4 149:3
**able** 8:14 9:19 25:15 25:17,20,21 26:9 33:20 39:5 42:16,17 48:10 74:20 75:11 75:20 112:3 145:9 145:22 182:20 208:8 214:20
**above-entitled** 2:9
**abundance** 239:4
**accept** 164:5 178:15
**acceptable** 37:6,7 86:4
**acceptance** 37:4
**accepted** 163:20
**accepting** 163:7,25 164:10,19
**access** 42:15 73:20 81:3,5
**accommodate** 244:16
**accompanied** 27:9
**accomplish** 131:15
**account** 11:11,24 18:14 25:8 49:4,25 68:12 72:12 75:2 107:13,16 127:19 127:21 128:12,17 138:4,7,20 143:15 144:12,14 147:4,5,9 147:10,11 152:13 153:14 171:8 172:7 173:8,18 179:5,14 179:24 180:8 181:17 183:6 184:4 185:12 186:25 187:10,16,24 188:3 188:20,22 189:2,2,3 189:6,9,19,21,23,25 202:19,21 203:5

205:24,25 206:3,3,9 206:23 207:3,4,5,12 207:23,24 208:4,19 209:2,13,18,23 210:2,4,10,20,23 211:5,9,10,14,18,24 212:8 213:11,20,24 214:5,9,10,14,15,21 214:21,25 215:2,3,6 215:11,19,22 216:7 216:19,21,24 217:2 217:8,9,9,11,16,23 218:5,10,11,14 221:9,11 223:4 226:12 228:2,5 229:11,18 230:4 231:5,10 232:9,21 233:19 234:4,8 237:17 239:11,22 239:24 240:4,9,23 241:3,9,23 242:23
**account-opening** 11:12
**accountant** 64:25 66:18 87:21
**accountant's** 66:9
**Accountants'** 103:21
**accounting** 126:9 166:5
**accounts** 10:20 18:15 18:16 48:15 60:8,9 60:11 67:22 68:17 68:20 70:5 127:18 127:23 128:9,19 137:3,4,7,11,15 144:6 145:8 146:22 146:22 157:13,14 157:17 158:11,11 175:9 176:24 179:17 180:5 181:20,22,25 182:3 182:6,14 183:5 185:13,22 188:11 190:18 198:20,24 202:9 204:4,9,14,17

204:19 206:10 209:7 214:17 215:16 217:18,19 220:2,7,8 231:19,25 238:25 240:14
**accounts'** 207:2
**accuracy** 108:7 114:7 114:11
**accurate** 8:15 72:10 77:14 153:23
**accurately** 39:15
**ACH** 183:3 184:22 185:9,11,13,14 186:6,18 198:20
**achieve** 143:14
**ACHs** 184:19
**acknowledge** 6:4,8
**acquiring** 171:10
**acronym** 194:18 216:12,12
**act** 69:10 174:24 175:14 176:20 189:10 195:21,24 195:25 196:6
**acted** 192:13
**acting** 174:12,23 190:15 224:16
**action** 2:9 77:6 118:14 120:24 249:17
**actions** 157:7 192:10
**activated** 241:9
**activity** 68:13 127:21 194:20,22 199:19 199:20 200:10 208:18
**actual** 37:17 44:22 74:3 85:22 114:16 157:24 196:5 205:3 205:17 210:18 215:21 227:8
**add** 148:8
**added** 217:23 240:23 241:3
**additional** 33:17 47:4

50:7 81:2 153:16 204:16
**address** 51:10 130:17 140:14
**addressed** 20:24 147:21
**administer** 6:10
**administered** 6:9
**administration** 95:22 96:24 97:3,10
**admitted** 13:9
**adopted** 101:19
**advice** 223:24
**advise** 33:13 104:20 115:4
**advised** 99:12
**advising** 65:24 107:5 130:4 131:14
**advocate** 144:5,9
**AFF** 123:7
**affect** 57:23 149:2
**affidavit** 124:19 125:12 126:7,20
**affiliates** 168:23
**affirmation** 188:8
**afternoon** 134:2,11 134:12
**agencies** 169:22
**agency** 14:15
**agent** 232:21,23,25
**agents** 29:3,8,12 30:4 30:14,20,24
**ago** 149:15 150:24
**agree** 6:19,22,24 7:2 175:25 193:20
**agreeable** 134:21
**AGREED** 5:3,9,13
**agreeing** 134:14
**agreement** 6:14,15 11:22 35:17,22 97:23,24 98:2,7,10 98:18 99:12 100:15 100:23 101:19 102:10,14 155:22 155:23 156:2,6

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 254 of 288 PageID #: 11741

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

252

175:23 176:2,5,6
183:14 196:23
225:23,24 226:3,16
226:19,22 227:9,23
228:4,10,18,23,24
229:5,14 230:5,7
231:7 246:23
**agreements** 98:18
103:11 152:17
173:2,24 178:4
186:15 226:10
227:4,6,15
**ahead** 35:22
**akin** 30:24
**al** 115:12,13 250:3
**alcohol** 148:25
**alerted** 215:2,5
**ALIVIA** 4:17
**allegation** 64:7,10,15
**allegations** 64:4
65:24 118:24
156:14 157:4
164:19
**alleged** 232:12
**allowance** 29:22
**allowed** 30:2 230:3
**allows** 58:9
**alternatively** 81:18
**Amelia** 18:7
**amended** 126:14
**amount** 132:21 184:3
184:9 209:23 210:2
**amounts** 72:20
185:13
**analysis** 183:5 205:22
208:11
**analyst** 139:14 141:4
141:15 145:18
**analysts** 118:21
**analyze** 205:17
**and/or** 52:17 53:21
122:10 142:22
172:12,18 174:10
174:21 176:20
182:25 191:22

202:14,14,15 206:9
**annually** 191:4
**answer** 9:7,13,15,20
9:24,25 10:2 21:3
26:9 30:8,9 32:7
39:5,23 48:10 66:4
66:7 69:7 71:5 72:2
72:9 76:21 78:18
104:21 140:15
149:20,24 162:10
162:19 163:2,4
179:12 182:16
214:13 224:9
230:11 235:19
236:11,13 240:17
**answered** 149:22
150:11 242:22
**answering** 157:5
**answers** 8:18,24 9:22
148:12 149:7
161:10
**Anthony** 1:5,14 3:4
4:16 21:10 44:13
89:17 90:5,22 91:6
91:14,16,20,21 92:2
92:14 93:4,12,15
97:25 98:10,11 99:5
101:9 102:18
103:16,24 109:3,12
110:11,16,23
111:12,23 113:10
115:12 118:9 122:8
135:2 200:17
202:14,15 222:11
250:3
**Anthony's** 91:10
**anybody** 17:24 48:2
62:12 75:14,16
108:6 121:5 126:17
129:4 176:5
**anymore** 63:22
**apart** 174:16
**Apologies** 226:15
**apologize** 16:7 91:12
201:9

**appear** 97:2 184:10
**appearing** 152:23
**appears** 118:23
130:20
**applicability** 58:10
**applicant** 41:6 57:22
58:10 85:13
**applicants** 40:18
41:18
**application** 31:8
32:18,23,24 33:2
34:7 35:2,4,7,12
38:17 39:21 41:2,24
43:16 53:25 54:4
57:24 58:11,14 59:9
59:13,15 67:6 68:18
85:14 86:5 88:14,19
92:13 101:17
109:10 122:5
124:24 139:17
143:18 179:20
**applications** 37:19
81:5 109:6,7
**applied** 60:4
**apply** 68:16
**applying** 52:22
**appreciate** 141:3
**appropriate** 33:14,15
81:3
**appropriately** 67:23
192:13
**appropriateness**
48:15
**approval** 42:21 51:3
51:5,13,18 52:3
54:22 57:7 61:15
62:14 88:17,20 89:2
94:11 111:14
**approve** 33:16 42:12
43:18 51:24 52:6
127:22
**approved** 25:14 29:7
42:18 43:6,10 50:14
50:21 52:8,10,14
54:6,10,13,18 55:23

59:11 60:4 79:25
80:3 101:19 107:6
109:10 121:20
122:5 141:24 142:7
143:5 229:3 230:18
**approving** 51:11
59:19 88:17,19
108:17 114:8 121:7
**approximately** 7:23
10:25 15:8 45:5
121:22 211:13
237:21 244:3
**April** 79:21 125:23
226:13 233:20
**area** 39:3
**areas** 166:9
**Arguably** 237:13
**Ariel** 3:21 6:23
**aronneburger@cu...**
3:21
**arranged** 120:10,17
121:12
**arrangement** 6:12
**articles** 173:3 174:4
228:13,15
**ASAD** 1:6
**asked** 8:19 9:9,18
55:4 71:16 89:19
90:25 93:25 98:15
119:4 150:11
173:13,19 222:23
224:8 235:15
**asking** 25:24 29:24
33:8 48:4 61:6
67:20 71:6 72:4
83:17 98:14 104:16
105:20 143:10
148:22 150:10
157:6 200:7 223:23
224:5 233:10,11
234:22,25 235:2
238:14 240:3
**asks** 78:22 236:11
**assert** 234:19
**asserting** 191:21

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino   ---   February 26, 2026

253

192:6

**assessing** 156:13

**assessment** 192:5
208:18

**assets** 36:5 39:11
75:11 103:23
105:24 106:6,12

**assist** 29:4 32:25

**assistance** 130:5
157:19

**assisting** 223:3

**associates** 14:5 17:25
158:10 167:14

**assume** 26:23 30:16
31:16 119:22
132:13 133:4
184:14

**assuming** 205:12
215:4

**assumption** 31:19

**assurances** 66:23

**attach** 74:4

**attached** 97:24 107:5
116:11,22,25
118:11 123:5
125:22

**attachment** 106:17
107:22 117:2 123:7
123:16 125:3

**attachments** 116:21

**attempts** 181:16

**attend** 244:2

**attention** 13:4 85:3
204:14 207:12

**attestation** 188:8

**attorney** 9:11 12:5
13:9,17,20,22 16:19
16:24 17:8 50:8
57:18 58:4 64:24
65:23 119:9 123:6
125:17 129:25
148:3 224:2 245:10

**attorneys** 3:4,9,18
4:9 6:2 18:3,4
152:20 162:16

**August** 89:16 91:18
109:4,12,14,19
122:25 194:24
195:6 233:17
237:11

**authorities** 194:12

**authority** 11:24
141:22 142:6,10
144:19 174:24
175:7,7,14 176:20
228:20 229:10

**authorized** 174:13
233:24 234:9,19
235:5,8,16 236:7,10
236:15,17,24
237:12 238:2,12
239:18

**Auto** 1:4,5,7,8,8,8,9,9
1:10,10,20 3:4,9,11
3:11,11,11,12,12,13
3:13 21:12 22:6
135:2

**Auto's** 22:7

**automated** 185:25
186:8

**automatically** 185:17
240:22

**automation** 186:5

**AUTOMOTIVE**
1:17

**available** 31:18 111:3
192:14

**Avenue** 3:5,13
167:24

**avoid** 68:6

**aware** 7:19 16:22
21:20 22:6,9,10
28:6 34:18 35:14,15
44:25 50:14,20 52:9
52:14,17 54:9,16
57:6 59:17 60:22,25
61:7,13,14,22,22,25
62:8,13 63:6 64:9
73:13 74:12 75:8
77:13,15,19 79:24

80:3,5,8 81:14
82:12 109:9,14
119:5,13,18 120:9
120:13,15,16 121:6
121:17,19 122:3
130:6,7,11 131:18
135:21 137:4 146:9
147:8 148:2,21
156:21 157:20
161:17,24 163:24
164:4,8,17 170:3,7
172:5 176:8 180:10
187:4 188:7 191:5
195:5,9 197:9
201:14 202:7
212:15,24 213:3,5
221:17 223:17
224:17,19 226:2,22
228:17 236:22
238:7 239:21

---

**B**

**B** 7:3 134:4 213:19

**B-A-D-E-R** 127:8

**B-A-S-S-E-N** 129:22

**B-I-O-N-D-O** 17:13

**back** 18:10 21:5
23:23 24:15 26:3,4
36:19 44:11 50:5
55:10 73:12 104:25
109:14 117:24
132:15 143:11
162:13 168:15
184:25 193:13,18
239:3 242:8 243:10
243:24

**background** 41:3
90:7

**Bader** 127:8,10,11,24
129:3 131:5 132:9
132:11 204:13

**bank** 1:20,20 3:18
6:24 7:16,18 8:2,5
10:6,23 11:16,17
12:3,10,18,22,24,25

13:7 14:7 15:6,12
15:20,22 16:11,22
18:19 19:13 20:12
20:17 22:8,19 23:2
24:17 25:20 26:20
27:25 28:5,11,22,24
29:11 30:14,20 31:2
34:23 36:21 37:23
38:14,16 39:11
40:15 48:2,6 49:10
49:13 50:14 51:2,9
51:9 52:13 53:22
55:16 57:6,11 59:19
59:20 62:13,19 64:4
64:10,21 65:24,25
66:18 67:14,17 68:7
68:10,16,21,25
69:10 73:24 75:15
77:9 78:21 79:11,12
79:13,16 83:9 84:18
86:9,13 89:10 91:9
93:3,11 100:16,24
101:14 103:11
105:3,16,20,23
106:4,5,18 107:15
108:7,11,15 111:4
111:13,22 113:20
114:6,10,14,16,20
114:22,23 116:4,7
119:5,13 121:6,17
122:9,13 124:20
125:19 126:4,18,25
132:4 135:22
138:25 141:7,7
144:24 145:11
147:10 148:20
152:22 154:2 155:8
155:16,17 156:3,7
156:14 157:3
160:12 161:23
162:2,4 163:6,25
164:6,10,13,18
165:5,11,20,25
166:3,12,17 167:2
168:9,22 169:2,7,8

169:11,12,21,22 170:8,24 171:18 172:5 174:22 176:9 176:22 177:2,8,13 177:17,24 178:5 180:19 182:24 183:15 186:16,22 187:5,18 188:20,24 188:25 189:6,13,18 190:2 191:6,14 192:8,13,19 193:8 193:13,16,21 194:2 194:6,10 195:16,21 195:24,25 196:5,6 196:12,24 197:10 197:16 199:12 201:6 204:5 207:9 207:22,23 209:10 209:13 210:23 213:11 214:25 215:19,19 216:7,18 216:25 217:2,15 220:8 221:24 222:11,14 223:9,14 223:20 224:15,24 225:10,22 226:12 228:23 229:6 230:21 231:5,10,14 231:17 232:14,19 233:19,22 234:2,7 234:11,16,18 236:3 236:23 237:4,11,15 237:24 238:21,23 239:16 240:23
**bank's** 19:8,14,17 20:20 69:2 82:2 93:7 106:9 172:16 174:21 175:12 182:7 186:20 187:21 196:10 197:6 198:5 221:2 222:6 228:6 235:24
**Bank.com** 130:18
**banker** 25:3,4 27:10 27:14,18 31:15,18

32:5,13,25 33:8,13 33:20 34:19,23 43:8 49:3,9 51:19 90:10 96:16 105:8 133:3 146:20
**banker's** 34:12
**bankers** 26:24 27:4 28:12 29:2 30:25 167:14
**banking** 22:22,23 23:6,8,9,11,15,19 24:3,7,9,11,12,18 24:22 25:5,11 26:12 26:13,20 31:6 32:11 35:11 37:5 39:19 40:17 42:16 43:2,5 43:23 48:12 49:17 57:16,16,21 58:5,8 58:13 62:24 67:24 69:3,22 73:19 74:15 75:5,19 76:3,6,13 81:20 96:3,14 97:3 97:14 120:2 127:14 137:6 139:15 141:10,16,18 145:21 147:5,10 166:6 168:3,6 169:4 170:18 198:22 225:6,6,17
**banks** 62:6 67:7,18 169:17 170:5 171:10 172:11 184:12,14
**Barbara** 20:7 131:5
**Baron** 1:6,7,7 3:10
**base** 153:16
**based** 33:17 63:24 65:23 72:20 87:25 88:13 97:13 100:4 119:21 131:17 137:2 138:11 140:23 144:3 157:22 173:2,20 185:23 187:9,15 191:18 192:5,13

195:12 206:9 207:3 227:20 233:11,12 236:2 237:3,6 239:18 242:11
**basically** 84:22 137:19 190:18 205:21 218:15
**basis** 29:15 31:19,23 37:13 56:18 96:8 154:7 160:10 165:21 167:16 199:4 211:22 222:18 233:5,8,13 238:15
**Bassen** 129:25 130:21
**Bates** 28:24 83:24 84:2,6 87:2 89:12 95:4,12,15 101:3 103:18,25 106:18 106:21 108:21,23 112:18 115:4,19 117:13 122:21 123:23 125:3,7 126:25 127:4 130:8 132:6 246:11,13,15 246:17,19,24 247:2 247:4,6,8,10,12,14 247:16,18,20,22
**Bayside** 15:22
**BB-Loan** 95:21 96:23 97:9
**Beckman** 20:7 131:6
**began** 12:10 15:20
**behalf** 66:21 174:13 174:23 188:15,15
**belief** 37:14 56:19 222:18
**believe** 10:23 22:12 29:14,16 37:12 40:6 41:12,15 42:19,24 45:24 48:22 51:17 54:20 55:19 56:17 60:13,17 63:8,11 67:9 71:23 73:12

74:25 80:24 92:13 96:6 100:13 104:12 110:22 116:20 118:22 119:7 120:8 124:7,12 132:23 136:17 138:9,19 139:16 146:13 148:20 155:19 160:8 161:14 167:23 169:20 170:22,25 173:9,20 179:8 181:5 183:12 183:25 188:12 191:3,21 192:6,8 193:15 220:6 222:4 222:15,19 223:23 232:7,17 241:5
**beneficial** 175:4,11 188:9 228:14
**best** 9:15,21,22 13:21 20:2,11,16 39:22 62:25 148:10,14
**bet** 128:4,23
**better** 26:9 33:9 45:13 74:7 145:19 200:18
**beyond** 77:7
**Bianco** 131:5
**big** 109:17
**bigger** 78:14,15
**Bingold** 24:6 131:4
**Biondo** 17:13
**bit** 21:6 35:19
**blank** 26:6
**BLANKENSHIP** 1:15
**block** 127:17,20,22 128:2,18 203:4
**blocked** 144:17 212:8
**blood** 249:17
**Blvd** 1:7,8,8,8,9,9 3:11,11,11,11,12,12
**body** 118:25
**booked** 132:13,25
**books** 36:22 132:22

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino --- February 26, 2026

255

**borrower** 67:7,11
**bottom** 97:17 108:3
  113:22 129:20
**bought** 14:5
**Boulevard** 3:19
**Box** 4:6
**branch** 12:18 18:17
  26:21 128:14
  129:15,16 136:24
  138:17 139:19
  142:21 145:7
  166:16,18,22,23,25
  167:2,11,12,13,16
  167:19
**branches** 24:14
  128:15 136:25
  213:17
**break** 46:13 70:18
  133:9 200:23,25
  203:13,15,18,21
**Brian** 1:6 3:10
  115:12
**bribe** 164:10
**bribes** 163:7,25
  164:5,14,19
**briefly** 87:9
**bring** 79:9 102:7
  120:6 124:25
**bringing** 31:3
**broad** 92:11,13
  141:12
**broader** 71:19
**brokers** 29:3,8,12
  30:4,14,20,23
**Brooklyn** 136:25
  140:5 167:6
**brought** 13:4 204:13
**Bruce** 161:19
**BSA** 69:8,9,17 72:14
  72:24 176:17
  183:22 194:21
  196:8,10,14,18
  199:8,19,25 200:4
  200:17
**Buccino** 2:8 7:1,12

8:1 9:1 10:1 11:1
12:1 13:1 14:1 15:1
16:1,10 17:1 18:1
19:1 20:1 21:1 22:1
23:1 24:1 25:1 26:1
27:1 28:1 29:1 30:1
31:1 32:1 33:1 34:1
35:1 36:1 37:1 38:1
39:1 40:1 41:1 42:1
43:1 44:1 45:1 46:1
47:1 48:1,5,10 49:1
50:1 51:1 52:1 53:1
54:1 55:1 56:1 57:1
58:1 59:1 60:1 61:1
61:9 62:1 63:1 64:1
65:1 66:1 67:1 68:1
69:1 70:1,24 71:1,5
71:25 72:1,7 73:1
74:1 75:1 76:1 77:1
77:24 78:1 79:1
80:1 81:1 82:1,8
83:1,23 84:1 85:1
86:1 87:1 88:1 89:1
90:1 91:1 92:1 93:1
94:1 95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
103:15 104:1 105:1
106:1,15 107:1
108:1 109:1 110:1
111:1 112:1 113:1
114:1 115:1,8 116:1
117:1,17 118:1
119:1 120:1,9 121:1
122:1 123:1 124:1
125:1 126:1 127:1,8
128:1 129:1 130:1
131:1,3 132:1 133:1
134:1,7,11,23 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1 144:1
145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1 153:1

