# In the Matter of

Case No. 2:23-cv-6188 (JMW)

SUPERB MOTORS INC., et al.

v.

DEO, et al.

---

## Continued Examination of Michael Laurie

*Friday, February 27, 2026*

---

 The Little Reporting Company

469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - x

SUPERB MOTORS INC., TEAM AUTO SALES LLC,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HWY AUTO LLC, NORTHSHORE MOTOR LEASING
LLC, BRIAN CHABRIER, JOSHUA AARONSON,
JORY BARON, ASAD KHAN, IRIS BARON
REPRESENTATIVE OF THE ESTATE OF DAVID
BARON, 1581 HYLAN BLVD AUTO LLC, 1580
HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC,
1239 HYLAN BLVD AUTO LLC, 2519 HYLAN
BLVD AUTO LLC, 76 FISK STREET REALTY
LLC, 446 ROUTE 23 AUTO LLC and ISLAND
AUTO MANAGEMENT, LLC,

                         Plaintiffs,
                                        Civil Action No.
            -against-                   2:23-CV-6188(JMW)
ANTHONY DEO, SARAH DEO, HARRY THOMASSON,
DWIGHT BLANKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, THOMAS JONES, CPA, CAR
BUYERS NYC INC., GOLD COAST CARS OF
SYOSSET LLC, GOLD COAST CARS OF SUNRISE
LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP
LLC, GOLD COAST MOTORS OF LIC LLC, GOLD
COAST MOTORS OF ROSLYN LLC, GOLD COAST
MOTORS OF SMITHTOWN LLC, UEA PREMIER
MOTORS GROUP, DLA CAPITAL PARTNERS INC.,
JONES, LITTLE & CO., CPA'S LLP, FLUSHING
BANK, LIBERTAS FUNDING LLC, J.P. MORGAN
CHASE BANK, N.A., 189 SUNRISE HWY AUTO
LLC and NORTHSHORE MOTOR LEASING, LLC,

                         Defendants.

- - - - - - - - - - - - - - - - - - - x

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

72

                                    333 Earle Ovington Boulevard
                                    Second Floor
                                    Uniondale, New York

                                    February 27, 2026
                                    10:18 a.m.


        CONTINUED EXAMINATION BEFORE TRIAL of MICHAEL

LAURIE, a Defendant herein, taken by Plaintiffs, in

the above-entitled action, held at the above place and

time, pursuant to Order and Notice, before Donna

Sadowski, a stenotype reporter and Notary Public of

the State of New York.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

73

A P P E A R A N C E S:


SAGE LEGAL LLC
Attorneys for Plaintiffs Superb Motors Inc., Team Auto
Sales LLC and Robert Anthony Urrutia
      182-11 Jamaica Avenue
      Jamaica, New York  11423
BY:  EMANUEL KATAEV, ESQ.


CYRULI, SHANKS & ZIZMOR LLP
Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC,
Northshore Motor Leasing LLC, Brian Chabrier, Joshua
Aaronson, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580
Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632
Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519
Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446
Route 23 Auto LLC and Island Auto Management, LLC
      420 Lexington Avenue, Suite 2320
      New York, New York  10170
BY:  JEFFREY RUDERMAN, ESQ., via videoconference


HARRY THOMASSON, ESQ., via videoconference
Defendant Pro Se
      3280 Sunrise Highway, Box 112
      Wantagh, New York  11793


CULLEN AND DYKMAN LLP
Attorneys for Defendants Flushing Bank
      333 Earle Ovington Boulevard, Second Floor
      Uniondale, New York  11553
BY:  ARIEL E. RONNEBURGER, ESQ.


WEIR LLP
Attorneys for Defendant Libertas Funding LLC
      1339 Chestnut Street, Suite 500
      Philadelphia, Pennsylvania 19107
BY:  SUSAN VERBONITZ, ESQ., via videoconference


Also Present:
      Robert Anthony Urrutia, via videoconference
      Tammy Aronbayev, Paralegal, via videoconference
      Alivia Cooney, Paralegal, via videoconference

74

S T I P U L A T I O N S


IT IS HEREBY STIPULATED AND AGREED by and between the attorneys for the respective parties hereto that the sealing, filing and certification of the within deposition be waived;

IT IS FURTHER STIPULATED that such deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom said deposition is taken.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to form, are reserved to the time of trial.

75

Michael Laurie

COURT REPORTER:  Please raise your right hand.

Do you swear the testimony you're about to give shall be the truth, the whole truth and nothing but the truth, so help you God?

THE WITNESS:  I do.

COURT REPORTER:  Please state your name for the record.

THE WITNESS:  Michael Keith Laurie.

MR. KATAEV:  Good morning, everyone.  We are here today for the continued deposition of the defendant Michael Laurie.  During the off-the-record time, while we were figuring out technical difficulties involved with the Zoom at Flushing Bank's counsel's office, we have made the following determinaions and/or agreements:

Because counsel for Flushing Bank has a hard stop at four and because the witness has personal slash business matters to attend to and he wishes to leave early, in light of his willingness to return to complete seven hours of testimonial time, the parties have agreed as follows:

We will go today until sometime between 1:00 and 2:00 p.m., at which point we will stop.  We

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

76

Michael Laurie

will then confirm another date to finalize the time.  We completed about an hour and a half of testimony during the first day of deposition.  We are going to complete about three hours during today's deposition.  And we will complete the remaining time on the final day of deposition.

Counsel for Flushing Bank has represented that she has about an hour -- thirty minutes to an hour of questions and Mr. Thomasson represented that he has about half an hour of questions.  I don't believe Mr. Ruderman will have independent questions for the witness.

Does this reflect the agreement all the parties have reached, starting first with Mr. Laurie?

THE WITNESS:  Yes.

MR. KATAEV:  Flushing Bank?

MS. RONNEBURGER:  Yes.

THE COURT:  Mr. Ruderman?

MR. RUDERMAN:  Yes.

MR. KATAEV:  Mr. Thomasson?

MR. THOMASSON:  Yes.

MR. KATAEV:  And Ms. Verbonitz?

MS. VERBONITZ:  Yes.

77

Michael Laurie

MR. KATAEV:  All right.  I am ready to begin.  I just need to get into the Zoom myself to present exhibits.  So let's go off the record and begin in a second.

(Off the record at 10:21 a.m. and resumed on the record at 10:23 a.m.)

EXAMINATION BY

MR. KATAEV:

Q.   Mr. Laurie, are you a party to any other lawsuit, either as a defendant or a plaintiff?

A.   Lawsuit?  My mind just went blank.

Q.   You need me to repeat the question?

A.   No, not that I know of.

I have to turn this off.  Sorry.

Oh, well, I just thought about this.

Yes, I got dragged into another similar situation where I referred somebody I had done business with before.  He got money from somebody I referred to him.  He didn't pay him back.  Now they tried to come after me.  But that's being completely squashed.  I think they have taken care of that. Because I had nothing to do with it.

Q.   You're referring to the lawsuit Prime One Enterprises, Inc.?

78

                    Michael Laurie

A.    Yes.  Yeah, Albert Hakim.

Q.    And Albert Hakim is also an individual you referred to Mr. Deo for a loan, correct?

A.    Yes.

Q.    And can you explain in sum and substance why Albert Hakim has sued you or brought you into another lawsuit?

A.    No, he has not sued me.  He is the lender. It wasn't him.  It was the recipient of the money.

Q.    And --

A.    He didn't pay it back.  He made up some cockamamie story that I brought him into this transaction and that was completely false.  And that has been answered by the attorney at Jaspan and they're not -- that's not moving forward because I had nothing to do with the transaction that he was working on.  So I was just an innocent bystander, as I am here.

Q.    And did you retain counsel on that case?

A.    Yes.

Q.    Who was your counsel on that case?

A.    I have to give you his name but I went through James Leonard at Jaspan and he referred it to somebody.  I have to look up his name.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

79

Michael Laurie

Q.   As of right now --

A.   They answered two letters and the complaint and that is all that has happened.

Q.   As far as you know, is the case still active?

A.   Yes.  Judgment had been filed against the recipient of the money and he is just trying to fight it.  Somebody I've known for 15 years.  All of a sudden, he's lost his mind.

Q.   What is the name of this individual who lost his mind?

A.   You know, certain things, you block them out.  I have to look in my phone.

Q.   Is it Adoni?

A.   Jay Adoni.  Jacob Adoni.

Q.   Adoni alleged that you served as an owner and investor in several car dealerships.  Do you recall reading that?

A.   That is incorrect.  That was never told to him.  It was never referred to him.  It was never inferred to him.  He knew exactly.  He had some client that was going to get cars.  And he asked me if I get the cars, do you have -- can you help me sell them.  The answer was yes.  That was it.

80

Michael Laurie

Q.   When you offered him -- when you offered to help him sell the cars, you did so through Mr. Deo, correct?

A.   Not necessarily.  It was not -- no, it was not definitely Mr. Deo.  It was if you get the cars, the cars can be sold.  It may not have been Mr. Deo.  If they were brand new, it would be through a dealership.  It would be through whoever it was.  But it never came to fruition.  He never got anything.  All he got was the money he borrowed and nothing else happened.  And he worked it without me.  I never met the person.  I never had any dealings with the other people.  I don't know their names.  That's why it's just --

Q.   Do you know the name of any other contacts that you would reach out to in order to sell the vehicles?

A.   At this time, no.  Because we don't need -- we didn't need it.  We don't know what it was.  So there's plenty of people out there who could do this.  I know other people in the industry.  I know people who have new car places, but that's years ago.  Things have changed.  I never had to get that because there was no need for it.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

81

Michael Laurie

Q.   Okay.  And in relation to Mr. Hakim, that individual lent Mr. Deo $100,000, correct?

A.   Correct.

Q.   And you assisted Mr. Deo in making that connection so that he could get that loan, correct?

A.   Correct.

Q.   You were the broker for that deal, correct?

A.   Correct.

Q.   And your assistance to Mr. Deo in obtaining that loan is covered by a written agreement, is that right?

A.   I am not sure.  I have to look.

Q.   Okay.  So to the extent that you have any written agreement covering the brokerage for that deal, I ask you to produce any copies of that agreement to us.  So please hold onto it and I will follow up in writing for Mr. Benjamin to obtain it.

A.   Sure.

Q.   What was your -- the terms of your agreement to broker that deal, the $100,000 with Mr. Hakim?

A.   I don't remember.  I would have to look.  It could have been minimal.  It wouldn't have been a lot.

Q.   I previously saw that you had obtained a commission of ten percent, I believe, for another

82

Michael Laurie

loan.  If I recall correctly, you received $50,000 for brokering a loan of $500,000 with Flushing Bank, is that right?

A.  I did receive that but I don't think it was only for brokerage of that loan.  That's not correct. I would never charge a total of ten percent on a request.  I would have to go back and look and see what that was for.

Q.  What do you typically charge for a straight brokerage?

A.  Two percent.

Q.  Why would you charge -- if you would have charged ten percent, why would it be you charge ten percent?

A.  It may have been for other things.  I would have to look.  That may not have been just for Flushing.  I would have to take a look.

Q.  To the extent that you have an agreement to get paid more than two percent on a loan, is that covered in a written agreement or is it verbal?

A.  In this case, I don't know.  I would have to go back and look.  That's over, what, four years ago.

Q.  To the extent -- I am sure I previously asked this.  To the extent I did, to the extent you

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

83

Michael Laurie

have any documents in writing reflecting your agreement with Mr. Deo for obtaining a Flushing Bank loan, I ask that you produce those documents. And I will follow up with your attorney.

A. Sure.

Q. So is it fair to say in exchange for procuring a loan for $100,000 from Mr. Hakim to Mr. Deo you would have generally charged $20,000?

A. No.

Q. $2,000?

A. Or less.

Q. In this case, it was not Mr. Hakim that sued you, it was the individual being sued by Mr. Hakim that brought you in as a third-party defendant, correct?

A. Correct. Trying to put the blame on me for something I had nothing to do with.

Q. Now, this individual sued you for a breach of contract, right?

A. Correct.

Q. In this lawsuit -- sorry, in this third-party complaint that Mr. Adoni filed, he states that you entered into an oral agreement with him in early 2021, correct?

84

                            Michael Laurie

A.   Correct.

Q.   Is that typically how you entered into agreements with your customers --

A.   Never.

Q.   -- in order to help them?

A.   Never.  There was no oral agreement.

Q.   So typically, when you broker deals for clients, you have an agreement in writing, correct?

A.   Correct.

Q.   And that agreement in writing is between Deo, Capital Partners and your customer?

A.   Correct.

Q.   And Mr. Adoni, through Mr. Adoni personally and his companies, sued you for fraud in this case, correct?

A.   That's what he is saying.

Q.   Now, to your knowledge, with respect to Mr. Deo, you didn't only secure for him the loan of a $100,000 from Mr. Hakim and $500,000 from Flushing, correct?

A.   Correct.

Q.   You secured more for him, correct?

A.   I referred them to the company that got them the lender that has money.

85

Michael Laurie

Q.    You referred them to National Funding?

A.    Uh-huh.

Q.    I need a verbal answer.

A.    Correct.

Q.    And who, if anyone, do you know in National Funding?

A.    John Salvador was probably the person maybe. I still speak to them.  It could have been Claire Garcia; Joe, the owner.  I am not sure who I spoke to back then.

Q.    You referred to Joe, the owner.  Do you know Joe's last name?

A.    It starts with an M.  I have to look.

Q.    Okay.  That's fine.  Just based on your memory.

And the first individual you referred to, what is his role in the company?

A.    He is, I guess, a client rep, an underwriting -- not underwriter.  I think client rep. I refer deals to him and then they take care of it from there.  I have nothing to do with Libertas at that point.

Q.    Did you obtain any financial benefit for securing the Libertas loan for Mr. Deo through

86

Michael Laurie

National Funding?

A.    I don't remember.

Q.    Generally speaking, has National Funding given you any sort of referral?

A.    Libertas could have given me a referral, though actually it would have been through National Funding for the funding of the transaction.

Q.    Okay.  Is it fair to say that because you referred Mr. Deo to National Funding, Mr. Deo would not typically have paid you anything for your work on that deal?

A.    Not necessarily.  It depends on there could be --

I have to go back and look.  I don't remember.

Q.    Okay.  And then you mentioned an individual names Claire.  What is her name?

A.    She is a client rep.  She deals with brokers.

Q.    Just like the first one?

A.    No.  She deals with brokers.  He deals with clients.

Q.    I understand.  So there is a broker side client rep and a client side client rep?

87

Michael Laurie

A.    Uh-huh.  Correct.

Q.    Other than dealing with Capital Partners, you also own other companies, correct?

A.    No.

Q.    Isn't it true that you were previously or currently an owner of Better Alternative Group, Inc.?

A.    That's a company that never did anything or went anywhere.

Q.    Okay.  And --

A.    That's years and years and years ago.  That company is defunct.  That was never, ever transacted. Nothing ever happened with that company.

Q.    What was the intended purpose of that company?

A.    That company back then was supposed to be a company that was going to get a license -- it was really just a brokerage.  It was not the company.  It was a brokerage that was opened up if there was going to be a transaction through some other parties to do a -- to get a marijuana cannabis license.  That was a long time ago.  Nothing ever happened with that.

Q.    Okay.  Are you aware of an allegation against you arising out of that?

A.    Yeah.  Once again, being the person I am, I

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

88

Michael Laurie

put my foot in my mouth. So there is $100,000 that's due to a gentleman that went to this other company. But I put my name on it and that was my mistake. Because I believe in people. And it bit me in the ass.

Excuse me.

Q.   It's okay. You can speak freely.

You're referring to a personal loan that you obtained, right, for $100,000?

A.   Correct. I signed on it. The money went to another entity, not me. I never got the money. I never received the money.

Q.   What entity got the money?

A.   I would have to look. I have to look.

Q.   Was it Community Care Group Holdings, LLC?

A.   Yes.

Q.   And who is Mr. Joseph Savasta?

A.   He's the person who had put the money up.

Q.   He was, in effect, the lender?

A.   Yeah. Well, he was an investor, not a lender.

Q.   Okay.

A.   And it didn't go anywhere. But he wanted his money back. We went round and round and round and

89

Michael Laurie

it's kind of just there.

Q.   And Mr. Savasta also sued you for fraud, correct?

A.   Not that I know.  No, not for fraud.  He just wanted his money back.  It wasn't for fraud. There was no misrepresentation.

Q.   I am presenting to you what will be marked as Laurie -- I don't think I showed any exhibits yet. Laurie 1.

(Summons & Complaint was deemed marked Plaintiff's Exhibit Laurie 1 for identification.)

Q.   I will represent to you, Mr. Laurie, that is a Summons & Complaint filed under index number 655330/2023.  And it is a complaint that Mr. Savasta filed against you.  Do you recognize this document?

A.   Yes.

Q.   And after the Summons, there is a Verified Complaint which means it's sworn to.  Do you recognize that?

A.   I do see it.

Q.   And after that facts are discussed, there are four causes of action, the first of which is breach of contract.  Do you see that?

A.   Yes, I do.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

90

Michael Laurie

Q.    The second of which is also breach of contract.  Do you see that?

A.    Yes.

Q.    And the third of which is for fraud.

A.    Okay, it's there.

Q.    Now that you have seen this, do you recall that you were also sued for fraud here?

A.    I see it now but I did not remember that.

Q.    Okay.

A.    I remember it being a loan but there was no fraud.  There was no intent to commit fraud.

Q.    In other words, you deny the allegations?

A.    100 percent.  And I did to his attorneys. We met a number of times.  It's been probably two years since that, probably.  It's not done anything.

Q.    And paragraph 41, which I have highlighted on the screen, it says that you represented to Savasta that BAG -- that's the deal we talked about earlier -- has no liabilities, obligations or commitments of any nature whatsoever.

A.    Can you unhighlight it, please?

Right.  So what I understand from there is I told them that BAG, that company, had nothing to do with it, that I was the person who was responsible.

91

Michael Laurie

Is that what it reads?  Is that how that reads?

THE WITNESS:  Mr. Thomasson, is that how that reads?

Q.   You can't ask Mr. Thomasson.

A.   I can't ask for an opinion?

Q.   No.

A.   Go ahead.  My fault.

Q.   I will rephrase the question.

So what this paragraph is saying is that you told Mr. Savasta that your company, being BAG, had no liabilities, it didn't owe any money to anyone.  Do you deny that?

A.   BAG didn't owe any money to anyone.  I did.

Q.   And the following paragraph, Mr. Savasta alleges that your representation that BAG had no liabilities is false because as of the date you entered into an agreement with him to sell BAG, it had material or important liabilities or significant liabilities, including but not limited to moneys owed to Community Care Group.  Do you see that?

A.   BAG didn't owe anything to CCG.  How would we owe money to CCG?

Q.   Do you have a copy of your agreement

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

92

Michael Laurie

concerning the personal loan that you obtained?

A.    I don't have it now.  I could probably find it.

Q.    We are going to follow up in writing and request that you produce any documents concerning that loan.

A.    No problem.

Q.    What is the status of this lawsuit, to your knowledge, right now?

A.    It's on hold.  There is nothing happening with it.

Q.    Okay.  Isn't it true that you did not answer the complaint and the default was entered against you?

A.    Correct.

Q.    And there is a resulting judgment that was entered against you, correct?

A.    Correct.

Q.    Do you know whether any efforts have been made to collect that judgment?

A.    None.  I have met with the attorneys and we've had conversations, but none.

Q.    When you're referring to conversations, you're referring to settlement?

A.    Uh-huh.

93

Michael Laurie

Well, not settlement, but just conversations about the loan because that money is owed by two other parties.  And they have been informed.  One is an attorney who lives in DC and one is a gentleman in Manhattan.  And they are on a very short leash before they're sued for this because I did not take the money and they have to pay it back, which is going to happen.

Q.    So in other words, this lawsuit, in terms of resolving the judgment, has not yet been resolved, right?

A.    No.

Q.    Are you aware of lawsuits filed against Mr. Deo other than this lawsuit?

A.    No.

Q.    Do you have any knowledge about the lawsuit filed against Mr. Deo -- I am sorry, a lawsuit that Mr. Deo filed against the landlord at the Hicksville location he currently operates from?

A.    No.

Q.    Are you aware of any alleged death threats issued to Mr. Deo by agents of the landlord at the Hicksville property?

A.    I heard about it when it happened.

94

Michael Laurie

Q.    Where did you hear about it?

A.    When or where?

Q.    When.

A.    When it happened.

Q.    Okay.  And how did you hear about it?

A.    Marc told me.

Q.    And what were the circumstances upon which you were together with Marc discussing this?

A.    I saw the video.  Someone showed me the video.  And he told me what happened.  And then that was it.

Q.    Were you at the Hicksville location?

A.    No.

Q.    Where were you when Marc told you this?

A.    I don't know.

Q.    Okay.  Do you know who Jiying Wei is?

A.    No.

Q.    If I told you that individual is the owner of the Old Westbury home Mr. Deo currently resides in, does that refresh your recollection?

A.    I don't know the owner.

Q.    Okay.  Are you aware of any lawsuit between the landlord of the residential home Mr. Deo is living in and Mr. Deo?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

95

Michael Laurie

A.   He's in court with it.

Q.   And how do you know that?

A.   Because I referred him to an attorney to help him years ago.

Q.   And what was the name of that attorney?

A.   Joseph Vozza.

Q.   And is Mr. Vozza still representing him?

A.   I don't know.

Q.   Were you involved with Mr. Deo in connection with his employment at Cherrywood Auto Sales?

A.   No.

Q.   Do you know who Cherrywood Auto Sales is?

A.   I know the company.  I have been there once or twice.

Q.   And what were you doing when you went there?

A.   Come to say hello.

Q.   Because Mr. Deo is a friend of yours, correct?

A.   Yeah.

Q.   You visit Mr. Deo socially, correct?

A.   Yes, I have.

Q.   When you went to Cherrywood Auto Sales while Mr. Deo was there, what did you observe?

A.   Auto body repair and an auto sales lot.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

96

Michael Laurie

Q.   Isn't it true at the time Mr. Deo was working at Cherrywood he was also operating Regal Auto House in Hicksville?

A.   I don't know the timing.  Because I've -- I don't know the timing.  Because he went from one to the other so I don't know.

Q.   You visited Mr. Deo at the Hicksville location as well, correct?

A.   Yes.

Q.   Did you help him there?

A.   In what manner?  I don't sell cars.  I don't do financial.  So the answer is no, I didn't help him there.

Q.   Do you recall coming to an evidentiary hearing on February 20, 2024 before Judge Wicks?

A.   Yes, because I was requested.

Q.   Okay.  At that evidentiary hearing, do you recall me presenting you with an e-mail that you had sent internally about the operations of Superb?

A.   You did mention something and you produced something but I don't remember what it was.

Q.   I will represent to you that it was an e-mail in which you stated that in response to some issue you're working to take care of it.  Do you

97

Michael Laurie

recall that?

A.   Yes.  The landlord and him were trying to negotiate a deal.  So I spoke to their attorney.

Q.   When I asked you about that specific e-mail, you said Mr. Deo is my friend and I was helping him out.  Do you recall that?

A.   That's what it was.

Q.   As you sit here today, do you recall helping Mr. Deo in a similar manner at Regal Auto House in Hicksville?

A.   That's what you're discussing_ --

Q.   Yes.

A.   -- Hicksville.

Q.   No.  The e-mail that I showed you at the hearing was about Superb.  So my question is did you help Mr. Deo -- have you ever helped Mr. Deo at Regal Auto House the same way you helped him at Superb?

