

**MARWAHA**
LAW GROUP, PLLC

Nipun Marwaha, Esq.
Nipun@MarwahaLaw.com
Admitted NY, EDNY, SDNY

April 15, 2026

**VIA ECF**
Hon. James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722

        Re:     <u>Superb Motors, Inc., et al. v. Anthony Deo, et al.</u>
                Case No. 2-23-cv-6188 (JMW)

Dear Judge Wicks,

As the Honorable Court is aware, the undersigned firm, Marwaha Law Group, PLLC, substituted in as counsel for "All Deo Defendants" approximately 20 days prior to the filing of this letter. Having entered a case where the Docket Report exceeded 450 entries, the undersigned has had the unique opportunity to view everything that has been filed thus far, *all at once*. This has provided the ability to see obvious connections that may have been missed by predecessors and co-counsel, due to the "fog of war" created by three years of nearly non-stop motion practice.

It is with the utmost gravity that the undersigned, pursuant to the mandatory obligations imposed upon all Officers of the Court by the New York Rules of Professional Conduct, brings to this Court's attention the discovery of multiple willful acts of **Fraud Upon the Tribunal**.

This letter is not a motion for relief. It is a plea to this Court to exercise its inherent powers, recognized in *Chambers v. NASCO*, 501 U.S. 32 (1991), to *sua sponte* remedy a pervasive pattern of fraud that the record itself exposes.

### <u>PLAINTIFFS' RECORDS PROVE THEY KNEW THE VEHICLE THEFT ALLEGATIONS WERE FALSE PRIOR TO COMMENCING THIS ACTION</u>

On August 3, 2023, Anthony Deo was ousted from his business, Superb Motors, and physically locked out of any access to systems necessary to effect changes in ownership to vehicles owned by Superb Motors. On August 17, 2023, Plaintiffs commenced this action with an Emergency Demand for a Temporary Restraining Order claiming that Defendants stole over 100 vehicles and attached a spreadsheet itemizing each vehicle. (ECF 11-15 – Filed August 20, 2023).

**22 of the vehicles Anthony Deo was accused of stealing were sold and/or transferred by Plaintiffs after Deo was ousted but before the Plaintiffs commenced this action. Yet all 22 were present on the list that was submitted to the Court as evidence in support of Plaintiffs' Emergency Request for an Injunction.**

In support of their Motion for Preliminary and Permanent Injunction, Plaintiff Urrutia, engaging in litigation by avalanche, filed documents, (ECF 38-10), with his signed Declaration. Therein, Plaintiffs submitted electronic MV-50 forms admitting they transferred six of the so-called "stolen" vehicles to Urrutia's own wholesale company, Team Auto Sales, LLC, **immediately** after having the police forcibly remove Deo Defendants from Superb. (Exhibit "A")

The first transfer took place on August 3, 2023 (Ex. "A" – Pg. 1-2) with five more, *that we know of thus far*, occurring on August 4, 2023. (Ex. "A" – Pg 3-12).  Despite knowing they themselves transferred the vehicles, they still listed those six vehicles in their submission to the Court in support of their emergency application for a TRO. (See ECF 11).

Incredibly, this is only the beginning of Plaintiffs' knavery.  Plaintiffs sold 16 of the "stolen" vehicles at auction between August 4 and August 16 (the day before their first filing) yet still listed those vehicles as stolen in their evidence to this Court.  **Shockingly, they also sold two more vehicles from the "stolen" list the day after filing said list, bringing the total to 24.** (Ex. "B" – Pg. 17-18).

August 3rd - Plaintiffs transferred 1 vehicle to Team Auto Sales, LLC (Ex. "A" – Pg. 1-2)
August 4th - Plaintiffs transferred 5 vehicles to Team Auto Sales, LLC (Ex. "A" – Pg. 3-12)
August 7th - Plaintiffs sold 10 (ten) vehicles at auction (Ex. "B" – Pg. 1-10)
August 11th - Plaintiffs sold 1 (one) vehicle (Ex. "B" – Pg. 11)
August 14th - Plaintiffs sold 5 (five) vehicles at auction (Ex. "B" – Pg. 12-16)
August 21st - Plaintiffs sold 2 (two) vehicles at auction (Ex. "B" – Pg. 17-18)

These 24 vehicles are merely the tip of the iceberg given that the records for the remaining vehicles are not presently in the undersigned's possession.  It is respectfully submitted that certified DMV records of the transfer history of the remaining vehicles would expose a deception that would consume the entirety of Plaintiffs' so-called "stolen" vehicle list.  Fundamentally, this type of behavior is why Courts apply the doctrine of *Falsus in Uno, Falsus in Omnibus*.

