UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X

Case No. 2:23-cv-6188  (JMW)

SUPERB MOTORS, INC., TEAM AUTO SALES LLC.,
ROBERT ANTHONY URRUTIA, 189 SUNRISE
HIGHWAY AUTO LLC., NORTHSHORE MOTOR
LEASING, LLC., BRIAN CHABRIER, JOSHUA
AARONSON, JORY BARON, ASAD KHAN, IRIS
BARON REPRESENTATIVE OF THE ESTATE  OF
DAVID BARON, 1581 HYLAN BLVD AUTO LLC,
1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD
AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239
HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD
AUTO LLC, 76 FISK STREET REALTY LLC, 446
ROUTE 23 AUTO LLC, and ISLAND AUTO
MANAGEMENT, LLC,

     Plaintiffs,

   -against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON,
DWIGHT BLAKENSHIP, MARC MERCKLING,
MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS
NYC INC., GOLD COAST CARS OF SYOSSET LLC,
GOLD COAST CARS OF SUNRISE LLC, GOLD COAST
MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST
MOTORS OF LIC LLC, GOLD COAST MOTORS OF
ROSLYN LLC, GOLD COAST MOTORS OF
SMITHTOWN LLC, UEA PREMIER MOTORS CORP.,
DLA CAPITAL PARTNERS INC., JONES LITTLE & CO.,
CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING,
LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE
HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC

     Defendants.

----------------------------------------------------------------------X

**DEO DEFENDANTS' JOINT MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' LATEST MOTION FOR RECONSIDERATION**

1

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………...…………………………………………….. 3

PRELIMINARY STATEMENT…………………………………...………… 5

RELEVANT LAW……………………………………………..……... 5

    I.  Reconsideration……………………………... …………………………… 5

    II. Crime-Fraud Exception ...............................................................7

ARGUMENT ............................................................................10

CONCLUSION.................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Aiossa v. Bank of Am., N.A.*, No. 10-CV-01275 (JS)(ETB), 2011 WL 4026902 (E.D.N.Y. Sept. 12, 2011) ...............................................................................................................9

*Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420 (S.D.N.Y. 2013)……………………………..10

*Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36 (2d Cir. 2012) .........................6

*Avalon Holdings Corp. v. Gentile*, 350 F.R.D. 8 (S.D.N.Y. 2025) ..........................................8

*B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041 (E.D.N.Y. Feb. 14, 2025) ..................................................................................................14

*Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) ...............................................................7

*Clark v. United States*, 289 U.S. 1 (1933) ................................................................................8

*Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677 (S.D.N.Y. 2014)........................7

*Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372 (S.D.N.Y. 2007)...........................7

*Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282 (E.D.N.Y. 2001).......................6

*In re Bouka*, 654 F. Supp. 3d 283 (S.D.N.Y. 2023)..................................................................7

*In re Grand Jury Subpoena*, 419 F.3d 329 (5th Cir. 2005) ....................................................10

*In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127 (2d Cir. 2025) ..................8

*In re Omnicom Group, Inc. Sec. Litig.*, No. 02-CV-4483, 2007 WL 2376170 (S.D.N.Y. Aug. 10, 2007) .......................................................................................................9

*In re Richard Roe, Inc.*, 168 F.3d 69 (2d Cir. 1999)................................................................8

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. 4 YLL Irrevocable Tr.*, 729 F.3d 99 (2d Cir. 2013) ....................................................................................................................7

*Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351 (E.D.N.Y. 2009)............................................9

*Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181 (S.D.N.Y. 2016) ..........7

*NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390 (S.D.N.Y. 2016) ........... 6

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007) .................................................. 9

*Off. Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman*, 342 B.R. 416 (S.D.N.Y. 2006), on reconsideration, No. 01-CV-8539 (RWS), 2006 WL 2883255 (S.D.N.Y. Oct. 6, 2006) ........................................................................................................................ 7

*R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506 (S.D.N.Y. 2009) ....................................... 6

*Rivas v. Melecio*, No. 23-CV-05718 (JMA), 2024 WL 1096065 (E.D.N.Y. Feb. 21, 2024) .... 7

*Schansman v. Sberbank of Russia PJSC*, No. 19-CV-2985 (ALC) (GWG), 2025 WL 1288670 (S.D.N.Y. May 5, 2025) .................................................................................................. 6

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100 (S.D.N.Y. 2017) ... 9

*Shrader v. CSX Transp. Inc.*, 70 F.3d 255 (2d Cir. 1995) ..................................................... 14

