**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

SUPERB MOTORS INC. *et al.*,

**FILED**
**CLERK**

**4/30/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

         *Plaintiffs*,

         -against-

ANTHONY DEO *et al.*,

         *Defendants*.
-------------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

23-CV-6188 (JMW)

**A P P E A R A N C E S:**

        **Harry R. Thomasson**
        3280 Sunrise Highway, Ste Box 112
        Wantagh, NY 11793
        *Defendant Appearing Pro Se*

        *No appearances by other Parties*

**WICKS**, Magistrate Judge:

While this case has had its fair share of discovery disputes and countless motion practice, the Court is now confronted with an issue that attorneys should never want to be a part of: the use of generative artificial intelligence ("AI") to assist in the drafting of legal papers that results in the creation of a legal submission containing citations to fictitious or non-existent legal authority – commonly referred to as "hallucinated" or fake case citations. In a brief filed in opposition to Plaintiffs' Motion to Vacate the Preliminary Injunction (ECF No. 353), pro se Defendant Harry R. Thomasson, Esq. ("Thomasson") relied upon AI-generated content that created fictitious legal citations. That conduct unquestionably violated Federal Rule of Civil Procedure 11. *See Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 460 (S.D.N.Y. 2023) (Castel, J.); *see also Hall v. Acad. Charter Sch.*, No. 24-CV-08630-JMW, 2025 WL 2256653, at *1 (E.D.N.Y.

1

Aug. 7, 2025).  The Court issued a sua sponte Order to Show Cause ("OSC") on April 20, 2026, directing Thomasson to show cause, in writing, why the Court should not impose sanctions upon him for the conduct indicated in Superb Plaintiffs'[1] reply brief at ECF No. 372 for the fabricated cites in Thomasson's opposition filed at ECF No. 353.  (*See* Electronic Order dated 4/20/2026.) Thomasson filed a response, but in no way does it excuse or mitigate the fabricated filing (*see* ECF No. 484).  Therefore, the Court imposes sanctions for the reasons set forth below.

## BACKGROUND

This case commenced on August 16, 2023, and is now reaching its 500th docket entry benchmark. Early on, the Court issued an Order disqualifying Thomasson (a New York admitted attorney) from representing a subset of Defendants known as the "Deo Defendants" as well as himself due to the advocate-witness rule. (*See* ECF No. 117.) Thereafter, Thomasson remained as a Defendant and proceeded pro se. (*See* ECF No. 265.) On December 1, 2025, Superb Plaintiffs filed a Motion to Vacate the Preliminary Injunction. (ECF No. 340.) Thomasson filed an opposition to that motion. (ECF No. 353.) However, that opposition contained non-existent case citations. While Superb Plaintiffs pointed to only one case, "*In re Amica Mut. Ins. Co.*, 85 A.D.3d 1510 (3rd Dept. 2011)," the Court independently found – with little effort -- another fake citation, "*In re Marcus*, 491 F.2d 56, 60 (2nd Cir. 1974)". As a result, the Court issued an OSC as to why sanctions should not be imposed under Rule 11. (*See* Electronic Order dated 4/20/2026.)

In response to the Court's OSC, Thomasson submitted a mea culpa declaration attesting that this was "an innocent mistake," and that he "do[es] not use AI." (*See* ECF No. 484 at 3-4.) In sum, Thomasson casts blame on computer "viruses and malware" for the fake citations and that he "was completely fooled by whoever infiltrated [his] computer" and he will now "be

---

[1] The "Superb Plaintiffs" are Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia.

vigilant in trying to avoid a repeat going forward." (*Id.*) Indeed, he recites how he took his computer to Staples for diagnostic repairs. Even assuming "viruses and malware" infected his Google searches,[2] what is absent is that Thomasson confirmed all citations prior to submitting his opposition with the Court.

