UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA,  189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, individually and derivatively as a member of NORTHSHORE MOTOR LEASING, LLC, JOSHUA AARONSON, individually and derivatively as a member of 189 SUNRISE HWY AUTO, LLC, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP,  FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.

---------------------------------------------------------------------X

Case No.: 2:23-cv-6188 (JMW)

**DECLARATION OF ROBERT ANTHONY URRUTIA IN OPPOSITION TO THE DEO DEFENDANTS' MOTIONS FOR CONTEMPT & SANCTIONS**

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

1.      I am the President of Plaintiffs Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").[1]

2.      Superb, Team, and I (the "Superb Plaintiffs") consist of one group of Plaintiffs in this case who have been defrauded and harmed by Defendant Anthony Deo ("Deo") and his cohort.

3.      As such, I am familiar with all the facts and circumstances heretofore had herein based upon my personal knowledge and a review of documents I maintain at Superb and Team in addition to information I have learned from employees, customers, vendors, and other third parties concerning the Defendants and their conduct.

4.      I respectfully submit this declaration in opposition to the Deo Defendants' most recent motions for contempt and sanctions.

5.      For the reasons set forth below, both contempt applications should be denied, and the Court should instead grant Plaintiffs' pending motion to dissolve the preliminary injunction (ECF Docket Entry 340), which would render all vehicle custody disputes moot.

6.      The Deo Defendants' motions must be understood in their proper context.

7.      On September 23, 2025, the Hon. Jerome C. Murphy, J.S.C. ("Justice Murphy") of the Nassau County Supreme Court granted summary judgment in my favor, finding as a matter of law that Deo:

(i)      misrepresented that he was unaware of any threat of litigation;

(ii)     (ii) misrepresented that he owned one hundred percent of Northshore Motor Leasing LLC ("Northshore") and 189 Sunrise Hwy Auto LLC ("Sunrise") free and clear of any liens and encumbrances; and

---

[1] I was also the owner of Volkswagen of Freehold in New Jersey, Team Mitsubishi-Hartford in Connecticut, and Team Nissan of Pittsfield, Massachusetts.

2

(iii)    failed to consummate the Cross-Purchase Agreement he executed with me. See Urrutia v. Deo, Index No. 618608/2023 (Nassau County Supreme Court), NYSCEF Docket Entry 134.

8.    Deo's cross-motion was denied and his counterclaims were dismissed in May 2025.

9.    Deo moved for reconsideration of Justice Murphy's September 23, 2025 decision; that motion was also denied.

10.    Deo has exhausted every avenue of challenge before Justice Murphy.

11.    The ruling stands, is final, and constitutes a judgment on the merits establishing, as a matter of law, that Deo was never a legitimate owner of Superb, Northshore, nor Sunrise.

12.    The preliminary injunction entered in September 2023 existed solely to help Superb survive as a going concern, or – arguably – to preserve assets during a disputed ownership contest.

13.    That dispute is conclusively resolved as a result of Justice Murphy's decision.

14.    Deo has no ownership interest; the injunction must therefore be dissolved.

15.    Against this backdrop, Deo's new counsel — who substituted in approximately three weeks ago — has now filed contempt motions recycling arguments this Court and prior counsel have litigated for nearly three (3) years, while conspicuously omitting the record evidence that defeats each one.

16.    The pattern is unmistakable: a party judicially confirmed as a fraudster by virtue of his guilty plea in federal court to wire fraud, who opened a competing dealership using Superb's stolen assets while shuttering four of Plaintiffs' franchises and destroying over $20 million in business value, now asks this Court to sanction his victim for the deterioration of vehicles that would not require an injunction in the first place but for his own fraud.

**The Lexus NX Sale Was Authorized, Disclosed, And Escrowed; Contempt Is Unwarranted**

17. The centerpiece of Deo's contempt motion—that the Superb Plaintiffs sold the 2018 Lexus NX (VIN: JTJBARBZ9J2171144) and "pocketed the proceeds"—is directly and completely refuted by this Court's own docket.

18. The full chronology is as follows.

19. On May 8, 2024, this Court authorized the sale of Superb injuncted vehicles with proceeds to be placed in escrow. See ECF Docket Entry 172 at 15.

20. On May 29, 2025, Plaintiffs sold twelve (12) vehicles pursuant to that Order and filed notice with this Court the following day. See ECF Docket Entry 293 at 2.

