UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Case No.: 2:23-cv-6188 (JMW)

**SUPPLEMENTAL DECLARATION OF ROBERT ANTHONY URRUTIA**

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP,  FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC

Defendants.

------------------------------------------------------------------------✗

Robert Anthony Urrutia declares, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the following is true and correct:

## BACKGROUND

1.  I am the founder and President of Superb Motors Inc. ("Superb") and the sole member of Team Auto Sales LLC ("Team").

2.  I also owned Volkswagen of Freehold (New Jersey), Team Mitsubishi-Hartford (Connecticut), and Team Nissan of Pittsfield (Massachusetts),  the cross-collateralized dealerships.

3.  All four dealerships are now closed as a direct result of Defendant Anthony Deo's ("Deo") fraud and the prolonged preliminary injunction that followed.

4.  I respectfully submit this declaration to correct the factual record and respond to the specific accusations in ECF No. 503.

## POINT I

## THE MURPHY DECISION IS DISPOSITIVE; DEO HAS NO OWNERSHIP INTEREST

5.  The Hon. Jerome C. Murphy, J.S.C.'s ("Justice Murphy") September 23, 2025 Decision and Order (Urrutia v. Deo, Index No.: 618608/2023 (Nassau County Supreme Court), NYSCEF Doc. No. 134) granted summary judgment in my favor, and found that Deo: (i) breached the Cross-Purchase Agreement by fraudulent misrepresentation; (ii) failed to consummate the transaction; (iii) has no ownership interest in Superb; and (iv) rescissory damages are warranted because it was impossible to place me back in the position I was now that the Cross-Purchase Agreement has been voided.

6.  Deo's motion for re-argument was denied and the decision is final and binding.

7.  As argued by my attorney, Collateral estoppel and *res judicata* foreclose Deo from relitigating ownership in this Court.

8.  Deo argues that Plaintiffs' counsel ignored Justice Murphy's statement that rescission is "impracticable" because Superb is no longer operational.

2

9. That statement does not help Deo.

10. Superb is no longer operational because of Deo's fraud. Deo cannot destroy a business through fraud and then use the destruction as a shield.

11. Justice Murphy's impracticability finding simply converts the remedy from rescission-in-kind to rescissory damages; it does not restore any ownership right to Deo.

12. The core holding stands: Deo has no ownership interest in Superb by virtue of the voided Cross-Purchase Agreement which Deo breached and otherwise failed to consummate.

## POINT II

### DEO CREATED EVERY DOCUMENT HE NOW CALLS FRAUDULENT

13. Deo accuses the Superb Plaintiffs of filing "forged government instruments" – the MV-50 transfer forms in ECF No. 112-8 – and of creating "two realities" about vehicle ownership.

14. Both accusations are false.

15. Every MV-50 Marwaha points to was created at Deo's direction, during the period when Deo was in full operational control of Superb's DMS (Tekion) and VERIFI systems, without my authorization and without Superb ever paying Team one dollar.

16. Notably, the MV-50 Forms are dated March 23, 2023, June 14, 2023, March 27, 2023, June 9, 2023, March 14, 2023, June 15, 2023, June 13, 2023, July 19, 2023. See ECF No. 112-8 at 4, 9, 17, 19, 25, 27, 31, 36, 40, 44, and 49.

17. These were all during the time Deo had operational control over Superb between November 2022 through July 2023 as the General Manager entrusted to perform such tasks.

A. Team Owned These Vehicles — NextGear's Possession of Titles Proves It

18. Team purchased thirteen (13) vehicles financed through NextGear Capital ("NextGear").

3

19.    For context, cars owned by Superb went on a floor plan line of credit with Nissan Motor Acceptance Company LLC ("NMAC"), while cars owned by Team went on a floor plan line of credit with NextGear.

