**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------X
SUPERB MOTORS INC. *et al.*,


                                          *Plaintiffs*,



                    -against-



ANTHONY DEO *et al.*,


                                          *Defendants*.
----------------------------------------------------------------X

**FILED**
**CLERK**

**5/21/2026**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**


**MEMORANDUM**
**AND ORDER**

23-CV-6188 (JMW)

**A P P E A R A N C E S:**

Emanuel Kataev
**Sage Legal LLC**
18211 Jamaica Avenue
Jamaica, NY 11423
*Attorneys for Plaintiffs Superb Motors Inc., Team Auto Sales LLC and Robert A. Urrutia*

Jeffrey Ruderman
**Cyruli Shanks & Zizmor LLP**
420 Lexington Avenue, Suite 2320
New York, NY 10170
*Attorneys for Plaintiffs 189 Sunrise Hwy Auto LLC, Northshore Motor Leasing, LLC, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC, Brian Chabrier, Joshua Aaronson, Jory Baron, Asad Khan, and Iris Baron as Representative of the Estate of David Baron*

Nipun Marwaha[1]
**Marwaha Law Group, PLLC**
4940 Merrick Road, Ste 179
Massapequa Park, NY 11762
*Attorneys for Defendants Anthony and Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC, Inc., Gold Coast Cars of Syosset LLC, Gold Coast*

---

[1] The address in Counsel's Notice of Appearance is different than that of the signature block contained in the instant motion. Counsel shall change and update the firm's contact information to reflect the correct information on ECF.

1

*Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, UEA Premier Motors Corp.*

**Harry R. Thomasson**
3280 Sunrise Highway, Ste Box 112
Wantagh, NY 11793
*Defendant Appearing Pro Se*

*No appearances by other Parties*

**WICKS**, Magistrate Judge:

Recently the parties filed their amended pleadings, which included counterclaims asserted by Defendants Anthony Deo and Sara Deo[2] and Defendant Harry R. Thomasson ("Thomasson" and collectively herein referred to as "Counterclaim Plaintiffs") against all individual Plaintiffs. (*See* ECF Nos. 433, 454.) Plaintiffs (also referred herein as "Counterclaim Defendants") collectively move to dismiss all the counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim (ECF No. 473), which Counterclaim Plaintiffs oppose (ECF No. 485). For the reasons that follow, Plaintiffs' Motion to Dismiss the Counterclaims (ECF No. 473) is **GRANTED**.

<u>**RELEVANT BACKGROUND**</u>[3]

Counterclaim Plaintiffs, Anthony Deo and Sara Deo (together, the "Deos') are the primary individuals that owned and operated various businesses on Long Island, New York. (ECF No. 433 at ¶ 3.). Counterclaim Defendant Robert Anthony Urrutia ("Urrutia") is a resident

---

[2] The "Deo Defendants" are Anthony Deo, Sara Deo, Dwight Blankenship, Marc Merckling, Michael Laurie, Car Buyers NYC Inc., Gold Coast Cars of Syosset LLC, Gold Coast Cars of Sunrise LLC, Gold Coast Motors Automotive Group LLC, Gold Coast Motors of LIC LLC, Gold Coast Motors of Roslyn LLC, Gold Coast Motors of Smithtown LLC, and UEA Premier Motors Corp. While the Counterclaims are brought only by Anthony Deo and Sara Deo, there are references in the moving papers as to all Deo Defendants.

