# Sage Legal LLC

**18211 Jamaica Avenue ● Jamaica, NY 11423-2327 ● (718) 412-2421 ● emanuel@sagelegal.nyc**

June 1, 2026

**VIA ECF**
United States District Court
Eastern District of New York
Attn: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

> *Re:*   **Superb Motors Inc.,** *et al.* **v. Deo,** *et al.*
>   **Case No.: 2:23-cv-6188 (JMW)**

Dear Judge Wicks:

This office represents the Superb Plaintiffs, who write pursuant to ¶ 3(D)(1) of the Individual Rules for a pre-motion conference regarding their summary judgment motion against the Deo Defendants and Flushing Bank ("Flushing").

**Outline of Motion**

On a summary judgment motion, the movant must demonstrate there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Kimba Industries Inc. v. Fortegra Specialty Ins. Co., 2025 WL 2793670, at *4–5 (E.D.N.Y. Oct. 1, 2025), adhered to on reconsideration, 2025 WL 3276890 (E.D.N.Y. Nov. 25, 2025) (citing Fed. R. Civ. P. 56(a)) (other citations omitted).   The Superb Plaintiffs have adduced sufficient evidence to obtain summary judgment against the Deo Defendants and Flushing on the first through fifth (collectively, RICO), sixth (unfair competition), seventh (conversion), eighth (civil conspiracy), ninth (fraud), eleventh (UCC Article 4), twenty-seventh (breach of fiduciary duty), and twenty-eighth (breach of duty of loyalty / faithless servant) causes of action in Plaintiffs' third amended complaint.  See ECF 316.

> i.   RICO and Civil Conspiracy

"The elements [of] a[n 18 U.S.C. § 1962] subsection (c) violation are: (1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." See Salinas v. United States, 522 U.S. 52, 62 (1997).  A claim for a RICO conspiracy under 18 U.S.C. § 1962(d) requires proof "(a) of an agreement to join a racketeering scheme, (b) of the defendant's knowing engagement in the scheme with the intent that its overall goals be effectuated, and (c) that the scheme involved, or by agreement between any members of the conspiracy was intended to involve, two or more predicate acts of racketeering." See United States v. Zemlyansky, 908 F.3d 1, 11 (2d Cir. 2018).  For violations under § 1962(a), a plaintiff must prove "(1) that the defendant (2) through the commission of two or more acts (3) constituting a pattern (4) of racketeering activity (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an enterprise (7) the activities of which affect interstate or foreign commerce." See Conte v. Tapps Supermarket, 2023 WL 6594351, at *11 (E.D.N.Y. July 3, 2023), report and recommendation adopted, 2023 WL 6140182 (E.D.N.Y. Sept. 20, 2023).

Deo, a convicted fraudster, executed a shareholder's agreement with Urrutia as the majority shareholder (51%) and Deo as minority shareholder (49%). Urrutia had, among other responsibilities, the power to review and approve financing agreements with lenders, as well as control over Superb's accounting department. Conversely, Deo could only propose who would serve as General Manager of the day-to-day operations. However, Deo signed multiple checks from Superb's Chase bank accounts under Urrutia's control; none of the checks were authorized, but Deo signed each of them in contravention to his limited power under the shareholder agreement. Shortly after their first meeting in November 2022, Deo and Urrutia entered into a Cross-Purchase Agreement, which stipulated that Deo, presenting himself as the sole owner of Northshore and Sunrise would pay Urrutia and issue him twenty-five percent interest in Northshore and Sunrise, and that Urrutia would grant to Deo a forty-nine percent interest in Superb essentially treating the dealerships and their respective assets as his own.

Furthermore, Laurie – another convicted fraudster – used his business DLA Capital and its connections to help Deo open accounts with knowledge that this breached the Shareholders' Agreement because he had been in attendance in a meeting with Urrutia and thus knew Urrutia held sole check authorization and control of Superb's bank accounts. And Deo, with the help of Sara Deo, Thomasson, Blankenship, Merckling, and Laurie have organized a double-flooring scheme by filling out applications for financing and making material misrepresentations in said applications, costing Superb hundreds of thousands of dollars.

Around November 15, 2022, Deo agreed to sell almost one million dollars of the dealership's future receipts to Libertas for $735,000. However, when a dispute arose over the Libertas Funds – shortly after Deo was confronted by Urrutia for lying about his true role at Northshore and Sunrise – Blankenship and Merckling, retired and active police officers, used their connections with the Nassau County Police Department to shield Deo from being arrested. At all relevant times, Thomasson claimed to be the attorney for Northshore, Sunrise, and Deo and was aware that the Libertas Funds were paid by Libertas to Northshore. When a dispute arose concerning the rights to the Libertas funds, the IAG Plaintiffs agreed to place the funds in Thomasson's attorney trust account pending resolution because Blankenship and Merckling once again abused their authority to threaten to have Aaronson arrested if he refused. Plaintiffs claim that despite his knowledge of the ongoing dispute, Thomasson distributed the Libertas Funds to Deo declaring he would not be told what to do regarding his own escrow accounts, thus furthering Deo's scheme. Blankenship and Merkling's intervention with the Nassau County Police to pressure Aaronson into wiring money to Thomasson's account enabled Thomasson's "direct participation" and his release of the "stolen funds" which enabled Deo to pay Urrutia funds fraudulently obtained from Libertas in late November 2022. Deo misrepresented not only his member status of the dealerships, but also whether he anticipated or had pending litigation against him and whether he had the power and right to transfer shares of the dealerships to Urrutia. The Deo Defendants each substantially assisted Deo in carrying out his unlawful schemes, most notably in diverting and misappropriating Superb funds. When Urrutia, upon becoming aware of Deo's conduct, informed NCPD to remove him, Blankenship and Merckling used their positions to hinder the investigation and protect Deo. Thomasson provided the operation with a veneer of legitimacy posing as counsel for the dealership but also aided and abetted Deo by delivering the unauthorized funds directly to Deo to Car Buyers NYC Inc when, in fact, the funds belonged to Northshore.

