# Sage Legal LLC

**18211 Jamaica Avenue • Jamaica, NY 11423-2327 • (718) 412-2421 • emanuel@sagelegal.nyc**

**VIA ECF** June 30, 2026

United States District Court
Eastern District of New York
Attn: Hon. James M. Wicks, U.S.M.J.
100 Federal Plaza, Courtroom 1020
Central Islip, NY 11722-4438

***Re:*** **Superb Motors Inc., *et al.* v. Deo, *et al.***
**Case No.: 2:23-cv-6188 (JMW)**

Dear Judge Wicks:

This firm, together with Cyruli Shanks & Zizmor LLP represents the Plaintiffs in the above-referenced case. The Superb Plaintiffs write in accordance with ¶ 3(D)(2)(c) of this Court's Individual Practice Rules (hereinafter "Individual Rules") and its June 11, 2026 Order to submit the instant letter response in opposition to the Defendants' letter motions for a pre-motion conference in anticipation of their respective motions for summary judgment. See ECF Docket Entries 516, 519, and 521. For the reasons set forth below, the Defendants' motions are unsupported by actual evidence such that they are procedurally defective, would be futile on the merits, and must therefore be denied.

As an initial matter, each of the Defendants' submissions are defective because they contain facts with no evidentiary support as required by the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule") and the Individual Rules. Rule 56 provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. See Fed. R. Civ. P. 56(c)(1). The Individual Rules require that the proponent of a summary judgment motion submit a Local Civil Rule ("LCR") 56.1 Statement *containing evidentiary citations*. See Individual Rules ¶ 3(D)(2)(b); see also LCR 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by [Rule] 56(c)."); F.D.I.C. v. Hodge, 50 F. Supp. 3d 327, 343 n.2 (E.D.N.Y. 2014) (citing LCR 56.1(d)).

Here, each of the Defendants' respective statements, by and large, cite to the pleadings. This is insufficient. Summary judgment may be denied "[i]f the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production[.]" See Vt. Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004); see also Rosas v. MIRI Gen. Contracting Inc., 782 F. Supp. 3d 20, 24 (E.D.N.Y. 2025) ("As a preliminary matter, as Defendants' motion fails to comply with Local Civil Rule 56.1, the Court denies Defendants' motion on these grounds alone").

Further, in determining whether a movant has met its burden, "the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement." See Vt. Teddy Bear Co., Inc., *supra*. Rather, the court "must be satisfied that the citation to evidence in the record supports the [movant's] assertion." Id. As a result, summary judgment must be denied on this grounds alone. See Bustamante v. KIND, LLC, 100 F.4th 419, 432 (2d Cir. 2024) ("[A]llegations in the complaint can be considered as evidence ... only where the complaint has been sworn under penalty of perjury"); Vaigasi v. Solow Management Corp., 2016 WL 616386, at *17 (S.D.N.Y. 2016) (Therefore, far from constituting "considerable" evidence of fraud and racketeering, the unverified allegations of GEICO's Complaint "do not ... constitute a factual showing of anything"); Scantek Medical, Inc. v. Sabella, 693 F.Supp.2d 235, 241, n. 1 (S.D.N.Y. 2008) ("[i]t is fundamental that unproven allegations are not proof of their content").[1]

Further, as to the Deo Defendants, their submission is replete with documentary evidence without a proper evidentiary foundation. See Schaghticoke Tribal Nation v. Kempthorne, 587 F. Supp. 2d 389, 395 (D. Conn. 2008) (explaining that on summary judgment, affidavits shall be made on personal knowledge, the principles governing admissibility of evidence do not change on a motion for summary judgment, and documents submitted that include inadmissible hearsay or conclusory statements, are incomplete, *or have not been properly authenticated*, may be disregarded by the court), aff'd, 587 F.3d 132 (2d Cir. 2009) (emphasis added).

Even were Defendants to prevail upon the Court in somehow correcting their defective statements of fact (which this Court should deny) with some form of admissible evidence, their motions must be denied on the merits.

IAG Plaintiffs' Response in Opposition

The Deo Defendants have failed to set forth sufficient evidentiary undisputed facts to warrant granting them summary judgment dismissing the claims against them. In their premotion conference letter, the Deo Defendants rely upon one set of purported undisputed facts and one legal theory to dismiss the claims against them.

