UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

______________________________

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC, and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

v. Case No. 2:23-cv-6188 (JMW)

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS

NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC,

Defendants.

______________________________

CONFIDENTIAL DEPOSITION OF

MICHAEL K. LAURIE

DATE: Tuesday, January 27, 2026

TIME: 11:11 a.m. AST/10:11 a.m. EST

LOCATION: Remote Proceeding

Trinidad and Tobago

REPORTED BY: Richelle Modestil

JOB NO.: 7813054

A P P E A R A N C E S

ON BEHALF OF PLAINTIFFS SUPERB MOTORS INC., TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA:

EMANUEL KATAEV, ESQUIRE (by videoconference)
Sage Legal LLC
18211 Jamaica Avenue
Jamaica, NY 11423
emanuel@sagelegal.nyc
(718) 412-2421

ON BEHALF OF PLAINTIFFS 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC, AND ISLAND AUTO MANAGEMENT, LLC:

JEFFREY RUDERMAN, ESQUIRE (by videoconference)
Cyruli Shanks & Zizmor LLP
420 Lexington Avenue, Suite 2320
New York, NY 10170
jruderman@cszlaw.com
(212) 661-6800 ext. 205

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT HARRY THOMASSON:

HAROLD "HARRY" R. THOMASSON, ESQUIRE, PRO SE
(by videoconference)
Law Office of Harry R. Thomasson
3280 Sunrise Highway, Suite 112
Wantagh, NY 11793
hrtatty@verizon.net
(516) 557-5459

ON BEHALF OF DEFENDANT FLUSHING BANK:

ARIEL E. RONNEBURGER, ESQUIRE (by
videoconference)
Cullen & Dykman LLP
The Omni Building
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, NY 11553
aronneburger@cullenllp.com
(516) 296-9182

A P P E A R A N C E S (Cont'd)

ON BEHALF OF DEFENDANT LIBERTAS FUNDING LLC:

JEFFREY S. CIANCIULLI, ESQUIRE (by videoconference)
Weir Greenblatt Pierce LLP
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
jcianciulli@weirlawllp.com
(215) 241-7740

ALSO PRESENT:

Robert Anthony "Tony" Urrutia, Plaintiff (by videoconference)
Anthony Deo, Defendant (by videoconference)
Alivia Cooney, Paralegal, Sage Legal LLC (by videoconference)

I N D E X

| EXAMINATION: | | PAGE |
|---|---|---|
| By Mr. Kataev | | 14 |

E X H I B I T S

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Laurie: | | |
| Exhibit 1 | New Jersey Criminal Complaint for Michael K. Laurie | 40 |

M. LAURIE

THE REPORTER: Good morning. My name is Richelle Modestil; I'm the court reporter assigned by Veritext to take record of this proceeding. We are now on the record at 10:11 a.m., with today being January 27, 2026, and this proceeding currently taking place on Zoom.

This is the deposition of Michael Laurie taken in the matter of Anthony Deo, et al., against Ronald Baron, et al., with the index number of 615683-2024, and this being filed in the Supreme Court of the State of New York in the County of Nassau.

I just want to state for the record that I'm a notary authorized to take acknowledgements and administer oaths in New York. Parties agree that I'll be swearing in the witness.

Additionally, absent an objection on the record before the witness is sworn, all parties and the witness understand and agree that any certified transcript produced from the recording of this proceeding:

- is intended for all uses permitted under applicable procedural and evidentiary rules and laws in the same manner as a deposition recorded by stenographic means; and

- shall constitute written stipulation of such.

At this time will everyone in attendance please identify yourself for the record, stating your name, the specific party you represent, and your firm's address, including suite numbers, starting with our questioning attorney.

MR. KATAEV: Hi. Good morning, everyone. Emanuel Kataev of Sage Legal LLC, for the plaintiffs Robert Anthony Urrutia, Superb Motors Inc., and Team Auto Sales LLC.

MR. RUDERMAN: Good Morning. Jeffrey Ruderman, Cyruli Shanks & Zizmor; we represent all the other plaintiffs that Mr. Kataev does not represent.

MR. THOMASSON: Harry Thomasson; I am pro se.

M. LAURIE

MS. RONNEBURGER: Ariel Ronneburger; I represent Defendant Flushing Bank.

THE REPORTER: Is there anyone else?

MR. KATAEV: Jeff Cianciulli said he's on and in the waiting room. Do you see him?

MR. CIANCIULLI: Sorry. I'm here. Can you hear me now? I had to change my audio source.

THE REPORTER: We can hear you.

MR. CIANCIULLI: Okay. Jeffrey Cianciulli on behalf of Defendant Libertas Funding.

THE REPORTER: Okay. Thank you. Hearing no objection, I will now be swearing in the witness. But before I do that, could we just have our witness state his name for the record and also his address?

MR. LAURIE: Michael Laurie, 1387 Monroe Street, Floral Park, New York 11001.

THE REPORTER: Could you just repeat the number of that address?

M. LAURIE

MR. LAURIE: 1387.

THE REPORTER: Thank you. Is that where you're currently taking your testimony?

MR. LAURIE: No. I am in the Caribbean.

THE REPORTER: And where?

MR. LAURIE: Trinidad.

THE REPORTER: Okay. All right. Can you please just raise your right hand.

WHEREUPON,

MICHAEL K. LAURIE,

called as a witness and having been first duly sworn to tell the truth, the whole truth, and nothing but the truth, was examined and testified as follows:

THE REPORTER: Thank you.

Just a reminder, Counsel, any spellings of names or entities, please spell for the record for accuracy of the transcript.

Also, please remember to speak one at a time, so just letting the other person finish speaking before proceeding for a

more clear transcript.

Also, in requesting to go off the record, just wait for me to announce the time.

Counsel may now proceed.

MR. RUDERMAN: Before we begin, I'd like everybody to identify themselves who is not -- I cannot see a face. We heard Mr. Thomasson; we heard Ms. Ronneburger; we heard Mr. Cianciulli; we heard Alivia.

Mr. Urrutia, could you please identify yourself. Take yourself off mute and just identify yourself for the record. Tony, are you there?

THE REPORTER: Tony Urrutia?

MR. RUDERMAN: Maybe he's not there.

THE REPORTER: I don't believe he's --

MR. RUDERMAN: Okay. I have a Mr. Deo.

Mr. Deo, could you please identify yourself for the record.

If people are going to be attending, they need to be attending and not give the

impression that they're not, so I would appreciate it if when they come back on, they can identify themselves.

All right. I'm sorry. We can go back on.

THE REPORTER: We've been on the record. You can continue.

MR. URRUTIA: Sorry. I'm Tony Urrutia.

MR. RUDERMAN: Thank you, Tony. All right.

MR. KATAEV: Mr. Deo, are you present?

MR. THOMASSON: What are we doing here? What is the purpose of this?

MR. RUDERMAN: I want to identify the parties who are attending.

MR. THOMASSON: Well, they've signed in.

MR. RUDERMAN: Okay. So then Mr. Deo is online. He's just not saying anything. Is that it?

MR. THOMASSON: Yeah.

MR. RUDERMAN: Okay.

M. LAURIE

MR. THOMASSON: He hasn't said a word during one of these depositions.

MR. RUDERMAN: Oh, that's fine. Okay. So you're confirming Mr. Deo is online. Okay. Thank you. We can go on.

MR. KATAEV: I also want to note for the record that Mr. Laurie's attorney is not present for the deposition.

For yesterday's deposition of Co-Defendant Marc Merckling, we did receive an email stating that Mr. Benjamin received the consent of Mr. Merckling to proceed without him and waives his appearance.

We have not received any such similar consent for Mr. Laurie. But based on representations made by Mr. Thomasson, it appears that Mr. Benjamin is not appearing, and the same consent is being given.

MR. RUDERMAN: Just ask Mr. Laurie on the record.

//

//

M. LAURIE

EXAMINATION

BY MR. KATAEV:

Q Mr. Laurie, do you understand that to be the case?

A Yes, I do. And I will answer the questions to the best of my ability without my counsel on the line.

Q Okay. All right. Good morning, Mr. Laurie. Thank you for being here today. My name is Emanuel Kataev; I am the attorney for the plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia.

From here on in, I will be referring to Superb Motors Inc. as "Superb" unless otherwise stated; okay?

A Yeah.

Q And I'll be referring to Team Auto Sales LLC as just "Team"; okay?

A Yeah.

Q As for Robert Anthony Urrutia, I'll be referring to him mostly as "Tony"; okay?

A Understood.

Q I will be asking you, and you will be answering questions today about yourself, Superb, Team, Tony, Island Auto Group, Anthony Deo, the claims against you and your gang, and other related subjects. Do you understand that?

MR. THOMASSON: Objection --

THE WITNESS: Did you just say the word "gang"?

BY MR. KATAEV:

Q Yes, I did --

A Did you just say that?

MR. THOMASSON: Objection --

BY MR. KATAEV:

Q I did.

A Okay. So he doesn't even have to object. If this is how you are going to start this, then I think we're going to finish this, because you're showing to me that you have a bias. And you don't even know me. You're going to call me part of a gang?

Q Do you understand that I'll be asking questions about those topics today?

A No. I understand that. But I'm -- I'm very upset with the fact that you just said that I'm part of a gang. You don't know who I am --

Q Okay. I need you to answer my questions. Your feelings are not a concern for me here. Your testimony today is --

A Then we might end this and do this in person when I come back next week, because you're not going to talk to me like that on a Zoom.

Q I will speak to you like this in person, on a Zoom --

A That's -- that's unacceptable -- that's unacceptable --

Q Whether I'm in front you, in front of a screen --

A Really? Wow.

MR. THOMASSON: Mr. Laurie, I'm asking you to continue for now; okay?

MR. KATAEV: Let the record reflect that disqualified counsel is instructing the witness to do things.

THE WITNESS: No. He's not -- he's not --

MR. THOMASSON: No. I'm not instructing him anything --

THE WITNESS: He's asking --

MR. THOMASSON: If you listened carefully, what I said was I'm asking Mr. Laurie to continue. I don't know if he is going to or not, but I'm asking him to.

MR. KATAEV: Okay.

THE WITNESS: I will at this moment. But if he continues that line, then I'm not going to. We'll do it in person.

BY MR. KATAEV:

Q You can take whatever actions you want, Mr. Laurie.

A Understood.

Q They will be subject to a motion by us, so I suggest you proceed with the deposition.

Your testimony today is subject to the same oath and same penalty of perjury as if you were testifying in

court. Do you understand that?

A Yes, I do.

Q Have you ever been deposed before?

A Yes.

MR. RUDERMAN: Mr. Laurie, your screen went blank.

THE WITNESS: Okay. Let me try this, then --

MR. RUDERMAN: I don't see you now. There you go.

THE WITNESS: Okay. There you go.

Yes, I have.

BY MR. KATAEV:

Q Okay. When was the last time you were deposited?

A I can't even remember. Maybe eight or nine years ago. I'm not sure. It was once.

Q What was that case about?

A It has nothing to do with this case.

Q I didn't ask you whether it has something to do with this case. My

question is, what was that case about --

A It had something to do -- it had something to do with two gentlemen who had taken money from other people, and I got -- I was involved with one of the agencies to help them catch them.

And then I got involved in it because they wrote me a check to my ex-wife. That's what I was deposed about.

Q Okay. So this is in relation to the federal criminal case brought against you; correct?

A Correct.

Q Okay. Other than that deposition eight to nine years ago, have you ever been deposed in any other circumstances?

