# In the Matter of

Case No. 2:23-cv-6188 (JMW)

SUPERB MOTORS INC., et al.

v.

DEO, et al.

## Continued Examination of Michael Buccino

*Tuesday, March 24, 2026*

The Little Reporting Company
469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X
SUPERB MOTORS AUTO, TEAM AUTO SALES, LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HIGHWAY AUTO, LLC, NORTH SHORE MOTOR LEASING; JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BOULEVARD AUTO, LLC, 1580 HYLAN BOULEVARD AUTO, 1591 HIGHLAND BOULEVARD AUTO, LLC, 1632 HIGHLAND BOULEVARD AUTO, LLC, 1239 HIGHLAND BOULEVARD AUTO, LLC, 2519 HIGHLAND BOULEVARD AUTO, LLC, 76 FISK STREET REALTY, LLC, 446 ROUTE 23 AUTO, LLC, AND ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against- Case No. 2:23-cv-6188

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC, INC. GOLD COAST CARS OF SYOSSET, LLC, GOLD COAST CARS OF SUNRISE, LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP, LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN, LLC, UEA PREMIER MOTORS GROUP, DLA CAPITAL PARTNERS, INC., JONES, LITTLE & CO., CPA'S, LLP, FLUSHING BANK, LIBERTAS FUNDING, LLC, JP MORGAN CHASE BANK, N.A., 189 SUNRISE HIGHWAY AUTO, LLC, AND NORTHSHORE MOTOR LEASING, LLC.,

Defendants.
------------------------------------------X

VIA ZOOM
March 24, 2026
12:10 p.m.

CONTINUED EXAMINATION BEFORE TRIAL of MICHAEL BUCCINO, called by the Plaintiff herein, taken pursuant to Order and held via Zoom before Eileen Agnoletto, a stenotype reporter and Notary Public of the State of New York.

A P P E A R A N C E S:

SAGE LEGAL, LLC
Attorney for the Plaintiffs Superb Motors, Inc., Team Auto Sales, LLC & Robert Anthony Urrutia
182-11 Jamaica Avenue
Jamaica, New York 11423
BY: EMANUEL KATAEV, ESQ.

CULLEN & DYKMAN, LLP
Attorney for the Defendant Flushing Bank
333 Earle Ovington Boulevard - 2nd Floor
Uniondale, New York 11553
BY: ARIEL E. RONNEBURGER, ESQ.

WEIR, LLP
Attorney for the Defendant Libertas Funding, LLP
1339 Chestnut Street - Suite 500
Philadelphia, Pennsylvania 191074
BY: JEFFREY S. CIANCIULLI, ESQ.

ALSO PRESENT: Robert Anthony Urrutia

IT IS HEREBY STIPULATED AND AGREED, by and between the attorneys for the respective parties herein, that the filing, sealing and certification be, and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the questions, shall be reserved to the time of trial;

IT IS FURTHER STIPULATED AND AGREED that the within examination may be subscribed and sworn to before any notary public with the same force and effect as though subscribed and sworn to before this Court.

THE COURT REPORTER: All attorneys participating in this deposition acknowledge that I am not present in the deposition room and that I will be reporting this deposition remotely.

You further acknowledge that in lieu of an oath administered in person, I will administer the oath remotely. Parties and their Counsel consent to this arrangement and waive any objections to this manner of reporting.

Please indicate your agreement by stating your appearance and agreement on the record.

Ms. Ronneburger, will you be ordering the transcript?

MS. RONNEBURGER: Yes.

MR. KATAEV: Emanuel Kataev for plaintiffs, Superb Motors, Team Auto, Inc., LLC and Robert Anthony Urrutia. I agree.

MS. RONNEBURGER: Ariel Ronneburger, for Cullen & Dykman, LLP, for defendant Flushing Bank. I agree.

M I C H A E L B U C C I N O, called as a witness by and on behalf of the Plaintiff, after having been first duly sworn, was examined and testified as follows:

THE COURT REPORTER: Mr. Buccino, can you show me me some form of identification?

MICHAEL BUCCINO

(Whereupon, the witness displayed his driver's license.)

MR. KATAEV: Also, my client was supposed to join.

EXAMINATION BY
MR. KATAEV:

Q. Good afternoon.
A. Good afternoon.
Q. Now, at your prior deposition you were asked the specific question, which I'll read verbatim:

"Can you describe to me the process from somebody coming in seeking a business loan in the business banking department, where would that process start, where would it go to, who would review it, and up the chain until the loan is processed and approved?"

You did testify that you wouldn't be able to provide much detail on that process, and you were asked:

"Do you know who would be able to provide that type of information?"

So with that background, can you tell me who would be able to provide that type of information?
A. A number of people, but the head of our business banking team is Theresa Kelly.

MICHAEL BUCCINO

Q. That's the same individual that you previously referred to at the deposition, correct?

A. Yes.

Q. Flushing Bank is a commercial bank, correct?

A. We do commercial business, yes.

Q. Is it known as a commercial bank or some other type of bank?

A. We were formally a commercial bank previously, but we are no longer considered technically a commercial bank, strictly.

Q. What was the last part?

A. Strictly speaking, strictly we're not a commercial bank.

Q. Okay. And when did that change occur, the year approximately?

A. Yes, I'm not certain about the exact date, but I want to say somewhere around 2018 or so.

Q. And Flushing Bank is a bank organized under the laws of the State of New York, correct?

A. Yes.

Q. And there is no federal charter or any type of federal affiliation with this bank, correct?

A. We are regulated by the FDIC, but we are organized under the laws of the state.

MICHAEL BUCCINO

Q. Based on your review of the documentation in this case and preparing for this deposition, you understand that Mr. Deo arranged to borrow funds from Flushing representing himself to be a sole owner of North Shore, correct?

A. Yes.

Q. As you sit here today, do you know -- withdrawn.

As you sit here today, is it your understanding that Flushing Bank understands that Mr. Deo's representations to it concerning the ownership of North Shore were false?

MS. RONNEBURGER: Objection to form.

A. We know his representations are in question.

Q. Okay. Do you know one way or another whether his representations are true or false?

A. As I've said previously, we are going to let the Court determine that.

Q. Same question for Sunrise.

A. Same answer.

Q. As you sit here today, do you know whether Mr. Deo had authority to obtain loans for North Shore? When I say, you, I mean Flushing Bank.

A. I'll sorry, can you repeat?

MICHAEL BUCCINO

MR. KATAEV: Read it back please.

(Whereupon, at this time the testimony was read back by the court reporter.)

A. We understood him to have authority when we transacted with him.

Q. Do you know the distinction between actual authority and apparent authority?

MS. RONNEBURGER: Objection to form.

A. Yes.

Q. Okay. To Flushing Bank's understanding, did Mr. Deo have actual authority or apparent authority when he represented himself as the sole owner of North Shore and sought a loan?

A. Apparent authority.

Q. Okay. And what is your basis for saying that?

A. Documentation that we obtained and our dealings with him, representations that were made.

MR. KATAEV: Okay. I'm going to pause the questioning for a second because I jumped right into the questions. I want to put some items on the record.

We are here today with the only counsel present being that of Flushing Bank and for

MICHAEL BUCCINO

Superb plaintiffs. Everybody -- well, not everybody, but some attorneys have specifically stated they will not be appearing today, such as Mr. Ruderman for the Island Auto Group plaintiffs, and Mr. Benjamin, and the new incoming counsel that he identified for the Deo defendants.

We did not receive word back despite asking Mr. Thomasson whether he objects to the deposition proceeding in his absence. Despite multiple followups, we have not heard back from Mr. Cianciulli, representing Libertas, as to whether he will be appearing. That said, we made the decision to move forward with the deposition.

Separately we determined that the testimonial time from the first day of deposition was approximately five and a half hours, and we have determined that there remains one hour and 45 minutes of testimonial time that we'll be utilizing today.

Do those representations sound accurate to you, Ms. Ronneburger?

MS. RONNEBURGER: Yes, that is correct.

I would just note that Harry Thomasson, we're told he was in the hospital, so I'm not sure why he didn't respond to emails, but I assume that's why.

MR. KATAEV: Yes. And we didn't reach out only to Mr. Thomasson, we reached out to Mr. Benjamin --

MS. RONNEBURGER: Correct.

MR. KATAEV: -- who has been serving as a liaison, so we assume that he would be in contact with them since presumably Mr. Thomasson was able to tell Mr. Benjamin he was in the hospital.

Let's proceed back with the deposition.

Q. Do you know whether Flushing Bank has made any determination as to whether the financial records provided by Mr. Deo about North Shore were true and accurate?

A. No, we have not.

Q. To your knowledge, has Flushing Bank conducted any investigation as to whether the financial records provided by Mr. Deo about North Shore were true and accurate?

A. I mean we reviewed the records upon receiving

MICHAEL BUCCINO

notification of the loss.

Q. After that loan was disbursed, do have any knowledge as to whether Flushing Bank conducted any investigation into the use of the funds by Mr. Deo?

A. I don't know.

Q. To your knowledge, does Flushing Bank generally conduct any investigations about what businesses do with the loan after it's disbursed?

A. If there are specific requirements with funds usage, then we might investigate.

Q. What are some examples of when such specific requirements kick in?

A. It would be in the actual loan documentation that there would be requirements of how funds were to be used and then depending on what those requirements are, there might be followup to confirm that funds were used for equipment purchase or for construction on a property, depending on the circumstances.

Q. Since the date of the last deposition until the present, have you had any conversations with Mr. Puccio?

A. Yes.

Q. When did you first speak with him?

A. He had reached out to Flushing Bank and I had

MICHAEL BUCCINO

email exchanges with him probably a couple of weeks ago, whenever he received a subpoena, you know, in relation to this matter.

Q. What did you say to him or what did he say to you specifically in the email exchanges?

A. He was just advising the bank that he had received a subpoena. I don't recall exactly what his wording was. I don't recall if it was for guidance or was just giving us notification. We put him in contact with counsel that could represent him, if need be.

Q. And that counsel, her name is Cynthia Augello, A-U-G-E-L-L-O?

A. Correct.

Q. Is that attorney -- I'll refer to her as Cynthia. Is Cynthia an attorney that represents Flushing Bank?

A. She is not.

Q. And, to your knowledge, how does Flushing Bank or how do you know Cynthia?

A. She was recommended to us by our counsel.

Q. Ms. Ronneburger?

A. Yes.

Q. Okay. To your knowledge, is Cynthia being paid by Flushing Bank?

MICHAEL BUCCINO

A. She will be paid by Flushing Bank with relation to the deposition.

Q. Other than the deposition, do you have any knowledge as to whether Cynthia is going to be paid directly by Mr. Puccio?

A. If he retains her for matters related to this litigation, yes.

Q. Okay. What is your understanding as to the scheduling of the deposition for Mr. Puccio?

A. It was noticed. They gave the date, it's in the past, and there hasn't been a rescheduling as far as I'm aware.

Q. Do you have any other knowledge as to what is going on with the scheduling of the deposition of Mr. Puccio?

A. No.

Q. Did you have any direct conversations with Cynthia?

A. No.

Q. Other than the email exchange with Mr. Puccio, have you had any verbal conversations with him?

A. No.

MR. KATAEV: We are going to call for to

MICHAEL BUCCINO

production of the email exchanges between yourself and Mr. Puccio, and we'll follow up in writing.

Q. Is there any agreement between Flushing Bank and Mr. Puccio in connection with this litigation or otherwise arising out of Mr. Puccio's employment or prior employment with Flushing?

A. No.

Q. Has the agreement to compensate Mr. Puccio for his legal fees in connection with this subpoena be reduced to any writing?

A. I believe in his retainer agreement with Ms. Augello it specifics the bank will pay the fees.

Q. I'm sorry, repeat that. You believe what?

A. In the retainer agreement with Ms. Augello between Ms. Augello and Robert Puccio, it specifies that Flushing Bank will pay the fees.

Q. Do you know whether Flushing Bank is a signatory to that retainer?

A. I think we did, yea.

MR. KATAEV: Plaintiffs will call for the production of that retainer agreement. We'll follow up in writing.

MS. RONNEBURGER: We'll take it under

MICHAEL BUCCINO

consideration. Just I have a standing objection to all these requests that we will take them under consideration and respond to them to the extent proper.

MR. KATAEV: Okay. We can work out any inappropriate redactions to the retainer agreements if it's necessary.

Q. Did you have any conversations with Mr. Puccio concerning the substance of the claims in this case and the defenses of same?

A. No. When are you talking about?

Q. Okay, I'll rephrase. Did you have any conversations with Mr. Puccio about critical facts in this case?

MS. RONNEBURGER: Objection, to form.

A. Again, it's not clear to me if you are asking about conversations that I would have had when Puccio was still employed with the bank or during this more recent period.

Q. I'm referring to the more recent period, being between today's deposition and the last day's deposition.

A. No, we did not.

Q. With that qualification, will you answer the

question?

A. No, we did not speak about the specific facts in this case during this most recent dialogue.

Q. And, similarly, you did not ask him any questions about the text message between Mr. Deo and Mr. Urrutia about this guy and the credit writer are in my pocket, right?

A. No, I didn't discuss that.

Q. To your knowledge, is the shareholders agreement of Superb in the possession of Flushing Bank?

A. I'm not certain.

Q. Do you recall testimony from the last deposition about how those documents, including the shareholders agreement, that did not get uploaded into your system?

A. I recall a conversation about documents that were given to David Weinstein by Tony Urrutia that the documents were inconsistent. I don't recall specifically what those documents were.

Q. Have you seen correspondence about -- withdrawn.

Have you seen correspondence produced in discovery by Flushing indicating that Flushing knew about the litigation between Mr. Deo and the Island Auto

Group plaintiffs?

MS. RONNEBURGER: Objection to form.

A. Yes.

Q. As far as you know -- withdrawn.

And Flushing Bank also knew about the temporary restraining order issued by Justice Gianelli in that lawsuit, correct?

A. I don't recall if that was mentioned in the correspondence or not.

Q. Generally speaking, when new accounts get opened, Flushing Bank does litigation searches of his customers, correct?

A. What kind of accounts are you talking about?

Q. The accounts at issue in this case, such as for loans or bank accounts.

A. For a loan there might have been a litigation search for deposit accounts. I don't think we necessarily would do that kind of research.

Q. Is it fair to say that whenever a loan application is processed at some point the litigation search is done?

A. More likely than not.

Q. And, generally speaking, when any litigation is discovered, is it Flushing Bank's protocol to review

MICHAEL BUCCINO

the entire case?

A. I don't know what the credit team's procedure would be for such a situation.

Q. Someone like Shane Digeronimo would know that, right?

A. He might or his superiors might have a better understanding.

Q. In your review of documents produced in this case and in general preparing for this deposition, have you learned about whether Mr. Laurie, a defendant in this case, has referred other than customers to Mr. Puccio over the years?

A. I believe they may have had that type of relationship. I'm not a hundred percent certain.

Q. To Flushing Bank's knowledge, how many customers did Mr. Laurie refer to Flushing Bank for loans and other services offered by Flushing? An approximation is fine.

A. I wouldn't be able to give any kind of numbers on that.

Q. Does Flushing Bank monitor its bank accounts for suspicious activity?

A. Yes.

Q. Can you explain generally how that works?

MICHAEL BUCCINO

A. Well, accounts overall are risk rated based on who the customer is, what kind of transactions they are doing, and then we have certain applications and systems in place that will notice a repetition of funds moving out, amounts of funds moving out, location of funds moving out, things of that nature that will raise flags for deeper review.

Q. For example, would wire transfers to another corporate account for large amounts of sums, would that trigger any sort of red flag?

A. Using those systems? It probably requires more specifics as to who the customer is, and where the funds are going, and what the amounts are, how unusual it is based on prior transactions from the same account.

Q. To your knowledge, has Flushing Bank ever flagged any of the accounts that were operated and/or maintained by Mr. Deo on behalf of any business entity that he controlled?

A. When you say "flagged", what exactly do you mean?

Q. Has any activity on any of the accounts maintained by Mr. Deo on behalf of various corporate entities ever been triggered by the search for suspicious or unusual account activity by the systems in

MICHAEL BUCCINO

place to find it?

A. I don't believe so, no.

Q. Would it be -- withdrawn.

If bank accounts showed only transfers coming out with no standard activity for a business, such as payroll expenses, rent expenses, and so on and so forth, would that be something that would be flagged based on Flushing Bank's systems?

A. Not necessarily. When accounts are opened, we are given information on what the account is expected to be used for and what the volumes of the transactions are expected to be.

If a customer told us that they were using an account somewhere else, for the, it could be, you know, payroll and things that you are talking about, that they weren't going to be using this account for such matters then it might not raise flags.

