**From:** DiGeronimo, Shane <SDiGeronimo@flushingbank.com>
**Sent:** Friday, March 31, 2023 10:37 AM EDT
**To:** Puccio, Robert <RPuccio@flushingbank.com>
**Subject:** 189 Sunrise Hwy Auto LLC
**Attachment(s):** "617224_2022_Brian_Chabrier_et_al_v_Anthony_Deo_et_al_SUMMONS___COMPLAINT_1.pdf"

**Shane DiGeronimo**
Credit Administrator
Flushing Bank
220 RXR Plaza
Uniondale NY, 11556
Office:516-283-1858
Sdigeronimo@Flushingbank.com

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------------X
BRIAN CHABRIER, INDIVIDUALLY AND AS A MEMBER OF NORTHSHORE MOTOR LEASING, LLC, SUING ON BEHALF OF HIMSELF AND ALL OTHER MEMBERS OF NORTHSHORE MOTOR LEASING, LLC SIMILARLY SITUATED AND IN THE RIGHT OF NORTHSHORE MOTOR LEASING, LLC; JOSHUA AARONSON, AS A MEMBER OF 189 SUNRISE HWY AUTO, LLC, SUING ON BEHALF OF HIMSELF AND ALL OTHER MEMBERS OF 189 SUNRISE HWY AUTO, LLC SIMILARLY SITUATED, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

Index No.

Plaintiffs designate Nassau County as the place of trial The basis of the venue is Plaintiffs' principle place of business

-against-

SUMMONS

ANTHONY DEO, NORTHSHORE MOTOR LEASING, LLC, 189 SUNRISE HWY AUTO, LLC, LIBERTAS FUNDING, LLC, HARRY R. THOMASSON, ESQ.,

Defendants.

Plaintiffs reside at
180 Michael Drive
Syosset, New York
County of Nassau

Date filed:
------------------------------------------------------------------------X

TO THE ABOVE NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of

your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York
December 6, 2022

CYRULI SHANKS & ZIZMOR, LLP.

By: ______________________
Russell Shanks, Esq.
Attorneys for Plaintiff
420 Lexington Avenue, Suite 2320
New York, New York 10170
(212) 661-6800

Defendants' address:

Anthony Deo
3 saddle Ridge Road
Old Westbury, New York 11568

Libertas Funding, LLC
411 West Putnam Avenue
Suite 220
Greenwich, Connecticut 06830

Harry R. Thomasson, Esq.
Sunrise Highway
Wantagh, New York 11793

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------------------------------------x
BRIAN CHABRIER, INDIVIDUALLY AND AS A MEMBER OF NORTHSHORE MOTOR LEASING, LLC, SUING ON BEHALF OF HIMSELF AND ALL OTHER MEMBERS OF NORTHSHORE MOTOR LEASING, LLC SIMILARLY SITUATED AND IN THE RIGHT OF NORTHSHORE MOTOR LEASING, LLC; JOSHUA AARONSON, AS A MEMBER OF 189 SUNRISE HWY AUTO, LLC, SUING ON BEHALF OF HIMSELF AND ALL OTHER MEMBERS OF 189 SUNRISE HWY AUTO, LLC SIMILARLY SITUATED, JORY BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC, ISLAND AUTO MANAGEMENT, LLC,

Index No.

VERIFIED COMPLAINT

Plaintiffs,

-against-

ANTHONY DEO, NORTHSHORE MOTOR LEASING, LLC, 189 SUNRISE HWY AUTO, LLC, LIBERTAS FUNDING, LLC, HARRY R. THOMASSON, ESQ.,

Defendants.
----------------------------------------------------------------------x

By their attorneys, Cyruli Shanks & Zizmor LLP, for their complaint, plaintiff Brian Chabrier individually, and as a member Northshore Motor Leasing, LLC, suing in his individual capacity and in the right of Northshore Motor Leasing, LLC, Joshua Aaronson individually, and as a member 189 Sunrise Hwy Auto, LLC, suing in his individual capacity and in the right of 189 Sunrise Hwy Auto, LLC, Jory Baron, 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan

Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, Island Auto Management, LLC to obtain a judgment in their favor, allege as follows:

THE PARTIES

1. At all times hereinafter mentioned, Northshore Motor Leasing, LLC ("Northshore") was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 180 Michael Drive, Syosset, New York 11791.

2. At all times hereinafter mentioned, 189 Sunrise Hwy Auto, LLC ("Sunrise" and together with Northshore, the "Dealerships") was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 189 Sunrise Highway, Amityville, New York 11701.

3. That at all times hereinafter mentioned plaintiff Brian Chabrier ("Chabrier") is an individual residing at 4 Creek Ridge Road, Bayville, New York 11709.

