AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Superb Motors Inc, et al. *Plaintiff* v. Anthony Deo, et al. *Defendant* | ) ) ) ) ) ) | Civil Action No. 2:23-cv-6188 (JMW) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Meadowbrook Financial Mortgage Bankers Corp.
1600 Stewart Ave # 701, Westbury, NY 11590

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: all loan or mortgage applications by Anthony Deo and/or Sara Deo, and all communications between or among Anthony Deo, Sara Deo, DLA Capital Partners Inc, Michael Laurie, and any internal correspondence of Meadowbrook Financial Mortgage Bankers Corp.

| Place: Sage Legal LLC, Attn: Emanuel Kataev, Esq. 18211 Jamaica Avenue, Jamaica, NY 11423-2327 | Date and Time: 4/30/2026 10:00 AM |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 4/13/2026

*CLERK OF COURT*

OR

_________________________
*Signature of Clerk or Deputy Clerk*

/s/ Emanuel Kataev, Esq.
*Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Superb Motors Inc, Team Auto Sales LLC, and Robert Anthony Urrutia, who issues or requests this subpoena, are:

Emanuel Kataev, Esq., 18211 Jamaica Avenue, Jamaica, NY 11423-2327, (718) 412-2421, emanuel@sagelegal.nyc

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:23-cv-6188 (JMW)

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________________
on *(date)* ____________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ____________________
__________________________________________________________________________
______________________________________ on *(date)* ____________ ; or

❒ I returned the subpoena unexecuted because: ______________________________________
__________________________________________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ____________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: ____________ ______________________________________
*Server's signature*

______________________________________
*Printed name and title*

______________________________________
*Server's address*

Additional information regarding attempted service, etc.:

Print | Save As... | Add Attachment | Reset

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD

MEADOWBROOK
FINANCIAL MORTGAGE BANKERS CORP.
We are a Direct Lender!

Date: 8/1/2023

## Conventional Mortgage Commitment

**Loan #:** 11022307072502

**Borrower(s)**
Anthony D Deo

**Subject Property**
3 Hunting Ln
Old Westbury NY, 11568

Meadowbrook Financial Mortgage Bankers Corp ("we", "us", or "our") is pleased to inform you that your application for mortgage financing to be secured by the real estate as referenced above, has been approved subject to the terms and conditions as set forth in this commitment. Issuance of this commitment assumes that the information you have provided to us is accurate, and there will be no change in your financial position or credit standing which, in our judgment, affects your ability to repay the mortgage indebtedness. This loan commitment is subject to the property and all borrowers passing all applicable state and federal regulatory testing.

**A. Loan Terms**

| | |
|---|---|
| • Principal Loan Amount: | $2,768,000.00 |
| • Loan Purpose: | Purchase |
| • Occupancy Type: | PrimaryResidence |
| • Loan Type/ Amortization Type: | Conventional Fixed |
| • Term (in months): | 360 months |
| • Interest Rate (%): | 10.250% |
| • Origination Points: | $N/A (N/A%) |
| • Origination Credit: | $N/A |
| • Discount Points: | $55360.00 (2.000%) |
| • Application Fee: | $N/A |
| • Processing Fee: | $945.00 |
| • Underwriting Fee: | $945.00 |
| • Commitment Fee | $N/A |
| • Principal & Interest: | $24,804.08 |
| • Monthly Est. Flood Insurance (if applicable): | $ |
| • Monthly Est. Hazard Insurance: | $400.00 |
| • Monthly Est. Real Estate Taxes: | $7,083.00 |
| • Monthly Est. Village Taxes: | $ |
| • Monthly Est. School Taxes: | $ |
| • Are Escrows Required? | TBD |
| • Monthly Mortgage Insurance (if applicable): | $ |
| • HOA Dues (if applicable): | $N/A |
| • Total Monthly Estimated Payment: | $32,287.08 |
| • Other Finances: | $N/A |
| • Is the loan Interest-only? | NO |
| • Interest-only Term (if applicable): | N/A months |
| • Does the loan have a Prepayment Penalty? | N |

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD



☐ **Interest Rate Guarantee Commitment**
The interest rate and points shown are valid until //. If the loan disburses after the Rate Expiration Date, the rate will be either the prevailing market interest rate in effect at time of expiration or the interest rate shown herein, whichever is higher.

☒ **Floating Interest Rate Commitment**
Your credit has been approved on the assumed interest rate shown above for the illustrative purposes only.

**You are not guaranteed that rate. The interest rate will be a rate established by the lender at its discretion. The rate will be set no less than three business days prior to scheduled settlement. You have the option of locking in your rate until three (3) days prior to settlement at which time execution of a new rate lock agreement will be provided. You have the right to demand that we re-disclose the rate and points once they are set.**

**Additional Information:**

| Monthly Payment | APR | Finance Charge |
|---|---|---|
| 24,804.08 | 10.585 | 6,236,695.42 |

**These figures are for illustrative purposes ONLY. They reflect the rate now in effect, NOT necessarily the rate you will pay at closing, which will be established as indicated in this commitment.*

**B.** Your estimated monthly principal and interest payment is **$24,804.08**. Your monthly payment will include an additional amount equal to at least 1/12th of your annual taxes and any required insurance unless otherwise specified herein. Your mortgage is a **Non-QM 30 Year Fixed**, amortized over **360** months. Refer to previously issued program disclosure(s), if applicable.
If the loan is an adjustable rate mortgage, your margin is % and your current index is %, which is based on . This index may be verified at www.bankrate.com or The Wall Street Journal.

**C.** **YOU MUST EXECUTE THIS COMMITMENT.** It is your responsibility to get this commitment to us properly executed. This commitment may be cancelled at our option if it is not returned to us signed and dated by you within seven days from the date of this letter (or date of its mailing, whichever is later). **The signed commitment must be received more than 3 days prior to the scheduling of your closing.**

**EXPIRATION DATE:** The expiration date of this commitment is 10/22/2023.
If your loan does not close and fund by this date, we have no obligation to honor the terms of this agreement.

**D.** **YOU MUST GET READY FOR SETTLEMENT.** You must be ready to close your loan on or before the expiration date of this commitment. Please read carefully the "Additional Conditions" of this commitment and begin satisfying all conditions as soon as possible. In addition, your settlement agent will receive the general closing instructions shortly after we receive your executed commitment. Please do not hesitate to contact us immediately if you or your settlement agent has any questions regarding the above.

1. **The Credit documents used to approve this loan will expire on 10/22/2023.** Your commitment will expire on this date. This means you must be sure your loan settles (or disburses for refinances) by that date. If it does not settle by that date, we have no further responsibility to lend you any money and need not refund you any fees you have paid.

2. This commitment may be extended only at our discretion or as required by law as set forth in the Interest Rate Lock Policy Agreement previously issued to you. Any request for an extension of or a change to this commitment must be made to us in writing; no extension or change is valid unless approved by us in writing.
3. We may update any credit or property information at any time prior to settlement. Furthermore, our procedures require your credit and /or property information be updated after 60 Days. Whenever we update we may delay your settlement. In addition, an update fee may be charged to you. If in our opinion you no longer qualify or are otherwise not an acceptable candidate, we may cancel this commitment.
4. Your maximum qualifying rate is 10.250_. If this interest rate is exceeded you may be subject to re-qualification.

**E. WE RESERVE THE RIGHT TO CANCEL THIS COMMITMENT FOR ANY OF THE FOLLOWING REASONS:**

- If there is any change in whom the borrower(s) is(are);
- If any statement which you have made to us in your application or otherwise is found to be false in any material way;
- If prior to settlement, your financial condition or employment status adversely changes from that presented in your application;
- If there is any change in the property or in our information about the property after the appraisal;
- If you fail to comply with any of the conditions contained in this commitment;
- If there is an interest rate increase which adversely affects your ability to qualify for the loan amount requested or, in our opinion, to afford monthly payments at the higher interest rate;

**F. HAZARD INSURANCE REQUIREMENTS - ALL LOANS**

At the closing you will be required to present either an original policy of fire and extended coverage or a binder, obtained at your own expense, on the property to be mortgaged duly endorsed to cover our interest as mortgagee and written in an amount which is the amount of the loan or the replacement costs of the property if less, by a Company acceptable to us. You will be required to maintain this coverage for the life of the loan. Failure to provide a policy or a binder along with a paid receipt for the first year's premium will result in an adjournment of the closing at the borrower's expense.

If the mortgage is for a condominium unit, or a Planned Unit Development (PUD), a certificate of insurance covering the entire condominium or PUD project must be produced at closing. Carriers that provide blanket policies must have, at least, an "A" general policyholder's rating and a "V" financial size category.

**You may secure insurance from a company or agent of your own choosing.**

*****Mortgagee Endorsement*****

**Meadowbrook Financial Mortgage Bankers Corp.**
**ITS SUCCESSORS &/OR ASSIGNS, AS THEIR INTEREST MAY APPEAR**
**1600 Stewart Ave. Suite 701**
**Westbury, NY 11590**

**G. FLOOD INSURANCE**

Flood insurance is required for any property located in a Special Flood Hazard Area that has federally mandated flood insurance purchase requirements. Flood Insurance should be in the form of the standard policy issued by members of the National Flood Insurers

MEADOWBROOK
FINANCIAL MORTGAGE BANKERS CORP.
We are a Direct Lender!

Association. The Declaration page of a National Flood Insurance Administration program policy, together with a paid receipt for the first year's premiums is acceptable evidence of flood insurance coverage. Other policies that meet the National Flood Insurance Administration's requirements will also be acceptable. Federal law requires that flood insurance be obtained in either the maximum amount available or the loan amount, whichever is less. Flood insurance may be obtained through any agent and must be maintained for the life of the loan.

H. ADDITIONAL CONDITIONS
The additional conditions of this commitment, as itemized on the following pages, are hereby incorporated by reference and shall govern the terms under which our commitment is issued. Unless otherwise stated below, conditions must be received in written form and found satisfactory by us and our investors prior to scheduling of closing.

**NOTE: All conditions must be submitted to us at least ten (10) days prior to the scheduling of the closing.**

I. *Additional Information: New Jersey properties ONLY*

***Your Rights Following Expiration:** **If your loan does not close before the expiration date of either the lock-in agreement or any commitment issued consistent therewith through no substantial fault of yours, you may (1) withdraw the application or reject or terminate any commitment (and the Lender shall promptly refund any lock-in or commitment fee you have paid, or (2) extend this Agreement for no more than 14 calendar days following the commitment expiration or, when no commitment has been issued, before the expiration of the lock-in. If you elect to extend this Agreement the Lender may elect either to keep the lock-in or commitment fee and close the loan at or below the lock-in rate, or refund the lock-in or commitment fee and close the loan above the lock-in rate but no higher than that which would provide a current market yield but no gross profit or "spread" to the lender. "Substantial fault" means that you or your agent: (1) failed to provide in a timely manner information or documentation required by the Lender (2) provided or admitted any information, in the application or subsequently, which upon verification proves to be significantly inaccurate causing the need for review or further investigation by the Lender; (3) failed to produce on or before the date specified by the Lender all documentation specified in the commitment or closing instructions as being required for the closing; or (4) failed to be ready, willing and able to close the loan on or before the date specified by the Lender. Except as provided above, if your loan does not close by the expiration date, (1) the Lender will have no obligation to honor the terms of this Agreement; (2) any commitment fee or lock-in fee you have paid will be non-refundable and will be refunded only under the circumstances set forth in this Agreement; and (3) the Lender may charge you a higher interest rate, a higher origination fee and/or more points.***

J. ACCEPTANCE
By signing below, you accept all the terms and conditions contained in this commitment including all conditions contained in the following pages as referenced in section G above.

