Westlake Financial®

**LEGAL DEPARTMENT**
Tel: (323) 837-5851
Fax: (323) 330-8626
subpoenas_legal@westlakefinancial.com

**VIA EMAIL**

Emanuel Kataev
Sage Legal, LLC
emanuel@sagelegal.nyc

**Affidavit**

Re: *Superb Motors Inc., et al. v. Anthony Deo, et al.*
U.S. District Court, Eastern District of New York
Case No. 2:23-cv-6188 (JMW)
Our account number: [redacted]

I, the undersigned, declare:

I am a duly authorized custodian of records for Westlake Services, LLC dba Westlake Financial ("Westlake") and have authority to certify the records.

1. The records attached hereto are true and correct copies of records on file with Westlake and responsive to the subpoena.

2. The records were received by Westlake or prepared by employees of Westlake in the ordinary course of business at or near the time of the act, condition, or event described in the records.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 3, 2026

*Evangelina Calderon*
Evangelina Calderon
Sr. Corporate Paralegal

Westlake Financial®

**LEGAL DEPARTMENT**
Tel: (323) 837-5851
Fax: (323) 330-8626
subpoenas_legal@westlakefinancial.com

**Declaration of Itemized Statement of Costs for Subpoena**

February 3, 2026

Re: *Superb Motors Inc., et al. v. Anthony Deo, et al.*
U.S. District Court, Eastern District of New York
Case No. 2:23-cv-6188 (JMW)
Our account number: [redacted]

**Federal Tax ID Number:** [redacted]

**Deliver to Payee by Check:**

Payable to: Westlake Services, LLC

Memo: Subpoena Reimbursement Fees

Attention: Legal Department / Evangelina Calderon
Westlake Financial
4751 Wilshire Boulevard, Suite 100
Los Angeles, California 90010

Please submit payment within 30 days of receipt of documents in compliance with the subpoena.*

**Itemized Statement of Costs**

| | Quantity | Price Per | Amount |
|---|---|---|---|
| Reproduction (Pages) | 17.0 | $ 0.10 | $ 1.70 |
| Search and Processing | 1.0 | $ 25.00 | $ 25.00 |
| USB | | $ 7.50 | $ - |
| Witness Fee (CA) | | $ 15.00 | $ - |
| | | Total Amount Claimed | **$ 26.70** |

Evangelina Calderon — Printed Name of Payee's Representative

*Evangelina Calderon* — Signature of Payee's Representative

* Itemized Statement of Costs to be paid upon delivery of copy of the records. *See* CAL. EVID. CODE § 1563(b)(2). Relevant portions of California Evidence Code section 1563(b) can be found on the next page.

Westlake Financial®

**LEGAL DEPARTMENT**
Tel: (323) 837-5851
Fax: (323) 330-8626
subpoenas_legal@westlakefinancial.com

California Evidence Code section 1563(b) states, in pertinent part:

(1) "Reasonable cost," as used in this section, shall include, but not be limited to, the following specific costs: ten cents ($0.10) per page for standard reproduction of documents of a size 8 1/2 by 14 inches or less; twenty cents ($0.20) per page for copying of documents from microfilm; actual costs for the reproduction of oversize documents or the reproduction of documents requiring special processing which are made in response to a subpoena; reasonable clerical costs incurred in locating and making the records available to be billed at the maximum rate of twenty-four dollars ($24) per hour per person, computed on the basis of six dollars ($6) per quarter hour or fraction thereof; actual postage charges; and the actual cost, if any, charged to the witness by a third person for the retrieval and return of records held offsite by that third person.

(2) The requesting party, or the requesting party's deposition officer, shall not be required to pay those costs or any estimate thereof prior to the time the records are available for delivery pursuant to the subpoena, but the witness may demand payment of costs pursuant to this section simultaneous with actual delivery of the subpoenaed records, and until payment is made, is under no obligation to deliver the records.

(3) The witness shall submit an itemized statement for the costs to the requesting party, or the requesting party's deposition officer, setting forth the reproduction and clerical costs incurred by the witness. Upon demand by the requesting party, the witness shall furnish a statement setting forth the actions taken by the witness in justification of the costs.

Westlake Financial Services®

# Dealer Agreement

## FOR FRANCHISE & NON-FRANCHISE DEALERS

4751 Wilshire Boulevard, Suite 100
Los Angeles, California 90010
(888) 8-YES-YES

**Northshore Motor Leasing LLC**
**Brian Chabrier**
**Westlake Rep: Risa Juarez**

To qualify as an approved Westlake Financial Services Dealership, we require these items:

- Certificate of Authority License
- Articles of Incorporation
- DMV License
- Voided Check with ACH Doc
- Master Dealer Agreement
- Operating Agreement
- Business License
- Signed PictureID

Please fax these items to (888) 267-1056. If you have any questions or concerns please call (888) 893-7937.

version 10.2019

Westlake Financial Services®

# MASTER DEALER AGREEMENT

This Master Dealer Agreement ("Agreement") is executed as of the Effective date below by and between Westlake Services, LLC, a California limited liability company, dba Westlake Financial Services ("Westlake") and **Northshore Motor Leasing LLC** ("Dealer"). From time to time Westlake and Dealer are referred to herein as a "Party" or collectively as "Parties."

Dealer is engaged in the business of selling new and/or used automobiles, motorcycles, powersport units, and/or other consumer goods (each a "Unit", or collectively, "Units") and in Dealer's ordinary course of business, Dealer arranges financing for the purchase of Units by Dealer's Customers. ("Customer" means any person or other legal entity that purchases a Unit from Dealer, including any co-buyer, co-signer, or guarantor.)

Westlake is engaged in the business of acquiring and holding retail installment sales contracts for motor vehicles.

Periodically, Dealer may offer to sell, and Westlake may desire to buy, certain retail installment contracts ("Contract", or collectively, "Contracts") entered into by Dealer and Customer in the course of financing the purchase of Units.

Therefore, in consideration for the mutual promises contained herein, and other good and valuable consideration, the sufficiency of which the Parties acknowledge, Westlake and Dealer agree, with respect to all Contracts purchased before, on, or after the Effective Date, as follows:

## 1. Sale and Purchase of Contracts

The Parties agree Westlake is under no obligation to purchase any Contracts from Dealer, nor is Dealer under any obligation to sell any Contracts to Westlake. All Contracts must be on forms satisfactory to Westlake, and otherwise acceptable to Westlake. Notwithstanding anything to the contrary in any assignment document executed by Dealer, all Contracts shall be deemed to have been assigned subject to Westlake's right to require repurchase pursuant to Section 6 hereof and as otherwise set forth in this Agreement. Dealer further agrees to abide by the terms of Westlake's policies and program guidelines then in effect at the time of assignment of the Contract.

The Parties agree that the purchase of a Contract will occur when Westlake forwards funds to Dealer or credits Dealer's account after receipt and verification of the information provided by Dealer pursuant to Section 2. For each Contract Westlake decides it will purchase, Dealer agrees to execute an assignment of the Contract in a form acceptable to Westlake. Such assignment shall include all of Dealer's right, title, and interest in the Unit, and any guaranties, warranties or other documents executed in connection with the Contract.

## 2. Purchase Price

For each Contract Westlake agrees to purchase, Westlake will pay Dealer the "Amount Financed" as reflected in the Contract, less an agreed-upon discount and acquisition fee, less any insurance premiums advanced by Westlake, exclusive of financing charges included in the Contract ("Purchase Price"). Westlake is under no obligation to pay the Purchase Price unless and until it receives and verifies within thirty (30) days of its conditional approval of the Contract certain documents specified by Westlake, including but not limited to the following:

(a) the original executed Contract and a true and correct copy of all other related documents in correct and complete form properly executed by Customer and an appropriate assignment of the Contract by Dealer to Westlake;

(b) a copy of the application for title to the Unit, including all attachments submitted by Dealer to the appropriate governmental agency showing the interests in the Unit as directed by Westlake;

(c) if required by law, a notice to Customer that Dealer has assigned the Contract to Westlake;

(d) a copy of any mechanical breakdown protection contract or service contract sold in connection with the financing of the Unit;

(e) written verification of insurance satisfactory to Westlake as provided in Section 4 of this Agreement; and

(f) to the extent permitted by applicable law, all such credit information Dealer may have concerning Customer.

