UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, AND NORTHSHORE MOTOR LEASING, LLC,

Defendants.
---------------------------------------------------------------------X

Case No. 2:23-cv-6188(JMW)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT FLUSHING BANK, A DIVISION OF OCEANFIRST BANK, N.A.'S MOTION FOR SUMMARY JUDGMENT**

Cullen | Dykman
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3889

Of Counsel:
Ariel E. Ronneburger, Esq.

# TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ........................................................................................ 2

A. The Superb Account ........................................................................................ 2

B. Northshore and 189 Sunrise ........................................................................................ 5

C. Urrutia Contacts Flushing Bank in August 2023 ........................................................................................ 8

D. Procedural History of this Litigation ........................................................................................ 8

STANDARD OF REVIEW ........................................................................................ 8

ARGUMENT ........................................................................................ 10

THE RECORD DEMONSTRATES THAT DEO PRESENTED HIMSELF AS HAVING AUTHORITY TO ACT ON BEHALF OF SUPERB, NORTHSHORE, AND 189 SUNRISE, AND FLUSHING BANK DID NOT VIOLATE U.C.C ARTICLE § 4-A-204(1) ........................ 10

1. Flushing Bank Reasonably Relied Upon Deo's Representations Regarding Superb ........................................................................................ 15

2. Flushing Bank Reasonably Relied Upon Deo's Representations of Ownership of Northshore and 189 Sunrise ........................................................................................ 17

CONCLUSION ........................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

Cases

*123RF LLC v. HSBC Bank USA, N.A.*,
663 F.Supp.3d 391 (S.D.N.Y. 2023) ........................................ 12

*2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*,
816 F.Supp.2d 222 (S.D.N.Y. 2011) ........................................ *Passim*

*Anderson v. Liberty Lobby Inc.*,
477 U.S. 242 (1986) ........................................ 9

*Andre Romanelli, Inc. v. Citibank, N.A.*,
60 A.D.3d 428, 875 N.Y.S.2d 14 (2d Dep't 2009) ........................................ 13

*Azzil Granite Materials, LLC v. Canadian Pacific Railway Corp.*,
20-cv-2381 (JMW), 2023 WL 3346765 (E.D.N.Y May 10, 2023) ........................................ 9

*BellSouth Telecomms, Inc. v. W.R. Grace & Co.*,
77 F.3d 603 (2d Cir. 1996) ........................................ 9

*Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*,
523 F. Supp.3d 661 (S.D.N.Y. 2021) ........................................ 9

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........................................ 8, 9

*Davis v. New York*,
316 F.3d 93 (2d Cir. 2002) ........................................ 9

*Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*,
650 F.Supp.3d 62 (S.D.N.Y. 2023) ........................................ 12

*Feingold v. New York*,
366 F.3d 138 (2d Cir. 2004) ........................................ 9

*Niram, Inc. v. Sterling National Bank*,
697 F.Supp.3d 15 (S.D.N.Y. 2023) ........................................ 11

*Rojas v. Splendor Landscape Designs Ltd.*,
268 F.Supp.3d 405 (E.D.N.Y. 2017) ........................................ 8, 9

*Steger v. Nassau Cmty. Coll.*,
19-CV-03026 (JMA) (JMW), 2002 WL 1085499 (E.D.N.Y. Mar. 8, 2022) ........................................ 9

*Steger v. Nassau Cmty. Coll.*, 19-CV-03026 (JMA) (JMW),
19-cv-3026 (JMA) (JMW), 2022 WL 912654 (E.D.N.Y. Mar. 29, 2022)……………………..…..9

Rules

Federal Rule of Civil Procedure 56 ........................................................................... 1, 8, 9

Other Authorities

U.C.C. 4-A-204(1) ..........................................................................................................*Passim*

## PRELIMINARY STATEMENT

Defendant Flushing Bank, a division of OceanFirst Bank, N.A. (hereinafter "Flushing Bank" or "the Bank"), respectfully submits this Memorandum of Law and the accompanying Declaration of Ariel E. Ronneburger, dated September 4, 2026 (the "Ronneburger Dec."), the Declaration of Michael Buccino, dated August 31, 2026 (the "Buccino Dec."), Flushing Bank's Rule 56.1 Statement of Undisputed Material Facts dated June 1, 2026 (ECF No. 517) (the "Rule 56.1 Statement"), the Declaration of Ariel E. Ronneburger dated June 1, 2026 providing the exhibits referenced in the 56.1 Statement, and all the exhibits annexed thereto, in support of its motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, dismissing the Superb Plaintiffs'[1] sole remaining cause of action against Flushing Bank in its entirety. This cause of action alleges that Flushing Bank violated Article 4-A-204(1) of the Uniform Commercial Code (the "U.C.C.") by allowing defendant Anthony Deo ("Deo") to open accounts in the name of Superb Motors Inc. ("Superb"), Northshore Motor Leasing LLC ("Northshore"), and 189 Sunrise Hwy Auto LLC ("189 Sunrise"), when Deo represented himself as owner of these entities, and provided documentation evidencing such ownership, including operating agreements and tax documents.

