UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, and J.P. MORGAN CHASE BANK, N.A.,

Defendants.
----------------------------------------------------------------X

**Case No.: 2:23-cv-6188 (JMW)**

**DECLARATION OF BRIAN CHABRIER IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Brian Chabrier declares, pursuant to 28 U.S.C. §1746, under penalty of perjury, that the following is true and correct:

1. I am a plaintiff in this action and I am a member of Northshore Motor Leasing, LLC ("Northshore") and a member of 189 Sunrise Hwy Auto LLC ("Sunrise") (collectively the "Dealerships"), two entities part of the Island Auto Group ("IAG"). The IAG Plaintiffs include Northshore Motor Leasing, LLC ("Northshore"), 189 Sunrise Hwy Auto, LLC ("Sunrise"), 1581 Hylan Blvd Auto LLC, 1580 Hylan Blvd Auto LLC, 1591 Hylan Blvd Auto LLC, 1632 Hylan Blvd Auto LLC, 1239 Hylan Blvd Auto LLC, 2519 Hylan Blvd Auto LLC, 76 Fisk Street Realty LLC, 446 Route 23 Auto LLC, and Island Auto Management, LLC ("IAM").

2. I submit this declaration from my personal knowledge in support of IAG Plaintiffs' motion for summary judgment.

3. My knowledge is based on my ownership interests; the agreements, DMV filings, tax materials, checks, and bank records that I signed, received, or reviewed; my visits to the dealerships; my review of account activity; and my communications with the other members and dealership personnel.

4. I began working at an automobile dealership, Baron Nissan, in approximately 1990. Baron Nissan was one of the dealerships associated with the dealership group operated by David Baron ("Baron"), his brother Ron Baron, and others (the "Baron Group").

5. Through my longstanding work with Baron, I knew that Baron, Ron Baron, and others owned and operated new and used automobile dealerships within the Baron Group. I also knew through my work with the Baron Group that its dealerships had an existing floor-plan credit relationship with Ally Bank ("Ally"), which was used to finance the acquisition of vehicle inventory.

6. Northshore was formed in November 2017. Defendant Anthony Deo ("Deo") wanted to open Northshore at a facility at180 Michael Drive, in Syosset, but needed a DMV license and floor plan financing. A mutual acquaintance, Asad Khan ("Khan") introduced Deo to Baron.

7. Deo and Baron reached an arrangement in 2018 concerning the opening and operation of Northshore. Deo Dep. 494:16–502:13, 508:4–514:3.

8. Under that arrangement, in 2018 Baron, Khan, and I became Northshore's members, and Deo was engaged to manage its day-to-day operations. The written operating agreement, which we executed, identified Baron, Khan, and me—and not Deo—as the members.

9. Baron made Ally's floor plan available so that Northshore could obtain floor-plan financing to purchase its used-vehicle inventory, while Deo was engaged to manage Northshore's dealership operations. Deo Dep. 494:16–502:13, 508:4–514:3.

10. On February 14, 2018, Baron, Khan, and I executed Northshore's written operating agreement (the "Northshore Operating Agreement"). 617224/2022 NYSCEF 4. The Northshore Operating Agreement identifies Baron, Khan, and me—and no one else—as Northshore's sole members. **See Ex. 1**, 617224/2022 NYSCEF 4.

11. I never signed or approved any operating agreement identifying Deo as a member of Northshore, and I am not aware of any such operating agreement executed by Northshore's members. Deo Dep. 152:19–155:11, 157:6–12; 617224/2022 NYSCEF. I did not execute any assignment, transfer agreement, or other instrument transferring my Northshore membership interest to Deo. While Deo apparently submitted two (2) different versions of a purported Northshore operating agreement in March 2023 to Flushing listing Deo as a member, I had never seen them nor approved them.

