EXHIBIT “6”

# STOCK PURCHASE AGREEMENT

**THIS STOCK PURCHASE AGREEMENT** (the "Agreement") is entered into this __ day of January, 2021, by and among **Anthony Deo** (address ______________________) ("Buyer" or "Purchaser"), **David Baron (**address___________________________________), **Joshua Aaronson**, (address__________________________), Brian Chabrier, (address ___________________), Jory Baron (address _______________________), and Raymond Phelan, (address ______________________________), (collectively "Seller" and individually "Individual Seller(s)") and Sunrise Auto Outlet Inc., a New York Corporation (the "Corporation") (Buyer, Seller, and Corporation are sometimes referred to individually as a "Party" and collectively as the "Parties").

**RECITALS:**

**WHEREAS**, Seller owns common shares of the Corporation which shares represent one hundred percent (100%) of the issued and outstanding shares of the Corporation (the "Shares").

**WHEREAS**, Seller desires to sell the Shares to Buyer, and Buyer desires to purchase the Shares subject to the terms and conditions set forth herein.

**WHEREAS**, The Parties hereby waive any and all transfer restrictions imposed by any by-laws of the Corporation or Shareholders' Agreement by and between the Parties in order to allow the purchase and sale of the Shares as provided herein.

**NOW, THEREFORE**, in consideration of the promises and of the mutual covenants herein contained, Buyer and Seller agree as follows:

## ARTICLE I

## Purchase of Shares

1.1 Purchase of Shares. Subject to the terms and conditions herein stated, Seller shall sell and transfer to Buyer, and Buyer shall purchase from Seller, the Shares, free and clear of all liens, claims, encumbrances, security interests, and other impairments of title.

1.2 Purchase Price and Payment. The Buyer is purchasing the Shares from the Seller for a total purchase price as follows: Fifty Thousand and No/100 ($50,000.00) Dollars upon execution of this Agreement, representing Ten Thousand and No/100 ($10,000.00) Dollars to each of the five (5) Individual Sellers, and Fifteen Thousand and No/100 ($15,000.00) Dollars per month commencing on ______________, 2021, representing Three Thousand and No/100 ($3,000.00) Dollars to each of the five (5) Individual Sellers, for each month subsequent to the execution of the Agreement until such time that Buyer is able to cross guarantee the Corporation with a franchise automotive dealership (the "Purchase Price"). At which time, no further monies for the Shares shall be due from Buyer to Seller.

## ARTICLE II

## Representations, Warranties and Covenants of the Seller

2.1 Resignation. The Individual Sellers will resign, if applicable, as a director, employee and officer of Corporation.

2.2 Capitalization of Corporation. (i) the authorized capital stock of the Corporation consists of 200 shares of common stock, of which 200 shares are issued and outstanding; (ii) common stock is the only class of capital stock of the Corporation that is authorized or outstanding; and (iii) all of the outstanding capital stock of the Corporation was issued in compliance with applicable federal and state laws and are duly authorized, validly issued, fully paid and non-assessable and free of preemptive rights. Seller has full power and authority to vote, sell, transfer and convey the Shares without obtaining the consent or approval of any person.

2.3 Ownership of Seller's Shares. The Seller owns, beneficially and of record, all of the Shares and all such Shares are free and clear of all liens, claims, security interest, restriction on voting or other encumbrances.

2.4 Actions and Proceedings. As of the date hereof, there are no outstanding orders, judgments, injunctions, awards or decrees of any governmental or regulatory body, court or arbitrator (collectively "Orders") against or involving Seller. To the best of Seller's knowledge, there are no actions, suits or proceedings, at law or in equity, pending against or affecting the Corporation, nor does Seller have knowledge of any claims of a material nature asserted against the Corporation.

2.5 Brokerage. No broker, agent or finder has been retained by or has acted, directly or indirectly, for the Seller in connection with this sale.

2.6 Contracts. Except as referenced in this Agreement, the Corporation is not indebted to any Individual Seller, and no Individual Seller has executed any promissory notes, contracts, real estate leases or equipment leases on behalf of the Corporation.

2.7 No Breach. The execution, delivery and performance of this Agreement and the consummation of the transaction contemplated hereunder will not: (i) violate, conflict with or constitute a default (with or without notice or lapse of time or both) under any agreement, understanding or commitment to which the Seller, or to the best of Seller's knowledge, the Corporation is a party or by which the Seller, Corporation, or its assets are bound or violate any law, order, judgment, injunction, award or decree, condition or agreement of any court, arbitrator or governmental or regulatory body against, or binding upon Seller or to the best of Seller's knowledge, the Corporation, or upon the assets or business of Seller or to the best of Seller's knowledge, the Corporation; or (ii) violate any statute, law or regulation of any jurisdiction as such statute, law or regulation relates to Seller, or to the best of Seller's knowledge, the Corporation, or to the assets or business of Seller, or to the best of Seller's knowledge, the Corporation or to its assets and business.

## ARTICLE III

## Representations, Warranties and Covenants of Purchaser

3.1 No Breach. The execution, delivery and performance of this Agreement and the consummation of the transaction contemplated hereunder will not: (i) violate, conflict with or constitute a default (with or without notice or lapse of time or both) under any agreement, understanding or commitment to which the Buyer, or to the best of his knowledge, the Corporation, is a party or by which his or its assets are bound or violate any law, order, judgment, injunction, award or decree, condition or agreement of any court, arbitrator or governmental or regulatory body against, or binding upon Purchaser, or to the best of his

knowledge, the Corporation, or upon the assets or business of Purchaser, or to the best of his knowledge, the Corporation or (ii) violate any statute, law or regulation of any jurisdiction as such statute, law or regulation relates to Purchaser, or to the assets or business of Purchaser, or to the best of his knowledge, the Corporation or to its assets and business.

## ARTICLE IV

## Further Assurances

4.1 Each of the Parties shall, within two (2) weeks after receipt of written request, execute such documents and other papers, and take such further actions as may be reasonably required or desirable to carry out the provisions of this Agreement and the transactions contemplated hereby.

## ARTICLE V

## Indemnification and Reimbursement

5.1 Seller, individually and as a whole, shall agree to (a) indemnify and hold the Corporation and all present and future Shareholders harmless from and against all costs, expenses, liabilities and damages, including reasonable attorney's fees, which are related or connected to (i) all claims made against the Corporation by a person alleging negligence, willful misconduct, breach of duty or violation of law by the Seller; (ii) all claims against the Corporation by any governmental body or agency alleging a breach of law or regulation by the Seller; (b) reimburse the Corporation for all amounts payable to any Federal or State government or agency thereof for taxes due by the Corporation attributable to periods of time when any Individual was a Shareholder, including interest and penalties; and (c) all amounts payable in connection with claims against the Corporation the operative facts of which occurred prior to the Closing.

5.2 The Corporation agrees to indemnify and hold the Seller, individually and as a whole, harmless from and against any and all liability Seller may sustain which is related or connected to any contract, lease, note or agreement on behalf of the Corporation executed by Purchaser subsequent to the Closing.

**ARTICLE VI**

**Corporate Assets, Accounts Receivable, Accounts Payable**

6.1 It is understood and agreed that all assets of the Corporation, including, but not limited to, office equipment, office furniture, computers, equipment, records, files, equipment leases, real estate leases, good will, and accounts receivable of the Corporation shall belong solely to the Corporation, and Seller shall have no ownership interest.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

PURCHASER:

______________________________
Anthony Deo

SELLER:

______________________________
David Baron

______________________________
Joshua Aaronson

______________________________
Brian Chabrier

______________________________
Jory Baron

______________________________
Raymond Phelan