# EXHIBIT B

# In the Matter of

Case No. 2:23-cv-6188 (JMW)

SUPERB MOTORS INC., et al.

v.

DEO, et al.

---

## Examination of Anthony D. Deo

*Monday, January 12, 2026*

---

The Little Reporting Company
469 Seventh Avenue
12th Floor
New York, NY 10018
tel: 646-650-5055
www.littlereporting.com

A. D. DEO

this is NYSCEF Docket Entry 17 from the same case we've been looking at, the Island Auto Group lawsuit against you on December 6th. And this is the first page of the agreement of sale of future receipts with Libertas.

- - -

(Whereupon, Plaintiffs' Exhibit Deo 22, a two-page document, was marked for identification.)

- - -

Q. Do you see that?

A. Libertas. Yes, that's what it says.

Q. It says this agreement of sale of future receivables dated as of November 5, 2022 is made between Libertas and the merchant below. Correct? I'm paraphrasing.

A. Oh, okay. Between Libertas and --

Q. The merchant whose name, address and other information is set forth

A. D. DEO

below, right?

A. I can't see it. Could you make it a little bigger?

Q. Sure.

A. Okay. Yes. Yes.

Q. Okay. And the merchant listed below is Northshore, correct?

A. That's what it says, yes.

Q. And the owner is --

MR. CIANCIULLI: Objection.

Q. And the owner is listed as you?

THE STENOGRAPHER: Who was that?

MR. CIANCIULLI: I was just putting an objection on the record as to the characterization of the merchant.

MR. KATAEV: Jeffrey Cianciulli.

MR. CIANCIULLI: I don't need to say anything further.

You can answer.

Q. And you list yourself as the hundred percent owner of Northshore

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------X
SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs, Case No. 2:23-cv-6188 (JMW)

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC,

Defendants.

---------------------------------------------X

February 13, 2026
9:19 a.m.

100 Federal Plaza
Central Islip, New York

CONTINUED EXAMINATION BEFORE TRIAL OF
ANTHONY DEO

Page 90

A. Deo

ask you to take a look through that bank statement.
A Yes.
Q Do you recall this particular bank statement?
A I mean just by looking at it right now.
Q Now, as you previously testified, and it's all on the record, there was the funds that were provided by Libertas Funding of $735,000 that went to Sunrise and eventually it was returned. Excuse me, it was provided to your attorney, Mr. Thomasson, correct, by Mr. Aaronson?
A Yeah. They wired it back.
Q And it went to Mr. Thomasson's trust account, as far as you know?
A Escrow? Yeah.
Q Escrow account, yes.
Did Mr. Thomasson send you that money?
A Yes. He wired it to me.
Q When he wired it to you, did it go to you personally or some other entity?

Page 91

A. Deo

A I think it went to this account.
Q So there is a deposit, it's called a NYTLR transfer?
A Yes.
Q From November 22nd, 2022 in the amount of $723,000.
A Yes.
Q So is your recollection that that was the money that was transferred from Mr. Thomasson's escrow accounts to the Car Buyers account?
A Yes.
Q That was from the Libertas funds, correct?
A That's what it was supposed to be, yes.
Q Now, the amount that Mr. Thomasson got was $735,000. Do you recall that?
A Yes.
Q So there's a difference of $12,000?
A $12,000.
Q Did Mr. Thomasson keep that money?
A Well, I owed him money from past

Page 92

A. Deo

and future work, so I told him to keep $12,000 and send me the rest.
Q Did you have any written communications with him regarding that?
A I think it was a phone call.
Q What about the direction for him to transfer the money to this particular account, was it in writing or by phone or something else?
A I think it was a phone call. I'm not sure.
Q Now, also on this bank statement is a transfer on, a withdrawal, the second one of November 22nd, 2022. Am I sharing that?
A What one?
Q Transfer, a wire transfer on November 22nd, 2022 in the amount of $300,000.
A Yes.
Q And that is a transfer to Star Performance Consulting. Do you see that?
A Yes.
Q Do you know who Star Performance Consulting is in connection with this?
A That is one of Tony Urrutia's

Page 93

A. Deo

corporations.
Q So was this part of the $500,000 that you paid in connection with your Superb agreement?
A Yes.
Q If we scroll down a little further to the next page, it's the top of the next page, there's another wire on November 29th, 2022 also to Star Performance Consulting for $200,000. Do you see that?
A Yes.
Q Was that the balance of the $500,000 that was paid?
A Yes.
Q Now, right before the payment of $300,000 on November 22nd, there is a transfer to DLA Capital Partners for $15,000. Do you see that?
A Yes.
Q Do you know who DLA Capital Partners is?
A That is Michael Laurie's company.
Q Do you know why you paid him $15,000?

