**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SUPERB MOTORS, INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HIGHWAY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC, and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARA DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING, LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC,

Defendants.

Case No. 2:23-cv-6188 (JMW)

# MEMORANDUM OF LAW IN SUPPORT OF THE DEO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**MARWAHA LAW GROUP, PLLC**
Nipun Marwaha, Esq.
1539 Franklin Avenue, Suite 201
Mineola, New York 11501
Tel. 516-503-4624
Attorneys for the Deo Defendants

**HARRY R. THOMASSON, ESQ.**
3280 Sunrise Highway, Box 112
Wantagh, New York 11793
Tel. 516-557-5459
Defendant Pro Se

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ....... 1
**STATEMENT OF FACTS** ....... 1
A. Origins of Northshore and 189 Sunrise ....... 1
B. Tax Documentation ....... 2
C. Plaintiffs' Controller's Testimony ....... 2
D. The $735,000 ....... 3
E. Superb Motors ....... 3
F. Other Movants ....... 3
**LEGAL STANDARD** ....... 4
**ARGUMENT** ....... 4
**POINT I: FIFTEEN MOVANTS ARE ENTITLED TO JUDGMENT ON ALL COUNTS** .. 5
**POINT II — THE RICO CLAIMS (COUNTS 1–5) FAIL AS A MATTER OF LAW** ....... 6
A. The Predicate Acts Fail on Plaintiffs' Own Record ....... 6
B. No Pattern of Racketeering Exists ....... 8
C. No RICO Injury ....... 9
D. No Investment Injury ....... 9
E. Count 5 Remedy Has Been Superseded ....... 9
**POINT III — SUPERB CLAIMS (COUNTS 6, 7, 8, 9, 27, 28) FAIL ON URRUTIA'S ADMISSIONS** ....... 10
A. Conversion (Count 7) ....... 10
B. Unfair Competition (Count 6) and Civil Conspiracy (Count 8) ....... 11
C. Fraud (Count 9) ....... 12
D. Breach of Fiduciary Duty and Faithless Servant (Counts 27 and 28) ....... 13
**POINT IV — THOMASSON COUNTS FAIL** ....... 14
A. No Escrow Was Ever Formed, on Plaintiffs' Own Pleading ....... 14
B. No Testimony of Wrongdoing ....... 14
C. Counts 1–8 Fail as to Thomasson Because His Only Role Was as Counsel ....... 15
**POINT V — NORTHSHORE AND 189 SUNRISE CLAIMS AGAINST DEO FAIL** ....... 15
A. Deos Own Northshore and 189 Sunrise; Plaintiffs Are Estopped from Denying It ....... 16
B. Conversion (Counts 12 and 16) ....... 17
C. Breach (Counts 14, 15, 18, and 19) ....... 18
D. Unjust Enrichment (Counts 13 and 17) ....... 19

E. Accounting (Counts 24 and 25)........19
F. Fraud (Count 26)........20
**POINT VI — ALTERNATIVELY, EXCLUDE PRINCIPAL DAMAGES CATEGORIES**
........20
**CONCLUSION** ........22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ....................4
*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ....................9, 21
*Azrielli v. Cohen Law Offices*, 21 F.3d 512 (2d Cir. 1994) ....................15
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .................... passim
*Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782 (1985) ....................19, 20
*Chill v. Gen. Elec. Co.*, 101 F.3d 263 (2d Cir. 1996) ....................12
*Ciminelli v. United States*, 598 U.S. 306 (2023) ....................8
*Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461 (2d Dep't 1982) 13
*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999) ....................8
*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006) ....................5, 10
*Community Capital Bank v. Fischer & Yanowitz*, 47 A.D.3d 667 (2d Dep't 2008) ....................17
*DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147 (2010) ....................12
*Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308 (1980) ....................21
*EBC I, Inc. v. Goldman, Sachs & Co.*, 5 N.Y.3d 11 (2005) ....................18
*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009) ....................12
*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584 (1999) ....................14
*Farago v. Burke*, 262 N.Y. 229 (1933) ....................14
*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) ....................6, 9
*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ....................8
*Hemi Grp., LLC v. City of New York*, 559 U.S. 1 (2010) ....................9, 21
*Holtz v. Rockefeller & Co.*, 258 F.3d 62 (2d Cir. 2001) ....................4
*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (2007) ....................5, 11
*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ....................4
*Kaufman v. Cohen*, 307 A.D.2d 113 (1st Dep't 2003) ....................14
*Kenford Co. v. County of Erie*, 67 N.Y.2d 257 (1986) ....................21
*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) ....................5, 12
*Kooleraire Serv. & Installation Corp. v. Bd. of Educ.*, 28 N.Y.2d 101 (1971) ....................17
*Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413 (1996) ....................13
*Laub v. Faessel*, 297 A.D.2d 28 (1st Dep't 2002) ....................13, 21

*Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415 (2009) ....................16

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ....................19

*Manson v. Stacescu*, 11 F.3d 1127 (2d Cir. 1993) ....................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ....................4

*Ouaknine v. MacFarlane*, 897 F.2d 75 (2d Cir. 1990) ....................9

*Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817 (2016) ....................20

*Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184 (2d Cir. 2003) ....................13, 19

*Republic of Haiti v. Duvalier*, 211 A.D.2d 379 (1st Dep't 1995) ....................10

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) ....................5, 15

*Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98 (2d Cir. 2011) ....................1

*Salinas v. United States*, 522 U.S. 52 (1997) ....................5, 9

*Scott v. Harris*, 550 U.S. 372 (2007) ....................1, 4

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ....................6

*Spagnola v. Chubb Corp.*, 574 F.3d 64 (2d Cir. 2009) ....................21

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ....................8

*Tzolis v. Wolff*, 10 N.Y.3d 100 (2008) ....................18, 20

*Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568 (1st Dep't 2011) ....................19

*United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000) ....................7

