**MARWAHA LAW GROUP, PLLC**
1539 Franklin Avenue, Suite 201
Mineola, New York 11501
Nipun Marwaha, Esq. | Nipun@MarwahaLaw.com

September 15, 2026

**VIA ECF**

Honorable James M. Wicks, U.S.M.J.
United States District Court
Eastern District of New York
100 Federal Plaza, Courtroom 1020
Central Islip, New York 11722

**Re: *Superb Motors Inc. et al. v. Deo et al.*, No. 2:23-cv-6188 (JMW) — Opposition to the Superb Plaintiffs' Letter Motion at ECF No. 560**

Dear Judge Wicks:

This firm submits this letter on behalf of Deo Defendants in opposition to Plaintiffs' September 7, 2026 letter motion (ECF No. 560), which asks the Court, without a conference or briefing, to order Deo Defendants to surrender six vehicles, titles, and keys to Plaintiff Urrutia for sale, under nebulous threats of contempt.

The motion violates every rule of motion practice, beginning with the obligation to confer. It asks the Court to "clarify" an order whose scope the Court fixed three times; stretches a remand granted for a different purpose; rests on a rescission the state court held impracticable; and seeks, for the fourth time, relief twice denied. It arrives as counsel discloses that $193,485 in court-ordered proceeds is not in escrow, and after DMV chain-of-title records obtained by FOIL have shown that the title documents Plaintiffs gave the Court in 2024, and on which the Court relied, are objectively false. The Court should convene a conference on that record, not extend the sale program to six more vehicles.

## I. Motion Violates Rules of Motion Practice, Beginning With the Obligation to Confer

Plaintiffs say counsel "conferred, albeit only via email." (ECF No. 560 at 1.) On August 10, 2026, Plaintiffs' counsel emailed a turnover demand stating that absent a response Plaintiffs would move for contempt. On August 20, undersigned counsel responded that ECF No. 505 authorizes sale of the Injuncted Superb Vehicles only, and proposed that the parties raise the disagreement with the Court together. Plaintiffs' counsel did not reply, and no call was held. Eighteen days later Plaintiffs filed this motion, asking the Court to "dispense with a further pre-motion conference." (Id. at 5.) A threat followed by unilateral filing is not a conference.

The pre-motion process is mandatory here: "Any party seeking to modify the injunction must file a pre-motion conference letter." (ECF No. 55 ¶ 8; ECF No. 505 at 5.) Plaintiffs cite paragraph 8 as authority and ask the Court to waive the one thing it requires. Rule 3.A of the Court's Individual Practice Rules permits 1,500-word letter motions for discovery disputes only; "other non-dispositive relief" must be sought on notice under Rule 3.C. This is not a discovery motion, and even as a letter motion ECF No. 560 runs roughly 2,440 words, single-spaced, with no declaration or memorandum. (L. Civ. R. 7.1.) The Court applied these rules to Deo Defendants in April, refusing relief sought by letter at ECF No. 468 absent "a formal motion," as Plaintiffs' counsel urged. (Electronic Order of Apr. 16, 2026; ECF No. 495 at 2.)

Two further defects. First, compelled surrender of property before judgment is mandatory injunctive relief, which requires a clear or substantial showing on the merits (ECF No. 55 at 11–12) and security under Rule 65(c). Plaintiffs make no such showing and post no security, though they value the six vehicles at "over $500,000." (ECF No. 294 ¶ 40.) Second, Plaintiffs' alternative request, that if ECF No. 505 reached only thirty vehicles, "which it is respectfully submitted it should not have," the Court should now extend it (ECF No. 560 at 4), is a motion for reconsideration, due under Local Civil Rule 6.3 by May 29, 2026. Plaintiffs themselves have called

a late renewed application "a motion for reconsideration in disguise" that is "untimely under the Local Civil Rules." (ECF No. 231 at 8–9.) If the Court entertains any of this, it should proceed on notice under Rule 3.C.

**II. There Is Nothing to "Clarify"**

For three years, "Injuncted Superb Vehicles" and "Injuncted Deo Vehicles" have been separately defined terms with unchanged meanings. (ECF No. 55 ¶¶ 1, 3.) Plaintiffs' counsel has used them that way on the record: "the Deo injuncted vehicles, six of them, not 30." (ECF No. 272-1 at 19:25–20:2.) ECF No. 505 uses them the same way. It frames the Injunction as concerning "the 'Injuncted Superb Vehicles'" (ECF No. 505 at 1), describes the relief sought as vacatur "entirely as to the Injuncted Superb Vehicles" (id. at 9), and grants the motion "to the extent that the Plaintiffs may sell the Injuncted Superb Vehicles" (id. at 14). Plaintiffs' theory is that the word "Vehicles" at page 12 silently enlarged that grant. But the sentence containing that word cites as its authority the May 8, 2024 order "allowing the sale of vehicles" (id. at 13), and that order authorized sale of the Superb vehicles while, in the same ruling, denying "return of the injuncted Deo vehicles." (ECF No. 172 at 15, 19.) ECF No. 505 never mentioned that denial, let alone reversed it.

