UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

SUPERB MOTORS INC., TEAM AUTO SALES LLC, ROBERT ANTHONY URRUTIA, 189 SUNRISE HWY AUTO LLC, NORTHSHORE MOTOR LEASING, LLC, BRIAN CHABRIER, JOSHUA AARONSON, JORY BARON, ASAD KHAN, IRIS BARON REPRESENTATIVE OF THE ESTATE OF DAVID BARON, 1581 HYLAN BLVD AUTO LLC, 1580 HYLAN BLVD AUTO LLC, 1591 HYLAN BLVD AUTO LLC, 1632 HYLAN BLVD AUTO LLC, 1239 HYLAN BLVD AUTO LLC, 2519 HYLAN BLVD AUTO LLC, 76 FISK STREET REALTY LLC, 446 ROUTE 23 AUTO LLC and ISLAND AUTO MANAGEMENT, LLC,

Plaintiffs,

-against-

ANTHONY DEO, SARAH DEO, HARRY THOMASSON, DWIGHT BLANKENSHIP, MARC MERCKLING, MICHAEL LAURIE, THOMAS JONES, CPA, CAR BUYERS NYC INC., GOLD COAST CARS OF SYOSSET LLC, GOLD COAST CARS OF SUNRISE LLC, GOLD COAST MOTORS AUTOMOTIVE GROUP LLC, GOLD COAST MOTORS OF LIC LLC, GOLD COAST MOTORS OF ROSLYN LLC, GOLD COAST MOTORS OF SMITHTOWN LLC, UEA PREMIER MOTORS CORP., DLA CAPITAL PARTNERS INC., JONES, LITTLE & CO., CPA'S LLP, FLUSHING BANK, LIBERTAS FUNDING LLC, J.P. MORGAN CHASE BANK, N.A., 189 SUNRISE HWY AUTO LLC, and NORTHSHORE MOTOR LEASING, LLC,

Defendants.

---------------------------------------------------------------X

**Case No.: 2:23-cv-6188 (JMW)**

**PLAINTIFFS' SUPERB MOTORS INC., TEAM AUTO SALES LLC, AND ROBERT ANTHONY URRUTIA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO THE DEO DEFENDANTS' MOTION FOR RECONSIDERATION**

## PRELIMINARY STATEMENT

On October 3, 2026, a day before undersigned counsel left for international travel through October 13, 2026, this Court entered an Order providing, *inter alia*, that any motion for reconsideration of its September 30, 2026 Order shall be filed on or before October 7, 2026, with *opposition filed no later than October 9, 2026*. The deadline was set despite your undersigned's notice to the Court in a sworn declaration about the aforesaid travel earlier that day. See ECF Docket Entry ("ECF") 574 ¶¶ 37-38.

Notwithstanding the foregoing, opposition papers were prepared and the Superb Plaintiffs fully intended on complying with the deadline set. The opposition was not filed because counsel could not reach the internet long enough to finish reviewing it and to clear it for filing.

On Friday, October 9, 2026, your undersigned counsel was at The Carlton in Moscow, Russia within walking distance of the Kremlin. His paralegal had the draft opposition ready for his review. Your undersigned logged on, remotely, to a computer in the United States in order to review and revise the draft opposition papers and made substantive revisions. When undersigned counsel was about a quarter of the way through, the connection died. Hotel Wi-Fi failed. The international data plan on the SIM card built into his computer failed. His telephone, used as a hotspot, also failed. Your undersigned could not get back into the draft, could not clear the filing as required by Rule 11 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules"), and the opposition did not get filed.

That was not a missed calendar entry or a lawyer who waited until the last hour and then blamed his router. As an initial matter, the Deo Defendants filed their motion at 11:18 PM on Wednesday, October 7, 2026, leaving less than forty-eight (48) hours to review and prepare a draft. Second, the Russian government, through the Federal Security Service of the Russian Federation ("FSB"), routinely orders the carriers to shut off mobile internet in Moscow.

It says the drones use the network to navigate. The shutdowns last for hours, and have in the past lasted for weeks. Counsel was in the center of that city, within walking distance of the Kremlin, when every connection he had went down altogether. The same week, strikes on Russian data centers, announced on October 8 and October 9, produced a further round of widespread internet outages.

Rule 6(b)(1)(B) exists for this. The delay involved is a matter of days, and the proposed memorandum of law in opposition is filed within the time set forth in Local Civil Rule 6.1(b)(2). They have already asked the Court to stay the underlying order until the motion for reconsideration is decided. There is no prejudice in hearing both sides. In light of the foregoing circumstances, the Court should grant leave and decide the motion on the merits.