154:1 155:1 156:1
157:1 158:1 159:1
160:1 161:1 162:1
163:1 164:1 165:1
166:1 167:1 168:1
169:1 170:1 171:1
172:1 173:1 174:1
175:1 176:1 177:1
178:1 179:1 180:1
181:1 182:1 183:1
184:1 185:1 186:1
187:1 188:1 189:1
190:1 191:1 192:1
193:1 194:1 195:1
196:1 197:1 198:1
199:1 200:1 201:1
202:1 203:1 204:1
205:1 206:1 207:1
208:1 209:1 210:1
211:1 212:1 213:1
214:1 215:1 216:1
217:1 218:1 219:1
220:1 221:1 222:1
223:1 224:1 225:1
226:1 227:1 228:1
229:1 230:1 231:1
232:1 233:1 234:1
235:1 236:1 237:1
238:1 239:1 240:1
241:1 242:1 243:1
244:1 245:1,7,15
246:3 249:10 250:4
**Buccino's** 128:5,23
**buck** 145:20
**building** 26:14
  142:19 167:8
**business** 11:23 12:20
  22:18,19,22,23 23:6
  23:8,11,14,18 24:3
  24:17,22 25:2,4,5,7
  25:10,11 26:12,13
  26:20,25 27:4,6,9
  27:14,15,18,19
  28:12 29:2,12 30:21
  30:25 31:3,6,14

32:4,10,13,25 33:8
33:13,20 34:12,19
34:23 35:11 36:3,4
37:5 38:14 39:10,19
40:5,15,17 41:17
43:2,8,23 48:12
49:3,9 51:19 57:16
57:21,23 58:5,8,13
62:24 63:24 65:20
66:21 67:2 68:22
73:19 74:15 75:5,19
76:3,6,12 81:20
85:8,18 90:10,11,19
90:21 91:6 96:3,14
96:16 97:3,14 105:8
120:2 127:14 137:3
137:5,6,10 138:4,8
139:15 141:10,16
141:17 145:21
146:20,21 147:5,10
147:10 152:12,15
158:10 168:3,6
169:4 171:19 179:7
179:15,18 193:8
194:5 198:21 209:5
219:8 225:6,6,17
**businesses** 24:13 25:7
  137:8,10,16,20,24
  138:10 176:12,17
  215:16
**buyers** 1:16 208:13

───────────
      C
───────────

**C** 3:2 4:2 7:3,3,3
  134:4,4,4 213:19
  249:2,2
**C-O-D-I-S-P-O-D-O**
  95:20
**C-U-L-L-E-N** 127:9
**C-U-S-A-N-O** 138:16
**call** 16:5 28:9 43:24
  94:22 156:5 164:12
  165:7,14 170:24
  178:4 183:13
  186:14 196:9,22

202:15 204:3,8,19 218:22 222:5 226:9 231:3 241:6
**called** 22:21 44:3 53:16 79:16 85:5,22 102:8 103:16 120:11 123:7 169:2 170:12 177:3 183:9 194:17 215:20,22 216:10,13 218:20
**calling** 16:6 232:21
**calls** 150:20,20 151:8 159:15 216:2
**capability** 206:5
**capital** 1:19 53:17 117:10
**caption** 125:11
**car** 1:15 208:13
**card** 14:12 232:11
**Carmen** 75:3,4
**CARS** 1:16,16
**carved** 132:13
**case** 1:12 10:9,12 19:19 20:6,20 21:8 35:24 63:9,10 74:3 77:3 80:24 81:18 118:13 125:25 134:25 135:10,15 135:19,23 136:8,16 136:19,23 138:12 139:8,13 147:15,24 148:4 153:7,10,21 155:18,19 156:15 157:22 159:2 160:5 164:9 179:2 181:12 187:4 190:21 191:13,19,20 193:12 195:6,10,13 195:18 197:7,12,16 197:21 198:2 201:16,20 206:14 213:9 223:19 230:3 235:14 236:3 242:17,19 245:3
**case-by-case** 29:15

**cases** 19:19 90:16 186:4 201:12
**categories** 242:21
**cause** 72:21
**caused** 228:5
**caution** 239:4
**caveat** 48:9 104:22
**CBO** 188:11 228:13 230:16,18,19
**ceased** 63:24
**cell** 203:19
**center** 40:16,20,25 44:5 56:22 86:23 87:6 93:24 118:18 139:15 198:21
**central** 15:12 176:23 177:2
**CEO** 166:2
**certain** 34:8 42:20 54:24 56:20 67:21 70:12,13 72:19 94:5 106:12 145:10 146:15 169:3 183:24 184:3 185:21 194:13 195:11,13 220:10 242:21
**certainly** 28:19 58:18
**certificates** 173:6,12 228:14
**certification** 5:5 101:8 134:16 175:4 175:11 188:7,9,16
**certified** 36:15 176:7
**certify** 249:9,15
**cetera** 74:13
**Chabrier** 1:6 3:10 115:12 125:11
**chain** 25:13 89:15 95:13 106:16,24 109:2 116:13 126:24 129:18
**change** 100:11 250:5
**changed** 12:12 100:15 191:14

**changes** 183:25
**charge** 23:14 86:22 166:2,8 167:12
**charged** 135:18 148:17
**charter** 169:7,11,12 169:22 170:4
**CHASE** 1:20
**check** 46:9 73:21 94:12 184:3,4,5,7,8
**checked** 118:10
**checking** 64:2
**checklist** 32:2 94:2 94:17,24 95:2 213:16,19
**checks** 183:3,24 184:6,18 198:20 209:14 240:19
**Chestnut** 4:10
**chief** 166:4,5,6
**choose** 244:5
**Chris** 11:5
**Chronologically** 218:2
**CIANCIULLI** 4:12
**CIF** 216:10,13,16,19 216:22 217:6,10,12 217:20,22 218:6,11 218:13,18 219:5,19 219:19,22 220:17 221:8,13
**CIFs** 220:20
**circle** 26:2
**circular** 238:13
**circumstance** 185:23 188:6
**circumstances** 33:18 47:12 145:10 153:25 159:22 173:20
**Citrin** 123:9 126:9,13 126:19
**claim** 39:16 77:10,16 106:11 160:7 163:8 172:5 177:18,23

210:18 224:21 237:12
**claimed** 194:16
**claiming** 172:25 232:23,25
**claims** 22:7 67:11 123:10 135:9,15,18 157:18 180:23 181:11 223:16,21 237:8
**clarify** 61:8 72:2 173:13 234:14
**clean** 8:12
**clear** 8:12 29:24 51:8 68:2 72:3 90:20 126:13 148:13 150:5 177:22 181:19 204:23
**clearly** 8:20 229:9
**Clemens** 86:15,18,20 87:18 118:22 122:25 123:5,13 146:13
**Clerk's** 115:10
**client** 25:6 144:8,10
**client's** 123:6
**clients** 21:18
**close** 224:4,6
**closed** 216:21 221:12
**closer** 97:14,17,20
**closing** 200:11
**closure** 219:25
**CNS** 129:21
**COAST** 1:16,16,17 1:17,18,18
**Code** 230:22 237:4
**Codispodo** 86:15 87:5 95:20 97:9 106:25 117:11 118:20
**collateral** 74:4
**collect** 74:20 75:21 76:25
**collecting** 193:10
**collection** 8:7 14:9,11

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 259 of 288 PageID #: 11746

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

257

14:24 73:25 74:3,19 76:14 77:12 176:15 225:18
**collections** 74:7,16 225:10,15
**come** 12:22,23 31:13 145:12 155:6 160:22 168:10 170:21 176:18 201:12 204:20 215:12 220:21 227:7 234:6 239:3 242:8 243:10
**comes** 23:2 31:8 32:12 34:7 39:6 141:6
**comfort** 66:18 126:5
**coming** 25:10 223:19 224:17
**commenced** 76:18 77:20
**commercial** 147:4,9 230:22 237:4
**commission** 30:6 132:23
**committee** 41:25 42:5 52:7
**common** 25:2 31:21 31:22 36:25
**communicate** 52:5
**communicated** 60:2 64:19
**communication** 47:2 49:6,21
**communications** 20:25 48:7,21 50:4 63:12 81:7 109:11 119:22 136:15 157:6,20 162:17,24 203:22 224:8
**companies** 126:16
**company** 19:2 21:13 34:9,13,16 40:12 53:16 87:21 100:12 103:22 110:12,17

110:23 112:4 120:11 168:23 171:20,25,25 172:18,24 173:2 174:3 175:5,21,24 177:7 181:3 183:11 230:9,10
**company's** 155:16
**compensation** 29:11 132:21 133:3 219:25 220:3
**Compilation** 103:21
**complained** 211:4 232:19
**complaint** 65:25 81:10 116:15 118:12,24 119:6 120:6 156:15 157:4 157:8,12 160:16 161:9 163:9,11 164:24 191:13 202:21 207:13 211:24 212:9,15 223:2 233:16 236:25 237:6,15,25 238:11,16,19 239:7 239:13
**complaints** 14:10 160:22
**complete** 35:11 125:2 188:14
**completed** 35:4
**compliance** 14:14,15 14:19 16:24 17:7,18 171:3 172:16 174:21 182:24 196:13
**complication** 13:5
**comply** 46:21 189:11
**components** 196:7
**comprised** 196:5
**computer** 186:2
**computer-based** 177:11
**concern** 52:12 98:9

98:12 210:20
**concerned** 36:21 50:3 60:15 201:10 202:3 210:7
**concerning** 28:13 49:17 59:18 61:16 61:23 80:9 164:14 186:23 187:19 202:5 222:10
**concerns** 22:8 153:15
**conclusion** 100:6 145:13
**Condition** 103:17
**conditions** 34:17 67:3
**conduct** 160:23 194:11
**conducted** 201:19 204:9 236:16
**conducting** 161:3,13 235:9
**confident** 163:17
**confined** 53:13
**confirm** 46:14 50:2 108:7 114:11 126:19 127:20 134:14 140:14 162:22 171:24 175:13,19 194:18 233:8
**confirming** 229:24
**conflicting** 206:12
**conflicts** 205:18
**conform** 100:16
**confused** 22:2
**connection** 7:17 8:5 9:12 10:11 20:23 27:19 28:11 29:12 31:2 37:7,19 38:17 39:18,21 40:4,25 45:2,21 46:4,24 47:7,8 49:7,21 53:4 53:6,8,14 54:22 55:17 58:11 60:22 63:19 68:18 70:3 76:18 77:9,12,17,20

79:24 80:14 81:15 82:2 84:16,24 89:21 92:12,19 94:4 98:21 99:8,14 104:8 105:25 107:14 108:16 113:2,4,16 114:16,20 120:21 121:2,22 124:14 131:22 165:2 226:12
**consecutive** 110:4
**consent** 6:11
**consider** 204:11
**consideration** 95:8 113:16 156:11 165:23 178:11 242:25
**considered** 51:15 84:17 217:8 231:17 231:20
**considering** 36:9 88:17
**constitute** 232:13 237:11
**consumed** 148:25
**contact** 74:13 83:18 153:4 211:23 212:11,17
**contacted** 155:17 202:20 212:5,7,25 232:19 237:10,23
**contacting** 213:6
**contained** 126:20 188:8 216:4 221:6 221:22 229:16
**contents** 205:23
**Continued** 4:2 244:15
**contract** 177:8
**contracts** 177:8
**contrary** 229:25
**control** 23:14 51:4 228:20 229:11,15
**conversation** 65:11 88:2,6

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino   ---   February 26, 2026

258

**conversations** 48:16 88:8 104:18,23 119:21 129:8 138:13 158:22,23 158:25 181:13,15 181:18 182:12 222:22 234:23 235:2
**COO** 20:9 130:3 166:4
**COONEY** 4:17
**Cooperman** 123:9 126:10,13,19
**coordinate** 126:10
**copied** 159:19 160:2
**copies** 114:15
**copy** 7:8 37:24 39:13 46:3,14 81:10 101:15 102:22 111:15,22 113:8 116:5
**copying** 97:10
**core** 215:9,21
**corporate** 19:2 135:13 140:23 148:16,17 155:25 166:11 172:21 174:13,17,24 175:2 176:21 180:19 182:9 197:24 203:11 204:5 207:17,20 225:23 227:21
**corporation** 172:21 174:2 178:18 227:2 228:9,12,25 231:5 231:10 232:13
**corporation's** 139:23
**correct** 13:11 17:18 18:20 19:9 28:2 37:20 46:17 51:20 52:24 54:10,11 57:3 58:5,6,19 59:24 64:22 68:8 71:6 73:17 76:15 83:20

83:21 84:18,25 89:6 89:22,23 91:3,4 94:20 96:21 105:8 105:12,13,21 111:9 111:10 113:4,5 120:4 124:15 125:19 126:5 128:24 130:18,24 132:15 137:16 138:13,14 139:20 139:21 140:2,6,7,8 140:11,15,15,16,18 141:8 142:19,23 143:20,23 144:12 144:20 146:6,25 153:19,20,22 154:19,23 156:23 159:3,4,10,13 163:13 167:20 168:19 169:8,9,24 170:18 171:11,15 171:20,21 172:8,13 174:14,18 177:6,11 177:15,16,19,25 178:2 180:12 182:17 186:11 187:7,12,19 189:22 190:3 192:3,14,25 193:10,14,15,18 196:2 197:7,22 198:3,6 202:22,23 205:8 207:18,25 209:7,15,19 211:10 211:14 216:19 217:3,6 218:6 219:5 219:8,12 220:2 223:4,12 225:24 227:5,15 229:12,13 231:14,24 233:3,17 233:20 238:18 240:10,20,24 241:4 241:14,15,18
**correction** 140:10
**correctly** 7:13 197:23 211:12 217:22

223:7
**correspondence** 83:8 156:21
**Cosano** 199:2
**cosmetic** 87:11 88:3
**counsel** 5:3 6:11 10:5 16:21,23 17:17 47:3 48:6 74:18 75:24 76:7,9 104:19,23 134:14 150:22 151:16,19 157:19 159:25 162:9 203:24 225:19 234:24 245:3
**counsel's** 16:25 57:17
**County** 115:9,11 249:6
**couple** 11:4 133:10 221:14
**course** 73:8 161:8,13 190:14 229:6 230:20 242:7
**court** 1:2 2:10 5:16 6:2 7:7 45:22 59:4 62:3 115:10 118:10 189:18 205:3 234:10,17 235:25 236:8,9,11,14 237:20
**court's** 235:23
**courthousenews.com** 129:22
**courts** 63:15
**cover** 22:24 24:11
**coverage** 86:7
**covered** 149:17
**covers** 24:14
**CPA** 1:15 36:16,21 110:25 125:13
**CPA's** 1:19 103:22
**CPAs** 50:9
**create** 216:15 218:10
**created** 216:13 217:12,14,16,22 218:12,14

**creating** 177:14
**creation** 190:5 218:11
**credence** 163:8
**credible** 161:10,15 163:12
**credit** 14:12 40:16,20 40:25 41:14 44:5 56:22 86:22 87:6 88:12,15 93:24 105:25 118:17,21 139:14,14 141:4,15 145:18 172:7 198:21 220:11
**creditors** 14:13
**credits** 208:23
**creditworthiness** 41:5
**crime** 164:5
**criteria** 73:3
**cross** 23:9 178:19 206:2
**crossover** 158:13
**crystal** 148:13
**Cullen** 3:18 127:9,10 127:12
**current** 12:2
**currently** 40:20 45:22 210:21 244:3
**cursory** 184:8 208:2 208:10
**Cusano** 138:16,17,21 138:25 139:6,20 140:4 159:22
**Cusano's** 139:3
**customary** 90:9
**customer** 11:10 25:8 31:8,13,17 32:3,12 32:17,25 33:6,13 34:7 36:19 37:25 38:22 39:6 67:15,23 68:5,6 69:3 72:22 75:10,21 131:12 164:2 170:12,15,17 170:24,25 171:5,23

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino --- February 26, 2026

259

172:17 174:11,22 186:24 190:7 216:8 216:11 217:15,18 218:8 219:4 224:25 231:13,14,17,21 232:2,3,7,14 237:6 239:10,14

**customer-facing** 12:20

**customers** 29:4 49:19 157:25 158:5 167:15 168:10,16 171:7 216:9,25 217:5 240:17

**Cyruli** 3:9 6:18 78:23

**D**

**D** 213:19 246:2
**D-I** 117:10
**D-I-N-G-E-R** 129:21
**damaged** 193:16
**Dantone** 16:14 17:20 131:6
**data** 215:18 221:2,10 222:6
**database** 176:23 177:2 215:9
**date** 2:10 62:14 78:5 78:21 82:24 83:14 84:8 87:4 89:14 95:17 101:5 102:15 104:3 106:23 108:25 112:20 115:21 117:15 119:14,14 122:23 123:25 125:9 127:6 130:10,22 132:8 150:23 234:6 237:22,23 244:5 250:3
**dated** 78:24 79:18 83:4 86:14 89:16 95:19 97:8 103:5 109:4 112:10 117:11 122:25

123:18
**dates** 45:9 54:15 187:14
**David** 1:7 136:10,13 136:22 182:16
**day** 99:2 101:20 109:23 145:24 242:12 245:22 249:21
**day-to-day** 18:11 167:16
**DDA** 107:7,11,13 146:22
**deal** 12:18 167:15
**dealer** 112:4,7
**dealership** 21:9 87:12 88:4 209:2
**dealing** 154:19 196:7
**deals** 225:16
**dealt** 76:2 96:17 198:19
**debits** 208:13,22
**debt** 8:7 14:11,12,24 74:21
**decide** 20:11
**decided** 163:5
**decides** 42:2
**deciding** 43:9 160:23
**decision** 41:20 42:5,9 43:17 76:13 77:2 93:19 106:2 124:20 143:5 145:20,22 146:11 224:20
**decision-making** 43:12 105:17 192:20
**decisions** 145:15,23
**deed** 39:12
**deeds** 36:2
**deeply** 204:14
**default** 73:23 122:3 122:11,15
**defaulted** 75:2
**defendant** 3:18 4:5,9 7:18 164:9

**defendants** 1:22 198:2
**defenses** 135:9,15,19
**define** 141:13
**definitely** 32:22 118:4 182:20 194:15
**degree** 47:11 88:22 131:10 158:16 180:8
**delay** 109:18
**delegated** 76:11
**delinquent** 133:2
**demand** 28:15 212:9 238:8
**demands** 46:9 156:11 178:10
**Dentons** 129:23 130:2
**Deo** 1:14,14 44:13 52:17,22 53:20 61:17 62:4 66:21 77:11 80:10 89:17 90:5 91:17,20,21 92:2 98:11 99:5,7 99:11 100:9,11,14 101:9,9,16 102:18 103:16,24 105:6,11 109:4,12 113:10 114:15 115:12 118:9 120:10,16 121:12 122:9 124:14 125:12 143:14 144:5,12 146:19,21,23,24 158:8,9 161:20,22 162:3 163:20 179:4 179:13 181:22 191:19,21 192:6,10 192:21,24 193:23 194:7 202:14 205:8 207:24 214:11 222:11,14 223:3,10 224:22 226:3,11 227:10,11 228:3,18

228:19 229:4,10,17 230:2 231:16 232:10,10 239:3 241:24 250:3
**Deo's** 48:14 61:3 65:21 68:18 92:14 93:4,12,15 105:20 105:24 111:23 126:16 179:16 192:9 193:5,17 194:11 205:12 229:19 232:12 239:8
**department** 12:17 17:14 22:18,21,22 22:23 23:7,8,12,15 23:19 24:18,23 25:5 25:11 26:12,13,17 31:7 35:11 37:5 38:14 39:19 40:15 40:17 42:8,9 43:2 43:23,23 44:2 46:17 46:20 48:12 50:23 57:16,21 58:5,8,13 59:24 69:11 75:4,6 75:19 76:3,4,6,13 79:15 88:12,16 96:23 118:20 119:24 120:2 127:15 129:9 141:11,16,19 146:2 166:19 167:2 169:15,18 175:19 179:8,22 199:12,14 199:15 225:11,13 225:16,18
**departments** 23:10 168:20 169:4
**departures** 155:8
**depend** 144:21 189:16
**dependent** 211:20
**depending** 47:12 159:21 172:20 183:25 188:5 230:7