A.   Yeah.  He has questions, we try to help, correct.

Q.   Is that something that you do for all the customers that you work with?

A.   Yes.

Q.   So --

A.   Somebody needs help, I will help them.

98

Michael Laurie

Q.   Have you ever been formally employed by Mr. Deo at Northshore?

A.   No.

Q.   Have you ever been formally employed by Mr. Deo at Sunrise?

A.   No.

Q.   Have you ever been formally employed by Mr. Deo at Superb?

A.   No.

Q.   Did you ever have an office at Northshore?

A.   No.

Q.   What about Sunrise?

A.   No.

Q.   What about at Superb?

A.   I'd use an office in and out every now and then for a short period of time.

Q.   What was the purpose of using an office in Superb?

A.   Convenience for my company DLA.

Q.   How was it a convenience?

A.   Close to my house.

Q.   Does DLA Capital Partners maintain an office other than -- does DLA Capital Partners maintain an office?

99

Michael Laurie

A.    Yes.

Q.    Where is that office?

A.    One Old Country Road.

Q.    Okay.  If I recall correctly, I have seen, I believe on the website and other places in documents, that there's another location, Froelich --

A.    Froelich Farm Boulevard.  That was my old office.

Q.    When did you first obtain that office?  A year is fine.

A.    2017.

Q.    And you still maintain that office?

A.    No.

Q.    When did you cease utilizing that office?

A.    A little less than two years ago.

Q.    What were the circumstances upon which you stopped using that office?

A.    Convenience.  Instead of going to Woodbury I go to Carle Place.

Q.    How big was the office on Froelich Farm Boulevard?

A.    Small office, 100 foot.

Q.    One desk?

A.    Yeah, in an office, correct.

100

Michael Laurie

Q.   What was the rent there?

A.   1,100.

Q.   And currently at One Old Country Road, what is your rent there?

A.   800.

Q.   And it's also a one desk office?

A.   Yeah.  It's in a cooperative space.

Q.   Like WeWork?

A.   No, it's a private building.  They have their own co-op space.

Q.   Were you ever placed on payroll at any of the dealerships operated by Mr. Deo?

A.   No.

Q.   Did Mr. Deo pay you in any manner for your assistance to him at any of the dealerships you operated?

A.   I would have to look back to see what funds I received from him.  But he did help me when I needed help from his funds.  So there may be something that came to me.  But not for payroll purposes.

Q.   And just to clarify my question, any of the dealerships Mr. Deo operated.  I may have said you operated.

A.   I know that you meant.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

101

Michael Laurie

Q.   What were the circumstances upon which Mr. Deo helped you with money?

A.   I would have to look back.  I don't remember.

Q.   Do you know how much Mr. Deo lent you or gave you?

A.   No.

Q.   Were the funds that you received from Mr. Deo to help you subject to any written agreement?

A.   I don't remember.

Q.   What were the personal circumstances involved that led to you needing a loan from Mr. Deo?

A.   I don't remember.

Q.   How much money did Mr. Deo lend you?

A.   I don't remember.

Q.   Did you still owe Mr. Deo money?

A.   No.

Q.   So you paid him back?

A.   If anything was due back, I would have paid him back.  I don't owe him anything, as far as I know.

Q.   Are you aware of the fact that the plaintiffs in this case filed a motion for sanctions based on your failure to appear at a deposition while you were in Trinidad?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

102

                        Michael Laurie

A.   Yes.

Q.   And are you aware of the Court's decision on that case --

A.   That is being appealed.

Q.   -- on that motion notice?

A.   That is being appealed by the attorney.

Q.   Okay.  Which attorney is appealing that?

A.   Jeff.

Q.   Okay.  And are you currently paying Mr. Benjamin for his legal services?

A.   No, it's being paid by Deo.  Because I should not be sitting here.  And I won't say the word that I want to say.

        Continue.

Q.   Okay.  Why do you believe you should not be sitting here?

A.   Because I am not a party to any lawsuit in any way, shape or form.  I referred him to Flushing and Libertas.  I had nothing to do with the criminal on the phone Urrutia or Josh or anyone else.  They happen to see me, see my name, and all of a sudden I am party to a suit, which is BS.  That's why.

Q.   You referred to Mr. Urrutia as a criminal.

A.   Correct.

103

Michael Laurie

Q.    But were you referring to Mr. Aaronson as a criminal as well?

A.    Yes.

Q.    Why do you say that Mr. Aaronson is a criminal?

A.    Because I witnessed him coming and doing certain things on video.  And just hearing what they were doing, it's criminal what was done when they moved money from an account.  All kinds of crap that happened.

Q.    Okay.  What about Mr. Urrutia?  What is your basis for saying he is a criminal?

A.    Locking out Anthony after he gave him the right to operate and saying he didn't receive the documents from the proper channels to get the Flushing loan and Libertas.  That's criminal.

Q.    What does it matter to you?

A.    It doesn't matter to me.  That's why I shouldn't be sitting here.

Q.    Other than referring Mr. Deo for loans by National Funding through Libertas and Flushing Bank, did you and Mr. Hakim -- did you help Mr. Deo secure any other loans?

A.    We tried to get him a home loan, which was

104

Michael Laurie

ready to go and then Josh shut them down.

Q.   When you say a home loan, which home are you referring to?

A.   Where he lives now.

Q.   Okay.  And then how is it that Joshua Aaronson shut them down with respect to that loan?

A.   Because he got locked out of Northshore and Sunrise.  So he could not produce and continue operating his business.

Q.   I see.  You're saying that because Mr. Deo's income stream was affected he could not close on that loan?

A.   Correct.

Q.   Are you saying -- withdrawn.

Who was the lender for the home loan?

A.   Meadowbrook Mortgage.

Q.   Okay.  Is that a private lender?

A.   No.  It's a mortgage broker here in Westbury, I think.  Here in Westbury.

Q.   For which home was Meadowbrook Mortgage supposed to provide a loan to Mr. Deo for?

A.   The current house he is in.

Q.   What evidence of ownership, if any, was produced to Meadowbrook Mortgage to obtain that loan?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

105

Michael Laurie

A.   He was supplied a contract to purchase.  I am just saying that off the top of my head.  The normal documentation.  I don't collect the documents.  That's done by them.

Q.   Okay.  Now, how did it come to be that that loan was not able to be secured?

A.   Can I ask where this is going?

Q.   I am trying to understand why Joshua Aaronson interfered with this loan.

A.   Because his business, he got shut down.

Q.   Okay.

A.   So he couldn't continue.  As far as I know, he couldn't continue his business.  If you can't continue your business, you can't get a mortgage.  You have to be able to supply documentation and have income.  And that's when he got shut down.

Q.   So in other words, the Meadowbrook Mortgage was asking Mr. Deo for financials and he couldn't provide them?

A.   Correct, to my knowledge.

Q.   Okay.  That's what I was trying to understand.

A.   Okay.

Q.   On the days that you assisted Mr. Deo at any

106

Michael Laurie

of his dealerships, how much time would you spend at the dealerships?

A.   I don't remember.  I could be there ten minutes, I could be there an hour.  I just -- in my day, sometimes I would pass through.  There was no set schedule.  There was no here, there timing.  It was easy for me just to pass through.

Q.   Okay.  Did you ever spend more than half a day helping Mr. Deo?

A.   Not necessarily helping Mr. Deo.  He didn't need my help a half a day.  If I was there, I may have been sitting in my office working because it's convenient.  But I wouldn't -- not helping him.  He ran his business.  He didn't need my help running his business.

Q.   How long did you maintain an office at --

A.   I don't know.  At Superb?  I don't know the full time.

Q.   Was it more than a month?

A.   Yes.

Q.   Was it more than six months?

A.   I don't remember.  I don't remember that period of time.  Remember I told you I had memory issues.  So I have to go back and look at documents

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

107

Michael Laurie

and see if I can figure that out.

Q.   What documents, if any, would you look at to figure that out?

A.   That's a good question.

Q.   Would it be text messages, e-mails?

A.   So, no, text messages don't tell you where you are.  I don't know.  When I say that, I don't know.  I would have to figure it out.

Q.   You didn't have any sort of sublease agreement?

A.   No.  No.  No.  It was an empty office; I was using it.

Q.   Was the office that you worked out of in close proximity to Mr. Deo?

A.   No.

Q.   Where did Mr. Deo perform work in relation to where your office was?

A.   The other side of the building, from what I remember.

Hold on.

Yeah.  No, his office wasn't next to me.  No.  Yeah, correct.  I'm remembering the layout.  He was on the far side of the building in his own office.

Q.   Other than working at the DLA Capital

108

Michael Laurie

Partners, have you worked anywhere else from 2018 to the present?

A.    We have Mark Capital.

No.  No.  No.  Sorry.  No, that was prior to that.  No.  2018?

Q.    Yeah.

A.    No.  Just DLA.

Q.    And DLA Capital Partners is a corporation solely owned by you, correct?

A.    Correct.

Q.    And you opened DLA Capital Partners on April 12, 2017, correct?

A.    Correct.

Q.    Are there any other owners or shareholders of DLA Capital?

A.    No.

Q.    Does DLA Capital Partners have any employees?

A.    No.

I don't want to be rude.  Can I look at my phone for one minute while you're --

Q.    We can take a break, yeah.

A.    Just two minutes.

Q.    It's 11:01.  We'll come back 11:05.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

                                                               109
                         Michael Laurie

            (Off the record at 11:01 a.m. and resumed on

        the record at 11:04 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

        Q.    I am placing on the screen what will be

marked as Laurie 2.

            (Screenshot of website was deemed marked

        Plaintiff's Exhibit Laurie 2 for identification.)

        Q.    This is your website, correct?

        A.    Yes.

        Q.    And on your website you have the

functionality to make payments, correct?

        A.    Yes.

        Q.    And you have sort of a fixed fee pricing?

        A.    Never used that.

        Q.    Has any customer ever paid you through this?

        A.    No.

        Q.    Has Mr. Deo ever paid you through this?

        A.    No.

        Q.    Do you know if this works?

        A.    No.  I haven't used it.  I don't know if it

works.

        Q.    When did you set this up?

        A.    Don't know.  It was through a friend of mine

110

Michael Laurie

who wanted to test it.  And I put it there and didn't take that off.

Q.    I may have asked you this before but just for foundation purposes, when did you first meet Mr. Deo?

A.    I would have to go back and look.  Maybe a year before the lawsuit.  I have to go back and look.

Q.    Okay.  DLA Capital Partners was up and running already when you first met him?

A.    Yes.

Q.    Okay.  Let me share the screen here.  We'll mark this as Laurie 3.

(E-mail was deemed marked Plaintiff's Exhibit Laurie 3 for identification.)

MR. KATAEV:  Off the record.

(Off the record at 11:05 a.m. and resumed on the record at 11:06 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.    I could Zoom in more.  But you're welcome.

A.    I have to read it.

Okay.

Q.    And just to scroll down to the bottom to show you there's nothing else.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

111

Michael Laurie

Having read Laurie 3, which I will represent to you is an e-mail chain dated Friday, December 30, 2022, at 9:23 a.m. between yourself and Mr. Deo and Mr. Urrutia, can you explain what's going on in this e-mail?

A.   I don't remember what the scans were. That's why I went to read it.

Q.   Now that you read it, can you explain what this e-mail is about?

A.   It's probably something in relation to just getting information that -- and not getting it.  Me just pushing it along.

Q.   You testified previously that you were just helping him, correct?

A.   And that's me helping him.  Because I met with Urrutia.  I went to Connecticut.  I met with them.  So I was trying to push it along.

Q.   Okay.  And is it fair to say that you were taking action to push things along for Mr. Deo because he would need funding again if the deal went through?

A.   No.  I had nothing to do with funding, with cars, along those lines.  That was all taken care of by Urrutia and his people in his office.

Q.   And in this e-mail you are signing off as a

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

112

                    Michael Laurie

business manager, correct?

        A.    Yes.

        Q.    And why is it that you have this title if you're not a formal employee of Mr. Deo?

        A.    Because I was helping him and it makes it easier when you are an inside third party push. That's why we did that.

        Q.    Whose decision was it to do that?

        A.    Probably Deo and I, and that I would help him.

        Q.    You decided together?

        A.    Probably.

        Q.    And then Mr. Deo went about giving you the e-mail address from his domain name at Northshore, correct?

        A.    Correct.

        Q.    At the time that you were assisting Mr. Deo at Northshore in 2022, did you have an office at 180 Michael Drive in Syosset?

        A.    No.

        Q.    Do you know what the address 180 Michael Drive in Syosset is?

        A.    Yes.  That's where the used car dealership is.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

113

Michael Laurie

Q.    And why is it you had an office at Superb when you went but didn't have one at Northshore?

A.    At the time, I didn't need it and it wasn't convenient.  I had an office in Woodbury.

Q.    That's the Froelich Farm Boulevard?

A.    Yes.

Q.    Are you familiar with the fact that the premises 180 Michael Drive was surrendered to the landlord?

A.    Yes, I do know that.

Q.    How do you know that?

A.    Deo told me.

Q.    What did he tell you?

A.    When he got shut down that he gave it back to the landlord.  Because he carried it and then couldn't afford it anymore.

Q.    Okay.  Are you familiar with the dispute Mr. Deo has over Baron Nissan?

A.    I heard of it but I have no details.

Q.    Do you know who Frank Ventimiglia is?

A.    No.

Q.    Is it fair to say that in relation to Northshore and Sunrise, the only real duty you had other than helping Mr. Deo out was to obtain capital

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

114

Michael Laurie

for him?

A.    That's what I helped him with.  That's what was needed at the time.

Q.    Did Mr. Deo tell you why he needed capital?

A.    I don't think we helped him with capital at Northshore.  I think it was only when he went to Superb.

Q.    Isn't it true that Flushing Bank gave Northshore a loan of $500,000?

A.    Was that Northshore or was that Flushng?

Q.    I believe it was --

A.    Superb.

Q.    I believe it was twice but I may be mistaken.

A.    It's not twice.  It was -- there was only one loan with Flushing.

Q.    Mr. Deo paid you in cash for helping him out, correct?

A.    Cash?

Q.    Has he ever paid you in cash?

A.    It's a long time ago.  I've never seen cash.

Q.    How did he pay you?

A.    If he paid me, it would have been via check or wire.  If.

115

                        Michael Laurie

Q.   I am going to call for the production of all payment records between yourself and Mr. Deo and any of his entities.

A.   That's fine.

Q.   I'll follow up in writing.

When Mr. Deo did pay you, did he pay DLA or did he pay you personally?

A.   I would have to go back and look.

Q.   It could have been either?

A.   It could have been either, depending what it was for.

Q.   Okay.  You called Mr. Aaronson a criminal over the funds that were taken out.  Do you recall that testimony?

A.   Yes.

Q.   Those funds were $735,000 from Libertas, correct?

A.   Yes.  Yes.

Q.   What do you know about what transpired?

A.   The Libertas was approved.  The money went into the account.  Wendy then moved it a few minutes later and it left the account.  And then they called the police and the money was returned to the account.

Q.   At the time that Mr. Deo called the police,

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

116

Michael Laurie

were you aware that he called the police or you found out after?

A.    After.

Q.    You were not present at the police precinct?

A.    No.

Q.    You didn't have any discussions with the police?

A.    No.

Q.    Did Mr. Deo ask you for any information to assist them with this complaint?

A.    No, not that I remember.

MR. KATAEV:  Off the record.

(Off the record at 11:10 a.m. and resumed on the record at 11:12 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.    To your knowledge, you helped Mr. Deo obtain a loan from Libertas through National Funding, correct?

A.    I made the referral.

Q.    And with respect to Flushing Bank, you did not refer it out; you handled it directly, correct?

A.    No, I made the referral to the banker.

Q.    Okay.  And who was that banker?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

117

Michael Laurie

A.   Maybe Rob Puccio at the time.

Q.   And what is your -- can you explain your working relationship with Mr. Puccio?

A.   He is a banker, I'm a broker.  I have known him 20 years.  We used to work at the same bank many years ago.

Q.   And do you know whether Mr. Puccio is still an employee at Flushing Bank?

A.   He is not.

Q.   How do you know that?

A.   He told me.  He had left years ago.

Q.   So you maintain contact with him?

A.   Yeah.

Q.   And where is he now?

A.   Wells Fargo.

Q.   When was the last time you spoke to Mr. Puccio?

A.   A couple of days ago.  Maybe yesterday.

Q.   Did you speak to Mr. Puccio about this lawsuit?

A.   No.

Q.   Do you know of any developments in this case relating to Mr. Puccio?

A.   No.

118

Michael Laurie

Q.   And do you maintain a social relationship with Mr. Puccio?

A.   Just business.  I know him well but we haven't been out like drinking or anything like that.

Q.   Okay.  To your knowledge, does Mr. Puccio reside in Huntington, New York?

A.   Yes, he does.

Q.   How do you know that?

A.   Because he moved there.

Q.   It's fair to say you were able to help Mr. Deo obtain a loan from Flushing Bank through your connection to Mr. Puccio?

A.   No.  Mr. Puccio was a referral.  Mr. Puccio then gave it to underwriters.  So there's no because I know somebody anything gets done.  It's underwritten by a bank, underwriters, approvers.  There's no influence.  It's a referral.

Q.   Okay.  Did Mr. Puccio, either directly by himself or through Flushing Bank, pay you for your referral, for sending Mr. Deo?

A.   No.

Q.   Did you assist Mr. -- sorry.  Withdrawn.

Did you assist Mr. Deo and work with Mr. Puccio solely to obtain a loan from Flushing Bank?

119

Michael Laurie

A.    They had a bank account.  They have to open up a bank account.  That's one of the requirements.

Q.    And did you facilitate that?

A.    I made the referral.

Well, I didn't have to make the referral -- once I made the referral for the loan, then Mr. Puccio would work with Deo to open up an account because that's an automatic withdrawal.

Q.    So in order to -- withdrawn.

Your role, as you're saying it, is just referring it to Mr. Puccio and no further involvement?

A.    No, I may have helped make sure he got the right documents from the client if he's not sure what they are requesting, to make sure that he receives what he needs.  That's my job.

Q.    In other words, for you to earn whatever fee you have agreed to with Mr. Deo or any of your customers, besides making a referral, you also take steps to facilitate?

A.    I get paid when it closes so if it doesn't close, I don't get paid.

Q.    So you have a vested interest in moving things along?

A.    If I can.  Sometimes they do, sometimes they

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

120

Michael Laurie

don't.

Q.   Other than connecting Deo to Flushing Bank, not in connection with any loan but banking relationships is what I am focusing on, have you connected Mr. Deo with any other banks?

A.   Not to my knowledge.

Q.   Isn't it true that you connected Mr. Deo to Signature Bank?

A.   Oh, Rob Puccio.  Rob Caruana.  Yes, I made a referral to him.  That's correct.

Q.   Can you spell Mr. Caruana's name?

A.   C-A-R-U-A-N-A.

Q.   Okay.  And Signature Bank is now called Flagstar, correct?

A.   Correct.

Q.   To your knowledge, has Mr. Caruana remained at Flagstar?

A.   Yes.

Q.   Do you still maintain a working relationship with him?

A.   Yes.

Q.   To your knowledge, did -- withdrawn.

To your knowledge or recollection, were you working on helping Mr. Deo obtain a loan from Flagstar

121

Michael Laurie

Bank or Signature Bank at the time?

A.   I don't remember.

Q.   But do you know sitting here today whether any efforts were undertaken to obtain a loan from Signature Bank?

A.   I don't remember.  I made the referral.  I don't know what the final outcome was on what was asked for.  I know he had an account.  That's what I remember.

Q.   Your business doesn't center around helping your clients get a bank account only, right?

A.   No, it can be.  Somebody needs help and they just need a bank account, I will make a referral to make sure they get the service they deserve.

Q.   Is there any other -- withdrawn.

Did you assist Mr. Deo in obtaining a banking relationship with any other bank --

A.   Not that I know of.

Q.   -- other than Signature or Flagstar --

A.   No, not that I know of.

Q.   -- or Flushing?

What about Bank of America?

A.   I don't remember.  I don't think so.

Q.   Do you have any contact at Bank of America?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

122

Michael Laurie

A.    Plenty.

Q.    Do you recall whether you made any connections between any rep of Bank of America --

A.    I don't remember.

Q.    -- and Mr. Deo?

A.    I don't remember.

Q.    Just to make life easier, wait for me to finish.

A.    I'm sorry.  You warned me.

Q.    I just feel bad for her.

      Okay.  You said you don't remember about Bank of America.  What about Chase?

A.    No, I don't remember.

Q.    And then you testified that you bank with Citibank, correct?

A.    Yes.

Q.    Do you ever refer customers to Citibank for loans or accounts?

A.    Usually not.

Q.    Why is that?

A.    They suck.

      MR. KATAEV:  Off the record.

      (Off the record at 11:21 a.m. and resumed on the record at 11:22 a.m.)

123

                        Michael Laurie

CONTINUED EXAMINATION

BY MR. KATAEV:

        Q.   Isn't it true that almost any -- virtually
any time Mr. Deo had a meeting with Mr. Urrutia in
person you were present?

        A.   No.

        Q.   But you were present at meetings with Mr.
Deo and Mr. Urrutia, correct?

        A.   Yes.

        Q.   When was the first time you had a meeting
with Mr. Deo and Mr. Urrutia together in person?

        A.   I don't know.

        Q.   But you do recall having such an initial
meeting, correct?

        A.   Yeah.  I met him.  He was there.  I was
introduced to him, said hello, talked to him, I leave
the office, they talk.  I didn't sit through every
meeting with them if I was around.

        Q.   Isn't it true at the first meeting you
stayed for the full meeting?

        A.   I don't know.

        Q.   You don't remember any discussion you had?

        A.   That's -- how many years ago was that that
you want me to recall having a specific meeting?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

124

Michael Laurie

Q.    I am not suggesting that you should remember.

A.    You're asking it this way.

Q.    I am asking do you remember.

A.    I answered you no.

Q.    When you're assisting, generally speaking, any customer to obtain a loan, you do come into possession of financial documents, correct?

A.    Most of the time, yes.

Q.    Do you review and assess those documents?

A.    No.  I make sure it's what the bank is asking for.  If they're asking for three years personal, three years corporate, I make sure that that's what they are.  But when you say review, I make sure there is no loss on it or something that's going to kill the deal.  And then they're sent to the bank.

Q.    Okay.  Do you scrutinize the document in any way and give advice about what's in it?

A.    Normally, no.  That's up to their C.P.A. and the client.

Q.    Do you work with the C.P.A. on such subjects?

A.    No.

Q.    In connection with any loan you're assisting

125

Michael Laurie

Mr. Deo to obtain, did you have any discussions with Thomas Jones?

A.    Yeah, I know Tom Jones.  He is the one who referred me originally to Mr. Deo.

Q.    At the time that Mr. Deo submitted financial documents to lenders, did you come to know whether the financial documents were accurate?

A.    What do you mean accurate?

Q.    I am asking, do you know whether at the time Mr. Deo submitted financial documents whether the financial documents themselves were accurate?

A.    As far as I know.  I mean I didn't supply the documents.  They're supplied by Mr. Deo or the accountant.

Q.    Did you later learn that any of the financial documents submitted by Mr. Deo were inaccurate?

A.    Not that I know of.  In regards to what?  Be more specific.

Q.    I am asking generally.

A.    Oh, no.  There was nothing that was supplied by Mr. Deo that I sit here and go where did this come from.  No, if that's what you are asking.