## PLAINTIFFS' OWN RECORDS PROVE THEY SUBMITTED FORGED GOVERNMENT INSTRUMENTS IN SUPPORT OF MODIFYING THE INJUNCTION

In support of their Order to Show Cause to Modify Preliminary Injunction, Plaintiff Urrutia signed and submitted a Declaration wherein he affirmed that he was submitting "[…] documents supporting ownership for each vehicle […]".  (ECF 112, Paragraph 44).

Unlike in the above example, Plaintiff submitted handwritten MV-50 forms.  NYS DMV issues these forms in a bound book distributed directly to licensed dealers wherein each form has a pre-printed unique serial number.  These forms are also four-layered "carbon copy" style sheets.

Plaintiff submitted 9 forged MV-50 forms.  (Ex. "C" – Pg. 1, 4, 7, 10, 13, 16, 19, 22, 25). Looking at the bottom of the forms they are all "Part 2 – Dealer Copy".  This means this is not the top sheet that it is written directly upon, but rather the layer that would receive the "carbon copy"

imprinting.  The top sheet that is written directly on is the sheet submitted to the DMV to officially record the transfer.

Here is how any layperson, much less a licensed attorney conducting a diligent pre-filing review, would know these forms are *per se* forged instruments.

1. **4 (four) of the 9 (nine) forms have duplicate serial numbers**. (Ex. "C" – Pg. 1/4 and 7/10 are pairs of matching serial numbers).  Given that the serial numbers match but the vehicles "transferred" by the forms differ, either one or both members of each pair must be a forgery.

2. **The writing on 5 (five) forms are clearly from a blue gel ink pen**. (Ex. "C" – Pg. 1, 7, 13, 16, and 19).  This contradicts the fact that Part 2 of the MV-50 is supposed to have black carbon copy impressions.  This contradiction confirms they must be a forgery.

3. **Certified NYS DMV records confirm these transactions NEVER HAPPENED**. (See Ex. "C" where each forged MV-50 is followed by a valid and certified eMV-50).  The DMV records received in response to a FOIL request show the entire transfer history of a vehicle for any transfers that originated from or terminated in the State of New York.  Nowhere in the history of any of these vehicles does it show these transactions from the handwritten MV-50s taking place.  This absence from the official record confirms they must be a forgery.

While these forged instruments do not accurately represent an ownership interest, they establish one thing with certainty - **the hand which forged them knew exactly what it was doing.**

### PLAINTIFFS FORGED 30 OUT-OF-STATE TRANSFER DOCUMENTS TO AVOID BEING PROPERLY SANCTIONED BY THE COURT

To bolster the legitimacy of their claims, Plaintiffs submitted 30 Q-1 Forms representing that they "[…] immediately transferred title of the Injuncted Superb Vehicles back to Superb, which now held title as an owner rather than […] a dealer." (ECF 155 Paragraph 14).

For a vehicle to be transferred from Hartford to Superb as the Q-1 forms claim, the vehicles obviously must first be transferred from Superb to Hartford.  Plaintiffs claim this was the path taken by all 30 vehicles.  **Certified NYS DMV records are unsparing in what they reveal. At best, 14 vehicles were sent from Superb to Hartford**. (Ex. "E").  **The 16 other vehicles never made the trip Plaintiffs swore they made.** (Ex. "D").  Specifically, 15 vehicles were transferred to Volkswagen of Freehold (another Urrutia owned dealership) a month prior to the Hartford transfers, and the 16th vehicle was repossessed.  This is verified by the certified eMV-50 forms. (See Ex. "D" and "E" – Forged Q-1 Forms Paired with Corresponding Certified Forms/Carfax)

**An exhaustive search of NYS DMV title records reveals that precisely 0 (zero) titles were issued in the name of (non-dealer) Superb Motors**.  If the above quoted Plaintiffs' statement were true, all 30 vehicles would have a record of being titled in New York.  **Demonstrating that Plaintiffs' Q-1 forms were fabricated to misdirect the Court.**  This is

corroborated by Carfax being devoid of any record of titles issued to any non-dealers at the time of these alleged transfers.  (See Ex. "D" where forged Q-1 forms are paired with eMV-50/Carfax).