*Superior Site Work, Inc. v. NASDI, LLC*, No. 14-cv-01061 (ADS) (SIL), 2017 U.S. Dist. LEXIS 77453 (E.D.N.Y. May 22, 2017) ................................................................................. 6

*T.Z. v. City of New York*, 634 F. Supp. 2d 263 (E.D.N.Y. 2009) ............................................ 7

*United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 338 F.R.D. 309 (S.D.N.Y. 2021) ................................................................................................................................... 8

## Statutes and Rules

Fed. R. Civ. P. 59(e) .............................................................................................................. 5

Fed. R. Civ. P. 60(b) .............................................................................................................. 5

Fed. R. Evid. 104 .................................................................................................................... 9

Local Civil Rule 6.3, United States District Courts for the Southern and Eastern Districts of New York ............................................................................................................................... 5

## Other Authorities

1 McCormick on Evid. § 95 (9th ed.) ...................................................................................... 8

NOW COMES the Deo Defendants, Harry Thomasson, *pro se,* and the remaining Deo Defendants by their attorney, Nipun Marwaha, and submit the within Memorandum of Law in opposition to Plaintiffs' most recent Motion for Reconsideration at ECF #435, as follows:

## PRELIMINARY STATEMENT

As this Court is well aware, the Deo Defendants have maintained for years that the accusations of wrongdoing in the instant action by the Plaintiffs against the Defendants are entirely false, are knowingly false, and are mere wrongful strategies to engage in the "best defense is a good offense" strategy by each of the Plaintiffs herein.  Try as they might, Plaintiffs suggestions to this Court that there is new evidence of wrongdoing by any of the Deo Defendants is false, and does not reach a preponderance of the evidence needed to utilize the crime-fraud exception to puncture attorney-client privilege here.  The claims by the Plaintiffs against the Defendants are false in all respects, discovery in this case increasingly makes clear that the Deo Defendants committed absolutely no crimes and that the Deos are obviously the owners of 189 Sunrise and NorthShore, and that the action being maintained herein is in bad faith, as undersigned has argued for years in this and multiple actions brought wrongfully by these Plaintiffs here and by some of these Plaintiffs elsewhere.

## RELEVANT LAW

### 1.  Reconsideration

Motions for reconsideration may be filed pursuant to Fed. R. Civ. P. 59(e) or 60(b), as well as Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.  Under Local Rule 6.3, a party has fourteen (14) days following the entry of a court order to serve a notice of motion with an accompanying memorandum, that sets forth succinctly the issues, facts, or laws that were overlooked.  Failure to comply with these requirements warrants denial of the motion. *See*

5

*R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 509 (S.D.N.Y. 2009) ("A court must narrowly construe and strictly apply Rule 6.3 so as to avoid duplicative rulings on previously considered issues and to prevent Rule 6.3 from being used to advance different theories not previously argued, or as a substitute for appealing a final judgment."). The standards for reconsideration under Local Rule 6.3 and Fed. R. Civ. P. 59 are one of the same. *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 394 n.2 (S.D.N.Y. 2016).

Even if considered, a motion for reconsideration "is appropriate when the moving party can demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Herschaft v. N.Y.C. Campaign Fin. Bd.*, 139 F. Supp. 2d 282, 283 (E.D.N.Y. 2001) (internal quotation marks and citation omitted). Notably, "a party may not advance new facts, issues, or arguments not previously presented to the Court on a motion for reconsideration." *Superior Site Work, Inc. v. NASDI, LLC,* No. 14-cv-01061 (ADS) (SIL), 2017 U.S. Dist. LEXIS 77453, at *4 (E.D.N.Y. May 22, 2017) (internal quotations omitted); *see also Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citations omitted) (noting that a motion for reconsideration is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple).  Put simply, a reconsideration motion is not appropriate to simply secure a "do-over." *See Schansman v. Sberbank of Russia PJSC*, No. 19-CV-2985 (ALC) (GWG), 2025 WL 1288670, at *2 (S.D.N.Y. May 5, 2025) (collecting cases) (Parties are "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so.")