## **DISCUSSION**

The question presented is simple: do the circumstances here constitute sanctionable conduct under Rule 11 and the applicable standards for competence and candor before a tribunal. *See generally* Fed. R. Civ. P. 11. Rule 11 plainly states:

> By presenting to the court a pleading, written motion, or other paper —whether by signing, filing, submitting, or later advocating it—an attorney ... certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances ... the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law.

Fed. R. Civ. P. 11(b)(2).

"Rule 11 applies both to represented and *pro se* litigants." *Romero v. Goldman Sachs Bank USA*, No. 25-CV-2857-GHW, 2025 WL 1916119, at *2 (S.D.N.Y. June 25, 2025) (quoting *Maduakolam v. Columbia U.*, 866 F.2d 53, 56 (2d Cir. 1989)). Here, although Thomasson is pro se, he is an admitted attorney. "A violation of Rule 11 may result in the imposition of sanctions[, which] may include non-monetary and monetary sanctions." *Id.*

To that same end, the New York Rules of Professional Conduct ("NYRPC") also provide for the minimum expected standards for lawyers practicing in New York courts. *See* NYRPC § 3.3(a)(1) ("A lawyer shall not knowingly [] make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the

---

[2] Google is one of the tools Thomasson purports to use in conducting legal research. (*See* ECF No. 484.)

3

lawyer"). Comment 4 to NYRPC § 3.3 notes that "legal argument based on a knowing false representation of law constitutes dishonesty toward a tribunal." *See also Mata*, 678 F. Supp. 3d at 460 (same and imposing sanctions under Rule 11 for the use of non-existent judicial opinions). NYRPC § 1.1 states that "[a] lawyer should provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." NYRPC § 1.1(a); *see also Benjamin v. Costco Wholesale Corp.*, 779 F. Supp. 3d 341, 349 (E.D.N.Y. 2025) (citing NYRPC § 1.1(a) ("Lawyers in the State of New York are tasked with "provid[ing] competent representation to a client.")). Competent representations also require counsel,

> [t]o maintain the requisite knowledge and skill, a lawyer should (i) keep abreast of changes in substantive and procedural law relevant to the lawyer's practice, (ii) keep abreast of the benefits and risks associated with technology the lawyer uses to provide services to clients or to store or transmit confidential information, and (iii) engage in continuing study and education and comply with all applicable continuing legal education requirements under 22 N.Y.C.R.R. Part 1500.

NYRPC § 1.1 at cmt. 8; *see also Cassata v. Michael Macrina Architect, P.C.*, 250 N.Y.S.3d 778, 788 (N.Y. Sup. Ct. 2026) (citing *id.*)

Unfortunately, reliance on AI-generated hallucinated cites in legal briefs remains a concern for the Courts, notwithstanding the years and number of publicized cases on the topic. *See Hall*, 2025 WL 2256653, at *4 ("Regrettably, the number and regularity with which courts have been faced with hallucinations in court filings continues to rise both in this country and abroad.") The number of court filings with non-existent cases is rising rapidly. *See* Damien Charlotin, *AI Hallucination Cases*, (Apr. 29, 2026) https://www.damiencharlotin.com/hallucinations/ (database tracking legal decisions "in cases where generative AI produced hallucinated content," evidencing **919 cases to date**). Put simply, lawyers by now should know better than submit briefs without cite-checking authority. That obligation long predated AI and continues after AI as an obligation under Rule 11.