21. A complication arose when a buyer inadvertently took a 2019 BMW X1 instead of the intended 2018 Lexus NX; this was fully disclosed to the Court in Urrutia's June 20, 2025 declaration; the BMW was returned to the Hartford lot and the Lexus was sold in its place as originally intended. See ECF Docket Entry 304 ¶¶ 80-82.

22. All twelve sale proceeds, totaling $110,000, were reported to this Court and placed in my counsel's IOLA account. See ECF Docket Entry 297-1.

23. On July 1, 2025, this Court reviewed Thomasson's objections to the sale and expressly ordered the $110,000.00 transferred to an interest-bearing escrow account, directing that it "shall remain in that escrow account, unencumbered and shall not be used, transferred or disbursed without application on notice to all counsel and leave of Court." See ECF Docket Entry 309.

24. Deo's new counsel asserts the Lexus proceeds were "pocketed."

25. However, those proceeds are in a court-supervised escrow account by order of this Court. See ECF Docket Entry 309.

26.     The BMW X1 (VIN: WBXHT3C57K5L90705) found at the Hartford lot during Deo's April 5, 2026 inspection is entirely consistent with Plaintiffs' June 2025 sworn account—it was returned there when the error with the 2018 Lexus NX was corrected. See ECF Docket Entry 304 ¶ 81.

27.     As a result, there is no contempt; there is a court order that was followed, proceeds that are secured, and a new lawyer who filed a motion without reading ECF Docket Entries 304 and 309.

**Deo Defendants' Second Letter Motion for Contempt Must be Denied**

28.     The Deo Defendants' April 26, 2026 letter motion (ECF Docket Entry 486) invokes 28 U.S.C. § 1927, 18 U.S.C. § 401, and Chambers v. NASCO, 501 U.S. 32 (1991), on the basis that the BMW X1 (VIN: WBXHT3C57K5L90705) was found at the Hartford lot on April 5, 2026, supposedly proving that Plaintiffs' sworn representation that the vehicle was "sold" was false.

29.     The premise fails.

30.     The Superb Plaintiffs disclosed in my June 20, 2025 sworn declaration (ECF Docket Entry 304 ¶¶ 80-82), filed ten months ago before Deo's counsel conducted his "inspection" and complete review of the docket, that the BMW X1 was not sold because a buyer had inadvertently taken it instead of the Lexus NX, and that the BMW had been returned to the Hartford lot while the Lexus was sold in its place.

31.     The BMW's presence at Hartford on April 5, 2026 is therefore not evidence of fraud. It is evidence that my declaration is true and accurate.

32.     Deo's new counsel filed a fraud-on-the-tribunal motion without reading a document that has been on this Court's docket for ten months.

33.    That is not a basis for sanctions against Plaintiffs; it is a basis for skepticism about the quality of the new counsel's pre-filing investigation, which warrants consideration of sanctions by this Court against him and the Deo Defendants.

34.    I have authorized my attorney to issue a Rule 11 Safe Harbor Notice to give the Deo Defendants an opportunity to withdraw their baseless motions.

35.    However, I nonetheless ask this Court to impose sanctions against the Deo Defendants and their counsel for unreasonably and vexatiously multiplying these proceedings in violation of 28 U.S.C. § 1927 and pursuant to this Court's inherent powers.

36.    In that regard, the personal sanctions demanded against my attorney under 28 U.S.C. § 1927 fares no better.

37.    As discussed above, that statute requires a finding that counsel unreasonably and vexatiously multiplied the proceedings.

38.    My attorney's letter representing that the vehicle sale proceeds had been escrowed (ECF Docket Entry 297) was accurate and entirely consistent with my declaration (ECF Docket Entry 304) accounting for the BMW-Lexus substitution, which had already been disclosed to the Court.

39.    There is no false representation, no multiplication of proceedings, and no basis for relief under 28 U.S.C. § 1927 in light of that.

40.    The attorney who has multiplied these proceedings with motions that ignore controlling docket entries is not Emanuel Kataev, Esq.

41.    The Deo Defendants' letter motion requests that certified DMV records and bank records be delivered directly from issuing institutions to this Court's chambers, bypassing counsel entirely.

6

42.     I am advised by my counsel that no provision of the Federal Rules of Civil Procedure, the Local Rules of this Court, or any applicable authority authorizes this mechanism.

43.     It is my understanding that records obtained in civil litigation are produced through normal discovery channels with appropriate service on all parties.

44.     The demand that records bypass counsel and proceed directly to chambers is a procedural novelty without legal foundation (most likely generated by artificial intelligence) that this Court should decline to adopt.