20.    This is because Superb only had NMAC as a floor plan lender and Team only had NextGear as a floor plan lender.

21.    As required by Team's agreement with NextGear, NextGear held the original title documents for each vehicle as collateral.

22.    This is not a technicality; NextGear cannot floor a vehicle without holding the original title.

23.    The fact that NextGear held original titles for all thirteen (13) vehicles is proof-positive that Team owned them.

24.    Superb never paid Team for any of these thirteen (13) vehicles.

25.    Two of the thirteen vehicles — the 2019 Maserati Ghibli (VIN: ZAM57YTA4K1314330) and the 2020 Alfa Romeo Stelvio (VIN: ZASPAKBN5L7C91095) — passed through Sunrise Auto Outlet (189 Sunrise Hwy Auto LLC ("Sunrise")) before coming to Team, in violation of Justice Gianelli's injunction which prohibited Deo from using Sunrise to buy or sell vehicles.

26.    The 2012 Jeep Liberty (VIN: 1C4PJMAK9CW133196) carried a $0 balance because it was too old to floor.

27.    All thirteen vehicles – the twelve (12) floored on NextGear's line and the 2012 Jeep Liberty – are owned by Team.

28.    The reason these vehicles owned by Team ended up being listed as Superb's is set forth below, and only represents further fraudulent conduct at the hands of Deo.

4

B. Deo Directed the Transfers and the Double-Flooring of Team Vehicles on Superb's Line

29.     I anticipate Deo will claim he did not personally create the MV-50 forms.

30.     That may be correct, but it is irrelevant.

31.     Deo was Superb's General Manager with operational authority over the dealership.

32.     His instructions were executed by staff in the same pattern documented throughout this case, i.e., approximately thirty unauthorized checks printed by Kendra Kernizant at Deo's direction; the fabricated P&L entered into the system at Deo's direction through accountant Thomas Jones; the NESNA ACH signed by Deo personally. ECF Nos. 304 ¶¶ 48-53 and 304-1.

33.     The foregoing VERIFI entries were no different: they were executed by staff at Deo's direction, in furtherance of Deo's scheme, during his period of unchecked operational control.

34.     Deo's purpose in creating these MV-50s of Team-owned vehicles being transferred to Superb was done  to perpetuate his double-flooring scheme.

35.     By stocking Team's vehicles into Superb's VERIFI and DMS, he could simultaneously floor them on Superb's NMAC line while they remained on Team's NextGear line.

36.     NMAC permits a vehicle to be floored based on possession of the vehicle and paperwork; unlike NextGear, it does not require that original titles be held in its possession.

37.     On or about July 19, 2023, Deo directed this double-flooring on seven (7) of Team's vehicles. See ECF No s. 304 ¶¶ 49-51 and 304-1.

38.     On July 31, 2023, NMAC flagged twenty-two (22) vehicles as double-floored and an ACH of $760,868.75 was sent from Superb's account to pay NMAC.

39.     The seven double-floored Team vehicles and their NMAC payoffs were as follows:

5

1. 2017 BMW 2 Series (SU0882) — $24,150
2. 2019 Maserati Ghibli (SU0912) — $36,750
3. 2018 Mercedes-Benz SL (SU1006) — $57,400
4. 2017 BMW 4 Series (SU1025) — $25,450
5. 2019 Land Rover Range Rover (SU1065) — $62,225
6. 2016 Porsche Panamera (SU1148) — $44,450
7. 2019 BMW 5 Series (SU1204) — $27,135

40.    The total NMAC double-flooring payoff amounted to approximately $277,560.00, and triggered by Deo, but paid by Urrutia.

41.    My prior declaration states without qualification: "the four (4) certificates of sale submitted by Deo in Exhibit A of his opposition were created by none other than Deo himself." See ECF No. 304 ¶ 51.

42.    Deo never filed anything to rebut this fact and has therefore abandoned any argument to the contrary.

43.    His counsel now presents the identical documents as newly discovered fraud, while altogether omitting and failing to otherwise address my prior sworn rebuttal that defeated this argument the first time.