[3] Familiarity with this action is assumed. However, the Court outlines the factual background alleged in the Amended Answers with Counterclaims. (ECF Nos. 433, 454.)

of Costa Rica and owned and operative one or more automobile businesses in New York. (*Id.* at ¶ 4.) "Urrutia resides in Costa Rica for the purposes of 1) living a lifestyle of wealth desired by Urrutia and his family (there is a lower cost of living in Costa Rica), 2) to avoid paying creditors, and 3) upon information and belief, Urrutia fled the country having stolen in excess of twenty million dollars from various businesses, including his own, and from various other businesses, including Nissan Motor Acceptance Corp., he is or is expected to become a wanted man by one or more law enforcement agencies." (*Id.*) "Urrutia always maintained one or more apartments and/or houses and/or residences in the Greater New York City area (within 75 miles of Manhattan) to serve as his U.S. residence when he is in the United States, notably 327 Lakewood Terrace, Newton, New Jersey, 07860." (*Id.*) "Urrutia is countersued herein both individually and on behalf of his businesses known as Superb Motors Inc. and Team Auto Sales LLC." (*Id.*)

Counterclaim Defendant Brian Chabrier ("Chabrier") is an individual who owned and operated one or more automobile businesses in the New York. (*Id.* at ¶ 5.) He is sued herein because he holds interest or ownership in the following businesses: "1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC." (*Id.*) Counterclaim Defendant Joshua Aaronson ("Aaronson"), is an individual who owned and operated one or more automobile businesses in New York. (*Id.* at ¶ 6.) "Aaronson … holds a corporate interest/ownership known as 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC." (*Id.*)

3

Counterclaim Defendant Jory Baron (hereinafter, "J. Baron") is an individual who owned and operated one or more automobile businesses in New York. (*Id.* at ¶ 7.) "J. Baron … holds a corporate interest/ownership known as 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC." (*Id.*) Counterclaim Defendant Asad Khan ("Khan") is an individual who owned and operated one or more automobile businesses in New York. (*Id.* at ¶ 8.) "Khan … holds a corporate interest/ownership known as 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC and Island Auto Management, LLC." (*Id.*) Counterclaim Defendant Iris Baron ("I. Baron") was the wife of David Baron during his lifetime as well as the "representative of the Estate of David Baron since his death; she is sued both individually and on behalf of the Estate of David Baron." (*Id.* at ¶ 9.) All the Counterclaim Defendants as sued due to "the false claims advanced wrongfully against the Deo Defendants to law enforcement, various Courts, and within the automobile industry are advanced by [them]." (*Id.* at ¶¶ 4-9.) Counterclaim Plaintiff Thomasson is an individual who worked as an attorney for the Deos and the various businesses they owned. (ECF No. 454 at ¶ 3.)

The following allegations are taken from the Amended Complaint filed by the Deos in the action entitled *Deo, et al. v. Baron, et al.*, case number 2:24-cv-6903 (NJC)(JMW), which has now been remanded from this Court to the Nassau County Supreme Court, and the docket number is now 615683/2024. (ECF No. 433 at ¶¶ 10, 18.) Counterclaim Defendants made various false statements "accusing each of the Deo parties of stealing money, stealing

4

automobiles, and stealing corporations worth millions of dollars." (*Id.* at ¶ 11.) The false claims made by the Counterclaim Defendants "are contingent upon the [Counterclaim] Defendants … proving several of the Aaronson parties (namely Joshua Aaronson, Asad Khan, Brian Chabrier, Raymond Phelan and the Estate of David Baron) are and remain the owners of two corporations, NorthShore Motor Leasing, LLC, and 189 Sunrise Hwy Auto LLC (hereinafter, "NorthShore" and "189 Sunrise")." (*Id.* at ¶ 12.) The Counterclaim Defendants are not the owners of NorthShore and 189 Sunrise as the Deos purchased those entities in February of 2021. (*Id.* at ¶ 13.)  The Counterclaim Defendants "provided the Floor Plans to the Deos for NorthShore since it began operations in 2018, and for 189 Sunrise since the Deos obtained and operated that business in February 2021." (*Id.* at ¶ 14.) There were many disagreements between the Counterclaim Defendants and the Deos. (*Id.* at ¶ 15.) In November of 2022, Counterclaim Defendants "left both NorthShore and 189 Sunrise, turned off and removed all Floor Plans, took all hard corporate assets of both corporations including, but not limited to, all files, dealer jackets, warranty files, video files, most (but not all) computers, customer lists, and shut the Deos out of all corporate software and bank accounts, wrongfully, and without any lawful, valid reason." (*Id.* at ¶ 16.) Counterclaim Defendants left the businesses as they had been caught by the Deos attempting to steal the businesses, and after the theft failed, the Counterclaim Defendants intentionally ruined the Deos businesses. (*Id.* at ¶ 17.)