2

P a g e | 3

### ii.        Unfair Competition

Urrutia and Superb invested significant labor, skill and money in developing technology for Superb's use. Urrutia generated a substantial customer list which could not possibly be reverse engineered or independently generated. Urrutia similarly used his own decades of experience in the industry to create Superb's business model premised on the Tekion DMS. In addition to labor and skill invested in the business model, Urrutia customized the system for Superb's function and invested $120,000.00 to acquire this unique competitive advantage for the dealerships. Superb maintained the information's confidentiality. Deo used wrongful tactics to acquire this confidential client information since he poached Superb employees for his own dealerships and trained them in the Tekion DMS. Furthermore, Deo and these employees used their time at Superb and familiarity with its Customer List to redirect customers and leads to Deo's dealerships. As such, Deo effectively and illicitly channeled Urrutia's decades of experience, the Customer List, and DMS customized for Superb into his own Gold Coast dealerships.

### iii.        Conversion

Deo exercised unauthorized dominion over Superb's personal property in interference with their legal title. Deo has taken over nearly half-a-million dollars in customer cash deposits, rather than depositing them in Superb's account as well as issued and signed checks from such accounts to pay for his personal expenses.

### iv.        Fraud

The Hon. Jerome C. Murphy, J.S.C. has already found that Deo made material misrepresentations of fact in breaching the representations and warranties he made in the Cross-Purchase Agreement.  Deo intended to defraud Urrutia by making these representations and warranties in order to get his foot in the door at Superb.  Urrutia reasonably relied on Deo's representations and warranties as contractual representations and warranties are designed by their nature to be relied upon such that no due diligence is necessary.  The Superb Plaintiffs suffered damages based on their reliance by losing millions of dollars in revenue and operating capital as well as the value of their dealerships.

### v.        Breach of Fiduciary Duty & Breach of duty of loyalty / faithless servant doctrine

As a general manager and putative shareholder of Superb, Deo had a fiduciary duty and a duty of loyalty to Superb and Urrutia.  Deo breached his duty by engaging in self-dealing, manipulating accounting entries, moving funds to other bank accounts not controlled by Urrutia, violating the shareholders' agreement, and related conduct.  The Superb Plaintiffs suffered damages as a result of Deo's conduct.

### vi.        UCC Article 4 against Flushing

Flushing knew, or should have known, that Deo had no membership interest in Northshore, Sunrise, or Superb to authorize the transactions at issue, or at the very least that a commercially reasonable actor (here, a sophisticated bank), would have been alerted to the fact that the transfers

Page | 4

were fraudulent and thus unauthorized. If those inquiries had been made, then Flushing would have been able to confirm that Deo lacked actual authority. Indeed, among other things, Flushing knew that Deo was being sued by another dealership concerning his misrepresentations that he was an owner of Northshore and Sunrise. In addition, Flushing had actual knowledge that Urrutia, not Deo, was the majority shareholder of Superb and sole member of shareholder of his remaining dealerships because Urrutia had previously provided Flushing with all information concerning his ownership interest in Superb. Flushing therefore failed to act in a commercially reasonable manner for opening an account for Deo as the "100% owner" of Superb and must pay the Superb Plaintiffs damages for Deo's unauthorized transfers in Superb's bank account with Flushing.

**Relief Sought**

A finding of liability on the foregoing causes of action and damages, either on summary judgment or upon a hearing on the amount of damages.

**Briefing Schedule**

The parties have agreed to the following briefing schedule. Moving papers due thirty (30) days following the pre-motion conference. Opposition papers due sixty (60) days thereafter. Reply papers due thirty (30) days thereafter.

**Statement of Material Facts**

Although the Superb Plaintiffs and the IAG Plaintiffs have submitted separate letter motions for a pre-motion conference, and intend to file separate motions for summary judgment, to aid the Court, the Plaintiffs are submitting a single Local Civil Rule 56.1 Statement of Material Facts which they will rely upon in support of their separate motions.

**This Court Should Permit Leave to Raise Additional Arguments in Motion Practice**

The Individual Rules provide that any arguments not raised in a motion for summary judgment shall be deemed waived. However, given the breadth of claims at issue and the complexity of the facts, all the arguments the Superb Plaintiffs seek to raise cannot be condensed into 1,000 – not even 2,000 – words.[1] As a result, the Superb Plaintiffs should be permitted leave to raise any additional arguments in their memorandum of law in support of their motion for summary judgment.

The Superb Plaintiffs thank this Court for its time and attention to this matter.

---

[1] The Superb Plaintiffs respectfully seek leave to exceed the word count limit by 1,000 words because they seek summary judgment against two (2) distinct defendants, i.e., the Deo Defendants and Flushing. Because there are numerous claims against the Deo Defendants, each of which was addressed with painstaking brevity, and because there is an entirely separate claim against Flushing, there exists good cause to exceed the word count limit.

Dated: Jamaica, New York
      June 1, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

**VIA ECF**
All counsel of record