The Deo Defendants claim that ownership of Northshore and Sunrise are threshold issues. And that the undisputed facts will establish that Anthony and Sara Deo owned Northshore since inception and Sunrise since 2021 (claiming to have bought it from certain IAG Plaintiffs). Consequently, the Deo Defendants argue that, once ownership is established, the claims against them should be dismissed. They are wrong on all counts.

The facts do not establish for summary judgment purposes that Anthony and Sara Deo always owned Northshore and Sunrise (since 2021). Nor would their ownership result in a summary judgment dismissal of the IAG Plaintiffs' claims.

---

[1] This rule is hardly new. See Patterson v. Gaines, 47 U.S. 550, 588 (1848) (pleadings are "not evidence ... for any purpose"); Globe Refining Co. v. Landa Cotton Oil Co., 190 U.S. 540, 546 (1903) ("we are dealing with pleadings, not evidence").

The undisputed facts in the Plaintiffs' joint Rule 56.1 statement provide the following, not only disputing the Deo's ownership of Northshore and Sunrise, but establishing ownership in certain IAG Plaintiffs:

1. Northshore's operating agreement dated February 14, 2018 was signed by IAG Plaintiffs, David Baron ("Baron"), Asad Khan ("Kahn") and Brian Chabrier ("Chabrier") as its sole members and operated under a DMV license listing Chabrier as the owner-applicant.

2. Baron arranged for Ally Bank ("Ally") to provide Northshore with a used car floorplan financing which was guaranteed by certain IAG Plaintiffs. Chabrier had primary authorization on the Northshore and Sunrise bank accounts.

3. Deo was engaged solely as the manager, handling all aspects of the business.

4. Beginning in 2018 Baron, Khan and Chabrier would regularly come to Northshore to check in and occasionally receive a payment recorded as a shareholder draw, until May 2021 when Baron died.

5. Northshore's 2018, 2019 and 2020 tax returns listed Baron, Khan and Chabrier as sole members, each receiving a K-1 and paying taxes on their personal returns for their proportionate share of the profits.

6. The Deos' accountant, Tom Jones ("Jones"), testified that prior to October 2022 the Does were not the owners of Northshore or Sunrise. As an employee, Deo received a weekly salary and monthly sales commissions, which, Jones testified, would not be paid to owners.

7. The written agreement under which Deo claimed he bought Sunrise from certain IAG Plaintiffs was unsigned. The terms therein required a $50,000 downpayment, which was paid, and monthly payments thereafter until Deo could obtain certain cross collateral guarantees, which payments were never made nor the condition met.

8. The first operating agreement for Northshore and Sunrise with Deo as owner was created in March 2023 and backdated to June 2020. Prior to October 2022 Deo had never filed any tax return for Northshore or Sunrise and has still never filed a personal tax return with a K-1 from Northshore or Sunrise showing him to be an owner or paying any tax on profits.

9. Deo had never sent one written communication to anyone about not being listed as an owner or member of Northshore or Sunrise nor sought information necessary to file the tax returns.

It was first discovered by the IAG Plaintiffs on August 31, 2022 that there were insufficient monies available for Northshore and Sunrise to pay off their floor plan lender, lenders of vehicles traded-in and other financial obligations because Deo had manipulated financial records and withheld obligatory payments to make it appear the dealerships were profitable. IAG Plaintiffs had to pay millions of Northshore's and Sunrise's obligations to satisfy the Ally loan guarantees, Department of Motor Vehicles licensing requirements and to avoid potential criminal charges.

It was then that the IAG Plaintiffs wanted to rid themselves of the dealerships and Deo. Being October 2022, when the dealerships' 2021 tax returns were due, Deo was allowed to file the 2021 tax as owner as part of the future dealership transfer, conditioned on Deo paying back the losses, obtaining his own floorplan loan and transferring the dealerships' licenses to himself as owner-applicant. Deo filed the returns but never satisfied any of the conditions.

Deo then took out two loans, $735,000.00 from Libertas and $500,000.00 from Flushing, using those tax returns and false financial records, which falsity was easily discoverable by the lenders before approving the loan.