A Not that I remember. No.

Q Okay. Since it's been eight to nine years since you've had a deposition, I'm going to go over some of the ground rules of a deposition; okay?

A Sure.

Q First, keep your voice loud and

M. LAURIE

clear for the court reporter so that she can take down everything that you're saying. Do you understand that?

A Yes.

Q Okay. Second, please answer in words as you've been doing. No body gestures, no mumbling, no "uh-huh" or "uh-uh." A verbal answer is necessary; okay?

A Yes.

Q Third, please allow me to complete my question before you answer, and I will give you the same courtesy. Do you understand that?

A Yes.

Q Fourth, if you don't understand the question I ask you, tell me, and I will rephrase it; however, if you answer it, I will assume that you understand the question. Do you understand that?

A Yes.

Q Fifth, we're looking for your best recollection of events today. We're going to be speaking about events that

M. LAURIE

have taken place over the course of approximately five years.

While I don't want you to guess at answers, even if your memory is not crystal clear, I am still entitled to your best recollection. Do you understand that?

A Yes.

Q Finally, you can take a break for any purpose at any time, except when there's a question pending. I ask that you answer it. Do you understand that?

A Yes.

Q Do you understand all these ground rules?

A Yes.

Q Is there any reason you cannot participate in today's deposition and provide truthful answers to questions?

A No.

Q Have you consumed any drugs, alcohol, or medications within the past 24 hours that will affect your ability to testify truthfully?

M. LAURIE

A No.

Q Is there any reason you can think of as to why you cannot give truthful answers today?

A No.

Q Do you go by any other name than Michael Laurie?

A No.

Q Do you have a middle name?

A Keith.

Q You testified that you had a deposition eight to nine years ago. Was that --

A That's what I thought --

Q I'm sorry?

A I think -- that's what I thought timewise. I'm not sure.

Q You testified approximately eight to nine years ago. Was that a formal deposition with a court reporter present?

A No.

Q Are you referring instead to a proceeding that was held in court?

M. LAURIE

A Yes.
Q Okay. Did you prepare for today's deposition?
A No.
Q Did you review any documents in advance of today's deposition, whether with someone or by yourself?
A No.
Q Did you have any discussions with any attorney about today's deposition?
A No. I was asked to do this yesterday.
Q Prior to your phone call yesterday asking you to do it yesterday, were you aware that your deposition was scheduled on another day?
A I knew it was coming, but I didn't know when.
Q Okay. Prior to his disqualification, Mr. Thomasson was your attorney; correct?
A For a short period of time. Correct.

M. LAURIE

Q To your knowledge, is Mr. Thomasson paid on salary for his services?

A I do not know anything about that.

Q Have you paid anything out of pocket to Mr. Thomasson for the legal services rendered to you in this case?

A I did not.

Q To your knowledge, who was paying Mr. Thomasson for his services?

A Mr. Deo.

Q To your knowledge, does Mr. Thomasson present either Mr. Deo or yourself with hourly bills for legal services rendered?

A Repeat that, who -- who you're asking that got paid by who.

Q I'll repeat the question.

To your knowledge, have you or Mr. Deo received any bills for legal services rendered by Mr. Thomasson?

A Me, no. I cannot answer that question for Mr. Deo --

M. LAURIE

Q You have you have not seen any bills for legal services rendered to Mr. Deo?

A No. I have not seen anything.

Q Have you signed a retainer agreement with Mr. Thomasson to perform legal services for you?

A No.

Q Do you have -- withdrawn.

Have you communicated with Mr. Thomasson about this case in general?

A No.

Q Have you had any one-on-one conversations with Mr. Thomasson about this case ever?

A In the past five years?

Q Yes.

A There was conversation years ago, but I have not been part of any conversations with him regarding this case. No. Not any time recently.

I mean, years ago, there was when he was representing Mr. Deo and everybody else, anybody who was involved.

M. LAURIE

But I have not had any conversations with Mr. Thomasson regarding this case in -- in years.

Q Okay. In the course of Mr. Thomasson's representation of you, did you ever come to exchange text messages with Mr. Thomasson?

A Other than being -- making sure I'm where I'm supposed to be, that would be the extent of what I remember of any text messages.

Q I'm not looking for the content. I'm just looking for the existence. Are there text messages? Yes or no?

A Yes.

Q Same question for emails?

A Yes.

Q To your knowledge, when was the last time you exchanged any text message with Mr. Thomasson?

A Yesterday when he asked me to get on here today.

Q Prior to that, when was the last time, to your memory?

M. LAURIE

A Maybe for New Year's when I said "Happy New Year" to him, and then prior to that, I -- I'd have to look.

Q Okay. What about emails? When was the last email exchange?

A When I received the information to log into this Zoom.

Q And prior to that?

A I would have to look. I couldn't tell you how long it's been since I had an email from Mr. Thomasson.

Q You don't remember?

A No.

Q Okay. Did you speak to anyone other than your attorneys about the deposition today?

A No.

Q And you haven't looked at any documents to prepare for today's deposition?

A No. There's no documents. No.

Q And you didn't in any other way prepare for today's deposition?

A No.

M. LAURIE

Q Have you looked at any documents that concern your case -- withdrawn.

Have you looked at any documents that concern this case in general?

A The -- probably the last document that was put out, I -- I don't know, a year -- year ago maybe. But other than that, no. Nothing recently.

Q Have you ever seen the complaint in this case?

A Years ago. Yes.

Q You testified earlier today that you're not in the Northeast; that you're somewhere else; is that correct?

A That's correct.

Q And where exactly are you, again?

A I am in the country of Trinidad in the West Indies.

Q Is that your home country?

A My wife's.

Q Is that Mr. Deo's home country?

A I think he was born here, coincidentally.

M. LAURIE

Q You consider Mr. Deo a friend; correct?

A At one time.

Q You're no longer friends?

A I haven't spoken to him recently.

Q What's the reason that you haven't spoken to him recently?

A We just haven't spoken. He's doing what he's doing, and I'm doing what I'm doing. Just been busy.

Q No falling out? No dispute? Nothing like that?

A No. Nothing crazy. Shit happens. Excuse my language.

Q That's okay. You can speak freely as I have been.

Outside of attorneys, did you have any conversations with anyone to prepare for your deposition?

A No. You asked me that already.

Q Outside of the deposition, have you had any conversations with anyone about your case?

M. LAURIE

A No.

Q Early on, when this case was first filed, do you recall reaching out to me by phone?

A Me calling you?

Q Yes. Before Mr. Thomasson was retained.

A I don't remember calling you.

Q I'll represent to you that I once received a phone call from you early on in the case, but I never called you back.

A Representing who? Why would I have called you? For what purpose?

Q That's what I was going to --

A Who were you representing at that point --

Q That's what I was trying to ask you, but let me frame the question so maybe you can recall that.

A Sure.

Q After this lawsuit was filed in August of 2023 and before Mr. Thomasson appeared in this case, I received a phone

M. LAURIE

call from you, which I never answered.

And before I could contact you back, your attorney had appeared on your behalf already, and it would've been improper for me to have direct communication with you.

With those representations in mind, do you have any recollection as to why you reached out to me?

A No. I do not have any recollection as to why.

Q What is your current address?

A 1387 Monroe Street, Floral Park, New York.

Q And you own that residence?

A Yes, I do.

Q And how long have you owned it?

A Sixteen years.

Q Other than this residence, do you own any other property -- real property, commercial or residential?

A No.

Q I'll represent to you that in the affidavit of service that we filed

confirming that you had been served at this address, the affidavit of service stated that a co-tenant was served. Is there any tenant in that house?

A A tenant? No. My -- my wife and my brother-in-law live with me. My -- my sister-in-law lives with me. But there's no tenants.

Q And who do you live with?

A Just said my wife. My son's in college. And my brother-in-law and sister-in-law.

Q What is your date of birth?

A 10/22/1966.

Q What email addresses do you use, personal and business?

A Michaellaurie@hotmail.com, I have mklaurie@me.com, and my work email is mlaurie@dlacapital.com.

Q Do you use any Google email addresses?

A Yeah. For junk. Michael.k.laurie@gmail.com.

Q Any other emails other than

that?

A Hold on. Dating back to '23 --

Q If you're --

A Go ahead. I'm listening.

Q If you're referring to something, I'd rather you not. Just from your memory.

A Oh, okay. No.

Q Not that you can recall; right?

A Correct. Those are the email addresses I've been using the past five years.

Q Okay. Did you ever have any email address with the dealership Northshore?

A Yes. I had one for a short period of time that they were going to use for the -- one of the online systems, which I never went on.

Q What was that email address?

A It would be something along the lines of michael@northshoremotors.com or mlaurie@northshoremotors.com. I have -- used it for a short period and have not

used it since.

Q What were the circumstances upon which you no longer used it?

A There was no reason to use it. Northshore had folded up, and there was no reason for me to use it, as I wasn't going to be participating or helping or be involved with Deo in any way, shape, or form.

Northshore -- it wasn't needed. It was just a convenience. It was put in place for convenience, for notification if something was going on.

Q Did you stop using it at the same time that Northshore stopped operating or before it stopped operating?

A From memory, before.

Q Okay. How long before, to your knowledge and memory?

A Don't remember.

Q Okay. What about --

A I want to -- I'm sorry. So for what?

Q Go ahead. Finish what you were

saying --

A I cut you off. No. Please, go ahead.

Q I was going to ask you the next question, but I would like for you to finish your answer.

A I have to state something for the record because it's important for my -- because of my memory. In September, I found out I had obstructive sleep apnea to the point where they thought I should have died. So I had a lot of memory loss.

I've been on -- using the proper medication and machine and everything. My memory's getting better, so I will do my best to remember without referring to anything.

But I'm just letting you know that for a couple of years, my memory is a little foggy. So I'll do my best. I just wanted to state that.

Q Okay. No. That's important. On that subject, have you -- withdrawn. When was the last time -- withdrawn.

When did you first start seeking treatment for sleep apnea? Month and year?

A Let's see. I started having heart problems maybe three and a half years ago, and then I got the -- the test in September of '25.

Q So just recently?

A Yes.

Q And you started -- after the test, you started treatment when?

A October 9th.

Q Okay. All right. Going back to the email, same question for Sunrise. Did you have any email address with Sunrise?

A No. Not that I can recall. No.

Q What about Superb? Did you ever have an email address with Superb?

A I don't think I ever did. The answer would be no.

Q All right. Oh, by the way, for purposes of planning, I have an eleven o'clock with Judge Cho [ph] by telephone. So we'll all take a break at

10:55 for hopefully ten, fifteen minutes. If anybody needs to plan around --

A Can I just ask a question? How long is this going to take?

Q It could take up to the whole day. All the depositions have taken the whole day. We have seven --

A I can't -- okay. So no one told me I had to be on this for the whole day. I'm out of the country, and I was asked to come on. But nobody told me I have to sit here for the entire day. I cannot.

Q Part of the federal rules of civil procedure, we have seven hours of testimony --

A Well, then -- then I would've -- I would've told you no; to reschedule. I'm out of the country. I have to go to the hospital to see somebody who's sick.

MR. KATAEV: All right. Let's go off the record to talk logistics.

THE WITNESS: Okay.

THE REPORTER: One moment.

THE WITNESS: Thank you.

THE REPORTER: We are now off the record at 10:38 a.m.

(Off the record.)

THE REPORTER: All right. We are now back on the record at 10:42 a.m.