Q. That would be indicated in the application forms?

A. That would be indicated in the account opening documentation.

Q. Understood. Do you recall testifying about Mr. Urrutia's complaint to Flushing Bank?

A. Yes.

MICHAEL BUCCINO

Q. Do you remember the nature of Mr. Urrutia's complaint, what specifically he complained about?

A. I didn't receive the complaint firsthand, so I couldn't say specifically what he complained about.

The way it was conveyed to me was that he objected to the account for Superb being opened because he claimed that Mr. Deo did not have authority to transact on that.

Q. Is it fair to say that by virtue of Mr. Urrutia's complaint that the opening of the account was unauthorized, that, therefore, any resultive activity in that account was also unauthorized?

MS. RONNEBURGER: Objection to form.

Q. I understand that Flushing Bank did not make a finding as to whether it was unauthorized. My question is:

Since he complained about the account opening being unauthorized, do you understand his complaint to also mean that any resultive activity in that account was also unauthorized?

A. Yes.

Q. And in response to the complaint as a security measure, Flushing Bank did put a hold on that account to prevent any further activity, correct?

MICHAEL BUCCINO

A. Correct.

Q. To your knowledge, the account for Superb was opened in April of 2023, correct?

A. That's sounds like it could be accurate. I don't remember off the top of my head. That sounds accurate.

Q. We'll get some exhibits a little later.

And then, to your knowledge, did Mr. Urrutia make a complaint about the unauthorized bank account in August of 2023?

A. That also sounds accurate, yes.

Q. To your knowledge, were there any security features on the accounts opened by Mr. Deo for Superb?

A. Nothing beyond normal account security interest.

Q. What are the normal account security interests?

A. Well, the same systems that we use for suspicious activity reporting could also detect fraud and track, you know, elicit funds being moved back and forth, things of that nature.

Q. And those security features are the same across the board for any bank account, correct?

A. Yes.

MICHAEL BUCCINO

Q. To your knowledge, there were no added security features for the Flushing Bank account for Superb, correct?

A. I don't recall there being any.

Q. Does Flushing Bank have documentation about standard security features for bank accounts?

A. I mean in terms of conditions of our accounts would go into some detail about what security we offer, how we protect the funds.

Q. The terms and conditions that you described, is that the sole source of information for security features?

A. At sole public facings source of information.

MR. KATAEV: We're going to call for the production of any documents that discuss basic/standard security features, whether they are contained in the terms and conditions or in internal documents.

There is a confidentiality order in place in this case, so I think we could parse out any of those issues. We'll follow up in writing.

Q. When Mr. Urrutia reached out about the Flushing Bank account in Superb's name, Flushing Bank accepted that Mr. Urrutia had authority over Superb,

correct?

MS. RONNEBURGER: Objection to form.

A. I wouldn't frame it that way, no.

Q. How would you frame it?

A. We accepted that there was a dispute about authority over Superb. Based on the information we then had, we thought the dispute was grounds for a hold until we had further information.

Q. Has Flushing Bank, as of this date, made any determination as to whether Mr. Urrutia has authority over Superb?

A. No. Again, we are going to let the Court do that.

Q. To your knowledge, what was the purpose of opening the bank account at Flushing for Superb?

A. Business operations.

Q. Okay. If I understand your testimony correctly, it was Flushing Bank's understanding, based on Mr. Deo's application, that the bank account for Superb would be used in furtherance of a dealership operations, correct?

A. General speaking, yes. I don't know offhand if there was more detail provided in the account opening documentation.

MICHAEL BUCCINO

Q. Other than the account opening documents, is there any other source of information or documentation that you can refer to to determine the purpose of the bank account expressed to Flushing Bank by Mr. Deo?

A. Documentation? No.

Q. It would just be that account opening documents, correct?

A. Yes. I mean presumably there may have been conversations between Deo and Puccio in the process of opening the account where they spoke about how the funds were going to be used, but that wouldn't be documented per se.

Q. What words or conduct did Mr. Deo say or engage in to signal to Flushing Bank that he had apparent authority to act on behalf of Superb?

MS. RONNEBURGER: Objection to form.

A. He presented the normal account ownership documentation and account opening documentation that we required that showed us he had authority.

Q. You've reviewed those documents, correct?

A. The bank reviewed the documents, yes.

Q. But in connection with the deposition and based on your preparation for this case, you also reviewed them, right?

MICHAEL BUCCINO

A. Yes.
Q. And the documents he provided you for Superb was a filing receipt; wasn't it?
A. I don't recall specifically what documents were for each entity at this point, correct, to be honest.
Q. Okay. If I represented to you that the filing receipt does not contain Mr. Deo's name on it, would that be a document that you would rely on to determine that he has apparent authority over Superb?
A. If it doesn't have his name on it, then no.
Q. Okay. Are you aware of any document that Mr. Deo provided to Flushing when opening the account for Superb that had his name on it?
A. Again, I can't really remember it, separating the three entities and what documents were for which one. I know his name was on several of the documents.
Q. Generally speaking, is it Flushing Bank's practice to make inquiries as to whether an individual is someone with authority over a corporate entity?
A. Well, again, it's our practice to collect documentation that would outline usually who had authority over which corporate entity.
Generally speaking, it's our procedure to

MICHAEL BUCCINO

request documentation that would outline who has authority to act on behalf of a business.

Q. We also discussed the certification of beneficial ownership form; do you recall that?

A. Yes.

Q. Does Flushing Bank take that form, take that executed form as an end all, be all, or does it require more information than that?

A. I mean, again, we require business documentation in addition to the certificate of beneficial ownership.

Q. If the certificate of beneficial ownership is provided together with documentation that does not specifically identify the person claiming to have authority over the corporate entity, is that enough for Flushing Bank to determine that the individual has actual or apparent authority over the corporate entity?

A. I'm sorry, what?

Q. I'll repeat the question.

A. Can you just give an example of what you're trying to ask?

Q. Well, it's within the question. Let me say it one more time.

If Flushing Bank receives an executed

certificate of beneficial ownership, together with documentation about the corporate entity, such as formation documents that do not identify by name the individual claiming to have authority over the corporate entity, is that enough for Flushing Bank to conclude the individual has actual or apparent authority over that entity?

MS. RONNEBURGER: Objection to form.

A. There are circumstances where it could be, yes.

Q. Can you explain in more detail what those circumstances are?

A. Well, the limited circumstance I can think of would be there are situations where a corp., the certificate of beneficial of ownership alone, along with -- Standard documentation for a corp. would not necessarily outline who the owners are.

Therefore, if we had that standard documentation in accompaniment with certificate of beneficial ownership, and probably other pieces of information such as a site visit for the business or things of that nature, then we might open the account, yes.

Q. Does it matter whether the corporation was one shareholder or two? In other words, does Flushing

MICHAEL BUCCINO

Bank distinguish between sole shareholder corporations and multiple shareholder corporations in relation to what we're discussing now?

A. Well, most definitely we would for the purposes of a CBO, if nothing else, because the names of people required on the CBO would be influenced by how many shareholders there are and how many shares they own.

Q. And this discussion that we're having, does Flushing Bank have internal documents about what it requires for corporations versus limited liability companies?

A. Yes.

MR. KATAEV: To the extent not already produced, we'll call for the production of any such documents outlining what is necessary to establish authority over a corporate entity between corporation and limited liability companies. We will follow up in writing.

MS. RONNEBURGER: We will take under consideration. You were provided numerous documents and correspondence between Robert Puccio and Anthony Deo, which set forth a list of the required documentations for HS involved

MICHAEL BUCCINO

here, so I would ask that you take a look back at what has been provided to you previously before put that request in.

MR. KATAEV: I don't want to talk about this during the deposition, but that email correspondence is not the same as the policy document, so we'll deal with this outside the deposition.

Q. We're just skipping through that one so we can move faster.

To your knowledge, was Mr. Deo offered any alternative security features or procedures at the time of his account opening?

A. I want to assume he was probably given notice of the offers that we had, but I don't know for certain.

Q. Do you know what Flushing Bank's typical practice and procedure is for account opening and offering additional security features?

In other words, do you know if it would be the case that customers are automatically offered all of these things, or is it the case that it's only offered if someone requests it, or something else?

A. Well, there are certain security features that would be offered on request. Other features would

MICHAEL BUCCINO

be offered to certain customers based on how much they are going to deposit, volume of transactions. It wouldn't be offered, you know, carte blanche to everybody. There would be parameters in place for customers.

Q. To your knowledge, there was no agreement between Mr. Deo on behalf of Superb and Flushing Bank that the authenticity of a payment order will be verified pursuant to any security procedure, correct?

A. Sounds correct.

Q. Okay. You mentioned the size of volume in terms of money being moved. What are some of those threshold amounts for security to be triggered?

A. Well, it's not so much a security trigger, but there would be certain accounts, I don't know the numbers offhand, but accounts with certain volumes and certain amounts of deposit would make more sense for certain security features. There would also be a fee changed with those features, and so we would probably offer those to customers where it makes more sense rather than customers who not do not meet those thresholds.

But, again, I don't know the thresholds offhand. That would be something probably the business banking or

cash management team would take care of.

Q. Is it fair to say that those threshold amounts are some figure over some time period, such as one month?

A. Correct.

Q. And based on your knowledge and experience working in the banking industry for the number of years that you have, would it be fair to say that $500,000 over the course of 30 days is sufficient to have those security features offered?

MS. RONNEBURGER: Objection to form.

A. Not necessarily. It might be, but it might not be. Again, that is a better question for the business banking team, to be honest.

Q. What about $1 million, would that be something you could definitely state?

A. Again, obviously if you increase the amount that it would increase the likelihood that we would offer security or that security would be recommended, but I don't know the numbers so I don't want to, you know, throw something out.

Q. Is the volume of activity something that is constantly measured so that if an account starts having higher volume Flushing Bank would then offer those

MICHAEL BUCCINO

security features?

A. Well, again, it wouldn't just be volume necessarily. It would also probably be a matter of what kind of transactions we are talking about, ACH versus check versus wire. But, yes, over time if those increase and if there was a change, rather, versus what was outlined in the original account opening, then you might offer services later that we didn't offer initially.

MR. KATAEV: Okay. Let's take a quick break and we will get into some of these exhibits. It's 1:07. We'll come back at 1:12.

(Whereupon, a short recess was taken.)

Q. Showing you, Mr. Buccino, Flushing 1, which is Bates stamped Flushing 8, what do you recognize this document to be?

(Whereupon, email chain was marked as Flushing Exhibit 1 for identification.)

MR. KATAEV: You need to make it bigger.

A. Yes, if you could enlarge it please.

MR. KATAEV: Let the record reflect that I scrolled down to the bottom to the beginning of the email chain here.

Q. Do you have an understanding as to what this

MICHAEL BUCCINO

express bank loan link is?
A. It looks like it is probably an application platform for business loan customers.
Q. And the subject refers to LLC and Lynk. Do you see that?
A. Yes.
Q. LLC stands for line of credit, correct?
A. Correct.
Q. And going to the top of the second email in this two email chain, there is an email from Mr. Puccio to Messrs. Laurie and Deo saying it was great to see you both yesterday. Do you see that?
A. Yes.
Q. Is that standard practice, that representatives meet in person with business owners or take tours of businesses?
A. Yes, it's really standard for them to be in the field and to meet with perspective clients that way.
Q. To your knowledge, is Flushing Bank in possession of the Form F4506C that was produced in this, attached to this email?
A. If it was attached to the email then we would have it attached, yes.
Q. I know it was attached, but is it your

MICHAEL BUCCINO

understanding that that form was completed, signed, and sent back?

A. I don't know anything specific about that form other than it was attached to this email.

Q. Going on to Flushing 2, it's Bates stamped Flushing 15 to 16, starting from the bottom of 16, it's the same email that we just saw, but then there's an email on top of that dated August 23, 2022 from Mr. Deo stating that both applications have been uploaded with all supporting documents.

(Whereupon, the email was marked as Flushing Exhibit 2 for identification.)

Q. Do you see that?

A. Yes.

Q. What is your understanding as to which entities applied for a line of credit when Mr. Deo refers to both applications?

A. I don't know offhand if that was two applications for one or if it was different entities; I'm not sure.

Q. If I represented to you that one application was for North Shore and the other application was for Sunrise, does that refresh your recollection?

A. That could be the case, correct. Again, I

don't know for certain.

Q. Now, to your knowledge, did Mr. Deo ever produce tax returns as requested herein?

A. I know we have some sort of tax returns from him. I don't know who specifically and what is mentioned.

Q. There is a reference and a response email from Mr. Puccio after Mr. Deo sent over the completed applications requesting the completion of sections one to three. Do you see that?

A. Yes.

Q. To your knowledge, what form is that?

A. I wouldn't know just based on that information. I would have to see whatever was linked or if there was something in the actual platform application.

Q. To your knowledge, would Flushing Bank issue a $500,000 loan to a corporate entity without obtaining the personal tax returns of its principal?

A. I don't know.

Q. Who would know that?

A. In this instance, again, I would say Theresa Kelly or someone else on the banking business team.

Q. And then after that email that we just went

MICHAEL BUCCINO

over, there is a subsequent email about an hour and a half later from Mr. Puccio stating that Sunrise does not qualify because they need to see -- the bank needs to see two years of consecutive profitability on the tax return. Do you see that?

A. Yes.

Q. Based on this email, is it fair to say that only North Shore's application went through?

A. That's what it would seem like, yes.

Q. There is also a reference here that Mr. Deo did not own North Shore in 2019, and, therefore, tax returns for 2020 and 2021 were necessary, both business and personal. Do you see that?

A. Yes.

Q. Accepting the premise that Mr. Deo did not provide 2020 and 2021 tax returns for both business and personal, was it commercially reasonable of Flushing Bank to issue the loan?

MS. RONNEBURGER: Objection to form. That is calling for a legal conclusion.

MR. KATAEV: He can answer. He's an attorney.

MS. RONNEBURGER: He's not here to testify as to legal conclusions.

MICHAEL BUCCINO

MR. KATAEV: He can testify based on his knowledge.

MS. RONNEBURGER: He can testify as to his opinion and what his knowledge is, but, again, he's not here to testify as to his legal conclusions.

MR. KATAEV: I'm not asking for his opinion. I'm asking him was it commercially reasonable for the bank to issue a loan without having both sets of tax returns.

A. Yes.

Q. And what basis do you have to say that?

A. Well, we issued the loan. If you are saying we didn't have his tax returns then I'm sure it was commercially reasonable.

Q. What circumstances are there where it is commercially reasonable for a bank to issue a loan without having the required tax returns?

MS. RONNEBURGER: Objection to form.

A. Whose required tax return?

Q. I'm sorry?

A. I said whose required tax returns.

Q. Flushing Bank requires tax returns, according to this email. My question is, what are the

circumstances in which Flushing Bank finds it commercially reasonable to issue a loan notwithstanding the fact that it did not receive the required tax returns?

A. If the bank required something and then waived that requirement, it was because they were satisfied with other documentation that was presented.

Q. To your knowledge, what was it that Flushing Bank was satisfied with such to waive the requirement in this case?

A. I don't have that detail.

Q. Who would know?

A. Theresa Kelly.

Q. Let's look at Flushing 3, which is Bates stamped Flushing 43 to 44.

(Whereupon, the email was marked as Flushing Exhibit 3 for identification.)

Q. Starting from the bottom, please read in this initial email correspondence from Steven Codispodo, C-O-D-I-S-P-O-D-O, to Mr. Puccio?

Steven says that the personal tax return for 2019 is missing, and he follows up in an email ten minutes later stating that: There is a lien with Allied Financial coming to maturity on August 29, 2023.

MICHAEL BUCCINO

Do you see that?

A. Yes.

Q. These facts that were brought up by Steven are circumstances in which Flushing Bank would normally decline to issue a loan, correct?

A. Possibly.

Q. In response, Mr. Puccio says that he is waiting on the additional TR. Do you know what TR stands for?

A. I can't think of it offhand.

Q. Okay. He states at the end of this email the same day, within half an hour that: Before we decline, give me a few hours. Do you see that?

A. Yes.

Q. Is it normal for individuals, such as Mr. Puccio, to attempt to prevent a loan from being declined?

A. Sure.

Q. Why is that?

A. They are in the business of trying to close loans. If they can satisfy the credit center and get what documentation or eminence that they need, then they would try to do it.

Q. Showing you Flushing 4, single-page email,

MICHAEL BUCCINO

Bates stamped Flushing 75. This is an email between Mr. Puccio and Mr. Laurie about North Shore in December of 2022.

(Whereupon, the email was marked as Flushing Exhibit 4 for identification.)

Q. Do you see that?
A. Yes.
Q. In here Mr. Puccio requests 2020 and 2021 TR for North Shore and Mr. Deo. Based on this email, is it fair to say that TR stands for tax returns?
A. Seems probable, yes.
Q. Okay. In this email Mr. Puccio asks for identification for all equity owners of North Shore, correct?
A. Yes.
Q. And this email predates the emails we have looked at so far? Withdrawn.