4. That at all times hereinafter mentioned plaintiff Joshua Aaronson ("Aaronson") is an individual residing at 55 Oak Drive, Roslyn, New York 11576.

5. That at all times hereinafter mentioned plaintiff Jory Baron ("J. Baron") is an individual residing at 10 Bancroft Lane, Kings Point, New York 11024.

6. At all times hereinafter mentioned, plaintiff 1581 Hylan Blvd Auto LLC ("1581"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

7. At all times hereinafter mentioned, plaintiff 1580 Hylan Blvd Auto LLC ("1580"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

8. At all times hereinafter mentioned, plaintiff 1591 Hylan Blvd Auto LLC ("1591"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

9. At all times hereinafter mentioned, plaintiff 1632 Hylan Blvd Auto LLC ("1632"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

10. At all times hereinafter mentioned, plaintiff 1239 Hylan Blvd Auto LLC ("1239"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

11. At all times hereinafter mentioned, plaintiff 2519 Hylan Blvd Auto LLC ("2519"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

12. At all times hereinafter mentioned, plaintiff 76 Fisk Street Realty, LLC ("76"), was and still is a foreign limited liability company duly organized and existing under and by the virtue of the laws of the State of New Jersey, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

13. At all times hereinafter mentioned, plaintiff 446 Route 23 Auto LLC ("446"), was and still is a foreign limited liability company duly organized and existing under and by the virtue of the laws of the State of New Jersey, with its principal place of business 1580 Hylan Boulevard, Staten Island, New York 10305.

14. At all times hereinafter mentioned, plaintiff Island Auto Management, LLC ("IAM"), was and still is a domestic limited liability company duly organized and existing under and by the virtue of the laws of the State of New York, with its principal place of business 1580

Hylan Boulevard, Staten Island, New York 10305. (1581, 1580, 1591, 1632, 1239, 2519, 76, 446 and IAM collectively ("Island Auto Group" or "IAG").

15. That at all times hereinafter mentioned defendant Anthony Deo ("Deo") is an individual residing at 3 saddle Ridge Road, Old Westbury, New York 11568.

16. That at all times hereinafter mentioned defendant Libertas Funding, LLC ("Libertas") is a foreign limited liability company authorized to conduct business in the State of New York with offices located at 411 West Putnam Avenue, Suite 220, Greenwich, Connecticut 06830.

17. That at all times hereinafter mentioned defendant Harry R. Thomasson, Esq. ("Thomasson") is an attorney at law admitted to practice in the State of New York with an office located at 3280 Sunrise Highway, Wantagh, New York 11793.

FACTS COMMON TO ALL CAUSES OF ACTION

OWNERSHIP AND CONTROL OF NORTHSHORE AND SUNRISE

18. At all times hereinafter mentioned, Chabrier was and still is the actual owner and holder of a one-third (1/3) membership interest in Northshore.

19. Upon information and belief, at all times hereinafter mentioned, David Baron was the actual owner and holder of a one-third (1/3) membership interest in Northshore.

20. Upon information and belief, David Baron died in 2021, and his estate is now the actual owner and holder of a one-third (1/3) membership interest in Northshore.

21. Upon information and belief, at all times hereinafter mentioned, Asad Khan was and still is the actual owner and holder of a one-third (1/3) membership interest in Northshore.

22. The operating agreement for Northshore (the "Northshore Operating Agreement") provides that Northshore shall be managed by its members.

23. Article V (A) of the Northshore Operating Agreement provides that decisions must be approved by a majority in interest of the members.

24. Article IX (A) of the Northshore Operating Agreement prohibits transfers or assignments of membership interests without the unanimous consent of all members.

25. Article IX (A) of the Northshore Operating Agreement further provides that any transfer or assignment without unanimous consent of all members confers no membership interest in the transferee nor the right to participate in management, only entitling the transferee to share in the profits and losses.

26. Upon information and belief, at all times hereinafter mentioned, Aaronson was and still is the actual owner and holder of a twenty-five (25%) percent membership interest in Sunrise.

27. At all times hereinafter mentioned, David Baron was the actual owner and holder of a twenty (20%) percent membership interest in Sunrise.

28. David Baron died in 2021 and his estate is now the actual owner and holder of a twenty (20%) percent) membership interest in Sunrise.

29. At all times hereinafter mentioned, J. Baron was and still is the actual owner and holder of a twenty (20%) percent membership interest in Sunrise.

30. At all times hereinafter mentioned, Raymond Phelan was and still is the actual owner and holder of a twenty (20%) percent membership interest in Sunrise.

31. At all times hereinafter mentioned, Chabrier was and still is the actual owner and holder of a twenty (20%) percent membership interest in Sunrise.