In accepting this commitment by signing below, you acknowledge that you have read this entire agreement, and fully understand it and that it may not be changed orally.

Please read all section of this commitment carefully. Your signature below indicates agreement in accordance with all terms and conditions as set forth in this commitment.

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD

MEADOWBROOK
FINANCIAL MORTGAGE BANKERS CORP.
We are a Direct Lender!

This commitment will not be in effect unless a signed copy of this document is received by us the lender within the expiration date of this commitment.

**IF YOU SIGN AND ACCEPT THIS COMMITMENT, AND YOU DO NOT CLOSE THIS LOAN IN ACCORDANCE WITH THE DESCRIBED TERMS YOU MAY LOSE SOME OR ALL OF THE FEES OR CHARGES YOU HAVE PAID.**

**BY:** **Meadowbrook Financial Mortgage Bankers Corp**

Meadowbrook Financial Mortgage Bankers Corp

By: Rosemary Messano
Rosemary Messano/Underwriter

ACCEPTANCE

Dated: 8/1/2023 DocuSigned by: anthony deo A73C052E19324AA Borrower

Dated: ______________ ______________________________ Borrower



1600 Stewart Ave, Suite 701, Westbury, NY 11590 • 516.867.3020
www.mfmbankers.com
NMLS ID 177308—Visit our website for our complete list of state licensing

MEADOWBROOK
FINANCIAL MORTGAGE BANKERS CORP.
We are a Direct Lender!

*File #: 11022307072502*

# Detailed List Of Open Conditions

## Prior to Closing Conditions

### Borrower to Provide:

1. Processor to provide 411 Search on Employment address. -
2. CPA Letter - CPA Letter for self-employed borrower(s) required. Letter must verify Business is in operation for a minimum of 2 Years, Name of Business, and 100% ownership.
3. Borrower is requirex to provide a business narrative that describes the type of business and number of employees. -
4. CPA to confirm use of business funds will not adversely affect the business. -
5. Profit and Loss - Provide copy of signed year to date Profit and Loss Statement done by third party . Must be signed by Borrower.
6. Cancelled Downpayment Check $173,000 - Cancelled Downpayment check and two months bank statements sourcing for 60 days and showing funds clearing borrowers account. Please provide all pages and Source all large deposits.
7. COntract of sale is missing Borrower current address, Rider is not dated -
8. Verification of Rent - Provide Verification of Rent confirming $ a month in rent and a satisfactory payment history of 0x30 for the past 12 months.
9. Commitment letter - Borrower to sign and return conditional commitment letter
10. Consumer Explanation Letter - Borrower(s) to fully complete, sign and return Consumer Explanation letter found at the end of the credit report.
11. Home Owner's Dec Page / Paid Receipt - Hazard Insurance certified to Meadowbrook Financial Mortgage Bankers Corp. ISAOA/ATIMA, 1600 Stewart Avenue, Suite 701, Westbury, NY 11590. Must also provide paid receipt showing premium is paid in full
12. AMEX omitted - Provide copy of most recent bank statement(s)verifying sufficient liquid funds in an amount exceeding balance of AMEX account being omitted.

### Lender to obtain:

1. Business license search - Business license search to be performed by processor.
2. Appraisal Review- CDA required on all loans - Clear Capital CDA required on all loans
3. Reserves -12 months reserves -
4. Second Appraisal report - Complete second appraisal report required supporting value. This is required do to the resale of the property by the seller within 180 days of acquisition
5. Verification of Deposit - Fully executed Written Verification of Deposit form completed by a bank representative is required.
6. Appraisal Acknowledgment Form - Borrower to complete, sign and return Appraisal Acknowledgment form at least 3 days prior to closing.
7. Appraisal Invoice and HVCC (AIR) Certification required -
8. Appraisal report - Lender to obtain satisfactory appraisal report supporting value of $ 3,460,000 . Appraiser to provide copy of E&O and current license
9. Appraisal sent e-mail - Processor to provide copy of email confirming appraisal report has been sent to the borrower.
10. Appraisal UCDP / SSR - Appraisal to be submitted through UCDP (Uniform Collateral Data Portal). Any warnings with a score of 4 or more must be sent to appraiser to address and/or correct prior to closing.
11. Clear DataVerify service & Mavent Compliance Report at CTC - The DataVerify service must be re-run prior to the Underwriting Clear-to-Close.
12. Disclosure Review - the disclosures and general compliance must be reviewed by Disclosure department prior to closing.
13. QC Review - - Loan may be subject to pre-closing quality control review and may delay the scheduling of your loan closing.
14. Processor to obtain all internal items - Final MERS, Flood certification, Written and Verbal verifications, 411 Reverse Searches, Transcripts, etc)
15. Legal Department to Clear Title report. Fully completed Title review sheet required. -
16. Processing Checklist to be completed - Prior to Clear to Close
17. Rate lock required - lender to obtain -
18. Settlement Agent - Provide documentation showing that settlement agent has been approved / vetted through Secure Insigh
19. UDN / Soft Credit -
20. Management review prior to closing due to loan amount . -

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD

MEADOWBROOK
FINANCIAL MORTGAGE BANKERS CORP.
We are a Direct Lender!

**At Closing Conditions**

1. AC-Cash From Borrower Limit - Cash from borrower on CD not to exceed $TBD. If cash from borrower exceeds this amount - assets must be sourced. File must go back to Underwriter.
2. AC-Copy of Check for funds brought to closing - and borrowers bank statement showing tose funds coming out of their account.
3. AC-Expiration Dates - Credit:10/22/2023 Appraisal: Income: Assets:
4.
5. AC-Final 1003 (Borrower) - Borrower to sign and date final loan application (1003)
6. AC-No Seller Credit -
7. AC-No subordinate financing allowed -
8. AC-Max PITI $32,290 -
9. AC--UDN & Verbal verification expires on: -


NEW YORK STATE USA
DRIVER LICENSE
NOT FOR FEDERAL PURPOSES
Commissioner of Motor Vehicles
ID [redacted]
Class D
DEO
ANTHONY,D
3 SADDLE RIDGE RD
OLD WESTBURY, NY 11568
Sex M Height 6'-00" Eyes BRO
DOB [redacted]
Expires 03/06/2025
E NONE
R NONE
Issued 01/17/2021
MAR 77
EXCELSIOR

xactus

31550 WINTERPLACE PKWY, SALISBURY, MD 21804
Phone: (800) 258-3488
Fax: (800) 258-3287

Add Product

# MERGED INFILE CREDIT REPORT

| | | | | | |
|---|---|---|---|---|---|
| FILE # | 75134280 FNMA # | DATE COMPLETED | 7/28/2023 | RQD' BY | |
| SEND TO | MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP | DATE ORDERED | 7/24/2023 | | |
| | CUST. # 10036296 | REPOSITORIES | XP/TU/EF | PRPD' BY | |
| | 1600 STEWART AVE STE 701 | PRICE | | LOAN TYPE | |
| | WESTBURY, NY 11590 | REF. # | 11022307072502 | | |
| PROPERTY ADDRESS | | | | | |

| APPLICANT | | | | CO-APPLICANT | | | |
|---|---|---|---|---|---|---|---|
| APPLICANT | DEO, ANTHONY D | | | CO-APPLICANT | | | |
| SOC SEC # | [redacted] | DOB | [redacted] | SOC SEC # | | DOB | |
| MARITAL STATUS | | | | DEPENDENTS | | | |
| CURRENT ADDRESS | 3 SADDLE RIDGE ROAD, WESTBURY, NY 11568 | | | | LENGTH | | |
| PREVIOUS ADDRESS | | | | | LENGTH | | |

## SCORE MODELS

EQUIFAX/FICO CLASSIC V5 FACTA - ANTHONY D DEO - 119766492
SCORE: 783
00030 - TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT
00008 - TOO MANY INQUIRIES LAST 12 MONTHS
00011 - AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH
00014 - LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED

TRANSUNION/FICO CLASSIC (04) - ANTHONY DERRICK DEO - 119766492
SCORE: 778
030 - TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT
011 - AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH
012 - LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED
014 - LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED
FA - INQUIRIES IMPACTED THE CREDIT SCORE

EXPERIAN/FAIR, ISAAC (VER. 2) - ANTHONY DEO - 119766492
SCORE: 760
08 - TOO MANY INQUIRIES LAST 12 MONTHS
14 - LENGTH OF TIME ACCTS HAVE BEEN ESTABLISHED
09 - TOO MANY ACCOUNTS RECENTLY OPENED
24 - NO RECENT REVOLVING BALANCES

Request New Tradeline | Display Trended Data

## CREDIT

| ECOA | WHOSE | CREDITOR | DATE REPORTED | DATE OPENED<br>DLA | HIGH CREDIT OR LIMIT<br>ACCT TYPE | BALANCE<br>TERMS | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS<br>SOURCE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B | B | AMEX<br>-34999******04303 | 07/23 | 11/22<br>07/23 | $34500<br>REV | $5108<br>MIN $102 | $0 | 8 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| B | B | AMEX<br>-34999******63493 | 07/23 | 05/21<br>07/23 | $19921<br>OPEN | $1967<br>001 $1967* | $0 | 27 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| J | B | APPLE CARD/GS BANK USA<br>110001******2576 | 06/23 | 07/21<br>06/23 | $34500<br>REV | $1061<br>MIN $357 | $0 | 24 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| A | B | BARCLAYS BANK DELAWARE<br>000153*****<br>ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST; AUTHORIZED USER | 11/15 | 06/12<br>10/15 | $1000<br>REV | $0<br>$0 | $0 | 42 | 0 | 0 | 0 | PAID<br>XP/EF |
| B | B | CAPITAL ONE<br>517805******<br>ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST | 07/23 | 01/21<br>04/21 | $800<br>REV | $0<br>$0 | $0 | 30 | 0 | 0 | 0 | PAID<br>XP/TU/EF |
| T | B | CAPITAL ONE<br>414709****** | 09/21 | 03/02<br>08/21 | $20500<br>REV | $0<br>$0 | $0 | 99 | 0 | 0 | 0 | AS AGREED<br>XP/TU |
| T | B | CAPITAL ONE<br>414709****** | 09/21 | 01/13<br>06/21 | $31500<br>REV | $0<br>$25 | $0 | 99 | 0 | 0 | 0 | AS AGREED<br>XP/TU |