## 3. Dealer's Representations, Warranties and Covenants

As of the date of this Agreement set forth below, and continuing during the time this Agreement is in effect, Dealer represents and warrants that:

(a) Dealer is in good standing in the state of its incorporation or organization, Dealer is qualified as a foreign corporation or organization in any state where applicable;

(b) Dealer has all licenses and authorizations required to enter into the Contracts, and otherwise required by applicable law, in each state where Dealer has a place of business, and to otherwise perform its duties contemplated under this Agreement.

(c) Dealer has taken actions required to enter into this Agreement and will undertake to perform all actions to further the purpose of this Agreement; and

(d) Dealer will comply with all applicable federal, state and local laws, rules and regulations, including without limitation, all consumer protection laws, the Federal Truth in Lending Act/Regulation Z, the Fair Credit Reporting Act, the Gramm-Leach-Bliley Act, the Federal Equal Credit Opportunity Act/Regulation B, The Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act (E-SIGN).

(e) No legal, administrative or arbitration proceedings are pending or threatened against Dealer, which could reasonably affect Dealer, its business, or Dealer's ability to repay all liabilities or otherwise meet its obligations under the Agreement (each, a "Proceeding"), and Dealer shall immediately notify Westlake in writing in the event of a proceeding.

As to each Contract sold by Dealer to Westlake, Dealer hereby represents and warrants that, as of the time of assignment that:

(f) Each Contract contains a bona fide Unit for sale for the amount set forth therein, and that the description of the Unit contained in such

Westlake Financial Services®

Contract and as represented by Dealer to Westlake is in all respects accurate, true and complete;

(g) Each Contract accurately reflects a genuine transaction between the Dealer and the Customer in all particulars. At least one Customer identified in the Contract is the primary driver of the Unit, and the Unit has been delivered to such Customer;

(h) The Unit is in good working condition;

(i) All services contracted for have been provided or performed by Dealer;

(j) Dealer has obtained from Customer permission to forward Customer's credit application to Westlake, and permission for Westlake to verify Customer's credit, including but not limited to, obtaining credit reports from credit reporting agencies;

(k) All credit information furnished by Customer to Dealer and transmitted by Dealer to Westlake is true and correct;

(l) Any down payment described in the Contract or on the credit application has been made by Customer in cash, check or its equivalent, excluding credit card, that no portion thereof shall have been directly or indirectly advanced by Dealer, and that there is no portion of the down payment that has been deferred by the Dealer which has not been disclosed in the Contract;

(m) All agreements and warranties of Dealer relative to the Unit are contained either in the Contract or in this Agreement, and Dealer has made all disclosures required by applicable law to be made in connection with the Unit and the Contract, including disclosures required in any advertisement of the sale transaction and any related purchase order;

(n) Dealer has performed all obligations, including, but not limited to submitting the required funds and application to the proper provider, for any service contract specified in the Contract;

(o) Customer has no legal or equitable defenses, setoff, or counterclaims as to the enforcement of any Contract arising out of Dealer's conduct;

(p) Unless otherwise acknowledged and agreed to by Westlake in writing, the certificate of title for the Unit has not been issued as an impaired or branded title, including, but not limited to, salvage titles, prior government use, remanufactured, manufacturer lemon law buybacks, flood damage, or gray market title, and the Unit is in fact not salvage, prior government use, remanufactured, a manufacturer lemon law buyback, or flood damaged;

(q) Dealer has good and marketable title to the Unit subject only to the rights of Customer;

(r) Dealer has caused title to the Unit, free of any lien or encumbrance, and a sole perfected first lien security interest in the Unit to be conveyed to Westlake within the time provided herein;

(s) Dealer has not made any false or misleading representations to Customer as to the price, quality of product, manufacturer, dealer's warranty, or any other false statement which misleads or confuses the Customer;

(t) There is no fact or circumstance which would indicate that the Contract is not valid or collectable;

(u) There is only one (1) Contract in connection with the sale of the Unit to Customer and an exact, completely filled-in, legible copy of the Contract was delivered to Customer prior to the time of its execution. Where required by state law, Dealer has provided Customer with a completely filled-in, unexecuted translation copy of the Contract in the language in which the negotiations were conducted, prior to the time of execution of the Contract;

(v) The Contract and each other instrument executed in connection with the Contract and all signatures thereon are genuine, each such instrument having been duly authorized and executed, all parties thereto are adults with full legal capacity to contract and such instrument is valid, binding and enforceable in accordance with its terms and against all parties thereto except as enforcement may be affected by bankruptcy and similar law affecting creditor's rights generally;

(w) Dealer has not charged Customer for filing fees or other costs paid by Dealer to a public agency to perfect a security interest in the Unit, except where allowed by law, and Dealer has not charged any other fees, other than finance charges, unless those charges are also charged in cash transactions;

(x) Dealer has not increased the sales price of a Unit based on any of the terms, rates, discounts, or other conditions imposed by, or negotiated with Westlake to purchase a Contract. Dealer will not alter the sales price of a Unit agreed upon between Dealer and Customer based on the Dealer's intent to assign or sell the Contract to Westlake;

(y) Unit has not been sold to any employee of the Dealer or to any family member of an employee of Dealer or Principal Guarantor without Westlake's prior, written consent;

(z) Dealer has verified that Customer has insurance providing the coverage required under the Contract and by applicable law; and

(aa) Possession of the Unit was not obtained by Customer by any fraudulent scheme, trick, or device. Sale of the Contract to Westlake was not accomplished by Dealer's use of any fraudulent scheme, trick, or device.

Dealer makes the further continuing representations and warranties:

(bb) In the event of repossession, Dealer will cancel any insurance financed in the Contract, and return the unused portion to Westlake;

(cc) Dealer will take such action as is necessary or as Westlake may reasonably request to evidence and perfect Westlake's interest in a Contract, its proceeds, and any Unit;

(dd) Dealer will not represent that it is an agent or representative of Westlake or any of its subsidiaries or affiliates for any purpose. Dealer is not granted any express or implied right to bind Westlake or its subsidiaries or affiliates in any manner;

(ee) Dealer will not accept any payments on any Contracts sold to Westlake, without prior written authorization from Westlake; and

(ff) Dealer will not make any payments on behalf of the Customer to Westlake and will not accept any payments from Customer, without prior written authorization from Westlake.

Westlake Financial Services

## 4. Insurance

All Contracts submitted to Westlake for approval shall be accompanied by evidence of either (a) a pre-existing full coverage insurance policy naming the Customer as an insured and underwritten by an insurance company acceptable to Westlake, or (b) a Comprehensive and Collision insurance policy pre-paid for six (6) months following Customer's purchase of the Unit. In either instance, the maximum deductible shall be no more than five hundred dollars ($500.00). Westlake must be named as a loss payee on any evidence of insurance submitted pursuant to this Section.

Should Customer choose to purchase insurance from Dealer as required by this Section, Dealer may include the cost of such insurance in the "Amount Financed" in the Contract, subject to certain limitations as determined by Westlake, and place coverage with an insurance company designated by Westlake. Dealer shall not receive a commission on any such insurance policy. Dealer further agrees to follow all policies and procedures required by Westlake, as amended from time to time by written notice to Dealer, regarding the financing of insurance. In addition to Dealer's other obligations under this Section, Dealer agrees to provide such other insurance documentation as Westlake may reasonably require.