This Court previously dismissed all other causes of action asserted by Plaintiffs against Flushing Bank, which included claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), in its Opinion and Order dated March 21, 2025 (the "Opinion and Order") partially granting Flushing Bank's motion to dismiss for failure to state a claim.

[1] The "Superb Plaintiffs" are Plaintiffs Superb Motors Inc., Team Auto Sales LLC, and Robert Anthony Urrutia. The remaining plaintiffs in this action are known as the "IAG Plaintiffs" and do not have any claims asserted against Flushing Bank. The Superb Plaintiffs and the IAG Plaintiffs are collectively referred to herein as "Plaintiffs."

U.C.C Article 4-A-204(1) provides, in relevant part, if "a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under [§] 4-A-202 . . . the bank shall refund any payment of the payment order received from the customer. However, Deo represented himself as the owner of Superb, Northshore, and 189 Sunrise, completing account opening documents and attesting to his ownership of these entities, and providing the Bank with required documentation demonstrating his ownership. Even if these representations were false, as Plaintiffs claim, Flushing Bank had no way of knowing this, given the information and statements made by Deo. That is, Deo acted with the apparent authority to open accounts for Superb, Northshore, and 189 Sunrise, as well as take a loan for Northshore, and the record establishes that there is no issue of fact that Flushing Bank acted in a commercially reasonable manner.

The Superb Plaintiffs have based this case on a litany of conjectures, misrepresentations, and omissions. Moreover, the Superb Plaintiffs, namely, Robert Anthony Urrutia ("Urrutia") were aware that Deo was opening accounts at the Bank and provided him with numerous documents to do so. There is no evidence of any wrongdoing on behalf of Flushing Bank and summary judgment on the Superb Plaintiffs' claim under U.C.C. Article § 4-A-204(1) is warranted.

## STATEMENT OF FACTS

A detailed recitation of the facts is set forth in the Buccino Dec., but are presented here for the Court's convenience.

### A. The Superb Account

On March 24, 2023, Lesley Cusano, a Business Specialist at Flushing Bank sent an email with the subject "New Business Account Paperwork Requirements" to Michael Morgan at Allied Management as well as David Weinstein of Flushing Bank. *See* Exhibit A to the Buccino Dec. In

that email, it stated that to open an account for a corporation, the following documents were needed: (1) Certificate of Incorporation; (2) Filing Receipt; and (3) EIN Tax ID Number. Shortly after it was sent, Michael Morgan forwarded this email to Urrutia, who forwarded it to Bruce Novicky. *See id*.

On or about March 18, 2023, Novicky emailed Lesley Cusano documents regarding several entities. The documents regarding Superb which were attached to this email were: (1) a letter dated March 2, 2021 from the IRS to Superb Motors Inc. c/o Robert Clarke providing a federal Employer Identification Number; and (2) an Online Filling Receipt from the New York State Department Division of Corporations and State Records. These documents are silent as to ownership interests in Superb. *See id.* at Exhibit B.

On March 30, 2023, Urrutia sent Weinstein an email attaching tax returns for several entities, including the 2021 Tax Returns for Superb. The 2021 Tax Return for Superb listed Roberto Urrutia as 60% owner of Superb and Robert Clarke as 40% owner. *See id.* at Exhibits C and D. Weinstein forwarded these documents to Lesley Cusano. *See id.* at Exhibits C and D. Urrutia did not provide any documentation setting forth current ownership interests in Superb. *See id.*

Ultimately, Urrutia never opened any accounts at Flushing Bank. Urrutia Deposition Transcript ("Urrutia Tr."), at 241:45:9-1, attached to the Ronneburger Dec. as Exhibit E. Because the accounts Urrutia discussed with David Weinstein were never opened, the documents Urrutia (or those acting on behalf of Urrutia) provided to Flushing Bank were never uploaded to a central repository, Synergy, but rather remained in the email inboxes of the individuals who received them Buccino Dec., at ¶ 11. While Urrutia described Deo as a "partner" to Weinstein, he admitted that he never discussed ownership interests in Superb with Weinstein. *See* Urrutia Tr., at 265:15-266:2, 269:14-19, Ronneburger Dec., at Exhibit E. Urrutia instead directed Deo to work with Flushing Bank to open the accounts. *Id.* at 245:9-16

On March 31, 2023, Robert Puccio of Flushing Bank sent Deo an email, in which Puccio asked Deo to "[p]lease provide me with the information requested for Superb," including ownership information in the form of "Full name, SSN, Title, Percentage of Ownership and ID for Each Owner." *See* Buccino Dec., at Exhibit F.

In that email, Mr. Puccio also requested "Legal Documentation." For LLCs, Puccio stated "we will need the articles of organization, operating agreement, and filing receipt." For corporations, Puccio stated that "we will need the certificate of incorporation and filing receipt." *See id.* at Exhibit F.