12. In 2018, Northshore's members agreed that I would serve as Northshore's owner

applicant for the New York State Department of Motor Vehicles ("DMV") license and submit Northshore's application. Consistent with that agreement, I signed and submitted Northshore's original DMV facility application, which identified me as Northshore's owner applicant, which application was approved by the DMV on April 26, 2018. **See Ex. 2.**

13. Northshore began operating in 2018 under the DMV authority obtained through the application that listed me as the owner applicant. Deo Dep. 129:18–130:19, 472:23–476:6. Based on the DMV application process in which I participated, the DMV materials I signed and reviewed, and my experience as Northshore's owner applicant, I understood that replacing an existing owner applicant with a different owner required the submission of a change-of-owner application and the DMV's approval. Deo II Dep. 110:25–113:25, 483:18–484:11.

14. I later became a member of Sunrise. Sunrise was formed in 2014 and operated a used-car dealership at 189 Sunrise Highway in Amityville, New York. Its July 3, 2014 Operating Agreement was signed by Baron, Jory Baron, and Raymond Phelan and identified them as its original members. I was later admitted as an equal member, as reflected in the ownership and tax records described below.

15. I, along with Jory and Aaronson, was also one of the owner applicants on the DMV license for Sunrise. I am not aware of any application ever submitted to, or approved by, the DMV for a change to the owner applicant of Northshore or Sunrise.

16. Defendant Anthony Deo has never been a member of Sunrise. Nor have I ever seen an agreement executed by any Plaintiff that made Deo an owner or member of Sunrise.

17. From Northshore's opening in 2018 through Baron's death in May 2021, Baron regularly visited the Northshore dealership to check on its operations. O'Sullivan Dep. 122:7–14, 123:12–124:19. During the same period, Khan and I also visited Northshore from time to time,

although neither of us served as its daily operating manager. O'Sullivan Dep. 132:3–134:10.

18. As Northshore's members, Baron, Khan, and I each received payments that Northshore's books and records classified as shareholder or member draws. O'Sullivan Dep. 132:3–134:10. Those member-draw payments were processed through Northshore's ordinary bookkeeping and payment procedures while Deo was Northshore's manager. Deo was aware of these payments. O'Sullivan Dep. 132:3–134:10.

19. Because Deo managed Northshore's day-to-day business and directed its controller, he had access to the operational and financial records reflecting those payments. I never heard Deo object to the payments when they were being made.

20. Under the Northshore Operating Agreement and our ownership arrangement, Baron, Khan, and I were entitled to Northshore's distributions and profits as its members. Jones Dep. 33:18–24; 617224/2022 NYSCEF 4. My ownership interest was also consistently reflected in the tax documents that Northshore issued to me.

**Northshore's Tax Returns and My Ownership Interest in Sunrise**

21. Northshore filed federal partnership tax returns for 2018, 2019, and 2020, copies of which I received or later reviewed in connection with my ownership interest. **See Ex. 3**. Each of Northshore's 2018, 2019, and 2020 returns identified Baron, Khan, and me as Northshore's members.

22. Each of those returns included a Schedule K-1 for Baron, a Schedule K-1 for Khan, and a Schedule K-1 for me. The Profit on a K-1 would only be apportioned to one who is listed as an owner of Northshore. Those K-1s reflected our equal ownership interests and allocated Northshore's reported profit or loss among Baron, Khan, and me in equal shares. The K-

1s issued to Baron, Khan, and me for each of 2018, 2019, and 2020 reflected positive distributive income or profit.

23. For 2018, 2019, and 2020, Northshore's returns and K-1s treated Baron, Khan, and me as the members to whom Northshore's distributive tax items were allocated; they did not list Deo as a Northshore member for those years.

24. All members were required to report the income shown on my Northshore K-1s and bear the resulting tax consequences. Jones Dep. 38:17–39:8.

25. Before 2018, I acquired an additional, equal membership interest in Sunrise, another used-car dealership. Chabrier Dep. 75:17–76:3.

26. My Sunrise membership interest is reflected in Sunrise's ownership and tax records. **See Ex. 4**. Sunrise's tax records for 2018, 2019, and 2020 continued to identify me among Sunrise's members, consistently with my equal ownership interest.