A. D. DEO
Q. Do you understand what you wrote here?
A. Yeah.
Q. So what did you write here?
A. That I and my wife were mistakenly not being listed as owners.
Q. So --
A. That's all it states.
Q. Okay. So if you and your wife were mistakenly not being listed as the owners, who were listed as the owners?
A. I know now it was Asad, Brian and David.
Q. Okay. So my question is: Since Asad, Brian and David were listed as the owners on the tax returns, and this was fixed in November 2022, you became the owner again in November of 2022, correct?
A. I disagree with that statement.
MR. THOMASSON: Objection as to form.
Q. In November of 2022, a dispute arose between yourself and Island Auto



A. D. DEO
Group, correct?
A. Yes.
Q. As a result of that dispute, Island Auto Group removed files and other documents from the dealership at 180 Michael Drive in Syosset, correct?
A. I disagree with that statement.
Q. What happened in November of 2022 with Island Auto Group?
A. Is there a particular time or a particular incident?
Q. Is it fair to say that you've repeatedly stated in court that files were removed?
A. Yes.
Q. Tell me about that incident. What happened?
A. I mean, I don't know exactly the time frame, but Island removed all the files, folders, documents from the building.
Q. And did that happen because there was a dispute between you and Island Auto Group?



A. D. DEO
A. I don't think they removed it 'cause of a dispute.
Q. Why do you think they removed it?
A. I wouldn't know.
Q. Is it fair to say at least that as a result of their removing those files, a dispute arose between you and Island Auto Group?
A. That wasn't the only cause of our dispute.
Q. What were the causes of your dispute with Island Auto Group?
A. As I know now from these depositions, Josh Aaronson logging in with David Baron's login 18 months after he passed away to remove $735,000 from the Chase Bank accounts of 189 Sunrise illegally.
Q. That happened in November of 2022, correct?
A. That happened in November '18.
Q. Did the removal of the 735,000 happen before or after the files were



A. D. DEO
removed?
A. I don't know. I don't know the specific date the files were removed.
Q. Okay. I'm going to show you what's going to be marked as Deo Exhibit 11.
- - -
(Whereupon, Plaintiffs' Exhibit Deo 11, a 192-page document, was marked for identification.)
- - -
Q. I'll represent to you that this is your complaint filed in Nassau County Supreme Court against Island Auto Group and a host of other defendants. Do you recognize this document?
A. Yes, of course.
Q. Okay. I'm going to focus your attention on paragraph 128 of this complaint. Please read it. Let me know when you are done.
A. Okay.

Case 2:23-cv-06188-JMW Document 547-4 Filed 09/04/26 Page 75 of 351 PageID #: 22278


289

A. D. DEO
A. Maybe one loaning it or -- one company loaning another company.
Q. Do you have any other such -- do you have any such loan documents between your companies?
A. Not -- I don't recall.
MR. KATAEV: I'm going to call for the production of any intercompany loans for any corporations owned by Mr. Deo, any intercompany or intercorporate loans. I'll follow up in writing.
Q. Now, you don't deny that this loan from Libertas was used to purchase your interest in Superb for $500,000, correct?
A. The funds was used to -- was sent to Tony, yes.
Q. And you're aware that in order to obtain this loan of 735,000, you had to pay back approximately 900,000, correct?
A. If you bring it up, I think it's

290

A. D. DEO
on there.
Q. I just want to know based on your memory.
A. My memory, I don't know exact numbers. I'm sorry.
Q. Okay. What did you do with the other $235,000 that you obtained from Libertas?
A. I don't recall at this moment.
Q. Didn't you use that money to pay the landlord of your Old Westbury property, where you're currently living?
A. That's an assumption on your behalf.
Q. I'm asking you: Did you use that money for that purpose?
A. I already answered that I don't recall.
Q. Okay. Prior to the time that you obtained the funds from Libertas --
A. Okay.
Q. -- you paid Tony a hundred thousand dollars. Do you remember