*United States v. Dupre*, 462 F.3d 131 (2d Cir. 2006) ....................8

*United States v. GAF Corp.*, 928 F.2d 1253 (2d Cir. 1991) ....................4

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) ....................17

**Statutes**

18 U.S.C. § 1962(a) ....................9

18 U.S.C. § 1962(c) ....................6

18 U.S.C. § 1962(d) ....................15

18 U.S.C. § 1964(a) ....................10

18 U.S.C. § 1964(c) ....................6

N.Y. Ltd. Liab. Co. Law § 401 ....................17

N.Y. Ltd. Liab. Co. Law § 409(a) ....................18

N.Y. Ltd. Liab. Co. Law § 417 ....................17

**Rules**

Fed. R. Civ. P. 56(a) ....................4
Fed. R. Civ. P. 56(c)(1)(A) ....................4
Fed. R. Civ. P. 56(e)(2) ....................4
Local Civil Rule 56.1(c)–(d) (E.D.N.Y. & S.D.N.Y.) ....................4
N.Y. Rules of Prof'l Conduct r. 1.15(c)(4) ....................14

## PRELIMINARY STATEMENT

It has long been established that where the non-movant's version of events is contradicted by its own sworn testimony and documents, no genuine dispute exists, and where the party bearing the burden at trial cannot produce evidence on an essential element, the movant is entitled to judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105–06 (2d Cir. 2011).

Plaintiffs, under oath, refute the case they pleaded. They accuse seventeen movants of racketeering, conversion, fraud, and faithless service. Plaintiffs' own witnesses testified that fifteen of the seventeen did nothing they can identify. By way of example only: Plaintiff Aaronson "honestly" approved tax returns naming Anthony and Sara Deo as 100% owners of Northshore and 189 Sunrise. This self-defeating pattern pervades.

## STATEMENT OF FACTS

Relevant facts are set out in the Deo Defendants' Joint Rule 56.1 Statement, ECF 521-1 ("DSF"), whose paragraphs contain the underlying record citations.

### A. Origins of Northshore and 189 Sunrise

Deos formed Northshore Motor Leasing, LLC on November 1, 2017, obtained its EIN, corporate book, Chase account, and began operations in 2018. David Baron then offered a floor plan through Island Auto Group and the use of his accountants, with Baron partners added to the account "as signatories, only." DSF ¶¶ 3–22. Deos purchased 189 Sunrise Hwy Auto LLC from Plaintiffs in February 2021 for $50,000. DSF ¶¶ 26–28, 61. Plaintiff Aaronson admits Deos carried every obligation of ownership, including lease payments and personal guarantees of the NESNA contracts. DSF ¶¶ 29–40, 62, 65–66.

Deo alone ran the dealerships with check authority while Baron, at arm's length, reviewed monthly financials. DSF ¶¶ 55–57, 208–214, 303.

**B. Tax Documentation.**

Plaintiffs authorized Plaintiffs' accountants to prepare tax returns reporting Anthony and Sara Deo as 100% owners of both entities and approved them "honestly," without trying to mislead the government. DSF ¶¶ 42–45, 67, 92–98. Those returns were never amended. DSF ¶ 100. Aaronson, Khan, and Chabrier each dropped the entities from their own returns and/or stopped receiving K-1s. DSF ¶¶ 99, 101, 164–166, 301–302, 322–327.

**C. Plaintiffs' Controller' Testimony.**

Daniel O'Sullivan, a Baron-family dealership controller for 43 years, kept the books for both dealerships: he prepared the financial statements, made every Dealer Track entry, posted every used-car sale, paid all bills/taxes, and arranged the monthly floor-plan audits. DSF ¶¶ 170–195, 203–207.

O'Sullivan alone tracked the cash, recording every cash payment on the deal jacket and in Dealer Track. DSF ¶¶ 231–240. When Deo took cash, O'Sullivan deducted it "every time" from Deo's capital account, an account that "means that you are an owner," and called that treatment "proper accounting" with "nothing improper" about it. DSF ¶¶ 241–250, 256–258, 262–263.

He never told David Baron that Deo did anything improper. DSF ¶¶ 259–260. O'Sullivan testified that any claimed shortfalls reflected only the $65,000 monthly "management fee" the Deos paid Plaintiffs' affiliate. DSF ¶¶ 252–253, 261, 336–337. Further, David Baron knew what the Deos were paid. DSF ¶¶ 210, 219, 221. Importantly, Plaintiffs had full visibility: Chabrier and Aaronson held the security tokens, Chabrier reviewed accounts and checks daily, Kwun had access since 2021 and Positive Pay verified every check. DSF ¶¶ 162, 267–268, 296–297, 338.

**D. The $735,000.**

Anthony Deo obtained and personally guaranteed a $735,000 loan from Libertas. DSF ¶ 291-292, ECF 520-1. Plaintiffs' controller, "took the $735,000.00 on her own decision" and moved it to IAG's account; she "does not know" why. DSF ¶¶ 329–330. Plaintiffs then delivered funds to Thomasson's attorney trust account, "request[ing]" that he hold them pending resolution of the dispute; Thomasson, Plaintiffs plead, "did as directed and agreed with Deo," disbursed them to his client, and "declared in open Court . . . that no one was going to tell him what to do with his attorney escrow account." TAC ¶¶ 351–354.

**E. Superb Motors.**

Urrutia, an "absentee owner" of Superb, gave Deo authority over all day-to-day operations while his COO, Bruce Novicky, ran his four dealerships. DSF ¶¶ 341, 369, 409. Deo, however, "had no authority or ability to take money out of Superb's bank accounts": his security token was view-only. DSF ¶¶ 368–374. Despite alleging that Deo opened secret bank accounts, the record shows Urrutia knew of and supplied the documents for the Flushing accounts, and told Flushing that Deo was his partner. DSF ¶¶ 362–366, 386–387, 408. While Deo paid Superb's $200,000 monthly overhead, Urrutia moved money out of Superb for his own purposes. DSF ¶¶ 378, 401–402, ECF 406-6 Urrutia Dep. 196:15-17. Despite reporting to police on August 3, 2023 that Deo stole 100+ vehicles, Urrutia has admitted the report was false. DSF ¶¶ 380–381. The vehicles were in Plaintiffs' hands, recovered and re-floored by September 2023 on their own papers, and this Court has since authorized Plaintiffs to sell them. ECF 219–220; ECF 505 at 2, 13–14.