Plaintiffs' remaining textual arguments fare no better. The "retention arrangement" the Court rejected (ECF No. 560 at 3) was Mr. Thomasson's fallback that, if the Court permitted sale of the thirty Superb vehicles, Deo Defendants rather than Plaintiffs should hold them and the proceeds. (ECF No. 505 at 12; ECF No. 272-1 at 13:23–14:1.) Declining that request said nothing about the six Deo vehicles. And the Court vacated the May 8, 2026 relocation ruling because, with the Injunction vacated, permission to relocate was no longer needed. (ECF No. 505 at 14; ECF No. 510 at 4 n.3.) If Plaintiffs are right that the entire "custody regime" fell, then paragraph 3 fell

with every other restraint on Deo Defendants, leaving no order governing the six vehicles at all. Vacatur lifts restraints; it does not transfer possession. On either reading, turnover is new relief that must be sought and earned as such. The remand adds nothing. This Court granted vacatur on May 15, 2026, invoking Rule 62.1 only "out of an abundance of caution" (ECF No. 505 at 9–10, 14), and treated the Injunction as vacated from that date. (ECF No. 510 at 4 n.3.) The Second Circuit's September 1 order simply removed the caution. It conferred no new authority, and it did not concern the six vehicles.

## III. The "Rescinded Bargain" Premise Is Wrong, and No Court Has Adjudicated Title

Whichever lines Plaintiffs choose to quote, the state court's decision was that "as Superb is no longer operational rescission of the Agreement is impracticable," and that a trial will "determine whether and to what extent rescissory damages may be warranted." (NYSCEF Doc. 134 at 8.) Nothing has been rescinded. The phrase Plaintiffs attribute to this Court, that the agreement "has been rescinded," appears in ECF No. 505 only inside a quotation of Plaintiffs' own motion papers. (ECF No. 505 at 1–2.) A ruling that declares rescission impracticable cannot be preclusive as to rescission.

Plaintiffs' own argument confirms that no adjudication of title exists: they say the Injunction's labels "did not vest ownership." (ECF No. 560 at 2.) Therefore Plaintiffs need an adjudication of ownership to take the six vehicles, and none exists. This Court denied return of the six at ECF No. 134 (at 6) and again, after an evidentiary hearing, at ECF No. 172 (at 15). No court has ordered any vehicle transferred to Plaintiffs. (ECF No. 55 ¶ 5(c).) The only delivery order in this case ran the other way: in May 2025 this Court directed that the thirty Injuncted Superb Vehicles "be delivered to the Deo's Hicksville New York lot" with "keys and all title documents." (Electronic Order of May 22, 2025; ECF No. 267.) Plaintiffs did not comply. They noticed an

appeal the same day as the delivery deadline (ECF No. 285) and sold twelve of the vehicles a week later. (ECF No. 293.)

Plaintiffs' "documentary proof of payment" for the six vehicles (ECF No. 560 at 3) proves the opposite of what they claim. Urrutia swore in the state action that he "did repay to Deo the $500,000 cash consideration" by paying "for vehicles held by Deo in a total amount of $492,029.50." (NYSCEF Doc. 22 ¶ 14; see NYSCEF Doc. 134 at 3.) Thirteen months later he swore here that the six are "vehicles that I personally paid for," worth "over $500,000.00," which "equals the amount Deo claims to have invested." (ECF No. 294 ¶¶ 40–41.) The same $492,029.50 cannot both repay Deo's $500,000 and purchase the vehicles. If Plaintiffs take the vehicles and credit the payment against the $500,000, they receive the vehicles for nothing. Whether damages "are offset by additional agreements between the parties" is exactly what the state court reserved for its trial (NYSCEF Doc. 134 at 8), in the forum Urrutia told that court has "exclusive jurisdiction" over the Agreement. (NYSCEF Doc. 22 ¶¶ 2, 4.) Plaintiffs have variously called the six "also Superb's vehicles" (ECF No. 155 at 2 n.2), vehicles Urrutia "personally paid for" (ECF No. 294 ¶ 40), "northshore" vehicles (ECF No. 220-9), and repayment of Deo's investment (NYSCEF Doc. 22 ¶ 14). A turnover order would require the Court to choose among those accounts on a letter.