**STATEMENT OF FACTS**

On September 30, 2026, the Court granted the Superb Plaintiffs' motion, ECF 560, and authorized them, at their own expense, to take possession of, transport, market, and sell the Injuncted Deo Vehicles. The sale is subject to the escrow, accounting, and proof-of-deposit conditions in ECF 505 and 563-1. A status report is due on November 16, 2026. (ECF 567.)

On October 2, 2026, the Deo Defendants moved by letter for a stay of that Order. ECF 570. They said they would file a motion for reconsideration under Local Civil Rule 6.3 by October 14, 2026, and they asked that the stay continue, if reconsideration were denied, pending appeal. Id. The Deo Defendants filed the Reconsideration Motion on October 7, 2026. (ECF 577.) Pursuant to this Court's October 3, 2026 Order, opposition papers were due just two (2) days later, on October 9, 2026.

Given your undersigned counsel's travel, his paralegal, Alivia Cooney,[1] prepared the opposition. It was ready for counsel's review on Friday, October 9, 2026. See Declaration of Emanuel Kataev, Esq. ("Kataev Decl.) ¶¶ 2-3.) The practice in the office is simple: your undersigned reviews the draft; if cleared and/or revised, the paralegal files it. Earlier during his travels, that is how papers were filed. (Id. ¶ 3.)

On October 9, 2026, undersigned counsel was staying at The Carlton in Moscow, Russia at 3 Tverskaya Street, within walking distance of the Kremlin. (Id. ¶ 4.) He sat down to review the draft after logging on remotely to a computer in the United States; he made substantive revisions and was approximately one quarter of the way through. (Id. ¶ 5.)

Approximately one hour before a motion for an extension of time was filed, the connection failed. (Id. ¶ 6; see also ECF 579.) He tried the hotel's Wi-Fi, an international data plan connected directly to the SIM in his computer, and his cellular telephone as a hotspot; none of them worked. (Id. ¶ 7.) He could not finish the review, could not clear the opposition for filing, nor could he sign the draft consistent with his obligations under Rule 11; it was therefore not filed. (Id. ¶ 8.)

The internet failure was not peculiar to one device or instance. Since last year, the FSB has ordered Russian telecom companies to shut down mobile internet for days at a time, on the ground that Ukrainian attack drones can use it to navigate. The disruptions intensified in March 2026, with a shutdown in Moscow that lasted nearly three (3) weeks. See Two Phones and an App: How Russians Skirt Putin's Digital Iron Curtain, Reuters (June 13, 2026), https://www.reuters.com/world/europe/two-phones-an-app-how-russians-skirt-putins-digital-iron-curtain-2026-06-13/.

[1] Ms. Cooney is scheduled to take the oath to become a member of the Bar of the State of New York on Wednesday, October 21, 2026.

The Financial Times reported the same fact from the capital. This spring, the blackouts reached Moscow. The city endured days-long mobile-internet shutdowns, a change from the earlier policy of shielding the capital. Since March, the outages have been intermittent and indiscriminate: the signal vanishes, and the applications on which ordinary work depends stop. In late May, President Putin ordered the government and the FSB to keep "critically important" services running during internet outages, which is an acknowledgment that the outages would continue. See How the FSB Cut Russia Off from the Internet, Fin. Times (June 11, 2026), https://www.ft.com/content/da121259-3823-4109-bf7f-f7ff21d3118f.

The Wall Street Journal reported in March that mobile internet in Moscow had been shut off while the state tested a system for cutting the public off from the network. The Kremlin's stated reason was protection against drones that use cellphone towers for navigation. See Matthew Luxmoore & Milàn Czerny, Russia Shuts Off Internet in Moscow as It Tests Nationwide Censorship System, Wall St. J. (Mar. 14, 2026), https://www.wsj.com/world/russia/russia-shuts-off-internet-in-moscow-as-it-tests-nationwide-censorship-system-3b44c0af.

On May 5, 2026, mobile internet went down across Moscow on all four major carriers. The Ministry of Digital Development described the measure as a "temporary block" imposed "for security reasons." See Russia Cuts Mobile Internet in Moscow and St. Petersburg Ahead of Victory Day, Meduza (May 5, 2026), https://meduza.io/en/feature/2026/05/05/russia-cuts-mobile-internet-in-moscow-and-st-petersburg-ahead-of-victory-day.

The week counsel was cut off, the disruption was not theoretical. On October 9, 2026, Yandex announced that drones had struck data centers in Sasovo and in the Kaluga region. A third facility, in Vladimir, was hit before the weekend was over.