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 262 of 288 PageID #: 11749

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

260

**depends** 78:19
**Deponent** 250:4
**deposed** 7:21 8:10 149:13
**deposit** 49:4 60:8,9 60:11 107:13,16 145:8 173:8,18 179:14,17,24 188:11,22 198:19 198:24 217:8,16,19
**deposition** 5:6,13 6:3 6:5,6 10:5 18:19 19:3,11 20:12,17 28:16 56:21 60:19 65:9 99:19 117:23 118:6 136:5 147:14 147:16,20 148:3 149:7 150:6,21 151:9,13 152:20 203:24 227:14,22 242:20 244:6 249:11,12 250:3
**depositions** 19:12 149:10
**deposits** 168:10
**describe** 12:15 25:9 136:21 157:2 166:22 169:10 185:6 214:19
**described** 21:16 166:12
**designated** 19:8,13 97:6
**designation** 18:23 96:25 131:7
**despite** 9:14 64:5,11 65:24 120:3 124:21
**destination** 72:20
**detail** 11:21 25:16 197:17
**detailed** 9:20 11:3,7,9 11:14 185:23 205:16 208:11
**details** 27:8 171:6 198:8 226:7

**detect** 184:21 186:9 186:17
**detecting** 185:8 199:23
**detection** 199:8 200:19
**deter** 182:25 184:22 186:17
**determination** 142:15 175:17 193:22 194:7 211:7 211:13 233:23 234:3,7 235:23,24 236:2,23 237:5,19 239:17
**determinations** 184:2 236:21
**determine** 19:17,25 30:13 39:14 57:21 58:9 141:7 152:10 171:23 172:18 174:12,23 184:17 190:15 192:11 200:10 201:12 209:25 219:21 220:16 235:10,20 236:8,18 239:2
**determined** 239:4
**determining** 11:6 58:15
**deterring** 185:8
**device** 140:10,14
**dialogue** 158:5,22
**difference** 50:24 147:8 169:10,17 170:4 202:4
**differences** 170:6
**different** 26:17 69:11 69:22 82:13 94:11 96:13,18,18 166:8 168:20 170:9 181:21 206:11,13 216:15 221:8
**differentiate** 44:9
**differently** 240:14

**DiGeronimo** 118:8 118:16 139:11,18 139:24 140:5 141:4 142:5,9,17 143:3,4 144:15,25 145:11 146:2,6,12 198:16 198:20
**DiGeronimo's** 142:12 146:14
**digital** 140:10,14
**diligence** 39:20 90:15 176:12
**diligences** 176:14
**Dinger** 129:21,21
**direct** 16:14 21:23 51:4 131:9,11
**directed** 159:24
**direction** 212:20,21
**directly** 17:19 76:8 111:14 113:12 116:18 131:11 146:15 154:23
**director** 20:7 24:4 166:6 168:6
**directs** 9:13
**disagreement** 145:17
**disbursements** 209:13
**disciplinary** 165:9
**discipline** 164:25
**disciplined** 165:4 213:9
**disclose** 48:7
**disclosed** 122:9
**disclosing** 203:21
**disclosure** 153:17
**disconnect** 58:22
**discovers** 188:25
**discovery** 117:3
**discretion** 160:23 161:3
**discuss** 31:16 47:24 99:20 142:4 203:15 243:5
**discussed** 20:22

29:17 39:25 49:7 56:23,24 85:20 124:12 180:5,7 198:11,18 200:7 201:22 237:18
**discusses** 195:20 223:2
**discussing** 69:12 124:6 153:11 161:21 164:22
**discussion** 16:9 19:24 48:11 63:8 70:21 133:14 137:17 145:9,14 154:9 157:10 159:6 201:2 243:23
**discussions** 48:5
**dispense** 93:19
**dispensed** 93:23
**dispute** 47:19 52:9,13 65:19,20 81:16,22 128:16 233:5,8,13 237:16 241:12
**disputes** 10:21 51:12
**disputing** 204:24
**Disregard** 99:3
**distinct** 135:13
**DISTRICT** 1:2,2
**division** 79:15 82:11 96:23 145:19
**DLA** 1:19 53:16
**doctored** 184:10
**document** 12:23 18:13,13 46:4 65:10 77:25 78:9,12,18 79:3,5,10 80:13,15 83:3,24 84:3,6,9,14 84:17,24 85:4 87:2 89:12 94:19 95:11 95:15 100:22 101:3 101:7,12,15,18,22 102:8,12,22 103:15 103:19,23,25 104:5 104:11,12,24 105:4 106:15,21 108:21

108:23 111:13 112:2,15,18,22,24 113:6,8,15,18,22 114:7 115:8,9,14,16 115:19,22 116:2,5,8 116:19 117:7,13,17 120:7 122:18,21 123:23 124:3 125:3 125:7,13 127:4 130:8 132:6 160:10 179:13 188:13 197:20 221:25 222:20 227:25 229:5 238:17 246:11,13,15,17,19 246:21,24 247:2,4,6 247:8,10,12,14,16 247:18,20,22
**documentation** 33:17 34:8 35:10 42:11,20 49:25 50:6,8 55:8 66:20 84:12 143:17 153:15,17 157:14 157:16 172:23 173:14 174:6 175:16 178:7,17 180:11 183:17 197:2 204:22 207:17,21 229:24 230:2 231:9 233:12 238:8,9,10
**documents** 10:11,23 10:24,25 11:7,10,12 11:15,16,20,23 22:13 27:12 28:23 35:13,15 36:8 46:21 46:23 47:3,4,8,12 47:15,17 48:2,12 50:11 56:21 59:2 65:8 78:22 79:19 80:22 81:2,4 82:2 83:19 94:3 98:22 99:18,25 100:5,8 104:20 106:11 115:5 116:20

138:12 143:12 144:2 151:12,15,18 151:23,24,25 152:5 152:10,13,16 156:17 158:14 172:11,13 173:23 173:25 174:7,25 175:19 176:15,19 178:20 179:3,14,25 180:15,18 181:2,9 191:18 192:2 197:7 197:11,15,25 198:4 204:24,25 205:8,10 205:13,17,22,24 206:4,9,13,15,19,22 207:2,8 214:2 225:22 227:21 241:7
**doing** 27:2 40:8 63:24 171:11,19 237:14
**dollars** 22:25,25
**doubt** 36:24
**Douglass** 17:2,5
**drafting** 14:10 156:20 191:10
**draw** 67:23 85:3
**drawn** 69:2
**driver's** 172:12
**drugs** 148:25
**drum** 27:5
**Duces** 78:3,7,20 246:7
**due** 39:20 83:17 90:15 109:23 110:11,16 176:12 176:13
**duly** 7:4
**duplicative** 150:8
**duties** 190:15 230:21
**DWIGHT** 1:15
**DYKMAN** 3:18

———————
**E**
———————
**E** 3:2,2,21 4:2,2 7:3

134:4 246:2 249:2,2
**E-court** 118:10
**e-mail** 20:13 27:3 48:18 56:21 86:12 86:16 87:19 88:11 89:6,9,15 95:13,19 96:11,22,23,24 97:4 97:7,8,13,22 99:3 105:19 106:16,24 106:25 109:2,3 111:2 116:11,13,14 117:2,8,18 118:25 119:10,14 122:19 122:24 123:2,4,13 123:16,17 125:22 126:24 128:7 129:18,20,21 130:17,20,21 131:3 131:8,14,20 132:3,9 132:17 136:12,14 138:13 156:22 159:8,19 160:19 211:15
**e-mails** 49:18 99:20 116:22 118:8 127:7 143:19,22 155:6 159:18,23 160:2,4 182:12
**Earle** 3:19
**earlier** 62:23 74:18 79:8 148:6 156:18 207:16 215:3 223:8 225:21
**early** 109:12 153:5
**earn** 193:9
**easiest** 26:2
**EASTERN** 1:2
**education** 14:18
**effect** 5:15
**efforts** 38:14 74:16 74:19 75:21 76:2,7 76:14 171:14
**either** 33:16 93:22 94:23 113:3 114:21 119:7 126:18

131:11 168:2 173:9 185:12 199:4 222:15
**electronic** 94:7 196:12 213:22
**elevated** 76:4
**Ellen** 131:4
**else's** 141:25
**Emanuel** 3:6 6:20 134:23
**emanuel@sagelega...** 3:7
**emergency** 244:2
**employed** 138:25
**employee** 118:17 153:18 163:6 190:15
**employees** 24:17 40:19,24 44:6 64:3 69:17 164:19 187:5
**employer** 8:8
**employment** 14:7 154:2 155:3,12,15 156:8
**enabled** 240:8
**enables** 111:13
**encompass** 170:15
**encompassed** 44:4,23 218:12
**ended** 52:22 154:25
**enforce** 201:6
**enforcement** 194:11
**engage** 74:18 75:24 76:9
**engaged** 29:3 44:7 88:20 194:7
**engaging** 46:19
**enter** 215:8 218:5
**entered** 203:2
**entire** 191:6 238:21
**entirely** 168:21
**entirety** 198:5
**entities** 21:15 44:20 48:14 49:5 60:12,16 80:20 158:12

181:24 182:2,9,11 183:5 192:7
**entities'** 21:25
**entitled** 78:6,20 100:22 102:13 103:20,23 107:23 148:13 246:21
**entity** 60:10 68:25 79:11 82:11 109:24 138:3 173:4,4 174:8 174:13,17,24 175:2 176:21 186:16 188:15 189:20 191:15 214:15,17 215:2,8,11 216:16 216:17 225:23
**entity's** 217:13
**entries** 202:13
**entry** 203:11 213:19
**equity** 220:11
**equivalent** 168:19
**ERRATA** 250:2
**erred** 192:19 193:21
**escaping** 196:17
**ESQ** 3:6,15,21 4:4,12
**Esquire** 123:18
**essentially** 12:11 14:22 20:14 65:18 66:8 86:22 223:13
**establishing** 176:20
**estate** 1:7 39:9 169:4
**et** 74:13 115:12,12 250:3
**etal** 250:3
**evaluations** 165:12 165:17
**event** 145:17 191:8 202:24 203:2
**events** 135:22 136:23 139:8,12 146:18 148:11 199:17 200:5 201:19 202:12 203:3
**eventually** 13:18,22 42:5 74:2,17 75:23

**everybody** 62:18 131:21 133:12
**evidence** 192:18 233:2
**exact** 16:17 40:9 52:19 86:21 127:13 183:21 184:24 187:14
**exactly** 43:4 73:2 81:17 153:2 154:16 155:10 169:5 179:21 205:19
**examination** 2:7 7:11 134:10,18
**examined** 7:5 134:5
**example** 39:4 74:9 142:25 157:7,11 176:8 217:2 221:7 240:16
**Excel** 197:10
**exceptions** 145:14
**exchange** 20:13 56:22 121:14 161:18,24 164:5
**exchanged** 159:18
**exchanges** 136:12,14
**excuse** 26:13
**Executed** 123:7
**executive** 19:24 20:4 166:7
**executives** 152:21 166:4
**exhibit** 78:3 82:22 83:12 84:6 87:2 89:12 95:15 101:3 102:12 103:25 106:21 108:23 112:18 115:19 117:13 119:7 122:21 123:23 125:7 127:4 130:8 132:6 246:7,8,9,11 246:13,15,17,19,21 246:24 247:2,4,6,8 247:10,12,14,16,18

247:20,22
**exhibits** 243:11
**exist** 38:10 184:21
**existed** 120:3
**existence** 188:10 238:10 239:19,21
**existing** 130:2 174:3 174:17 175:20 187:6 188:16,23 215:6,10,11 223:11 224:12,15
**exists** 206:6,8 214:22
**expansion** 85:8,18
**expect** 30:10
**expected** 65:20 193:14
**expenses** 36:5 209:6 211:22
**experience** 14:18 209:9
**explain** 165:24 195:19
**explaining** 27:13
**expressly** 228:19
**extent** 28:21 48:4 93:8 94:21 104:16 114:24 115:2 150:9 160:9 162:7 165:15 202:10 215:25 221:22 234:22
**extenuated** 146:3
**extenuating** 63:9

**F**

**F** 249:2
**fabrications** 40:18
**face-to-face** 160:17
**facility** 168:4
**fact** 20:22 29:25 51:14 56:2 64:3 72:22 75:14 76:17 85:17 88:5 93:3,6 93:11 100:9,14 110:11,16 120:3 122:10 124:21

161:22 162:3 176:4 176:6 197:9 214:9 215:3 227:20 229:9 232:3,4 241:12
**failed** 223:10
**fair** 11:19 13:3 44:24 52:21 58:17 59:11 67:24 80:8 92:3 105:14 110:6,9 119:17 138:21 141:22 142:11,16 144:4 145:16 154:25 162:23 166:11,16 167:17 170:8 171:22 175:10,18 180:14 180:17 192:16 197:19 198:15 202:18 205:5 209:11 210:10,21 214:23 219:24 231:12 232:18 235:13
**fairly** 54:24 194:13 195:11
**fall** 167:10
**falls** 166:24
**familiar** 18:24,25 21:15 31:5 38:4,8 38:11 43:19 44:10 44:11,12,15 47:6 53:19 62:7 66:10,14 99:16 101:13 104:6 112:23 147:3,19 190:25 230:25
**familiarity** 99:17
**family** 244:2
**far** 23:7 36:20 40:15 69:12 82:10 124:15 154:16 158:6 198:12,17 207:7
**farms** 225:19
**FDCPA** 14:14
**FDIC** 169:14
**feature** 239:22

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino --- February 26, 2026

263

**features** 240:8,13,18
  241:3,8
**February** 2:3 132:11
  250:3
**federal** 45:22,24 59:4
  90:18,20,21 134:15
  134:20 164:4
  169:11,17,21,22,23
  170:4,22 196:2
**fee** 30:3
**feel** 56:20 66:19
  99:19
**fees** 132:15
**fell** 55:23
**field** 14:19 26:25
  27:5
**figure** 68:4 244:6
**file** 37:15 38:5,6
  73:21 75:10 84:21
  92:15 105:10 165:9
  174:7 180:9 194:21
  196:21
**filed** 10:13,15,17 38:2
  45:11 60:23 61:2,16
  62:11 66:20 76:24
  77:4 81:11 115:9
  176:7 194:14,16,24
  194:24 195:2,3,4,6
  195:10,12,14,17
  201:21 212:12,14
  221:19 227:8
  228:15 237:18,23
**files** 55:10 92:4,10
  93:7 101:6 114:24
  165:16 206:11,13
**filing** 5:4 51:2,3
  63:25 111:2 130:4
  134:16 195:20
  228:14
**filings** 63:14 196:19
**fill** 32:3,17
**final** 201:13
**finalize** 35:6
**finalizing** 59:19
**finance** 56:24

**financed** 122:14
  231:19
**financial** 38:15,21
  39:6,15 82:9,15
  103:16 106:7 112:4
  114:7,12 172:7
  191:16 192:20
  193:22 207:11,14
  207:22 209:2 210:9
  210:14 211:8 220:2
  228:20 229:10,15
**financing** 108:17
  120:11 121:23
  122:15 124:14,21
**find** 41:4 55:4,9
  70:19 75:16 80:21
  161:9 163:11 187:6
  205:14 206:9
**finding** 241:16
**fine** 78:16 165:19
  244:11,14
**finish** 243:8,11 244:5
**firm** 13:23 14:3,4,9
  14:24 78:24 126:9
  147:3
**firm's** 83:4
**firms** 12:24 15:3
**first** 7:4 15:21 31:15
  31:24 32:4,13 44:25
  52:16 53:20 62:8
  64:16 74:22,25
  79:23 80:16,19
  92:19,20 95:12
  103:17 104:7
  106:18,24 107:8
  109:3 112:16 116:2
  116:4 117:20,25
  118:15 119:5 124:5
  125:16 127:7 167:4
  171:7 186:5 206:25
  214:21 216:24
  217:14,22 218:6
  222:14 240:4
**Fisk** 1:9 3:12
**fit** 33:21

**fits** 86:3
**five** 149:14 167:13
**fixing** 214:7
**flag** 69:2 71:9,17,22
  72:14,19 73:4,10
  146:12 183:3
  205:14 206:20
  214:11,19,24
**flagged** 69:25 70:7
  144:15,25 185:22
  186:7 199:23
  201:24 202:8
**flagging** 70:10
**flags** 72:13 142:13
  143:3
**Floor** 3:19
**flow** 209:6
**flush** 218:25
**Flushing** 1:19 3:18
  6:24 7:16,18 8:2,4
  10:6,23 11:16,17
  12:3,10 14:7 15:6
  15:12,20,22 16:11
  16:22 18:19 19:8,12
  20:12 22:8,18 24:17
  26:20 28:22,23 31:2
  34:23 38:16 48:6
  51:2 53:22 57:6,11
  59:19,20 62:13,19
  64:4,10 75:15 77:9
  78:2,3,21 79:11,12
  79:13,16 82:2,9,15
  82:21,22 83:11,12
  83:25,25 84:5,6,7
  86:13,25 87:2,3
  89:10,11,12,13 91:9
  91:25 93:3,7,11
  95:12,14,15,16
  100:10,16,24 101:2
  101:3,4,14 102:11
  102:12,21 103:18
  103:25 104:2 105:3
  105:16,19,23 106:4
  106:17,19,20,21,22
  108:6,11,15,21,22

  108:23,24 111:22
  112:14,17,18,19
  113:7,16,20 114:6
  114:10,14,23
  115:15,15,18,19,20
  116:4,7 117:9,9,12
  117:13,14 119:5,13
  120:8 121:6,17
  122:6,9,13,19,20,21
  122:22 123:20,22
  123:23,24 124:20
  125:4,6,7,8,19
  126:4,17,25 127:2,2
  127:4,5 129:19
  130:8,9,18 132:4,5
  132:6,7 135:22
  138:25 141:7,7
  144:24 148:20
  153:19 154:2
  155:16,17 156:3,6
  156:14 157:3
  160:12 161:22
  162:2,4 163:6,25
  164:13,18 165:5,11
  165:20,25 166:12
  166:17 168:22
  169:7,21 170:8,23
  172:16 174:20,22
  175:12 176:9,22
  177:2,8,13,17,24
  178:5 180:19 182:7
  182:24 183:15
  186:16,20,22 187:5
  187:18,21,23
  188:24 189:13
  190:2 191:6,14
  192:8,13,19 193:8
  193:12,16,21 194:2
  194:6,10 195:16
  196:6,12,23 197:6
  197:10,16,20 198:5
  199:12 201:5 204:5
  209:10 214:25
  215:18 216:7,25
  221:2,18,24 222:6

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

264

222:11,14 223:8,14 223:20 224:15,24 225:10,22 226:11 226:23 228:6,22 229:5 230:21 231:14,17 232:14 232:19 233:22 234:2,6,11,16,18 236:3 237:4,10,15 237:23 239:16,23 240:9 241:3,10 246:6,12,14,16,18 246:20,25 247:3,5,7 247:9,11,13,15,17 247:19,21,23

**focus** 167:4 197:24

**focused** 60:7

**focusing** 166:22 167:22

**follow** 28:18 67:14 93:10 95:8 115:2 133:7 160:13 164:16 165:10 178:8 183:17 185:5 186:19 195:18 196:11,22 197:3 202:16 216:5 218:25 219:15,22 222:7 231:11 241:11 245:5

**follow-up** 153:13

**followed** 108:7 214:8

**following** 83:18 127:18 191:7 204:19 244:15

**follows** 7:6 134:6

**force** 5:15 200:8

**Ford** 112:4

**forestalled** 224:15

**forget** 167:13 169:5 221:10

**form** 5:10 21:2 24:24 30:7 32:2 36:23 38:18 57:25 58:12 61:5 64:13 66:3,5

67:25 69:5 82:4 92:5 94:25 98:13 100:18 110:19 111:12 134:17 137:13 143:8,16 144:7 166:15 169:25 177:20 180:21 184:11 185:19 189:4 191:24 192:22 193:24 212:18 214:12 223:5,22 232:15,22 234:21 237:7 240:11