Q.    And you are referring to at the time you

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

126

Michael Laurie

were submitting them, right?

A.   Correct.

Q.   My question is now that time has passed, sitting here today, have you come to learn that any of the financial documents submitted by Mr. Deo to any lender, have you come to know that any of those documents were false?

A.   Nothing that was supplied by Mr. Deo, no.

Q.   You know that for a fact?

A.   I don't know anything for a fact.  At this moment, I just know you're asking me about a question do I recollect that anything that was given was improper or was -- I don't where you're going with this.  I don't know that anything was not -- that was supplied for approval had any issues.  That's why they do a 4506-T, which he probably signed for them in his documents, which allows them to verify.

Q.   Now, have you ever personally seen Mr. Deo's personal tax returns?

A.   I may have seen them but I can't sit here and tell you that I know what's on them.  Or I mean I had to have seen them to forward them.  Or he may have forwarded them himself.  I don't remember.

Q.   In connection with your assistance to Mr.

127

Michael Laurie

Deo in obtaining loans, any loan, did you ever come across the shareholders' agreement that Mr. Deo had at Superb?

A.   I may have seen it.  I can't tell you what's in it.  I know that he and Urrutia did something so that it can be supplied to Flushing because Mr. Urrutia was the owner of Supreme.  Superb, sorry.  So there had to be something for the bank to accept so they had to supply something.

Q.   It's typical, more often then not, for a lender to request such documents as a shareholder agreement or operating agreement?

A.   Correct.

Q.   Generally speaking, you don't review the contents of those agreements?

A.   I may have looked for the name to make sure they are on it, make sure the corporation matches. But I am not going to -- I am not the attorney.  I am not the one reviewing it that way.  I try and glance at everything but I can't sit here and say that I read it and it was in glaring -- so no, I can't answer that.

Q.   You don't have a specific recollection of reviewing a shareholders' agreement for Superb?

128

Michael Laurie

A.    No.

Q.    But do you have a specific recollection of obtaining and submitting it?

A.    I would have had to.  Either I submitted it or Deo submitted it.  It would have to be submitted.  Otherwise, the loan would never get approved.

Q.    Are you aware that the shareholders' agreement Mr. Deo has with Mr. Urrutia for Superb has limitations about what it is the Deo was allowed to do financially?

A.    So I do recollect this.  I do recollect an e-mail and a conversation with Urrutia telling him to do what you need to do to run the business.  So that I recollect because I asked that.  I remember very specifically, who is running the show.  And Urrutia sent him something in writing which I will dig for, because I remember seeing something that Urrutia gave him the authority to run the business.

Q.    Okay.  I will call for the production of any such communication.

A.    Sure.  Happy to.

Q.    So that's important.

But as you sit here today, I am asking you, do you recall whether the shareholders' agreement had

129

Michael Laurie

limitations?

A.    I don't know.

Q.    Okay.  Do you recall any lender coming back to you and telling you any questions they had or issues they faced after reviewing the shareholders' agreement of Superb?

A.    I do not know.

Q.    In connection with your work through DLA Capital Partners and yourself helping out Mr. Deo, did you ever have any involvement with floor plan lending?

A.    Other than talking to me about it, no.  I never supplied any floor plan lending to him.

There was one guy that I spoke to in Florida but nothing ever came of it.

Q.    Whatever conversation you had with an individual in Florida, was that for Mr. Deo?

A.    No.  He had floor planning with -- originally through Josh Aaronson.

Q.    Okay.

A.    And then when that stopped, he had his own through two others.  And that's what I remember.

Q.    And you said that you don't know anything about floor plans other than what Mr. Deo told you, correct?

130

Michael Laurie

A.    That's what I remember.

Q.    What were the circumstances upon which Mr. Deo was sharing with you any information about floor plans?

A.    In relation to having to have availability to operate the business.  He told me what was going on.  When him and Urrutia got started to operate Superb, there was conversations to make sure that there was enough --

Q.    Okay.

A.    -- for the cars to be purchased.  And I remember, you know, like the inspections, they would come and inspect and things like that.

Q.    In other words, you only needed to know information about floor plan lending because that was the tool Superb used to make sure it was capitalized in order to be a going concern in order to get a loan?

A.    No.  Floor planning has nothing to do with getting a loan.  So if you're going on that road, you're going on the wrong road.  Floor planning has absolutely nothing to do with getting a loan from either organization that I dealt with.

Q.    So why would Mr. Deo discuss it with you?

A.    Because I was his business manager.  I was

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

131

Michael Laurie

his friend.  So we would have conversations.

MR. KATAEV:  Let's go off the record.

(Off the record at 11:27 a.m. and resumed on the record at 11:32 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   Okay.  I am referring you to paragraph 13 and 14 of the declaration submitted by Mr. Urrutia. Kindly take a look at those two paragraphs and let me know when you're done reading.

A.   Okay.

Q.   Having read this, do you recall having a meeting with Mr. Deo and Mr. Urrutia on November 3, 2022?

A.   Not the exact date but I did meet with them.

Q.   And did you read this statement that you dominated the conversation and spoke about 80 percent of the time?

A.   Which would never happen.

Q.   Okay.  So you deny that?

A.   100 percent.

Q.   Do you deny that you stated to Mr. Urrutia that you're an advisor, financier, unofficial partner of Mr. Deo?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

132

Michael Laurie

A.   I never said I was a partner of Deo's.

Q.   Even an unofficial partner?

A.   Not an unofficial partner.  I would never use those words.

Q.   Your testimony is Mr. Urrutia lied in this declaration?

A.   No, I am saying that's not correct.  He may have been mistaken.  I'm not going to call somebody a liar.  I will do it to their face because he would never come back here.

Q.   And why do you say he won't come back here?

A.   I am going to leave it at that.

Q.   I would like for you to read 51 through 53.

A.   Who is saying this?

Q.   This is Mr. Urrutia.

A.   To the extent of the losses, that Mr. Deo was -- at Superb.  This is discussing Superb, correct?

Q.   That's correct.

A.   So Mr. Urrutia said he was concerned about the losses?

Q.   At Superb, yes.

A.   At Superb.

Q.   And I want you to stop at 53.

A.   Go ahead.

133

Michael Laurie

Q.    Okay.  When Mr. Deo shared his intentions about securing substantial working capital to leverage his assets, he was doing that with you, correct?

A.    Yes.

Q.    And I just want to refer you to -- I scrolled up a little bit to paragraph 50 to give you a sense and orient you as to the time frame.  This is January of 2023, shortly after the relationship started.  Do you see that?

A.    And I was paid.  Who is I?

Q.    Mr. Urrutia.

A.    Okay.  Not familiar 100 percent with that.

Q.    I am not asking about Mr. Urrutia being paid.  I am asking about the time frame.  Do you recall working with Mr. Deo in or about January of 2023 to get a working capital loan?

A.    I can't give you the exact date.

Q.    Okay.  Do you recall when you closed on the loan of Flushing Bank?

A.    No.  I would have to go look.

Q.    If I represented to you it was sometime between March and May of 2023, would that refresh your recollection?

A.    I mean, I can't give you the date but it

134

Michael Laurie

would make sense.

Q.   Okay.  And my question is do you recall starting working on obtaining a working capital loan in or about January 2023?

A.   I would have to look.

Q.   Okay.  Did Mr. Deo share with you any information about his assets in connection with obtaining a working capital loan?

A.   Getting a loan, working capital has nothing to do with Deo's assets.  It has to do with the business.  It was a business loan, not a personal loan.

Q.   Did Mr. Deo ever have any conversations with you about the fact that he is willing to leverage his assets, including his residence?

A.   He doesn't leverage his assets to get a business loan.  It's not an asset based loan.  It's a cash flow loan.

Q.   In other words --

A.   No.  No.  Not in other words.  Give me the words.

Q.   Mr. Deo would not need to leverage his assets to obtain the loan?

A.   Correct.

135

Michael Laurie

Q.   Are you aware of any other loans that Mr. Deo was trying to obtain by using his assets?

A.   I am not familiar with that.

Q.   Okay.  If Mr. Deo was attempting to obtain a loan using his assets, would that be something that you -- that he would tell you?

A.   Most likely.

Q.   And as part of your work at DLA Capital Partners, you do assist customers to obtain loans that are asset based?

A.   Yes.  But that, what you had on the screen just now, would be almost impossible to say that he owned the house.  He didn't.

Q.   How do you know that?

A.   Because he was renting.

Q.   Are you aware that his testimony has been that he owned the house?

A.   He does own another house.  But he doesn't own that one.

Q.   What house is that?

A.   Dix Hills.

Q.   Four Darius Court?

A.   Sounds familiar, yes.

He could try to leverage that as an asset.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

136

Michael Laurie

Q.   Did you undertake any efforts to start working on a loan to assist Mr. Deo in purchasing the Connecticut dealership?

A.   No.

Q.   Why was that?

A.   Because I don't remember that there was ever a loan to purchase it.  I know we went up there.  We met Urrutia.  We met the girls and the guys behind it. I went up there one time just to see it.

Him and Urrutia were working out some deal for him to run it because it wasn't being run properly, just like Superb.  And Deo had turned it around and was making it profitable.

And Urrutia was pulling money out every month.  So that line that said showing losses, Urrutia was getting his money.

And other losses that he was paying employees with was coming out of his pocket, being Deo.

Q.   In relation to your testimony about Superb being successful and --

A.   It was on its way.  I don't know how successful it was.  I don't know where it was.  But it was doing well.

137

Michael Laurie

Q.    Okay.  But in relation to that testimony --

A.    Yeah.

Q.    -- do you recall whether initially he was having trouble getting off the ground with Mr. Deo involved?

A.    Well, he walked into, excuse my language, a shit show.  When he got there, it was losing, it was bleeding.

Q.    Okay.

A.    And he patched it and got it going in the right direction.

Q.    So given -- do you recall when Mr. Deo started working at Superb?

A.    No.

Q.    If I represent to you it was sometime in late November of 2022, would it make sense that in January of 2023 it was still getting off the ground?

A.    Without point of reference and paperwork, I would not be able to say that.

Q.    Fair enough.

Okay.  Let me show you this.

All right.  I want you to read 95 through 97, please.  98 as well.

A.    All right.  Let me stand here and you ask

138

Michael Laurie

the questions so I can reference, if you don't mind.

Q.   I don't mind as long as the court reporter is good with it.

A.   She can hear me.

Q.   Do you recall having a meeting with Mr. Deo, Novicky and other business executives of Superb?

A.   I did go up there one time, like I said.

Q.   Do you recall mentioning leveraging Mr. Deo's assets, including his house potential equity in a deal to secure funding?

A.   Not specifically, no.

Q.   It says here that Mr. Urrutia later learned Mr. Deo did not own his house, which you must have known.  You did know he didn't own the house, correct?

A.   He did own a house.  So if somebody said did Deo own a house at that time, the answer is yes.  Now, if Urrutia mistook which house it was --

Q.   And then in paragraph 98, it says that you requested a floor plan contract for one of the dealerships.  Do you see that?

A.   I wouldn't have requested a floor plan contract.  I have nothing to do with that.

Q.   So you deny asking for it?

A.   100 percent.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

139

Michael Laurie

Q.   Do you recall whether Mr. Deo asked for it?

A.   I do not recollect.

Q.   Where was this meeting held?

A.   I told you, I have been to the dealership one time.

What's Novicky's first name?

Q.   Bruce.  Does that refresh your memory?

A.   No, not the meeting, but he was the number one guy for Urrutia at Connecticut.

Q.   He was the chief operating officer?

A.   Yeah.  I remember Bruce now.

Q.   What was your understanding as to Mr. Urrutia's -- I'm sorry.  Withdrawn.

What was your understanding as to Mr. Deo's ownership interest in Superb?

A.   Him and Urrutia worked it out.  I don't know the exact details of what was worked out.

Q.   Do you know the numbers that both of them had?

A.   No.

Q.   Do you know if it was 50/50?

A.   I just know that Urrutia told him run the shop.  What they documented specifically, I would have to look at documents.  I don't remember.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

140

Michael Laurie

Q.   Okay.  But as you sit here today, based on your memory, do you recall whether one of them was 100 percent owner or the other one?

A.   So from what I understand of the business, and it's not necessarily Urrutia and Deo, but Urrutia must have still owned the majority to have the floor plan because that's part of the requirement. Otherwise, the floor planning would have to be transferred to the new owner.  But that's just something that I remember, just that I know.

Q.   Okay.  So based on your memory, it could not be the case --

A.   No.  No.  No.  I said normally that's the case.  What they worked out and how they worked it out, I don't know.

Q.   Okay.  But let me ask my question.

A.   Sure.

Q.   Based on your memory, it could not be the case that Mr. Deo was the 100 percent owner of Superb?

A.   Urrutia wouldn't give up 100 percent until he got paid whatever he was agreed to.  So there was no final sale.  Because we know that because Urrutia pulled the cars and had him put out, which means he still had control.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

141

Michael Laurie

Q.   Understood.  And therefore, Mr. Deo could not be the 100 percent owner, correct?

A.   Based on what you're saying, I do not believe he was 100 percent owner of Superb because we wouldn't be sitting here.

Q.   Okay.  And in connection with obtaining the bank account -- withdrawn.

In connection with obtaining the loan from Flushing to Superb, you assisted Mr. Deo to obtain the loan by, among other things, helping him open a bank account, correct?

A.   I did not open a bank account for him.  The bank would open a bank account with Mr. Deo.  I would not assist him because I have nothing to do with that.  That's done by the bank.

Q.   Okay.  Did Mr. Deo reach out to you to help him fill out the paperwork for opening a bank account?

A.   I can't answer that question.

Q.   That's something you do from time to time, isn't it?

A.   I don't fill out paperwork for people.  If people have a question and they say what do I put here or what are they asking me, I may say let's call the bank or let's confirm.  But I don't fill out

142

Michael Laurie

paperwork.

Q.    Do you recall whether Mr. Deo contacted you --

A.    No.

Q.    -- when he was filling out the paperwork?

A.    No, I do not recollect.

Q.    Did you ever have any conversations with Mr. Deo about his ownership interest in Superb?

A.    Not that I recollect specifically, no.  I know that -- what I remember is Urrutia giving him the authority to run Superb and I remember -- you probably have e-mails.

Q.    Did Mr. Deo ever speak to you about Gold Coast Automotive Group?

A.    Yeah, that's one of his companies.

Q.    What can you tell me about the group in general?

A.    It's one of his companies.

Q.    Gold Coast Automotive Group did not include Superb in the group, right?

A.    I don't know that.

Q.    Weren't you supposed to be the chief financial officer of Gold Coast Automotive Group?

A.    He may have put me on there.

143

Michael Laurie

Q.   Do you recall signing, like, a duty of liability document or something like that?

A.   No, I don't remember that.  You have a duty of liability contract for Gold Coast?

Q.   Let's look at Laurie 5 or 6.  I'm going to highlight the portion I would like you to look at because it's a long paragraph.

Here we go.

We'll mark this 4.

(Declaration was marked Plaintiff's Exhibit Laurie 4 for identification.)

MR. KATAEV:  So I placed up on the screen what will be marked 4, ECF document entry 30, and I focused the witness' attention by highlighting on the screen a portion of paragraph 53.

Q.   When you're done reading this, please let me know.

A.   The highlighted?

Q.   The highlighted portion.

A.   Okay.  Go ahead.

Q.   I will represent to you that this is Mr. Deo's declaration.  So this is his sworn testimony.

In here, he refers to you as an outside financial consultant.  Do you see that?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

144

Michael Laurie

A.    Yes.

Q.    Do you agree that is a role that you played?

A.    When I started, yeah.

Q.    And then did your role evolve after you started?

A.    I have always been an outside financial consultant.

Q.    Has your role evolved outside of being an outside financial consultant?

A.    I was never -- how do you call it -- never an employee.  I was never a payroll employee.  I could be called a fractional.  Like I had a friend who is a fractional CFO and he has ten e-mail addresses and he works for ten companies and he represents and helps them with what they need.

Q.    And he refers to you here as someone who helped him obtain legitimate arms-length business loans.  Do you see that?

A.    Yes.

Q.    Okay.  To your knowledge, do you know why he was referring to the loan as legitimate arms-length business loans?

A.    No.  I wasn't with him and I don't know why he used the word.  Probably because he is being

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

145

Michael Laurie

deposed as if he did something wrong.

Q.    And Mr. Deo says here you were merely paid short money for referrals.  Do you see that?

A.    Yes.

Q.    To your knowledge, what does short money mean?

A.    A referral fee on the loans that were paid.

Q.    Okay.  He also writes here you were paid less than $9,000 in total.  You were paid less than $9,000 in total for your referral fees, is that correct?

A.    That's what it says.

Q.    To your knowledge, is that the total amount?

A.    We had this conversation earlier.  I will look back.

Q.    Okay.  I will also include and mark as a request a post deposition interrogatory asking you for every document you can provide showing money paid by Mr. Deo to you or to DLA Capital Partners and to explain what it's for.  That will be an interrogatory answer.  You'll deal with that with your attorney.  Okay?

A.    Yes.

Q.    It also has in parentheses here you sold one

146

Michael Laurie

of your own cars to Superb and received an overage after the loan was paid off.

A.   Yes.

Q.   What car was that?

A.   GLE Mercedes.

MR. KATAEV:  Go off the record.

(Off the record at 11:51 a.m. and resumed on the record at 11:52 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   I will represent to you this is a declaration from Mr. Urrutia at ECF document entry 50-1.

MS. VERBONITZ:  I'm sorry.  Can you say again what you're referring to?

Never mind.  I see it.

Q.   Just paragraph six, please.

A.   This is the testimony of Urrutia?

Q.   Yes.

Just to show you on page one, surreply declaration of Robert Anthony Urrutia.

Going back to paragraph six, when you're done reading that, I have one question.

A.   Sure.

147

Michael Laurie

Q.   The $1 million working capital loan was supposed to be obtained from Flushing, correct?

A.   I can't answer that question.

Q.   Do you recall whether you assisted Mr. Deo to obtain the $500,000 loan from Flushing for Northshore and another $500,000 from Sunrise?

A.   Possible.  I can't answer that question.

Q.   You don't remember?

A.   No.  Not specific dollars, no.

Q.   Do you recall working on any specific loan for exactly $1 million from elsewhere?

A.   No, I do not.

Q.   Is there any other potential lender that you believe was contacted?

A.   There could have been.  I can't answer that question.

Q.   If you were contacting any potential lender in or about 2023, early 2023, who would that be other than National Funding or Libertas or Flushing?

A.   I have a hundred lenders that I use so I can't give you a specific answer.

Q.   Do you know who David Weinstein is of Flushing Bank?

A.   David Weinstein?

148

Michael Laurie

Q.   Yeah, or Dave Weinstein.

A.   Does not ring a bell.  Maybe he's an internal underwriter.  I don't know.

(E-mail was marked Plaintiff's Exhibit Laurie 5 for identification.)

Q.   I am going to show you an e-mail that we'll mark as Deo 5.

I'm sorry.  Laurie 5.

And it has ECF document entry 50-2.

Let me zoom in on it.  It's a one-page document and this is the only e-mail on the page.

A.   Okay.  What am I looking at?

Q.   You are a recipient of this e-mail.

A.   Okay.

Q.   Yes?

A.   Yes.

Q.   Why was it that you were placed on this e-mail, to your knowledge?

A.   They probably just wanted me to see what was going on.

Q.   And do you know when this was in connection with obtaining a loan?

A.   No.  It says that they are opening up an account at Chase.

149

Michael Laurie

Q.   Were you assisting Mr. Deo in opening up a new Chase account?

A.   No.

Q.   Did they ask you to do that?

A.   No, not that I recollect.  I didn't refer them.  There's a Chase on the corner from where they worked.  That's where they went.

MR. KATAEV:  Off the record.

(Off the record at 11:56 a.m. and resumed on the record at 11:58 a.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   This is document entry 112, another declaration for Mr. Urrutia and I would like for you to look at paragraph --

A.   It's not up.

Q.   -- 27 through 34.

A.   It's not up, sir.

Q.   I am just placing it on the record for now.

MS. VERBONITZ:  What number is this going to be, Counsel?

(Declaration was marked Plaintiff's Exhibit Laurie 6 for identification.)

Q.   Starting at 27 and let me know when you stop

150

Michael Laurie

at 34.

MS. VERBONITZ:  Counsel, are you marking this as an exhibit?

MR. KATAEV:  Yes, Deo 6.  Or Laurie 6.

MS. VERBONITZ:  Thank you.

A.    Okay.

Q.    You're done with 30?

A.    Yeah.

Q.    Let's go to 34.

A.    Okay.

Q.    There's one more paragraph, 34.

A.    All right.  Go ahead.

Q.    What is your explanation for the statements being made by Mr. Urrutia concerning the Mercedes?

A.    They're correct only in that the car was sold back to them.  Nobody never spoke to Mercedes. The title was never an issue as far as I know.

Was the car driven after it was returned?  I think for a couple of weeks it may have been used on and off because it was there.  But from what I remember seeing just there, when they -- when he said that the car was not in the possession of Superb or was being used after injunction, that car -- I got a new one maybe a week or two after.  Or maybe I had it

151

Michael Laurie

already.  I am not even sure.  That car was never out of the possession of Superb, and especially when this whole thing started.  It was put into storage, which as far as I know it's still sitting there.  So that entire statement is incorrect except for the fact that I sold the car to Superb.

And I love the fact that he had the audacity to say that.  Because he had no knowledge.  Because the car was sold to his company.  They are the ones who took the car in Connecticut.  They are the ones who did everything, not Superb.

That's why I don't understand some of this.  But that's the reality.  The car is with him.  It's always been with him.

Q.    What car did you obtain after this car was sold?

A.    I had other cars.  I got another GLE.

Q.    It was also a Mercedes Benz GLE?

A.    Yeah.

Q.    Did you lease or finance that into your personal name?

A.    They always are.

Q.    And the car was registered to your name as well?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

152

Michael Laurie

A.   Yes.

Q.   And you stated that as far as you know it's still in storage.  How did you know it went into storage in the first place?

A.   When the whole thing went down, he had to put the cars in storage that he had.

Q.   How do you know that?

A.   Because he told me and I saw it.

Q.   Did you go to the storage facility?

A.   When the cars were moved to Lake Success.  And then when he had them at Hicksville I saw it there.

Q.   Did you drive the vehicles there?

A.   No.

Q.   How were the vehicles transferred?

A.   You have to ask Deo about that.  I had nothing to do with that.

Q.   You were not involved in the transfer?

A.   No.  I know he had to move them.  He was responding to the court order.  And he did it.

Shoot.

Q.   You need to take a break?

A.   Two seconds.

MR. KATAEV:  Off the record.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

153

Michael Laurie

(Off the record at 12:03 p.m. and resumed on the record at 12:05 p.m.)

MR. KATAEV:  We took a break so that the witness could attend to a phone call.  During the break I showed the witness what will be marked as Laurie 7, ECT document entry 112-6 at page six. It's a check and stub.

(Check and stub were marked Plaintiff's Exhibit Laurie 7 for identification.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   Mr. Laurie, do you recognize this document?