**Had the titles been issued to Superb as a non-dealer owner, the Carfax record of all 12 vehicles Plaintiff sold in May 2025 would report a new private corporate owner (Superb Motors) with a new title issued and then a sale to a subsequent person or entity.**  (Ex. "D").

The Carfax indicates the opposite. The absence of a new private owner (Superb Motors) in the Carfax record is confirmation that the transfer occurred between dealers and/or wholesalers, which Superb as a non-dealer owner would be legally incapable of doing. **Plaintiffs' Q-1 forms paint a fiction, the records paint reality.**

As the adage goes, the cover-up is always worse than the crime. Plaintiffs were previously sanctioned for encumbering the Injuncted Vehicles during the very Hartford transfer they now stand exposed as having fabricated.  Plaintiffs countered that "Defendants had offered no proof that the [Q-1 forms] were not genuine". (ECF 231 at 6).

Plaintiffs answered this Court's scrutiny with fabricated government instruments. The undersigned answers Plaintiffs' dare with certified ones which lays bare the precise foundation upon which this Court's inherent powers may now be exercised to apply corrective measures proportionate to the harm inflicted upon the integrity of these proceedings and this tribunal itself.

<u>**PLAINTIFF'S SWORN REPRESENTATIONS REGARDING VEHICLE SALES AND IOLA PROCEEDS ARE IRREFUTABLY FALSE**</u>

In direct response to this Court's Order, Plaintiff Urrutia swore that twelve vehicles had been sold and that the proceeds had been deposited into his counsel's IOLA account. (ECF 294 at 61, 297).  One of the twelve vehicles was a BMW X1 VIN: WBXHT3C57K5L90705. (ECF 297).

On April 5, 2026, the abovementioned BMW X1 was discovered on the abandoned Hartford Mitsubishi lot.  This was confirmed by comparing the VIN of the BMW X1 with the vehicle Plaintiff swore under oath had been sold. (Ex. "F" and "G"). Carfax confirms no sale, no transfer, and no service of any kind after the date of the sworn declarations. (Ex. "F" Pg. 4-5).

**The vehicle is still there. The declaration and signed attorney letter are still on the docket. Only one of them is telling the truth.**



(Ex. G)

Plaintiff's counsel submitted to this Court a redacted screenshot of his IOLA account purporting to show a deposit of $110,000 in proceeds from the sale of twelve vehicles. This is *per se* false given the newly revealed fact that *at least* 1 (one) of the vehicles was never sold.

In short, a vehicle that was never sold begets no proceeds. Proceeds that do not exist cannot find their way into an IOLA account by the mere act of swearing that they do. An IOLA account screenshot, even when artfully redacted, cannot conjure into existence transactions that the certified records of every relevant government agency confirm never occurred.

Plaintiff's counsel has submitted to this Court documentary "proof" of proceeds from vehicles that were never titled to Superb, never sold from Superb, and in at least one instance, never sold at all.

### *Falsus in Uno, Falsus in Omnibus*

Pursuant to the doctrine of *Falsus in Uno Falsus in Omnibus*, the undersigned respectfully submits that the exercise of this Court's inherent authority to order the production of complete unredacted IOLA records, underlying transaction documentation, and certified title history for each of the twelve vehicles, along with the transfer records of all 157 so-called "stolen" vehicles would lay bare the full truth of what has been falsely represented to this tribunal since the inception of these legal proceedings.

The undersigned thanks the Court for its time and consideration of this matter, and respectfully prays that this Court exercise the full measure of its inherent authority, not merely to remedy the harm visited upon Defendants, but to vindicate the integrity of this tribunal and restore the faith that every litigant is entitled to place in the institution of justice itself.

Respectfully Submitted,

Nipun Marwaha
Managing Partner
Marwaha Law Group, PLLC