All that said, reconsideration is warranted only when: (i) the moving party points to an intervening change in controlling law, (ii) newly available evidence is identified, (iii) clear error is established, or (iv) reconsideration is necessary to avoid a manifest injustice. *See Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021); *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. 4 YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (same); *T.Z. v. City of New York*, 634 F. Supp. 2d 263, 268 (E.D.N.Y. 2009) (same). Moreover, Rule 60(b) permits relief from an order or judgment for mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, or in exceptional or extraordinary circumstances.  Fed. R. Civ. P. 60(b).  The question, therefore, is whether any of these grounds have been met. And, it is also within the sound discretion of the district court to decide whether or not to grant a motion for reconsideration.  *See Gupta v. Attorney Gen. of United States*, 52 F. Supp. 3d 677, 679-80 (S.D.N.Y. 2014); *Rivas v. Melecio*, No. 23-CV-05718 (JMA), 2024 WL 1096065, at *1 (E.D.N.Y. Feb. 21, 2024).

Reconsideration "must be narrowly construed and strictly applied so as to avoid duplicative rulings on previously considered issues." *In re Bouka*, 654 F. Supp. 3d 283, 286 (S.D.N.Y. 2023) (quoting *Merced Irrigation Dist. v. Barclays Bank PLC*, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016)). Thus, "[a] narrow application of the rule not only 'helps [] to ensure the finality of decisions,' but also 'prevent[s] the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Id.* (quoting *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007)).

### 2.  Crime-Fraud Exception

The crime-fraud exception is a limited exception to the attorney-client privilege. The exception applies when there is a showing of legal advice provided in furtherance of a crime or fraud. *See Off. Comm. of Asbestos Claimants of G-I Holding, Inc. v. Heyman,* 342

B.R. 416, 427 (S.D.N.Y. 2006), on reconsideration, No. 01-CV-8539 (RWS), 2006 WL 2883255 (S.D.N.Y. Oct. 6, 2006) ("The Second Circuit has held that the crime fraud exception to the attorney-client privilege is a limited exception….") Once that showing is established, the privilege no longer lies with the client, and the communications –once privileged –lose that protection and are thus discoverable. *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.,* 338 F.R.D. 309, 315 (S.D.N.Y. 2021) (*quoting Clark v. United States*, 289 U.S. 1, 15 (1933) ("However, '[t]he privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.'")). Since the policy of the privilege is that of promoting the administration of justice, it would be a perversion of the privilege to extend it to the client who seeks advice to aid him in carrying out an illegal or fraudulent scheme. Advice given for those purposes would not be a professional service but participation in a conspiracy. Accordingly, it is settled under modern authority that the privilege does not extend to communications between attorney and client where the client's purpose is the furtherance of a future intended crime or fraud. § 95. Consultation in furtherance of crime or fraud, 1 MCCORMICK ON EVID. § 95 (9th ed.).

A party seeking to invoke the crime-fraud exception must demonstrate that there is probable cause (1) "that the client communication or attorney work product in question was itself in furtherance of the crime or fraud" and (2) "to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity." *In re Grand Jury Subpoenas Dated Sept. 13, 2023*, 128 F.4th 127, 141–42 (2d Cir. 2025) (*quoting In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999)); *Avalon Holdings Corp. v. Gentile*, 350 F.R.D. 8, 14 n.4 (S.D.N.Y. 2025)

8

"The crime-fraud exception does not apply simply because privileged communications would provide an adversary with evidence of a crime or fraud. … 'Probable cause' means 'a reasonable basis for believing that the objective was fraudulent.' It is the client's intent to engage in criminal activity, not counsel's, that is relevant; counsel need not even be aware that their assistance was sought for criminal purposes." *Linde v. Arab Bank, PLC*, 608 F. Supp. 2d 351, 357 (E.D.N.Y. 2009) (internal citations omitted). "In assessing whether the Plaintiffs have demonstrated probable cause, the Court may review, in camera, the privileged document and ascertain if it supports the view that it was being used at the time of its drafting to commit or conceal a fraud or a crime." *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 132 (N.D.N.Y. 2007). "There has been little guidance on the quantum of proof needed to invoke the crime/fraud exception." *Aiossa v. Bank of Am., N.A.,* No. 10-CV-01275 (JS)(ETB), 2011 WL 4026902, at *6 (E.D.N.Y. Sept. 12, 2011). "However, courts in the Southern and Eastern Districts of New York have applied a standard more demanding 'than a simple, if reasonable, suspicion of fraud' and less demanding than fraud shown by a preponderance of the evidence." *Id. (quoting In re Omnicom Group, Inc. Securities Litig.*, No. 02-CV-4483, 2007 WL 2376170, at *11 (S.D.N.Y. Aug. 10, 2007)); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* 319 F.R.D. 100, 107 (S.D.N.Y. 2017) ("Indeed, requiring that the showing be made by a preponderance of the evidence is consistent with the procedure under Rule 104 of the Federal Rules of Evidence, which provides that preliminary questions regarding the existence of a privilege are to be decided by the court using that standard.") "If the court finds that the crime-fraud exception is applicable, it "does not extend to all communications made in the course of the attorney-client relationship, but rather is limited to those communications and documents in furtherance of the contemplated or ongoing criminal or fraudulent conduct." *Amusement*

*Indus., Inc. v. Stern,* 293 F.R.D. 420, 427 (S.D.N.Y. 2013) *(quoting In re Grand Jury*

*Subpoena*, 419 F.3d 329, 343 (5th Cir. 2005)).