Under the circumstances presented here and considering Thomasson's response to the OSC, this Court is left with no choice but to impose sanctions under Rule 11 which is well in line with the developing case law. *See e.g.*, *United States v. Cohen*, 724 F. Supp. 3d 251, 258 (S.D.N.Y. 2024) (collecting cases) ("There is no doubt that sanctions can be imposed on at least some of these grounds for the citation to non-existent cases); *Cartagena v. Dixon*, No. 25-CV-03552 (JLR), 2026 WL 673811, at *5 (S.D.N.Y. Mar. 10, 2026) ("Sanctions may be imposed for submitting false or nonexistent legal authority to the Court"); *Kaur v. Desso*, No. 25-CV-726 (AMN), 2025 WL 1895859, at *3 (N.D.N.Y. July 9, 2025) ("Indeed, courts in this Circuit have not hesitated to find that the submission of fabricated legal authority resulting from the use of artificial intelligence is sanctionable conduct"); *Rhee-Karn v. Lask*, No. 15-CV-9946 (RWL), 2025 WL 3287148, at *2 (S.D.N.Y. Oct. 9, 2025), *reconsideration denied*, No. 15-CV-9946 (RWL), 2025 WL 3287146 (S.D.N.Y. Oct. 20, 2025) ("Recently, with the rise of artificial intelligence ('AI'), courts have expressed concern about and issued sanctions against attorneys who have filed documents citing cases that do not exist, do not contain language for which they are quoted, or have some other flaw characteristic of AI 'hallucinations'"); *Park v. Kim*, 91 F.4th 610, 613-16 (2d Cir. 2024) (referring counsel to the grievance committee for the use of non-existent judicial opinions through artificial intelligence).

However, when "a court considers whether to impose sanctions sua sponte, it 'is akin to the court's inherent power of contempt,' and, 'like contempt, sua sponte sanctions in those circumstances should issue only upon a finding of subjective bad faith.'" *Mata*, 678 F. Supp. 3d at 462 (alterations omitted); *see also Cohen*, 724 F. Supp. 3d at 258 ("Significantly, however, to impose sanctions on any ground here requires a finding of "bad faith." … Rule 11 does not always require bad faith, but it does where, as here, a court raises the prospect of sanctions on its

5

own initiative.") "Courts in this circuit have repeatedly found that presenting AI-generated hallucinations as valid caselaw *constitutes subjective bad faith*." *McClellon v. Rickard*, No. 24-CV-10053 (VSB) (BCM), 2026 WL 686499, at *9 (S.D.N.Y. Mar. 11, 2026) (emphasis added). Here, the record is clear that Thomasson did not check his citations or brief entirely prior to filing a submission to the Court. Indeed, Thomasson makes no effort to demonstrate that he verified the two nonexistent, AI-generated cases. Rather, Thomasson focuses on the alleged viruses or malware that caused his computer to be "infiltrated". (ECF No. 484 at 3-4.) Thomasson attached documents from Staples that show antivirus programs were installed and that virus threats were found. (*See* ECF No. 484-1.) However, that unfortunately does not negate an attorney's responsibility to confirm his or her work and comply with all the relevant rules. *See Kaur*, 2025 WL 1895859, at *3 (quoting *Park*, 91 F.4th at 615) ("The Second Circuit has held that '[a]t the very least, the duties imposed by Rule 11 require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely.'"); *76 Route 6 Holdings Inc., v. Town of Yorktown, NY et al.*, No. 25-CV-693 (KMK), 2026 WL 867180, at *5 n.2 (S.D.N.Y. Mar. 30, 2026) (same). This Court acknowledges that some courts have held pro se litigants to a lower standard when facing the instant issue. *See Yaroshevsky v. Karlin*, No. 25-CV-2747 (DG) (SDE), 2026 WL 522624, at *8 (E.D.N.Y. Feb. 23, 2026), *report and recommendation adopted*, No. 25-CV-02747 (DG) (SDE), 2026 WL 879292 (E.D.N.Y. Mar. 31, 2026) (discussing the more lenient standard for pro se appearances). Yet, as Thomasson is an attorney, that standard should not be lowered.

Finally, the question of what sanctions to be imposed is appropriate here must be answered. "In similar cases where sanctions have been imposed on attorneys for the submission of nonexistent, AI-generated cases, monetary sanctions have ranged from $1,000 to $5,000."