**Deo's Own Photographic Exhibits Disprove His Contempt Allegations**

45.     Deo's contempt motion describes the Hartford lot in apocalyptic terms.

46.     His own photographs, which this Court should not consider as admissible evidence for the reasons set forth in the accompanying letter response in opposition, tell a fundamentally different story.

47.     The aerial photographs submitted as Exhibit C show the vehicles stored behind a building structure, surrounded by a chain-link perimeter fence, with the only vehicle access path physically obstructed by large yellow construction equipment.

48.     Astoundingly, Deo's counsel labels this inadequate security.

49.     In reality, his own photographs confirm multiple layers of physical barriers between any would-be thief and the vehicles.

50.     The suggestion that "three ne'er-do-wells with a pickup truck" could easily remove these vehicles is directly contradicted by the unauthenticated drone imagery Deo himself filed with this Court.

51.     The vehicle condition photographs submitted as Exhibit D also show surface rust on brake rotors and flat tires on several vehicles.

52. These conditions are the entirely predictable result of vehicles sitting immobile for nearly three years under a court-imposed injunction.

53. Indeed, this is proof-positive that the Superb Plaintiffs are complying with the injunction by not driving them, unlike the Deo Defendants, who have recently been caught (and admitted to) driving the Audi A6 which is an injunction vehicle.

54. In any event, surface rotor rust resolves within the first few miles of operation and is not structural damage; it is basic physics.

55. More importantly, it is deterioration caused by the injunction itself, not by Plaintiffs' custody.

56. Plaintiffs have sought dissolution of this injunction repeatedly and urgently, specifically to prevent this ongoing depreciation.

57. Those requests have regrettably been repeatedly denied.

58. Most significantly, Exhibit G – Deo's own photographs of the 2018 Mercedes SL (VIN: WDDJK7DA4JF052861) – shows a white luxury coupe parked inside a fully enclosed building with high ceilings, brick walls, large windows, and a tiled floor.

59. The vehicle's exterior is clean and intact.

60. The interior photograph shows pristine red leather seats with no damage whatsoever.

61. The VIN is confirmed on the windshield sticker in Deo's own photograph.

62. Deo's counsel described this vehicle as "relegated to a dumpster area" and "desecrated," fancy vocabulary undoubtedly obtained through the use of artificial intelligence tools given his lackluster writing skills.

8

63.     However, the photographs show an undamaged luxury vehicle stored indoors, in better condition than the vehicles Deo proposes to store in a traffic-cone-delineated section of an outdoor lot in West Babylon.

64.     The soda can and sandpaper Deo's counsel so dramatically describes could have been placed on the vehicle by Deo's own inspection team during their April 5, 2026 visit, not by the Superb Plaintiffs.

**The MV-50 Allegations Were Previously Made, Rebutted, And Abandoned By Deo**

65.     The MV-50 form allegations raised in the Deo Defendants' letter motion, and now woven into the contempt motion narrative, are not newly discovered evidence.

66.     They are a repackaging of arguments made by prior Deo counsel, squarely rebutted by Urrutia with documentary proof, and then silently abandoned by Deo without any counter-response.  See ECF Docket Entries 299, 303, 304 ¶¶ 48-54, 52 n. 3, 52 n. 4, and 323 at 14.

67.     This pattern – making explosive accusations, receiving evidence-based rebuttals, and walking away from the argument without dispute – has defined Deo's conduct throughout this litigation and is itself a hallmark of bad-faith motion practice.

68.     When the Superb Plaintiffs submitted MV-50 forms and related transfer documents in support of their injunction modification motion, Deo challenged their authenticity.

69.     Urrutia responded with a detailed evidentiary rebuttal demonstrating that the certificates of sale Deo submitted as Exhibit A of his opposition were dated June 2023, a period when he admits he was in full operational control of Superb. See ECF Docket Entry 304 ¶¶ 48-52.

70.     Urrutia demonstrated through text messages and July 2023 correspondence with Nissan Motor Acceptance Company LLC ("NMAC") that Deo was personally directing the double-flooring activity that gave rise to the certificate irregularities. Id. at ¶¶ 50-53.

71.    Urrutia stated unequivocally: "the four certificates of sale submitted by Deo in Exhibit A of his opposition were created by none other than Deo himself." See ECF Docket Entry 304 ¶ 51.

72.    Deo never disputed this.

73.    He never filed a reply addressing the evidence.

74.    He abandoned the argument entirely.

75.    Now, new counsel presents the same materials to this Court as a freshly discovered "Fraud Upon the Tribunal," while omitting the rebuttal that defeated the argument the first time, despite telling this Court he reviewed the entire docket in this case!