C. Discovery, Disclosure, Payoffs, and Recovery

44.    On August 3, 2023 – the day I removed Deo from Superb – my Chief Operating Officer Bruce Novicky conducted a physical audit by looking at Superb's general ledger and the inventory available on the lot at Superb.

45.    The audit revealed approximately one hundred (100) or more vehicles shown as missing according to Superb's DMS (where the general ledger resides).

46.    The DMS was under Deo's operational control throughout his tenure from November 2022 through July 2023.

6

47.    If Deo was operating Superb as a dealership properly, the inventory on the lot would match what was listed in the general ledger, save for a handful of vehicles which may be at repair shops.

48.    Deo was therefore removed from Superb's premises that day, as he was unable to explain the whereabouts of so many vehicles.

49.    I later learned that the missing vehicles reflected what Deo had moved to his competing lot without my authorization.

50.    On August 4, 2023, I sent Deo a Capital Call letter by Certified Mail RRR disclosing: (i) NMAC outstanding liability on 39 vehicles — $1,458,516; (ii) NextGear Capital outstanding liability on 10 vehicles — $385,882; (iii) double-floored payoffs — $760,868.75; and (iv) capital call demand — $1,276,580.71. See ECF No. 112-7.

51.    The MV-50 forms Marwaha calls "forged instruments" were the same documents that existed in Superb's VERIFI system on August 3, 2023 when Deo was removed; documents created at Deo's direction during his period of control.

52.    I did not create them; I inherited them.

53.    They are Deo's own instruments, and he cannot now use them as evidence against me.

54.    Because Deo refused to return the vehicles, I funded all payoffs through intercompany wires (i.e., $572,000 from VW of Freehold, $100,000 from Team Nissan of Pittsfield) plus personal funds, approximately $4,165,776 total between July and September 2023.

55.    I personally sought the injunction – not Deo – to stop further damage and compel return of the vehicles so I could refloor them and recover capital advanced by my other stores.

56.    On September 15, 2023, the vehicles were returned thanks to this Court.

57.    Because Superb's NMAC line had been terminated and my NextGear line was frozen by this point, I refloored the vehicles through my NMAC line at VW of Freehold and Team Mitsubishi Hartford, the same dealerships that had advanced the payoff capital.

58.    All vehicles were refloored before Judge Merchant's September 29, 2023 injunction order, confirmed by NMAC's documentation.

59.    One vehicle was inadvertently missed; I acknowledged this and accepted responsibility.

60.    When Superb surrendered its DMV license, vehicles had to be removed from VERIFI.

61.    But this problem existed because Deo had directed all vehicles to be stocked into Superb's VERIFI in the first place.

62.    The only proper mechanism was the use of MV-50 transfer documents.

63.    The vehicles were moved via MV-50 to Team Mitsubishi Hartford and VW of Freehold, where they had been taken upon recovery.

64.    After the TRO, the decision was made to consolidate all vehicles at Hartford as there was more space, better security, and the vehicles were kept separate from others.

65.    Once the floor plan transfers were complete, Connecticut Q-1 forms transferred the vehicles back to Superb as an asset owner.

66.    This process was fully disclosed to this Court in ECF Nos. 154, 155, and 155-1.

## POINT III

### THE NOVICKY DECLARATIONS ARE NOT IRRECONCILABLE

67.    Unsuccessful in proving any "fraud upon the tribunal" and making it evident he did not read the docket as he represented, Marwaha pivots to save face to another perceived fraud.

8

68.    Marwaha now argues that Bruce Novicky filed two contradictory declarations in March 2024 — ECF No. 155 stating Superb owns the injuncted vehicles as an asset, and ECF No. 157-1 stating four days later that thirteen vehicles belong to Team.