Counterclaim Defendants have acted in concert and carried out a conspiracy to ruin the Deos. (*Id.* at ¶ 19.) That includes the filing of various lawsuits to knowingly and intentionally harm the Deos. (*Id.* at ¶ 20.) Counterclaim Defendants also planned to ruin the Deos' "reputations and business opportunities in the automobile industry by making false criminal and false civil allegations against all of the Deo parties both in writing and verbally, involving false

5

allegations of theft of money, automobiles, and corporate interests of Superb Motors, 189 Sunrise and NorthShore to: a) the Nassau County, New York, police department; b) the Nassau County, New York, district attorneys' office; c) the Suffolk County, New York, police department; d) the Suffolk County, New York, district attorneys' office; e) the F.B.I.; f) the U.S. Attorneys' Office in and for the U.S. Department of Justice; g) one or more federal grand juries; h) one or more local automobile wholesalers, including but not limited to Nethanel Orgad; i) various local automobile industry floor plan providers, including, but not limited to, Nissan Motor Acceptance Company LLC ("NMAC"), NextGear Capital, Inc., and Ally Financial, Inc. ("Ally"), j) various banks and lenders involved in the local automobile banking and loaning industries including, but not limited to, Flushing Bank, Libertas Funding LLC, J.P. Morgan Chase Bank, N.A. ("Chase"); k) various local accountants that provide services to the local automobile industry including, but not limited to, Citrin Cooperman, Jones Little & Co., CPA's LLP, and Richards, Witt & Charles, LLP; and l) other unknown individuals in the local automobile industry." (*Id.* at ¶¶ 21-23.)

All allegations made by the Counterclaim Defendants were false, defamatory, negligently and knowingly made to cause the Deos harm and economic loss. (*Id.* at ¶¶ 24, 28.) The allegations of criminal wrongdoing were filed and published, which also constitutes defamation per se. (*Id.* at ¶ 26.) All Counterclaim Defendants are jointly and severally liable for the harm, which remains ongoing. (*Id.* at ¶¶ 29-30.)

Thomasson also alleges that he never had any contracts with any Counterclaim Defendants nor was he ever in privity with any Counterclaim Defendant. (ECF No. 454 at ¶¶ 28-29.) Thomasson did not represent any Counterclaim Defendant apart from a brief one-month representation for Superb Motors, but he did not work with or meet any of the Counterclaim Defendants. (*Id.* at ¶¶ 30-34.) Thomasson never took any money, never stole from the

6

Counterclaim Defendants and never committed any criminal wrongdoings against these parties. (*Id.* at ¶¶ 35-45.)[4]

With that, Thomasson brings two counterclaims for (i) Defamation Per Se, and (ii) Libel. (*Id.* at 80-83.) The Deos bring four counterclaims for (i) Defamation Per Se, (ii) Libel, (iii) Tortious Interference with Contracts and Prospective Economic Advantage, (iv) Abuse of Process. (ECF No. 433 at 76-80.)

## **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also CompassCare v. Hochul*, 125 F.4th 49, 56-57 (2d Cir. 2025) (quoting *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014) ("a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.")).

"The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Annabi v. New York Univ.*, No. 24-CV-2601, 2025 WL 1066083, at *1 (2d Cir. Apr. 9, 2025) (quoting *Iqbal*, 556 U.S. at 678). To that end, complaints are properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.  When considering a motion to dismiss under 12(b)(6), the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v.*

---

[4] Both Counterclaim pleadings contain similar, if not the same allegations. As such, the Court did not repeat allegations and only included allegations that were not already outlined from the other pleading.