The only support noted in the Deo Defendant's premotion conference letter for pre-October 2022 ownership was a purported assignment of a NESNA contract, which has no assignment language, and dealership lease payments which were paid by the dealerships, not the Deo's personally. And the only support for ownership after October 2022 was the approval to file the tax returns. Even if it did establish ownership, which it did not, the undisputed facts establish that Deo was not the owner of Northshore or Sunrise prior to October 2022.

And Deo was not the owner of Northshore or Sunrise after October 2022. Allowing Deo to file those returns was part of the larger ownership transfer agreement, which Deo did not satisfy. The Deo Defendants' tax return estoppel argument in Mahoney-Buntzman v. Buntzman, 12 N.Y.3d 415, 422 [2009] is inapplicable. Tax return estoppel only applies to a position taken in a tax return signed by the party to be estopped. The tax returns relied upon by the Deo Defendants were only signed by them, not Josh Aaronson. And see Tradesman Program Mgrs., LLC v. Doyle, 202 A.D.3d 456 [1st Dept 2022], in which the issuance of a K-1 by a party did not act to estop him from challenging the other party's ownership because he had not signed the return. See also Kimelstein v Kimelstein, 2011 N.Y. Misc. LEXIS 5352 (Sup. Ct. Suff. Cty. 2011).

Finally, ownership issues aside, it is undisputed that Deo managed all operations of the dealerships, certainly after Baron's death in May 2021. It also undisputed that the dealerships employed the Ally floorplan line, which was guaranteed by certain IAG Plaintiffs, and that Chabrier was the license applicant-owner. Whoever was the owner, the IAG Plaintiffs needed to satisfy the millions of dollars of debts to Ally and the customer's lenders for the money that disappeared from the dealerships under Deo's control, and the losses hidden by Deo.

As to Libertas Funding LLC ("Libertas"),[2] in seeking summary judgment, it offers that it is undisputed that because the IAG Plaintiffs gave Deo the authority to file the tax returns he provided them, showing Deo as owner, they could rely upon the tax return to bind Northshore to the agreement. This belief must arise from the words or conduct of the principal communicated to the third party, rather than the agent's own unauthorized acts. See Hallock v. State, 64 N.Y.2d 224 (1984); see also Canfield Funding, LLC v. Focalpointe Group, LLC, 240 A.D.3d 1363 (2025). However, in Highland Capital Mgmt. LP v. Schneider, 607 F.3d 322 (2010), relied upon by Libertas, a third party cannot establish that an agent acted with apparent authority to bind a principal to an agreement when that third party knew or should have known that the agent was exceeding the scope of their authority.

[2] The Superb Plaintiffs take no position on Libertas' motion.

A party invoking apparent authority assumes a duty of reasonable inquiry and must make necessary efforts to discover the actual scope of the agent's authority. See Ferrarella v. Godt, 131 A.D.3d 563 (2015); Emigrant Bank v. Rosabianca, 156 A.D.3d 468 (2017). And when facts or circumstances exist that would make an ordinarily prudent person suspicious, a party cannot blindly rely on an agent's representations. See Edinburg Volunteer Fire Co., Inc. v. Danko Emergency Equip. Co., 55 A.D.3d 1108 (2008).

Libertas required Deo to provide proof of his filing of his personal tax returns. Those tax returns would have revealed that Deo had not listed Northshore and Sunrise on his personal returns, which would have established that Deo was not their owner. Despite following up with Jones, who assured Libertas that Deo had filed the personal returns, which Libertas knew had not been filed for eight (8) prior years, and would provide them to Libertas, he did not. Yet Libertas approved and funded the loan. Libertas did not exercise the ordinary care and blindly relied on Deo's false representations. Their motion for summary judgment must therefore be denied.

Superb Plaintiffs' Response in Opposition

The Deo Defendants argue that the claims against them should be dismissed because they own Northshore and Sunrise. However, this defense is not the panacea the Deo Defendants make it out to be. Preliminarily, the issue of ownership has been fully and finally decided by the Hon. Jerome C. Murphy, J.S.C. ("Justice Murphy") in the related state court action and *res judicata* bars this argument. Indeed, this Court has applied Justice Murphy's decision recently and the issue of ownership is now law of the case. Even if ownership was still up for debate, the defense would fare no better. This is because ownership by Anthony Deo owned Northshore and Sunrise is not dispositive of whether he and his cohort engaged in a scheme to defraud the Plaintiffs by engaging in wire fraud. Indeed, Anthony Deo owes fiduciary duties and a duty of loyalty to the Plaintiffs regardless of whether he is an owner of Northshore and Sunrise given the parties' clearly documented working relationship together. Furthermore, tax returns are not dispositive of ownership, and Deo admitted at his deposition that he had no certificate of his membership interest in either Northshore or Sunrise at any time.