MR. KATAEV: Welcome back, everyone. During off-the-record discussion, the witness and I discussed logistically how we could make the deposition work.

Apparently, the witness was unaware that depositions last a whole day. The witness is currently out of the country and made himself available while out of the country. The witness has to visit a sick family member in a hospital and is leaving in about one hour to do so.

During off-the-record discussion, the witness and I agreed that we would look into the following things:

Number one, whether the witness can return today at a time certain before five p.m. to continue the deposition; and, two, whether the witness can continue this deposition beginning on Thursday morning

M. LAURIE

at either nine a.m. or ten a.m. so that we can complete his deposition.

BY MR. KATAEV:

Q Mr. Laurie, did I accurately reflect what we discussed off the record?

A Yes, you did.

Q Okay. As soon as we go off at eleven for my conference with Judge Cho [ph], when we return, I will ask you about these two things, and we'll do it off the record and then put it on the record. For now, we'll continue the deposition; okay?

A Understood.

Q All right. So earlier today, you testified that you previously testified about eight to nine years ago in connection with a criminal complaint; correct?

A Yes.

Q And that criminal complaint arose from your employment at a financial institution; right?

A No. It had nothing to do with a

financial institution.

Q I'm going to present to you what will be marked as Laurie 1.

(Laurie Exhibit 1 was marked for identification.)

I would like for you to take the opportunity to read it. This is a four-page document from Case Number 18-CR-00521 in the District of New Jersey, and this is a criminal complaint that was filed against you; correct?

A When I see it, I'll acknowledge it. I'd like to see it, what you're -- you have in your possession. Okay. Hold on --

Q Do you see it? Let me zoom in to make it better, because I recognize you're on a device.

A Yeah. I can put it on a bigger screen. One second. Yeah. Josh Liberman. Okay. This is correct. I see --

Q Joshua Liberman -- sorry. Go ahead. What were you saying?

M. LAURIE

A Yeah, no. I'm acknowledging this. Yes. Go ahead.
Q Joshua Liberman was the special agent in charge at the FBI that prosecuted this complaint; correct?
A That's correct.
Q Okay. And on the first page, it refers to Attachments A and B to sort of put together the substance of the complaint; correct?
A That's what it says.
Q And so moving down to the second page, in Attachment A, it says that the complaint events occurred on or about August 10, 2012, in Monmouth County, New Jersey; correct?
A Correct.
Q Did you live in Monmouth County, New Jersey, at the time?
A No, I did not.
Q Did you work in Monmouth County, New Jersey, at the time?
A No, I did not.
Q Okay. To your knowledge, what

M. LAURIE

is the relevance or significance of Monmouth County, New Jersey, in connection with this complaint?

A The only connection I can -- that I understand is because I was working for them and trying to get two other people.

If they did not get them, they then decided they needed to get a pound of their flesh. And they charged me with this $6,000 -- I won't say what -- what's on my mind.

And the reason it's Monmouth, because I was working for them in Trenton. So if Trenton is in Monmouth, that's why it was filed there, because that's where they filed it, because I was working for them out of Trenton.

Q When you say you were working for them, who is "them"?

A The FBI, for Liberman, helping them to try and catch somebody. And when they couldn't get the smoking gun, they all of a sudden turned on me after the

M. LAURIE

fact, after years.

Q And when was it that you first met Mr. Liberman?

A I'd have to go back. Maybe 2009, '10. Somewhere in there.

Q Okay. And, I mean, I will note that this reference is August 10, 2012, and it was filed on January 31, 2018. So a number of years had passed; correct?

A Yeah. Exactly.

Q But it does --

A And that's why it made no sense.

Q It does say that you "as an officer, employee, and agent of a financial institution"; right?

A Go ahead.

Q Does it say that?

A Yes, it does.

Q So what financial institution --

A Because that's where I was employed -- that's where I was employed in August of 2012. But it had nothing to do -- no. I wasn't even -- was I still employed? Maybe. Yeah.

M. LAURIE

But it had nothing to do with the bank. This issue had nothing to do with the bank. Nothing.

Q Okay. I understand that. But what is the financial institution that you worked at?

A At the time, Sterling National Bank.

Q Sterling National Bank; correct?

A Right. Which doesn't exist anymore.

Q I'm familiar with that. When did you first start working at Sterling?

A Hold on.

Q Month and year, if you can remember.

A So January of '12 -- no. Hold on. Either January of '13 -- or no. I don't remember.

Q I'll help you. It says that this occurred in August of 2012. So you must have been employed before August of 2012; correct?

A Right. But I'm trying to

remember. And this date doesn't make any sense because they backdated this, but I'm not going to get into it. So January -- it had to be January of '12.

Q Okay. So is it fair to say that whatever they're complaining about here, you were working at the bank for just a few months, less than a year at that point?

A Correct. But like you said, the action took place in 2018; right? Isn't that what you said?

Q That's what I see on the document, and that's what I was pointing out to you.

Now, when did you come to leave or separate from employment with Sterling Bank?

A 2015.

Q Do you remember what month?

A September.

Q Okay. And what were the circumstances of your separation from employment with Sterling Bank?

A Because the FBI came there and made a complaint.

Q In or about September of '15?

A Yes.

Q Did they end up actually arresting you? Or did you end up surrendering?

A No. I didn't -- I did not get arrested at that time in any way, shape, or form.

Q Okay. Do you recall whether you surrendered?

A At that time, I don't think I was asked to surrender, to be honest with you. I don't remember the exact dates of -- all I know is I -- at -- at some point, I was asked to come to there and meet with them. And I was processed and let go.

Q Referring to Paragraph 1 on page 3 in Attachment B, it says that you were "employed as a managing director and senior vice president" at the financial institution; right?

M. LAURIE

A That is -- that is correct.
Q Okay. And that financial institution, again, is Sterling; right?
A That is correct.
Q Prior to you working at Sterling, had you ever worked at any other bank?
A I worked for Herald National Bank and Citibank.
Q "Harold," H-A-R-O-L-D?
A H -- H-E-R-A-L-D. It got bought up by another bank. Correct.
Q Okay. Herald National Bank and Citibank. How long did you work at Herald?
A Three years
Q Citibank?
A Ten.
Q What were the circumstances of your separation from employment with Herald?
A It had to do something with this. Maybe that's what happened. Yes. It had -- I'm sorry. Herald -- they came

to Herald and said something, because at that time -- let me think. Oh, gosh. One second.

Q Mr. Laurie, while you're thinking, I don't see you on the screen. I need to see your face, please.

A Oh, sorry. I put it on the other screen so I can read this. One second.

Q So as I understand it, you are right now confused about when and where the FBI came to you in terms of which bank, whether it was Herald or whether it --

A Yeah. I don't remember. Right. 'Cause I -- I think it was -- 'cause I ended up working with them to try and catch these people for a long time, and then it didn't happen.

Q Okay. All right. And then what years of the three years did you work at Herald? Do you remember when you first started there?

A Nine -- April '09.

M. LAURIE

Q Okay. And that means you left sometime in 2012?
A Correct.
Q And then based on --
A And then -- go ahead. Sorry.
Q Based on your testimony just now, is it fair to say that this -- that the financial institution referenced here is Herald?
A Yes.
Q Okay. And you said Herald got bought out. Who bought them out?
A BankUnited.
Q I can't hear you.
A BankUnited.
Q Got it. And is that currently the bank that remains in place? Or did they get bought out later?
A No. They're still in -- in business.
Q Okay. And then after 2012, you ended up leaving there because of this issue with the FBI coming to your place of employment; right?

M. LAURIE

A I don't remember, to be honest with you, if they came there or not. I don't remember.
Q But your separation from employment with Herald was as a result of this complaint?
A I think it was. Yes.
Q Okay. And then when did you get to Citi?
A No, no. Citi was '99. That was before.
Q Oh, I see.
A I was at Citi '99 to 2009.
Q I see. So Citi precedes Herald?
A Uh-huh.
Q Yes?
A Correct. Yes. Sorry. I didn't mean to do that.
Q All right. After Citibank and Herald, you then went to work at Sterling?
A Correct.
Q And when did you work there, again? From 2012 to 2015; correct?
A Correct.

M. LAURIE

Q Okay. Let's stop here. I will finish this call as soon as possible and jump back on. You can take a break, do whatever. Just be within earshot so I can tell everyone I'm ready.

A All right.

THE REPORTER: Off the record at 10:54 a.m.

(Off the record.)

THE REPORTER: We are now back on the record at 11:18 a.m.

MR. KATAEV: We just took a break from about 10:55 to 11:15 for me to attend a telephonic court conference before Judge Cho [ph] in an unrelated case.

During the time that we were on break, Mr. Laurie checked his schedule. He's not able to return today after leaving to visit a relative in the hospital in Trinidad where he is currently stationed, and therefore, we will not be able to complete the deposition today.

We will continue the deposition for approximately 15 minutes before he has to

leave, and we have agreed to continue his deposition Thursday morning at 8:30 a.m. until approximately 11:30 a.m., perhaps longer if it works out for Mr. Laurie to do so.

BY MR. KATAEV:

Q Mr. Laurie, does that accurately reflect our off-the-record discussions and agreement about the deposition? You're on mute.

A Sorry. Right. 8:30 Eastern Time and then for about two, two and a half hours.

Q Okay.

A I'm going to push it for two and a half hours on Thursday.

Q With those qualifications, that accurately reflects what we have agreed to?

A Yes.

MR. KATAEV: Okay. And I can confirm that all of the counsel agreed to move forward with this.

So now I'm going to ask madam court

M. LAURIE

reporter to please read back the last question and answer.

THE REPORTER: Of course. One moment.

(The reporter repeated the record as requested.)

MR. KATAEV: Thank you.

THE REPORTER: Do you want the one prior?

MR. KATAEV: No. I'm good. Thank you.

THE REPORTER: You're welcome.

BY MR. KATAEV:

Q All right. I'm going to share my screen once more on the exhibit we were looking at. And I'm going to ask you in Paragraph 2, it references a co-conspirator who's unidentified --

THE REPORTER: I'm sorry. Your question cut out. Could you just repeat that?

MR. KATAEV: So I'm having technical difficulties, and I'm unable to share anything on my screen. I'm going to put

this in the chat and ask if Jeff could share his screen so I can ask these questions.

MR. RUDERMAN: Can I share directly from the chat? Or do I need to download it?

MR. KATAEV: You need to click the link. It'll pop up in your browser, and you can share the browser.

MR. RUDERMAN: Okay.

MR. KATAEV: Sorry.

MR. RUDERMAN: Is this it?

MR. KATAEV: It's just loading. Yes. Please go to page 3, Paragraph 2.

BY MR. KATAEV:

Q Okay. Mr. Laurie, do you see Paragraph 2 where it references a co-conspirator, and then in quotes it says "CC-1"?

A Yep.

Q That co-conspirator who's unidentified is the person that Mr. Liberman was going after; correct?

A Correct.

Q And what is the identity of that person's name?

A I'm not going to give you that. It has nothing to do with this case.

Q You're obligated to answer these questions. Is there any basis --

A No. I'm just saying, you know -- no. I'm just -- it's just if they wanted a name in there, they'd put a name. But I'm just -- so his name was -- now you made me jump out of my head. Oh my God. Albano [ph]. Last name is Albano [ph].

Q Do you remember the first name?

A It just -- without me looking it up, it just jumped out of my head. One of those senior moments.

Q Okay.

A AJ -- AJ Albano [ph] -- AJ Albano [ph].