I'm not going to mark this exhibit, but I just want to ask some questions generally about Mr. Digeronimo. He is a credit administrator at Flushing Bank, right?
A. Yes.
Q. What specifically are his duties at Flushing Bank as a credit administrator?

MICHAEL BUCCINO

A. I don't know the specific tasks, but, generally speaking, he would review credit applications, pull up reports, and do research on potential customers.

Q. Are you familiar with what SmartLynx is?

A. Yes. It's a kind of a personal business database of information.

Q. It is used for background checks, right?

A. Yes.

Q. And OFAC, that is the Office of Foreign Asset Control, right?

A. Correct.

Q. Those are counterterrorism measures?

A. Yes.

Q. Showing you what will be marked as Flushing 5, Bates stamped 105 through 108 -- well, actually through 112. This is a February 27, 2023 email from Mr. Deo to Mr. Puccio and Laurie attaching documents necessary to open new bank accounts for North Shore and Sunrise, correct?

A. That's what it says.

(Whereupon, the email was marked as Flushing Exhibit 5 for identification.)

Q. An attachment is listed containing the employer identification number for North Shore, a 2021

MICHAEL BUCCINO

K1, Mr. Deo's identification, other documents, corporate documents for North Shore, an operating agreement for North Shore, and other documents for Sunrise, correct?

A. Yes.

Q. To your knowledge, are these the sole documents provided for the purposes of obtaining a bank account and/or a loan through Flushing?

A. The sole? I don't know if they were the sole documents or if there were others requested to be obtained.

Q. I'm showing you at Flushing 109 of the filing receipt for Sunrise; do you see that?

A. I do, but if you could -- Well, if you are going to ask questions, you might need to blow it up so I can see it.

Q. My question is, reviewing this one page document, is Mr. Deo's name anywhere listed on here?

A. No.

Q. And then similarly this EIM letter for Sunrise lists Joshua Aaronson instead of Mr. Deo, correct?

A. Correct.

Q. Generally speaking, when an individual provides a personal financial statement, does Flushing

Bank take the time to compare the financial statement to, let's say, a credit report or other background check report?

A. I don't know if I would say they would compare it, but they would also probably obtain those other documents you are speaking about.

Q. Do you know whether personal financial statements are reviewed for accuracy and to confirm that they are true and accurate?

A. To the extent they could be reviewed, but I don't know.

Q. Have you ever seen this document before, the Statement of Final Condition, dated March 2023 of Mr. Deo at Flushing 187, which I'll mark as Flushing 6.

(Whereupon, the Statement of Final Condition was marked as Flushing Exhibit 6 for identification.)

A. It looks familiar, yes.

Q. Focusing on Flushing 189 within Flushing 6, there are four pieces of real estate listed, correct?

A. Yes.

Q. Did Flushing Bank make any effort to identify the actual addresses of these residences?

A. I don't know.

MICHAEL BUCCINO

Q. Is that something that Flushing Bank would normally do as a pattern of practice of its operations?

A. Not necessarily.

Q. When Flushing Bank utilizes something like SmartLynx to do a background check on an individual, will they find mortgages or any real property claimed to be owned by the individual providing the personal financial statement?

A. I'm not personally familiar with using SmartLynx, to be honest, but I would tend to think that it would probably come up there.

Q. To your knowledge, would it raise a red flag with Flushing Bank if the information provided on a personal financial statement does not jive with a credit report, a background check report?

MS. RONNEBURGER: Objection to the form.

A. Again, I'm not sure how much we'd be comparing the two against each other, especially in an instance where it is a business loan more so than an individual loan.

Q. Do you believe it's commercially reasonable for a bank to not compare a personal financial statement with a credit report and/or background check report to determine the accuracy of the statements in the

financial statement?

MS. RONNEBURGER: Objection.

A. Depending on the overall procedure involved, yes.

Q. Referring to Flushing 7, personal financial statement completed by Mr. Deo, Bates stamped Flushing 190 to -- sorry, 194 to 195, is it fair to say that based on the review of this form Mr. Deo did not complete the contents and instead stated see attached?

A. Yes.

(Whereupon, the Deo Personal Financial Statement was marked as Flushing Exhibit 7 for identification.)

Q. Is that something that Flushing Bank accepts in lieu of a completed form?

A. Yes. If the attached provided the information that the form otherwise would have.

Q. So in the form there is a request for stocks and bonds, but the personal financial statement does not list any such stocks and bonds. Is that sufficient for Flushing Bank to prove that there are no stocks and bonds?

A. In this case I would assume so, yes.

Q. Looking at what will be marked as Flushing 8,

MICHAEL BUCCINO

Bates stamped 211, this is an email from Mr. Puccio internally at Flushing asking someone to establish a single DDA for North Shore and Sunrise, correct?
A. Yes.
(Whereupon, the email was marked as Flushing Exhibit 8 for identification.)
Q. What does the acronym DDA stand for?
A. It's a deposit account.
Q. Direct deposit account?
A. Yes.
Q. There is a reference here to establish a single DDA because they now have a common single sign on. Do you see that?
A. Yes.
Q. Is that a request that would come from the customer, such as Mr. Deo, or is that something that Flushing Bank does in its normal course?
A. Well, in order to open a deposit account, the customer would have to have signed off or requested it.
Q. I understand that, but my question is more specific. My question is about establishing a single DDA for each of these because they have a common single signer. Is that something that the customer would specifically request or does Flushing Bank do that as a

matter of course?

A. I don't understand the distinction you are trying to make.

Q. Well, is it accurate to state that in this request Mr. Puccio wants to open up sort of two separate business accounts to be linked with each other?

A. Well, he's opening up two separate business accounts that he will be the sole signer on both, so they will be linked in the sense that would both have him as the signer, yes.

Q. It lists here for 2022, the annual revenue or budget. Do you see that?

A. Yes.

Q. And it says $17 million and $8 million, right?

A. Yes.

Q. Those are not the type of numbers that the account ultimately saw, right?

A. No, I don't think so.

Q. Let's look at Flushing 9, Bates stamped Flushing 577 to 579. This is the same email we looked at earlier starting from the bottom, and the following day on March 15th, Mr. Puccio follows up internally to get that account opening docs, correct?

MICHAEL BUCCINO

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 9 for identification.)

Q. And the following day Miss Cullen sends over documents from North Shore, correct?

A. Uh huh, yes.

Q. And the same day Mr. Puccio says that, here's the paperwork for North Shore. This is the one that needs the direct debit account number as soon as possible for the numerated loan. Do you see that?

A. Yes.

Q. Why is it that Mr. Puccio is saying that North Shore needed the DDA as soon as possible for the loan?

A. I don't know for certain, but my guess is because the loan was going to be distributed to the DDA.

Q. Moving up to the email chain on Flushing 577, or March 17th, Mr. Puccio says that he is at RXR today and if there is someone he could speak to in an effort to get the DDA number. Do you see that?

A. Yes.

Q. Mr. Puccio generally worked in Manhattan, correct?

A. Correct.

MICHAEL BUCCINO

Q. And on this particular day he ended up going to RXR, which is in Uniondale, New York, correct?

A. Yes.

Q. To your knowledge, how often did Mr. Puccio ever visit RXR?

A. My guess is it wouldn't have been very often, but periodically his boss was based out of -- one of his eventual securities was based out of RXR so he might have been called in for certain dates, things much that nature.

Q. Based on your review of this email, is it fair to say that Mr. Puccio made the trip to RXR for the specific purpose of moving this loan along?

MS. RONNEBURGER: Objection to form.

A. No, I wouldn't think that was the case.

Q. To your knowledge, what would be the reason for Mr. Puccio visiting RXR?

A. Like I said, he might have been there for a meeting or some other business-related instance.

Q. You don't specifically know the reason why Mr. Puccio was at RXR on that particular day, do you?

A. I don't know, but I can't imagine that his being at RXR would have been for purposes of opening the DDA account. I don't see how the two would have been

MICHAEL BUCCINO

connected.

Q. Showing you Flushing 10, Bate stamped Flushing 1043, this is an internal email between Mr. Puccio and others at Flushing Bank about the need to amend or update the operating agreement for North Shore. Do you see that?

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 10 for identification.)

Q. Why is it that the operating agreement needed to be updated because it showed Mr. Deo as a 99 percent owner?

A. I believe that was contradicted by certain other documents that we were given or other representations that we were given.

Q. Actually, looking at Flushing 11, Bate stamp Flushing 1051, Mr. Puccio emailed Mr. Deo on March 21st of 2023 stating that the operating agreement needs to state that he is a hundred percent owner to match the credit application, right?

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 11 for identification.)

Q. Looking at Flushing 11 --

MICHAEL BUCCINO

MR. KATAEV: What are we up to, 11?

THE COURT REPORTER: I believe we already have 11.

Q. Looking at Flushing 12, Bates stamped Flushing 1062, in this email Mr. Deo provides the updating operating account, correct? I'm sorry, updated operating agreement.

A. Looks like it, yes.

(Whereupon, the email was marked as Flushing Exhibit 12 for identification.)

Q. Looking at Flushing 13, Bate stamped Flushing 1194, upon receiving the $500,000 loan, Mr. Deo immediately moved $50,000 to Car Buyers, correct?

A. That's what it looks like, yes.

(Whereupon, transfer of $50,000 to Car Buyers, Inc. was marked as Flushing Exhibit 13 for identification.)

Q. That is not in line with what Mr. Deo stated he would use the loan for, right?

A. I don't know. I don't recall the exact wording of his usage of the funds.

Q. Looking at Flushing 1359, four days later there is an additional wire to Car Buyers for $85,700. Do you see that?

MICHAEL BUCCINO

A. Yes.

Q. This is not something that Flushing would flag as suspicious activity?

A. No.

Q. Why is that?

A. Generally speaking, it's a car dealer sending money to Car Buyers, Inc., seems in the normal course of business.

Q. But didn't Mr. Deo represent to Flushing Bank that he would use the loan for cosmetic improvements to the dealership?

A. Well, suspicious activity and the loan requirements are two different things.

Q. Referring your attention to Flushing 14, which is a document Bates stamped Flushing 2052 through Flushing 2238, this is an email chain between Mr. Urrutia and Mr. Weinstein in which Mr. Urrutia provides tax returns for Superb Motors amongst other entities, correct?

A. Looks like it, yes.

(Whereupon, the email chain was marked as Flushing Exhibit 14 for identification.)

Q. And it's fair to say that since March 30th of 2023, Flushing Bank was in possession of Superb Motors

MICHAEL BUCCINO

tax return for 2021, right?

A. Yes.

Q. Referring your attention to Flushing 2238 within Flushing 14, this is a K1 for Superb in 2021 listing Mr. Urrutia as the sole shareholder of Superb Motors Owners, Inc., correct?

A. It's saying he's the sole shareholder?

Q. I'm referring your attention to corporation's total number of shares beginning and ending 100, and then it says current year allocation is 60.

A. Okay, yes.

Q. So in 2021, based on what we're looking at off the K1, Mr. Urrutia was a 60-percent shareholder, correct?

A. Based on this document, yes.

Q. And then referring to the second K1 listed at Flushing 2245, Mr. Robert Clark is the 40-percent owner, correct?

A. Based on this document, yes.

Q. Okay. So is it fair to say that Flushing Bank had in its possession documents indicating that Mr. Deo did not have any ownership interest in Superb at least for 2021?

A. Yes.

MICHAEL BUCCINO

Q. Flushing 15, Bates stamped Flushing 3766, is there an email from Digeronimo to Mr. Puccio dated March 31, 2023 containing the copy of the summons and complaint by the Island Auto Group plaintiffs against Mr. Deo and others, correct?

A. It looks like it, yes.

(Whereupon, the email was marked as Flushing Exhibit 15 for identification.)

Q. It's fair to say that as of March 31, 2023, Flushing Bank was at least aware of the complaint allegations listed in this complaint that we're looking at, correct?

MS. RONNEBURGER: Objection to form.

A. Yes.

Q. The same day Mr. Puccio wrote to Mr. Laurie about the existence of the lawsuit, correct?

A. Yes.

Q. I'm referring you to Flushing 16, which is Bates stamped Flushing 375. It shows an email which Mr. Puccio informs Mr. Laurie about the lawsuit, right?

A. Uh huh, yes.

(Whereupon, the email was marked as Flushing Exhibit 16 for identification.)

Q. In response to inquiry by Flushing Bank about

this lawsuit, Mr. Deo provided a letter dated March 31, 2023 addressing the lawsuit, correct?

A. Yes.

Q. I'm referring you to Flushing 17, Bates stamped Flushing 3834.

(Whereupon, the document was marked as Flushing Exhibit 17 for identification.)

Q. I'm now showing Flushing 18, which is Bates stamped 3835, this is a letter from Thomasson dated March 31, 2023, correct?

A. Yes.

(Whereupon, the letter was marked as Flushing Exhibit 18 for identification.)

Q. The letter was not addressed to Flushing Bank, right?

A. No.

Q. And the letter merely states that this is a specious lawsuit brought against Mr. Deo and others by former business partners in Nassau County Supreme Court, right?

A. Yes.

Q. Now, it says in this correspondence that he filed the motion to dismiss, in which he expects the decision in less than 60 days, right?

MICHAEL BUCCINO

A. Yes.

Q. What effect, if any, did the submission of this letter have on Flushing Bank's concerns raised related to the lawsuit?

A. It gave us confidence in the representations from Mr. Deo regarding his ownership of the businesses.

Q. What specifically about this letter gave you confidence about it?

A. Well, the attorney addressing the issues brought up in the lawsuit confirming pending motion to dismiss and basically action for the invalidity of the claims.

Q. And that's enough for Flushing Bank to not have any more concerns about the lawsuit, an attorney representing the client stating that he expects it to be dismissed?

A. I believe we --

MS. RONNEBURGER: This was asked and answered by Mr. Ruderman at page 126 of the previous deposition.

MR. KATAEV: That's okay. I can ask again.

Q. Please answer it.

MS. RONNEBURGER: Actually, you were

MICHAEL BUCCINO

advised by Judge Wicks that you can't ask the same questions that counsel previously did.

MR. KATAEV: You really want to go to Judge Wicks on this?

MS. RONNEBURGER: We were sitting in court and he advised you that you can't ask -- he advised all of us not to be duplicative in our questioning.

MR. KATAEV: You're telling me that Mr. Ruderman showed him this exact document and asked him that same exact question?

MS. RONNEBURGER: Yes. And, again, I'm pointing to page 126 of deposition transcript and, again:

"Along with the letter from Mr. Thomasson we showed you and other investigation gave Flushing Bank permission to proceed with the loan?"

And he answered yes.

MR. KATAEV: Thank you. I can ask him again.

MS. RONNEBURGER: It's the same question.

I remind you that you have about 13 minutes left.

MICHAEL BUCCINO

Q. Can you please answer the question?
A. What was the question again?
Q. This was enough for you to -- for Flushing Bank to accept this representation and no longer have any concerns?
A. I believe we also received something from the accountant, generally speaking, yes.
Q. Mr. Thomasson invited unidentified people to whom it may concern that he's available to discuss this at any time; do you see that?
A. Yes.
Q. To your knowledge, did Flushing Bank reach out to Mr. Thomasson to have any conversations with him about this lawsuit?
A. I don't believe so.
Q. Showing you Flushing 19, Bates stamped Flushing 3998 to 3999, this is a March 31, 2023 email that Mr. Puccio sent to Mr. Deo asking him for the information on Superb; do you see that?
A. Yes.
(Whereupon, the email was marked as Flushing Exhibit 19 for identification.)
Q. And in this list of documents he asks for signer one and the signer two information, correct?

MICHAEL BUCCINO

A. Yes.

Q. And that's because Mr. Puccio knew that there were two signers on this account, right?

MS. RONNEBURGER: Objection to form.

A. I don't know what Mr. Puccio knew.

Q. Generally speaking, Flushing Bank would not ask for the identity of two signers if it had no basis to believe that there were two signers, correct?

A. It might have been conditional if there were two signers to provide information for both. I don't know.

Q. You don't know one way or the other, correct?

A. I don't know what the understanding was with regards to the number of signers at that time.

Q. In this response email, Mr. Deo asks Mr. Puccio what information was received from Mr. Weinstein so he could push this process along, right?

A. Yes.

Q. The tax returns that you previously observed were provided to Mr. Weinstein, weren't they?

A. Yes.

Q. This indicates that Mr. Puccio and Mr. Weinstein knew about the information shared between

MICHAEL BUCCINO

the two of them, correct?
A. Well, the email from Mr. Puccio goes into more detail.
Q. You're referring to this email at the top of the chain?
A. Yes.
Q. Mr. Puccio does say he didn't receive anything from Mr. Weinstein, but he does say that his understanding is that accounts will be opened for Mr. Deo's partners and other ventures, right?
A. Yes.
Q. And he also refers to a joint venture that Mr. Deo has with his partner located in Great Neck, right?
A. Yes.
Q. And we know that Superb is located in Great Neck, right?
A. If you say so. I don't know that, I'm not sure.
Q. Well, haven't you received and reviewed the account opening documents for Superb?
A. I don't remember the address on it.
Q. Okay. If I represent to you that the information contained for Superb that its address is

located in Great Neck, does that refresh your recollection?