32. The operating agreement for Sunrise (the “Sunrise Operating Agreement”) provides that Northshore shall be managed by its members.

33. Article V (A) of the Sunrise Operating Agreement provides that decisions must be approved by a majority in interest of the members.

34. Article IX (A) of the Sunrise Operating Agreement prohibits transfers or assignments of membership interests without the unanimous consent of all members.

35. Article IX (A) of the Sunrise Operating Agreement further provides that any transfer or assignment without unanimous consent of all members confers no membership interest in the transferee nor the right to participate in management, only entitling the transferee to share in the profits and losses.

DEO JEOPARDIZES THE DEALERSHIPS AND LICENSEES

36. Northshore operates a retail used car dealership from its lot located at 180 Michael Drive, Syosset, New York 11791.

37. Sunrise operates a retail used car dealership from its lot located at 189 Sunrise Highway, Amityville, New York 11701.

38. A used car dealership in the state of New York requires a license (the "License") issued by the New York State Department of Motor Vehicles ("DMV").

39. The application for the License requires an individual applicant who remains responsible as the licensee for the dealership's compliance.

40. Chabrier holds the License as applicant for Northshore.

41. Aaronson and J. Baron hold the License as applicant for Sunrise.

42. That at all times hereinafter mentioned defendant Deo was employed by Northshore as its general manager.

43. That at all times hereinafter mentioned defendant Deo was employed by Sunrise as its general manager.

44. As their employee and general manager, Deo is to act in the best interests of the Dealerships and their members.

45. Deo has taken numerous actions for his own benefit causing damage to the Dealerships and the Plaintiffs.

46. The Dealerships maintain a floor plan credit line with Ally Bank used to purchase inventory (the "Floor Plan").

47. Ally Bank maintains a lien on all vehicles purchased using the floor plan.

48. When the vehicles are sold, Ally Bank must be repaid the amount borrowed to purchase that vehicle in order to release the lien or security interest on the vehicle.

49. The floor plan is guaranteed by Island Auto Group.

50. IAG is a group of franchised new car dealerships in New York and New Jersey in which David Baron had certain direct or family ownership.

51. Chabrier is also affiliated and with IAG.

52. Aaronson is also affiliated and with IAG.

53. J. Baron is also affiliated with IAG.

54. IAG only agreed to guarantee the floor plan because of the interrelationship between the Dealerships, David Baron, Chabrier, Aaronson and J. Baron.

55. Deo, on behalf of the Dealerships, purchased many vehicles using the floor plan which vehicles he sold below their purchase price, causing the Dealerships to sustain significant damages.

56. Selling vehicles below their purchase price created a deficiency in the available proceeds to pay off the Ally Bank lien for that vehicle.

57. The Dealerships had insufficient funds to satisfy the deficiencies to Ally Bank resulting from selling vehicles below the purchase price.

58. As guarantor, IAG has had to pay Ally Bank over $3,000,000.00 to satisfy the Dealerships' floor plan deficiency.

59. A recent inspection by Plaintiffs as well as a recent audit by Ally Bank of the floor planned vehicles revealed that several vehicles could not be located.

60. That audit also revealed that several vehicles were damaged.

61. The Dealerships accepted customer trade-ins of vehicles to be used toward their purchase ("Trade-ins").

62. Trade-ins with existing loan or lease balances were required to be satisfied by Northshore.

63. Deo failed to have the Dealerships pay off the existing loan or lease balances on numerous Trade-ins.

64. The prior owners of these vehicles remained liable to make payments on the debt despite no longer having ownership or control or the vehicle.

65. The Dealerships' failure to pay off the loans on trade-ins has potential criminal liability, civil liability and loss of the DMV Licenses.

66. It may also affect the ability of the licensees, Chabrier, Aaronson and J. Baron, to obtain a DMV License for any other dealership facility.

67. In order to avert the consequences of Deo's failure to pay off the loans on trade-ins, IAG satisfied $191,400.54 of the obligations and is following with paying another $130, 226.38.

68. The Dealerships arranged financing for its customers through contracted lenders.

69. The Dealerships have written agreements with these lenders that require the Dealerships to ensure that the title to any vehicles they finance has a lien placed thereon to protect the lender in the event of a default by the consumer.

70. These agreements also require the Dealerships to repurchase any loan made by the lender to a consumer if the Dealerships do not follow their contractual requirements when arranging the loan, such as the failure to place a lien on the title.

71. Deo failed to have the Dealerships perfect liens on behalf of the various lenders upon the sale and financing of numerous vehicles sold by the Dealerships.

72. As a result of Deo's actions, in clear violation of lender agreements, those lenders demanded repurchase of those loans.