FLEXIBLE SPENDING CREDIT CARD

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| B | B | CARMEL FINCL<br>[redacted] | 07/16 | 04/16<br>06/16 | $5000<br>REV | $0<br>$0 | $0 | 02 | 0 | 0 | 0 | AS AGREED<br>TU |
| B | B | CITICARDS CBNA<br>542418****** | 07/23 | 08/22<br>11/22 | $7000<br>REV | $0<br>$0 | $0 | 14 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| B | B | DISCOVER BANK<br>601100****** | 07/23 | 01/21<br>11/22 | $1200<br>REV | $0<br>$0 | $0 | 31 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| T | B | DISCOVER BANK<br>601149****** | 02/22 | 07/16<br>05/21 | $26300<br>REV | $0<br>$0 | $0 | 67 | 0 | 0 | 0 | AS AGREED<br>XP/TU |
| B | B | GOLDMAN SACHS AND CO<br>110008******0983 | 07/23 | 03/22<br>03/23 | $30000<br>REV | $0<br>$0 | $0 | 16 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| B | B | JPMCB CARD<br>414720******<br>FLEXIBLE SPENDING CREDIT CARD | 07/23 | 06/21<br>06/23 | $5000<br>REV | $0<br>$0 | $0 | 26 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| S | B | MB FIN SVC<br>[redacted]<br>CONSUMER DISPUTES THIS ACCOUNT INFORMATION | 08/16 | 06/07<br>01/10 | $71604<br>AUTO | $0<br>$0 | $0 | 99 | 0 | 0 | 0 | PAID<br>EF |
| S | B | MB FIN SVC<br>[redacted] | 04/16 | 07/06<br>10/08 | $43850<br>AUTO | $0<br>27 $0 | $0 | 99 | 0 | 0 | 0 | PAID<br>EF |
| J | B | MB FIN SVC<br>[redacted] | 04/16 | 07/07<br>08/09 | $43596<br>AUTO | $0<br>36 $0 | $0 | 99 | 0 | 0 | 0 | PAID<br>EF |
| B | B | SOFI BANK/TBOM<br>546309******1535 | 07/23 | 05/21<br>-/- | $1000<br>REV | $0<br>$0 | $0 | 26 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |
| B | B | WELLS FARGO<br>414718******7177 | 07/23 | 08/22<br>-/- | $6000<br>REV | $0<br>$0 | $0 | 11 | 0 | 0 | 0 | AS AGREED<br>XP/TU/EF |

COLLECTION ACCOUNTS

*** NONE ***

OTHER CREDIT HISTORY

*** NONE ***

INQUIRIES (LAST 120 DAYS)

*** NONE ***

PUBLIC RECORDS

*** NONE ***

TRADE SUMMARY

The merge process is automated and the report may include some duplications and/or omissions. Inquiries regarding any disputed items should be directed to XACTUS FORMERLY CREDIT PLUS customer service.

| | # | BALANCE | HIGH CREDIT | PAYMENTS | PAST DUE |
|---|---|---|---|---|---|
| MORTGAGE | 0 | 0 | 0 | 0 | 0 |
| AUTO | 3 | 0 | 0 | 0 | 0 |
| EDUCATION | 0 | 0 | 0 | 0 | 0 |
| OTHER INSTALLMENT | 0 | 0 | 0 | 0 | 0 |
| OPEN | 1 | 1967 | 19921 | 1967 | 0 |
| REVOLVING | 14 | 6169 | 202500 | 484 | 0 |
| OTHER | 0 | 0 | 0 | 0 | 0 |
| TOTAL | 18 | 8136 | 222421 | 2451 | 0 |

| | | | |
|---|---|---|---|
| SECURED DEBT | 0 | OLDEST TRADELINE | 03/02 |
| UNSECURED DEBT | 8136 | REVOLVING CREDIT UTILIZATION | 3% |
| | | TOTAL DEBT/HIGH CREDIT | 4% |

DEROGATORY SUMMARY

| | | | | | |
|---|---|---|---|---|---|
| CHARGE OFFS: | 0 | 30 DAYS: | 0 | INQUIRIES: | 0 |
| COLLECTIONS: | 0 | 60 DAYS: | 0 | MOST RECENT LATE: | -/- |
| BANKRUPTCY: | 0 | 90 DAYS: | 0 | DISPUTES: | 1 |
| PUBLIC RECORDS: | 0 | OTHER: | 0 | | |

TU IDVISION ALERT

*** IDVISION ALERT ***

2 - DEO, ANTHONY D
AVAILABLE AND CLEAR

EQUIFAX FRAUDIQ IDENTITY SCAN ALERT

*** FRAUDIQ IDENTITY SCAN ALERT ***
3 - DEO, ANTHONY D
* SSN ISSUED IN 1991, STATE: NY.
* S - IDENTITY SCAN DID NOT DETECT ANY ALERTS

ALERT

1 - ANTHONY DEO YOB: 1977 EXPERIAN OFAC NAME MATCHING SERVICE: NO MATCH FOUND UNLESS OTHERWISE INDICATED

MISCELLANEOUS INFORMATION

- Instant View Password: AV-D0FE75

- To verify the authenticity of this credit report, please visit https://credit.creditplus.com and click on the Instant View link. Enter Identifier # 75134280 and password AV-D0FE75 to view the report. For any inquiries regarding this report or services provided by XACTUS please contact us at (800) 258-3488.

SOURCE OF INFORMATION

1 EXPERIAN - PULLED ON: 07/24/23
NAME: ANTHONY DEO [redacted]OB: [redacted]
NAME: ANTHONY A DEO [redacted]DOB: N/A
SSN: [redacted]
ADDRESS: 3 HUNTING LN, OLD WESTBURY, NY 11568-1541 - REPORTED 02/23 - 07/23
ADDRESS: 3 SADDLE RIDGE RD, OLD WESTBURY, NY 11568-1151 - REPORTED 12/20 - 01/23
ADDRESS: 1898 DEVONSHIRE DR NW, CANTON, OH 44708-1908 - REPORTED 05/21
EMPLOYER: 3011 MATTHEWS INC// - REPORTED 08/07
EMPLOYER: NOVELTY REALTY// - REPORTED 11/05

2 TRANSUNION - PULLED ON: 07/28/23 - INFILE DATE: 01/01/95
NAME: ANTHONY DERRICK DEO
NAME: ANTHONY,DEO,D
NAME: DEO,ANTHONY,A
NAME: DEO,D,ANTHONY
NAME: DOB: [redacted]
SSN: [redacted]
ADDRESS: 3 HUNTING LN, OLD WESTBURY, NY 11568-1541 - REPORTED 02/23
ADDRESS: 3 SADDLE RIDGE RD, OLD WESTBURY, NY 11568-1151 - REPORTED 01/21
ADDRESS: 9263 218TH ST, QUEENS VILLAGE, NY 11428-1260 - REPORTED 07/05
EMPLOYER: 3011 MATTHEWS INC/REAL ESTATE MANGEMENT/ - REPORTED 08/04
EMPLOYER: RENTAL//

3 EQUIFAX - PULLED ON: 07/28/23 - INFILE DATE: 07/07/04
NAME: ANTHONY D DEO DOB: 03/06/77
NAME: DEO D ANTHONY
SSN: [redacted]
ADDRESS: 3 HUNTING LN, OLD WESTBURY, NY 11568 - REPORTED 05/21 - 07/23
ADDRESS: 4 DARIUS CT, DIX HILLS, NY 11746 - REPORTED 09/16 - 07/23

CREDITORS

| | | |
|---|---|---|
| AMERICAN EXPRESS | P.O. BOX 7871, FORT LAUDERDALE, FL 33329 | 800-528-4800 |
| AMEX | PO BOX 297871, FORT LAUDERDALE, FL 33329 | 800-528-4800 |
| APPLE CARD - GS BANK | , | 877-255-5923 |
| APPLE CARD/GS BANK USA | LOCKBOX 6112 PO BOX 7247, PHILADELPHIA, PA 19170 | 877-255-5923 |
| BARCLAYSBK | 1007 ORANGE STREET SUITE 1541 PO BOX 26182, WILMINGTON, DE 19801 | 302-622-8990 |
| CAPITAL 1 BK | 11013 W BROAD ST, GLEN ALLEN VA 23060 | 800-955-7070 |
| CAPITAL ONE | PO BOX 85520, RICHMOND VA 23285 | 800-955-7070 |
| CAPITAL ONE BANK | , | 800-955-7070 |
| CARMEL FINCL | 101 E. CARMEL #200, CARMEL, IN 46032 | 317-844-7951 |
| CHASE | 201 N WALNUT ST, WILMINGTON, DE 19801 | 800-955-9900 |
| CITI CARDS CBSDNA | POB 6241, SIOUX FALLS, SD 57117 | 800-843-0777 |
| Credit Plus Inc | , | |
| DISCOVER FIN SVCS LLC | PO BOX 15316, WILMINGTON, DE 19850 | 800-347-2683 |
| DISCOVER FINANCIAL SERVI | POB 15316, WILMINGTON, DE 19850 | 800-347-2683 |
| DISCOVR CD | PO BOX15316, WILMINGTON DE 19850 | 800-347-5342 |
| GS BANK USA | LOCKBOX 6112 P.O. BOX 7247, PHILADELPHIA, PA 19170 | 877-255-5923 |
| GS BANK USA-GENERAL | , | 212-357-2655 |
| GS BANK-GM | GOLDMAN SACHS BANK USA PO BOX 70321, PHILADELPHIA, PA 19176 | 833-773-0988 |
| JUNIPER BANK | 1007 N ORANGE ST, WILMINGTON, DE 19801 | 888-232-0780 |
| MERCEDES-BENZ FINANC | 2050 ROANOKE RD, WESTLAKE, TX 76262 | 800-654-6222 |
| SOFI BANK, N.A | 234 1ST ST, SAN FRANCISCO, CA 94105 | 855-456-7634 |
| SOFI BANK, N.A. | , | 844-945-7636 |
| SOFIBANK N.A | 2750 EAST COTTONWOOD PARKWAY SUITE 300, SALT LAKE CITY, UT 84121 | 855-456-7634 |
| WELLS FARGO BANK | PO BOX 14517, DES MOINES, IA 50306 | 800-642-4720 |
| WFB CD SVC | P.O. BOX 5445, PORTLAND, OR 97208 | 800-642-4720 |

DISCLAIMER

-
An asterisk (*) following the payment amount indicates the repositories have no payment data and that the amount was automatically calculated as a percentage of the account balance.

-
This is a report containing information supplied by the repositories listed above. The merge process is automated and the report may include some duplications and/or omissions. Inquiries regarding any disputed items should be directed to the creditor reporting the item, or to the appropriate repository service center(s) listed below.