## 5. Service Contract

Dealer agrees to comply with Westlake's policies and procedures regarding the administrator, underwriter, form and price of any extended service contract, limited warranty or mechanical breakdown protection contract ("Service Contract"). Dealer further agrees to cancel the Service Contract upon Customer's written request, or where applicable, Westlake's written request, and to remit or cause the administrator or underwriter to remit and refund the unearned portion of the Service Contract premium to Westlake, as required by Westlake. Any Contract providing for a Service Contract will also provide that Westlake must be named lienholder on such Service Contract.

## 6. Repurchase Contract

Notwithstanding any other provision of this Agreement, the Parties agree that on seven (7) days' written notice by Westlake, Dealer agrees to repurchase a Contract for any failure by Dealer to perform any obligations, or breach by Dealer of any representation, warranty or covenant set forth in this Agreement. In addition, Westlake may require Dealer to repurchase and take re-assignment of any Contract upon the occurrence of any of the following events:

(a) Customer fails to tender by the due date specified in the Contract the first payment due and payable to Westlake by Customer under the Contract (hereinafter "First Payment Default"). If the first payment is deducted from the Dealer's proceeds, the deduction does not release Dealer from any obligation under the First Payment Default repurchase provision of this Paragraph 6. If the first payment is deducted from Dealer's proceeds, the first payment due to Westlake from the Customer will then be the second regularly scheduled payment under the Contract, and that payment will be subject to the First Payment Default provisions of this Agreement;

(b) Dealer breaches any express or implied warranties of merchantability or fitness relating to the Unit;

(c) Dealer, or any of Dealer's affiliates, takes possession of the Unit after sale to the Customer, whether by repossession, for repairs, or for storage, by the Dealer without Westlake's prior written consent or, if Customer returns the Unit to the Dealer and Dealer does not notify Westlake of such event in writing and by telephone within five (5) calendar days;

(d) Customer fails to pay any deferred or remaining down payment provided in the Contract;

(e) Dealer has not perfected Westlake's lien on the Unit within 30 days of Contract date or within a lesser time period if required by applicable law, to properly perfect a valid and enforceable first priority security interest of Westlake in the Unit;

(f) Westlake has not received a certificate of title or other evidence of security interest in the Unit within sixty (60) days of purchase of any Contract;

(g) Customer has made a "holder in due course" demand against Westlake or initiated litigation against Dealer and Westlake as "holder in due course";

(h) Dealer breaches any of the representations, warranties or covenants specified herein, above, in Section 3 of this Agreement;

(i) The Contract is rescinded by operation of law, or by mutual agreement between Dealer and Customer; or

(j) The Unit related to the Contract becomes subject to impound, repair lien, or storage lien prior to Westlake's receipt of a certificate of title or other evidence of security interest in the Unit or within 60 days of the Contract date.

In the event of a First Payment Default, the repurchase price shall be equal to the amount paid by Westlake to Dealer for the purchase of the Contract plus any acquisition fee and repossession fees, if paid within seven (7) days after written demand for repurchase. If paid after seven (7) days for a First Payment Default, the repurchase price shall be the total then owed by Customer in the event of prepayment of the Contract plus any acquisition fee, minus any unearned interest and unearned insurance policy premiums paid by Westlake, and minus any unearned discount. Under all circumstances other than a First Payment Default where repurchase is demanded, the repurchase price shall be the total then owed by Customer in the event of prepayment of the Contract plus any acquisition fee, minus any unearned interest and unearned insurance policy premiums paid by Westlake, and minus any unearned discount, if paid within seven (7) days after written demand. In circumstances other than a First Payment Default, if not paid within seven (7) days after written demand for repurchase, such repurchase price shall be the total payoff balance of the Contract.

The repurchase price will be reduced to the extent of Customer payments to the extent attributable to principal paydown. The repurchase price will not be affected by the physical condition of the Unit, regardless of whether the Unit has been damaged or modified by Customer which reduces the value or causes Unit to be worthless, and regardless of whether the unit has been forfeited due to seizure, impoundment, or

Westlake Financial Services

abandonment. Westlake has no obligation to repossess or otherwise secure the Unit as a condition of requiring Dealer to repurchase a Contract. Dealer agrees that it will not repossess any Unit until after the repurchase is complete and the Contract has been reassigned back to Dealer.

**7. Dealer's Title Guarantee**

Dealer agrees that not later than thirty (30) days from the Contract date, Dealer has taken all steps necessary to perfect Westlake's security interest in the Unit and has caused an application for title, and where separately applied for, registration, to the Unit to be submitted to the appropriate government agency in Customer's state of residence showing Westlake's interests in the Unit. Dealer guarantees to provide Westlake with an unbranded certificate of title or other appropriate evidence of Westlake's security interest in the Unit not later than sixty (60) days from the date Westlake purchases any Contract. Failure to provide such certificate of title or evidence of Westlake's security interest shall be cause for repurchase of the Contract pursuant to Section 6 of this Agreement.

**8. Fiduciary Obligation of Dealer**

To the extent that Dealer has an outstanding obligation with any floorplan lender or other party holding a security interest in the Unit related to the Contract assigned to Westlake, Dealer agrees to remit the advance received from Westlake necessary to satisfy any amounts due and payable to any such floorplan lender or other party acknowledges that Dealer owes a fiduciary duty to Westlake to do so.

**9. Waiver**

Any waiver of a default or provision under this Agreement must be in writing. No such waiver constitutes a waiver of any other default or provision concerning the same or any other provision of this Agreement. No delay or omission by Westlake or Dealer in the exercise of any of its rights or remedies under this Agreement constitutes a waiver of, or otherwise impairs such right or remedy. A consent by one Party to or approval of an act by another Party does not waive or render unnecessary the consent to or approval of any other or subsequent act.

**10. Offset; Forfeiture**

Westlake may hold any property (and proceeds thereof) or funds belonging to or payable to Dealer or any of its affiliates ("Offset Funds") and apply such Offset Funds to any outstanding Liabilities of Dealer, including any amounts payable to satisfy Dealer's obligations under Section 6, or to any amounts owing by Dealer to any affiliate of Westlake, and Dealer hereby grants to Westlake or its affiliates, as the case may be, a lien on such Offset Funds. Westlake may at any time and in its sole and absolute discretion, for its benefit and the benefit of its affiliates, apply any or all of the Offset Funds to any outstanding liabilities of or to any amounts owing by Dealer to Westlake or any of its affiliates. Dealer expressly waives any requirement of maturity or mutuality among Westlake and its various affiliates.

In the event Dealer (1) is deemed to be out of business, (2) fails to provide Westlake bank account or other information necessary for Westlake to remit funds to Dealer, rendering Westlake unable to remit funds to Dealer for a period of 180 days, or (3) Westlake terminates this Agreement as a result of Dealer's fraud, intentional misconduct, or gross negligence, Dealer shall forfeit any amounts held or otherwise due and owing from Westlake to Dealer arising from or relating to this Agreement or any other agreement with Westlake or its affiliates, including reserve, profit sharing and participation interest.

**11. Modification**

This Agreement can be modified only by the written consent of both Parties.

**12. Westlake Program Policies**

Dealer accepts and agrees to abide by the terms and conditions for each applicable program as set forth in the Westlake Dealer Training Manuals and Reference Guidelines, as amended. Dealer further understands and agrees that Westlake may, from time to time, change its methodology, guidelines, requirements or policies related to its purchase of Contracts from Dealer, including, but not limited to, the terms and conditions of the Westlake Dealer Training Manuals and Reference Guidelines. Such modification shall be effective upon written Notice to Dealer pursuant to Section 14 hereof.

**13. Termination**

This Agreement may be terminated by either Party upon three (3) days prior written notice. No termination shall affect the rights and obligations of the Parties as to any Contract previously purchased hereunder. Dealer's obligations to repurchase Contracts pursuant to the terms of this Agreement shall survive the termination of this Agreement.

**14. Notices**

All notices hereunder shall be in writing and shall be effective upon personal delivery, facsimile or deposit in the U.S. mail and addressed to address set forth on the last page hereof or such other address of which the Party may designate. In addition, Westlake may amend its program policies in accordance with Section 12 by conspicuously posting notice of such change on its website, or www.dealercenter.com. Each Party shall properly provide the other with notice of any change in address.