On April 3, 2023, Deo responded to Puccio by stating "Good Morning Rob, Can you please tell me what information you received from David Weinstein so that I can push this process along?" *See id.* In response to Deo's inquiry regarding information that Puccio had received from Weinstein, Puccio responded, "I have not received anything. From my understanding he will be opening accounts for your partners [sic] other ventures, new car dealerships in CT, NY and NJ. As David and I understand I will only be opening the joint venture you have with your partner which will be located in Great Neck." *See id.*

Later that day, Deo forwarded Puccio's email to Novicky and Urrutia and stated, "Dave Weinstein didn't have any of the information for Superb to send over to Rob." Deo also asked, "Can you please help me in gathering the information needed so I can get this done ASAP?" and "All I need is the formation documentation." He copied the portion of Puccio's March 31, 2023 email which stated: "For corporations, we will need the certificate of incorporation and filing receipt." Buccino Dec., at Exhibit G, Deo Transcript dated February 13, 2026 ("Feb. 13 Deo Tr."), at 195:6-197:5; attached to the Ronneburger Dec. as Exhibit C.

By email dated April 3, 2023, Urrutia forwarded the Certificate of Incorporation of Superb to Deo. Buccino Dec., at Exhibit H; Feb. 13 Deo Tr., at 197:6-1986.

On April 4, 2023, Deo submitted a Certification of Beneficial Owner(s) to Flushing Bank in connection with an account application for Superb, listing himself as 100% owner. Buccino Dec., at Exhibit I. Deo also signed a Resolution of Authority in connection with an account application for Superb. This Resolution of Authority listed Deo as the person "authorized to endorse for collection, deposit, or negotiation, any and all checks, drafts, notes, bills of exchange, certificates of deposit, and orders for the payment or transfer of money between account at Bank and other Banks, either belonging to or coming into the possession of the Entity." *See id.* It also listed Deo as the person with the "authority to instruct Bank to close the account, to give instructions by means other than the signing of any item with respect to account transactions such as those initiated via electronic debit, payment, wire transfer, or other withdrawal of funds by computer, electronic or technologic means, and is further authorized to sign and implement for and in the name and on behalf of the Entity." *Id.* Based on these representations, a checking account was opened for Superb in or about April 2023. Buccino Dec., at ¶ 22.

During his deposition, Deo testified that Urrutia directed Deo to list himself as 100% owner of Superb, and that he never recalled discussing ownership interests in Superb with Puccio. Deo Deposition Transcript ("Deo Tr."), at 318:2-4; Deo Tr.; Feb. 13 Deo Tr., at 201:8-13, attached to the Ronneburger Dec. as Exhibit C.

**B. Northshore and 189 Sunrise**

Deo contacted Puccio of Flushing Bank in August 2022 regarding opening lines of credit for Northshore and 189 Sunrise. Buccino Dec., at Exhibit K; Deo Tr. 181:222-183:17. Puccio

conducted a site visit of Northshore on or about August 18, 2022, and met with Deo. Deo Tr. 184:10-185:11; Buccino Dec., at Exhibit L.

On August 19, 2022, Puccio advised Deo that in order to apply for the line of credit, he would need to upload: (1) Two years of federal tax returns with all schedules for the business; (2) Two years of federal tax returns for Deo; and (3) a copy of Deo's license. Buccino Dec., at Exhibit L. On August 23, 2022, Deo advised Puccio he had uploaded the documents needed to apply for lines of credit for Northshore and 189 Sunrise. Buccino Dec. at Exhibit K; Deo Tr. 189:12-22. Puccio then sent an email to Deo that advised, in part, that he needed 2020 and 2021 tax returns for Northshore, and that he understood Deo's accountant was in the process of filing them. Buccino Dec. at Exhibit K. Puccio also advised Deo that 189 Sunrise would not qualify for a loan due to its lack of profitability in 2019 and 2020. *Id.*

On February 27, 2023, Deo emailed documents related to Northshore and 189 Sunrise to Puccio. Buccino Dec. at Exhibit M; Deo Tr. 225:10-226:15. Attached to that email was a document entitled "Operating Agreement for Northshore Motor Leasing LLC." This document is dated June 15, 2020, and lists Deo as 99% owner of Northshore Motor Leasing LLC and his wife Sarah as 1% owner. Buccino Dec. at Exhibit M; Deo Tr. 232:21-235:1. Also attached to the email were IRS Schedule K-1s which listed Deo as 99% owner of Northshore Motor and his wife Sarah as 1% owner. Buccino Dec., at Exhibit M; Deo Tr. 236:23-237, Feb. 13 Deo Tr., at 212:13-213:18.

Additionally, Deo attached a document entitled "Operating Agreement for 189 Sunrise Hwy Auto LLC." This document is dated February 15, 2021, and lists Deo as 99% owner of 189 Sunrise and his wife as 1% owner. Buccino Dec. at Exhibit M. Additionally, Deo provided IRS Schedule K-1s, listing Deo as 99% owner of 189 Sunrise Hwy and his wife as 1% owner. Buccino

Dec. at Exhibit M; Deo Tr. 239:6-239:13; 225:10-226:15, 236:23-237:7; Feb. 13 Deo Tr., at 213:19-214:22.