27. I reported my Northshore and Sunrise ownership interests on my personal tax returns and reported the distributive tax items shown on the Schedules K-1 issued to me. **See Ex. 5**.

28. In or around February 2021, Sunrise's members discussed a proposed transaction under which Deo might acquire Sunrise. Any such transaction was subject to terms and conditions that had to be satisfied before a sale could close. 615683/2024 NYSCEF 7 and 64; Deo Dep. 96:22–98:19, 99:23–100:3.

29. The proposed terms were memorialized in an unsigned writing. They required Deo to pay each member $10,000 down and an additional $3,000 per month until Deo could cross-guarantee Sunrise with a franchised automobile dealership. A copy of that writing is filed at 615683/2024 NYSCEF Doc. No. 7.

30. Deo paid each Sunrise member the initial $10,000 payment, but he did not make the required $3,000 monthly payments. The proposed terms and payment evidence are filed at 615683/2024 NYSCEF Doc. Nos. 7 and 64. **See Ex. 6**. Deo also never obtained a franchised dealership capable of cross-guaranteeing Sunrise.

31. Deo therefore did not satisfy the proposed purchase conditions.. The proposed transaction did not close, and I did not sign or deliver any assignment transferring my Sunrise membership interest to Deo. Chabrier Dep. 85:17–86:6. Accordingly, Deo did not acquire my Sunrise membership interest through the proposed transaction, and I remained a member of Sunrise.

**Deo's Day-to-Day Management of Northshore and Sunrise**

32. Deo managed, and his wife, Sarah Deo ("Sara"), also began working at, Northshore in 2018.

33. In 2021, Sunrise engaged Deo to serve as its dealership manager and Sara also began working for Sunrise as well.

34. As manager of Northshore and Sunrise, Deo handled the dealerships' day-to-day operations, including supervising personnel, buying and selling vehicles, submitting vehicle purchases for floor-plan funding, handling customer transactions, and directing financial and operational reporting.

35. Through August 2022, Deo exercised primary and essentially exclusive control over Northshore's and Sunrise's day-to-day operations.

36. Deo's managerial authority included approval for retail transactions, purchasing inventory, drawing on the established floor plan for approved inventory, and transmitting supporting information to the relevant lender; it did not make him an owner or authorize him to obtain unrelated outside financing in the Dealerships' names.

37. From my review of dealership checks, account activity, and payroll-related

records, and from my dealings with dealership personnel, I understood that Northshore and Sunrise each paid both Deo and Sara a salary of $2,500.00 per week through payroll as employees. **See Ex. 7**, O'Sullivan Dep. 119:9–120:10.

38. The contemporaneous operating agreements, DMV records, tax records, member distributions, and payroll records treated Deo as the Dealerships' salaried manager rather than as a member. Jones also testified concerning his understanding of Deo's status**. Jones Dep. 77:11-25; 271:17-272:3.** My ownership testimony is based principally on the executed ownership and licensing records and on the fact that I never assigned my interests to Deo—not merely on Deo's receipt of salary.

39. The dealership payment records that I reviewed also reflected payments to Car Buyers NYC Inc. ("Car Buyers") calculated as a percentage of gross sales. O'Sullivan Dep. 119:5–121:3. Those percentage-of-gross-sales payments to Car Buyers were made at Deo's direction in connection with his management of Northshore and Sunrise. O'Sullivan Dep. 119:5–121:3.

40. Northshore hired Daniel O'Sullivan ("O'Sullivan") to serve as its controller in or around 2019. O'Sullivan Dep. 217:15–218:2. Sunrise also engaged O'Sullivan to serve as its controller in or around 2021. O'Sullivan Dep. 48:22–50:1.

41. As controller, O'Sullivan handled the dealerships' bookkeeping and accounting functions, prepared checks and financial information, and worked with the dealerships' bank and accounting records.

42. In my interactions with O'Sullivan concerning Northshore and Sunrise, O'Sullivan took his instructions from Deo, who was the dealerships' day-to-day manager. O'Sullivan Dep. 223:11–14, 232:15–18.