291

A. D. DEO
that?
A. I gave Tony a check, yes.
Q. That check bounced, didn't it?
A. The funds didn't clear in time.
Q. You obtained those funds from an individual named Albert Hakim, correct?
A. I'm not sure of the whereabouts of those funds at the moment.
Q. Are you aware that Albert Hakim has sued you?
A. You mentioned that.
Q. Are you aware?
A. Tony mentioned that.
Q. Is that the first time you became aware?
A. Yeah.
Q. The funds that were placed on hold resulting in the bounced check were received from Hakim, correct?
A. I told you I don't recall.
Q. The Island Auto Group plaintiffs took the 735,000 that you received in Sunrise, correct?
A. Yes. Josh used his dad's --

292

A. D. DEO
father-in-law's log-in to move that money, yes.
Q. Ultimately, you received the funds back through Mr. Thomasson's help and he wired it to your Car Buyers account, right?
A. I can't remember how it went. But yes, Harry did wire the money.
Q. Do you remember where he wired the money?
A. As I said, I can't remember exactly which account it went to.
Q. I'm showing you a screenshot of a bank statement marked as Deo Exhibit 23, ECF Docket Entry 11-4 in this case.

- - -

(Whereupon, Plaintiffs' Exhibit Deo 23, a document, was marked for identification.)

- - -

Q. Focusing your attention to the two pending transactions for $735,000. Do you see that?

Case 2:23-cv-06188-JMW Document 547-4 Filed 09/04/26 Page 76 of 351 PageID #: 22279




A. D. DEO
A. Yes.
Q. This is a transaction from Libertas to Northshore, correct?
A. It's -- that's the loan that I signed for, yes.
Q. And this transaction reflects Joshua Aaronson taking the funds out by transfer, correct?
A. Well, if you ask the Chase fraud department, David Baron logged in and moved that money.
Q. Okay. But this shows that it came out, right?
A. That shows that it came out.
Q. Okay. I'm going to show you Deo 24, ECF Docket Entry 11-5.
- - -
(Whereupon, Plaintiffs' Exhibit Deo 24, a document, was marked for identification.)
- - -
Q. I'll represent to you that this is a screenshot of Superb's checking account on the mobile application of



A. D. DEO
Chase, and it shows a $200,000 wire from Bank of America from Car Buyers NYC Inc. and a $300,000 wire from Bank of America Car Buyers NYC Inc. Do you see that?
A. Yes.
Q. So is it fair to say that the money you received from Mr. Thomasson went to your Car Buyers account?
A. That's -- you're assuming again.
Q. Okay. Are you saying that the money from Car Buyers that went to Tony came from somewhere else?
A. Is that -- is this Tony's?
Q. I'll represent to you that this is Tony's account at Superb.
A. So it's saying that it came from my Car Buyers account, yes.
Q. Okay. And I'm asking --
A. 300,000 and 200,000.
Q. The 500,000 that -- of -- the 500,000 came from the 735,000 you recovered from Mr. Thomasson, correct?
A. Say that question again.



A. D. DEO
Q. This 500,000 that you paid came from the 735,000 from Libertas, correct?
A. I would say so.
Q. And when Mr. Thomasson recovered those funds from the Aaronson plaintiffs, or Island Auto Group plaintiffs, he sent this money to Car Buyers NYC 1 Inc., right -- NYC Inc.?
A. That's -- I told you I'm not sure where he sent it.
Q. You don't have any operating agreement from Northshore or Sunrise showing that Tony has a 25 percent interest in those entities, correct?
A. I don't think we created one, no.
Q. Okay. And you deny that in February 2023, after the double-flooring incident, Tony asked you to focus only on Superb and not work on Northshore and Sunrise, correct?
A. I said I don't remember.



A. D. DEO
Q. Why is it that you decided to apply for your own DMV license in February of '23?
A. 'Cause I needed -- I still had the lease for 180 Michael Drive. I still had the lease for 189 Sunrise. And I needed a license there.
Q. Because --
A. I spoke to Tony about it and he said, Let's get new licenses.
Q. Okay. And while you were working on getting those licenses, he asked you to focus fully on Superb, correct?
A. Again, you're asking the same question. I said I don't recall.
Q. Based on what you just told me, does that refresh your recollection as to your discussion with him?
A. Say that again.
Q. You told me that you had two lots that you couldn't operate from because you needed licenses, correct?
A. I needed license, yes.