**F. Other Movants.**

Plaintiff witnesses could not identify wrongdoing by fifteen movants. Accusations against Anthony Deo and Harry Thomasson collapse under Plaintiffs' own testimony.

## LEGAL STANDARD

Summary judgment is required where no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in its favor, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), but a dispute is genuine only if a reasonable jury could find for the non-movant; a "scintilla" of evidence is not enough. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52 (1986). Where the non-movant bears the trial burden, the movant may simply point to the absence of evidence on an essential element, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986), and courts do not adopt a version of the facts "blatantly contradicted by the record." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A party cannot manufacture a dispute by contradicting its own sworn testimony. *Jeffreys v. City of New York*, 426 F.3d 549, 554–55 (2d Cir. 2005).

Under Local Civil Rule 56.1(c)–(d), each stated material fact is deemed admitted unless specifically controverted by citation to admissible evidence. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73–74 (2d Cir. 2001). Plaintiffs' combined response, ECF 535-1, repeatedly "controverts" facts by citing declarations at paragraph "X," placeholders that cite nothing; the Court should deem those facts admitted. Fed. R. Civ. P. 56(c)(1)(A), (e)(2). Statements in a party's pleadings and prior sworn filings, including verified pleadings in other actions, are admissions usable against it. *United States v. GAF Corp.*, 928 F.2d 1253, 1259–60 (2d Cir. 1991).

**ARGUMENT**

**POINT I : FIFTEEN MOVANTS ARE ENTITLED TO JUDGMENT ON ALL COUNTS**

Counts 9, 12–19, and 24–28 run against Anthony Deo alone; Counts 20–23 against Thomasson alone; and Counts 10 and 11 against Libertas and Flushing only. ECF 316. Only Counts 1–8, pleaded against the fourteen defined "Deo Defendants" (TAC at 1–2), reach any other movant. No count is pleaded against DLA Capital Partners Inc., or against Northshore and 189 Sunrise in their capacity as named defendants, and judgment should be entered in their favor on that ground alone.

For the remaining twelve movants, the entire case is Counts 1–8: RICO, unfair competition, conversion, and civil conspiracy. Each requires the defendant's own knowing participation: conduct of the enterprise's "operation or management," *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); agreement to a substantive violation, *Salinas v. United States*, 522 U.S. 52, 63–65 (1997); unauthorized dominion, *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49–50 (2006); or bad-faith misappropriation, *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476–78 (2007). Civil conspiracy, likewise requires intentional participation in an underlying tort. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006).

Plaintiffs' own witnesses disclaim any such evidence. Aaronson, with full authority from his partners (DSF ¶¶ 67, 150-151, 284, 288), does not know Blankenship, Merckling, or Laurie, identifies no wrongdoing by them, has no firsthand knowledge of any by Sara Deo, made no criminal allegation against any of these defendants to the FBI, and concedes his claims against every individual are "derivative from merely their association with Anthony Deo." DSF ¶¶ 73–80, 82, 85–88, 91. Jory Baron testified that "Sara Deo did nothing wrong" and does not know Merckling, Blankenship, or Laurie or what they did. DSF ¶¶ 123–128. Iris Baron has no knowledge

of wrongdoing by any of them. DSF ¶¶ 106–109. Khan does not recognize their names. DSF ¶¶ 142–148. Urrutia's allegations about Merckling and Blankenship "are just assumptions," and his only statement about Laurie is that Laurie "played his role." DSF ¶¶ 357–360. Plaintiffs admit many of these facts outright. ECF 535-1 (Resps. ¶¶ 77, 79, 86, 91, 105, 107, 119–121, 123, 127, 135, 137, 147–148, 153, 271: "Admit").

The affirmative record is the same. Plaintiffs' controller, who personally confirmed each receipt, testified that every cash deposit Merckling and Blankenship carried "was always actually deposited." DSF ¶¶ 254–255, 264–266. Sara Deo obtained Northshore's EIN, opened its account on proof of ownership, and brought customers: the acts of a co-owner. DSF ¶¶ 6, 11–12, 58, 60. No Gold Coast entity, Car Buyers, UEA, or DLA ever contracted with any Plaintiff. DSF ¶ 63.

The TAC's contrary allegations (¶¶ 771–773) are pleading, not proof, and Plaintiffs' principals have testified they have none. *Celotex*, 477 U.S. at 322–25. The conspiracy counts fail twice over: no evidence of any agreement (DSF ¶ 63), and, as Points II–III show, no surviving substantive violation or underlying tort. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004). Judgment should be entered for all twelve on every count.

**POINT II — THE RICO CLAIMS (COUNTS 1–5) FAIL AS A MATTER OF LAW**

Civil RICO plaintiffs must prove conduct of an enterprise through a pattern of racketeering activity, and injury to business or property "by reason of" the violation. 18 U.S.C. §§ 1962(c), 1964(c); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *First Capital*, 385 F.3d at 173–82.

**A. The Predicate Acts Fail on Plaintiffs' Own Record.**

The pleaded predicates, wire, mail, and bank fraud (TAC ¶¶ 745, 755, 766), reduce to (i) unreported or fictitious vehicle sales and "false financial statements" (¶¶ 774, 782, 787); (ii)

Libertas transaction (¶¶ 319–33); (iii) Flushing accounts/loan (¶¶ 360–65, 766); and (iv) a Hobbs Act-style "threat" by a police detective (¶¶ 343–44). Each requires a material misrepresentation made with intent to defraud a victim of money or property. *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000).

A "false financial statement" predicate cannot rest on statements the alleged victims' own controller prepared, from books he alone kept, and that monthly third-party floor-plan audits confirmed, where "[n]o cars were ever missing." DSF ¶¶ 180–195, 198–206. And the shortfalls have an undisputed innocent explanation from the same witness: the monthly fee paid to Plaintiffs' affiliate and cash draws deducted from Deo's capital account "every time." DSF ¶¶ 252–253, 257–258, 261, ECF 478-2 Kwun PP200:16-19.