Turning over the vehicles would not accomplish the sale it is meant to enable. Plaintiffs' own chief operating officer swore that four of the six sit in non-party Northshore's VerifiNY system, where a vehicle "is thereafter incapable of being sold or transferred." (ECF No. 155 at 2 n.2, ¶¶ 11, 19.) What impedes a sale is a title condition within Plaintiffs' own affiliates, not Deo Defendants' custody.

## IV. Direct Evidence of Plaintiffs' Filing of False Instruments

Plaintiffs submitted thirty Connecticut Q-1 forms and a sworn declaration that the vehicles had been "immediately transferred back to Superb." (ECF No. 155 ¶ 14; ECF No. 155-1.) Deo Defendants have repeatedly told this Court, with the circumstantial evidence then available, that no such transfer was ever recorded in any public database. (ECF No. 172 at 9; ECF No. 231 at 6.) For want of direct evidence, the Court has not reached the question, and in reliance on those forms found the title issue moot. (ECF No. 172 at 17.) Deo Defendants can now submit direct, irrefutable proof that Plaintiffs lied.

Documents produced by the New York State DMV in response to a FOIL request for the chain of title of the 2021 Dodge Charger, VIN 2C3CDXHG1MH505823, one of the twelve vehicles Plaintiffs reported sold on May 29, 2025 (ECF No. 309 at 2 n.3), are annexed as Exhibit A. The Q-1 Plaintiffs filed for this vehicle recites a November 6, 2023 assignment from Team Mitsubishi Hartford to Superb. (ECF No. 155-1 at 21.) The DMV records prove no such transfer occurred. Title never returned to Superb after the Injunction issued; the vehicle remained with Urrutia's Connecticut dealership until Urrutia, signing for that dealership, sold it to a third party on June 2, 2025, at a price left blank on the form. The document Plaintiffs submitted to this Court as proof that title had been "transferred back to Superb" was a lie, submitted to manipulate this Court into ruling as Plaintiffs wished. This Court must not hand six more vehicles to a party that has systematically hidden, and has now been caught lying about, what it did with the last thirty.

Deo Defendants have long shown, through circumstantial evidence, that all thirty Injuncted Superb Vehicles were improperly transferred and that the documents Plaintiffs offered to prove otherwise were fabricated to avoid sanctions. The New York State DMV records now validate that showing with direct evidence as to at least one vehicle. Deo Defendants therefore request a conference to address this record, and a reasonable period thereafter to obtain certified DMV

records for the remaining vehicles, so that the record on which this Court has been asked to rule can be cleansed of the fraudulent documents Plaintiffs introduced into it. No further vehicle should be sold, and none surrendered, until that is done. This Court has already recognized that "multiple misrepresentations to court regarding law and facts" warrant denial of equitable relief. (ECF No. 231 at 27 (citing *Goldstein v. Delgratia Mining Corp.*, 176 F.R.D. 454, 458 (S.D.N.Y. 1997)).)

## V. Sales and Location of Proceeds are Completely Undocumented

ECF No. 309 permitted the proceeds to be moved from counsel's IOLA account into "an interest-bearing escrow account held by Mr. Kataev," to "remain in that escrow account, unencumbered," and not to be "transferred or disbursed without ... leave of Court." Counsel has now twice disclosed that the account he opened "is not characterized as an 'escrow' account," and seeks leave to transfer $193,485 in court-ordered funds into it. (ECF No. 506 at 3 n.4; ECF No. 560 at 5.) No filing states whether the funds have already moved. The request should be denied: an interest-bearing account that is not an escrow account is not what the Court authorized, and court-ordered funds should not leave trust protection for a firm account. If Plaintiffs want the fund to earn interest, the Court Registry does that. (Fed. R. Civ. P. 67; L. Civ. R. 67.1.) The same conditions required Plaintiffs to "account to the Court as to the sales when made" (ECF No. 505 at 14); across eighteen reported sales they have filed no bill of sale, title or transfer document, or buyer identity, only VINs, prices, and a single deposit image per batch. (ECF Nos. 293; 506; 560.) No further sale should proceed until each prior sale is documented.

## VI. Relief Requested

Deo Defendants respectfully request that the Court: (1) deny ECF No. 560, without prejudice to a motion on notice; (2) set a conference on the title representations at ECF No. 155-1; (3) direct that all sale proceeds be deposited into the Court Registry; (4) direct a sworn

accounting of every sale to date, as described above, and suspend further sales pending its review; and (5) grant leave to move for contempt and sanctions.

Respectfully submitted,

*/s/ Nipun Marwaha*
Nipun Marwaha, Esq.
MARWAHA LAW GROUP, PLLC
*Attorneys for the Deo Defendants*

*/s/ Harry Thomasson*
Harry Thomasson Esq. Pro Se

cc: All counsel of record (via ECF)