Operations at Sasovo were halted. See Ukraine's Strikes on Yandex Data Centers, Explained, Moscow Times (Oct. 12, 2026), https://www.themoscowtimes.com/2026/10/12/ukraines-strikes-on-yandex-data-centers-explained-a93953. Each strike that week caused widespread outages across the Russian internet. See Ukrainian Drone Strikes Have Plunged Russia's Internet into Crisis, Meduza (Oct. 12, 2026), https://meduza.io/en/cards/ukrainian-drone-strikes-have-plunged-russia-s-internet-into-crisis-meduza-explains-why-the-damage-has-been-so-extensive-and-why-a-full-recovery-will-likely-take-months.

A remote session to a computer in the United States, and a filing on this Court's ECF system, require a connection the shutdowns are built to deny. When the carrier drops the session, foreign services do not load. Counsel had three paths; all three failed, at the same time, in the center of Moscow, on the day he was reviewing the opposition papers, which took Alivia an entire day to draft the day prior since the motion was received at the literal eleventh hour on October 7, 2026. (Kataev Decl. ¶¶ 4-8.)

## ARGUMENT

### I. Legal Standard

After a deadline has passed, the Court may extend the time "for good cause" if "the party failed to act because of excusable neglect." See Fed. R. Civ. P. 6(b)(1)(B). The party seeking the extension bears the burden. See In re Enron Corp., 419 F.3d 115, 121 (2d Cir. 2005).

"Excusable neglect" is an equitable judgment. It takes account of all the circumstances: the danger of prejudice to the other side, the length of the delay and its effect on the proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.

P'ship, 507 U.S. 380, 395 (1993). The term is elastic; it reaches circumstances beyond the party's control, and it is not limited to them. Id. at 392.

The Second Circuit has taken a hard line where a party misses a clear deadline it was able to meet. See Silivanch v. Celebrity Cruises, Inc., 333 F.3d 355, 368 (2d Cir. 2003); see also In re Enron Corp., 419 F.3d at 122-23. That line governs Appellate Rule 4 and bankruptcy bar dates; it does not govern this motion. Under Rule 6(b)(1), the district court has "wide discretion" to extend the time. See Ramashwar v. City of New York, 231 Fed. Appx. 26, 27-28 (2d Cir. 2007) (summary order); see also Alexander v. Saul, 5 F.4th 139, 154 (2d Cir. 2021). Extensions under the rule are to be liberally granted. See Staggers v. Otto Gerdau Co., 359 F.2d 292, 296 (2d Cir. 1966). "'Mere inadvertence, without more, *can* in some circumstances be enough to constitute 'excusable neglect' justifying relief' under Rule 6(b)(1)(B)." See Petaway v. Osden, 827 Fed. Appx. 150, 152 (2d Cir. 2020) (summary order) (emphasis in original) (citing Raymond v. Int'l Bus. Machs. Corp., 148 F.3d 63, 66 (2d Cir. 1998)).

The Superb Plaintiffs do not need the inadvertence cases. The reason here was not inadvertence. It was a loss of every connection counsel had, in a city where the government shuts those connections off. Holding the Superb Plaintiffs to the deadline in light of these circumstances would force a violation of Rule 11 because it would prevent counsel of record from reviewing the draft opposition papers and signing off on them.

## II. The Delay Was Not Within Counsel's Control

The reason for the delay is the factor that carries the most weight. See In re Enron Corp., 419 F.3d at 123. It favors relief. Counsel did not misread the rule. He did not forget the deadline. He did not choose to do other work. Compare Canfield v. Van Atta Buick/GMC Truck, Inc., 127 F.3d 248, 250-51 (2d Cir. 1997).

The opposition had been drafted. On the day set for his review, he was in the document. He had already made substantive revisions. He was a quarter of the way through. (Kataev Decl. ¶¶ 2, 5.) The paper was on its way to being filed by the same method that had already been used, on this trip, to file other papers: his review, his clearance, then filing by his paralegal. (Id. ¶ 3.)

The method stopped because the network connection stopped. He was logged on remotely to a computer in the United States. Approximately one (1) hour before the motion for an extension of time was filed, he lost the connection. (Id. ¶ 6.) He did not have a fourth path. The hotel's Wi-Fi did not work. The data plan on the computer's own SIM did not work. The telephone's hotspot did not work. (Id. ¶ 7.) A failure of one device is the sort of excuse courts reject. Three paths failing together, including both cellular paths, is a different set of circumstances.