**formal** 32:22 158:21 204:11 239:7

**formally** 30:17

**format** 151:4 159:5 160:18

**forms** 111:8

**forth** 29:19 166:10 168:11 209:15 240:20 249:12

**forward** 51:16 58:16 141:8 145:2 178:16 207:9

**forwarded** 129:23 130:21

**forwarding** 130:16

**found** 129:14 202:2,5 202:6

**four** 167:12 184:2

**four-and-a-half** 150:15

**frame** 45:12 109:19 237:24

**framework** 33:22 34:10

**fraud** 171:11 182:25 184:17,22 185:8 186:18,21 190:6 191:6,7 194:8,16 198:11,18 199:7,11 199:14,15,17,23,25 199:25 200:4,5,16

200:19 201:6,11,15 202:9,12,25 203:5 210:5,8,11,15,18

**fraudulent** 127:21 199:20 200:10 210:24

**fraudulently** 211:25

**front** 140:11

**frozen** 210:5

**fruitfulness** 77:6

**frustrated** 149:18

**full** 78:18 79:11 81:25 107:5 116:10

**fully** 128:2

**function** 43:25 44:7,8

**functionality** 178:19 185:6

**functions** 67:24 185:25

**funded** 50:14,21 52:10 54:23 59:11 60:4 61:2 64:10

**funding** 1:20 4:9 51:5 51:11,13 57:7,7 61:14 62:5,14 120:11,17 121:6,8 121:13,20 122:4,10

**funds** 67:8,12 72:23 87:10 88:2 89:5

**further** 5:8,12 6:8 71:5 118:14 129:14 131:21 134:8 149:20 157:16 200:12 249:15

**fuzzy** 112:2

---

**G**

**G-E-R-O-N-I-M-O** 117:10

**gain** 81:2

**gather** 49:24 153:16

**gathered** 143:17

**gathering** 10:10 18:14 80:21

**general** 16:23,25

17:17 19:23 31:10 48:5 57:17 100:7 104:19,23 136:2,8 160:21 163:17 185:20 186:20 188:21 191:20 217:13 222:3,4

**generally** 12:14 13:5 13:8 18:8 19:21 36:7 39:20 41:3 65:19 73:25 135:8 147:14 154:18 157:2 165:24 172:10,23 185:10 188:24 201:5 208:21 209:5 230:24 231:2

**George** 127:8,9,11 129:3 131:5 132:9 132:11

**Gerard** 95:22,23 96:2,12 127:12

**getting** 16:4 140:18 224:4

**gist** 71:23

**give** 8:14,19 9:19,21 9:24,25 11:7 33:3,8 34:17 39:4 42:2 45:12 78:18 152:22 163:8 175:7 205:20 212:21 226:7 235:19 240:16 243:7,14,16

**given** 20:2 71:8 82:18 128:16 140:24 148:7 204:22 212:16,20 229:7 249:13

**giving** 161:11

**go** 11:6 13:12 25:12 26:21,21 27:5,5,14 32:3 35:5,22 39:12 40:7 67:18 70:9 71:4 73:12 75:22 81:9 88:13 90:10

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 267 of 288 PageID #: 11754

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

265

101:7 111:14 141:17 142:10 143:2,7 161:6 198:17 200:25 242:7
**goes** 41:24 96:22 97:4 129:20 133:2 207:5
**going** 8:9 18:10 26:5 26:25 28:9 32:9 33:6 44:10 61:20 68:14 70:16 71:14 71:14 72:14 76:14 77:8,23,25 78:8 79:9 80:12 82:7,20 82:25 83:10 84:2,4 85:3 86:11,24 87:10 88:2,25 89:8,11 90:19 91:12,24 93:9 94:22 95:9,13,18 97:9,23 100:20,21 100:25 101:7 102:7 102:10,16 103:14 106:14,19 108:19 108:22 112:16 115:17 117:7,12 122:17 123:21 125:5 126:23 131:6 150:9,12 156:5 162:6,15 165:7,14 165:20 169:5 178:3 178:15 183:13 186:14 195:15 196:9 200:22 207:9 212:8 214:24 231:3 234:10,18 235:3,15 235:16,21 236:5,6,9 241:6
**GOLD** 1:16,16,17,17 1:17,18
**Gonzalez** 18:7
**good** 7:12 36:20 70:18 134:11,12 200:24
**gotten** 201:24 216:23 226:17

**government** 37:24
**government-issued** 172:13
**grab** 47:9
**graduate** 13:14
**graduated** 13:19
**graduating** 13:16
**Grasso** 20:8 129:24 130:3,16 131:3
**great** 90:6
**ground** 8:11 149:17
**grounds** 150:12
**group** 1:17,19 21:12 44:9 97:5,5
**growth** 85:8,18
**guarantee** 41:18,21 56:11 213:25
**guess** 35:23 60:17 64:18 65:11 69:19 77:3 83:8 87:18 96:22 99:25 148:12 170:10 225:8
**guidance** 33:3
**guidebook** 28:5
**guided** 199:9
**guidelines** 86:9
**guilty** 164:9

**H**

**H** 7:3 134:4
**hand** 191:10 199:18 199:18 213:22 249:21
**handbook** 28:5
**handle** 12:20,22 18:11
**handled** 49:4 179:7,9 201:13
**handles** 12:17 22:19 145:8
**handling** 19:25
**hands** 51:19
**happen** 26:24 67:22 214:4
**happened** 20:14 64:6

131:21 163:15 192:17 224:11,14 235:6
**happens** 215:17 218:8,10
**hard** 113:23
**Harry** 1:14 4:4 6:25 65:4 123:8,17
**he'll** 243:10
**head** 23:18 24:7,8,20 53:18 82:17 91:11 137:22 145:21 182:11,19 200:16 200:17 225:5,13
**headquarters** 15:13
**heads** 23:13
**hear** 53:4 120:20 201:7
**heard** 52:25 53:9,13 62:10 79:14
**hearing** 64:17 118:10
**held** 2:9 16:9 70:21 238:25
**HELOC** 220:13
**help** 117:5,6 119:10 144:11 240:16
**helping** 143:14 144:5
**hereinbefore** 249:11
**hereto** 5:4
**hereuntoset** 249:21
**hierarchy** 146:6 166:12,17,20
**Hiesiger** 2:11 249:7 249:25
**higher** 93:24 142:10
**highlighted** 85:6
**Highway** 4:5 21:14 60:13 182:5
**history** 165:10 184:4
**hits** 176:17
**hold** 16:6 127:25 128:5,8,11,13,24 129:5,11,14,15,17 157:13 159:3 189:3 189:25 202:18

204:3,8,25 211:4 221:17,21 237:17 239:2,24 243:20
**holder's** 215:19
**holders** 25:8
**holds** 204:16 215:21
**home** 220:11
**honest** 16:17 60:7,21 179:22 218:9
**honestly** 23:3 97:12 146:7 209:24
**hope** 245:8
**hour** 151:3 243:10
**hour-and-a-half** 70:17 151:3
**hours** 149:2 150:7,15 244:4
**HR** 154:9,10 155:7
**human** 206:6,11
**hundred** 11:4,4 35:8 41:13 99:8 100:2,15 102:18 167:25 173:10,22 179:6,10 188:19
**Hwy** 1:5,20 3:9
**Hylan** 1:7,8,8,8,9,9 3:11,11,11,11,12,12

**I**

**IAG** 6:18 21:7
**ID** 215:5,10 216:6 219:17 220:19
**idea** 87:23 88:8 200:21
**identification** 78:4 82:23 83:14 84:8 87:4 89:14 95:17 101:5 102:15 104:3 106:23 108:25 112:20 115:21 117:15 122:23 123:25 125:9 127:6 130:10 132:8 219:11
**identified** 146:10

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 268 of 288 PageID #: 11755

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

266

173:23 203:12
**identify** 137:20 183:8
**identifying** 172:11
**identity** 171:24
**iGObanking** 169:2
**illegal** 68:7,13
**immediate** 96:9
**important** 46:11
   209:25
**improvements** 87:12
   88:3
**in-house** 16:21 40:11
   40:13
**inability** 193:17
**inception** 185:18
**incident** 49:15
**incidents** 164:15
**inclined** 149:21
**include** 171:14
**included** 92:14,23
   158:23 159:23
   165:16
**including** 85:23
   181:4,4
**income** 85:22 113:24
**income-to-debt**
   55:17
**incoming** 211:22
**inconsistency** 100:3
**incorporation** 172:22
   173:3 174:5 228:13
**incorrect** 158:15
**increments** 73:8
**Independent** 103:21
**independently** 65:7
   176:10
**Index** 115:13
**indicate** 6:14 42:12
   241:8
**indicated** 119:25
**indicates** 87:25 90:17
**indicating** 83:15
**indication** 111:21
**individual** 42:4
   135:14 138:15

139:10,18 145:25
146:10,11 154:11
157:9,9 161:19,22
168:17 171:19,24
171:25 172:4
174:12,23 175:13
186:10 188:14
198:15 208:22
216:14,17 228:4
233:11 239:6
**individuals** 24:12
   135:21 136:2,5,8
   158:9 161:21 172:5
   172:10 175:8 179:2
   181:15 183:5
   203:12
**industry** 170:17
**inform** 67:7 129:12
**information** 12:21
   25:18 31:11 33:4,21
   35:3 37:8 40:24
   43:3 55:5,9 57:10
   62:24 64:25 73:20
   81:20 82:13 84:23
   88:13 90:7 104:17
   110:22 114:12
   126:20 155:7
   157:16 171:6
   182:21 186:23
   192:3,14,19 205:6
   214:18 215:20,22
   216:3,11 220:22
   221:4,5,10 248:2
**informed** 58:18,24
   58:25 128:15
**initial** 11:24 52:20
   124:8 148:24 175:2
   218:7 238:6
**initially** 136:2 187:11
**initiative** 128:18
**input** 43:2,4,5
**inquire** 50:18 53:21
**inquired** 129:9,16
**inquiry** 237:25
   238:11,16,20

**Insert** 26:10
**inside** 167:19
**inspect** 39:12
**instance** 67:11
   128:13 191:5
   224:18,19
**instigating** 76:15
**institute** 169:23
**institution** 189:19
**instruction** 150:17
   162:23 212:16
**instructions** 8:10
   148:7,9
**intend** 234:16
**intended** 67:12
**intends** 67:8
**interaction** 49:10
   52:20
**interactions** 49:16
   138:19
**interchangeably**
   226:16
**interest** 21:12 61:4
   66:22 86:7 175:24
   180:11,20 193:10
   193:14 241:13,18
   241:21
**interested** 152:12
   249:18
**interests** 22:7
**internal** 157:10 184:2
**internally** 26:4 74:20
   201:22
**international** 171:18
**interrogatory** 185:4
   196:21
**interview** 158:18,21
**interviewed** 157:8,9
   158:17
**interviews** 157:23
**investigate** 38:15
   157:4 162:3 163:6
   163:15 164:18
   224:24
**investigated** 129:14

163:16
**investigating** 160:21
   161:8
**investigation** 38:21
   106:5 126:4 160:16
   160:18 161:14
   163:18 181:11
   204:4,9,12 205:23
   215:14 222:10
   235:9 237:25 239:5
**investigations** 38:23
   39:2 58:15 162:8
   196:19 200:2
**involve** 171:17
**involved** 10:10 13:6
   21:18 31:6 34:19
   35:25 41:21 43:9,13
   43:15,17 44:20
   45:11,23 51:6 58:20
   61:18 77:10 80:4
   84:15 94:24 104:18
   128:4 131:10 139:8
   139:16 141:21,23
   146:19 154:18
   156:13 157:25
   177:24 188:3 190:5
   190:9
**involvement** 20:23
   121:2 139:12
   177:14 223:3
   229:21
**involves** 57:22
**involving** 10:21
   58:10
**IRIS** 1:6
**irrespective** 143:5
**IRS** 111:15,22
**Island** 1:10 3:13
   13:23 21:12 22:6,7
   140:6
**issue** 10:19 13:6
   20:24 21:25 35:24
   47:19,21 55:23
   59:18 60:8,10 61:23
   64:22 67:3 81:9

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 269 of 288 PageID #: 11756

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino   ---   February 26, 2026

267

99:6,20,21 122:14 136:23 157:13 193:22 204:13 205:7,14 233:19,23 234:3,8
**issued** 62:2 64:12 165:2 184:18 192:21
**issues** 12:19 18:17 20:19 21:19 49:19 50:15,20,25 63:9 79:24 80:9 81:15 142:13 154:19 173:14 244:7
**issuing** 103:12 194:3 194:4
**items** 94:13 152:16 183:3 201:14 213:13

**J**

**J.P** 1:20
**Jamaica** 3:5,5
**JCianciulli@weirl...** 4:12
**Jeffrey** 3:15 4:12 6:17 83:13 246:9
**JL** 103:20
**Joanne** 200:16
**job** 13:22 14:21 15:5
**John's** 13:13
**joint** 145:15
**Jones** 1:15,19 66:10 66:13 87:21 103:22 123:7 125:13 126:8 126:21
**Jory** 1:6 3:10
**Joshua** 1:6 3:10
**JR** 4:4
**jruderman@cszla...** 3:16
**judge** 150:5 235:3
**judgment** 14:11 41:10 56:7
**July** 78:22 82:22 83:4

83:16,17 104:25 246:8
**June** 78:25 79:18 101:20,25 103:5 153:21 154:15
**June/July** 104:14
**jurat** 244:16

**K**

**K-1** 38:11
**K-W-U-N** 126:12
**Kataev** 3:6 6:20,20 16:8 17:3 28:21 91:16 133:11 134:10,24 150:13 156:5 160:9 162:12 162:15,20 164:12 165:7,14 178:3,12 178:15 183:13 185:3 186:14 195:15 196:9,20 200:24 201:4 202:10 215:25 218:20 219:14 222:5 223:25 224:6 226:9 231:3 234:25 241:6 242:7,11 243:6,13,18,22,24 244:10,13 245:2 246:4
**keep** 16:5 67:17 69:21 80:2
**keeps** 196:18 221:3
**Kelly** 23:19,20,22 74:17 76:8,10,23 131:4 145:22 168:7 225:5,9
**KHAN** 1:6
**kickbacks** 164:14
**kind** 14:21 30:20 32:3 47:20 94:2 100:5 189:10 199:4 199:18 206:4 213:17 226:16 237:5 239:7

**kindly** 34:4
**kinds** 70:13
**Kirshenbaum** 14:6 14:13,17,24
**knew** 10:20 58:21 89:19,21 119:5 122:15 131:10 208:25 241:13,17
**know** 9:6 11:20 17:20 18:22 19:13,16,20 21:17 23:3,5,7,22 23:25 24:5,16,19,21 25:4,17,25 27:4,8 27:17,23 28:4,8 29:2,6,9,10,14,25 30:9,12,17,19,22,23 31:4,23 32:6,7,7,15 32:20,21 33:24 34:20,22,25 35:4,9 35:13 36:11,14,17 36:18 37:4,9,11,17 37:21,23 38:3,13,20 38:23,24,25 39:2,17 39:18 40:3,7,9,11 40:15,19 41:7,10,14 41:17,19,20,23 42:4 42:7,14,17,21,25 43:7,8,24 44:2,3,6 45:5 46:5,6,7 49:8 49:12 50:12,17 51:9 52:2,3,16,19,22 53:20,24 54:3,6,9 54:13,18,23,25 55:13,15,16,20,22 55:25 56:2,5,6,9,10 56:13,14 57:11,13 59:5,14,21 60:10,18 61:19 62:12,16,17 62:17 63:13 65:13 66:9,16 67:5,6,10 67:13,14 69:2,6,7 70:2,6,9,24 71:3 73:9,15,18,18,21 74:23 75:12,14,18 76:17,20,21,21 77:2

79:12 82:10 85:17 85:19 86:2,6,8,10 86:18,21 87:16 88:5 88:10,23 89:3,4,24 90:9,13 91:9,11 93:2,5,13,17,18 95:23 96:7,16,24 97:4,12,19 98:4,8 98:12 99:6,10,11,21 99:24 100:14,19 101:14,22 102:2,5 102:21,25 103:4,6,8 103:10 104:23 105:3,7,10,23 106:3 106:4,8,9,13 107:8 107:11,12,14,17,18 108:6,9,10,14,15,18 109:6,17,18,25 110:15,20,21,24 111:4,6,8,17,24 113:6,7,11,14,15,20 114:6,9,10,13,14,18 116:4,6,7,9 118:16 119:8,9,12 120:23 120:25 121:5,9,16 121:18,19,25 122:2 122:7,8,12,13,16 123:12 124:16 125:20 126:17,22 127:9,13 128:6,11 128:21 129:3,24 130:11 132:16,20 133:2,4 137:9,21 143:24 145:14 146:7,15 147:6,17 147:22 148:18 154:21 158:5 164:11 165:6 170:11,12,13,15,17 170:24,25 171:5,22 172:16 174:10,21 179:23,23 181:6,8 182:16,19,19 187:14 190:6,23 197:8 198:8 200:13

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

268

200:15 203:10
209:14 210:13
212:2,3,19 213:15
214:16,18 216:11
218:14,20 220:15
222:2,17 224:10,20
224:23 225:3,4,14
227:12 235:21
238:4,19 239:16,20
240:12 241:20,22
242:13 243:19
**knowing** 60:5 64:5
64:11 68:5
**knowledge** 10:18
20:19 37:2 44:18
50:23 53:12 80:6
84:20 135:14,18
138:24 139:4,7,22
139:23 140:23,24
144:3 148:17 152:5
153:24 155:15,17
155:21,24,25 158:3
159:20,25 160:4
164:25 165:3,11
170:20,23 172:15
173:5,11 174:2
177:13,17 178:25
180:4,19,22,24
182:6,7 184:12
185:16,24 187:2,15
190:20 191:20
194:23 196:4 197:5
201:18,25 202:25
203:7 204:5 213:8
214:21 218:17
222:9,13 223:25
224:2,9 228:22
231:16 240:7 241:2
242:16,18
**known** 219:19
**knows** 98:15
**kosher** 200:11
**Kwun** 126:11,12,18

—————————
**L**
—————————

**L** 7:3 134:4
**lack** 145:19
**language** 92:24
189:17
**large** 167:13
**larger** 44:9 167:3
171:2
**late** 14:2 75:2
**Laurie** 1:15 53:2,10
53:12 89:17,20 90:2
90:5 109:4,13 164:8
222:10,16,22
**Laurie's** 223:2
**law** 12:24 13:12
194:11 196:2
236:22
**lawsuit** 7:17 10:13,14
10:17 22:11 57:3,6
58:10,24 59:3 60:23
61:2,7,15,23 62:11
74:2,19 76:15,17,24
77:4,9,16,20 81:9
81:21 89:22 98:23
104:8 113:4 114:21
115:11 118:2
119:13,19,24 120:3
124:22 125:11
130:7 153:17
156:23 157:25
158:3 187:18,24
188:3,6 194:15,24
201:21 204:15
212:12,14 221:18
227:8 233:7,11
237:18,22 239:19
**lawsuits** 59:6 160:22
186:24 187:6
188:10,17,23
**lead** 189:3
**leader** 96:3,13,17,20
127:11 168:3,5
**leaders** 96:11,14,18
**learn** 14:21 181:14
188:2 204:20 227:7
**learned** 130:14

187:18 189:5
**learning** 154:14
155:2 187:23
**Leasing** 1:6,21 3:10
21:13 100:24 102:9
102:13 107:23
112:8 131:12 182:4
246:22
**leave** 243:13
**led** 110:22 204:3
211:4
**left** 133:11 150:15
154:3,22 203:18
210:2 211:9,14,18
244:4
**left-hand** 103:19
**legal** 3:3 4:18 6:21
10:21 12:4,16,17,19
13:5 18:15,16,17
128:5,23 223:24
**legally** 76:14
**legitimate** 65:22
**lending** 90:11 166:5
179:22
**Lesley** 138:16 159:22
**let's** 73:12 74:10
159:6 200:25 242:7
243:6,7
**letter** 65:14,15,17
82:22 83:4,6,7,12
83:15 123:8 124:9
124:13,18,23,24
125:17 126:2,3
246:8,9
**letterhead** 83:4
123:17
**letters** 123:19
**level** 129:16 186:5,7
186:10 208:10
**levels** 146:8
**leverage** 75:11
**levied** 156:14
**levies** 12:22 18:12
**Lexington** 3:13
**liability** 210:7