A.   Yes.

Q.   What is this document?

A.   It's the overage on the car that they paid me.

Q.   Okay.  This payment was made to DLA Capital Partners, correct?

A.   Okay.  Yes.

Q.   DLA Capital Partners did not own that vehicle, correct?

A.   No, they didn't own it on paper but I am the owner and I probably was writing off the car as usage that year through the business.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

154

Michael Laurie

Q.   Okay.  And you were paid $7,170.71 for the vehicle?

A.   Per the check, yes.

Q.   I will show you what will be marked as Laurie 8.

(Transcript was marked Plaintiff's Exhibit Laurie 8 for identification.)

Q.   I am going to show you a portion of the transcript from the evidentiary hearing on February 20, 2024 available as ECF docket entry 156-1.  You could start from the top of page 132 and let me know when you're ready to scroll down.

A.   Keep going.  Scroll a little bit.

Right there.

All right.  Next page.

Q.   For the record, we moved to page 133.

A.   Continue.

Continue.

Q.   Going to page 134.

We can stop here.

A.   This is reiterating exactly what I just said to you a few minutes ago.

Q.   Okay.  Notwithstanding this, you maintain that you did not have any office at Northshore, right?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

155

Michael Laurie

A.    That's not what that says.

Q.    I am asking.  Based on you reading this, do you recall if you had any office at Northshore?

A.    At Northshore, an office?

Q.    Yes.

A.    I sat in Wendy's office every now and then but it wasn't my office.  I sat in Wendy's office.  I had access to a little computer I would bring and I would be in and out but I didn't have an office.

Q.    That was also for convenience?

A.    100 percent.

Q.    And when you were utilizing the access you had to the office at Northshore, was that for DLA Capital work or helping Mr. Deo out?

A.    Probably it was both.

Q.    Okay.  And you testified here specifically that all the deals were going through Superb at the time.  Do you see that?

A.    No.  That's not what that says.  What that says is that I got involved because it was some deals, those five deals in that e-mail that were not moving.  So that's when I got involved to find out what was going on.  Because afterwards you find out under Urrutia's request Alicia was slowing things down.  And

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

156

Michael Laurie

you probably know more than I do.  I don't know.  But I am just saying that's what that says.  So don't change what it says.

Q.   I'm not.  I am asking you questions.  I am not changing anything.

A.   You're referring to a document on the screen and then saying something else.

Q.   Okay.  My point is it says that was probably correct because the transactions were all Superb at the time.  Do you see that?

A.   As far as I knew.

Q.   Okay.  And when you say they were all Superb at the time, you're referring to deals that originated with Northshore or Sunrise that were being processed through Superb, correct?

A.   No, that's not -- don't put words in my mouth.

Q.   I am asking you.

A.   I said to you, as far as I know, we are in Superb, the deals with Superb.  There were some transactions that weren't moving, waiting for whatever.  I got involved to help move them, just to get documents.

Q.   Okay.

157

Michael Laurie

A.   I don't know what Northshore, Sunrise, Superb.  I can't answer that.  I don't know.

Q.   Okay.  So what did you mean when you said the transactions were all Superb at the time?  I am asking this because --

A.   Because it's referring --

Q.   Let me finish my question.

A.   Sure.  Sorry.

Q.   I am asking this because if the deals are all happening at Superb, you would not need to say they were all happening at Superb.  So I am asking you why are you specifically stating in your testimony they were all Superb at the time?

A.   Because they asked about if it was Northshore.  And as far as I knew, we were Superb.  So that's probably why I would have answered it at that point.  And at that time that that happened, which is a number of years ago now, I had better recollection of what they're asking me.

Q.   Okay.

THE WITNESS:  Off the record for a second?

MR. KATAEV:  Sure.

(Off the record at 12:11 p.m. and resumed on the record at 12:13 p.m.)

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

158

Michael Laurie

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.    In the course of your presence at either Northshore or Superb, had you ever been asked to, as a favor, to make any deposits in any bank account?

A.    Never.

Q.    Have you ever observed any individual working for Mr. Deo being paid in cash?

A.    Never.

Q.    To your knowledge, how is Marc Merckling paid?

A.    I don't know.

Q.    What conversations, if any, did you have with Mr. Deo about Gold Coast Automotive Group?

A.    I don't know any specifics about -- I don't know.  I don't have anything that jumps out at me about Gold Coast.

Q.    Do you have any knowledge as to whether Mr. Deo intended to stop working at Superb and move to Gold Coast Motors?

A.    Move to Gold Coast Motors?  Where was he moving to?

Q.    To reopen the 180 Michael Drive location.

A.    As far as I know, I don't think that was

159

Michael Laurie

ever on the plate.

Q.   Do you remember there was a car event you couldn't make it to because you were away?

A.   But they were still there at the time.  That was outside they did the car event.  But what does that have to do with him shutting down Superb and moving back?

Q.   Are you aware as to whether the operations of 180 Michael Drive was not operating in the usual course because of things that were going on with Mr. Aaronson?

A.   At the time of that car show?

Q.   Preceding the car show, yeah.

A.   I don't think things were normal there.

Q.   Right.

A.   So I don't understand the question.

Q.   Okay.  So since things were not normal before the car event --

A.   Uh-huh.

Q.   -- did you understand that Mr. Deo was working to normalize operations?

A.   I can't answer that question.

Q.   You don't know?

A.   I don't know.  I know he was trying to drive

160

Michael Laurie

more business and he was working out of Superb.  But I know they did it there because they had access to space.  And Superb's parking lot was too small.  Otherwise they would have done it at Superb.

Q.   And how do you know that?

A.   Because we had that conversation.  I remember that.

Q.   Were you present in August of 2023 when Mr. Deo was locked out of Superb?

A.   No.

Q.   You were not physically present?

A.   I wasn't there.

Q.   Did you receive any phone calls?

A.   Yeah.  He called me and told me what happened.

Q.   What did he say?

A.   That he's locked out of Superb.

Q.   Anything more than that?

A.   That he's locked out of Superb and he has to find out what's going on.

The police showed up and showed him a lease and said that the owner wants him out.  So they all cleared out.  That's what I remember.  And that started the cascade of nonsense.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

161

Michael Laurie

Q.   What, if anything, do you know about warranty advances that Mr. Deo obtained?

A.   I don't.

Q.   You were not involved in any of the warranties?

A.   I had nothing to do with warranties.  That was him.  That's all I remember, that there was some guy that he talked to about warranties but I know nothing else.

Q.   Does the name Nathan Newell ring a bell?

A.   Maybe Nathan.  But I didn't know the last name.  Maybe.  I don't know.

Q.   What about Ron Das or Ronnie?

A.   No, I don't know.

Q.   You testified earlier about a shareholders' agreement for Superb.  Do you remember that?

A.   Yes.

Q.   And do you recall anything about a cross purchase agreement?

A.   No.

Q.   You don't recall reviewing it?

A.   No.  He has attorneys for that.  I don't remember anything about a cross purchase.  Cross purchase between who and who?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

162

Michael Laurie

Q.    Between Mr. Urrutia and Mr. Deo.

A.    No, that would be on them.  I don't recollect anything about that.

Q.    Do you recall reviewing a text message exchange between Mr. Deo and Mr. Novicky about Mr. Deo's statement that he has someone at Flushing Bank in his pocket?

A.    No.

Q.    Are you aware of that text message?

A.    No.

Q.    Have you seen it?

A.    No, not that I remember.

Q.    If Mr. Deo said he had someone at Flushing Bank in his pocket, what would you know about that?

A.    That would be boasting and bullshit.  If he said it, that's just said.  Because you can't have a banker in your pocket.  There's no such thing.  This isn't 1932.

Q.    Why is it that you can't have a banker in your pocket?

A.    Because there is too many checks and balances within a banking organization that any one person can move anything along.

Q.    What do you understand the term "in your

163

Michael Laurie

pocket" to mean?

A.   It would be just a very good friend or somebody is working on your behalf.  If I said to you that I had Ari in my pocket, between me and you, it's because I could call her and she will answer the phone.  That's what I would think of it.

Q.   I want to focus your attention and orient you in terms of time frame to November of 2022.  Do you recall an incident in which boxes of files and vehicles were being removed from Northshore?

A.   I remember him telling me but I wasn't present or saw that.

Q.   Okay.

A.   I am trying to remember who removed it.

Q.   Do you recall that after that incident Northshore was not operating normally anymore?

A.   I would assume so but I don't remember specifically.

Q.   Okay.  To your knowledge, did operations at Northshore ever normalize again after that incident?

A.   I don't think they did.

Q.   But as far as you know, Mr. Deo was working to do that?

A.   I would assume, and I hate that word, but

164

Michael Laurie

that he was trying.  He didn't want to just shut it down.

Q.   Are you familiar with who Justice Sharon M.J. Gianelli is?

A.   No.  Is that the one we saw first -- when I went for the first time in -- I think I went to two, maybe three of them, over the years.

Q.   If it helps you remember, this case was pending before the Nassau County Supreme Court.

A.   We went to Nassau County.

Q.   You physically went to Nassau County, correct?

A.   I think I did.

Q.   To the Nassau County Supreme Court?

A.   Yes.

Q.   And there was a female justice that was presiding over the case.

A.   Yes.  She is the one that sat there.  Yeah, I remember now.

Q.   So you went to court?

A.   I was sitting in the bullpen.

Q.   Now, you were not named a party in that lawsuit?

A.   No, definitely not.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

165

Michael Laurie

Q.   So you were there for moral support for Mr. Deo?

A.   Yeah, just to see what's going on.  And she sat there and said she learned some things about something that was very interesting.  I remember that.

Q.   Okay.

A.   Which was beneficial to Deo.

Q.   Now, to your knowledge, what was the purpose of obtaining the loan for $100,000 from Mr. Hakim?

A.   Because at the time he was short funds and he was working towards expanding the business, to pay his employees.

Q.   Was he having trouble paying his employees at the time?

A.   Because the business was not strong enough at the time.

Q.   Are you aware that Mr. Hakim sued Mr. Deo?

A.   No, I did not know that part.

Q.   Do you have any knowledge as to whether Mr. Deo ever made any effort to pay Mr. Hakim back?

A.   I think he got shut down.

Q.   So --

A.   The answer would be no, he didn't make any payments because he got shut down, as far as I

166

Michael Laurie

consider, illegally.  But that's not me.  I'm not the judge or the jury or the executioner.

Q.   Do you recall that sometime after Mr. Hakim provided money to Mr. Deo that some of those funds were used or all of those funds were used for the transaction with Superb, Mr. Urrutia?

A.   I don't remember.

Q.   Do you have any knowledge about a check bouncing?

A.   No.

Q.   Do you recall having any conversations directly with Mr. Urrutia about the check bouncing?

A.   No.

Q.   We were discussing earlier the criminal complaint that Mr. Deo made in order to obtain the $735,000 back.  Do you recall that?

A.   The criminal complaint?  Oh, oh, yes.  Yes.

Q.   To your knowledge, what was the result of that criminal complaint?

A.   The money was returned.

Q.   And you had an interest in seeing to it that the money got returned, correct?

A.   I did not have an interest.  I wanted to make sure -- I didn't personally have an interest.  I

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

167

Michael Laurie

wanted to see him get his money back.

Q.    Isn't it true upon receipt of the $735,000 back you were paid a portion of your fee or your fee in total?

A.    I couldn't answer that question without looking.

Q.    Do you recall any conversation that you had in any meeting, virtual or in person or by phone, with Mr. Urrutia and Mr. Deo where Mr. Urrutia told Mr. Deo he wants Mr. Deo's focus to be only on Superb, not on Northshore or Sunrise?

A.    No, I do not have any recollection.

Q.    One way or the other, correct?

A.    Neither.

Q.    Did you assist Mr. Deo in any way to obtain a license from the DMV to operate a dealership?

A.    No.

Q.    To your knowledge, following the incident in November of 2022 with the files and the vehicles being removed by Island Auto Group, subsequent to which Mr. Deo couldn't operate anymore, do you know whether there was any activity, commercial activity selling vehicles or repairing vehicles at Sunrise?

A.    I don't know and I don't think so.  I don't

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

168

Michael Laurie

know.

Q.   To your knowledge, what was the purpose of the July 2023 event with the cars?

A.   To drum up business for the dealerships. It's marketing.

Q.   Were you involved in the idea for that?

A.   No.

(Text message was marked Plaintiff's Exhibit Laurie 9 for identification.)

Q.   I think this is Laurie 9.  This is a screenshot of the text message that we discussed earlier today.  I would like for you to read it.  I will represent to you this is a text message between Mr. Deo and Mr. Novicky.

A.   Okay.

Go ahead.

Go ahead.

Okay.

Okay.

Q.   That's it.

A.   All right.  So that's Deo and Novicky.

MR. THOMASSON:  This is Laurie number 9 or 8?

MR. KATAEV:  9.  The court reporter

169

Michael Laurie

confirmed it's correct.

Q.    Do you recall being involved in this process of helping make the deal with Flushing Bank?

MS. RONNEBURGER:  Objection to form.

You can answer.

A.    I made the referral.

Q.    Okay.

A.    But I wasn't dealing with the people in Connecticut.

Q.    Okay.  I want to focus your attention on the last section.  There is a reference to Dave and Rob, right?

A.    So he is getting Dave to forward information to Rob Puccio.

Q.    You know Rob Puccio?

A.    Yeah.

Q.    I will represent to you that Dave is Dave Weinstein from Flushing Bank.

A.    So maybe he is an underwriter.

Q.    I will represent to you he is not an underwriter.

A.    Okay.

Q.    My question is did you have any conversations with Mr. Puccio about Dave Weinstein

170

Michael Laurie

forwarding information?

A.   Not that I know of, no.  I don't have any recollection of Puccio.  I mean I don't even know who Dave Weinstein is.

Q.   Okay.  To your knowledge, what does Mr. Deo mean here when he says, "this guy and the credit underwriter are in my pocket"?

MS. RONNEBURGER:  Objection.  You just asked him that.

THE WITNESS:  Yeah.  Thank you.

MS. RONNEBURGER:  That's all right.  You can answer again.

A.   No, I answered the question.  And I said to you I don't know what he's saying by saying he's in my pocket.  It could be that we are ready to go.

Q.   Okay.  When he is referring to "this guy," do you know whether that's Mr. Puccio?

A.   No, I do not.

Q.   And when he is referring to "the credit underwriter," do you know the identity?

A.   I don't know the credit underwriter.

Q.   Okay.

A.   As I said, I do not deal with credit underwriters directly.

171

Michael Laurie

Q.   We spoke earlier about an individual named Nathan Newell.

A.   I am listening.

Q.   Do you recall whether there was a Nathan Newell that worked at NESNA?

A.   Where?

Q.   NESNA, N-E-S-N-A.

A.   N-E-S-N-A?  Never heard of it.

Q.   Do you have any knowledge about operations at Northshore and Superb when it came to making bank deposits?

A.   No.

Q.   Do you have any knowledge as to whether, in terms of operations of Superb, deposits were no longer being made at Chase and all deposits going forward were being made in Flushing?

A.   No.

Q.   I am just showing you this.  I am not marking it.  I will represent to you that is the application for Superb Motors to have a bank account at Flushing.  Do you see that?

A.   Yes, I do.

Q.   Do you recognize this document?

A.   It's their app.

172

Michael Laurie

Q.   Okay.

A.   The internal app that they would do.

Q.   And your testimony is you did not have any role in filling out this document?

A.   No, sir.

Q.   Were you with Mr. Deo when he filled it out?

A.   I don't know.

Q.   To your knowledge, did Rob Puccio know that Tony and -- withdrawn.

To your knowledge, did Mr. Puccio know that Mr. Deo and Mr. Urrutia were partners in Superb?

A.   I don't know.

Q.   Did you ever tell Mr. Puccio that Mr. Urrutia was a partner in Superb?

A.   I don't know.

Q.   Generally speaking, when you are assisting a customer to obtain a loan from any entity, do you share information about the ownership in the company?

A.   Do I share it?  I wouldn't know it.  It's in the documents.

Q.   So generally speaking, when you are helping a customer obtain a loan from a bank or any other entity, you obtain documents of that ownership and forward it?

173

Michael Laurie

A.   Yes.  That would be in the tax returns.

(Gold Coast newsletter was marked Plaintiff's Exhibit Laurie 10 for identification.)

Q.   I am showing you Laurie 10, ECF document entry 38-12, an 11 page document.  I will scroll through and let you read every page and then I'll ask you some questions.

Scrolling to page two.

A.   Go ahead.

Q.   Page three.

A.   Go ahead.

Q.   Page four.

A.   Go ahead.

Q.   Page five.

A.   Go ahead.

Q.   Six.

A.   Yes.

Q.   Seven.

A.   Yes.

Q.   Eight.

A.   Yes.

Q.   Nine.

A.   Yes.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

174

Michael Laurie

Q.   Ten.

A.   Yes.

Q.   Eleven.

A.   Okay.

Q.   Do you recognize this document?

A.   I really don't.

Q.   Do you recall having discussions in June of 2023 about this document?

A.   I do not.

Q.   Was there any meeting at which you and others attended?

A.   I do not remember this.  This was during my very bad memory period.  I don't remember that.

Q.   Referring to page three, you're listed as the chief financial officer, correct?

A.   Yeah.

Q.   Do you recall having discussions with Mr. Deo about serving as a CFO of Gold Coast?

A.   If we were going forward.  I remember him talking about that, that if we got off the ground that I would become the CFO.  And basically, my duties would be to do what I was doing anyway; help him with financial decisions based on the company.  Because all the accounting is done by a bookkeeper and a C.P.A.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

175

Michael Laurie

Q.   Now, you were going to stop work at DLA --

A.   No.

Q.   -- and do this?

A.   No.

Q.   Was there any discussion about compensation for your role as CFO?

A.   No.  No.  He was trying to build something.

Q.   Page nine, I believe it was, ten, referring your attention to page ten of this document, this is a document signed by you, correct?

A.   Yes.

Q.   Do you recall signing this document?

A.   I do not.

Q.   Do you remember who gave you this document to sign?

A.   I do not.

Q.   Did you have any discussions with Mr. Thomasson about this document?

A.   In what year?

Q.   In 2023.

A.   Not that I know of.

Q.   Do you know who drafted this document?

A.   No.  It's a newsletter.

Q.   Well, it's also an agreement, right?

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

176

Michael Laurie

A.  Yeah, for me to uphold -- if you read it, for me to uphold those three items that they have there.  That's what that says.  Which are very simple to do if I had to.

Q.  Is it fair to say that the plan, based on reading this, was to not work Superb anymore and move to Gold Coast?

A.  No.  You're making an assumption that I cannot tell you because I don't know.

Q.  I am not making assumptions.  I am asking you for your knowledge.

A.  When was this issued?  What date was that?

Q.  June of '23.

A.  And when was Superb started?

Q.  Superb was started many years prior.

A.  No. No.  When did they actually come into Superb?

Q.  November of '22.

A.  So why are you making an assumption that he was leaving Superb?  You just said it.  Don't look at me like that.

Q.  I am not making an assumption.  I'm asking you for your knowledge.

A.  And I said I have none and you continued.

177

Michael Laurie

Q.    I am entitled to ask more questions.

A.    And I am entitled to say what I want to.

Q.    You have no involvement in foreign vehicles, correct?

A.    Correct.

Q.    Did you assist Mr. Deo with cash management in terms of customers paying cash?

A.    Definitely not.

Q.    Are you aware of any efforts by Mr. Deo or Mr. Merckling to sell vehicles wholesale at Superb?

A.    In what manner?

Q.    Do you know what a wholesale deal is?

A.    Yeah, I know what it is, but --

Q.    Are you aware of any efforts to sell vehicles wholesale at Superb?

A.    No.

Q.    Do you know who was responsible for selling vehicles wholesale at Superb?

A.    No.

Q.    I'm not asking you --

A.    Sorry.  It just keeps my blood flowing.

Q.    If you want to get up, that's fine with me. But I wanted you to know that you don't need to read.

Did you have access to view the bank

178

Michael Laurie

accounts of Superb for Flushing or Chase?

A.    No.

(Bank statements were marked Plaintiff's Exhibit Laurie 11 for identification.)

Q.    This will be Laurie 11.  I'll represent to you this is a collection of bank statements for Car Buyers NYC, Inc.

A.    Uh-huh.

Q.    I will focus your attention to certain transactions listed in these statements.

Referring on page three of this 116 page document, there is a wire dated November 22, 2022 for $15,000.  Do you see that?

A.    Yes, I do.

Q.    Do you have any recollection as to what this $15,000 payment is?

A.    I would have to go back and look.  I do not.

Q.    I will represent to you around this time Mr. Deo had received $735,000.  Do you recall if this $15,000 payment had anything to do with that?

A.    I do not recollect.

Q.    Do you recall what the percentage of your fee was for the Libertas loan?

A.    You asked me earlier.  I do not.

179

Michael Laurie

Q.   And you also testified that you received some sort of payment directly from National Funding or Libertas, correct?

A.   Correct.

Q.   Is that a normal course of dealing for you to be paid on both ends?

A.   Sometimes.

Q.   Do you know in reference to the final two transactions dated November 28, 2022 on this page what the entity Jun Wang & Associates is?

A.   No idea.

Q.   If I represented to you that this was the landlord or is the landlord of 3 Hunting Lane in Old Westbury, New York, would that refresh your recollection?

A.   I've never seen this but that makes sense. He probably put the down payment.  That looks like, from memory, it probably looks like the down payment and two months of rent.

Q.   Do you recall whether the down payment and two months of rent was made before he entered the house?

A.   I don't know.

Q.   How do you know about the down payment and

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

180

Michael Laurie

two months of rent?

A.   Because that's the number I remember.

Q.   Did Mr. Deo share that information with you as a friend or was it in relation to your duties?

A.   No, I would have known about that after the fact when he was looking to get a mortgage.

Q.   Okay.

A.   Because I think he lived there for a while before he went to get a mortgage.

Q.   Do you know what Jackpocket is?

A.   Who?

Q.   Jackpocket.

A.   No.

Q.   To your knowledge, why was it that Mr. Deo paid you $15,000 from Car Buyers?

A.   I don't know.

You're being repetitive.

Q.   No, first time I am asking you this question.

A.   Not true.  You just asked me if I knew what the $15,000 was.

Q.   My question is why were you paid by Car Buyers?

A.   I don't know.  It's not up to me to tell

181

Michael Laurie

someone where to send me money from.  Many people -- I have multiple accounts.  Everybody has multiple accounts for different things, for different reasons.

And I'm just crashing and burning over here because I didn't eat enough and I am still feeling sick.  Trying to get through.

MR. KATAEV:  Off the record for a second.

(Off the record at 12:39 p.m. and resumed on the record at 12:44 p.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   Mr. Laurie, do you have any knowledge about Merck 27, Inc., M-E-R-C-K 27, Inc.?

A.   Nope.

Q.   What about DEEG LLC?

A.   No.

Q.   If I told you those were entities opened up by Marc Merckling and Dwight Blankenship respectively, would you have any knowledge about that?

A.   No.

Q.   Did you ever assist either of Mr. Merckling and/or Mr. Blankenship with any loans?

A.   No.

Q.   Were you aware that Mr. Merckling had his

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

182

Michael Laurie

own entity?

A.    No.

Q.    Were you aware that Mr. Blankenship had his own entity?

A.    No.

MR. KATAEV:  Go back off.

(Off the record at 12:45 p.m. and resumed on the record at 12:50 p.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.    Referring to page 103 of the same exhibit, there are a couple of transactions here at the top of the page, being wires coming in from you personally. Do you see that?