**ARGUMENT**

Here, Plaintiffs seek a "do-over" (again) on their application to pierce the attorney-client privilege between Anthony Deo and undersigned ("Thomasson") on the basis of the crime-fraud exception. Whether this Court views the previous application as having ignored (to their own detriment) the issues Plaintiffs now present for reconsideration, or, whether this Court did consider these issues already either on its own or from the Plaintiffs' underlying Motion, the Plaintiffs' instant Motion for Reconsideration is merely seeking another bite of the apple. This Court found in its underlying decision/Order that there is a "paucity" of evidence indicating a crime here; nothing that the Plaintiffs submit for the first time (inappropriately) on reconsideration changes that finding.

While it is true that additional discovery has been conducted since the Plaintiffs made their initial Motion to Compel (and were also allowed replies by the Court on February 5, 2026; such replies were, in fact filed thereafter), no additional evidence of crimes committed by any Defendant has been uncovered. To the contrary, in a deposition held on March 30, 2026 (a true and accurate copy of the transcript is attached hereto as Exhibit A), Daniel O'Sullivan, a former controller for the Plaintiffs Baron family who worked at various Baron owned or operated dealerships for 43 of his 45 years of work and feels loyalty to them (O'Sullivan transcript *at* page 213, lines 13-25), and was the controller at NorthShore and 189 Sunrise (O'Sullivan transcript *at* page 51, lines 2-8; "the two used car dealerships"), testified in sum and substance as follows:

1. Every dollar amount (including cash) given to Marc Merckling for deposit on behalf of NorthShore and 189 Sunrise was, in fact, actually deposited by Merckling and accounted for personally by O'Sullivan himself (O'Sullivan

10

transcript *at* page 168, lines 11-22);

2.  Every dollar amount (including cash) given to Dwight Blankenship for deposit on behalf of NorthShore and 189 Sunrise was, in fact, actually deposited by Blankenship and accounted for personally by O'Sullivan himself (*Id.*);

3.  Every dollar amount (including cash) taken by Anthony Deo from NorthShore and 189 Sunrise was accounted for and deducted from Deo's capital account by O'Sullivan himself (O'Sullivan transcript *at* page 168, line 23-page 169, line 3);

4.  O'Sullivan believed that Anthony Deo was an owner of NorthShore from his first meeting there (*see* O'Sullivan transcript *at* page 52, line 24- page 53, line 3; page 227, lines 2-6);

5.  Even more important, O'Sullivan testified about Anthony Deo's ownership of a "capital account" at NorthShore and 189 Sunrise (O'Sullivan transcript *at* page 161, lines 14-25, and page 162, lines 2-4), "capital accounts" are possessed at a dealership by the owner of the dealership (O'Sullivan transcript *at* page 162, lines 18-23), and every penny of cash taken by Anthony Deo was accounted for by O'Sullivan through his record keeping and capital account deductions (O'Sullivan transcript *at* pages 162-168, notably page 165, line 22- page 168, line 4).  In addition to reducing Deo's capital account each time Deo took cash, O'Sullivan made most of the cash deposits to the bank himself (O'Sullivan transcript *at* page 168, lines 5-10), and even when Marc Merckling and Dwight Blankenship made large deposits ("they had guns"), all deposits were accounted for by O'Sullivan (O'Sullivan transcript *at* page 168, line 11- page 169, line 3).