*Ramirez v. Humala*, No. 24-CV-242 (RPK) (JAM), 2025 WL 1384161, at *2 (E.D.N.Y. May 13, 2025) (collecting cases). Because Thomasson does acknowledge the severity of using AI-generated citations and represents to the Court that he will be vigilant moving forward to avoid this from happening, a lower monetary sanction is appropriate. *See Benjamin*, 779 F. Supp. 3d at 351 (imposing a $1,000 sanction) ("The Court's sanction is lower than in many other similar cases in part because of Ms. Hovsepyan's candor and sincere regret."); *Ramirez*, 2025 WL 1384161, at *2 (imposing sanction of $1,000) ("A sanction on the low end of the spectrum is warranted here as a result of Ms. Stillman's prompt admission of error, her and Ms. Ruiz's apologies to the Court…."); *Mata*, 678 F. Supp. 3d at 466 (imposing a $5,000 sanction); *see also Nguyen v. Savage Enters.*, No. 24-CV-00815-BSM, 2025 WL 679024, at *1 (E.D. Ark. Mar. 3, 2025) ("Nguyen's violation of Rule 11(b) warrants a reasonable sanction, and $1000 is reasonable because it is on the low end of the range of sanctions imposed on others who have engaged in similar conduct."); *Cassata*, 250 N.Y.S.3d at 797 (imposing various sanctions including that of monetary sanctions to be paid to the Lawyer's Fund for Client Protection of $1,000 per sanctioned attorney).

A review of the above leads to the conclusion that a monetary sanction of $1,500 is appropriate. Thomasson "once confronted by the Court, … did not attempt to defend, or obfuscate, his sanctionable conduct." *See Kaur*, 2025 WL 1895859, at *4; *see also United States v. McGee*, 806 F. Supp. 3d 1264, 1273, 1275 (S.D. Ala. 2025) (imposing sanctions of $5,000) ("Mr. Johnson admits that he used Ghostwriter Legal to aid in the drafting of his motion to continue without verifying the citations and statements it provided. He does not contest that it was his responsibility to review and confirm authorities prior to submission.") The Court is satisfied this monetary sanction is the least severe while at the same time enough to achieve the

goal of deterrence. *See Yaroshevsky*, 2026 WL 522624, at *7 (quoting *Schottenstein v. Schottenstein,* 04-CV-5851, 2005 WL 912017, at *2 (S.D.N.Y. Apr. 18, 2005) ("[B]ecause the purpose of imposing Rule 11 sanctions is deterrence, a court should impose the least severe sanctions necessary to achieve that goal.")).  And after all, "[a] sanction imposed under these rules must be limited to what suffices to deter repetition of the conduct or comparable conduct of those similarly situated." Fed. R. Civ. P. 11(c)(4).

Moreover, while some courts have taken further steps in referring the offending lawyer to the grievance committee, the Court declines to do so under the circumstances presented. *Compare Park*, 91 F.4th at 613-16 (referred to grievance committee) *Mezu v. Mezu*, 346 A.3d 181, 193 (App. Ct. Md. 2025), *reconsideration denied* (Nov. 24, 2025), *cert. dismissed*, 352 A.3d 376 (2026) (same); *Ibach v. Stewart*, No. SC-2025-0106, 2026 WL 1110659, at *13 (Ala. Apr. 24, 2026) (referred to Alabama State Bar); *see also United States v. Farris*, 171 F.4th 920, 924 (6th Cir. 2026) (sending copies of opinion to other Courts as well as to the Chief Judge of the Sixth Circuit to consider disciplinary proceedings); *Joseph Maldonado v. Professional Animal Retirement Center*, No. 25-CV-454 (HAB)(ALT), 2026 WL 925530, at *8 (N.D. Ind. Apr. 1, 2026) (sending copies "to the attorney-disciplinary authority for the State of Rhode Island Judiciary").  There is nothing in the record to indicate that Thomasson "knowingly" made a false representation of law in violation of NYRPC 3.3.

**CONCLUSION**

For the reasons stated, the Court imposes a monetary sanction of **$1,500** upon attorney

Harry R. Thomasson, Esq., that must be paid by him into the Registry of this Court on or before

**May 15, 2026.**

Dated: Central Islip, New York
April 30, 2026

S O   O R D E R E D:

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

9