76.    This Court should not be misled into treating a recycled, previously-abandoned accusation as a new discovery warranting any relief, let alone emergency relief.

77.    More fundamentally, the MV-50 allegations expose Deo's own conduct rather than Plaintiffs.

78.    The record establishes unambiguously that Deo, not me, ran Superb's day-to-day operations from late 2022 through August 3, 2023.

79.    During that period, Deo:

   a. Controlled the vehicle floor plan and directed double-flooring of vehicles on both Superb's NMAC and NextGear's floor plan lines of credit simultaneously;

   b. Directed Kendra Kernizant and Marc Merckling to execute vehicle-related paperwork and move vehicles without authorization;

   c. Admitted in deposition that he created and backdated the Northshore operating agreement himself;

d.   Admitted directing Thomas Jones, CPA to fabricate a profit and loss statement, adding exactly $4 million to income and expenses;

e.   Admitted opening the Flushing Bank account in April 2023, listing himself as 100% owner of Superb – which he was not – and used that account to divert all customer deposits, cash, and down payments away from Superb's Chase operating account;

f.   Admitted receiving $735,000.00 in Libertas funding before the Cross-Purchase Agreement was even executed, diverted through Thomasson's escrow account, and used those encumbered funds as his purported "investment" in Superb;

g.   Admitted there was active pending litigation over Northshore and Sunrise at the very moment he represented to Urrutia in the Cross-Purchase Agreement that he was unaware of any threat of litigation; and

h.   Admitted he never transferred stock in either Northshore or Sunrise to Urrutia because he never legitimately owned them, which was confirmed by Joshua Aaronson's deposition testimony that Deo was "operator not owner" and that no ownership transfer was ever effectuated. See ECF Docket Entry 404-1.

80.    Critically, Justice Murphy found just some of the foregoing constituted a breach of the Cross-Purchase Agreement, warranting rescissory damages because it was impossible to put me back in the position I was in before I had the misfortune of ever meeting with Deo, i.e., putting me back in control of a dealership operating as a going concern (never mind my other three franchise dealerships, which Deo has also cost me).

11

81.    The certificates of sale bearing irregularities were generated during Deo's operational control of Superb, by Deo's appointees, in furtherance of the same double-flooring scheme this Court is already aware of in prior proceedings in this case.

82.    To present those irregularities as evidence of Urrutia's wrongdoing is not only factually backward, it is an inversion of a record that comprehensively documents Deo as the architect of every fraudulent transaction he committed at Superb.

**The Deo Defendants' Unfounded Accusations Regarding Insurance**

83.    The Deo Defendants accuse me of not having insurance for the injuncted vehicles.

84.    Critically, the Deo Defendants never inquired with me about this.

85.    As an initial matter, I provided proof of insurance to this Court as previously ordered.  See ECF Docket Entry 216-1.

86.    After that insurance policy was due to expire, I inquired with NMAC about insurance available for the remaining injuncted vehicles.

87.    I received confirmation from NMAC that as long as the vehicle is floored on a floor plan line of credit with NMAC, there is insurance for any such vehicles.  See copy of correspondence with NMAC annexed hereto as **Exhibit "A."**

88.    I can also confirm that all the remaining injuncted vehicles are floored on a floor plan line of credit with NMAC.

89.    As a result, all vehicles are insured in accordance with this Court's Orders.

**Deo's Litigation-By-Accusation Strategy Warrants the Court's Attention**

90.    The Deo Defendants' contempt motions are the latest in a sustained pattern of filing inflammatory accusations, receiving evidence-based rebuttals, abandoning the accusations without dispute, and immediately pivoting to the next accusation.

91.    This Court has presided over nearly 500 docket entries and has witnessed this pattern firsthand.

92.    The following examples are illustrative, not exhaustive:

a.    Deo denied opening the Flushing Bank account as 100% owner of Superb, then admitted doing so at his deposition.

b.    Deo denied directing Jones to fabricate Superb's profit-and-loss statement, then the email with Deo's instruction to Jones was produced.

c.    Deo denied creating the Northshore operating agreement, then admitted in deposition he printed and backdated it himself.

d.    Deo denied writing unauthorized checks, then records confirmed approximately thirty (3) checks written at his direction in July 2023, signed by him despite not being an authorized signatory.

e.    Deo denied knowledge of the NESNA ACH transfers, then records confirmed he signed the ACH authorization form himself.

f.    Deo denied a prior felony conviction on his DMV dealer license application, then his January 15, 2016 federal wire fraud conviction was confirmed.

g.    Deo attributed the MV-50 irregularities to me, then I demonstrated with text messages and correspondence that Deo's own team created them during Deo's operational tenure. See ECF Docket Entry 304 ¶¶ 48-53. Deo filed no reply and abandoned the argument.