69.    This is not a contradiction.

70.    The declarations address different vehicle sets in different contexts.

71.    ECF No. 155 addressed the thirty (30) Superb-injuncted vehicles covered by the preliminary injunction and explained the administrative Hartford/Q-1 transfer process.

72.    Novicky correctly stated that Superb holds those vehicles as an asset owner rather than a licensed dealer.

73.    ECF No. 157-1 then addressed, more granularly, that thirteen (13) of the twenty-eight (28) recovered vehicles belonged to Team, information disclosed to this Court months earlier in ECF No. 112-8.

74.    These statements are consistent: one addresses the injunction compliance posture, the other addresses underlying ownership of a subset of the vehicles.

75.    The vehicles appeared in Superb's DMS and VERIFI on August 3, 2023 because Deo put them there.

76.    My August 4, 2023 Capital Call letter – sent to Deo directly before this suit was filed – identified these as Team's vehicles on Team's NextGear line.

77.    That contemporaneous business record is the most reliable evidence of what everyone actually knew.

78.    Deo also knew it because he created the situation.

79.    This is another example of Deo throwing spaghetti at the wall to see what sticks.

80.    As usual, nothing stuck, and Deo exposes his own fraud.

81.    More importantly, Marwaha's side-step to this new accusation which is not contained in his moving papers evinces the cold and brutal truth that he did not read the docket as he represented he did.

82.    If had had done so, he would have figured out – and eliminated the need for this Court to be burned with figuring out – that it may not be wise to raise this issue at all, since it exposes his own client's fraud rather than drawing light to any perceived fraud on my part.

### POINT IV

### THE BMW X1 IS WHERE MY SWORN DECLARATION SAID IT WOULD BE — ALL $112,500 IN PROCEEDS IS IN ESCROW

83.    Marwaha claims the 2019 BMW X1 (VIN: WBXHT3C57K5L90705) found at the Hartford lot on April 5, 2026 is evidence of false representations to this Court.

84.    This ignores my sworn declaration at ECF No. 304 ¶¶ 80-82 (June 20, 2025), which disclosed: on May 29, 2025, twelve vehicles were sold pursuant to this Court's May 8, 2024 authorization; a buyer inadvertently took the BMW X1 instead of the intended 2018 Lexus NX; the error was corrected; the BMW X1 was returned to Hartford; and the Lexus NX was sold in its place.[1]

85.    The BMW X1's presence at Hartford on April 5, 2026 is exactly consistent with my June 2025 sworn account.

86.    Marwaha either did not read ECF No. 304 before filing ECF No. 486, or chose to omit my sworn explanation; either way, there is no inconsistency and no contempt.

---

[1] I am informed that Marwaha referred to this being "buried" in a declaration and noting that the Court's role is not to be a truffle hog in searching the record. However, Marwaha is not a sitting judge and it is my understanding he *is* required to read the entire docket in case that he chose to substitute in as counsel to the Deo Defendants in this case. Frankly, with the amount of mud he has slung in his short tenure as counsel so far, he cannot credibly deny he is a truffle hog, albeit not a very good one given his documented failure to read the whole docket as he claimed he did.

87.     The Lexus NX was sold in place of the BMW X1 and did yield $2,500.00 more than the BMW X1 would have.

88.     Upon correction of the substitution, the full proceeds – $112,500.00 – were placed in the Sage Legal LLC IOLA account and remain in court-supervised escrow pursuant to this Court's July 1, 2025 Order (ECF No. 309), which directs that funds "shall remain in that escrow account, unencumbered and shall not be used, transferred or disbursed without application on notice to all counsel and leave of Court."

89.     I can verify this with bank records upon request.

90.     My counsel will address separately the reporting of the additional Lexus proceeds to the Court.

## POINT V

## THERE IS ONE REALITY, AND DEO CREATED ITS COMPLEXITY

91.     I want to state the following plainly.

92.     On August 3, 2023, all thirteen Team vehicles were Team's, which is established by NextGear's floor plan records, the original titles NextGear held as collateral, the July 2023 double-flooring payoff records showing seven of them paid off on Superb's NMAC line where Deo had placed them, and the August 4 Capital Call letter I sent Deo the next day.