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). However, this tenet does not apply to legal conclusions or "threadbare recitals of a cause of action's elements." *Iqbal*, 556 U.S. at 663. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. More is required. Put differently, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. … Factual allegations must be enough to raise a right to relief above the speculative level. To survive dismissal, a complaint must provide enough facts to state a claim to relief that is plausible on its face." *Go New York Tours Inc. v. Gray Line New York Tours, Inc.*, No. 24-cv-2392, 2025 WL 947083, at \*2 (2d Cir. Mar. 27, 2025) (quoting *Mayor & City Council of Baltimore v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013)).

It is under this legal framework, that the Court analyzes the instant motion.

## DISCUSSION

Thomasson brings two counterclaims for (i) Defamation Per Se, and (ii) Libel. (ECF No. 454 at 80-83.) The Deos bring four counterclaims for (i) Defamation Per Se, (ii) Libel, (iii) Tortious Interference with Contracts and Prospective Economic Advantage, (iv) Abuse of Process. (ECF No. 433 at 76-80.) Both counterclaim pleadings allege the same and as such, the Court will analyze the identical claims together. Counterclaim Plaintiffs argue against dismissal on the grounds that the counterclaims are sufficiently pled (*see* ECF No. 485 at 6), whereas Counterclaim Defendants argue otherwise stating that the amended counterclaims fail again[5] as a matter of law and any alleged defamatory statements are privileged (*see* ECF No. 473 at 1).

---

[5] Counterclaim Plaintiffs filed counterclaims back in October and November of last year. (*See* ECF Nos. 335-36.) However, following a motion hearing, the parties agreed to stipulate to the filing of an amended answer with counterclaims. (*See* Electronic Order dated 3/2/2026; ECF No. 432.)

As an initial matter, while this case is brought under federal question jurisdiction, the counterclaims are brought under supplemental jurisdiction pursuant to 28 U.S.C. § 1367 and New York law for state law tort claims. (*See* ECF No. 433 at 64-65.) Thus, the Court looks to New York law to see if the claims withstand the instant motion to dismiss.

I.      **Defamation Per Se and Libel Claims**

Under New York law, defamation claims require the following elements to be pled, (i) a defamatory statement of and concerning the plaintiff, (ii) publication of that statement to a third party, (iii) fault, (iv) falsity, and (v) special damages or it must fall under a per se category. *See Greenberg v. Spitzer*, 62 N.Y.S.3d 372, 383 (N.Y. App. Div. 2d Dep't 2017); *see also YCF Trading Inc. v. Skullcandy, Inc.*, 781 F. Supp. 3d 56, 75 (E.D.N.Y. 2025) (collecting cases) (same). As to the fourth element, special damages do not need to be alleged if a plaintiff establishes that the defamatory statements constitute defamation per se. *Fernandes v. Fernandes*, 227 N.Y.S.3d 642, 643 (N.Y. App. Div. 2d Dep't 2025). Here, Counterclaim Plaintiffs' claims fall under a per se category because the alleged false statements "tends to injure another in his or her trade, business, or profession." *Davydov v. Youssefi*, 169 N.Y.S.3d 322, 324 (N.Y. App. Div. 2d Dep't 2022) (internal citations omitted); *see also Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 171 (S.D.N.Y. 2021) (same).

A claim for libel is essentially defamatory statements that are written. *See Meloff v. New York Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (emphasis added) ("New York requires a libel plaintiff to prove five elements: (1) a *written* defamatory statement of fact regarding the plaintiff; (2) published to a third party by the defendant; (3) defendant's fault, varying in degree depending on whether plaintiff is a private or public party; (4) falsity of the defamatory statement; and (5) injury to plaintiff.") However, "CPLR 3016(a) provides that, '[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint.'"

9

*Oluwo v. Mills*, 228 A.D.3d 879, 880, 214 N.Y.S.3d 75, 76 (N.Y. App. Div. 2d Dep't 2024). "'Compliance with CPLR 3016(a) is strictly enforced'" *Id.* (internal citations omitted).