The Deo Defendants also argue that Urrutia lost his remaining dealerships due to "mistakes by the floor plan provider," but this argument is futile for at least two reasons.

First, Superb did not shut down due to this asserted reason. Second, as addressed in prior declarations by Urrutia, were it not for Deo's conduct which severely crippled his remaining dealerships, he would not be forced to shut them down.

The Deo Defendants also point out that the number of vehicles allegedly stolen by them dwindled down from over one hundred to the "teens." This argument ignores the fact that Deo had a duty to account for all vehicles as the general manager of Superb and that the Superb Plaintiffs relied on the general ledger in asserting the number of vehicles that were missing. While the Superb Plaintiffs were able to ascertain the whereabouts of most vehicles, there remain some that are missing with Deo unable to provide any information about them. More importantly, for the vehicles that were found, the investigation into a substantial number of vehicles revealed and exposed the Deo Defendants' various fraudulent schemes supporting the Plaintiffs' claims.

The Deo Defendants' final argument concerning opening the bank account for Superb at Flushing Bank ("Flushing") is properly considered together with Flushing's arguments.[3] For the reasons set forth below, Deo had no authority to open the bank account and Flushing acted in a manner that was not commercially reasonable under the circumstances.

*First*, Flushing knew on March 30, 2023 that the Island Auto Group Plaintiffs filed suit against Deo over his inappropriate dealings with Northshore and Sunrise. This, alone, should have rang alarm bells for Flushing such that Deo should have been prevented from opening an account for Superb.

*Second*, Weinstein knew that Urrutia was an owner of Superb. This, alone, is sufficient to establish that Flushing did not act in a commercially reasonable manner because Weinstein's knowledge – as the Vice President/Branch Manager at Flushing– is imputed to Flushing. See Zaccaro v. Shah, 746 F. Supp. 2d 508, 525 (S.D.N.Y. 2010) ("A corporation is charged with the knowledge of its officers if those officers gain that knowledge while acting within the scope of their employment") (citing Van Ostrand v. Nat'l Life Assur. Co. of Canada, 82 Misc.2d 829 (N.Y.Sup.Ct.1975) ("As a general rule, a corporation is not chargeable with knowledge of all that its agents know, but only with those material facts which the agents have received or acquired while acting for the corporation within the scope of their agency and where it is their duty to report their knowledge to the corporation"). Separate and apart from Weinstein's knowledge, Puccio himself knew that Superb had another owner.

*Third*, Flushing cannot establish that it acted in a commercially reasonable manner. Under § 4-A-204(1), a bank that accepts an unauthorized payment order that is not "effective" under § 4-A-202 must refund the customer. A payment order binds the customer only if it was authorized under agency law, or it is "effective" because the bank and the customer agreed to a commercially reasonable security procedure with which the bank complied in good faith. Flushing can establish neither as a matter of law. Flushing's own admissions refute its premise that it had "no information" that Urrutia owned Superb. Flushing concedes that on March 30, 2023 – days before the Superb account was opened – Urrutia emailed David Weinstein the 2021 Superb tax return, which listed Urrutia as 60% owner and Robert Clarke as 40% owner" (ECF No. 517 ¶ 12), and that Weinstein forwarded it within the bank (id. ¶ 13). Flushing thus had documentary notice, before opening the account, that Urrutia was an owner and Deo was not. Its own banker, Robert Puccio, contemporaneously understood he was "only opening the joint venture you have with your partner" (id. ¶ 25). Whether Flushing "knew or should have known" of Deo's lack of authority is, on Flushing's own facts, genuinely disputed.

*Fourth*, Flushing's argument that Weinstein's documents were never uploaded to a central repository is not a defense because Weinstein was a corporate officer whose knowledge was imputed to Flushing. In fact, this fact establishes that Flushing failed to act in a commercially reasonable manner. Had Weinstein uploaded the documents to the central repository, the Superb Plaintiffs would not have been harmed by Deo's fraudulent conduct. A bank that holds the owner's tax return in its employees' inboxes while opening an account on a stranger's self-certification has not, as a matter of law, followed a commercially reasonable security procedure in good faith.