Q Okay. And to quell any concerns about, you know, confidentiality in this case, I want to represent to you there is a confidentiality agreement in place. Everything that we're discussing can only

M. LAURIE

be used in this case and nowhere else; okay?

A Okay.

Q All right. There's also a reference in Paragraph 2 to two New Jersey limited liability companies, and they're referred to as "LLC 1" and "LLC 2"; correct?

A I see that.

Q Do you recall the names of the two LLCs?

A Don't know them.

Q Okay. It says that the co-conspirator was involved in "the facilitation and verification of certain financial instruments." Do you know what that means?

A Yes, I know what that means --

Q Can you please explain.

A He was trying to get a standby letter of credit issued for another party.

Q Okay. And he was in the business of doing that?

A One of his businesses. Yes.

M. LAURIE

Q Okay. And how did you come to meet this individual?

A I do not remember who introduced me to him. To be honest with you, I don't remember who he introduced me to him. It was a very long time --

Q Did you get introduced to him through working at one of the banks we've discussed, Herald, Citibank, and Sterling?

A I -- I meet literally thousands of people in my job, attorneys, CPAs, business owners. I couldn't tell you. I'd have to -- I'd have to -- I -- I couldn't even remember who introduced me to him and his partner.

Q Okay. And what is --

THE REPORTER: I'm sorry. Can you repeat that? I didn't hear the -- the beginning of your answer.

THE WITNESS: Sure. I did -- I meet thousands of people in my job over the years, CPAs, attorneys, bankers, business owners. I -- I couldn't tell you off the top of my head who introduced me to those

M. LAURIE

two, but it would be somebody outside of the bank.

BY MR. KATAEV:

Q You referenced that Mr. Albano [ph] had a partner. Do you recall the name of the partner?

A Last name, Singh. That's all I remember. We called him "Singh," S-I-N-G-H.

Q Is it fair to say that Mr. Albano [ph] was in the business of providing some sort of financial services to businesses?

A That's what he did. Yes.

Q And is it fair to say that you two were working together because you had some sort of synergy to help another customer or a mutual customer?

A So when you use the word "synergy," my job was to bring new business to the bank. He introduced me to business owners that needed different services, and if the bank could supply it, then we would try to.

M. LAURIE

Q You testified earlier today that you received a $6,000 payment to your wife's name; correct?

A It was not a payment. It was -- so I needed -- I needed -- I was in the middle of getting a divorce. I had to get a payment to her. They were going to lend me the money, and I was going to pay them back the money.

It was not a payment. There was no services rendered. I had not done anything for them. And that's why I took a check, 'cause I did not worry about it. If I was concerned, I would've not taken a check.

And they wrote the check, and I gave her the money, and I moved on. This was not about business. It wasn't for a specific thing.

Q So you deny that the check was given to you to be influenced and rewarded in connection with the transaction; correct?

A Correct, because I do not have

any authority to approve anything they wanted. So me getting money from them would not have helped anyone to get anything.

Q Now, were they in the process of asking for anything from the bank you worked at?

A At the time, I -- I couldn't answer that question.

Q You don't recall?

A I do not recall. Fourteen years ago.

Q Okay. Give me one sec.

Ultimately, on February 19, 2019, a criminal judgment was into entered against you; correct?

A Correct.

Q And your sentence was one day imprisonment based on time served; correct?

A That's what it reads. I spent about an hour, and then I left. I was there, and then I left at about an hour. Never in a prison.

M. LAURIE

Q Okay. And on top of that, you were placed on five years' supervised release; correct?
A Correct.
Q Other than the one day time served and five years' supervised release, were there any other, you know, sentencing? Was there any other part of the sentence in connection with the judgement --
A Constraints, no. There's no constraints --
THE REPORTER: I'm sorry. What was the question? You guys talked over each other.
BY MR. KATAEV:
Q I asked, other than the one day time served and the supervised release, was there any other component to the sentence issued to you in connection with the criminal judgment?
A I had to pay a fine, which I paid.
Q Do you recall the amount of the

fine?

A No. Not the exact dollar amount.

Q I'll represent to you, based on the judgment, $12,000. Does that refresh your recollection?

A That sounds about right.

Q Did you pay that fine?

A Yes, I did.

Q And are you familiar with what a forfeiture order is?

A That's part of the fine, is it not?

Q I'm asking you based on your memory. Do you know that it's separate or the same thing?

A I do not remember if it was separate. I know I paid around -- I know I paid a fine and a forfeiture, and I paid it off.

Q Okay. I'll represent to you that based on the forfeiture order I'm looking at, Docket Entry 27, in your case, the forfeiture amount is $6,000. Do you

recall that?
A That's the money I received. That would make sense.
Q And to your knowledge, was it 12,000 plus 6,000 or 12,000 --
A I don't remember -- I -- I don't remember. I paid -- I can go back to my documents if I need to and look and tell you. But you have it in front of you. I paid what they asked me to pay back, and that's what I did.
Q Okay. Now, at some point after your conviction in 2019 in connection with your five years' supervised release, you sought to terminate your supervised release early; correct?
A No. I did not get it terminated early. My attorney did that, I think, 'cause I needed to travel or something, but I did not need to terminate it early. My attorney said I should be able to, and he did it. He said there's no reason why they wouldn't, and I think they did.
Q So if I'm understanding you

correctly, you didn't ask your attorney to pursue the termination of your supervised release early; correct?

A Correct.

Q And you're saying that your attorney made a motion to do so because he felt that that should be done; correct?

A Correct. That's my recollection.

Q And to your recollection, the basis of terminating supervised release early was for travel purposes?

A I don't remember what the reasoning was. I think I just was having, like, conversation. Either it was him, or it was the -- whoever I was checking in with, and they told me that, you know, "This is what you should do."

That's just from memory. It's been a long time. I put that behind me. I'm moving forward with my life. I don't remember. All I remember is -- is we went forward with it, and it was -- it was granted.

Q Do you recall what some of the conditions were of your supervised release?

A Can I ask a question?

Q Okay.

A What does this have to do with -- we're -- I mean, we watch too much TV. Where am I going -- where are we going with this?

Q I would invite you to speak about it with your attorney. I can't give you legal advice.

A Okay. No problem.

Q I just ask that you answer the question, but may maybe it'll become clear to you with a question shortly --

A Okay. So --

MR. THOMASSON: This is a good moment to interject that it's now 11:32.

THE WITNESS: Oh, yes. They're knocking on the glass. I -- I was ignoring them.

BY MR. KATAEV:

Q So let me just ask these two

questions --

A Sure.

Q -- and we'll be done for the day. I'll withdraw the last question. I'll ask a new question.

As part of your supervised release, do you recall that you were prohibited from incurring any new credit charges or opening any additional lines of credit?

A No. Me opening up lines of credit?

Q Correct.

A No. I don't -- no. I don't know anything about that. I have credit lines, personal, and I made my payments. I -- I have no idea what you're talking about. That was -- that was never brought up.

Q And last question for the day, subject to our continuing deposition. Did you seek to have your supervised release terminated early so that you would not be prohibited from incurring any new credit

charges or opening additional lines of credit?

A No.

MR. KATAEV: Okay. All right. Mr. Laurie, we're going to stop for the day. We reserve the right to continue the deposition as we agreed. We'll see you on Thursday morning at 8:30, and I wish your family member well.

THE WITNESS: Thank you very much. Everyone, have a great day. Stay warm, stay safe.

THE REPORTER: One moment. Do we want this transcript to be expedited? Or regular two-week delivery is okay?

MR. KATAEV: Regular is fine. Right.

THE REPORTER: Yeah. Ms. Ronneburger, will your firm be ordering a certified copy?

MS. RONNEBURGER: Yeah. Probably. Yeah.

THE REPORTER: And, Mister -- Mister --

MR. CIANCIULLI: Cianciulli.

THE REPORTER: Cianciulli. Thank you.

MR. CIANCIULLI: No need right now. No.

THE REPORTER: All righty.

And, Mr. Thomasson, will your firm be ordering a certified?

MR. THOMASSON: Yes. I'll ask for a copy, please.

THE REPORTER: Okay. We are now off the record at 11:33 a.m.

(Signature waived.)

(Whereupon, at 12:33 p.m. AST/11:33 a.m. EST, the proceeding was concluded.)

CERTIFICATE OF DEPOSITION OFFICER

I, RICHELLE MODESTIL, the officer before whom the foregoing proceedings were taken, do hereby certify that any witness(es) in the foregoing proceedings, prior to testifying, were duly sworn; that the proceedings were recorded by me and thereafter reduced to typewriting by a qualified transcriptionist; that said digital audio recording of said proceedings are a true and accurate record to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.



RICHELLE MODESTIL

Notary Public in and for the

State of New York

CERTIFICATE OF TRANSCRIBER

I, JACOB MYERS, do hereby certify that this transcript was prepared from the digital audio recording of the foregoing proceeding, that said transcript is a true and accurate record of the proceedings to the best of my knowledge, skills, and ability; that I am neither counsel for, related to, nor employed by any of the parties to the action in which this was taken; and, further, that I am not a relative or employee of any counsel or attorney employed by the parties hereto, nor financially or otherwise interested in the outcome of this action.

JACOB MYERS

**&**

**&** 2:10 3:20 4:14 8:21

**0**

**00521** 40:10
**09** 48:25

**1**

**1** 6:8 40:4,5 46:21 54:20 56:8
**10** 41:16 43:6,8
**10/22/1966** 32:15
**10170** 3:22
**10:11** 2:21 7:6
**10:38** 38:3
**10:42** 38:6
**10:54** 51:9
**10:55** 37:2 51:14
**11001** 9:23
**112** 4:6
**11423** 3:7
**11553** 4:17
**11793** 4:7
**11:11** 2:21
**11:15** 51:14
**11:18** 51:12
**11:30** 52:4
**11:32** 65:20
**11:33** 68:12,15
**12** 44:18 45:5
**12,000** 62:6 63:6,6
**1239** 1:15 3:16
**12:33** 68:14
**13** 44:19
**1339** 5:6
**1387** 9:22 10:2 31:14
**14** 6:3
**15** 46:4 51:25
**1580** 1:12 3:14
**1581** 1:11 3:14
**1591** 1:13 3:15
**1632** 1:14 3:15
**18** 40:10
**18211** 3:6
**189** 1:6 2:13 3:11
**19** 60:15
**19107** 5:7

**2**

**2** 53:18 54:15 54:18 56:6,8
**2009** 43:6 50:14
**2012** 41:16 43:8,23 44:22 44:24 49:3,22 50:24
**2015** 45:20 50:24
**2018** 43:9 45:12
**2019** 60:16 63:14
**2023** 30:24
**2026** 2:20 7:7
**205** 3:24
**212** 3:24
**215** 5:9
**23** 1:18 3:17 33:3
**2320** 3:21
**24** 21:23
**241-7740** 5:9
**25** 36:8
**2519** 1:16 3:16
**27** 2:20 7:7 62:24
**296-9182** 4:19
**29653** 69:16
**2:23** 1:22
**2nd** 4:16