A. Yes, I guess that that's -- I'll go with that.

Q. Okay. So in this email from Mr. Puccio to Mr. Deo, Mr. Puccio is referencing Superb's dealership located in Great Neck in which there will be a joint venture between Mr. Deo and presumably some other person, right?

A. Supposed -- yes.

Q. Based on this email, it is evident that Mr. Deo would not be the sole owner of Superb, correct?

A. I don't know that that's what this email says, though.

Q. Well, what does it say?

A. He has business partners in general. It doesn't specifically say that they are co-owners on the account.

Q. It's your understanding that there are individuals who could be partnered without any equity?

A. I don't know what the word -- what your use of the word partner here is. Is that specific for ownership as you are making it out to be?

Q. Well, at a minimum, based on this

MICHAEL BUCCINO

information, it would behoove Flushing Bank to investigate and ascertain the actual ownership of the corporate entity, wouldn't it?

A. We did.

Q. And how did Flushing Bank do that with respect to Superb?

A. We have been over this ground already, but we collected business documentation and a CBO.

Q. And, to your knowledge, did any of that business documentation contain Mr. Deo's name on it?

A. Again, I don't recall specifically.

Q. There is also a reference here at the end of the email on April 3rd stating that the letter Mr. Thomasson provided needed to be more detailed because it was too general and does not provide insight. Do you see that?

A. Yes.

Q. So your testimony earlier about the sufficiency of the letter is not accurate, is it?

MS. RONNEBURGER: Objection to form.

A. Sure.

Q. To your knowledge, was Mr. Thomasson -- did Mr. Thomasson provide any additional information?

A. I don't recall.

MICHAEL BUCCINO

Q. Looking at Flushing 4567 through Flushing 4571, this is the certification of beneficial owners for Superb executed by Mr. Deo, correct?

A. Yes.

Q. And the address listed to Superb is, in fact, in Great Neck, right?

A. Yes.

Q. Do you have any knowledge as to what this email exchange is about between Mr. Laurie and Mr. Puccio concerning vehicles?

A. I do not.

Q. Did Flushing Bank conduct any investigation upon learning of this email exchange as to what this was about?

A. No.

Q. Generally speaking, when colleagues of Flushing Bank were discussing risk items, what are they referring to?

A. I'm sorry, what?

Q. Risk items?

A. Risk?

Q. Yes.

A. We'd need to know more specifics, but I assume they would be discussing items that might expose

MICHAEL BUCCINO

the bank to the risk of liability in some way.

MS. RONNEBURGER: We are now at one hour and 45 minutes. I had a timer. I stopped it when we went off the record, so I believe that we're done here.

MR. KATAEV: I only have a few more questions. If you refuse to let me have the time for a few more questions, I will be making an application to the Court.

MS. RONNEBURGER: You make an application over everything. Just ask the couple of questions. I know you will make your 500th motion. Go ahead.

MR. KATAEV: Thank you. I appreciate it.

MS. RONNEBURGER: You'll make at 1:00 in the morning and then email me at about 3:00 in the morning about it.

MR. KATAEV: I'm glad my notoriety means something.

So I don't have a lot more left, but let me get through it so we can finish it properly, okay?

Q. I'm not going to mark that exhibit, but I just want you to refer to it so I can understand

something, Mr. Buccino.

There is a reference in this August 16, 2023 email that, Mike, that is Buccino's legal office placed hold. Do you see that? What is this reference to your legal office?

A. Me and my team and the bank.

Q. Do you serve as general counsel to Flushing Bank?

A. That is not my title, no.

Q. Understood. Referring to Flushing 21, Bates stamped Flushing 5916, this is an email from Mr. Puccio to Mr. Deo and Mr. Laurie about Superb.

(Whereupon, the email was marked as Flushing Exhibit 21 for identification.)

Q. In this email Mr. Puccio urges Mr. Deo to provide the operating agreement for Superb as soon as possible and to confirm his ownership percentage in it, correct?

A. Yes.

Q. And it says in the opening paragraph that, sorry about the rush, but as you know I have been waiting for awhile.

This email indicates that Mr. Puccio sought documentation from Mr. Deo about Superb that was never

provided, correct?

MS. RONNEBURGER: Objection to form.

Q. Do you need me to repeat it?

A. No. Yes, can we read it back please?

(Whereupon, at this time the testimony was read back by the court reporter.)

A. Yes.

Q. Do you know specifically what information was sought from Mr. Deo about Superb other than the operating agreement, if anything?

A. I do not.

Q. Referring to Flushing 22, Bate Stamped Flushing 5917, Mr. Deo provides an explanation to Mr. Puccio, correct?

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 22 for identification.)

Q. He states that he bought five percent of Superb in November of 2022 and that he subsequently purchased a full 100 percent in February of 2023, right?

A. Yes.

Q. Mr. Deo did not provide Flushing Bank with any documentation supporting these contentions, right?

A. I do not know.

MICHAEL BUCCINO

Q. Referring to Flushing 23, Flushing Bates stamped Flushing 5922, Mr. Puccio requests of Mr. Deo a copy of executed contract, correct?
A. Yes.
(Whereupon, the email was marked as Flushing Exhibit 23 for identification.)
Q. Let's look at Flushing 24, Bate stamped Flushing 5959, this August 18, 2023 email is your assessment of the claims in this case, correct?
A. Yes.
(Whereupon, the email was marked as Flushing Exhibit 24 for identification.)
Q. You stated that the documentation on file for the LLC was also complete and satisfactory to give the authority to the accounts, correct?
A. Yes.
Q. And that is referring to North Shore based on the fact that Mr. Deo provided an operating agreement listing himself originally initially as 99-percent owner and then amended it to list himself as 100-percent owner, correct?
A. Based on the entire documentation, yes.
Q. You did not state in here that the documentation for Superb was complete, correct?

MICHAEL BUCCINO

A. Specifically, no.
Q. Let me speed this up.
MS. RONNEBURGER: You are now eight minutes over. How much longer do you have?
MR. KATAEV: Very little.
MS. RONNEBURGER: What does that mean?
MR. KATAEV: I think I have less than ten minutes left.
Q. Looking at Flushing 25, Flushing 6012, this is a credit report from Mr. Deo, correct?
A. Yes.
Q. And it goes from 6011 through 6015, right?
A. Yes.
Q. This credit report does not list any mortgages, does it?
I'm directing your attention to where it says real estate balance, NA, real estate pay, NA?
A. Okay, if that's what it says.
Q. Are you familiar with how to read credit reports?
A. Yes.
Q. You would be able to tell by your review of a credit report whether an individual has a mortgage, right?

A. Yes. Well, if the credit report showed the mortgage.

Q. Right. There's an inquiry here from Cross Country Mortgage from September of 2022, right?

A. Okay.

Q. The actual accounts listed in Capital One, two of them, working our way backwards from 6015 going to 6014, Discover Bank, Capital One, Amex, Citicards, Goldman Sachs, and Wells Fargo, none of these accounts listed, going to 6013, Applecart, So Fine, JP Morgan Chase Bank card, Amex and Discover Bank, none of these accounts listed indicate the existence of a mortgage, correct?

A. No.

Q. Without marking this document, will you tell me what ACH originations means?

A. He is sending ACH. Debiting your account and crediting someone else's by ACH.

Q. Is that distinguished from wires?

A. Yes.

Q. Do you know whether this form contains information about whether the entity will be utilizing wires?

A. I don't think that specific form did show any

MICHAEL BUCCINO

wire information.

Q. Looking at Flushing 26, Bates stamped Flushing 6228, there is a reference here that Flushing Bank wanted to have a meeting with Mr. Deo. Do you see that?

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 26 for identification.)

Q. To your knowledge, did any such meeting like that occur?

A. I don't believe so.

Q. Looking at Flushing 27, Bates stamped Flushing 6402, a spreadsheet. Can you explain what this is?

A. Can you zoom in? It seems to be a spreadsheet detailing the various entities and individuals who are parties to this suit and outlining whether or not they had a relationship with the bank, and what the status of said account relationship was.

Q. And FB here is an acronym for Flushing Bank, correct?

A. Correct.

Q. What does BSA stand for?

A. BSA?

MICHAEL BUCCINO

Q. Correct.

A. Bank Secrecy Act.

Q. Oh, that's right, we talked about that. I just have a few more documents and we're done.

Looking at Flushing 28, Bates stamped Flushing 7310 to 7311, there is a reference here to cash deposits that were made without filing a currency transaction report, correct?

A. Yes.

(Whereupon, the email was marked as Flushing Exhibit 28 for identification.)

Q. Based on a $10,000 deposit on July 25, 2023 and a $7,000 deposit on July 27, 2023, protocol provides that banks must obtain a currency transaction report for those deposits, right?

MS. RONNEBURGER: Objection to form.

A. Incorrect.

Q. Can you explain the nature of this email from Ms. Solano?

A. They were asking about the nature of the transactions and telling the banker to provide a CPR reference guide for future reference in case CPRs were going to be necessary, I would presume.

Q. Based on your review of this email, there was

MICHAEL BUCCINO

no requirement that a currency transaction report needed to be completed for these deposits referenced in this email, correct?

A. By themselves, no.

Q. In the email in response to that by Mr. Puccio, he states, I'm not sure why they did not do the currency transaction report for the $10,000 deposit when it happened, and he specifically asks whether that is the procedure.

Is it your understanding that there is no currency transaction report required for the $10,000 cash deposit?

A. It has to be over 10,000.

Q. Understood. Looking at Flushing 29, Bates stamped Flushing 8495, this is an email correspondence between Messrs. Puccio and Bader about Mr. Puccio's commissions; is that right?

A. I don't know if it's commissions or just references to what volume loan gets put on his book per se.

(Whereupon, the email was marked as Flushing Exhibit 29 for identification.)

Q. Well, he's asking here: It's $500,000 less than I book. I assume they carved out the $500,000 for

North Shore. What happens if they recover that; do I get it back?

Do you see that?

A. Yes.

Q. What he is referring to whether he gets it back, he is referring to some sort of origination or commission that he gets for closing loans, right?

A. Yes, he was referring to having that account as part of his profile, but I don't know if it is specifically speaking about commission.

MR. KATAEV: I think that's all I have. Let me just confirm with my client that I won't ask anything else and we are done.

(Whereupon, there was a brief pause in the proceedings.)

Q. I just have one more question. I just want to make sure you're ready.

A. Give me a minute.

Q. Sure, take your time.

(Whereupon, there was a brief pause in the proceedings.)

Q. So do you recall the incident in which Flushing Bank told Mr. Deo that the operating agreement showing 99-percent ownership does not match his credit

application showing that he's 100-percent owner?

A. Yes.

Q. Okay. Does the fact that there was a discrepancy between the percentage of ownership there alone, does that fact give rise to any concern by Flushing Bank that Mr. Deo was not being truthful on his application?

A. No.

Q. Why is that?

A. Further dialogue satisfied this situation.

MR. KATAEV: Well, Mr. Buccino, I don't have any further questions.

I do have things like objection to the fact that you were produced about sufficient knowledge about some aspects of the deposition. We did discuss this before. I don't think it's necessary to discuss it at the moment, but I will need to confer with counsel about producing other witnesses that may be more knowledgeable about the subjects covered.

I just wanted the record to reflect that same objection that was previously raised, but we can resolve it after this deposition.

MS. RONNEBURGER: All right.

MICHAEL BUCCINO

MR. KATAEV: Thank you.

MS. RONNEBURGER: Are you done?

MR. KATAEV: Yes, I have nothing further.

I don't know if Jeff Cianciulli has anything to ask or whether you want to ask anything, but I have no further questions.

MS. RONNEBURGER: I don't have any questions.

Jeff? I don't think he's there.

MR. KATAEV: All right, Mr. Buccino. Thank you for your time and attention today.

THE WITNESS: Thank you. Take care.

(Time noted: 2:35 p.m.)

C E R T I F I C A T I O N

STATE OF NEW YORK: COUNTY Of WESTCHESTER

I, Eileen Agnoletto, a Stenotype Reporter and Notary Public within and for the State of New York, do hereby certify:

That the witness, whose deposition is herein before set forth, was duly sworn by me, and that such examination is a true record of the testimony given by such witness to the best of my ability.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st of March, 2026.

Eileen Agnoletto
EILEEN AGNOLETTO

A C K N O W L E D G E M E N T

UNITED STATES DISTRICT COURT
: ss
EASTERN DISTRICT OF NEW YORK

I, MICHAEL BUCCINO, hereby certify that I have read the transcript of my testimony taken under oath in my deposition of March 24, 2026; that the transcript is a true, complete and correct record of my testimony, and the answers on the record as given by me are true and correct.

___________________________
MICHAEL BUCCINO

Signed and sworn to before me
this _____ day of ________, 20__.

___________________________
Notary Public, State of ________

WITNESS: MICHAEL BUCCINO

| EXAMINATION BY | PAGE |
|---|---|
| MR. EMANUEL KATAEV | 6 |

EXHIBITS


| FLUSHING | | PAGE |
|---|---|---|
| 1 | Email - Bates Stamp 8 | 283 |
| 2 | Email - Bates Stamp 15-16 | 285 |
| 3 | Email - Bates Stamp 43-44 | 289 |
| 4 | Email - Bates Stamp 75 | 290 |
| 5 | Email - Bates Stamp 105-112 | 292 |
| 6 | Statement of Final Condition - Bates Stamp 187 | 294 |
| 7 | Deo Financial Statement - Bates Stamp 187-189 | 296 |
| 8 | Email - Bates Stamp 211 | 297 |
| 9 | Email - Bates Stamp 577-579 | 299 |
| 10 | Email - Bates Stamp 1043 | 301 |
| 11 | Email - Bates Stamp 1051 | 301 |
| 12 | Email - Bates Stamp 1062 | 302 |
| 13 | Deo Transfer of $50,000 to Car Buyers, Inc. - Bates Stamp 1194 | 302 |
| 14 | Email - Bates Stamp 2052 | 303 |
| 15 | Email - Bates Stamp 3766 | 305 |
| 16 | Email - Bates Stamp 3875 | |

EXHIBITS CONTINUED

FLUSHING


| | | |
|---|---|---|
| 17 | Document - Bates Stamp 3834 | 306 |
| 18 | Thomasson Letter - Bates Stamp 3835 | 306 |
| 19 | Email - Bates Stamp 3998 - 3999 | 309 |
| 20 | (No Exhibit 20) | |
| 21 | Email - Bates Stamp 5916 | 316 |
| 22 | Email - Bates Stamp 5917 | 317 |
| 23 | Email - Bates Stamp 5922 | 318 |
| 24 | Email - Bates Stamp 5959 | 318 |
| 25 | Email - Bates Stamp 6012 | 319 |
| 26 | Email - Bates Stamp 6228 | 321 |
| 27 | Spreadsheet - Bates Stamp 6402 | 321 |
| 28 | Email - Bates Stamp 7310 - 7311 | 322 |
| 29 | Email - Bates Stamp 8495 | 323 |

INFORMATION REQUESTED


| | PAGE |
|---|---|
| Emails between Bucchio & Puccio | 264 |
| Retainer Agreement between Puccio and Cynthia Augello | 264 |
| Document discussing basic/standard security features | 273 |
| Documents establishing authority over corporate entity | 279 |