73. In order to protect David Baron's, Chabrier's, Aaronson's and J. Baron's investment in the Dealerships and their goodwill with these lenders, with which they have other agreements through IAG, IAG has or will have to pay over $850,000.00 if Deo does not do so.

74. The Dealerships sell, on behalf of third party warranty providers, extended warranties to consumers.

75. Under Deo's direction, the Dealerships have issued warranties to consumers and collected the fees but have not paid over $100,000.00 due to the warranty companies, which will result in the voiding of the warranty for which consumers have paid.

76. Deo did not direct the Dealerships to pay over $58,000.00 in bills to vendors.

77. Deo has not completed the documentation necessary to complete registrations for out of state customers and he cannot account for numerous missing titles on vehicles.

78. The DMV License authorizes the Dealerships to have "dealer" license plates as well as to issue New York State license plates on purchased vehicles.

79. These plates are carefully unaccounted for, and for which the License holder is held accountable for their protection and proper issuance.

80. Despite due demand, Deo has refused to account for the dealer" license plates as well as a number of unissued New York State license plates which would ultimately be used for customers.

81. Upon information and belief, Deo has family and friends continue to use the dealer plates.

DEO TAKES AND USES DEALERSHIP ASSETS FOR HIS OWN PURPOSES

82. Deo has been treating the Dealerships and their assets as his own.

83. Deo has personally taken over $230,000.00 in customers' cash deposits, rather than deposit the money in Northshore's account.

84. Despite Deo having no signatory authority on Northshore's bank accounts, he has been issuing and signing checks from its accounts to pay for his personal expenses, among other things.

85. Deo had issued a $60,000.00 check from Northshore to Car Buyers NYC, Inc., a corporation formed and owned by Deo.

86. Deo uses an American Express card issued in the name of Sunrise, which he obtained without authority or approval, to pay for personal expenses.

87. Deo did not terminate $303,043.12 of lender financing for consumers who canceled their purchases.

88. Upon information and belief, Deo personally took those loan proceeds.

89. Deo's son continues to drive, for his personal use, a luxury vehicle, specifically a Maserati, valued at almost $80,000 and paid for by IAG.

DEO CLAIMS FULL OWNERSHIP OF THE DEALERSHIPS

90. Deo, claiming fifty (50%) ownership in Northshore since February 14, 2018, applied through the Small Business Association for a COVID-19 Economic Injury Disaster Loan (EIDL) in the amount of $196,425.00 almost immediately after the death of David Baron.

91. This ownership representation to the SBA was not true.

92. Deo made this application without the knowledge or approval of Northshore's members.

93. Deo, claiming one hundred (100%) ownership in Sunrise since January 1, 2021, applied through the Small Business Association for a COVID-19 Economic Injury Disaster Loan (EIDL).

94. This ownership representation to the SBA was not true.

95. Deo made this application without the knowledge or approval of Northshore's members.

96. Plaintiffs are unable to locate the proceeds of either loan.

97. If these loans were funded, upon information believed, Deo personally took these funds.

98. Deo, claiming to be the sole owner of the Dealerships, arranged to sell the future receipts of Northshore to defendant Libertas for $735,000.

99. Deo did so for the purpose of personally taking those sale proceeds.

100. This ownership representation to the Libertas was not true.

101. Deo made this sale without the knowledge or approval of Northshore's members.

102. Unable to withdraw that money from a Northshore bank account, Deo arranged for the Libertas sale proceeds to be deposited into the account of Sunrise, in which he did have check signing authority.

103. When challenged by Plaintiffs as to his actions, Deo claimed that he was the 100% owner of the Dealerships.

Case 2:23-cv-06188-JMW Document 543-14 Filed 09/04/26 Page 14 of 29 PageID #: 21057

104. Plaintiffs arranged to keep Deo from absconding with those funds.

105. In order to avoid Deo's involvement of the police, claiming this was a criminal matter, plaintiffs agreed for the $735,000.00 to be deposited into Thomasson's, Deo's attorney, trust account.

106. Upon information and belief, Thomasson is still holding these funds, but there is concern that he may release these funds to Deo.

107. Upon information and belief, Libertas is seeking to collect Northshore's future receipts.

FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF CHABRIER
AND OTHER MEMBERS OF NORTHSHORE SIMILARLY SITUATED

108. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

109. The Estate of David Baron, Chabrier and Khan constitute all the members of Northshore.

110. Deo claims sole ownership of Northshore.

111. Determination of the ownership of Northshore is necessary to resolve the rights and obligations of each of the parties to each other and to Northshore.

112. There exists a justiciable controversy which is ripe for judgment.

113. Plaintiff Chabrier, on behalf of himself and other members of Northshore similarly situated, seeks declaratory judgment declaring that they are the sole members of Northshore.