-

| | | |
|---|---|---|
| EXPERIAN | TRANSUNION | EQUIFAX |
| PO BOX 2002 | PO BOX 2000 | PO BOX 740241 |
| ALLEN, TX 75013 | CHESTER, PA 19016 | ATLANTA, GA 30374 |
| 888-397-3742 | 800-916-8800 | 800-685-1111 |
| www.experian.com/reportaccess | transunion.com/myoptions | www.equifax.com/fcra |

TREND SUMMARY

| PAYMENT BEHAVIOR: | REVOLVING | PAYMENT RATIO: | 0.00% |
|---|---|---|---|

**REVOLVING ACCOUNTS**

| | 1 MO. AGO | 2 MO. AGO | 3 MO. AGO | 6 MO. AGO | 12 MO. AGO | 24 MO. AGO |
|---|---|---|---|---|---|---|
| # OPEN ACCOUNTS | 13 | 13 | 13 | 13 | 11 | 9 |
| # ACTIVE ACCOUNTS | 1 | 2 | 2 | 3 | 1 | 1 |
| CREDIT LIMIT | 78500 | 113000 | 113000 | 118800 | 79500 | 120600 |
| PREV BALANCE | 4621 | 4761 | 6466 | 3522 | 796 | 0 |
| BALANCE | 7495 | 5303 | 4761 | 7770 | 1561 | 4117 |
| SCHEDULED PAYMENT | 149 | 449 | 460 | 446 | 410 | 0 |
| ACTUAL PAYMENT | 0 | 0 | 0 | 0 | 0 | 0 |

**NON-REVOLVING ACCOUNTS**

| | 1 MO. AGO | 2 MO. AGO | 3 MO. AGO | 6 MO. AGO | 12 MO. AGO | 24 MO. AGO |
|---|---|---|---|---|---|---|
| BALANCE | 809 | 1153 | 32 | 209 | 1455 | 17503 |
| PAYMENT | 0 | 0 | 0 | 0 | 0 | 0 |

*** END OF REPORT 7/28/2023 7:54:17 AM ***

ECOA KEY: B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER; M=MAKER; X=DECEASED; I=INDIVIDUAL; T=TERMINATED

XACTUS: 31550 WINTERPLACE PKWY, SALISBURY, MD 21804 (P) (800) 258-3488 (F) (800) 258-3287

The information is furnished in response to an inquiry for the purpose of evaluating credit risks. It has been obtained from sources deemed reliable, the accuracy of which this organization does not guarantee. The inquirer has agreed to indemnify the reporting bureau for any damage arising from misuse of this information, and this report is furnished in reliance upon that indemnity. It must be held in strict confidence and complies with the provisions of Public Law 91-508, the Fair Credit Reporting Act. Reporting bureau certifies that all Residential Mortgage Credit Reports meet the standards prescribed by FNMA, FHMC, FHA, VA and the Farmers Home Administration.

**MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP**
1600 STEWART AVE STE 701
WESTBURY, NY 11590
5168673020

**REPORT #: 75134280**
**REFERENCE #: 11022307072502**

RETURN SERVICE REQUESTED

ANTHONY D DEO
3 SADDLE RIDGE ROAD
WESTBURY, NY 11568

**Your Credit Score and the Price You Pay for Credit**

| **Your Credit Score** | |
|---|---|
| **Your credit score** | **778**<br>Source: TRANS UNION<br>Model: TRANSUNION/FICO CLASSIC (04)<br>Date: 07/28/23 |

| **Understanding Your Credit Score** | |
|---|---|
| **What you should know about credit scores** | Your credit score is a number that reflects the information in your credit report.<br><br>Your credit report is a record of your credit history. It includes information about whether you pay your bills on time and how much you owe to creditors.<br><br>Your credit score can change, depending on how your credit history changes. |
| **How we use your credit score** | Your credit score can affect whether you can get a loan and how much you will have to pay for that loan. |
| **The range of scores** | Scores range from a low of 309 to a high of 839.<br><br>Generally, the higher your score, the more likely you are to be offered better credit terms. |
| **How your score compares to the scores of other consumers** | Your credit score ranks higher than 68 percent of U.S. consumers. |
| **Key factors that adversely affected your credit score** | • TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT<br>• AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH<br>• LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED<br>• LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED<br>• INQUIRIES IMPACTED THE CREDIT SCORE |

| **Checking Your Credit Report** | |
|---|---|
| **What if there are mistakes in your credit report?** | You have a right to dispute any inaccurate information in your credit report. If you find mistakes on your credit report, contact the consumer reporting agency.<br><br>It is a good idea to check your credit report to make sure the information it contains is accurate. |
| **How can you obtain a copy of your credit report?** | Under federal law, you have the right to obtain a free copy of your credit report from each of the nationwide consumer reporting agencies once a year.<br><br>To order your free annual credit report:<br><br>*By telephone:* Call toll-free: 1-877-322-8228<br>*On the web:* Visit www.annualcreditreport.com<br>*By mail:* Mail your completed Annual Credit Report Request Form (which you can obtain from the Federal Trade Commission's web site at http://www.ftc.gov/bcp/conline/include/requestformfinal.pdf) to:<br><br>Annual Credit Report Request Service<br>P.O. Box 105281<br>Atlanta, GA 30348-5281 |
| **How can you get more information?** | For more information about credit reports and your rights under Federal law, visit the Consumer Financial Protection Bureau's web site at www.consumerfinance.gov/learnmore. |

**Notice to the Home Loan Applicant**

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP
1600 STEWART AVE STE 701
WESTBURY, NY 11590
5168673020

## NOTICE TO THE HOME LOAN APPLICANT

### CREDIT SCORE INFORMATION DISCLOSURE

DEO, ANTHONY D
3 SADDLE RIDGE ROAD
WESTBURY, NY 11568

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender in determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provided with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions regarding the terms of the loan, contact the lender.

Your credit scores were provided by the following credit reporting agencies:

| | | |
|---|---|---|
| EXPERIAN | TRANSUNION | EQUIFAX |
| PO BOX 2002 | PO BOX 2000 | PO BOX 740241 |
| ALLEN, TX 75013 | CHESTER, PA 19016 | ATLANTA, GA 30374 |
| 888-397-3742 | 800-916-8800 | 800-685-1111 |
| www.experian.com/reportaccess | transunion.com/myoptions | www.equifax.com/fcra |

The following information about your credit scores was created on 7/24/2023.

**SCORE MODELS**

EQUIFAX/FICO CLASSIC V5 FACTA - ANTHONY D DEO - *****6492
SCORE: 783
00030 - TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT
00008 - TOO MANY INQUIRIES LAST 12 MONTHS
00011 - AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH
00014 - LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED

---

TRANSUNION/FICO CLASSIC (04) - ANTHONY DERRICK DEO - *****6492
SCORE: 778
030 - TIME SINCE MOST RECENT ACCOUNT OPENING IS TOO SHORT
011 - AMOUNT OWED ON REVOLVING ACCOUNTS IS TOO HIGH
012 - LENGTH OF TIME REVOLVING ACCOUNTS HAVE BEEN ESTABLISHED
014 - LENGTH OF TIME ACCOUNTS HAVE BEEN ESTABLISHED
FA - INQUIRIES IMPACTED THE CREDIT SCORE

---

EXPERIAN/FAIR, ISAAC (VER. 2) - ANTHONY DEO - *****6492
SCORE: 760
08 - TOO MANY INQUIRIES LAST 12 MONTHS
14 - LENGTH OF TIME ACCTS HAVE BEEN ESTABLISHED
09 - TOO MANY ACCOUNTS RECENTLY OPENED
24 - NO RECENT REVOLVING BALANCES

---

# CONSUMER EXPLANATION LETTER

| | | |
|---|---|---|
| FILE #: | 75134280 | CREDIT REPORT PROVIDED BY: |
| REFERENCE #: | 11022307072502 | XACTUS |
| APPLICANT: | DEO, ANTHONY D | 31550 WINTERPLACE PKWY |
| CO-APPLICANT: | | SALISBURY, MD 21804 |
| ADDRESS: | 3 SADDLE RIDGE ROAD | VOICE: (800) 258-3488 |
| | WESTBURY, NY 11568 | FAX (800) 258-3287 |
| RE: | CREDIT ACCOUNTS AND INQUIRIES | |

Dear Applicant,

A copy of your credit report has been provided to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP in association with your recent application.

A brief statement may be required by MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP to explain credit accounts which indicate a past due credit history status, public record items, addresses, and/or credit inquiries*. Please write your explanation below. If additional space is required, use the reverse side of this letter. Please mail or deliver this form to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP promptly. If you are unsure of the explanation(s) required, please contact MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP.

IT IS VERY IMPORTANT that you respond to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP IN WRITING as soon as possible regarding any items listed below. Please DO NOT send your response to XACTUS.

Please return this letter to: MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP
1600 STEWART AVE STE 701
WESTBURY, NY 11590
Phone: 5168873020

* A credit inquiry indicates that a credit grantor has obtained a copy of your credit report. Please indicate if you have applied for credit with the noted firm, if you currently have an account, if credit was denied with the noted firm, or if the inquiry was for employment report.

Your credit information has been provided by the following organizations. If you so desire, you can contact us or them to dispute items on your credit report:

| TRANSUNION | EXPERIAN | EQUIFAX |
|---|---|---|
| PO BOX 2000 | PO BOX 2002 | PO BOX 740241 |
| CHESTER, PA 19016 | ALLEN, TX 75013 | ATLANTA, GA 30374 |
| 800-916-8800 | 888-397-3742 | 800-685-1111 |
| transunion.com/myoptions | www.experian.com | www.equifax.com/fcra |

The credit bureau or credit agency plays no part in the decision to take any action on your application request, and is unable to provide you with specific reasons for the decision on an application.

U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Department of Housing and Urban Development and Federal Housing Administration transactions", Provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters, or publishes any statement, knowing the same to be false . . . shall be fined not more than $5,000 or imprisoned not more than two years or both."

## DEROGATORY ACCOUNTS

*** NONE ***

## PUBLIC RECORDS

*** NONE ***

## ADDRESSES

| Address | Time Frame | Source | Do You Currently Own This Property? |
|---|---|---|---|
| 001. 1898 DEVONSHIRE DR NW, CANTON, OH 44708 | 05/21 - 05/21 | XP-B | ○ YES ○ NO |
| Explanation: | | | |
| 002. 3 HUNTING LN, OLD WESTBURY, NY 11568 | 05/21 - 07/23, 02/23 - 07/23, 02/23 - 02/23 | XP/TU/EF-B | ○ YES ○ NO |
| Explanation: | | | |
| 003. 3 SADDLE RIDGE RD, OLD WESTBURY, NY 11568 | 12/20 - 01/23, 01/21 - 01/21 | XP/TU-B | ○ YES ○ NO |
| Explanation: | | | |
| 004. 3 SADDLE RIDGE ROAD, WESTBURY, NY 11568 | CURRENT | User Supplied-B | ○ YES ○ NO |
| Explanation: | | | |
| 005. 4 DARIUS CT, DIX HILLS, NY 11746 | 09/16 - 07/23 | EF-B | ○ YES ○ NO |
| Explanation: | | | |
| 006. 9263 218TH ST, QUEENS VILLAGE, NY 11428 | 07/05 - 07/05 | TU-B | ○ YES ○ NO |
| Explanation: | | | |

## INQUIRIES (LAST 120 DAYS)

*** NONE ***

## NAME VARIATION

APPLICANT

| Name | Source | Explanation |
| --- | --- | --- |
| 001. ANTHONY A DEO | XP | |
| 002. ANTHONY,DEO,D | TU | |
| 003. DEO D ANTHONY | EF | |
| 004. DEO,D,ANTHONY | TU | |

ADDITIONAL REMARKS

*** 7/28/2023 7:54:18 AM ***

Borrower Signature ____________________ Date ____________

** REMIT ALL CORRESPONDENCE TO:

MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP
1600 STEWART AVE STE 701
WESTBURY, NY 11590

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD

# CONSUMER EXPLANATION LETTER

**FILE #:** 75134280
**REFERENCE #:** 11022307072502
**APPLICANT:** DEO, ANTHONY D
**CO-APPLICANT:**
**ADDRESS:** 3 SADDLE RIDGE ROAD
WESTBURY, NY 11568

**RE:** CREDIT ACCOUNTS AND INQUIRIES

**CREDIT REPORT PROVIDED BY:**
XACTUS
31550 WINTERPLACE PKWY
SALISBURY, MD 21804
VOICE: (800) 258-3488
FAX (800) 258-3287

Dear Applicant,

A copy of your credit report has been provided to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP in association with your recent application.