Westlake Financial Services®

## 15. Indemnification

Dealer agrees to assume the defense and indemnify Westlake against any third-party claims, lawsuits, arbitrations, administrative claims, or other proceedings in which Westlake is named as a party or potential party and relating in any way to Dealer's failure to comply with the provisions of this Agreement or any applicable law, including all consumer protection laws. To the full extent permitted by law, Dealer further agrees to hold harmless Westlake, its directors, officers and employees for all losses and reasonable expenses, including attorney's fees, settlements and judgments, incurred by Westlake in connection with any such third-party claims. Dealer's obligation to defend and indemnify Westlake under this Section will apply regardless of whether the third-party claim arises in contract, tort, negligence, strict liability or otherwise, except for third-party claims that allege the sole fault or negligence of Westlake.

## 16. Legal Fees and Collection Costs

Dealer shall pay to Westlake all reasonable legal fees, expenses, and collection costs, including, but not limited to, repossession and impound fees, incurred by Westlake, its affiliates, and/or representatives as a result of Dealer's failure to perform any obligation under this Agreement and/or Dealer's unsuccessful prosecution or affirmative claims or counterclaims against such party or parties.

## 17. Choice of Law; Jurisdiction and Venue; Attorneys' Fees

This Agreement shall be governed by the laws of the State of California, without regard to conflict of laws provisions. As evidenced by Dealer's signature below, Dealer agrees that any and all claims or disputes pertaining to this Agreement, or to any matter arising out of or related to this Agreement, initiated by Dealer against Westlake, shall be exclusively brought in the state courts of Los Angeles County, California, and waives any objection based upon lack of personal jurisdiction, improper venue, or forum non-convenient with respect to any such action. Further, Dealer expressly consents to the exclusive jurisdiction and venue of the state courts of Los Angeles County, California, as to any legal or equitable action that may be brought in such court by Westlake, and waives any objection based upon lack of personal jurisdiction, improper venue, or forum non-convenient with respect to any such action. Dealer acknowledges and agrees that Westlake reserves the right to initiate and prosecute any action against Dealer in any court of competent jurisdiction, and Borrower consents to such forum as Westlake may elect. To the extent that Dealer initiates any claims or defenses contrary to the foregoing, Dealer expressly agrees to take all actions necessary to transfer venue in accordance with this section and to reimburse Westlake for all costs, fees and reasonable attorneys' fees in enforcing this section. The prevailing Party in any action or proceeding arising from or related to this Agreement shall be entitled to recover all costs and reasonable attorneys' fees from the non-prevailing Party.

TO THE MAXIMUM EXTENT PERMITTED BY LAW, THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION BASED UPON, ARISING UNDER OR IN ANY WAY RELATED TO THE DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE. THE PARTIES AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY. EACH PARTY FURTHER WAIVES ANY RIGHT THAT IT MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST THE OTHER PARTY.

## 18. Severability, Integration and Prevailing Agreement

This Agreement constitutes the entire agreement between the Parties and supersedes all prior negotiations and agreements. This Agreement shall apply to any Contracts previously purchased from Dealer by Westlake pursuant to any prior agreement. The Parties intend that this Agreement be enforced to the fullest extent, and the invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision of this Agreement.

## 19. Termination

No termination of this Agreement shall alter Dealer's obligations and liabilities to Westlake including any Contracts purchased by Westlake prior to the effective date of such termination. Westlake's rights and remedies shall extend until all liabilities owed by Dealer to Westlake have been indefeasibly paid and satisfied in full.

## 20. Time Defenses Tolling

With the respect to any and all claims or causes of action, known or unknown, relating to, arising out of, or in connection with, this Agreement, that Westlake may make or raise, including but not limited to claims for breach of contract, fraud, or any other claims or causes of action whatsoever (collectively, the "Tolled Claims"), the parties hereby stipulate that any applicable statute of limitations, laches, and other possible time-bars and defenses based in whole or in part on the time which may elapse from the accrual of such claims to the filing of an action applicable to the Tolled Claims shall be deemed tolled until all liabilities and obligations arising from and related to this Agreement have been satisfied.

## 21. Advice of Counsel and Interpretation

The Parties represent that they have had the opportunity to discuss this Agreement with legal counsel and they have either discussed this Agreement with legal counsel or have opted not to discuss this Agreement with legal counsel. The Parties also agree that they shall not deny the

Westlake Financial Services®

validity of this Agreement on the ground that such Party did not have the advice of legal counsel. The Parties further agree that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not apply to the interpretation of this Agreement or any addendum, amendment, or exhibits thereto.

## 22. Additional Documents and Showings

Dealer agrees to provide Westlake with such information and documents that Westlake may request from time to time as Westlake may request, including but not limited to, Dealer's financial statements, evidence of compliance by Dealer with all of Dealer's obligations hereunder, and evidence relating to all warranties and representations of Dealer hereunder. Dealer agrees that Westlake may investigate Dealer's creditworthiness and credit capacity.

## 23. Notice of Dealership Changes / DMV Actions

Dealer shall give notice to Westlake of any material or significant changes in the ownership, structure or business of Dealer, including, but not limited to the death of any principal, dissolution, insolvency, bankruptcy, reorganization, merger or consolidation, any sale of assets or stock or conversion to another legal structure or type of business, or cessation of business. Such notice shall be provided in writing within thirty (30) days of the occurrence of any of those changes set forth above. Dealer shall also provide notice to Westlake of any DMV actions, administrative or criminal charges filed against the Dealer, or any claims made against the Dealer's bond, within thirty (30) days of any such charges filed or actions taken against the Dealer.

## 24. Nonpublic Personal Information

The Parties represent and warrant that each maintains, and will continue to maintain, appropriate information security programs and measures designed to ensure the security and confidentiality of "nonpublic personal information" ("NPI") (as defined in the Gramm-Leach-Bliley Act (15 U.S.C. § 6801 et seq.) and any rules promulgated thereunder). Such information security programs and measures shall include appropriate procedures designed to (a) protect against anticipated threats or hazards to the security or integrity of NPI; (b) protect the security of NPI; and (c) to protect against unauthorized access to or use of NPI. The Parties further agree that, except as may be required or allowed by law, they will not disclose any NPI to any third party, and will not use NPI other than to carry out the purposes for which it was disclosed, unless another use is expressly permitted by a written agreement executed by the other Party or required by law. Each Party shall have access, upon reasonable notice, to review any internal and external audits and records of the other as may be reasonably necessary to assess compliance with the security provisions of this Agreement. Each party shall promptly notify the other if it receives any complaint or notice concerning a violation of privacy rights or becomes aware of a breach of customer data security

## 25. Non-Disclosure of Confidential Information

Dealer acknowledges and agrees that Westlake has developed and acquired certain confidential, proprietary information and trade secrets regarding its business, including, but not limited to, the contents of this Agreement and any other agreements between Dealer and Westlake, its products, fee structures, customer and dealer data, marketing plans and strategies, business plans and strategies, pricing and purchasing policies and practices, computer software, programs, source code, algorithms, record layouts, routines, report formats, data, compilers, assemblers, design concepts, inventions, discoveries, copyrights, concepts and ideas, patents, patent applications, know-how, processes and methods, and other proprietary business information and intellectual property (collectively, "Confidential Information"), all of which are valuable assets of Westlake. Dealer further acknowledges and agrees that it has been or will be granted access to Confidential Information, and that the economic value of Confidential Information would be destroyed by its unauthorized disclosure, thereby causing significant harm to Westlake, and that this Section is necessary to protect the value of Confidential Information. Therefore, Dealer agrees to keep all Confidential Information confidential and will not directly or indirectly disclose or reveal to any third party or utilize for its own benefit, other than pursuant to this Agreement, any Confidential Information and any information derived therefrom. Dealer further agrees to notify Westlake in the event that it discovers any unauthorized disclosure of Confidential Information and agrees to take all reasonable steps to preserve the confidentiality of Confidential Information. Dealer shall assume responsibility that its employees will similarly preserve Confidential Information and agrees to limit access to Confidential Information to only those employees that have a bona fide need to know Confidential Information. Dealer agrees that upon termination of this Agreement, Dealer will discontinue all use of Confidential Information and, at no cost to Westlake, promptly return all Confidential Information disclosed during the term of this Agreement and any information derived therefrom. The confidentiality obligations of Dealer under this Section shall survive termination of this Agreement. Dealer also agrees that its obligations under this Section shall also apply to any confidential information or trade secrets of any third party which Westlake has agreed to keep confidential and not disclose, and which Dealer has actual or constructive notice of such agreement.