In connection with his application for loans for Northshore and 189 Sunrise, Deo provided an Affidavit of Thomas Jones CPA, in the matter of *Brian Chabrier v. Anthony Deo* (Nassau County Index No. 617224/2022). Buccino Dec. at Exhibit N. Thomas Jones CPA served as an accountant to the Deos, as well as Northshore and 189 Sunrise. *See id.*

In the Jones Affidavit provided to Flushing Bank, it states that plaintiff Joshua Aaronson and Wendy Kwun, Controller for the Island Auto Groups, made the request to amend the tax returns of Northshore and 189 Sunrise to reflect Anthony Deo as 99% owner of these entities and Sara Deo as 1% owner of these entities. According to the Jones Affidavit, these ownership interests were also confirmed by the accounting form of Citrin Cooperman. *See id.*; *see also* Jones000001-000005, attached to the Ronneburger Dec. as Exhibit G.

The tax returns listing Deo as a 99% owner of Northshore and 189 Sunrise Hwy Auto LLC, which were submitted to Flushing Bank in order to demonstrate Deo's ownership in these entities, were approved by plaintiff Joshua Aaronson. Transcript of Deposition of Joshua Aaronson, at 97:15-22, attached to the Ronneburger Dec. as Exhibit F.

Deo also signed Certifications of Beneficial Owner(s) identifying himself as having 99% Ownership in both Northshore and 189 Sunrise. Buccino Dec., at Exhibits O and P.

Deo signed Resolutions of Authority for both Northshore and 189 Sunrise, listing himself as the person "authorized to endorse for collection, deposit, or negotiation, any and all checks, drafts, notes, bills of exchange, certificates of deposit, and orders for the payment or transfer of money between account at Bank and other Banks, either belonging to or coming into the possession of the Entity." Buccino Dec. at Exhibits O and P. In March 2023, checking accounts were open for

Northshore and 189 Sunrise, and a loan was given to Northshore in the amount of $500,000.00. Buccino Dec. at Exhibit ¶ 35.

**C. Urrutia Contacts Flushing Bank in August 2023**

Urrutia contacted Flushing Bank in August 2023 to complain that he was the majority shareholder of Superb and that the Superb account had been opened without his authority. Buccino Dec. at ¶ 36. Upon receiving Urrutia's complaint, Flushing Bank put the Superb, Northshore, and 189 Sunrise accounts on hold. *Id.* at ¶ 37. On August 17, 2023, Puccio sent an email to Deo asking him for a copy of the Superb Operating Agreement. Mr. Puccio also asked Deo to confirm his "ownership % in Superb Motors." Because "there is a claim you are not authorized to establish accounts for the company." Buccino Dec. at Exhibit Q. Deo responded that "[i]n November 2022 I bought 50% of Superb Motors. Subsequently, I purchased the full 100% in Feb 2023 and our lawyers have been working on a contract that's [sic] states that amount." *Id.*

**D. Procedural History of this Litigation**

A recitation of the procedural history of this litigation is set forth in the Ronneburger Dec., at ¶¶ 4-18.

**<u>STANDARD OF REVIEW</u>**

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "The burden is on the moving party to establish the lack of any factual issues." *Rojas v. Splendor Landscape Designs Ltd.*, 268 F.Supp.3d 405, 409 (E.D.N.Y. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties." *Id.* (citing *Anderson v. Liberty*

*Lobby Inc.*, 477 U.S. 242, 247 (1986)). "Rather, the requirement is that there be no 'genuine issue of material fact.'" *Id.* (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 247)). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law… Factual disputes that are irrelevant or unnecessary will not be counted." *Steger v. Nassau Cmty. Coll.*, 19-CV-03026 (JMA) (JMW), 2002 WL 1085499, at *2 (E.D.N.Y. Mar. 8, 2022), *Report and Recommendation adopted*, 19-cv-3026 (JMA) (JMW), 2022 WL 912654, at *2 (E.D.N.Y. Mar. 29, 2022)).

"The initial burden is on the movant to demonstrate the absence of a genuine issue of fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim." *Azzil Granite Materials, LLC v. Canadian Pacific Railway Corp.*, 20-cv-2381 (JMW), 2023 WL 3346765, at * 3 (E.D.N.Y May 10, 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 323; *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004)).

"Once the movant meets its initial burden, the nonmovant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial." *Id.* (citing Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). "The Court is to believe the evidence of the nonmovant and draw all justifiable inferences in its favor, *Anderson*, 477 U.S. at 255 . . ., but the nonmovant must still do more than merely assert conclusions that are unsupported by arguments or fact." *Id.* (citing *BellSouth Telecomms, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996)).