43. Deo was not an authorized signer on Northshore's or Sunrise's bank accounts. When a check was needed in the ordinary course of the dealerships' operations, O'Sullivan generally prepared it based on the underlying dealership transaction and Deo's operational direction, after which Baron or I signed the check when an authorized signature was required.

44. I did not direct O'Sullivan's routine, day-to-day controller work. Based on what I personally observed, O'Sullivan took his day-to-day operational instructions from Deo. O'Sullivan Dep. 223:11–14, 232:15–18.

45. My statements concerning O'Sullivan's controller role and the source of his day-to-day instructions are based on my own interactions with him, my check-signing and account-review responsibilities, and my communications with Northshore and Sunrise personnel.

**Deo's Unauthorized Ownership Reporting and Financing Transactions**

46. I was aware that in October 2022 Aaronson had been negotiating with Deo to take over ownership of Northshore and Sunrise, but that the transfer was expressly conditioned on Deo repaying the IAG-funded deficiencies, obtaining a replacement floor-plan line and taking over as owner applicant on the DMV licenses. Deo satisfied none of those conditions and the ownership transfer never occurred.

47. Neither the Northshore members nor I authorized Deo to represent that he owned Northshore or Sunrise, to pledge any membership interests in those companies, or to transfer any such interests to another person.

48. I have since reviewed Northshore's 2021 partnership return and saw that it reported Deo as holding a 99% interest in Northshore. I did not authorize that ownership reporting, and it did not reflect any transfer of my Northshore membership interest.

49. The reporting on the 2021 return did not correspond to any assignment that I signed, any member vote that I approved, any closing in which I participated, or any DMV change-of-owner application that I executed. I did not understand the filing of that return, standing alone, to transfer my membership interest.

50. I have also since reviewed Sunrise's 2021 partnership return and Schedule K-1 and saw that they reported Deo as holding a 99% interest in Sunrise. I did not authorize that ownership reporting, and it did not reflect any transfer of my Sunrise membership interest

51. I was only aware of the negotiations being conducted between Aaronson and Deo, and that the terms of the complete transfer of ownership were never met.

52. In November 2022, I learned that Deo had entered into a transaction with Libertas Funding LLC purportedly on Northshore's behalf, under which $735,000.00 was advanced in exchange for Northshore's future receipts. I had not approved that transaction or authorized Deo to enter into it for Northshore.

53. Northshore's members did not vote to approve the Libertas transaction, and I did not sign any agreement authorizing it. My understanding of the transaction is based on my review of the Libertas documents and the related Northshore and Sunrise account records after the transaction came to light.

54. I also later learned that Deo had obtained a $500,000.00 loan from Flushing Bank purportedly in Northshore's name and had caused a lien to be placed on Northshore's assets. I did not know about or approve that loan before it was obtained, and I did not authorize Deo to obtain it or encumber Northshore's assets.

55. In or around September 2022, I was informed by Aaronson that under the management and direction of Deo, Northshore and Sunrise realized substantial financial

deficiencies, including unpaid invoices, unpaid trade-in liens, lender buyback claims, and obligations associated with missing or damaged vehicles.

56. Because IAG plaintiffs and other IAG parties remained obligated under the shared Ally guarantees and because the DMV licenses continued to identify IAG plaintiffs rather than Deo as owner applicants, those deficiencies exposed parties other than Deo to demands, regulatory consequences, and cure payments.

57. By the time the financial deficiencies and unauthorized transactions described above were discovered, Northshore and Sunrise had ceased or were in the process of ceasing ordinary dealership operations. I have not received a member distribution or other income from Northshore since before it closed.

58. It is my understanding that Deo asserts that he was the rightful owner of Northshore and Sunrise when these losses occurred. All of the documents establish otherwise, and Deo has offered no contrary documentation.

59. Notwithstanding, it was the IAG Plaintiffs who suffered the losses because of their liability as guarantors of the Ally Floor Plan and DMV license holders, irrespective of their ownership in Northshore and Sunrise.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 2, 2026.

Brian Chabrier