Plaintiffs pleaded falsity that Deo supplied Libertas tax returns "making it appear that the Deos were the sole owners of Northshore." TAC ¶¶ 327–29. Plaintiff Aaronson directed and "honestly" approved those very returns. They cannot be "knowingly false" in Deo's hands. DSF ¶¶ 92–98; ECF 535-1 at 34–35, PageID #: 17476–77 (Resp. ¶ 98: "Plaintiffs admits only that Aaronson approved the filing of tax returns"). Further, Deo, who personally guaranteed the loan, did not take the proceeds; Plaintiffs' controller removed them "on her own decision," for reasons she "does not know." DSF ¶¶ 291, 329–330. That is not a scheme to obtain Plaintiffs' property.

**Flushing.** Plaintiffs plead that Deo opened accounts and obtained financing "without the authority to do so." TAC ¶ 766. But Urrutia knew of the Superb accounts, authorized Novicky to supply Superb's certificate of incorporation never told Deo not to open them, and told the bank Deo was his partner. DSF ¶¶ 362–366, 386–387, 408; ECF 535-1 at 121–22, 126, PageID #: 17563–64, 17568 (Resps. ¶¶ 366, 386, 408: "Admit"). And Deo represented Northshore's

ownership to Flushing exactly as Plaintiffs had certified it to the IRS six months earlier. DSF ¶¶ 92–100, ¶43. Neither is bank fraud.

**The "threat."** Plaintiffs allege Deo filed a "false" police report, resulting in threats of arrest unless the money was returned. TAC ¶¶ 343–44. However, Plaintiffs' controller in fact took the $735,000 "on her own decision." DSF ¶ 329. And a detective processing a complaint is law enforcement, not a wrongful threat by movants, whom the TAC ties to the detective only "upon information and belief." That is not extortion.

Two principles finish the predicates. Any theory that lenders, the bank, or taxing authorities lost accurate ownership information is the "right to control" theory *Ciminelli* rejected; wire fraud reaches only traditional property. *Ciminelli v. United States*, 598 U.S. 306, 309, 316 (2023). And good faith negates intent. *United States v. Dupre*, 462 F.3d 131, 139 (2d Cir. 2006). Deo represented ownership from the entities' own filed returns, and Plaintiffs concede he had check authority. DSF ¶¶ 57, 92–98, 242–243, ECF 478-1 O'Sullivan Transcript P. 162-163. Neither is fraud.

**B. No Pattern of Racketeering Exists.**

A "pattern" requires related predicates that "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). The Second Circuit has never found closed-ended continuity in predicates spanning under two years, and a scheme with a single finite objective is "inherently terminable." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242–44 (2d Cir. 1999); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008). Every shortfall Plaintiffs can date arose in August 2022; the Libertas and Flushing events ran from November 2022 to April 2023; the lockout ended the Superb relationship on August 3, 2023; and before 2022 only Covid slowed the dealerships. DSF

¶¶ 196–197, 335. A months-long dispute among co-owners, ending in litigation, is not a pattern of racketeering.

**C. No RICO Injury.**

RICO's "by reason of" requirement demands a direct relation between injury and violation; chains running through independent third-party decisions, or through injury to an entity, fail. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457–61 (2006); *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9–12 (2010). Injury, if any, from deceiving Libertas or Flushing belongs to those lenders, not Plaintiffs.

The record detailed in Point VI forecloses direct injury on both sides: no IAG witness identifies money missing due to Deo, no individual lost anything individually, and the Superb losses flow through NMAC's admitted "mistakes," Urrutia's own cross-collateralization, and his executives' departures. Members and guarantors have no RICO standing for injury derivative of the entity's. *Manson v. Stacescu*, 11 F.3d 1127, 1130–32 (2d Cir. 1993). These are independent causes of exactly the kind *Anza* and *Hemi* hold sever the chain.

**D. No Investment Injury.**

Section 1962(a) requires injury from the investment of racketeering income, distinct from injury the predicates caused. *Ouaknine v. MacFarlane*, 897 F.2d 75, 82–83 (2d Cir. 1990). The TAC pleads investment "in the acquisition of an interest in Superb" (TAC ¶¶ 769, 786), but Urrutia now swears Deo "never became a 49% owner of Superb" and the agreements "were never finalized." DSF ¶¶ 397–398. Plaintiffs cannot recover for an investment their own witness says never occurred. And the money ran *into* Superb: Deo paid its $200,000 monthly overhead. DSF ¶¶ 401–402, ECF 406-6 Urrutia Dep. 196:15-17. Count 4, the conspiracy keyed to § 1962(a), falls with Count 2. *Salinas*, 522 U.S. at 63–65; *First Capital*, 385 F.3d at 182.

**E. Count 5 Remedy Has Been Superseded.**

Count 5 seeks only a § 1964(a) injunction directing return of the Superb vehicles (TAC ¶¶ 813–17) and falls with the substantive counts. It is moot because (1) Plaintiffs admit vehicles were recovered/re-floored by September 2023 (ECF 219–220); (2) this Court vacated the preliminary injunction and authorized sale as "no longer necessary" on Plaintiffs' own argument, with accounting conditions (ECF 505 at 2, 13–14); and (3) Urrutia closed Superb, leaving nothing for an injunction to protect. DSF ¶ 378.

## POINT III — SUPERB CLAIMS (COUNTS 6, 7, 8, 9, 27, 28) FAIL ON URRUTIA'S ADMISSIONS

Urrutia's deposition "contains all of the allegations that TU can make against the Deo Defendants" (DSF ¶ 361), and it disposes of each Superb count. These counts do not relitigate the state court's ruling, which this Court gave preclusive effect (ECF 505 at 7–12), that Deo breached the warranties of the December 1, 2022 Cross-Purchase Agreement. That ruling decides nothing about authorization, knowledge, causation, and identification questions on which these counts turn.