The public record says the government shuts mobile internet off, on purpose, in the city where he was. The FSB orders the carriers to do it, often for days or weeks at a time. See Reuters, *supra*. Moscow has already lived through a shutdown of nearly three weeks, and through days-long blackouts that arrive without notice. See Fin. Times, *supra*; see also Reuters, *supra*. The Ministry has called the May shutdowns in Moscow what they were: temporary blocks, imposed for security reasons. See Meduza, May 5, 2026, *supra*. The Journal reported the March shutdown of mobile internet in the capital. See Wall St. J., *supra*. Counsel was within walking distance of the Kremlin, in the city where these orders are carried out. (Kataev Decl. ¶ 4.)

October 9, 2026 was not a quiet day on the Russian internet. That day, Yandex announced drone strikes on two of its data centers. A third strike followed within days. See Moscow Times, *supra*.

Each strike caused widespread outages across the Russian internet. See Meduza, Oct. 12, 2026, *supra*. Counsel's loss of service fell in that week, in that city.

The two cellular paths are what an FSB order to the carriers cuts off. The hotel's Wi-Fi failed at the same time. On October 9, 2026, in central Moscow, every connection undersigned counsel had failed altogether. He could not restore one. He could not finish the revisions, and he could not clear the filing. Without his clearance, the opposition was not filed. (Kataev Decl. ¶¶ 7-8.) That omission was not within his reasonable control. See Pioneer, 507 U.S. at 395.

The same fact explains why the request was not made two (2) business days before the deadline, as Rule 1(D) of the Court's Individual Practice Rules ordinarily requires, and why chambers was not telephoned under the emergency clause of that rule. There was no line on which to write, and no line on which to call. Nor did undersigned counsel have an opportunity to contact opposing counsel regarding consent for an extension given the late hour. The extension motion that was filed, ECF 579, was filed about an hour after he was last in the draft. It did not, and could not, substitute for the review he had not finished. Leave is required so that the opposition itself can be filed.

**III. The Remaining Factors Favor Leave**

Prejudice. There is none that matters. No order has been entered on the Reconsideration Motion. The status report on the vehicles is not due until November 16, 2026. (ECF 567.) The Deo Defendants have themselves asked the Court not to let the sale go forward until reconsideration is decided. (ECF 570.) A decision delayed by the few days needed to take the opposition does not harm them. A decision made without the opposition would.

Length of the delay, and its effect on the case. The opposition was due on October 9, 2026. This motion is made on October 18, 2026. The delay is measured in days.

Good faith. Counsel was revising the opposition when the connection failed. He had put the draft in front of himself on October 9, 2026, shortly after his paralegal prepared it, not after the

deadline. (Kataev ¶¶ 2, 5-6.) He had used the same review-and-file method, successfully, earlier in the trip. (Id. ¶ 3.) A late opposition confers no advantage. The advantage would have been in filing on time. Undersigned counsel is asking to file the paper he was editing, so that the instant motion could be decided on the merits.

**IV. The Motion Should Be Decided on the Merits**

The Court should decide the Reconsideration Motion on the merits, with the opposition in the record.

The Second Circuit's preference is that disputes be resolved on the merits, and not by default. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993); see also Pecarsky v. Galaxiworld.com Ltd., 249 F.3d 167, 174 (2d Cir. 2001). The preference applies here with particular force. The order under reconsideration was entered after a motion, opposition, and proposed orders from both sides. (ECF 560, 563, 565, 567.) Reconsideration is available only where the Court overlooked controlling decisions or facts that would have changed the result. See Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). That is a question for a full record.

Local Civil Rule 6.3 does not treat a failure to oppose as consent. The Court would still have to decide whether it overlooked something. It should not do that on the Deo Defendants' papers alone, where the omission on this side was a government communications blackout and the opposition is filed simultaneously herewith before this Court issued an Order.

**CONCLUSION**

In light of the foregoing circumstances, this Court should grant the Superb Plaintiffs leave to file their opposition to the Reconsideration Motion, deem that opposition timely *nunc pro tunc*, and decide the Reconsideration Motion on the merits.

Dated: Jamaica, New York
October 19, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: *<u>/s/ Emanuel Kataev, Esq.</u>*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for the Superb Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC,*
*and Robert Anthony Urrutia*

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with the word limit of Rule 3(C)(2) of the Individual Practice Rules of Magistrate Judge Wicks and with Local Civil Rule 7.1(c). According to the word-processing program used to prepare it, the memorandum contains 2,794 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: Jamaica, New York
October 19, 2026

Respectfully submitted,

**SAGE LEGAL LLC**

By: *<u>/s/ Emanuel Kataev, Esq.</u>*
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(718) 489-4155 (facsimile)
(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for the Superb Plaintiffs*
*Superb Motors Inc.,*
*Team Auto Sales LLC,*
*and Robert Anthony Urrutia*