**Libertas** 1:20 4:9
120:11,21,23
121:13,21 122:4,10
122:15
**Libertas's** 120:25
121:7
**LIC** 1:17
**license** 172:12 174:8
**lien** 56:3
**liens** 62:4
**lieu** 6:8
**limit** 183:24
**limitation** 22:24
**limitations** 223:15,18
224:16
**limits** 70:13
**line** 85:5,21,24 96:20
108:3 113:23 248:3
**LINE(s)** 250:5
**lines** 24:4 66:20 86:8
174:10 184:5,6
220:11 221:16
**linked** 217:20 219:25
**liquidation** 72:11
**Lisa** 2:11 16:14 17:13
131:6 249:7,25
**list** 30:19 94:3 127:18
200:9 242:21
**listed** 106:6 128:9
230:18 231:23
**litigation** 12:24 19:25
40:4,8 44:16,17,21
44:22 45:2,10,22,23
46:2 50:3 53:6,9,14
56:15,23 57:2,12,15
57:22 58:18,22
59:18 75:24 77:5
92:18 121:11
131:17 221:17,21
223:11 224:12,15
225:19
**little** 1:19 15:3 21:6
35:18 103:22 112:2
113:23 141:12
**LLC** 1:5,5,6,7,8,8,9,9

1:9,10,10,10,16,17 1:17,17,18,18,20,21 1:21 3:3,4,10,10,11 3:11,11,12,12,12,12 3:13,13 4:9,18 35:16,21 107:23 135:2 172:22 174:2 226:24 228:23 232:13

**LLCs** 38:5,6 173:3

**LLP** 1:19 3:9,18 4:8 6:21 103:22

**loan** 20:24 21:5 22:8 22:10,14,17 25:10 25:13 26:20 31:9,18 32:18 34:17 35:2 36:3 38:17 39:9,10 39:19,21 40:25 41:24 42:3,13,16,18 42:21 43:6,10,18 44:11 50:13,20 51:3 51:5,11,13,16,24 52:8,10,14,23 53:21 53:25 54:7,10,14,23 54:23 55:2,5,7,14 55:22 56:3,11 57:8 57:23 58:21 59:9,10 59:13,15,20 60:3,6 61:2,15,15,18 62:15 64:4,10 67:2 68:22 70:25 71:8,15,20 72:12,22 73:14,23 73:25 74:9,11,23,23 75:17 76:19,19,25 77:13,17,21 79:19 79:25,25 80:3,4,5 80:14,21 84:13 85:5 85:14,17 88:17,19 88:21,24 89:2 91:19 92:12 93:14 94:4,10 97:3,14,17,20 99:9 99:15 103:12 106:2 107:15,18,21 109:9 110:8 113:17 114:8 120:3 121:6,7,21

122:5 126:5 131:22 131:23 132:15,18 132:25 139:17 143:15 145:3,5 146:22 173:20 179:20,20 188:18 192:24 193:5,18,22 194:3,4 217:2,7,9 217:11,15,23 220:7 223:10 224:25 225:2,7,7

**loan-to-debt** 55:24 85:21

**loans** 22:19,25 25:8 41:17 55:18 62:4 63:22 96:18 107:19 109:13 132:12,21 141:17 145:7 173:9 193:9 217:19 220:9 220:10

**LOC** 87:10

**local** 26:21

**located** 15:15 26:14 28:7 69:14 139:19 142:19

**location** 29:18 161:5 167:5,16,22 168:8,9

**log** 160:12

**long** 12:6 13:23 14:23 140:5 150:25 152:4 221:3

**longer** 153:18 200:21 200:22 221:9 230:3

**look** 42:17 55:10 75:10 80:20 81:9 116:16 132:12 207:13 208:5 215:19 242:11

**looked** 81:18 127:19 156:17 182:14 197:17,20 198:5 204:14 205:5 207:16 227:14

**looking** 31:17 33:9 46:11 47:21 82:15

99:4 125:25 130:15 140:22 148:10 157:5 158:10,12 198:23 199:3,9 210:15 219:20

**looks** 97:13 101:13 104:6 112:23 119:2 119:3 123:19,19 130:25 186:10

**lose** 194:4

**loss** 36:12,14 75:25 107:24 108:8,12,16 109:23

**lost** 194:2

**lot** 208:20

**lunch** 133:9

**Luncheon** 133:15

---

**M**

**M** 7:1,3 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1 69:1 70:1 71:1 72:1 73:1 74:1 75:1 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1

108:1 109:1 110:1 111:1 112:1 113:1 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1,4 135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 159:1 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1 176:1 177:1 178:1 179:1 180:1 181:1 182:1 183:1 184:1 185:1 186:1 187:1 188:1 189:1 190:1 191:1 192:1 193:1 194:1 195:1 196:1 197:1 198:1 199:1 200:1 201:1 202:1 203:1 204:1 205:1 206:1 207:1 208:1 209:1 210:1 211:1 212:1 213:1 214:1 215:1 216:1 217:1 218:1 219:1 220:1 221:1 222:1 223:1 224:1 225:1 226:1 227:1 228:1 229:1 230:1 231:1 232:1 233:1 234:1 235:1 236:1 237:1 238:1 239:1 240:1 241:1 242:1

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 272 of 288 PageID #: 11759

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

270

243:1 244:1 245:1
**M-A-G-A-L-D-I**
95:23
**M-C-C-L-I-N-T-O...**
17:6
**Magaldi** 95:22,23
96:2,12 97:11 124:7
127:12
**main** 69:14
**maintain** 69:20
187:23
**maintained** 218:24
**making** 171:18
**manage** 12:24 76:6
200:5 216:8
**Management** 1:10
3:13
**manager** 24:4 128:14
136:24 145:7
167:11
**managers** 129:16
**Managing** 169:16,19
**Mangano** 200:18
**manner** 6:13 31:10
165:4
**manual** 186:7
**manually** 186:2
**manuals** 178:6
183:16 197:2
**MARC** 1:15
**March** 86:14 95:19
97:8 98:25 103:17
107:4 109:10,20
117:11 119:14,18
123:18 187:11,17
249:22
**March/beginning**
79:20
**Maria** 20:8 129:23
130:3,16 131:3
**mark** 46:14 77:25
82:20 83:10 84:4
86:24 100:25
102:10 106:19
108:22 112:16

115:18 117:12
122:20 123:21
125:5 127:2 132:4
185:3
**marked** 78:4 82:23
83:13 84:7 87:3
89:11,13 95:14,16
101:4 102:14 104:2
106:22 108:24
112:19 115:20
117:14 122:22
123:24 125:8 127:5
130:9 132:7
**marriage** 249:17
**Mary** 131:4
**matter** 8:4 13:4
161:2 163:17
189:13 194:14
201:22 222:20
223:20,21 225:8
229:6 230:12,14
233:9 249:19
**matters** 12:18,19
14:11 18:11 21:19
**MBuccino** 130:17
**McClintock** 17:2,5
20:6
**mean** 19:23 24:25
25:19 27:7 33:3
41:3 66:15 143:24
147:7 156:24
166:25 189:16
190:11,13 193:6
213:16 221:5 228:4
233:7 238:23
239:24 240:12
**means** 147:4
**meant** 162:3
**medication** 148:25
**meet** 32:4
**meeting** 20:10 31:24
136:18 150:22
151:2,4,7,8,19,22
152:2,2,6 159:9,12
160:17,24,24 161:4

**meetings** 150:20
160:15
**meets** 31:14 32:12
86:9
**member** 101:8 232:4
232:13
**members** 26:16
56:22
**memory** 148:12
**mentioned** 62:23
64:19,24 65:3 74:17
82:8 147:18
**MERCKLING** 1:15
**message** 161:18
164:21
**messages** 203:23
**Messrs** 142:22
157:21 165:17
181:13
**met** 151:6
**Michael** 1:15 2:8
52:25 53:9 89:17,20
109:4,12 131:3,4
222:10 245:15
246:3 249:10 250:4
**Mike** 24:6
**Miller** 97:8,11,22
99:2
**million** 39:8
**mind** 70:14 193:20
**mine** 235:24
**minutes** 152:7 243:8
243:9,14,16
**Mione** 200:17
**MISER** 215:22,24
216:4,13 218:6,22
218:23 219:3,16
220:7,14 221:6,12
221:22 222:2
**mistaken** 45:25 54:21
60:18
**moment** 74:10
196:17 242:5
243:21
**money** 68:24 71:7,14

71:14,17,20 90:11
163:20 193:9 194:2
194:4 208:3,6,8
209:23 210:2 211:9
**monies** 67:4 73:7
**monitor** 69:24
**month** 113:24 121:22
**monthly** 55:13 155:6
207:22
**months** 45:16 68:23
73:8
**MORGAN** 1:20
**morning** 7:12
**mortgage** 39:13
**mortgages** 107:20
220:10 225:16
**motions** 14:11
**Motor** 1:5,21 3:10
21:13,14 22:9
100:23 102:9,13
107:23 112:4,8
121:3,10 124:15
128:3 131:12 182:4
246:22
**Motors** 1:4,17,17,18
1:18,19 3:4 21:9
90:8 107:6 128:3
132:14 134:25,25
137:24 161:20
180:12 182:4
204:23,25 219:18
227:2 250:3
**motors1.com** 89:18
**Mouchacca** 75:3
**move** 58:16 141:8
143:19,22,24
**moved** 16:2 35:7
**moving** 145:2
**multi-member** 38:6
**multi-page** 112:14
**multiple** 42:8,12 59:6
215:16
**muster** 36:15

_____
**N**
_____

Case 2:23-cv-06188-JMW Document 437-3 Filed 03/18/26 Page 273 of 288 PageID #: 11760

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino --- February 26, 2026

271

**N** 3:2 4:2 7:3 134:4 246:2
**N.A** 1:20
**Nadia** 18:6
**name** 6:15 14:3 16:25 17:12 23:17 32:10 44:3,12,15,18 48:24 48:24 51:23 52:25 53:5,9 65:12 66:9 66:12 97:12 120:21 134:23 138:2 154:10 176:25 182:11 184:9,24 185:7 196:16 219:8 219:17 220:19 250:4
**named** 60:12 138:16 139:10 161:19 189:14
**names** 18:5 21:17 25:21 26:3,7 40:23 44:25 65:4 137:20 183:21
**napkin** 36:20
**Nassau** 115:9,11
**nature** 11:25 13:2 20:2 36:2,5 52:19 64:8 153:14 159:21 185:15 195:12 211:21
**near** 224:6
**necessarily** 72:24 89:25 187:25 188:4 198:8 214:24 228:10
**necessary** 19:22 130:5 189:11 206:2 225:20
**Ned** 129:25
**NedHBassen** 129:22
**need** 8:24 33:22 34:15,15 35:6 61:8 78:11,14,17 92:20 94:11,16 97:23 110:3,7,12 126:14

140:19 142:14 161:5 216:18 228:23,24 230:17 230:18 231:6 242:6 245:4
**needed** 47:4 216:20 230:8,16
**needs** 32:3 35:10 90:17 111:11 200:12 244:2
**negative** 85:23 86:3
**negotiated** 180:7
**net** 85:22 108:3
**never** 64:7 79:14 80:4,5 186:9 216:23
**new** 1:2 2:12 3:5,14 3:14,20 4:6 13:10 62:3 66:24 115:11 140:2 169:15 172:24,25 215:8 230:22 249:4,6
**newest** 95:18
**nod** 9:2
**non-attorneys** 58:9
**non-conforming** 204:24
**non-payment** 75:17
**non-property** 36:3
**normal** 65:20 81:4
**Northshore** 1:5,21 3:10 21:13 22:9 44:11 52:17 53:21 59:20 60:13 61:4,16 62:5 68:17,23 70:4 70:25 73:14 75:15 77:11,21 80:9 84:13 89:17 90:8 91:19 98:19 99:8 100:23 102:9,13 107:6,15 107:23 110:10 111:11 112:8 114:15 120:10,16 120:17 121:2,8,10 121:12,14,16,23 122:3 124:15 128:3

132:14,18 182:4 187:6,10,19 191:22 193:4,17,23 202:13 223:9 224:22 227:17 231:24 232:10 246:22
**Northshore's** 123:11
**Northshoremotors...** 90:6
**notary** 2:12 5:14 7:5 134:19 245:24 249:8
**note** 9:11,25 55:7
**noted** 119:9 245:12
**notice** 63:21 82:19 140:9 147:14,16,20 147:24 148:3 152:22 242:20
**notices** 12:21 18:12
**notified** 75:2
**notwithstanding** 141:24
**November** 120:12,13 120:18
**Novicky** 161:19
**number** 21:7 25:19 86:3 115:13 126:8 126:12 184:6,7 206:9 207:4,4 209:10 215:5,10 216:6,7,8,14,19,23 217:6,10,11,12,22 217:23,23 218:5,6 218:13,14,18 219:5 219:11,19 220:17 220:19 242:13
**numbers** 23:4 95:4 108:8 115:4 216:16 219:19,22
**numerous** 212:25
**NYC** 1:16 208:13

─────── **O** ───────

**O** 7:3 134:4
**oasis** 183:10,15,19,23

184:13,16,18 186:6
**oath** 6:9,10
**object** 48:3 66:5 162:6 165:21 178:10
**objecting** 150:12
**objection** 9:11,14 21:2 24:24 30:7 36:23 38:18 57:25 58:12 61:5 64:13 66:3 67:25 69:5 82:4 92:5 98:13 100:18 104:15 110:18 137:13 142:8 143:8,16 144:7 150:4,14 166:15 169:25 177:20 180:21 185:19 189:4 191:24 192:22 193:24 210:12 212:18 214:12 223:5,22 232:15,22 234:21 237:7 240:11 243:2
**objections** 5:9 6:13 134:17 148:2
**objective** 192:5
**obligation** 176:9 237:5
**observations** 209:22
**observe** 143:13
**obtain** 26:19 27:14 63:22 75:20 101:15 111:15 120:10,17 171:7 172:6 182:20 193:14
**obtained** 102:21 113:7 116:5 192:25 193:4 217:11
**obtaining** 29:4 62:4 143:15 147:9
**occur** 199:17 210:11 215:7
**occurred** 118:14

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino --- February 26, 2026

272

202:24 210:16
**occurrence** 215:13
**occurring** 191:8
**October** 112:11
**odd** 211:17,19
**OFAC** 183:4
**offer** 185:4
**offering** 130:4
**offhand** 23:4 27:23
  45:9,19 46:6 55:3
  73:22 183:22
**office** 15:22 24:15
  57:18 69:15 115:10
  128:5,24 167:24
  168:15
**officer** 16:24 17:7
  166:5,5
**offices** 26:18 78:23
**ofNew** 249:9
**okay** 19:4 28:14
  34:10 39:10 68:15
  73:6 79:2 87:22
  132:12 135:6,7
  140:25 144:2
  148:22,23 149:25
  178:14 240:25
  243:6 245:8
**old** 8:7 97:24 98:9
**oldest** 95:18
**once** 8:3 18:19,21
  32:12 107:6 111:3
  156:11 212:11
  221:11 243:9
**one-off** 49:18
**one-page** 122:19
**ones** 59:6 179:9
  200:6
**ongoing** 77:5 223:19
**online** 81:9 169:2
**Onsite** 176:16
**oOo** 4:19 5:17
**open** 11:11 48:15
  94:13 107:7,15
  117:7 137:2,7,15
  138:3,7 144:6,12

146:21 158:10,12
168:16 172:7
176:24 180:8
181:16 182:2,8,14
186:25 189:19
191:16 207:4
213:24 214:14,20
216:18,24 230:4
231:5 240:9
**opened** 16:3 68:17
  137:4,11 144:14
  180:6 182:3 187:11
  187:16,24 189:2,7
  189:22,24 190:19
  202:22 205:24
  206:24 207:24
  211:25 213:20
  214:11 215:3
  226:12 228:2,5
  229:11,18 231:19
  232:9 233:20
  237:25 238:16
  240:5 241:4,10,23
**opening** 11:24 18:14
  143:14 152:14
  153:15 171:8 183:6
  188:20,25 189:6,9
  210:23 213:11
  214:5,9,25 231:9
**openings** 49:4 50:2
  138:20 179:6
**opens** 217:18
**operating** 11:22
  35:17,21 97:23,24
  98:6,10,17,18 99:12
  100:15,23 102:9,14
  103:11 152:17
  173:2,24 174:8
  175:23,25 176:4,6
  225:23 226:16,18
  227:4,14 228:23
  246:23
**operation** 114:17
**operations** 20:8
**opine** 27:7

**opined** 123:10
**opportunity** 192:18
**opposed** 99:22
  146:23 147:4 210:8
**order** 2:10 35:11
  62:2,13 63:3,7 64:6
  64:12 110:8 124:25
  140:9,14 143:19
  150:20 163:25
  172:6,17 182:24
  188:25 189:5,10,12
  189:15,17,17,18
  193:9 216:19
**organization** 166:13
**organizational**
  165:25 166:23,24
  167:9
**original** 14:4
**outcome** 249:18
**outlines** 147:20
**outside** 12:24 29:3,7
  40:12 74:18 75:24
  76:7,9 142:21
  157:19 158:18
  225:19 234:23
**overall** 191:20
**overestimating** 40:22
**overlap** 181:23
**override** 144:19
**overriding** 145:12,23
**overrode** 94:18
**oversee** 12:16 68:11
  169:14
**overseen** 169:14,18
**oversight** 17:15
  68:20
**Ovington** 3:19
**owned** 99:7,13,13
  100:9 101:9,10
**owner** 191:22 196:24
  229:16,17,25
  233:14 241:24
**owners** 123:11
  172:18 175:5
  177:22

**ownership** 47:18
  48:14 50:9,15,25
  51:12 52:9 59:18
  61:4,16 64:22 65:21
  66:22,25 81:15,21
  97:25 98:11 99:4
  100:11 106:12
  126:16 128:17
  175:4,11 176:10
  180:20 188:9
  191:15 192:7,9
  205:4 228:14 233:3
  233:6
**owning** 227:10,11
**owns** 39:7 175:5,20

―――――――――――
**P**
―――――――――――
**P** 3:2,2 4:2,2
**P&L** 36:19 37:5,6
  107:6
**p.m** 133:15 134:3
  245:12
**page** 85:4 101:7
  102:17,17 103:17
  103:20 112:16
  123:17 131:18
  244:15 246:2,6
  248:3 250:5
**pages** 10:24 83:25
  109:2 129:19
**paid** 29:11 30:3
  121:21 133:3
  209:14
**paper** 94:8
**papers** 81:11
**paperwork** 33:14,23
**Paralegal** 4:17
**parameters** 55:23
  85:20 86:3
**parcel** 171:2
**parent** 168:23
**Park** 167:24
**part** 20:4 22:11 37:15
  45:2 46:8 52:2 68:4
  68:10 88:16,18

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 275 of 288 PageID #: 11762

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino   ---   February 26, 2026

273

90:15 105:16 141:5 164:23 171:2,9 186:20 188:5,18 190:23 194:5 198:24 199:7 218:10 226:19 238:5
**participate** 149:6
**participating** 6:3
**particular** 11:21 13:6 41:5,7 47:16 49:16 56:3,6,10,14 67:10 67:22 75:17 76:19 94:13,24,25 97:4 131:7 141:6,11 193:12 208:15 209:17
**particularly** 21:4 90:3
**parties** 5:4 6:11 81:16 94:11 99:3 249:16
**partner** 137:5
**PARTNERS** 1:19
**partnership** 38:9 172:22
**party** 77:12 120:23 128:15,20,21 188:2 189:14 236:2,3 238:7
**pass** 36:15
**passports** 172:12
**patterns** 185:11
**pay** 71:15 193:18 240:19
**payee** 184:9
**payees** 208:23
**payment** 30:6,11 55:14
**payments** 74:23 85:22 209:18
**payors** 208:23
**payroll** 209:14
**PDF** 123:7,8
**Pennsylvania** 4:11