A.    Uh-huh.

Q.    I need a verbal answer.

A.    Yes.

Q.    And on November 1st, 2023, you paid Car Buyers NYC, Inc. $26,000, correct?

A.    Yes, that's what it says.

Q.    And November 20, 2023, you paid Car Buyers LLC $5,300, correct?

A.    Yes, it is.

Q.    What were these transactions for?

183

Michael Laurie

A.    I have to go back and look.

Q.    You don't know?

A.    Off the top of my head, I have to go look. I have to go back and see if it was business, if I was helping him, because he was in a deep spot.  So I have to go look.

Q.    You acknowledge this is money that Car Buyers paid you?

A.    Car Buyers paid me?  These are wires in. They didn't send me anything.

Q.    So this is --

A.    Incoming.

Q.    This document reflects that you sent this money?

A.    Yeah.  That's what it says.  Not out.  It's in.

Q.    To your knowledge, was this a loan?

A.    I couldn't tell you what it is right now. There is a lot going on at that time.

Q.    Do you have any written agreements with --

A.    No.

Q.    -- Mr. Deo regarding this?

A.    No.

Q.    We'll submit a post deposition interrogatory

184

Michael Laurie

asking you to explain what these transactions were for.

A.    Sure.

Q.    And we'll follow up in writing.

A.    No problem.

Q.    I think I am done with this exhibit.

Other than the businesses DLA Capital and I think it was BGG?

A.    BAG.

Q.    Do you own any other businesses?

A.    No.

Q.    What about Caribbean Medium?

A.    Who?

Q.    Caribbean Medium.

A.    No.

Q.    You don't own Caribbean Medium?

A.    No.

Q.    Looking back at page 111 of the same exhibit, there are two transactions -- December 1, 2023 for 11,500 and December 27, 2023 for $2,225.  Do you see that?

A.    Money coming in.  Same thing.

Q.    Do you know if these were loans that you issued?

185

Michael Laurie

A.   Now you're being derogatory.  You just asked me if I knew of anything coming in and I said to you I did not, that we would push it and I would answer you.  Right?

Q.   I understand --

A.   Why are you asking me about the same thing?

Q.   Because these are new transactions that may refresh your recollection.

A.   Did you hear what you just asked me?

Q.   Yes.

A.   You're being -- now you're being ignorant.

Q.   Can you please focus on answering the question?

A.   I did answer the question for you.

Q.   And your testimony is you don't remember?

A.   Correct.  And you said to me we'll do a post so I can look it up.  Right?  You know I am not feeling well so now you're going to antagonize me?

Q.   I am not trying to antagonize --

A.   We are done.  I'm not going by exactly 1:00.  I feel sick.  I gave you three plus hours.  We agreed.  I'm done.  And I am not -- I am sorry to say that.  And you can understand.

Q.   Can I ask two more questions?

186

Michael Laurie

A.   Go ahead.

Q.   Did you ever get a check for $6,000 from Superb?

A.   I do not know.

Q.   Give me one second just to speak to my client and I think I'm done for the day.

COURT REPORTER:  Before we go off the record, who is ordering the transcript?

MR. KATAEV:  Jeff and I will split.

MS. RONNEBURGER:  I am ordering one.

COURT REPORTER:  Ms. Verbonitz, are you ordering?

MS. VERBONITZ:  Not at this time but you know what?  I'll send an e-mail at your e-mail address if we decide to order.

(Off the record at 12:55 p.m. and resumed on the record at 12:56 p.m.)

CONTINUED EXAMINATION

BY MR. KATAEV:

Q.   Last two or three questions.

A.   You said that already.  I am done.

Q.   Last two or three questions.

A.   No.  No.  No.  Listen.  I am been very, very, very --

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

187

Michael Laurie

Q.    I'm putting everything away.

A.    You said two questions.  I feel sick.  You want me to throw up on your desk?  I am not playing with you here.  She's fine.  I'm fine.  I will be back.  I promise.

Q.    Let me ask this question.

A.    No.  No.  No.  We're done.  You said two more questions.  I gave you two questions.  You walked out, you said to talk to your client, and we are done.

Q.    But the purpose of that was to find out if I have more questions.  Let me finish.

A.    You said to me two questions.  So we're done.

Q.    Let me ask these two questions and we're done.  Okay?

A.    It's not going to be nice next time.  Go.

Q.    In connection with the $500,000 loan that you helped Mr. Deo obtain from Flushing --

A.    I referred him to.  Back to -- go ahead.

Q.    -- did you receive any commission from Mr. Deo for that or --

A.    You asked this question earlier.  And I said to you I have to go back and look.  I don't remember.

Q.    Do you remember, do you recall receiving

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

188

Michael Laurie

$50,000 in connection --

A.    You asked this question earlier and I said I don't remember.  You remember the ten percent that you asked me about?

Q.    Yes.

A.    And I answered you very clearly and very succinctly and you accepted it.  Why are you asking again?

Q.    What would be the reason you get $50,000?

A.    Are you really going down this road again? I answered that question earlier.

Q.    Last question.

A.    Last.  Go ahead.

Q.    What would be the reason why Mr. Deo would pay you $50,000?

A.    I have answered the question earlier and I said to you I do not know why the 50,000 was given to me, if it was part of a commission, if it was part of -- I can't answer that question right now.  I said that earlier.  You were doing so well.

Q.    Subject to my remaining seven hours out of the testimonial time, I am done for today.  We will meet and confer with Mr. Benjamin to bring you back for the last day.

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

189

Michael Laurie

A.    Yes, sir.

Q.    Thank you.  Feel better.

A.    Help your child is well.

Q.    Thank you.  Appreciate that.

(Whereupon, at 12:58 p.m. the examination of this witness was concluded.)

Case 2:23-cv-06188-JMW    Document 447-1    Filed 03/26/26    Page 121 of 144 PageID #: 11988

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

190

A C K N O W L E D G E M E N T


STATE OF NEW YORK     )

                                    : ss

COUNTY OF             )


I, MICHAEL LAURIE, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of February 27, 2026; that the transcript is a true, complete and correct record of my testimony, and the answers on the record as given by me are true and correct.




                              _____

                              MICHAEL LAURIE




Signed and sworn to before
me this _____ day of _____,
20__.

_____
Notary Public, State of _____

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

191

I N D E X

WITNESS:  MICHAEL LAURIE

EXAMINATION BY                                    PAGE

Mr. Kataev                                          77


                        EXHIBITS

PLAINTIFF'S                                        PAGE

Laurie 1     Summons & Complaint                    89

Laurie 2     Website                               109

Laurie 3     E-mail                                110

Laurie 4     Deo's declaration                     143

Laurie 5     E-mail                                148

Laurie 6     Urrutia's declaration                149

Laurie 7     Check                                 153

Laurie 8     Transcript                            154

Laurie 9     Text message                          168

Laurie 10    Newsletter                            173

Laurie 11    Bank statements                       178


                  TO   BE   PRODUCED

                                        PAGE     LINE

Written agreement with Mr. Deo for        81       14
Deal with Mr. Hakim

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

192

I N D E X   (Continued)

TO BE PRODUCED

|                                                           | PAGE | LINE |
|-----------------------------------------------------------|------|------|
| Any documents regarding you assisting Mr. Deo with Flushing Bank loan | 82   | 24   |
| Documents regarding loan between Joseph Savasta and CCG   | 92   | 5    |
| All payment records between you and Mr. Deo or his entities | 115  | 2    |
| Any communications regarding Mr. Urrutia giving Mr. Deo permission to run the business | 128  | 20   |
| Documents showing money paid to you or DLA Capital Partners by Mr. Deo | 145  | 17   |
| Explain November 1, 2023 and November 20, 2023 transactions with Car Buyers | 183  | 25   |

193

C E R T I F I C A T E

State of New York )

County of Nassau  )


I, DONNA SADOWSKI, a Stenotype Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness whose deposition is herein before set forth was duly sworn by me, and that such examination is a true record of the testimony given by such witness to the best of my ability.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 4th day of March, 2026.


_Donna M. Sadowski_
_____
Donna M. Sadowski

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

194

**A**

**a.m** 72:6 77:6,7 109:2 109:3 110:17,18 111:4 116:14,15 122:24,25 131:4,5 146:8,9 149:10,11
**Aaronson** 71:6 73:9 103:2,5 104:7 105:10 115:13 129:19 159:12
**ability** 193:15
**able** 105:7,16 118:11 137:20
**above-entitled** 72:12
**absolutely** 130:22
**accept** 127:9
**accepted** 188:8
**access** 155:9,13 160:3 177:25
**account** 103:10 115:22,23,24 119:2 119:3,8 121:9,12,14 141:8,12,13,14,18 148:25 149:3 158:6 171:21
**accountant** 125:15
**accounting** 174:25
**accounts** 122:19 178:2 181:3,4
**accurate** 125:8,9,12
**acknowledge** 183:8
**action** 71:12 72:12 89:23 111:20 193:17
**active** 79:6
**activity** 167:23,23
**address** 112:15,22 186:16
**addresses** 144:14
**administer** 74:11
**Adoni** 79:15,16,16,17 83:23 84:14,14
**advances** 161:3
**advice** 124:19
**advisor** 131:24

**afford** 113:17
**against-** 71:13
**agents** 93:23
**ago** 80:23 82:23 87:11,22 95:5 99:16 114:22 117:7,12,19 123:24 154:23 157:19
**agree** 144:3
**agreed** 74:5,15 75:23 119:18 140:22 185:22
**agreement** 76:14 81:11,15,17,20 82:19,21 83:3,24 84:7,9,11 91:19,25 101:10 107:11 127:3,13,13,25 128:9,25 129:7 161:17,20 175:25 191:24
**agreements** 75:17 84:4 127:16 183:21
**ahead** 91:9 132:25 143:21 150:13 168:17,18 173:11 173:13,15,17 186:2 187:20 188:14
**Albert** 78:2,3,7
**Alicia** 155:25
**Alivia** 73:25
**allegation** 87:23
**allegations** 90:13
**alleged** 79:17 93:22
**alleges** 91:17
**allowed** 128:10
**allows** 126:18
**Alternative** 87:7
**America** 121:23,25 122:4,13
**amount** 145:14
**and/or** 75:17 181:23
**answer** 79:25 85:4 92:13 96:13 127:22 138:17 141:19

145:22 147:4,8,16 147:22 157:3 159:23 163:6 165:24 167:6 169:6 170:13 182:17 185:4,15 188:20
**answered** 78:15 79:3 124:6 157:17 170:14 188:7,12,17
**answering** 185:13
**answers** 190:12
**antagonize** 185:19,20
**Anthony** 71:5,14 73:4,24 103:14 146:22
**anymore** 113:17 163:17 167:22 176:7
**anyway** 174:23
**app** 171:25 172:3
**appealed** 102:5,7
**appealing** 102:8
**appear** 101:24
**application** 171:21
**Appreciate** 189:5
**approval** 126:16
**approved** 115:21 128:7
**approvers** 118:17
**April** 108:12
**Ari** 163:5
**ARIEL** 73:18
**arising** 87:24
**arms-length** 144:18 144:22
**Aronbayev** 73:24
**ASAD** 71:6
**asked** 79:23 82:25 97:5 110:4 121:9 128:15 139:2 157:15 158:5 170:9 178:25 180:21 185:2,10 187:23 188:3,5
**asking** 105:19 124:4

124:5,13,13 125:10 125:21,24 126:12 128:24 133:14,15 138:24 141:24 145:18 155:3 156:5 156:19 157:6,10,12 157:20 176:11,23 177:21 180:19 184:2 185:7 188:8
**ass** 88:6
**assess** 124:11
**asset** 134:18 135:11 135:25
**assets** 133:4 134:8,11 134:16,17,24 135:3 135:6 138:10
**assist** 116:11 118:23 118:24 121:17 135:10 136:3 141:15 167:16 177:7 181:22
**assistance** 81:10 100:16 126:25
**assisted** 81:5 105:25 141:10 147:5
**assisting** 112:18 124:7,25 149:2 172:17 192:5
**Associates** 179:11
**assume** 163:18,25
**assumption** 176:9,20 176:23
**assumptions** 176:11
**attempting** 135:5
**attend** 75:20 153:5
**attended** 174:12
**attention** 143:15 163:8 169:11 175:10 178:10
**attorney** 78:15 83:5 93:5 95:4,6 97:4 102:7,8 127:19 145:22
**attorneys** 73:4,8,17 73:20 74:6 90:14

Case 2:23-cv-06188-JMW   Document 447-1   Filed 03/26/26   Page 126 of 144 PageID #: 11993

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

195

92:21 161:23
**audacity** 151:8
**August** 160:9
**authority** 128:19 142:12
**authorized** 74:11
**auto** 71:4,5,7,8,8,8,9 71:9,10,10,20 73:4 73:8,9,9,9,10,10,10 73:11,11 95:11,13 95:23,25,25 96:3 97:10,18 167:21
**automatic** 119:9
**Automotive** 71:16 142:15,20,24 158:15
**availability** 130:6
**available** 154:11
**Avenue** 73:5,11
**aware** 87:23 93:14,22 94:23 101:22 102:3 116:2 128:8 135:2 135:17 159:9 162:10 165:18 177:10,15 181:25 182:4

**B**

**back** 77:20 78:12 82:8,23 85:11 86:15 87:16 88:25 89:6 93:8 100:18 101:4 101:19,20,21 106:25 108:25 110:7,8 113:15 115:9 129:4 132:11 132:12 145:16 146:23 150:17 159:8 165:21 166:17 167:2,4 178:18 182:7 183:2 183:5 184:19 187:6 187:20,24 188:24
**bad** 122:11 174:14
**BAG** 90:19,24 91:12

91:15,17,19,23 184:10
**balances** 162:23
**bank** 71:19,20 73:17 75:18 76:8,18 82:3 83:3 103:22 114:9 116:22 117:6,9 118:12,17,20,25 119:2,3 120:3,9,14 121:2,2,6,12,14,18 121:23,25 122:4,13 122:15 124:12,17 127:9 133:20 141:8 141:11,13,14,14,16 141:18,25 147:24 158:6 162:7,15 169:4,19 171:11,21 172:23 177:25 178:4,7 191:20 192:6
**Bank's** 75:16
**banker** 116:24,25 117:5 162:18,20
**banking** 120:4 121:18 162:23
**banks** 120:6
**Baron** 71:6,6,7 73:9 113:19
**based** 85:15 101:24 134:18 135:11 140:2,12,19 141:4 155:3 174:24 176:6
**basically** 174:22
**basis** 103:13
**behalf** 163:4
**believe** 76:12 81:25 88:5 99:6 102:16 114:12,14 141:5 147:15 175:9
**bell** 148:3 161:11
**beneficial** 165:8
**benefit** 85:24
**Benjamin** 81:18 102:11 188:24
**Benz** 151:19

**best** 193:14
**better** 87:7 157:19 189:3
**BGG** 184:9
**big** 99:21
**bit** 88:5 133:7 154:14
**blame** 83:17
**blank** 77:12
**Blankenship** 71:14 181:19,23 182:4
**bleeding** 137:9
**block** 79:13
**blood** 177:22 193:17
**Blvd** 71:7,8,8,8,9,9 73:9,9,9,10,10,10
**boasting** 162:16
**body** 95:25
**bookkeeper** 174:25
**borrowed** 80:11
**bottom** 110:24
**Boulevard** 72:3 73:17 99:8,22 113:6
**bouncing** 166:10,13
**Box** 73:15
**boxes** 163:10
**brand** 80:8
**breach** 83:19 89:24 90:2
**break** 108:23 152:23 153:4,6
**Brian** 71:6 73:8
**bring** 155:9 188:24
**broker** 81:8,21 84:8 86:24 104:19 117:5
**brokerage** 81:15 82:6 82:11 87:18,19
**brokering** 82:3
**brokers** 86:20,22
**brought** 78:7,13 83:15
**Bruce** 139:8,12
**BS** 102:23
**build** 175:8
**building** 100:10 107:19,24

**bullpen** 164:22
**bullshit** 162:16
**burning** 181:5
**business** 75:20 77:19 104:10 105:11,14 105:15 106:15,16 112:2 118:4 121:11 128:14,19 130:7,25 134:12,12,18 138:7 140:5 144:18,23 153:25 160:2 165:12,16 168:5 183:5 192:11
**businesses** 184:8,11
**Buyers** 71:15 178:8 180:16,24 182:20 182:22 183:9,10 192:14
**bystander** 78:18

**C**

**C** 73:2 190:2 193:2,2
**C-A-R-U-A-N-A** 120:13
**C.P.A** 124:20,22 174:25
**call** 115:2 128:20 132:9 141:24 144:11 153:5 163:6
**called** 115:13,23,25 116:2 120:14 144:13 160:15
**calls** 160:14
**cannabis** 87:21
**capital** 71:18 84:12 87:3 98:23,24 107:25 108:4,9,12 108:16,18 110:9 113:25 114:5,6 129:10 133:3,17 134:4,9,10 135:9 145:20 147:2 153:18,21 155:15 184:8 192:12
**capitalized** 130:17

Case 2:23-cv-06188-JMW    Document 447-1    Filed 03/26/26    Page 127 of 144 PageID #: 11994

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

196

**car** 71:15 79:18 80:23 112:24 146:5 150:16,19,23,24 151:2,7,10,11,14,16 151:16,24 153:16 153:24 159:3,6,13 159:14,19 178:7 180:16,23 182:19 182:22 183:8,10 192:14

**care** 77:22 85:21 88:16 91:22 96:25 111:23

**Caribbean** 184:13,15 184:17

**Carle** 99:20

**carried** 113:16

**cars** 71:15,16 79:23 79:24 80:3,6,7 96:12 111:23 130:12 140:24 146:2 151:18 152:7 152:11 168:4

**Caruana** 120:10,17

**Caruana's** 120:12

**cascade** 160:25

**case** 78:20,22 79:5 82:22 83:13 84:15 101:23 102:4 117:23 140:13,15 140:20 164:9,18

**cash** 114:18,20,21,22 134:19 158:9 177:7 177:8

**causes** 89:23

**CCG** 91:23,24 192:7

**cease** 99:15

**center** 121:11

**certain** 79:13 103:8 178:10

**certification** 74:8

**certify** 190:8 193:10 193:16

**CFO** 144:14 174:19 174:22 175:7

**Chabrier** 71:6 73:8

**chain** 111:3

**change** 156:4

**changed** 80:24

**changing** 156:6

**channels** 103:16

**charge** 82:7,10,13,14

**charged** 82:14 83:9

**Chase** 71:20 122:13 148:25 149:3,7 171:16 178:2

**check** 114:24 153:8,9 154:4 166:9,13 186:3 191:16

**checks** 162:22

**Cherrywood** 95:11 95:13,23 96:3

**Chestnut** 73:21

**chief** 139:11 142:23 174:16

**child** 189:4

**circumstances** 94:8 99:17 101:2,12 130:3

**Citibank** 122:16,18

**Civil** 71:12

**Claire** 85:9 86:18

**clarify** 100:22

**cleared** 160:24

**clearly** 188:7

**client** 79:22 85:19,20 86:19,25,25,25 119:14 124:21 186:7 187:10

**clients** 84:9 86:23 121:12

**close** 98:22 104:12 107:15 119:22

**closed** 133:19

**closes** 119:21

**co-op** 100:11

**Coast** 71:15,16,16,17 71:17,17 142:15,20 142:24 143:5 158:15,18,21,22

173:3 174:19 176:8

**cockamamie** 78:13

**collect** 92:20 105:4

**collection** 178:7

**come** 77:21 95:17 105:6 108:25 124:8 125:7,23 126:5,7 127:2 130:14 132:11,12 176:17

**coming** 96:15 103:7 129:4 136:19 182:14 184:23 185:3

**commercial** 167:23

**commission** 81:25 187:21 188:19

**commit** 90:12

**commitments** 90:20

**communication** 128:21

**communications** 192:10

**Community** 88:16 91:22

**companies** 84:15 87:4 142:16,19 144:15

**company** 84:24 85:18 87:8,12,13,15,16,17 87:18 88:3 90:24 91:12 95:14 98:20 151:10 172:19 174:24

**compensation** 175:6

**complaint** 79:3 83:23 89:11,14,15,19 92:14 116:11 166:16,18,20 191:10

**complete** 75:22 76:5 76:6 190:11

**completed** 76:3

**completely** 77:21 78:14

**computer** 155:9

**concern** 130:18

**concerned** 132:20

**concerning** 92:2,6 150:15

**concluded** 189:7

**confer** 188:24

**confirm** 76:2 141:25

**confirmed** 169:2

**connected** 120:6,8

**Connecticut** 111:17 136:4 139:10 151:11 169:10

**connecting** 120:3

**connection** 81:6 95:10 118:13 120:4 124:25 126:25 129:9 134:8 141:7,9 148:22 187:18 188:2

**connections** 122:4

**consider** 166:2

**consultant** 143:25 144:8,10

**contact** 117:13 121:25

**contacted** 142:3 147:15

**contacting** 147:18

**contacts** 80:16

**contents** 127:16

**continue** 102:15 104:9 105:13,14,15 154:18,19

**continued** 72:10 75:12 109:4 110:19 116:16 123:2 131:6 146:10 149:12 153:11 158:2 176:25 181:11 182:10 186:19 192:2

**contract** 83:20 89:24 90:3 105:2 138:20 138:23 143:5

**control** 140:25

Case 2:23-cv-06188-JMW Document 447-1 Filed 03/26/26 Page 128 of 144 PageID #: 11995

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

197

convenience 98:20,21
99:19 155:11
convenient 106:14
113:5
conversation 128:13
129:16 131:18
145:15 160:7 167:8
conversations 92:22
92:23 93:2 130:9
131:2 134:14 142:8
158:14 166:12
169:25
Cooney 73:25
cooperative 100:8
copies 81:16
copy 91:25
corner 149:7
corporate 124:14
corporation 108:9
127:18
correct 78:4 80:4
81:3,4,6,7,8,9 82:6
83:16,17,21,25 84:2
84:9,10,13,16,21,22
84:23 85:5 87:2,4
88:11 89:4 92:15,17
92:18 95:19,21 96:9
97:20 99:25 102:25
104:14 105:21
107:23 108:10,11
108:13,14 109:10
109:13 111:15
112:2,16,17 114:19
115:18 116:20,23
120:11,15,16
122:16 123:9,15
124:9 126:3 127:14
129:25 132:8,18,19
133:4 134:25
138:15 141:3,12
145:12 147:3
150:16 153:19,22
156:10,16 164:13
166:23 167:14
169:2 174:16

175:11 177:5,6
179:4,5 182:20,23
185:17 190:11,13
correctly 82:2 99:5
counsel 75:18 76:8
78:20,22 149:22
150:3
counsel's 75:16
Country 99:4 100:4
County 164:10,11,12
164:15 190:6 193:6
couple 117:19 150:20
182:13
course 158:4 159:11
179:6
court 71:2 75:2,8
76:20 95:2 135:23
138:3 152:21
164:10,15,21
168:25 186:8,12
Court's 102:3
covered 81:11 82:21
covering 81:15
CPA 71:15
CPA'S 71:19
crap 103:10
crashing 181:5
credit 170:7,20,22,24
criminal 102:20,24
103:3,6,9,13,17
115:13 166:15,18
166:20
cross 161:19,24,24
CULLEN 73:16
current 104:23
currently 87:7 93:20
94:20 100:4 102:10
customer 84:12
109:17 124:8
172:18,23
customers 84:4 97:22
119:19 122:18
135:10 177:8
CYRULI 73:7