11

6. Like the individual Plaintiffs, O'Sullivan doesn't even know who I am, and made no allegations of actionable wrongdoing against me (O'Sullivan transcript *at* page 142, line 21- page 143, line 3); and

7. Both O'Sullivan and Wendy Kwun (a true and accurate copy of Wendy Kwun's transcript is attached hereto as Exhibit B), the CFO for the IAG Plaintiffs, testified that Anthony Deo made approximately $60,000.00 payments to the IAG plaintiffs monthly for approximately one year (O'Sullivan transcript, page 238, lines 7-10; Kwun transcript page 228, lines 10-19); O'Sullivan called it a "management fee" from Deo to the IAG plaintiffs (O'Sullivan transcript, page 172, lines 15-25, and page 173, lines 2-23), and that these payments were made by and through the accounts of NorthShore and 189 Sunrise, approximately half of the $60,000.00 paid each month from each of the two companies' accounts (*see* Kwun transcript *at* page 230, lines 19-25, through page 231, lines 2-13; O'Sullivan transcript *at* page 218, lines 21-25, and page 219, lines 2-6), obviously in return for the Floor plans provided to the Deos by the IAG Plaintiffs (Kwun transcript *at* page 231, lines 8-13; O'Sullivan transcript *at* page 238, lines 7-10).  This is a major slip by these two longtime IAG employees; they confirm that Anthony Deo was making payments to IAG for the floor plans provided:  If the two dealerships were actually owned by any of the IAG plaintiffs, then they would have taken any money they wanted any time they wanted, but certainly not from Anthony Deo as Kwun testified *at* page 231, lines 8-13: Q-"This was a fee that you believe Anthony [Deo] had to pay for some of the things that the Island Auto Group were providing to those dealerships [mainly the floor

plans]; is that right?"  A- "That's my understanding."

8. Simply put, it is obvious from the testimony of Plaintiffs' own controller and CFO (O'Sullivan and Kwun), that the Deos were the owners of NorthShore and 189 Sunrise at all relevant times, and for the purposes of the crime-fraud exception, there is no evidence of any crime or fraud having taken place by any of the Deo Defendants, especially since they are the owners of those two businesses at all relevant times.

In addition, it was apparent from the depositions of Flushing Bank and Libertas that they still believe there were no improprieties associated with the giving of loans to Anthony Deo, and upon information and belief, the attorneys for these two lenders believe that the Josh Aaronson approved tax returns listing Anthony and Sara Deo as the owners of NorthShore and 189 Sunrise are sufficient both to make appropriate loans and for those returns to be relied upon in making the decisions to loan money to Deo.

The "new" evidence cited by the Plaintiffs is a red herring.  Plaintiffs have possessed the documents related to Deo's obtaining a loan for *years,* including the Thomasson letters.  They could have gone to Justice Gianelli to obtain relief pursuant to their allegations of Deo's violation of that Court's (vacated) Order to Show Cause, but they never did, especially after Judge Gianelli found that the IAG Plaintiffs had "no likelihood of success on the merits": of their OSC submissions. Her Order vacating the Order to Show Cause was issued in June, 2023, and it is inappropriate for the Plaintiffs to now seek some sort of enforcement of that Order here, nearly three (3) years hence.

Not only did the Plaintiffs possess the "new" information and documents for nearly three years at this point, but they utterly fail to account for the fact that Deo was obtaining loans to buy cars for the dealerships at issue (hence the name of the account into which Deo placed money:

"Car Buyers, Inc."  This is not a coincidence, your Honor.  If anyone wants to assert that loans were improper, the loaning lenders, Flushing and Libertas, are the appropriate parties to assert wrongdoing against Deo, and the Plaintiffs have no such standing. Indeed, both banks' representatives testified that they still find no improprieties with Deo's applications and use of the funds at issue.  Trying merely to raise suspicion without any actual new evidence is insufficient to invoke reconsideration.

Candidly, it looks like the Plaintiffs are being hoisted by their own petard, and that quite simply is not good reason for reconsideration.  Discovery is eviscerating the Plaintiffs' case, and is not demonstrating any evidence of crimes by undersigned, or any Deo co-Defendant for that matter.  *See Shrader v. CSX Transp. Inc.* , 70 F.3d 255, 257 (2d Cir. 1995) ("The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked- matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738 (MKB), 2025 WL 510041, at *2 (E.D.N.Y. Feb. 14, 2025) (same).

## CONCLUSION

Undersigned respectfully requests that this Court deny the latest Motion for Reconsideration in all respects and grant such other and further relief which this Court deems necessary and just.

Dated: April 22, 2026                          Respectfully submitted,


/S/ *Nipun Marwaha*                     /S/ *Harry R. Thomasson*

_____                  _____

Nipun Marwaha, Esq.                    Harry R. Thomasson, *Pro Se*
1539 Franklin Avenue, Ste. 201         3280 Sunrise Highway, Box 112
Mineola, New York  11501               Wantagh, New York  11793
Tel. 516-503-4624                      Tel.  516-557-5459
Email:  nipun@marwahalaw.com           Email:  hrtatty@verizon.net

14