93.    In every instance: accusation, documentary rebuttal, abandonment, next accusation.

94.    That is not good-faith litigation.

95.     It is a war of attrition designed to exhaust a plaintiff who has already lost four franchises, his family home in New Jersey, over $20 million in business value, and nearly three years of his life to fighting against Deo's fraud. See ECF Docket Entry 294 ¶¶ 30-36, 44-51.

96.     Meanwhile, Deo – who repeatedly represents to this Court that he is financially devastated – has operated a new dealership group (Gold Coast Motors) built using Superb's stolen Tekion DMS, customer lists, and employees, which opened in July 2023 while Urrutia was on a family vacation in Europe; Deo's claimed financial ruin is not credible on this record.

97.     Urrutia, by contrast, has not received a salary since August 2023 and his counsel has continued to represent him without payment for over six months. ECF No. 294 ¶¶ 29-30.

98.     Pursuant to the doctrine of *falsus in uno, falsus in omnibus*, which Deo's new counsel invokes against the Superb Plaintiffs in his letter motion, this Court is respectfully invited to apply that doctrine to the party whose pattern of making false statements, receiving documentary refutation, and abandoning each position without contest.

99.     Moreover, the doctrine cannot be weaponized against transparent disclosures: the BMW X1 "discrepancy" upon which the Deo Defendants' letter motion rests was affirmatively disclosed by the Superb Plaintiffs under oath, ten months before Deo's counsel conducted his inspection.

100.    A doctrine designed to address undisclosed lies cannot be applied to a fact that Plaintiffs themselves disclosed.

101.    More broadly, the Court is respectfully urged to address the pending motion to dissolve or vacate the injunction (ECF Docket Entry 340) at the May 8, 2026 oral argument and grant it in full.

102.    The procedural history of the Nassau County action removes any remaining doubt.

14

103. Deo's cross-motion was denied and his counterclaims were dismissed in May 2025.

104. Justice Murphy then granted summary judgment against Deo on September 23, 2025.

105. Deo moved for reconsideration of that ruling; that motion was denied as well.

106. Deo has exhausted every avenue of challenge before Justice Murphy.

107. His ownership claim is extinguished not merely by one adverse ruling, but by a sequence of rulings – denied cross-motion, dismissed counterclaims, summary judgment against him, and denied reconsideration – each of which affirms that he never had a legitimate ownership interest in Superb.

108. This is the definition of a fully and finally litigated issue; under *res judicata*, collateral estoppel, and this Court's own equitable power to dissolve injunctions when their underlying basis has been conclusively extinguished, the preliminary injunction cannot stand. See ECF Docket Entry 341 at 6-12.

109. Dissolving the injunction, directing the return of the six Deo-held vehicles, authorizing a supervised sale of all remaining vehicles with proceeds to the Superb Plaintiffs, and releasing the $110,000.00 currently held in Sage Legal's escrow account to the Superb Plaintiffs would end this satellite litigation, stop the ongoing depreciation, and allow the case to proceed to the merits of the claims that remain.

110. The vehicle custody dispute has consumed an extraordinary amount of this Court's and the parties' resources.

111. The answer to that problem is not more contempt proceedings.

112. It is dissolution of an injunction whose foundation has been judicially demolished, not once, but four times, in the Nassau County Supreme Court.

113. The contempt motions are a tactical maneuver by a party judicially confirmed as a fraudster, designed to extend an injunction he obtained through the very fraud Justice Murphy has now documented as a matter of law.

114. This Court should not reward it.

115. For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) deny the Deo Defendants' applications for civil contempt in their entirety; (ii) deny the application for personal sanctions against my attorney under 28 U.S.C. § 1927; (iii) grant the Superb Plaintiffs' motion to dissolve the preliminary injunction, direct the return of all Deo-held injuncted vehicles, authorize a court-supervised sale of all remaining injuncted vehicles with proceeds held in escrow, and release the $110,000 in Sage Legal's escrow account pursuant to further order of this Court; and (iv) the Superb Plaintiffs' cross-motion for sanctions should be granted.

116. I thank this Court for its time and attention to this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 1, 2026.

*Robert Anthony Urrutia*
Robert Anthony Urrutia (May 1, 2026 12:57:23 PDT)

Robert Anthony Urrutia