93.     All of this was disclosed to this Court in multiple filings throughout this case.

94.     The paper trail thereafter – the MV-50s, the Hartford transfers, the Q-1s back to Superb – was done to comply with this Court's injunction, keep vehicles properly documented, avoid permanently freezing them in VERIFI when Superb surrendered its license, and simplify compliance with whatever this Court would ultimately decide.

95.     I own both Superb and Team.

11

96.    There is no motive for me to blur ownership.

97.    The only practical effect of the Team/Superb distinction is that it gave Deo a basis to oppose selling the Team vehicles, an opposition that has cost me millions while costing him nothing.

98.    I paid off all six of Deo's injuncted vehicles as well.

99.    Deo carries zero floor plan interest and zero curtailments.

100.    I have been paying all of it – sometimes twice on the same vehicle due to Deo's double-flooring – while Deo files contempt motion after contempt motion to prevent the resolution I have sought from the beginning.

101.    If I had wanted to deceive this Court, the easiest path would have been to simply say all thirty vehicles were Superb's, because this Court authorized the sale of Superb's vehicles.

102.    I could have then sold all thirty, placed all proceeds in escrow, and stopped three years of losses.

103.    I did not do that.

104.    I disclosed that thirteen (13) vehicles belonged to Team because it was true, because NextGear's records prove that, and because I was not willing to lie to this Court even when the truth made my situation harder.

105.    Deo himself represented to this Court that he would agree to a sale with proceeds placed in escrow, yet never followed through, and instead continued filing frivolous contempt motions.

106.    Had the vehicles been sold and the money placed in escrow from the beginning, this Court would have been spared years of satellite litigation, and the vehicles would not have depreciated to a fraction of their 2023 value.

107.    Deo has opposed sales not because it would hurt him financially – as he would benefit from escrow proceeds if he prevailed in his ownership dispute which he has already lost by virtue of Justice Murphy's decision – but because he knows he has no chance of prevailing on the merits and delay is his only remaining strategy.

108.    I am the only party in this case who has suffered extensive financial losses from the injunction.

109.    Every month of delay costs me money and costs him nothing.

110.    That asymmetry is not a coincidence; it is Deo's strategy.

111.    There is one reality, not two: I own both Superb and Team.

112.    Every vehicle belongs to one of these entities.

113.    Deo owns none of them.

114.    The complexity of tracking which entity holds title at which moment is a direct product of Deo's unauthorized VERIFI entries, his double-flooring scheme, and his exploitation of the injunction to prevent resolution.

115.    Deo created this complexity; he cannot now weaponize it as evidence of fraud.

## CONCLUSION

116.    The record is clear and the arithmetic is simple.

117.    Deo created the documents he now calls fraud.

118.    I disclosed everything to Deo on August 4, 2023 and to this Court in many filings.

119.    The BMW X1 is at Hartford exactly where my prior sworn declaration said it would be.

120.    The full $112,500 in sale proceeds is in my attorney's escrow account.

13

121.    The Novicky declarations are consistent when properly understood by the context of what is being discussed and learning the history of how Team-owned vehicles ended up on Superb's floor plan line through Deo's fraudulent conduct.

122.    Justice Murphy has conclusively determined – in a final judgment – that Deo has no ownership interest in Superb or its assets.

123.    In light of the foregoing, I respectfully request that this Court deny the relief requested in ECF Nos. 477, 486, and 503, grant Plaintiffs' cross-motion for sanctions, and dissolve the preliminary injunction as requested in ECF No. 340.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 15, 2026.

Robert Anthony Urrutia (May 15, 2026 14:14:24 MDT)

Robert Anthony Urrutia

14