First, these claims fail as a matter of law because there are no specific allegations. Conclusory allegations of false statements made to harm one's reputation or business without more are routinely dismissed. *See Bryan v. Slothower*, 84 Misc. 3d 1237(A), at *2 (Sup. Ct., N.Y. Cnty. 2024) (quoting *Dillon v. City of New York*, 704 N.Y.S.2d 1, 6 (1st Dep't 1999) (discussing that the defamatory statements must be set forth in the complaint, and "must allege the time, place and manner of the false statement and [omitted] specify to whom it was made.")). Even assuming it was pled adequately – which it is not – these claims fail due to what is known as litigation privilege.

> New York has traditionally accorded an absolute privilege to oral or written communications made in the course of judicial proceedings and which relate to the litigation. A statement made in the course of a judicial proceeding is absolutely privileged if, by any view or under any circumstances, it may be considered pertinent to the litigation. The common law litigant's privilege offers a shield to one who publishes libelous statements in a pleading or in open court for the purpose of protecting litigants' zeal in furthering their causes.

*Aguirre v. Best Care Agency, Inc.*, 961 F. Supp. 2d 427, 455–56 (E.D.N.Y. 2013) (internal citations and quotations omitted).

Notably, the "litigation privilege, being absolute, confers immunity from liability regardless of motive." *Gottwald v. Sebert*, 40 N.Y.3d 240, 253, 220 N.E.3d 621 (N.Y. 2023) (internal citations and quotations omitted); *see also Boyd v. Lansbury*, No. 23-CV-7459 (RER) (SIL), 2025 WL 948360, at *2 (E.D.N.Y. Mar. 28, 2025) ("The litigation privilege protects litigants against retaliatory claims based on material statements made in anticipation of litigation.") "Statements made in the course of judicial proceedings are absolutely privileged and therefore may not form the basis of a claim for defamation." *Id.* (quoting *Lader v. Delgado*, 941 F. Supp. 2d 267, 272 (E.D.N.Y. 2013)).

Here, the claims for defamation and libel are in connection with "[t]he allegations of criminal wrongdoing against Plaintiff in Counterclaim by Defendants in Counterclaim pursuant to their Plan are outrageous, shocking, intentional, knowing, wrongful, fraudulent, and *published repeatedly through the Complaints in the instant and prior actions*." (ECF No. 454 at 80-82; *see also* ECF No. 433 at 76-77) (emphasis added). These statements are subject to the litigation privilege as Counterclaim Plaintiffs rely on the statements made during and within the lawsuits. If the Court were to conclude otherwise, litigants would be hamstrung to sue and enforce their rights due to fear of retaliatory defamation claims. *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 146 (E.D.N.Y. 2010) ("Statements made in the course of court proceedings are absolutely privileged under New York common law.")

Accordingly, the counterclaims in both Amended Answers with Counterclaims for defamation per se and libel are dismissed.

## II.    Tortious Interference with Contracts and Prospective Economic Advantage

Next, the Deos also include a claim for tortious interference with contracts and prospective economic advantage. "To set forth a cause of action sounding in tortious interference with business relations, a plaintiff is required to plead 'that the defendant interfered with the plaintiff's business relationships either with the sole purpose of harming the plaintiff or by means that were unlawful or improper'" *Long Island Thoracic Surgery, P.C. v. Bldg. Serv. 32BJ Health Fund*, 188 N.Y.S.3d 570, 572–73 (N.Y. App. Div. 2d Dep't 2023) (internal citations omitted). Generally, such a claim would be dismissed as duplicative of the other tort claims. However, given the above dismissal of defamation this claim is no longer duplicative, but it does fail for other reasons. *See Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263, 291 (S.D.N.Y. 2016) (collecting cases that dismissed a tortious interference claim as

11

duplicative of the defamation claim as the allegations were the same for both claims); *Kesner v. Dow Jones & Co., Inc.*, 515 F. Supp. 3d 149, 190 (S.D.N.Y. 2021) (same).