[3] The IAG Plaintiffs take no position on Flushing's motion.

*Fifth*, apparent authority cannot rest on Deo's own representations. The Court's March 21, 2025 Opinion and Order framed the question as whether the principal's – that is, the Superb Plaintiffs' very own Urrutia – words or conduct created the appearance that Deo had authority (ECF No. 230). Apparent authority arises only from the principal's manifestations, never the agent's. Flushing's reliance on Deo's signed Certification of Beneficial Owner(s) and Resolution of Authority (ECF No. 517 ¶¶ 28–31) is therefore legally insufficient. The only Plaintiff conduct Flushing identifies is Mr. Urrutia forwarding Superb's Certificate of Incorporation (id. ¶ 27) — a document Flushing itself concedes is "silent as to ownership interests" (id. ¶ 11). Forwarding an ownership-silent formation document does not manifest that Deo was Superb's 100% owner or its authorized signatory. Indeed, Urrutia testified only that he did so to expedite the process for opening accounts at Flushing in which *he* is a signatory, *not* Deo as "100% owner." Moreover, while Deo testified that Urrutia purportedly verbally approved Deo to represent himself as 100% owner for the purpose of obtaining a loan from Flushing, Flushing admits that Deo never applied for any loan for Superb.

*Sixth*, Deo's contrary testimony is disputed and incredible. Flushing leans on Deo's testimony that the 100%-owner representation was "agreed upon" and that Mr. Urrutia "told him" to list himself as 100% owner (id. ¶¶ 31–32). Urrutia squarely disputes that; no writing corroborates it; and it is the uncorroborated word of a witness whom the Nassau County Supreme Court has adjudicated to have made false ownership representations (NYSCEF Doc. No. 134). Deo's own August 17, 2023 email states only that he "bought 50%" and "subsequently… 100% in Feb 2023" through "a contract [the] lawyers have been working on" (id. ¶ 61), which is itself an admission the purchase was never consummated. A credibility contest between Urrutia and Deo is a quintessential jury question.

*Finally*, the § 4-A-202 safe harbor does not apply. Flushing argues Urrutia "did not open any accounts at Flushing" (id. ¶ 14). However, Flushing's own witness conceded that Superb was a customer of Flushing. Superb never agreed to any security procedure with Flushing for verifying payment orders, so the "effective" safe harbor that shifts the loss to the customer has no application, and the orders Deo initiated were neither authorized nor effective. Flushing's own witness confirms the account opening, and thus all resulting activity, was unauthorized (Buccino Tr. 271:18–22), that Flushing had no system to verify documents before opening accounts (id. 213:23–214:7), and no capacity to flag conflicts (id. 205:10–18). This cements the Superb Plaintiffs' entitlement to summary judgment against Flushing for not acting in a commercially reasonable manner.

For the foregoing reasons, the Defendants' letter motions for a pre-motion conference must be denied.[4]

The Plaintiffs thank this Court for its continued time and attention to this case.

---

[4] Plaintiffs certify that this letter response in opposition consists of 3,764 words. Because two (2) sets of Plaintiffs are responding to three (3) sets of Defendants' separate motions, Plaintiffs respectfully submit they should be entitled to a 5,000 word submission. Plaintiffs thus respectfully seek leave to file the instant letter response in opposition in excess of the standard 1,000 word count limit.

Dated: Jamaica, New York
June 30, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: */s/ Emanuel Kataev, Esq.*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

*Attorneys for Plaintiffs*
*Superb Motors Inc,*
*Team Auto Sales LLC, and*
*Robert Anthony Urrutia*

Dated: New York, New York
June 30, 2026

**CYRULI SHANKS & ZIZMOR LLP**

/s
Jeffrey Ruderman, Esq.
420 Lexington Avenue, Suite 2320
New York, NY 10170-0002
(212) 661-6800 (office)
(347) 379-4622 (direct dial)
(212) 661-5350 (facsimile)
jruderman@cszlaw.com

*Attorneys for Remaining Plaintiffs*

**VIA ECF**
All counsel of record