**3**

**3** 46:22 54:15
**31** 43:9
**3280** 4:6
**33061** 70:13
**333** 4:16

**4**

**40** 6:9
**412-2421** 3:9
**420** 3:21
**446** 1:17 3:17

**5**

**500** 5:6
**516** 4:9,19
**557-5459** 4:9

**6**

**6,000** 42:12 59:3 62:25 63:6
**615683-2024** 7:12
**6188** 1:22
**661-6800** 3:24

**7**

**718** 3:9
**76** 1:16 3:17
**7813054** 2:25

**8**

**8:30** 52:3,12 67:9

**9**

**99** 50:11,14
**9th** 36:13

**a**

**a.m.** 2:21,21 7:6 38:3,6 39:2 39:2 51:9,12 52:3,4 68:12 68:15
**aaronson** 1:9 3:13

**ability** 14:7 21:24 69:9 70:6
**able** 51:19,23 63:22
**absent** 7:20
**accuracy** 10:21
**accurate** 69:8 70:5
**accurately** 39:5 52:8,19
**acknowledge** 40:13
**acknowledge...** 7:17
**acknowledging** 41:2
**action** 45:12 69:11,15 70:8 70:11
**actions** 17:17
**actually** 46:6
**additional** 66:10 67:2
**additionally** 7:20
**address** 8:13 9:20,25 31:13 32:3 33:15,21 36:16,19
**addresses** 32:16,22 33:12
**administer** 7:17
**advance** 23:7
**advice** 65:13
**affect** 21:24
**affidavit** 31:25 32:3
**agencies** 19:7
**agent** 41:5 43:15
**ago** 18:19 19:16 22:13,20 25:20,23 28:8 28:12 36:7 39:18 60:13
**agree** 7:18,23
**agreed** 38:19 52:2,19,23 67:8
**agreement** 25:7 52:10 55:24
**ahead** 33:5 34:25 35:4 40:25 41:3 43:17 49:6
**aj** 55:19,19,19
**al** 7:11,11
**albano** 55:13 55:13,19,20 58:6,12
**alcohol** 21:23
**alivia** 5:15 11:11
**allow** 20:12
**amount** 61:25 62:4,25
**announce** 11:4
**answer** 14:6 16:6 20:6,9,13 20:19 21:13 24:24 35:7 36:21 53:3 55:6 57:20 60:10 65:15
**answered** 31:2
**answering** 15:3
**answers** 21:5 21:20 22:5
**anthony** 1:5,22 3:3 5:12,14 7:10 8:17 14:14,22 15:5
**anybody** 25:25 37:3
**anymore** 44:12
**apnea** 35:11 36:3
**apparently** 38:11
**appearance** 13:15
**appeared** 30:25 31:4
**appearing** 13:20
**appears** 13:19
**applicable** 8:3
**appreciate** 12:3
**approve** 60:2
**approximately** 21:3 22:19 51:25 52:4
**april** 48:25
**ariel** 4:12 9:2
**aronneburger** 4:18
**arose** 39:23
**arrested** 46:10
**arresting** 46:7
**asad** 1:9 3:13
**asked** 23:13 26:22 29:22 37:11 46:15,18 61:18 63:11
**asking** 15:2,25 16:22 17:6,8 17:10 23:16 24:19 60:7 62:15
**assigned** 7:4
**assume** 20:20
**ast** 2:21 68:15
**attachment** 41:14 46:22
**attachments** 41:9
**attend** 51:14
**attendance** 8:10
**attending** 11:24,25 12:18
**attorney** 8:14 13:8 14:12

23:11,23 31:4 63:19,22 64:2 64:7 65:12 69:13 70:9
**attorneys** 27:16 29:19 57:12,23
**audio** 9:10 69:7 70:3
**august** 30:24 41:16 43:8,23 44:22,23
**authority** 60:2
**authorized** 7:16
**auto** 1:4,6,12 1:13,14,14,15 1:16,18,19 2:13 3:3,11,14 3:14,15,15,16 3:16,17,18 8:18 14:13,20 15:4
**automotive** 2:4
**available** 38:14
**avenue** 3:6,21
**aware** 23:17

**b**

**b** 6:5 41:9 46:22
**back** 12:3,6 16:11 30:13 31:4 33:3 36:14 38:6,7 43:5 51:4,11 53:2 59:10 63:8,11
**backdated** 45:3
**bank** 2:11,12 4:11 9:3 44:3,4 44:9,10 45:8 45:19,25 47:8 47:10,13,14 48:14 49:18 58:3,22,24 60:7
**bankers** 57:23
**banks** 57:9
**bankunited** 49:14,16
**baron** 1:9,10 1:11 3:13,13 7:11
**based** 13:17 49:5,7 60:20 62:5,15,23
**basis** 55:7 64:12
**beginning** 38:25 57:20
**behalf** 3:2,11 4:2,11 5:2 9:13 31:5
**believe** 11:18
**benjamin** 13:12,19
**best** 14:7 20:24 21:7 35:17,21 69:9 70:5
**better** 35:16 40:18
**bias** 15:21
**bigger** 40:20
**bills** 24:16,22 25:3
**birth** 32:14
**blank** 18:8
**blankenship** 1:23
**blvd** 1:12,13,13 1:14,15,16 3:14,14,15,15 3:16,16
**body** 20:7
**born** 28:24
**bought** 47:12 49:13,13,19
**boulevard** 4:16
**break** 21:10 36:25 51:4,13 51:18
**brian** 1:8 3:12
**bring** 58:21
**brother** 32:7,12
**brought** 19:12 66:19
**browser** 54:9 54:10
**building** 4:15
**business** 32:17 49:21 56:24 57:13,23 58:12 58:22,23 59:19
**businesses** 56:25 58:14
**busy** 29:12
**buyers** 1:25

**c**

**c** 3:1 4:1 5:1
**call** 15:22 23:15 30:11 31:2 51:3
**called** 10:14 30:12,15 58:9
**calling** 30:6,9
**capital** 2:9
**car** 1:25
**carefully** 17:8
**caribbean** 10:7
**cars** 2:1,2
**case** 1:21 14:5 18:21,23,25 19:2,12 24:9 25:12,16,22 26:3 28:3,5,11 29:25 30:3,12 30:25 40:9 51:16 55:5,23 56:2 62:24
**catch** 19:7 42:23 48:19
**cause** 48:17,17 59:14 63:20
**cc** 54:20

**certain** 38:22 56:16
**certificate** 69:1 70:1
**certified** 7:23 67:20 68:8
**certify** 69:3 70:2
**chabrier** 1:8 3:12
**change** 9:9
**charge** 41:5
**charged** 42:11
**charges** 66:10 67:2
**chase** 2:12
**chat** 54:2,6
**check** 19:9 59:14,16,17,21
**checked** 51:18
**checking** 64:17
**chestnut** 5:6
**cho** 36:24 39:10 51:16
**cianciulli** 5:3 9:5,8,12,13 11:11 67:25,25 68:2,4
**circumstances** 19:18 34:3 45:24 47:20
**citi** 50:10,11,14 50:15
**citibank** 47:10 47:15,18 50:20 57:10
**civil** 37:15
**claims** 15:5
**clear** 11:2 20:2 21:6 65:16
**click** 54:8
**coast** 2:1,2,3,5 2:6,7
**coincidentally** 28:25
**college** 32:12
**come** 12:3 16:11 26:7 37:12 45:17 46:18 57:2
**coming** 23:19 49:24
**commercial** 31:22
**communicated** 25:11
**communication** 31:7
**companies** 56:7
**complaining** 45:7
**complaint** 6:8 28:10 39:19,22 40:11 41:6,11 41:15 42:4 46:3 50:7
**complete** 20:13 39:3 51:23
**component** 61:20
**concern** 16:8 28:3,5
**concerned** 59:15
**concerns** 55:21
**concluded** 68:16
**conditions** 65:3
**conference** 39:9 51:15
**confidential** 2:18
**confidentiality** 55:22,24
**confirm** 52:22
**confirming** 13:5 32:2
**confused** 48:12
**connection** 39:19 42:3,5 59:23 61:10,21 63:14
**consent** 13:13 13:17,20
**consider** 29:2
**conspirator** 53:19 54:19,22 56:15
**constitute** 8:7
**constraints** 61:12,13
**consumed** 21:22
**cont'd** 4:1 5:1
**contact** 31:3
**content** 26:13
**continue** 12:8 16:22 17:9 38:23,24 39:13 51:24 52:2 67:7
**continues** 17:14
**continuing** 66:22
**convenience** 34:12,13
**conversation** 25:19 64:16
**conversations** 25:15,21 26:2 29:20,24
**conviction** 63:14
**cooney** 5:15
**copy** 67:20 68:10
**corp** 2:8
**correct** 19:13 19:14 23:23,25 28:15,16 29:3 33:11 39:20 40:12,22 41:6

41:7,11,17,18 43:10 44:10,24 45:11 47:2,5 47:13 49:4 50:18,22,24,25 54:24,25 56:9 59:4,24,25 60:17,18,21 61:4,5 63:17 64:4,5,8,9 66:14
**correctly** 64:2
**counsel** 10:19 11:6 14:8 16:24 52:23 69:10,13 70:6 70:9
**country** 28:19 28:21,23 37:11 37:19 38:13,15
**county** 7:14 41:16,19,22 42:3
**couple** 35:20
**course** 21:2 26:5 53:4
**court** 1:1 7:3 7:13 18:2 20:2 22:21,25 51:15 52:25
**courtesy** 20:14
**cpa** 1:25
**cpa's** 2:10
**cpas** 57:12,23
**cr** 40:10
**crazy** 29:15
**credit** 56:22 66:9,11,13,16 66:25 67:3
**criminal** 6:8 19:12 39:19,22 40:11 60:16 61:22
**crystal** 21:6
**cszlaw.com** 3:23
**cullen** 4:14
**cullenllp.com** 4:18
**current** 31:13
**currently** 7:8 10:4 38:13 49:17 51:21
**customer** 58:19 58:19
**cut** 35:3 53:21
**cv** 1:22
**cyruli** 3:20 8:21

**d**

**d** 6:1 47:11,12
**date** 2:20 32:14 45:2
**dates** 46:16
**dating** 33:3
**david** 1:11
**day** 23:18 37:7 37:8,10,13 38:12 60:19 61:6,18 66:5 66:21 67:7,12
**dealership** 33:15
**decided** 42:10
**defendant** 4:2 4:11 5:2,14 9:3 9:13 13:11
**defendants** 2:16
**delivery** 67:16
**deny** 59:21
**deo** 1:22,22 5:14 7:10 11:21,22 12:13 12:21 13:5 15:5 24:13,15 24:22,25 25:4 25:24 29:2 34:9
**deo's** 28:23
**deposed** 18:4 19:10,17
**deposited** 18:17
**deposition** 2:18 7:9 8:5 13:9,10 17:22 19:16,21 19:23 21:19 22:13,21 23:4 23:7,12,17
27:17,21,24 29:21,23 38:10 38:23,25 39:3 39:14 51:23,24 52:3,10 66:22 67:8 69:1
**depositions** 13:3 37:7 38:12
**description** 6:6
**device** 40:19
**died** 35:13
**different** 58:23
**difficulties** 53:24
**digital** 69:7 70:3
**direct** 31:6
**directly** 54:5
**director** 46:23
**discussed** 38:9 39:6 57:10
**discussing** 55:25
**discussion** 38:8 38:18
**discussions** 23:10 52:9
**dispute** 29:13
**disqualificati...** 23:22
**disqualified** 16:24

**district** 1:1,2 40:10
**divorce** 59:7
**dla** 2:9
**dlacapital.com.** 32:20
**docket** 62:24
**document** 28:7 40:9 45:15
**documents** 23:6 27:20,22 28:2,4 63:9
**doing** 12:15 20:7 29:11,11 29:11,12 56:24
**dollar** 62:3
**download** 54:6
**drugs** 21:22
**duly** 10:15 69:5
**dwight** 1:23
**dykman** 4:14