A

**A-U-G-E-L-L-O** 262:13
**Aaronson** 293:21
**ability** 327:11
**able** 255:18,20,23 260:13 268:20 319:23
**absence** 259:11
**accept** 309:5
**accepted** 273:25 274:6
**Accepting** 287:16
**accepts** 296:15
**accompaniment** 278:20
**account** 269:10,15,25 270:11,15,17,21 271:7,11,13,18,20 271:25 272:3,10,15 272:17,24 273:3,24 274:16,20,24 275:2 275:5,7,11,18,19 276:14 278:23 280:14,18 282:24 283:8 293:8 297:9 297:10,19 298:19 298:25 299:10 300:25 302:7 310:4 311:22 312:19 320:18 321:20 324:9
**accountant** 309:8
**accounts** 267:11,14 267:15,16,18 268:22 269:2,17,22 270:5,10 272:14 273:7,8 281:16,17 292:19 298:7,9 311:10 318:16 320:7,10,13
**accuracy** 294:9 295:25
**accurate** 259:23 260:19,24 272:5,7 272:12 294:10 298:5 313:20
**ACH** 283:5 320:17 320:18,19
**acknowledge** 254:2,5
**acronym** 297:8 321:21
**act** 275:16 277:3 322:3
**action** 307:12 327:13
**activity** 268:23 269:22,25 270:6 271:13,20,25 272:20 282:23 303:4,13
**actual** 258:7,12 261:14 277:18 278:7 286:16 294:24 313:3 320:7
**added** 273:2
**addition** 277:11
**additional** 280:19 290:9 302:24 313:24
**address** 311:23,25 314:6
**addressed** 306:15
**addresses** 294:24
**addressing** 306:3 307:10
**administer** 254:6
**administered** 254:6
**administrator** 291:21,25
**advised** 308:2,7,8
**advising** 262:7
**affiliation** 256:23
**afternoon** 255:8,9
**against-** 251:9
**Agnoletto** 251:24 327:5,19
**ago** 262:2
**agree** 254:17,20
**AGREED** 253:3,9,14
**agreement** 254:10,11 264:5,10,13,16,23 266:11,15 281:7 293:3 301:6,11,19 302:8 316:17 317:11 318:19 324:24 331:4
**agreements** 265:8
**ahead** 315:14
**allegations** 305:12
**Allied** 289:24
**allocation** 304:11
**alternative** 280:13
**amend** 301:6
**amended** 318:21
**Amex** 320:9,12
**amount** 282:18
**amounts** 269:6,10,14 281:14,18 282:4
**and/or** 269:17 293:8 295:24
**annual** 298:12
**answer** 257:21 265:25 287:22 307:24 309:2
**answered** 307:20 308:20
**answers** 328:9
**Anthony** 251:3,10 252:4,14 254:17 279:24
**apparent** 258:8,12,15 275:16 276:11 277:18 278:7
**appearance** 254:11
**appearing** 259:4,14
**Applecart** 320:11
**application** 267:21 270:19 274:20 284:3 285:22,23 286:17 287:9 301:21 315:10,11 325:2,8
**applications** 269:4 285:10,18,20 286:10 292:3
**applied** 285:17
**appreciate** 315:15
**approved** 255:17
**approximately** 256:16 259:19
**approximation** 268:19
**April** 272:4 313:14
**Ariel** 252:9 254:18
**arising** 264:7
**arranged** 257:4
**arrangement** 254:8
**ASAD** 251:4
**ascertain** 313:3
**asked** 255:10,19 307:19 308:12
**asking** 259:10 265:17 288:8,9 297:3 309:19 322:21 323:24
**asks** 291:13 309:24 310:16 323:9
**aspects** 325:16
**assessment** 318:10
**Asset** 292:10
**assume** 260:5,11 280:15 296:24 314:25 323:25
**attached** 284:22,23 284:24,25 285:5 296:10,17
**attaching** 292:18
**attachment** 292:24
**attempt** 290:17
**attention** 303:15 304:4,9 319:17 326:12
**attorney** 252:3,7,11 262:15,16 287:23 307:10,15
**attorneys** 253:4 254:1 259:3
**Augello** 262:13 264:14,16,17 331:4
**August** 272:11 285:9

289:25 316:3 318:9
**authenticity** 281:9
**authority** 257:23 258:5,8,8,12,12,15 271:8 273:25 274:7 274:11 275:16,20 276:11,21,24 277:3 277:16,18 278:5,7 279:18 318:16 331:7
**Auto** 251:2,2,3,5,5,6 251:6,6,7,7,8,16 252:3 254:16 259:5 266:25 305:5
**automatically** 280:21
**AUTOMOTIVE** 251:13
**available** 309:10
**Avenue** 252:4
**aware** 263:13 276:13 305:11
**awhile** 316:23

**B**

**B** 254:21
**back** 258:2,4 259:9 259:12 260:15 272:21 280:2 283:13 285:3 317:5 317:7 324:3,7
**background** 255:22 292:8 294:3 295:6 295:16,24
**backwards** 320:8
**Bader** 323:17
**balance** 319:18
**bank** 251:15,16 252:7 254:20 256:5 256:5,7,8,9,11,14 256:19,19,23 257:11,24 258:25 260:16,21 261:4,7 261:25 262:7,17,20 262:25 263:2 264:5 264:14,18,19 265:19 266:11 267:6,12,16 268:17 268:22,22 269:16 270:5,24 271:15,24 272:10,24 273:3,6,7 273:24,24 274:10 274:16,20 275:5,5 275:15,22 277:7,17 277:25 278:6 279:2 279:11 281:8 282:25 284:2,20 286:18 287:4,19 288:10,18,24 289:2 289:6,10 290:5 291:22,25 292:19 293:7 294:2,23 295:2,5,14,23 296:15,22 297:18 297:25 301:5 303:10,25 304:22 305:11,25 306:16 307:14 308:18 309:5,13 310:7 313:2,6 314:13,18 315:2 316:7,9 317:23 320:9,12,12 321:5,19,21 322:3 324:24 325:7
**Bank's** 258:11 267:25 268:16 270:9 274:19 276:19 280:17 307:4
**banker** 322:22
**banking** 255:14,25 281:25 282:8,15 286:24
**banks** 322:15
**BARON** 251:4,4,4
**based** 257:2 269:2,15 270:8 274:7,19 275:24 281:2 282:7 286:14 287:8 288:2 291:10 296:9 300:8 300:9,12 304:13,16 304:20 312:12,25 318:18,23 322:13 322:25
**basic/standard** 273:17 331:5
**basically** 307:12
**basis** 258:16 288:13 310:8
**Bate** 301:3,17 302:12 317:13 318:8
**Bates** 283:16 285:6 289:15 291:2 292:16 296:7 297:2 298:21 302:5 303:16 305:2,20 306:5,9 309:17 316:11 318:2 321:3 321:13 322:6 323:15 329:8,9,10 329:11,12,13,15,16 329:17,18,19,20,22 329:23,24,25 330:3 330:4,5,7,8,9,10,11 330:12,13,14,15
**beginning** 283:23 304:10
**behalf** 254:22 269:18 269:23 275:16 277:3 281:8
**behoove** 313:2
**believe** 264:13,15 268:14 270:3 295:22 301:14 302:3 307:18 309:7 309:16 310:9 315:5 321:12
**beneficial** 277:5,12 277:13 278:2,16,20 314:3
**Benjamin** 259:6 260:8,13
**best** 327:11
**better** 268:7 282:14
**beyond** 272:15
**bigger** 283:20
**blanche** 281:4
**BLANKENSHIP** 251:11
**blood** 327:13
**blow** 293:15
**board** 272:24
**bonds** 296:20,21,23
**book** 323:20,25
**borrow** 257:4
**boss** 300:8
**bottom** 283:23 285:7 289:19 298:23
**bought** 317:19
**Boulevard** 251:5,5,5 251:6,6,7 252:8
**break** 283:12
**brief** 324:15,21
**brought** 290:4 306:19 307:11
**BSA** 321:24,25
**Bucchio** 331:3
**Buccino** 251:22 254:24 255:1 256:1 257:1 258:1 259:1 260:1 261:1 262:1 263:1 264:1 265:1 266:1 267:1 268:1 269:1 270:1 271:1 272:1 273:1 274:1 275:1 276:1 277:1 278:1 279:1 280:1 281:1 282:1 283:1 283:15 284:1 285:1 286:1 287:1 288:1 289:1 290:1 291:1 292:1 293:1 294:1 295:1 296:1 297:1 298:1 299:1 300:1 301:1 302:1 303:1 304:1 305:1 306:1 307:1 308:1 309:1 310:1 311:1 312:1 313:1 314:1 315:1 316:1,2 317:1 318:1 319:1 320:1 321:1

322:1 323:1 324:1 325:1,12 326:1,11 328:5,11 329:2
**Buccino's** 316:4
**budget** 298:13
**business** 255:13,14 255:25 256:6 269:18 270:6 274:17 277:3,10 278:22 281:25 282:15 284:4,16 286:24 287:13,17 290:21 292:6 295:20 298:7,8 303:9 306:20 312:17 313:9,11
**business-related** 300:20
**businesses** 261:9 284:17 307:7
**Buyers** 251:12 302:14,17,24 303:8 329:21

**C**

**C** 252:1 254:21,21,21 327:2,2 328:2
**C-O-D-I-S-P-O-D-O** 289:21
**call** 263:25 264:22 273:15 279:16
**called** 251:22 254:21 300:10
**calling** 287:21
**Capital** 251:15 320:7 320:9
**car** 251:11 302:14,16 302:24 303:7,8 329:21
**card** 320:12
**care** 282:2 326:13
**CARS** 251:12,12
**carte** 281:4
**carved** 323:25
**case** 251:9 257:3 265:11,15 266:4 267:15 268:2,10,12 273:21 275:24 280:21,22 285:25 289:11 296:24 300:16 318:10 322:23
**cash** 282:2 322:7 323:13
**CBO** 279:6,7 313:9
**center** 290:22
**certain** 256:17 266:12 268:15 269:4 280:16,24 281:2,16,17,18,19 286:2 299:16 300:10 301:14
**certificate** 277:11,13 278:2,16,20
**certification** 253:5 277:4 314:3
**certify** 327:7,12 328:5
**chain** 255:16 283:18 283:24 284:11 299:18 303:17,22 311:6
**change** 256:15 283:7
**changed** 281:20
**charter** 256:22
**Chase** 251:16 320:12
**check** 283:6 294:3 295:6,16,24
**checks** 292:8
**Chestnut** 252:12
**Cianciulli** 252:13 259:13 326:5
**circumstance** 278:14
**circumstances** 261:19 278:10,13 288:17 289:2 290:5
**Citicards** 320:9
**claimed** 271:8 295:7
**claiming** 277:15 278:5
**claims** 265:10 307:13 318:10
**Clark** 304:18
**clear** 265:17
**client** 255:4 307:16 324:13
**clients** 284:19
**close** 290:21
**closing** 324:8
**co-owners** 312:18
**COAST** 251:12,12 251:13,13,13,14
**Codispodo** 289:20
**colleagues** 314:17
**collect** 276:22
**collected** 313:9
**come** 283:13 295:12 297:16
**coming** 255:13 270:5 289:25
**commercial** 256:5,6 256:7,9,11,14
**commercially** 287:18 288:9,16,18 289:3 295:22
**commission** 324:8,11
**commissions** 323:18 323:19
**common** 297:13,23
**companies** 279:13,20
**compare** 294:2,6 295:23
**comparing** 295:19
**compensate** 264:10
**complained** 271:3,5 271:18
**complaint** 270:24 271:3,4,11,19,23 272:10 305:5,11,12
**complete** 296:10 318:15,25 328:8
**completed** 285:2 286:9 296:7,16 323:3
**completion** 286:10
**concern** 309:10 325:6
**concerning** 257:12 265:10 314:11
**concerns** 307:4,15 309:6
**conclude** 278:6
**conclusion** 287:21
**conclusions** 287:25 288:7
**Condition** 294:14,17 329:13
**conditional** 310:10
**conditions** 273:8,11 273:18
**conduct** 261:8 275:14 314:13
**conducted** 260:22 261:4
**confer** 325:19
**confidence** 307:6,9
**confidentiality** 273:20
**confirm** 261:17 294:9 316:18 324:13
**confirming** 307:11
**connected** 301:2
**connection** 264:6,11 275:23
**consecutive** 287:5
**consent** 254:8
**consideration** 265:2 265:4 279:22
**considered** 256:10
**constantly** 282:24
**construction** 261:18
**contact** 260:12 262:10
**contain** 276:9 313:11
**contained** 273:18 311:25
**containing** 292:24 305:4
**contains** 320:22
**contentions** 317:24
**contents** 296:10

**CONTINUED** 251:21 330:1
**contract** 318:4
**contradicted** 301:14
**Control** 292:11
**controlled** 269:19
**conversation** 266:17
**conversations** 261:21 263:18,22 265:9,14 265:18 275:10 309:14
**conveyed** 271:6
**copy** 305:4 318:4
**corp** 278:15,17
**corporate** 269:10,23 276:21,24 277:16 277:18 278:3,5 279:18 286:19 293:2 313:4 331:7
**corporation** 278:24 279:19
**corporation's** 304:9
**corporations** 279:2,3 279:12
**correct** 256:3,5,20,23 257:6 259:25 260:9 262:14 267:8,13 271:25 272:2,4,24 273:4 274:2,22 275:8,21 276:6 281:10,11 282:6 284:8,9 285:25 290:6 291:15 292:12,20 293:4,22 293:23 294:21 297:4 298:25 299:6 299:24,25 300:3 302:7,14 303:20 304:7,15,19 305:6 305:13,17 306:3,11 309:25 310:9,13 311:2 312:13 314:4 316:19 317:2,15 318:4,10,16,22,25 319:11 320:14 321:22,23 322:2,9 323:4 328:8,10
**correctly** 274:19
**correspondence** 266:21,23 267:10 279:23 280:7 289:20 306:23 323:16
**cosmetic** 303:11
**counsel** 254:8 258:24 259:7 262:11,12,21 308:3 316:8 325:19
**counterterrorism** 292:13
**Country** 320:5
**County** 306:20 327:4
**couple** 262:2 315:12
**course** 282:10 297:18 298:2 303:8
**court** 251:1 253:17 254:1,24 257:19 258:4 274:13 302:3 306:20 308:7 315:10 317:7 328:3
**covered** 325:21
**CPA** 251:11
**CPA'S** 251:15
**CPR** 322:22
**CPRs** 322:23
**credit** 266:7 268:3 284:8 285:17 290:22 291:21,25 292:3 294:3 295:15 295:24 301:21 319:11,15,20,24 320:2 324:25
**crediting** 320:19
**critical** 265:14
**Cross** 320:4
**Cullen** 252:7 254:19 299:5
**currency** 322:8,15 323:2,8,12
**current** 304:11
**customer** 269:3,13 270:14 297:17,20 297:24
**customers** 267:13 268:12,17 280:21 281:2,6,21,22 284:4 292:4
**Cynthia** 262:12,16 262:16,20,24 263:5 263:19 331:4

**D**

**D** 328:2
**database** 292:7
**date** 256:17 261:20 263:11 274:10
**dated** 285:9 294:14 305:3 306:2,10
**dates** 300:10
**David** 251:4 266:18
**day** 259:18 290:13 298:24 299:5,8 300:2,22 305:16 328:14
**day's** 265:22
**days** 282:10 302:23 306:25
**DDA** 297:4,8,13,23 299:14,17,21 300:25
**deal** 280:8
**dealer** 303:7
**dealership** 274:21 303:12 312:7
**dealings** 258:19
**debit** 299:10
**Debiting** 320:18
**December** 291:3
**decision** 259:15 306:25
**decline** 290:6,13
**declined** 290:18
**deeper** 269:8
**defendant** 252:7,11 254:19 268:11
**defendants** 251:17 259:8
**defenses** 265:11
**definitely** 279:5
**definitively** 282:17
**Deo** 251:10,10 257:4 257:23 258:12 259:7 260:18,23 261:5 266:6,25 269:18,23 271:8 272:14 275:5,10,14 276:14 279:24 280:12 281:8 284:12 285:9,17 286:3,9 287:11,16 291:10 292:18 293:21 294:15 296:7,9,12 297:17 301:12,18 302:6,13 302:19 303:10 304:23 305:6 306:2 306:19 307:7 309:19 310:16 311:14 312:7,9,13 314:4 316:13,16,25 317:10,14,23 318:3 318:19 319:11 321:5 324:24 325:7 329:14,21
**Deo's** 257:12 274:20 276:9 293:2,18 311:11 313:11
**department** 255:14
**depending** 261:16,19 296:4
**deposit** 267:18 281:3 281:18 297:9,10,19 322:13,14 323:8,13
**deposition** 254:2,3,4 255:10 256:3 257:3 259:11,16,19 260:15 261:20 263:3,4,10,15 265:22,23 266:14 268:10 275:23 280:6,9 307:21