114. Plaintiff Chabrier, on behalf of himself and other members of Northshore similarly situated, has no adequate remedy at law.



FLUSHING03779

Case 2:23-cv-06188-JMW Document 543-14 Filed 09/04/26 Page 15 of 29 PageID #: 21058

SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFF AARONSON
AND OTHER MEMBERS OF SUNRISE SIMILARLY SITUATED

115. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

116. The Estate of David Baron, Aaronson, J. Baron and Raymond Phelan constitute all the members of Sunrise.

117. Deo claims sole ownership of Sunrise.

118. Determination of the ownership of Sunrise is necessary to resolve the rights and obligations of each of the parties to each other and to Sunrise.

119. There exists a justiciable controversy which is ripe for judgment.

120. Plaintiff Aaronson, on behalf of himself and other members of Sunrise similarly situated, seeks declaratory judgment declaring that they are the sole members of Sunrise.

121. Plaintiff Aaronson, on behalf of himself and other members of Sunrise similarly situated, has no adequate remedy at law.

THIRD CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF NORTHSHORE AGAINST DEO

122. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

123. Defendant Deo has exercised dominion or a right of ownership over the assets of Northshore without authorization and refused their return to Northshore, which has superior rights to the assets, despite due demand.

124. Defendant Deo has converted the assets for their own use.

125. By reason of the foregoing, Plaintiff Northshore demands judgment against defendant Deo for a sum of $10,000,000.00.



FLUSHING03780

FOURTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF NORTHSHORE AGAINST DEO

126. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

127. Defendant Deo's retention of the assets of Northshore has caused him to be enriched at Northshore's expense.

128. The circumstances of Deo's enrichment are such that equity and good conscience requires Deo to make restitution.

129. By reason of the foregoing, Plaintiff Northshore demands judgment against defendants Deo for a sum of $10,000,000.00.

FIFTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF NORTHSHORE AGAINST DEO

130. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

131. As an employee of Northshore Deo owed a duty of loyalty and good faith to Northshore.

132. Deo has breached such duties.

133. By virtue of the foregoing, Northshore has been damaged in the amount of $10,000,000.00.

SIXTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF NORTHSHORE AGAINST DEO

134. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

135. As an employee of Northshore Deo had a fiduciary duty to act in the best interest of Northshore.

136. Deo has breached such duties.

137. By virtue of the foregoing, Northshore has been damaged in the amount of $10,000,000.00.

SEVENTH CAUSE OF ACTION AGAINST DEO DERIVATIVELY AND DIRECTLY BY CHABRIER AND THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED

138. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

139. Defendant Deo has misrepresented his ownership of Northshore for the purpose of defrauding Chabrier and the other members of Northshore as well as those conducting business with Northshore.

140. Deo has been guilty of illegal, fraudulent actions towards the members, the property and assets of Northshore are being looted, wasted, or diverted for Deo's personal purposes, thereby enriching himself at the expense of the Northshore.

141. Deo has used the License issued to Chabrier to continue to operate Northshore in a manner to perpetuate his wrongful activities.

142. Deo actions jeopardize the License issued to Chabrier and put him at risk of criminal and civil liability.

143. The actions of Deo have harmed and will continue harm Chabrier, the other members of Northshore and Northshore.

144. Plaintiffs have no adequate remedy at law.

145. Plaintiffs seek a permanent injunction restraining the Deo from participating in the operation of Northshore.

EIGHTH CAUSE OF ACTION DERIVATIVELY ON BEHALF OF SUNRISE AGAINST DEO

141. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

142. Defendant Deo has exercised dominion or a right of ownership over the assets of Sunrise, which has superior rights to the assets, without authorization and refused their return to Sunrise despite due demand.

143. Defendant Deo has converted the assets for their own use.

144. By reason of the foregoing, Plaintiff Sunrise demands judgment against defendant Deo for a sum of $10,000,000.00.

NINTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF SUNRISE AGAINST DEO

145. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

146. Defendant Deo's retention of the assets of Sunrise has caused him to be enriched at Sunrise's expense.

147. The circumstances of Deo's enrichment are such that equity and good conscience requires Deo to make restitution.

148. By reason of the foregoing, Plaintiff Sunrise demands judgment against defendants Deo for a sum of $10,000,000.00.

TENTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF SUNRISE AGAINST DEO

149. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

150. As an employee of Sunrise Deo owed a duty of loyalty and good faith to Sunrise.

151. Deo has breached such duties.

152. By virtue of the foregoing, Sunrise has been damaged in the amount of $10,000,000.00.

ELEVENTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF SUNRISE AGAINST DEO

153. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

154. As an employee of Sunrise Deo had a fiduciary duty to act in the best interest of Sunrise.

155. Deo has breached such duties.

156. By virtue of the foregoing, Sunrise has been damaged in the amount of $10,000,000.00.

TWELFTH CAUSE OF ACTION AGAINST DEO DERIVATIVELY AND DIRECTLY BY AARONSON, J. BARON, AND THOSE MEMBERS OF SUNRISE SIMILARLY SITUATED

157. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

158. Defendant Deo has misrepresented his ownership of Sunrise for the purpose of defrauding Aaronson and the other members of Sunrise as well as those conducting business with Sunrise.