A brief statement may be required by MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP to explain credit accounts which indicate a past due credit history status, public record items, addresses, and/or credit inquiries*. Please write your explanation below. If additional space is required, use the reverse side of this letter. Please mail or deliver this form to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP promptly. If you are unsure of the explanation(s) required, please contact MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP.

IT IS VERY IMPORTANT that you respond to MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP IN WRITING as soon as possible regarding any items listed below. Please DO NOT send your response to XACTUS.

Please return this letter to: **MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP**
**1600 STEWART AVE STE 701**
**WESTBURY, NY 11590**
**Phone: 5168673020**

* A credit inquiry indicates that a credit grantor has obtained a copy of your credit report. Please indicate if you have applied for credit with the noted firm, if you currently have an account, if credit was denied with the noted firm, or if the inquiry was for employment report.

Your credit information has been provided by the following organizations. If you so desire, you can contact us or them to dispute items on your credit report:

| TRANSUNION | EXPERIAN | EQUIFAX |
|---|---|---|
| PO BOX 2000 | PO BOX 2002 | PO BOX 740241 |
| CHESTER, PA 19016 | ALLEN, TX 75013 | ATLANTA, GA 30374 |
| 800-916-8800 | 888-397-3742 | 800-685-1111 |
| transunion.com/myoptions | www.experian.com | www.equifax.com/fcra |

The credit bureau or credit agency plays no part in the decision to take any action on your application request, and is unable to provide you with specific reasons for the decision on an application.

U.S. Criminal Code, Section 1010, Title 18, U.S.C., "Department of Housing and Urban Development and Federal Housing Administration transactions", Provides in part: "Whoever, for the purpose of . . . influencing in any way the action of such Department . . . makes, passes, utters, or publishes any statement, knowing the same to be false . . . shall be fined not more than $5,000 or imprisoned not more than two years or both."

## ADDRESSES

| Address | Time Frame | Source | Do You Currently Own This Property? |
|---|---|---|---|
| 001. 3 HUNTING LN, OLD WESTBURY, NY 11568 | 05/21 - 07/23, 02/23 - 07/23, 02/23 - 02/23 | XP/TU/EF-B | ○ YES ⊗ NO |
| **Explanation:** rental, do not own | | | |
| 002. 3 SADDLE RIDGE RD, OLD WESTBURY, NY 11568 | 12/20 - 01/23, 01/21 - 01/21 | XP/TU-B | ○ YES ⊗ NO |
| **Explanation:** rental, never owned | | | |
| 003. 3 SADDLE RIDGE ROAD, WESTBURY, NY 11568 | CURRENT | User Supplied-B | ○ YES ⊗ NO |
| **Explanation:** rental never owned | | | |
| 004. 4 DARIUS CT, DIX HILLS, NY 11746 | 09/16 - 07/23 | EF-B | ○ YES ⊗ NO |
| **Explanation:** rental never owned | | | |

DocuSign Envelope ID: 52984875-9676-4096-BCA2-99E4DC61D3FD

# CONSUMER EXPLANATION LETTER

FILE #: 75134280
REFERENCE #: 11022307072502
APPLICANT: DEO, ANTHONY D
CO-APPLICANT:
ADDRESS: 3 SADDLE RIDGE ROAD
WESTBURY, NY 11568

RE: CREDIT ACCOUNTS AND INQUIRIES

CREDIT REPORT PROVIDED BY:
XACTUS
31550 WINTERPLACE PKWY
SALISBURY, MD 21804
VOICE: (800) 258-3488
FAX (800) 258-3287

INQUIRIES (LAST 120 DAYS)

*** NONE ***

*** END OF REPORT 8/1/2023 6:30:08 AM ***

Borrower Signature DocuSigned by: anthony deo A73C052E19324AA... Date 8/1/2023

** REMIT ALL CORRESPONDENCE TO:

MEADOWBROOK FINANCIAL MORTGAGE BANKERS CORP
1600 STEWART AVE STE 701
WESTBURY, NY 11590

# Department of State
## Division of Corporations

### Entity Information

Return to Results | Return to Search

**Entity Details**

**ENTITY NAME:** SUPERB MOTORS INC.
**FOREIGN LEGAL NAME:**
**ENTITY TYPE:** DOMESTIC BUSINESS CORPORATION
**SECTIONOF LAW:** 402 BCL - BUSINESS CORPORATION LAW
**DATE OF INITIAL DOS FILING:** 02/04/2021
**EFFECTIVE DATE INITIAL FILING:** 02/04/2021
**FOREIGN FORMATION DATE:**
**COUNTY:** NASSAU
**JURISDICTION:** NEW YORK, UNITED STATES

**DOS ID:** 5933755
**FICTITIOUS NAME:**
**DURATION DATE/LATEST DATE OF DISSOLUTION:**
**ENTITY STATUS:** ACTIVE
**REASON FOR STATUS:**
**INACTIVE DATE:**
**STATEMENT STATUS:** CURRENT
**NEXT STATEMENT DUE DATE:** 02/28/2023
**NFP CATEGORY:**

ENTITY DISPLAY | NAME HISTORY | FILING HISTORY | MERGER HISTORY | ASSUMED NAME HISTORY

Service of Process on the Secretary of State as Agent

**The Post Office address to which the Secretary of State shall mail a copy of any process against the corporation served upon the Secretary of State by personal delivery:**

**Name:** THE CORPORATION

**Address:** 15 LANCASTER STREET, LYNBROOK, NY, UNITED STATES, 11563

**Electronic Service of Process on the Secretary of State as agent: Not Permitted**

Chief Executive Officer's Name and Address

**Name:**

**Address:**

Principal Executive Office Address

**Address:**

Registered Agent Name and Address

**Name:**

**Address:**

Entity Primary Location Name and Address

**Name:**

**Address:**

Farmcorpflag

**Is The Entity A Farm Corporation:** NO

Stock Information

| Share Value | Number Of Shares | Value Per Share |
|---|---|---|
| NO PAR VALUE | 200 | $0.00000 |

Deephaven

**Business Bank Statement Program Income Calculator**

| Borrower Name: | Loan Number: | Underwriter: |
|---|---|---|

**QUALIFYING INCOME CALCULATION** (complete all applicable yellow fields)

| | |
|---|---|
| CHOOSE CALCULATION OPTION → | FIXED EXPENSE RATIO OF 50% |
| BORROWER'S OWNERSHIP PERCENTAGE (min 25%) → | 100.00% |

**OPTION #1: THIRD-PARTY PREPARED P&L**

**STEP 2: INCOME VALIDATION** (Option #1 only)

**OPTION #2: THIRD-PARTY EXPENSE STATEMENT**

**OPTION #3: FIXED EXPENSE RATIO OF 50%**

| | | |
|---|---|---|
| Fixed Expense Ratio Calculation | | $1,205,725.04 |
| Fixed Expense Ratio | 50.00% | |
| Total Business Bank Statement Deposits | $28,937,400.86 | |
| **Option #3 Qualifying Income:** | | $1,205,725.04 |

| Comments: | | Total NSFs: | 0 |
|---|---|---|---|

| *1099s | Most Recent Year | Previous Year |
|---|---|---|
| | Year: | Year: |

*HOW TO ENTER 1099s (see also Underwriting Guidelines Section 3.3)
- Enter 1099 amount under "Most Recent Year".
- If using a 2nd 1099, enter that amount under "Previous Year".
- Enter the remaining YTD bank statements dates below.
- Follow the same steps if using deposits from multiple accounts.
- Enter "Number of Months" as the total sum of YTD statements plus the 1099 time period covered (12 or 24 months)

ACCOUNT #1 — BANK NAME → CHASE — ACCOUNT NUMBER → 5518

| Month | Date | NSFs | Monthly Deposits | Disallowed Deposits (enter transfers, unusual deposits, and onetime deposits as positive numbers) | | | | | | | | | | | | Eligible Deposits |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 7/29/2022 | | $2,421,071.10 | $50,000.00 | $10,400.00 | $5,275.00 | $21,504.37 | $100,000.00 | $75,000.00 | $34,750.00 | $14,000.00 | $4,100.00 | $5,350.00 | $34,550.00 | | $2,046,141.73 |
| 2 | 8/31/2022 | | $2,669,177.58 | $2,250.00 | $1,950.00 | $30,000.00 | $24,287.50 | $914.00 | $95,171.22 | $26,312.50 | | | | | | $2,488,292.36 |
| 3 | 9/30/2022 | | $2,079,692.59 | $7,200.00 | $1,273.00 | $3,534.00 | $23,749.20 | $81.54 | $72.00 | $2,066.00 | | | | | | $2,041,714.85 |
| 4 | 10/31/2022 | | $1,329,272.30 | $2,804.00 | $543.00 | $7,134.00 | $11,445.00 | | | | | | | | | $1,307,344.30 |
| 5 | 11/30/2022 | | $2,005,857.59 | $2,319.00 | $949.60 | $23,691.52 | $19,652.98 | $4,668.00 | $2,216.00 | $7,509.00 | $1,620.50 | $337.00 | $6,221.20 | $2.36 | $25,058.67 | $1,916,492.76 |
| 6 | 12/31/2022 | | $3,152,525.23 | $100,000.00 | $100,000.00 | $3,261.19 | | | | | | | | | | $2,949,264.04 |
| 7 | 1/31/2023 | | $2,335,270.20 | $50,797.50 | $30,754.00 | | | | | | | | | | | $2,253,716.70 |
| 8 | 2/28/2023 | | $4,014,210.31 | $30,754.00 | $20,260.00 | $19,625.00 | $132,779.15 | $63,661.00 | $2,854.00 | $1,313.65 | $1,505.94 | $1,404.34 | $419.50 | $402.50 | $338,205.41 | $3,401,025.84 |
| 9 | 3/31/2023 | | $2,203,310.23 | $1,516.63 | $1,296.18 | $32,900.00 | $22,725.00 | $15,350.00 | | | | | | | | $2,129,522.40 |
| 10 | 4/30/2023 | | $2,393,934.25 | $41,182.00 | | | | | | | | | | | | $2,352,752.25 |
| 11 | 5/31/2023 | | $2,455,678.59 | $58,681.87 | $14,000.00 | $38,801.77 | $768.75 | | | | | | | | | $2,343,426.20 |
| 12 | 6/30/2023 | | $4,973,391.93 | $28,700.00 | $528,039.00 | $47,508.50 | $97,547.00 | $273,892.00 | $200,000.00 | $90,000.00 | | | | | | $3,707,705.43 |
| 13 | | | | | | | | | | | | | | | | $0.00 |
| 14 | | | | | | | | | | | | | | | | $0.00 |
| 15 | | | | | | | | | | | | | | | | $0.00 |
| 16 | | | | | | | | | | | | | | | | $0.00 |
| 17 | | | | | | | | | | | | | | | | $0.00 |
| 18 | | | | | | | | | | | | | | | | $0.00 |
| 19 | | | | | | | | | | | | | | | | $0.00 |
| 20 | | | | | | | | | | | | | | | | $0.00 |
| 21 | | | | | | | | | | | | | | | | $0.00 |
| 22 | | | | | | | | | | | | | | | | $0.00 |
| 23 | | | | | | | | | | | | | | | | $0.00 |
| 24 | | | | | | | | | | | | | | | | $0.00 |
| | | Number of Months | 12 | $3,095,991.06 | | Total Disallowed Deposits | | | | Monthly Average Deposits | | $2,411,450.07 | | | Total Eligible Deposits | $28,937,400.86 |