The Parties recognize that money damages would not be an adequate remedy to Westlake for breach of this Section and agree that in the event of a breach of this Section, Westlake is entitled to seek additional judicial relief, including, but not limited to, restraining orders, injunctions and an accounting.

## 26. Use of Name, Logo, Mark, Trademark

Dealer shall not use for publicity, promotion, or otherwise, any logo, name, trade name, service mark, or trademark of Westlake, or any simulation, abbreviation, or adaptation of the same, or the name of any employee or agent of Westlake, without Westlake's prior, written, express consent, which may be withheld in Westlake's absolute discretion.

Westlake Financial Services®

**27. Information Sharing**
Dealer acknowledges and agrees that Westlake may share any information concerning Dealer received from or on behalf of Dealer or its representatives with any of Westlake's affiliates, its business partners, and its representatives for the purposes of this Agreement or any other actual or potential agreement with Westlake's affiliates or business partners.

**28. Electronic Contracts**
Dealer acknowledges and agrees to the requirements for the use of electronic records with Customers as set forth in Attachment A attached hereto.

**29. General**
This Agreement inures to the benefit of and is binding upon the heirs, legatees, personal representatives, successors and assigns of the Parties. Dealer agrees that it may not assign its rights or duties without the prior written consent of Westlake. The Parties agree that neither Party is a partner, joint venturer, legal representative, or agent of the other Party or any of its subsidiaries or affiliates. Dealer further agrees that this Agreement is binding on all locations and fictitious business organizations under which Dealer may operate. Section titles are for convenience only and are not part of the terms hereof. Each signatory hereto warrants and represents that he or she is legally competent in all respects and is authorized to enter into this Agreement on behalf of the Party for which he or she purports to sign.

**30. Signing Authority**
Dealer hereby represents and warrants that all Dealer representatives (each a "Dealer Signatory"), who provide any and all documentation from Dealer to Westlake and/or sign or otherwise hold themselves out as representing or having the ability to bind Dealer are authorized by the Dealer as signatories for Westlake contracts and Westlake shall have no obligation whatsoever to otherwise confirm such Dealer Signatory's authority

**31. Communication**
Dealer hereby expressly authorizes Lender and its affiliates to communicate with Dealer via facsimile transmissions, email messages, telephonic transmissions , to a commercial or residential telephone line or cell phone, including text messaging, using an automatic telephone dialing system or an artificial or prerecorded voice message, and/or any other forms of communication, for any purpose, including general business matters, account information, marketing materials, collection, and/or any other communication needs. Dealer acknowledges and agrees that such express permission shall extend to any and all of the contact information that Dealer has provided herein, including any physical and email addresses, phone numbers, fax numbers, etc., and to such other addresses, phone numbers, email addresses, online chat, social media platforms, etc. that Dealer may provide to Lender or that Lender may obtain from any third party at a later date.

Westlake Financial Services®

In witness whereof, the Parties have executed this Agreement as of **Monday, December 16, 2019.**

**WESTLAKE SERVICES, LLC.**, a California limited liability company dba Westlake Financial Services
4751 Wilshire Boulevard, Suite 100
Los Angeles, California 90010

BY: ______________________

NAME: MARK VAZQUEZ

TITLE: SENIOR VICE PRESIDENT, SALES & MARKETING

**Northshore Motor Leasing LLC**
Full Legal Name of Dealership

DBA: ______________________

BY: ______________________

PRINT NAME: **Brian Chabrier**

**Owner**

ADDRESS: **180 Michael Dr**

**Syosset, NY 11791**

**(516) 226-1400**

FAX: **(999) 999-9999**

Westlake Financial Services®

# Dealer Agreement

## FOR FRANCHISE & NON-FRANCHISE DEALERS

4751 Wilshire Boulevard, Suite 100
Los Angeles, California 90010
(888) 8-YES-YES

**UEA PREMIER MOTORS CORP**
**LOUIS BERIA**
**Westlake Rep: Ngawang Thokmey**

To qualify as an approved Westlake Financial Services Dealership, we require these items:

- Certificate of Authority License
- Business Resolutions Doc
- Articles of Incorporation
- Insurance Bond
- Voided Check with ACH Doc
- Sign-Up Deposit
- Dealer Lot Photos
- Master Dealer Agreement
- Personal Guarantee
- DMV License
- Business License
- Authenticom Form
- Signed PictureID
- Last 3 Months Bank Statements

Please fax these items to (888) 267-1056. If you have any questions or concerns please call (888) 893-7937.

Westlake Financial Services®

# MASTER DEALER AGREEMENT

This Master Dealer Agreement ("Agreement") is executed as of the effective date below by and between Westlake Services, LLC, a California limited liability company, dba Westlake Financial Services ("Westlake") and **UEA PREMIER MOTORS CORP** ("Dealer"). From time to time Westlake and Dealer are referred to herein as a "Party" or collectively as "Parties."
Dealer is engaged in the business of selling new and/or used automobiles ("Unit", or collectively, "Units") and in Dealer's ordinary course of business, Dealer arranges financing for the purchase of Units by Dealer's Customers. ("Customer" means any person or other legal entity that purchases a Unit from Dealer, including any co-buyer, co-signer, or guarantor.)
Westlake is engaged in the business of acquiring and holding retail installment sales contracts for motor vehicles.
Periodically, Dealer may offer to sell, and Westlake may desire to buy, certain retail installment contracts ("Contract", or collectively, "Contracts") entered into by Dealer and Customer in the course of financing the purchase of Units.
Therefore, in consideration for the mutual promises contained herein, and other good and valuable consideration, the sufficiency of which the Parties acknowledge, Westlake and Dealer agree as follows:

**1. Sale and Purchase of Contracts**
The Parties agree Westlake is under no obligation to purchase any Contracts from Dealer, nor is Dealer under any obligation to sell any Contracts to Westlake. All Contracts must be on forms satisfactory to Westlake, and otherwise acceptable to Westlake. Notwithstanding anything to the contrary in any assignment document executed by Dealer, all Contracts shall be deemed to have been assigned subject to Westlake's right to require repurchase pursuant to Section 6 hereof and as otherwise set forth in this Agreement. Dealer further agrees to abide by the terms of Westlake's policies and program guidelines then in effect at the time of assignment of the Contract.
The Parties agree that the purchase of a Contract will occur when Westlake forwards funds to Dealer or credits Dealer's account after receipt and verification of the information provided by Dealer pursuant to Section 2. For each Contract Westlake decides it will purchase, Dealer agrees to execute an assignment of the Contract in a form acceptable to Westlake. Such assignment shall include all of Dealer's right, title, and interest in the Unit, and any guaranties, warranties or other documents executed in connection with the Contract.