"The role of the court at the summary judgment stage is not to *resolve* disputed issues of fact, but merely undertake an analysis to determine whether triable issues of fact exist. That is, the court's function is 'issue finding,' not 'issue resolution.'" *Id.* (citing *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021)).

As set forth below, Flushing Bank has demonstrated an absence of genuine fact as to the Superb Plaintiffs' claim, that cannot be defeated with the unsupported allegations repeated throughout this litigation.

## ARGUMENT

### THE RECORD DEMONSTRATES THAT DEO PRESENTED HIMSELF AS HAVING AUTHORITY TO ACT ON BEHALF OF SUPERB, NORTHSHORE, AND 189 SUNRISE, AND FLUSHING BANK DID NOT VIOLATE U.C.C ARTICLE § 4-A-204(1)

As the basis for their claim under Article 4-A of the U.C.C., the Superb Plaintiffs allege that the "fraudulent transfers at issue were not authorized and Deo Defendants did not have authority to make transfers or sign checks on behalf of Superb, Northshore, or Sunrise," and that Flushing Bank "knew, or should have known, that Urrutia is the majority shareholder, had sole check authorization, and sole control of bank accounts based on the signature card for Superb's bank accounts and prior meetings" with Flushing Bank." Third Amended Complaint, attached to the Ronneburger Dec. as Exhibit A at ¶¶ 861-862. The Superb Plaintiffs (which do not include Northshore or 189 Sunrise) also claim that Defendants "lacked apparent authority to enter into the fraudulent transfers because Flushing knew, or should have known, that Deo had no membership interest in Northshore or Sunrise." *Id.* at ¶ 863.

As an initial matter, the Superb Plaintiffs—Urrutia, Team Auto Sales LLC, and Superb—do not claim an ownership interest in Northshore or 189 Sunrise. *See generally* Third Amended Complaint. Urrutia does not claim to be an owner of these entities. Thus, it is unclear how these Superb Plaintiffs were damaged by any wrongful actions taken by Deo that led to the opening of accounts or taking out loans for Northshore or 189 Sunrise at Flushing Bank, when they themselves had no ownership of these entities.

Regardless, there is no issue of fact. Deo presented himself as having authority to act on behalf of Superb, Northshore, and 189 Sunrise. He signed documents attesting to his ownership and he provided the Bank with operating agreements and tax documentation which supported his assertions. If Deo's representations were false, there was no way for the Bank to know this. Rather, as discussed below, the Bank gathered the documentation required for each type of corporate entity before opening any accounts or giving a loan. The Superb Plaintiffs hinge their entire case on the assumption that, because Urrutia had presented a single, two (2) year-old document evidencing past ownership of Superb, and because individuals at the Bank knew that Urrutia and Deo were "partners," this somehow means that the Bank was aware of allegedly false claims of ownership by Deo, which contradict the documentation provided by him.

"Article 4-A 'governs the procedures, rights, and liabilities arising out of commercial electronic fund transfers,' including wire transfers. *Niram, Inc. v. Sterling National Bank*, 697 F.Supp.3d 15, 21 (S.D.N.Y. 2023). Under Article 4-A, "[a] payment order is authorized where the receiving bank had actual, implied or apparent authority from the customer to accept the transfer request." *2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F.Supp.2d 222, 233 (S.D.N.Y. 2011) (citing U.C.C. § 4-A-202). U.C.C. § 4-A-204(1) provides that a bank is obligated to refund a customer for a wire transfer issued in the customer's name that was unauthorized, by setting forth, in relevant part:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is (a) not authorized and not effective as the order of the customer under [§] 4-A-202 . . . the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount . . .

In examining claims under U.C.C.. § 4-A-204(1), the courts must look at whether a transfer was authorized and whether it is "effective." *Id.* If the transfer is either authorized or effective, the

bank has no refund obligation. *Essilor Int'l SAS v. J.P. Morgan Chase Bank, N.A.*, 650 F.Supp.3d 62, 75 (S.D.N.Y. 2023). A payment order is authorized if the "payment order received by the receiving bank is the *authorized* order of the person identified as sender if that person authorized the order" or "if the person identified as sender…is otherwise bound by it under the law of agency." *Id.* (quoting U.C.C.. § 4-A-202(1)) (emphasis in original). Additionally, a "'payment order received by the receiving bank is *effective* as the order of the customer' if 'a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure.'" *Id.* (emphasis in original).

A security procedure is effective if it is commercially reasonable, and the bank acted in good faith compliance with the security procedure and any other written agreement or instruction. *Id.* If a bank follows commercially reasonable procedures, the loss for an unauthorized transfer falls on the customer. *Id.* (citing *123RF LLC v. HSBC Bank USA, N.A.*, 663 F.Supp.3d 391, 400 (S.D.N.Y. 2023)).