**A. Conversion (Count 7).**

Conversion requires the plaintiff's superior possessory right in specific, identifiable property and the defendant's unauthorized dominion. *Colavito*, 8 N.Y.3d at 49–50. Money is convertible only if specifically identifiable and subject to an obligation to return. *Republic of Haiti v. Duvalier*, 211 A.D.2d 379, 384 (1st Dep't 1995).

**Funds.** Plaintiff Urrutia testified that Deo "had no authority or ability to take money out of Superb's bank accounts," that his token "was for view only," and that Deo "could not and did not

authorize anything on Superb accounts." DSF ¶¶ 368, 370–374. Superb's accounting department, hired by Urrutia or his COO, issued the checks Deo signed. DSF ¶¶ 375–376. Urrutia never told Deo not to open the Flushing accounts and himself supplied the corporate documents. DSF ¶¶ 362–365, 377, 386–387; ECF 535-1, Resp. ¶ 363. And Urrutia, not Deo, "caused money to be transferred out of Superb accounts for his own purposes." DSF ¶ 378. Deo exercised no dominion over Superb's funds.

**Vehicles and plates.** After three years, Plaintiffs cannot identify the property converted. Plaintiff Urrutia's accusation has ranged from 104 vehicles to "the teens," and he admits the police report of over 100 stolen cars was false. DSF ¶¶ 380–381. He knew the vehicles went to Northshore, gave Blankenship permission to move them, and never preserved the lot video. DSF ¶¶ 358, 382–384, 389. Plaintiffs concede they "were able to ascertain the whereabouts of most vehicles" (ECF 535 at 5–6) and that the injuncted vehicles were recovered and re-floored by mid-September 2023 (ECF 219–220). Plaintiffs have no evidence on an essential element. *Celotex*, 477 U.S. at 322–25. As to dealer plates, confidential information, and trade secrets (TAC ¶ 822), no witness identifies a plate, a document, or a dataset taken.

**B. Unfair Competition (Count 6) and Civil Conspiracy (Count 8).**

Unfair competition is the bad-faith misappropriation of another's commercial advantage. *ITC*, 9 N.Y.3d at 476–78. Count 6 pleads misappropriation of "confidential trade secrets" to "steal customers" and "poach employees" for the Gold Coast dealerships. TAC ¶ 819. No witness identifies a trade secret, a customer list, or a confidentiality measure. And Plaintiff Urrutia admits he knew Deo was opening Gold Coast Motors of Syosset and was himself "going to be an owner" if he set up its floor plan, which he never did. DSF ¶¶ 388, 390–391. A dealership Urrutia knew of

and agreed to co-own is no bad-faith competitor. Count 8, civil conspiracy, is not an independent tort and falls with Counts 6 and 7. *Kirch*, 449 F.3d at 401. No evidence shows any agreement to injure Superb. DSF ¶¶ 63, 357.

**C. Fraud (Count 9).**

Fraud requires a material misrepresentation, known to be false, made to induce reliance, on which the plaintiff justifiably relied to its injury. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Count 9 pleads that Deo "caused his accountants to provide Urrutia with monthly financials that falsely showed Superb was profitable." TAC ¶¶ 838–39. Every element fails.

The count pleads Deo "knew or should have known" the financials were false. TAC ¶ 841. Constructive knowledge is not scienter. *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996). And Deo concealed nothing: his contemporaneous emails raising "concerns over the accounting department at Superb" "were known in real time to [Urrutia]," who "authorized Bruce Novicky to deal with the issues." DSF ¶¶ 394–395; ECF 535-1 at 123, PageID #: 17565 (Resps. ¶¶ 394–395: "Admit").

Nor are the financials independently false: the count alleges falsity only "because Defendants' conduct caused Superb substantial losses." TAC ¶ 839. No falsity survives the failure of the remaining Superb counts.

Nor was any reliance justifiable. A sophisticated party with the means of knowledge at hand cannot claim it. *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 154 (2010). Plaintiff Urrutia has more than twenty years in the industry, owned four dealerships, employed a COO,

staffed Superb's accounting department with his own hires, chose to be an "absentee owner," and knew of the accounting problems in real time. DSF ¶¶ 339–341, 367, 375–376, 394, 409; ECF 535-1 at 127, PageID #: 17569 (Resp. ¶ 409: "Admit"). His own sworn account fixes his knowledge: by February 2023 Deo had told him Aaronson "owned the DMV licenses" and that Deo was "'bleeding out' financially," and by July 2023 Urrutia had renegotiated for a majority stake and extracted Deo's agreement "to indemnify me for any liabilities." ECF 50-1 ¶¶ 6, 14, 46. Knowing those facts, he continued, expanded, and re-papered the relationship; that defeats justifiable reliance, and his continued performance waives rescission. *Clearview Concrete Prods. Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 465–66 (2d Dep't 1982).

Finally, the count's own theory is detection delay: the financials "fail[ed] to cause Superb Plaintiffs to arrest such misconduct earlier." TAC ¶¶ 844, 846. New York limits fraud damages to out-of-pocket loss, *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996), and requires loss causation. *Laub v. Faessel*, 297 A.D.2d 28, 31 (1st Dep’t 2002).

**D. Breach of fiduciary duty and faithless servant (Counts 27 and 28).**

Counts 27 and 28 plead that Deo, "as owner and General Manager" of Superb, breached fiduciary and loyalty duties. TAC ¶¶ 1096–1103. A faithless-servant or fiduciary claim requires an identified act of disloyalty in performing the agent's duties. *Phansalkar v. Andersen Weinroth & Co.*, 344 F.3d 184, 200–02 (2d Cir. 2003). Plaintiff Urrutia identifies none: Deo could not move money out of the accounts; Urrutia knew of the Flushing accounts and Gold Coast Syosset; he knew of and permitted the vehicle movements; and Deo funded Superb's entire overhead while Urrutia moved Superb's money out for his own purposes. DSF ¶¶ 358, 362–364, 368–374, 378, 386–391, 401–402. Nor is Deo a "servant" on Urrutia's own account: Urrutia issued Deo a capital call in August

2023, a demand that lies only against a member, and Plaintiffs' own brief in this Court argued that Deo failed to carry out "his obligations as an owner." ECF 111 at 9, PageID #: 24729 ECF 112-7; confirm the August 2023 capital-call source document (NYSCEF Doc. 78 ¶ 32, Index No. 618608/2023) is attached]. The damages asserted are the group-wide losses Point VI shows flow from NMAC and Urrutia's own executives' departures.