**people** 16:5 20:11 23:6 25:19 26:8,8 42:8,12 48:19,20 88:11,15 97:5 131:8 131:10
**percent** 35:8 41:13 97:25 98:11 99:7,8 99:13,14,22,23 100:10,16 101:9,10 102:18 167:25 173:10,22 179:6,10 188:19 207:8 227:10,11 229:16 229:17,25 230:11 230:12,13,13,15
**percentage** 100:11
**perform** 164:2 165:12 176:11 185:25
**performance** 165:12 165:17
**performed** 188:13 204:4 215:14 220:16
**performing** 163:21 164:6 190:19 230:20
**period** 71:21 112:10
**periodically** 183:25
**permitted** 30:21 34:23 229:18 239:17 240:17
**person** 6:9 20:2,16,21 26:8 27:3 32:9 39:22,24 41:25 48:23 49:23 50:5,19 51:22,23 52:7 62:22 64:20 74:22,25 119:23 151:6 154:9 168:18 189:20 243:4
**person's** 23:17
**personal** 10:18 20:23 30:24 41:18 91:21 93:15 105:20,24

111:23 135:14 155:24 193:5
**personally** 148:19 153:4,5 155:12 160:25 191:9 198:13
**personnel** 154:19 165:8,16
**perspective** 20:20 44:5
**Peter** 13:23 14:4
**PH** 95:21
**Philadelphia** 4:11
**Phillips** 14:6,13
**phone** 27:2 150:20,20 203:19 204:2,7,19
**physical** 139:19 159:9 160:24 161:3 167:2,4,22 168:9
**physically** 6:4 26:14 139:24 142:18
**picking** 185:11
**piece** 39:7
**pin** 119:10
**place** 27:24 48:9 51:10 57:15 68:11 69:24 70:12 72:19 75:13 79:19 151:5 170:16 171:23 183:22 185:21 210:6,6 213:12,25 216:24 222:14 245:4
**placed** 79:20 128:5,8 128:11,14,24 129:10,13,15,17 157:12 176:21 178:18 189:3 202:19 204:3,8 211:4 221:18 239:22
**plaintiff's** 126:9
**plaintiffs** 1:11 2:9 3:4 3:9 6:18,21 21:7,8 21:11 126:15

134:24 160:11 178:3 197:25 242:14
**plaintiffs'** 210:22,25
**plan** 34:14
**planning** 243:3
**platform** 181:3
**plausible** 111:18 197:13
**Plaza** 15:16,25 139:25 140:8
**please** 6:14 8:19 9:6 9:21 16:6 17:4 61:12 98:2 107:5 111:2 127:22 137:19 162:13
**pled** 164:9
**plenty** 215:15
**Plotkin** 154:13
**pocket** 161:23 162:5
**point** 10:8 32:16 60:18 61:6,21,22 62:21 63:23 80:25 124:7 185:18 197:18 202:8 210:4 216:21 226:6 234:18 237:19 239:25
**pointed** 95:4
**policies** 163:24 164:13 170:9,14,24 171:2,10,23 174:10 174:11,21,22 175:13 186:21 187:22 190:6,7,10 190:19,21 191:2,10 191:14 201:6 228:6 242:23
**policy** 58:2 170:12,12 170:14 171:3,5 172:16,17 173:6 176:8 190:2 191:7 195:19,22 196:7,7,8 196:10,14 213:23 221:3,25 222:7

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino   ---   February 26, 2026

274

223:20 229:2 231:4
231:8
**portion** 220:3
**position** 12:2,7,9,14
16:13,15 17:23
23:23 34:13 51:24
97:19 141:25
192:12 210:22
211:2 234:11
235:18 239:9
242:15
**positions** 24:22 25:2
**Positive** 240:18
**possession** 93:4 105:4
106:12 116:8
**possibilities** 145:13
**possible** 59:17 96:12
187:13 226:14
**possibly** 168:4 170:2
**potential** 52:3 183:3
200:5 210:7,8
**potentially** 141:17
173:24 199:23
200:10 206:18,21
**power** 142:6 230:6
**practice** 13:10
100:10
**PREMIER** 1:18
**preparation** 10:4,7
11:10 60:19 65:8
117:22 126:10
136:5 150:23
227:13,21
**prepare** 150:21 151:8
151:12
**prepared** 32:24
36:21 102:5 103:8
135:8,17
**preparing** 33:2 118:5
**presence** 158:19
**present** 4:15 6:5
151:16,19
**presentation** 65:22
179:17
**presented** 39:15

47:22 66:22 98:7
100:2 125:19,20
**presenting** 228:3
**presently** 178:22
**president** 12:4 16:16
**presidents** 166:8,9
**presumably** 69:8
75:9 92:9 98:7
101:16 102:23
105:5,14 113:9
130:2 145:9 201:21
203:11 220:25
227:19 236:4
**presume** 9:8 74:10
105:11
**presuming** 235:14
**presumption** 32:21
**pretty** 63:20 94:6
154:24
**prevent** 182:25
184:22 186:18
**prevented** 224:12
**preventing** 128:9
185:8 189:5 239:25
**prevention** 171:11
186:21 190:6 191:7
198:11,18 201:6,15
202:12,25 203:5
**prevents** 214:5
**previous** 119:7
**previously** 28:22
29:17 39:25 85:11
87:20 89:19 90:25
119:4 149:24
151:24 185:14
**pricing** 30:11
**primarily** 12:13
14:10,12 44:16
87:11
**principal** 85:22
193:13 231:23
**prior** 10:17 14:17
44:22 49:6,15 51:2
51:12 57:6 59:19
61:13,14 62:14

121:6 137:14 187:9
187:16 195:6
212:14
**private** 14:13
**privilege** 160:7,11,12
162:17
**privileged** 48:8
104:17 162:8
234:23
**privy** 135:22
**pro** 4:5 6:25
**proactive** 240:3
**probably** 13:25 15:2
22:15 30:10 32:9
36:3,13 40:21 45:15
49:18 65:12 69:19
74:18 77:4 93:23
94:6,9,14 97:14
104:9 105:18
149:14 152:9 153:5
153:13,16 167:12
168:3 173:21
194:14 195:3 200:3
208:2 212:6 218:8,9
220:19 221:12,14
225:5
**problematic** 99:14
**procedure** 30:11
57:19,20 58:2,8
74:6 106:10 108:11
173:16 181:7
213:23
**procedures** 27:13,24
30:18 32:11 40:9
70:12 72:19 75:13
170:16 179:23,24
191:11
**proceed** 98:3 120:2
124:20 126:5
140:21 144:18
150:14
**proceeded** 50:10
93:14
**proceeding** 191:16
**proceeds** 88:24 94:10

224:25
**process** 19:16,21,23
25:9,12,16 26:22
27:13 29:7,23 30:13
31:6,8,11 32:14
41:21,25 43:9,12,14
43:15 50:13 51:18
52:3 58:21 61:19
68:11 73:24,24 80:4
88:16,19,21 94:11
94:14,15 101:17
102:24 105:17
106:10 108:10
109:14 111:2 145:4
177:25 188:18
205:21 237:15
238:22
**processed** 25:14
122:5
**processes** 28:13
**processing** 12:5,16
35:5 51:11 84:15
114:8 145:7
**processor** 127:14
**produce** 46:3 47:9
62:22 78:22 83:19
92:3 195:16 231:6
242:24
**produced** 10:9,11,23
11:10,15,17 28:22
47:15,18 83:24
84:14 86:13 89:10
92:7,9 93:8,9
100:24 104:24
106:17 114:20,23
114:25,25 115:3,14
115:14 116:21,25
117:8 132:3 138:12
156:22 160:6
161:18 190:21
191:19 197:6,10,15
197:20,25 205:6,8
205:10 206:16
216:2 220:24 226:3
226:6,11,17,19,22

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

275

229:4 236:4 242:15
**producing** 47:3
**product** 172:8 177:11
  177:14,18,23
  178:23 191:16
**production** 28:10
  46:5 82:3 85:2
  91:25 92:16,17
  94:23 98:23 104:8
  113:3 118:2 156:6
  164:13 165:8,15
  178:4 183:14
  186:15 196:10
  197:6,11 198:6
  202:16 216:3
  218:21,23 222:6
  226:10,20 231:4
  238:17 241:7
**products** 192:20
  196:23
**profile** 215:11 216:4
  216:13 217:13,16
  218:21,24 221:8
**profiles** 216:15
  218:11
**profit** 36:12,14
  107:24 108:3,8,12
  108:16 110:7
  113:24
**profitability** 110:4
**program** 178:8,19
**prohibiting** 188:25
**promote** 188:4
**prompted** 214:16
**pronounce** 7:13
**proper** 192:8 224:5
**properly** 202:21
  217:17
**property** 35:25 39:8
  39:8,12,13,14
**proposal** 137:2
**proposed** 20:3 85:23
**propound** 185:5
  196:20
**proprietary** 177:18

177:24
**protect** 182:25
**protection** 199:11
**protocols** 27:18,22
  27:24 28:6,11 29:17
  51:9 69:24 70:11
  72:19 170:15
**prove** 174:3
**provide** 7:16 8:9 9:22
  25:15,18,21 26:3,6
  26:7 29:13 36:12
  81:25 84:24 106:2
  114:15 121:13
  124:19 149:7 157:6
  160:12 175:20
  180:11 233:2
**provided** 11:23 33:14
  35:10 37:22,25
  38:16,22 45:8 47:5
  55:7 64:4 81:22
  82:5 86:4,9 91:21
  92:25 94:3,22 95:3
  95:5 101:16 102:23
  102:25 105:5,11,15
  113:10 121:20
  124:13 126:25
  152:13 173:7,15
  176:5 179:3,13
  180:2 198:10
  204:21 207:17,21
**provides** 34:8 39:6
**providing** 46:23
  50:11 64:25 193:9
**proving** 191:15 230:2
**public** 2:12 5:14 7:5
  134:19 245:24
  249:8
**publicly-available**
  186:23
**Puccio** 48:22 49:2,8
  49:22 50:5,18 51:19
  52:16,23 59:23
  64:20 80:25 81:7,19
  86:14 87:8 88:6,10
  88:24 89:16,25 90:4

93:13 96:5,7 97:10
  107:2,3,4 109:3,5
  109:13,22 110:15
  119:23 122:24
  123:4,12 124:6,13
  127:16 131:5
  132:10,11,16,20
  142:4,22 143:6,14
  143:17 144:4,18
  145:4,8,18 146:17
  146:20,24 153:4,12
  153:18,25 155:2,11
  155:14,21 156:2,7
  157:15,21 158:8,17
  158:21 159:2
  160:14 161:7,15
  163:19 165:2,3,18
  167:21,24 168:13
  168:18 179:13,17
  181:13,23,25 199:6
  204:12 219:24
  222:21 241:17,20
  242:2
**Puccio's** 51:25
  110:22 154:15
  165:8
**pull** 41:14 46:12
  92:21 116:12 219:4
**pulled** 118:23
**pulling** 219:10
**purchased** 121:15
**purchasing** 7:8
**purged** 216:22
**purpose** 85:5 89:5
  90:13 113:14
  131:13 171:5
  184:15 207:9
**purposes** 63:23 70:8
  190:12 225:2
  231:20
**pursuant** 2:10
**pursue** 73:24 74:19
  75:24 76:14 77:6
  223:15,20 224:21
**pursued** 223:9

**purview** 198:24
**put** 28:15 42:22
  46:20 118:24 128:2
  128:2,18 156:9
  189:25 204:16
  215:10 237:17
**puts** 85:13
**putting** 62:4 219:4

_____

**Q**

**qualification** 9:23
**qualify** 109:24 110:8
**Queens** 15:23
**question** 5:10 9:5,8,9
  9:14,15,18 26:9
  32:8 33:25 34:2,3
  38:24 39:23 48:10
  49:22 51:8 61:10
  66:4,7 67:23 71:12
  71:15,19,24 72:7,9
  73:13 76:22 80:7,21
  91:15 117:16
  118:15 136:3
  137:19 138:15
  139:10 146:17
  149:22,25 157:5
  160:14 162:13,19
  162:20,24 163:3,4
  167:21 174:9
  179:25 182:17
  193:7 214:23
  222:24,25 224:4,9
  234:15 235:19
  240:17
**questionable** 128:17
**questions** 8:18,21
  20:3 21:24 49:22
  61:3 78:19 133:8,10
  134:8 148:24
  149:20 150:9,10
  153:13 242:22
**quite** 60:6,21 146:7
**quote** 162:4,5
**quote/unquote** 137:7
  142:5 161:23

Case 2:23-cv-06188-JMW    Document 437-3    Filed 03/18/26    Page 278 of 288 PageID
#: 11765
SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

276

214:19

**R**

**R** 3:2 4:2,4 123:17 249:2
**raise** 71:17,22 72:12 72:14 73:4,10 142:18 150:4 214:11
**raised** 50:16,25 51:12 61:3 70:14 71:9 81:19 142:14 148:3 206:19
**range** 20:19
**ratio** 55:16,20,24
**ratios** 85:21 86:4
**reach** 75:9 155:3
**reached** 59:23 75:15 80:25 126:18 129:4 157:15,18
**reaching** 89:25
**reactive** 240:2
**read** 65:14 90:19 112:3,5 113:23 162:13,14 163:11
**reading** 63:14 118:13 124:9
**real** 39:9 49:10 169:4
**really** 33:7 65:25 131:25 132:19 143:2,9 198:22 225:8
**realtime** 186:3
**Realty** 1:10 3:12
**reason** 8:13 20:15 47:16 77:15,19 85:13 94:18 127:19 149:5 155:5 161:9 161:14 171:9 181:10 198:22 212:11 250:5
**reasons** 142:8 171:13 171:17 185:22
**recall** 8:5 10:24 20:15 45:17 46:19

46:23 47:2,14 49:16 53:11 56:21 59:12 60:5 63:4,6,17 64:14,16 65:3,4,7 65:10,17 71:13 80:11,17 81:12 82:14 83:5,8 91:20 91:23 93:25 100:8 104:4,11 111:21 112:21,25 114:19 115:16,22,25 117:17,20,24 118:4 123:2 124:2,9 137:23 138:2,6 147:23 151:13 152:2 153:11 155:9 159:17 182:10,13 183:21 184:24 197:23 208:12,15 208:17 209:20 211:12,16,19 212:23 213:7 223:6 227:22,24
**receipt** 180:15,18
**receipts** 121:16
**receive** 50:4 59:2 156:11 193:13 203:23 213:2
**received** 44:21 50:8 59:8,22 64:7 80:15 83:16 91:10 105:9 111:4 124:8 130:12 176:19 181:2 204:15 205:2
**receives** 132:20
**receiving** 80:10 81:24 83:5
**recess** 70:22 133:15 201:3 242:10
**recognize** 78:8 79:3,5 84:3,9,11
**recollection** 9:21,22 44:18 58:23 59:4 60:14 63:18 79:23 85:15 100:7 111:16

140:22 148:11,14 151:2 152:5 209:21
**recommendation** 34:21,24
**record** 6:16 8:12 9:12 16:8,9 17:3 70:21 79:11 91:13 133:14 134:16 140:7 162:14 200:25 201:2 242:8 243:23 243:25 245:3,5 249:13
**records** 10:9 11:13 36:4,22 42:16 45:8 69:20 70:2 124:8 128:16 179:20
**recover** 76:19 77:21 132:14
**red** 69:2 71:9,17,22 72:12,14 73:4,10 142:13 183:3 206:20 214:11,19 214:24
**refer** 21:6 175:19
**reference** 45:13 47:18 175:16 178:19 206:3,25 238:6
**referenced** 79:7 176:16
**references** 116:15 126:11
**referencing** 45:15
**referred** 22:13 140:13 194:17 199:11 222:15
**referring** 46:16 60:15 63:3 87:16 91:14 98:4,6 109:7,25 112:15 128:6 132:17 135:5 140:10 152:15,16 181:12 222:11 227:6
**refers** 107:11 111:7

195:25
**reflect** 126:15
**reflecting** 66:21
**reflection** 72:8
**reflects** 39:15
**reform** 34:15
**refresh** 79:22 85:15 111:16
**refusal** 193:17
**regard** 22:2 38:13 60:10 64:21 67:4 80:6 85:21 99:7,22
**regarding** 14:12 38:24 49:19 83:9 84:12 153:14 204:22
**regards** 18:12 59:15 81:21 138:20 233:7 238:20 239:7
**registered** 172:24
**regular** 49:20 96:8 147:4,10 199:4 211:22
**regularly** 107:19
**regulated** 169:21,23
**regulation** 69:4
**regulations** 28:12
**regulators** 169:13 170:22 171:10 229:3
**regulatory** 14:15 72:25 176:11,13 231:20 232:6,16
**reiterate** 165:20 242:19
**related** 21:9,11 68:25 128:3 137:7 139:12 157:14 178:6 183:16 186:21 197:2 201:20 202:12,13 216:8 223:21 249:16
**relates** 172:15 231:12
**relating** 21:19 157:17
**relation** 142:3 143:18

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino --- February 26, 2026

277

151:22 153:7,10 156:7 163:21 184:17 185:9 187:21 195:6,10,17 201:16 213:9 226:3 233:10
**relationship** 121:8 130:3 131:12 136:25
**relationships** 30:25
**release** 127:25
**relevant** 63:22 135:23
**relied** 103:11 108:15 113:21 114:6
**relief** 223:9
**relying** 105:24
**remain** 205:2
**remaining** 244:6
**remember** 16:17 45:8 51:23 54:15 66:17 81:17 138:5 154:16 208:11,21
**REMOTE** 2:7
**remotely** 6:7,10
**removal** 127:22
**rent** 209:14
**repaid** 71:2 73:15 74:11
**repay** 223:11
**repayment** 77:17
**repeat** 137:12 149:20 149:24 184:7 195:23 204:6
**repeated** 185:13,14
**rephrase** 9:6 34:2,5,6 61:10,12 72:4 109:18 224:3
**report** 16:14 17:17 17:24 18:2 96:8 103:21 146:14 194:11,20,23 195:4 195:5,9,20
**reported** 168:2,6
**reporter** 2:11 6:2 7:7

8:17,25 35:19 162:13 249:8
**reporting** 6:6,13 16:11,13 38:16,21 96:10,13,20
**reports** 17:20,23 24:5 24:6 131:9,11 167:18 195:17 197:5
**repositories** 200:2
**repository** 176:22 178:20 199:22 206:6,8
**represent** 20:11 21:6 21:11 77:8 78:24 91:24 104:10 134:24 226:21,25
**representative** 1:7 7:16,25 19:2,9,14 19:18 20:17 135:13 144:8,11,24 148:17
**representatives** 25:6
**represents** 236:2
**request** 33:17 80:16 92:11 98:2 106:10 175:15 185:4 190:24 196:21 212:9 219:15
**requested** 33:4 46:8 50:11 83:19 92:7,8 93:13,16,21 104:14 105:16 113:15,19 190:22 220:23 240:24 248:2
**requesting** 160:11
**requests** 12:23 37:23 80:13,13 84:14 165:22
**require** 35:16,17,25 36:6 41:18 72:24 106:10 108:11 172:11,23 175:16 207:7 213:19
**required** 33:5 35:21 36:11 37:11 40:10

41:22 55:14 57:17 91:2 94:19 100:17 106:5 107:15,20 114:14 121:21 171:7 172:17 173:9 173:12,21,25 174:5 174:12 175:3 176:11,13 186:22 188:14 190:16 213:13,24 228:11
**requirement** 37:18 88:25 93:19,21,22 107:18,19 164:17 173:6,16,19 187:3 228:10
**requirements** 94:16 231:8,9
**requires** 67:7 188:16 236:23
**reservation** 178:13
**reserve** 178:9
**reserved** 5:10 134:17
**reserves** 165:21
**resignation** 154:5
**resolution** 11:24 65:21 175:6 230:9
**respect** 166:21 184:22 185:7
**respectfully** 140:17 149:23
**respective** 5:4
**respectively** 135:6 181:14
**respond** 28:24
**responding** 8:21
**responds** 127:24 132:11
**response** 84:14 92:17 92:18 104:11,25 107:2 127:24 204:2 204:7 213:2 238:6 238:21,24
**responses** 14:16 83:9 83:17
**responsibilities** 12:15