**D**

D 190:2 191:2 192:2
Darius 135:23
Das 161:14
date 76:2 91:18
131:16 133:18,25
176:13
dated 111:3 178:13
179:10
Dave 148:2 169:12
169:14,18,18,25
170:5
David 71:7 147:23,25
day 76:4,7 106:6,10
106:12 186:7
188:25 190:21
193:21
days 105:25 117:19
DC 93:5
deal 81:8,16,21 86:12
90:19 97:4 111:21
124:17 136:11
138:11 145:22
169:4 170:24
177:13 191:25
dealership 80:9
112:24 136:4 139:5
167:17
dealerships 79:18
100:13,16,23 106:2
106:3 138:21 168:5
dealing 87:3 169:9
179:6
dealings 80:13
deals 84:8 85:21
86:19,22,22 155:18
155:21,22 156:14
156:21 157:10
dealt 130:23
death 93:22
December 111:3
184:20,21
decide 186:16
decided 112:12
decision 102:3 112:9

decisions 174:24
declaration 131:9
132:7 143:11,23
146:13,22 149:15
149:23 191:13,15
DEEG 181:16
deemed 89:11 109:8
110:14
deep 183:6
default 92:14
defendant 72:11
73:14,20 75:13
77:11 83:15
Defendants 71:21
73:17
definitely 80:6
164:25 177:9
defunct 87:12
deny 90:13 91:14
131:21,23 138:24
Deo 71:14,14 78:4
80:3,6,7 81:3,5,10
83:3,9 84:12,19
85:25 86:10,10
93:15,18,19,23
94:20,24,25 95:10
95:18,21,24 96:2,8
97:6,10,17,17 98:3
98:6,9 100:13,15,23
101:3,6,10,13,15,17
102:12 103:21,23
104:22 105:19,25
106:10,11 107:15
107:17 109:19
110:6 111:4,20
112:5,10,14,18
113:13,19,25 114:5
114:18 115:3,7,25
116:10,18 118:12
118:21,24 119:8,18
120:3,6,8,25 121:17
122:6 123:5,9,12
125:2,5,6,11,14,17
125:23 126:6,9
127:2,3 128:6,9,10

Case 2:23-cv-06188-JMW    Document 447-1    Filed 03/26/26    Page 129 of 144 PageID #: 11996

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

198

129:10,17,24 130:4 130:24 131:14,25 132:17 133:2,16 134:7,14,23 135:3,5 136:3,13,20 137:5 137:13 138:6,14,17 139:2 140:6,20 141:2,10,14,17 142:3,9,14 145:3,20 147:5 148:8 149:2 150:5 152:17 155:15 158:9,15,20 159:21 160:10 161:3 162:2,6,14 163:23 165:3,8,18 165:21 166:5,16 167:10,10,16,22 168:15,22 170:6 172:7,12 174:19 177:7,10 178:20 180:4,15 183:23 187:19,22 188:15 191:24 192:6,9,10 192:12
**Deo's** 104:11 126:19 132:2 134:11 138:10 139:15 143:23 162:7 167:11 191:13
**depending** 115:11
**depends** 86:13
**deposed** 145:2
**deposition** 74:8,10,13 75:12 76:4,6,7 101:24 145:18 183:25 190:10 193:11
**deposits** 158:6 171:12,15,16
**derogatory** 185:2
**deserve** 121:15
**desk** 99:24 100:7 187:4
**details** 113:20 139:18
**determinaions** 75:17

**developments** 117:23
**different** 181:4,4
**difficulties** 75:15
**dig** 128:17
**direction** 137:12
**directly** 116:23 118:19 166:13 170:25 179:3
**discuss** 130:24
**discussed** 89:22 168:12
**discussing** 94:9 97:12 132:18 166:15
**discussion** 123:23 175:6
**discussions** 116:7 125:2 174:8,18 175:18
**dispute** 113:18
**DISTRICT** 71:2,2
**Dix** 135:22
**DLA** 71:18 98:20,23 98:24 107:25 108:8 108:9,12,16,18 110:9 115:7 129:9 135:9 145:20 153:18,21 155:14 175:2 184:8 192:12
**DMV** 167:17
**docket** 154:11
**document** 89:16 124:18 143:3,14 145:19 146:13 148:10,12 149:14 153:7,13,15 156:7 171:24 172:5 173:6 173:7 174:6,9 175:10,11,13,15,19 175:23 178:13 183:14
**documentation** 105:4 105:16
**documented** 139:24
**documents** 83:2,4 92:6 99:6 103:16

105:4 106:25 107:3 119:14 124:9,11 125:7,8,11,12,14,17 126:6,8,18 127:12 139:25 156:24 172:21,24 192:5,7 192:12
**doing** 95:16 103:7,9 133:4 136:25 174:23 188:21
**dollars** 147:10
**domain** 112:15
**dominated** 131:18
**Donna** 72:13 193:8 193:24
**drafted** 175:23
**dragged** 77:17
**drinking** 118:5
**drive** 112:20,23 113:9 152:14 158:24 159:10,25
**driven** 150:19
**drum** 168:5
**due** 88:3 101:20
**duly** 193:12
**duties** 174:22 180:5
**duty** 113:24 143:2,4
**Dwight** 71:14 181:19
**DYKMAN** 73:16

_____

**E**

**E** 73:2,2,18 190:2,2,2 191:2 192:2 193:2,2
**e-mail** 96:19,24 97:5 97:15 110:14 111:3 111:6,10,25 112:15 128:13 144:14 148:5,7,12,14,19 155:22 186:15,15 191:12,14
**e-mails** 107:6 142:13
**Earle** 72:3 73:17
**earlier** 90:19 145:15 161:16 166:15 168:13 171:2

178:25 187:23 188:3,12,17,21
**early** 75:21 83:25 147:19
**earn** 119:17
**easier** 112:7 122:8
**EASTERN** 71:2
**easy** 106:8
**eat** 181:6
**ECF** 143:14 146:13 148:10 154:11 173:6
**ECT** 153:7
**effect** 74:12 88:20
**effort** 165:21
**efforts** 92:19 121:5 136:2 177:10,15
**Eight** 173:22
**either** 77:11 115:10 115:11 118:19 128:5 130:23 158:4 181:22
**Eleven** 174:4
**EMANUEL** 73:6
**employed** 98:2,5,8
**employee** 112:5 117:9 144:12,12
**employees** 108:19 136:19 165:13,14
**employment** 95:11
**empty** 107:12
**ends** 179:7
**entered** 83:24 84:3 91:19 92:14,17 179:22
**Enterprises** 77:25
**entire** 151:6
**entities** 115:4 181:18 192:9
**entitled** 177:2,3
**entity** 88:12,14 172:18,24 179:11 182:2,5
**entry** 143:14 146:13 148:10 149:14

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

199

153:7 154:11 173:7
**equity** 138:10
**especially** 151:3
**ESQ** 73:6,12,14,18
  73:22
**ESTATE** 71:7
**event** 159:3,6,19
  168:4
**Everybody** 181:3
**evidence** 104:24
**evidentiary** 96:15,18
  154:10
**evolve** 144:5
**evolved** 144:9
**exact** 131:16 133:18
  139:18
**exactly** 79:22 147:12
  154:22 185:21
**examination** 72:10
  77:8 109:4 110:19
  116:16 123:2 131:6
  146:10 149:12
  153:11 158:2
  181:11 182:10
  186:19 189:7 191:5
  193:13
**exchange** 83:7 162:6
**excuse** 88:7 137:7
**executioner** 166:3
**executives** 138:7
**exhibit** 89:12 109:9
  110:15 143:11
  148:5 149:23 150:4
  153:10 154:7
  168:10 173:4 178:5
  182:12 184:7,20
**exhibits** 77:4 89:9
  191:8
**expanding** 165:12
**explain** 78:6 111:5,9
  117:3 145:21 184:2
  192:13
**explanation** 150:14
**extent** 81:14 82:19,24
  82:25,25 132:17

**F**

**F** 193:2
**face** 132:10
**faced** 129:6
**facilitate** 119:4,20
**facility** 152:10
**fact** 101:22 113:8
  126:10,11 134:15
  151:6,8 180:7
**facts** 89:22
**failure** 101:24
**fair** 83:7 86:9 111:19
  113:23 118:11
  137:21 176:6
**false** 78:14 91:18
  126:8
**familiar** 113:8,18
  133:13 135:4,24
  164:4
**far** 79:5 101:21
  105:13 107:24
  125:13 150:18
  151:5 152:3 156:12
  156:20 157:16
  158:25 163:23
  165:25
**Fargo** 117:16
**Farm** 99:8,21 113:6
**fault** 91:9
**favor** 158:6
**February** 72:5 96:16
  154:10 190:10
**fee** 109:15 119:17
  145:8 167:4,4
  178:24
**feel** 122:11 185:22
  187:3 189:3
**feeling** 181:6 185:19
**fees** 145:11
**female** 164:17
**fight** 79:8
**figure** 107:2,4,9
**figuring** 75:14
**filed** 79:7 83:23
  89:14,16 93:14,18

93:19 101:23
**files** 163:10 167:20
**filing** 74:7
**fill** 141:18,22,25
**filled** 172:7
**filling** 142:6 172:5
**final** 76:7 121:8
  140:23 179:9
**finalize** 76:2
**finance** 151:21
**financial** 85:24 96:13
  124:9 125:6,8,11,12
  125:17 126:6
  142:24 143:25
  144:7,10 174:16,24
**financially** 128:11
**financials** 105:19
**financier** 131:24
**find** 92:3 155:23,24
  160:21 187:11
**fine** 85:15 99:11
  115:5 177:23 187:5
  187:5
**finish** 122:9 157:8
  187:12
**first** 76:4,15 85:17
  86:21 89:23 99:10
  110:5,10 123:11,20
  139:7 152:5 164:6,7
  180:19
**Fisk** 71:9 73:10
**five** 155:22 173:16
**fixed** 109:15
**Flagstar** 120:15,18
  120:25 121:20
**floor** 72:4 73:17
  129:11,13,18,24
  130:4,16,19,21
  138:20,22 140:7,9
**Florida** 129:14,17
**flow** 134:19
**flowing** 177:22
**Flushing** 71:19 73:17
  75:15,18 76:8,18
  82:3,18 83:3 84:20

102:19 103:16,22
  114:9,17 116:22
  117:9 118:12,20,25
  120:3 121:22 127:7
  133:20 141:10
  147:3,6,20,24 162:7
  162:14 169:4,19
  171:17,22 178:2
  187:19 192:6
**Flushng** 114:11
**focus** 163:8 167:11
  169:11 178:10
  185:13
**focused** 143:15
**focusing** 120:5
**follow** 81:18 83:5
  92:5 115:6 184:5
**following** 75:17
  91:16 167:19
**follows** 75:23
**foot** 88:2 99:23
**force** 74:12
**foreign** 177:4
**form** 74:16 102:19
  169:5
**formal** 112:5
**formally** 98:2,5,8
**forth** 193:12
**forward** 78:16
  126:23 169:14
  171:16 172:25
  174:20
**forwarded** 126:24
**forwarding** 170:2
**found** 116:2
**foundation** 110:5
**four** 75:19 82:23
  89:23 135:23
  173:14
**fractional** 144:13,14
**frame** 133:8,15 163:9
**Frank** 113:21
**fraud** 84:15 89:3,5,6
  90:5,8,12,12
**freely** 88:8

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

200

**Friday** 111:3
**friend** 95:18 97:6
   109:25 131:2
   144:13 163:3 180:5
**Froelich** 99:7,8,21
   113:6
**fruition** 80:10
**full** 106:19 123:21
**functionality** 109:13
**funding** 71:19 73:20
   85:2,7 86:2,4,8,8,10
   103:22 111:21,22
   116:19 138:11
   147:20 179:3
**funds** 100:18,20
   101:9 115:14,17
   165:11 166:5,6
**further** 74:9,15
   119:12 193:16

**G**

**G** 190:2
**Garcia** 85:10
**general** 142:18
**generally** 83:9 86:4
   124:7 125:21
   127:15 172:17,22
**gentleman** 88:3 93:5
**getting** 111:12,12
   130:20,22 134:10
   136:17 137:5,18
   169:14
**Gianelli** 164:5
**girls** 136:9
**give** 75:5 78:23
   124:19 133:7,18,25
   134:21 140:21
   147:22 186:6
**given** 86:5,6 126:13
   137:13 188:18
   190:12 193:14
**giving** 112:14 142:11
   192:10
**glance** 127:20
**glaring** 127:22

**GLE** 146:6 151:18,19
**go** 75:24 77:4 82:8,23
   86:15 88:24 91:9
   99:20 104:2 106:25
   110:7,8 115:9
   125:23 131:3
   132:25 133:21
   138:8 143:9,21
   146:7 150:10,13
   152:10 168:17,18
   170:16 173:11,13
   173:15,17 178:18
   182:7 183:2,4,5,7
   186:2,8 187:17,20
   187:24 188:14
**God** 75:6
**going** 76:5 79:23
   87:17,19 92:5 93:8
   99:19 105:8 111:5
   115:2 124:16
   126:14 127:19
   130:7,18,20,21
   132:9,13 137:11
   143:6 146:23 148:7
   148:21 149:21
   154:9,14,20 155:18
   155:24 159:11
   160:21 165:4
   171:16 174:20
   175:2 183:20
   185:19,21 187:17
   188:11
**Gold** 71:15,16,16,17
   71:17,17 142:14,20
   142:24 143:5
   158:15,18,21,22
   173:3 174:19 176:8
**good** 75:11 107:5
   138:4 163:3
**ground** 137:5,18
   174:21
**group** 71:16,18 87:7
   88:16 91:22 142:15
   142:17,20,21,24
   158:15 167:21

**guess** 85:19
**guy** 129:14 139:10
   161:9 170:7,17
**guys** 136:9

**H**

**Hakim** 78:2,3,7 81:2
   81:21 83:8,13,14
   84:20 103:23
   165:10,18,21 166:4
   191:25
**half** 76:3,11 106:9,12
**hand** 75:3 193:21
**handled** 116:23
**happen** 93:9 102:22
   131:20
**happened** 79:4 80:12
   87:13,22 93:25 94:5
   94:11 103:11
   157:18 160:16
**happening** 92:11
   157:11,12
**Happy** 128:22
**hard** 75:18
**HARRY** 71:14 73:14
**hate** 163:25
**head** 105:3 183:4
**hear** 94:2,6 138:5
   185:10
**heard** 93:25 113:20
   171:9
**hearing** 96:16,18
   97:16 103:8 154:10
**held** 72:12 139:4
**hello** 95:17 123:17
**help** 75:6 79:24 80:3
   84:6 95:5 96:11,13
   97:17,19,25,25
   100:19,20 101:10
   103:23 106:12,15
   112:10 118:11
   121:13 141:17
   156:23 174:23
   189:4
**helped** 97:17,18

   101:3 114:3,6
   116:18 119:13
   144:18 187:19
**helping** 97:6,9
   106:10,11,14
   111:15,16 112:6
   113:25 114:18
   120:25 121:11
   129:10 141:11
   155:15 169:4
   172:22 183:6
**helps** 144:15 164:9
**hereto** 74:7
**hereunto** 193:20
**Hicksville** 93:19,24
   94:13 96:4,8 97:11
   97:14 152:12
**highlight** 143:7
**highlighted** 90:17
   143:19,20
**highlighting** 143:15
**Highway** 73:15
**Hills** 135:22
**hold** 81:17 92:11
   107:21
**Holdings** 88:16
**home** 94:20,24
   103:25 104:3,3,16
   104:21
**hour** 76:3,9,10,11
   106:5
**hours** 75:22 76:5
   185:22 188:22
**house** 96:4 97:10,18
   98:22 104:23
   135:14,18,19,21
   138:10,14,15,16,17
   138:18 179:23
**hundred** 147:21
**Hunting** 179:14
**Huntington** 118:7
**Hwy** 71:5,20 73:8
**Hylan** 71:7,8,8,8,9,9
   73:9,9,9,10,10,10

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Laurie --- February 27, 2026

201

**I**

idea 168:7 179:12
identification 89:12 109:9 110:15 143:12 148:6 149:24 153:10 154:8 168:10 173:5 178:5
identity 170:21
ignorant 185:12
illegally 166:2
important 91:20 128:23
impossible 135:13
improper 126:14
inaccurate 125:18
incident 163:10,16 163:21 167:19
include 142:20 145:17
including 91:21 134:16 138:10
income 104:12 105:17
Incoming 183:13
incorrect 79:20 151:6
independent 76:13
index 89:14
individual 78:3 79:11 81:3 83:14,19 85:17 86:17 94:19 129:17 158:8 171:2
industry 80:22
inferred 79:22
influence 118:18
information 111:12 116:10 130:4,16 134:8 169:14 170:2 172:19 180:4
informed 93:4
initial 123:14
initially 137:4
injunction 150:24
innocent 78:18
inside 112:7

inspect 130:14
inspections 130:13
intended 87:14 158:20
intent 90:12
intentions 133:2
interest 119:23 139:16 142:9 166:22,24,25
interested 193:18
interesting 165:6
interfered 105:10
internal 148:4 172:3
internally 96:20
interrogatory 145:18 145:21 183:25
introduced 123:17
investor 79:18 88:21
involved 75:15 95:10 101:13 137:6 152:19 155:21,23 156:23 161:5 168:7 169:3
involvement 119:12 129:11 177:4
IRIS 71:6
Island 71:10 73:11 167:21
issue 96:25 150:18
issued 93:23 176:13 184:25
issues 106:25 126:16 129:6
items 176:3

**J**

J.P 71:19
Jackpocket 180:11 180:13
Jacob 79:16
Jamaica 73:5,5
James 78:24
January 133:9,16 134:5 137:18
Jaspan 78:15,24

Jay 79:16
Jeff 102:9 186:10
JEFFREY 73:12
Jiying 94:17
job 119:16
Joe 85:10,12
Joe's 85:13
John 85:8
Jones 71:15,19 125:3 125:4
Jory 71:6 73:9
Joseph 88:18 95:7 192:7
Josh 102:21 104:2 129:19
Joshua 71:6 73:8 104:6 105:9
judge 96:16 166:3
judgment 79:7 92:16 92:20 93:11
July 168:4
jumps 158:17
Jun 179:11
June 174:8 176:14
jury 166:3
justice 164:4,17

**K**

K 190:2
Kataev 73:6 75:11 76:18,22,24 77:2,9 109:5 110:16,20 116:13,17 122:23 123:3 131:3,7 143:13 146:7,11 149:9,13 150:5 152:25 153:4,12 157:23 158:3 168:25 181:8,12 182:7,11 186:10,20 191:6
Keep 154:14
keeps 177:22
Keith 75:10
KHAN 71:6

kill 124:17
kind 89:2
Kindly 131:10
kinds 103:10
knew 79:22 156:12 157:16 180:21 185:3
know 77:14 79:5,13 80:14,16,20,22,22 82:22 85:6,12 89:5 92:19 94:16,17,22 95:3,9,13 96:5,6 96:7 100:25 101:6 101:21 105:13 106:18,18 107:8,9 109:21,22,25 112:22 113:11,12 113:21 115:20 117:8,11,23 118:4,9 118:16 121:4,8,9,19 121:21 123:13,22 125:4,7,10,13,19 126:7,10,11,12,15 126:22 127:6 129:3 129:8,23 130:13,15 131:11 135:15 136:8,23,24 138:15 139:17,19,22,23 140:11,16,23 142:11,22 143:18 144:21,24 147:23 148:4,22 149:25 150:18 151:5 152:3 152:4,8,20 154:12 156:2,2,20 157:2,3 158:13,16,17,25 159:24,25,25 160:3 160:6 161:2,9,12,13 161:15 162:15 163:23 165:19 167:22,25 168:2 169:16 170:3,4,15 170:18,21,22 172:8 172:9,11,13,16,20 175:22,23 176:10

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Laurie --- February 27, 2026

202

177:13,14,18,24
179:9,24,25 180:11
180:17,25 183:3
184:24 185:18
186:5,15 188:18
**knowledge** 84:18
92:10 93:17 105:21
116:18 118:6 120:7
120:17,23,24
144:21 145:6,14
148:19 151:9
158:11,19 163:20
165:9,20 166:9,19
167:19 168:3 170:6
171:10,14 172:9,11
176:12,24 180:15
181:13,20 183:18
**known** 79:9 117:5
138:15 180:6

**L**

**L** 74:2 190:2
**Lake** 152:11
**landlord** 93:19,23
94:24 97:3 113:10
113:16 179:14,14
**Lane** 179:14
**language** 137:7
**late** 137:17
**Laurie** 71:15 72:11
75:1,10,13 76:1,16
77:1,10 78:1 79:1
80:1 81:1 82:1 83:1
84:1 85:1 86:1 87:1
88:1 89:1,9,10,12
89:13 90:1 91:1
92:1 93:1 94:1 95:1
96:1 97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1,7,9 110:1,13
110:15 111:1,2
112:1 113:1 114:1
115:1 116:1 117:1

118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1,6,12
144:1 145:1 146:1
147:1 148:1,6,9
149:1,24 150:1,5
151:1 152:1 153:1,7
153:10,13 154:1,6,8
155:1 156:1 157:1
158:1 159:1 160:1
161:1 162:1 163:1
164:1 165:1 166:1
167:1 168:1,10,11
168:23 169:1 170:1
171:1 172:1 173:1,4
173:6 174:1 175:1
176:1 177:1 178:1,5
178:6 179:1 180:1
181:1,13 182:1
183:1 184:1 185:1
186:1 187:1 188:1
189:1 190:8,17
191:3,10,11,12,13
191:14,15,16,17,18
191:19,20
**lawsuit** 77:11,12,24
78:8 83:22 92:9
93:10,15,17,18
94:23 102:18 110:8
117:21 164:24
**lawsuits** 93:14
**layout** 107:23
**learn** 125:16 126:5
**learned** 138:13 165:5
**lease** 151:21 160:22
**leash** 93:6
**Leasing** 71:5,20 73:8
**leave** 75:21 123:17
132:13

**leaving** 176:21
**led** 101:13
**left** 115:23 117:12
**legal** 73:3 102:11
**legitimate** 144:18,22
**lend** 101:15
**lender** 78:9 84:25
88:20,22 104:16,18
126:7 127:12 129:4
147:14,18
**lenders** 125:7 147:21
**lending** 129:11,13
130:16
**lent** 81:3 101:6
**Leonard** 78:24
**let's** 77:4 131:3
141:24,25 143:6
150:10
**letters** 79:3
**leverage** 133:3
134:15,17,23
135:25
**leveraging** 138:9
**Lexington** 73:11
**liabilities** 90:20 91:13
91:18,20,21
**liability** 143:3,5
**liar** 132:10
**Libertas** 71:19 73:20
85:22,25 86:6
102:20 103:17,22
115:17,21 116:19
147:20 178:24
179:4
**LIC** 71:17
**license** 87:17,21
167:17
**lied** 132:6
**life** 122:8
**light** 75:21
**limitations** 128:10
129:2
**limited** 91:21
**line** 136:16 191:23
192:4