Here, Deos state in their pleading that,

> the Counterclaim Defendants engaged in a pattern of malicious and intentional conduct designed to damage Counterclaim Plaintiffs' reputation in the automobile industry. Counterclaim Defendants had knowledge of existing contracts that Counterclaim Plaintiffs had with multiple third parties and relied on those contracts for ongoing business. Counterclaim Defendants engaged in intentional and malicious conduct procuring the breach and deprivation of the benefit of those contracts.

(ECF No. 433 at ¶¶ 45-48.)

Fatal to this claim, however, is that the Deos do not provide any allegations of improper means that caused harm to them or how the Counterclaim Defendants interfered with their businesses. Indeed, the Deos write "[a]s set forth above", which relates to all the alleged defamatory statements found in complaints or other court filings and nothing more. That is not enough to make a prima facie showing of such a claim. *See Hello Beautiful Salons, Inc. v. Dimoplon*, 249 N.Y.S.3d 569, 576 (N.Y. App. Div. 2d Dep't 2026) (finding the claim was adequately pled when the plaintiff alleged wrongdoing conduct of the defendants and stating, "[t]o set forth a cause of action sounding in tortious interference with business relations, a plaintiff is required to plead that the defendant interfered with the plaintiff's business relationships either with the sole purpose of harming the plaintiff or by means that were unlawful or improper")

Accordingly, this claim likewise fails and is dismissed.

### III.   <u>Abuse of Process</u>

The final counterclaim is for abuse of process. "Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal (2) an intent to harm without

excuse or justification and (3) use of process in a perverted manner to obtain a collateral objective." *Panish v. Steinberg*, 32 A.D.3d 383, 383–84, 819 N.Y.S.2d 549, 550 (N.Y. App. Div. 2d Dep't 2006). The Deos allege that (i) "Counterclaim Defendants made multiple false and baseless accusations against Counterclaim Plaintiffs in support of numerous meritless causes of action in the instant case, and in other litigations", which was "for the specific purpose of harming Counterclaim Plaintiffs and their automobile businesses." (ECF No. 433 at ¶¶ 50-55.) To the extent that Counterclaim Plaintiffs use the words "malicious prosecution" in this claim, there is no malicious prosecution cause of action alleged and therefore, it will not be addressed. (*See id.* at ¶ 54.) ("As a result of Counterclaim Defendants malicious prosecution, including but not limited to false accusations/complaint allegations of criminal liability.") Nonetheless, none of the elements are plead, even in a conclusory fashion. Even if the Court were to assume that the Complaint is the "process", those allegations are missing. *See Curiano v. Suozzi* 469 N.E.2d 1324, 1326 (N.Y. 1984) ("the process used must involve 'an unlawful interference with one's person or property' … the only process issued in the *Suozzi v. Parente* action was a summons, the process necessary to obtain jurisdiction and begin the lawsuit, there was no unlawful interference with plaintiffs' persons or property because the institution of a civil action by summons and complaint is not legally considered process capable of being abused").

Accordingly, the claim for abuse of power is dismissed for failure to state a claim.

## CONCLUSION

For the reasons stated, Plaintiffs' Motion to Dismiss the Counterclaims (ECF No. 473) is

**GRANTED**.[6]

Dated: Central Islip, New York
      May 21, 2026

**S O   O R D E R E D:**

/S/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

---

[6] Counterclaim Defendants also request that the Counterclaim Plaintiffs not be given leave to amend. (ECF No. 473 at 12-13.)That request is granted as these counterclaims have been pled twice now and the poorly written as well as conclusory allegations do not provide the Court any reason to believe that another amended pleading would yield a different result.   Counterclaim Plaintiffs have not offered any indication of  what amendments they would add that might give life to the counterclaims. Additionally, this case is headed to summary judgment and trial shortly. Thus, this case will not be further delayed by another pleading.