**e**

**e** 3:1,1 4:1,1,12 5:1,1 6:1,5 47:12
**earle** 4:16
**earlier** 28:13 39:16 59:2
**early** 30:3,11 63:17,19,21 64:4,13 66:24
**earshot** 51:5
**eastern** 1:2 52:12
**eight** 18:19 19:16,20 22:13 22:20 39:18
**either** 24:15 39:2 44:19 64:16
**eleven** 36:24 39:9
**email** 13:12 27:6,12 32:16 32:19,21 33:11 33:15,21 36:15 36:16,19
**emails** 26:17 27:5 32:25
**emanuel** 3:4,8 8:16 14:11
**employed** 43:22,22,25 44:23 46:23 69:10,13 70:7 70:9
**employee** 43:15 69:12 70:9
**employment** 39:23 45:18,25 47:21 49:25 50:6
**ended** 48:18 49:23
**entered** 60:16
**entire** 37:13
**entities** 10:20
**entitled** 21:6
**entry** 62:24
**es** 69:4
**esquire** 3:4,19 4:3,12 5:3
**est** 2:21 68:15
**estate** 1:11
**et** 7:11,11
**events** 20:24,25 41:15
**everybody** 11:8 25:25
**evidentiary** 8:4
**ex** 19:10
**exact** 46:16 62:3
**exactly** 28:17 43:11
**examination** 6:2 14:2
**examined** 10:17
**except** 21:11
**exchange** 26:7 27:6
**exchanged** 26:20
**excuse** 29:16
**exhibit** 6:8 40:5 53:16
**exist** 44:11
**existence** 26:14
**expedited** 67:15
**explain** 56:20
**ext** 3:24
**extent** 26:11

**f**

**face** 11:9 48:7
**facilitation** 56:16
**fact** 16:3 43:2
**fair** 45:6 49:8 58:11,16
**falling** 29:13
**familiar** 44:13 62:11
**family** 38:16 67:10
**fbi** 41:5 42:22 46:2 48:13 49:24
**february** 60:15
**federal** 19:12 37:14
**feelings** 16:7
**felt** 64:8
**fifteen** 37:2
**fifth** 20:23
**filed** 7:13 30:4 30:23 31:25 40:12 42:17,18 43:9

**finally** 21:10
**financial** 39:23 40:2 43:16,20 44:6 46:24 47:3 49:9 56:17 58:13
**financially** 69:14 70:10
**fine** 13:4 61:23 62:2,9,13,20 67:17
**finish** 10:25 15:20 34:25 35:7 51:3
**firm** 67:19 68:7
**firm's** 8:13
**first** 10:14 19:25 30:4 36:2 41:8 43:3 44:14 48:23 55:14
**fisk** 1:17 3:17
**five** 21:3 25:17 33:12 38:23 61:3,7 63:15
**flesh** 42:11
**floor** 4:16
**floral** 9:22 31:14
**flushing** 2:11 4:11 9:3
**foggy** 35:21
**folded** 34:6
**following** 38:20
**follows** 10:17
**foregoing** 69:3 69:4 70:4
**forfeiture** 62:12,20,23,25
**form** 34:10 46:11
**formal** 22:21
**forward** 52:24 64:22,24
**found** 35:11
**four** 40:9
**fourteen** 60:12
**fourth** 20:17
**frame** 30:20
**freely** 29:18
**friend** 29:2
**friends** 29:5
**front** 16:18,19 63:10
**funding** 2:11 5:2 9:14
**further** 69:12 70:8

**g**

**g** 58:10
**gang** 15:6,10 15:23 16:4
**general** 25:12 28:5
**gentlemen** 19:4
**gestures** 20:8
**getting** 35:16 59:7 60:3
**give** 11:25 20:14 22:4 55:4 60:14 65:12
**given** 13:21 59:22
**glass** 65:22
**gmail.com.** 32:24
**go** 11:3 12:5 13:6 18:12,13 19:22 22:7 33:5 34:25 35:3 37:19,21 39:8 40:24 41:3 43:5,17 46:20 49:6 54:15 63:8
**god** 55:12
**going** 11:24 15:18,19,22 16:12 17:10,15 19:22 20:25 30:16 33:18 34:7,14 35:5 36:14 37:5 40:3 45:4 52:16,25 53:15 53:17,25 54:24 55:4 59:8,9 65:9,10 67:6
**gold** 2:1,2,3,4,5 2:7
**good** 7:2 8:15 8:20 14:9 53:11 65:19
**google** 32:21
**gosh** 48:3
**granted** 64:25
**great** 67:12
**greenblatt** 5:5
**ground** 19:22 21:16
**group** 2:4 15:5
**guess** 21:4
**gun** 42:24
**guys** 61:15

**h**

**h** 6:5 47:11,12 47:12 58:10
**half** 36:6 52:14 52:17
**hand** 10:11
**happen** 48:20
**happened** 47:24
**happens** 29:16
**happy** 27:3
**harold** 4:3 47:11
**harry** 1:22 4:2 4:3,5 8:24
**head** 55:12,16 57:25

**hear** 9:9,11 49:15 57:19
**heard** 11:9,10 11:11,11
**hearing** 9:16
**heart** 36:6
**held** 22:25
**help** 19:7 44:21 58:18
**helped** 60:4
**helping** 34:8 42:22
**herald** 47:9,14 47:16,22,25 48:2,14,23 49:10,12 50:6 50:15,21 57:10
**hereto** 69:13 70:10
**hi** 8:15
**highway** 4:6
**hold** 33:3 40:15 44:15,18
**home** 28:21,23
**honest** 46:15 50:2 57:5
**hopefully** 37:2
**hospital** 37:20 38:16 51:21
**hotmail.com** 32:18
**hour** 38:17 60:23,24
**hourly** 24:16
**hours** 21:24 37:15 52:14,17
**house** 32:5
**hrtatty** 4:8
**huh** 20:8 50:16
**hwy** 1:6 2:13 3:11
**hylan** 1:12,12 1:13,14,15,16 3:14,14,15,15 3:16,16

**i**

**idea** 66:18
**identification** 40:6
**identify** 8:10 11:8,13,14,22 12:4,17
**identity** 55:2
**ignoring** 65:23
**important** 35:9 35:23
**impression** 12:2
**imprisonment** 60:20
**improper** 31:6
**including** 8:13
**incurring** 66:9 66:25
**index** 7:12
**indies** 28:20
**individual** 57:3
**influenced** 59:22
**information** 27:7
**institution** 39:24 40:2 43:16,20 44:6 46:25 47:4 49:9
**instructing** 16:24 17:5
**instruments** 56:17
**intended** 8:2
**interested** 69:14 70:11
**interject** 65:20
**introduced** 57:4,6,8,15,25 58:22
**invite** 65:11
**involved** 19:6,8 25:25 34:9 56:15
**iris** 1:10 3:13
**island** 1:19 3:18 15:4
**issue** 44:3 49:24
**issued** 56:22 61:21
**it'll** 54:9 65:16

**j**

**j.p.** 2:12
**jacob** 70:2,14
**jamaica** 3:6,7
**january** 2:20 7:7 43:9 44:18 44:19 45:4,5
**jcianciulli** 5:8
**jeff** 9:5 54:2
**jeffrey** 3:19 5:3 8:20 9:12
**jersey** 6:8 40:10 41:17,20 41:23 42:3 56:6
**jmw** 1:22
**job** 2:25 57:12 57:22 58:21
**jones** 1:25 2:10
**jory** 1:9 3:13
**josh** 40:21
**joshua** 1:8 3:13 40:24 41:4
**jruderman** 3:23
**judge** 36:24 39:9 51:15
**judgement** 61:11
**judgment** 60:16 61:22 62:6

**jump** 51:4 55:12
**jumped** 55:16
**junk** 32:23

**k**

**k** 2:19 6:9 10:13
**kataev** 3:4 6:3 8:15,16,23 9:5 12:13 13:7 14:3,11 15:11 15:15 16:23 17:12,16 18:15 37:21 38:7 39:4 51:13 52:7,22 53:8 53:11,14,23 54:8,12,14,16 58:4 61:17 65:24 67:5,17
**keep** 19:25
**keith** 22:11
**khan** 1:9 3:13
**knew** 23:19
**knocking** 65:22
**know** 15:22 16:5 17:9 23:20 24:5 28:8 35:19 46:17 55:9,22 56:13,17,19 61:8 62:16,19 62:19 64:18 66:16
**knowledge** 24:2,11,14,21 26:19 34:20 41:25 63:5 69:9 70:6

**l**

**l** 47:11,12
**language** 29:16
**laurie** 1:24 2:19 6:7,9 7:1,10 8:1 9:1,21,21 10:1,2,6,9,13 11:1 12:1 13:1 13:17,22 14:1 14:4,10 15:1 16:1,21 17:1,9 17:18 18:1,7 19:1 20:1 21:1 22:1,8 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1,5 40:1,4,5 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1,5 49:1 50:1 51:1 51:18 52:1,5,8 53:1 54:1,17 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1,6 68:1
**laurie's** 13:8
**law** 4:5 32:7,8 32:12,13
**laws** 8:4
**lawsuit** 30:23
**leasing** 1:7 2:14 3:12
**leave** 45:17 52:2
**leaving** 38:17 49:23 51:20
**left** 49:2 60:23 60:24
**legal** 3:5 5:15 8:16 24:8,16 24:22 25:3,8 65:13
**lend** 59:8
**letter** 56:22
**letting** 10:24 35:19
**lexington** 3:21
**liability** 56:7
**liberman** 40:22 40:24 41:4 42:22 43:4 54:24
**libertas** 2:11 5:2 9:13
**lic** 2:5
**life** 64:22
**limited** 56:7
**line** 14:8 17:14
**lines** 33:23 66:10,12,17 67:2
**link** 54:9
**listened** 17:7
**listening** 33:5
**literally** 57:11
**little** 2:10 35:21
**live** 32:7,10 41:19
**lives** 32:8
**llc** 1:5,7,8,12,13 1:14,15,15,16 1:17,18,19 2:2 2:3,4,5,6,8,12 2:13,15 3:3,5 3:11,12,14,14 3:15,15,16,16 3:17,17,18 5:2 5:15 8:17,19 14:13,20 56:8 56:8
**llcs** 56:12
**llp** 2:10 3:20 4:14 5:5
**loading** 54:14
**location** 2:22
**log** 27:8
**logistically** 38:9

**logistics** 37:22
**long** 27:11 31:18 34:19 37:5 47:15 48:19 57:7 64:21
**longer** 29:5 34:4 52:5
**look** 27:4,10 38:19 63:9
**looked** 27:19 28:2,4
**looking** 20:23 26:13,14 53:17 55:15 62:24
**loss** 35:13
**lot** 35:13
**loud** 19:25