308:14 325:16,24 327:8 328:7
**deposits** 322:8,16 323:3
**describe** 255:12
**described** 273:11
**despite** 259:9,11
**detail** 255:19 273:9 274:24 278:12 289:12 311:4
**detailed** 313:15
**detailing** 321:17
**detect** 272:20
**determination** 260:17 274:11
**determine** 257:19 275:4 276:11 277:17 295:25
**determined** 259:17 259:20
**dialogue** 266:4 325:11
**different** 285:20 303:14
**Digeronimo** 268:5 291:21 305:3
**direct** 263:18 297:10 299:10
**directing** 319:17
**directly** 263:6
**disbursed** 261:3,9
**Discover** 320:9,12
**discovered** 267:25
**discovery** 266:24
**discrepancy** 325:5
**discuss** 266:9 273:16 309:10 325:17,18
**discussed** 277:4
**discussing** 279:4 314:18,25 331:5
**discussion** 279:10
**dismiss** 306:24 307:12
**dismissed** 307:17
**displayed** 255:2
**dispute** 274:6,8
**distinction** 258:7 298:3
**distinguish** 279:2
**distinguished** 320:20
**distributed** 299:17
**DISTRICT** 251:1,1 328:3,4
**DLA** 251:15
**docs** 298:25
**document** 276:10,13 280:8 283:17 293:18 294:13 303:16 304:16,20 306:7 308:11 320:16 330:3 331:5
**documentation** 257:2 258:18 261:14 270:22 273:6 274:25 275:3,6,19 275:19 276:23 277:2,11,14 278:3 278:17,19 289:8 290:23 313:9,11 316:25 317:24 318:14,23,25
**documentations** 279:25
**documented** 275:12
**documents** 266:14,17 266:19,20 268:9 273:16,19 275:2,8 275:21,22 276:3,5 276:17,18 278:4 279:11,17,23 285:11 292:19 293:2,3,4,7,10 294:7 299:6 301:15 304:22 309:24 311:22 322:5 331:7
**doing** 269:4
**driver's** 255:3
**duly** 254:23 327:9
**duplicative** 308:8
**duties** 291:24
**DWIGHT** 251:11
**Dykman** 252:7 254:19

**E**

**E** 252:1,1,9 254:21 327:2 328:2,2,2
**Earle** 252:8
**earlier** 298:23 313:19
**EASTERN** 251:1 328:4
**effect** 253:16 307:3
**effort** 294:23 299:20
**eight** 319:4
**Eileen** 251:23 327:5 327:19
**EIM** 293:20
**elicit** 272:21
**else's** 320:19
**email** 262:2,6 263:21 264:2 280:6 283:18 283:24 284:10,11 284:11,22,23 285:5 285:8,9,12 286:8,25 287:2,8 288:25 289:17,20,23 290:12,25 291:2,5 291:10,13,17 292:17,22 297:2,6 298:22 299:3,18 300:12 301:4,9,23 302:6,10 303:17,22 305:3,8,20,23 309:18,22 310:16 311:3,5 312:6,12,14 313:14 314:10,14 315:17 316:4,12,14 316:16,24 317:17 318:6,9,12 321:8 322:11,19,25 323:4 323:6,16,22 329:8,9 329:10,11,12,16,17 329:18,19,20,23,24 329:25 330:5,7,8,9 330:10,11,12,14,15
**emailed** 301:18
**emails** 260:4 291:17 331:3
**Emanuel** 252:5 254:15 329:4
**eminence** 290:23
**employed** 265:19
**employer** 292:25
**employment** 264:7,8
**ended** 300:2
**engage** 275:15
**enlarge** 283:21
**entire** 268:2 318:23
**entities** 269:24 276:17 285:17,20 303:20 321:17
**entity** 269:18 276:6 276:21,24 277:16 277:18 278:3,6,8 279:18 286:19 313:4 320:23 331:7
**equipment** 261:18
**equity** 291:14 312:21
**especially** 295:19
**ESQ** 252:5,9,13
**establish** 279:18 297:3,12
**establishing** 297:22 331:7
**estate** 251:4 294:21 319:18,18
**eventual** 300:9
**everybody** 259:2,3 281:5
**evident** 312:12
**exact** 256:17 302:21 308:11,12
**exactly** 262:8 269:20
**examination** 251:21 253:15 255:6 327:10 329:3
**examined** 254:23
**example** 269:9 277:21
**examples** 261:12

**exchange** 263:21 314:10,14
**exchanges** 262:2,6 264:2
**executed** 277:8,25 314:4 318:4
**exhibit** 283:19 285:13 289:18 291:6,19 292:23 294:17 296:13 297:7 299:4 301:10 301:24 302:11,17 303:23 305:9,24 306:8,14 309:23 315:24 316:15 317:18 318:7,13 321:9 322:12 323:23 330:6
**exhibits** 272:8 283:13 329:6 330:1
**existence** 305:17 320:13
**expected** 270:11,13
**expects** 306:24 307:16
**expenses** 270:7,7
**experience** 282:7
**explain** 268:25 278:12 321:14 322:19
**explanation** 317:14
**expose** 314:25
**express** 284:2
**expressed** 275:5
**extent** 265:5 279:15 294:11

**F**

**F** 327:2
**F4506C** 284:21
**facings** 273:14
**fact** 289:4 314:6 318:19 325:4,6,15
**facts** 265:14 266:3 290:4
**fair** 267:20 271:10 282:3,9 287:8 291:11 296:8 300:13 303:24 304:21 305:10
**false** 257:13,17
**familiar** 292:5 294:19 295:10 319:20
**far** 263:12 267:5 291:18
**Fargo** 320:10
**faster** 280:11
**FB** 321:21
**FDIC** 256:24
**features** 272:14,23 273:3,7,13,17 280:13,19,24,25 281:19,20 282:11 283:2 331:6
**February** 292:17 317:21
**federal** 256:22,23
**fee** 281:19
**fees** 264:11,14,18
**field** 284:19
**figure** 282:4
**file** 318:14
**filed** 306:24
**filing** 253:5 276:4,9 293:12 322:8
**Final** 294:14,16 329:13
**financial** 260:17,22 289:25 293:25 294:2,8 295:9,15,23 296:2,6,12,20 329:14
**find** 270:2 295:7
**finding** 271:16
**finds** 289:2
**fine** 268:19 320:11
**finish** 315:22
**first** 254:22 259:18 261:24
**firsthand** 271:4
**FISK** 251:7
**five** 259:19 317:19
**flag** 269:11 295:13 303:4
**flagged** 269:17,20 270:8
**flags** 269:8 270:18
**Floor** 252:8
**Flushing** 251:15 252:7 254:19 256:5 256:19 257:5,11,24 258:11,25 260:16 260:21 261:4,7,25 262:17,19,25 263:2 264:5,8,18,19 266:11,24,24 267:6 267:12,25 268:16 268:17,18,22 269:16 270:9,24 271:15,24 273:3,6 273:24,24 274:10 274:16,19 275:5,15 276:14,19 277:7,17 277:25 278:6,25 279:11 280:17 281:8 282:25 283:15,16,19 284:20 285:6,7,13 286:18 287:18 288:24 289:2,9,15 289:16,18 290:5,25 291:2,6,22,24 292:16,23 293:8,12 293:25 294:15,15 294:17,20,20,23 295:2,5,14 296:6,7 296:13,15,22,25 297:3,7,18,25 298:21,22 299:4,18 301:3,4,5,10,17,18 301:24,25 302:5,6 302:11,12,12,17,23 303:3,10,15,16,17 303:23,25 304:4,5 304:18,21 305:2,2,9 305:11,19,20,24,25 306:5,6,8,9,14,15 307:4,14 308:18 309:4,13,17,18,23 310:7 313:2,6 314:2 314:2,13,18 316:8 316:11,12,15 317:13,14,18,23 318:2,2,3,7,8,9,13 319:10,10 321:3,4,4 321:9,13,14,21 322:6,7,12 323:15 323:16,23 324:24 325:7 329:7 330:2
**Focusing** 294:20
**follow** 264:3,24 273:22 279:20
**following** 298:23 299:5
**follows** 254:23 289:23 298:24
**followup** 261:17
**followups** 259:12
**force** 253:16
**Foreign** 292:10
**form** 253:10 254:25 257:14 258:9 265:16 267:3 271:14 274:3 275:17 277:5,7,8 278:9 282:12 284:21 285:2,5 286:13 287:20 288:20 295:17 296:9,16,18,19 300:15 305:14 310:5 313:21 317:3 320:22,25 322:17
**formally** 256:9
**formation** 278:4
**former** 306:20
**forms** 270:20
**forth** 270:7 272:22 279:24 327:9

**forward** 259:15
**four** 294:21 302:23
**frame** 274:4,5
**fraud** 272:20
**full** 317:21
**Funding** 251:16 252:11
**funds** 257:4 261:5,10 261:15,17 269:5,6,7 269:14 272:21 273:10 275:11 302:22
**further** 253:9,14 254:5 271:25 274:9 325:11,13 326:4,7 327:12
**furtherance** 274:21
**future** 322:23

**G**

**G** 328:2
**general** 268:10 274:23 312:17 313:16 316:8
**generally** 261:8 267:11,24 268:25 276:19,25 291:20 292:3 293:24 299:23 303:7 309:8 310:7 314:17
**Gianelli** 267:7
**give** 268:20 277:21 290:14 318:15 324:19 325:6
**given** 266:18 270:11 280:15 301:15,16 327:10 328:9
**giving** 262:10
**glad** 315:19
**go** 255:15 273:9 308:4 312:4 315:14
**goes** 311:3 319:13
**going** 257:18 258:20 263:5,15,25 269:14 270:17 273:15 274:13 275:12 281:3 284:10 285:6 291:19 293:15 299:17 300:2 315:24 320:8,11 322:24
**GOLD** 251:12,12,13 251:13,13,14
**Goldman** 320:10
**Good** 255:8,9
**great** 284:12 311:14 311:18 312:2,8 314:7
**ground** 313:8
**grounds** 274:8
**Group** 251:13,14 259:5 267:2 305:5
**guess** 299:16 300:7 312:4
**guidance** 262:9
**guide** 322:23
**guy** 266:7

**H**

**H** 254:21
**half** 259:19 287:3 290:13
**hand** 327:17
**happened** 323:9
**happens** 324:2
**Harry** 251:10 260:2
**head** 255:24 272:6
**heard** 259:12
**held** 251:23
**hereunto** 327:16
**higher** 282:25
**HIGHLAND** 251:5,6 251:6,7
**HIGHWAY** 251:3,16
**hold** 271:24 274:8 316:5
**honest** 276:7 282:15 295:11
**hospital** 260:3,14
**hour** 259:21 287:2 290:13 315:3
**hours** 259:20 290:14
**HS** 279:25
**huh** 299:7 305:22
**hundred** 268:15 301:20
**HYLAN** 251:5,5

**I**

**identification** 254:25 283:19 285:13 289:18 291:6,14 292:23,25 293:2 294:18 296:14 297:7 299:4 301:10 301:24 302:11,18 303:23 305:9,24 306:8,14 309:23 316:15 317:18 318:7,13 321:9 322:12 323:23
**identified** 259:7
**identify** 277:15 278:4 294:23
**identity** 310:8
**imagine** 300:23
**immediately** 302:14
**improvements** 303:11
**inappropriate** 265:7
**incident** 324:23
**including** 266:14
**incoming** 259:7
**inconsistent** 266:19
**Incorrect** 322:18
**increase** 282:18,19 283:7
**indicate** 254:10 320:13
**indicated** 270:19,21
**indicates** 310:24 316:24
**indicating** 266:24 304:22
**individual** 256:2 276:20 277:17 278:5,7 293:24 295:6,8,21 319:24
**individuals** 290:16 312:21 321:18
**industry** 282:8
**influenced** 279:7
**information** 255:21 255:23 270:11 273:12,14 274:7,9 275:3 277:9 278:21 286:15 292:7 295:14 296:18 309:20,25 310:11 310:17,25 311:25 313:2,24 317:9 320:23 321:2 331:1
**informs** 305:21
**initial** 289:20
**initially** 283:10 318:20
**inquiries** 276:20
**inquiry** 305:25 320:4
**insight** 313:16
**instance** 286:23 295:20 300:20
**interest** 272:16 304:23
**interested** 327:14
**interests** 272:18
**internal** 273:19 279:11 301:4
**internally** 297:3 298:24
**invalidity** 307:12
**investigate** 261:11 313:3
**investigation** 260:22 261:5 308:17 314:13
**investigations** 261:8
**invited** 309:9
**involved** 279:25 296:4
**IRIS** 251:4

**Island** 251:8 259:5 266:25 305:5
**issue** 267:15 286:18 287:19 288:10,18 289:3 290:6
**issued** 267:7 288:14
**issues** 273:22 307:10
**items** 258:23 314:18 314:21,25

J

**Jamaica** 252:4,5
**Jeff** 326:5,10
**JEFFREY** 252:13
**jive** 295:15
**join** 255:5
**joint** 311:13 312:8
**JONES** 251:11,15
**JORY** 251:4
**Joshua** 293:21
**JP** 251:16 320:11
**Judge** 308:2,5
**July** 322:13,14
**jumped** 258:21
**Justice** 267:7

K

**K** 328:2
**K1** 293:2 304:5,14,17
**Kataev** 252:5 254:15 254:15 255:4,7 258:2,20 260:6,10 263:25 264:22 265:6 273:15 279:15 280:5 283:11,20,22 287:22 288:2,8 302:2 307:22 308:4 308:10,21 315:7,15 315:19 319:6,8 324:12 325:12 326:2,4,11 329:4
**Kelly** 255:25 286:24 289:14
**KHAN** 251:4
**kick** 261:13
**kind** 267:14,19 268:20 269:3 283:5 292:6
**knew** 266:24 267:6 310:3,6,25
**know** 255:20 257:8 257:15,16,22 258:7 260:16 261:6 262:3 262:20 264:19 267:5 268:3,5 270:15 272:21 274:23 276:18 280:16,17,20 281:4 281:16,24 282:21 282:22 284:25 285:4,19 286:2,5,6 286:14,21,22 289:13 290:9 292:2 293:9 294:5,8,12,25 299:16 300:21,23 302:21 310:6,12,13 310:14 311:17,19 312:14,22 314:24 315:13 316:22 317:9,25 320:22 323:19 324:10 326:5
**knowledge** 260:21 261:4,7 262:19,24 263:5,14 266:10 268:16 269:16 272:3,9,13 273:2 274:15 280:12 281:7 282:7 284:20 286:3,13,18 288:3,5 289:9 293:6 295:13 300:5,17 309:13 313:10,23 314:9 321:10 325:16
**knowledgeable** 325:20
**known** 256:7

L

**L** 254:21 328:2
**large** 269:10
**Laurie** 251:11 268:11 268:17 284:12 291:3 292:18 305:16,21 314:10 316:13
**laws** 256:20,25
**lawsuit** 267:8 305:17 305:21 306:2,3,19 307:5,11,15 309:15
**learned** 268:11
**learning** 314:14
**LEASING** 251:4,17
**left** 308:25 315:21 319:9
**legal** 252:2 264:11 287:21,25 288:6 316:4,6
**let's** 260:15 283:11 289:15 294:3 298:21 318:8
**letter** 293:20 306:2 306:10,13,15,18 307:4,8 308:16 313:14,20 330:4
**liability** 279:12,19 315:2
**liaison** 260:11
**Libertas** 251:16 252:11 259:13
**LIC** 251:13
**license** 255:3
**lien** 289:24
**lieu** 254:5 296:16
**likelihood** 282:19
**limited** 278:14 279:12,19
**line** 284:8 285:17 302:19
**link** 284:2
**linked** 286:15 298:7 298:10
**list** 279:24 296:21 309:24 318:21 319:15
**listed** 292:24 293:18 294:21 304:17 305:12 314:6 320:7 320:11,13
**listing** 304:6 318:20
**lists** 293:21 298:12
**litigation** 263:8 264:6 266:25 267:12,17 267:21,24
**little** 251:15 272:8 319:6
**LLC** 251:3,3,5,6,6,6 251:7,7,7,8,12,12 251:13,13,14,14,16 251:16,17 252:2,3 254:16 284:5,8 318:15
**LLP** 251:15 252:7,10 252:11 254:19
**loan** 255:13,16 258:14 261:3,9,14 267:17,20 284:2,4 286:19 287:19 288:10,14,18 289:3 290:6,17 293:8 295:20,21 299:11 299:15,17 300:14 302:13,20 303:11 303:13 308:19 323:20
**loans** 257:23 267:16 268:18 290:22 324:8
**located** 311:14,17 312:2,8
**location** 269:6
**longer** 256:10 309:5 319:5
**look** 280:2 289:15 298:21 318:8
**looked** 291:18 298:22
**looking** 296:25 301:17,25 302:5,12 302:23 304:13

305:12 314:2 319:10 321:3,13 322:6 323:15
**looks** 284:3 294:19 302:9,15 303:21 305:7
**loss** 261:2
**lot** 315:21
**Lynk** 284:5