159. Deo has been guilty of illegal, fraudulent actions towards the members, the property and assets of Sunrise are being looted, wasted, or diverted for Deo's personal purposes, thereby enriching himself at the expense of the Sunrise.

160. Deo has used the License issued to Aaronson and J. Baron to continue to operate Sunrise in a manner to perpetuate his wrongful activities.

161. Deo's actions jeopardize the License issued to Aaronson and J. Baron and put him at risk of criminal and civil liability.

162. The actions of Deo have harmed and will continue harm Aaronson and J. Baron, and the other members of Sunrise and Sunrise.

163. Plaintiffs have no adequate remedy at law.

164. Plaintiffs seek a permanent injunction restraining the Deo from participating in the operation of Sunrise.

THIRTEENTH CAUSE OF ACTION AGAINST THOMASSON DERIVATIVELY AND DIRECTLY BY CHABRIER AND THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED

165. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

166. Deo obtained the $735,000.00 proceeds from the sale of Northshore's future receipts (the "Libertas Funds") by fraudulently representing to Libertas that he owns 100% of Northshore.

167. Deo sold Northshore's future receipts without authority.

168. Deo sold Northshore's future receipts with the intention to personally take the Libertas Funds.

169. Deo is not entitled to the Libertas Funds.

170. Upon information and belief, Thomasson is holding the Libertas Funds in his trust account.

171. Plaintiffs seek a judgment permanently enjoining Thomasson from distributing the Libertas Funds to Deo directly or to any person or entity over which Deo has ownership or control.

FOURTEENTH CAUSE OF ACTION AGAINST LIBERTAS
DERIVATIVELY AND DIRECTLY BY CHABRIER AND
THOSE MEMBERS OF NORTHSHORE SIMILARLY SITUATED

172. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

173. Libertas claims ownership over Northshore's future receipts.

174. Libertas ownership over Northshore's future receipts is not legitimate.

175. Plaintiffs seek a judgment permanently enjoining Libertas from exercising any rights over Northshore's future receipts.

FIFTEENTH CAUSE OF ACTION BY IAG AGAINST NORTHSHORE

176. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

177. The IAG has paid for Northshore's obligations as follows, which may include:

a. 1581 Hylan Blvd Auto LLC: $74,000.00
b. 1580 Hylan Blvd Auto LLC: $53,800.00
c. 1591 Hylan Blvd Auto LLC: $104,809.88

d. 1632 Hylan Blvd Auto LLC: $108,000.00

e. 1239 Hylan Blvd Auto LLC: $2,322,576.00

f. 2519 Hylan Blvd Auto LLC: $385,597.10

g. 76 Fisk Street Realty LLC: $683,316.95

h. 446 Route 23 Auto LLC: $8,918.58

i. Island Auto Management, LLC: $65,606.43

j. The Maserati automobile paid for by IAG for over $80,000.00.

178. Should the Court find that ownership of Northshore rests with Deo, then Northshore will have been enriched at IAG's expense for all of Northshore's obligations paid for by IAG.

179. The circumstances of Northshore's enrichment are such that equity and good conscience requires Northshore to make restitution.

180. By reason of the foregoing, IAG demands judgment against Northshore as follows:

a. 1581 Hylan Blvd Auto LLC: $74,000.00

b. 1580 Hylan Blvd Auto LLC: $53,800.00

c. 1591 Hylan Blvd Auto LLC: $104,809.88

d. 1632 Hylan Blvd Auto LLC: $108,000.00

e. 1239 Hylan Blvd Auto LLC: $2,322,576.00

f. 2519 Hylan Blvd Auto LLC: $385,597.10

g. 76 Fisk Street Realty LLC: $683,316.95

h. 446 Route 23 Auto LLC: $8,918.58

i. Island Auto Management, LLC: $65,606.43

j. $80,000.00 for the Maserati automobile paid for by IAG.

SIXTEENTH CAUSE OF ACTION BY IAG AGAINST DEO

181. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

182. Should it be found that Deo has legitimate ownership of Northshore, then the following concerning Deo and Northshore are alleged.

183. Deo failed to adequately capitalize Northshore.

184. Deo intermingled his personal assets with Northshore.

185. Deo personally used Northshore's assets for his personal use, using the company accounts as his personal piggy bank.