| ACCOUNT #2 | | | | BANK NAME ⟶ | | | | | | ACCOUNT NUMBER ⟶ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | Date | NSFs | Monthly Deposits | Disallowed Deposits (enter transfers, unusual deposits, and one-time deposits as positive numbers) | | | | | | | | | | | Usable Deposits |
| 1 | | | | | | | | | | | | | | | $0.00 |
| 2 | | | | | | | | | | | | | | | $0.00 |
| 3 | | | | | | | | | | | | | | | $0.00 |
| 4 | | | | | | | | | | | | | | | $0.00 |
| 5 | | | | | | | | | | | | | | | $0.00 |
| 6 | | | | | | | | | | | | | | | $0.00 |
| 7 | | | | | | | | | | | | | | | $0.00 |
| 8 | | | | | | | | | | | | | | | $0.00 |
| 9 | | | | | | | | | | | | | | | $0.00 |
| 10 | | | | | | | | | | | | | | | $0.00 |
| 11 | | | | | | | | | | | | | | | $0.00 |
| 12 | | | | | | | | | | | | | | | $0.00 |
| 13 | | | | | | | | | | | | | | | $0.00 |
| 14 | | | | | | | | | | | | | | | $0.00 |
| 15 | | | | | | | | | | | | | | | $0.00 |
| 16 | | | | | | | | | | | | | | | $0.00 |
| 17 | | | | | | | | | | | | | | | $0.00 |
| 18 | | | | | | | | | | | | | | | $0.00 |
| 19 | | | | | | | | | | | | | | | $0.00 |
| 20 | | | | | | | | | | | | | | | $0.00 |
| 21 | | | | | | | | | | | | | | | $0.00 |
| 22 | | | | | | | | | | | | | | | $0.00 |
| 23 | | | | | | | | | | | | | | | $0.00 |
| 24 | | | | | | | | | | | | | | | $0.00 |
| | Number of Months | | 12 | $0.00 | Total Disallowed Deposits | | | | Monthly Average Deposits | | $0.00 | | Total Eligible Deposits | | $0.00 |

| ACCOUNT #3 | | | | BANK NAME ▸ | | | | | | ACCOUNT NUMBER ▸ | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | Date | NSFs | Monthly Deposits | Disallowed Deposits (enter transfers, unusual deposits, and one-time deposits as positive numbers) | | | | | | | | | | | Eligible Deposits |
| 1 | | | | | | | | | | | | | | | $0.00 |
| 2 | | | | | | | | | | | | | | | $0.00 |
| 3 | | | | | | | | | | | | | | | $0.00 |
| 4 | | | | | | | | | | | | | | | $0.00 |
| 5 | | | | | | | | | | | | | | | $0.00 |
| 6 | | | | | | | | | | | | | | | $0.00 |
| 7 | | | | | | | | | | | | | | | $0.00 |
| 8 | | | | | | | | | | | | | | | $0.00 |
| 9 | | | | | | | | | | | | | | | $0.00 |
| 10 | | | | | | | | | | | | | | | $0.00 |
| 11 | | | | | | | | | | | | | | | $0.00 |
| 12 | | | | | | | | | | | | | | | $0.00 |
| 13 | | | | | | | | | | | | | | | $0.00 |
| 14 | | | | | | | | | | | | | | | $0.00 |
| 15 | | | | | | | | | | | | | | | $0.00 |
| 16 | | | | | | | | | | | | | | | $0.00 |
| 17 | | | | | | | | | | | | | | | $0.00 |
| 18 | | | | | | | | | | | | | | | $0.00 |
| 19 | | | | | | | | | | | | | | | $0.00 |
| 20 | | | | | | | | | | | | | | | $0.00 |
| 21 | | | | | | | | | | | | | | | $0.00 |
| 22 | | | | | | | | | | | | | | | $0.00 |
| 23 | | | | | | | | | | | | | | | $0.00 |
| 24 | | | | | | | | | | | | | | | $0.00 |
| | Number of Months | | 12 | $0.00 | Total Disallowed Deposits | | | | Monthly Average Deposits | | $0.00 | | Total Eligible Deposits | | $0.00 |

**ACCOUNT #4** | **BANK NAME →** | **ACCOUNT NUMBER ►**

| Month | Date | NSFs | Monthly Deposits | Disallowed Deposits (enter transfers, unusual deposits, and one-time deposits as positive numbers) | | | | | | | | | | | Eligible Deposits |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | | | | | $0.00 |
| 2 | | | | | | | | | | | | | | | $0.00 |
| 3 | | | | | | | | | | | | | | | $0.00 |
| 4 | | | | | | | | | | | | | | | $0.00 |
| 5 | | | | | | | | | | | | | | | $0.00 |
| 6 | | | | | | | | | | | | | | | $0.00 |
| 7 | | | | | | | | | | | | | | | $0.00 |
| 8 | | | | | | | | | | | | | | | $0.00 |
| 9 | | | | | | | | | | | | | | | $0.00 |
| 10 | | | | | | | | | | | | | | | $0.00 |
| 11 | | | | | | | | | | | | | | | $0.00 |
| 12 | | | | | | | | | | | | | | | $0.00 |
| 13 | | | | | | | | | | | | | | | $0.00 |
| 14 | | | | | | | | | | | | | | | $0.00 |
| 15 | | | | | | | | | | | | | | | $0.00 |
| 16 | | | | | | | | | | | | | | | $0.00 |
| 17 | | | | | | | | | | | | | | | $0.00 |
| 18 | | | | | | | | | | | | | | | $0.00 |
| 19 | | | | | | | | | | | | | | | $0.00 |
| 20 | | | | | | | | | | | | | | | $0.00 |
| 21 | | | | | | | | | | | | | | | $0.00 |
| 22 | | | | | | | | | | | | | | | $0.00 |
| 23 | | | | | | | | | | | | | | | $0.00 |
| 24 | | | | | | | | | | | | | | | $0.00 |
| | | Number of Months | 12 | $0.00 | Total Disallowed Deposits | | | | | Monthly Average Deposits | $0.00 | | | Total Eligible Deposits | $0.00 |

| Total Deposits from all Statements (combined): | $28,937,400.86 |
|---|---|

## DISCLAIMER

The information provided by this calculator is for illustrative purposes only, and accuracy is not guaranteed.

- All income information are projections only and provided for comparison purposes only.
- This calculator does not have the ability to pre-qualify submissions for any loan program.
- No results provided constitute a credit decision or an offer for the extension of credit.
- Actual determination of income requires independent verification.
- Qualification for loan programs requires specific borrower and property information, and other information which is not gathered by this calculator.
- Results should only be evaluated by a mortgage professional.

Deephaven Mortgage® LLC. All rights reserved. This material is intended solely for the use of licensed mortgage professionals. Distribution to consumers is strictly prohibited.
Program and rates are subject to change without notice. Not available in all states. Terms subject to qualification.
NMLS #958425 http://nmlsconsumeraccess.org/
https://deephavenmortgage.com/wp-content/uploads/2018/05/Disclosures-Licenses.pdf

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

RESIDENTIAL CONTRACT OF SALE (2000)
This form was originally prepared by the Real Property Law Section of the New York State Bar Association and the Committee on Real Property Law of the Association of the Bar of the City of New York. This form may have been altered by the user and any such alterations may not be apparent. To view or download the original unaltered text of this form, visit the Real Estate Law page at www.abcny.org.

*Warning: No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language Law").*

**CONSULT YOUR LAWYER BEFORE SIGNING THIS AGREEMENT**

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION**
This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

## Residential Contract of Sale

Contract of Sale made as of _ between
Jiying Wei Address: 3 Hunting Lane, Old Westbury , NY 11568
Social Security Number/ Fed. I.D. No(s):_______________ hereinafter called **"Seller"**
and Sara Deo and Anthony Deo Address:_______________
Social Security Number/ Fed. I.D. No(s):_______________ hereinafter called **"Purchaser"**.

The parties hereby agree as follows:

1. **Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the **"Premises"**), more fully described on a separate page marked "Schedule A", annexed hereto and made a part hereof and also known as: Address: 3 Hunting Lane, Old Westbury , NY 11568. Tax Map Designation: Section 10 Block 291 Lot 81 .

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

2. **Personal Property**. This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will he paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air conditioning equipment and installations, wall to wall carpeting and built-ins not excluded below (*strike out inapplicable items*).

Excluded from this sale are furniture and household furnishings and

3. **Purchase Price.** The purchase price is THREE MILLION FOUR HUNDRED SIXTY THOUSAND (\$3,460,000.00), payable as follows:

(a) on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the "**Downpayment**"): \$173,000.00

(b) by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser shall assume by joinder in the deed: \$0.00

(c) by a purchase money note and mortgage from Purchaser to Seller: \$0.00

(d) balance at Closing in accordance with paragraph 7: \$3,287,000.00

4. **Existing Mortgage.** If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:

(a) The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with interest at the rate of 0 ______________ percent per annum, in monthly installments of $ 0.00 ________which include principal, interest and escrow amounts, if any, and with any balance of principal being due and payable on ______.

(b) To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be made between the date hereof and Closing.

(c) If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser shall pay the amount in the escrow account to Seller at Closing.

(d) Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more than 30 days before Closing, containing the same information.

(e) Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage, the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.

5. **Purchase Money Mortgage.** N/A

6. **Downpayment in Escrow.** (a) Seller's attorney ("**Escrowee**") shall hold the Downpayment in escrow in a segregated bank account at CHASE BANK address: 39-01 Main Street, Flushing NY 11354, until Closing or sooner

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB5092C0B

termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of this paragraph. Escrowee shall hold the Downpayment in a(n) Interest _________-bearing account for the benefit of the parties. If interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from action upon the advice of such counsel.

(d) Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

(e) Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

(f) The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7. **Acceptable Funds**. All money payable under this contract, unless otherwise specified, shall be paid by:

(a) Cash, but not over $1,000.00;

(b) Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

(c) As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 1,000.00 ; and

(d) As otherwise agreed to in writing by Seller or Seller's attorney.