**2. Purchase Price**
For each Contract Westlake agrees to purchase, Westlake will pay Dealer the "Amount Financed" as reflected in the Contract, less an agreed-upon discount and acquisition fee, less any insurance premiums advanced by Westlake, exclusive of financing charges included in the Contract ("Purchase Price"). Westlake is under no obligation to pay the Purchase Price unless and until it receives and verifies within thirty (30) days of its conditional approval of the Contract certain documents specified by Westlake, including but not limited to the following:
(a) the original executed Contract and a true and correct copy of all other related documents in correct and complete form properly executed by Customer and an appropriate assignment of the Contract by Dealer to Westlake;
(b) a copy of the application for title to the Unit, including all attachments submitted by Dealer to the appropriate governmental agency showing the interests in the Unit as directed by Westlake;
(c) if required by law, a notice to Customer that Dealer has assigned the Contract to Westlake;
(d) a copy of any mechanical breakdown protection contract or service contract sold in connection with the financing of the Unit;
(e) written verification of insurance satisfactory to Westlake as provided in Section 4 of this Agreement; and
(f) to the extent permitted by applicable law, all such credit information Dealer may have concerning Customer.

**3. Dealer's Representations, Warranties and Covenants**
As of the date of this Agreement set forth below, and continuing during the time this Agreement is in effect, Dealer represents and warrants that:
(a) Dealer is in good standing in the state of its incorporation or organization, Dealer is qualified as a foreign corporation or organization in any state where applicable;
(b) Dealer has all licenses and authorizations required to enter into the Contracts in each state where Dealer has a place of business;
(c) Dealer has taken actions required to enter into this Agreement and will undertake to perform all actions to further the purpose of this Agreement; and
(d) Dealer will comply with all applicable federal, state and local laws, rules and regulations, including without limitation, all consumer protection laws, the Federal Truth in Lending Act/Regulation Z, the Fair Credit Reporting Act, the Gramm-Leach-Bliley Act, and the Federal Equal Credit Opportunity Act/Regulation B.
As to each Contract sold by Dealer to Westlake, Dealer hereby represents and warrants that, as of the time of assignment that:
(e) Each Contract contains a bona fide Unit for sale for the amount set forth therein, and that the description of the Unit contained in such Contract and as represented by Dealer to Westlake is in all respects accurate, true and complete;
(f) The Unit is in good working condition;
(g) The Unit has been delivered to Customer and all services contracted for have been provided by or performed by Dealer;
(h) Dealer has obtained from Customer permission to forward Customer's credit application to Westlake, and permission for Westlake to verify Customer's credit, including but not limited to, obtaining credit reports from credit reporting agencies;
(i) All credit information furnished by Customer to Dealer and transmitted by Dealer to Westlake is true and correct to the best of Dealer's

Westlake Financial Services®

knowledge;

(j) Any down payment described in the Contract or on the credit application has been made by Customer in cash, check or its equivalent, excluding credit card, that no portion thereof shall have been directly or indirectly advanced by Dealer, and that there is no portion of the down payment that has been deferred by the Dealer which has not been disclosed in the Contract;

(k) All agreements and warranties of Dealer relative to the Unit are contained either in the Contract or in this Agreement, and Dealer has made all disclosures required by applicable law to be made in connection with the Unit and the Contract, including disclosures required in any advertisement of the sale transaction and any related purchase order;

(l) Dealer has performed all obligations, including, but not limited to submitting the required funds and application to the proper provider, for any service contract specified in the Contract;

(m) Customer has no legal or equitable defenses, setoff, or counterclaims as to the enforcement of any Contract arising out of Dealer's conduct;

(n) The certificate of title for the Unit has not been issued as an impaired or branded title, including, but not limited to, salvage titles, prior government use, remanufactured, manufacturer lemon law buybacks, flood damage, or gray market title, and the Unit is in fact not salvage, prior government use, remanufactured, a manufacturer lemon law buyback, or flood damaged;

(o) Dealer has good and marketable title to the Unit subject only to the rights of Customer;

(p) Dealer has caused title to the Unit, free of any lien or encumbrance, and a sole perfected first lien security interest in the Unit to be conveyed to Westlake within the time provided herein;

(q) Dealer has not made any false or misleading representations to Customer as to the price, quality of product, manufacturer, dealer's warranty, or any other false statement which misleads or confuses the Customer;

(r) Dealer does not know of any fact or circumstance which would indicate that the Contract is not valid or collectable;

(s) There is only one (1) Contract in connection with the sale of the Unit to Customer and an exact, completely filled-in, legible copy of the Contract was delivered to Customer prior to the time of its execution. Where required by state law, Dealer has provided Customer with a completely filled-in, unexecuted translation copy of the Contract in the language in which the negotiations were conducted, prior to the time of execution of the Contract;

(t) The Contract and each other instrument executed in connection with the Contract and all signatures thereon are genuine, each such instrument having been duly authorized and executed, all parties thereto are adults with full legal capacity to contract and such instrument is valid, binding and enforceable in accordance with its terms and against all parties thereto except as enforcement may be affected by bankruptcy and similar law affecting creditor's rights generally;

(u) Dealer has not charged Customer for filing fees or other costs paid by Dealer to a public agency to perfect a security interest in the Unit, except where allowed by law, and Dealer has not charged any other fees, other than finance charges, unless those charges are also charged in cash transactions;

(v) Dealer has not increased the sales price of a Unit based on any of the terms, rates, discounts, or other conditions imposed by, or negotiated with Westlake to purchase a Contract. Dealer will not alter the sales price of a Unit agreed upon between Dealer and Customer based on the Dealer's intent to assign or sell the Contract to Westlake;

(w) Unit has not been sold to any employee of the Dealer or to any family member of an employee of Dealer or Principal Guarantor without Westlake's prior, written consent;

(x) Dealer has verified that Customer has insurance providing the coverage required under the Contract and by applicable law; and

(y) To the best of Dealer's knowledge, possession of the Unit was not obtained by Customer by any fraudulent scheme, trick, or device. Sale of the Contract to Westlake was not accomplished by Dealer's use of any fraudulent scheme, trick, or device.

Dealer makes the further continuing representations and warranties:

(z) In the event of repossession, Dealer will cancel any insurance financed in the Contract, and return the unused portion to Westlake;

(aa) Dealer will take such action as is necessary or as Westlake may reasonably request to evidence and perfect Westlake's interest in a Contract, its proceeds, and any Unit;

(bb) Dealer will not represent that it is an agent or representative of Westlake or any of its subsidiaries or affiliates for any purpose. Dealer is not granted any express or implied right to bind Westlake or its subsidiaries or affiliates in any manner;

(cc) Dealer will not accept any payments on any Contracts sold to Westlake, without prior written authorization from Westlake; and

(dd) Dealer will not make any payments on behalf of the Customer to Westlake and will not accept any payments from Customer, without prior written authorization from Westlake.

## 4. Insurance

All Contracts submitted to Westlake for approval shall be accompanied by evidence of either (a) a pre-existing full coverage insurance policy naming the Customer as an insured and underwritten by an insurance company acceptable to Westlake, or (b) a Comprehensive and Collision insurance policy pre-paid for six (6) months following Customer's purchase of the Unit. In either instance, the maximum deductible shall be no more than five hundred dollars ($500.00). Westlake must be named as a loss payee on any evidence of insurance submitted pursuant to this Section.

Should Customer choose to purchase insurance from Dealer as required by this Section, Dealer may include the cost of such insurance in the "Amount Financed" in the Contract, subject to certain limitations as determined by Westlake, and place coverage with an insurance company

designated by Westlake. Dealer shall not receive a commission on any such insurance policy. Dealer further agrees to follow all policies and procedures required by Westlake, as amended from time to time by written notice to Dealer, regarding the financing of insurance. In addition to Dealer's other obligations under this Section, Dealer agrees to provide such other insurance documentation as Westlake may reasonably require.

## 5. Service Contract

Dealer agrees to comply with Westlake's policies and procedures regarding the administrator, underwriter, form and price of any extended service contract, limited warranty or mechanical breakdown protection contract ("Service Contract"). Dealer further agrees to cancel the Service Contract upon Customer's written request, or where applicable, Westlake's written request, and to remit or cause the administrator or underwriter to remit and refund the unearned portion of the Service Contract premium to Westlake, as required by Westlake. Any Contract providing for a Service Contract will also provide that Westlake must be named lienholder on such Service Contract.