Whether a procedure is "commercially reasonable" is a question of law to be decided by a court, which considers "the wishes of the customer expressed to the bank, the circumstances of the customer known to the bank (including the size, type, and frequency of payment orders normally issued by the customers to the bank, alternative security procedures offered to the customer, and security procedure in general used by customers and receiving banks similarly situated." *Id.* (quoting U.C.C. § 4-A-202(3)). In assessing a claim under 4-A, the inquiry made by courts focuses on whether the procedures protect against the type of misconduct alleged. *Id.*

Summary judgment on a claim for a violation of U.C.C. § 4-A-204(1) is warranted when a reasonable jury could not determine that the transfers were "not authorized." *2006 Frank Calandra, Jr. Irrevocable Trust*, 816 F.Supp.2d at 233. In *2006 Frank Calandra, Jr. Irrevocable*

*Trust*, one of the trustees of a trust, Frank Stein, went to Signature Bank with the knowledge of the Trust's owner to open a checking account to hold the Trust's funds. *Id.* at 226. All the trustees were listed as signers, and the Trust's owner was notified of the account opening but did not confirm the details. *Id.* at 227-28. Stein eventually changed the Trust's address to his own and depleted all the funds in the account via wire transfers to his own corporate entities. *Id.* at 228. When Signature Bank contacted the Trust's owner regarding the transfers, he completed the form after speaking with Stein, who had lied and told him that the money was being used for investments. *Id.*

Upon discovering Stein's actions, the Trust brought a claim for a violation of U.C.C. § 4-A-204(1) against Signature Bank. The court granted summary judgment for Signature Bank because there was nothing in the relevant account opening documents that limited Stein's authority to conduct wire transfers. *Id.* at 233-34. Moreover, while the Trust argued that the Trust Agreement itself limited Stein's ability to conduct the transactions, the court found that this Agreement was "wholly irrelevant to Defendant Signature's authority," because the terms of the Agreement were not incorporated into the Trust's banking relationship with Signature Bank, and Signature Bank had no responsibility to enforce such terms. *Id.*

The court noted that the "Trust granted Stein unbridled access to Trust funds, and thus it was the Trust—not Defendant Signature—that allowed Stein to treat the Trust Account as his own personal account." *Id.* at 234. Signature Bank was not liable for the Trust's decision to place "its trust in Stein and/or improperly monitor[] Trust funds." *Id.* (citing *Andre Romanelli, Inc. v. Citibank, N.A.*, 60 A.D.3d 428, 429, 875 N.Y.S.2d 14 (2d Dep't 2009) ("The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent.")).

The holding in *2006 Frank Calandra, Jr. Irrevocable Trust*, is particularly instructive in this matter, as Deo allegedly abused authority given to him by Urrutia and represented himself as

the owner of Superb, Northshore, and 189 Sunrise (though, there is some question as to whether Urrutia actually sanctioned the behavior he now claims is fraud). However, in the documents presented to Flushing Bank for the purposes of opening accounts, Deo appeared to have the authority to open the accounts as an owner and there is no indication otherwise. Despite the Superb Plaintiffs' claims, neither Urrutia nor anyone acting on his behalf, told Flushing Bank that Deo did not have the authority to open the accounts or that he was not the owner of these entities. The Superb Plaintiffs instead rely on vague statements made to the Bank, which they believe should have caused the Bank to believe Deo was not the owner of Superb, Northshore or 189 Sunrise, despite documentation showing otherwise.

In the Opinion and Order, the Court stated that while Plaintiffs allege that Deo lacked authority "to make transfers or sign checks on behalf of Superb, Northshore, or Sunrise," if the "words or conduct of the principal, in this case the Superb Plaintiffs . . . gave rise to the appearance and belief that the Deo Defendants possessed authority to enter a transaction," then Flushing Bank could be said to have "reasonably believe[d]" Deo had this authority." However, this is not a case where the Court should look to whether the Plaintiffs gave Deo apparent authority (though, it appears from the record that they did)—rather, Deo himself presented such authority, which was reasonably relied upon by Flushing Bank, and which was not contradicted in any way by the Superb Plaintiffs. In fact, there is evidence in the record suggesting that Urrutia fully supported the statements made by Deo that he now claims are lies.

The typical facts that exist under a U.C.C. § 4-A-204(1) claim are not present here. This is not a case where the Superb Plaintiffs claim that someone made unauthorized transfers from an account they opened at Flushing Bank. Rather, Deo opened accounts for Superb, Northshore, and 189 Sunrise at Flushing Bank and represented himself as the other of these entities with authority

to conduct transactions on their behalf. As discussed below, it was entirely reasonable for the Bank to rely on Deo's representations, and thus there is no issue of fact regarding whether the transactions conducted on the account were "authorized" pursuant to U.C.C. § 4-A-204(1).