## POINT IV — THOMASSON COUNTS FAIL

### A. No escrow was ever formed, on Plaintiffs' own pleading.

Counts 20–23 rest on a single premise: that Thomasson held the $735,000 in escrow "pending a resolution of the parties' dispute." TAC ¶¶ 1011–1012. But an escrow requires agreement, and calling a delivery one does not make it one. *Farago v. Burke*, 262 N.Y. 229, 233 (1933). Plaintiffs' own pleading defeats agreement: they "requested" the hold; Thomasson "did as directed and agreed with Deo" and disclaimed any instruction in open court (TAC ¶¶ 351–54); and Aaronson's own word was aspiration: "my goal was to have it put into escrow." Aaronson Dep. 173:3–4 (ECF 404-1 PageID 8363). Without mutual assent there is no agreement. *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999). And Rule 1.15(c)(4) requires delivery only to one "entitled to receive" the funds; these were proceeds of a loan Deo obtained and personally guaranteed, removed by Plaintiffs' own controller. DSF ¶¶ 292, 329–330, ECF 520-1. A lawyer who releases funds to the client who borrowed and guaranteed them converts nothing.

### B. No Testimony of Wrongdoing.

Aiding and abetting conversion or a fiduciary breach requires actual knowledge of the primary wrong and substantial assistance; constructive knowledge will not do. *Kaufman v. Cohen*, 307 A.D.2d 113, 125–26 (1st Dep't 2003). Plaintiffs' witnesses supply neither. Aaronson, Iris

Baron, Khan, and O'Sullivan do not know Thomasson; Jory Baron's only "knowledge" was "passed on to me"; Khan testified Thomasson "did not steal from NorthShore"; and Aaronson "does not know of actionable harm caused to Plaintiffs by Harry Thomasson." DSF ¶¶ 73–74, 84, 103–105, 116–122, 135–141, 271; ECF 535-1 at 39, PageID #: 17481 (Resps. ¶¶ 103-105, 116–122: "Admit"). Chabrier alleges only that Thomasson returned loan proceeds to the client who borrowed and guaranteed them. DSF ¶¶ 290–291, 304–305. Urrutia concedes Thomasson never handled Superb money or vehicles, calls representing Deo his "wrongdoing," and does not know whether Thomasson knew Deo's source of funds. DSF ¶¶ 343–356. The underlying wrongs fail under Point V, and these derivative counts fall with them.

**C. Counts 1–8 fail as to Thomasson because his only role was as counsel.**

Counts 1–8 run against Thomasson only as one of the defined "Deo Defendants" (TAC at 2). They fail for the reasons in Points I–III, and for one more: the only conduct any witness attributes to him is the practice of law. DSF ¶¶ 347–349; TAC ¶¶ 775, 794 ("served as counsel"). Providing legal services to an enterprise is not conducting its "operation or management." *Reves*, 507 U.S. at 185; *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521–22 (2d Cir. 1994). No witness places him in any car sale, floor plan, or bank account, or can describe the agreement § 1962(d) requires — and Urrutia concedes he "never handled any money involving Superb accounts" or "dealt with any Superb vehicles." DSF ¶¶ 117–122, 138–141, 271, 350–353, 357. Judgment should be entered for Thomasson on every count.

## POINT V — NORTHSHORE AND 189 SUNRISE CLAIMS AGAINST DEO FAIL

Counts 12–19 and 24–26 assume Deo was an "employee and the general manager" (TAC ¶¶ 963, 967) who looted the IAG Plaintiffs' entities. The ownership premise has been refuted repeatedly

above. Regardless, the Court need not resolve ownership to find each count fails on the testimony of Plaintiffs' own controller.

**A. Deos Own Northshore and 189 Sunrise, Plaintiffs are estopped from denying it.**

A party whose returns report another's ownership is precluded from taking a contrary litigation position. *Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415, 422 (2009).

Admissions establish both elements. Plaintiff Aaronson, "with the full authority of the co-Plaintiffs," directed IAG's own accountants, Citrin Cooperman, to prepare both entities' returns reporting Anthony and Sara Deo as 100% owners, and approved them; Khan and Chabrier had authorized him to decide for them. DSF ¶¶ 67, 92, 94–95, 97, 102, 150–151, 284; ECF 535-1 at 34–35, PageID #: 17476–77 (Resp. ¶ 98: "Plaintiffs admit only that Aaronson approved the filing of tax returns"). No basis exists to discredit the returns: Plaintiffs never revised them, and Chabrier can give no reason to distrust them. DSF ¶¶ 47, 93, 98, 100, 306. A denial supported only by "Aaronson Decl. ¶ X" controverts nothing. ECF 535-1 at 35, PageID #: 17477 (Resp. ¶ 100).

Individual Plaintiffs' own signed returns independently complete the estoppel. Plaintiff Aaronson stopped listing 189 Sunrise after receiving Deo's purchase payments. Plaintiff Khan has not reported Northshore since 2019. Plaintiff Chabrier stopped receiving K-1s because he "stopped being the owner of those businesses on the tax returns and Anthony Deo was the new owner." DSF ¶¶ 101, 164–165, 301–302; ECF 535-1 at 95, PageID #: 17537 (Resp. ¶ 301: "Admit"). Plaintiff Aaronson's anticipated rejoinder that the approval was "an accounting thing" (Aaronson Dep. 44:21–22 (ECF 404-1)) asserts no falsity; it concedes he took the position for the taxing authorities, the exact position the doctrine holds him to. *Mahoney-Buntzman*, 12 N.Y.3d at 422.