14:9
**responsible** 42:25 74:13 76:9 129:10
**responsive** 80:22 81:4,25 104:13
**responsiveness** 104:19
**restraining** 12:21 18:12 62:2,3,13 63:2,7,21 64:5,11
**restructure** 34:15
**result** 57:10 63:11,14 81:6,8,24 104:22 124:18,23 131:20 215:14
**resulting** 204:8
**results** 75:20 161:2 218:23 219:16
**retail** 24:7,8,11,11 166:6
**retention** 221:3,11,25 222:7
**retreading** 149:17
**retro** 35:25
**return** 37:25 110:5 111:15 173:17
**returns** 37:10,11,21 38:5,9 90:18,20,22 90:25 91:6,10,22 92:2,15 93:4,12,15 105:20 110:13 111:5,23 126:11,14 152:17 173:25
**revealed** 57:2
**review** 10:8 11:3,5,8 11:9,14,21 18:16 25:13 31:7,7 40:17 57:18 58:14 60:20 68:11 72:15,21,25 98:22 100:4 138:11 139:16 141:16 142:12 144:2 151:15,24,25 152:4 152:11 158:14 174:25 176:17

178:24 183:2 184:8 186:5,7,10 190:11 190:14 191:18 192:18 199:19 200:12 201:13 203:22 204:18 206:2 207:11,22 208:2 209:17 210:9 214:3 222:20 229:6 229:8 230:21 237:3 239:2
**reviewed** 10:22 11:2 36:22 47:8,10,11,14 47:17,24 91:25 143:12 151:18,23 157:8,12,13 184:3 186:2 191:3 192:2 197:14,18 199:24 201:24 206:17 208:10 209:12 210:14 227:20 233:12,13
**reviewing** 47:25 56:20 65:8 84:16 99:18 141:21,24 147:23 151:11 190:9 211:8
**reviews** 18:14 141:5 141:11 183:24 185:23
**revise** 33:22
**revised** 191:2,7
**revolving** 20:19
**right** 22:4 37:2 45:11 66:15 112:10 140:20 149:10 156:15,18 167:6 175:25 178:10 182:10,22 190:17 197:21 198:2 202:6 206:20 209:3 218:3 220:12 223:15 226:8 227:22 233:18
**rights** 165:21 178:13

**Roach** 13:23 14:4
**Robert** 1:5 3:4 4:16 48:22 86:14 89:15 107:2,2 109:13 122:24 131:5 135:2 202:15
**role** 60:7 135:12,14 136:22 139:8 141:10,14 142:12 144:10 146:18
**roles** 12:15 14:8
**Ronneburger** 3:21 6:23,23 7:7,10 21:2 24:24 28:14,20,25 30:7 34:4 36:23 38:18 46:7 48:3 57:25 58:12 61:5 64:13 66:3 67:25 69:5 71:4,11,16,25 78:13 82:4 92:5 95:7 98:13 100:18 104:15 110:18 115:6 116:10,17,24 134:21 137:13 143:8,16 144:7 150:3 156:10 162:6 162:18 163:2 165:19 166:15 169:25 177:20 178:9,14 180:21 185:19 189:4 191:24 192:22 193:24 210:12 212:18 214:12 223:5,22 224:3 232:15,22 234:14 234:21 237:7 240:11 242:18 243:12,15,19 244:13,14
**room** 6:5 203:19
**Rosemary** 97:8,11 99:2
**ROSLYN** 1:18
**roughly** 147:2 152:9

217:25
**Route** 1:10 3:12
**Ruderman** 3:15 6:17 6:17 7:11 16:4 26:5 28:9,17 46:10 70:16 70:23 71:10,13,18 72:6 77:23 78:6 82:20,25 83:10,13 83:22 84:4 86:24 89:8 91:13 93:6 94:21 95:9 98:15 100:20 102:7 106:14 108:19 112:13 114:19 115:17 116:14,19 117:4 122:17 123:21 125:5 126:23 132:2 133:6 134:7 143:13 148:8 149:17 156:18 187:10 223:8 244:8 244:9 246:3,10
**rule** 30:5 147:13 150:6
**rules** 8:11 28:12 67:15,19 69:3 236:22
**running** 118:9
**RXR** 15:16,24 139:25 140:8

---

**S**

**S** 3:2 4:2,12
**S's** 17:5
**S-Y-N-E-R-G-Y** 177:5
**Sage** 3:3 4:18 6:20
**sake** 140:18
**sale** 66:23
**sales** 1:4 3:4 135:2 167:14 200:8
**sanctioned** 171:20
**Sarah** 1:14 99:13 101:9
**SARS** 194:14,17,23

195:2,5,9,17,20 197:5
**satisfactory** 75:20
**satisfied** 64:21 94:12 119:25
**satisfy** 94:16
**saw** 68:21 98:21 104:7 109:10 113:2 125:10,24 226:6
**saying** 11:18 42:23 80:2 82:15 97:17 99:3 102:2 109:5 110:15 127:16 163:10 231:22 243:15
**says** 30:2 39:7 78:21 85:8 87:15 101:8,18 102:18 103:5 108:3 109:23 110:3,25 111:11 112:3,7 113:23,24 114:3 118:9 123:4,9 128:23 132:10 189:18
**scale** 167:3
**scheduled** 150:24
**schedules** 90:21,22
**school** 13:12
**screen** 77:24 82:7 83:2,22 86:11 89:9 95:10 100:21 103:14 108:20 115:7 122:18 123:15 126:24 132:2
**screenshots** 118:11
**scroll** 78:17 80:12 102:16 130:15
**Scrolling** 90:4
**scrubbed** 221:12
**se** 4:5 7:2 203:6 214:5
**sealing** 5:5 134:16
**search** 40:8 41:11 56:23 57:2 186:22 187:5 195:16

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 281 of 288 PageID #: 11768

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino   ---   February 26, 2026

279

201:18,22 202:11 218:23 219:16 220:15
**searches** 40:4 41:4,4 41:8 56:4,7,15 118:9 202:2 220:18
**second** 16:7 82:6 85:4 103:20 186:6,9 214:20
**Secrecy** 69:10 195:21 195:24,25 196:6
**secretary** 230:10
**sections** 220:21
**security** 239:22 240:8 240:13,15,18 241:2 241:8
**see** 8:17 39:11 42:18 55:11 63:2 64:3 65:15 67:18 68:12 69:23 70:19 75:10 78:11 85:5,9,24 86:12 87:13 90:6,23 91:2,6 92:2 101:10 101:20 102:19 105:19 107:5,25 108:4 109:11 110:3 110:13 112:8,11 113:12,25 114:4 116:16 117:5 118:13 124:5,10 125:16,18 127:19 130:16 133:10 142:12 144:13 145:11 200:9 201:23 208:3,8 209:18 219:16 235:18 238:17
**seeing** 37:15 63:17 64:14 65:12 81:8 104:4,11 112:21 114:19 115:16,22 115:25 117:17,20 117:24 118:4 119:12 123:2 124:2
**seek** 74:16

**seeking** 25:10 54:3 155:3 182:2,8 186:24
**seeks** 225:22
**seen** 22:13 27:12,21 37:18 53:13 63:4 84:21 86:16 98:17 99:19,19 101:12 125:13 144:4 147:13,16,17 155:9 164:21,23 198:7 206:12,18 209:12 222:19
**semblance** 201:11
**send** 57:17 203:23
**sending** 88:11 123:13 131:7
**senior** 16:16 97:13,17 97:20 166:7
**sense** 31:21,22 36:25
**sent** 40:12 89:16 95:21 123:6 131:20 143:19,22
**separate** 77:20 158:12 166:17 174:9,16 196:6
**separated** 153:25 155:2,11,14
**separation** 154:15 155:22,23 156:3,8
**September** 45:12 51:7
**sequence** 218:9,15
**seriously** 66:2
**serve** 207:8
**served** 45:3,6,15,17 45:21 46:15 82:9 117:25 144:5
**service** 130:12
**services** 29:13 164:6 169:16,19 179:8,15 179:18
**Session** 4:12 134:2
**set** 29:18 96:19 200:13 249:11

**setting** 223:3
**setup** 210:19
**seven** 150:7
**Shane** 117:10 118:8 118:15 139:11
**Shanks** 3:9 6:18 78:23
**shape** 184:11
**share** 77:23 82:7,25 86:11 89:8 95:10 100:21 103:14 106:14 108:19 115:7 120:7 122:17 126:23
**shareholder** 226:15 226:18 232:5,12 239:13
**shareholders** 225:24 226:2,10,22 227:6,9 227:23 228:3,9,17 228:24 229:4,14 230:5,7 231:7
**sharing** 82:6 83:22 95:6 100:21 111:25 112:2 123:15
**SHEET** 250:2
**short** 71:21 237:24
**Shorthand** 249:7
**shortly** 59:3 65:21 72:23 187:17 240:4
**show** 79:19 110:7 123:8 175:24 176:2
**showed** 99:12 103:3 119:6 126:3
**showing** 77:24 83:3 83:23 98:10 101:8 103:15 106:16 108:20 115:8 122:18 123:15 125:2 129:18 132:2 172:24
**showroom** 87:12 88:3
**shows** 97:25 102:17
**shrug** 8:25

**side** 103:19
**sign** 175:3,6,8 230:8 240:19
**signature** 97:16 103:22 184:5 229:19 232:11
**signed** 5:14,15 83:5 101:23,24 102:3 103:6 155:22 156:2
**signer** 231:25 232:3,8
**signing** 175:10,13 190:12
**similar** 127:12 164:15 172:13 184:15
**similarly** 160:19
**simple** 72:11,22
**simply** 84:20
**single** 185:12 197:20
**sit** 140:23
**site** 90:10 176:16
**sites'** 126:11
**sitting** 30:12 36:18 87:23 89:24 93:2 120:15,20 161:17
**situation** 131:16 144:22 205:4
**six** 149:14
**sixth** 102:17
**slightly** 40:22
**slow** 35:18
**small** 87:11 88:3
**SMITHTOWN** 1:18
**sole** 241:24
**solely** 53:13
**solicit** 25:7
**soliciting** 26:25
**Solutions** 79:12,13 79:16 82:9,16
**somebody** 23:13 25:10 26:19 59:23 74:12 76:12 94:17 119:23 142:18 164:5 179:22 205:3
**somewhat** 12:12

127:13
**sorry** 16:4 24:8 66:12 84:5 115:17 121:10 137:12 140:8 143:21 155:16 204:6
**sort** 30:5 34:21 57:3 58:7 85:13 106:11 108:11 110:7 199:16,22 206:19 213:19
**sought** 82:14 111:22 124:14 138:7
**sound** 18:24 53:19 66:10,14
**sounds** 22:15 47:6 62:7 77:14 99:16 111:18 153:23 187:13 197:13 233:18
**source** 31:14 37:7 63:15 110:21
**span** 68:23
**speak** 8:20 27:6 135:25 136:4,7,10 152:19
**speaking** 10:5 13:8 36:7,7 73:25 123:5 135:8 147:2,14 157:3 165:24 172:11 173:16 175:22 188:24 201:5 208:21 209:5 217:25 218:13 231:18
**special** 176:25
**specific** 9:20,24 27:8 31:11 36:8 37:2 38:24 39:4 44:8 62:20 64:14 72:13 72:16,17 83:7 112:24 113:18 128:13 139:5 141:10,13 143:7 144:21 147:17

156:21 170:11 198:23 199:12 201:14 203:7 207:14 208:23 219:14 221:10 222:2,23 225:18 227:24 237:8 239:8
**specifically** 14:19,20 21:24 38:7 39:2 41:16 43:24 46:8 48:23 59:13 63:16 81:12 87:17,24 90:3 92:6 99:24 107:17 109:8 110:2 121:4 123:14 135:17 136:10 137:10 138:5 140:13 147:25 154:12 157:24 165:9 170:13 181:12 189:14 197:14 208:5,22 212:12 220:15,23 226:7 228:19 240:23 242:3 243:3
**specifics** 19:22 37:9 41:9 43:7 57:13 75:12 221:15
**specify** 148:19
**speculate** 98:14
**Spell** 17:3 215:23
**spoke** 87:9,15 126:8 152:21 155:12
**spreadsheet** 197:10
**ss** 249:5
**St** 13:13
**staff** 166:6
**stamp** 28:24 95:4 97:16 103:20 106:18 115:4
**stamped** 83:24 84:2,7 87:3 89:13 95:12,16 101:4 103:18 104:2 106:22 108:21,24 112:13,19 115:20

117:14 122:22 123:24 125:3,8 126:25 127:5 130:9 132:7 246:11,13,15 246:17,19,24 247:2 247:4,6,8,10,12,14 247:16,18,20,22
**standard** 190:2
**standing** 28:17 178:12
**standpoint** 232:7,17 239:9
**start** 15:24 25:12 26:22 92:20 109:5 159:6
**started** 13:25 15:9,21 109:14
**starting** 129:19
**state** 2:12 13:10 62:3 115:10 150:13 169:7,11,15,18,22 170:4 172:25 173:2 174:6,7,8 175:18 176:7 228:15,19 229:9 249:4,9
**stated** 89:6 137:14 143:4 144:17 225:2
**statement** 36:12,15 39:7,15,16 59:11 103:16 106:7 107:24 108:8,12,16 112:4 114:12 128:25 142:16 208:7
**statements** 88:23 114:16,20,22 207:22,23 209:12 210:10,15 211:8
**states** 1:2 126:8
**stating** 6:14 231:4
**status** 80:5 232:12
**statute** 196:5 223:14 223:18 224:16
**Stenographic** 2:11
**step** 32:14 35:5 74:11

75:7 143:11 146:16 175:2
**Stephanie** 154:13
**Stephen** 86:15 87:5 95:20,21 106:25 117:11 118:20
**steps** 144:11,13 157:3 162:2,21,25 163:14 174:20 187:22 188:2 189:11 194:10 240:2,3
**STIPULATED** 5:2,8 5:12
**stipulations** 134:15 134:20
**stock** 173:6,11
**stone** 96:19
**stop** 82:6 95:6 100:20 111:25 145:20 214:4
**Street** 1:9 3:12 4:10
**stretch** 237:22
**strict** 191:4
**strictly** 173:15 175:22
**strike** 211:17
**struck** 211:19
**structure** 165:25 166:23,24 167:9 169:5 172:21
**structured** 34:9,14 34:16
**subject** 137:9 189:10 234:12 242:17,19
**subjects** 187:22
**submit** 239:7
**submitted** 35:3 45:7 53:24 239:12
**submitting** 43:16
**subordinate** 138:22
**subpoena** 12:23 44:21 45:3,6,14,18 45:21 46:4,15,21,24 47:9 59:2,8,12,16 59:22 78:3,7,20

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 283 of 288 PageID #: 11770

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

281

79:7,10 80:10,23 81:8,25 82:9,14,18 92:17,20,21,23 104:12,13,25 113:3 114:21 117:25 124:8 128:4 246:7
**subpoenaed** 98:22
**subpoenas** 12:21 18:13,13 60:15,20 70:19
**Subscribed** 245:21
**subsequent** 175:8 204:10 217:18
**subsidiaries** 168:23 169:3
**subsidiary** 168:25
**substance** 129:7 136:22 171:4
**successful** 219:25
**sufficient** 50:6 175:12
**suggesting** 128:16
**suggests** 101:24
**suit** 189:14
**Suite** 3:14 4:10
**sum** 129:7 136:21 171:4
**summarize** 131:16
**summarizing** 197:11
**summary** 197:15
**summons** 118:12 119:6 130:12
**Sunrise** 1:5,16,20 3:9 4:5 21:14 52:18 53:22 60:13 61:4,17 62:5 68:17 70:4 75:16 77:11 80:9 109:24 121:14,16 121:24 122:3 134:25 182:5 187:7 187:11,19 191:22 202:14 223:10 224:22 227:18 231:24
**SUPER** 250:3

**Superb** 1:4 3:4 21:9 21:10,19 60:13 70:5 128:3 131:12 134:25 135:6 137:24 161:19 180:12,20 182:4 191:23 202:14,19 204:23,25 207:12 214:9,10 216:2 218:18,24 219:17 219:18 220:16,19 226:4,24,25 227:23 228:2 231:13,13,23 232:21,24 233:2,3 233:14,24 234:8 239:13,13,22 240:9 241:4,10,14,18,21
**Superb's** 218:21 227:8 234:4
**superior** 52:2 143:3 144:16,17 145:2,10 145:11 146:3,9,14
**supervisor** 96:4,9
**support** 12:5 49:25 106:6,11 108:12
**supported** 48:13 50:9
**supporting** 139:6
**supposed** 9:14 39:16
**Supreme** 62:2 115:10
**sure** 8:11,20 27:24 28:25 29:20,21 30:22 32:20 35:8 37:24 41:13 45:7 48:23 51:14 52:4 55:7 67:20 73:2 85:12 94:6 99:4 112:24 113:19 127:17 133:5 139:5 167:25 171:16,18 173:10,22 179:6,10 179:21 184:5,9 188:19 190:18,22 200:7 212:19 218:8 220:18 223:17 226:5,6 232:17

238:13 239:9 242:3 243:22
**surfaced** 191:14
**surprise** 213:4
**suspicious** 185:12 194:20,21 199:19
**sustained** 49:20
**SVP** 24:2
**sworn** 5:16 7:5 134:19 245:21 249:12
**Synergy** 177:4,10,22 177:23 178:5,18,22 180:4,9 181:4,4 182:23 205:11,19 205:25 206:17,23 207:3
**SYOSSET** 1:16
**system** 42:18 43:5 73:20 177:3 181:3,8 186:8 196:13,16,18 196:25 197:3 199:16 200:19 201:19 202:11 203:2 205:12,13,15 205:17 207:6 213:12,18,21,25 215:9,18,21 216:8 216:22 240:19

---

**T**

**T** 13:23 14:4 249:2,2
**T-A-V-A-R-E-S** 18:6
**tailored** 39:3
**take** 8:25 35:19 46:13 66:2 70:18 95:7 116:16 133:9,11 143:11 150:16 151:4 152:4 156:10 158:6 163:14 165:22 174:22 178:11 187:25 189:11 194:10 200:23,25 201:9 203:19 242:5,25

**taken** 2:8 26:3 68:24 70:22 71:7,21 133:15 157:3,7 162:2,21,25 201:3 210:6,6 214:3 240:3 240:3 242:10,14
**talk** 242:6
**talking** 59:6 92:16 158:4 200:3 240:2
**Tara** 127:8,10,12,18
**tasked** 14:14
**tasks** 12:12 18:11 152:25
**Tavares** 18:6
**tax** 37:10,11,21,24 38:5 66:20 90:18,20 90:25 91:6,10,21 92:2,14 93:4,12,15 105:20 108:4 110:4 110:12 111:5,15,23 113:24 126:11 152:17 173:17,24 215:5,10 216:6 219:11,17 220:19
**taxers** 110:7
**taxpayer** 111:14
**team** 1:4 3:4 19:24 20:5 21:10 69:8,18 73:19 74:7,15 80:19 80:25 81:20 96:3,11 96:13,14,15,17,18 96:20 97:3,15 127:11 135:2,6 137:6 139:15 141:5 141:18 145:15 168:3,5 183:22 194:21 198:22 199:8,8,19 200:4,16 200:17 201:11,15 202:12,25 203:6,11 225:17
**teams** 184:2 200:2
**Technically** 218:13 231:18 232:6,16
**technology** 181:3

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino   ---   February 26, 2026

282

**Tecum** 78:4,7,20 246:7
**telephone** 151:8 159:15
**tell** 39:5 50:7 63:16 91:12 100:11 131:25 140:20 144:23 149:16 181:25 212:8 234:17 235:3 236:14
**tenure** 191:6 209:9
**term** 18:25 22:13,17 22:19 43:19 170:18 170:21 194:17
**terms** 31:16,17 36:4 54:25 55:5 68:20 131:19 148:7 160:15 199:16 221:3 240:15
**terrorism/countert...** 171:14
**test** 25:24
**testified** 7:6 18:18 85:11 87:20 89:20 134:6 149:9,24 151:11,20 167:5 207:16 225:21 227:13
**testify** 135:9 149:3,21
**testifying** 149:9 238:15
**testimonial** 244:4
**testimony** 7:17 8:15 9:12 137:14 140:18 143:12 187:9,16 197:23 198:12 203:16 223:8 234:17 235:4 242:12 249:13
**text** 161:18,24 164:21 196:5
**thank** 28:20 34:5 134:8 141:3 150:19 245:7