**lines** 111:23
**listed** 174:15 178:11
**Listen** 186:24
**listening** 171:4
**little** 71:19 99:16
133:7 154:14 155:9
**lived** 180:9
**lives** 93:5 104:5
**living** 94:24
**LLC** 71:4,5,6,7,8,8,8
71:9,9,10,10,10,16
71:16,17,17,17,18
71:19,20,20 73:3,4
73:8,8,9,9,9,10,10
73:10,10,11,11,20
88:16 181:16
182:23
**LLP** 71:19 73:7,16
73:20
**loan** 78:4 81:6,11
82:2,3,6,20 83:4,8
84:19 85:25 88:9
90:11 92:2,7 93:3
101:13 103:17,25
104:3,7,13,16,22,25
105:7,10 114:10,17
116:19 118:12,25
119:7 120:4,25
121:5 124:8,25
127:2 128:7 130:18
130:20,22 133:17
133:20 134:4,9,10
134:12,13,18,18,19
134:24 135:6 136:3
136:8 141:9,11
144:22 146:3 147:2
147:6,11 148:23
165:10 172:18,23
178:24 183:18
187:18 192:6,7
**loans** 103:21,24
122:19 127:2 135:2
135:10 144:19,23
145:8 181:23
184:24

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Laurie  ---  February 27, 2026

203

**location** 93:20 94:13 96:9 99:7 158:24
**locked** 104:8 160:10 160:18,20
**Locking** 103:14
**long** 87:22 106:17 114:22 138:3 143:8
**longer** 171:15
**look** 78:25 79:14 81:13,22 82:8,17,18 82:23 85:14 86:15 88:15,15 100:18 101:4 106:25 107:3 108:21 110:7,8 115:9 131:10 133:21 134:6 139:25 143:6,7 145:16 149:16 176:21 178:18 183:2,4,7 185:18 187:24
**looked** 127:17
**looking** 148:13 167:7 180:7 184:19
**looks** 179:18,19
**losing** 137:8
**loss** 124:16
**losses** 132:17,21 136:16,18
**lost** 79:10,11
**lot** 81:23 95:25 160:4 183:20
**love** 151:8

———————————————
**M**
———————————————

**M** 85:14 190:2 193:24
**M-E-R-C-K** 181:14
**M.J** 164:5
**maintain** 98:23,24 99:13 106:17 117:13 118:2 120:20 154:24
**majority** 140:7
**making** 81:5 119:19

136:14 171:11 176:9,11,20,23
**management** 71:10 73:11 177:7
**manager** 112:2 130:25
**Manhattan** 93:6
**manner** 96:12 97:10 100:15 177:12
**Marc** 71:14 94:7,9,15 158:11 181:19
**March** 133:23 193:21
**marijuana** 87:21
**mark** 108:4 110:13 143:10 145:17 148:8
**marked** 89:8,11 109:7,8 110:14 143:11,14 148:5 149:23 153:6,9 154:5,7 168:9 173:3 178:4
**marketing** 168:6
**marking** 150:3 171:20
**marriage** 193:18
**matches** 127:18
**material** 91:20
**matter** 103:18,19 193:19
**matters** 75:20
**Meadowbrook** 104:17,21,25 105:18
**mean** 125:9,13 126:22 133:25 145:7 157:4 163:2 170:4,7
**means** 89:19 140:24
**meant** 100:25
**Medium** 184:13,15 184:17
**meet** 110:5 131:16 188:24
**meeting** 123:5,11,15

123:19,20,21,25 131:14 138:6 139:4 139:9 167:9 174:11
**meetings** 123:8
**memory** 85:16 106:24 139:8 140:3 140:12,19 174:14 179:19
**mention** 96:21
**mentioned** 86:17
**mentioning** 138:9
**Mercedes** 146:6 150:15,17 151:19
**Merck** 181:14
**Merckling** 71:14 158:11 177:11 181:19,22,25
**merely** 145:3
**message** 162:5,10 168:9,12,14 191:18
**messages** 107:6,7
**met** 80:12 90:15 92:21 110:10 111:16,17 123:16 136:9,9
**Michael** 71:15 72:10 75:1,10,13 76:1 77:1 78:1 79:1 80:1 81:1 82:1 83:1 84:1 85:1 86:1 87:1 88:1 89:1 90:1 91:1 92:1 93:1 94:1 95:1 96:1 97:1 98:1 99:1 100:1 101:1 102:1 103:1 104:1 105:1 106:1 107:1 108:1 109:1 110:1 111:1 112:1,20,22 113:1,9 114:1 115:1 116:1 117:1 118:1 119:1 120:1 121:1 122:1 123:1 124:1 125:1 126:1 127:1 128:1 129:1 130:1 131:1 132:1 133:1 134:1

135:1 136:1 137:1 138:1 139:1 140:1 141:1 142:1 143:1 144:1 145:1 146:1 147:1 148:1 149:1 150:1 151:1 152:1 153:1 154:1 155:1 156:1 157:1 158:1 158:24 159:1,10 160:1 161:1 162:1 163:1 164:1 165:1 166:1 167:1 168:1 169:1 170:1 171:1 172:1 173:1 174:1 175:1 176:1 177:1 178:1 179:1 180:1 181:1 182:1 183:1 184:1 185:1 186:1 187:1 188:1 189:1 190:8,17 191:3
**million** 147:2,12
**mind** 77:12 79:10,12 138:2,3 146:17
**mine** 109:25
**minimal** 81:23
**minute** 108:22
**minutes** 76:9 106:5 108:24 115:22 154:23
**misrepresentation** 89:7
**mistake** 88:4
**mistaken** 114:15 132:9
**mistook** 138:18
**moment** 126:12
**money** 77:19 78:10 79:8 80:11 84:25 88:11,12,13,14,19 88:25 89:6 91:13,15 91:24 93:3,7 101:3 101:15,17 103:10 115:21,24 136:15 136:17 145:4,6,19 166:5,21,23 167:2

Case 2:23-cv-06188-JMW    Document 447-1    Filed 03/26/26    Page 135 of 144 PageID #: 12002

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie   ---   February 27, 2026

204

181:2 183:8,15 184:23 192:12
**moneys** 91:21
**month** 106:20 136:16
**months** 106:22 179:20,22 180:2
**moral** 165:2
**MORGAN** 71:19
**morning** 75:11
**mortgage** 104:17,19 104:21,25 105:15 105:18 180:7,10
**motion** 101:23 102:6
**Motor** 71:5,20 73:8
**Motors** 71:4,16,17,17 71:18,18 73:4 158:21,22 171:21
**mouth** 88:2 156:18
**move** 152:20 156:23 158:20,22 162:24 176:7
**moved** 103:10 115:22 118:10 152:11 154:17
**moving** 78:16 119:23 155:22 156:22 158:23 159:8
**multiple** 181:3,3

_____
**N**
_____

**N** 73:2 74:2 190:2,2 191:2 192:2
**N-E-S-N-A** 171:8,9
**N.A** 71:20
**name** 75:8 78:23,25 79:11 80:16 85:13 86:18 88:4 95:6 102:22 112:15 120:12 127:17 139:7 151:22,24 161:11,13
**named** 164:23 171:2
**names** 80:14 86:18
**Nassau** 164:10,11,12 164:15 193:6

**Nathan** 161:11,12 171:3,5
**National** 85:2,6 86:2 86:4,7,10 103:22 116:19 147:20 179:3
**nature** 90:21
**necessarily** 80:5 86:13 106:11 140:6
**need** 77:3,13 80:19 80:20,25 85:4 106:12,15 111:21 113:4 121:14 128:14 134:23 144:16 152:23 157:11 177:24 182:17
**needed** 100:19 114:4 114:5 130:15
**needing** 101:13
**needs** 97:25 119:16 121:13
**negotiate** 97:4
**Neither** 167:15
**NESNA** 171:6,8
**never** 79:20,21,21 80:10,10,12,13,24 82:7 84:5,7 87:8,12 88:12,13 109:16 114:22 128:7 129:13 131:20 132:2,4,11 144:11 144:11,12 146:17 150:17,18 151:2 158:7,10 171:9 179:17
**new** 71:2 72:4,15 73:5,12,12,15,18 80:8,23 118:7 140:10 149:3 150:25 179:15 185:8 190:4 193:5,9
**Newell** 161:11 171:3 171:6
**newsletter** 173:3

175:24 191:19
**nice** 187:17
**nine** 173:24 175:9
**Nissan** 113:19
**nonsense** 160:25
**Nope** 181:15
**normal** 105:4 159:15 159:18 179:6
**normalize** 159:22 163:21
**normally** 124:20 140:14 163:17
**Northshore** 71:5,20 73:8 98:3,11 104:8 112:15,19 113:3,24 114:7,10,11 147:7 154:25 155:4,5,14 156:15 157:2,16 158:5 163:11,17,21 167:12 171:11
**Notary** 72:14 190:23 193:9
**notice** 72:13 102:6
**Notwithstanding** 154:24
**November** 131:14 137:17 163:9 167:20 176:19 178:13 179:10 182:19,22 192:13 192:13
**Novicky** 138:7 162:6 168:15,22
**Novicky's** 139:7
**number** 89:14 90:15 139:9 149:21 157:19 168:23 180:3
**numbers** 139:19
**NYC** 71:15 178:8 182:20

_____
**O**
_____

**O** 74:2 190:2
**oath** 74:11 190:9

**Objection** 169:5 170:9
**objections** 74:16
**obligations** 90:20
**observe** 95:24
**observed** 158:8
**obtain** 81:18 85:24 99:10 104:25 113:25 116:18 118:12,25 120:25 121:5 124:8 125:2 134:24 135:3,5,10 141:10 144:18 147:6 151:16 166:16 167:16 172:18,23,24 187:19
**obtained** 81:24 88:10 92:2 147:3 161:3
**obtaining** 81:10 83:3 121:17 127:2 128:4 134:4,9 141:7,9 148:23 165:10
**off-the-** 75:13
**offered** 80:2,2
**office** 75:16 98:11,16 98:18,23,25 99:3,9 99:10,13,15,18,21 99:23,25 100:7 106:13,17 107:12 107:14,18,22,24 111:24 112:19 113:2,5 123:18 154:25 155:4,5,7,8 155:8,10,14
**officer** 74:11,13 139:11 142:24 174:16
**oh** 77:16 120:10 125:22 166:18,18
**okay** 81:2,14 85:15 86:9,17 87:10,23 88:8,23 90:6,10 92:13 94:6,17,23 96:18 99:5 102:8,10

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie --- February 27, 2026

205

102:16 103:12
104:6,18 105:6,12
105:22,24 106:9
110:9,12,23 111:19
113:18 115:13
116:25 118:6,19
120:14 122:12
124:18 128:20
129:4,20 130:11
131:8,12,21 133:2
133:13,19 134:3,7
135:5 137:2,10,22
140:2,12,17 141:7
141:17 143:21
144:21 145:9,17,23
148:13,15 150:7,11
153:18,20 154:2,24
155:17 156:9,13,25
157:4,21 159:18
163:14,20 165:7
168:16,19,20 169:8
169:11,23 170:6,17
170:23 172:2 174:5
180:8 187:16
**old** 94:20 99:4,8
100:4 179:14
**once** 87:25 95:14
119:7
**one-page** 148:11
**ones** 151:10,11
**open** 119:2,8 141:11
141:13,14
**opened** 87:19 108:12
181:18
**opening** 141:18
148:24 149:2
**operate** 103:15 130:7
130:8 167:17,22
**operated** 100:13,17
100:23,24
**operates** 93:20
**operating** 96:3
104:10 127:13
139:11 159:10
163:17

**operations** 96:20
159:9,22 163:20
171:10,15
**opinion** 91:7
**oral** 83:24 84:7
**order** 72:13 80:17
84:6 119:10 130:18
130:18 152:21
166:16 186:16
**ordering** 186:9,11,13
**organization** 130:23
162:23
**orient** 133:8 163:8
**originally** 125:5
129:19
**originated** 156:14
**outcome** 121:8
193:19
**outside** 143:24 144:7
144:9,10 159:6
**overage** 146:2 153:16
**Ovington** 72:3 73:17
**owe** 91:13,15,23,24
101:17,21
**owed** 91:21 93:3
**owned** 108:10 135:14
135:18 140:7
**owner** 79:17 85:10
85:12 87:7 94:19,22
127:8 140:4,10,20
141:3,5 153:24
160:23
**owners** 108:15
**ownership** 104:24
139:16 142:9
172:19,24

_____

**P**
_____

**P** 73:2,2 74:2
**p.m** 75:25 153:2,3
157:24,25 181:9,10
182:8,9 186:17,18
189:6
**page** 146:21 148:12
153:7 154:12,16,17

154:20 173:7,8,10
173:12,14,16
174:15 175:9,10
178:12,12 179:10
182:12,14 184:19
191:5,9,23 192:4
**paid** 82:20 86:11
101:19,20 102:12
109:17,19 114:18
114:21,24 119:21
119:22 133:11,15
140:22 145:3,8,9,10
145:19 146:3
153:16 154:2 158:9
158:12 167:4 179:7
180:16,23 182:19
182:22 183:9,10
192:12
**paper** 153:23
**paperwork** 137:19
141:18,22 142:2,6
**paragraph** 90:17
91:11,16 131:8
133:7 138:19 143:8
143:16 146:18,23
149:16 150:12
**paragraphs** 131:10
**Paralegal** 73:24,25
**parentheses** 145:25
**parking** 160:4
**part** 135:9 140:8
165:19 188:19,19
**parties** 74:7 75:23
76:15 87:20 93:4
193:17
**partner** 131:24 132:2
132:3,4 172:15
**partners** 71:18 84:12
87:3 98:23,24 108:2
108:9,12,18 110:9
129:10 135:10
145:20 153:19,21
172:12 192:12
**party** 77:10 102:18
102:23 112:7

164:23
**pass** 106:6,8
**passed** 126:4
**patched** 137:11
**pay** 77:20 78:12 93:8
100:15 114:23
115:7,7,8 118:20
165:12,21 188:16
**paying** 102:10 136:18
165:14 177:8
**payment** 115:3
153:18 178:17,21
179:3,18,19,21,25
192:8
**payments** 109:13
165:25
**payroll** 100:12,21
144:12
**pending** 164:10
**Pennsylvania** 73:21
**people** 80:14,21,22
80:22 88:5 111:24
141:22,23 169:9
181:2
**percent** 81:25 82:7
82:12,14,15,20
90:14 131:18,22
133:13 138:25
140:4,20,21 141:3,5
155:12 188:4
**percentage** 178:23
**perform** 107:17
**period** 98:17 106:24
174:14
**permission** 192:10
**person** 80:13 85:8
87:25 88:19 90:25
123:6,12 162:24
167:9
**personal** 75:19 88:9
92:2 101:12 124:14
126:20 134:12
151:22
**personally** 84:14
115:8 126:19

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Laurie  ---  February 27, 2026

206

166:25 182:14
**Philadelphia** 73:21
**phone** 79:14 102:21
 108:22 153:5
 160:14 163:7 167:9
**physically** 160:12
 164:12
**place** 72:12 99:20
 152:5
**placed** 100:12 143:13
 148:18
**places** 80:23 99:6
**placing** 109:6 149:20
**plaintiff** 77:11
**Plaintiff's** 89:12
 109:9 110:14
 143:11 148:5
 149:23 153:9 154:7
 168:9 173:4 178:4
 191:9
**plaintiffs** 71:12 72:11
 73:4,8 101:23
**plan** 129:11,13
 130:16 138:20,22
 140:8 176:6
**planning** 129:18
 130:19,21 140:9
**plans** 129:24 130:5
**plate** 159:2
**played** 144:3
**playing** 187:4
**please** 75:2,8 81:17
 90:22 137:24
 143:17 146:18
 185:13
**plenty** 80:21 122:2
**plus** 185:22
**pocket** 136:19 162:8
 162:15,18,21 163:2
 163:5 170:8,16
**point** 75:25 85:23
 137:19 156:9
 157:18
**police** 115:24,25
 116:2,5,8 160:22

**portion** 143:7,16,20
 154:9 167:4
**possession** 124:9
 150:23 151:3
**Possible** 147:8
**post** 145:18 183:25
 185:17
**potential** 138:10
 147:14,18
**Preceding** 159:14
**precinct** 116:5
**PREMIER** 71:18
**premises** 113:9
**presence** 158:4
**present** 73:23 77:4
 108:3 116:5 123:6,8
 160:9,12 163:13
**presenting** 89:8
 96:19
**presiding** 164:18
**previously** 81:24
 82:24 87:6 111:14
**pricing** 109:15
**Prime** 77:24
**prior** 108:5 176:16
**private** 100:10
 104:18
**Pro** 73:14
**probably** 85:8 90:15
 90:16 92:3 111:11
 112:10,13 126:17
 142:12 144:25
 148:20 153:24
 155:16 156:2,9
 157:17 179:18,19
**problem** 92:8 184:6
**process** 169:3
**processed** 156:15
**procuring** 83:8
**produce** 81:16 83:4
 92:6 104:9
**produced** 96:21
 104:25 191:22
 192:3
**production** 115:2

128:20
**profitable** 136:14
**promise** 187:6
**proper** 103:16
**properly** 136:13
**property** 93:24
**provide** 104:22
 105:20 145:19
**provided** 166:5
**proximity** 107:15
**Public** 72:14 190:23
 193:9
**Puccio** 117:2,4,8,18
 117:20,24 118:3,6
 118:13,14,14,19,25
 119:7,12 120:10
 169:15,16,25 170:4
 170:18 172:9,11,14
**pulled** 140:24
**pulling** 136:15
**purchase** 105:2 136:8
 161:20,24,25
**purchased** 130:12
**purchasing** 136:3
**purpose** 87:14 98:18
 165:9 168:3 187:11
**purposes** 100:21
 110:5
**pursuant** 72:13
**push** 111:18,20 112:7
 185:4
**pushing** 111:13
**put** 83:17 88:2,4,19
 110:2 140:24
 141:23 142:25
 151:4 152:7 156:17
 179:18
**putting** 187:2

---

**Q**

**question** 77:13 91:10
 97:16 100:22 107:5
 126:4,12 134:3
 140:17 141:19,23
 146:24 147:4,8,17

157:8 159:17,23
 167:6 169:24
 170:14 180:20,23
 185:14,15 187:7,23
 188:3,12,13,17,20
**questions** 76:10,12
 76:13 97:19 129:5
 138:2 156:5 173:9
 177:2 185:25
 186:21,23 187:3,9,9
 187:12,13,15

---

**R**

**R** 73:2 193:2
**raise** 75:2
**ran** 106:15
**reach** 80:17 141:17
**reached** 76:15
**read** 110:22 111:2,8
 111:9 127:21
 131:13,17 132:14
 137:23 168:13
 173:8 176:2 177:24
 190:9
**reading** 79:19 131:11
 143:17 146:24
 155:3 176:7
**reads** 91:2,3,5
**ready** 77:2 104:2
 154:13 170:16
**real** 113:24
**reality** 151:14
**really** 87:18 174:7
 188:11
**Realty** 71:9 73:10
**reason** 188:10,15
**reasons** 181:4
**recall** 79:19 82:2
 90:7 96:15,19 97:2
 97:7,9 99:5 115:14
 122:3 123:14,25
 128:25 129:4
 131:13 133:16,19
 134:3 137:4,13
 138:6,9 139:2 140:3

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

207

142:3 143:2 147:5
147:11 155:4
161:19,22 162:5
163:10,16 166:4,12
166:17 167:8 169:3
171:5 174:8,18
175:13 178:20,23
179:21 187:25
**receipt** 167:3
**receive** 82:5 103:15
160:14 187:21
**received** 82:2 88:13
100:19 101:9 146:2
178:20 179:2
**receives** 119:15
**receiving** 187:25
**recipient** 78:10 79:8
148:14
**recognize** 89:16,19
153:13 171:24
174:6
**recollect** 126:13
128:12,12,15 139:3
142:7,10 149:6
162:4 178:22
**recollection** 94:21
120:24 127:24
128:3 133:24
157:19 167:13
170:4 178:16
179:16 185:9
**record** 75:9,14 77:4,6
77:7 109:2,3 110:16
110:17,18 116:13
116:14,15 122:23
122:24,25 131:3,4,5
146:7,8,9 149:9,10
149:11,20 152:25
153:2,3 154:17
157:22,24,25 181:8
181:9,10 182:8,9
186:9,17,18 190:11
190:12 193:13
**records** 115:3 192:8
**refer** 85:21 116:23

122:18 133:6 149:6
**reference** 137:19
138:2 169:12 179:9
**referral** 86:5,6
116:21,24 118:14
118:18,21 119:5,6,7
119:19 120:11
121:7,14 145:8,11
169:7
**referrals** 145:4
**referred** 77:18,20
78:4,24 79:21 84:24
85:2,12,17 86:10
95:4 102:19,24
125:5 187:20
**referring** 77:24 88:9
92:23,24 103:2,21
104:4 119:12
125:25 131:8
144:22 146:16
156:7,14 157:7
170:17,20 174:15
175:9 178:12
182:12
**refers** 143:24 144:17
**reflect** 76:14
**reflecting** 83:2
**reflects** 183:14
**refresh** 94:21 133:23
139:8 179:15 185:9
**Regal** 96:3 97:10,17
**regarding** 183:23
192:5,7,10
**regards** 125:19
**registered** 151:24
**reiterating** 154:22
**related** 193:16
**relating** 117:24
**relation** 81:2 107:17
111:11 113:23
130:6 136:21 137:2
180:5
**relationship** 117:4
118:2 120:20
121:18 133:9

**relationships** 120:5
**remained** 120:17
**remaining** 76:7
188:22
**remember** 81:22
86:3,16 90:9,11
96:22 101:5,11,14
101:16 106:4,23,23
106:24 107:20
111:7 116:12 121:3
121:7,10,24 122:5,7
122:12,14 123:23
124:3,5 126:24
128:15,18 129:22
130:2,13 136:7
139:12,25 140:11
142:11,12 143:4
147:9 150:22 159:3
160:8,24 161:8,17
161:24 162:13
163:12,15,18 164:9
164:20 165:6 166:8
174:13,14,20
175:15 180:3
185:16 187:24,25
188:4,4
**remembering** 107:23
**removed** 163:11,15
167:21
**rent** 100:2,5 179:20
179:22 180:2
**renting** 135:16
**reopen** 158:24
**rep** 85:19,20 86:19
86:25,25 122:4
**repair** 95:25
**repairing** 167:24
**repeat** 77:13
**repetitive** 180:18
**rephrase** 91:10
**reporter** 72:14 75:2,8
138:3 168:25 186:8
186:12 193:8
**represent** 89:13
96:23 111:2 137:16

143:22 146:12
168:14 169:18,21
171:20 178:6,19
**representation** 91:17
**REPRESENTATI...**
71:7
**represented** 76:8,11
90:18 133:22
179:13
**representing** 95:8
**represents** 144:15
**request** 82:8 92:6
127:12 145:18
155:25
**requested** 96:17
138:20,22
**requesting** 119:15
**requirement** 140:8
**requirements** 119:3
**reserved** 74:16
**reside** 118:7
**residence** 134:16
**residential** 94:24
**resides** 94:20
**resolved** 93:11
**resolving** 93:11
**respect** 84:18 104:7
116:22
**respective** 74:6
**respectively** 181:19
**responding** 152:21
**response** 96:24
**responsible** 90:25
177:18
**result** 166:19
**resulting** 92:16
**resumed** 77:6 109:2
110:17 116:14
122:24 131:4 146:8
149:10 153:2
157:24 181:9 182:8
186:17
**retain** 78:20
**return** 75:22
**returned** 115:24