**m**

**m** 7:1 8:1 9:1 10:1 11:1 12:1 13:1 14:1 15:1 16:1 17:1 18:1 19:1 20:1 21:1 22:1 23:1 24:1 25:1 26:1 27:1 28:1 29:1 30:1 31:1 32:1 33:1 34:1 35:1 36:1 37:1 38:1 39:1 40:1 41:1 42:1 43:1 44:1 45:1 46:1 47:1 48:1 49:1 50:1 51:1 52:1 53:1 54:1 55:1 56:1 57:1 58:1 59:1 60:1 61:1 62:1 63:1 64:1 65:1 66:1 67:1 68:1
**machine** 35:15
**madam** 52:25
**made** 13:18 38:14 43:13 46:3 55:12 64:7 66:17
**make** 38:10 40:18 45:2 63:4
**making** 26:9
**management** 1:19 3:18
**managing** 46:23
**manner** 8:5
**marc** 1:24 13:11
**marked** 40:4,5
**matter** 7:10
**me.com** 32:19
**mean** 25:23 43:7 50:19 65:8
**means** 8:6 49:2 56:18,19
**medication** 35:15
**medications** 21:23
**meet** 46:19 57:3,11,21
**member** 38:16 67:10
**memory** 21:5 26:25 33:8 34:18,20 35:10 35:13,20 62:16 64:20
**memory's** 35:16
**merckling** 1:24 13:11,13
**message** 26:20
**messages** 26:7 26:12,15
**met** 43:4
**michael** 1:24 2:19 6:9 7:9 9:21 10:13 22:8 33:23
**michael.k.lau...** 32:24
**michaellaurie** 32:18
**middle** 22:10 59:7
**mind** 31:9 42:13
**minutes** 37:2 51:25
**mister** 67:23,24
**mklaurie** 32:19
**mlaurie** 32:20 33:24
**modestil** 2:24 7:3 69:2,17
**moment** 17:13 37:24 53:5 65:19 67:14
**moments** 55:17
**money** 19:5 59:9,10,18 60:3 63:3
**monmouth** 41:16,19,22 42:3,14,16
**monroe** 9:22 31:14
**month** 36:3 44:16 45:21
**months** 45:9
**morgan** 2:12
**morning** 7:2 8:15,20 14:9 38:25 52:3 67:9
**motion** 17:20 64:7
**motor** 1:7 2:14 3:12
**motors** 1:4 2:3 2:5,6,7,8 3:2 8:18 14:13,16

**move** 52:23
**moved** 59:18
**moving** 41:13 64:22
**mumbling** 20:8
**mute** 11:13 52:11
**mutual** 58:19
**myers** 70:2,14

**n**

**n** 3:1 4:1 5:1 6:1 58:10
**n.a.** 2:13
**name** 7:2 8:11 9:19 14:11 22:7,10 55:3 55:10,10,11,13 55:14 58:7,8 59:4
**names** 10:20 56:11
**nassau** 7:14
**national** 44:8 44:10 47:9,14
**necessary** 20:9
**need** 11:25 16:6 48:7 54:6,8 63:9,21 68:4
**needed** 34:11 42:10 58:23 59:6,6 63:20
**needs** 37:3
**neither** 69:10 70:6
**never** 30:12 31:2 33:20 60:25 66:19
**new** 1:2 3:22 6:8 7:14,18 9:23 27:2,3 31:15 40:10 41:16,20,23 42:3 56:6 58:21 66:6,9 66:25 69:19
**nine** 18:19 19:16,21 22:13 22:20 39:2,18 48:25
**northeast** 28:14
**northshore** 1:7 2:14 3:12 33:16 34:6,11 34:16
**northshorem...** 33:23
**northshorem...** 33:24
**notary** 7:16 69:18
**note** 13:7 43:7
**notification** 34:13
**number** 7:12 9:25 38:21 40:9 43:10
**numbers** 8:13
**ny** 3:7,22 4:7 4:17
**nyc** 2:1

**o**

**o** 47:11
**o'clock** 36:24
**oath** 17:24
**oaths** 7:17
**object** 15:18
**objection** 7:20 9:16 15:8,14
**obligated** 55:6
**obstructive** 35:11
**occurred** 41:15 44:22
**october** 36:13
**office** 4:5
**officer** 43:15 69:1,2
**oh** 13:4 33:9 36:22 48:3,8 50:13 55:12 65:21
**okay** 9:12,15 10:10 11:20 12:21,25 13:5 13:6 14:9,17 14:20,24 15:17 16:6,22 17:12 18:9,13,16 19:11,15,20,23 20:6,10 23:3 23:21 26:5 27:5,15 29:17 33:9,14 34:19 34:22 35:23 36:14 37:9,23 39:8,14 40:15 40:22 41:8,25 43:7 44:5 45:6 45:23 46:12 47:3,14 48:21 49:2,12,22 50:9 51:2 52:15,22 54:11 54:17 55:18,21 56:3,4,14,23 57:2,17 60:14 61:2 62:22 63:13 65:6,14 65:18 67:5,16 68:11
**omni** 4:15
**once** 18:20 30:11 53:16
**online** 12:22 13:6 33:19
**opening** 66:10 66:12 67:2
**operating** 34:17,17
**opportunity** 40:8

**order** 62:12,23
**ordering** 67:20 68:8
**outcome** 69:14 70:11
**outside** 29:19 29:23 58:2
**ovington** 4:16
**own** 31:16,21
**owned** 31:18
**owners** 57:13 57:24 58:23

**p**

**p** 3:1,1 4:1,1 5:1,1
**p.m.** 38:23 68:14
**pa** 5:7
**page** 6:2,6 40:9 41:8,14 46:22 54:15
**paid** 24:3,7,19 61:24 62:19,20 62:20 63:8,11
**paragraph** 46:21 53:18 54:15,18 56:6
**paralegal** 5:15
**park** 9:22 31:14
**part** 15:22 16:4 25:20 37:14 61:9 62:13 66:7
**participate** 21:19
**participating** 34:8
**parties** 7:18,22 12:18 69:11,13 70:7,10
**partner** 57:16 58:6,7
**partners** 2:9
**party** 8:12 56:22
**passed** 43:10
**past** 21:23 25:17 33:12
**pay** 59:9 61:23 62:9 63:11
**paying** 24:12
**payment** 59:3,5 59:8,11
**payments** 66:17
**penalty** 17:24
**pending** 21:12
**people** 11:24 19:5 42:8 48:19 57:12,22
**perform** 25:7
**period** 23:24 33:18,25
**perjury** 17:25
**permitted** 8:2
**person** 10:24 16:11,15 17:15 54:23
**person's** 55:3
**personal** 32:17 66:17
**ph** 36:24 39:10 51:16 55:13,13 55:19,20 58:6 58:12
**philadelphia** 5:7
**phone** 23:15 30:5,11,25
**pierce** 5:5
**place** 7:8 21:2 34:13 45:12 49:18,24 55:24
**placed** 61:3
**plaintiff** 5:12
**plaintiffs** 1:20 3:2,11 8:17,22 14:12
**plan** 37:3
**planning** 36:23
**please** 8:10 10:11,20,23 11:12,22 20:6 20:12 35:3 48:7 53:2 54:15 56:20 68:10
**plus** 63:6
**pocket** 24:8
**point** 30:18 35:12 45:10 46:18 63:13
**pointing** 45:15
**pop** 54:9
**possession** 40:15
**possible** 51:3
**pound** 42:10
**precedes** 50:15
**premier** 2:8
**prepare** 23:3 27:20,24 29:21
**prepared** 70:3
**present** 5:11 12:14 13:9 22:22 24:15 40:3
**president** 46:24
**previously** 39:17
**prior** 23:15,21 26:24 27:3,9 47:6 53:10 69:4
**prison** 60:25
**pro** 4:3 8:25
**probably** 28:6 67:21
**problem** 65:14
**problems** 36:6
**procedural** 8:3

**procedure** 37:15
**proceed** 11:6 13:14 17:21
**proceeding** 2:22 7:5,7,25 10:25 22:25 68:16 70:4
**proceedings** 69:3,4,5,8 70:5
**process** 60:6
**processed** 46:19
**produced** 7:24
**prohibited** 66:9 66:25
**proper** 35:14
**property** 31:21 31:22
**prosecuted** 41:5
**provide** 21:20
**providing** 58:13
**public** 69:18
**purpose** 12:16 21:11 30:15
**purposes** 36:23 64:13
**pursue** 64:3
**push** 52:16
**put** 28:7 34:12 39:12 40:20 41:10 48:8 53:25 55:10 64:21

**q**

**qualifications** 52:18
**qualified** 69:7
**quell** 55:21
**question** 19:2 20:13,18,21 21:12 24:20,25 26:17 30:20 35:6 36:15 37:4 53:3,21 60:10 61:15 65:5,16,17 66:5,6,21
**questioning** 8:14
**questions** 14:7 15:3,25 16:7 21:20 54:4 55:7 66:2
**quotes** 54:19

**r**

**r** 3:1 4:1,3,5 5:1 47:11,12
**raise** 10:11
**rather** 33:7
**reached** 31:10
**reaching** 30:4
**read** 40:8 48:9 53:2
**reads** 60:22
**ready** 51:6
**real** 31:21
**really** 16:20
**realty** 1:17 3:17
**reason** 21:18 22:3 29:8 34:5 34:7 42:14 63:23
**reasoning** 64:15
**recall** 30:4,21 33:10 36:17 46:12 56:11 58:7 60:11,12 61:25 63:2 65:2 66:8
**receive** 13:12
**received** 13:13 13:16 24:22 27:7 30:11,25 59:3 63:3
**recently** 25:22 28:9 29:7,9 36:9
**recognize** 40:18
**recollection** 20:24 21:7 31:9,12 62:7 64:10,11
**record** 7:5,6,15 7:21 8:11 9:19 10:21 11:4,14 11:23 12:8 13:8,23 16:23 35:9 37:22 38:3,4,6,8,18 39:6,12,13 51:8,10,12 52:9 53:7 68:12 69:9 70:5
**recorded** 8:5 69:6
**recording** 7:24 69:8 70:3
**reduced** 69:6
**reference** 43:8 56:6
**referenced** 49:9 58:5
**references** 53:18 54:18
**referred** 56:8
**referring** 14:16 14:19,23 22:24 33:6 35:17 46:21
**refers** 41:9
**reflect** 16:23 39:6 52:9
**reflects** 52:19
**refresh** 62:6
**regarding** 25:21 26:3
**regular** 67:16 67:17

**related** 15:6 69:10 70:7
**relation** 19:11
**relative** 51:20 69:12 70:9
**release** 61:4,7 61:19 63:15,17 64:4,12 65:4 66:8,23
**relevance** 42:2
**remains** 49:18
**remember** 10:23 18:18 19:19 26:11 27:13 30:9 34:21 35:17 44:17,20 45:2 45:21 46:16 48:16,23 50:2 50:4 55:14 57:4,6,15 58:9 62:18 63:7,8 64:14,23,23
**reminder** 10:19
**remote** 2:22
**rendered** 24:9 24:17,23 25:3 59:12
**repeat** 9:24 24:18,20 53:21 57:19
**repeated** 53:6
**rephrase** 20:19
**reported** 2:24
**reporter** 7:2,4 9:4,11,15,24 10:3,8,10,18 11:16,18 12:7 20:2 22:21 37:24 38:2,5 51:8,11 53:2,4 53:6,9,13,20 57:18 61:14 67:14,18,23 68:2,6,11
**represent** 8:12 8:22,23 9:3 30:10 31:24 55:23 62:5,22
**representation** 26:6
**representations** 13:18 31:8
**representative** 1:10
**representing** 25:24 30:14,17
**requested** 53:7
**requesting** 11:3
**reschedule** 37:18
**reserve** 67:7
**residence** 31:16 31:20
**residential** 31:22
**result** 50:6
**retained** 30:8
**retainer** 25:6
**return** 38:22 39:10 51:19
**review** 23:6
**rewarded** 59:22
**richelle** 2:24 7:3 69:2,17
**right** 10:10,11 12:5,12 14:9 33:10 36:14,22 37:21 38:5 39:16,24 43:16 44:11,25 45:12 46:25 47:4 48:12,16,21 49:25 50:20 51:7 52:12 53:15 56:5 62:8 67:5,7,17 68:4
**righty** 68:6
**robert** 1:5 3:3 5:12 8:17 14:14,22
**ronald** 7:11
**ronneburger** 4:12 9:2,2 11:10 67:19,21
**room** 9:6
**roslyn** 2:6
**route** 1:18 3:17
**ruderman** 3:19 8:20,21 11:7 11:17,20 12:11 12:17,21,25 13:4,22 18:7 18:11 54:5,11 54:13
**rules** 8:4 19:23 21:16 37:14