**M**

**M** 254:21 328:2
**maintained** 269:18 269:23
**making** 312:24 315:9
**management** 251:8 282:2
**Manhattan** 299:23
**manner** 254:9
**MARC** 251:11
**March** 251:19 294:14 298:24 299:19 301:18 303:24 305:4,10 306:2,11 309:18 327:17 328:7
**mark** 291:19 294:15 315:24
**marked** 283:18 285:12 289:17 291:5 292:15,22 294:17 296:13,25 297:6 299:3 301:9 301:23 302:10,17 303:22 305:8,23 306:7,13 309:22 316:14 317:17 318:6,12 321:8 322:11 323:22
**marking** 320:16
**marriage** 327:13
**match** 301:20 324:25
**matter** 262:4 278:24 283:4 298:2 327:15
**matters** 263:7 270:17
**maturity** 289:25
**mean** 257:24 260:25 269:21 271:20 273:8 275:9 277:10 319:7
**means** 315:19 320:17
**measure** 271:24
**measured** 282:24
**measures** 292:13
**meet** 281:22 284:16 284:19
**meeting** 300:20 321:5 321:10
**mentioned** 267:9 281:12 286:7
**MERCKLING** 251:11
**merely** 306:18
**message** 266:6
**Messrs** 284:12 323:17
**MICHAEL** 251:11 251:21 255:1 256:1 257:1 258:1 259:1 260:1 261:1 262:1 263:1 264:1 265:1 266:1 267:1 268:1 269:1 270:1 271:1 272:1 273:1 274:1 275:1 276:1 277:1 278:1 279:1 280:1 281:1 282:1 283:1 284:1 285:1 286:1 287:1 288:1 289:1 290:1 291:1 292:1 293:1 294:1 295:1 296:1 297:1 298:1 299:1 300:1 301:1 302:1 303:1 304:1 305:1 306:1 307:1 308:1 309:1 310:1 311:1 312:1 313:1 314:1 315:1 316:1 317:1 318:1 319:1 320:1 321:1 322:1 323:1 324:1 325:1 326:1 328:5,11 329:2
**Mike** 316:4
**million** 282:16 298:15,15
**minimum** 312:25
**minute** 324:19
**minutes** 259:21 289:24 308:25 315:4 319:5,9
**missing** 289:23
**moment** 325:18
**money** 281:13 303:8
**monitor** 268:22
**month** 282:5
**Morgan** 251:16 320:11
**morning** 315:17,18
**mortgage** 319:24 320:3,5,13
**mortgages** 295:7 319:16
**motion** 306:24 307:11 315:14
**MOTOR** 251:3,17
**Motors** 251:2,13,13 251:14,14,14 252:3 254:16 303:19,25 304:7
**move** 259:15 280:11
**moved** 272:21 281:13 302:14
**moving** 269:6,6,7 299:18 300:14
**multiple** 259:12 279:3

**N**

**N** 252:1 254:21 327:2 328:2,2
**N.A** 251:16
**name** 262:12 273:24 276:9,12,15,18 278:4 293:18 313:11
**names** 279:6
**Nassau** 306:20
**nature** 269:7 271:2 272:22 278:23 300:11 322:19,21
**necessarily** 267:19 270:10 278:18 282:13 283:4 295:4
**necessary** 265:8 279:17 287:13 292:19 322:24 325:18
**Neck** 311:14,18 312:2,8 314:7
**need** 262:11 283:20 287:4 290:23 293:15 301:5 314:24 317:4 325:19
**needed** 299:14 301:11 313:15 323:2
**needs** 287:4 299:10 301:19
**never** 316:25
**new** 251:1,25 252:5,8 256:20 259:6 267:11 292:19 300:3 327:4,6 328:4
**normal** 272:15,17 275:18 290:16 297:18 303:8
**normally** 290:5 295:3
**North** 251:3 257:6,13 257:23 258:13 260:18,23 285:23 287:9,12 291:3,10 291:14 292:19,25 293:3,4 297:4 299:6 299:9,14 301:6 318:18 324:2
**NORTHSHORE** 251:17
**notary** 251:24 253:16

327:6 328:16
**note** 260:2
**noted** 326:14
**notice** 269:5 280:15
**noticed** 263:11
**notification** 261:2 262:10
**notoriety** 315:19
**notwithstanding** 289:3
**November** 317:20
**number** 255:24 282:8 292:25 299:10,21 304:10 310:15
**numbers** 268:21 281:17 282:21 298:18
**numerated** 299:11
**numerous** 279:22
**NYC** 251:12

**O**

**O** 254:21 327:2 328:2
**oath** 254:6,7 328:6
**objected** 271:7
**objection** 257:14 258:9 265:2,16 267:3 271:14 274:3 275:17 278:9 282:12 287:20 288:20 295:17 296:3 300:15 305:14 310:5 313:21 317:3 322:17 325:14,23
**objections** 253:10 254:9
**objects** 259:10
**observed** 310:21
**obtain** 257:23 294:6 322:15
**obtained** 258:18 293:11
**obtaining** 286:19 293:7
**obviously** 282:18
**occur** 256:15 321:11
**OFAC** 292:10
**offer** 273:9 281:21 282:20,25 283:9,9
**offered** 268:18 280:12,21,22,25 281:2,4 282:11
**offering** 280:19
**offers** 280:16
**offhand** 274:23 281:17,24 285:19 290:11
**office** 292:10 316:4,6
**Oh** 322:4
**okay** 256:15 257:16 258:11,16,20 262:24 263:9 265:6 265:13 274:18 276:8,13 281:12 283:11 290:12 291:13 304:12,21 307:22 311:24 312:6 315:23 319:19 320:6 325:4
**open** 278:23 292:19 297:19 298:6
**opened** 267:12 270:10 271:7 272:4 272:14 311:10
**opening** 270:22 271:11,18 274:16 274:24 275:2,7,11 275:19 276:14 280:14,18 283:8 298:8,25 300:24 311:22 316:21
**operated** 269:17
**operating** 293:3 301:6,11,19 302:7,8 316:17 317:11 318:19 324:24
**operations** 274:17,22 295:3
**opinion** 288:5,9
**order** 251:23 267:7 273:20 281:9 297:19
**ordering** 254:12
**organized** 256:19,25
**original** 283:8
**originally** 318:20
**origination** 324:7
**originations** 320:17
**outcome** 327:14
**outline** 276:23 277:2 278:18
**outlined** 283:8
**outlining** 279:17 321:18
**outside** 280:8
**overall** 269:2 296:4
**Ovington** 252:8
**owned** 295:8
**owner** 257:5 258:13 301:13,20 304:18 312:13 318:20,22 325:2
**owners** 278:18 284:16 291:14 304:7 314:3
**ownership** 257:12 275:18 277:5,12,13 278:2,16,21 304:23 307:7 312:24 313:3 316:18 324:25 325:5

**P**

**P** 252:1,1
**p.m** 251:19 326:14
**page** 293:17 307:20 308:14 329:3,7 331:2
**paid** 262:25 263:2,5
**paperwork** 299:9
**paragraph** 316:21
**parameters** 281:5
**parse** 273:21
**part** 256:12 324:10
**participating** 254:2
**particular** 300:2,22
**parties** 253:4 254:7 321:18 327:13
**partner** 311:14 312:23
**partnered** 312:21
**partners** 251:15 306:20 311:11 312:17
**pattern** 295:3
**pause** 258:20 324:15 324:21
**pay** 264:14,18 319:18
**payment** 281:9
**payroll** 270:7,16
**pending** 307:11
**Pennsylvania** 252:12
**people** 255:24 279:7 309:9
**percent** 268:15 301:12,20 317:19 317:21
**percentage** 316:18 325:5
**period** 265:20,21 282:4
**periodically** 300:8
**permission** 308:18
**person** 254:6 277:15 284:16 312:10
**personal** 286:20 287:14,18 289:22 292:6 293:25 294:8 295:8,15,23 296:6 296:12,20
**personally** 295:10
**perspective** 284:19
**Philadelphia** 252:12
**pieces** 278:21 294:21
**place** 269:5 270:2 273:20 281:5
**placed** 316:4
**Plaintiff** 251:22 254:22

**plaintiffs** 251:8 252:3 254:16 259:2,6 264:22 267:2 305:5
**platform** 284:4 286:16
**please** 254:10 258:2 283:21 289:19 307:24 309:2 317:5
**pocket** 266:8
**point** 267:21 276:6
**pointing** 308:14
**policy** 280:7
**possession** 266:11 284:21 303:25 304:22
**possible** 299:11,14 316:18
**Possibly** 290:7
**potential** 292:4
**practice** 276:20,22 280:18 284:15 295:3
**predates** 291:17
**PREMIER** 251:14
**premise** 287:16
**preparation** 275:24
**preparing** 257:3 268:10
**present** 252:14 254:3 258:25 261:21
**presented** 275:18 289:8
**presumably** 260:12 275:9 312:9
**presume** 322:24
**prevent** 271:25 290:17
**previous** 307:21
**previously** 256:3,10 257:18 280:3 308:3 310:21 325:23
**principal** 286:20
**prior** 255:10 264:8 269:15
**probable** 291:12
**probably** 262:2 269:12 278:21 280:15 281:20,25 283:4 284:3 294:6 295:12
**procedure** 268:3 276:25 280:18 281:10 296:4 323:10
**procedures** 280:13
**proceed** 260:15 308:18
**proceeding** 259:11
**proceedings** 324:16 324:22
**process** 255:12,15,19 275:10 310:18
**processed** 255:17 267:21
**produce** 286:4
**produced** 266:23 268:9 279:16 284:21 325:15
**producing** 325:19
**production** 264:2,23 273:16 279:16
**profile** 324:10
**profitability** 287:5
**proper** 265:5
**properly** 315:22
**property** 261:19 295:7
**protect** 273:10
**protocol** 267:25 322:14
**prove** 296:22
**provide** 255:19,20,23 287:17 310:11 313:16,24 316:17 317:23 322:22
**provided** 260:18,23 274:24 276:3,14 277:14 279:22 280:3 293:7 295:14 296:17 306:2 310:22 313:15 317:2 318:19
**provides** 293:25 302:6 303:19 317:14 322:14
**providing** 295:8
**public** 251:24 253:16 273:14 327:6 328:16
**Puccio** 261:22 263:6 263:10,16,22 264:3 264:6,10,17 265:10 265:14,18 268:13 275:10 279:24 284:11 286:9 287:3 289:21 290:8,17 291:3,9,13 292:18 297:2 298:6,24 299:8,13,19,23 300:5,13,18,22 301:5,18 305:3,16 305:21 309:19 310:3,6,17,24 311:3 311:8 312:6,7 314:11 316:12,16 316:24 317:15 318:3 323:7,17 331:3,4
**Puccio's** 264:7 323:17
**pull** 292:4
**purchase** 261:18
**purchased** 317:21
**purpose** 274:15 275:4 300:14
**purposes** 279:6 293:7 300:24
**pursuant** 251:23 281:10
**push** 310:18
**put** 258:22 262:10 271:24 280:4 323:20

**Q**

**qualification** 265:25
**qualify** 287:4
**question** 255:11 257:15,20 266:2 271:17 277:20,23 282:14 288:25 293:17 297:21,22 308:12,23 309:2,3 324:17
**questioning** 258:21 308:9
**questions** 253:10 258:22 266:6 291:20 293:15 308:3 315:8,9,13 325:13 326:7,9
**quick** 283:11

**R**

**R** 252:1 327:2
**raise** 269:7 270:18 295:13
**raised** 307:4 325:23
**rated** 269:2
**reach** 260:6 309:13
**reached** 260:7 261:25 273:23
**read** 255:11 258:2,4 289:19 317:5,7 319:20 328:6
**ready** 324:18
**real** 294:21 295:7 319:18,18
**really** 276:16 284:18 308:4
**REALTY** 251:7
**reason** 300:17,21
**reasonable** 287:18 288:10,16,18 289:3 295:22
**recall** 262:8,9 266:13 266:17,19 267:9 270:23 273:5 276:5 277:5 302:21 313:12,25 324:23

**receipt** 276:4,9 293:13
**receive** 259:9 271:4 289:4 311:8
**received** 262:3,8 309:7 310:17 311:21
**receives** 277:25
**receiving** 260:25 302:13
**recess** 283:14
**recognize** 283:16
**recollection** 285:24 312:3
**recommended** 262:21 282:20
**record** 254:11 258:23 283:22 315:5 325:22 327:10 328:8,9
**records** 260:17,23,25
**recover** 324:2
**red** 269:11 295:13
**redactions** 265:7
**reduced** 264:12
**refer** 262:15 268:17 275:4 315:25
**reference** 286:8 287:11 297:12 313:13 316:3,5 321:4 322:7,23,23
**referenced** 323:3
**references** 323:20
**referencing** 312:7
**referred** 256:3 268:12
**referring** 265:21 296:6 303:15 304:4 304:9,17 305:19 306:5 311:5 314:19 316:11 317:13 318:2,18 324:6,7,9
**refers** 284:5 285:18 311:13
**reflect** 283:22 325:22
**refresh** 285:24 312:2
**refuse** 315:8
**regarding** 307:7
**regards** 310:15
**regulated** 256:24
**related** 263:7 307:5 327:12
**relation** 262:3 263:3 279:3
**relationship** 268:15 321:19,20
**rely** 276:10
**remains** 259:20
**remember** 271:2 272:6 276:16 311:23
**remind** 308:24
**remotely** 254:4,7
**rent** 270:7
**repeat** 257:25 264:15 277:20 317:4
**repetition** 269:5
**rephrase** 265:13
**report** 294:3,4 295:16,16,24,24 319:11,15,24 320:2 322:9,15 323:2,8,12
**reporter** 251:24 254:1,24 258:4 302:3 317:7 327:5
**reporting** 254:4,9 272:20
**reports** 292:4 319:21
**represent** 262:11 303:10 311:24
**representation** 309:5
**representations** 257:12,15,17 258:19 259:23 301:16 307:6
**REPRESENTATI...** 251:4
**representatives** 284:16
**represented** 258:13 276:8 285:22
**representing** 257:5 259:13 307:16
**represents** 262:16
**request** 277:2 280:4 280:25 296:19 297:16,25 298:6
**requested** 286:4 293:10 297:20 331:1
**requesting** 286:10
**requests** 265:3 280:23 291:9 318:3
**require** 277:8,10
**required** 275:20 279:7,25 288:19,21 288:23 289:4,6 323:12
**requirement** 289:7 289:10 323:2
**requirements** 261:10 261:13,15,16 303:14
**requires** 269:12 279:12 288:24
**rescheduling** 263:12
**research** 267:19 292:4
**reserved** 253:11
**residences** 294:24
**resolve** 325:24
**respect** 313:7
**respective** 253:4
**respond** 260:4 265:4
**response** 271:23 286:8 290:8 305:25 310:16 323:6
**restraining** 267:7
**resultive** 271:12,20
**retainer** 264:13,16 264:20,23 265:7 331:4
**retains** 263:7
**return** 287:6 288:21 289:22 304:2
**returns** 286:4,5,20 287:13,17 288:11 288:15,19,23,24 289:5 291:11 303:19 310:21
**revenue** 298:12
**review** 255:16 257:2 267:25 268:9 269:8 292:3 296:9 300:12 319:23 322:25
**reviewed** 260:25 275:21,22,25 294:9 294:11 311:21
**reviewing** 293:17
**right** 258:22 266:8 268:6 275:25 291:22 292:8,11 298:16,19 301:21 302:20 304:2 305:21 306:16,21 306:25 310:4,19 311:11,15,18 312:10 314:7 317:21,24 319:13 319:25 320:4,5 322:4,16 323:18 324:8 325:25 326:11
**rise** 325:6
**risk** 269:2 314:18,21 314:22 315:2
**Robert** 251:3 252:4 252:14 254:17 264:17 279:23 304:18
**Ronneburger** 252:9 254:12,14,18,18 257:14 258:9 259:24,25 260:9 262:22 264:25 265:16 267:3 271:14 274:3 275:17 278:9 279:21 282:12 287:20,24 288:4,20

295:17 296:3 300:15 305:14 307:19,25 308:6,13 308:23 310:5 313:21 315:3,11,16 317:3 319:4,7 322:17 325:25 326:3,8
**room** 254:3
**ROSLYN** 251:14
**ROUTE** 251:7
**Ruderman** 259:5 307:20 308:11
**rush** 316:22
**RXR** 299:19 300:3,6 300:9,13,18,22,24