186. Deo, through his domination and control over Northshore, abused the privilege of doing business in the limited liability form to perpetrate a wrong or injustice such that a Court in equity will intervene by his actions in using Northshore for his own personal purposes.

187. IAG seeks to pierce the veil of Northshore and enter judgment against Deo for Northshore's obligations to IAG.

<u>SEVENTEENTH CAUSE OF ACTION BY IAG AGAINST SUNRISE</u>

188. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

189. The IAG has paid for Sunrise's obligations as follows, which may include:

190. The IAG has paid for Northshore's obligations as follows, which may include:

a. 1581 Hylan Blvd Auto LLC: $74,000.00

b. 1580 Hylan Blvd Auto LLC: $53,800.00

c. 1591 Hylan Blvd Auto LLC: $104,809.88

d. 1632 Hylan Blvd Auto LLC: $108,000.00

e. 1239 Hylan Blvd Auto LLC: $2,322,576.00

f. 2519 Hylan Blvd Auto LLC: $385,597.10

g. 76 Fisk Street Realty LLC: $683,316.95

h. 446 Route 23 Auto LLC: $8,918.58

i. Island Auto Management, LLC: $65,606.43

191. Should the Court find that ownership of Sunrise rests with Deo, then Northshore will have been enriched at IAG's expense for all of Sunrise's obligations paid for by IAG.

192. The circumstances of Sunrise's enrichment are such that equity and good conscience requires Sunrise to make restitution.

193. By reason of the foregoing, IAG demands judgment against Sunrise as follows:

194. The IAG has paid for Northshore's obligations as follows, which may include:

| | | |
|---|---|---|
| a. | 1581 Hylan Blvd Auto LLC: | $74,000.00 |
| b. | 1580 Hylan Blvd Auto LLC: | $53,800.00 |
| c. | 1591 Hylan Blvd Auto LLC: | $104,809.88 |
| d. | 1632 Hylan Blvd Auto LLC: | $108,000.00 |
| e. | 1239 Hylan Blvd Auto LLC: | $2,322,576.00 |
| f. | 2519 Hylan Blvd Auto LLC: | $385,597.10 |
| g. | 76 Fisk Street Realty LLC: | $683,316.95 |
| h. | 446 Route 23 Auto LLC: | $8,918.58 |
| i. | Island Auto Management, LLC: | $65,606.43 |

EIGHTEENTH CAUSE OF ACTION BY IAG AGAINST DEO

195. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

196. Should it be found that Deo has legitimate ownership of Sunrise, then the following concerning Deo and Northshore are alleged.

197. Deo failed to adequately capitalize Sunrise.

198. Deo intermingled his personal assets with Sunrise.

199. Deo personally used Sunrise's assets for his personal use.

200. Deo, through his domination and control over Sunrise, abused the privilege of doing business in the limited liability form to perpetrate a wrong or injustice such that a Court in equity will intervene by his actions in using Sunrise for his own personal purposes.

201. IAG seeks to pierce the veil of Sunrise and enter judgment against Deo for Sunrise's obligations to IAG.

NINETEENTH CAUSE OF ACTION DERIVATIVELY
ON BEHALF OF NORTHSHORE AGAINST DEO

202. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

203. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

204. Deo's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

205. Many of Deo's practices described throughout this Complaint, were specifically directed to consumers.

206. The practices employed by Deo, accepting Trade-ins whereby Deo represented, and was required, to satisfy the consumer's existing loan, but he did not, are deceptive, and misleading and are in violation of NY GBL § 349.

207. Deo's deceptive practices were knowing and willful.

208. Deo's actions impact the public interest because this deception is directed to the purchasing consumer.

209. The foregoing deceptive acts and practices proximately caused actual damages.

210. Plaintiffs are entitled to recover compensatory damages, statutory damages, attorneys' fees and costs, and any other relief the Court deems appropriate.

211. Deo should be enjoined from engaging in any further consumer transactions. Plaintiffs respectfully demand a judgment enjoining Deo's conduct, awarding costs of this

proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

TWENTIETH CAUSE OF ACTION FOR AN ACCOUNTING

212. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

213. Deo has been guilty of illegal and fraudulent actions towards the members, the property and assets of Northshore are being looted, wasted, or diverted for Deo's personal purposes, thereby enriching himself at the expense of the Northshore.

214. Plaintiffs have no adequate remedy at law.

215. Plaintiffs seek an accounting.

TWENTY-FIRST CAUSE OF ACTION FOR AN ACCOUNTING

216. Plaintiffs repeat, reiterate and reallege each and every allegation contained in the preceding paragraphs as though fully set forth herein.