8. **Mortgage Commitment Contingency**. (Delete paragraph if inapplicable)

(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before 180 days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(k) (the **"Commitment Date"**), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally insured loan, to Purchaser, at Purchaser's sole cost and expense, of $2,975,000.00 for a term of at least 15/30 years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the **"Commitment"**). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B81A-136EB5092C0B

(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.

(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law (**"Mortgage Broker"**) shall constitute full compliance with the terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.

(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB5092C0B

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all of its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries under this paragraph 8.

(j) For purposes of this contract, the term **"Institutional Lender"** shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(k) For purposes of subparagraph (a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

9. **Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a) Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b) Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c) Encroachments less than 12 inches of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d) Real estate taxes that are a lien, but are not yet due and payable; and

(e) The other matters, if any, including a survey exception, set forth in a Rider attached.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB5092C0B

Provided such exception (a) (b)(c)(d) and (e) do not render title unmarkable.

10. **Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date of closing by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

11. **Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i) The Premises abut or have a right of access to a public road;

(ii) Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii) Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code

("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv) The Premises are not affected by any exemptions or abatements of taxes; and

(v) Seller has been known by no other name for the past ten years, except ______________________________.

(b) Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c) Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

12. **Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of Closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

13. **Insurable Title.** Seller shall give and Purchaser shall accept such title as ______________________________ any reputable title company of Purchasers choosing shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

14. **Closing, Deed and Title.** (a) **"Closing"** means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a Bargain and Sale deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b) If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

15. **Closing Date and Place.** Closing shall take place at the office of Seller attorney at 1560 Broadway Ste 1100 New York NY 10036 10:00 a.m. o'clock on or about 5/1/2023 or, upon reasonable notice (by telephone or otherwise) by Purchaser, at the office of Lender's attoreny.

16. **Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b) The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a One family dwelling at the date of Closing.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

(c) The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA or a withholding certificate from the Internal Revenue Service. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises and no debris left curbside

~~(e) All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the building(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.~~

(f) If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g) The delivery by the parties of any other affidavits required as a condition of recording the deed.

17. **Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing. Seller shall be responsible for NYS transfer tax, Purchaser shall be responsible for Mansion tax.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing: (i) taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; (iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.

DocuSign Envelope ID: 85132B65-B8CC-47E1-B91A-138EB6092C0B

(b) If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c) If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d) If at the date of Closing the Premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e) Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient monies with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

DocuSign Envelope ID: 95132B65-B8CC-47E1-B91A-136EB5092C0B

(b) (i) If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called **"Defects"**), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c) If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

22. **Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

23. **Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

(b) If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

24. **Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

25. **Notices.** Any notice or other communication ("Notice") shall be in writing and either

(a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or

(b) delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or

(c) with respect to paragraph 7(b) or 20, sent by fax to the party's attorney. Each notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries.

26. **No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

27. **Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than Sylvester Demaria ("**Broker**") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

28. **Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.

(b) Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributes, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.

(c) Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.

(d) The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.

(e) This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f) Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g) Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h) This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i) If applicable, the complete and fully executed disclosure of information on lead-based paint and/or lead-based paint hazards is attached hereto and made a part hereof.

IN WITNESS WHEREOF, this contract has been duly executed by the parties hereto.

| | | | |
|---|---|---|---|
| | | DocuSigned by: Sara DEO | |
| Jiying Wei | Seller | Sara Deo | Purchaser |

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB5092C0B

魏继英

Seller

DocuSigned by:
anthony deo

Anthony Deo Purchaser

Attorney for Seller:

JUN WANG & ASSOCIATES. P.C.

Address: 1560 Broadway, Suite 1100
New York, NY 10036

Tel.: (212) 679-9700
Fax: (212) 679-9703

Attorney for Purchaser:

Joseph C. Vozza Attorney At Law P.C.

Address: 135 Pinelawn Road, Ste 125N
Melville NY 11747

Tel.: (631) 719-9300
Fax: (631) 759-4566

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6 above.

Escrowee

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

# Supplemental Rider

3 Hunting Lane, Old Westbury , NY 11568

Jiying Wei to Sara Deo and Anthony Deo

1. **Effect of Rider.** This Supplemental Rider is intended to amend and to supplement the contract and rider to which it is attached. Insofar as possible, the contract, rider and this Supplemental Rider are to be interpreted as a single, integrated agreement. If there is any conflict or inconsistency between the contract and any provision contained in this Supplemental Rider, then this Supplemental Rider shall be deemed controlling; and its provisions shall supersede and replace any inconsistent term or provision of the contract.

2. **Seller's Representations.** Seller hereby represents, warrants and covenants the following, all of which are additional representations, warranties and covenants, shall be true as of the date hereof and of the date of Closing:

   (a) Seller has not received any notices with respect to the existence or pendency of any actions, suits or other proceedings pending, or threatened against or affecting the Property. Seller further has not received any notices regarding any onsite conditions or developments which may adversely affect the Premises;

   (b) Other than taxes not yet due, Seller has no knowledge or notice of any outstanding tax liability affecting the Premises or of any pending or threatened assessments relating to or chargeable in any way against the Property, other than the usual town-wide assessment;

   (c) No part of the Premises has been used for storage or disposal (other than pursuant to law or otherwise) of any toxic materials (including, any radioactive materials) and no part of the Premises has been contaminated by such materials;

   (d) Seller has not entered into any commitment, agreement or understanding with any municipality, county, state or federal governmental agency or authority which would require the installation of any improvements or the incurring of any costs or expenses affecting the Premises or otherwise;

   (e) That it will not voluntarily suffer or permit any lien or encumbrance to be placed against the Premise which cannot be fully discharged at the Closing through the application of the Purchase Price;

   (g) There are presently no written or oral leases, subleases, agreements, arrangements, unrecorded rights of others or any other occupancies affecting any part of the Premises;

   (h) The septic system servicing the Premises is located entirely within the boundaries of the subject premises;

   (i) There is no underground fuel oil tank at the Premises.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB6092C0B

3. **Right to Inspect.** Purchaser shall have an absolute right to inspect the premises twenty four (24) hours before closing. Seller will not unreasonably withhold consent to any other inspections at reasonable times and upon reasonable notice.

4. **Downpayment.** Supplementing and modifying the printed Contract, in the event that the down payment is misapplied or misused by Escrow Agent or shall otherwise become unavailable for distribution in accordance with the Contract of Sale for any reason (except through the fault of Purchaser), the Purchaser shall continue to receive a credit against the Purchase Price for the amount of the down payment and Purchaser shall have no liability to Seller for same at Closing or otherwise. In Addition, Seller shall indemnify Purchaser for any and all costs and expenses, including reasonable attorney's fees incurred by Purchaser in connection with or relating to any misapplication or misuse of the down payment by the Escrow Agent.

5. **Waiver of Condition** In the event the Seller shall elect or be entitled to terminate the Contract pursuant to any of its terms or conditions, it is understood and agreed that the Purchaser, within ten (10) days after receipt of Seller's Notice of election to terminate, shall have the option to notify Seller that the Purchaser waives the condition under which Seller has elected to terminate. If Purchaser so notifies Seller, then the Purchaser and Seller shall continue with the Contract as if the provisions under which the Seller elected to terminate did not exist and the closing of title shall take place in accordance with all remaining terms and conditions of the Contract.

6. **Counterparts, Electronic Mail and Facsimile.** This Contract may be executed and delivered in any number of counterparts, each of such counterparts when taken together shall constitute one and the same original instrument. Facsimile signatures and electronic signatures shall be binding on the party delivering such signatures and shall have the same full force and effect as original signatures

7. In the event of the death of any person comprising the Purchaser prior to the Closing, this Contract shall terminate, the Contract deposit shall be returned, and the parties hereto shall have no further rights, obligations or liabilities under the Contract.

8. The parties mutually agree that all right, title and interest of the Seller in and to any and all personal property which may be in or upon the Premises and used in connection with the operation thereof, shall be deemed transferred or conveyed to the Purchaser under the deed of conveyance to be delivered, and that no part of the Purchase Price shall be deemed to have been paid by the Purchaser for the same.

9. Seller agrees that, prior to Closing, they will remove all personal property not included in the sale and repair any damage caused by such removal.

10. At the Closing, Seller shall deliver to Purchaser all keys to the doors of, and mailbox for, the Premises, as well as any alarm codes and garage door openers and codes.

11. Seller represents that: (i) any alterations made to the Premises by Seller were done in accordance with all applicable governmental regulations (including, without limitation, all zoning laws and building codes); (ii) all necessary permits and licenses were obtained and all required fees were paid in connection with such alterations; and (iii) all such alterations were approved by the appropriate governmental agency.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

12. Seller represents that the Purchase Price received from the sale of the Premises will be sufficient to satisfy and/or bond all liens and/or judgments against the Seller, if any. In the event the liens and/or judgments exceed the Purchase Price, Seller represents that Seller has sufficient monies to satisfy and/or bond all liens and/or judgments that exist against the Seller at Closing. In the event Seller is unable to satisfy any liens and/or judgments at Closing, Seller shall refund the Contract Deposit together with such interest as may have accrued thereon and the cost of the judgment/title report, and any non-refundable charges. Seller further represents that they are current on all payments due to their financial institution for any mortgage that is outstanding against the Premises. In the event a title report reflects any liens or judgments against a person with a similar name as the Seller, Seller shall provide an affidavit that said liens and/or judgments, if any, are filed against a person with a similar name and that said liens and/or judgments are not the Seller's. If Purchaser's lending institution does not agree to close because of any outstanding lien or judgment or unpaid real estate tax of the Seller or for any other reason except for bad faith by the Purchaser, which cannot be resolved to the satisfaction of the Purchaser's lending institution at or prior to Closing, then this Contract shall be deemed cancelled and the Contract Deposit refunded.

13. Seller, during the term of this Contract, will (i) not enter into any construction, management, maintenance or service contracts which might become the obligation of Purchaser, nor modify, amend, supplement, cancel, accept the surrender of or renew (except when any such surrender or renewal is non-discretionary) any such contracts which exist at present without Purchaser's prior written consent; and (ii) not create any new manner of lien or encumbrance, even if same can be satisfied at Closing, upon or affecting title to the Premises, without Purchaser's prior written consent. This representation shall survive Closing.

14. Seller shall execute and furnish any such usual and customary closing documents as are required by Purchaser's Lending Institution, including, but not limited to: the execution of affidavits, settlement statements, contract certifications, payment of taxes and 1099-S reporting forms. Pursuant to the Truth-In-Lending Act and Real Estate Settlement Procedures Act (TRID), the Seller acknowledges that the Purchaser's Lending Institution is required to deliver a Closing Disclosure (hereafter "CD") to Purchaser at least three (3) business days before the Closing and in practice may require closing figures from Seller and Purchaser seven (7) to ten (10) days in advance of Closing. Seller agrees to cooperate with Purchaser and Purchaser's Lending Institution by responding timely to requests for adjustments, payoff figures, check requests and other figures by Purchaser's Institutional Lender, Purchaser's Institutional Lender's attorney, or Title Company in order to complete the CD for any scheduled Closing. Seller acknowledges that failure to timely provide such information requests can delay the closing and cause the parties to incur additional expenses. Further, Seller shall not be entitled to declare a law date closing of title, in event they have not complied with the timely provision of information for the CD.