## 6. Repurchase Contract

Notwithstanding any other provision of this Agreement, the Parties agree that on seven (7) days' written notice by Westlake, Dealer agrees to repurchase a Contract for any failure by Dealer to perform any obligations, or breach by Dealer of any representation, warranty or covenant set forth in this Agreement. In addition, Westlake may require Dealer to repurchase and take re-assignment of any Contract upon the occurrence of any of the following events:

(a) Customer fails to tender by the due date specified in the Contract the first payment due and payable to Westlake by Customer under the Contract (hereinafter "First Payment Default"). If the first payment is deducted from the Dealer's proceeds, the deduction does not release Dealer from any obligation under the First Payment Default repurchase provision of this Paragraph 6. If the first payment is deducted from Dealer's proceeds, the first payment due to Westlake from the Customer will then be the second regularly scheduled payment under the Contract, and that payment will be subject to the First Payment Default provisions of this Agreement;
(b) Dealer breaches any express or implied warranties of merchantability or fitness relating to the Unit;
(c) Dealer takes possession of the Vehicle after sale to the Customer, whether by repossession by the Dealer without Westlake's prior written consent or, if Customer returns the Vehicle to the Dealer and Dealer does not notify Westlake of such event in writing and by telephone within five (5) calendar days;
(d) Customer fails to pay any deferred or remaining down payment provided in the Contract;
(e) Dealer has not perfected Westlake's lien on the Vehicle within 30 days of Contract date and Customer files for bankruptcy;
(f) Westlake has not received a certificate of title or other evidence of security interest in the Unit within sixty (60) days of purchase of any Contract;
(g) Customer has made a "holder in due course" demand against Westlake or initiated litigation against Dealer and Westlake as "holder in due course";
(h) Dealer breaches any of the representations, warranties or covenants specified herein, above, in Section 3 of this Agreement; or
(i) The Contract is rescinded by operation of law, or by mutual agreement between Dealer and Customer.

In the event of a First Payment Default, the repurchase price shall be equal to the amount paid by Westlake to Dealer for the purchase of the Contract plus any acquisition fee and repossession fees, if paid within seven (7) days after written demand for repurchase. If paid after seven (7) days for a First Payment Default, the repurchase price shall be the total then owed by Customer in the event of prepayment of the Contract plus any acquisition fee, minus any unearned interest and unearned insurance policy premiums paid by Westlake, and minus any unearned discount. Under all circumstances other than a First Payment Default where repurchase is demanded, the repurchase price shall be the total then owed by Customer in the event of prepayment of the Contract plus any acquisition fee, minus any unearned interest and unearned insurance policy premiums paid by Westlake, and minus any unearned discount, if paid within seven (7) days after written demand. In circumstances other than a First Payment Default, if not paid within seven (7) days after written demand for repurchase, such repurchase price shall be the total payoff balance of the Contract.

The repurchase price will not be affected by the physical condition of the Unit, regardless of whether the Unit has been damaged or modified by Customer which reduces the value or causes Unit to be worthless, and regardless of whether the unit has been forfeited due to seizure, impoundment, or abandonment. Westlake has no obligation to repossess or otherwise secure the Unit as a condition of requiring Dealer to repurchase a Contract.

Dealer agrees that it will not repossess any Unit until after the repurchase is complete and the Contract has been reassigned back to Dealer.

## 7. Dealer's Title Guarantee

Dealer agrees that not later than thirty (30) days from the Contract date, Dealer has taken all steps necessary to perfect Westlake's security interest in the Unit and has caused an application for title, and where separately applied for, registration, to the Unit to be submitted to the appropriate government agency in Customer's state of residence showing Westlake's interests in the Unit. Dealer guarantees to provide Westlake with an unbranded certificate of title or other appropriate evidence of Westlake's security interest in the Unit not later than sixty (60) days from the date Westlake purchases any Contract. Failure to provide such certificate of title or evidence of Westlake's security interest shall be cause for repurchase of the Contract pursuant to Section 6 of this Agreement.

## 8. Waiver

Westlake Financial Services®

Any waiver of a default or provision under this Agreement must be in writing. No such waiver constitutes a waiver of any other default or provision concerning the same or any other provision of this Agreement. No delay or omission by Westlake or Dealer in the exercise of any of its rights or remedies under this Agreement constitutes a waiver of, or otherwise impairs such right or remedy. A consent by one Party to or approval of an act by another Party does not waive or render unnecessary the consent to or approval of any other or subsequent act.

## 9. Offset

The Parties agree that Westlake may, without any notice or demand to Dealer, deduct from any proceeds due to Dealer any amounts owed by Dealer to Westlake, or any of its subsidiaries or affiliates, under this Agreement or any other agreement, including but not limited to, any repurchase amount due Westlake pursuant to Section 6 hereof, overpayment, chargeback amounts, or any fees or costs incurred by Westlake due to a failure by Dealer to comply with its obligations under Section 7.

## 10. Modification

This Agreement can be modified only by the written consent of both Parties, except that this Section shall not limit Section 11 hereof.

## 11. Westlake Program Policies

Dealer accepts and agrees to abide by the terms and conditions for each applicable program as set forth in the Westlake Dealer Training Manuals and Reference Guidelines, as amended. Dealer further understands and agrees that Westlake may, from time to time, change its methodology, guidelines, requirements or policies related to its purchase of Contracts from Dealer, including, but not limited to, the terms and conditions of the Westlake Dealer Training Manuals and Reference Guidelines. Such modification shall be effective upon written Notice to Dealer pursuant to Section 13 hereof.

## 12. Termination

This Agreement may be terminated by either Party upon three (3) days prior written notice. No termination shall affect the rights and obligations of the Parties as to any Contract previously purchased hereunder. Dealer's obligations to repurchase Contracts pursuant to the terms of this Agreement shall survive the termination of this Agreement.

## 13. Notices

All notices hereunder shall be in writing and shall be effective upon personal delivery, facsimile or deposit in the U.S. mail and addressed to address set forth on the last page hereof or such other address of which the Party may designate. In addition, Westlake may amend its program policies in accordance with Section 11 by conspicuously posting notice of such change on its website, or www.dealercenter.com. Each Party shall properly provide the other with notice of any change in address.

## 14. Indemnification

Dealer agrees to assume the defense and indemnify Westlake against any third-party claims, lawsuits, arbitrations, administrative claims, or other proceedings in which Westlake is named as a party or potential party and relating in any way to Dealer's failure to comply with the provisions of this Agreement or any applicable law, including all consumer protection laws. To the full extent permitted by law, Dealer further agrees to hold harmless Westlake, its directors, officers and employees for all losses and reasonable expenses, including attorney's fees, settlements and judgments, incurred by Westlake in connection with any such third-party claims. Dealer's obligation to defend and indemnify Westlake under this Section will apply regardless of whether the third-party claim arises in contract, tort, negligence, strict liability or otherwise, except for third-party claims that allege the sole fault or negligence of Westlake.

## 15. Choice of Law; Venue; Attorneys' Fees; Waiver of Right to Trial by Jury

This Agreement shall be governed by the laws of the State of California, without regard to conflict of laws provisions. Any actions or proceedings arising out of this Agreement, including, but not limited to, actions pertaining to the formation, validity, interpretation, or alleged breach of this Agreement shall be brought against any of the Parties in the State of California, County of Los Angeles. Each Party consents to the jurisdiction of such courts in any such action or proceeding and waives any objection to venue laid therein. Dealer hereby waives personal service of process. The prevailing Party in any action or proceeding shall be entitled to recover all costs and reasonable attorneys' fees from the other Party.

THE PARTIES HEREBY EXPRESSLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION BASED UPON, ARISING UNDER OR IN ANY WAY RELATED TO THE DEALINGS OF THE PARTIES WITH RESPECT TO THIS AGREEMENT OR ANY OTHER AGREEMENT BETWEEN THE PARTIES, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN TORT OR CONTRACT OR OTHERWISE. THE PARTIES AGREE THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT TRIAL WITHOUT A JURY.