### 1. Flushing Bank Reasonably Relied Upon Deo's Representations Regarding Superb

Flushing Bank requested certain entity-specific documents from Deo to open the accounts. For corporations, Puccio requested the certificate of incorporation and filing receipt, as is required by Flushing Bank's policy. *See* Buccino Dec., at Exhibit J. Deo provided these documents which were forwarded to him by Urrutia for the purpose of opening the account for Superb. Buccino Dec. at Exhibit H; Feb. 13 Deo Tr., at 197:6-198:6. Deo then went on to fill out the required paperwork, including an application stating that he was 100% owner of Superb, and signed a Certification of Beneficial Ownership, as well as a Resolution of Authority, in which he represented that he had authority to conduct all transactions related to the account for Superb. Buccino Dec. at Exhibit I. Because the required documentation (the Certificate of Incorporation and filing receipt) were provided, along with the application, the account for Superb was opened in April 2023. *Id.* at ¶ 22.

Urrutia admitted that he did not discuss ownership interests with anyone at Flushing Bank. Urrutia Tr., at 265:15-266:2, 269:14-19, attached to the Ronneburger Dec. as Exhibit E. He described Deo generally as a "partner" to Weinstein and provided paperwork from 2021 demonstrating ownership of Superb between himself and another individual, Robert Clarke, who is not involved in this case. *See id.*; Buccino Dec., at Exhibit D. Urrutia did not provide anything related to ownership as of March 2023, never opened any accounts at Flushing Bank, and ultimately asked Deo to open the accounts because, in Urrutia's opinion, it was taking too long to do so. Urrutia Tr. at 243:11-243:13. Urrutia himself is not a customer of Flushing Bank. Buccino Dec., at ¶ 10.

Deo worked with Puccio at Flushing Bank to open the Superb account. While the Superb Plaintiffs have repeatedly argued that Puccio received information from Weinstein regarding Superb, they were forwarded an email from Puccio in which he stated that he received nothing from Weinstein. Buccino Dec., at Exhibit F. When questioned about this at his deposition, Urrutia agreed that he was surprised that Puccio had not received anything from Weinstein, but he did not attempt to reach out to Weinstein. Urrutia Tr. at 242:24-243:10, attached to the Ronneburger Dec. as Exhibit E. Additionally, because Urrutia never opened an account, the information he provided to Weinstein was never uploaded to Synergy, the central repository, but remained in the inboxes of those it was sent to. Buccino Dec., at ¶ 11.

Deo provided Flushing Bank with the required documentation and represented himself as owner, and Urrutia made no attempt to contact the Bank about ownership interests or the account itself. Deo testified that the representation that he was 100% owner of Superb was "agreed upon by Tony [Urrutia] and [himself]." Deo Tr. 310:8-12; Feb. 13 Deo Tr., at 201:8-13. Deo also stated that he did not recall ever discussing ownership of Superb with Puccio. Deo Tr. 316:11-14; Feb. 13 Deo Tr., 200:24-201:7. Moreover, Plaintiffs have filed a Declaration of Robert Puccio in which Puccio makes the vague statement that he "knew at the time [from communications with Weinstein], that Deo's partner in Superb was an owner of Superb because it is my general understanding that the word "Partner" in business is also an owner." Declaration of Robert Puccio at ¶ 19 (ECF No. 538-1). However, Puccio also noted that he "did not recall that [he knew] then that Urrutia was an owner of Superb, but [he] knew . . . that Deo had a business partner but was unaware of what percentage ownership such individual held." *Id.* at ¶ 20. There's nothing in this declaration that suggests Puccio was ever told Urrutia was an owner of Superb, and nothing to suggest the Bank should have suspected that any of Deo's statements were false.

That is, contrary to what Plaintiffs believe, none of these statements establish that Flushing Bank should have known that Deo's statement that he was 100% owner of Flushing Bank was not true. If Deo lied to the Bank about current ownership interests, there was nothing conclusive in the information provided to open the accounts that called into question Deo's claim. Flushing Bank cannot be held liable for the Superb Plaintiffs' decision to entrust Deo with opening an account for Superb, something the record unequivocally shows they were aware of at the time Deo contacted Puccio. *See 2006 Frank Calandra, Jr. Irrevocable Trust v. Signature Bank Corp.*, 816 F.Supp.2d at 234.

Moreover, it must be pointed out that there is an indication that, if Deo lied, Urrutia was "in on" these lies. Urrutia believed Flushing Bank was not acting fast enough to open an account, so he asked Deo to do so. He provided Deo with the documentation needed without question, despite now saying that he believed the Bank should have already had this information. Deo claims that Urrutia told Deo to represent himself as 100% owner of Superb. Finally, while Urrutia claims ignorance that an account was opened, it is difficult to believe that Urrutia—a sophisticated businessman—asked Deo to open accounts for Superb and then never questioned why he never signed any applications for an account, or whether the account was ever actually opened. Flushing Bank should not be expected to know about any concerted efforts made between Urrutia and Deo to lie about the ownership of Superb, and Urrutia should not be able to profit from his potentially unclean hands.