Every indicium of ownership points to the Deos. They formed the entities, obtained the EIN, kept the corporate book, contributed the location, paid $50,000 to purchase 189 Sunrise,

made the lease payments, personally guaranteed the NESNA contracts that by Plaintiff Aaronson's own definition fall on an owner, and managed alone with check authority. Each dealership carried a Deo capital account, which "means that you are an owner," maintained by the controller Plaintiffs installed, who considered Deo "the boss" from day one. Statement of Facts, Parts A–C; DSF ¶¶ 5–13, 26–40, 55–57, 61–66, 186, 241–245, 303, 327. Where no operating agreement exists, conduct governs. N.Y. Ltd. Liab. Co. Law §§ 401, 417. That record is one-directional under New York's factors for an unwritten association. *Community Capital Bank v. Fischer & Yanowitz*, 47 A.D.3d 667, 668 (2d Dep't 2008). Plaintiffs cannot produce one writing on ownership, and their lead principal "does not know who owns NorthShore." DSF ¶¶ 51–52, 59, 130, 285–286.

Plaintiffs' convenient fallback, that ownership "was subject to additional conditions Deo did not satisfy" (ECF 535-1 at 34–35 (Resp. ¶ 98)), rests on no writing at all. DSF ¶ 59. Plaintiff Aaronson identified only one condition, "switching motor vehicle into his name." Aaronson Dep. 44:22–45:5 (ECF 404-1). Plaintiffs' own controller stopped that transfer: "we were supposed to fill out the transfer of Northshore and 189 Sunrise, but then she stopped the paperwork, I guess Josh told her to." Deo Dep. 454:9–12 (Feb. 12, 2026; ECF 518-10, PageID 13964). Kwun was and is Aaronson's employee. DSF ¶¶ 307, 328. A party may not rely on the non-occurrence of a condition it prevented. *Kooleraire Serv. & Installation Corp. v. Bd. of Educ.*, 28 N.Y.2d 101, 106 (1971). And if ownership were truly conditional, Plaintiffs would have amended the returns; in four years they have not. DSF ¶ 100.

Neither state-court order adjudicated ownership: preliminary-injunction findings have no preclusive effect, *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981), and Justice Murphy "decline[d] to enter any judgment on this issue." NYSCEF Doc. No. 134, Index No. 618608/2023, at 7–9.

**B. Conversion (Counts 12 and 16).**

Count 12 claims the "Libertas Funds" and "the Maserati"; Count 16 claims only unspecified "assets of Sunrise." TAC ¶¶ 952–53, 995.

Deo did not take the Libertas funds; he obtained and personally guaranteed the loan, while Plaintiffs' controller "took the $735,000.00 on her own decision." DSF ¶¶ 291, 329–330, ECF 520-1. The pleading also takes mutually destructive positions. Count 10 pleads Deo executed the Libertas Agreement "without authority" (TAC ¶ 850), while Count 12 claims the price paid under that same agreement as Northshore's property. If unauthorized, the consideration is Libertas's to recover; if authorized, the "unauthorized" premise collapses. Parties may not disaffirm a transaction and retain its proceeds. Either way, Northshore lacks the superior possessory right conversion requires.

Plaintiffs' own controller recorded every dollar of cash and "assets" claimed, deducting Deo's draws from his capital account "every time," calling it "proper accounting" with "nothing improper" about it. DSF ¶¶ 231–235, 240–250, 256–258, 262–263. Recorded draws are not unauthorized dominion, and any diversion claim belongs to the entities; the members' injury is derivative. *Tzolis v. Wolff*, 10 N.Y.3d 100, 102–03 (2008). As to the Maserati, the record contains no title, registration, payment history, or testimony, and Plaintiffs bear the burden. *Celotex*, 477 U.S. at 322–25.

**C. Breach (Counts 14, 15, 18, and 19).**

These counts plead that Deo owed duties "[a]s an employee and the general manager." TAC ¶¶ 963, 967, 1003, 1006. A manager's fiduciary duties run to the LLC and its members, N.Y. Ltd. Liab. Co. Law § 409(a), and arm's-length lending creates none. EBC I, Inc. v. Goldman, Sachs

& Co., 5 N.Y.3d 11, 19 (2005). The Deos are the members; the IAG principals floor-planned the dealerships for a monthly fee, so Deo owed them nothing. DSF ¶¶ 15, 20, 252–253, 336–337.

Ownership aside, no breach exists, and breach requires an identified act of disloyalty. Phansalkar, 344 F.3d at 200–02. David Baron knew the Deos' salary and commissions; the controller recorded the cash draws and "never told David Baron that Anthony Deo did anything improper"; and the Deos "made peace with David Baron." DSF ¶¶ 144, 210, 219, 221, 246, 256–260. Plaintiff Aaronson never investigated losses predating Baron's death and does not know what Baron and Deo agreed. DSF ¶¶ 68, 70–72. A principal's knowledge and acquiescence defeat the claim, and the controller's knowledge is the entity's. Center v. Hampton Affiliates, Inc., 66 N.Y.2d 782, 784 (1985).

**D. Unjust Enrichment (Counts 13 and 17).**

Unjust enrichment requires enrichment at the plaintiff's expense that equity will not tolerate; it is not a catch-all for failed tort claims. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011). The enrichment ran the other way. The Deos paid Plaintiffs' affiliate a $60,000–$65,000 monthly "management fee"; Plaintiffs kept the $50,000 purchase price for 189 Sunrise and reopened there under their own name; Plaintiff Chabrier and his partners themselves took money from the dealership accounts; and Deo's draws reduced his own capital dollar for dollar. DSF ¶¶ 61, 96, 245, 252–253, 300, 332, 336–337. Deo retained nothing unjustly.