**Thanks** 90:7 98:3 99:5 132:10
**theoretically** 206:10 210:5 216:14
**Theresa** 23:19,20 74:17 76:23 131:4 145:22 168:7 225:5 225:9
**thereto** 80:22
**They'd** 175:3
**thing** 31:15 80:16,19 161:7 168:14
**things** 11:25 12:25 36:2,5 61:19 143:20 143:22,25 146:12 171:12 185:14 199:21 217:17 240:22 242:14
**think** 7:24 35:6 40:13 43:16 47:17 61:7 70:17 71:6,18,19 72:8 73:15 89:20 96:11 112:3 116:15 119:8 130:16 137:3 142:9 149:5 152:3 156:24 162:22 179:19 185:10,20 186:4 191:25 203:4 204:13 212:6,7,10 218:7 220:14 221:15 222:23 224:4 243:2 245:4
**thinking** 36:9 60:6
**third** 128:15,20,21 146:5
**third-party** 177:7 183:11 186:16 196:25
**Thomas** 1:15 86:14 86:18,20 118:22 122:25 125:12
**Thomasson** 1:14 4:4 6:25,25 65:5,14,15 66:5 123:18 126:3 133:13 243:7,7,16

244:10,11
**thorough** 204:18 205:23
**thoroughly** 164:18
**thought** 20:18 45:25 85:12
**thoughts** 203:8
**three** 6:21 15:4 21:8 60:12,16 128:8 129:19 134:24 135:5 221:13
**three-page** 103:18
**threshold** 22:24
**ticketing** 199:16
**time** 2:10 5:11 13:19 13:21 14:25 21:20 32:13 44:25 50:12 50:20 52:9,13 58:19 58:24 61:14 64:16 65:11,16 70:18 71:22 72:3 81:23 95:2 103:2 104:7 109:19 116:2 122:4 125:18 129:2,4 130:6,13,14 134:9 134:18 149:12 150:16 153:3 156:20 159:7 179:5 179:9,19 185:18 190:10,10 200:24 201:9 202:8 204:23 207:8 208:7 210:17 211:20 212:20 215:17 217:13 218:16 233:6 235:6 236:16 237:22,24 240:4 242:4 243:7 244:4 245:7,12
**timely** 74:24
**times** 7:23 185:21 212:25 242:13
**timing** 45:13 59:14
**tiny** 123:19
**title** 12:11 16:17 23:25 24:3 86:21

127:13 139:3,5 206:10
**titled** 170:14
**today** 7:15 8:15,19 19:8 30:12 36:18 60:20 89:24 93:2 118:11 120:15,20 140:22,23 148:11 149:3 161:17 179:7 179:19 225:21 243:12,17 245:8
**today's** 10:4 65:9 118:5 149:6 150:21 152:20
**token** 240:19
**told** 40:21 45:10 73:6 74:10 111:12 129:13 212:13
**Tom** 66:10,13 87:9 87:15,16,18,19,21 88:7 146:13
**Tony** 128:22 135:6 138:19
**tool** 184:13,15,25 185:7,17,24 200:8,9
**tools** 182:24 183:2,7 183:8,9,19 184:21 185:20 198:11,16 198:18 200:4
**top** 24:19 53:18 82:17 91:11 103:19 129:20 137:21 168:18 182:11,19
**topics** 147:21
**total** 15:3
**totality** 58:14 124:24
**touch** 245:9
**touching** 153:16
**tour** 90:8
**track** 67:17 69:21 196:13 203:3 223:14
**tracked** 201:15
**tracking** 109:5 201:12

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

283

tracks 213:12
trade 171:18
training 14:18 198:10
transact 239:3
transaction 10:19 11:13 13:6 18:15 56:3,7,11,15 93:14 94:25 122:14 141:6 141:12,20,23 142:7 143:2,7 144:17 186:18 208:9 236:24 238:12
transactions 21:25 22:2 67:18,21 68:7 68:12 69:21 70:3,7 70:10,13 72:13,16 72:17,20 91:3 128:10 141:18 184:23 185:9,11 198:19,23 201:23 207:14 208:13,20 210:19,20 211:21 232:20 233:23 234:3,8,19 235:4,7 235:16 236:7 237:9 237:12 238:2,20 239:6,8,18
transcript 7:9 26:7
transfers 184:19
transitions 155:8
treading 223:23
treated 68:19 240:13
trial 2:7 5:11 134:18 235:14,22 236:5,6
tried 138:3 214:14
triggered 203:5
troubleshooting 12:19 18:17
true 22:15 186:12 220:5 249:13
truthful 8:14 149:7 191:21 192:6,11
truthfully 149:3
try 9:6 21:23 25:7

34:2,6 41:4 46:12 60:23 61:10 81:2 144:13
trying 27:19 35:19 39:10 49:24 68:3,4 77:6,21 131:15
tune 32:10
turn 243:8
Twice 7:24
two 15:3 17:5,25 48:19 58:22 61:19 68:23 73:8 82:19 86:8 87:8 88:11,15 90:18,20,21 100:3 103:10 109:2 110:3 126:16 127:7 148:8 158:9,13 161:21 181:15 203:12 206:11,13 216:15 216:16 221:13 240:19 244:4
two-page 95:11
two-week 237:21
type 25:18 33:21 34:24 35:9 38:4 41:7 43:2 72:17 94:4 147:19 164:15
types 55:17 91:3
typical 209:6,13
typically 38:5,6 91:2 147:20 154:21 184:16 220:13
typing 219:7,11

___

**U**

U 7:3 134:4
UEA 1:18
Uh-huh 130:23
ultimate 23:18 43:17 141:22 145:20 146:11
ultimately 42:2,9 51:17 52:6,8 156:22 235:10
Um 16:16 25:23

unauthorized 232:20 234:4,20 235:11 236:19
unavailable 152:24
unaware 148:19
unclear 80:7
underlying 47:21 173:14
Underneath 166:3
understand 8:22 9:2 9:5,7,9,16 10:2 19:5 19:7 21:21 22:3 33:7,25 34:10 47:21 61:9 68:5 110:25 127:25 135:3,12 143:9 147:6 148:14 149:19 150:17 158:15 162:16 182:7 192:12 193:7 210:22,25 219:2 235:25
understanding 22:14 32:17 33:9,12,19 45:20 56:25 57:5 60:3 74:8 111:19,20 139:11 146:18 154:3,8 158:6 181:20 192:9 200:18 217:21 218:19 219:20 235:7 241:19
understood 9:8 28:25 47:25 50:10 72:9 115:6 141:2,20 145:16 150:25 158:8 168:17,22 178:25 193:6 205:7 206:15 223:7 236:17
undertaken 162:8
underwriter 43:20
underwriting 43:22 141:5
undisputed 121:11
Uniform 230:22

237:3
unilaterally 230:4
Uniondale 3:20 15:16 140:2
UNITED 1:2
units 12:20
University 13:13
unknown 68:24
unpaid 74:20
unspoken 30:5
unwritten 29:23
update 81:22
updated 97:23 98:2
upload 207:7
uploaded 179:3,21 180:25 181:9 205:11,13,25 206:17,23 207:3
uploading 178:24 207:5
Urrutia 1:5 3:4 4:16 21:10 128:22 135:3 137:2,5 138:3,6,19 146:23,25 158:7,9 161:20 180:2,6,10 180:20 181:2,20 182:8 202:15,20 204:22 205:11 206:16 207:13,18 207:21 211:3,23 212:11,17,24 213:6 214:8 222:16 227:9 227:10 228:18 229:16,24 230:8,15 232:19 233:16 237:10,14,23 238:6 239:6,12 241:20
Urrutia's 137:16 180:23 181:16 204:2,7 229:20 241:13,17
use 29:3 140:19,19 172:7 177:3 178:7 182:24 183:9,20 184:12,14 186:2

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

284

196:12 197:3 198:16 199:20 200:5 206:2 207:5
**user** 178:6 183:16,16 196:25 205:14 206:7,11,17,18
**uses** 203:2 215:19
**usual** 134:15,20 152:25
**Usually** 207:2
**utilize** 75:12 199:15
**utilized** 224:25

_____
**V**
_____

**v** 250:3
**vaguely** 47:6 115:24
**valid** 65:22 175:20 189:18
**validate** 175:5
**validating** 80:22
**validity** 176:20
**validly** 174:3,17
**varies** 172:20 173:4
**variety** 12:17 24:25
**various** 24:21 25:7 63:14 166:3,7,8,9 185:22 199:16 200:5
**venture** 87:18
**verbal** 8:25 136:15 157:21
**verified** 123:10
**verify** 38:21 176:10
**verifying** 174:6
**versa** 161:6
**versus** 59:15 80:3 115:12 147:9 202:5
**vet** 57:11
**veto** 142:5
**vetted** 229:2
**vetting** 30:13
**vice** 12:4 16:16 161:6 166:8,9
**view** 141:9
**viewing** 208:25

**violate** 67:19
**violated** 228:5
**virtual** 136:18 159:12 160:24 161:4
**virtue** 232:2,4
**visit** 90:10,14
**visitations** 176:16
**voluntary** 154:5

_____
**W**
_____

**waive** 6:12
**waived** 5:7
**want** 15:4 16:2 24:2 45:14 46:12 48:24 68:5,6 70:19 72:4 111:25 133:7 140:7 143:6 145:12 148:12 149:16,18 149:19 162:12,21 164:12 167:4 212:10 218:22 219:2,3 221:11 235:21 242:23 243:14,16
**Wantaugh** 4:6
**wanted** 26:19 148:8
**wants** 72:2 85:14 143:2 243:13
**wasn't** 13:21 51:8 58:20 61:18 63:22 71:15 72:3 105:9 158:13 161:5 191:11 210:20 214:6 238:5,21,23 239:10 240:13
**way** 26:2 34:6,8,13 34:15,16 39:5 105:24 126:7 132:24 140:21 156:24 157:10 168:2 184:10 203:8 213:9 218:2 249:18
**ways** 185:10
**we'll** 92:20 95:7 142:4 144:2 156:8

156:10 165:10 178:8 183:17 185:3 186:18 195:18 196:22 197:3 216:5 219:15 222:5,7 241:10 242:8 245:5 245:9
**we're** 32:9 45:11,22 76:14 134:14 141:21 145:2 156:5 183:13 186:14 195:15 196:9 200:11 214:7 234:10 235:20 241:6 243:24
**we've** 26:3 69:12 70:16 99:19 164:22 198:11 200:6
**web-based** 177:10
**week** 87:10
**weeks** 150:24
**Weinstein** 136:11,13 136:15,19 137:15 138:13,18,22,24 139:7,20 140:4 142:4,22,25 143:6 144:19 145:3,6 146:25 157:15,22 158:7,24 159:2,6 160:5 161:6,10 165:18 166:21 167:6,18 168:8,19 180:2,6,22,25 181:14,21 182:16 199:5 202:20 204:21 205:6,11 206:16 212:6,16,25 213:5,8 220:5 241:13
**Weinstein's** 136:22 158:19 180:15,18
**WEIR** 4:8
**Wendy** 126:11
**went** 51:16 72:23 144:16 208:6,8

209:23 215:8
**weren't** 58:18 64:9 80:8 85:12 206:13
**WHEREOF** 249:20
**whichever** 88:6
**Wicks** 150:5
**wider** 20:19
**wife** 99:13 242:6
**wire** 184:19 208:9
**withdraw** 16:12 60:24 136:3 207:15
**withdrawals** 128:9 239:25
**withdrawn** 37:22 54:17 63:12 73:7 81:7 113:21 165:2 180:16 205:20 224:13
**withheld** 160:10
**witness** 2:8 7:4 78:16 134:5 150:7,10 200:20 235:14 236:4,5 242:5,16,24 243:25 246:2 249:10,14,20
**woman** 17:10
**wondering** 116:12
**word** 145:19 205:2
**worded** 38:25
**words** 47:20 93:23 151:24 163:10 182:8 213:21 217:21 231:7 234:18 240:7
**Wore** 215:13
**work** 13:20 14:14 15:17 17:14 23:6,8 26:15 27:2 30:14 34:14 132:23 133:12 139:20,24 142:22 144:25 146:8 154:23 163:21 164:2 167:15 198:13 199:18 214:18

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Buccino  ---  February 26, 2026

285

244:7
**worked** 14:6 15:19
  15:23 24:17 49:12
  146:23 167:8,23,24
  168:9,15 209:11
**working** 12:10 13:17
  14:17,23 15:20,21
  15:24 16:11 109:6
  118:22 137:6
  146:21 158:7,8
  164:10 165:4 169:3
  172:4 181:21,22
  185:21 214:7
**works** 12:25 87:6
  118:19 138:17
  161:20 167:18,22
  198:21 218:3
**worth** 39:8 121:15
**wouldn't** 24:19 25:15
  27:7 39:22 41:9
  51:6 54:11 57:19
  59:21 61:19 72:24
  82:18 87:17 111:17
  141:9 144:9 145:6
  158:20 181:7
  187:25 188:4,23
  198:8,17,22 199:3,8
  204:11 205:17
  214:20 225:8 227:3
  228:10 230:3
**write** 131:2
**writes** 36:19 97:22
  109:22 110:10
**writing** 28:2,15,19
  29:22 30:2 42:22
  87:8 90:5 93:10
  94:2 95:8 99:2
  115:2 119:22
  127:16 131:3 156:9
  156:12 160:13
  164:16 165:10
  178:8 183:18 185:5
  186:19 195:18
  196:11,22 197:4
  202:17 216:5

218:25 219:15,23
  222:8 231:11
  234:17 235:3
  241:11 245:6
**written** 28:10 30:11
  30:17 32:23 94:2
  157:21 165:17
  213:16 221:24
**wrong** 48:25 71:7
  123:11

---

**X**

**x** 1:3,23 22:25 246:2

---

**Y**

**Y** 22:25
**yada** 172:22,23
**yeah** 12:11 13:18
  20:14 35:23 42:10
  42:23 45:14 64:18
  87:6 116:17 179:16
  187:13 195:3 220:3
  243:22
**year** 15:8 107:5,24
**Year-to-date** 114:3
**years** 12:8 15:4 90:18
  90:20,21 110:4
  149:14 209:10
  221:13,14
**Yep** 95:9
**York** 1:2 2:13 3:5,14
  3:14,20 4:6 13:10
  62:3 115:11 140:2
  169:15 172:25,25
  230:22 249:4,6,9

---

**Z**

**Zizmor** 3:9 6:18
  78:23

---

**0**

**00008** 89:10,13
  246:16
**00015** 108:21,24
  247:5
**00162** 106:19,22

247:3
**00187** 103:18 104:2
  246:25
**00196** 86:13 87:3
  246:14
**01059** 95:12,16
  246:18
**03765** 117:9,14
  247:11
**04572** 122:19,22
  247:13
**05911** 127:2,5 247:19
**05959** 129:19 130:9
  247:21
**06272** 115:15,20
  247:9
**06517** 125:4,8 247:17
**06520** 123:20,24
  247:15
**08495** 132:4,7 247:23
**08496** 84:2,7 246:12
**08560** 112:14,19
  247:7

---

**1**

**1** 78:2,3 99:14 101:10
  103:17 230:13
  246:7
**1.74** 86:8
**1:34** 134:3
**10** 39:8 106:20,21
  247:2 248:12
**10:12** 2:4
**100** 99:22
**101** 246:19
**10170** 3:14
**102** 246:21
**103** 246:24
**106** 247:2
**1065** 38:8
**108** 247:4
**10th** 112:11
**11** 108:22,23 247:4
**112** 4:6 247:6
**114** 248:5

**11423** 3:5
**115** 247:8
**11553** 3:20
**117** 247:10
**11793** 4:6
**12** 12:8 112:17,18
  247:6 248:7 250:3
**12/31/2022** 107:25
**12/6/22** 118:12
**12:11** 98:25
**12:48** 99:2
**12:55** 133:6
**12:57** 133:15
**122** 247:12
**123** 247:14
**1239** 1:9 3:12
**125** 247:16
**127** 247:18
**13** 115:18,19 120:8
  247:8 248:9
**130** 247:20
**132** 247:22
**1339** 4:10
**134** 246:4
**13th** 86:14
**14** 117:12,13 247:10
  248:8,10,13
**14th** 78:22,25 79:18
  83:17
**15** 69:19 101:25
  103:5 122:20,21
  247:12 248:10
**156** 248:6
**1580** 1:8 3:11
**1581** 1:7 3:10
**1591** 1:8 3:11
**15th** 101:19
**16** 123:22,23 247:14
**160** 248:6
**1632** 1:8 3:11
**164** 248:7
**165** 248:7,8
**17** 125:6,7 247:16
**178** 248:8
**18** 127:3

The Little Reporting Company
646.650.5055 | www.littlereporting.com

Case 2:23-cv-06188-JMW   Document 437-3   Filed 03/18/26   Page 288 of 288 PageID #: 11775

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Buccino  ---  February 26, 2026

286

**18211** 3:5
**183** 248:9
**185** 248:9
**186** 248:10
**189** 1:5,20 3:9 21:14
  52:17 53:22 61:4
  70:4 80:9 109:24
**18A** 127:4 247:18
**18B** 130:8 247:20
**18th** 89:16
**19** 82:23 132:5,6
  246:8 247:22 248:5
**19107** 4:11
**195** 248:10
**196** 248:11,11
**19th** 83:4,16

**2**

**2** 82:21,22 132:11
  246:8
**2,000** 211:13,18
**2.11** 85:23 86:3
**2:23-CV-6188** 1:13
**20** 40:21 73:7 111:5
  152:7 248:11,13
**20,000** 121:22
**2010** 13:15,21
**2011** 14:2
**2014** 15:9
**2016** 16:3
**2019** 109:23 110:12
  110:17,23
**202** 248:12
**2020** 101:20,25 103:6
  109:23 110:12
**2021** 110:12 111:2,5
**2022** 89:16 91:18
  107:5 109:4,12,15
  109:19 112:11
  120:12,14,18
**2022/2023** 23:23
  24:16
**2023** 23:23 45:12
  78:22,25 79:18,21
  82:23 83:5 86:14

95:3,19 97:8 98:25
  103:17 104:14,25
  107:4 109:11,20
  117:11 119:15,18
  122:25 123:18
  187:12,17 194:25
  195:7 226:13
  233:17,20 237:11
  246:8
**2024** 132:12 153:6,12
**2025** 153:21 154:15
**2026** 2:3 245:22
  249:22 250:3
**20th** 95:19
**21** 83:25 97:8 98:25
  117:11 248:5
**212-661-6800** 3:15
**215** 248:12
**215-665-8181** 4:11
**218** 248:13
**219** 248:13
**220** 140:8
**222** 248:14
**226** 248:14
**23** 1:10 3:13 109:4
**231** 248:15
**2320** 3:14
**23rd** 187:12
**24** 149:2
**241** 248:15
**25** 230:15,16 248:12
**2519** 1:9 3:12
**26** 2:3 248:4
**28** 248:4
**28-page** 115:14
**2nd** 3:19 249:21

**3**

**3** 83:11,12 246:9
  248:8,9,15
**3/31/23** 118:11
**30** 40:21 73:7 152:7
  243:8,9,14,16
**30(b)(6)** 2:8 18:22
  147:13,24 242:15

242:24
**31** 119:18 123:18
**31st** 119:14 187:17
**3280** 4:5
**330** 15:16 139:25
**333** 3:19
**372,037** 114:3

**4**

**4** 84:5,6 246:11
**4:17** 242:8
**4:23** 245:12
**4:25** 242:9
**420** 3:13
**427,843** 108:4
**446** 1:10 3:12
**4506** 111:12
**4506C** 107:7,9 111:7
**49** 227:11 229:17
  230:17
**4th** 122:25

**5**

**5** 86:25 87:2 246:13
  248:4,6,14
**50** 229:25 230:11,12
**50,000** 73:7
**500** 4:10
**500,000** 22:17 54:20
  68:21 70:25 73:14
  132:12,13 192:25
**51** 227:10 229:16
  230:12
**516-357-3700** 3:20

**6**

**6** 89:11,12 101:7
  126:8 246:15
  248:15
**617224/2022** 115:13

**7**

**7** 95:14,15 246:3,17
  248:7
**718-412-2421** 3:6
**7258** 100:25 101:4

246:20
**735,000** 121:13
**76** 1:9 3:12
**76,130** 113:25
**78** 246:7
**7th** 107:4

**8**

**8** 101:2,3 126:12
  246:19
**8,000** 10:24
**82** 246:8
**83** 246:9
**84** 246:11
**87** 246:13
**89** 246:15
**899** 167:24

**9**

**9** 102:11,12 246:21
  248:4,6,11,14
**900,000** 121:15
**94** 248:5
**95** 246:17
**99** 97:25 98:11 99:7
  99:13,22 100:9
  101:9 207:8
**9A** 103:25 246:24