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

208

150:19 166:21,23
**returns** 126:20 173:2
**review** 124:11,15
  127:15
**reviewing** 127:20,25
  129:6 161:22 162:5
**right** 75:3 77:2 79:2
  81:12 82:4 83:20
  88:10 90:23 92:10
  93:12 103:15
  119:14 121:12
  126:2 137:12,23,25
  142:21 150:13
  154:15,16,25
  159:16 168:22
  169:13 170:12
  175:25 183:19
  185:5,18 188:20
**ring** 148:3 161:11
**road** 99:4 100:4
  130:20,21 188:11
**Rob** 117:2 120:10,10
  169:12,15,16 172:9
**Robert** 71:5 73:4,24
  146:22
**role** 85:18 119:11
  144:3,5,9 172:5
  175:7
**Ron** 161:14
**RONNEBURGER**
  73:18 76:19 169:5
  170:9,12 186:11
**Ronnie** 161:14
**ROSLYN** 71:17
**round** 88:25,25,25
**Route** 71:10 73:11
**rude** 108:21
**Ruderman** 73:12
  76:12,20,21
**run** 128:14,19 136:12
  136:12 139:23
  142:12 192:11
**running** 106:15
  110:10 128:16

**S**

**S** 73:2 74:2,2
**Sadowski** 72:14
  193:8,24
**SAGE** 73:3
**sale** 140:23
**sales** 71:4 73:4 95:11
  95:13,23,25
**Salvador** 85:8
**sanctions** 101:23
**SARAH** 71:14
**sat** 155:7,8 164:19
  165:5
**Savasta** 88:18 89:3
  89:15 90:18 91:12
  91:16 192:7
**saw** 81:24 94:10
  152:9,12 163:13
  164:6
**saying** 84:17 91:11
  103:13,15 104:11
  104:15 105:3
  119:11 132:8,15
  141:4 156:3,8
  170:15,15
**says** 90:18 138:13,19
  145:3,13 148:24
  155:2,20,21 156:3,4
  156:9 170:7 176:4
  182:21 183:16
**scans** 111:7
**schedule** 106:7
**screen** 90:18 109:6
  110:12 135:12
  143:13,16 156:7
**screenshot** 109:8
  168:12
**scroll** 110:24 154:13
  154:14 173:7
**scrolled** 133:7
**Scrolling** 173:10
**scrutinize** 124:18
**Se** 73:14
**sealing** 74:7
**second** 72:4 73:17

77:5 90:2 157:22
  181:8 186:6
**seconds** 152:24
**section** 169:12
**secure** 84:19 103:23
  138:11
**secured** 84:23 105:7
**securing** 85:25 133:3
**see** 82:8 89:21,24
  90:3,9 91:22 100:18
  102:22,22 104:11
  107:2 133:10
  136:10 138:21
  143:25 144:19
  145:4 146:17
  148:20 155:19
  156:11 165:4 167:2
  171:22 178:14
  182:15 183:5
  184:22
**seeing** 128:18 150:22
  166:22
**seen** 90:7 99:5 114:22
  126:19,21,23 127:5
  162:12 179:17
**sell** 79:24 80:3,17
  91:19 96:12 177:11
  177:15
**selling** 167:23 177:18
**send** 181:2 183:11
  186:15
**sending** 118:21
**sense** 133:8 134:2
  137:17 179:17
**sent** 96:20 124:17
  128:17 183:14
**served** 79:17
**service** 121:15
**services** 102:11
**serving** 174:19
**set** 106:6 109:24
  193:12,20
**settlement** 92:24 93:2
**seven** 75:22 173:20
  188:22

**SHANKS** 73:7
**shape** 102:19
**share** 110:12 134:7
  172:19,20 180:4
**shared** 133:2
**shareholder** 127:12
**shareholders** 108:15
**shareholders'** 127:3
  127:25 128:8,25
  129:6 161:16
**sharing** 130:4
**Sharon** 164:4
**shit** 137:8
**Shoot** 152:22
**shop** 139:24
**short** 93:6 98:17
  145:4,6 165:11
**shortly** 133:9
**show** 110:25 128:16
  137:8,22 146:21
  148:7 154:5,9
  159:13,14
**showed** 89:9 94:10
  97:15 153:6 160:22
  160:22
**showing** 136:16
  145:19 171:19
  173:6 192:12
**shut** 104:2,7 105:11
  105:17 113:15
  164:2 165:22,25
**shutting** 159:7
**sick** 181:7 185:22
  187:3
**side** 86:24,25 107:19
  107:24
**sign** 175:16
**Signature** 120:9,14
  121:2,6,20
**signed** 74:10,12
  88:11 126:17
  175:11 190:21
**significant** 91:20
**signing** 111:25 143:2
  175:13

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

209

similar 77:17 97:10
simple 176:4
sir 149:19 172:6
  189:2
sit 97:9 123:18
  125:23 126:21
  127:21 128:24
  140:2
sitting 102:13,17
  103:20 106:13
  121:4 126:5 141:6
  151:5 164:22
situation 77:18
six 106:22 146:18,23
  153:7 173:18
slash 75:20
slowing 155:25
small 99:23 160:4
SMITHTOWN
  71:18
social 118:2
socially 95:21
sold 80:7 145:25
  150:17 151:7,10,17
solely 108:10 118:25
somebody 77:18,19
  78:25 79:9 97:25
  118:16 121:13
  132:9 138:16 163:4
sorry 77:15 83:22
  93:18 108:5 118:23
  122:10 127:8
  139:14 146:15
  148:9 157:9 177:22
  185:23
sort 86:5 107:10
  109:15 179:3
Sounds 135:24
space 100:8,11 160:4
speak 85:9 88:8
  117:20 142:14
  186:6
speaking 86:4 124:7
  127:15 172:17,22
specific 97:5 123:25

125:20 127:24
  128:3 147:10,11,22
specifically 128:16
  138:12 139:24
  142:10 155:17
  157:13 163:19
specifics 158:16
spell 120:12
spend 106:2,9
split 186:10
spoke 85:10 97:4
  117:17 129:14
  131:18 150:17
  171:2
spot 183:6
squashed 77:22
ss 190:5
stand 137:25
start 136:2 154:12
started 130:8 133:10
  137:14 144:4,6
  151:4 160:25
  176:15,16
starting 76:15 134:4
  149:25
starts 85:14
state 72:15 75:8
  190:4,23 193:5,9
stated 96:24 131:23
  152:3
statement 131:17
  151:6 162:7
statements 150:14
  178:4,7,11 191:20
states 71:2 83:23
stating 157:13
status 92:9
stayed 123:21
stenotype 72:14
  193:8
steps 119:20
STIPULATED 74:5
  74:9,15
stop 75:19,25 132:24
  149:25 154:21

158:20 175:2
stopped 99:18 129:21
storage 151:4 152:4,5
  152:7,10
story 78:13
straight 82:10
stream 104:12
Street 71:9 73:10,21
strong 165:16
stub 153:8,9
subject 101:10
  188:22
subjects 124:23
sublease 107:10
submit 183:25
submitted 125:6,11
  125:17 126:6 128:5
  128:6,6 131:9
submitting 126:2
  128:4
subsequent 167:21
substance 78:6
substantial 133:3
Success 152:11
successful 136:22,24
succinctly 188:8
suck 122:22
sudden 79:10 102:22
sued 78:7,9 83:13,14
  83:19 84:15 89:3
  90:8 93:7 165:18
suggesting 124:2
suit 102:23
Suite 73:11,21
sum 78:6
Summons 89:11,14
  89:18 191:10
Sunrise 71:5,16,20
  73:8,15 98:6,13
  104:9 113:24 147:7
  156:15 157:2
  167:12,24
Superb 71:4 73:4
  96:20 97:16,18 98:9
  98:15,19 106:18

113:2 114:8,13
  127:4,8,25 128:9
  129:7 130:9,17
  132:18,18,22,23
  136:13,21 137:14
  138:7 139:16
  140:20 141:5,10
  142:9,12,21 146:2
  150:23 151:3,7,12
  155:18 156:10,13
  156:16,21,21 157:3
  157:5,11,12,14,16
  158:5,20 159:7
  160:2,5,10,18,20
  161:17 166:7
  167:11 171:11,15
  171:21 172:12,15
  176:7,15,16,18,21
  177:11,16,19 178:2
  186:4
Superb's 160:4
supplied 105:2
  125:14,22 126:9,16
  127:7 129:13
supply 105:16 125:13
  127:10
support 165:2
supposed 87:16
  104:22 142:23
  147:3
Supreme 127:8
  164:10,15
sure 81:13,19 82:24
  83:6 85:10 119:13
  119:14,15 121:15
  124:12,14,16
  127:17,18 128:22
  130:9,17 140:18
  146:25 151:2 157:9
  157:23 166:25
  184:4
surrendered 113:9
surreply 146:21
SUSAN 73:22
swear 75:4

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

210

sworn 74:10,12 89:19
  143:23 190:21
  193:12
Syosset 71:16 112:20
  112:23

_____
        T
_____
T 74:2,2 190:2 193:2
  193:2
take 82:18 85:21 93:7
  96:25 108:23 110:3
  119:19 131:10
  152:23
taken 72:11 74:14
  77:22 111:23
  115:14 190:9
talk 123:18 187:10
talked 90:19 123:17
  161:9
talking 129:12
  174:21
Tammy 73:24
tax 126:20 173:2
Team 71:4 73:4
technical 75:14
tell 107:7 113:14
  114:5 126:22 127:5
  135:7 142:17
  172:14 176:10
  180:25 183:19
telling 128:13 129:5
  163:12
ten 81:25 82:7,14,14
  106:4 144:14,15
  174:2 175:9,10
  188:4
term 162:25
terms 81:20 93:10
  163:9 171:15 177:8
test 110:2
testified 111:14
  122:15 155:17
  161:16 179:2
testimonial 75:22
  188:23

testimony 75:4 76:4
  115:15 132:6
  135:17 136:21
  137:2 143:23
  146:19 157:13
  172:4 185:16 190:9
  190:12 193:14
text 107:6,7 162:5,10
  168:9,12,14 191:18
Thank 150:6 170:11
  189:3,5
thing 151:4 152:6
  162:18 184:23
  185:7
things 79:13 80:23
  82:16 103:8 111:20
  119:24 130:14
  141:11 155:25
  159:11,15,18 165:5
  181:4
think 77:22 82:5
  85:20 89:9 104:20
  114:6,7 121:24
  150:20 158:25
  159:15 163:7,22
  164:7,14 165:22
  167:25 168:11
  180:9 184:7,9 186:7
third 90:5 112:7
third-party 83:15,23
thirty 76:9
Thomas 71:15 125:3
Thomasson 71:14
  73:14 76:10,22,23
  91:4,6 168:23
  175:19
thought 77:16
threats 93:22
three 76:5 124:13,14
  164:8 173:12
  174:15 176:3
  178:12 185:22
  186:21,23
throw 187:4
time 72:13 74:17

75:14,23 76:3,7
  80:19 87:22 96:2
  98:17 106:2,19,24
  112:18 113:4 114:4
  114:22 115:25
  117:2,17 121:2
  123:5,11 124:10
  125:6,10,25 126:4
  131:19 133:8,15
  136:10 138:8,17
  139:6 141:20,20
  155:19 156:11,14
  157:5,14,18 159:5
  159:13 163:9 164:7
  165:11,15,17
  178:19 180:19
  183:20 186:14
  187:17 188:23
times 90:15
timing 96:5,6 106:7
title 112:4 150:18
today 75:12,24 97:9
  121:4 126:5 128:24
  140:2 168:13
  188:23
today's 76:6
told 79:20 90:24
  91:12 94:7,11,15,19
  106:24 113:13
  117:12 129:24
  130:7 139:5,23
  152:9 160:15
  167:10 181:18
Tom 125:4
Tony 172:10
tool 130:17
top 105:3 154:12
  182:13 183:4
total 82:7 145:10,11
  145:14 167:5
transacted 87:12
transaction 78:14,17
  86:8 87:20 166:7
transactions 156:10
  156:22 157:5

178:11 179:10
  182:13,25 184:2,20
  185:8 192:14
transcript 154:7,10
  186:9 190:9,11
  191:17
transfer 152:19
transferred 140:10
  152:16
transpired 115:20
trial 72:10 74:17
tried 77:21 103:25
Trinidad 101:25
trouble 137:5 165:14
true 87:6 92:13 96:2
  114:9 120:8 123:4
  123:20 167:3
  180:21 190:11,13
  193:13
truth 75:5,5,6
try 97:19 127:20
  135:25
trying 79:8 83:17
  97:3 105:9,22
  111:18 135:3
  159:25 163:15
  164:2 175:8 181:7
  185:20
turn 77:15
turned 136:13
twice 95:15 114:14
  114:16
two 79:3 82:12,20
  90:15 93:3 99:16
  108:24 129:22
  131:10 150:25
  152:24 164:7
  173:10 179:9,20,22
  180:2 184:20
  185:25 186:21,23
  187:3,8,9,13,15
typical 127:11
typically 82:10 84:3
  84:8 86:11

SUPERB MOTORS INC., et al. v. DEO, et al.

Michael Laurie  ---  February 27, 2026

211

**U**

U 74:2
UEA 71:18
Uh-huh 85:3 87:2
  92:25 159:20 178:9
  182:16
understand 86:24
  90:23 105:9,23
  140:5 151:13
  159:17,21 162:25
  185:6,24
understanding
  139:13,15
Understood 141:2
undertake 136:2
undertaken 121:5
underwriter 85:20
  148:4 169:20,22
  170:8,21,22
underwriters 118:15
  118:17 170:25
underwriting 85:20
underwritten 118:16
unhighlight 90:22
Uniondale 72:4 73:18
UNITED 71:2
unofficial 131:24
  132:3,4
uphold 176:2,3
Urrutia 71:5 73:4,24
  102:21,24 103:12
  111:5,17,24 123:5,9
  123:12 127:6,8
  128:9,13,16,18
  130:8 131:9,14,23
  132:6,16,20 133:12
  133:14 136:9,11,15
  136:16 138:13,18
  139:10,17,23 140:6
  140:6,21,23 142:11
  146:13,19,22
  149:15 150:15
  162:2 166:7,13
  167:10,10 172:12
  172:15 192:10

Urrutia's 139:14
  155:25 191:15
usage 153:24
use 98:16 132:5
  147:21
usual 159:10
Usually 122:20
utilizing 99:15
  155:13

**V**

vehicle 153:22 154:3
vehicles 80:18 152:14
  152:16 163:11
  167:20,24,24 177:4
  177:11,16,19
Ventimiglia 113:21
verbal 82:21 85:4
  182:17
Verbonitz 73:22
  76:24,25 146:15
  149:21 150:3,6
  186:12,14
Verified 89:18
verify 126:18
vested 119:23
video 94:10,11 103:8
videoconference
  73:12,14,22,24,24
  73:25
view 177:25
virtual 167:9
virtually 123:4
visit 95:21
visited 96:8
Vozza 95:7,8

**W**

W 190:2
wait 122:8
waiting 156:22
waived 74:8
walked 137:7 187:9
Wang 179:11
want 102:14 108:21

  123:25 132:24
  133:6 137:23 163:8
  164:2 169:11 177:3
  177:23 187:4
Wantagh 73:15
wanted 88:24 89:6
  110:2 148:20
  166:24 167:2
  177:24
wants 160:23 167:11
warned 122:10
warranties 161:6,7,9
warranty 161:3
wasn't 78:10 89:6
  107:22 113:4
  136:12 144:24
  155:8 160:13
  163:12 169:9
way 97:18 102:19
  124:4,19 127:20
  136:23 167:14,16
  193:18
we'll 108:25 110:12
  143:10 148:7
  183:25 184:5
  185:17
we're 187:8,13,15
we've 92:22
website 99:6 109:8
  109:10,12 191:11
week 150:25
weeks 150:20
Wei 94:17
Weinstein 147:23,25
  148:2 169:19,25
  170:5
WEIR 73:20
welcome 110:21
Wells 117:16
Wendy 115:22
Wendy's 155:7,8
went 77:12 78:23
  87:9 88:3,11,25
  95:16,23 96:6 111:8
  111:17,21 112:14

  113:3 114:7 115:21
  136:8,10 149:8
  152:4,6 164:7,7,11
  164:12,21 180:10
weren't 142:23
  156:22
Westbury 94:20
  104:20,20 179:15
WeWork 100:9
whatsoever 90:21
WHEREOF 193:20
wholesale 177:11,13
  177:16,19
Wicks 96:16
willing 134:15
willingness 75:21
wire 114:25 178:13
wires 182:14 183:10
wishes 75:20
withdrawal 119:9
withdrawn 104:15
  118:23 119:10
  120:23 121:16
  139:14 141:8
  172:10
witness 75:7,10,19
  76:13,17 91:4 153:5
  153:6 157:22
  170:11 189:7 191:3
  193:11,14,20
witness' 143:15
witnessed 103:7
Woodbury 99:19
  113:5
word 102:13 144:25
  163:25
words 90:13 93:10
  105:18 119:17
  130:15 132:5
  134:20,21,22
  156:17
work 86:11 97:22
  107:17 117:6
  118:24 119:8
  124:22 129:9 135:9

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

212

155:15 175:2 176:7
**worked** 80:12 107:14
  108:2 139:17,18
  140:15,15 149:8
  171:6
**working** 78:17 96:3
  96:25 106:13
  107:25 117:4
  120:20,25 133:3,16
  133:17 134:4,4,9,10
  136:3,11 137:14
  147:2,11 158:9,20
  159:22 160:2 163:4
  163:23 165:12
**works** 109:21,23
  144:15
**wouldn't** 81:23
  106:14 138:22
  140:21 141:6
  172:20
**writes** 145:9
**writing** 81:18 83:2
  84:9,11 92:5 115:6
  128:17 153:24
  184:5
**written** 81:11,15
  82:21 101:10
  183:21 191:24
**wrong** 130:21 145:2

___

**X**

x 71:3,22 191:2 192:2

___

**Y**

**yeah** 78:2 87:25
  88:21 95:20 97:19
  99:25 100:8 107:22
  107:23 108:7,23
  117:14 123:16
  125:4 137:3 139:12
  142:16 144:4 148:2
  150:9 151:20
  159:14 160:15
  164:19 165:4
  169:17 170:11

174:17 176:2
  177:14 183:16
**year** 99:11 110:8
  153:25 175:20
**years** 79:9 80:23
  82:23 87:11,11,11
  90:16 95:5 99:16
  117:6,7,12 123:24
  124:13,14 157:19
  164:8 176:16
**yesterday** 117:19
**York** 71:2 72:4,15
  73:5,12,12,15,18
  118:7 179:15 190:4
  193:5,10

___

**Z**

**ZIZMOR** 73:7
**zoom** 75:15 77:3
  110:21 148:11

___

**0**

___

**1**

**1** 89:10,12 147:2,12
  184:20 191:10
  192:13
**1,100** 100:3
**1:00** 75:24 185:21
**10** 173:4,6 191:19
**10:18** 72:6
**10:21** 77:6
**10:23** 77:7
**100** 90:14 99:23
  131:22 133:13
  138:25 140:3,20,21
  141:3,5 155:12
**100,000** 81:3,21 83:8
  84:20 88:2,10
  165:10
**10170** 73:12
**103** 182:12
**109** 191:11
**11** 173:7 178:5,6
  191:20

**11,500** 184:21
**11:01** 108:25 109:2
**11:04** 109:3
**11:05** 108:25 110:17
**11:06** 110:18
**11:10** 116:14
**11:12** 116:15
**11:21** 122:24
**11:22** 122:25
**11:27** 131:4
**11:32** 131:5
**11:51** 146:8
**11:52** 146:9
**11:56** 149:10
**11:58** 149:11
**110** 191:12
**111** 184:19
**112** 73:15 149:14
**112-6** 153:7
**11423** 73:5
**115** 192:8
**11553** 73:18
**116** 178:12
**11793** 73:15
**12** 108:13
**12:03** 153:2
**12:05** 153:3
**12:11** 157:24
**12:13** 157:25
**12:39** 181:9
**12:44** 181:10
**12:45** 182:8
**12:50** 182:9
**12:55** 186:17
**12:56** 186:18
**12:58** 189:6
**1239** 71:9 73:10
**128** 192:10
**13** 131:8
**132** 154:12
**133** 154:17
**1339** 73:21
**134** 154:20
**14** 131:9 191:24
**143** 191:13

**145** 192:12
**148** 191:14
**149** 191:15
**15** 79:9
**15,000** 178:14,17,21
  180:16,22
**153** 191:16
**154** 191:17
**156-1** 154:11
**1580** 71:7 73:9
**1581** 71:7 73:9
**1591** 71:8 73:9
**1632** 71:8 73:9
**168** 191:18
**17** 192:12
**173** 191:19
**178** 191:20
**180** 112:19,22 113:9
  158:24 159:10
**182-11** 73:5
**183** 192:13
**189** 71:5,20 73:8
**19107** 73:21
**1932** 162:19
**1st** 182:19

___

**2**

**2** 109:7,9 191:11
  192:8
**2,000** 83:11
**2,225** 184:21
**2:00** 75:25
**2:23-CV-6188(JM...**
  71:13
**20** 96:16 117:6
  154:11 182:22
  190:22 192:10,14
**20,000** 83:9
**2017** 99:12 108:13
**2018** 108:2,6
**2021** 83:25
**2022** 111:4 112:19
  131:15 137:17
  163:9 167:20
  178:13 179:10

Case 2:23-cv-06188-JMW    Document 447-1    Filed 03/26/26    Page 144 of 144 PageID #: 12011

SUPERB MOTORS INC., et al. v. DEO, et al.
Michael Laurie  ---  February 27, 2026

213

**2023** 133:9,17,23 134:5 137:18 147:19,19 160:9 168:4 174:9 175:21 182:19,22 184:21 184:21 192:13,14
**2024** 96:16 154:11
**2026** 72:5 190:10 193:21
**22** 176:19 178:13
**23** 71:10 73:11 176:14
**2320** 73:11
**24** 192:5
**25** 192:13
**2519** 71:9 73:10
**26,000** 182:20
**27** 72:5 149:18,25 181:14,14 184:21 190:10
**28** 179:10

_____
**3**
_____

**3** 110:13,15 111:2 131:14 179:14 191:12
**30** 111:3 143:14 150:8
**3280** 73:15
**333** 72:3 73:17
**34** 149:18 150:2,10 150:12
**38-12** 173:7

_____
**4**
_____

**4** 143:10,12,14 191:13
**41** 90:17
**420** 73:11
**446** 71:10 73:10
**4506-T** 126:17
**4th** 193:21

_____
**5**
_____

**5** 143:6 148:6,8,9

191:14 192:7
**5,300** 182:23
**50** 133:7
**50-1** 146:14
**50-2** 148:10
**50,000** 82:2 188:2,10 188:16,18
**50/50** 139:22
**500** 73:21
**500,000** 82:3 84:20 114:10 147:6,7 187:18
**51** 132:14
**53** 132:14,24 143:16

_____
**6**
_____

**6** 143:6 149:24 150:5 150:5 191:15
**6,000** 186:3
**655330/2023** 89:15

_____
**7**
_____

**7** 153:7,10 191:16
**7,170.71** 154:2
**735,000** 115:17 166:17 167:3 178:20
**76** 71:9 73:10
**77** 191:6

_____
**8**
_____

**8** 154:6,8 168:24 191:17
**80** 131:18
**800** 100:6
**81** 191:24
**82** 192:5
**89** 191:10

_____
**9**
_____

**9** 168:10,11,23,25 191:18
**9,000** 145:10,11
**9:23** 111:4
**92** 192:7
**95** 137:23

**97** 137:24
**98** 137:24 138:19