**s**

**s** 3:1 4:1 5:1,3 6:5 58:10
**safe** 67:13
**sage** 3:5 5:15 8:16
**sagelegal.nyc** 3:8
**salary** 24:3
**sales** 1:5 3:3 8:19 14:13,20
**sarah** 1:22
**saying** 12:22 20:4 35:2 40:25 55:8 64:6
**says** 41:12,14 44:21 46:22 54:19 56:14
**schedule** 51:18
**scheduled** 23:18

**screen** 16:19 18:8 40:21 48:6,9 53:16 53:25 54:3
**se** 4:3 8:25
**sec** 60:14
**second** 20:6 40:21 41:13 48:4,10
**see** 9:7 11:9 18:11 36:5 37:20 40:13,14 40:17,23 45:14 48:6,7 50:13 50:15 54:17 56:10 67:8
**seek** 66:23
**seeking** 36:2
**seen** 25:2,5 28:10
**senior** 46:24 55:17
**sense** 43:13 45:3 63:4
**sentence** 60:19 61:10,21
**sentencing** 61:9
**separate** 45:18 62:16,19
**separation** 45:24 47:21 50:5
**september** 35:10 36:8 45:22 46:4
**served** 32:2,4 60:20 61:7,19
**service** 31:25 32:3
**services** 24:4,9 24:12,17,23 25:3,8 58:13 58:24 59:12
**seven** 37:8,15
**shanks** 3:20 8:21
**shape** 34:9 46:10
**share** 53:15,24 54:3,5,10
**shit** 29:15
**short** 23:24 33:17,25
**shortly** 65:17
**showing** 15:20
**sick** 37:20 38:16
**signature** 68:13 69:16 70:13
**signed** 12:19 25:6
**significance** 42:2
**similar** 13:16
**singh** 58:8,9
**sister** 32:8,13
**sit** 37:12
**sixteen** 31:19
**skills** 69:9 70:6
**sleep** 35:11 36:3
**smithtown** 2:7
**smoking** 42:24
**somebody** 37:20 42:23 58:2
**son's** 32:11
**soon** 39:8 51:3
**sorry** 9:8 12:5 12:9 22:16 34:23 40:24 47:25 48:8 49:6 50:18 52:12 53:20 54:12 57:18 61:14
**sort** 41:9 58:13 58:18
**sought** 63:16
**sounds** 62:8
**source** 9:10
**speak** 10:23 16:14 27:15 29:17 65:11
**speaking** 10:25 20:25
**special** 41:4
**specific** 8:12 59:20
**spell** 10:21
**spellings** 10:20
**spent** 60:22
**spoken** 29:6,9 29:10
**standby** 56:21
**start** 15:19 36:2 44:14
**started** 36:5,11 36:12 48:24
**starting** 8:14
**state** 7:14,15 9:18 35:8,22 69:19
**stated** 14:17 32:4
**states** 1:1
**stating** 8:11 13:12
**stationed** 51:22
**stay** 67:12,13
**stenographic** 8:6
**sterling** 44:8,10 44:14 45:18,25 47:4,7 50:21 57:10
**stipulation** 8:8
**stop** 34:15 51:2 67:6
**stopped** 34:16 34:17
**street** 1:17 3:17 5:6 9:22 31:14

**subject** 17:20 17:23 35:24 66:22
**subjects** 15:6
**substance** 41:10
**sudden** 42:25
**suggest** 17:21
**suite** 3:21 4:6 5:6 8:13
**sunrise** 1:6 2:3 2:13 3:11 4:6 36:15,16
**superb** 1:4 3:2 8:18 14:12,16 14:17 15:4 36:18,19
**supervised** 61:3,7,19 63:15,16 64:3 64:12 65:3 66:7,23
**supply** 58:24
**supposed** 26:10
**supreme** 7:13
**sure** 18:19 19:24 22:18 26:9 30:22 57:21 66:3
**surrender** 46:15
**surrendered** 46:13
**surrendering** 46:8
**swearing** 7:19 9:17
**sworn** 7:21 10:15 69:5
**synergy** 58:18 58:21
**syosset** 2:2
**systems** 33:19

**t**

**t** 6:5
**take** 7:4,16 11:13 17:17 20:3 21:10 36:25 37:5,6 40:7 51:4
**taken** 7:10 19:5 21:2 37:7 59:15 69:3,11 70:8
**talk** 16:12 37:22
**talked** 61:15
**talking** 66:18
**team** 1:4 3:2 8:18 14:13,19 14:20 15:4
**technical** 53:23
**telephone** 36:25
**telephonic** 51:15
**tell** 10:15 20:18 27:11 51:6 57:13,24 63:9
**ten** 37:2 39:2 47:19
**tenant** 32:4,5,6
**tenants** 32:9
**terminate** 63:16,21
**terminated** 63:18 66:24
**terminating** 64:12
**termination** 64:3
**terms** 48:13
**test** 36:7,12
**testified** 10:17 22:12,19 28:13 39:17,18 59:2
**testify** 21:25
**testifying** 17:25 69:5
**testimony** 10:5 16:8 17:23 37:16 49:7
**text** 26:7,12,15 26:20
**thank** 9:15 10:3 10:18 12:11 13:6 14:10 37:25 53:8,11 67:11 68:2
**thing** 59:20 62:17
**things** 16:25 38:20 39:11
**think** 15:19 22:4,17 28:24 36:20 46:14 48:3,17 50:8 63:19,24 64:15
**thinking** 48:6
**third** 20:12
**thomas** 1:25
**thomasson** 1:23 4:2,3,5 8:24,24 11:10 12:15,19,24 13:2,18 15:8 15:14 16:21 17:4,7 23:22 24:3,8,12,15,23 25:7,12,15 26:3,8,21 27:12 30:7,24 65:19 68:7,9
**thomasson's** 26:6
**thought** 22:15 22:17 35:12
**thousands** 57:11,22
**three** 36:6 47:17 48:22
**thursday** 38:25 52:3,17 67:9

**time** 2:21 8:9 10:24 11:5 18:16 21:11 23:24 25:22 26:20,25 29:4 33:18 34:16 35:25 38:22 41:20,23 44:8 46:10,14 48:3 48:19 51:17 52:13 57:7 60:9,20 61:6 61:19 64:21
**timewise** 22:18
**tobago** 2:23
**today** 7:6 14:11 15:3,25 16:8 17:23 20:24 22:5 26:23 27:17 28:13 38:22 39:16 51:19,23 59:2
**today's** 21:19 23:4,7,11 27:20,24
**together** 41:10 58:17
**told** 37:9,12,18 64:18
**tony** 5:12 11:15 11:16 12:9,11 14:23 15:4
**took** 45:12 51:13 59:13
**top** 57:25 61:2
**topics** 15:25
**transaction** 59:23
**transcriber** 70:1
**transcript** 7:23 10:22 11:2 67:15 70:3,4
**transcriptionist** 69:7
**travel** 63:20 64:13
**treatment** 36:3 36:12
**trenton** 42:15 42:16,19
**trinidad** 2:23 10:9 28:19 51:21
**true** 69:8 70:4
**truth** 10:15,16 10:16
**truthful** 21:20 22:5
**truthfully** 21:25
**try** 18:9 42:23 48:18 58:25
**trying** 30:19 42:7 44:25 56:21
**tuesday** 2:20
**turned** 42:25
**tv** 65:9
**two** 19:4 38:24 39:11 42:7 52:13,13,16 56:6,12 58:2 58:17 65:25 67:16
**typewriting** 69:6

**u**

**uea** 2:8
**uh** 20:8,9,9 50:16
**ultimately** 60:15
**unable** 53:24
**unacceptable** 16:16,17
**unaware** 38:11
**under** 8:3
**understand** 7:22 14:4 15:7 15:24 16:2 18:2 20:4,15 20:17,20,21 21:7,13,15 42:6 44:5 48:11
**understanding** 63:25
**understood** 14:25 17:19 39:15
**unidentified** 53:19 54:23
**uniondale** 4:17
**united** 1:1
**unrelated** 51:16
**upset** 16:3
**urrutia** 1:6 3:3 5:12 8:18 11:12,16 12:9 12:10 14:14,22
**use** 32:16,21 33:18 34:5,7 58:20
**used** 33:25 34:2 34:4 56:2
**uses** 8:2
**using** 33:12 34:15 35:14

**v**

**v** 1:21
**verbal** 20:9
**verification** 56:16
**veritext** 7:4
**verizon.net** 4:8
**vice** 46:24
**videoconfere...** 3:4,19 4:4,13 5:4,13,14,16
**visit** 38:15 51:20

**voice** 19:25

**w**

**wait** 11:4
**waiting** 9:6
**waived** 68:13
**waives** 13:14
**want** 7:15 12:17 13:7 17:18 21:4 34:23 53:9 55:23 67:15
**wantagh** 4:7
**wanted** 35:22 55:10 60:3
**warm** 67:13
**watch** 65:8
**way** 27:23 34:9 36:22 46:10
**we've** 12:7 57:9
**week** 16:11 67:16
**weir** 5:5
**weirlawllp.co...** 5:8
**welcome** 38:7 53:13
**went** 18:8 33:20 50:21 64:23
**west** 28:20
**wife** 19:10 32:6 32:11
**wife's** 28:22 59:4
**wish** 67:9
**withdraw** 66:5
**withdrawn** 25:10 28:3 35:24,25
**witness** 7:19,21 7:22 9:17,18 10:14 15:9 16:25 17:2,6 17:13 18:9,13 37:23,25 38:9 38:11,13,15,19 38:21,24 57:21 65:21 67:11 69:4
**word** 13:2 15:10 58:20
**words** 20:7
**work** 32:19 38:10 41:22 47:15 48:22 50:21,23
**worked** 44:7 47:7,9 60:8
**working** 42:6 42:15,18,20 44:14 45:8 47:6 48:18 57:9 58:17
**works** 52:5
**worry** 59:14
**would've** 31:5 37:17,18 59:15
**wow** 16:20
**written** 8:7
**wrote** 19:9 59:17

**x**

**x** 6:1,5

**y**

**yeah** 12:24 14:18,21 32:23 40:20,21 41:2 43:11,25 48:16 67:18,21,22
**year** 27:3 28:8 28:8 36:4 44:16 45:9
**year's** 27:2
**years** 18:19 19:16,21 21:3 22:13,20 25:17 25:19,23 26:4 28:12 31:19 33:13 35:20 36:7 39:18 43:2,10 47:17 48:22,22 57:23 60:12 61:3,7 63:15
**yep** 54:21
**yesterday** 23:14,16,16 26:22
**yesterday's** 13:10
**york** 1:2 3:22 7:14,18 9:23 31:15 69:19

**z**

**zizmor** 3:20 8:21
**zoom** 7:8 16:13 16:15 27:8 40:17

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.