**S**

**S** 252:1,13
**Sachs** 320:10
**SAGE** 252:2
**Sales** 251:2 252:3
**SARAH** 251:10
**satisfactory** 318:15
**satisfied** 289:8,10 325:11
**satisfy** 290:22
**saw** 285:8 298:19
**saying** 258:16 284:12 288:14 299:13 304:8
**says** 289:22 290:8 292:21 298:15 299:8,19 304:11 306:23 312:15 316:21 319:17,19
**scheduling** 263:10,15
**scrolled** 283:23
**se** 275:13 323:21
**sealing** 253:5
**search** 267:18,22 269:24
**searches** 267:12
**second** 258:21 284:10 304:17
**Secrecy** 322:3
**sections** 286:10
**securities** 300:9
**security** 271:24 272:13,15,17,23 273:3,7,9,12,17 280:13,19,24 281:10,14,15,19 282:11,20,20 283:2 331:5
**see** 284:6,12,13 285:14 286:11,15 287:4,5,6,14 290:2 290:14 291:7 293:13,16 296:10 297:14 298:13 299:11,21 300:25 301:7 302:25 309:11,20 313:17 316:5 321:5 324:4
**seeking** 255:13
**seen** 266:21,23 294:13
**sending** 303:7 320:18
**sends** 299:5
**sense** 281:18,21 298:10
**sent** 285:3 286:9 309:19
**separate** 298:6,8
**Separately** 259:17
**separating** 276:16
**September** 320:5
**serve** 316:8
**services** 268:18 283:9
**serving** 260:10
**set** 279:24 327:9,16
**sets** 288:11
**Shane** 268:5
**shared** 310:25
**shareholder** 278:25 279:2,3 304:6,8,14
**shareholders** 266:10 266:15 279:8
**shares** 279:8 304:10
**Shore** 251:3 257:6,13 257:23 258:13 260:18,23 285:23 287:12 291:3,10,14 292:20,25 293:3,4 297:4 299:6,9,14 301:6 318:18 324:2
**Shore's** 287:9
**short** 283:14
**show** 254:25 320:25
**showed** 270:5 275:20 301:12 308:11,17 320:2
**showing** 283:15 290:25 292:15 293:12 301:3 306:9 309:17 324:25 325:2
**shows** 305:20
**sign** 297:13
**signal** 275:15
**signatory** 264:20
**signed** 285:2 297:20 328:13
**signer** 297:24 298:9 298:11 309:25,25
**signers** 310:4,8,9,11 310:15
**similarly** 266:5 293:20
**single** 297:4,13,13,22 297:23
**single-page** 290:25
**sit** 257:8,10,22
**site** 278:22
**sitting** 308:6
**situation** 268:4 325:11
**situations** 278:15
**size** 281:12
**skipping** 280:10
**SmartLynx** 292:5 295:6,11
**SMITHTOWN** 251:14
**Solano** 322:20
**sole** 257:5 258:13 273:12,14 279:2 293:6,9,9 298:9 304:6,8 312:13
**somebody** 255:13
**soon** 299:10,14 316:17
**sorry** 257:25 264:15 277:19 288:22 296:8 302:7 314:20 316:22
**sort** 269:11 286:5 298:6 324:7
**sought** 258:14 316:24 317:10
**sound** 259:23
**sounds** 272:5,6,12 281:11
**source** 273:12,14 275:3
**speak** 261:24 266:3 299:20
**speaking** 256:13 267:11,24 274:23 276:19,25 292:3 293:24 294:7 303:7 309:8 310:7 314:17 324:11
**specific** 255:11 261:10,12 266:3 285:4 292:2 297:22 300:14 312:23 320:25
**specifically** 259:3 262:6 266:20 271:3 271:5 276:5 277:15 286:6 291:24 297:25 300:21 307:8 312:18 313:12 317:9 319:2 323:9 324:11
**specifics** 264:14 269:13 314:24
**specifies** 264:17

**specious** 306:19
**speed** 319:3
**spoke** 275:11
**spreadsheet** 321:14 321:17 330:13
**ss** 328:3
**stamp** 301:17 329:8,9 329:10,11,12,13,15 329:16,17,18,19,20 329:22,23,24,25 330:3,4,5,7,8,9,10 330:11,12,13,14,15
**stamped** 283:16 285:6 289:16 291:2 292:16 296:7 297:2 298:21 301:3 302:5 302:12 303:16 305:2,20 306:6,10 309:17 316:12 317:13 318:3,8 321:3,13 322:6 323:16
**stand** 297:8 321:24
**standard** 270:6 273:7 278:17,19 284:15 284:18
**standing** 265:2
**stands** 284:8 290:10 291:11
**start** 255:15
**starting** 285:7 289:19 298:23
**starts** 282:24
**state** 251:25 256:20 256:25 282:17 298:5 301:20 318:24 327:4,6 328:16
**stated** 259:4 296:10 302:19 318:14
**statement** 293:25 294:2,14,16 295:9 295:15,23 296:2,7 296:13,20 329:13 329:14
**statements** 294:9 295:25
**states** 251:1 290:12 306:18 317:19 323:7 328:3
**stating** 254:10 285:10 287:3 289:24 301:19 307:16 313:14
**status** 321:20
**stenotype** 251:24 327:5
**Steven** 289:20,22 290:4
**STIPULATED** 253:3 253:9,14
**stocks** 296:19,21,22
**stopped** 315:4
**Street** 251:7 252:12
**strictly** 256:11,13,13
**subject** 284:5
**subjects** 325:21
**submission** 307:3
**subpoena** 262:3,8 264:11
**subscribed** 253:15,17
**subsequent** 287:2
**subsequently** 317:20
**substance** 265:10
**sufficiency** 313:20
**sufficient** 282:10 296:21 325:15
**suit** 321:18
**Suite** 252:12
**summons** 305:4
**sums** 269:10
**Sunrise** 251:3,12,16 257:20 285:24 287:3 292:20 293:4 293:13,21 297:4
**Superb** 251:2 252:3 254:16 259:2 266:11 271:7 272:3 272:14 273:4,25 274:7,12,16,21 275:16 276:3,11,15 281:8 303:19,25 304:5,6,23 309:20 311:17,22,25 312:13 313:7 314:4 314:6 316:13,17,25 317:10,20 318:25
**Superb's** 273:24 312:7
**superiors** 268:7
**supporting** 285:11 317:24
**supposed** 255:4 312:11
**Supreme** 306:20
**sure** 260:4 285:21 288:15 290:19 295:18 311:20 313:22 323:7 324:18,20
**suspicious** 268:23 269:25 272:20 303:4,13
**sworn** 253:15,17 254:23 327:9 328:13
**SYOSSET** 251:12
**system** 266:16
**systems** 269:5,12,25 270:9 272:19

**T**

**T** 327:2,2 328:2
**take** 264:25 265:3 277:7,7 279:21 280:2 282:2 283:11 284:17 294:2 324:20 326:13
**taken** 251:22 283:14 328:6
**talk** 280:5
**talked** 322:4
**talking** 265:12 267:14 270:16 283:5
**tasks** 292:2
**tax** 286:4,5,20 287:5 287:12,17 288:11 288:15,19,21,23,24 289:4,22 291:11 303:19 304:2 310:21
**team** 251:2 252:3 254:16 255:25 282:2,15 286:24 316:7
**team's** 268:3
**technically** 256:10
**tell** 255:22 260:13 319:23 320:16
**telling** 308:10 322:22
**temporary** 267:7
**ten** 289:23 319:8
**tend** 295:11
**terms** 273:8,11,18 281:13
**testified** 254:23
**testify** 255:18 287:25 288:2,4,6
**testifying** 270:23
**testimonial** 259:18 259:21
**testimony** 258:3 266:13 274:18 313:19 317:6 327:10 328:6,8
**text** 266:6
**Thank** 308:21 315:15 326:2,12,13
**Theresa** 255:25 286:23 289:14
**things** 269:7 270:16 272:22 278:22 280:22 300:10 303:14 325:14
**think** 264:21 267:18 273:21 278:14 290:11 295:11 298:20 300:16 319:8 320:25

324:12 325:17 326:10
**THOMAS** 251:11
**Thomasson** 251:10 259:10 260:2,7,12 306:10 308:16 309:9,14 313:15,23 313:24 330:4
**thought** 274:8
**three** 276:17 286:11
**threshold** 281:14 282:3
**thresholds** 281:23,24
**throw** 282:22
**time** 253:11 258:3 259:18,21 277:24 280:13 282:4 283:6 294:2 309:11 310:15 315:9 317:6 324:20 326:12,14
**timer** 315:4
**title** 316:10
**today** 257:8,10,22 258:24 259:4,22 299:19 326:12
**today's** 265:22
**told** 260:3 270:14 324:24
**Tony** 266:18
**top** 272:6 284:10 285:9 311:5
**total** 304:10
**tours** 284:17
**TR** 290:9,9 291:9,11
**track** 272:21
**transact** 271:9
**transacted** 258:6
**transaction** 322:9,15 323:2,8,12
**transactions** 269:3 269:15 270:12 281:3 283:5 322:22
**transcript** 254:13 308:14 328:6,7
**transfer** 302:16 329:21
**transfers** 269:9 270:5
**trial** 251:21 253:11
**trigger** 269:11 281:15
**triggered** 269:24 281:14
**trip** 300:13
**true** 257:17 260:18 260:23 294:10 327:10 328:8,9
**truthful** 325:7
**try** 290:24
**trying** 277:22 290:21 298:4
**two** 278:25 284:11 285:19 287:5 295:19 298:6,8 300:25 303:14 309:25 310:4,8,9,11 311:2 320:8
**type** 255:21,23 256:8 256:22 268:14 298:18
**typical** 280:17

**U**

**U** 254:21
**UEA** 251:14
**Uh** 299:7 305:22
**ultimately** 298:19
**unauthorized** 271:12 271:13,16,19,21 272:10
**understand** 257:4 271:15,19 274:18 297:21 298:3 315:25
**understanding** 257:11 258:11 263:9 268:8 274:19 283:25 285:2,16 310:14 311:10 312:20 323:11
**understands** 257:11
**understood** 258:5 270:23 316:11 323:15
**unidentified** 309:9
**Uniondale** 252:8 300:3
**UNITED** 251:1 328:3
**unusual** 269:14,25
**update** 301:6
**updated** 301:12 302:7
**updating** 302:7
**uploaded** 266:15 285:10
**urges** 316:16
**Urrutia** 251:3 252:4 252:14 254:17 266:7,18 272:9 273:23,25 274:11 303:18,18 304:6,14
**Urrutia's** 270:24 271:2,11
**usage** 261:11 302:22
**use** 261:5 272:19 302:20 303:11 312:22
**usually** 276:23
**utilizes** 295:5
**utilizing** 259:22 320:23

**V**

**various** 269:23 321:17
**vehicles** 314:11
**venture** 311:13 312:9
**ventures** 311:11
**verbal** 263:22
**verbatim** 255:11
**verified** 281:10
**versus** 279:12 283:5 283:6,7
**virtue** 271:10
**visit** 278:22 300:6
**visiting** 300:18
**volume** 281:3,12 282:23,25 283:3 323:20
**volumes** 270:12 281:17

**W**

**W** 328:2
**waiting** 290:9 316:23
**waive** 254:8 289:10
**waived** 253:6 289:7
**want** 256:18 258:22 280:5,15 282:21 291:20 308:4 315:25 324:17 326:6
**wanted** 321:5 325:22
**wants** 298:6
**wasn't** 276:4
**way** 257:16 271:6 274:4 284:19 310:13 315:2 320:8 327:14
**we'll** 259:22 264:3,23 264:25 272:8 273:22 279:16 280:8 283:13
**we're** 256:13 260:3 273:15 279:4,10 280:10 304:13 305:12 315:6 322:5
**weeks** 262:2
**Weinstein** 266:18 303:18 310:18,22 310:25 311:9
**WEIR** 252:10
**Wells** 320:10
**went** 286:25 287:9 315:5
**weren't** 270:17 310:22
**WESTCHESTER** 327:4
**WHEREOF** 327:16
**Wicks** 308:2,5

**wire** 269:9 283:6 302:24 321:2
**wires** 320:20,24
**withdrawn** 257:9 266:22 267:5 270:4 291:18
**witness** 254:21 255:2 326:13 327:8,11,16 329:2
**witnesses** 325:20
**word** 259:9 312:22 312:23
**wording** 262:9 302:22
**words** 275:14 278:25 280:20
**work** 265:6
**worked** 299:23
**working** 282:8 320:8
**works** 268:25
**wouldn't** 255:18 268:20 274:4 275:12 281:4 283:3 286:14 300:7,16 313:4
**writer** 266:7
**writing** 264:4,12,24 273:22 279:20
**wrote** 305:16

**X**

**X** 251:2,18

**Y**

**yea** 264:21
**year** 256:16 304:11
**years** 268:13 282:8 287:5
**yesterday** 284:13
**York** 251:1,25 252:5 252:8 256:20 300:3 327:4,6 328:4

**Z**

**zoom** 251:18,23 321:16

**0**

**1**

**1** 282:16 283:15,19 329:8
**1:00** 315:16
**1:07** 283:13
**1:12** 283:13
**10** 301:3,10 329:18
**10,000** 322:13 323:8 323:12,14
**100** 304:10 317:21
**100-percent** 318:21 325:2
**1043** 301:4 329:18
**105** 292:16
**105-112** 329:12
**1051** 301:18 329:19
**1062** 302:6 329:20
**108** 292:16
**109** 293:12
**11** 301:17,24,25 302:2,4 329:19
**112** 292:17
**11423** 252:5
**11553** 252:8
**1194** 302:13 329:22
**12** 302:5,11 329:20
**12:10** 251:19
**1239** 251:6
**126** 307:20 308:14
**13** 302:12,17 308:25 329:21
**1339** 252:12
**1359** 302:23
**14** 303:15,23 304:5 329:23
**15** 285:7 305:2,9 329:24
**15-16** 329:9
**1580** 251:5
**1581** 251:5
**1591** 251:5
**15th** 298:24
**16** 285:7,7 305:19,24 316:3 329:25
**1632** 251:6
**17** 298:15 306:5,8 330:3
**17th** 299:19
**18** 306:9,14 318:9 330:4
**182-11** 252:4
**187** 294:15 329:13
**187-189** 329:15
**189** 251:3,16 294:20
**19** 309:17,23 330:5
**190** 296:8
**191074** 252:12
**194** 296:8
**195** 296:8

**2**

**2** 285:6,13 329:9
**2:23-cv-6188** 251:9
**2:35** 326:14
**20** 328:14 330:6,6
**2018** 256:18
**2019** 287:12 289:23
**2020** 287:13,17 291:9
**2021** 287:13,17 291:9 292:25 304:2,5,13 304:24
**2022** 285:9 291:4 298:12 317:20 320:5
**2023** 272:4,11 289:25 292:17 294:14 301:19 303:25 305:4,10 306:3,11 309:18 316:3 317:21 318:9 322:13,14
**2026** 251:19 327:17 328:7
**2052** 303:16 329:23
**21** 316:11,15 330:7
**211** 297:2 329:16
**21st** 301:18
**22** 317:13,18 330:8
**2238** 303:17 304:4
**2245** 304:18
**23** 251:7 285:9 318:2 318:7 330:9
**24** 251:19 318:8,13 328:7 330:10
**25** 319:10 322:13 330:11
**2519** 251:7
**26** 321:3,9 330:12
**264** 331:3,4
**27** 292:17 321:13 322:14 330:13
**273** 331:5
**279** 331:7
**28** 322:6,12 330:14
**283** 329:8
**285** 329:9
**289** 329:10
**29** 289:25 323:15,23 330:15
**290** 329:11
**292** 329:12
**294** 329:13
**296** 329:14
**297** 329:16
**299** 329:17
**2nd** 252:8

**3**

**3** 289:15,18 329:10
**3:00** 315:17
**30** 282:10
**301** 329:18,19
**302** 329:20,21
**303** 329:23
**305** 329:24
**306** 330:3,4
**309** 330:5
**30th** 303:24
**31** 305:4,10 306:2,11 309:18
**316** 330:7

**317** 330:8
**318** 330:9,10
**319** 330:11
**31st** 327:17
**321** 330:12,13
**322** 330:14
**323** 330:15
**333** 252:8
**375** 305:20
**3766** 305:2 329:24
**3834** 306:6 330:3
**3835** 306:10 330:4
**3875** 329:25
**3998** 309:18 330:5
**3999** 309:18 330:5
**3rd** 313:14

**4**

**4** 290:25 291:6 329:11
**40-percent** 304:18
**43** 289:16
**43-44** 329:10
**44** 289:16
**446** 251:7
**45** 259:21 315:4
**4567** 314:2
**4571** 314:3

**5**

**5** 292:16,23 329:12
**50,000** 302:14,16 329:21
**500** 252:12
**500,000** 282:9 286:19 302:13 323:24,25
**500th** 315:13
**577** 298:22 299:18
**577-579** 329:17
**579** 298:22
**5916** 316:12 330:7
**5917** 317:14 330:8
**5922** 318:3 330:9
**5959** 318:9 330:10

**6**

**6** 294:15,17,20 329:4 329:13
**60** 304:11 306:25
**60-percent** 304:14
**6011** 319:13
**6012** 319:10 330:11
**6013** 320:11
**6014** 320:9
**6015** 319:13 320:8
**6228** 321:4 330:12
**6402** 321:14 330:13

**7**

**7** 296:6,13 329:14
**7,000** 322:14
**7310** 322:7 330:14
**7311** 322:7 330:14
**75** 291:2 329:11
**76** 251:7

**8**

**8** 283:16 296:25 297:7 298:15 329:8 329:16
**8495** 323:16 330:15
**85,700** 302:24

**9**

**9** 298:21 299:4 329:17
**99** 301:12
**99-percent** 318:20 324:25