217. Deo has been guilty of illegal and fraudulent actions towards the members, the property and assets of Sunrise are being looted, wasted, or diverted for Deo's personal purposes, thereby enriching himself at the expense of the Northshore.

218. Plaintiffs have no adequate remedy at law.

219. Plaintiffs seek an accounting.

WHEREFORE, judgment is demanded against defendants as follows:

1. On the First Cause of Action for declaratory judgment that Deo has no ownership rights in Northshore.

2. On the Second Cause of Action for declaratory judgment that Deo has no ownership rights in Sunrise.

3. On the Third Cause of Action in the amount of $10,000,000.00.

4. On the Fourth Cause of Action in the amount of $10,000,000.00.

5. On the Fifth Cause of Action in the amount of $10,000,000.00.

6. On the Sixth Cause of Action in the amount of $10,000,000.00.

7. On the Seventh Cause of Action, permanently enjoining Deo from participating in the operations of Northshore.

8. On the Eighth Cause of Action in the amount of $10,000,000.00.

9. On the Ninth Cause of Action in the amount of $10,000,000.00.

10. On the Tenth Cause of Action in the amount of $10,000,000.00.

11. On the Eleventh Cause of Action in the amount of $10,000,000.00.

12. On the Twelfth Cause of Action, permanently enjoining Deo from participating in the operations of Sunrise.

13. On the Thirteenth Cause of Action, permanently enjoining Thomasson from distributing the Libertas Funds to Deo directly or to any person or entity over which Deo has ownership or control.

14. On the Fourteenth Cause of Action, permanently enjoining Libertas from exercising any rights over Northshore's future receipts.

15. On the Fifteenth Cause of Action, as follows:

| | | |
|---|---|---|
| k. | 1581 Hylan Blvd Auto LLC: | $74,000.00 |
| l. | 1580 Hylan Blvd Auto LLC: | $53,800.00 |
| m. | 1591 Hylan Blvd Auto LLC: | $104,809.88 |
| n. | 1632 Hylan Blvd Auto LLC: | $108,000.00 |
| o. | 1239 Hylan Blvd Auto LLC: | $2,322,576.00 |

p. 2519 Hylan Blvd Auto LLC: $385,597.10

q. 76 Fisk Street Realty LLC: $683,316.95

r. 446 Route 23 Auto LLC: $8,918.58

s. Island Auto Management, LLC: $65,606.43

t. $80,000.00 for the Maserati automobile paid for by IAG.

16. On the Sixteenth Cause of Action, piercing the veil of Northshore and entering judgment against Deo for Northshore's obligations to IAG.

17. On the Seventeenth Cause of Action, as follows:

a. 1581 Hylan Blvd Auto LLC: $74,000.00

b. 1580 Hylan Blvd Auto LLC: $53,800.00

c. 1591 Hylan Blvd Auto LLC: $104,809.88

d. 1632 Hylan Blvd Auto LLC: $108,000.00

e. 1239 Hylan Blvd Auto LLC: $2,322,576.00

f. 2519 Hylan Blvd Auto LLC: $385,597.10

g. 76 Fisk Street Realty LLC: $683,316.95

h. 446 Route 23 Auto LLC: $8,918.58

i. Island Auto Management, LLC: $65,606.43

j. $80,000.00 for the Maserati automobile paid for by IAG.

18. On the Eighteenth Cause of Action, piercing the veil of Northshore and entering judgment against Deo for Northshore's obligations to IAG.

19. On the Nineteenth Cause of Action permanently enjoining Deo from engaging in any consumer transactions, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349.

20. On the Twentieth Cause of Action for an accounting.

21. On the Twenty-First Cause of Action for an accounting.

And for costs and fees and such other and further relief as this Court my deem just and proper.

Dated: New York, New York
December 6, 2022

Cyruli Shanks & Zizmor LLP

By: ______________________
Russell Shanks
Attorneys for Plaintiffs
420 Lexington Ave-Ste 2320
New York, New York 10170
(212) 661-6800

VERIFICATION

STATE OF NEW YORK )
) ss.:
COUNTY OF NEW YORK )

I, the undersigned, am an attorney admitted to practice in the Courts of New York and a member of the firm of Cyruli Shanks & Zizmor, LLP., attorneys for PLAINTIFFS herein. I have read the foregoing COMPLAINT, the same is true to my knowledge, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief as to those matters therein stated upon knowledge is based upon the following: conversations with PLAINTIFFS and books and records in my possession.

The reason I make this affirmation instead of PLAINTIFFS is that PLAINTIFFS are located in a County other than that of the undersigned's office; pursuant to CPLR 3020(d)(3).

Dated: New York, New York
December 6, 2022

Russell Shanks