15. To the best of Seller's knowledge and belief, Seller represents that the Premises is not in a flood zone. Seller represents that they do not now carry flood insurance on the Premises and have not been requested to do so by their current mortgage lender, if

they have a mortgage outstanding. However, if Purchaser or Purchaser's mortgage lender determines the Premises to be in a flood zone and/or flood insurance is required, Purchaser shall have the option to terminate the Contract, in which event the Downpayment will be refunded immediately.

魏继英

Jiying Wei, *Seller*

DocuSigned by:
Sara DEO

Sara Deo, *Purchaser*

DocuSigned by:
anthony deo

*Anthony Deo, Purchaser*

DocuSign Envelope ID: 65132B55-B8CC-47E1-B91A-136EB5092C0B

RIDER TO CONTRACT OF SALE BETWEEN
JIYING WEI, SELLER
and
SARA DEO AND ANTHONY DEO, PURCHASERS

Dated: mm/dd/yyyy

29. **RIDER CONTROLS**

In the event of any inconsistency between the provisions of this Rider and those contained in the printed form Contract to which this Rider is annexed, the provisions of this Rider shall govern and be binding.

30. **OBJECTIONS TO TITLE**

Purchasers shall notify Seller, in writing, five 5 days before closing, of any objections to title. If there should appear any valid objections to title, Seller shall have a reasonable time within which to remove same. If, in the opinion of Seller, the objections cannot be removed or deemed too costly to do so, Seller shall have the option of returning to Purchasers the monies paid on account of this Contract and the parties hereto shall be mutually released.
Seller's attorneys receipt of Purchasers title commitment shall be deemed notice of any objections to title.

31. **ACCEPTABLE TITLE**

Purchasers agree to accept a title such as any reputable, licensed Title Insurance Company of Purchasers choosing will approve and insure, subject to the exceptions and conditions contained in the contract. A policy shall be deemed acceptable if it shall insure with marketable title the following:

(A) in case of encroachments, that the building or the portions thereof which encroach may remain undisturbed so long as the building stands;

(B) in the case of covenants, easements, agreements and restrictions of record, that they are not violated by the property or its use and that a violation thereof would not cause a forfeiture or reversion of title.

(C) in the case of transfer, inheritance, estate, franchise, dissolution, license or similar taxes, charges or liens of any nature not hereinbefore excepted, that the collection shall not be enforced against the premises;

32. **PURCHASER'S DEFAULT**

Notwithstanding the provisions of 23 (a) of this Contract, in the event that Purchasers default hereunder, Seller shall retain the right to enforce the provisions of 12 7.

33. **FURTHER "SUBJECT TO" PROVISIONS**

The premises are sold and shall be conveyed further subject to:

DocuSign Envelope ID: 85132B55-B8CC-47E1-B91A-136EB5092C0B

(A) covenants, restrictions, agreements and easements of record, provided that the title company will insure either that they are not violated by the property or its use or that a violation will not result in reversion or forfeiture of title;

(B) any easement or right of use in favor of any utility company for construction, use, maintenance, repair and replacement of all utility lines, wires, terminal boxes, main pipes, cables, conduits, poles, connections and other equipment on, under or across the Premises.

(C) standard exceptions contained in the form of fee title insurance policy then issued by the title insurance company insuring Purchasers' title to the Premises;

(D) variations between the record line of title and fences, retaining walls, hedges and the like, provided variation does not exceed 2 feet; and

(E) any state of facts shown on the survey of FirstName LastName and any state of facts that a personal inspection and an update to the survey of the Premises would show, provided same do not render title uninsurable.

So long as such exceptions in this paragraph 33 do not render title unmarketable.

34. **LEAD-BASED PAINT DISCLOSURE**

(A) The parties have reviewed, completed and signed their respective portions of the attached form entitled "Disclosure of Information on Lead Based Paint and Lead Based Paint Hazards."

(B) This Contract is contingent upon a risk assessment or inspection of the property for the presence of lead-based paint and/or lead based paint hazards at Purchasers' expense until after Contract ratification or a date mutually agreed upon. (Intact lead-based paint that is in good condition is not necessarily a hazard. See the EPA pamphlet *Protect Your Family from Lead in Your* Home for more information.) This contingency will terminate at the above predetermined deadline unless Purchasers (or Purchasers' agent) deliver to Seller (or Seller's agent), prior to said deadline, a written contract addendum listing the specific existing deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report. Seller may, at Seller's option, within after delivery of the addendum, elect in writing whether to correct the condition(s) prior to settlement. If Seller will correct the condition(s), Seller shall furnish Purchasers with certification from a risk assessor or inspector demonstrating that the condition has been remedied before the closing date. If Seller does not elect to make the repairs, or if Seller makes a counter offer, Purchasers shall days to respond to the counter offer or remove this contingency and take the property in "as is" condition or this Contract shall become void. Purchasers may remove this contingency at any time without cause.

35. **ALLOCATION OF PURCHASE PRICE**

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

Purchasers and Seller represent that the purchase price payable to Seller is attributable solely to the Premises and not any personal property contained therein.

36. **ACCEPTANCE OF DEED/FULL PERFORMANCE**

The acceptance of the deed by Purchasers shall be deemed to be a full performance and discharge of every agreement and obligation on the part of Seller to be performed under this Contract of Sale except those expressly stated to survive Closing. It is further agreed that Seller shall have no obligation or liability to make any repairs, improvements or decorations in or to the Premises or to any of the appliances, fixtures, equipment or installments contained therein except as specifically provided in this Contract.

37. **OFFER OF PURCHASER**

This instrument shall be considered only as an offer on the part of Purchasers and shall not be enforceable against either party until the same is executed by Seller and Purchasers, and delivered by Seller to Purchasers. Seller retains the right to negotiate with other prospective purchasers until this Contract is fully signed by Purchasers and Seller.

38. **PROPERTY CONDITION DISCLOSURE**

Seller hereby agrees to provide Purchasers at Closing a credit in the amount of $500.00, and Purchasers agree to accept same, in lieu of Seller's completion of a Property Condition Disclosure Statement.

39. **DOWNPAYMENT CHECK; CLOSING CHECKS; AND MANSION TAX**

(A) If the Downpayment made at the time of the execution of this Contract is made by check, and if said check fails due collection, Seller, at Seller's option, may declare this Contract null, void and of no force and effect, and may pursue his remedies against Purchasers upon said check or in any other manner permitted by law, such remedies being cumulative.

(B) Purchasers personally guarantee to Seller all funds that shall be submitted to Seller or to others at Seller's direction by Purchasers, or on behalf of Purchasers by others, including without limitation Purchasers' lender and/or Purchasers' lender's attorney; this guarantee shall survive closing and the delivery of the deed herein.

(C) Purchasers shall pay, at closing, the transfer taxes that are Purchasers' responsibility, including without limitation the "mansion tax" imposed by New York State. Seller shall pay the New York State transfer tax.

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-138EB5092C0B

40. **ASSESSMENTS**

Notwithstanding the provisions of Paragraph 18(d) of the printed Contract form, it is agreed that any assessment installment on the Premises as of the Closing date shall be adjusted between the parties and all installments due subsequent to the Closing Date shall be assumed by Purchasers.

41. **CLOSING LOCATION**

In the event that Purchasers obtain mortgage financing, Seller agrees to close this transaction at the office of Purchasers' lender's attorney, provided same is in County; in the event the closing occurs outside of County, Purchasers agree to pay Seller's attorney $000to cover the additional time required to attend the Closing.

42. **SUPPLEMENTING 16(e) : APPLICANCES & SYSTEMS**

~~Supplementing the provisions of Article 16(e) of the printed form Contract, Seller's responsibility with respect to repair and or replacement of appliances shall be limited $1,500 $200.00 per appliance and of all other systems therein shall be limited to $15,000 $200.00 per system; in the event a repair or replacement cannot be accomplished for said respective sum, Seller shall credit to Purchasers at closing the applicable maximum amount, as herein established, and Purchasers shall accept the appliance and/or system in the unrepaired or unreplaced state.~~

43. **SIGNING CONTRACT; GIVING NOTICES**

The parties agree that signatures on this Contract may be affixed or transmitted electronically, by facsimile, scan, or pdf, and that the Contract with said signatures shall be treated as original for all purposes herein. This agreement may be signed in counterparts which, when taken together, shall constitute one fully signed agreement.

Parties authorize their respective attorneys to provide and receive any notices required or permitted by this Contract. In addition, parties authorize their attorneys to initial any changes made to the Contract.

| | | | |
|---|---|---|---|
| Jiying Wei | Seller | DocuSigned by: Sara DEO<br>Sara Deo | Purchaser |
| | Seller | DocuSigned by: anthony deo<br>Anthony Deo | Purchaser |

DocuSign Envelope ID: 95132B55-B8CC-47E1-B91A-136EB5092C0B

| Attorney for Seller: | Attorney for Purchaser: |
| --- | --- |
| JUN WANG & ASSOCIATES, P.C. | Joseph C. Vozza Attorney At Law P.C. |
| Address: 1560 Broadway, Suite 1100<br>New York, NY 10036 | Address: 135 Pinelawn Road, Suite 125N<br>Melville, NY 11747 |
| Tel.: (212) 679-9700 | Tel.: (631) 719-9300 |
| Fax: (212) 679-9703 | Fax: (631) 759-4566 |

**ADDITIONAL RIDER TO CONTRACT OF SALE**
3 Hunting Lane, Old Westbury, NY 11568
Jiying Wei, Seller to Sara Deo and Anthony Deo, Purchasers

R1. In the event of any inconsistency between the provisions of this Additional Rider and those contained in the printed form of the Contract of Sale or any other Rider annexed hereto, the provisions of this Additional Rider shall govern and be binding.

R2. Repairs. As a condition to closing, Purchaser at its sole cost and expense, shall perform the following repairs in a workmanlike and professional manner by a licensed and insured company:

i. Mold Remediation;
ii. Structural Remediation;
iii. Repair of sewer lines and cesspool;
iv. All other necessary work to qualify the property for financing

Seller shall not be responsible or liable for any expense or cost for the above-mentioned repairs, the Purchaser will not receive a refund or reimbursement which have been paid if the closing does not occur or the contract is cancelled.

R3. Seller shall allow Purchaser access to the premises during standard business hours of 8am to 5pm, Monday through Friday and on Saturday from 8am to 1pm to perform such repairs.

R4. Purchaser shall pay Seller the sum of twenty thousand and 00/100 dollars ($20,000) per month commencing on the 1st day of each month for a period of six (6) months. Each payment of twenty thousand and 00/100 dollars ($20,000) shall be a credit towards the purchase price at closing. Purchaser shall have the option to cancel the Lease at any time upon 15 days' notice to Seller.

R5. In the event the bank rejects the loan due to any reason of the Purchaser side, the Purchaser shall not have the right to cancel the contract with deposit back as stated in Para 8 of the Contract of sale. Seller reserves the right to cancel the contract and keep all downpayment as liquidated damages.

Jiying Wei, Seller

DocuSigned by:
Sara DEO
Sara Deo, Purchaser

DocuSigned by:
anthony deo
Anthony Deo, Purchaser