## 16. Severability, Integration and Prevailing Agreement

This Agreement constitutes the entire agreement between the Parties and supersedes all prior negotiations and agreements. This Agreement shall apply to any Contracts previously purchased from Dealer by Westlake pursuant to any prior agreement. The Parties intend that this Agreement be

enforced to the fullest extent, and the invalidity or unenforceability of any provision of this Agreement shall in no way affect the validity or enforceability of any other provision of this Agreement.

## 17. Advice of Counsel and Interpretation

The Parties represent that they have had the opportunity to discuss this Agreement with legal counsel and they have either discussed this Agreement with legal counsel or have opted not to discuss this Agreement with legal counsel. The Parties also agree that they shall not deny the validity of this Agreement on the ground that such Party did not have the advice of legal counsel. The Parties further agree that any legal rule of construction to the effect that ambiguities are to be resolved against the drafting Party shall not apply to the interpretation of this Agreement or any addendum, amendment, or exhibits thereto.

## 18. Additional Documents and Showings

Dealer agrees to provide Westlake with such information and documents that Westlake may request from time to time as Westlake may request, including but not limited to, Dealer's financial statements, evidence of compliance by Dealer with all of Dealer's obligations hereunder, and evidence relating to all warranties and representations of Dealer hereunder. Dealer agrees that Westlake may investigate Dealer's creditworthiness and credit capacity.

## 19. Notice of Dealership Changes / DMV Actions

Dealer shall give notice to Westlake of any material or significant changes in the ownership, structure or business of Dealer, including, but not limited to the death of any principal, dissolution, insolvency, bankruptcy, reorganization, merger or consolidation, any sale of assets or stock or conversion to another legal structure or type of business, or cessation of business. Such notice shall be provided in writing within thirty (30) days of the occurrence of any of those changes set forth above. Dealer shall also provide notice to Westlake of any DMV actions, administrative or criminal charges filed against the Dealer, or any claims made against the Dealer's bond, within thirty (30) days of any such charges filed or actions taken against the Dealer.

## 20. Nonpublic Personal Information

The Parties represent and warrant that each maintains, and will continue to maintain, appropriate information security programs and measures designed to ensure the security and confidentiality of “nonpublic personal information” (“NPI”) (as defined in the Gramm-Leach-Bliley Act (15 U.S.C. § 6801 et seq.) and any rules promulgated thereunder). Such information security programs and measures shall include appropriate procedures designed to (a) protect against anticipated threats or hazards to the security or integrity of NPI; (b) protect the security of NPI; and (c) to protect against unauthorized access to or use of NPI. The Parties further agree that, except as may be required or allowed by law, they will not disclose any NPI to any third party, and will not use NPI other than to carry out the purposes for which it was disclosed, unless another use is expressly permitted by a written agreement executed by the other Party or required by law. Each Party shall have access, upon reasonable notice, to review any internal and external audits and records of the other as may be reasonably necessary to assess compliance with the security provisions of this Agreement. Each party shall promptly notify the other if it receives any complaint or notice concerning a violation of privacy rights or becomes aware of a breach of customer data security.

## 21. Non-Disclosure of Confidential Information

Dealer acknowledges and agrees that Westlake has developed and acquired certain confidential, proprietary information and trade secrets regarding its business, including, but not limited to, the contents of this Agreement and any other agreements between Dealer and Westlake, its products, fee structures, customer and dealer data, marketing plans and strategies, business plans and strategies, pricing and purchasing policies and practices, computer software, programs, source code, algorithms, record layouts, routines, report formats, data, compilers, assemblers, design concepts, inventions, discoveries, copyrights, concepts and ideas, patents, patent applications, know-how, processes and methods, and other proprietary business information and intellectual property (collectively, “Confidential Information”), all of which are valuable assets of Westlake. Dealer further acknowledges and agrees that it has been or will be granted access to Confidential Information, and that the economic value of Confidential Information would be destroyed by its unauthorized disclosure, thereby causing significant harm to Westlake, and that this Section is necessary to protect the value of Confidential Information. Therefore, Dealer agrees to keep all Confidential Information confidential and will not directly or indirectly disclose or reveal to any third party or utilize for its own benefit, other than pursuant to this Agreement, any Confidential Information and any information derived therefrom. Dealer further agrees to notify Westlake in the event that it discovers any unauthorized disclosure of Confidential Information and agrees to take all reasonable steps to preserve the confidentiality of Confidential Information. Dealer shall assume responsibility that its employees will similarly preserve Confidential Information and agrees to limit access to Confidential Information to only those employees that have a bona fide need to know Confidential Information. Dealer agrees that upon termination of this Agreement, Dealer will discontinue all use of Confidential Information and, at no cost to Westlake, promptly return all Confidential Information disclosed during the term of this Agreement and any information derived therefrom. The confidentiality obligations of Dealer under this Section shall survive termination of this Agreement. Dealer also agrees that its obligations under this Section shall also apply to any confidential information or trade secrets of any third party which Westlake has agreed to keep confidential and not disclose, and which Dealer has actual or constructive notice of such agreement.

The Parties recognize that money damages would not be an adequate remedy to Westlake for breach of this Section and agree that in the event of a breach of this Section, Westlake is entitled to seek additional judicial relief, including, but not limited to, restraining orders, injunctions and an

accounting.

**22. General**

This Agreement inures to the benefit of and is binding upon the heirs, legatees, personal representatives, successors and assigns of the Parties. Dealer agrees that it may not assign its rights or duties without the prior written consent of Westlake. The Parties agree that neither Party is a partner, joint venturer, legal representative, or agent of the other Party or any of its subsidiaries or affiliates. Dealer further agrees that this Agreement is binding on all locations and fictitious business organizations under which Dealer may operate. Section titles are for convenience only and are not part of the terms hereof. Each signatory hereto warrants and represents that he or she is legally competent in all respects and is authorized to enter into this Agreement on behalf of the Party for which he or she purports to sign.

Westlake Financial Services®

# Confirmation and Execution of Master Dealer Agreement

Dealer Information

Dealer Name: **UEA PREMIER MOTORS CORP** DBA:
Dealer Address: **180 Michael Dr**
City: **Syosset** State: **NY** Zip: **11791**

Dealer has read and agrees to the terms and conditions of Westlake's Master Dealer Agreement. Dealer also agrees to Westlake's Master Dealer Agreement as is, and confirms that there have been no modifications or alterations to the original Agreement (201101MDA-V1.0).

Dealer acknowledges that the conditions concerning the Paragraph 6, Repurchase of Contract, are fully understood and clear to the dealer.

Dealer also acknowledges that all information submitted into Dealer Center® for the purposes of submitting this application to Westlake is true and correct to the best of the dealer's knowledge.

DS LB Dealer acknowledges that Dealer has read the Master Dealer Agreement and has agreed to its terms without modification.

Verification Authorization

I hereby authorize Westlake Financial Services, its affiliates or assignees to investigate all information provided. Furthermore, I understand and authorize that a copy of my personal credit history (non-franchised Dealers only) may be obtained and the information contained within this application and said credit history be relied upon to determine the conditions under which business may be conducted between myself and Westlake Financial Services. I further agree that during existence of any outstanding obligations to Westlake Financial Services, Westlake may run such "credit bureau inquiries" as it sees necessary.

Dealer: **UEA PREMIER MOTORS CORP**
Full Legal Name of Dealership
DBA:

Sign: DocuSigned by: LOUIS BERIA
3055DE49A1F3415...

Print Name: **LOUIS BERIA**
Date: 10/17/2016
Title: **Owner**
Address: **180 Michael Dr**
**Syosset, NY 11791**
Tel: **(516) 584-7062**
Fax: **(888) 696-1999**

WESTLAKE SERVICES, LLC, a California Limited Liability Company dba Westlake Financial Services
4751 Wilshire Boulevard, Suite 100
Los Angeles, California 90010

Sign: [signature]

Print Name: **Mark Vazquez**
Date: **10/17/2016**
Title: **Vice President of Sales**