**2. Flushing Bank Reasonably Relied Upon Deo's Representations of Ownership of Northshore and 189 Sunrise**

On August 19, 2022, Puccio advised Deo that in order to apply for the line of credit, he would need to upload: (1) Two years of federal tax returns with all schedules for the business; (2) Two years of federal tax returns for Deo; and (3) a copy of Deo's license. Buccino Dec., at Exhibit

L. However, at this time, Deo did not open an account for either Northshore or 189 Sunrise, but eventually emailed Puccio on February 27, 2023, and provided him with Operating Agreements for both Northshore and 189 Sunrise, indicating that he was 99% owner of each entity, and his wife was 1% owner. He also provided the Bank with IRS K-1 documents evidencing these ownership percentages. Buccino Dec., at Exhibit M; Deo Tr. 232:21-235:1; 236:23-237; Feb. 13 Deo Tr., 212:13-213:18.

The Bank requested additional information regarding the ownership of Northshore and 189 Sunrise due to concerns over a pending lawsuit against Northshore. In response, Deo provided an affidavit of the accountant for Northshore and 189 Sunrise, who attested that plaintiff Aaronson and Island Auto Group's comptroller, Wendy Kwun, had directed tax returns to be amended to reflect Deo's ownership interest, and that these ownership interests were also confirmed by the accounting form of Citrin Cooperman. Buccino Dec., at Exhibit N; *see also* Jones000001-000005, attached to the Ronneburger Dec. as Exhibit G.

In addition to providing this documentation, Deo signed Certifications of Beneficial Owner(s) identifying himself as having 99% Ownership in both Northshore and 189 Sunrise. Buccino Dec., at Exhibits O and P. He also signed Resolutions of Authority for both Northshore and 189 Sunrise Hwy, listing himself as the person authorized to conduct transactions on bank accounts and "to borrow money and obtain credit for the entities."

Deo provided the Bank with documents, including tax documentation, evidencing his ownership in both Northshore and 189 Sunrise. In fact, the tax returns listing Deo as a 99% owner of Northshore and 189 Sunrise, which were submitted to Flushing Bank to demonstrate Deo's ownership in these entities, were approved by plaintiff Joshua Aaronson. Transcript of Deposition of Joshua Aaronson, at 97:15-22, Ronneburger Dec., at Exhibit F.

Deo provided the Bank documentary evidence, approved by members of the IAG Plaintiffs, of his ownership in Northshore and 189 Sunrise. Now, the Superb Plaintiffs—who have no apparent claim to ownership to these entities—allege that the Bank should have known that Deo was allegedly not the owner of Northshore or 189 Sunrise, and that the Bank violated U.C.C. § 4-A-204(1) by allowing Deo to open up accounts for both entities and take out a line of credit for Northshore. But it cannot be clearer that Flushing Bank reasonably relied upon the documents presented to them, including K-1s filed with the IRS. If these documents were in some way fraudulent, there was no way for Flushing Bank to know this. Rather, Flushing Bank followed "commercially reasonable procedures" in this matter, obtaining documents which evidenced Deo's ownership in the entities. There is absolutely no issue of fact regarding whether the opening of these accounts, or the transactions conducted thereon, could be determined to be "unauthorized" in the face of numerous documents confirming Deo's claim of ownership. *See 2006 Frank Calandra, Jr. Irrevocable Trust.*, 816 F.Supp.2d at 233.

The Superb Plaintiffs fail to set forth any evidence or facts to suggest that Flushing Bank had any way of knowing Deo's claim of ownership was false. Throughout this litigation, the Superb Plaintiffs have attempted to focus on the Bank's requirements and procedures for the opening of accounts and giving of loans, seemingly trying to paint the picture that the Bank did not adhere to its own rules. Even if that were true, which it is not, it does not change the fact that Deo provided Flushing Bank with documentation demonstrating his ownership in the relevant entities, and that Flushing Bank reasonably relied upon that information.

Because there is not a single material issue of fact raised regarding the documents relied upon by the Bank to demonstrate Deo's ownership of Northshore or 189 Sunrise, summary judgment is warranted.

## CONCLUSION

For all the aforementioned reasons, summary judgment should be granted for Flushing Bank and Superb Motors remaining claim against the Bank, alleging a violation of U.C.C Article 4-A-204(1), dismissed in its entirety.

Dated: Uniondale, New York
September 4, 2026

CULLEN AND DYKMAN LLP

By: /s/ Ariel E. Ronneburger

Ariel E. Ronneburger
Thomas S. Baylis
*Attorneys for Defendant Flushing Bank*
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
(516) 357-3700
aronneburger@cullenllp.com
tbaylis@cullenllp.com

**CERTIFICATION**

I hereby certify that the total word count for this pre-motion letter, excluding the briefing schedule is 6,249 words, within the limit of 6,500 set by this Court's Individual Rules of Practice.

Dated: Uniondale, New York
September 4, 2026

CULLEN AND DYKMAN LLP

/s/ *Ariel E. Ronneburger*
Ariel E. Ronneburger
*Attorneys for Defendant*
*Flushing Bank*
333 Earle Ovington Boulevard, 2nd Floor
Uniondale, New York 11553
aronneburger@cullenllp.com