**E. Accounting (Counts 24 and 25).**

An equitable accounting requires a fiduciary relationship and an inadequate remedy at law. *Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568, 569 (1st Dep't 2011). Plaintiffs plead that the amounts due "cannot be ascertained without an accounting" because the necessary information

"is in the exclusive knowledge of Deo." TAC ¶¶ 1084, 1089. Their own witnesses refute that: their controller kept every record, their principals reviewed the accounts daily and monthly, and Plaintiff Khan "watched" the accounts with "his" controllers. DSF ¶¶ 162–163, 178–195, 214, 237–250, 267–270, 296–297, 338. Nothing in their own employees' hands sits in Deo's "exclusive knowledge." And Plaintiffs plead $10,000,000 damages claims on the same facts, conceding an adequate remedy at law.

**F. Fraud (Count 26).**

Count 26 pleads "falsified monthly financial statements to the IAG Plaintiffs and Ally" and "falsified tax returns and monthly financial statements to Libertas." TAC ¶¶ 1093–94. But Plaintiffs' own people made every one of these papers: their controller prepared the statements from books he alone kept, an outside accountant reconciled them monthly, David Baron reviewed them monthly, floor-plan audits confirmed them, and their principals directed and approved the tax returns. DSF ¶¶ 180–185, 198–206, 214. A principal cannot claim deception by its own agent's statements. *Center*, 66 N.Y.2d at 784. Nor did anyone rely: Plaintiff Chabrier reviewed the accounts daily, Plaintiff Khan watched them with his controllers, and Kwun worked inside them for over a year. DSF ¶¶ 163, 297, 335, 338. And reliance by Ally or Libertas is not reliance by the IAG Plaintiffs. *Pasternack v. Lab. Corp. of Am. Holdings*, 27 N.Y.3d 817, 827–29 (2016).

Finally, the count claims the "IAG Plaintiffs'" damages, yet the individuals "did not lose any money individually," Plaintiff Khan has received nothing from Northshore since 2019 and nothing ever from Sunrise. DSF ¶¶ 83, 111, 157, 166–167, 225. Any loss belongs to the dealerships, and derivative injury is not the member's own. *Tzolis*, 10 N.Y.3d at 102–03. The count even pleads losses "reasonably foreseeable at the time Jones was retained" (TAC ¶¶ 1093–94), the measure of a claim against the dismissed accountant, not Deo.

**POINT VI — ALTERNATIVELY, EXCLUDE PRINCIPAL DAMAGES CATEGORIES**

Every claim requires proximate cause, and an independent intervening cause severs the chain. Anza, 547 U.S. at 457–61; Hemi, 559 U.S. at 9–12; Derdiarian v. Felix Contracting Corp., 51 N.Y.2d 308, 315 (1980). Damages must be proven with reasonable certainty. Kenford Co. v. County of Erie, 67 N.Y.2d 257, 261 (1986); Laub, 297 A.D.2d at 30–31.

The Superb Plaintiffs. Urrutia admits Deo had no involvement in his New Jersey, Connecticut, or Massachusetts stores; he lost them "due to mistakes by" NMAC; his own cross-collateralization made any harm "indirect" and "consequential, if any"; and the departures of Novicky and "James" "hurt" them further. DSF ¶¶ 342, 379, 399, 406–407; ECF 535-1 at 124–26, PageID #: 17566–68 (Resps. ¶¶ 399, 406: "Admit"). He closed Superb himself two months after suing, and moving its money out. While operational, Deo paid its $200,000 monthly overhead. DSF ¶¶ 378, 385, 401–402. Judgment should at minimum exclude damages from the out-of-state dealerships, the NMAC terminations and defaults, and the recovered vehicles.

The IAG Plaintiffs. No witness identifies a loss Deo caused: Aaronson knows no "specifics about money missing due to Anthony Deo's actions"; Kwun, after a year inside the accounts, has "no memory of Anthony Deo doing anything improper"; the controller's only explanation is the $65,000 monthly affiliate fee and recorded draws; and the individuals lost nothing individually. DSF ¶¶ 68–72, 83, 89, 261, 331, 333–334. The payments claimed as damages were made, on Plaintiffs' own pleading, "to protect the investment of the Managing Members." TAC ¶ 227. Voluntary payments for the payer's own benefit are not recoverable. Spagnola v. Chubb Corp., 574 F.3d 64, 72–73 (2d Cir. 2009). By September 2022, Plaintiffs "became aware of significant financial deficiencies," "cut off any further funding," and negotiated an exit (TAC ¶¶ 309–14),

then recouped $735,000 through their own controller (DSF ¶¶ 329–330). Judgment should at minimum exclude the trade-lien, lender-repurchase, and floor-plan-fee categories and the individuals' personal claims.

**CONCLUSION**

For the foregoing reasons, the Deo Defendants respectfully request summary judgment dismissing the Third Amended Complaint against each of them; alternatively, summary judgment dismissing all claims against every movant except Anthony Deo, dismissing Counts 1–9, 12–19, and 24–28 against him, and excluding the damages categories identified in Point VI; and such other relief as the Court deems just and proper.

Dated: Mineola, New York
September 4, 2026

Respectfully submitted,

**MARWAHA LAW GROUP, PLLC**

By: ____/s/___________________________
Nipun Marwaha, Esq.
1539 Franklin Avenue, Suite 201
Mineola, New York 11501
Tel. 516-503-4624
nipun@marwahalaw.com
Attorneys for the Deo Defendants [conform client list to the notices of appearance and the notice of motion]

____/s/___________________________
Harry R. Thomasson, Esq.
3280 Sunrise Highway, Box 112
Wantagh, New York 11793
Tel. 516-557-5459
hrtatty@verizon.net
Defendant Pro Se

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c) and Rule 3(C)(2) of the Individual Practice Rules of Magistrate Judge James M. Wicks, the undersigned certifies that the foregoing Memorandum of Law contains 6,490 words, inclusive of footnotes and exclusive of the caption, table of contents, table of authorities, and signature block, as computed by the word-count function of Microsoft Word, and therefore complies with the Court's 6,500-word limit.

Dated: Mineola, New York
September 4, 2026

**MARWAHA LAW GROUP, PLLC**

By: ____/s/___________________________
Nipun Marwaha, Esq.